# ATTACHMENT (PART 3)

# NOTICE OF INTENT TO SERVE SUBPOENAS

**Issued by the**

**United States District Court**

Southern District of New York

The Authors Guild *et al, Plaintiffs*,

v.

**SUBPOENA IN A CIVIL CASE**

Google Inc., *Defendant*.

CASE NUMBER:    Civil Action No. 05-CV-8136-JES

The McGraw-Hill Companies, Inc. *et al. Plaintiffs*,

v.

Google Inc., *Defendant*.

CASE NUMBER:    Civil Action No. 05-CV-8881-JES

*Consolidated for Discovery Purposes*

To:
Holtzbrinck Publishers, LLC
175 Fifth Avenue
New York, NY 10010

**Pending in the United States District Court for the Southern District of New York**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  See Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel, 51 Madison Avenue, 22nd Floor, New York, New York | October 20, 2006   10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendant | 09/29/2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joseph M. Beck, Esq.; Kilpatrick Stockton LLP; 1100 Peachtree Street, Suite 2800; Atlanta, Georgia 30309-4530

## DEFINITIONS

The following definitions and instructions are applicable to and incorporated by reference in the Requests for Production of Documents and Tangible Things in Schedule A.

1.      "The Author Plaintiffs" shall mean Associational Plaintiff, The Authors Guild, its subsidiaries, divisions, subdivisions, departments, predecessors, successors, joint ventures, present and former officers, directors, partners, principals, employees, representatives, professional staff members, agents, attorneys, and all other persons acting or purporting to act on its behalf and Individual Representative Plaintiffs Herbert Mitgang, Betty Miles and Daniel Hoffman, Paul Dickson and Joseph Goulden in the action pending in the United States District Court for the Southern District of New York styled as *The Authors Guild, et al. v. Google, Inc.*, Civil Action No. 05-CV-8136-JES.

2.      "Publisher Plaintiffs" shall mean the plaintiffs in the action pending in the United States District Court for the Southern District of New York styled as *The McGraw-Hill Companies, Inc. v. Google, Inc.*, Civil Action No. 05-CV-8881-JES, and specifically includes the McGraw-Hill Companies, Inc., Pearson Education, Inc., Penguin Group (USA), Inc., Simon & Schuster, Inc., and Wiley & Sons, Inc., and each of their subsidiaries, divisions, subdivisions, departments, predecessors, successors, joint ventures, present and former officers, directors, partners, principals, employees, representatives, professional staff members, agents, attorneys, and all other persons acting or purporting to act on each of their behalf.

3.     "Google" shall mean Defendant Google Inc., its subsidiaries, divisions, subdivisions, departments, predecessors, successors, joint ventures, present and former officers, directors, partners, principals, employees, representatives, professional staff members, agents, attorneys, and all other persons acting or purporting to act on its behalf.

4.     "Google Book Search Library Project" shall mean the Google program in which books are scanned, indexed, and snippets made available to users through the Internet without the express permission of a copyright holder of such a book regardless of the name used to describe the program, including the names "Google Print for Libraries" or "Google Print Library Project."

5.     "Holtzbrinck Publishers" shall mean Holtzbrinck Publishers, LLC, its subsidiaries, divisions, subdivisions, departments, predecessors, successors, joint ventures, present and former officers, directors, partners, principals, employees, representatives, professional staff members, agents, attorneys, and all other persons acting or purporting to act on its behalf.

6.     "Holtzbrinck Book Project" shall mean any existing or contemplated project or projects involving Holtzbrinck Publishers in which an index of books or in which the contents of books, in whole or in part, are available to the public through the Internet or other electronic or digital media. This Request excludes the Google Book Search Partner Program, but includes projects undertaken by Microsoft Corporation, Yahoo! Inc., the Open Content Alliance, or any other Person). Also, this Request excludes

any project whose sole purpose is to sell "e-books" or for the sale of an "electronic or digital copy" of the whole book.

7. "Open Content Alliance" shall mean the non-profit entity described on the website http://www.openalliancecontent.org.

8. "Communication" shall be defined as the term is defined in Southern District of New York Local Civil Rule 26.3, and further shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), and includes oral and written communications and meeting minutes or notes such as discussions, speeches, voice mail, letters, memoranda, notes, and e-mail.

9. The term "Document" shall be defined as the term is defined in Southern District of New York Local Civil Rule 26.3 and shall be used as broadly as permitted under the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

10. The terms "concern" and "concerning" shall be defined as the terms are defined in Southern District of New York Local Civil Rule 26.3 and shall encompass relating to, referring to, describing, evidencing, or constituting.

11. The term "Person" shall be defined as the term is defined in Southern District of New York Local Civil Rule 26.3 and means any natural person or any business, legal, or governmental entity or association.

12.     "Meeting" shall mean contemporaneous presence, whether in person or by telephone, video conference, or other similar means, of any natural persons, whether or not such presence was by chance or prearranged and whether or not the meeting was formal, informal or occurred in connection with some other activity.

13.     "Policy," "policies," or "procedures," shall mean any rule, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You in conducting Your business, or which was required by You to be recognized or followed by any or all persons with whom you conducted business.

14.     The term "electronic or digital rights" shall mean any right or purported right, whether statutory, contractual, or otherwise, to reproduce, prepare derivative works based upon, distribute, publish, perform, display, archive, store, or index or to license or sub-license any other Person to reproduce, prepare derivative works based upon, distribute, publish, perform, display, archive, store, or index any copyrighted work, or any portion of any copyrighted work, in any electronic or digital format or media, and includes, for example, such formats and media as e-books, computer files (such as XML, HTML, DOC, WPD, PDF, TIFF, JPEG, GIF, RTF, and TXT files), CDs, DVDs, Flash ROM, and the Internet.

15.     The terms "electronic or digital copy" or "electronic or digital copies" shall mean a copy (or copies) of all or any portion of any work in any electronic or digital format or media, and includes, for example, such formats and media as e-books, computer

4

files (such as XML, HTML, DOC, WPD, PDF, TIFF, JPEG, GIF, RTF, and TXT files), CDs, DVDs, Flash ROM, and the Internet.

16. The term "Lawsuits" shall mean the two lawsuits pending against Google that are styled as *McGraw-Hill Companies, Inc. et al. v. Google, Inc.,* Civil Action No.: 05-CV-8881-JES and *The Author's Guild et al. v. Google, Inc.*, Civil Action No.: 05-CV-8136-JES.

17. The term "You" or "Your" shall mean Holtzbrinck Publishers as defined above.

## INSTRUCTIONS

1. You are required to produce documents responsive to the Requests in Schedule A by the return date on the Subpoena.

2. If you have no documents responsive to a particular Request, your response should specifically so state.

3. Google specifies the following manner of production for documents responsive to the Requests in Schedule A: (a) the documents and tangible things should be produced as they are kept in the regular course of business or, in the alternative, organized and labeled so as to correspond to the Requests in Schedule A; (b) the documents shall be serially numbered; and (c) the documents shall be copied, inspected, and photographed by Google to the extent Google desires.

4. If the original of a document is within your possession, custody or control, produce it; if not, produce such copy of it as is in your possession, custody or control. Any copy

5

of a document on which any notation, addition, alteration or change has been made is to be treated as an additional original document.

5.    All documents responsive to the Requests in Schedule A that you maintain in the normal course of business in an electronic format shall be produced in their native format along with the software that is necessary to interpret such files if such software is not readily available.  You should produce such documents with the pertinent metadata concerning the document, which shall include the date(s) the document was last accessed, created, modified, or distributed, and the author(s) and recipient(s) of the document.

6.    Except as otherwise expressly directed herein, each paragraph and subparagraph of the Requests in Schedule A should be construed independently and not by reference to any other paragraph or subparagraph herein for purposes of limiting the scope of the Request in Schedule A being answered.

7.    If any of the documents requested have been destroyed, identify each such document, state the date upon which the document was destroyed, and state the reason it was destroyed.

8.    If you assert a claim of privilege or work product protection in objecting to any Request in Schedule A, identify with respect to each communication or document the nature and basis of the privilege claimed, and provide as much of the following information as is not encompassed by the privilege: its type; its general subject matter and purpose; its date; the names of persons making or receiving the communication or

document, or a copy thereof or, if the communication was oral, of those present when it was made; their relationship to the author or speaker; and any other information needed to determine the applicability of the privilege or protection.

9. A protective order, which is attached hereto, as Schedule B, has been entered in the Lawsuits. To the extent You deem documents responsive to the Subpoena to be "confidential," You are instructed to execute the Protective Order and to produce documents in accordance with its provisions.

10. If any Request in Schedule A is unclear, please contact the undersigned counsel and, if possible, the Request will be clarified in a reply letter. Any such reply letter may be treated as a modification of the Request.

11. If you contend that any Request in Schedule A is objectionable in whole or in part, state with particularity each such objection, the basis for it, and the categories of information and documents to which the objection applies, and respond to the Request insofar as it is not deemed objectionable.

# Schedule A

**SCHEDULE A**

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1.  Documents sufficient to describe the Holtzbrinck Book Project, including the index and search features of the Holtzbrinck Book Project.

2.  A list of all books You have included or for which You have plans to include in the Holtzbrinck Book Project before December 31, 2009.

3.  For each book identified in response to Request No. 2, documents sufficient to show that You have the legal right to include each such book in the Holtzbrinck Book Project, including each and every pertinent license.

4.  Documents sufficient to show the amount of a book that has been provided or that will be provided to an Internet user of the Holtzbrinck Book Project, including documents sufficient to explain the reasons for selecting that amount of the book.

5.  Documents sufficient to show the security, access controls, user restrictions or digital rights management controls used or that considered in connection with the Holtzbrinck Book Project to prevent a piracy or the unauthorized copying or unauthorized display of any portion of a copyright book.

6.  Documents created by Holtzbrinck Publishers, or that Holtzbrinck Publishers has received, on or after January 1, 2003 sufficient to show (a) financial projections and performance   for the Holtzbrinck Book Project, including revenues, costs, and contributions to Holtzbrinck Publishers' earnings or losses of the Holtzbrinck Book Project, (b) data and analyses concerning the effect the Holtzbrinck Book Project has had or is expected to have on book sales, (c) Your belief, if any, of benefits to authors, publishers, copyright owners and the public from the Holtzbrinck Book

Project, and (d) Your belief, if any, of harms or possible harms to authors, publishers, copyright owners and the public from the Yahoo Book Project.

7.    A list showing each public library, research library, university library, or other library with whom you have entered into contractual discussions to have copies of their library contents become part of the Holtzbrinck Book Project.

8.    With respect to each library identified in response to Request No. 7, all contracts executed between Holtzbrinck Publishers and each library.

9.    All agreements or contracts with Microsoft Corporation, Yahoo! Inc., the Open Content Alliance, and any other Person related to the Holtzbrinck Book Project.

10.   All documents (including without limitation communications between Holtzbrinck Publishers and each of the entities, including their legal counsel, identified in Schedule C) concerning the Lawsuits or allegations against Google of copyright infringement in connection with the Google Book Search Library Project.

11.   All public statements You have made regarding the Holtzbrinck Book Project.

# Schedule B

.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE MCGRAW-HILL COMPANIES, INC.,
PEARSON EDUCATION, INC., PENGUIN
GROUP (USA) INC., SIMON & SCHUSTER,                   :  **05 Civ. 8881 (JES)**
INC., and JOHN WILEY & SONS, INC.,
                                                                              :  **ECF Case**
                                    Plaintiffs,
                                                                              :  **Protective Order**
              v.                                                           :

GOOGLE INC.,                                                      :

                                    Defendant.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                                                              :
THE AUTHORS GUILD, Associational Plaintiff,   :
and HERBERT MITGANG, BETTY MILES AND  :
DANIEL HOFFMAN, Individually and on Behalf   :  **05 Civ. 8136 (JES)**
of All Others Similarly Situated,
                                                                              :  **ECF Case**
                                    Plaintiffs,
                                                                              :  **Protective Order**
              v.                                                           :

GOOGLE INC.,                                                      :

                                    Defendant.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PROTECTIVE ORDER

The Court, having considered the parties' request for a *Protective Order*, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, hereby ORDERS AS FOLLOWS:

1.      The terms defined in this Section 1 and parenthetically elsewhere shall, throughout this *Protective Order*, have the meanings provided. Defined terms may be used in the singular or plural.

1.1 The "Publishers' Action" means the litigation captioned The McGraw-Hill Companies, Inc. v. Google Inc., 05 Civ. 8881 (JES) (S.D.N.Y. Complaint filed Oct. 19, 2005).

1.2 "Publishers" means the plaintiffs in the Publishers' Actions.

1.3 The "Authors Guild Action" means the litigation captioned The Authors Guild v. Google Inc., 05 Civ 8136 (S.D.N.Y. Complaint filed September 20, 2005).

1.4 The "Actions" means the Authors Guild Action and the Publishers' Action.

1.5 "Authors" means the plaintiffs in the Authors Guild Action.

1.6 "Producing Party" means a party to the Actions, or persons other than a party, including non-party witnesses, that produce *Confidential Information* or *Highly Confidential Information* to the Receiving Party.

1.7 "Receiving Party" means the party receiving or requesting production of *Confidential Information* or *Highly Confidential Information* from the Producing Party.

1.8 "*Confidential Information*" means information (1) which the Producing Party believes in good faith to constitute confidential information of the Producing Party, or confidential information of some third party which the Producing Party has in its possession, whether or not such information is recorded or embodied in any physical medium (*i.e.*, a document, information contained in a document, equipment, information stored or displayed in electronic, magnetic or other mediums, information revealed during testimony, information revealed in interrogatory answers, or information revealed in any other way); and (2) which is designated as *Confidential Information* by the Producing Party in accordance with Sections six through eight of this *Protective Order*.

2

1.9    "*Highly Confidential Information*" means information (1) which the Producing Party believes in good faith to constitute confidential information of the Producing Party or confidential information of some third party which the Producing Party has in its possession; (2) that is so competitively sensitive that producing the information justifies imposing the requirement on the opposite party that only its counsel may review such information and that its testifying and consulting experts are subject to objection as specified herein, whether or not any such information is recorded or embodied in any physical medium (*i.e.*, whether it is a document, information contained in a document, equipment, information stored or displayed in electronic, magnetic or other medium, information revealed during the taking of testimony, information revealed in interrogatory answers, or information revealed in any other way); and (3) which is designated as *Highly Confidential Information* by the Producing Party in accordance with Sections six through eight of this *Protective Order*.

1.10    "Litigation Documents" means all pleadings, motions, discovery responses, affidavits and related papers produced or exchanged in the course of the Actions, or any settlement negotiations related to the Actions, and all transcripts of testimony given in depositions, in hearings, or at trial.

1.11    "Termination" means the dismissal of both the Publishers' Action and the Author's Guild's Action (whether through settlement or otherwise), or the entry of final judgment and expiration of all periods to appeal or seek judicial review of such judgment or dismissal.

2.    All *Confidential Information* produced in the Actions shall be used by the Receiving Party solely in connection with the prosecution and defense of the Actions. The

3

Receiving Party shall copy *Confidential Information* only to the extent reasonably necessary to prosecute or defend Actions. The Receiving party shall not, directly or indirectly, in whole or in part, reveal, disclose, or make available for inspection or copying any *Confidential Information* to any individual or entity, except:

    2.1    the Court and its personnel and any Jury impaneled in the Actions;

    2.2    court reporters, videographers, and outside translators while present at a deposition, hearing, or trial in the Actions;

    2.3    the Parties' outside attorneys retained in connection with the Actions, and the support staffs of those attorneys (including law clerks, legal assistants, secretaries, clerks, and copying service personnel who provide copying and related litigation services at the request of the outside attorneys) who have a need to know the *Confidential Information* in connection with maintaining or defending the Actions;

    2.4    the Parties' in-house attorneys (if any) or the support staffs of those attorneys (including legal assistants, secretaries and clerks, and copying service personnel who provide copying and related litigation services at the request of the attorneys) who have a need to know the *Confidential Information* in connection with maintaining or defending the Actions;

    2.5    employees of the Parties or other individuals representing the Parties who have a need to know the *Confidential Information* in connection with maintaining or defending the Actions and who have executed this Agreement or an agreement in the form of that attached hereto as Exhibit A before receiving *Confidential Information*;

    2.6    subject to Section 11 of this *Protective Order*, any testifying or consulting expert who (a) has executed an agreement in the form of that attached hereto as Exhibit A

before receiving *Confidential Information*, and (b) is not employed or retained by a competitor of the Producing Party on a book scanning project during the pendency of the Actions and has no present intention to be employed or retained by a competitor of the Producing Party on a book scanning project for a period of one year following termination of the Actions. Provided, however, that any testifying or consulting expert may use *Confidential Information* solely for purposes of the Actions and for no other purposes;

2.7     deposition witnesses and other testifying witnesses who either (a) were the author or a recipient of a document containing *Confidential Information* or (b) have executed an agreement in the form of that attached hereto as Exhibit A before receiving *Confidential Information*; and

2.8     any other person authorized by written agreement of the Producing Party and the Receiving Party or by order of the Court to receive *Confidential Information*.

3.     All *Highly Confidential Information* produced in the Actions shall be used by the Receiving Party solely in connection with the prosecution and defense of the Actions. The Receiving Party shall copy *Highly Confidential Information* only to the extent reasonably necessary to prosecute or defend Actions. The Receiving Party shall not, directly or indirectly, in whole or in part, reveal, disclose, or make available for inspection or copying any *Highly Confidential Information* to any individual or entity, except:

3.1     the Court and its personnel and any Jury impaneled in the Actions;

3.2     court reporters, videographers, and outside translators while present at a deposition, hearing, or trial in the Actions;

5

3.3     the Parties' outside attorneys retained in connection with the Actions, and the support staffs of those attorneys (including law clerks, legal assistants, secretaries, and clerks, as well as copying service personnel who provide copying and related litigation services at the request of the outside attorneys and who have executed an agreement in the form of that attached hereto as Exhibit A) who have a need to know the *Highly Confidential Information* as a result of assisting in the litigation of the Actions;

3.4     the Parties' in-house attorneys (if any) or the support staffs of those attorneys (including legal assistants, secretaries and clerks, and copying service personnel who provide copying and related litigation services at the request of the attorneys and who have executed an agreement in the form of that attached hereto as Exhibit A) who have a need to know the *Highly Confidential Information* in connection with maintaining or defending the Actions.  Provided, however, that no Author Plaintiffs' in-house attorney or support staff member of such attorney may receive *Highly Confidential Information* produced by the Publisher Plaintiffs without the Author Plaintiffs first obtaining prior approval either from the Publisher Plaintiffs or the Court, pursuant to the procedures set forth in paragraph 22 below;

3.5     subject to Section 11 of this *Protective Order,* any testifying or consulting expert who (a) has executed an agreement in the form of that attached hereto as Exhibit A before receiving *Highly Confidential Information,* and (b) is not employed or retained by a competitor of the Producing Party on a book scanning project during the pendency of the Actions and has no present intention to be employed or retained by a competitor of the Producing Party on a book scanning project for a period of one year following termination of the Actions.  Provided, however, that any testifying or consulting expert

6

may use *Highly Confidential Information* solely for purposes of the Actions and for no other purposes;

3.6     *deposition* witnesses and other testifying witnesses (a) who were the author or a recipient of a document containing *Highly Confidential Information*; or (b) who have executed an agreement in the form of that attached hereto as Exhibit A before receiving *Highly Confidential Information*, if the Receiving Party first obtains prior approval either from the Producing Party or the Court pursuant to the procedures set forth in Paragraph 22 below;

3.7     any other person authorized by written agreement of the parties or by order of the Court to receive *Highly Confidential Information*.

4.     No person, other than the individuals described in Sections 2 or 3, shall be permitted to attend any deposition during disclosure of *Confidential Information*, unless the parties agree or the Court orders otherwise.

5.     No person, other than the individuals described in Section 3, shall be permitted to attend any deposition, hearing or trial during disclosure of *Highly Confidential Information*, unless the parties agree or the Court orders otherwise.

6.     A Producing Party shall designate *Confidential Information* or *Highly Confidential Information* contained in a document by conspicuously marking the document as "Confidential Information" or "Highly Confidential Information," as the case may be, on the first page of the document and thereafter on each interior page containing or disclosing *Confidential Information* or *Highly Confidential Information*.

7.     A Producing Party shall designate *Confidential Information* or *Highly Confidential Information* contained or embodied in a thing by conspicuously marking, when

7

practicable, the thing as "Confidential Information" or "Highly Confidential Information," as the case may be, or otherwise by identifying the *Confidential Information* or *Highly Confidential Information* in a separate writing such as a memo or letter.

8.    A Producing Party may designate *Confidential Information* or *Highly Confidential Information* disclosed during a deposition or hearing by:

8.1    indicating on the record at the deposition or hearing the specific part of the testimony (including the entire testimony given or to be given by a witness) and all or any part of any document or thing marked for identification that is *Confidential Information* or *Highly Confidential Information* and subject to the provisions of this *Protective Order*; or

8.2    notifying all Receiving Parties within the earlier of (a) twenty-one (21) days from the time the Producing Party receives a deposition or hearing transcript, or (b) thirty (30) days prior to the trial date, that the transcript contains *Confidential Information* or *Highly Confidential Information* and specifically identifying those portions (including a witness's entire testimony) that contain *Confidential Information* or *Highly Confidential Information*.

8.3    In the event of a designation pursuant to Section 8.2, nothing shall prevent a Receiving Party from using the testimony of an expert or consultant who relied in his or her analysis on *Confidential Information* or *Highly Confidential Information* provided that the expert viewed the *Confidential Information* or *Highly Confidential Information* prior to the Producing Party's designation pursuant to 8.2.

9.    A Receiving Party is not obligated to challenge the Producing Party's designation of *Confidential Information* or *Highly Confidential Information* at the time such a designation is

8

made, and any failure to do so will not waive that party's right to request, at any time, that the Court determine whether the information satisfies the definitions of *Confidential Information* or *Highly Confidential Information* set forth at Sections 1.8 and 1.9, respectively, or whether the information satisfies the applicable rules with respect to protected confidential information. Should a Receiving Party challenge a Producing Party's designation, the parties agree to attempt to resolve the dispute in good faith. If the dispute cannot be resolved and the Receiving Party seeks relief from the Court, the Producing Party will bear the burden of proving that the designation satisfies both the substantive and procedural requirements set forth in this Protective Order as well as the applicable rules with respect to protected confidential information.

10.     In the event a Producing Party inadvertently fails to designate *Confidential Information* or *Highly Confidential Information* when it is first produced or disclosed. that party may, at any time thereafter, designate the *Confidential Information* or *Highly Confidential Information* by producing the information with the new designation, stamped with the same Bates number as the information it is intended to replace. Upon receipt of the newly designated information, the Receiving Party will destroy all copies of the original. The Receiving Party shall not be in breach of this *Protective Order* for any disclosure made prior to receipt of such notice which would otherwise have been authorized by this Order but for the subsequent designation.

11.     Prior to providing *Confidential Information* or *Highly Confidential Information* of any Producing Party to a testifying expert, the Receiving Party shall notify the Producing Party as to the identity of that testifying expert and shall provide the Producing Party a copy of the testifying expert's *curriculum vitae*, unless the expert has been previously disclosed by the Receiving Party under this Section 11. The Producing Party shall serve the Receiving Party with

9

written objections to the testifying expert within ten (10) business days after receiving the notice. If no written objection is timely served, the Receiving Party may provide *Confidential Information* or *Highly Confidential Information* to the testifying expert according to the terms of this *Protective Order*. If the Producing Party timely serves its objections, the Receiving Party shall not provide *Confidential Information* or *Highly Confidential Information* to the testifying expert until all objections are resolved. The Producing Party and the Receiving Party shall work together in good faith to resolve any timely served objections concerning the testifying expert. If any such dispute cannot be resolved within ten (10) business days after the Producing Party serves its objections, the Producing Party shall file a motion for a protective order to prohibit the Receiving Party from providing *Confidential Information* or *Highly Confidential Information* to the testifying expert. If no motion for a protective order is timely served, the Receiving Party may provide *Confidential Information* or *Highly Confidential Information* to the testifying expert according to the terms of this *Protective Order*.

12.     Any party may move the Court to amend this *Protective Order* on five (5) business days' notice to all parties to the Action and the Producing Party that produced the information in question (or such shorter notice as the Court may require). In any proceedings on such a motion, the prior existence of this *Protective Order* shall not affect the burden of persuasion that would rest upon any proponent of a protective provision. The Court, on its own motion, may amend this *Protective Order.*

13.     Nothing in this *Protective Order* shall bar or otherwise restrict any attorney from rendering legal advice to his or her client with respect to the Actions and referring generally to *Confidential Information* or *Highly Confidential Information* or relying upon the attorney's own examination of *Confidential Information* or *Highly Confidential Information.*

10

14. If any Receiving Party is required by law to disclose some portion of the *Confidential Information* or *Highly Confidential Information* other than as permitted by this *Protective Order*:

14.1 the Receiving Party will inform the Producing Party who originally disclosed such *Confidential Information* or *Highly Confidential Information* of the requirement as soon as practicable after receiving notice of the requirement. The Receiving Party will further inform the Producing Party which *Confidential Information* or *Highly Confidential Information* it is required to disclose.

14.2 The Receiving Party shall inform the requiring entity of the Receiving Party's obligations set forth in this *Protective Order*.

14.3 The Producing Party may seek a Protective Order with confidentiality provisions identical to this *Protective Order*. The Receiving Party shall not oppose the Producing Party's attempts to obtain the Protective Order in any fashion, including assisting any third party in opposing the entry of such Protective Order.

14.3.1 If the Producing Party elects to seek a Protective Order under the above section 14.3, it shall notify the Receiving Party within the earlier of (a) twenty (20) days after the Receiving Party sends its notice or (b) two (2) business days before the deadline for complying with the requirement but after the Receiving Party sends its notice.

14.3.2 If the Producing Party elects not to seek a Protective Order, or if the Receiving Party receives no notice under the above section 14.3.1 within the time established in Section 14.3.1 of this Protective Order, the Receiving Party

11

18973_1

shall have the right to disclose the required *Confidential Information* or *Highly Confidential Information*.

14.3.3     If the Producing Party is unable to obtain a Protective Order satisfactory to the Producing Party after exhausting all applications for writs of mandamus and all interlocutory appeals from the denial of such a Protective Order, the Receiving Party shall have the right to disclose the required *Confidential Information* or *Highly Confidential Information*.

15.     The restrictions of the *Protective Order* shall not apply to, and this Order shall not be construed to prevent, any Receiving Party from making use of or disclosing information that:

15.1     was lawfully in its possession prior to receipt of such information from a Producing Party, as shown by its written records dated prior to the Producing Party's disclosure;

15.2     appears in any published material available to the Producing Party's trade or business, available to the public, or otherwise becomes available within the public domain, other than as a consequence of the Receiving Party's breach of any obligation not to disclose the information; or

15.3     it lawfully obtains subsequent to the Producing Party's disclosure, without obligation of confidence, from a source or sources other than the Producing Party;

regardless of whether the same has been designated as *Confidential Information* or *Highly Confidential Information.*

16.     This *Protective Order* shall not be construed as a waiver by the parties of any objection which might be raised as to the admissibility of any evidence. This *Protective Order*

12

shall be without prejudice to the rights of any person to oppose production of any information on any proper ground.

17. All Litigation Documents filed with the Court and designated by either party as containing *Confidential Information* or *Highly Confidential Information* or referring to any previously designated *Confidential Information* or *Highly Confidential Information* shall be marked as containing "*Confidential Information*" or "*Highly Confidential Information*." The party filing any such Litigation Document shall move the Court to file the document under seal.

18. Except as filed with the Court in accordance with this Order, all documents and things designated as *Confidential Information* or *Highly Confidential Information* shall be maintained at all times in the custody of individuals described in Sections 2 or 3, respectively. Within 60 days after Termination of the Actions, the original and all copies of each document and thing produced to a Receiving Party, or given to any other person pursuant to this *Protective Order*, which contains *Confidential Information* or *Highly Confidential Information* shall be destroyed. Notwithstanding the foregoing: (1) nothing in this Section shall require the destruction of information that resides on server backup tapes and other similar archival records that are generally inaccessible without engaging in affirmative steps to restore such documents as long as such computer archives were made during the ordinary course of business; (2) attorney work product, attorney client communications, and information derived from documents designated by another party or nonparty as *Confidential Information* or *Highly Confidential Information* may be retained by the Receiving Party (if authorized to view them) and counsel for the Receiving Party (if authorized to view them); and (3) counsel for the Receiving Party may retain one copy of any notes, memoranda, or other documents that contain excerpts of *Confidential Information* or *Highly Confidential Information*. Testifying and consulting experts

13

may not retain (a) documents designated by another party or nonparty as *Confidential Information* or *Highly Confidential Information*, (b) attorney work product, attorney client communications, and information derived from documents designated by another party or nonparty as *Confidential Information* or *Highly Confidential Information*, or (c) notes, memoranda, or other documents that contain excerpts of *Confidential Information* or *Highly Confidential Information* designated by another party or nonparty, including without limitation copies of their expert reports, if any. Upon completion of destruction, counsel for the Receiving Party shall promptly certify the destruction in writing to the Producing Party.

19.     If a Producing Party through inadvertence produces or provides documents or information that it believes is subject to a claim of attorney-client privilege or the work product doctrine, the Producing Party shall give written notice to the Receiving Party that the documents or information is subject to such a claim and request that the Documents or information be returned. The Receiving Party immediately shall return the documents or information to the Producing Party. Immediate return of the documents or information by the Receiving Party shall not constitute an admission, waiver, or concession, or otherwise permit any inference, that the returned documents or information are, in fact, properly subject to a claim of attorney-client privilege or the work product doctrine. The Receiving Party may move the Court for an order that such returned documents or information have been improperly designated as subject to the attorney-client privilege or work product doctrine and should be produced for reasons other than a waiver caused by the inadvertent production. With respect to any document, the procedures set forth in this paragraph shall apply only to the first instance in which that document is inadvertently produced.

14

20. Insofar as its provisions restrict the use or disclosure of any *Confidential Information* or *Highly Confidential Information*, this **Protective Order** shall remain binding after Termination of the Actions, and the Court shall retain jurisdiction of all persons and parties bound by this **Protective Order.**

21. Nothing in this Order shall affect the admissibility into evidence of *Confidential Information* or *Highly Confidential Information.*

22. Before a Receiving Party uses *Highly Confidential Information* in a manner not authorized by Paragraph 3 above, the Receiving Party shall provide written notice to the Producing Party, specifically identifying the *Highly Confidential Information* the Receiving Party intends to use. The Producing Party will have five (5) business days from the day it receives such notice to object in writing to the Receiving Party's intended use and to include in such written objection the basis for such objection. If no objection is raised, the Receiving Party may use the documents identified in its written notice. Five (5) business days after receiving written objections to the Receiving Party's intended use of *Highly Confidential Information*, the Receiving Party may move this Court for permission to use the *Highly Confidential Information* in the Publishers' Action or the Author's Guild's Action, as the case may be. The Court will permit a telephonic hearing at its earliest convenience in order to resolve such a dispute as quickly and efficiently as possible. Such a telephonic hearing may be requested without any briefing, however letter briefing is permitted if one, both or all parties to the dispute wish to file a letter brief. If so, all briefs must be submitted within five (5) business days of written notice by the initiating party of its request for a telephonic hearing.

15

SO ORDERED this 22 day of _____, 2006.


_____
UNITED STATES DISTRICT JUDGE

16

# Schedule C

## **SCHEDULE C**

Association of American Publishers
The Authors Guild
Yahoo!, Inc.
Amazon.com, Inc.
Microsoft Corporation
McGraw-Hill Companies, Inc.
Pearson Education, Inc.
Penguin Group (USA), Inc.
Simon & Schuster, Inc.
Wiley & Sons, Inc.

**Issued by the**
**United States District Court**

Southern District of New York

The Authors Guild *et al*, *Plaintiffs*,

v.

**SUBPOENA IN A CIVIL CASE**

Google Inc., *Defendant*.

CASE NUMBER:     Civil Action No. 05-CV-8136-JES

The McGraw-Hill Companies, Inc. *et al. Plaintiffs,*

v.

Google Inc., *Defendant*.

CASE NUMBER:     Civil Action No. 05-CV-8881-JES

*Consolidated for Discovery Purposes*

To:
HarperCollins Publishers, Inc.
c/o The Corporation Service Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**Pending in the United States District Court for the**
**Southern District of New York**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel, 51 Madison Avenue, 22nd Floor, New York, New York | October 20, 2006  10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendant | 09/29/2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joseph M. Beck, Esq.; Kilpatrick Stockton LLP; 1100 Peachtree Street, Suite 2800; Atlanta, Georgia 30309-4530

## DEFINITIONS

The following definitions and instructions are applicable to and incorporated by reference in the Requests for Production of Documents and Tangible Things in Schedule A.

1.     "The Author Plaintiffs" shall mean Associational Plaintiff, The Authors Guild, its subsidiaries, divisions, subdivisions, departments, predecessors, successors, joint ventures, present and former officers, directors, partners, principals, employees, representatives, professional staff members, agents, attorneys, and all other persons acting or purporting to act on its behalf and Individual Representative Plaintiffs Herbert Mitgang, Betty Miles and Daniel Hoffman, Paul Dickson and Joseph Goulden in the action pending in the United States District Court for the Southern District of New York styled as *The Authors Guild, et al. v. Google, Inc.*, Civil Action No. 05-CV-8136-JES.

2.     "Publisher Plaintiffs" shall mean the plaintiffs in the action pending in the United States District Court for the Southern District of New York styled as *The McGraw-Hill Companies, Inc. v. Google, Inc.*, Civil Action No. 05-CV-8881-JES, and specifically includes the McGraw-Hill Companies, Inc., Pearson Education, Inc., Penguin Group (USA), Inc., Simon & Schuster, Inc., and Wiley & Sons, Inc., and each of their subsidiaries, divisions, subdivisions, departments, predecessors, successors, joint ventures, present and former officers, directors, partners, principals, employees, representatives, professional staff members, agents, attorneys, and all other persons acting or purporting to act on each of their behalf.

3.      "Google" shall mean Defendant Google Inc., its subsidiaries, divisions, subdivisions, departments, predecessors, successors, joint ventures, present and former officers, directors, partners, principals, employees, representatives, professional staff members, agents, attorneys, and all other persons acting or purporting to act on its behalf.

4.      "Google Book Search Library Project" shall mean the Google program in which books are scanned, indexed, and snippets made available to users through the Internet without the express permission of a copyright holder of such a book regardless of the name used to describe the program, including the names "Google Print for Libraries" or "Google Print Library Project."

5.      "HarperCollins Publishers" shall mean HarperCollins Publishers, Inc., its subsidiaries, divisions, subdivisions, departments, predecessors, successors, joint ventures, present and former officers, directors, partners, principals, employees, representatives, professional staff members, agents, attorneys, and all other persons acting or purporting to act on its behalf.

6.      "HarperCollins Book Project" shall mean any existing or contemplated project or projects involving HarperCollins Publishers in which an index of books or in which the contents of books, in whole or in part, are available to the public through the Internet or other electronic or digital media. This Request excludes the Google Book Search Partner Program, but includes projects undertaken by Microsoft Corporation, Yahoo! Inc., the Open Content Alliance, or any other Person). Also, this Request

2

excludes any project whose sole purpose is to sell "e-books" or for the sale of an "electronic or digital copy" of the whole book.

7. "Open Content Alliance" shall mean the non-profit entity described on the website http://www.openalliancecontent.org.

8. "Communication" shall be defined as the term is defined in Southern District of New York Local Civil Rule 26.3, and further shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), and includes oral and written communications and meeting minutes or notes such as discussions, speeches, voice mail, letters, memoranda, notes, and e-mail.

9. The term "Document" shall be defined as the term is defined in Southern District of New York Local Civil Rule 26.3 and shall be used as broadly as permitted under the Federal Rules of Civil Procedure.   A draft or non-identical copy is a separate document within the meaning of this term.

10. The terms "concern" and "concerning" shall be defined as the terms are defined in Southern District of New York Local Civil Rule 26.3 and shall encompass relating to, referring to, describing, evidencing, or constituting.

11. The term "Person" shall be defined as the term is defined in Southern District of New York Local Civil Rule 26.3 and means any natural person or any business, legal, or governmental entity or association.

12.   "Meeting" shall mean contemporaneous presence, whether in person or by telephone, video conference, or other similar means, of any natural persons, whether or not such presence was by chance or prearranged and whether or not the meeting was formal, informal or occurred in connection with some other activity.

13.   "Policy," "policies," or "procedures," shall mean any rule, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You in conducting Your business, or which was required by You to be recognized or followed by any or all persons with whom you conducted business.

14.   The term "electronic or digital rights" shall mean any right or purported right, whether statutory, contractual, or otherwise, to reproduce, prepare derivative works based upon, distribute, publish, perform, display, archive, store, or index or to license or sub-license any other Person to reproduce, prepare derivative works based upon, distribute, publish, perform, display, archive, store, or index any copyrighted work, or any portion of any copyrighted work, in any electronic or digital format or media, and includes, for example, such formats and media as e-books, computer files (such as XML, HTML, DOC, WPD, PDF, TIFF, JPEG, GIF, RTF, and TXT files), CDs, DVDs, Flash ROM, and the Internet.

15.   The terms "electronic or digital copy" or "electronic or digital copies" shall mean a copy (or copies) of all or any portion of any work in any electronic or digital format or media, and includes, for example, such formats and media as e-books, computer

4

files (such as XML, HTML, DOC, WPD, PDF, TIFF, JPEG, GIF, RTF, and TXT files), CDs, DVDs, Flash ROM, and the Internet.

16.     The term "Lawsuits" shall mean the two lawsuits pending against Google that are styled as *McGraw-Hill Companies, Inc. et al. v. Google, Inc.,* Civil Action No.: 05-CV-8881-JES and *The Author's Guild et al. v. Google, Inc.*, Civil Action No.: 05-CV-8136-JES.

17.     The term "You" or "Your" shall mean HarperCollins Publishers as defined above.

## INSTRUCTIONS

1.      You are required to produce documents responsive to the Requests in Schedule A by the return date on the Subpoena.

2.      If you have no documents responsive to a particular Request, your response should specifically so state.

3.      Google specifies the following manner of production for documents responsive to the Requests in Schedule A: (a) the documents and tangible things should be produced as they are kept in the regular course of business or, in the alternative, organized and labeled so as to correspond to the Requests in Schedule A; (b) the documents shall be serially numbered; and (c) the documents shall be copied, inspected, and photographed by Google to the extent Google desires.

4.      If the original of a document is within your possession, custody or control, produce it; if not, produce such copy of it as is in your possession, custody or control.  Any copy

5

of a document on which any notation, addition, alteration or change has been made is to be treated as an additional original document.

5.      All documents responsive to the Requests in Schedule A that you maintain in the normal course of business in an electronic format shall be produced in their native format along with the software that is necessary to interpret such files if such software is not readily available. You should produce such documents with the pertinent metadata concerning the document, which shall include the date(s) the document was last accessed, created, modified, or distributed, and the author(s) and recipient(s) of the document.

6.      Except as otherwise expressly directed herein, each paragraph and subparagraph of the Requests in Schedule A should be construed independently and not by reference to any other paragraph or subparagraph herein for purposes of limiting the scope of the Request in Schedule A being answered.

7.      If any of the documents requested have been destroyed, identify each such document, state the date upon which the document was destroyed, and state the reason it was destroyed.

8.      If you assert a claim of privilege or work product protection in objecting to any Request in Schedule A, identify with respect to each communication or document the nature and basis of the privilege claimed, and provide as much of the following information as is not encompassed by the privilege: its type; its general subject matter and purpose; its date; the names of persons making or receiving the communication or

document, or a copy thereof or, if the communication was oral, of those present when it was made; their relationship to the author or speaker; and any other information needed to determine the applicability of the privilege or protection.

9.    A protective order, which is attached hereto, as Schedule B, has been entered in the Lawsuits. To the extent You deem documents responsive to the Subpoena to be "confidential," You are instructed to execute the Protective Order and to produce documents in accordance with its provisions.

10.   If any Request in Schedule A is unclear, please contact the undersigned counsel and, if possible, the Request will be clarified in a reply letter. Any such reply letter may be treated as a modification of the Request.

11.   If you contend that any Request in Schedule A is objectionable in whole or in part, state with particularity each such objection, the basis for it, and the categories of information and documents to which the objection applies, and respond to the Request insofar as it is not deemed objectionable.

# Schedule A

## SCHEDULE A

### REQUESTS FOR PRODUCTION OF DOCUMENTS

1.  Documents sufficient to describe the HarperCollins Publishers Book Project, including the index and search features of the HarperCollins Book Project.

2.  A list of all books You have included or for which You have plans to include in the HarperCollins Book Project before December 31, 2009.

3.  For each book identified in response to Request No. 2, documents sufficient to show that You have the legal right to include each such book in the HarperCollins Book Project, including each and every pertinent license.

4.  Documents sufficient to show the amount of a book that has been provided or that will be provided to an Internet user of the HarperCollins Book Project, including documents sufficient to explain the reasons for selecting that amount of the book.

5.  Documents sufficient to show the security, access controls, user restrictions or digital rights management controls used or that considered in connection with the HarperCollins Book Project to prevent a piracy or the unauthorized copying or unauthorized display of any portion of a copyright book.

6.  Documents created by HarperCollins Publishers, or that HarperCollins Publishers has received, on or after January 1, 2003 sufficient to show (a) financial projections and performance  for the HarperCollins Book Project, including revenues, costs, and contributions to HarperCollins Publishers's earnings or losses of the HarperCollins Book Project, (b) data and analyses concerning the effect the HarperCollins Book Project has had or is expected to have on book sales, (c) Your belief, if any, of benefits to authors, publishers, copyright owners and the public from the

HarperCollins Book Project, and (d) Your belief, if any, of harms or possible harms to authors, publishers, copyright owners and the public from the Yahoo Book Project.

7.    A list showing each public library, research library, university library, or other library with whom you have entered into contractual discussions to have copies of their library contents become part of the HarperCollins Book Project.

8.    With respect to each library identified in response to Request No. 7, all contracts executed between HarperCollins Publishers and each library.

9.    All agreements or contracts with Microsoft Corporation, Yahoo! Inc., the Open Content Alliance, and any other Person related to the HarperCollins Book Project.

10.    All documents (including without limitation communications between HarperCollins Publishers and each of the entities, including their legal counsel, identified in Schedule C) concerning the Lawsuits or allegations against Google of copyright infringement in connection with the Google Book Search Library Project.

11.    All public statements You have made regarding the HarperCollins Book Project.

# Schedule B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE MCGRAW-HILL COMPANIES, INC.,          :
PEARSON EDUCATION, INC., PENGUIN          :
GROUP (USA) INC., SIMON & SCHUSTER,       :    **05 Civ. 8881 (JES)**
INC., and JOHN WILEY & SONS, INC.,        :
                                          :    **ECF Case**
                         Plaintiffs,      :
                                          :    **Protective Order**
             v.                           :
                                          :
GOOGLE INC.,                              :
                                          :
                         Defendant.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


THE AUTHORS GUILD, Associational Plaintiff,   :
and HERBERT MITGANG, BETTY MILES AND :
DANIEL HOFFMAN, Individually and on Behalf :   **05 Civ. 8136 (JES)**
of All Others Similarly Situated,             :
                                          :    **ECF Case**
                         Plaintiffs,      :
                                          :    **Protective Order**
             v.                           :
                                          :
GOOGLE INC.,                              :
                                          :
                         Defendant.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PROTECTIVE ORDER

The Court, having considered the parties' request for a ***Protective Order***, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, hereby ORDERS AS FOLLOWS:

1.    The terms defined in this Section 1 and parenthetically elsewhere shall, throughout this ***Protective Order***, have the meanings provided. Defined terms may be used in the singular or plural.

18973_1

1.1     The "Publishers' Action" means the litigation captioned The McGraw-Hill Companies, Inc. v. Google Inc., 05 Civ. 8881 (JES) (S.D.N.Y. Complaint filed Oct. 19, 2005).

1.2     "Publishers" means the plaintiffs in the Publishers' Actions.

1.3     The "Authors Guild Action" means the litigation captioned The Authors Guild v. Google Inc., 05 Civ 8136 (S.D.N.Y. Complaint filed September 20, 2005).

1.4     The "Actions" means the Authors Guild Action and the Publishers' Action.

1.5     "Authors" means the plaintiffs in the Authors Guild Action.

1.6     "Producing Party" means a party to the Actions, or persons other than a party, including non-party witnesses, that produce *Confidential Information* or *Highly Confidential Information* to the Receiving Party.

1.7     "Receiving Party" means the party receiving or requesting production of *Confidential Information* or *Highly Confidential Information* from the Producing Party.

1.8     "*Confidential Information*" means information (1) which the Producing Party believes in good faith to constitute confidential information of the Producing Party, or confidential information of some third party which the Producing Party has in its possession, whether or not such information is recorded or embodied in any physical medium (*i.e.*, a document, information contained in a document, equipment, information stored or displayed in electronic, magnetic or other mediums, information revealed during testimony, information revealed in interrogatory answers, or information revealed in any other way); and (2) which is designated as *Confidential Information* by the Producing Party in accordance with Sections six through eight of this *Protective Order*.

2

1.9     "*Highly Confidential Information*" means information (1) which the Producing Party believes in good faith to constitute confidential information of the Producing Party or confidential information of some third party which the Producing Party has in its possession; (2) that is so competitively sensitive that producing the information justifies imposing the requirement on the opposite party that only its counsel may review such information and that its testifying and consulting experts are subject to objection as specified herein, whether or not any such information is recorded or embodied in any physical medium (*i.e.*, whether it is a document, information contained in a document, equipment, information stored or displayed in electronic, magnetic or other medium, information revealed during the taking of testimony, information revealed in interrogatory answers, or information revealed in any other way); and (3) which is designated as *Highly Confidential Information* by the Producing Party in accordance with Sections six through eight of this *Protective Order*.

1.10     "Litigation Documents" means all pleadings, motions, discovery responses, affidavits and related papers produced or exchanged in the course of the Actions, or any settlement negotiations related to the Actions, and all transcripts of testimony given in depositions, in hearings, or at trial.

1.11     "Termination" means the dismissal of both the Publishers' Action and the Author's Guild's Action (whether through settlement or otherwise), or the entry of final judgment and expiration of all periods to appeal or seek judicial review of such judgment or dismissal.

2.     All *Confidential Information* produced in the Actions shall be used by the Receiving Party solely in connection with the prosecution and defense of the Actions. The

3

Receiving Party shall copy *Confidential Information* only to the extent reasonably necessary to prosecute or defend Actions. The Receiving party shall not, directly or indirectly, in whole or in part, reveal, disclose, or make available for inspection or copying any *Confidential Information* to any individual or entity, except:

2.1     the Court and its personnel and any Jury impaneled in the Actions;

2.2     court reporters, videographers, and outside translators while present at a deposition, hearing, or trial in the Actions;

2.3     the Parties' outside attorneys retained in connection with the Actions, and the support staffs of those attorneys (including law clerks, legal assistants, secretaries, clerks, and copying service personnel who provide copying and related litigation services at the request of the outside attorneys) who have a need to know the *Confidential Information* in connection with maintaining or defending the Actions;

2.4     the Parties' in-house attorneys (if any) or the support staffs of those attorneys (including legal assistants, secretaries and clerks, and copying service personnel who provide copying and related litigation services at the request of the attorneys) who have a need to know the *Confidential Information* in connection with maintaining or defending the Actions;

2.5     employees of the Parties or other individuals representing the Parties who have a need to know the *Confidential Information* in connection with maintaining or defending the Actions and who have executed this Agreement or an agreement in the form of that attached hereto as Exhibit A before receiving *Confidential Information*;

2.6     subject to Section 11 of this *Protective Order*, any testifying or consulting expert who (a) has executed an agreement in the form of that attached hereto as Exhibit A

4

before receiving *Confidential Information*, and (b) is not employed or retained by a competitor of the Producing Party on a book scanning project during the pendency of the Actions and has no present intention to be employed or retained by a competitor of the Producing Party on a book scanning project for a period of one year following termination of the Actions. Provided, however, that any testifying or consulting expert may use *Confidential Information* solely for purposes of the Actions and for no other purposes;

2.7     deposition witnesses and other testifying witnesses who either (a) were the author or a recipient of a document containing *Confidential Information* or (b) have executed an agreement in the form of that attached hereto as Exhibit A before receiving *Confidential Information*; and

2.8     any other person authorized by written agreement of the Producing Party and the Receiving Party or by order of the Court to receive *Confidential Information*.

3.      All *Highly Confidential Information* produced in the Actions shall be used by the Receiving Party solely in connection with the prosecution and defense of the Actions. The Receiving Party shall copy *Highly Confidential Information* only to the extent reasonably necessary to prosecute or defend Actions. The Receiving Party shall not, directly or indirectly, in whole or in part, reveal, disclose, or make available for inspection or copying any *Highly Confidential Information* to any individual or entity, except:

3.1     the Court and its personnel and any Jury inpaneled in the Actions;

3.2     court reporters, videographers, and outside translators while present at a deposition, hearing, or trial in the Actions;

5

3.3    the Parties' outside attorneys retained in connection with the Actions, and
the support staffs of those attorneys (including law clerks, legal assistants, secretaries,
and clerks, as well as copying service personnel who provide copying and related
litigation services at the request of the outside attorneys and who have executed an
agreement in the form of that attached hereto as Exhibit A) who have a need to know the
*Highly Confidential Information* as a result of assisting in the litigation of the Actions;

3.4    the Parties' in-house attorneys (if any) or the support staffs of those
attorneys (including legal assistants, secretaries and clerks, and copying service personnel
who provide copying and related litigation services at the request of the attorneys and
who have executed an agreement in the form of that attached hereto as Exhibit A) who
have a need to know the *Highly Confidential Information* in connection with maintaining
or defending the Actions. Provided, however, that no Author Plaintiffs' in-house
attorney or support staff member of such attorney may receive *Highly Confidential
Information* produced by the Publisher Plaintiffs without the Author Plaintiffs first
obtaining prior approval either from the Publisher Plaintiffs or the Court, pursuant to the
procedures set forth in paragraph 22 below;

3.5    subject to Section 11 of this **Protective Order**, any testifying or consulting
expert who (a) has executed an agreement in the form of that attached hereto as Exhibit A
before receiving *Highly Confidential Information*, and (b) is not employed or retained by
a competitor of the Producing Party on a book scanning project during the pendency of
the Actions and has no present intention to be employed or retained by a competitor of
the Producing Party on a book scanning project for a period of one year following
termination of the Actions. Provided, however, that any testifying or consulting expert

6

may use *Highly Confidential Information* solely for purposes of the Actions and for no other purposes;

3.6 *deposition* witnesses and other testifying witnesses (a) who were the author or a recipient of a document containing *Highly Confidential Information*; or (b) who have executed an agreement in the form of that attached hereto as Exhibit A before receiving *Highly Confidential Information*, if the Receiving Party first obtains prior approval either from the Producing Party or the Court pursuant to the procedures set forth in Paragraph 22 below;

3.7 any other person authorized by written agreement of the parties or by order of the Court to receive *Highly Confidential Information*.

4. No person, other than the individuals described in Sections 2 or 3, shall be permitted to attend any deposition during disclosure of *Confidential Information*, unless the parties agree or the Court orders otherwise.

5. No person, other than the individuals described in Section 3, shall be permitted to attend any deposition, hearing or trial during disclosure of *Highly Confidential Information*, unless the parties agree or the Court orders otherwise.

6. A Producing Party shall designate *Confidential Information* or *Highly Confidential Information* contained in a document by conspicuously marking the document as "Confidential Information" or "Highly Confidential Information," as the case may be, on the first page of the document and thereafter on each interior page containing or disclosing *Confidential Information* or *Highly Confidential Information*.

7. A Producing Party shall designate *Confidential Information* or *Highly Confidential Information* contained or embodied in a thing by conspicuously marking, when

7

practicable, the thing as "Confidential Information" or "Highly Confidential Information," as the case may be, or otherwise by identifying the *Confidential Information* or *Highly Confidential Information* in a separate writing such as a memo or letter.

8.      A Producing Party may designate *Confidential Information* or *Highly Confidential Information* disclosed during a deposition or hearing by:

    8.1      indicating on the record at the deposition or hearing the specific part of the testimony (including the entire testimony given or to be given by a witness) and all or any part of any document or thing marked for identification that is *Confidential Information* or *Highly Confidential Information* and subject to the provisions of this *Protective Order*; or

    8.2      notifying all Receiving Parties within the earlier of (a) twenty-one (21) days from the time the Producing Party receives a deposition or hearing transcript, or (b) thirty (30) days prior to the trial date, that the transcript contains *Confidential Information* or *Highly Confidential Information* and specifically identifying those portions (including a witness's entire testimony) that contain *Confidential Information* or *Highly Confidential Information*.

    8.3      In the event of a designation pursuant to Section 8.2, nothing shall prevent a Receiving Party from using the testimony of an expert or consultant who relied in his or her analysis on *Confidential Information* or *Highly Confidential Information* provided that the expert viewed the *Confidential Information* or *Highly Confidential Information* prior to the Producing Party's designation pursuant to 8.2.

9.      A Receiving Party is not obligated to challenge the Producing Party's designation of *Confidential Information* or *Highly Confidential Information* at the time such a designation is

8

made, and any failure to do so will not waive that party's right to request, at any time, that the Court determine whether the information satisfies the definitions of *Confidential Information* or *Highly Confidential Information* set forth at Sections 1.8 and 1.9, respectively, or whether the information satisfies the applicable rules with respect to protected confidential information. Should a Receiving Party challenge a Producing Party's designation, the parties agree to attempt to resolve the dispute in good faith. If the dispute cannot be resolved and the Receiving Party seeks relief from the Court, the Producing Party will bear the burden of proving that the designation satisfies both the substantive and procedural requirements set forth in this Protective Order as well as the applicable rules with respect to protected confidential information.

10.     In the event a Producing Party inadvertently fails to designate *Confidential Information* or *Highly Confidential Information* when it is first produced or disclosed, that party may, at any time thereafter, designate the *Confidential Information* or *Highly Confidential Information* by producing the information with the new designation, stamped with the same Bates number as the information it is intended to replace. Upon receipt of the newly designated information, the Receiving Party will destroy all copies of the original. The Receiving Party shall not be in breach of this *Protective Order* for any disclosure made prior to receipt of such notice which would otherwise have been authorized by this Order but for the subsequent designation.

11.     Prior to providing *Confidential Information* or *Highly Confidential Information* of any Producing Party to a testifying expert, the Receiving Party shall notify the Producing Party as to the identity of that testifying expert and shall provide the Producing Party a copy of the testifying expert's *curriculum vitae*, unless the expert has been previously disclosed by the Receiving Party under this Section 11. The Producing Party shall serve the Receiving Party with

9

written objections to the testifying expert within ten (10) business days after receiving the notice. If no written objection is timely served, the Receiving Party may provide *Confidential Information* or *Highly Confidential Information* to the testifying expert according to the terms of this *Protective Order*. If the Producing Party timely serves its objections, the Receiving Party shall not provide *Confidential Information* or *Highly Confidential Information* to the testifying expert until all objections are resolved. The Producing Party and the Receiving Party shall work together in good faith to resolve any timely served objections concerning the testifying expert. If any such dispute cannot be resolved within ten (10) business days after the Producing Party serves its objections, the Producing Party shall file a motion for a protective order to prohibit the Receiving Party from providing *Confidential Information* or *Highly Confidential Information* to the testifying expert. If no motion for a protective order is timely served, the Receiving Party may provide *Confidential Information* or *Highly Confidential Information* to the testifying expert according to the terms of this *Protective Order*.

12. Any party may move the Court to amend this *Protective Order* on five (5) business days' notice to all parties to the Action and the Producing Party that produced the information in question (or such shorter notice as the Court may require). In any proceedings on such a motion, the prior existence of this *Protective Order* shall not affect the burden of persuasion that would rest upon any proponent of a protective provision. The Court, on its own motion, may amend this *Protective Order.*

13. Nothing in this *Protective Order* shall bar or otherwise restrict any attorney from rendering legal advice to his or her client with respect to the Actions and referring generally to *Confidential Information* or *Highly Confidential Information* or relying upon the attorney's own examination of *Confidential Information* or *Highly Confidential Information.*

14.     If any Receiving Party is required by law to disclose some portion of the
*Confidential Information* or *Highly Confidential Information* other than as permitted by this
*Protective Order*:

14.1    the Receiving Party will inform the Producing Party who originally
disclosed such *Confidential Information* or *Highly Confidential Information* of the
requirement as soon as practicable after receiving notice of the requirement. The
Receiving Party will further inform the Producing Party which *Confidential Information*
or *Highly Confidential Information* it is required to disclose.

14.2    The Receiving Party shall inform the requiring entity of the Receiving
Party's obligations set forth in this *Protective Order*.

14.3    The Producing Party may seek a Protective Order with confidentiality
provisions identical to this *Protective Order*. The Receiving Party shall not oppose the
Producing Party's attempts to obtain the Protective Order in any fashion. including
assisting any third party in opposing the entry of such Protective Order.

14.3.1    If the Producing Party elects to seek a Protective Order under
the above section 14.3, it shall notify the Receiving Party within the earlier of (a)
twenty (20) days after the Receiving Party sends its notice or (b) two (2) business
days before the deadline for complying with the requirement but after the
Receiving Party sends its notice.

14.3.2    If the Producing Party elects not to seek a Protective Order, or
if the Receiving Party receives no notice under the above section 14.3.1 within the
time established in Section 14.3.1 of this Protective Order, the Receiving Party

11

shall have the right to disclose the required *Confidential Information* or *Highly Confidential Information.*

14.3.3    If the Producing Party is unable to obtain a Protective Order satisfactory to the Producing Party after exhausting all applications for writs of mandamus and all interlocutory appeals from the denial of such a Protective Order, the Receiving Party shall have the right to disclose the required *Confidential Information* or *Highly Confidential Information.*

15.    The restrictions of the *Protective Order* shall not apply to, and this Order shall not be construed to prevent, any Receiving Party from making use of or disclosing information that:

15.1    was lawfully in its possession prior to receipt of such information from a Producing Party, as shown by its written records dated prior to the Producing Party's disclosure;

15.2    appears in any published material available to the Producing Party's trade or business, available to the public, or otherwise becomes available within the public domain, other than as a consequence of the Receiving Party's breach of any obligation not to disclose the information; or

15.3    it lawfully obtains subsequent to the Producing Party's disclosure, without obligation of confidence, from a source or sources other than the Producing Party;

regardless of whether the same has been designated as *Confidential Information* or *Highly Confidential Information.*

16.    This *Protective Order* shall not be construed as a waiver by the parties of any objection which might be raised as to the admissibility of any evidence.  This *Protective Order*

12

18973_1

shall be without prejudice to the rights of any person to oppose production of any information on any proper ground.

17.     All Litigation Documents filed with the Court and designated by either party as containing *Confidential Information* or *Highly Confidential Information* or referring to any previously designated *Confidential Information* or *Highly Confidential Information* shall be marked as containing "*Confidential Information*" or "*Highly Confidential Information*." The party filing any such Litigation Document shall move the Court to file the document under seal.

18.     Except as filed with the Court in accordance with this Order, all documents and things designated as *Confidential Information* or *Highly Confidential Information* shall be maintained at all times in the custody of individuals described in Sections 2 or 3, respectively. Within 60 days after Termination of the Actions, the original and all copies of each document and thing produced to a Receiving Party, or given to any other person pursuant to this *Protective Order*, which contains *Confidential Information* or *Highly Confidential Information* shall be destroyed.    Notwithstanding the foregoing: (1) nothing in this Section shall require the destruction of information that resides on server backup tapes and other similar archival records that are generally inaccessible without engaging in affirmative steps to restore such documents as long as such computer archives were made during the ordinary course of business; (2) attorney work product, attorney client communications, and information derived from documents designated by another party or nonparty as *Confidential Information* or *Highly Confidential Information* may be retained by the Receiving Party (if authorized to view them) and counsel for the Receiving Party (if authorized to view them); and (3) counsel for the Receiving Party may retain one copy of any notes, memoranda, or other documents that contain excerpts of *Confidential Information* or *Highly Confidential Information.*   Testifying and consulting experts

13

may not retain (a) documents designated by another party or nonparty as *Confidential Information* or *Highly Confidential Information*, (b) attorney work product, attorney client communications, and information derived from documents designated by another party or nonparty as *Confidential Information* or *Highly Confidential Information*, or (c) notes, memoranda, or other documents that contain excerpts of *Confidential Information* or *Highly Confidential Information* designated by another party or nonparty, including without limitation copies of their expert reports, if any.  Upon completion of destruction, counsel for the Receiving Party shall promptly certify the destruction in writing to the Producing Party.

19.    If a Producing Party through inadvertence produces or provides documents or information that it believes is subject to a claim of attorney-client privilege or the work product doctrine, the Producing Party shall give written notice to the Receiving Party that the documents or information is subject to such a claim and request that the Documents or information be returned.  The Receiving Party immediately shall return the documents or information to the Producing Party.  Immediate return of the documents or information by the Receiving Party shall not constitute an admission, waiver, or concession, or otherwise permit any inference, that the returned documents or information are, in fact, properly subject to a claim of attorney-client privilege or the work product doctrine.  The Receiving Party may move the Court for an order that such returned documents or information have been improperly designated as subject to the attorney-client privilege or work product doctrine and should be produced for reasons other than a waiver caused by the inadvertent production.  With respect to any document, the procedures set forth in this paragraph shall apply only to the first instance in which that document is inadvertently produced.

14

20.     Insofar as its provisions restrict the use or disclosure of any *Confidential Information* or *Highly Confidential Information*, this **Protective Order** shall remain binding after Termination of the Actions, and the Court shall retain jurisdiction of all persons and parties bound by this **Protective Order.**

21.     Nothing in this Order shall affect the admissibility into evidence of *Confidential Information* or *Highly Confidential Information.*

22.     Before a Receiving Party uses *Highly Confidential Information* in a manner not authorized by Paragraph 3 above, the Receiving Party shall provide written notice to the Producing Party, specifically identifying the *Highly Confidential Information* the Receiving Party intends to use. The Producing Party will have five (5) business days from the day it receives such notice to object in writing to the Receiving Party's intended use and to include in such written objection the basis for such objection. If no objection is raised, the Receiving Party may use the documents identified in its written notice. Five (5) business days after receiving written objections to the Receiving Party's intended use of *Highly Confidential Information*, the Receiving Party may move this Court for permission to use the *Highly Confidential Information* in the Publishers' Action or the Author's Guild's Action, as the case may be. The Court will permit a telephonic hearing at its earliest convenience in order to resolve such a dispute as quickly and efficiently as possible. Such a telephonic hearing may be requested without any briefing, however letter briefing is permitted if one, both or all parties to the dispute wish to file a letter brief. If so, all briefs must be submitted within five (5) business days of written notice by the initiating party of its request for a telephonic hearing.

15

SO ORDERED this 22 day of _____, 2006.


_____
UNITED STATES DISTRICT JUDGE

16

# Schedule C

## **SCHEDULE C**

Association of American Publishers
The Authors Guild
Yahoo!, Inc.
Amazon.com, Inc.
Microsoft Corporation
McGraw-Hill Companies, Inc.
Pearson Education, Inc.
Penguin Group (USA), Inc.
Simon & Schuster, Inc.
Wiley & Sons, Inc.