USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-30-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THIS COPY FOR:
Chambers (1)

| | |
|---|---|
| The Authors Guild, Inc., et al, | Case No. 05 CV 8136 (JES) DC |
| Plaintiffs, | |
| v. | OBJECTION TO PROPOSED SETTLEMENT |
| Google Inc., | |
| Defendant. | |

Technology lets us travel to the moon. It cures diseases. It provides energy from atoms. It lets Google scan books. They do it, because now they can.

But this Court needs to tell Google, they *may not*. The settlement should be rejected.

I am an IP attorney.[1] I started in this profession because I studied under the late Prof. Melville B. Nimmer at UCLA, author of *Nimmer on Copyright*. I was fortunate to win a national prize in ASCAP's "Nathan Burkan Competition" for law-student papers on copyright law in 1975. My paper was published in the *ASCAP Copyright Law Symposium*.[2]

I am amazed to see online that Google scanned and published large sections of my paper (which was about *protecting artists' copyrights*). But I do not speak for myself. My comments do not stand or fall upon facts and merits of my own case. I speak for authors in general.

---

[1] My CV is attached as Exh. A.
[2] The competition was named in honor of Nathan Burkan, Esq., because he was a protector of musicians' rights.

Professor Nimmer used to say: "ownership of a physical object [a book] is not ownership of the copyright in it". That is Copyright Law 101.

But Google thought, "we can . . ." Perhaps inspired by Nike, they decided: "Just Do It".

This Court's duty is to tell Google to stop. This Court's duty is to punish Google with the full force of the law, the same as any other offender. Equal Justice Under Law. Because authors should not even be forced to **put pen to paper** to explain why Google's outrageous scheme needs to be stopped.

Google will argue that class representatives and attorneys approve settlement. But these self-appointed "guardians" are worse than no guardians at all. If the class-attorneys cannot obtain injunctive relief against unauthorized use of copyrighted works on an unprecedented scale, they are incompetent and deserve no fee. (But injunctive relief would not create a settlement fund from which they may seek a share).

The author's fundamental right is to control his or her work.[2] The author should not be forced to comply with a proposed settlement's non-statutory formalities to protect the author's rights. The author need only comply with U.S. copyright law. Neither the parties nor the Court have the power to amend U.S. copyright law, creating an alternative regime by an *ad hoc* settlement. At most, the named parties have power to bind their voluntary members.

---

[2] Google's reproduction of page after page *verbatim*, exceeds all bounds of "fair use" by abstracts or summaries. That the *entire* work is not reproduced, is an aggravation not a mitigation since it violates the author's moral right under the Berne Convention to prohibit truncation of the work.

The Court's duty is to enforce the law, reject this settlement and enjoin Google's wilful copyright infringement. Google, as a wilful actor for profit, is punishable for criminal copyright infringement the same as any software-pirating street peddler. (The peddler would also urge that it benefits the public to make copyrighted works inexpensively available).[3]

Google pursued its copying project in calculated disregard of authors' rights. Its business plan was: "So, sue me". To approve the proposed settlement would vindicate Google's street ethics: that the law is whatever you can grab and get away with. Google's added twist -- its update on the Dickensian street pickpocket -- is that if you take very little from very many people, with a technological efficiency unimaginable to Fagan and outsourced at a low cost that he would have envied, you have some real money. Google's case should be referred to the U.S. Attorney for prosecution. Equal Justice demands no less.

Respectfully submitted,

Robert M. Kunstadt (RK-7230)
R. KUNSTADT, P.C.
875 Sixth Avenue, Suite 1800
New York, NY  10001
Telephone: (212) 398-8881
Facsimile: (212) 398-2922
Email: Mail@RKunstadtPC.com

---

[3] R.M. Kunstadt, "Trademarks: *not* just for the rich and famous", 3 *Oxford Journal of Intellectual Property Law & Practice* 451 (2008)(to overcome perception that infringers are "Robin Hood" benefactors of the public, trademark law needs to be applied more evenhandedly so that every trader, large and small, would see it in their interest to support trademark enforcement).

## CERTIFICATE OF SERVICE

I hereby certify that I have this 27th day of March 2009, served the foregoing by email upon:

**Counsel for the Author Sub-Class:**
Michael J. Boni, Esq.
Joanne Zack, Esq.
Joshua Snyder, Esq.
Boni & Zack LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004
UNITED STATES OF AMERICA
bookclaims@bonizack.com

**Counsel for the Publisher Sub-Class:**
Jeffrey P. Cunard, Esq.
Bruce P. Keller, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
UNITED STATES OF AMERICA
bookclaims@debevoise.com

**Counsel for Google:**
Daralyn J. Durie, Esq.
David J. Silbert, Esq.
Joseph C. Gratz, Esq.
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111
UNITED STATES OF AMERICA
bookclaims@kvn.com

_____
Robert M. Kunstadt

4

## Robert M. Kunstadt

Born Boston, Massachusetts, 1951. B.A., Yale University 1972. J.D., UCLA School of Law 1975. Managing Attorney, R. Kunstadt, P.C., 1997 to date. Partner of Pennie & Edmonds, 1978-97. Research Fellow, Max Planck Institute for Foreign & International Patent, Copyright & Competition Law, 1975-77.

Author: "Trademarks: *not* just for the rich and famous", 3 *Oxford J. Int. Prop. L. & P.* 451, July 2008; "Holiday Patent Special", *The National Law Journal* ("*NLJ*"), January 30, 2006, p. 31; "Trade Dress Rights in Musical Instruments", 94 *TMR* 1271 (2004); "Fair Use Should Not Die", *NLJ*, November 11, 2002, p. A16; "MP3", *NLJ*, July 17, 2000, p. A19; "Half-hour Trials", *NLJ*, March 13, 2000, p. A22; "Microsoft Copyright Option", *NLJ*, November 22, 1999, p. A16; "Sneak Attack on U.S. Inventiveness", *NLJ*, November 9, 1998, p. A21; "La Bataille des BUD", 93 *Revue du Droit de la Propriete Intellectuelle*, November 1998, p. 22; "BUD Beer Brawl", *NLJ*, May 18, 1998, p. C1; "Tax the Yankees' Logo to Pay for a New Park", *New York Post*, April 26, 1998, p. 57; "Misappropriation Theory Scores Game Point -- But Will It Count?", *NY Law Journal*, January 27, 1997, p. 1; "Don't Tailor Patent Law for Special Interests", *NLJ*, January 6, 1997, p. A25; "A New Hook for IP Practice", *NLJ*, May 20, 1996, p. C1 (IP for sports moves); "Fair Use of Legal Information on the Internet", 12 CIPR 367 (1996); "Sports Licensing", *The Licensing Book*, January 1995, p. 6 (co-author with John Rose of NBA Properties, Inc.); "Licensing Trademarks Overseas", *The Licensing Book*, November 1994, p. 5; "Multimedia Adds to Music's Marketing Muscle", *The Licensing Book*, May 1994, p. 8; "United States Report - Merchandising", 162 *International Review of Competition Law* 4 (1991); *Trademark Law Handbook 1990 Edition*, Clark Boardman (Parts I & II); *1988-89 Trademark Law Handbook*, Clark Boardman (Parts I & II); "Can Copyright Law Effectively Promote Progress in the Visual Arts?", 25 *ASCAP Copyright Law Symposium* 159 (1980); "The Protection of Personal and Commercial Reputation", 3 *IIC Studies* (1980); "Das Copyright Law von 1976 und die RBU", 82 *UFITA* 161 (1978).

Member: American Bar Association; Association of the Bar of the City of New York; International Trademark Association (Editor-in-Chief of *The Trademark Reporter* 2006-2007).

Language skills: German, French.

Significant cases: *Windsurfing v. BIC* (leading case on patent damages calculation); *Norris v. ITT* (summary judgment of invalidity of claimed copyright in wire wheel cover designs); *Western Electric v. ITT* (defeated motion for preliminary injunction against use of BELL trademark in China); *Ambrit v. Kraft* (judgment of liability for trade dress infringement by Kraft's Polar B'AR ice cream square, case settled with $8.5 million payment to Ambrit); *Li v. DEC* (first computer patent infringement case in China against a Western company); *Henkel v. Stiefel* (defeated preliminary injunction motion in Holland); *Allied Colloids v. American Cyanamid* (directed verdict of patent invalidity).

Interviewed on: ABC News with Peter Jennings; CNBC; BBC Radio; CBC; and Nine Network Australia.

Speaker at: International Trademark Association; Patent and Trademark Institute of Canada; American Conference Institute; CLE International; The Canadian Institute; Package Design Council; International League of Competition Law; Society for Applied Learning Technology; New York Software Industry Association; Citybar Center for CLE; CILS.

EXHIBIT A