To:   Office of the Clerk
      J. Michael McMahon
      U.S. District Court for the Southern District of New York
      500 Pearl Street
      New York, New York   10007

From: Barbara Ann Porte *BAP*
      Member of Author Sub-Class, Google Settlement
      16627 Crystal City Station
      Arlington VA   22215

05-CV-8136

Date: April 3, 2009

Re.   Comments and Objections to Settlement for Court consideration
      Copies served to Counsel for the Author, Sub-Class, Counsel
      for the Publisher, Sub-Class, and Counsel for Google

I am the author of more than 30 books and inserts, many no longer "commercially available". Having not opted out of the Google Settlement, I remain a class member, affected by its outcome.

Below, in order of importance, are some of my comments and objections to portions of the Settlement.

1. Chief objection is to Settlement effectively establishing two categories of copyright: one for in-print titles, one for out-of-print titles. I further object to the extreme dilution of rightsholders' actual rights, especially for books classified as "commercially unavailable". Surely, it should be incumbent upon a non-rightsholder, Google in this case, wishing to exercise and/or license rights under copyright protection, first to obtain permission from the rightsholder. It is totally backward for a rightsholder, author in my case, to be required to initiate contact and then to instruct Google on which rights she wants to withhold. It also seems unfair that rightsholders of out-of-print titles, typically in possession of fewest resources and able to wield least power, now will be provided the least amount of protection.

continued...

The Author's Guild et al v. Google Inc.                               Doc. 115

How can it not be considered both arrogation and vitiation of copyright for Google to be authorized by the Settlement a. to make initial determination regarding a book's commercial availability, and b. then to have the right to "Display Uses" of all books it deems commercially unavailable unless a rightsholder directs otherwise? As Alice might ask, Which shall it be, law or efficiency?

2. I also want to observe and to have the Court take note, how extremely unlikely it seems that the Settlement procedures for dealing with author/publisher/Google disputes are likely to satisfactorily resolve very many in anything approaching a timely fashion. How many rightsholders?

How many disputes? How many arbitrators and lawyers? How many judges and courts? To the extent that the Settlement muddies the issue of copyrightholder rights, so, too, it muddies the issue of infringement resolution.

3. Past behavior being the best predicter of future behavior, why expect that Google, having previously shown little regard for copyright law, eg. digitizing books without appropriate permissions, will behave differently in the future? Once a comprehensive database has been established, including with extraordinary and barely compensated input by individual authors, filling in forms, what incentive will Google have to continue making payments? The Settlement provides minimal consequences for non-compliance on the part of Google, and it is hard to know who is to "police" it. Suppose that Google, discovering selling this service doesn't work, decides to offer it free instead, with ads confined to its own pages. Who will Google then need to compensate? Look further ahead and see Google charging rightsholders for the privilege of being included. Welcome to Lewis Carroll's world of wonderland. As an aside, I'd like to note it also seems likely that Display on Google may result in, or lead to, reduction or elimination of certain traditional licensing fees some rightsholders now enjoy.

continued...

4. Finally, I wish to note that from February, 2009, the time when I and likely many other author rightsholders, first learned the details, or even the existence, of the Settlement, until May 5, 2009, final date for opting out or for registering comments and objections, was insufficient for appropriate individual or collective consideration.

It is also my opinion that given the great leaps in technology since copyright law was last comprehensively revised the entire issue needs to be revisited by Congress and the courts, rather than allowing the actions of one or a few giant, on-line, unregulated businesses to bring about fundamental changes in this stepdown fashion.

Again, I thank the Court for its consideration of my concerns.

Respectfully submitted,

*[signature]*

Barbara Ann Porte
Author subclass member