# RiezmanBerger
Attorneys & Counselors at Law

7700 Bonhomme Avenue, Seventh Floor
St. Louis, Missouri 63105
Telephone 314.727.0101
Fax 314.727.6458
www.riezmanberger.com

Richard M. Riezman
Frederick J. Berger
M. Jill Wehmer
Mark J. Temkin
Suzanne M. Besnia
Charles S. Kramer
Nelson L. Mitten
Robert D. Jacobs
Richard N. Tishler

Randall D. Grady
Marilyn J. Washburn
Robert G. Oesch
David J. Klarich
R. Emmett McAuliffe
Richard J. Schnidman
Daniel N. Bloom
Kathryn A. Klein
Julie K. Graham

Michael P. Wolf
Christine M. Painter
Jennifer L. Geschke
Joseph D. Schneider
Paul A. Fagyal
Angela R. Collins
Crystal L. Williams

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-23-09

July 16, 2009

*Via facsimile transmission to 212-805-7906 with followup copy by U.S. Mail*

The Honorable Denny Chin
United States District Court
U.S. Courthouse, 500 Pearl Street
New York, New York 10007-1312

Re: *Authors Guild v. Google Inc.*, No. 05 – CIV-8136 (DC)

Dear Judge Chin:

Pursuant to Your Honor's Individual Practice 2(A), we write on behalf of The Media Exchange Company, Inc. ("TMEC") to request a clarification of TMEC's right to object to the Settlement as a non-class member and/or file an *amicus curiae* brief.

Despite not being a class member, TMEC believes it and its customers have an interest in the proceeding, as follows.

The focus of the Settlement is on protecting the rights of owners, namely, copyright owners. Another class of owner's rights will be significantly prejudiced, however, if this Settlement is approved. The class is that of *book*-owners. As such, these private book owners have the same stake in the outcome of this litigation as do public libraries. By aggregating the books of millions of private owners, TMEC potentially represents a collection of books which is more extensive than the world's libraries. Just as libraries have become increasingly interested in partnering with Google to digitize their collections (Settlement Agreement, third "whereas" clause) so, too, *individual* book owners are becoming increasingly interested in digitizing their collections.

Just like compact disc owners of the 1980's, book owners will increasingly seek to avail themselves of technological advances which allow them freer use of the *object* they lawfully purchased and own, in this case, instead of a CD, a book. Book owners may be greatly prejudiced by a settlement which ignores them. This prejudice stems from the entry-barriers to scanning services which will be erected by a settlement which endows a legal privilege on private entities while at the same time not requiring any covenant by these entities that they will not contest a book owner's right to scan his or her owned-book and/or provide such owner with the fruits of

---

Handwritten annotation:

Application GRANTED. TMEC may object as a non-class member and/or file an amicus brief. The Court prefers one submission. This is without prejudice to any argument the parties may make that TMEC lacks standing to object.

SO ORDERED.

[signature]
USDJ
7/23/09

The Author's Guild et al v. Google Inc. Doc. 122

said scan at a reasonable price.[1] By neglecting the technological realities, the Court will be establishing the wrong incentives for individual book owners just as the music labels did with unfavorable results.

The Exchange believes it has the proprietary technology, as demonstrated in their internet application, to allow all book owners (be they individuals or libraries) to enjoy their full rights of ownership. These full rights would include all the traditional rights of book owners but more efficiently accessed with the help of technology. Such "Access" includes: viewing (on any popular device and in any popular format), downloading, word-searching (across their entire collection of books[2]), converting (to any desired format), and selling, trading, loaning or bequeathing, of their books. But these individuals need the scans, just as do the libraries. Yet only the interests of public book owners, i.e. libraries, are mentioned in the settlement. Enfranchising private book owners, rather than requiring access-points through libraries, would also help to alleviate the concerns already expressed to Your Honor regarding privacy and civil liberties.

*How it works.* TMEC is the assignee of patent application 10/591,416 (*Method and apparatus for digital copyright exchange*, filed March 4, 2005) and is the operator of an interactive website, The Digital Content Exchange ("The Exchange"[3]) found at www.thedce.com. The Exchange's base of members (or "customers") need The Exchange to do four basic things for them:

a) Create personal scans of the books in their personal collections and *immobilize*[4] them. This immobilization step is critical to verify ownership and to avoid illegal activity in a digital world.
b) Capture and *immobilize* the books they have purchased *in digital form*. (We believe this will become the chief method of purchasing books in the future).
c) Grant them on-line (often called "cloud") Access to the books *immobilized* at a) and b).
d) Allow sales and trades of thus-*immobilized* books in the same manner as Amazon.com, eBay, etc.[5] and borrowing in the same manner as the public library.

---

[1] And as has been pointed out by a commentator, producing social waste as a by-product of the Settlement. *See* Eckersley, Peter, *Google Book Search Settlement; Foster Competition, Escrow The Scans* Electronic Frontier Foundation, http://www.eff.org/deeplinks/2009/06/should-google-have-s, accessed July 14, 2009
[2] Ironically, users can search across only that body of knowledge which has been arranged for altruistic or commercial reasons, into a website. The only body of knowledge that a user *cannot* search across currently is the books which that user finds most important and has paid money for. Wide-access to personal scans addresses this inconsistency. Forcing book owners to repurchase digital versions of their entire libraries produces social waste.
[3] The Exchange also facilitates ownership of music and videos in similar ways to that explained here for books, hence "Digital *Content* Exchange" (emphasis added).
[4] *See* patent, claim 11.
[5] Unlike Amazon and EBay, however, The Exchange can facilitate the payment of a "royalty" to Plaintiffs from such secondary sales. *See* patent, claim 17.

The Honorable Denny Chin
United States District Court
July 16, 2009
Page 3

TMEC, as the owner of the inchoate proprietary right to offer an aggregator/exchange service to these book owners[6], wishes to develop its arguments for a modification of the Settlement in favor of these owners through argumentation and citation to relevant legal authority, in as much as it appears that no other entity has done so. It therefore requests permission to file an objection to the settlement as it is currently fashioned and/or file an amicus curiae brief.

The Exchange would like Your Honor to note that the settlers purport to be aiding and abetting what they term "the reading public" ("whereas" clauses 3 and 8, 6.3 (a)(1)) yet nowhere offer a definition. For centuries, members of the "public" who enjoyed "reading" have purchased books from Plaintiffs. This commercial activity (buying and owning books) is the Plaintiffs' very business. The vast number of book owning customers of the Plaintiffs must be acknowledged in this landmark settlement. An economic train is about to leave the station. Book buyers have paid for their tickets and should be "allowed to board."

Very truly yours,

*R. Emmett McAuliffe Jr.*

R. Emmett McAuliffe

258496_5 / 25145-001

---

[6] The proposition that a user who requests a service-provider to perform an act of copying or transmitting which would be legal had the user done it himself or herself without the service-provider being held liable for direct copyright infringement, was bolstered recently by *Cablevision II*. Twentieth Century Fox Film Corp. v. Cablevision Sys. Corp., 478 F.Supp. 2d 607 (S.D.N.Y. 2007), *rev'd.* Cartoon Network LP, LLP v. CSC Moldings, Inc., 536 F.3d 121 (2d Cir. 2008), *cert denied* No. 08-448 (June 29, 2009).