**PMA** *The Worldwide Community of Imaging Associations*
World Headquarters · 3000 Picture Place, Jackson, Michigan 49201 USA
Tel: 517-788-8100 · Fax: 517-788-8371 · www.pmai.org

August 19, 2009

AUG 2 8 2009

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-27-09

**BY FAX (212) 805-7906**
Honorable Denny Chin
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: The Authors Guild et al. v. Google, Inc. Case No. 1:05 cv8136 (S.D.N.Y.)**

Dear Judge Chin:

We hereby request the court's permission to submit this letter as an amicus curiae supporting final settlement approval in the above-referenced case.

PMA – The Worldwide Community of Imaging Associations ("PMA") – is a professional trade association that assists the photo imaging community to achieve business success and adapt to new technologies. With an 83-year history, PMA currently has 16,000 members in over 100 countries who actively contribute to the vibrant $83 billion imaging industry. In the digital era of today, PMA's members include photo retailers and processors, manufacturers, commercial imaging labs, sports and event photographers, school photographers, custom picture frame shops, and scrapbook retailers.

For three reasons, PMA supports the Court's approval of the Proposed Settlement between Google, Inc., the Authors Guild, Inc. and the Association of American Publishers ("Settlement").

First, the Settlement serves as a positive precedent for parties with competing interests to resolve amicably industry-specific issues. When the Settlement was publicly announced, PMA members reacted positively by stating that the photo imaging community, in which there are billions of images (works) for which clearance of rights is impossible or difficult due to obscure ownership or no ownership information at all, should consider replication of some of the Settlement's key features. By its terms, the Settlement does

The Author's Guild et al V. Google Inc.                                                Doc. 150

*President*  Rainer Th. Schorcht, Foto Schorcht GmbH, Johann Severin Str. 13, 33330 Gütersloh GERMANY
*President-Elect*  Brian Wood, Photovision, 3775 Market Street N.E., Salem, OR 97301-1828 USA
*Vice President*  Mark Klostermeyer, MCPF Design Frames LLC, 101 Rowell Court, Falls Church, VA 22046-3126 USA
*Treasurer*  Bob Friend, District Photo, Inc., 10501 Rhode Island Ave., Beltsville, MD 20705-2389 USA
*Executive Director*  Ted Fox, PMA, 3000 Picture Place, Jackson, MI 49201 USA

not preclude similar agreements in other areas. In fact, it seems to invite other agreements. Furthermore, nothing in the Settlement prevents another entity from taking on the task of a digitalization effort similar to Google's.

Second, the Settlement serves as a firm foundation to construct new registries – where none currently exist – in other copyright industries. As set forth in the Settlement, a Book Rights Registry will be created in the form of a non-profit organization that will administer licensing rights and disburse payments to authors and publishers that sign up. The Settlement expressly does not cover images. In essence, the Registry is for books like the performing rights organizations that license the public performing right for musical works. The Registry will provide a convenient place for the administration of licensing rights and will serve to immunize compliant parties from lawsuits.

As an organization that spans membership from the photofinishing side of the photo imaging community to the professional photographer side, PMA supports initiatives that contribute good for both authors of copyrighted works and those who would like to use these works.

The registry would also make data under its control available non-exclusively and, even more importantly, downloadable by any person or entity that wants to construct its own database. In the photo imaging community, no registry of photographs currently exists and none is even on the horizon. In PMA's view, the precedential value of a book registry could serve as a powerful stimulus for the creation of a photograph registry and a step toward the resolution of the current photographic image orphan works issue.

Third, the Settlement does not – and should not – chill legislative efforts to enact orphan works legislation. The Settlement does provide a mechanism for authors and copyright holders who want to un-orphan their works and it may reduce the gigantic number of orphan works that are in existence today. However, the Settlement does not resolve all orphan works issues. As long as there are huge quantities of works where authors and owners are not known or cannot be reached, like in the imaging industry, congressional intervention will continue to be necessary. By eliminating visual images from the Settlement, the settling parties assured the existence of a huge remaining orphan works problem.

PMA is aware that some parties have requested that the Court, as part of its judicial settlement responsibilities, engage in continuing oversight over unexpected issues that may arise downstream, and intervene, if necessary. *See* Librarian Association Comments on the Proposed Settlement (May 4, 2009). Because the Settlement provides that the Court "shall retain jurisdiction over the interpretation and implementation of the Settlement Agreement" (Settlement Agreement at § 17, 23), and because the Agreement may have precedential effect on other industries, PMA would be supportive of the Court taking an active oversight role.

## CONCLUSION

In conclusion, the Court should approve the Settlement in such a manner as to maximize benefits to the public and to create a platform for similar developments relating to photo imaging.

Respectfully submitted,

E. Ted Fox, Executive Director
Photo Marketing Association International

Cc: Michael Boni, Boni & Zack, LLP
Jeffrey Cunard, Debevoise & Plimpton, LLP
Joseph Gratz, Durie Tangri Lemley Roberts & Kent, LLP