DOC # 142



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-27-09

AUG 21 2009

The Author's Guild et al v. Google Inc.　　　　　　　　　　　　　　　　　　　　　Doc. 158

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

The Authors Guild, Inc., Association of American Publishers, Inc., et al., Plaintiffs,

v.

Google Inc., Defendant.

Case Number 05 CV 8136-DC

**URBAN LIBRARIES COUNCIL COMMENTS ON THE PROPOSED SETTLEMENT**

**Introduction.** The Urban Libraries Council (ULC) is the non-profit membership organization serving the major public libraries located in urban and metropolitan areas throughout the United States. Since 1971 ULC has focused attention on the public library's role in these major communities, home to one third of the nation's population. Serving people of every socioeconomic and demographic description, the public library is often the only place where members of urban communities have access to the Internet, to abundant supplies of books and periodicals, and to community space. The public library often serves as a vital "third space," filling the gap between home and workplace. For children and teenagers, public libraries serve as after-school and weekend extensions of school, reinforcing the lessons of reading and learning. In every large urban area, the public library serves a special role for newly arrived immigrants, helping them learn how to live in this country. Independent scholars and writers, unaffiliated with universities, use the urban public library as their resource for the research that supports new inventions, ideas, scholarship, and creative work. Local economies grow as libraries provide business and career information and assistance.

Most important, urban public libraries advance democracy. They provide free and open access to information and learning for all members of their communities. They are resolute in their pursuit of this essential public purpose even as they struggle with the growing scarcity of the local tax dollars that support them.

**The Proposed Settlement.** As ULC understands the proposed settlement, Google will continue to scan and digitally store the content of library-owned books. Unless specifically removed by the Rightsholder (author, publisher, or representative), this content will be searchable over the Internet as part of Google Book Search. This search will show, as it does today, information concerning libraries and bookstores where the physical book may be found.

1

For books that are protected by copyright and commercially available for purchase ("in print"), unless the Rightsholder directs otherwise, only bibliographical information and front matter will be shown in response to a search. For books that are not commercially available ("out of print"), up to 20% of the book may be previewed for free.

Unless the Rightsholder directs otherwise, electronic access to the full text of out-of-print books and in-print books will be made available for direct purchase by individuals and provided to college and university libraries, but not to public libraries, as part of a licensed database. The pricing and other arrangements for use of this licensed database are still to be determined between Google and a newly-created Book Rights Registry. Separately, outside the settlement, Google has entered into individual contracts with some university libraries, creating a mechanism for them to influence pricing of the database. The proposed settlement provides for a free Public Access Service at one designated terminal in each public library building in the United States.

ULC supports the settlement.

**Areas of Concern**. ULC applauds the generous intent of Google and the plaintiffs in making millions of books more available to the diverse array of users of urban public libraries. This positive intent does not, however, outweigh ULC's concerns that the settlement ignores or intrudes upon four vitally important principles that undergird the American public library. In the paragraphs that follow, ULC identifies these principles and proposes a course of action relating to each of them.

1. Universal Access to Library Materials.

2. Reader Privacy and Confidentiality.

3. Right of First Sale, Fair Use, and Public Domain.

4. Protection of the Public from the Abuse of Monopoly.


1. **Universal Access to Library Materials.** The settlement's commitment to one free terminal per public library building is admirable but unworkable. In all but the smallest public libraries, this provision will unreasonably restrict public access to the database. Urban public libraries serve large and diverse populations. They have large buildings visited daily by thousands of library users. They offer a great variety of commercially-provided electronic services to their communities, none of which is hampered by such a restricted business model. Google and the Rightsholders should provide to each public library a **Free Public Access Service** that can be implemented by the library through its

own or a cooperative electronic network, serving the in-library needs of many public library users.

In addition, an **Institutional Subscription Model for Public Libraries** should offer to the diverse public served by urban libraries the same opportunities afforded to the college and university students and faculty for whom the proposed settlement is primarily designed. Like academic libraries, urban public libraries serve an increasingly sophisticated population. American adults, once they have left the university setting, return to their public libraries expecting ease of access, minimum costs, and wide-ranging options, both electronically and physically. A workable subscription model will allow libraries to distribute on-line content to their users in a responsible, businesslike way, as they now do with many other on-line products.

2. **Reader Privacy and Confidentiality.** At least 48 states and the District of Columbia have library records confidentiality laws. These statutes institutionalize the longstanding public library commitment to free inquiry, protecting information about users' searching, reading, and borrowing from the prying eyes of government and commerce. Public Access Service in the public library setting should include a provision for **Anonymous Access to the Database,** in order to respect reader privacy and conform to local legal requirements.

3. **Right of First Sale, Fair Use, and Public Domain.** The proposed settlement provides for Google to collect a per-page charge for limited printing from the database, whether the book in question is covered by copyright or not. Apart from the practical obstacles posed by the reluctance of public libraries to act in a collector role, this provision runs counter to the well-established norms of the right of first sale. Public library users, whatever their personal economic circumstances, have long expected to find, read, and borrow books without paying a fee, under the library's right of first sale. If they wish to copy a few pages for personal reference, they expect to pay only nominal photocopying fees, not license charges, under the fair use doctrine. Many of the books in the database are not under copyright protection. Access to these books in the public domain should be preserved in the new environment. **Limited Free Printing from the Database** should be required.

This provision will acknowledge the public role in the creation of the database now to be used for private commercial purposes. Many of the books scanned by Google from the libraries of state-supported universities have been acquired with public funds. Moreover, limited free printing will support the creation of new intellectual and artistic content, as library users build on the products of their research.

4. **Protection of the Public from the Abuse of Monopoly.** The practical effect of the proposed settlement will be a monopolistic situation. Google and the Book Rights Registry will control the market for delivery of millions of books, without much danger of effective competition. While there is no present indication that the parties to the settlement will abuse their position, there is also no check upon them. **Public Library Representation on the Book Rights Registry** should be mandated by the Court as an effective way to address this concern.

Up to the present time, the arrangements for public libraries proposed in the settlement agreement have not been shaped by any consultation with public libraries. If the parties to the settlement hear regularly from the representatives of urban library user communities, they will be more likely to maintain the balanced perspective that will protect everyone from the dangers of monopolistic behavior.

**Conclusion.** This is a pivotal moment in the history of access to recorded information, not unlike the introduction of moveable type or the birth of the Internet. It is important, therefore, that the needs of the public at large shape the thinking of those responsible for guiding this extraordinary advance. Speaking for that public, the Urban Libraries Council, on behalf of its member libraries, respectfully requests that the Court require the parties to address the issues raised in this document before approving the proposed settlement. ULC is eager to assist all the parties in developing practical solutions that will make the riches of Google Book Search fully, fairly, and affordably available to all Americans.

Respectfully Submitted,


Susan Benton
President and Chief Executive Officer
Urban Libraries Council
125 South Wacker Drive, Suite 1050
Chicago, IL 60606
(312) 676-0999
sbenton@urbanlibraries.org


August 19, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2009, I caused true and correct copies of the foregoing comments to be delivered by overnight courier to the Clerk for the U.S. District Court for the Southern District of New York and to be served electronically on the following counsel of record:

Michael J. Boni, Esq.
Joanne Zack, Esq.
Joshua Snyder, Esq.
Boni & Zack LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004
bookclaims@bonizack.com


Jeffrey P. Cunard, Esq.
Bruce P. Keller, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
bookclaims@debevoise.com


Daralyn J. Durie, Esq.
David J. Silbert, Esq.
Joseph C. Gratz, Esq.
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111
bookclaims@kvn.com

Rick J. Ashton
Chief Operating Officer
Urban Libraries Council
125 S. Wacker Drive
Suite 1050
Chicago, IL 60606
312-676-0955
rashton@urbanlibraries.org

# URBAN LIBRARIES COUNCIL

STRENGTHENING
THE PUBLIC LIBRARY
AS AN ESSENTIAL
PART OF URBAN LIFE

www.urbanlibraries.org

125 S. Wacker Drive
Suite 1050
Chicago, IL 60606

T: 312.676.0999
F: 312.676.0950

August 19, 2009

Clerk of the Court
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

TO THE CLERK OF THE COURT:

Enclosed please find a document, Urban Libraries Council Comments on the Proposed Settlement.

Please make this document a part of the record, for consideration by the Court, in

The Authors Guild, Inc., Association of American Publishers, Inc., et al, Plantiffs,
v.
Google Inc., Defendant

CASE NUMBER 05 CV 8136-DC

Thank you for your attention to this matter.

Sincerely,

Rick J. Ashton
Chief Operating Officer