The Author's Guild et al v. Google Inc. Doc. 162

6450 Greenfield Dr.
Gilroy, CA 95020
Erika@erikamailman.com

Office of the Clerk, J. Michael McMahon
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

05-CV-8136

August 21, 2009

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-28-09

Dear Clerk:

I'm writing to object to, and express my horror at, the Google Book Settlement currently on Judge Denny Chin's desk.

As an author, my creative work is copyrighted. What does a copyright *mean* when a corporation like Google can get hold of my work, without my permission, for financial benefit?

I find it unconscionable that an interloper who had nothing to do with the writing of my books, nor the publishing of them, will now be able to profit from them.

If I were a dressmaker and Google absconded with my gowns, there would be no question that Google would need to promptly return them and face serious legal consequences. However, due to the digital and therefore distributable nature of books, Google's theft does not appear that way to all eyes.

I opted in to the settlement because it was the only way to protect my rights to my work; my back was against the wall. I did so under situational duress. My literary agent recommended that I do so. I don't have the time or resources to hire my own attorney, but I do not feel that the Author's Guild attorneys represent me... nor do they somehow magically represent the world of "all writers everywhere." I am not a member of the Guild, and I am deeply upset that the Guild is considering the settlement. I would like Google to go to court and have to defend its position.

Under the terms of the settlement, Google keeps 37 percent of all revenue generated by its sales of works written by hapless authors. That is a despicable figure given that the typical percentage for authors *who created the content* is only 10 percent under traditional publishing.

With the settlement, Google keeps 37 percent. Of the remaining 63 percent, writers and publishers must pay 10-20 percent to the Book Rights Registry (again, an entity I don't know and don't want to profit from my work) and then equally split the remains. Doing the math, whether the Registry keeps 10 or 20 percent, the author and publisher percentage is *significantly less than* Google's (28 percent or 25 percent, respectively). That is grossly unfair.

Authors sweat and pray and write for years to create a book. Publishers do a fair amount of work as well. They put up money to create a tangible book (or e-book), maintain a stable of editors and marketing staff, and undertake the arcane and unwieldy world of book distribution. These two entities *deserve* revenue from their books. But what will Google do to receive 37%? It will scan a book—which any halfwit with a scanner can do.

The publishing industry is already on the wane. This Google settlement may sound its death knell. Independent bookstores are closing like the livery stables of yore, and losing business to yet another online competitor may close down the entire literary operation, with thousands of publishing house employees, bookstore employees, and authors left stranded. If we thought Amazon was tough on the business, this new venture will shoot it in the knees.

The saving grace for publishers may be e-books… a new way of reading that may rescue the industry. Yet the Google Book Settlement will undercut this possibly vital new scheme.

Publishers publish books knowing the undertaking is risky. The book may not flourish and its publication will have been an error. But that is the beauty of literature: we do not know which books will please, and we read and write and hope for the best. Already it is famously difficult for writers to get published…if publishers must watch their wallet even more closely, and take less risks on new writers, there will be a trickle-down effect on the entire world of literature.

And what about libraries—those bastions of civic benevolence? If one can access a book at 2 a.m. on one's computer, who will bother to wait until morning to get in the car and go to the library? The whole library system may founder.

This settlement provides a landmark precedent for whether literary works will be protected by law. If Google is permitted to scan and sell others' content, the "barn door is open," as they say, and scads of other companies will leap to do the same thing.

Please protect writers, publishers and bookstores by unequivocally shutting down this unfair, abhorrent settlement—make Google go to court and explain itself.

Sincerely,

Erika Mailman

cc via email:

Boni & Zack LLC
bookclaims@bonizack.com

Debevoise & Plimpton LLP
bookclaims@debevoise.com