UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| The Authors Guild, Inc., Association of American Publishers, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>Google Inc.,<br><br>Defendant. | Case No. 05 CV 8136-DC<br><br>DECLARATION OF BARBARA KRAUSS |

1.     I, Dr. Barbara Krauss, am Director of the German book publishing house known as HARRASSOWITZ. I am not a native speaker of the English language, although I have some fluency in the language, and, accordingly, this declaration was translated for me into German before I signed it below. Except as otherwise stated, I have personal knowledge of the matters I discuss below.

2.     HARRASSOWITZ is one of the preeminent book publishers in the Federal Republic of Germany. HARRASSOWITZ was founded in 1872 as an antiquarian bookseller and has been in business for more than 135 years. HARRASSOWITZ publishes approximately 180 scholarly books and periodicals per year and holds a stock of about 3000 different titles. In addition to its role as a book publisher, HARRASSOWITZ is a book and serials vendor for the academic and research library community, specializing in the distribution of European scholarly books, periodicals, e-resources, and music scores. For well over a century, HARRASSOWITZ has provided these services to a number of libraries in the United States, starting with Harvard University in 1882.

The Author's Guild et al v. Google Inc.   Doc. 168

Dockets.Justia.com

3. As either the copyright owner, or exclusive licensee, of the books that we publish, HARRASSOWITZ owns the exclusive right to exploit these works or to authorize others to do the same, such that no one else can exploit them. HARRASSOWITZ must devote time and resources to publish its works and HARRASSOWITZ is able to recoup its investment, and remain in operation, primarily because it is able to secure the exclusive rights to publish its works. Accordingly, HARRASSOWITZ's entire business model is based on this fundamental exclusive right, which is well recognized under German copyright law and throughout the world. The Settlement Agreement that Google has asked this Court to approve would upend these well recognized rights and is an affront to copyright holders throughout the world. HARRASSOWITZ thus respectfully requests that this Court not approve the Settlement Agreement, with respect to foreign rightsholders at a minimum, for the reasons set forth in our accompanying Objections and below.

**Membership In The Class**

4. HARRASSOWITZ is the copyright holder of one or more Books or Inserts, as those terms are used in the Settlement Agreement, having published over 7500 books since 1922.

5. Although HARRASSOWITZ offers its library services to libraries located in the United States, HARRASSOWITZ does not commercially exploit in the United States the books that it publishes in its role as a book publisher.

6. HARRASSOWITZ has not registered its books with the United States Copyright Office.

**Notice Problems**

7.  HARRASSOWITZ received a short written notice of the Settlement Agreement in the mail from Rust Consulting in or about February 2009. It is my understanding that a longer written notice of the Settlement Agreement exists, but it is my best belief that HARROSSOWITZ did not receive this longer notice.

8.  I understand that the various translation errors that exist in this notice will be detailed for the Court by Dr. Christian Sprang, so I do not detail them here.

9.  I have been told by Börsenverein that the parties published a summary notice of the Settlement Agreement in various publications. Although we saw this notice in isolated settings, it was not at all clear to us that the publication concerned our rights, as these publications are not used in Germany to provide legal information.

10. The Settlement Agreement to which the written notice refers has, to my knowledge, never been translated into German. While HARRASSOWITZ attempted to review that full agreement, it was not able to do so in any meaningful way, given that it was made available only in English on the website dedicated to this case. HARRASSOWITZ is a sophisticated company, doing business around the world, and it, accordingly, has entered into various agreements with parties located in the United States and in the English language. However, HARRASSOWITZ does not enter into any such agreements unless and until it has had the opportunity to review these agreements in German, so that it can be certain it fully understands their legal effect. And the agreements which HARRASSOWITZ has entered into with United States parties are merely HARRASSOWITZ's own form agreements, which were drafted initially in German; such agreements have never approached the absurd length of the Settlement

Agreement at issue here, which is well over 300 pages long. Thus, even a sophisticated company such as HARRASSOWITZ was not able to review the Settlement Agreement to which I am told HARRASSOWITZ may be bound. Certainly, the vast majority of publishers and authors in Germany who also may be affected by this Settlement also have been unable to review or understand this complex document.

11. As a result of the poor notice that was given about this Settlement Agreement, HARRASSOWITZ did not understand its import until very recently. It was only because HARRASSOWITZ actively sought the counsel of Börsenverein that HARRASSOWITZ was able to obtain an understanding of the Settlement Agreement.

**The Burdens The Settlement Agreement Improperly Seeks To Impose**

12. The Settlement Agreement requires publishers like HARRASSOWITZ to take burdensome affirmative action if they wish to preserve their existing copyright protections, remain legally unaffected by the Settlement Agreement and avoid having their works permanently licensed to Google for Google's use. This action requires us to read and comprehend the complex, poorly translated Notice – without the benefit of a translated Settlement Agreement – simply to determine whether the affirmative act of opting-out is in our interest. If we wish to opt-out, we must submit formal paperwork to the Settlement Administrator by a date certain, or forever lose this right. Moreover, in order to effectively opt out, we are required to provide information including which sub-class we belong to, our address and any pseudonym used by an author of the noted works. We must also identify all of the imprints under which we publish, or have published, our works. This is in contrast to the existing laws of copyright recognized by our country and

Objections and accompanying submissions, the Books Database is difficult to work with and flawed in numerous respect.

**The Books Database and The Classification of Books as "Commercially Available"**

16. HARRASSOWITZ has logged onto the Books Database. It is difficult to use this Books Database to comprehensively identify books and other publishers have told us of their difficulties in using it as well.

17. Based on a search of the database for works listed as published by HARRASSOWITZ (assuming that our name was always correctly spelled), we have located 16,577 entries in the Google database concerning our works. Only 369 of these titles are listed by Google as being commercially available. However, HARRASSOWITZ commercially exploits thousands of these works. Indeed, a well known database in Germany, VLB – Verzeichnis Lieferbarer Bücher –, which identifies works that are commercially available in Germany, identifies 3,236 of these titles as commercially available.

18. According to the Books Database, Google has digitized 3,658 of these entries to date. However, the Books Database gives us no information about how many of the remaining titles in the database, or other titles which we own and control, Google may seek to digitize in the future re listed as digitized. Accordingly, it is impossible for our company to predict how many of our books Google will scan, use and/or pay for in the future and, accordingly, what the Settlement Agreement will mean for us.

19. The Books Database also identifies as not Commercially Available a number of the works that HARRASSOWITZ sells to libraries, even though HARRASSOWITZ actively sells these works to libraries in the United States. Google's

internationally, under which we would not be required to take any action at all to preserve our fundamental exclusive right to control the use of our works.

13. If we do not opt out, the Settlement imposes additional, cumbersome administrative burdens in order to direct Google not to use our works. We must submit a lengthy, 8-page Claim Form, which directs us to read the poorly translated lengthy notice and: (1) individually "claim" each one of our Books and Inserts; (2) provide detailed information about each work (including each author, co-author and contributor, imprint, whether the publisher owns worldwide rights to the work and rights to all of the pictorial works within the work); (3) find each work on a books database that Google maintains at http://www.googlebooksettlement.com (the "Books Database"); (4) determine whether Google has classified such work as Commercially Available; (5) inform Google if we agree with such determination (even though the Settlement defines Commercially Available vaguely); (6) provide a description of each Insert; (7) determine if we are Confident or Highly Confident that our works have not reverted to an author; and (8) certify a number of matters, including that the use of any Insert claimed required our permission and we did not give permission for their online use after June 1, 2003.

14. As set forth above, in order to "direct" Google not to use our works, we would have to provide the above information to Google for over 3000 individual works, even though under existing law we would not be required to take any action to preserve our exclusive rights against Google's unauthorized use of our works.

15. Providing this "direction" to Google is an onerous and difficult task under the Settlement Agreement, especially because, as described below and elsewhere in our

classification of these works as not Commercially Available would critically impair HARRASSOWITZ's library business in the United States, should this Court approve the Settlement Agreement.

20. As explained in our Objections, the Settlement Agreement grants Google substantial rights with regard to books deemed not Commercially Available, which could usurp HARRASSOWITZ's rights to decide when and how to distribute German works in the U.S. in the first instance unless HARRASSOWITZ took affirmative action to halt such use. The digitization and distribution of German books inappropriately deemed not Commercially Available would seriously threaten HARRASSOWITZ's business with U.S. libraries, as these libraries are likely to forego purchasing such books from HARRASSOWITZ once they have been digitized by Google and made available to libraries as part of Google's subscription service. Indeed, under the Settlement Agreement, Google would have the right to make this works available, even if HARRASSOWITZ and the copyright owner of the work never affirmatively grant Google this right.

21. For each of the foregoing reasons, and for the reasons set forth in the Objections, HARRASSOWITZ objects to the Settlement Agreement and respectfully urges the Court not to approve it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 31, 2009

*ppa. B. [signature]*

Dr. Barbara Krauss