# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

The Authors Guild, Inc., Association of American Publishers, et. al.,

    Plaintiffs,

v.

Google Inc.,

    Defendant.

Case No. 05 CV 8136-DC

DECLARATION OF MARIA HAMREFORS

1.    I, Maria Hamrefors, am President of the Swedish book publishing groups known as Norstedts Förlagsgrupp AB and Norstedts Kartor AB, which own the imprints Rabén & Sjögren, Norstedts Akademiska Förlag, Prisma, Tivoli, Tiden, Eriksson & Lindgren, Gammafon, Kartförlaget, Nautiska Förlaget, AWE/Gebers, Geber, PAN, Fabel, Citadell and R&S Books ("Norstedts"). I am not a native speaker of the English language, although I have some fluency in the language, and, accordingly, this declaration was translated for me into Swedish before I signed it below. Except as otherwise stated, I have personal knowledge of the matters I discuss below.

2.    Norstedts is a publishing group which was founded in 1823. Norstedts publishes approximately 500 books per year and holds a stock of over 4,000 titles currently "in-print" and thousands (potentially over 20,000) more that are "out-of-print."

3.    As either the copyright owner, or exclusive licensee, of the books that we publish, Norstedts owns the exclusive right to exploit the books that it publishes or to authorize others to do the same. Norstedts must devote time and resources to publish its works and Norstedts is able to recoup its investment, and remain in operation, primarily

because it is able to secure the exclusive rights to these works, such that no one else can exploit them. Accordingly, Norstedts' entire business model is based on this fundamental legal right, which is well-recognized under Swedish copyright law and throughout the world. The Settlement Agreement that Google has asked this Court to approve would upend these well-recognized rights and is an affront to copyright holders throughout the world. Norstedts thus respectfully requests that this Court not approve the Settlement Agreement, with respect to foreign rightsholders at a minimum, for the reasons set forth in our accompanying Objections and below.

**Norstedts Catalogue and Membership In The Class**

4. Norstedts is the copyright holder of one or more Books or Inserts, as those terms are used in the Settlement Agreement, having published over 25,000 books since 1922.

5. Since 1922, Norstedts has published 99.95 % of its works in Swedish in Sweden. Since that time, Norstedts has, under the imprint R&S Books, published just 124 titles in English in the United States and other English-speaking countries.

6. Norstedts has not registered its books with the United States Copyright Office.

**Notice Problems**

7. Norstedts was not aware of the Settlement Agreement until February 2009, when we received a written notice of the Settlement Agreement in the mail from Svenska Förläggareföreningen, the association of book publishers in Sweden, of which Norstedts is a member. The notice was translated into Swedish, but it contained numerous translation errors that made the notice difficult to read or understand. I

understand that these translation errors will be detailed for the Court by Svenska Förläggareföreningen, so I do not detail them here.

8. The Settlement Agreement is legally complicated and hard for us to comprehend since, on the most basic level, a proceeding such as the sweeping class-action of this extent, governing future rights of rightsholders all over the world, simply does not exist under Swedish law.

9. The Settlement Agreement to which the written notice refers has, to my knowledge, never been translated into Swedish. While our organization would have wished to review that full agreement, it was not able to do so in any meaningful way, given that it was made available only in English on the website dedicated to this case. Like our organization, virtually all of the publishing houses in Sweden are of modest size, do business primarily in Nordic-speaking countries and lack the proficiency needed to read or understand the English-only Settlement Agreement. It is my firm belief that individual Swedish authors also are not able to review or understand this complex document as written in English

10. To be able to understand this proceeding on even the most basic level, we have been forced to expend significant time and money, and to seek the counsel of Svenska Förläggareföreningen. This expenditure of time and money has seriously interfered with our regular publishing work. And despite that substantial investment of time and money, we are still not convinced we get the complete picture.

## The Burdens The Settlement Agreement Improperly Seeks To Impose

11. The Settlement Agreement requires publishers like Norstedts to take burdensome affirmative action if they wish to preserve their existing copyright protections, remain legally unaffected by the Settlement Agreement and avoid having their works permanently licensed to Google for Google's use. This action requires us to read and comprehend the complex, poorly translated Notice – without the benefit of a translated Settlement Agreement – simply to determine whether the affirmative act of opting-out is in our interest. If we wish to opt-out, we must submit formal paperwork to the Settlement Administrator by a date certain, or forever lose this right. Moreover, in order to effectively opt-out, we are required to provide information including which sub-class we belong to, our address and any pseudonym used by an author of the noted works. We must also identify all of the imprints under which we publish, or have published, our works. This is in contrast to the existing laws of copyright recognized by our country and internationally, under which we would not be required to take any action at all to preserve our fundamental exclusive right to control the use of our works.

12. If we do not opt-out, the Settlement imposes additional, cumbersome administrative burdens in order to direct Google not to use our works. We must submit a lengthy, 8-page Claim Form, which directs us to read the poorly translated lengthy notice and: (1) individually "claim" each one of our Books and Inserts; (2) provide detailed information about each work (including each author, co-author and contributor, imprint, whether the publisher owns worldwide rights to the work and rights to all of the pictorial works within the work); (3) find each work on a books database that Google maintains at http://www.googlebooksettlement.com (the "Books Database"); (4) determine whether

4

Google has classified such work as Commercially Available; (5) inform Google if we agree with such determination (even though the Settlement defines Commercially Available vaguely); (6) provide a description of each Insert; (7) determine if we are Confident or Highly Confident that our works have not reverted to an author; and (8) certify a number of matters, including that the use of any Insert claimed required our permission and we did not give permission for their online use after June 1, 2003.

13. As set forth above, in order to "direct" Google not to use our works, we would have to provide the above information to Google for potentially over 25,000 individual works, even though under existing law we would not be required to take any action to preserve our exclusive rights against Google's unauthorized use of our works.

14. Providing this "direction" to Google is an onerous and difficult task under the Settlement Agreement, especially because, as described below and elsewhere in our Objections and accompanying submissions, the Books Database is difficult to work with and flawed in numerous respect.

### The Books Database and The Classification of Books as "Commercially Available"

15. Norstedts has logged onto the Books Database. It was extraordinarily difficult for us to use this Books Database. Norstedts, and many of our imprints, share brand-names, in whole or in parts, with other companies. As a result, we cannot run a search under our company name without producing over-inclusive results. For example, when we do a search in the Book Database on our imprint "Prisma," the search result also contains titles published by other companies such as Prisma Presse, Prisma-Boeken and Prisma Verlag. Thus, in order to produce an accurate list of our titles, Norstedts is forced to perform a burdensome, title-by-title search of our thousands of works. Based on our

initial use of the Books Database, our searches turned about an alarming 66,000 hits or entries on the Books Database.

16. The Books Database is also riddled with errors. Some books are presented multiple times. For example the work "Alla vi barn i Bullerbyn" by Astrid Lindgren is presented 16 times. Given this duplication, it will be difficult for us – or any publishing house, for that matter – to ensure that we have identified all of our works for Google (which we understand we are required to do to preserve our rights whether we opt-in or opt-out). The Books Database also provides incorrect years of publication for the listed works. For example Alla vi barn i Bullerbyn was not published in 1948, 1958 and 1970 as stated in the Books Database.

17. The Books Database also identifies a number of works as not Commercially Available. For example, the Books Database contains 107 works published by Rabén & Sjögren in 2008. All these works are commercially available in Sweden. However, according to the Books Database, only 4 of these works are Commercially Available.

18. The Books Database's designation of certain early editions as "Commercially Unavailable" is also highly misleading when the same work is later re-published and made commercially available. For example, Ingmar Bergman's *Fanny and Alexander* was published in 1982 and this edition, as the Books Database correctly notes, is not commercially available. However, Norstedts published the work again 2007 and this edition *is* commercially available. Because the Books Database identifies each edition of a work as a separate entry, a designation of an early edition as not "Commercially Available" would improperly give Google the right, as I understand the

Settlement Agreement, to exploit that work as not "Commercially Available," even if Google identifies subsequent editions of that same work as Commercially Available.

19. According to the Books Database, Google has digitized 79 of a total of 66,159 entries to date. However, the Books Database gives us no information about how many of the remaining titles in the database, or other titles which we own and control, Google may seek to digitize in the future. Accordingly, it is impossible for our company to predict how many of our books Google will scan, use and/or pay for in the future and, accordingly, what the Settlement Agreement will mean for us.

20. For each of the foregoing reasons, and for the reasons set forth in the Objections, Norstedts objects to the Settlement Agreement and respectfully urges the Court not to approve it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 31, 2009

Maria Hamrefors