# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| The Authors Guild, Inc., Association of American Publishers, et. al., | Case No. 05 CV 8136-DC |
| Plaintiffs, | DECLARATION OF DAN ISRAEL |
| v. | |
| Google Inc., | |
| Defendant. | |

1. I, Dan Israel, am publisher of the Swedish book publishing company Leopard Förlag AB, also known as Leopard Publishing Co. ("Leopard"). I am not a native speaker of the English language, although I have some fluency in the language, and, accordingly, this declaration was translated for me into Swedish before I signed it below. Except as otherwise stated, I have personal knowledge of the matters I discuss below.

2. Leopard is a small publishing company which was founded in 2001. Leopard publishes approximately 25 books per year and holds a stock of over 200 titles.

3. As either the copyright owner, or exclusive licensee, of the books that we publish, Leopard owns the exclusive right to exploit the books that it publishes or to authorize others to do the same. Leopard must devote time and resources to publish its works and Leopard is able to recoup its investment, and remain in operation, primarily because it is able to secure the exclusive rights to these works, such that no one else can exploit them. Accordingly, Leopard's entire business model is based on this fundamental legal right, which is well-recognized under Swedish copyright law and throughout the

world. The Settlement Agreement that Google has asked this Court to approve would upend these well-recognized rights and is an affront to copyright holders throughout the world. Leopard thus respectfully requests that this Court not approve the Settlement Agreement, with respect to foreign rightsholders at a minimum, for the reasons set forth in our accompanying Objections and below.

**Leopard Catalogue and Membership In The Class**

4. Leopard is the copyright holder of one or more Books or Inserts, as those terms are used in the Settlement Agreement, having published over 200 books since 1922.

5. Leopard does not commercially exploit in the United States virtually any of the books that it publishes. All of the books that Leopard publishes are published in Sweden. However, Leopard has sold translation rights of the books of Henning Mankell (around 10 titles) to United States companies.

6. Leopard has not registered its books with the United States Copyright Office.

**Notice Problems**

7. Leopard was not aware of the Settlement Agreement until spring 2009, when it received a written notice of the Settlement Agreement in the mail from Svenska Förläggareföreningen, the association of book publishers in Sweden .

8. The written notice that Leopard received was translated into Swedish, but it contained numerous translation errors that made the notice difficult to read or understand. I understand that these translation errors will be detailed for the Court by Svenska Förläggareföreningen, so I do not detail them here.

9. The Settlement Agreement to which the written notice refers has, to my knowledge, never been translated into Swedish. While Leopard would have wished to review that full agreement, it was not able to do so in any meaningful way, given that the Settlement Agreement was made available only in English on the website dedicated to this case. Like Leopard, virtually all of the publishing houses in Sweden are of modest size, and lack the proficiency needed to read or understand the English-only Settlement Agreement. It is my firm belief that individual Swedish authors also are not able to review or understand this complex document as written in English.

10. The Settlement Agreement is legally complicated and hard for us to comprehend since, on the most basic level, a proceeding such as the sweeping class-action of this extent, governing future rights of rightsholders all over the world, simply does not exist under Swedish law.

11. Leopard did not understand its importance until very recently. It was only because Leopard actively sought the counsel of the Swedish Publisher's Association that Leopard was able to obtain an understanding of the Settlement Agreement.

**The Burdens The Settlement Agreement Improperly Seeks To Impose**

12. The Settlement Agreement requires publishers like Leopard to take burdensome affirmative action if they wish to preserve their existing copyright protections, remain legally unaffected by the Settlement Agreement and avoid having their works permanently licensed to Google for Google's use. This action requires us to read and comprehend the complex, poorly translated Notice – without the benefit of a translated Settlement Agreement – simply to determine whether the affirmative act of opting-out is in our interest. If we wish to opt-out, we must submit formal paperwork to

the Settlement Administrator by a date certain, or forever lose this right. Moreover, in order to effectively opt-out, we are required to provide information including which sub-class we belong to, our address and any pseudonym used by an author of the noted works. We must also identify all of the imprints under which we publish, or have published, our works. This is in contrast to the existing laws of copyright recognized by our country and internationally, under which we would not be required to take any action at all to preserve our fundamental exclusive right to control the use of our works.

13.     If we do not opt-out, the Settlement imposes additional, cumbersome administrative burdens in order to direct Google not to use our works. We must submit a lengthy, 8-page Claim Form, which directs us to read the poorly translated lengthy notice and: (1) individually "claim" each one of our Books and Inserts; (2) provide detailed information about each work (including each author, co-author and contributor, imprint, whether the publisher owns worldwide rights to the work and rights to all of the pictorial works within the work); (3) find each work on a books database that Google maintains at http://www.googlebooksettlement.com (the "Books Database"); (4) determine whether Google has classified such work as Commercially Available; (5) inform Google if we agree with such determination (even though the Settlement defines Commercially Available vaguely); (6) provide a description of each Insert; (7) determine if we are Confident or Highly Confident that our works have not reverted to an author; and (8) certify a number of matters, including that the use of any Insert claimed required our permission and we did not give permission for their online use after June 1, 2003.

14.     As set forth above, in order to "direct" Google not to use our works, we would have to provide the above information to Google for over 200 individual works,

even though under existing law we would not be required to take any action to preserve our exclusive rights against Google's unauthorized use of our works.

15. Providing this "direction" to Google is an onerous and difficult task under the Settlement Agreement, especially because, as described below and elsewhere in our Objections and accompanying submissions, the Books Database is difficult to work with and flawed in numerous respects.

**The Books Database and The Classification of Books as "Commercially Available"**

16. Leopard has logged onto the Books Database and determined that it is quite difficult to use, and riddled with errors.

17. The Books Database also identifies a number of Leopard's works as not Commercially Available (for example, as of August 24, 2009, several books by Henning Mankell), even though Leopard is actively exploiting such works now.

18. The Books Database gives us no information about how many of the remaining titles in the database, or other titles which we own and control, Google may seek to digitize in the future. Accordingly, it is impossible for our company to predict how many of our books Google will scan, use and/or pay for in the future and, accordingly, what the Settlement Agreement will mean for us.

19. For each of the foregoing reasons, and for the reasons set forth in the Objections, Leopard objects to the Settlement Agreement and respectfully urges the Court not to approve it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 31, 2009

Dan Israel