gedruckten Kopien unmöglich machen, (c) zur Herstellung von Ersatz für gedruckte Bücher, die beschädigt, abgenutzt, verlorengegangen oder gestohlen sind, (d) zur Nutzung von Indizes und Suchmaschinen und zur Anzeige von Ausschnitten in Verbindung mit Suchmaschinen (außer wenn der Rechteinhaber kein Nutzungsrecht für sein Buch vergeben hat und der vollständig teilnehmenden Bibliothek diese Nutzung untersagt), (e) um dem Lehrkörper und den Universitätsangestellten die Nutzung von bis zu fünf Seiten eines Buches zu gestatten, das für den persönlichen wissenschaftlichen Gebrauch und für die Lehre nicht gewerblich erhältlich ist, sofern diese Bücher nicht Teil des institutionellen Abonnements sind; (f) zur „nachhaltigen Forschung" (vorbehaltlich der in Punkt 9 (J) genannten Beschränkungen), (g) nach einer Änderung des US-Urheberrechtsgesetzes dahingehend, dass verwaiste Werke genutzt werden dürfen, zur Nutzung von Büchern aus ihrer digitalen Bibliothekskopie in Übereinstimmung mit dem geänderten Gesetz und (h) für andere gesetzlich zulässige Nutzungen, die die Rechteinhaber bzw. die Registrierstelle genehmigen (die Registrierstelle kann nur Nutzungen genehmigen, die nicht die Rechte der Rechteinhaber beeinträchtigen). Der Vergleichstext untersagt auch vollständig teilnehmenden Bibliotheken, bestimmte Nutzungen ihrer digitalen Bibliothekskopie; jedoch wird bei fehlendem institutionellen Abonnement die angemessene Nutzung von nicht gewerblich erhältlichen Büchern nicht untersagt.

### J. Research-Corpus (Sammlung wissenschaftlicher Werke)

Außerdem werden Digitalexemplare aller von Google digitalisierten Bücher aus Bibliotheken in einem Research-Corpus zusammengefasst. Der Research-Corpus lässt sich zu jeder gegebenen Zeit an bis zu zwei getrennten Sites („Host-Sites") hosten. Mit Genehmigung der Registrierstelle kann Google eine weitere Host-Site werden (d. h. eine dritte Host-Site, wenn zwei bereits bestehen). Der Research-Corpus steht nur „qualifizierten Nutzern" zur Verfügung, um bestimmte Arten wissenschaftlicher Arbeiten durchzuführen, einschließlich: (a) rechnerische Analysen digitalisierter Bilder, um das Bild entweder zu verbessern oder Text- bzw. Strukturinformation aus dem Bild zu extrahieren, (b) das Extrahieren von Informationen, um Beziehungen zwischen Büchern und innerhalb von Büchern zu verstehen bzw. zu entwickeln; (c) Sprachanalyse, um Sprache, Sprachgebrauch, Semantik und Syntax besser zu verstehen, wie sie sich mit der Zeit und über Literaturgattungen hinweg entwickeln, (d) Maschinenübersetzungen (ohne wirklich Übersetzungen von Büchern für Anzeigezwecke zu erstellen) und (e) Entwicklungen neuer Indexierungs- und Suchtechniken. Weitere Informationen bezüglich der im Zusammenhang mit dem Research-Corpus gestatteten Arten wissenschaftlicher Arbeiten finden sich in Absatz 7.2 (d) des Vergleichstextes. Außerdem kann diese Forschung auch in den digitalen Bibliothekskopien der vollständig teilnehmenden Bibliotheken durchgeführt werden. **Bücher werden bei ihrer Löschung (siehe Punkt 9 (D)) aus dem Research-Corpus und den digitalen Bibliothekskopien ausgeschlossen.**

**Rechteinhaber von Büchern und Einfügungen können ihre Ansprüche gegen Google und vollständig teilnehmende Bibliotheken für die Nutzung von Büchern und Einfügungen im Research-Corpus nur wahren, wenn sie aus der Vergleichsgruppe austreten. Siehe Punkt 15 mit weiteren Informationen dazu, wie man austritt.**

**Der Rechteinhaber besitzt das Recht, jegliche seiner Bücher, die am 5. Januar 2009 oder innerhalb von zwei Jahren danach gewerblich erhältlich sind aus dem Research-Corpus zurückzuziehen, solange sie gewerblich erhältlich ist. Wenn Ihr Buch gewerblich erhältlich ist, und Sie es aus dem Research-Corpus zurückziehen möchten, müssen Sie das Claim Form ausfüllen.**

Der Research-Corpus und seine Nutzung unterliegen detaillierten Voraussetzungen und Beschränkungen, die im unter http://www.googlebooksettlement.com/intl/de/agreement.html und vom Settlement Administrator erhältlichen Vergleichstext aufgelistet sind (siehe Absatz 7.2 (d) des Vergleichstextes) sowie in Vereinbarungen zwischen der Registrierstelle und den Host-Sites.

### K. Verteilungsplan / nicht beanspruchte Gelder

(1) <u>Verteilungsplan</u>

Rechteinhaber, die sich bei der Registrierstelle registrieren, werden in US-Dollar für die gewerbliche Nutzung ihrer Bücher und Einfügungen seitens Google entschädigt. Die Grundsätze für die Entschädigung werden im Verteilungsplan dargelegt, der unter

http://www.googlebooksettlement.com/intl/de/agreement.html (siehe Anhang C des Vergleichstextes) oder vom Settlement Administrator erhältlich ist. Die Entschädigung der Rechteinhaber basiert auf der tatsächlichen Nutzung von Büchern („Nutzungsgebühren") und auf der Einbeziehung von Büchern und Einfügungen in der institutionellen Abonnementsdatenbank („Einbeziehungsgebühren").

(a) <u>Nutzungsgebühren</u>. Die Buch-Rechteinhaber erhalten Nutzungsgebühren für alle Umsatzmodelle. Für die Nutzung eines Buches im Abonnement berechnet die Registrierstelle die „Nutzung" auf Grund einer Reihe von Faktoren: wie viele Male wird das Buch angezeigt, wieviele Seiten des Buches werden angezeigt und welchen vergleichskontrollierten Preis hat das Buch im Verhältnis zur Nutzung anderer Bücher im gleichen Zeitraum. Für andere Nutzungen basieren die Nutzungsgebühren auf dem Preis, zu dem das Buch verkauft wird, auf der Anzahl der gedruckten Seiten oder den Werbeeinnahmen, die das Buch erreicht. Die Registrierstelle berechnet in jedem Berichtszeitraum die Nutzungsgebühren pro Buch und bestimmt den Berichtszeitraum auf der Grundlage der Effizienz. Für Einfügungen werden keine Nutzungsgebühren bezahlt.

(b) <u>Einbeziehungsgebühren.</u> Einbeziehungsgebühren werden für urheberrechtlich geschützte Bücher und Einfügungen aus Erlösen der Registrierstelle gezahlt, die diese aus Verkäufen von Abonnements erhält. Die avisierte Einbeziehungsgebühr für Bücher beträgt 200 USD pro Buch, die Mindesteinbeziehungsgebühr für Einfügungen beträgt 50 USD pro ganzer und 25 USD pro Teileinfügung. Bezüglich Einfügungen werden die für Inhalte aus einem Werk zu erzielenden Einbeziehungsgebühren auf 500 USD beschränkt, unabhängig davon, wie viele Einfügungen aus dem einen Inhalt geschaffen werden und in wie vielen anderen Werken die Einfügung erscheint. Rechteinhaber haben ein Recht auf die Einbeziehungsgebühr, solange sie bzw. andere Rechteinhaber die betreffenden Bücher und Einfügungen nicht von Abonnements ausschließen. (Wenn Google beschließt, aus beliebigem Grund ein Buch nicht in die Abonnement-Datenbank einzubeziehen, ist der Buch- und Einfügungen-Rechteinhaber an diesem Buch dennochzum Erhalt der Einbeziehungsgebühren berechtigt.) **Sobald Rechteinhaber ihre Einbeziehungsgebühren erhalten, ist es ihnen nicht mehr gestattet, ihre Bücher und Einfügungen aus Abonnements auszuschließen, es sei denn, dass sie der Registrierstelle die Einbeziehungsgebühren erstatten.**

Google kreiert mit dem Verkauf von Abonnements auf eine Buch-Datenbank ein neues Geschäftsmodell. Dementsprechend kann man die Vergütung für den Einbezug und die Nutzung von Büchern und Einfügungen in Abonnements nicht mit letzter Gewissheit quantifizieren. Dies gilt besonders für die Einbeziehungsgebühren, und es ist möglich, dass der Einbeziehungsgebührenfonds in zehn Jahren nicht mehr ausreicht, um alle Einbeziehungsgebühren an alle berechtigten Rechteinhaber auszuzahlen. Die Kläger hoffen, dass der Verkauf von Abonnements stabil bleibt und mehr als genug Geld vorhanden sein wird, um alle Einbeziehungsgebühren zu zahlen. Ist dies am Ende des ersten Jahrzehnts nach Beginn der Zahlungen der Abonnementserlöse an die Registrierstelle, dann erhalten die Rechteinhaber mehr als die oben angegebenen Einbeziehungsgebühren. Reicht das Kapital am Ende des betreffenden Jahrzehnts jedoch nicht aus, entscheidet der Vorstand der Registrierstelle, ob es insgesamt im besten Interesse der Rechteinhaber ist, weiterhin Zahlungen der Einbeziehungsgebühren für Bücher zu erhalten oder ob die Zahlung von Einbeziehungsgebühren zugunsten der alleinigen Zahlung von Nutzungsgebühren eingestellt wird. Stimmt eine Mehrheit des Vorstands dafür, die Zahlung von Einbeziehungsgebühren für Bücher zu beenden, bevor die avisierte Einbeziehungsgebühr von 200 USD pro Buch erreicht ist, erhalten die Buch-Rechteinhaber möglicherweise nicht 200 USD Einbeziehungsgebühren, die verfügbaren Mittel werden an die zu diesem Zeitpunkt empfangsberechtigten Rechteinhaber verteilt,

und die Buch-Rechteinhaber erhalten danach nur noch Nutzungs-Gebühren. (Wenn der Vorstand der Registrierstelle der Beendigung der Zahlung von Einbeziehungsgebühren nicht zustimmt, werden diese Zahlungen gemäß Punkt 9 (K) (1) (b) und (c) weitergeführt. Auf jeden Fall werden die Einbeziehungsgebühren für Einfügungen solange gezahlt, bis die Registrierstelle 50 USD pro ganzer und 25 USD pro Teileinfügung zahlt.

**Um eine Einbeziehungsgebühr für einige Ihrer Bücher oder Einfügungen zu erhalten, müssen Sie sie bei der Registrierstelle registrieren, indem Sie das Claim Form innerhalb von fünf Jahren des Datums des Inkrafttretens ausfüllen. Die Website http://www.googlebooksettlement.com/intl/de/ wird das Datum des Inkrafttretens anzeigen, aber inzwischen werden Sie dazu ermuntert, Ihre Bücher und Einfügungen so bald wie möglich zu registrieren.**

(c) <u>Aufteilung von Abonnementerlösen zwischen Nutzung und Einbeziehung</u>. Vom an die Registrierstelle fließenden Nettoerlös aus Abonnements (d. h., nach Zahlung ihrer Verwaltungsgebühren), fließen wiederum 75 % in einen Nutzungsgebührenfonds und 25 % in einen Einbeziehungsgebührenfonds. Der Einbeziehungsgebührenfonds selbst wird in zwei Unterfonds unterteilt: 80 % (der 25 %) fließen in einen Buchunterfonds und 20 % (der 25 %) in einen Einfügungsunterfonds. Wenn am oder vor dem zehnten Jahrestag des Tages, an dem die Registrierstelle erstmals Abonnementserlöse erhält, im Einbeziehungsgebührenfonds ausreichend Geld vorhanden ist, um 200 USD pro Buch, 50 USD pro ganzer und 25 USD pro Teileinfügung zahlen zu können, dann wird der gesamte Einbeziehungsgebührenfonds zu diesem Zeitpunkt ausgeschüttet Wenn am oder vor dem zehnten Jahrestag des Tages nicht ausreichend Geld vorhanden ist, um diese Summen zahlen zu können, dann werden ab diesem Zeitpunkt solange 10 % der an die Registrierstelle fließenden Nettoerlöse aus den Abonnements in den Einbeziehungsgebührenfonds eingezahlt, bis die 200 USD pro Buch, 50 USD pro ganzer und 25 USD pro Teileinfügung gezahlt werden können, es sei denn, dass die Mehrheit des Vorstandes der Registrierstelle in Bezug auf Bücher der Einstellung der Einzahlung von Abonnementserlösen in den Buchunterfonds zustimmt.

Die oben beschriebene Aufteilung zwischen Nutzungsgebühren und Einbeziehungsgebühren ist der Versuch der Kläger, die folgenden konkurrierenden Aspekte fair abzuwägen: (1) den Wert eines Buches, das tatsächlich „genutzt" wird und (2) den Wert, den Bücher bzw. Einfügungen kraft ihrer Einbeziehung und Nutzbarmachung für Nutzer zum Gesamtwert der Abonnementsdatenbank beiträgt.

(d) <u>Zusammenfassung anderer Bestimmungen</u>. (1) Nutzungsgebühren und Einbeziehungsgebühren für bestimmte Bücher und Einfügungen werden erst gezahlt, wenn die Registrierstelle Streitigkeiten unter den Rechteinhabern in Bezug auf diese Bücher und Einfügungen beigelegt hat. (2) Für jeden eingetragenen Rechteinhaber führt die Registrierstelle ein Konto für die eingetragenen Bücher und Einfügungen des Rechteinhabers, und davon zahlt sie Nutzungsgebühren und Einbeziehungsgebühren bzw. eine Kombinationen beider nur dann, wenn sie dem Rechteinhaber eine Mindestsumme (z. B. 25 USD) schuldet; Beträge darunter auszuzahlen ist für die Registrierstelle nicht effizient. (3) Rechteinhaber von Einfügungen erhalten höhere Einbeziehungsgebühren, wenn sie der Registrierstelle nachweisen, dass der Vertrag mit den Buch-Rechteinhabern höhere Tantiemen einbringt als die Einbeziehungsgebühren für Einfügungen. (4) Jegliche Rechtsstreitigkeiten bezüglich der Zuteilung von Einnahmen unter den Buch-Rechteinhabern werden gemäß der Beziehung zwischen Autoren und Verlegern (abgesehen von Rechtsstreitigkeiten zwischen mehreren Verlegern desselben Buches bzw. Hauptwerkes) beigelegt, und alle Rechtsstreitigkeiten bezüglich der Verteilung von Erlösen für Einfügungen werden im bindenden Schiedsverfahren gemäß den in Artikel IX des Vergleichstextes dargelegten Vorschriften geregelt.

(2)  Nicht beanspruchtes Kapital

Die Registrierstelle erhält wahrscheinlich Erlöse von Google, die Rechteinhabern zustehen, die sich bei der Registierungsstelle nicht gemeldet und ihre Gelder auf ihrem Konto bei der Registrierstelle innerhalb von fünf Jahren nach dem Tag des Inkrafttretens (bei Einbeziehungsgebühren) oder innerhalb von fünf Jahren, nachdem ihre Bücher genutzt wurden (bei Nutzungsgebühren), nicht beansprucht haben („nicht beanspruchtes Kapital"). Nicht beanspruchtes Kapital wird wie folgt ausgeschüttet: (a) **Nicht beanspruchtes Kapital aus Abonnementerlösen** dient zuerst der Deckung des Betriebsaufwandes der Registrierstelle und der Aufrechterhaltung von Rücklagen für die Registrierstelle, und alles danach noch übrige nicht beanspruchte Kapital wird anteilsmäßig den eingetragenen Rechteinhabern ausgezahlt, deren Bücher in dem Berichtszeitraum Buchnutzungserlöse erbrachten, in dem das nicht beanspruchte Kapital erlöst wurde, und b) **nicht beanspruchtes Kapital aus Buchnutzungserlösen** dient zuerst der Deckung des Betriebsaufwandes der Registrierstelle und der Aufrechterhaltung von Rücklagen für die Registrierstelle;, und alles danach noch übrige nicht beanspruchte Kapital wird anteilsmäßig den eingetragenen Rechteinhabern ausgezahlt, deren Bücher in dem Berichtszeitraum Buchnutzungserlöse erbrachten, in dem das nicht beanspruchte Kapital erlöst wurde, bis die Rechteinhaber eines einzigen Buches insgesamt 70 % des bei Google eingegangenen Erlöses für die Nutzung dieses Buches erhalten haben; jegliches danach noch verbleibende nicht beanspruchte Kapital geht an gemeinnützige Unternehmen, die direkt oder indirekt zugunsten der Rechteinhabern und des lesenden Publikums tätig sind.

**L.    Sicherheitsvorkehrungen**

Google und die Kläger (einschließlich der Gutachter der Kläger) haben einen Sicherheitsstandard entwickelt, um zu gewährleisten, dass Bücher und Einfügungen angemessenen Sicherheitsmaßnahmen („Sicherheitsstandards") unterliegen. Die Sicherheitsstandards beziehen sich auf mehrere Bereiche der Sicherheit: Verletzungen der Sicherheit in Bezug auf Bücher bei Google, Verletzungen der Sicherheit bei den digitalen Bibliothekskopien der vollständig teilnehmenden Bibliotheken, Verletzungen der Sicherheit bei den Host-Sites des Research-Corpus und Bemühungen, den unberechtigten Zugriff auf Bücher einzuschränken. Der Sicherheitsstandard erfordert, dass Google, die vollständig teilnehmenden Bibliotheken und die Host-Sites ihren eigenen Security Implementation Plan entwickeln, der den Sicherheitsstandard einhält und von der Registrierstelle genehmigt werden muss. Der Sicherheitsstandard (Anhang D des Vergleichstextes) kann unter http://www.googlebooksettlement.com/intl/de/agreement.html eingesehen oder vom Settlement Administrator angefordert werden. Außerdem sehen der Vergleichstext und die Vereinbarungen der Registrierstelle mit den vollständig teilnehmenden Bibliotheken und den Host-Sites Rechtsmittel gegen Sicherheitsverletzungen vor. Weitere Informationen über diese Rechtsmittel enthält Artikel VIII des Vergleichstextes, der unter http://www.googlebooksettlement.com/intl/de/agreement.html oder vom Settlement Administrator erhältlich ist.

**M.    Streitbeilegung**

Google, die Registrierstelle, die Rechteinhaber, die teilnehmenden Bibliotheken und die Host-Sites versuchen, die meisten Rechtsstreite bezüglich des Vergleichs informell zu lösen. Wenn solche Beilegungsversuche nach dreißig Tagen erfolglos sind, geht der Streit an ein Schiedsgericht, und die Entscheidung des Schiedsrichters ist endgültig und für beide Streitparteien bindend. Beispiele von Streitigkeiten, die dem Schiedsverfahren unterworfen sind: (a) Meinungsverschiedenheiten über die Preiskalkulation und andere wirtschaftlichen Bedingungen; (b) Meinungsverschiedenheiten über behauptete Sicherheitsverletzungen; (c) Meinungsverschiedenheiten darüber, ob ein Buch lieferbar oder vergriffen ist (wenn der Streit zwischen einem Autor und einem Verleger herrscht), Meinungsverschiedenheiten darüber, ob ein Buch gemeinfrei ist, und (d) Meinungsverschiedenheiten darüber, ob Google oder eine vollständig teilnehmende Bibliothek ein Buch genutzt haben, an dem sie gemäß Vergleich kein Nutzungsrecht hatten. Diese Liste enthält Beispiele und ist keine vollständige Liste der möglichen Arten von Streitigkeiten für ein Schiedsgerichtsverfahren. Sie sollten Artikel IX des Vergleichstextes, die Beziehung zwischen Autor und Verleger (Anhang A zum Vergleichstext) und die Vereinbarungen zwischen der Bibliothek und der Registrierstelle lesen (Anhang B des Vergleichstextes) lesen,

die unter http://www.googlebooksettlement.com/intl/de/agreement.html oder vom Settlement Administrator erhältlich sind, um zu erfahren, welche Streitigkeiten einem bindenden Schiedsgerichtsverfahren bzw. Gerichtsverfahren unterliegen.

Das Gericht ist weiterhin sachlich zuständig, um alle anderen Streite um die Verpflichtungen der Parteien gemäß dem Vergleichstext und den anderen Vereinbarungen beizulegen. Außerdem behalten sich die Parteien zur schnelleren Streitbeilegung bzw. bei wiederholtem vorsätzlichen Vertragsverstoß vor, beim Gericht eine einstweilige Verfügung zu beantragen, ohne vorher das Schiedsgericht anzurufen.

### N.  Nicht ausschließliche Rechte

Rechte, die Google und den teilnehmenden Bibliotheken gewährt sind, sind nicht ausschließlich, und Rechteinhaber haben das Recht, über die Registrierstelle oder anderweitig, natürliche und juristische Personen, darunter auch direkte Mitwettbewerber von Google ein umfassendes Nutzungsrecht zu erteilen, auch für Nutzungen, die mit denen von Google bzw. den teilnehmenden Bibliotheken identisch sind. Die Google und den teilnehmenden Bibliotheken gewährten Rechte und Ermächtigungen sind keine Übertragungen des Urheberrechts an jenen Werken, und nichts im Vergleichstext führt zu einer solchen Übertragung von Urheberrechten an den Werken von Rechteinhabern.

## 10. Welche Rechte stehen Autoren und Verlegern in der Beziehung zwischen ihnen zu?

Autoren und Verleger können US-Urheberrechte am selben Buch innehaben. Die jeweiligen Rechte von Mitgliedern der Untergruppe Autoren und der Untergruppe Verleger werden in diesem Absatz zur Beziehung zwischen Autor und Verleger dargelegt, der unter http://www.googlebooksettlement.com/intl/de/agreement.html (siehe Anhang A des Vergleichstextes) oder vom Settlement Administrator erhältlich ist. Folgendes ist eine Zusammenfassung der Beziehung zwischen Autoren und Verlegern:

(1) Lieferbare Bücher

Um es Google zu ermöglichen, jedes lieferbare Buch im Hinblick auf die Display-Uses zu nutzen, müssen sich der Autor (außer dem Autor einer Auftragsarbeit) und der Verleger mit der Übertragung der Nutzungsrechte einverstanden erklären. Die Registrierstelle leitet die von Google für seine Nutzung lieferbarer Bücher gezahlten Erlöse (einschließlich der Bartantiemen für Bücher, die Google am oder vor dem 5. Mai 2009 digitalisierte) an den Verleger weiter, der dann in Übereinstimmung mit dem Vertrag zwischen Autor und Verleger den Autor bezahlt. Ist der Autor mit der Höhe der vom Verleger geleisteten Zahlung nicht einverstanden, kann der Streit mithilfe der Registrierstelle im Schiedsverfahren gelöst werden. Das Schiedsrecht gilt nicht für Autoren und Verleger von Lehrbüchern (d. h., Büchern, die nach ihrer Veröffentlichung in erster Linie zum Verkauf im Bildungsmarkt bestimmt sind (d. h. der Markt für primäre, sekundäre und tertiäre Schulbildung, Weiterbildung, berufliche Bildung und Selbststudium) zur Nutzung in Bildungsprogrammen; Streitigkeiten zwischen solchen Parteien werden laut der jeweiligen Verträge zwischen den Autoren und Verlegern beigelegt.

Bei jedem lieferbaren Buch, wofür Google ein Nutzungsrecht im Hinblick auf die Display-Uses erhält, haben sowohl der Autor als auch der Verleger das Recht, die Löschung des Buches zu verlangen bzw. das Buch von bestimmten Display-Uses auszuschließen. Äußern sich beide, gibt die jeweils stärkere Einschränkung des Nutzungsrechtes den Ausschlag (unabhängig davon, ob sie vom Autor oder vom Verleger kommt). Stimmen der Autor und der Verleger zu, dass Google ein lieferbares Buch für Verbraucher nutzen kann („Consumer Use"), hat der Verleger das Recht, die Preiskalkulation des Buches zu kontrollieren. Wenn jedoch der Autor gegen den Preis protestiert, den Verleger aber nicht davon überzeugen kann, dass er den Preis ändert, kann der Autor das Nutzungsrecht in Bezug auf die Verbraucher einschränken bzw. es von dieser Nutzung ausschließen.

(2) <u>Vergriffene Bücher</u>

    (a) <u>Löschung und Ausschluss von den Display-Uses.</u> Wie oben beschrieben, legt der Vergleichstext fest, dass alle vergriffenen Bücher automatisch in die Display-Uses einbezogen werden. Rechteinhaber können Entscheidungen betreffs der Löschung, des Ausschlusses und der Preiskalkulation von vergriffenen Büchern wie folgt treffen: (a) für Bücher, die als Austragsarbeiten erstellt wurden, kann nur der Verleger die Löschung, den Ausschluss und die Preiskalkulation bestimmen, (b) für Bücher, deren Rechte an den Autor zurückgefallen sind bzw. die „als vom Autor kontrolliert" betrachtet werden (siehe den folgenden Paragraphen), kann nur der Autor Löschung, Ausschluss und Preiskalkulation bestimmen und (c) für alle anderen Bücher, deren Rechte noch nicht an den Autor zurückgefallen sind, können entweder der Autor oder der Verleger, wenn sie wichtige Gründe angeben, Löschungs- und Ausschlussentscheidungen treffen sowie die Preiskalkulation bestimmen (wobei die stärkere Einschränkung des Zugriffs und der höhere Preis den Ausschlag geben).

Im Sinne des Vergleiches (und nur in diesem Sinne) gilt ein Buch „als vom Autor kontrolliert", wenn die Rechte an dem Buch gemäß dem Vertrag zwischen Autor und Verleger an den Autor zurückübertragen werden können, der Autor seinen Antrag auf Rückübertragung der Rechte an den Verleger gesandt hat, und der Verleger auf diesen Antrag entweder innerhalb von neunzig Tagen oder – falls diese länger ist – innerhalb einer im Vertrag zwischen Autor und Verleger angegebenen Frist schriftlich antworten muss. Sind diese Bedingungen erfüllt, kann der Autor einen Antrag an die Registrierstelle (mit Kopie an den Verleger) senden, dass das Buch, als „vom Autor kontrolliert" behandelt wird. In diesem Antrag versichert der Autor, dass das Buch gemäß Test 1 (siehe Punkt 10 (3) (a) weiter unten) nicht mehr lieferbar ist und dass die längere der oben genannten Fristen des Verlegers abgelaufen ist; dem Antrag muss eine Kopie des zuvor an den Verleger gesandten Antrages auf Rückübertragung beiliegen sowie eine Kopie des Vertrages zwischen Autor und Verleger (falls der Autor ihn hat).

Widerspricht der Verleger dem schriftlichen Antrag nicht innerhalb von 120 Tagen, führt die Registrierstelle das Buch als „vom Autor kontrolliert". Wenn der Verleger dem Antrag fristgerecht widerspricht, legen die Parteien die Angelegenheit der Registrierstelle zur Entscheidung vor.

    (b) <u>Verteilung von Bartantiemen und Erlösen.</u> Die Registrierstelle zahlt alle Tantiemen für ein vergriffenes Buch jeweils getrennt dessen Autor und Verleger: (a) 100 % an den Autor für jedes Buch, dessen Rechte rückübertragen wurden bzw. das „vom Autor kontrolliert" ist; (b) 100 % an den Verleger für jedes Buch, das eine „Auftragsarbeit" darstellt, und (c) 65 % an den Autor sowie 35 % an den Verleger für jegliche Bücher, deren Rechte nicht rückübertragen wurden und die vor 1987 veröffentlicht wurden, sowie je 50 % an Autor und Verleger, wenn das Buch 1987 oder später veröffentlicht wurde.

(3) <u>Bestimmung, ob ein Buch lieferbar oder vergriffen ist</u>

Im Sinne des Vergleiches (und nur in diesem Sinne) gilt ein Buch als „lieferbar", wenn es einem der folgenden zwei Tests entspricht:

    (a) Test 1. Das Buch ist gemäß dem Vertrag zwischen Autor und Verleger „lieferbar" bzw. der Vertrag sieht sieht keine Rückübertragung von Rechten vor. In diesem Sinne ist das Buch lieferbar, selbst wenn der Vertrag den Begriff „lieferbar" nicht enthält. Wenn der Vertrag „lieferbar" nach den Einnahmen definiert und Google mithilfe seines im Vergleich genehmigten Umsatzmodells mehr als 50 % der Erlöse erwirtschaftet, die dem Verleger für die Nutzungsrechte des Buches gezahlt werden, dann dienen diese Erlöse NICHT dazu, zu bestimmen, ob dieser Test 1 erfüllt wurde. Wenn der Vertrag „lieferbar"

23

anhand der verkauften Stückzahlen definiert oder mittels einer anderen Methode als dem Erlös, dann wird ein gleichwertiger Grundsatz zur Bestimmung angewandt, ob Test 1 bestanden ist. Die Tatsache, dass ein Buch oder Informationen über ein Buch in eine Datenbank einbezogen werden bzw. dass Informationen über das Buch in den Ergebnissen von Suchmaschinen erhältlich sind, bedeutet alleine noch nicht, dass das Buch „lieferbar" ist. Ein Buch ist nicht lieferbar, wenn der Vertrag die Rückübertragung vorsieht und alle Kriterien für die Rückübertragung erfüllt sind (außer wenn der Autor seinen Antrag auf Rückübertragung gemäß seinem Vertrag mit dem Verleger nicht hätte stellen müssen)

(b) <u>Test 2</u>: Der Verleger gibt im Einklang mit den Rechten, die er an dem Buch gemäß seinem Vertrag mit dem Autor hat, dem Handel öffentlich bekannt, dass er konkrete Schritte unternommen hat, um eine unveränderte bzw. eine Neuausgabe des Buches zu veröffentlichen, und diese Veröffentlichung erfolgt innerhalb von zwölf Monaten nach der Bekanntgabe des Verlegers.

(4) <u>Streitigkeiten, ob ein Buch lieferbar oder vergriffen ist</u>

Mitglieder der Untergruppe Autoren und der Untergruppe Verleger bzw. ihre Vertreter im Vorstand der Registrierstelle können der Bestimmung eines Buches als lieferbar bzw. vergriffen widersprechen, indem sie der Registrierstelle Belege (wie Verträge, Tantiemenabrechnungen, gewerbliche Mitteilungen und beeidigte Erklärungen) vorlegen, die ausreichen, um ihren Widerspruch zu begründen, ungeachtet dessen, ob das Buch einen der beiden Tests unter (3) oben bestanden hat. Die andere Partei hat das Recht auf Erwiderung innerhalb von 120 Tagen; erwidert sie innerhalb dieser Frist nicht, wird das Buch umklassifiziert. Wenn Autor und Verleger widersprüchliche Belege vorlegen und die Angelegenheit nicht gütlich beilegen können, dann legt die Registrierstelle oder ein von ihr ausgewählter Schiedsrichter den Streit bei, indem er die Beweise beider Parteien sowie andere relevanten Beweise und Argumente der Parteien prüft, einschließlich des Verlaufs der Geschäftsbeziehung zwischen den Parteien und der Branchennormen und Usancen. Die Entscheidung der Registrierstelle (bzw. des Schiedsrichters) ist bindend, obwohl die Entscheidung nur für den Vergleich gilt und für keinen anderen Zweck eingesetzt werden darf, etwa als Präzedenzfall in einem anderen nicht mit dem Vergleich zusammenhängenden Streit zwischen dem Autor und Verleger desselben Buches.

(5) <u>Andere Streitigkeiten</u>

Alle Streitigkeiten zwischen Koautoren, Erben eines Autors oder mehreren Rechteinhabern, die Mitglieder der Untergruppe Autoren sind, werden schiedsgerichtlich beigelegt. Streitigkeiten zwischen mehreren Rechteinhabern, die Mitglieder der Untergruppe Verleger sind, können schiedsgerichtlich beigelegt werden, müssen aber nicht.

(6) <u>Aufteilung von nicht beanspruchtem Kapital zwischen Autoren und Verlegern</u>

Vorbehaltlich der in Punkt 9 (K) (2) genannten Bedingungen für „nicht beanspruchtes Kapital" werden alle nicht beanspruchten Erlöse, die gemäß der Beziehung zwischen Autoren und Verlegern den Mitgliedern der Untergruppe Autoren zugeteilt werden, an diejenigen Mitglieder der Untergruppe Autoren verteilt, die ihre Ansprüche geltend gemacht haben, und alle nicht beanspruchten Erlöse, die den Mitgliedern der Untergruppe Verleger zugeteilt werden, werden an die Mitglieder der Untergruppe Verleger verteilt, die ihre Ansprüche geltend gemacht haben.

(7) <u>Google-Partnerprogramm</u>

Ein Rechteinhaber kann sich gemäß dem Vergleichstext dafür entscheiden, ein Buch ins Partnerprogramm einzustellen statt die Display-Uses zuzulassen, weil er glaubt, dass er dadurch bessere wirtschaftliche Bedingungen mit Google aushandeln kann oder aus einem anderen Grund.

Der Vergleich mit Google bezieht sich nur auf die Display-Uses gemäß dem Vergleichstext und nicht auf das Partnerprogramm. Die Beziehung zwischen Autoren und Verlegern stattet die Rechteinhaber eines lieferbaren Buches mit bestimmten Rechten aus, wenn ein anderer Rechteinhaber an demselben Buch dieses Buch ins Partnerprogramm (oder in ein anderes Google-Programm einstellt, dessen Umsatzmodell dem im Vergleichstext besprochenen ähnlich is) statt in das Umsatzmodell des Vergleichstextes. Diese Rechte beziehen sich nur auf Bücher, die unter einem vor 1992 geschlossenen Vertrag zwischen Autor und Verleger veröffentlicht wurden, der danach nicht im Hinblick auf elektronische Rechte geändert wurde. Sie werden wie folgt zusammengefasst:

(a) <u>Lösch- bzw. Übertragungsanträge.</u> Ein Rechteinhaber, nach dessen Ansicht Google ein lieferbares Buch ohne die notwendige Genehmigung des Rechteinhabers ins Partnerprogramm (oder in ein anderes Google-Programm einstellt, dessen Umsatzmodell dem im Vergleichstext besprochenen ähnlich ist), kann von Google verlangen, das Buch entweder aus dem anderen Google-Programm zu löschen oder das Buch von dem anderen Google-Programm in das dem Vergleich entsprechende Programm zu übertragen. **Der Antrag muss an die Registrierstelle und Google gerichtet werden, wobei das Mitteilungsformular unter http://www.googlebooksettlement.com/intl/de/ verwendet wird, das auch vom Settlement Administrator erhältlich ist. Google benachrichtigt die natürliche bzw. juristische Person, mit deren Genehmigung Google das Buch im Partnerprogramm oder in anderen Google-Programmen nutzt. Wenn diese Person gegen die Löschung bzw. Übertragung innerhalb von dreißig Tagen Widerspruch einlegt, muss sie das Mitteilungsformular verwenden und die Registrierstelle sowie Google benachrichtigen, wobei das Benachrichtigungsformular unter http://www.googlebooksettlement.com/intl/de/ oder vom Settlement Administrator erhältlich ist.**

(b) <u>Unstrittige Anweisungen.</u> Wenn die natürliche oder juristische Person, die Google die Nutzung im Partnerprogramm oder anderen Google-Programmen gestattete, nicht innerhalb von dreißig Tagen erwidert, dann löscht Google das Buch oder überträgt es ins dem Vergleich entsprechende Programm, wie vom Rechteinhaber erbeten. Im letzteren Fall unterliegt das Buch dem Vergleichstext, und Zahlungen erfolgen gemäß der hier dargelegten Beziehung zwischen Autoren und Verlegern.

(c) <u>Strittige Löschanweisungen.</u> Wenn die Anweisung vorsieht, dass Google das Buch vom Partnerprogramm oder anderen Google-Programm (im Gegensatz zur Übertragung des Buches in das dem Vergleich entsprechende Programm) löscht, und wenn dem Antrag von einem anderen Rechteinhaber widersprochen wird, entscheidet Google, ob es die Anweisung erfüllt oder nicht. Jede Partei, die der Entscheidung von Google widersprechen möchten, kann die jeweils andere Partei verklagen, um gerichtlich feststellen zu lassen, wer das Recht hat, Google das Buchnutzungsrecht für das Partnerprogramm oder andere Programme zu übertragen. In Bezug auf die Entscheidung von Google, das Buch zu löschen oder zu nutzen, gibt keine Partei Rechte an Google ab.

(d) <u>Strittige Übertragungsanträge.</u> Wenn die Anweisung an Google die Übertragung des Buches aus dem Partnerprogramm oder anderen Google-Programmen in das dem Vergleich entsprechende Programm vorsieht, stellt Google die Nutzung des Buches in dem betreffenden Google-Programm ein, bis der konkurrierende Rechteinhaber den Streit beilegt. Alle Rechteinhaber können die jeweils anderen verklagen, um gerichtlich feststellen zu lassen, wer das Recht hat, Google das Buchnutzungsrecht für das Partnerprogramm oder andere Programme zu übertragen. Google bezieht das Buch auf jeden Fall nur dann in das Vergleichsprogramm ein, wenn die konkurrierenden Rechteinhaber Google gemeinsam ein entsprechendes Nutzungsrecht erteilen oder wenn

25

einer der konkurrierenden Rechteinhaber ein Gerichtsurteil erwirkt, das ihm die Vollmacht gibt, Google das betreffende Nutzungsrecht zu erteilen.

> **Das Obige bildet nur eine Zusammenfassung der Beziehung zwischen Autoren und Verlegern, und Ihnen wird empfohlen, die unter dieser Beziehung möglichen Verfahren vollständig nachzulesen: http://www.googlebooksettlement.com/intl/de/agreement.html (siehe Anhang A des Vergleichstextes); der Text ist auch vom Settlement Administrator erhältlich.**

## DAS VERBLEIBEN IN DER VERGLEICHSGRUPPE

### 11. Was geschieht, wenn ich nichts tue?

**Wenn Sie ein Mitglied der Untergruppe Autoren oder Untergruppe Verleger sind, müssen Sie gegenwärtig nichts tun, wenn Sie in der Vergleichsgruppe verbleiben möchten.** Wenn Sie sich für ein Verbleiben entscheiden, werden Ihre Rechte in diesem Rechtsstreit von den Vertretern der jeweiligen Untergruppen und dem Leitanwalt vertreten. Sie erhalten, falls das Gericht den Vergleich genehmigt, die Leistungen des Vergleiches (wenn Sie fristgerecht die entsprechenden Formulare einsenden); auf Ihre Ansprüche gegen Google und die teilnehmenden Bibliotheken verzichten sie und das Gericht weist sie zurück. Wenn Sie in der Gruppe verbleiben, sind Sie durch alle Urteile und Feststellungen des Gerichts im Zusammenhang mit dem Vergleich gebunden, unabhängig davon, ob diese für sie günstig oder ungünstig sind.

### 12. Gegenüber welchen juristischen Personen verzichte ich?

Vom Tag des Inkrafttretens an verzichten die Rechteinhaber auf ihre Ansprüche gegenüber Google und allen teilnehmenden Bibliotheken sowie ihren vergangenen, gegenwärtigen und zukünftigen Muttergesellschaften, Rechtsvorgänger, Rechtsnachfolger, Tochtergesellschaften, verbundenen Unternehmen und Geschäftsbereichen sowie ihren jeweiligen Organmitgliedern, Angestellten und anderen in Absatz X des Vergleichstextes aufgeführten Personenverzeichnet sind. Bezüglich der besonderen Ansprüche, die gegenüber diesen juristischen Personen aufgegeben werden siehe Punkt 13. Weitere Einzelheiten zu den befreiten juristischen Personen finden Sie im vollständigen Text der Verzichterklärungen in Artikel X des Vergleichstextes.

### 13. Welche Ansprüche gebe ich insbesondere auf, wenn ich am Vergleich teilnehme?

Im Folgenden werden die Ansprüche zusammengefasst, die die Rechteinhaber ab dem Tag des Inkrafttretens aufgeben. Weitere Einzelheiten zu den aufgegebenen Ansprüchen finden Sie im vollständigen Text der Verzichterklärungen in Absatz X des Vergleichstextes.

Die Rechteinhaber verzichten auf alle Ansprüche gegenüber Google und den teilnehmenden Bibliotheken, die aus bestimmten vor dem Tag des Inkrafttretens praktizierten Verhaltensweisen entstanden, einschließlich der Digitalisierung von Büchern und Einfügungen durch Google, der Nutzung von Digitalexemplaren in Google-Produkten und Dienstleistungen, der Bereitstellung von Büchern und Einfügungen für die Digitalisierung seitens der Bibliotheken im Interesse von Google, der Übergabe von Google-Digitalexemplaren an Bibliotheken und die Entgegennahme derselben durch die Bibliotheken (außer der Übergabe von Google-Digitalexemplaren an andere Bibliotheken nach dem 27. Dezember 2008) und die Nutzung der digitalen Kopien durch die Bibliotheken (abgesehen von den anderen Bibliotheken) in einer im Vergleich behandelten Weise. Wenn jedoch andere Bibliotheken die Digitalexemplare rechtswidrig nutzen, gilt der Anspruchsverzicht nicht dafür, dass diese anderen Bibliotheken Bücher an Google übergeben.

Rechteinhaber verzichten auf alle Ansprüche gegenüber Google und alle vollständig teilnehmenden Bibliotheken, kooperierenden Bibliotheken und gemeinfreien Bibliotheken, die ab dem Tag des Inkrafttretens aus vom Vergleichstext oder von entsprechenden Vereinbarungen zwischen Bibliotheken und Registrierstelle