

SVENSKA
FÖRLÄGGARE
FÖRENINGEN

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| The Authors Guild, Inc., Association of American Publishers, et. al., | Case No. 05 CV 8136-DC |
| Plaintiffs, | DECLARATION OF KRISTINA AHLINDER |
| v. | |
| Google Inc., | |
| Defendant. | |

1.  I, Kristina Ahlinder, am a citizen of Sweden and managing director of the Svenska Förläggareföreningen (The Swedish Publishers Association) ("SvF") the leading association of book publishers in my country. Although I have some fluency in the English language, Swedish is my native language, and, accordingly, this declaration was translated for me into Swedish before I signed it below. Except as otherwise stated, I have personal knowledge of the matters I discuss below.

2.  The SvF is a trade organization for the Swedish book-publishing industry, which was founded in 1843. The association has 66 members, all of whom are publishing houses. Together our members cover approximately 70% of the Swedish book publishing industry. The main purpose of the association is to promote issues of common interest to the publishing industry in Sweden. SvF advocates the public policy interests of its members, including the protection of intellectual property rights in all media, the free dissemination of the written word, and the promotion of literacy and reading.

3. All but three of SvF's members are putative members of the settlement class, as defined in the settlement agreement that has been presented to this Court in this action (the "Settlement Agreement"), as they own or control the copyrights to one or more Books or Inserts, as also defined in that document. SvF's members are astonished over and oppose the unprecedented settlement that the parties have asked this Court to adopt and impose upon them. Our members, however, generally are not in a position to present objections to this Court individually, given their unfamiliarity with the United States' legal system and the cost and expense that they would incur in doing so themselves. Accordingly, on May, 14, 2009, the Board of Directors of SvF formally and unanimously authorized SvF to present objections to this Court regarding the Settlement Agreement. As such, SvF is uniquely positioned to provide this Court with information about how the Settlement Agreement will prejudice our members and foreign rightsholders.

4. The Settlement Agreement is affront to copyright holders throughout the world and SvF thus respectfully requests that this Court not approve it, with respect to foreign rightsholders at a minimum, for the reasons set forth in our accompanying Objections and below.

**The Failure To Translate The Settlement Agreement**

5. The parties to this action have never made the Settlement Agreement available for review in the Swedish language. This has prevented our members and other Swedish class members from understanding this document. The vast majority of SvF's members lack the proficiency in the English language necessary to understand the

complex terms of this 300-plus page document (which is full of legalese), and to ascertain their rights under it.

6. It is simply inconceivable to us that a United States court would allow our members to be bound by a Settlement Agreement that has not been made available to them in their native tongue. Indeed, it would impose substantial burden on our members to commission their own translated version of the document. Based on inquiries that have been made by my office, I have been told that it would cost approximately $22,140 at today's exchange rate to have the Settlement Agreement translated into Swedish.

**The Failure To Give Proper Notice**

7. Earlier this year, at the end of January, SvF was asked by Kinsella/Novak Communications LLC to transmit a Final Notice of Class Action Settlement (the "Notice") to our members. We did so on or about February 3, 2009, as a matter of courtesy. We do not, however, represent all publishers that operate in our country and we represent no authors. I am aware that Kinsella/Novak also asked a number of other publishing organizations, including the Nordic Independent Publishers' Association, to distribute the Notice. In Sweden there are about 300 book publishing firms (not to mention authors) that regularly publish books (and thousands more that have published books), and not all of these firms are necessarily members of these organizations. Moreover, it appears that the parties were lax about obtaining information about rightsholders in Sweden to provide them with individual notice. For example, as of late January, Kinsella provided our organization with its list of "direct notice recipients" in Sweden, and that list included only 176 entries  A true and correct copy of this list is attached here as Exhibit A.

8. It is my understanding that this Notice was also posted on a website regarding the Settlement Agreement (the "Settlement Website"), at www.googlebooksettlement.com, although I do not know when that occurred. A true and correct copy of this Notice is attached here as Exhibit B.

9. It is also my understanding that a summary form of the Notice (the "Summary Notice") was published in some newspapers in Sweden and was also posted on the Settlement Website. A true and correct copy of this Summary Notice is attached here as Exhibit C.

10. The Summary Notice and the Notice were not properly translated. The translations were misleading and/or meaningless in numerous ways relating to both terminology and grammar. Given their stilted language, the translation appears to have been done by a computer program, with no human being taking the care to ensure that it was correct or understandable. As a result, the Summary Notice and Notice are very difficult to read or understand.

11. For instance, in both the Summary Notice and the Notice the term "out-of-print" books was translated into the Swedish terms "utgångna förlagor" and "utgångna bokförlagor" meaning sold out originals, which is misleading. The term "in-print" books were translated to "tillgängliga förlagor" and "tryckta bokförlagor" meaning available originals and printed originals. The term Book Rights Registry was translated to "bokrättighetsregister," or "register" for short, although the term "register" in Swedish has nothing to do with an office and means instead only a list/directory/contents or index. The term hard copy was translated into the Swedish term "hårdkopia" which means only master copy or original. The word "Insert" was also improperly, and inconsistently,

4

translated, with the Summary Notice using the word "Inlaga" (in the books trading industry meaning everything in a book but its cover) and the Notice using the word "tillägg" (meaning an appendix, appearing at the end of a book).

12. The Notice contains additional errors. The phrase "breath new commercial life" is translated into "Etablera ett nytt kommersiellt bruk" – which is a non-sensical phrase that reads establish a new commercial use. "Make other uses" is translated into "Utföra annat bruk" which also makes no sense. In Swedish you don't say "utföra bruk", you say "bruka" or "nyttja." The phrase "maintain a database of rightsholders" is translated into "upprätthåller en databas av rättighetsinnehavarna," which reads to "the rightsholders uphold a database." The phrase "that arise out of certain conduct occurring prior to the Effective Date" is translated into "vilka härrör från särskild förättning som tog plats innan det gällande datumet," yet the word "förrättning" means official duties by authorities or a trip on official business. The phrase "[e]ach library's provision of Books and Inserts to Google for digitization" is translated into "alla av bibliotekens villkor för böcker och tillägg för Googles digitalisering." Although this English phrase refers to the fact that the libraries provided Google with books, the Swedish translation means libraries' terms and conditions for books and inserts. The Swedish term "tillhandahålla" which means provide should have been used. This error was repeated numerous times, in connection with translations of the phrase "Google's provision of digital copies to libraries." These errors are just illustrative.

13. At the time we received the Notice, we informed Kinsella that the translation was poor and that we would not be able to use it effectively. A true and

5

correct copy of an email sent by my colleague Pia Janné Nyberg to Kinsella is attached here as Exhibit D.

14. On or about 3 of March, 2009, Kinsella provided us with a revised version of the Notice (the "Revised Notice"), correcting translation errors and thus conceding that the original Notice was inadequate. A true and correct copy of Kinsella's email communication about this Revised Notice is attached here as Exhibit E. We sent this Revised Notice to our members on or about 6 of March, 2009. According to information from the secretary of NOFF, however, that organization did *not* send the Revised Notice to its members.

15. Based on my recent review of the Settlement Website, the Revised Notice is now available on that site, although I do not know exactly when it replaced the original Notice. Of course, there is no reason to believe that Swedish class members who read or obtained the first deficient Notice from the Settlement Website (before that document was replaced with the Revised Notice) would revisit the Settlement Website or find the Revised Notice. Indeed, even if such Swedish class members have revisited the Settlement Website since they first accessed the original Notice from that site, the Settlement Website gives no indication that the original version of the Notice has been replaced, thus making it highly likely that such class members have been left to puzzle over the initial problematic original Notice.

16. Based on my recent review of the Settlement Website, I see that the Summary Notice has been revised as well. As with the Revised Notice, the Settlement Website gives no indication that the language in the Summary Notice has been changed, except with respect to new information regarding new deadlines in the case. I do not

know if any revised Summary Notice was published in Swedish newspapers of general circulation, but I know that no revised Summary Notice was published in our trade magazine Svensk Bokhandel, in which the original Summary Notice appeared. The revised Summary Notice, moreover, contains a new error. In the original Summary Notice the word "notice" is called juridisk underrättelse – which means legal information. In the revised Summary Notice, the word "notice" is translated as "meddelande," a word that Swedish citizens would not understand as implicating their legal rights. The more appropriate word would be "kungörelse," which is the word that was used in the Notice.

17.  In about July or August, our organization received a Summary Notice form regarding the Settlement Agreement from Kinsella. It is unclear to our organization what new information was provided in this new notice, as the notice sent to us was in French, and not in Swedish.

18.  Separate and apart from these translation errors, it is in any event difficult for rightsholders in Sweden to understand the meaning or significance of the notices. This is particularly so because "opt-out" class actions are not recognized in Sweden and thus Swedish citizens have no familiarity with such proceedings and their potential for binding non-parties. Indeed, class actions in general have only recently been introduced in our country (in 2003) and even then they can operate only on an "opt-in" basis. And it is my understanding that only about 10 such proceedings have taken place in Sweden since 2003. In addition, most publishers in Sweden do not understand that this Settlement Agreement can affect them if they have not published works in the United States.

19. Remarkably, Google representatives in Europe are providing misinformation about the Settlement.

On March 11, 2009, my colleague Pia Janné Nyberg exchanged emails with Antoine Aubert, Google's European Copyright Policy Counsel, in which she asked how many books Google intends to scan that originate from Sweden. Mr. Aubert responded by directing Ms. Nyberg to the Books Database being used in this action. According to Mr. Aubert, "rightsholders can determine which of their books are in the database and, therefore, which books are covered by the settlement and may be scanned." A true and correct copy of this email exchange is attached here as Exhibit F. However, as set forth in the Notice, the Settlement Agreement, if approved, will not be limited to books that are listed on the Books Database. As the Notice explains, "[t]here will, however, be some Books covered by the Settlement that are not on the list. Therefore, even if your Book is not on the list, so long as you own a U.S. copyright interest in a Book published on or before January 5, 2009, you should consider yourself a Class member."

**"Commercially Available"**

20. Many books published in the "Books Database" by Swedish publishers, even those published recently, are classified as not "Commercially Available" by Google although these works are in fact widely available for purchase in bookstores and through the Internet. Examples include "Italienska skor" by Henning Mankell (2006); "Män som hatar kvinnor" by Stieg Larsson (2005); "Flickan som lekte med elden" by Stieg Larsson (2006); "Luftslottet som sprängdes" by Stieg Larsson (2007); "Flyttfåglar" by Marianne Fredriksson (2000); "Priset på vatten i Finistère" by Bodil Malmsten (2001); "Den

hemlige kocken" by Mats-Eric Nilsson (2007 and 2008); and "Om gud" by Jonas Gardell (2004).

**Widespread Opposition To The Settlement**

21.   By letter dated June 1, 2009, the five Nordic Publishers Associations (representing member publishing houses in Finland, Denmark, Norway, Iceland and Sweden) sent a letter to each of their respective ministers and ministries, members of their parliament, and delegates in the European Parliament, informing these government officials of their great concern regarding the Settlement Agreement. A true and correct copy of this letter is attached here as Exhibit G.

22.   For each of the foregoing reasons, and for the reasons set forth in the Objections, SvF objects to the Settlement Agreement and respectfully urges the Court not to approve it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 28th, 2009

_____
Kristina Ahlinder