

# ALI

THE AMERICAN LAW INSTITUTE



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-1-09

August 31, 2009

SEP 01 2009

Office of the Clerk     **Attention: The Honorable Judge Denny Chin**
J. Michael McMahon
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *The Authors Guild et al. v. Google, Inc.*, **Case No. 1:05-CV-8136-DC (S.D.N.Y.)**
   **Objections of ALI and ALI-ABA To The GBS**

Dear Judge Chin:

The Author's Guild et al v. Google Inc. Doc. 188

The American Law Institute ("ALI") and ALI-ABA Continuing Professional Education ("ALI-ABA") (collectively the "Institute") object to the proposed Google Book Settlement ("GBS" or "Proposed Settlement"). Each has Class Member standing as each is both a member of the Provisionally Certified Publisher Sub-Class and a member of the Provisionally Certified Author Sub-Class. The Institute is a 501(c)(3) nonprofit organization incorporated in the District of Columbia, with its physical headquarters in Philadelphia, Pennsylvania.

## I. WHO WE ARE

ALI was founded in 1923 by lawyers, judges, and professors who sought to recommend legal principles that were fair, balanced, and progressive. Since its inception, its purposes have been and are "to promote the clarification and simplification of the law and its better adaptation to social needs, to secure the better administration of justice, and to encourage and carry on scholarly and scientific legal work." For 86 years, ALI has followed essentially the same business model: hire one or more professors who draft legal language; subject that language to criticism from experts and from legal generalists; and, finally, provide ALI's imprimatur to what is recommended. The ALI's recommendations are then published as books of which ALI itself is the author; most important of these books in terms of both influence and revenue are the Restatements of the Law. Libraries, lawyers, judges, law schools, and others purchase and consult the ALI's books for re-

search and teaching purposes. Courts cite them in decisions as the common law develops. Evidence of ALI's value includes the many thousands of citations in court opinions in which judges have taken the organization's recommendations seriously and often been influenced by them. Further evidence is the effect of ALI's statutory projects such as the Model Penal Code and the Uniform Commercial Code (held in copyright by ALI jointly with the Uniform Law Commission), on legislation in the states.

In 1947, ALI founded, with the American Bar Association, a nonprofit entity to conduct continuing legal education now known as ALI-ABA Continuing Professional Education. ALI-ABA is one of the leading CLE providers in the nation. Over the decades, ALI-ABA has published thousands of practice manuals and other books, including course books,[1] representing the work of thousands of individual authors. ALI holds the copyright in most of ALI-ABA's books.

It is important to recognize that ALI's work is generally "in print"; that is, the compendium of treatises individually known as the Original, the Second and the Third Series of "Restatements of the Law," the statutory recommendations, and assorted other publications (such as ALI's Principles of the Law and Reporters' Studies) are available for purchase in printed form. Nearly all this work remains under copyright owned by ALI. Also, the Institute grants licenses to publishers such as Westlaw and Lexis to make ALI's and ALI-ABA's books accessible electronically on a licensed-user basis. This existing distribution means it is likely adaptable to future formats as applicable technological advances are used by practicing lawyers, judges, legal scholars, and other researchers both in the United States and internationally. When someone buys an ALI book (a great many of which are published by ALI Publishers, a joint venture of ALI with Thomson West) or accesses a Restatement or other ALI provision on Lexis or Westlaw, ALI receives revenue. Those sales and royalty payments pay two-thirds to three-quarters of ALI's annual expenses. These resources fund ALI's ability to pursue new and ongoing law reform projects. The GBS would likely lead to a decline in ALI's publications revenue, limiting the nonprofit organization's ability to pursue law reform and public interest studies.

In this letter, the Institute does not address a number of larger social, economic, judicial and public policy issues, such as privacy, academic freedom, or antitrust, which we understand other Class Members to be addressing in their objections. We confine our comments to concerns raised by the Proposed Settlement that would be prejudicial to the Institute. These matters must be equally relevant to other small publishers.

We respectfully request that the GBS in its present form be rejected by the Court. Any settlement must be fair and equitable to all members of the Class, must avoid unintended consequences on third parties, must foster transparency, accountability and oversight, and must not involve a sweeping reordering of property rights. Nothing in this letter should be construed as a waiver of any of the Institute's rights and objections, all of which are expressly reserved.

---

[1] Course books are paperbound books designed to both accompany the instruction at a CLE course and also serve as stand-alone reference works. They are produced, marketed and sold by ALI-ABA for both purposes.

## II.  ILLUSTRATIONS OF UNFAIRNESS RELATING TO THE INSTITUTE'S WORKS

As detailed below, the Institute has a number of concerns about the system that would be put in place by the Proposed Settlement. The following represent illustrative examples of the real issues raised by the Google Book Search system under the GBS:

   A. Google has already misclassified and mischaracterized much of the Institute's work, whether deliberately or inadvertently, by treating as Not Commercially Available Institute books that are, in fact, Commercially Available;

   B. While the Proposed Settlement may well cause increased internet access to some of the Institute's work, it is likely to be at the expense of lower payments to the Institute than if interested lawyers and other users were to buy the books or access their material online from the Institute's authorized licensees. This is a predicted and deeply disturbing result of Google's misclassification of the books as Not Commercially Available when in fact they are Commercially Available; and,

   C. Consumers will likely be confused by the partial display of the Institute's work in Google Book Search results, without the contextual coherence that is a major Institute goal.[2] For lawyers and judges to be able to use the Institute's work, they need to find it in a structured format that permits them to see exactly what the Institute recommends, including what content constitutes the body of black-letter rules, what is commentary, and what are the supporting citations and other notes of the project's Reporters. The Institute's annotations also provide important information as to which of its provisions have garnered judicial or scholarly support or criticism.

Therefore, the Institute has reason to fear that Google's electronic distribution process under GBS will (i) supply its publications in violation of copyright, or (ii) recognize its intellectual property rights but pay less than the Institute has negotiated with its licensees and less than it requires to continue its law-reform work, or (iii) offer portions of its books in non-coherent versions that do not permit users to see the entire story.

## III.  OBJECTIONS

What follows are the Institute's specific objections to the Proposed Settlement.

---

[2] For example, ALI's Third Restatement volumes make clear what portions of the Second Restatement remain valid and what portions have been modified. This information would be readily available to users of the Restatements in hard copy, as well as in authorized online databases such as Lexis or Westlaw.

### A. The Proposed Settlement Shifts an Unfair Burden to Authors and Publishers.

The process of scanning, displaying, and distributing the Institute's books under the GBS would impose an excessive and undue burden on the Institute, with no obligation for Google to be accurate, accountable, or transparent in its determinations.

#### 1. The Transactional Burden to Monitor Google's Lists, Lodge Claims, and Manage Data Is Unfair and Unreasonable.

The notification process that the Institute must adhere to under the GBS poses an unreasonable and financially impracticable burden. The Proposed Settlement violates the general principle that Class Members be treated equitably among themselves. Section 3.1(b)(i) of the GBS details that each and every work requires separate notification regarding Display; the GBS does not further define what specific information will be supplied on Google's list. Neither is there any obligation that the list be accurate, complete, or updated; or that it be provided in a useable form to allow RightsHolders to readily discern and make claims.

The obligation that would fall on the Institute would in effect create a "full employment program" for one or more of its employees while allowing Google to escape all obligation and cost for information management. The costs of complying with the terms of the GBS are prohibitively expensive for the Institute, which is a small nonprofit organization. The Institute lacks sufficient staff to do the extra monitoring and other work that GBS would entail.

A search of the Google Book Search database located at www.books.google.com for the "Restatements of the Law" results in a list of over 2,000 publications. Based on the insufficient information provided by Google, the burden imposed upon the ALI staff is overwhelming as it must determine what these books actually are, identify whether ALI can claim them, and decide how each book should be classified. Moreover, it is unclear which of the listed items are final Restatement publications that are, and thus should be classified as, "Commercially Available"; which ones may be superseded project drafts that might not be "Commercially Available"; and which are writings of others regarding ALI Restatements. ALI-ABA's situation is similar: it has published an estimated 2,000 books and course books, but at present it has just one and a half employees devoted to its book-publishing program. Neither ALI nor ALI-ABA would be able to respond to the demands of the GBS without hiring and training additional personnel, an expense neither can afford without jeopardizing its main mission. The GBS would perpetrate unfairness to the Institute by unreasonably requiring it to expend its limited resources to manage and monitor what Google has done.

The foregoing is not a hypothetical concern. A *cursory* examination of the list of publications covered by the GBS reveals that Google's scattershot descriptions of the Institute's titles are rife with errors. The most serious errors are Google's designations as "Not Commercially Available" titles that plainly are "Commercially Available." But other errors exist as well, for example, errors in titles, in ascription of publisher, and in identification of authors. With hundreds of the Institute's titles resulting from current searches of Google's database (and no two searches to date have yielded precisely the same results), it would take an enormous amount of staff time first, to identify every one of the Institute's titles that are actually in Google's Book Search data-

base, and second, to correct every incorrect title, author, publisher, and other misinformation, a particularly laborious undertaking.

Even after such enormous efforts, the Institute would have no reasonable assurance that its challenges to serious errors—notably, the misdesignations of certain books as "Not Commercially Available"—would be accepted and corrected by Google. If its changes were not accepted, the Institute could find itself in a series of open-ended arbitrations of unknown duration and expense. For example, ALI's largest revenue generators are the Restatements of Torts and of Contracts. The Restatement 2nd of Contracts and the Restatement 2nd of Torts have both been misclassified as "Not Commercially Available" in the Google Book Search database, although new copies of these books remain available for sale. Two others of the ALI's most widely used publications, the Model Penal Code and the Uniform Commercial Code, have been similarly misclassified. By way of further illustration, attached as Exhibits A and B are two spreadsheets of the actual search results from the Google database for ALI and ALI-ABA works, respectively; these spreadsheets show numerous errors.

Under the GBS, remedying these errors (and undoubtedly more) would be incumbent upon the Institute—which is unfair and eminently unreasonable. The burden to rectify errors in Google's database should be Google's, not the Institute's. And if it is to remain the Institute's, then that burden is exceeded only by the uncertainty of the outcome for the Institute could have no reasonable expectation that its correction of Google's errors will be accepted by Google.

### 2. The GBS Unfairly Disadvantages Small Nonprofit Publishers.

The Proposed Settlement is particularly unfair to nonprofit publishers such as the Institute because of the importance for such organizations of protecting revenue streams from the licensing of copyrighted material and because redirecting their limited resources to managing the burden of the GBS would drastically diminish their effectiveness in their nonprofit mission.

The Institute relies on the revenue generated by the sales and licensed use of its publications to carry out its important mission.[3] The GBS threatens that revenue in at least three ways: (a) The revenue that the Institute would receive from Google is likely to be considerably less than the revenue the Institute would receive through the sale and licensing of its books. (b) The GBS fails to require any acknowledgment of copyright be displayed upon Google's electronic reproduction of copyright works, thus practically guaranteeing that users will regard the works as free to be further reproduced and distributed. (Google should be required to clearly identify the author of any work electronically displayed, and also to include a visible notice of copyright any time any portion of displayed works is viewed online, downloaded, or printed). (c) It is cost prohibitive for the Institute to monitor the Google database for errors regarding Institute books, and to take action to get errors corrected. Perhaps large, for-profit publishers can absorb these costs, but small nonprofits like the Institute assuredly cannot—not without serious detriment to their main mission. (See Section III. A. 1, above.)

---

[3] For example, the ALI completed a major project on the law of class action litigation: "Principles of the Law of Aggregate Litigation" (Proposed Final Draft, © 2009, The American Law Institute, 4025 Chestnut Street, Philadelphia, PA 19104) (final book forthcoming in 2010).

The Proposed Settlement is further unfairly biased in favor of mass-market publishing by virtue of the arbitrary and inflexible definitions. Mass-market publishers produce books that would clearly be defined as "Books" under Section 1.16 of the GBS. That definition, however, is too abstract and does not reflect the reality of publishing by small, nonprofit publishers such as the Institute. A publication may or may not fall within the definition based on the type of binding, who does the binding, whether it is mass marketed, etc. For example, it is unclear whether monographs or course materials would fall within the GBS definition of "Books" or whether the thin paper pamphlets that librarians insert into the back pockets of ALI's Restatements, known as "pocket parts," would fall within this definition. By way of further illustration, ALI-ABA has published numerous books that consist of loose-leaf pages within a three-ring binder, some of which remain Commercially Available today, and it is unclear whether these valuable products are deemed "Books" under the GBS. Additionally, it is unclear how the frequent supplements to these binders (packets of loose-leaf sheets meant to replace original sheets to cover updates in the law) would be characterized by Google under the GBS.

More significantly, Google's determination of "Commercially Available" is discriminatory and imposes an unfair and disproportionate financial burden on small publishers. GBS, § 3.2. The GBS favors mass publishers the size of the five Publisher Plaintiffs. This is best exemplified by Google's formula for determining Commercial Availability under Section 3.2(d)(i), which appears to rest heavily on retail availability of books. The Institute, like many small, independent, nonprofit publishers, has never had a retail presence, but instead relies on direct marketing, on its own or with partners. Moreover, what exactly is a "customary channel of trade"? For large publishers such as the named Plaintiffs in this action, that channel has traditionally been retail stores. The same cannot be said for small nonprofits such as the Institute.

### 3. The Burden of Rebutting Google's Discretionary and Unaccountable Determinations, Which Are Subject to a Confidential, Non-Transparent Arbitration Process, is Unfair.

The burden is too high on the Institute as a small, independent publisher, to rebut Google's and the Book Rights Registry's ("BRR") initial determinations regarding its works. The GBS, in particular Section 3.2, unfairly shifts all transaction costs from Google to the members of the Sub-Classes, Publisher and Author alike.

Google's sole obligation to determine whether a work is a "Book" or is "In Print"/ "Out of Print" and "Commercially Available" is too narrow; and the Institute's sole remedy to rebut that determination is too restricted and too costly. For example, under the GBS, Google is allowed sole discretion in classifying a work as a "Book" or an "Insert," and if a work is deemed by Google not to be one or the other, then Google may refuse to take direction with regard to that work. GBS, § 13.2(d). In case of mistake by Google in classifying a work (which, as illustrated herein, has already occurred for a number of the Institute's works), the Institute's burden as Rights-Holder is disproportionately high in notifying Google and the BRR.

Under the GBS, the framework for determining what books are "Commercially Available" and "In-Print" is crucial to a fair treatment of the Class. These concepts will determine whether and how Google may display and share the works and collect revenues. Although there are general

provisions in the GBS detailing how Google and the BRR will make such determinations (*see e.g.,* section 3.2(d)(i)), these provisions are far too vague and abstract and amount to giving Google and the BRR virtually unfettered discretion to classify RightsHolders' works. Specifically, the Institute would have the obligation to challenge determinations with which it disagrees, and to do so in a process stacked against it, a process that would result in non-appealable confidential arbitration. GBS, § 3.2(d)(iv). Such an obligation unfairly imposes on Class Members a new and economically burdensome cost of rebutting Google's determinations. Nonprofit publishers such as the Institute are already operating under financial burdens in this economy and this new cost would severely aggravate those burdens. It is unfair that the Institute and similarly situated publishers cannot make their own, unrebuttable claims that their works are "Commercially Available."

In addition, the Arbitration Dispute Resolution Process (Article 9) is unfair to the Institute as it is designed to prevent precedential aggregation (and publication) of arbitration rulings. See, e.g., GBS, § 9.6. It instead requires that each arbitration ruling be kept confidential so that only the immediate parties will know it—and they cannot disclose it to others. This violates transparency and accountability, and will only insure a lack of consistency and effective oversight as to what will be determined to be "Commercially Available" over time.

### B. Fundamental Unfairness of the Proposed Class-Action Settlement.

This class action as a whole perpetuates unfairness to the Author and Publisher Sub-Classes and, specifically, the Institute, for the following reasons.

#### 1. The Proposed Settlement Does Not Fairly Represent the Class Members.

The GBS as a class action settlement perpetuates unfairness to a wide variety of Class Members, including the Institute. The authors and publishers who negotiated the GBS were, to some extent, a homogeneous group. However, whole sectors of the heterogeneous class are not represented. This purported class lacks sufficient commonality. For example, as argued elsewhere in this letter, the interests and resources of small, nonprofit publishers are not represented by the five large publishers who, as named parties in the pending action, negotiated the settlement as publishers with Google.

#### 2. The Class Action Device is Misused To Extinguish Legitimate Rights and Expectations.

The Proposed Settlement violates the Copyright Act because it modifies by judicial fiat what can only be implemented legislatively, e.g., the treatment and monetization of orphan works. The GBS causes unintended, unpredictable consequences in that it would achieve a massive change to copyright law. The Institute has entered into contractual relationships in reliance on copyright law. It is unfair for those legitimate expectations to be defeated by class action fiat.

### C. Illustrative (but Not Comprehensive) Examples of How the GBS Lacks Transparency and Accountability, and Imposes Unfairness on the Class.

What follows is a list of a few of the many instances in the GBS text where transparency and accountability are conspicuously absent. The absence of transparency and accountability results in

hardship to the Institute and other Class Members.

      **1.** Metadata created or managed by the BRR is not required under the GBS to be publicly available. Only Google has rights to metadata generated under the GBS. Fairness dictates that such vital information be made available to Class Members. Keeping such information private is unfair to the Institute and others in the Class, because, without that information, it would be impracticable for RightsHolders to determine which Claims to make regarding Display of the works by Google or to plan for the future. GBS, §§ 1.85, 3.1.

      **2.** The GBS requires Google to assist RightsHolders, but contains no assurance of adequate funding or technical assistance. Nor does it contain measured or defined criteria regarding funding and assistance, just the vague phrase "reasonably necessary" without any guidance or examples. This defeats Class Members' reasonable expectation of assistance from Google and fails to lessen the unfair burden that the GBS puts on Publishers. GBS, § 6.4.

      **3.** The GBS provides no correlative or reciprocal rights for the public to have access to the Book Rights Registry Data. Only Google has rights to Book Rights Registry Data. GBS, § 6.5. This means that both Publishers like the Institute and members of the public will have an unfair barrier to access.

      **4.** Google has no obligation to be transparent and accountable about the terms, or even the existence of, separate side deals that Google has struck, or may yet strike, with individual Class Members. GBS, § 17.9. Secret side deals with some Class Members could perpetuate unfairness on other Class Members. Such deals will potentially allow court-sanctioned disparity among similarly situated Class Members with respect to information about, payment for, and access to their works.

## IV. CONCLUSION

In light of the above objections, the Institute requests that the Court decline to approve the GBS as currently drafted.

Respectfully Submitted,

Roberta Cooper Ramo, President
The American Law Institute (ALI)
Dated: August 31, 2009

Maury B. Poscover, President
ALI-ABA Board of Directors
Dated: August 31, 2009

cc:
Michael J. Boni, Esq., Counsel for the Author Sub-Class
Joanne Zack, Esq., Counsel for the Author Sub-Class
Joshua Snyder, Esq., Counsel for the Author Sub-Class

Jeffrey P. Cunard, Esq., Counsel for the Publisher Sub-Class
Bruce P. Keller, Esq., Counsel for the Publisher Sub-Class
Daralyn J. Durie, Esq., Counsel for Google
Joseph C. Gratz, Esq., Counsel for Google

The Authors Guild Inc., et al. v. Google, Inc.
Case No. 1:05-DV-8136-DC (S.D.N.Y)

# EXHIBIT A

EXHIBIT A--EXAMPLES OF ERRORS IN CLASSIFICATION OF ALI WORKS IN GOOGLE BOOK SEARCH, INCLUDING MISCHARACTERIZATION AS NOT COMMERCIALLY AVAILABLE.

| Identifier type (Enter "ISBN," "LCCN," or leave blank to default to "ISBN") | Identifier value | Title | Author or other contributor | Imprint (Publisher can also be entered) | Is the book currently designated as "Commercially Available" in the Google Book Settlement? | Publication format |
|---|---|---|---|---|---|---|
| LCCN | 58004270 | Restatement of the law, second, agency 2d | American Law Institute | American Law Institute Publishers | No | Book |
| LCCN | 81050259 | Restatement of the law second, contracts 2d | American Law Institute | American Law Institute | No | Book |
| OCLC | 77772059 | Restatement of the law, second, torts, 2d | American Law Institute | American Law Institute | No | Book |
| OCLC | 34165095 | Uniform Commercial Code | National Conference of | American Law Institute | No | Book |
| LCCN | 80050699 | Model penal code and commentaries (official draft and | American Law Institute | American Law Institute | No | Book |
| OCLC | 264447135 | Restatement of the law, third, torts | American Law Institute | American Law Institute | No | Book |
| OCLC | 42642734 | Restatement of the law, second, property 2d | American Law Institute | American Law Institute | No | Book |
| LCCN | 79025302 | Restatement of the law, second: conflict of laws, 2d | American Law Institute | American Law Institute | No | Book |
| LCCN | 86020665 | Restatement of the law, third, the foreign relations law | American Law Institute | American Law Institute | No | Book |
| OCLC | 264447260 | Restatement of the law, third, unfair competition | American Law Institute | American Law Institute | No | Book |
| OCLC | 264447186 | Restatement of the law, third, trusts | American Law Institute | American Law Institute | No | Book |
| OCLC | 264447308 | Restatement of the law, third, suretyship amd guaranty | American Law Institute | American Law Institute Publishers | No | Book |

The Authors Guild Inc., et al. v. Google, Inc.
Case No. 1:05-DV-8136-DC (S.D.N.Y)

# EXHIBIT B

EXHIBIT B--EXAMPLES OF ERRORS IN CLASSIFICATION OF ALI-ABA WORKS IN GOOGLE BOOK SEARCH, INCLUDING MISCHARACTERIZATION AS NOT COMMERCIALLY AVAILABLE.

| | Identifier value | Title | Author or other contributor | Imprint (Publisher can also be entered) | Publication year | Is the book currently designated as "Commercially Available" in the Google Book Serch? | Publication format |
|---|---|---|---|---|---|---|---|
| OCLC | 218399866 | The ACREL Papers, Spring 2008 | American Law Institute-American Bar Association Committee on Continuing Professional Education, American College of Real Estate Lawyers, Meeting | American College of Real Estate Lawyers ; ALI ABA | 2008 | No | |
| ISBN | 0831800070 | A Practical Guide To | Sebastian V. Grassi, Jr., | ALI ABA, Ali-Aba | 2007 | No | Book |
| OCLC | 123411325 | The ACREL Papers, Spring 2007 | American Law Institute-American Bar Association Committee on Continuing Professional Education, American College of Real Estate Lawyers, Meeting | American College of Real Estate Lawyers ; ALI ABA | 2007 | No | |
| ISBN | 0831808748 | Deposition guidebook | Howard Bruce Klein | ALI-ABA/American Law Institute-American Bar Association Continuing Professional Education | 2007 | No | Book |
| ISBN | 0831800089 | Trial Manual for Defense Attorneys in Juvenile Court | Randy Hertz, Martin Guggenheim, Anthony G. Amsterdam | ALI-ABA ; National Juvenile Defender Center | 2007 | No | Book |

| | | | | | | |
|---|---|---|---|---|---|---|
| ISBN | 0831808667 | Anatomy for litigators | Samuel D. Hodge, American Law Institute-American Bar Association Committee on Continuing Professional Education | ALI ABA, Amer Law Inst | 2006 | No | Book |
| ISBN | 0831808691 | Fundamentals of bankruptcy law | George M. Treister, Richard B. Levin, American Law Institute-American Bar Association Committee on Continuing Professional Education | ALI ABA, American Law Institute-American Bar Association, Ali-Aba Comm on Continuing | 2006 | No | Hardback |
| ISBN | 0831808640 | Getting Your Hands | Ronald S. Beitman, | American Law | 2005 | No | Book |
| ISBN | 0831814152 | Limited Liability Companies | Steven C. Alberty | Ali-aba | 2005 | No | Paperback |
| ISBN | 0831808608 | Flexible trusts and estates for uncertain times | Jerold I. Horn, American Law Institute-American Bar Association Committee on Continuing Professional Education | American Law Institute-American Bar Association Committee on Continuing Professional Education, American Law Institute-American Bar Association(ALI-ABA) | 2005 | No | Book |
| ISBN | 0831805269 | Condominium and homeowner association practice | Wayne S. Hyatt, American Law Institute-American Bar Association Committee on Continuing Professional Education | American Law Institute-American Bar Association, Committee on Continuing Professional Education, American Law Institute-American Bar Association(ALI-ABA) | 2005 | No | Book |
| ISBN | 0831808632 | Counseling older clients | Alison McChrystal Barnes, A. Frank Johns, Nathalie Martin | American Law Institute-American Bar Association, Continuing Professional Education, Ali-aba | 2005 | No | Book |
| ISBN | 0831814195 | A practical guide to mortgages and liens | David A. Schmudde, American Law Institute-American Bar Association Committee on Continuing Professional Education | American Law Institute-American Bar Association Committee on Continuing Professional Education, Ali-aba | 2004 | No | Book |

| | | | | | |
|---|---|---|---|---|---|
| ISBN | 0831808152 | Taking and defending depositions | Stuart M. Israel, American Law Institute-American Bar Association Committee on Continuing Professional Education | American Law Institute-American Bar Association Committee on Continuing Professional Education, Ali-aba | 2004 | No | Book |
| ISBN | 0831808535 | After death tax planning | Francis J. Antonucci, Robert Whitman, American Law Institute-American Bar Association Committee on Continuing Professional Education | American Law Institute-American Bar Association Committee on Continuing Professional Education, Ali-aba | 2004 | No | Book |
| ISBN | 0831814144 | Transferring interests in the closely held family business | James Jurinski, Gary A. Zwick, American Law Institute-American Bar Association Committee on Continuing Professional Education | American Law Institute-American Bar Association Committee on Continuing Professional Education, Ali-aba | 2002 | No | Book |
| LCCN | 2002564234 | Commercial Real Estate Forms Forms, Checklists, and Drafting Advice from ALI-ABA's The Practical Real Estate Lawyer. | American Law Institute-American Bar Association Committee on Continuing Professional Education | ALI-ABA | 2002 | No | Book |
| ISBN | 0831808160 | ALI-ABA's practice checklist manual on alternative dispute resolution | Mark T. Carroll, Spitzer, John B. Editor, American Law Institute-American Bar Association Committee on Continuing Professional Education | American Law Institute-American Bar Association Committee on Continuing Professional Education, Ali-aba | 2002 | No | Book |
| ISBN | 0831808225 | Organizing, financing, growing, and selling businesses | Fredric D. Tannenbaum, American Law Institute-American Bar Association Committee on Continuing Professional Education | American Law Institute-American Bar Association Committee on Continuing Professional Education, Ali-aba | 2002 | No | Book |
| ISBN | 0831808209 | The law of telecommuting | Nicole Belson Goluboff, American Law Institute-American Bar Association Committee on Continuing Professional Education | American Law Institute-American Bar Association Committee on Continuing Professional Education, Ali-aba | 2001 | No | Book |

22873865v5

| ISBN | 0831808187 | A practical guide to real estate practice | Joshua Stein, American Law Institute-American Bar Association Committee on Continuing Professional Education | American Law Institute-American Bar Association Committee on Continuing Professional Education, Ali-aba | 2001 | No | Book |
| ISBN | 0831808039 | A practitioner's guide to construction law | John G. Cameron, American Law Institute-American Bar Association Committee on Continuing Professional Education | American Law Institute-American Bar Association Committee on Continuing Professional Education, Ali-aba | 2000 | No | Book |
| ISBN | 0831807954 | Cross-examining doctors | Alan T. Radnor, American Law Institute-American Bar Association Committee on Continuing Professional Education | American Law Institute-American Bar Association(ALI-ABA) | 1999 | No | Book |
| ISBN | 0831807814 | How to win jury trials | Stephen D. Easton | American Law Institute-American Bar Association Committee on Continuing Professional Education, Ali-aba | 1998 | No | Book |