# EXHIBIT B

## AMENDMENT TO COOPERATIVE AGREEMENT

This Amendment to Cooperative Agreement (the "**Amendment**") is entered into by and between the Regents of the University of Michigan ("**U of M**") and Google Inc. ("**Google**").   This Amendment is effective as of May 19, 2009 (the "**Amendment Effective Date**"), except as set forth herein.

### Background

A.      U of M and Google entered into a Cooperative Agreement dated June 15, 2005 (the "**Agreement**"), pursuant to which Google is digitally scanning certain content from the U of M library collection and making such digitally scanned content available to U of M for certain uses.  Both parties acknowledge and agree that, although the U of M party to the Agreement was identified as "The Regents of the University of Michigan/University Library, Ann Arbor Campus," the correct legal entity was "The Regents of the University of Michigan," and the Agreement involves and applies to activities related to all of the University of Michigan campuses.

B.      Google has entered into a Settlement Agreement (the "**Settlement Agreement**") in the form as filed with the United States District Court for the Southern District of New York on October 28, 2008 in connection with case number 05 CV 8136 between The Authors Guild Inc., et al. as Plaintiffs and Google as Defendant.

C.      The terms of the Settlement Agreement affect the rights and obligations of Google under the Agreement and this Amendment reflects such changes to Google's rights and obligations, as well as other changes to the Agreement that the parties desire to make at this time or that are required by the Library-Registry (Fully Participating) Agreement.

D.      U of M and other libraries have entered or will enter into an agreement (the "**Library-Registry (Fully Participating) Agreement**") with the Registry organized pursuant to the Settlement Agreement.

E.      U of M and Google now desire in accordance with Section 12.7 of the Agreement to: (i) amend the Agreement through this Amendment with respect to certain terms, but in all other respects the Agreement shall continue in full force and effect; and (ii) add additional terms to the Agreement as set forth below.

F.      U of M and Google intend for this Amendment to allow the existing terms of the Agreement, as modified herein, to continue to govern the treatment of digital copies of works not subject to the Settlement Agreement (the "**Non-Settlement Digital Copy**," as more fully defined below) and to create additional terms to govern digital copies of works subject to the Settlement Agreement (the "**Settlement Digital Copy**," as more fully defined below).

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises set forth below, U of M and Google hereby agree as follows:

**Terms**

1.    Definitions.  Capitalized terms defined in this Amendment, including without limitation the Collective Terms attached hereto as Attachment A (the "**Collective Terms**"), shall have the meanings set forth in this Amendment.  Capitalized terms used but not defined in this Amendment shall have the meanings set forth in the Agreement or the Settlement Agreement, provided that any such term that is defined in both the Agreement and the Settlement Agreement shall have the meaning set forth in the Settlement Agreement with respect to the Settlement Digital Copy and shall have the meaning set forth in the Agreement with respect to the Non-Settlement Digital Copy.

2.    No Conflict with Settlement Agreement.  In the event that compliance with the terms of this Amendment or the Agreement would cause Google to breach the Settlement Agreement or would cause U of M to breach its Library-Registry (Fully Participating) Agreement, then such compliance with this Amendment or the Agreement will be excused, but only to the extent that such compliance would result in such a breach.

3.    Effective Date.  The term "**Effective Date**" in the preamble of the Agreement and throughout the remainder of the Agreement (but before giving effect to this Amendment) shall be replaced with the term "**Original Effective Date**."  The term "**Original Effective Date**" shall mean June 15, 2005.  The term "**Effective Date**" shall have the meaning set forth in the Settlement Agreement.

4.    Available Content.  Section 1.1 of the Agreement shall be deleted and replaced with the following: "1.1 'Available Content' means the entire print library collection held by or under the control of the Regents of the University of Michigan. Available Content also includes, without limitation, works made available by U of M to Google in Digitized form. Those Books and Inserts included within the Available Content constitute the Books and Inserts targeted for Digitization for purposes of the Settlement Agreement."

5.    Digitization.  Section 1.3 of the Agreement shall be deleted and replaced with the following: "1.3 'Digitize' means to convert a work from a hard copy (including microform) format into an electronic representation, using any means and any technology, whether now known or hereafter developed, including making necessary technical adaptations to achieve such conversion (but not including adapting or altering the content of such written work). 'Digitization,' 'Digitizing' and 'Digitized' have corresponding meanings."

6.    Deletions and Corrections.  Sections 1.4 (definition of "Distribution Price") and 1.17 (definition of "Requested Portion") of the Agreement shall be deleted in their entirety.  In Section 1.9 (definition of "U of M Collection") of the Agreement, the reference to section 1.2 shall be corrected to be a reference to Section 1.1.

7.   <u>U of M Digital Copy</u>.  Section 1.10 of the Agreement shall be deleted and replaced with the following: "1.10  '<u>U of M Digital Copy</u>' means the Settlement Digital Copy and the Non-Settlement Digital Copy provided by Google to U of M.  For the avoidance of doubt, the definition of "U of M Digital Copy" does not include Digital Copies provided to Google by U of M, unless such Digital Copies are Digitized by U of M (or its contractors) at the request (which request shall be in writing or electronic communication) of Google."

8.   <u>Selected Content</u>.  Section 1.19 of the Agreement shall be deleted and replaced with the following: "1.19  '<u>Selected Content</u>' means the Available Content."

9.   <u>Digital Copy</u>.  A Section 1.23 shall be added to the Agreement and shall read as follows: "1.23  '<u>Digital Copy</u>' means a set of electronic files, including (a) the image files of the individual pages of the Digitized Selected Content along with text (currently generated from optical character recognition technology "**OCR**"), (b) coordinate information for the text (i.e., the image coordinates), copyright notice, year, and place of publication for the text (if available through Google's processes), (c) information about the ordering of pages along with page-level metadata such as page number and other similar information, (d) a unique identifier for the work, and (e) the date the work was Digitized by Google, regardless of the means or technology used to prepare such copy, whether now known or hereafter developed, and any digital copy of such set of electronic files. A Digital Copy of a work may be constructed by Google from one or more physical works into a composite version of the work, which may include alternative page images from different copies of the work that Google obtains from sources other than U of M, provided that the Digital Copy of any such composite version of a work will contain metadata indicating that the Digital Copy contains pages from different copies of the work and the sources of the different copies."

10.   <u>Non-Settlement Digital Copy</u>.  A Section 1.24 shall be added to the Agreement and shall read as follows: "1.24  '<u>Non-Settlement Digital Copy</u>' means the Digital Copies of the Selected Content Digitized by Google that are not governed, or that cease to be governed, by the Settlement Agreement, including without limitation as a result of such Selected Content rising into the public domain."

11.   <u>Settlement Digital Copy; Amendment Effective Date</u>.  A Section 1.25 shall be added to the Agreement and shall read as follows: "1.25  '<u>Settlement Digital Copy</u>' means the Library Digital Copy as that term is defined in the Settlement Agreement."  A Section 1.26 shall be added to the Agreement and shall read as follows:  "1.26  '<u>Amendment Effective Date</u>' means May 19, 2009."

12.   <u>U of M Digital Copy</u>.  The fourth sentence of Section 2.5 of the Agreement shall be deleted in its entirety.

13.   <u>No Destruction of Settlement Digital Copy</u>.  Section 2.5.2 of the Agreement shall be amended by adding the following sentences at the end of such Section:

a.    "Further, when that Digitized content rises into the public domain (in Google's determination), Google will retransfer that Digitized Content to U of M provided Google retains a Digital Copy in its possession at the time and has the technical capability to transfer it to U of M."

b.    "Notwithstanding the foregoing, this Section 2.5.2 shall not be deemed to require U of M to destroy any portion of the Settlement Digital Copy that it is not otherwise required to destroy pursuant to other terms of this Agreement or U of M's Library-Registry (Fully Participating) Agreement."

14.    Rights to U of M Digital Copy.  Section 4.4 of the Agreement, "**Ownership and use of U of M Digital Copy**," shall be amended by changing its heading to "**Rights to U of M Digital Copy**" and by replacing the text thereof with the following:

"Neither U of M nor Google shall hold any license or other rights to the Available Content that is Digitized (i.e., to the materials underlying the Digitization process), except where U of M otherwise holds such rights.  As between Google and U of M, and subject to the provisions in this Section 4, U of M shall hold all rights, title, and interest to the U of M Digital Copy."

15.    U of M Websites.  Section 4.4.1 of the Agreement, "**Use of U of M Digital Copy on U of M Website**," shall be amended by adding the following sentences at the end of such Section: "The parties acknowledge that U of M may host more than one U of M website and agree that this Section 4.4.1 applies to each such website, provided that the domain for each such website is owned by U of M.  This Section 4.4.1 shall not apply to the Settlement Digital Copy solely to the extent it conflicts with Section 4.4.3 or U of M's Library-Registry (Fully Participating) Agreement."

16.    Cooperative Web Services.  Section 4.4.2, "**Use of U of M Digital Copy in Cooperative Web Services**," shall be replaced with the following:

"**4.4.2  Use of U of M Digital Copy in Cooperative Web Services**.  Except as set forth in Section 4.4.3 and the terms of U of M's Library-Registry (Fully Participating) Agreement and this Section, and provided U of M has obtained all necessary permissions, rights, and licenses from third parties, U of M shall have the right to use the U of M Digital Copy, in whole or in part at U of M's sole discretion, as part of web services offered in cooperation with partner academic libraries and/or partner public research libraries (such as the New York Public Library), including, without limitation, the institutions in the Association of Research Libraries, Digital Library Federation and similar organizations.  Such services may include, without limitation, indexes and finding tools, as well as the reproduction and display of the U of M Digital Copy, to the extent not otherwise prohibited by this Agreement and U of M's Library-Registry (Fully Participating) Agreement.   Before U of M makes any such use that involves the distribution of one or more Digital Copies included within the U of M Digital Copy to any such library, such library must enter into a written agreement with Google, the form of which Google will provide to U of M.  Such agreement will (a) prohibit such receiving library from redistributing such Digital Copies from the U of M Digital Copy to any third party, except that U of M may authorize such library to redistribute such Digital Copies

as an agent and on behalf of U of M subject to the rights and restrictions set forth in this Agreement, provided U of M would have the right under this Agreement to make such redistribution directly, (b) limit the receiving library's use of such Digital Copies from the U of M Digital Copy to the sole purpose of providing cooperative web services as set forth herein, which limitations on use shall in all events be at least as restrictive as those placed on U of M's use of the U of M Digital Copy in this Agreement and, if applicable, the Library-Registry (Fully Participating) Agreement, and (c) require such receiving library (i) to use reasonable efforts to prevent third parties from bulk downloading substantial portions of such Digital Copies, and (ii) to implement technological measures (e.g., through use of the robots.txt protocol) to restrict automated access to any part of such entity's website where substantial portions of such Digital Copies are available. U of M will have the right to approve those sections of the form of such agreement that grant any rights that materially differ from the rights granted to U of M with respect to the use of such portions of the U of M Digital Copy in the Agreement."

17.  Provision and Use of Settlement Digital Copy.  A Section 4.4.3 shall be added to the Agreement and shall read as follows:

"4.4.3  **Provision and Use of Settlement Digital Copy**. Effective as of the Effective Date, in addition to the terms of U of M's Library-Registry (Fully Participating) Agreement, the following shall apply to U of M's use of the Settlement Digital Copy:

(a)  **Removal**.  U of M agrees that if a Rightsholder directs that its Book be Removed pursuant to Section 3.5 of the Settlement Agreement and subject to certain limitations set forth therein, Google shall have no obligation to provide or make available to U of M a Digital Copy of such Book.

(b)  **Provision of Settlement Digital Copy**. The U of M Digital Copy provided to U of M by Google may contain Books and Inserts contained in the Available Content that Google did not actually Digitize at U of M but has Digitized from another library.  If either (i) Google has Digitized or received from U of M in Digitized form at least five (5) million works from the Available Content, or (ii)(A) Google has Digitized or received from U of M in Digitized form at least 3 million works from the Available Content, (B) U of M has made and is continuing to make all works in the Available Content accessible (or would have made such works available for Digitization but did not do so due to their condition, size, binding tightness, or other physical characteristics) to Google at a reasonable rate (the "reasonableness" of the rate will take into account the number of works remaining in the Available Content that Google desires to Digitize, Google's then-current ability to process such works and any operational issues or issues beyond the reasonable control of U of M that may result in variations in the rate or delays) unless Google is not then acting in good faith in the performance of any material obligation under this Agreement (provided, however, that such condition in clause (B) shall continue in the event Google begins to act in good faith in the performance of such obligation again), and (C) U of M is not then in an uncured material breach of this Agreement unless Google is not then acting in good faith in the performance of any material obligation under this Agreement

(provided, however, that such condition in clause (C) shall continue in the event Google begins to act in good faith in the performance of such obligation again); then Google will be required to return Digital Copies of Books and Inserts to U of M that were Digitized, in whole or in part (which Digital Copies returned to U of M will be composites if Digitized in part at different libraries), at a different library if those Books or Inserts are contained within the Available Content and U of M (1) made the Books or Inserts available to Google for Digitization or (2) would have made such Books or Inserts available for Digitization but did not do so due to their condition, size, binding tightness, or other physical characteristics. U of M shall provide Google with data regarding the Available Content sufficient for Google to verify that a work Digitized at another library is included within the Available Content. Notwithstanding anything to the contrary set forth herein, Google shall not be obligated to include in-copyright content Digitized from libraries other than U of M that is not subject to the Settlement Agreement as part of any Digital Copy provided by Google to U of M.

(c)     **U of M as Hosting Fully Participating Library**. In the event a Requesting Fully Participating Library authorizes U of M to store and host such Requesting Fully Participating Library's Library Digital Copy pursuant to Section 7.2(b)(x) of the Settlement Agreement, then U of M may treat such Requesting Fully Participating Library's Library Digital Copy in accordance with the terms applicable to the Settlement Digital Copy set forth herein with respect to U of M's exercise of its rights under Section 7.2(b)(x) of the Settlement Agreement, notwithstanding any terms governing such Requesting Fully Participating Library's Library Digital Copy set forth in such Requesting Fully Participating Library's Digitization Agreement with Google that are more restrictive than or conflict with the terms governing U of M's Settlement Digital Copy set forth herein. Google will apply the terms of Sections 4.4.5 (Redacted Information) and 4.4.6 (Technological Updates and Replacements) hereof to the Library Scans contained in each Requesting Fully Participating Library's Library Digital Copy hosted by U of M pursuant to Section 7.2(b)(x) of the Settlement Agreement, notwithstanding any more restrictive term set forth in such Requesting Fully Participating Library's Digitization Agreement with Google. U of M shall not be liable to Google for a Requesting Fully Participating Library's breach of its Library-Registry (Fully Participating) Agreement or its Digitization Agreement with Google, except to the extent that an action or omission of U of M in breach of its contractual or legal obligations was a cause of such breach."

18.   Provision and Use of Non-Settlement Digital Copy.  A Section 4.4.4 shall be added to the Agreement and shall read as follows: "4.4.4  **Provision and Use of Non-Settlement Digital Copy**.  This Section shall apply to that portion of the Non-Settlement Digital Copy that is in the public domain.

(a)  **Provision of Public Domain Works**. The Non-Settlement Digital Copy provided to U of M by Google may contain Digital Copies of public domain works that Google did not actually Digitize at U of M but has Digitized from

another library.   If: either (i) Google has Digitized or received from U of M in Digitized form at least five (5) million works from the Available Content or (ii)(A) Google has Digitized or received from U of M in Digitized form at least 3 million works from the Available Content; (B) U of M has made and is continuing to make all works in the Available Content accessible (or would have made such works available for Digitization but did not do so due to their condition, size, binding tightness, or other physical characteristics) to Google at a reasonable rate (the "reasonableness" of the rate will take into account the number of works remaining in the Available Content that Google desires to Digitize, Google's then-current ability to process such works and any operational issues or issues beyond the reasonable control of U of M that may result in variations in the rate or delays) unless Google is not then acting in good faith in the performance of any material obligation under this Agreement (provided, however, that such condition in clause (B) shall continue in the event Google begins to act in good faith in the performance of such obligation again); and (C) U of M is not then in an uncured material breach of this Agreement unless Google is not then acting in good faith in the performance of any material obligation under this Agreement (provided, however, that such condition in clause (C) shall continue in the event Google begins to act in good faith in the performance of such obligation again); then Google will be required to return Digital Copies of works that Google has determined to be in the public domain to U of M that were Digitized, in whole or in part (which Digital Copies returned to U of M will be composites if Digitized in part at different libraries), at a different library if those public domain works are contained within the Available Content and U of M either (1) made the public domain works available to Google for Digitization or (2) would have made such public domain works available for Digitization but did not do so due to their condition, size, binding tightness, or other physical characteristics. U of M shall provide Google with data regarding the Available Content sufficient for Google to verify that a work Digitized at another library is included within the Available Content.

(b) **Non-Profit Uses**.  Notwithstanding the restrictions set forth in Sections 4.4.1 and 4.4.2 of the Agreement, U of M may provide all or any portion of the Non-Settlement Digital Copy that is, at the time of such provision, a Digital Copy of a public domain work to (i) academic institutions or research or public libraries, or (ii) when requested by U of M and agreed upon in writing by Google, other not-for-profit or government entities that are not providing search or hosting services substantially similar to those provided by Google, including but not limited to those services substantially similar to GBS (provided, however, that Google acknowledges and agrees that print-on-demand services are not substantially similar to any such services and U of M may provide such portions of the Non-Settlement Digital Copy to an entity set forth in this clause (ii) solely for such entity to provide print-on-demand services for U of M without Google's consent), such agreement not to be unreasonably withheld or delayed (each entity in clauses (i) and (ii) being referred to as an "**Additional Institution**"), in each case for research, scholarly, or academic purposes, all of which must be non-

commercial (unless otherwise agreed upon in writing by Google). Any Additional Institution must enter into a written agreement with Google prior to U of M providing any portion of the Non-Settlement Digital Copy to such Additional Institution, the form of which Google will provide to U of M. Such agreement will prohibit such Additional Institution from redistributing such portions of the Non-Settlement Digital Copy to other entities (beyond providing or making content available to scholars and other users for educational or research purposes), prohibit such Additional Institution from using such portions of the Non-Settlement Digital Copy to provide search or hosting services substantially similar to those provided by Google, including but not limited to those services substantially similar to GBS, and require such Additional Institution (A) to use reasonable efforts to prevent third parties from bulk downloading substantial portions of such Digital Copies of such works, and (B) to implement technological measures (e.g., through use of the robots.txt protocol) to restrict automated access to any part of such entity's website where substantial portions of such Digital Copies are available. U of M will have the right to approve those sections of the form of such agreement that grant any rights that materially differ from the rights granted to U of M with respect to the use of such portions of the Non-Settlement Digital Copy in the Agreement.

(c) **Lifting of Restrictions**. Beginning on the date twenty (20) years following the Amendment Effective Date, notwithstanding the restrictions set forth in Sections 4.4.1 and 4.4.2 of the Agreement, U of M may provide all or any portion of the Non-Settlement Digital Copy that is, at the time of such provision, a Digital Copy of a public domain work to any entity so long as such entity is not providing search or hosting services substantially similar to those provided by Google, including but not limited to those services substantially similar to GBS (it being acknowledged by Google that print-on-demand services are not substantially similar to any such services) (each such entity being referred to as an "**Additional Entity**"). Any Additional Entity must enter into a written agreement with Google prior to U of M providing any portion of the Non-Settlement Digital Copy to such Additional Entity, the form of which Google will provide to U of M. Such agreement will prohibit such Additional Entity from redistributing such portions of the Non-Settlement Digital Copy to other entities (beyond providing or making content available to scholars and other users for non-commercial educational or research purposes), prohibit such Additional Entity from using such portions of the Non-Settlement Digital Copy to provide search or hosting services substantially similar to those provided by Google, including but not limited to those services substantially similar to GBS, and require such Additional Entity (A) to use reasonable efforts to prevent third parties  from bulk downloading substantial portions of such Digital Copies of such works, and (B) to implement technological measures (e.g., through use of the robots.txt protocol) to restrict automated access to any part of such entity's website where substantial portions of such Digital Copies are available. U of M will have the right to approve those sections of the form of such agreement that grant any rights that materially differ from the rights granted to U of M with

respect to the use of such portions of the Non-Settlement Digital Copy in the Agreement.

(d) **Failure to Provide Access**. Beginning on the Amendment Effective Date, if Google fails to offer a free service to end users with respect to any work in the Non-Settlement Digital Copy that Google has determined to be in the public domain that enables end users to search, view and print the full text of that public domain work (unless the Digital Copy of such work is excluded by Google for quality, technical, or legal reasons) for (i) any period of six (6) contiguous months or (ii) any two (2) periods of ninety (90) contiguous days, which periods occur in any period of twenty-four (24) contiguous months, then all restrictions and requirements set forth in the Agreement (including without limitation Sections 4.4.1, 4.4.2, and this 4.4.4) regarding use or distribution of the Digital Copy of that public domain work for which Google failed to offer such services by U of M or by any recipient entity will terminate, provided U of M has provided written notice to Google of such failure and Google has not remedied such failure within thirty (30) days following Google's receipt of such notice.

(e) **No Restrictions**.   All restrictions and requirements set forth in the Agreement regarding use or distribution (whether by U of M or by any recipient entity) (including without limitation those set forth in Sections 4.4.1, 4.4.2 and this 4.4.4) of the works contained in the Non-Settlement Digital Copy that from time to time are in the public domain shall terminate on January 1, 2050; provided, however, that Google and U of M agree to evaluate business conditions in 2024 with respect to a possible earlier termination of such restrictions and requirements.

(f) **Purpose**.   For clarity, U of M and Google acknowledge that none of the restrictions or requirements set forth in paragraphs (b) and (c) above was created for the purpose of hindering U of M or any recipient entity from providing public user access to the public domain works contained in the Non-Settlement Digital Copy.  Rather, the purpose of the continuing restrictions and requirements above is to allow Google to protect the benefit of Google's investment in light of the costs and resources related to Digitizing the Available Content."

19.   Redacted Information.  A Section 4.4.5 shall be added to the Agreement and shall read as follows: "4.4.5  **Redacted Information**.  To the extent Google redacts any information (including without limitation any illustrations, photographs, or other images) from any Digital Copy provided to U of M, Google shall provide U of M information identifying each location within such Digital Copy containing redacted information, at the same time as Google makes the Digital Copy of the work (or improvements or updates thereto) available to U of M."

20.   Technological Updates and Replacements.  A Section 4.4.6 shall be added to the Agreement and shall read as follows: "4.4.6  **Technological Updates and Replacements**.  This paragraph shall be effective upon the Amendment Effective Date with respect to works in the public domain as of and after such date; this paragraph

shall be effective upon the Effective Date with respect to all other works in the U of M Digital Copy.  Within a reasonable period of time after Google Improves a Digital Copy of any such work, Google will provide or make available to U of M a copy of the Improved Digital Copy.  In addition, Google will provide or make available to U of M a copy of the Improved Digital Copy for each such work each time a Digital Copy of that work is Improved by (i) any Fully Participating Library or Cooperating Library to the extent Google is so permitted under a contract with such Fully Participating Library or Cooperating Library and provided that such Fully Participating Library or Cooperating Library makes the Improved Digital Copy available to Google, (ii) any third party that Improves the quality of a Digital Copy of such work to be used in the Accommodated Services under the terms of a Library-Registry (Fully Participating) Agreement, Library-Registry (Cooperating) Agreement, and/or the Settlement Agreement, to the extent Google is so permitted under a contract with such third party and provided that such third party makes the Improved Digital Copy available to Google, or (iii) any third party to the extent Google is so permitted under a contract with such third party and provided that such third party makes the Improved Digital Copy available to Google.  If U of M elects to download from Google a copy of the Improved Digital Copy of any such work, U of M may download only the most current version of such file made available to it by Google.   Google will make the Improved Digital Copy available to U of M within a reasonable period of time after it is created by another party and provided to Google as contemplated by this Section.  For purposes of this Section, the term "Improve" shall mean with respect to a Digital Copy, to make changes to a Digital Copy that materially improve the viewability of text or the fidelity of the work and shall not include changes made by Google to improve indexing, add content, or for other purposes (the resulting Digital Copy shall be an "Improved Digital Copy" and any such improvement shall be an "Improvement").  For example only, "Improve" shall include, without limitation: making improvements to a Digital Copy that make the text of a work easier to view by users with print disabilities and improvements to the Digital Copy from increased OCR accuracy. Notwithstanding anything to the contrary set forth herein, with respect to works contained in the Non-Settlement Digital Copy that Google has not determined to be in the public domain, Google shall be required to provide or make available Improved Digital Copies of such works (i) only if the improvement materially improves the usability or quality of Digital Copies for preservation (it being acknowledged that U of M has an interest in maintaining high quality Digital Copies for preservation) or (ii) otherwise upon request by U of M, and Google will not unreasonably withhold consent to such request provided that Google may withhold consent for legal or reasonable other reasons.   In connection with the furnishing of such Improved Digital Copies, Google agrees from time to time to (x) use delivery methods to be mutually agreed upon between Google and U of M that are reasonably appropriate to timely delivery of the volume of content being delivered; (y) employ mutually agreed upon technologies that provide reasonably appropriate downloading and throughput speeds to U of M; and (z) make available servers (or use some other mutually agreed upon mechanism for delivery of data) that have reasonably appropriate capacity and rate of connectivity. Google will also provide U of M access to download a copy of the file for any Digitized work previously provided to U of M that has become lost, damaged, or destroyed within thirty (30) days of any request by U of M."

21.  <u>Technical Cooperation</u>.  A Section 4.4.6.1 shall be added to the Agreement and shall read as follows:  "4.4.6.1  **Technical Cooperation**.  Google will reasonably cooperate with U of M to establish mutually agreed communications and dispute resolution procedures with the goal that issues related to technical performance (including without limitation download issues) be addressed expeditiously."

22.  <u>Misclassifications</u>.   A Section 4.4.7 shall be added to the Agreement and shall read as follows:  "4.4.7  **Misclassifications**.  Google shall reasonably cooperate with U of M at U of M's request to develop a process by which U of M may investigate and report to Google what U of M believes to be misclassifications of works as not being in the public domain, as well as a process by which Google will consider such reported misclassifications."

23.  <u>Institutional Subscription Terms and Subsidy</u>.  A Section 4.4.8 shall be added to the Agreement and shall read as follows:

"4.4.8 **Institutional Subscription Terms and Subsidy.**

(a) **Discount.** For a period of twenty-five (25) years from the date the full Institutional Subscription (whether such product is offered alone or in combination with other Google products) is first offered to Higher Education Institutions, Google shall provide a version of the Institutional Subscription product that is limited to all of the Books and Inserts contained in the Institutional Subscription Database to U of M without charge, provided: (i) U of M has made and is continuing to make all works in the Available Content accessible (or would have made such works available for Digitization but did not do so due to their condition, size, binding tightness, or other physical characteristics) to Google at a reasonable rate (the "reasonableness" of the rate will take into account the number of works remaining in the Available Content that Google desires to Digitize, Google's then-current ability to process such works and any operational issues or issues beyond the reasonable control of U of M that may result in variations in the rate or delays) unless Google is not then acting in good faith in the performance of any material obligation under this Agreement (provided, however, that such condition in clause (i) shall continue in the event Google begins to act in good faith in the performance of such obligation again); (ii) U of M is not then in an uncured material breach of this Agreement unless Google is not then acting in good faith in the performance of any material obligation under this Agreement (provided, however, that such condition in clause (ii) shall continue in the event Google begins to act in good faith in the performance of such obligation again); and (iii) U of M's FTEs are less than 60,000.  Following such twenty-five (25)-year period, or earlier if any condition in (i), (ii), or (iii) is not met, Google shall provide to U of M a yearly subsidy credited against the annual subscription price of a version of the Institutional Subscription product that is limited to all of the Books and Inserts contained in the Institutional Subscription Database (or, if such Institutional Subscription product is offered in combination with other Google products, the portion of the total annual subscription price attributable to the Institutional Subscription product that is limited to all of the

Books and Inserts contained in the Institutional Subscription Database) up to the full annual subscription price of such version of the Institutional Subscription equal to the price of one FTE for every fifty (50) Library Works that (A) were Digitized by Google from the Available Content or provided by U of M to Google in Digitized form under this Agreement and (B) are included in the Institutional Subscription Database. In the event Google prices the annual subscription to such version of the Institutional Subscription other than on an FTE-basis, Google shall provide an equivalent subsidy to U of M credited against such annual subscription price.   The percentage discount computed pursuant to this paragraph (a) is referred to herein as the "Applicable Discount;" for clarification, the Applicable Discount would be 100% during any period that the first sentence of this paragraph (a) applies and results in no charge to U of M.  The subsidy for any Institutional Subscription term shall be calculated once per year on the date of commencement of the Institutional Subscription term and on each yearly anniversary thereof.   If Google is offering a version of the full Institutional Subscription product that does not contain advertising to Higher Education Institutions, it shall make such version available to U of M pursuant to this paragraph.

      (b) **Non-Settlement Works**.

          (i)    <u>Discount</u>.  If Google offers a subscription product or service in the United States that allows Higher Education Institutions access to and viewing of the full text of individual in-copyright works not subject to the Settlement Agreement for such institutions' users in the United States (whether such product is offered alone or in combination with the Institutional Subscription) (the "Non-Settlement Subscription"), and provided that either (a) Google has Digitized or received from U of M in Digitized form at least five (5) million works from the Available Content, or (b)(1) Google has Digitized or received from U of M in Digitized form at least 3 million works from the Available Content, (2) U of M has made and is continuing to make all works in the Available Content accessible (or would have made such works available for Digitization but did not do so due to their condition, size, binding tightness, or other physical characteristics) to Google at a reasonable rate (the "reasonableness" of the rate will take into account the number of works remaining in the Available Content that Google desires to Digitize, Google's then-current ability to process such works and any operational issues or issues beyond the reasonable control of U of M that may result in variations in the rate or delays) unless Google is not then acting in good faith in the performance of any material obligation under this Agreement (provided, however, that such condition in clause (2) shall continue in the event Google begins to act in good faith in the performance of such obligation again), and (3) U of M is not then in an uncured material breach of this Agreement unless Google is not then acting in good faith in the performance of any material obligation under this Agreement (provided, however, that such condition in clause (3) shall continue in the event Google begins to act in good faith in the performance of such obligation again); then Google shall offer to U of M the right

to subscribe to, at U of M's option, (1) such Non-Settlement Subscription at an annual subscription price equal to the annual subscription price of such Non-Settlement Subscription (or, if the Non-Settlement Subscription is offered in combination with the Institutional Subscription, the portion of the total annual subscription price attributable to the Non-Settlement Subscription) less:

> the Applicable Discount computed under clause (a) above for the comparable period, times the annual subscription price of such Non-Settlement Subscription (or, if the Non-Settlement Subscription is offered in combination with the Institutional Subscription, the portion of the total annual subscription price attributable to the Non-Settlement Subscription), and times a percentage to be mutually agreed by Google and U of M that will be based upon the percentage value provided by the Non-Settlement Works relative to the entire content in the Non-Settlement Subscription and which percentage may not be greater than the percentage that the number of works in the Non-Settlement Subscription that are Non-Settlement Works represents of the total number of works in the Non-Settlement Subscription. (For purposes of the Section, a "Non-Settlement Work" shall mean an in-copyright work not subject to the Settlement Agreement that (i) is contained in the Available Content and (ii) either (A) is published on or before January 5, 2009 and was Digitized from the collection of any Participating Library (and such Digital Copy is used to provide access to such work within the Non-Settlement Subscription) or (B) is published after January 5, 2009 and was Digitized from the Available Content (and such Digital Copy is used to provide access to such work within the Non-Settlement Subscription));

or (2) access through such Non-Settlement Subscription solely to such portion of the works in such Non-Settlement Subscription that are works in the Available Content at an annual subscription price equal to the annual subscription price of such Non-Settlement Subscription (or, if the Non-Settlement Subscription is offered in combination with the Institutional Subscription, the portion of the total annual subscription price attributable to the Non-Settlement Subscription), times a percentage to be mutually agreed by Google and U of M that will be based upon the percentage value provided by the Non-Settlement Works relative to the entire content in the Non-Settlement Subscription and which percentage may not be greater than the percentage that the number of works in the Non-Settlement Subscription that are Non-Settlement Works represents of the total number of works in the Non-Settlement Subscription, and times: 100% minus the Applicable Discount computed under clause (a) above for the comparable period. If Google is offering a version of the full Non-Settlement Subscription that does not contain advertising to Higher Education Institutions, it shall make such version available to U of M pursuant to this paragraph.

(ii)      <u>Institutional Purchase</u>.  If Google offers a product or service that allows Higher Education Institutions to purchase for a fee Online access to

and viewing of the full text of individual in-copyright works not subject to the Settlement Agreement for such institutions' users in the United States ("Institutional Purchase"), for as long as Google is using a Digital Copy of any such work Digitized by Google from the Available Content or provided by U of M to Google in Digitized form to provide such Online access to such work within such Institutional Purchase and such work is not contained in the Non-Settlement Subscription, Google will provide U of M a yearly subsidy equal to the price of access to that work in the Institutional Purchase.

(iii)    <u>Foreign Uses</u>.  If Google, (A) to the extent authorized by the holder of relevant rights in a particular in-copyright work, includes such work in the Non-Settlement Subscription or uses such work in any other manner in which Protected content is displayed that generates any revenue to Google (other than any use in which such Protected content is provided to users free of charge), in either case in one or more countries other than the United States, and such holder has rights to authorize such uses both within the United States and in such other countries, and (B) such work set forth in (A) is a Non-Settlement Work, then Google will permit U of M, if a subscriber to the Non-Settlement Subscription (or the portion thereof comprising works in the Available Content) as provided in paragraph (i) and/or Institutional Purchase as provided in paragraph (ii), above, to have access to such work through the Non-Settlement Subscription and/or Institutional Purchase (as the case may be) for its users in such other countries (in addition to access for its United States users as contemplated by paragraphs (i) and (ii), above).

(c) **Limited Subscription in Lieu of Discount**. If at any time following the date Google or its licensee first makes the Institutional Subscription generally available to Higher Education Institutions, U of M chooses to forego the discount for the Institutional Subscription set forth in Paragraph (a) of this Section, then, for as long as Google or its licensee makes the Institutional Subscription generally available to Higher Education Institutions, Google will offer to U of M a limited subscription service allowing access to only those Books and Inserts contained in the Institutional Subscription Database for which Google or its licensee is using any portion of a Library Scan Digitized by Google from the Selected Content (or provided by U of M to Google) to make such Book or Insert available in the Institutional Subscription (the "**Limited Subscription**").  Google will offer the Limited Subscription to U of M without charge under terms materially similar to those under which it offers the Institutional Subscription to Higher Education Institutions.

(d) **Rightsholder Authorization**. If, pursuant to authorization from a Rightsholder, Google or its licensee offers to users access to any portion of a Library Scan (other than where access is provided to users free of charge) of which U of M is the source prior to the Effective Date and the Book underlying such Library Scan is not Commercially Available, Google will require the applicable Rightsholder to authorize Google to provide U of M with access to

such Library Scan without charge until the date Google makes the Institutional Subscription for Higher Education Institutions, or a beta product thereof, containing the Book on which such Library Scan is based available to U of M. Google shall provide U of M such access to such Library Scan pursuant to this paragraph and shall allow at least the uses and shall be subject to the restrictions set forth in Sections 4.1(d) through (f) of the Settlement Agreement.

(e) **Beta Product**.  Within six (6) months following the date Google or its licensee makes available a Consumer Purchase model or any other revenue model pursuant to the Settlement Agreement that allows access to any portion of any Library Scan of which U of M is the source (other than any model that allows access free of charge to the Book upon which such Library Scan is based), Google shall offer to U of M an Institutional Subscription beta product as authorized pursuant to Section 4.1(g) of the Settlement Agreement.

(f) **No Use If No Extension**.   In the event that:

(1) Google does not make the Institutional Subscription offered to Higher Education Institutions generally available and in compliance with Section 7.2(e)(i)(2) of the Settlement Agreement within two (2) years following the date Google first made the Institutional Subscription beta product set forth in Section 4.1(g) of the Settlement Agreement available to any Fully Participating Library or Cooperating Library; and

(2) (i) Google requests that the Registry extend the time of Google's authorization to support an Institutional Subscription beta product for U of M pursuant to Section 4.1(g) of the Settlement Agreement, and the Registry does not grant such extension request; or (ii) Google makes no such extension request;

then Google shall not use (or authorize any third party to use) any portion of a Library Scan of which U of M is a source as part of a Consumer Purchase or any other revenue model pursuant to the Settlement Agreement (other than any model that allows access free of charge to the Book upon which such Library Scan is based) if such Book is not Commercially Available (A) from the date two years following the date Google first made the Institutional Subscription beta product available to any Fully Participating Library or Cooperating Library, (B) until the earlier of (x) the date Google first makes the Institutional Subscription offered to Higher Education Institutions generally available and (y) the date the Registry grants any extension request from Google set forth in paragraph (2) and Google resumes providing the Institutional Subscription beta product, provided that Google will not thereafter cease to provide the Institutional Subscription beta product to U of M until such time as Google first makes the Institutional Subscription offered to Higher Education Institutions generally available."

24.   <u>Consent to Distribution</u>.   A Section 4.4.9 shall be added to the Agreement and shall read as follows:

"4.4.9 **Consent to Distribution**.

(a) <u>Settlement Works</u>.   If (i) Google enters into an agreement with a Rightsholder (or if at the request of U of M, a Rightsholder offers to enter into an agreement with Google and Google declines) pursuant to which such Rightsholder, without charge to Google, grants (or at the request of U of M, offers to grant) Google the right to copy and distribute Digital Copies of a Book of such Rightsholder without charge to users (and the right to sublicense such rights) (provided such Rightsholder holds rights in the Book sufficient to grant Google all such rights), and (ii) a Digital Copy of such Book is contained in the U of M Digital Copy, then for as long as Google has (or for as long as such Rightsholder offered to grant) such rights to copy and distribute set forth in clause (i) and subject to the terms of the Library-Registry (Fully Participating) Agreement, applicable law and authorization from the Rightsholder, U of M may distribute the Digital Copy of such Book contained in the U of M Digital Copy in accordance with all the terms and conditions set forth in Section 4.4.4 of this Agreement that are applicable to U of M's ability to distribute public domain works until such Book rises into the public domain.

(b) <u>Non-Settlement Works</u>. If (i) Google enters into an agreement with the rightsholder of an in-copyright work not subject to the Settlement Agreement (or if at the request of U of M, the rightsholder offers to enter into an agreement with Google and Google declines) pursuant to which such rightsholder, without charge to Google, grants (or at the request of U of M, offers to grant) Google the right to copy and distribute Digital Copies of such work without charge to users (and the right to sublicense such rights) (provided such rightsholder holds rights in the work sufficient to grant Google all such rights), and (ii) a Digital Copy of such work is contained in the U of M Digital Copy, then for as long as Google has (or for as long as such rightsholder offered to grant) such rights to copy and distribute set forth in clause (i) and subject to applicable law and authorization from the rightsholder, U of M may distribute the Digital Copy of such work contained in the U of M Digital Copy in accordance with all the terms and conditions set forth in Section 4.4.4 of this Agreement that are applicable to U of M's ability to distribute public domain works until such work rises into the public domain."

25.   <u>Personal Uses</u>. A Section 4.4.10 shall be added to the Agreement and shall read as follows:  "4.4.10   **Personal Uses**. If (a) Google enters into an agreement with a rightsholder of an in-copyright work not subject to the Settlement Agreement regarding the display of Protected content from such work and (b) pursuant to such agreement Google makes any use in a Non-Settlement Subscription service or a service similar to the Consumer Purchase service (other than any use whereby access is provided to users free of charge) of a Digital Copy of such work Digitized by Google from the Selected Content or provided to Google by U of M in Digitized form under this

Agreement, then the terms of service, authorization or license for such service(s) shall not prohibit any personal, non-commercial uses of such work that would otherwise be permitted under the Copyright Act (or applicable foreign copyright law) without the need for express authorization from the rightsholder and would not be in violation of other applicable laws."

26.   Rights to Google Digital Copy.  Section 4.5 of the Agreement, "**Ownership and use of Google Digital Copy**," shall be amended by changing its heading to "**Rights to Google Digital Copy**" and by replacing the text thereof with the following:

"Neither U of M nor Google shall hold any license or other rights to the Available Content that is Digitized (i.e., to the materials underlying the Digitization process), except where U of M otherwise holds such rights.  As between Google and U of M, and subject to the provisions in this Section 4, Google shall hold all rights, title, and interest to the Google Digital Copy."

27.   Google Use of Google Digital Copy.   Section 4.5.1 of the Agreement, "**Google Use of Google Digital Copy**," shall be amended by replacing the word "owner" with "holder" in both places where such word appears in such Section.

28.   Accommodated Service.  A Section 4.5.4 shall be added to the Agreement and shall read as follows:  "4.5.4  **Accommodated Service**.  Google hereby agrees to treat each Digital Copy (that was Digitized by Google from the Available Content or provided to Google by U of M) of a work that Google has determined to be in the public domain in the same manner that it is required to treat Digital Copies of Books and Inserts by Section 7.2(g) of the Settlement Agreement."

29.   Certain Waivers.  A Section 4.8 shall be added to the Agreement and shall read as follows: "4.8 **Certain Waivers**. Google shall not require as a condition to its execution of any Digitization Agreement or any amendment thereto with any Fully Participating Library or Cooperating Library or as a condition to the receipt of particular benefits thereunder, that: (i) such Fully Participating Library or Cooperating Library waive as contemplated by Sections 3.5(b)(v) and 7.2(e) of the Settlement Agreement, the Coupling Requirement or the Required Library Services Requirement as to any Library Scan as to which such Fully Participating Library or Cooperating Library is a source; or (ii) such Fully Participating Library or Cooperating Library agree to restrict use or distribution of its Library Scans that otherwise would be permitted in accordance with the terms of the Settlement Agreement (such as but not limited to use by a Third-Party Required Library Services Provider as contemplated by Section 7.2(e) of the Settlement Agreement)."

30.   Effect of Expiration or Termination.  Section 8.2 of the Agreement, "**Effect of Expiration or Termination**," shall be amended and replaced in its entirety with the following: "Within thirty (30) days after expiration or termination of this Agreement for any reason, each Party shall return to the other Party (or, at that Party's request, destroy) any Confidential Information of that Party that is in its possession.  The following sections shall survive expiration or termination of this Agreement: Sections 1 (including all subsections), 2.5 (including all subsections), 2.6, 2.7, 4.1, 4.2, 4.3, 4.4

(including all subsections), 4.5 (including all subsections), 4.6, 4.8, 6, 8.2, and 9 through 12 (in each case including all subsections); and Paragraphs 1, 2, 3, and 33 of the Amendment."

    31.  <u>Indemnification by Google</u>. Section 10.1 of the Agreement, "**By Google**," shall be deleted and replaced with the following:

"10.1  **By Google**.

    (a)  **General Indemnification**. Google shall defend, indemnify, and hold harmless U of M, its affiliates, its and their Regents, trustees, officers, faculty, employees, students, and agents (each, a "**U of M Indemnitee**") (provided, that Google shall not hold harmless a U of M Indemnitee for claims for which Google is not obligated to indemnify such U of M Indemnitee) against any third party claim (including without limitation any claim by a governmental entity) brought against any of them or against Google (or any of its directors, officers, employees, or agents) to the extent such claim is based on: (1) except as set forth herein, an allegation that any action of any U of M Indemnitee or any action of Google (or any of its officers, directors, employees, or agents) pursuant to this Agreement (including without limitation U of M's provision of a work to Google for Digitization or U of M's receipt of the U of M Digital Copy or any portion thereof), violates that third party's copyrights or other legal rights; (2) except as set forth herein, any action taken by Google, any U of M Indemnitee, or any third party in connection with the act of negotiation and execution of (but excluding failure to comply with the terms of) the Settlement Agreement, the Library-Registry (Fully Participating) Agreement, any Hosting Addenda to any Library-Registry (Fully Participating) Agreements, any Host Site-Registry Agreement; (3) an allegation that the settlement as embodied in the Settlement Agreement and the agreements entered into as specifically contemplated by the Settlement Agreement violates any law; or (4) except as set forth herein, any other action taken by Google, any U of M Indemnitee, or any third party in support of the settlement embodied in the Settlement Agreement and the agreements entered into as specifically contemplated by the Settlement Agreement. For the avoidance of doubt, the foregoing indemnification includes without limitation the obligation of Google to pay reasonable costs or expenses (including without limitation attorneys' fees and costs) incurred by any U of M Indemnitee necessary to comply with or respond to any third party subpoena or other discovery request made of such U of M Indemnitee in connection with any such indemnified third party claim, even if such claim is not made against such U of M Indemnitee. The foregoing indemnification excludes any third party claim to the extent it: (a) relates to U of M's (or any U of M Indemnitee's) use or distribution of the U of M Digital Copy; (b) arises from U of M's (or any U of M Indemnitee's) failure to comply with the terms of this Agreement (including without limitation Attachment A hereto); or (c) with respect to the indemnity under clause (4) only, arises from U of M's (or any U of M Indemnitee's) exercise of any right, performance of any act, or failure to comply with any obligation under the Library-Registry (Fully Participating) Agreement, Host Site-Registry Agreement, any

agreement with Rightsholders or the Registry, any agreement with other Participating Libraries, or any other agreement relating to the Settlement.

(b) **Google Contractor Indemnification**.  Google shall defend, indemnify, and hold harmless each U of M Indemnitee (provided, that Google shall not hold harmless a U of M Indemnitee for claims for which Google is not actually indemnifying such U of M Indemnitee) from and against any claim by any person or entity (including without limitation any claim by any employee, contractor, subcontractor, or agent of Google) based on: (1) any actual or alleged personal injury, death, or property damage suffered by any of Google's directors, officers, employees, contractors, subcontractors, or agents in connection with performing work under this Agreement; or (2) any actual or alleged status of any such person as an employee, contractor, subcontractor, or agent either of a U of M Indemnitee alone or of a U of M Indemnitee together with Google or any contractor, subcontractor, or agent of Google as a result of any work performed under this Agreement, or any benefit to which any such person may be entitled as a result of such status; provided that the indemnity under this clause (2) will not apply to any claim to the extent it results from U of M knowingly creating or establishing the relationship of employer to such persons by, among other things, intentionally exercising direction, supervision, or control over such persons or by knowingly providing benefits to such persons.  The foregoing indemnification under clause (1) excludes any such claim to the extent arising from the willful misconduct or negligence of U of M, its Regents, employees, contractors, or agents.

(c)  **Indemnity for Certain Security Breaches.**

(1)  <u>Security Indemnity</u>. Google shall defend, indemnify, and hold harmless each U of M Indemnitee (which, for the avoidance of doubt, includes without limitation U of M individually and in its capacity as a Hosting Fully Participating Library pursuant to Section 7.2(b)(x) of the Settlement Agreement) (provided, that Google shall not hold harmless a U of M Indemnitee for claims for which Google is not actually indemnifying such U of M Indemnitee) against claims by the Registry pursuant to Sections 8.4(b) (Single or Non-Willful/Intentional Breach of Security Implementation Plan) and 8.4(c) (Repeated or Willful/Intentional Breaches of Security Implementation Plan) of the Settlement Agreement (as incorporated into the Library-Registry (Fully Participating) Agreement), except for claims under Sections 8.4(b) and 8.4(c) resulting from willful misconduct or intentional and knowing misconduct by any U of M Indemnitee and claims resulting from repeated breaches (a repeated breach shall be the second (or more) of the same breach (*i.e.*, the second or more breach with the same root cause) within a six (6)-month period) of the Security Implementation Plan that create a significant risk of Prohibited Access, provided that with respect to claims for which indemnification is sought under Section 10.1(c)(1) and (2) such indemnification will only apply if U of M in its Library-Registry (Fully Participating) Agreement has not elected, as described in Section

8.4(d)(ii) of the Settlement Agreement, to be subject to judicial actions or arbitrations under Article IX (Dispute Resolution) of the Settlement Agreement allowing the Registry to seek all available remedies in equity and at law.

(2)    Reimbursement of Fees. In the event that a claim is brought against a U of M Indemnitee pursuant to Sections 8.5 and/or 8.6 of the Settlement Agreement (as incorporated into the Library-Registry (Fully Participating) Agreement), and the result of such claim is that a judgment is rendered against U of M (whether pursuant to arbitration or a negotiated agreement approved by Google, such approval not to be unreasonably withheld, delayed, or conditioned) under Section 8.4(b) or (c) of the Settlement Agreement (as incorporated into the Library-Registry (Fully Participating) Agreement) with respect to the conduct underlying such claim and Google would have been required to indemnify such U of M Indemnitee pursuant to paragraph (1) of this Section had such claim been brought pursuant to Section 8.4(b) or (c) of the Settlement Agreement (as incorporated into the Library-Registry (Fully Participating) Agreement), then Google will pay such monetary remedies determined pursuant to Section 8.4(b) or (c) of the Settlement Agreement (as incorporated into the Library-Registry (Fully Participating) Agreement) and will reimburse each U of M Indemnitee for the reasonable legal fees and costs of outside legal counsel incurred in contesting such claim brought under Section 8.5, 8.6, 8.4(b) and/or 8.4(c).

(d)    **Procedures for Google Indemnification**.  This Section 10.1(d) shall apply to any claim for which Google is obligated to defend or indemnify any U of M Indemnitee, pursuant to Sections 10.1(a), (b), or (c)(1) above. For each such claim under Sections 10.1(a) or (b), Google shall either elect to defend such claim or permit the U of M Indemnitee to defend such claim at Google's sole cost and expense.   For each such claim under Section 10.1(c)(1), Google shall defend such claim at Google's sole cost and expense.  In the event Google defends any such claim: (1) Google shall select counsel reasonably appropriate for such defense and shall pay for all costs incurred by such counsel (including without limitation experts engaged by such counsel); (2) Google shall have sole control over the defense or settlement of any such claim, provided that Google shall not enter into any settlement that includes any admission of wrongdoing by, or any restriction (that does not already exist) on the activities of, any U of M Indemnitee without the consent of such U of M Indemnitee, such consent not to be unreasonably withheld or delayed, provided that such U of M Indemnitee shall have no right to consent to any monetary amount to be paid in settlement by Google; (3) such U of M Indemnitee shall provide reasonable assistance to Google in such defense or settlement; and (4) such U of M Indemnitee may participate in the defense of any such claim with counsel of its own choice, at its own expense.  In addition, Google shall pay any damage awards or settlement costs (only for settlements made or consented to by Google) that may be incurred."

32.   <u>Limitation of Liability</u>.  The last sentence of Section 11 of the Agreement is hereby deleted and replaced with the following:   "EXCEPT FOR THE PARTIES' INDEMNIFICATION OBLIGATIONS PURSUANT TO SECTION 10 ABOVE, AND EXCEPT FOR DAMAGES ARISING FROM BREACH OF SECTION 6 (CONFIDENTIALITY) OR DAMAGES ARISING FROM BREACH OF SECTIONS 4.4 – 4.6 (AND ASSOCIATED SUBSECTIONS), EACH PARTY'S LIABILITY UNDER THIS AGREEMENT SHALL BE LIMITED TO THREE MILLION DOLLARS ($3,000,000). NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, NOTHING IN THIS AGREEMENT SHALL PROHIBIT EITHER PARTY FROM SEEKING INJUNCTIVE RELIEF AND ANY OTHER AVAILABLE EQUITABLE REMEDIES TO ENFORCE THE PROVISIONS OF THIS AGREEMENT."

33.   <u>Collective Terms</u>.  The provisions set forth in the Collective Terms attached hereto as Attachment A are hereby incorporated into the Agreement. U of M shall not have any right to participate in the selection of, giving instructions to, or exercising or waiving of rights through the Designated Representative or the Security Representative, as the case may be, unless U of M has executed a Library-Registry (Fully Participating) Agreement and agreed to the then-existing governance rules established from time to time by the Interested Institutions (including any rules as to the sharing of fees and costs of the Designated Representative and Security Representative, as the case may be).

34.   <u>Effectiveness</u>. The terms of this Amendment shall be void if the Settlement Agreement does not become effective and the parties mutually agree that the Settlement Agreement is not anticipated to become effective.  In the event the terms of the Settlement Agreement are amended and such amendment represents a material change of interest to U of M, then U of M may elect that the terms of this Amendment shall be void as between Google and U of M. Notwithstanding the foregoing, U of M and Google promptly shall execute an amendment to the Agreement that implements the following Sections of this Amendment in the event that the Settlement Agreement does not become effective and the parties mutually agree that the Settlement Agreement is not anticipated to become effective or U of M terminates the terms of this Amendment as provided in this Section 34: 4, 5, 6, 8, 9, 12, 13(a), 14, 15 (except for the last sentence), 16, 19, 20 (provided that such section shall only be applicable to Digital Copies of works that Google determines to be in the public domain), 21, 22, 24 (except for 24(a) in the event the Settlement Agreement does not become effective), 25 (except in the event the Settlement Agreement does not become effective), 26, 27, 28, 30 (but provisions referenced therein that would have been added to the Agreement by this Amendment shall be included only if such provisions are referenced in this Section 34), 31 (except for 10.1(c) (Indemnity for Certain Security Breaches)), 32, and 34.

35.   <u>No Other Amendment</u>.   Except as amended by this Amendment, all other terms of the Agreement remain in full force and effect.

IN WITNESS WHEREOF, this Amendment has been executed by persons duly authorized.

Google Inc.                          On behalf of the Regents of the University
                                     of Michigan

By:_____          By:_____

Print Name:_____          Print Name:_____

Title:_____          Title:_____

Date:_____          Date:_____

**ATTACHMENT A**

**COLLECTIVE AND CERTAIN SETTLEMENT AGREEMENT RELATED TERMS**
**(Fully Participating Libraries)**

This Attachment A (the "Collective Terms") reflects provisions that supplement the Cooperative Agreement (the "Digitization Agreement") between the Regents of the University of Michigan (the "Institution") and Google Inc. ("Google") dated June 15, 2005, as amended as of May ___, 2009, and has been created in contemplation of the settlement of certain litigation to which Google is a party, as reflected in that certain Settlement Agreement (the "Settlement Agreement") in the form as filed with the United States District Court for the Southern District of New York on October 28, 2008 in connection with case number 05 CV 8136 between The Authors Guild Inc., et al. as Plaintiffs and Google as Defendant.  Capitalized terms used in these Collective Terms that are not defined in these Collective Terms will have the meanings set forth in the Settlement Agreement or, if not defined therein, in the Digitization Agreement.  The effectiveness of the provisions of these Collective Terms is conditioned upon the effectiveness of the Settlement Agreement.  In the event the terms of the Settlement Agreement are amended and such amendment represents a material change of interest to the Institution and is not acceptable to the Institution, then the Institution may elect that these Collective Terms shall be void as between Google and the Institution. Google and the Institution acknowledge their mutual expectation that the Institution is a Fully Participating Library as defined by the Settlement Agreement.  In the event of a conflict between these Collective Terms and other provisions of the Digitization Agreement, these Collective Terms will prevail as between Google and the Institution. In the event that compliance with these Collective Terms or the Digitization Agreement would cause Google to breach the Settlement Agreement or would cause the Institution to breach its Library-Registry (Fully Participating) Agreement, then such compliance with these Collective Terms or the Digitization Agreement will be excused, but only to the extent that such compliance would result in such a breach.

1.    **Additional Defined Terms.**  The following capitalized terms, when used herein, will have the following meanings:

        a.    "**Institution Digital Copy**" means the U of M Digital Copy.

        b.    "**Institution Library Scan**" means a Library Scan derived in whole or in part from all or part of an Institution Library Work.

        c.    "**Institution Library Work**" means a Book that the Institution previously has made or in the future makes available to Google as a Library Work.

        d.    "**Interested Institution**" means any library that (i) is either a party to an existing Digitization Agreement and has executed an amendment to that Digitization Agreement or a party to a new Digitization Agreement that contains terms substantially identical to these Collective Terms (in the case of a Fully Participating Library) or the parallel "Collective Terms" that apply to the Cooperating Libraries that comport with the

terms hereof, as may be amended from time to time and (ii) has entered into a Library-Registry (Fully Participating) Agreement or Library-Registry (Cooperating) Agreement.

2.    **Use Outside of Settlement.**

a.    Google will not make use of any Institution Library Scan other than as authorized by the Settlement Agreement unless Google ensures that the releases, rights, and protections that otherwise would have applied under the Settlement Agreement and the coupling requirement set forth in Paragraphs 4(a) through 4(c) with respect to that Institution Library Scan apply.

b.    If (i) a rightsholder opts out of the Settlement Agreement, (ii) Google makes an agreement with such rightsholder regarding the display of Protected content from any work, and (iii) Google makes any use pursuant to such agreement (other than any use whereby access is provided to users free of charge) of any digital copy of such work provided to it by any Interested Institution or made by Google from a copy of such work provided to it by any Interested Institution, then Google will offer to such rightsholder the opportunity to include such work in a service similar to the Public Access Service and, to the extent Google is offering a service similar to the Institutional Subscription for works not covered by the Settlement Agreement, in such service.

3.    **Institutional Subscription Offering, Public Access Service and Arbitration/Pricing.**

a.    **Availability of Institutional Subscription and Public Access Service**. Google shall make the full Institutional Subscription offered to Higher Education Institutions and the Public Access Service generally available (including to the Institution with respect to such Institutional Subscription) within a reasonable period of time following the Effective Date, but in no event later than two (2) years following the Effective Date.

b.    **User Experience**.  Unless Google and the Institution agree otherwise, at a minimum, Google will provide the authorized users of the Institution (provided the Institution is a then current subscriber to the full Institutional Subscription offered to Higher Education Institutions) with First Class Access (as defined below) to the full Institutional Subscription offered to Higher Education Institutions.  As used herein, "First Class Access" means a user experience consistent with Sections 4.1(d) through 4.1(f) of the Settlement Agreement, and that will always include the features set forth or referred to in the last sentence of Section 4.1(d) of the Settlement Agreement and in Sections 4.1(e)(2-4) and 4.1(f) of the Settlement Agreement.

c.    **Pricing Review**.

(1)    Initial Report.  Sixty (60) days after the date Google first makes an Institutional Subscription generally available to Higher Education Institutions and every two years on the anniversary of such date thereafter (each a "Pricing Review Date"), any Interested Institution may request (each such Interested Institution, together with such other Interested Institutions that so request or join in any such request, an

"Initiating Library," and collectively the "Initiating Libraries") a review of the pricing of the Institutional Subscription to determine whether the Pricing Categories of Institutional Subscriptions offered to Higher Education Institutions and the revenue models referred to under Paragraph 3(d) below (collectively, the "Reviewable Subscriptions"), are being priced in accordance with the objectives set forth in Section 4.1(a)(i) of the Settlement Agreement (a "Pricing Review") by providing written notice to Google and all other Interested Institutions prior to such Pricing Review Date.  All Interested Institutions together may initiate only one Pricing Review per Pricing Review Date.  For purposes of this Paragraph, "Pricing Category" shall mean a category for which there is a discrete price for a set of Books offered to a class of Higher Education Institutions as part of an Institutional Subscription as contemplated by Section 4.1(a)(iv)(2) of the Settlement Agreement.  The "Pricing Reviewer" will be an independent, qualified third party (independence and qualification determined in good faith by the Initiating Libraries) designated by the Initiating Libraries, acting through the Designated Representative consistent with Section 7.4 of the Settlement Agreement, subject to approval by Google (which approval shall not be unreasonably withheld).  The Pricing Reviewer shall prepare a report of its findings (the "Pricing Review Report") and shall provide such report to Google and all Interested Institutions.  Google shall be responsible for the Pricing Reviewer's reasonable fees and costs incurred in conducting the Pricing Review and preparing the Pricing Review Report, up to the Pricing Review Cap.  For the purposes hereof, the Pricing Review Cap shall mean (a) $100,000 per Pricing Review for each of the first two possible Pricing Reviews; and (b) for each Pricing Review thereafter, the lesser of (i) $75,000 per Pricing Review, or (ii) $50,000 per Pricing Review plus one-half of such fees and costs that exceed $50,000 in such particular Pricing Review;  provided, however, that such $100,000, $50,000 and $75,000 figures will be subject to adjustment based on changes in the Consumer Price Index, based on a 2008 base year.  With respect to any Pricing Review, the Interested Institutions shall be responsible for the Pricing Reviewer's fees and costs incurred in conducting the Pricing Review and preparing the Pricing Review Report in excess of the Pricing Review Cap.  Google will provide or make available to the Pricing Reviewer the following information within a reasonable period of time following the written request of the Pricing Reviewer (the "Pricing Information"):  (i) the number of postsecondary academic institutions that have Institutional Subscriptions offered to Higher Education Institutions as of the most recent anniversary of the Effective Date broken out by Pricing Category; (ii) a histogram showing the percentage of postsecondary academic institutions that pay each price within a Pricing Category; and (iii) Google's list price for each Pricing Category in the Institutional Subscriptions offered to Higher Education Institutions, as well as comparable information related to any pricing model referred to in Paragraph 3(d) below.  The Pricing Reviewer may request in writing additional information from Google necessary to render a determination as set forth in this Paragraph.  Google will evaluate any such request and will provide such requested information unless it reasonably determines that such information is not necessary for the Pricing Reviewer to render a determination (such information shall also be considered Pricing Information).  Pricing Information provided by Google: (1) will be subject to Google's reasonable confidentiality and production requirements; (2) will be deemed Google's confidential information; (3) may not be shared with any Fully

Participating Library or Cooperating Library (except to the extent reflected in the Pricing Review Report as provided below) or other third party unless otherwise agreed to by Google or authorized in the non-disclosure agreement executed with Google by the Pricing Reviewer governing the Pricing Information; and (4) may be used by the Pricing Reviewer only for purposes described in this Paragraph.  The Pricing Review Report shall not contain Pricing Information provided by Google unless Google otherwise agrees or the information is otherwise publicly available, but may contain conclusions based on such information that do not reveal the underlying information itself.  The Pricing Reviewer shall execute a reasonable non-disclosure agreement provided by Google to govern the use and disclosure of the Pricing Information disclosed by Google.  For each of the first ten (10) Pricing Review Dates, if the Interested Institutions do not initiate a Pricing Review, Google shall donate to the National Federation for the Blind or similar non-profit charitable organization selected by Google and approved by the Interested Institutions acting through the Designated Representative, such approval not to be unreasonably withheld:  (a) $100,000 in lieu of each of the first two possible Pricing Reviews; and (b) $50,000 in lieu of each of the subsequent Pricing Reviews; provided, however, that such $100,000 and $50,000 figures will be subject to adjustment based on changes in the Consumer Price Index, based on a 2008 base year.

(2)     Possible Pricing Challenge.  Any Initiating Library may initiate an arbitration pursuant to this Paragraph within ninety (90) days of receipt of a particular Pricing Review Report with respect to relevant Reviewable Subscriptions.  Any such arbitration will be the exclusive mechanism to resolve disputes between Google and the Initiating Libraries with respect to whether Google is pricing the Reviewable Subscriptions in accordance with the objectives set forth in Section 4.1(a)(i) of the Settlement Agreement.  The arbitration proceedings of all Initiating Libraries that submit requests for arbitration prior to the ninety (90) day deadline following the date the Pricing Review Report is provided to Initiating Libraries shall be combined into a single arbitration proceeding.  No Initiating Library may initiate an additional, separate arbitration based on the same Pricing Review Report.  The arbitration procedures shall be as set forth in the Library-Registry Agreement, except as explicitly set forth herein.  Any decision of the arbitrator(s) shall be based on the objectives set forth in Section 4.1(a)(i) of the Settlement Agreement, and the arbitrator(s) will not be authorized to make any other findings or to award damages of any kind to either party.  All arbitrating Initiating Libraries shall designate representatives (the "Arbitration Representatives") who, along with the Arbitration Representatives' legal counsel (provided such legal counsel are bound by or have been instructed by their clients, to Google's reasonable satisfaction, to comply with the same terms as the Arbitration Representatives with respect to such Pricing Information set forth herein), may have access to the Pricing Information subject to the same use restrictions applicable to the Pricing Reviewer.  The Pricing Information may not be disclosed to the Initiating Libraries in the arbitration other than to the Arbitration Representatives.  The Arbitration Representatives shall not disclose the Pricing Information to anyone (other than the relevant arbitrator(s)) including any individual at such Arbitration Representatives' Initiating Library (including, but not limited to, employees, executives, directors, trustees, regents, governors, contractors, and agents) without Google's prior written consent, which consent is not to

be unreasonably withheld.  Following the decision in any arbitration pursuant to this Paragraph, the relevant such Arbitration Representatives may not be involved in negotiations, or decisions with respect to such negotiations, with Google on behalf of an Initiating Library regarding the future price of the subscription for that institution.  Each party to the arbitration shall be responsible for its own costs and expenses incurred in the arbitration.

       (3)   <u>Pricing Adjustment</u>.  In the event any Initiating Library initiates an arbitration pursuant to Paragraph 3(c)(2) above, if the arbitrator(s) determine that the price of the relevant Reviewable Subscriptions should be lower than the existing price, then Google shall (1) adjust the price of each then-current relevant Reviewable Subscription by the Adjustment Amount (as defined in the following sentence) in the manner described below, and (2) charge no more than the arbitrator-determined pricing for any new or renewal relevant Reviewable Subscription for a period of at least two years following the date of the arbitrator(s)' decision (with arbitrator approved price increases allowed within this two year period).  The "Adjustment Amount" for each relevant Reviewable Subscription will be (x) the excess of the existing price of the relevant Reviewable Subscription over the arbitrator-determined price, calculated on a monthly basis, multiplied by (y) the number of months of the relevant Reviewable Subscription occurring after the date of the notice to Google of the initiation of the relevant arbitration pursuant to Paragraph 3(c)(2) above through the date of expiration of the relevant term thereof.  Google and the Institution (to the extent actually participating in the arbitration) agree to cooperate in expediting the selection of an arbitrator and the commencement and proceedings under any such arbitration, with the goals of (i) commencing arbitration proceedings as promptly as is reasonably practicable and (ii) having the time period between the date that the relevant arbitrator(s) commences substantive proceedings in the arbitration and the date of rendering of the arbitrator(s)' decision not be more than three months.  If such time period exceeds three months (which the arbitrator(s) may increase in his, her or their discretion to up to six months), then the number of months referred to in clause (y) above will be decreased by such excess number of months to the extent corresponding to relevant months of the relevant Reviewable Subscription.  The Adjustment Amount will be applied (in the form of a pro rata credit, discount or other equivalent method reasonably determined by Google) to reduce the balance remaining on the purchase price of such then-current relevant Reviewable Subscription for the period after the date of the arbitrator(s)' decision or, if the Adjustment Amount exceeds the amount remaining due for that period, such excess amount shall be refunded in cash by Google to the subscribing institution.  Google's total liability in connection with the aggregate Adjustment Amounts for relevant Reviewable Subscriptions will not exceed Google's Net Revenues from all Institutional Subscriptions offered to Higher Education Institutions current and existing as of the date of the decision by the arbitrator(s).  "Net Revenues" means total gross revenues received by Google from all Institutional Subscriptions offered to Higher Education Institutions less (i) the amount of any discounts to the Interested Institutions (to the extent such amounts otherwise would be included in gross revenues) and (ii) any revenue share payments that are paid by Google to the Registry in respect of such gross revenues for that period.  If the aggregate Adjustment Amounts exceed Google's Adjustment Amount liability limit

identified above, then the Adjustment Amount for each Reviewable Subscription subscriber will be adjusted on a pro rata basis (based on amounts paid by each institution) such that Google's total cash refund liability will not exceed the limit identified above.

d. **New Revenue Models**. If (1) Google makes available any new revenue model pursuant to Section 4.7 of the Settlement Agreement, (2) such new revenue model includes the offering of access to any Library Scans, and (3) such new revenue model is offered to any Higher Education Institutions, then to the extent Google and/or the Registry sets such price, such new revenue model shall be priced (both as to initial pricing and pricing over time) in accordance with the objectives set forth in Section 4.1(a)(i) of the Settlement Agreement, and the provisions of Paragraph 3(c) above, will apply to such pricing.

4. **Google Coupling.**

a. **Coupling Relative to Consumer Purchase**. If Google, to the extent authorized by the Rightsholder or the Settlement Agreement, uses any portion of a Library Scan within the United States in Consumer Purchases or Other Revenue Models (as defined below), then Google will provide the following services (the "Designated Services") to United States users with respect to such Library Scan as follows:

(1)   Commencing upon the Effective Date, free search services Online through Google Products and Services (including Preview Use or Snippet Display to the extent permitted under the Settlement Agreement);

(2)   Commencing upon the Effective Date, Library Links if there are online sources that can provide the information accessed through the Library Link free of charge to the user and without charge to Google;

(3)   Commencing upon the initial public offering of the full Institutional Subscription, but not later than five (5) years from the Effective Date, inclusion of the Library Scan in Institutional Subscriptions offered to Higher Education Institutions (including in the Institutional Subscription referred to in Paragraph 3(a)) if authorized by the Rightsholder under the Settlement Agreement; and

(4)   Commencing upon the public offering of the Public Access Service, but not later than five (5) years from the Effective Date, inclusion of the Library Scan in the Public Access Service if authorized by the Rightsholder under the Settlement Agreement.

b. **Worldwide Use**. If Google, to the extent authorized by the Rightsholder or the Settlement Agreement, uses any Library Scan in Consumer Purchases, in any new revenue model that may be developed pursuant to Section 4.7 of the Settlement Agreement or in any other manner in which Protected content is displayed that generates any revenue to Google (other than any use in which such Protected content is provided to users free of charge) in one or more countries other than the United

States, and such Rightsholder has rights to authorize such uses both within the United States and in such other countries, then Google will permit Higher Education Institution subscribers to an Institutional Subscription that includes such Library Scan to make such Library Scan available through such Institutional Subscription to its users in the United States and  such other countries.

   c.    **Effect of Failure to Satisfy Google Coupling**.  If Google and any Additional Contemplated Rightsholder Services Provider and/or Third-Party Required Library Services Provider collectively fail at any time to provide any of the Designated Services as to a particular Library Scan, then Google shall not use, nor authorize any third party to use, that Library Scan in Consumer Purchases or Other Revenue Models (as defined below) unless and until Google and/or any Additional Contemplated Rightsholder Services Provider and/or Third-Party Required Library subsequently provides such Designated Service(s) with respect to the relevant Library Scan.  For purposes of this Paragraph 4, "Other Revenue Models" means business models that may be agreed to by the Registry and/or Google under Section 4.7 of the Settlement Agreement and that use Library Scans, except for any Google service in which access to a given Library Scan is provided to the public free of charge.

   d.    **Matters Related to Use of Digital Copies in Lieu of Library Scans**.  The provisions of this Paragraph 4(d) will apply to the Institution only if the Institution has provided to Google and/or Google has created not less than 50,000 Institution Library Scans from the Institution's Selected Content.  From and after the date that the number of Excluded Replaced Books first exceeds the lesser of (1) 200,000, or two percent (2%) of all Books that are not Commercially Available as to which Library Scans at any time were made by or for Google (the "Exclusion Threshold"), then Google will, for all Excluded Replaced Books as to which a Library Scan at any time was made by or for Google from the Institution's Selected Content and which becomes an Excluded Replaced Book following the date the Exclusion Threshold is reached, obtain for and provide to the Institution rights and functionality with respect to such Excluded Replaced Books materially equivalent to the rights and functionality of an Institutional Subscription then held by the Institution (and subject to the terms and conditions thereof) had the Excluded Replaced Book been available as part of such Institutional Subscription.  An "Excluded Replaced Book" is a Book as to which (i) a Library Scan at any time was made by or for Google; (ii) the Rightsholder has (x) Removed the Book (when it existed as a Library Scan) pursuant to Section 3.5(a) of the Settlement Agreement and subsequently restored such Book to the terms of the Settlement Agreement and Google has not made a Library Scan of such Book following such restoration, or (y) excluded a Book that is not Commercially Available from Institutional Subscriptions pursuant to Section 3.5(b) of the Settlement Agreement; (iii) a Digital Copy (other than a Library Scan) is made by or for Google subsequent or incident to such Removal or exclusion; and (iv) the Rightsholder has authorized and Google has offered, pursuant to the Settlement Agreement, Consumer Purchases or any Other Revenue Models for the Book.

5.    **Research Corpus**.

    a.    **Cooperation in Research Corpus**.  Following the Effective Date, Google will exercise (when and if exercisable) all rights granted under Section 7.2(d) of the Settlement Agreement to enable the creation and implementation of the Research Corpus at Host Sites as determined and conditioned in accordance with such Section. Google will provide to each Host Site, in a manner to be mutually agreed upon by Google and the Host Site(s), a set of Digital Copies of all Books (other than Books that have been Removed by Rightsholders pursuant to Section 3.5 of the Settlement Agreement or Library Scans that have been withdrawn pursuant to Section 7.2(d)(iv) of the Settlement Agreement) and Digital Copies of public domain works Digitized in connection with the Google Library Project, unless restricted by the library that provided such works (provided that Google shall not cause or provide incentives to any library to impose any such restriction), to each of the Host Sites, subject to the Host Site(s) agreeing to the Host Site-Registry Agreement and a separate agreement with Google incorporating the terms of the Settlement Agreement governing the Research Corpus and restrictions on sharing the content.  Google shall offer Google Partner Program publishers the ability to include their works in the Research Corpus.

    b.    **Google Support**.  Google will make appropriate personnel reasonably available to provide, at no charge, up to 100 personnel hours per Host Site, per year for two years following the Effective Date consisting of technical start-up advice related to the creation and operation of the Research Corpus to each Host Site, subject to the Host Site(s) executing services agreements with Google containing Google's customary terms and conditions for such services.  In addition, Google shall provide not less than $5,000,000 in aggregate to be used at the direction of the Interested Institutions (acting through the Designated Representative in the manner set forth in Section 7.4 of the Settlement Agreement) for the development of one or more Host Sites (including Google as a Host Site), of which $500,000 will be deposited into an escrow account by Google after the execution by at least one Fully Participating Library or Cooperating Library of a Digitization Agreement or an amendment to a Digitization Agreement incorporating these Collective Terms within fifteen business days after written request by such Fully Participating Library or Cooperating Library, an additional $1,000,000 will be deposited into an escrow account by Google within fifteen business days after the last date of execution of Digitization Agreements and/or amendments to Digitization Agreements incorporating these Collective Terms by at least three Fully Participating Libraries and/or Cooperating Libraries (excluding the first Fully Participating or Cooperating Library that triggered the initial $500,000 payment), and the remainder will be deposited by Google into the escrow account within fifteen business days after the Effective Date.  The escrow account will be set up by the Interested Institutions, acting through the Designated Representative in the manner set forth in Section 7.4 of the Settlement Agreement, with an independent third party approved by Google, such approval not to be unreasonably withheld.  The costs for the creation and administration of the escrow account shall be paid out of the funds in escrow.  The Interested Institutions may use the escrowed funds solely for the development of one or more Host Sites immediately upon their deposit into the escrow account by Google.  Subject to the foregoing restriction, the Interested Institutions' use of the escrowed funds in the

development of the Host Site(s) shall be at their sole discretion.  The Interested Institutions, acting though the Designated Representative in the manner set forth in Section 7.4 of the Settlement Agreement, shall designate a representative (which may be the Designated Representative) authorized to deal with Google with respect to the creation and administration of the escrow account, the deposit of the funds, and all other matters relating to the Host Site(s), and Google shall be obligated to deal only with such representative.  The Interested Institutions shall be bound by the decision of such designated representative in the same manner as with respect to the Designated Representative under Section 7.4 of the Settlement Agreement.

c.  **Content Improvements and Delivery**.  After the initial delivery of the Research Corpus to a Host Site, within thirty (30) days after Google Digitizes a Book required to be in the Research Corpus or materially improves a Digital Copy of a Book contained in the Research Corpus, Google will provide or make available a copy of the file for each such Digital Copy to the Host Site.  In addition, Google will provide each Host Site access to download a copy of the electronic file for each such Digital Copy of a Book each time an electronic file for that Book is improved by (i) any Fully Participating Library or Cooperating Library provided that such library makes the improved file available to Google, (ii) any third party that improves the quality of a Digital Copy of such Book to be used in the Accommodated Services under the terms of a Library-Registry (Fully Participating) Agreement, Library-Registry (Cooperating) Agreement, and/or the Settlement Agreement, provided that such third party makes the improved file available to Google, or (iii) any third party to the extent Google is so permitted under a contract with such third party and provided that such third party makes the improved file available to Google.  If a Host Site elects to download a copy of the improved electronic file for any such Book, the Host Site may download only the most current version of such file.  Google will make improved versions of the files available to each Host Site within a reasonable period of time after they are created by another party and provided to Google as contemplated by this Paragraph.  If an Interested Institution improves a Digital Copy of a Book, a public domain work or other work contained in the Institution Digital Copy, it shall provide the improved file to Google within a reasonable period of time.  In connection with the furnishing of required content, Google agrees from time to time to (x) use delivery methods to be mutually agreed upon between Google and the Host Site that are reasonably appropriate to timely delivery of the volume of content being delivered; (y) employ mutually agreed upon technologies that provide reasonably appropriate downloading and throughput speeds to each Host Site; and (z) make available servers (or use some other mutually agreed upon mechanism for delivery of data) that have reasonably appropriate capacity and rate of connectivity.

d.  **Technical Cooperation**.  Google will reasonably cooperate with each Host Site to establish mutually agreed communications and dispute resolution procedures with the goal that Host Site issues related to technical performance (e.g. related to download issues) be addressed expeditiously.

6.      **Accommodated Service**.

        a.      **Availability of Accommodated Service**.  Google acknowledges its intent to make the Accommodated Service generally available within two (2) years following the Effective Date.

        b.      **Reports and Notice**.  Following the Effective Date, Google will report, annually, to the Designated Representative on its progress to develop, provide, and maintain the Accommodated Service, including information about the time-frame in which Google believes that the Accommodated Service will be made available.  Such reports will be considered Google's confidential information, except that the Designated Representative can disclose the reports to other Interested Institutions under the same confidentiality restrictions as are applicable to the Interested Institution of the Designated Representative.  If Google determines that it will not implement the Accommodated Service during the period referred to in Section 7.2(g)(ii)(2)(a) of the Settlement Agreement or not maintain it after its initial launch, it will promptly notify the Designated Representative (who may so notify the Interested Institutions).

        c.      **Database**.  Following the initial public offering of the Accommodated Service, Google shall maintain an accessible, searchable, on-line database that will enable the public to determine which Library Works are currently accessible through the Accommodated Service.

7.      **Advertising and Institutional Subscription.**  The provisions of this Paragraph 7 will apply to the Institution only if the Institution has provided to Google and/or Google has Digitized not less than 50,000 Institution Library Scans from the Institution's Selected Content.  The Institution acknowledges that the Institutional Subscription offered to Higher Education Institutions may contain advertising as determined by Google.  However, Google agrees that in the event it offers an Institutional Subscription that does not contain advertising to any Higher Education Institution, it will offer such Institutional Subscription that does not contain advertising to the Institution (Google reserves the right to price such Institutional Subscription differently than the Institutional Subscription that contains advertising).

8.      **Commercial Availability and Classification by Google**.  Google will use the process set forth in Section 3.2(d) of the Settlement Agreement to classify each work as Commercially Available or not and to correct mistakes made in initially classifying a work as Commercially Available (including when notified in writing by a Fully Participating Library or a Cooperating Library of any purported misclassification) in accordance with the terms of the Settlement Agreement.  If any Fully Participating Library or Cooperating Library notifies Google in writing that it believes in good faith that a work may have been mistakenly classified as Commercially Available, or that the work may no longer be Commercially Available, Google will evaluate such information and, if in its reasonable judgment it concurs, notify the Registry to properly classify such work.

9.      **Certain Google Covenants.**

a.   **Exercise of Certain Rights**.  Google will exercise its rights under Section 3.5(b)(vi) of the Settlement Agreement to the extent necessary to fulfill any relevant obligations of Google to the Institution.

b.   **No Obligation to Collect**.  Google will not condition availability of the Public Access Service on the relevant library agreeing to collect for Google amounts referred to in Section 4.8(a)(ii) of the Settlement Agreement.

10.   **Information.**

a.   **Institution Digital Copy.**  For each work contained in the Institution Digital Copy and in the equivalent of the Institution Digital Copy of each other Interested Institution, Google shall use commercially reasonable efforts to make available to the Institution (which may be accomplished through delivery to the Designated Representative for distribution to the various Interested Institutions) access to the following information in a generally accepted electronic format:  (i) a unique identifier number for the work; (ii) whether Google is treating the work as being in the public domain in the U.S., along with the factual basis for such determination (but not analysis or reasoning with respect to such determination); (iii) whether the Registry has objected to a book as being in the public domain pursuant to Section 3.2(d)(v) of the Settlement Agreement and the outcome of any dispute relating thereto; (iv) whether Google is treating the work as being a Government Work; (v) whether Google is treating the work as being subject to the Settlement Agreement; (vi) the status of the work with respect to its Commercially Available classification if such work is governed by the Settlement Agreement, including but not limited to any notices of suspected misclassification by the Registry pursuant to Section 3.2(d)(iii) of the Settlement Agreement and any corrections to such classification made by Google, whether or not in response thereto; (vii) whether Google is using any portion of the work in Consumer Purchases or in any Other Revenue Model; (viii) whether Google is including the work in any of the Required Library Services; (ix) with respect to works that are Government Works or Public Domain Books, whether Google has received a request from a Rightsholder of any Insert in any such Government Work or Public Domain Book to Exclude such Insert from Display Uses (including the identity of the Rightsholder and the relevant Insert), any determination by Google to accept or reject such request, and the resolution of any dispute relating thereto pursuant to Section 3.5(b)(vii) of the Settlement Agreement; and (x) whether, if Google is aware, the work has been registered with the United States Copyright Office.

b.   **Information to Perform Obligations**.  Within a reasonable period following receipt of a written request from the Institution, Google shall provide to the Institution all data provided by the Registry to Google pursuant to Section 6.5(b) of the Settlement Agreement, including all updates, as is reasonably necessary for the Institution to perform its obligations under its Library-Registry Agreement.

c.   **Public Disclosure of Public Domain Determinations**.  Google will make available to the general public the information described in Paragraph 10(a)(ii).

d.   **Pricing Strategy**.  Within a reasonable period following receipt of a written request, Google shall make available to the Designated Representative the initial Pricing Strategy and any subsequent Pricing Strategies relating to Institutional Subscriptions offered to Higher Education Institutions that are agreed upon by Google and the Registry pursuant to Section 4.1(a) of the Settlement Agreement.  The Designated Representative may distribute such pricing strategies to Interested Institutions.  Google will inform the Institution of any Google Products and Services that meet the definition of "Adjunct Product" in the Settlement Agreement and whether the Registry has elected to renegotiate under Section 4.1(a)(ix)(3) of the Settlement Agreement.

e.   **Google Exclusion Decisions**.  Within a reasonable period following receipt of a written request, Google will make available to the Designated Representative (who may then disclose same to the Interested Institutions): (i) a list of Books Google has Digitized or received Digital Copies of and a list of Books of which it is making Display Uses; and (ii) information concerning whether the exclusion of Books from one or more Display Uses was for editorial or non-editorial reasons, and if for non-editorial reasons, whether the exclusion was for quality, legal or technical concerns.  For the avoidance of doubt, the Institution may publicly disclose the identity of Books excluded for editorial reasons at any time.

f.   **Required Library Services Information**.  Within a reasonable period following receipt of a written request, Google will disclose to the Designated Representative (who may then disclose same to the Interested Institutions) the following information to the extent reasonably necessary for the Institution to monitor and enforce Section 7.2(e) of the Settlement Agreement and Paragraph 4(d) of these Collective Terms, including without limitation:  (i) the number of Library Scans made by or for Google at any time; (ii) the number of such Library Scans that are Commercially Available; (iii) the number of Excluded Replaced Books; (iv) the number of Not Counted Library Works; (v) the number of Display Books; (vi) the number of No Display Books; (vii) the number of Library Scans that are not authorized to be included in Institutional Subscriptions pursuant to the terms of the Settlement Agreement; (viii) the Required Library Services being provided for each of the Library Scans; and (ix) the number of Library Scans for which each of the Required Library Services is being provided.  Google will identify, if requested by the Designated Representative, the relevant specific Books with respect to each category of information provided above, and the Designated Representative may request such additional information no more than once in any six-month period.

g.   **Confidentiality and Copying Restriction**.  The information made available by Google pursuant to Paragraphs 10(a)(iii), (vi) and (ix), 10(d), and 10(f) above may not be shared by the Institution with third parties as Confidential Information of Google pursuant to the confidentiality provisions of the Digitization Agreement, except as provided therein, as otherwise required by law, with prior written approval from Google, for disclosure to another Interested Institution or (except as to information provided pursuant to Paragraphs 10(d) and 10(f)) for relevant disclosure on a confidential basis to a third party that is hosting the Institution's LDC.  As to the information made

available by Google pursuant to Paragraphs 10(a)(ii) (as to the factual basis information, but not Google's analysis or reasoning, only), (iv), (v), (vii), (viii) and (x), the Institution is free to use same internally or disclose same to another Interested Institution, and Google acknowledges that such information is not subject to the confidentiality provisions of the Digitization Agreement; however the Institution agrees that it will not publicly disclose any copy (whether in hard copy or digitally) of all or any substantial portion of any particular database originally provided by Google pursuant to any such Paragraph so long as such database is not first publicly disclosed by Google or any other person, except as may be provided in the Digitization Agreement, as may be otherwise required by law, or with prior written approval from Google.  With respect to the identification of any Book pursuant to this Section 10, Google shall provide at least one unique identifier number used by Google to identify such Book and the bar-code or other identifier associated with the relevant Participating Library's Book used when Digitizing the Book.

h.     **Quarterly Updates**.  Except as otherwise set forth herein, following its initial provision, Google will update on a quarterly basis information provided pursuant to this Paragraph 10 that is required for the Interested Institution to meet its obligations with respect to the Collective Terms, Digitization Agreements, or Library-Registry Agreements.  Except as otherwise set forth herein, within a reasonable period following receipt of a written request, Google will update the information provided by Google pursuant to this Paragraph 10 following its initial provision to the Institution, but in no event shall it be obligated to update such information more frequently than quarterly.  The information provided under this Paragraph 10 shall be accurate as to Google's knowledge at the time of its provision to the Designated Representative, the Institution or the public, as the case may be.

i.     **Misclassification**.   If the Institution informs Google of any works that it believes have been misclassified as not in the public domain (or of a systematic misclassification of works) and provides supporting reasons and information, as well as information regarding the processes used to verify such information, then Google shall use commercially reasonable efforts to appropriately consider such information (and to remedy any such systematic misclassification Google determines to exist).  To the extent Google determines that any work is in the public domain as a result of the foregoing, it shall treat such work as being in the public domain.

j.     **Enforcement by Google**.  Google hereby agrees to enforce for the benefit of the Institution the following provisions of the Settlement Agreement:  Sections 6.5(b) (first sentence), 6.6(c), and 6.6(d), subject to any confidentiality and privacy restrictions.

11.   **Designated Representative and Security Representatives Matters**.  The Institution agrees to select, give instructions to, and exercise or waive certain rights through, the Designated Representative and the Security Representatives, as set forth in Section 7.4 of the Settlement Agreement.

12.   **Provisions of Digitization Agreements**.  Google will reflect, in each Digitization Agreement with a Fully Participating Library or Cooperating Library that such library will

not have any rights to participate in the selection of, giving instructions to or exercising or waiving certain rights through the Designated Representative or the Security Representatives, as the case may be, unless such Fully Participating Library or Cooperating Library agrees to the terms of Section 7.4 of the Settlement Agreement and the then existing governance rules as established from time to time by the Fully Participating Libraries and the Cooperating Libraries (including any rules as to the sharing of fees and costs of the Designated Representative and the Security Representatives, as the case may be).

13.   **References**.  All references herein to provisions of the Settlement Agreement are intended to mean and include, as reasonably appropriate, such provisions as incorporated into the Library-Registry Agreement (whether pursuant to an Exhibit thereto or otherwise) to which the Institution is a party.