UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

THE AUTHORS GUILD, INC., ASSOCIATION
OF AMERICAN PUBLISHERS, INC., et al.,

                Plaintiffs,

      v.

GOOGLE INC.,

                Defendant.

------------------------------X

No. 05 Civ. 8136 (DC)

## **DECLARATION OF JULIA WRIGHT**

I, JULIA WRIGHT, declare under penalty of perjury that the following is true and correct:

1. I am the author of several fiction and non-fiction published works, most of which are inserts. As a class member in the above-captioned matter (the "Google Books Settlement"), I object to the Google Books Settlement for the reasons set forth in the Objections of Arlo Guthrie, Julia Wright, Catherine Ryan Hyde, and Eugene Linden to the Proposed Class Settlement Agreement (the "Objections").

2. I am also the daughter of Richard Wright and the executrix of his Estate. My father is widely considered one of the most influential African American authors in history. During his lifetime he wrote over twenty published works, including such influential novels as *Uncle Tom's Children*, *Black Boy*, and *Native Son*, the latter of which was adapted as a movie on two occasions. Over the years, my father has been awarded numerous prizes including the Spingarn Medal, the Guggenheim Fellowship, and the Story Magazine Award. Many scholars have studied and written about my father's works, which have become part of the curriculum in college courses around the world. A collection of his unpublished works, letters, and private

papers is currently housed at Yale University. Earlier this year, in recognition of his legacy, the United States Postal Service issued a stamp commemorating my father and his work.

3. I have reviewed the proposed Settlement and Notice of Settlement which was first brought to my attention on February 13, 2009. Many of the terms of the Settlement are very confusing and difficult to comprehend, and I have concluded overall that the Settlement is significantly deficient and flawed. As a result, as to my own works, I submit this Declaration in support of the Objections. For the same reasons set forth below and many others, I have concluded on behalf of the Estate of Richard Wright that it must opt out of the Settlement.

a) The Google Books Settlement represents one of the most profound developments in the history of literature. By scanning and continuing to scan millions of books without permission, Google seeks to obtain what effectively amounts to a significant portion of the sum total of recorded human knowledge. Such access and control affords Google enormous power and raises significant concerns.

b) Among other things, I am extremely concerned about Google's "Non-Display Uses" of copied works as permitted under the terms of the Settlement. The Agreement does not provide a complete explanation of what Non-Display Uses are permissible under the Settlement, what Non-Display Uses will be made of authors' works, and how Google will benefit from these uses. As a result, among other things, the Agreement leaves Google free to take and exploit valuable information from our works and use it in ways that may harm particular groups or individuals by monitoring and invading their privacy. More disturbingly, Google could do this without authors ever knowing.

c) While Google has publicly claimed that it would not use this information in a nefarious manner, nothing in the Agreement would prevent such uses. Indeed, given the perpetual nature of the licenses Google would receive under the Settlement, I am very concerned

that, should Google experience any significant change in management or corporate ownership in the decades ahead, this valuable information could be used in numerous unanticipated and destructive ways, including being sold and used by organizations or even countries that do not respect human rights.

  d)  As I understand the Settlement, not only am I not being compensated for any Non-Display Uses of my works, but there is no way I can remove my works from Non-Display Uses so as to ensure that Google does not use them in a harmful manner.

  e)  Similarly, I am very concerned about the lack of control over Display Uses of my works. Under the terms of the Settlement, absent excluding my works from Display Uses – and in effect eliminating the potential benefits of this Settlement of both potential exposure and any hope of future revenue – I am unable to control the type of advertising that may be displayed next to my works. As a result, for example, Google would be free to sell advertising next to my works that promotes organizations or corporations that do not share my or my father's vision of racial equality.

  f)  I am also very concerned about this Settlement because it provides no protection for authors that seek to challenge Google. As the world's dominating search engine, Google has essentially the ability to "make or break" an author simply by moving his or her ranking on its search engine. The danger is that this can be done intentionally but would be virtually impossible for an author to prove. The Settlement provides no mechanism to ensure that Google does not use its market dominance to harm authors in this manner.

  g)  I have also found the Google Books Database to be a completely unusable, onerous, and defective in terms of allowing both me and the Estate to determine the current value of works that were scanned and for which we should be compensated under the Settlement. For example, the Estate has spent over forty hours trying to claim its works, but still has not

completed the process. On several occasions the Database actually deleted proprietary claim information we had entered, destroying hours of work and forcing us to start anew over and over again. The Database also issued error notices when we tried to claim works and, on occasion, was completely inaccessible online. We explained our concerns and problems with the Database to class counsel Michael Boni at a meeting on June 9, 2009. While he offered us assistance in claiming our works at that meeting, such help was never provided.

h) In addition, I have found numerous substantive inaccuracies in the Database. For example, one of my works in progress, *Daughter of a Native Son*, is categorized as commercially available when in fact it has not yet been published. Another one of my co-authored works listed in the Database is not even a book but rather a pamphlet. In reviewing the works of the Estate, I also discovered that one of the titles of my father's works was listed incorrectly.

i) Even more disconcerting is the possible copying of unregistered works, manuscripts, and letters that are not subject to this Settlement. Both my father and I have unpublished papers housed at universities in the United States. My father's are currently at Yale and my own papers are at Howard University. When I attempted to claim my father's works online using the Database, I came across a catalogue of my father's unpublished works at Yale which suggested that it was scheduled to be scanned. I also discovered that the New York Public Library had provided information about a manuscript and a letter signed by my father that were classified in the Database as "books."

j) Similarly, I have significant concerns about the accuracy of the digital copies of my works. It is critical that any copy be done with the utmost fidelity to the original work. And yet, the Settlement does not provide me with any sense of comfort that such quality control exists. I asked class counsel Michael Boni to provide me with a copy of our digitized

4

works so that I could review and ensure their accuracy. Despite assurances that he would make an exception and allow me to review these copies, I was never provided with them. Accordingly, I am left with no mechanism to ensure that Google does not use faulty copies of our works. At minimum, authors should be able to review the quality of the digital copies of their works before they are forced to make a decision regarding whether or not to opt out of the Settlement.

k) I also take issue with many of the classifications of authors' works under the Settlement. For example, many lesser known authors sell their works on their own websites. Google, however, has determined that these works do not qualify as "commercially available" and are thus, under the terms of the Settlement, automatically displayed and exploited once they are scanned. This seems very unfair to those authors who wish to maintain control over their works and sell them through such independent channels. It also has the potential to chill future attempts by authors to use their own websites or other non-traditional strategies to market their works, because by electing to use such strategies over "traditional" sales channels they would lose control over uses of their works by Google based on this arbitrary definition of what constitutes commercial availability.

l) Finally, as an African-American author and the daughter of one of the most prominent African-American authors in history, I am deeply troubled by the lack of representation that communities of color have received throughout this Settlement. None of the named authors represent the particular interests of authors of color and, as I was explicitly told on June 9, 2009, by class counsel Michael Boni, no attempts were made in Google's Notice

program to specifically reach out to communities of color such as, for example, through publication of the Notice in periodicals that target particular minority groups

Dated: New York, New York
      September ___, 2009

August 31st 2009

By: _____
        Julia Wright