The Author's Guild et al v. Google Inc. Doc. 214

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

THE AUTHORS GUILD, INC., ASSOCIATION
OF AMERICAN PUBLISHERS, INC., et al.,

          Plaintiffs,

       v.

GOOGLE INC.,

          Defendant.

------------------------------X

No. 05 Civ. 8136 (DC)

## DECLARATION OF LAURA LESLIE ON BEHALF OF THE ESTATE OF PHILIP K. DICK

I, LAURA LESLIE, declare under penalty of perjury that the following is true and correct:

1. I am the daughter of the author Philip K. Dick and the Trustee of the Philip K. Testamentary Trust (the "Estate"). I submit this declaration on behalf of the Estate in order to bring the Court's attention to our serious concerns about the proposed settlement in the above-captioned matter (the "Google Books Settlement") that contributed to the Estate's decision to opt out of the Google Books Settlement.

2. My father is regarded as one of the greatest science fiction writers in history. During his lifetime he published forty-four novels, over a hundred and twenty short stories, and numerous articles, forwards, and other inserts. His works have been awarded and nominated for several achievements including the Hugo Award, the Nebula Award, the John W. Campbell Memorial Award, and the British Science Fiction Association Award. His works have also been published by the Library of America which is regarded as the quasi-official national canon of American literature.

Dockets.Justia.com

3. My father's works have also been adapted into nine major motion pictures including *Total Recall, Minority Report, Paycheck, Imposter, A Scanner Darkly,* and *Blade Runner,* the latter of which was heralded by the American Film Institute as one of the hundred greatest American films of all time. A tenth film based on my father's work is scheduled to begin filming next month.

4. I have reviewed the Notice of Settlement and the proposed Settlement Agreement. Based on my review of these documents – significant portions of which are remarkably complex and confusing – I have concluded overall that the Google Books Settlement is primarily designed to benefit authors whose works are either largely out-of- print or have limited exposure and sales. It does not significantly benefit those authors and Estates who have achieved a significant level of sales, stature, and renown, and particularly those who have large numbers of popular inserts. Among other things, I have concluded that the Settlement is unfair to our Estate in the following particular respects:

a) The Estate consists of many valuable inserts. Indeed, most film adaptations of my father's works, including *Minority Report* and *Total Recall*, are based on his short stories. Yet under the terms of the Settlement, Google would only pay the Estate $15 for any past infringement of these inserts, and $25 to $50 for all future subscription uses of these valuable inserts. *Remarkably, the Estate would not be entitled to receive any share of the advertising revenue derived from the display of these inserts.* This limited compensation seems incredibly inadequate and unfair given the value of the numerous short stories my father wrote.

b) Similarly, the Estate has considerable concerns about Google's "Non-Display Uses" of my father's works. The Agreement does not provide a sufficient explanation for what Non-Display Uses are permissible under the Settlement, what uses will be made of works, and the ways in which those uses might produce revenue. Equally critical, the Settlement

makes no provision for sharing any of that revenue with authors, and takes away all control over any Non-Display Use of my father's valuable inserts.

c) This striking absence of control is also evident in the advertising provisions of the Agreement. Under the terms of the Settlement, Google is offering class members a chance to participate in a revenue sharing arrangement based on the advertising sold and on certain narrowly-defined displays of their works online. But the Agreement gives the Estate no way – aside from effectively "turning off" all display uses which would foreclose any corresponding benefit in terms of exposure and revenue that might be derived from this Settlement – to ensure that inappropriate or offensive ads are not displayed next to my father's works. Since my father's death, the Estate has been vigilant about protecting his image and legacy. Giving Google the right to determine arbitrarily which ads should be placed next to his works, or to sell that right to the highest bidder, could undo these efforts and permanently harm his reputation.

d) I understand that the class action against Google sought damages relating to copyright infringement, but the Settlement requires all class members to waive any and all trademark and all other claims they may have against Google for the use of their works under the Agreement. This is unacceptable for the Estate which, among other concerns, has significant and valuable trademark rights in various published works. For example, the Estate successfully registered the title of one of my father's novels, *Ubik*, after discovering that numerous individuals and companies were trying to use the term without permission to label and sell various commercial products. The Estate has been extremely vigilant about protecting these valuable rights, and it is not prepared to grant Google an unfettered right to use such marks through this Settlement.

e) The Estate has also concluded that remaining in the Settlement is simply untenable given the significant burden the Google Books Database places on the Estate. A recent search for works by my father on the Database resulted in over 3,000 entries. In order to sift through these entries, determine which works have been scanned, and attempt to reassert control over these works in the limited ways provided in the Settlement, the Estate would have to spend a considerable amount of time, effort, and resources. This problem is compounded by the fact that the Database is indecipherable. For example, I cannot assess whether a particular work is an Insert or Partial Insert. Even more confusing are the numerous foreign titles that are listed in languages that I do not speak. I would essentially need to hire numerous translators to re-claim some control over works that should never have been copied and scanned in the first place.

f) Moreover, the Database is riddled with technical problems. Not only is it very hard to claim and unclaim works, but on several occasions I was essentially "stuck" in the Database and was unable to move to the next page and complete the claiming process. When I contacted the Settlement Administrator for assistance as instructed on the Google Books website, I did not receive a response for days. When I finally got an opportunity to explain my technical problems with accessing the Database, I was told by the Administrator that they could not help me.

g) Finally, the Estate is compelled to opt-out because of the perpetual license the Settlement would give Google at a time when technology relating to books is still evolving. My father often wrote about innovations that were inconceivable during his time, but have become a reality today. If nothing else, his work teaches us that the future is filled with possibility, and that it is fundamentally unfair to expect authors to give up their rights to uses that

may be inconceivable today but very valuable tomorrow.

Dated: New York, New York
      August 31, 2009

By: _____
     Laura Leslie

Laura Archer Dick Beets
Pleasanton, CA