# EXHIBIT E

Michael J. Boni (pro hac vice)
Joanne Zack
Joshua Snyder
BONI & ZACK LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: (610) 822-0200
Facsimile:  (610) 822-0206

Bruce P. Keller (BK 9300)
Jeffrey P. Cunard
James J. Pastore, Jr. (JP 3176)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| The Authors Guild, Inc., Association of American : Publishers, Inc., Associational Plaintiffs, and : Herbert Mitgang, Betty Miles, Daniel Hoffman, : Paul Dickson, Joseph Goulden, The McGraw-Hill : Companies, Inc., Pearson Education, Inc., : Penguin Group (USA) Inc., Simon & Schuster, : Inc., and John Wiley & Sons, Inc., individually : and on behalf of all others similarly situated, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> Google Inc., : <br> : <br> Defendant. : | Case No. 05 CV 8136-JES <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** <br><br> **FILED ELECTRONICALLY** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiffs, by their attorneys, allege as follows:

## <u>NATURE OF THE ACTION</u>

1. Plaintiffs are published authors, book publishing companies, The Authors Guild, Inc. ("Authors Guild") and the Association of American Publishers, Inc. ("AAP"). Plaintiffs other than the Authors Guild and the AAP have United States copyright interests in books and other writings that are contained in public libraries, university libraries and elsewhere in the United States.

2. The Authors Guild is the nation's largest organization of book authors, which has as its primary purpose to advocate for and support the copyright and contractual interests of published writers.

3. The Association of American Publishers, which has over three hundred publisher members, represents the interests of the American book publishing industry and has, among its central purposes, the protection and strengthening of intellectual property rights for publishers, especially copyright.

4. Defendant Google Inc. ("Google") owns and operates a major Internet search engine that, among other things, provides access to commercial and other sites on the Internet.  Google has contracted with several public and university libraries to create digital "archives" of the libraries' collections of books, including those of the University of Michigan, the University of California and Stanford University.  As part of the consideration for creating digital copies of these collections, the agreement entitles Google to reproduce and retain for its own commercial use a digital copy of the libraries' archives.

2

5.     By creating for these and other libraries a digital copy of those books that are not in the public domain ("Books," further defined below at paragraph 35), by reproducing for itself a digital copy of the Books, and by distributing and publicly displaying those Books, Google is engaging in massive copyright infringement.  It has infringed, and continues to infringe, the electronic and other rights of the copyright holders of the Books.

6.     Google plans to reproduce the Books for use on its website in order to, among other things, attract visitors to its web site and generate advertising revenue thereby.

7.     Google knew or should have known that the Copyright Act, 17 U.S.C. § 101 *et seq*. ("the Act") required it to obtain authorization from the holders of the copyrights in these Books before creating, distributing and reproducing digital copies of the Books for the University of Michigan library and other libraries providing Books to Google, for its own commercial use and for the use of others.  Despite this knowledge, Google has unlawfully reproduced, distributed and publicly displayed the Books, and intends to continue to do so, without the copyright holders' authorization.  Google has derived, and intends to continue to derive, revenue from this program by attracting more viewers and advertisers to its website.

8.     By this action, plaintiffs, on behalf of themselves and all others similarly situated, seek damages, injunctive and declaratory relief with respect to Google's present infringement, and declaratory and injunctive relief with respect to Google's planned unauthorized commercial and other use of the Books.

## JURISDICTION AND VENUE

9.      This copyright infringement action arises under 17 U.S.C. § 101 *et seq.*

This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question), and

28 U.S.C. § 1338 (acts of Congress related to copyright).

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and

1400(a) because several of the named plaintiffs reside in this district and because defendant

maintains offices and conducts business in this district.

## PARTIES

11.     The individual plaintiffs are (a) published, professional authors who

created Books for which the copyrights have been registered with the United States Copyright

Office ("Author Plaintiffs"), and (b) book publishing companies, which hold exclusive licenses

and United States copyright interests in Books for which the copyrights have been registered

with the United States Copyright Office ("Publisher Plaintiffs").

## AUTHOR PLAINTIFFS

12.     Plaintiff Herbert Mitgang ("Mitgang") is a published author of numerous

nonfiction Books.  Mr. Mitgang resides in New York, New York.  He is the holder of the

copyright in the published Books *The Fiery Trial:  A Life of Lincoln* (registration number

A536977) published by Viking Press, and other Books contained in the library of the University

of Michigan.

13.     Plaintiff Betty Miles ("Miles") resides in Shelburne, Vermont.  She is the

author of several Books of children's and young adult fiction and is a holder of copyright in the

Books *Just Think* (registration number A330604), published by Alfred A. Knopf.  This Book is contained in the library of the University of Michigan.

14.     Plaintiff Daniel Hoffman ("Hoffman") resides in Swarthmore, Pennsylvania.  He is the author and editor of many volumes of poetry, translation, and literary criticism, and of a memoir.  He is the holder of copyright in the Books *Barbarous knowledge: Myth in the Poetry of Yeats, Graves, and Muir* (registration number A896931 and registration renewal number RE-696-986) and *Striking the Stones* (registration number on A985815 and registration renewal number RE-730-198), both published by Oxford University Press.  These Books are contained in the library of the University of Michigan.

15.     Plaintiff Paul Dickson ("Dickson") resides in Garrett Park, MD.  He is a full-time writer and the author of 46 Books, including *There Are Alligators in Our Sewers, and Other American Credos*, Nos. TX-1-086-226 and VA-123-147, co-authored with plaintiff Joseph Goulden; *Family Words: The Dictionary for People Who Don't Know a Frone from a Brinkle*; No. TX-2-427-193; and *The Official Rules*, No. TX-166-929.  This Book is contained in the library at the University of Michigan and has been digitally copied by Google.

16.     Plaintiff Joseph Goulden ("Goulden") resides in Washington, D.C.  He is the author of several Books, including *There Are Alligators in Our Sewers, and Other American Credos*, Nos. TX-1-086-226 and VA-123-147, co-authored with plaintiff Paul Dickson.  This Book is contained in the library at the University of Michigan and has been digitally copied by Google.

17.     Author Plaintiffs are the exclusive owners of the copyrights for their

Books listed above.  None of the Author Plaintiffs has authorized Google to reproduce his or her

Books or to display, sell and/or distribute such Books on its website or anywhere else.

**PUBLISHER PLAINTIFFS**

18.     Plaintiff The McGraw-Hill Companies ("McGraw-Hill") is a New York

corporation with its principal place of business in New York, New York.  Through its Education

segment, McGraw-Hill is a leading publisher of educational materials, information and solutions

for the Pre-K through 12th grade, Assessment & Instruction, Higher Education and Professional

markets.  McGraw-Hill is the owner or exclusive licensee of, among others, copyrights in

*Computer Telephony Demystified: Putting CTI, Media Services, and IP Telephony to Work*, No.

TX 5-161-011 and *Basic Concepts in Embryology:  A Student's Survival Guide*, No. TX 4-732-

805.  These Books are contained in the library at the University of Michigan and have been

digitally copied by Google.

19.     Plaintiff Pearson Education, Inc. ("Pearson Education"), formerly named

Prentice-Hall, Inc., is a Delaware corporation that is a subsidiary of Pearson plc and has its

principal place of business in Upper Saddle River, New Jersey.  Together with its corporate

affiliates, Pearson Education is one of the leading educational publishers in the world, educating

more than 100 million people worldwide.  Its college and professional imprints include Prentice-

Hall, Addison-Wesley, Allyn & Bacon, Benjamin Cummings, Longman, Que, Sams and New

Riders.  Pearson Education is the owner or exclusive licensee of, among others, copyrights in

*Classical and Contemporary Cryptology*, No.  TX 6-010-384  and *Dental Health Education:*

6

*Lesson Planning and Implementation*, No. TX 6-560-288.  These Books are contained in the library at the University of Michigan and have been digitally copied by Google..

20.     Plaintiff Penguin Group (USA) Inc. ("Penguin") is a Delaware corporation that is the United States affiliate of the Penguin Group and is a subsidiary of Pearson plc.  It has its principal place of business in New York, New York.  In addition to its Penguin imprint, Penguin publishes under famous imprints and trademarks, such as Viking, Penguin Classics, Penguin Press, G. P. Putnam & Sons (founded 1836), Dutton, and Riverhead.  Penguin is the owner or exclusive licensee of, among others, copyrights in *Now Sheba Sings The Song*, Nos. TX 2-124-052 and VA 270-350 and *Ironweed*, No. TX 1-107-738.   .  These Books are contained in the library at the University of Michigan and have been digitally copied by Google.

21.     Plaintiff Simon & Schuster, Inc. ("Simon & Schuster"), a subsidiary of Viacom, Inc., is a New York corporation with its principal place of business in New York, New York.  Founded in 1924, Simon & Schuster's prominent imprints include Simon & Schuster, Scribner and Free Press.  Simon & Schuster is the owner or exclusive licensee of, among others, copyrights in *Hello, Darkness*, No. TX 0-005-832-501 and *Girl: A Novel*, No. TX 0-004-647-723.  These Books are contained in the library at the University of Michigan and have been digitally copied by Google.

22.     Plaintiff John Wiley & Sons, Inc. ("John Wiley") is a New York corporation with its principal place of business in Hoboken, New Jersey.  Founded in 1807, John Wiley is a leading publisher for the higher education, professional, trade, scientific, technical, and medical communities worldwide.  It is, along with its wholly-owned subsidiaries, the owner or exclusive licensee of, among others, copyrights in *Smith, Currie & Hancock's Common Sense*

7

*Construction Law*, No. TX 4-504-656 and *The Nonprofit Handbook: Fundraising*, No. TX 4-504-827..  These Books are contained in the library at the University of Michigan and have been digitally copied by Google.

23.     Publishers invest a great deal of time and money to acquire rights to and publish their Books, which reflect not only the creative efforts of individual authors, but also the substantive and creative review, input and organization of editors employed by Publishers, as well as significant expenditures on the printing, marketing and distribution of those Books. Publishers have vigorously sought to protect, defend and enforce their exclusive rights in and to their Books, including those identified in this complaint.

24.     In order to profitably publish their Books and continue in business, Publishers depend on initial and backlist sales of copies of Books and the licensing revenue from these Books.  Particularly with respect to Books that are not intended for the mass market, the sale of every additional copy – in whatever medium – is significant, as is each source of ancillary revenue, such as licensing fees received for granting permission to make copies of and prepare and use excerpts of such Books in hard copy and in electronic form.

25.     It has long been the case that, due to the exclusive rights enjoyed by Publishers under the Copyright Act, both for-profit and non-profit entities provide royalties or other consideration to Publishers in exchange for permission to copy, even in part, Publishers' Books.

26.     Collectively, the Publishers have registered many more copyrights than those set forth in this complaint and, collectively, many more of Publishers' Books than those set forth in this complaint are among the Books that the University of Michigan, University of

California, Stanford University libraries and other libraries have provided or plan to provide to Google for digital scanning and display as part of the Google Library Project.

## ASSOCIATIONAL PLAINTIFFS

27.    Plaintiff The Authors Guild, Inc. ("the Guild") is a not-for-profit corporation organized under New York law and having its place of business at 31 East 28th Street, New York, New York.  The Guild and its predecessor organization, the Authors League of America ("the League"), have been leading advocates for authors' copyright and contractual interests since the League's founding in 1912.  The Guild, whose membership includes more than 8,000 published authors, is the nation's largest organization of authors.  The activities of the Guild include reviewing members' publishing and agency contracts; intervening in disputes involving authors' rights; providing advice to members regarding developments in the law and in the publishing industry that affect their rights; and supporting legislation in matters affecting copyright, freedom of expression, taxation and other issues affecting professional writers.

28.    The Guild has associational standing to pursue claims for injunctive and declaratory relief on behalf of its members.  The member authors would have standing to sue in their own right.  The protection of authors' copyrights is germane, indeed central, to the purpose of the Guild.  Individual participation of the authors is not required to determine whether Google's copying and planned display of the authors' copyrighted works for commercial use is in violation of the Act and to provide injunctive and declaratory relief to the Guild and the authors.

29.    AAP is the national trade association of the U.S. book publishing industry, with offices in Washington, D.C. and New York City. Its membership of over 300 companies

and organizations includes most of the major commercial book and journal publishers in the United States, as well as smaller and non-profit publishers, university presses, and scholarly societies.  AAP members publish literary works in hardcover and paperback formats in every field of human interest, including trade books of fiction and non-fiction; textbooks and other instructional materials for the elementary, secondary, and postsecondary educational markets; reference works; and scientific, technical, medical, professional and scholarly books and journals. In addition to publishing in print formats, AAP members are active in the ebook and audiobook markets, and also produce computer programs, databases, Web sites and a variety of multimedia works for use in online and other digital formats.

30.      AAP advocates the public policy interests of its members, including the protection of intellectual property rights in all media; the defense of both the freedom to read and the freedom to publish at home and abroad; the advancement of education; and, the promotion of literacy and reading.

31.    The AAP has associational standing to pursue claims for injunctive and declaratory relief on behalf of its member publishers.  The member publishers would have standing to sue in their own right.  The protection of publishers' copyrights is germane, indeed central, to the purpose of the AAP.  Individual participation of the publishers is not required to determine whether Google's copying and planned display of the publishers' copyrighted works for commercial use is in violation of the Act and to provide injunctive and declaratory relief to the AAP and its publisher members.

**DEFENDANT**

32.     Google is a Delaware corporation with its principal place of business located in Mountain View, California.  Google owns and operates the largest Internet search engine in the United States, which contains links to more than eight billion commercial and noncommercial Internet pages.  Its search engine is available free of charge to Internet users, and is supported in large part by commercial entities' purchase of advertising space on the site.

33.     Late in 2004, Google announced the launch of a project it calls the Google Library Project, which was part of a service it called Google Print and now calls Google Book Search.  Google Book Search is designed to allow users to search the text of books online.  The digital archiving of the Books that are the subject of this lawsuit was undertaken by Google as part of Google Book Search.

**CLASS ALLEGATIONS**

34.     The Class is defined as all persons or entities that have a United States copyright interest in one or more Books (defined in paragraph 35) or Inserts (defined in paragraph 35).  All members of the Class are either a member of the Author Sub-Class (defined in paragraph 35) or the Publisher Sub-Class (defined in paragraph 36).  Excluded from the Class are Google, the members of Google's Board of Directors and its executive officers.

35.     "Author Sub-Class" means members of the Class who are authors, their heirs, successors and assignees, and other owners of a United States copyright interest in one or more Books or Inserts, but who are not members of the Publisher Sub-Class.

36.     "Publisher Sub-Class" means members of the Class that are Book publishing companies, and companies that publish periodicals and are rightsholders of Inserts, and all such companies' successors, exclusive licensees and assignees.

37.     "Book" means a written or printed work that (a) if a "United States work," as defined in 17 U.S.C. § 101, has been registered with the United States Copyright Office, and (b) was published or distributed to the public or made available for public access as a set of written or printed sheets of paper bound together in hard copy form under the authorization of the work's U.S. copyright owner, and (c) is subject to a United States copyright interest.  This definition of Book does not include (i) periodicals, (ii) personal papers (*e.g.*, unpublished diaries or bundles of notes or letters), (iii) sheet music and other writings that are primarily used to play music, (iv) written or printed works in, or as they become in, the public domain under the Copyright Act, and (v) government works.

38.     "Insert" means the following content, if and to the extent such content is (a) independently protected by the Copyright Act and, (b) if a "United States work" as defined in 17 U.S.C. § 101, is covered by a registration with the United States Copyright Office, and (c) is contained in a Book if the person who has a United States copyright interest in such content is not the same as the person who has a United States copyright interest in the Book itself: (1) text, such as forewords, afterwords, prologues, epilogues, essays, poems, quotations, letters, song lyrics, or excerpts from other Books, periodicals or other works; (2) children's Book illustrations; (3) musical notation (*i.e.*, notes on a staff or tablature); and (4) tables, charts and graphs.  The term "Insert" does not include pictorial works, such as photographs, illustrations

12

(other than children's Book illustrations), maps, paintings, and works that are in, or as they become in, the public domain in the United States.

39. This action has been brought and may properly be maintained as a Class Action pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

40. Numerosity of the Class – Fed. R. Civ. Proc. 23(a)(1): The persons and/or entities in each of the Author Sub-Class and Publisher Sub-Class are so numerous that their joinder is impractical, and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The exact number of members of each of the Author Sub-Class and Publisher Sub-Class is not known to plaintiffs, but plaintiffs reasonably estimate that there are at least thousands of Author Sub-Class members and at least hundreds of Publisher Sub-Class members.

41. Existence and Predominance of Common Question of Law and Fact – Fed. R. Civ. Proc. 23(a)(2) & 23(b)(3): There is a well-defined community of interest in the questions of law and fact involved affecting the Class. Questions of law and fact common to the Class include, but are not limited to, the following:

a. Whether Google has digitized and plans to continue to digitize Books and Inserts from the University of Michigan, University of California and Stanford University libraries and other sources;

b. Whether such digitization constitutes copyright infringement;

c. Whether Google reproduced and plans to continue to reproduce for its own commercial use copies of such Books and Inserts;

13

        d.        Whether the reproduction by Google of such copies constitutes copyright infringement;

        e.        Whether Google's public display of portions of such Books and Inserts on its commercial website infringes the copyrights of the Class;

        f.        Whether Google's copying and display of such Books and Inserts on its commercial website is a "fair use" of the works;

        g.        Whether Google acted willfully with respect to the acts complained of herein;

        h.        Whether members of the Class have sustained damages and, if so, the proper measure of such damages;

        i.        Whether injunctive relief is appropriate.

These questions of law and fact predominate over questions that affect only individual class members.

42.    <u>Typicality – Fed. R. Civ. Proc. 23(a)(3)</u>:  The claims of the Author Plaintiffs are typical of those of the Author Sub-Class, and the claims of the Publisher Plaintiffs are typical of those of the Publisher Sub-Class.  All plaintiffs own copyrights in works that have been copied by Google without authorization.  The claims of the Author Plaintiffs, Publisher Plaintiffs and all members of the Class depend on a showing of the acts of Google complained of herein.

43.    <u>Adequacy of Representation – Fed. R. Civ. Proc. 23(a)(4)</u>:  Author Plaintiffs are adequate representatives of the Author Sub-Class and will fairly and adequately protect the interests of the Author Sub-Class.  Publisher Plaintiffs are adequate representatives of

the Publisher Sub-Class and will fairly and adequately protect the interests of the Publisher Sub-Class.  Plaintiffs' interests do not in any way conflict with the interests of the members of the Sub-Class that they seek to represent.  Plaintiffs are committed to the vigorous prosecution of this action and each Sub-Class has retained separate competent counsel experienced in complex class action litigation and experienced in copyright actions.

44.     <u>Injunctive Relief – Fed. R. Civ. Proc. 23(b)(2)</u>:  Google has acted or refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

45.     <u>Superiority – Fed. R. Civ. Proc. 23(b)(3)</u>:  A class action is the best available method for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual class members, while not inconsequential, may be relatively small, the expense and burden of individual litigation make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein.  Should separate actions be required to be brought by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense on the Court and the litigants.  A class action is therefore the best method to assure that the wrongful conduct alleged herein is remedied, and that there is a fair, efficient, and full adjudication of this controversy.  Plaintiffs anticipate no undue difficulty in the management of this litigation as a class action.

## **GENERAL ALLEGATIONS**

46.     Google is in the business of providing Internet search services to the public.  It derives approximately 99% of its revenues directly from the sale of advertising, and

would likely be unable to offer its search engine and other services to the public free of charge without a continued stream of advertising revenues.

47.     On December 14, 2004, Google announced in a press release that it has entered into agreements with four university libraries and one public library to "digitally scan books from their collections so that users worldwide can search them in Google."  According to Google's release, this is to be an "expansion of the Google Print program, which assists publishers in making books and other offline information searchable online.  Google is now working with libraries to digitally scan books from their collections, and over time will integrate this content into the Google index, to make it searchable for users worldwide."  Google's press release also claimed that it would make "brief excerpts" of copyrighted material available.

48.     Google is providing the scanning technology that allows the library books to be copied.

49.     Google plans to use the Books and Inserts obtained from various libraries and other sources in order to attract visitors and, thereby, advertisers, to its website.

50.     Google has already copied Books from the collections of various libraries, including Books to which the Publisher Plaintiffs own Unites States copyright interests, the Book co-authored by plaintiffs Dickson and Goulden and at least two other Books authored by plaintiff Dickson.  In so doing, Google has reproduced at least two digital copies of such Books – one for the library that permitted Google to digitize such Books and the other for Google's own commercial use – without the copyright holders' permission and in violation of their rights under copyright.  Google has also announced plans to publicly display the Books on its commercial website.

16

51.     Google continues to reproduce digitized copies of the Class's Books and Inserts without their authorization.  Google continues to display the Books and Inserts on its website for the commercial purposes detailed above.

52.     Google's acts have caused, and unless restrained, will continue to cause damages and irreparable injury to plaintiffs and the Class through:

a.     continued copyright infringement of the Books and Inserts and/or the effectuation of new and further infringements;

b.     depreciation in the value and ability to license and sell their Books and Inserts;

c.     lost profits and/or opportunities; and

d.     damage to their goodwill and reputation.

53.     Google acted willfully or knew or should have known that its actions constitute infringement.

54.     Plaintiffs and members of the Class have suffered damages and/or are in imminent danger of suffering further damages from Google's unlawful practices.

<u>**COUNT ONE - Copyright Infringement**</u>
**(By Author Plaintiffs Dickson and Goulden,
Publisher Plaintiffs and Certain Class Members Only)**

55.     Author Plaintiffs Dickson and Goulden, and the Publisher Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in all preceding paragraphs.

56.     Author Plaintiffs Dickson and Goulden, all Publisher Plaintiffs and certain other members of the Author Sub-Class and Publisher Sub-Class own a valid copyright in and to

17

at least one Book that has been copied by Google.  They, not Google, have the exclusive rights

to, among other things, reproduce their Books, distribute copies of their Books to the public,

publicly display their Books, and authorize such reproduction, distribution and display of their

Books.

57.     Google has made and reproduced for its own commercial use at least one

copy of some of the Books from the University of Michigan library and/or other libraries or

sources, and Google has stated that it intends to copy most, if not all, of the Books in the

collection of the University of Michigan library and other libraries.

58.     Google's conduct is in violation of the copyrights held by named Author

Plaintiffs Dickson and Goulden, the Publisher Plaintiffs and certain other members of the Author

Sub-Class and Publisher Sub-Class.

59.     Google's infringement of the copyrights of the Books was willful.

60.     As a result of Google's acts of copyright infringement and the foregoing

allegations, Author Plaintiffs Dickson and Goulden, Publisher Plaintiffs and certain other

members of the Author Sub-Class and Publisher Sub-Class have suffered damages.

## COUNT TWO - Injunctive Relief
### (By All Plaintiffs)

61.     Plaintiffs reallege and incorporate by reference as if fully set forth herein

the allegations contained in all preceding paragraphs.

62.     Google has already begun reproducing Books contained in the University

of Michigan, University of California, and Stanford University libraries and other sources.

63.     Google has also announced plans to launch a program by which it will place the unlawfully copied Books from the University of Michigan library and other libraries on its website in order to generate consumer traffic and advertising revenues.

64.     Google's commercial use of the Books would constitute additional wholesale copyright infringement.

65.     Unless enjoined from doing so, Google's commercial use of the Books and Inserts will cause plaintiffs and the Class irreparable harm by depriving them of both the right to control the reproduction and/or distribution of their copyrighted Books and Inserts and to receive revenue therefrom.

66.     Plaintiffs and the Class are likely to succeed on the merits of their copyright infringement claim because Google's existing and planned uses of the Books and Inserts do not fall within any of the statutory exceptions to copyright infringement and are in violation of copyright.

67.     The balance of hardships tips in favor of plaintiffs and the Class, because Google's massive earnings will not be severely damaged by its inability to create a new stream of advertising revenues and because other comprehensive electronic databases exist for public use.

68.     Plaintiffs are therefore entitled to an injunction barring Google from continued infringement of the copyrights of plaintiffs and the Class, and other equitable relief as more fully set forth in the Prayer for Relief.

## COUNT THREE – Declaratory Relief
### (By All Plaintiffs)

69.     Plaintiffs reallege and incorporate by reference as if fully set forth herein the allegations contained in all preceding paragraphs.

70.     An actual controversy exists between the Authors Guild, AAP, the plaintiffs and the Class, on the one hand, and Google, on the other hand, by reason of Google's present and continuing infringement of the Author Plaintiffs', the Publisher Plaintiffs' and the Class's copyrights as alleged herein, and announcement that it will not cease and desist from, or remedy, its wholesale infringement of the Books and Inserts.

71.     Plaintiffs are entitled to a judgment declaring that Google's actions are unlawful and, specifically, that Google infringed and continues to infringe the Author Plaintiffs', the Publisher Plaintiffs' and the Class's copyrights in violation of the Copyright Act.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray for relief and that judgment be entered against defendant as follows:

A.     For certification of the Class, the Author Sub-Class and the Publisher Sub-Class;

B.     For an award of statutory damages, plaintiffs' actual damages, and/or defendant's profits;

C.     For an injunction (a) barring Google from continued infringement of the copyrights of the Author Plaintiffs, the Publisher Plaintiffs and the Class, and/or (b) other equitable relief to redress any continuing violations of the Act;

D.     For (a) permanent injunctive and declaratory relief barring Google from continued infringement of the copyrights of the Author Plaintiffs, the Publisher

Plaintiffs and the Class, and/or (b) other equitable relief to redress any continuing violations of

the Act;

    E.  For costs and attorneys' fees; and

    F.  For such other and further relief as the Court finds just and

proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, as provided by Rule 38 of the Federal Rules of Civil Procedure, request trial by jury in the above-captioned matter.

Dated: October 28, 2008

_Bruce P. K_

Bruce P. Keller (BK 9300)
Jeffrey P. Cunard
James J. Pastore, Jr. (JP 3176)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
 (212) 909-6000

Counsel for The Association of American
Publishers, Inc., the Publisher Plaintiffs and the
Publisher Sub-Class

_Michael J. Boni_

Michael J. Boni (pro hac vice)
Joanne Zack
Joshua Snyder
BONI & ZACK LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: (610) 822-0200
Facsimile:  (610) 822-0206

Robert J. LaRocca
KOHN SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone:  (215) 238-1700
Facsimile:  (215) 238-1968

Sanford P. Dumain (SD-8712)
MILBERG LLP
One Pennsylvania Plaza
New York, New York 10119
Tel:  (212) 594-5300
Fax: (212) 868-1229

Counsel for The Authors Guild, Inc., the
Author Plaintiffs and the Author Sub-Class

21

## CERTIFICATE OF SERVICE

I, Richard S. Lee, an attorney admitted in the State of New York, caused on this 30th day of October, 2008 a copy of the Second Amended Class Action Complaint to be served, by first class mail, upon:

Joseph M. Beck
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 1100
Atlanta, GA 30309-4530
*Attorneys for Defendant Google Inc.*

I certify under the penalty of perjury that the foregoing is true and correct.

Dated: October 30, 2008
New York, New York

Richard S. Lee