

# Uitgeverij De Arbeiderspers

Office of the Clerk
J. Michael McMahon
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007
UNITED STATES OF AMERICA



Amsterdam, August 27, 2009

Re: Google settlement

05-CU-8136

Dear Michael McMahon,

RE: The hearing in October 2009 regarding the Google settlement.

We would like to draw your attention to the copyrights of the Dutch books owned by our publishing house which appear to be included in the settlement reached between Google and the Authors Guild and Association of American Publishers. We should first like to point out that we have not yet been consulted or heard in this settlement, even though our copyrights are involved. Google's actions have raised many questions, comments and objections, which you will find listed:

**Consequences for European rightholders**

We would like to express our concern about American parties proposing a settlement in the United States (US) with consequences for European rightholders not involved in the settlement with Google, and who still have exclusive rights to their works.

European Copyright Law does not permit the digitalisation of copyright-protected works and the making available of these to the public without the explicit consent of the rights holders. If a party wants to use a copyright-protected work, he can contact for example the publisher and try to conclude a licensing agreement (opt-in).

BV Uitgeverij De Arbeiderspers    Postbus 2877, 1000 CW Amsterdam    RABOBANK 14.41.80.138
maakt deel uit van                Herengracht 370-372, 1016 CH Amsterdam    BTW-nummer NL 0016.70.670B01
Weekbladpers Groep BV             telefoon: 020-52 47 500            KvK Amsterdam 33132213

The current proposal for the Settlement seems to be the world turned upside down, since Google can make use of copyright protected works from all over the world (available in American libraries) without the prior consent of rightholders, as long as these rightholders do not opt-out of the Settlement. We would very much like to contribute to a broad offer of digital content and if necessary are willing to cooperate with other parties, but always with respect for copyright and according to the conditions proposed by the rights-holders.

**Deadline**
The deadline for objecting or opting out is too short. In particular, European rights-holders who weren't part of the negotiations should given the opportunity to make a well-considered decision with regard to the settlement. The deadline for making objections or opting out should therefore be postponed.

Equally, in terms of of the ongoing investigation of the European Commission into the effect of the Google Book Settlement Agreement on the European publishing sector, European authors, European consumers and society at large (a hearing of the European Commission will take place on September 7, 2009), the deadline for making objections or opting out is still too short.

This would also imply that the deadline for claiming cash payments should be postponed. We also would like to wait for the findings of the American Justice Department which has begun an antitrust investigation.

**Digitalizing our books**
According to Dutch Law, American Libraries were not entitled to digitalize the books published by our company without our consent. We believe American Libraries have violated our rights. Until now we have not received any information about this deal between the American Libraries and Google. We think this information is important for us so as to prevent similar actions in the (near) future.

Another point is that the database gives the rights-holder no certainty about the digitalization status of a book. If it has not been digitalized on or before May 5, 2009, the claim form does not give any certainty about whether the book will still be digitalized by Google or not. A rights-holder should not have to check this every time, but be informed by Google about this.

**Bad quality of the database**
According to section 3.2 (d) (i) of the settlement *"Google shall determine whether a Book is Commercially Available or not Commercially Available based on an analysis <u>of multiple third-party databases</u> as well as an analysis of the Book's retail availability based on information that is publicly available on the Internet. When analyzing the third-party databases, Google will use the publishing status, product availability and/or availability codes to determine whether or not the particular database being used considers that Book to be offered for sale new through one or more then-customary channels of trade in the United States".*

2

For the correct functioning of the system, it is critical to know which third-party databases Google uses to determine the commercial availability of a book. Therefore, Google should commit to using non-US, such as European, metadata providers and contact publishers to ensure that they have correct information regarding whether a book is commercially available in Europe or not. This must be done prior to making any display uses under authorisations in the settlement agreement.

The management of bibliographic and rights information in the database on the website of the Google Book Settlement leads to a lot of practical problems. It is therefore urgent that the quality and functioning of the database is improved in order to allow rights-holders to make full use of it. Currently, it is extremely burdensome and confusing for a European publisher to claim books in the database. For example, section 3.2(d)(i) of the settlement refers to the need to group books together if a book is commercially available and a previous edition is also in the database. In this case, both books would have to be tagged as commercially available in order to avoid "cannibalisation" of new editions. The database does not function like this at present, at least for European books, leading to lengthy and costly processes for the publishers, who have to claim the same book several times to be sure that it will be tagged as commercially available. A correct functioning of the database in practical terms should be a pre-condition before any display uses included in the settlement are allowed.

### Translators
Dutch law recognizes copyright of the individual translators of original books. In the settlement we are not able to seek any compensation for their contribution.

### 'Out of Print'
Google's definition of 'out of print' does not recognize the new methods of exploitation of content such as audiobooks or e-books. The databases from which Google gets its information on the matter of commercial availability does not cover these kind of cross-media exploitation.

### Royalty
We are concerned about the fact that Google has obtained a license to sell our books at a pre-negotiated fixed royalty and that we are held to this unless an (American!) court counters the settlement.

### Monopoly
We are very concerned about the monopoly which will be created if Google profits from what seems to be an exclusive right to commercialize digitalized books. It will dominate the free flow of information and knowledge, which is a human right. We therefore would like to wait for the findings of the American Justice Department which has began an antitrust investigation.

### Advertisements
According to agreements we have with, for example, American authors, we are not allowed to add any advertisements or other kind of announcement in their

3

books, even if it is for the authors' own works.

Although these clauses are part of the agreement between the publisher and the author or copyrightholder, we are worried that Google's business model, as it is presented, is based on this model of explotation.

## Lack of representation of non-US rightsholders in the Book Rights Registry (BRR)

Section 6.2 (b) of the settlement establishes that the *"Registry will be organized on a basis that allows the Registry, among other things to (i) represent the interest of Rightholders in connection with this settlement Agreement...The Registry will have equal representation of the Author Sub-Class and the Publisher Sub-Class on its Board of Directors..."* The BRR will represent rights-holders worldwide, negotiating very important matters including terms of new revenue models on their behalf. It is unfair that nothing in the settlement ensures that there will be non-US publishers and authors on the Board of the BRR. Such a commitment is necessary in order to protect the interests of non-US copyright owners.

We have no problem with snippets of works published by our publishing house appearing in search results on Google, but we do intend to retain all rights on works jointly owned by us, our authors and/or our translators now and in the future.

If you have any questions, please feel free to contact us. We would be much obliged if you could keep us informed about the court case.

Yours sincerely,

Uitgeverij De Arbeiderspers

Lex Jansen
general director