

**Anne R. Kenney**
Carl A. Kroch University Librarian
201 Olin Library
Ithaca, New York 14853-5301
t. 607.255.6875
f. 607.255.6788
e. ark3@cornell.edu
www.library.cornell.edu

September 2, 2009

The Honorable Denny Chin
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Chin:

Cornell University Library requests this Court's permission to submit this letter as an amicus curiae supporting final settlement in the Google Books Search case.

Cornell University's mission is to be a learning community that serves society by educating the leaders of tomorrow and extending the frontiers of knowledge. As the land-grant university for the state of New York, Cornell applies the results of its endeavors to its alumni, the community, the state, the nation, and the world.

The Cornell University Library, as one of the ten largest academic research libraries in the United States, is a highly valued partner in the study, teaching, and research conducted at Cornell University. In conformance with the land-grant mission, the Library was an early pioneer in digitization of library holdings and has long supported broadening access to historical materials through agreements with Microsoft, the Internet Archive, and Amazon, among others. Research has shown that digital access breathes new life into older material, bringing its content to new generations of scholars, students, and the general public. It was natural, then, for the Library to extend its efforts through a partnership with Google, Inc. beginning in August 2007.

Although Google's initial approach of only allowing snippet views of the text would have been unquestionably useful, it would not be nearly as useful to the library community as access to the full text of the works themselves. Full-text access necessitates permission from the copyright owner, and the Library's experience in copyright investigation for some of its own digital projects made it clear that seeking permission on a per-title basis was close to impossible, especially for older titles. In one project, for example, the Library averaged over $50 per title in staff time to locate copyright owners, and even then was able to locate only half of the rights holders. Even the proposed legislation on orphan works, which would allow the Library to provide access to those titles whose rightsholders could not be found, would not have saved the initial expense of trying to locate those rightsholders.

The proposed settlement solves this problem, making it possible to provide access to books' contents while compensating rightsholders. The result is that most of the Library's holdings, most of which have been out of print for decades and are of little commercial value, will not just be indexed, but will also be available to readers across the country. The potential benefit of this to researchers is inestimable. For this reason alone, the settlement should be approved.

Although Cornell University Library endorses the settlement agreement, it also recognizes that the compromise is far from perfect.  Part of the problem may arise from the peculiar nature of the class representatives who negotiated the case.  Most of the millions of authors who make up the class are nothing like the Authors Guild's small membership. It is therefore important that the membership of the proposed Books Rights Registry be structured to represent all of the members of the class, including academic authors, and not just those few authors who make a living primarily from royalties.

Of special concern to the Library is the potential for exploitive pricing of the Institutional Subscription.  The goals in the settlement regarding the Institutional Subscription – namely, "the realization of revenue at market rates for each Book" and "the realization of broad access to the books by the public, including institutions of higher education" [4.1(a)(1)] – are necessarily in tension.  The settlement provides no indication of how each goal is to be measured or assessed.  Most research libraries will be under tremendous pressure from faculty and administrators to subscribe to the database, and the potential for monopoly pricing is great.  The Library hopes that the Court takes steps to ensure this does not happen.

Despite its misgivings about certain aspects of the settlement, the Library remains convinced that the settlement is an important step forward for research.  There may be no other cost-effective means by which these millions of out-of-print books from the holdings of this country's greatest libraries could be made available.  With some modifications and under the Court's continued oversight, the settlement agreement has the potential to alter radically and for the better how readers across the country conduct research.

Sincerely,

*Anne R. Kenney*

Anne R. Kenney
Carl A. Kroch University Librarian