Yasuhiro Saito, Esq.
Rose Auslander, Esq.
Pamela Shelinsky, Esq.
Carter Ledyard & Milburn LLP
2 Wall Street
New York, New York 10005
(212) 732-3200
*Attorneys for Members of the Japan P.E.N. Club, Takashi Atouda, Susumu Nakanishi, Akiko Shimojyu, Jiro Asada, Takeaki Hori, Yuko Matsumoto, Chihaya Takahashi, Shinobu Yoshioka, Kenta Yamada, Tomotsuyo Aizawa, Yu Ohara, Yasumasa Kiyohara, Takashi Tsujii, Akira Nogami, Hiroyuki Shinoda, Toshihiko Yuasa, Koichi Kato, Masahiko Motoki, Hidehiko Nakanishi, Yashio Uemura, Nobuo Uda, and Tsukasa Yoshida*
Members of Proposed Author Sub-Class

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | |
|---|---|
| The Authors Guild, Inc., et al., | Case No. 05 CV 8136 (DC) |
| Plaintiffs, | |
| v. | |
| Google, Inc., | |
| Defendant. | |

-------------------------------------------------------x

**DECLARATION OF NAOKI GOKITA
PURSUANT TO 28 U.S.C. § 1746
IN SUPPORT OF THE JAPAN P.E.N. CLUB MEMBERS;
OBJECTION TO THE SETTLEMENT AGREEMENT**

I, Naoki Gokita, make the following declaration under the penalties of perjury under the laws of the United States of America:

1. I am an executive member of the Intellectual Property Committee of Japan Book Publishers Association, Vice Chair of the Copyright Committee of Japan Magazine Publishers Association, and Deputy Manager of the Editorial Administrations Office of Kodansha, Japan's

largest publisher. I make this declaration in support of the objection by named members of the Japan P.E.N. Club to the proposed settlement agreement entered into by the named parties in the above referenced action. I make this declaration based on my personal knowledge and on a review of relevant documents.

**Japan's Publishing Business**

2. Japan's publishing business is significant in its size as well as its importance in Japanese culture.

3. According to some figures, the total revenue for Japan's publishing industry is over $20 billion a year -- about half of which comes from book sales and another half from magazine sales. A little less than $5 billion of the total revenue comes from *manga* (comics) each year, nearly half of which coming from *manga* magazines. In comparison, the total revenue from book sales in the US is said to be about $25 billion a year.

4. While they do share certain similarities, Japan's book publishing business is quite different from that in the United States. The difference exists in all areas and includes fundamental differences in: the business custom and practice; the overall distribution system and structure for the books and the logistics surrounding them; the method of marketing and publicity; the method of planning and procurement; and the relationship between authors and publishers.

5. For instance, unlike in the United States, publishers in Japan sell their books through an intermediary on a consignment basis to retail bookstores, and the books which remain unsold after a given period of time are returned to the publishers. Also, literary agents do not typically exist in Japan, and publishers sometimes take on some functions that may be played by

literary agents in the United States.  For these and many other reasons, the pricing and the cost structure as well as the incentives of those involved in the publishing industry in Japan are quite different from these in the United States.

6.     Obviously, we are looking at two countries with two very different overall business models in the publishing industry.

**Notice to Japanese Rightsholders**

7.     As far as we have been able to ascertain, no individual notice was sent to authors in Japan.

8.     The primary means of notice given in Japan appears to have been by a Summary Notice which was only printed in a single issue of three publications.  A Summary Notice was printed in *Asahi Shimbun* and *Yomiuri Shimbun* (both major Japanese dailies) on February 24, 2009.  (True and correct copies of these Summary Notices are attached hereto as Exhibit A (Asahi Shimbun) and Exhibit B (Yomiuri Shimbun).)  Later, another Summary Notice was printed in *Shinbunka* (a publishing industry paper) on July 2, 2009.

9.     The Summary Notice printed in these papers was in small print and difficult to read.

10.    Further, the Summary Notice and the Notice posted on the internet were impossible to understand because they were riddled with translation errors and awkward expressions.

11.    For instance, the attention-getting statement in the Summary Notice, printed in larger type, reads in English as follows:  "If You Are a Book Author, Book Publisher or Other Person Who Owns a Copyright in a Book or Other Writing."  In the Summary Notice in

Japanese, it reads roughly as follows (when translated back to English charitably, without indicating the awkwardness of words and phrases chosen): "In Case of an Author of a Book, a Publisher, or Other Person Who Possesses Copyright of a Book or Other Written Material". This sentence fragment could not have attracted, and did not attract, the attention of those in the intended audience.

12.     In part due to the obvious ineffectiveness of the notice given by the proponent of the Proposed Settlement, some major publishers in Japan attempted to contact and notify their authors about the Proposed Settlement at their own significant expense, but with limited success.

**Class Counsel's Statements in Japan**

13.     On May 23, 2009 -- after the Proposed Settlement had already been agreed on among the class representatives in the U.S. and after the original opt-out deadline -- counsel for Author Sub-Class (Michael J. Boni, Esq.) and Publisher Sub-Class (Jeffrey P. Cunard, Esq., correctively, the "Class Counsel") visited for the first time with some of the representatives of Japan's publishing industry representatives. I was present at the meeting.

14.     Concerning their failure to communicate with rightsholders in Japan until the Proposed Settlement was agreed on, Class Counsel insisted that they could not communicate with Japanese rightsholders because they "could not share information concerning the settlement due to the confidentiality obligation imposed on the parties." It would have been helpful had Class Counsel advised Japanese rightsholders about the status of the case, asked about their interests and concerns, and responded to their inquiries, prior to agreeing to the Proposed Settlement.

15.     Class Counsel acknowledged that they failed to take into account the importance of *manga* (comics) in Japan as well as in the worldwide market.  They further acknowledged that it was their mistake not to have spelled out the treatment for *manga* explicitly in the Proposed Settlement.  Class Counsel admitted that, because of this omission, some *manga*, although already being scanned by Google, will not be included in the eventual settlement.

16.     Concerning the Proposed Settlement's definition of "Commercially Available", which makes books published only in Japan *not* "Commercially Available" under the Proposed Settlement and makes them automatically subject to Display Uses by Google, Class Counsel stated that if these books were available to be shipped to the United States through a website such as "amazon.co.jp" then Google will consider them "Commercially Available," but did not state they would correct this problem in any other way.  Because of the failure to address this problem, Class Counsel admitted that, as of now, the books published in Japan but not sold in the U.S. will be treated as *not* "Commercially Available" and will be subject to Display Use by Google.

17.     Class Counsel also stated that they could have limited the definition of the class to include the right-holders in the U.S. only and excluded the foreign rightsholders.

Gokita Declaration.DOC

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 4, 2009.

_____
Naoki Gokita

# EXHIBIT A



# EXHIBIT B

