**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
                                                                 **:**
The Authors Guild Inc., Association of American                  :
Publishers Inc., et al.,                                         :      Case No. 05-CV-8136 (DC)
        Plaintiffs,                                 :
                                                                 :
           - v. –                           :      OBJECTION OF THE STATE OF
                                                                 :      CONNECTICUT TO
Google, Inc.                                                     :      CLASS-ACTION SETTLEMENT
        Defendant.                                 :
                                                                 :      *Filed Electronically*
                                                                 :
-----------------------------------------------------------------X

RICHARD BLUMENTHAL
ATTORNEY GENERAL
OF CONNECTICUT

\*    Richard Blumenthal     RB6515
     Attorney General
     55 Elm Street, P.O. Box 120
     rachel.davis@po.state.ct.us
     karen.gano@po.state.ct.us
     Attorney General
     Office of the Attorney General
     55 Elm Street, P.O. Box 120
     Hartford, CT 06141-0120
     (860) 808-5020
     (860) 808-5347

\*  Counsel of Record

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ............................................................................................................... 4

   I.   Operation of Section 6.3 of the Proposed Settlement Agreement Results in Misappropriation of Unclaimed Funds in Violation of State Law ...................................... 4

   II.   Operation of § 6.3 of the Proposed Settlement Agreement Renders an Unlawful Conversion of Charitable Funds ...................................................................... 10

   III.   The State of Connecticut Denies That It Is a Member of Any Class In This Proceeding  13

      A.   The State of Connecticut Is Not Subject to the Jurisdiction of the Court In This Proceeding ................................................................................ 13

      B.   Class Counsel Has No Authority to Represent Connecticut ........................................... 17

CONCLUSION ............................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Cases**

*Alden v. Maine*, 527 U.S. 706 (1999) .......................................................................... 14

*Blumenthal v. Barnes*, 261 Conn. 434, 804 A.2d 152 (2002) ....................................... 12

*Bruneau v. W.&W. Transportation Co.,* 138 Conn. 179, 82 A.2d 923 (1951) ............................ 11

*Burley v. Burlington Northern & Santa Fe Rwy. Co.*, 2008 U.S. Dist. LEXIS 80275,
    (D. Mont. 2008) ..................................................................................................... 16

*Commonwealth v. BASF Corp.*, 2001 WL 1807788 (Pa.Com.Pl. 2001) ........................ 5

*Diamond Chemical Co., Inc. v. Akzo Nobel Chemicals B.V.*, 517 F.Supp.2d 212
    (D.D.C. 2007) ...................................................................................................... 4, 5

*Duncan v. Higgins*, 129 Conn. 136, 26 A.2d 849 (1924) ............................................. 12

*Gilbert v. Walker*, 64 Conn. 390, 30 A. 132 (1894) ...................................................... 11

*Hartford v. Larrabee Fund Assn.* 161 Conn. 312, 288 A.2d 71 (1971) ........................ 12

*Herzog v. Univ. of Bridgeport*, 243 Conn. 1, 699 A.2d 995 (1997) .............................. 12

*Lease Oil Antitrust Litigation; Poynor v. Chesapeake Exploration LP*, 570 F.3d 244 (2009) ...... 5

*Merideth v. Burlington Northern & Santa Fe Rwy. Co.*, 2008 U.S. Dist. LEXIS 80338,
    (D. Mont. 2008) ..................................................................................................... 16

*Ministers & Missionaries Ben. Bd. V. Meriden Trust & Safe Deposit Co.,* 139 Conn 435,
    94 A.2d 917 (1953) ................................................................................................ 12

*Motorsports Merch. Antitrust Litig.,* 160 F.Supp.2d 1392 (N.D. Ga. 2001) ................ 4

*Pennsylvania v. New York*, 407 U.S. 206 (1972) ........................................................... 7

*Powell v. Georgia-Pacific Corp,* 843 F.Supp. 491 (W.D. Ark. 1994) ....................... 4, 5

*Principality of Monaco v. Mississippi*, 292 U.S. 313 (1934)........................................................ 15

*Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993) ..... 14, 15

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 56 (1995) ............................................... 14, 15

*Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301 (9th cir. 1990)...................... 4, 5

*Stanton v. Ash*, 384 F. Supp. 625 (S.D. Ind. 1974) ........................................................................ 16

*Texas v. New Jersey*, 379 U.S. 674 (1965) ............................................................................... 7, 13

*Texas v. New Jersey*, 380 U.S. 518 (1965) ............................................................................... 7, 13

*Thomas v. FAG Bearings Corp.*, 50 F.3d 502 (8th Cir. 1995)........................................................ 16

*Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885 (3rd Cir. 1975) ................................. 17

*U.S. v. Yazell*, 382 U.S. 341 (1966) .............................................................................................. 17

*Walker v. Liggett Group, Inc.*, 982 F. Supp. 1208 (D.W.V. 1997)................................................. 15

*Wallis v. Pan American Petroleum Corp.* 384 U.S. 63 (1966)....................................................... 17

**Statutes**

Conn. Gen. Stat. § 3-61a................................................................................................................... 1

Conn. Gen. Stat. § 3-64a................................................................................................................ 1, 9

Conn. Gen. Stat. § 3-65a................................................................................................................... 9

Conn. Gen. Stat. § 3-65b................................................................................................................... 9

Conn. Gen. Stat. § 3-65c................................................................................................................. 10

Conn. Gen. Stat. § 3-66a............................................................................................................... 8, 13

Conn. Gen. Stat. § 3-66b................................................................................................................... 1

Conn. Gen. Stat. § 3-125................................................................................................................. 18

iii

Conn. Gen. Stat. § 45a-514 ............................................................................................ 10, 11

Conn. Gen. Stat. § 47-2 ................................................................................................. 10, 11

**Other Authorities**

*Restatement of Trusts 2d,* § 348 ........................................................................................ 12

*Restatement of Trusts 2d,* § 393 ........................................................................................ 12

*Scott on Trusts*, 2nd Ed. (1956), Vol. IV, Sec. 393. .......................................................... 12

**Treatise**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §§ 10.13 to 10.25
   (4th ed.2002) ................................................................................................................. 4

## INTRODUCTION

The State of Connecticut, by its Attorney General Richard Blumenthal, ("Connecticut") responds to the Court's invitation to submit comments regarding the proposed class-action settlement scheduled for a fairness hearing on October 7, 2009.

By submitting these comments, Connecticut does not concede its membership in any class in this litigation.  As a sovereign, Connecticut cannot be brought into this litigation or its settlement without its consent.

Connecticut submits these comments to inform the Court of the impact the Settlement Agreement will have with regard to Connecticut's unclaimed property laws.  *See generally,* §§ 3-61a (Escheat of Property Held by a Fiduciary), 3-64a (Escheat of Property Presumed Abandoned Generally), or 3-66b (Escheat of Unclaimed Intangible Property).  The comments herein also provide relevant analysis of the Eleventh Amendment to the Constitution of the United States and the doctrine of sovereign immunity which protect the states from being brought into litigation without their consent.

Connecticut has three areas of concern with regard to the Settlement Agreement:

1. The treatment of unclaimed funds proposed in the Settlement Agreement would violate state unclaimed property laws by misappropriating unclaimed funds for the maintenance of the Book Rights Registry ("BRR") created by the Settlement Agreement, and to reimburse authors and publishers by "topping up" their payments under the distribution plan.

1

2.     The treatment of unclaimed funds proposed in the Settlement Agreement would likely unlawfully convert charitable assets to commercial purposes by potentially retaining and dispersing unclaimed funds generated by copyrights held by or for the benefit of charities or charitable trusts and dispersing them for the benefit of BRR and/or dispersing them to unrelated authors and publishers or to an alternate charitable purpose not approved by a court of proper jurisdiction.

3.     There appears to be confusion among parties and class counsel as to this Court's lack of jurisdiction to bring the states into this litigation and within the scope of the proposed Settlement Agreement.  Connecticut, and every state, is protected by the Eleventh Amendment and the doctrine of sovereign immunity, and cannot be swept into this litigation or its proposed resolution by settlement except by express consent.

The first two concerns identified above stem from the same operative § 6.3 of the proposed Settlement Agreement.  Section 6.3 violates fundamental tenets of fairness and adequate representation because future profits generated through the commercial use of properties owned by unregistered class members will not be preserved for the benefit of those owners, but instead will be used primarily for the benefit of registered class members, who do

2

not own the underlying work generating those profits.  These two concerns could likely be addressed by changes limited to § 6.3 of the Agreement.[1]

Connecticut has limited its comments herein to state specific issues that it does not expect will be addressed by objectors or commenters other than the states.  Connecticut anticipates that other states will submit comments about the Settlement Agreement.  The U.S Department of Justice has indicated that it has opened an antitrust investigation into the proposed settlement in this case, and the Court has given the Department of Justice until September 18, 2009 to present its views in writing.  *See*, Order, July 2, 2009 (Docket Item No. 120).  Connecticut anticipates that the Department of Justice may submit views on the legality or advisability of the settlement from the point of view of the federal antitrust laws or federal copyright laws.  The Settlement Agreement appears to raise objectionable issues under these headings.  Connecticut's decision to focus on the issues of unclaimed property, unlawful conversion of charitable assets, and unconsented inclusion of the sovereign within a defined class should not be interpreted as assent or acceptance of any other feature of the settlement.

---

[1]  Connecticut concurs with the Attorney General of Pennsylvania and other State Objectors who may join with Pennsylvania with regard to its objections to the proposed treatment of unclaimed funds under the proposed § 6.3 of the Settlement Agreement.

**ARGUMENT**

**I.    Operation of Section 6.3 of the Proposed Settlement Agreement Results in Misappropriation of Unclaimed Funds in Violation of State Law**

Fifty-two states and territories have unclaimed property laws, which can be classified generally under three headings. The first two groups consist of states that have adopted a modified version of either the Uniform Unclaimed Property Act of 1981 or the Uniform Unclaimed Property Act of 1995. These groups consist of twenty-eight and eleven states or territories, respectively. The third group consists of thirteen states which have enacted their own statutes. This third group includes Pennsylvania and Connecticut, as well as Delaware and New York, which are likely places of incorporation or operation of BRR as proposed by the Settlement Agreement.

It is well documented that courts rely on four primary options to dispose of unclaimed settlement funds: (1) *pro rata* distribution to claiming class members; (2) general or specific escheat to a governmental body; (3) reversion to the defendant; and (4) *cy pres* distribution. *See Powell v. Georgia-Pacific Corp,* 843 F.Supp. 491, 495 (W.D. Ark. 1994); *Motorsports Merch. Antitrust Litig.,* 160 F.Supp.2d 1392, 1393-94 (N.D. Ga. 2001); *3* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §§ 10.13 to 10.25 (4th ed.2002); *Diamond Chemical Co., Inc. v. Akzo Nobel Chemicals B.V.*, 517 F.Supp.2d 212, 217 (D.D.C. 2007). In deciding among these distribution options, courts are guided by "the objectives of the underlying statute and the interests of the silent class members." *Six Mexican Workers v. Arizona Citrus Growers,* 904

F.2d 1301, 1307 (9th cir. 1990); *see also Powell,* 843 F.Supp. at 495-96 and *Diamond*, 517 F.Supp.2d at 217.

Here, the copyright statutes are the underlying statute, whose purpose is to encourage creativity by vesting exclusive rights in the creator of the work.  Failing to preserve these profits by assuming that they constitute settlement funds would ignore the exclusive rights of the owners of the works, particularly with regard to the silent class members, in favor of others such as Google and the Registered Rightsholders of other works.  Such a result is unfair, because the unregistered Rightsholder would be worse off than if there had been no settlement at all.

The retention and use or redistribution of unclaimed funds as proposed by § 6.3 of the Settlement Agreement also amounts to a "private escheat."  In this respect, the Settlement Agreement attempts to circumvent state unclaimed property laws in favor of benefitting private parties who have no cognizable right to the funds escheated.  Agreements that render such "private escheats" have been rejected in every jurisdiction in which the issue has arisen, including: California, New Jersey, Illinois, Kentucky, Maryland, Michigan, Utah, Georgia and the District of Columbia.

Whether state unclaimed property laws apply to the approximately $45 million that Google will pay as settlement for the alleged past infringement of protected works may rest upon questions of class representation and other factors that have not yet been considered by the Court.  *See Lease Oil Antitrust Litigation; Poynor v. Chesapeake Exploration LP*, 570 F.3d 244 (2009); *Commonwealth v. BASF Corp.*, 2001 WL 1807788, 18 (Pa.Com.Pl. 2001). However,

there is no question that state unclaimed property laws apply to the post-settlement, future

unascertainable amounts generated as profits by BRR under the terms of the Settlement

Agreement.  BRR must abide by all state laws applicable to its operations.  The funds collected

and generated by BRR after January 9, 2009, will not be paid by Google to registered copyright

holders, or anyone else, to settle any harm currently before the court.  Those funds, instead,

constitute a contractual relationship to pay for future, or post-settlement use of a copyrighted

work.

Because § 6.3 of the proposed Settlement Agreement is a contractual agreement between

Google and class members for the use of property owned by class members, the funds generated

by operation of this commercial agreement should become the property of the owner of the work

generating the profits at the time of use.  The terms of § 6.3 trigger the operation of state

abandoned and unclaimed property disposition statutes.  Under the state unclaimed property

statutes, all abandoned and unclaimed property and property without a rightful or lawful owner is

subject to the custody and control of the state.

The American Society of Composers, Authors and Publishers ("ASCAP") and Broadcast

Music, Inc. ("BMI") operate under these described terms.  Both groups both collect license fees

on behalf of their members and distribute them as royalties.  Both groups make annual

distributions to the various states in accordance with their respective unclaimed property laws of

royalties that have not been claimed by the owners.

6

The Parties to the proposed Settlement Agreement appear to have contemplated that BRR would operate on behalf of book authors and publishers in a manner analogous to the operation of ASCAP and BMI on behalf (primarily) of the music industry. Neither ASCAP nor BMI has found compliance with state unclaimed property laws to be an insurmountable task. Connecticut and other states receive unclaimed property funds from both organizations on an annual basis. Section 6.3 of the proposed Settlement Agreement should be modified to compel BRR to comply with state unclaimed property laws, as ASCAP and BMI do.

BRR would be guided in its lawful treatment of unclaimed funds by rules established by the United States Supreme Court in *Texas v. New Jersey*, 379 U.S. 674 (1965) and 380 U.S. 518 (1965) for determination of the proper state to dispose of unclaimed property. The Court also reiterated the *Texas v. New Jersey* rules in *Pennsylvania v. New York*, 407 U.S. 206 (1972), stating that the Court should resolve disputes among states over the right to escheat abandoned intangible personal property in three steps: (1) first, the Court must determine the precise debtor-creditor relationship, as defined by the law that created the property at issue; (2) because the property interest in any debt belongs to the creditor rather than the debtor, the primary rule gives the first opportunity to escheat to the state of the creditor's last known address, as shown by the debtor's books and records; and (3) if the primary rule fails because the debtor's records disclose no address or because the creditor's last known address is in a state whose laws do not provide for escheat, then the secondary rule comes into play, which awards the right to escheat to the state in which the debtor is incorporated.

Under the rules established by these Supreme Court cases, BRR would receive funds for the use of the Rightsholder's property under a contractual arrangement to offer the work commercially between the Rightsholder and Google, and would be placed in the debtor position with respect to those funds to the Rightsholder of the underlying work.  The proper state for disposal of any unclaimed property would be the last known address of the Rightsholder as determined by BRR's records.  If no address is known, then the funds should be turned over to BRR's state of incorporation under its unclaimed property law.  BRR's stated core mandate is locating Rightsholders, therefore its records should become more complete as time passes. BRR's affirmative actions to locate Rightsholders, coupled with the initial copyright registration, should provide a last known address for nearly all book titles, leaving only unattributed inserts under state of incorporation unclaimed property laws.

The Connecticut General Statutes mandate that the State Treasurer preserve unclaimed property for the rightful owner.  Under Conn. Gen. Stat. § 3-66a, intangible property such as intellectual property is subject to the custody of the state as unclaimed property if:

(1)  The last-known address of the apparent owner, as shown on the records of the holder, is in this state;

(2)  The records of the holder do not include the name of the person entitled to the property and it is established that the last-known address of such person is in this state;

(3)  The records of the holder do not reflect the last-known address of the apparent owner, and it is established that (A) the last-known address of the person entitled to the property is in this state, or (B) the holder is a domiciliary or a governmental subdivision or agency of this state and has not previously paid or delivered the property to the state of the last-known address of the apparent owner

8

or other person entitled to the property;

(4)  The last-known address of the apparent owner, as shown on the records of the holder, is in a state that does not provide by law for the escheat or custodial taking of the property or the escheat or unclaimed property law of which is not applicable to the property and the holder is a domiciliary or a governmental subdivision or agency of this state;

(5)  The last-known address of the apparent owner, as shown on the records of the holder, is in a foreign nation and the holder is a domiciliary or a governmental subdivision or agency of this state; or

(6)  The transaction out of which the property arose occurred in this state and (A) (i) the last-known address of the apparent owner or other person entitled to the property is unknown, or (ii) the last-known address of the apparent owner or other person entitled to the property is in a state that does not provide by law for the escheat or custodial taking of the property or the escheat or unclaimed property law of which is not applicable to the property, and (B) the holder is a domiciliary of a state that does not provide by law for the escheat or custodial taking of the property or the escheat or unclaimed property law of which is not applicable to the property.

Under Conn. Gen. Stat. § 3-64a, all property that has remained unclaimed by the owner for more than three years after it became due, payable or distributable is presumed abandoned. Within ninety days after the close of the calendar year in which the property is presumed abandoned, the holder of that property must pay or deliver the property to the Treasurer of the State of Connecticut.  *See C*onn. Gen. Stat. § 3-65a.  Any person who fails to report or deliver abandoned property within the time prescribed must pay an interest penalty to the Treasurer of fifteen percent per annum of the value of the unclaimed property, from the date such property should have been reported or delivered.  *See* Conn. Gen. Stat. § 3-65b.  Connecticut law

9

precludes those holding unclaimed funds from deducting expenses or fees from the funds, without permission of the State Treasurer.  *See* Conn. Gen. Stat. § 3-65c.

The Court should not approve the Proposed Settlement without a modification requiring BRR to comply with state unclaimed property laws.  Modification of § 6.3 of the Settlement Agreement to require such compliance will ensure the fairest and most reasonable result for Rightsholders and further the public purposes of the unclaimed property laws.

## II.     Operation of § 6.3 of the Proposed Settlement Agreement Renders an Unlawful Conversion of Charitable Funds

Connecticut has the statutory duty to ensure that charitable property under its jurisdiction, including copyrights held by or for the benefit of charities or charitable trusts, is used forever solely for the intended charitable purposes.  Connecticut's Statute of Charitable Trusts, Conn. Gen. Stat. § 45a-514, requires that gifts intended for public or charitable purpose must be used forever for that purpose and for no other purpose.  The corresponding Statute of Charitable Uses, Conn. Gen. Stat. § 47-2,  provides that property dedicated to public or charitable use must be used forever for the intended purpose and for no other purpose.

It is not uncommon for authors to give or bequeath copyright interests to charities or for the benefit of a designated charitable purpose.  In addition, many charities, including the many museums, colleges and universities located in the State, publish works for which the charity holds the copyright.  Any profits, fees, or royalties realized or generated by Google with regard to copyrights held by or for the benefit of Connecticut charities or Connecticut Trustees of

10

charitable trusts, are charitable funds that, pursuant to Conn. Gen. Stat. §§ 45a-514 and 47-2, must be used only for the charitable purposes intended.

However, under the terms of the Settlement Agreement, if those who hold copyrights for charitable purposes fail to register with BRR, and BRR fails to locate the copyright holder, or fails to give notice to the copyright holder of funds generated by the underlying work, then § 6.3 of the Settlement Agreement becomes operative and permits BRR, in violation of Connecticut's unclaimed property laws (as set forth above), to retain those funds and use them for its own expenses, disperse them to registered copyright holders who do not own the underlying work generating the funds, or to apply to distribute the funds to another charity. In contravention of Connecticut Law, BRR is given unfettered discretion by § 6.3 to use or choose the recipients for this illegal windfall of unclaimed property.

In fact, BRR would hold funds generated by or for the benefit of a charity or charitable purpose as a fiduciary for the intended charitable purposes. If BRR uses those funds as provided for in § 6.3, it will have breached its fiduciary duty and rendered an unlawful conversion of charitable property in violation of Conn. Gen. Stat. §§ 45a-514 and 47-2. Under those circumstances, BRR, by complying with § 6.3, would be subject to civil penalties under state law for the breach of fiduciary duty, including liability for restitution to the charitable purpose, for the unlawful conversion of the charitable assets. *See Bruneau v. W.&W. Transportation Co.,* 138 Conn. 179, *82 A.2d 923* (1951) *citing Gilbert v. Walker*, 64 Conn. 390, 394, 30 A. 132 (1894)**;**

11

*see also Restatement of Trusts 2d*, § 393; *Scott on Trusts, 2nd Ed.* (1956), Vol. IV, Sec. 393, p. 2766.

Modification of the Settlement Agreement, in particular § 6.3, to require BRR to comply with state unclaimed property laws would ensure that any unclaimed funds generated by works for which the copyrights are held by or for the benefit of a charitable purpose would escheat to the state and § 6.3 would not be in conflict with state law.

When it becomes impossible, impracticable or illegal to use funds dedicated to charitable purpose for the intended purpose, a court with appropriate jurisdiction can apply the equitable doctrine of *cy pres* to designate an alternate charitable purpose that as nearly as possible fulfills the original charitable intent. *See Ministers & Missionaries Ben. Bd. V. Meriden Trust & Safe Deposit Co.,* 139 Conn 435, *94 A.2d 917* (1953); *Duncan v. Higgins*, 129 Conn. 136, *26 A.2d 849* (1924). In Connecticut, *cy pres* is within the exclusive jurisdiction of the courts. *See Hartford v. Larrabee Fund Assn*. 161 Conn. 312, 288 A.2d 71 (1971). Only the trustee or the charitable institution holding the charitable property, the charitable beneficiary of the property, or the Attorney General on behalf of the public interest, has standing to apply to a court with proper jurisdiction for application of the principles of *cy pres*. *See Herzog v. Univ. of Bridgeport*, 243 Conn. 1, *699 A.2d 995* (1997); *Blumenthal v. Barnes*, 261 Conn. 434, 804 A.2d 152 (2002); *see also Restatement of Trusts 2d* § 348, comment (f). BRR would not have standing to apply to any court for application of the principles of *cy pres* with regard to funds subject to escheat to Connecticut pursuant to Conn. Gen. Stat. § 3-66a (quoted above), defining the terms of escheat

12

of intellectual property, and the rules of *Texas v. New Jersey*, *supra.*, 379 U.S. 674 and 380 U.S. 518.

As indicated previously, modification of § 6.3 to require compliance with state unclaimed property laws will resolve the Settlement Agreement's provision for unlawful conversion of charitable property.

## III.    The State of Connecticut Denies That It Is a Member of Any Class In This Proceeding

Connecticut denies that it is a member of any class in these proceedings because it is a sovereign state that has never consented to litigate this matter in federal court.  The United States Supreme Court has repeatedly held that the purpose of the Eleventh Amendment and the doctrine of state sovereign immunity is to "prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties."  Forcing Connecticut to become an unwilling plaintiff at the initiation and choice of private class counsel, without Connecticut's affirmative consent, violates this basic principle of our federal system.

### A.    The State of Connecticut Is Not Subject to the Jurisdiction of the Court In This Proceeding.

The fundamental purpose of the Eleventh Amendment and the doctrine of state sovereign immunity is to prevent a state from being subject to the jurisdiction of federal courts without the state's affirmative consent.  Including Connecticut in the Settlement Class violates these basic principles because it forces Connecticut to litigate its claims in federal court at the initiation of private parties and against Connecticut's will.

13

"The very object and purpose of the Eleventh Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993) *citing In re Ayers*, 123 U.S. 443, 505 (1887); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 56 (1995) (citing to same language).  Thus, the United States Supreme Court has made clear that "[w]e have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition … which it confirms.  That presupposition … has two parts:  first, that each state is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent."  *Alden v. Maine*, 527 U.S. 706, 729 (1999) (internal quotations and citations omitted); *see also Seminole Tribe*, 517 U.S. at 54 (quoting same language); *Puerto Rico Aqueduct*, 506 U.S. at 145 (stating that the Eleventh Amendment "[a]ccords the States the respect owed them as members of the federation" and the Eleventh Amendment's "ultimate justification is the importance of ensuring that the States' dignitary interests can be fully vindicated.").

Moreover, the Eleventh Amendment does not encompass the entirety of a state's sovereign immunity in federal court.  State sovereign immunity "derives not from the Eleventh Amendment but from the structure of the original constitution itself."  *Alden v. Maine*, 527 U.S. at 728.  "The Eleventh Amendment confirmed rather than established sovereign immunity as a constitutional principle; it follows that the scope of the States' immunity from suit is demarcated

14

not by the text of the Amendment alone, but by fundamental postulates implicit in the

constitutional design." *Id*. at 728-29.  As explained by the *Alden* Court:

> Manifestly we cannot rest with a mere literal application of the words of § 2 of
> Article III [of the Constitution], or assume that the letter of the Eleventh
> Amendment exhausts the restrictions upon suits against non-consenting States.
> Behind the words of the constitutional provisions are postulates that limit and
> control…. There is [] the postulate that States of the Union, still possessing
> attributes of sovereignty, shall be immune from suits without their consent…."

*Alden* at 729, *quoting Principality of Monaco v. Mississippi*, 292 U.S. 313, 322-323 (1934); *see*

*also Puerto Rico Aqueduct*, 506 U.S. at 145 *citing Hans v. Louisiana*, 134 U.S. 1, 13 (1890) (The

"[Eleventh] Amendment is rooted in a recognition that the States, although a union, maintain

certain attributes of sovereignty, including sovereign immunity); *Seminole Tribe*, 517 U.S. at 55

(citing to same language).

Courts have applied these basic principles not only when a state is the defendant in a

federal action, but also when private parties seek to make a state an "unwilling plaintiff." For

example, in *Walker v. Liggett Group, Inc.*, 982 F. Supp. 1208, 1209 (D.W.V. 1997), private class

action plaintiffs sought and received a preliminary class certification, preliminary approval for

settlement, and a temporary restraining order prohibiting further legal action by class members

against the defendant tobacco companies. The class ostensibly included all persons, including

states, having smoking related claims against the defendant tobacco companies. *Walker*, 982 F.

Supp. at 1209. Eleven States moved to have themselves dismissed from the class for lack of

jurisdiction. *Id.*  In granting the States' motion to dismiss, the Court held that "the States have

not consented affirmatively to participate in this case, nor have they acquiesced in any way to

15

suggest their willingness to participate" and thus the moving States were entitled to the

protection of the Eleventh Amendment as "unwilling plaintiffs." *Id*. at 1210.

Similarly, in *Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 503-04 (8th Cir. 1995), the

defendant sought to have the Missouri Department of Natural Resources joined as a plaintiff in a

suit over environmental contamination. Missouri opposed joinder, arguing that involuntary

joinder violated the Eleventh Amendment. *FAG Bearings Corp.*, 50 F.3d at 504. The Court of

Appeals reversed the trial court and denied joinder, holding:

> Involuntary joinder will compel [Missouri] to act by forcing it to prosecute FAG
> at a time and place dictated by the federal courts. This disrespect for state
> autonomy in decision-making is precisely what the Eleventh Amendment was
> intended to avoid.
>
> …
>
> Involuntary joinder diminishes state sovereignty by permitting FAG to
> unilaterally waive [Missouri's] Eleventh Amendment immunity. As a general
> matter, only unmistakable and explicit waiver by the state itself qualifies as a
> waiver of Eleventh Amendment immunity.

Id. at 505-06; *see also Burley v. Burlington Northern & Santa Fe Rwy. Co.*, 2008 U.S. Dist.

LEXIS 80275, *14-*16 (D. Mont. 2008) (following *FAG Bearings* and denying motion to join

State of Montana as plaintiff); *Merideth v. Burlington Northern & Santa Fe Rwy. Co.*, 2008 U.S.

Dist. LEXIS 80338, *14-*16 (D. Mont. 2008) (same); *Stanton v. Ash*, 384 F. Supp. 625 (S.D.

Ind. 1974) (refusing to involuntarily join the State of Indiana and stating "clearly the plaintiff has

no right to force the State of Indiana to bring this action in federal court.").

16

In this case, including Connecticut in any of the Settlement Classes would make Connecticut an unwilling plaintiff in this action at the initiation of private parties and therefore violate Connecticut's immunity from suit in federal court under the Eleventh Amendment and the doctrine of state sovereign immunity. Forcing a state to submit itself to the jurisdiction of a federal court against that state's will is exactly what the Eleventh Amendment and the doctrine of state sovereign immunity were designed to prevent.

**B.      Class Counsel Has No Authority to Represent Connecticut**

Inclusion of Connecticut in the Settlement Class would contravene Connecticut law requiring that only the Attorney General, or those acting under his direction, represent the State in any civil legal matter.  Federal courts may not disregard Connecticut law unless that law does major damage to an important federal interest.  Here, the federal interest is in applying Connecticut law out of respect for state interests and state sovereignty.

"Both theory and the precedents of this Court teach solicitude for state interests …. They should be overridden by the federal courts only where clear and substantial interests of the National Government, which cannot be served consistently with respect for such state interests, will suffer major damage if the state law is applied." *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 891 (3rd Cir. 1975) *quoting U.S. v. Yazell*, 382 U.S. 341, 352 (1966) (holding that state law may be applied to interpret a release in a private antitrust action brought under federal antitrust law without harming federal interests); *see also Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68 (1966) (stating same rule in applying state law to federal mineral leases).

17

Here, Conn. Gen. Stat. § 3-125 explicitly states that the "Attorney General shall have general supervision over all legal matters in which the state is an interested party…. He shall appear for the state … in all civil suits and other civil proceedings… in which the state is a party or is interested … and all such suits shall be conducted by him or under his direction." In this case, it is undisputed that Class Counsel is not acting under the direction of the Connecticut Attorney General and has not been authorized by the Connecticut Attorney General to represent the State of Connecticut. As more fully set forth above, there is a strong federal interest in respecting state sovereignty as reflected in the Eleventh Amendment, the doctrine of state sovereign immunity, and the numerous federal court decisions interpreting these legal principles. Thus, allowing Class Counsel, without state authorization, to represent, compromise, and usurp unclaimed property, would directly contravene Connecticut state law without any countervailing clear and substantial federal interest or major harm done to those clear and substantial interests.

## <u>CONCLUSION</u>

For all the foregoing reasons, the State of Connecticut denies that it is a member of any class in this proceeding and respectfully requests that this Court rescind its preliminary approval of the Settlement Agreement. The court should order that any amended settlement agreement the parties may submit in the future be modified to require the BRR to comply with state unclaimed

18

property laws in the same manner as ASCAP and BMI.

Respectfully submitted,

RICHARD BLUMENTHAL
ATTORNEY GENERAL


/s/Richard Blumenthal
Richard Blumenthal     RB6515
Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5020
Fax: (860) 808-5347
rachel.davis@po.state.ct.us
karen.gano@po.state.ct.us

*Counsel of Record

19