UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| The Authors Guild, Inc., Association of American Publishers, Inc., et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.  05 CV 8136 |
| Google, Inc. | ) ) | OBJECTIONS |
| Defendant, | ) ) | |

Now comes Charles D. Weller, an individual residing in Cuyahoga County Ohio, and Dirk Sutro, an individual residing in San Diego County, California ("Objectors") by and through the undersigned counsel, and hereby file these objections to the Settlement Agreement in this matter because it is not fair, reasonable and adequate for the reasons set forth below.

## PROOF OF MEMBERSHIP IN CLASS

Objector Weller was the editor and, as an author, provided an Insert (Chapter One) in "Unique Value: Competition Based On Innovation Creating Unique Value," copyrighted in 2004.  Objector Dirk Sutro authored "Jazz for Dummies," first edition copyrighted in September 1998 and the second edition in July 2006.

## NOTICE OF INTENT TO APPEAR

Objectors hereby give notice that they intend to appear, through the undersigned counsel, at the Fairness Hearing currently scheduled for October 7, 2009 at 10:00 AM

1

before the Honorable Denny Chin in Courtroom 11A Daniel Patrick Moynihan United

States Courthouse, 500 Pearl Street, New York, NY 10007.

## OBJECTIONS

The Settlement Agreement and the Attorneys' Fees that are requested are not fair,

reasonable or adequate for several reasons including the amount of the attorneys' fees

and the source of the administrative fee used to fund the Registry.

### ATTORNEYS' FEES

Google has agreed to pay a minimum of $45 million into a fund to make cash

payments for all of the Books and Inserts that Google digitized without permission on or

before May 5, 2009.  In addition, it has agreed to pay whatever the Court awards in

attorneys' fees of up to $30 million and to reimburse expenses of up to $140,000.

Therefore, out of the total amount that Google has agreed to pay ($75+ million), the

attorneys are requesting an award of over Forty (40%) percent.  This is unconscionable.

Based upon the size of the Settlement Fund, the Court should award **total fees**

**and expenses** to counsel in an amount not exceeding approximately 21 % percent of the

Settlement Fund.  According to the study by the consulting firm of Logan, Moshman and

Moore which analyzed over 1100 Common Fund cases, the average award to Class

Counsel for **fees and expenses** for those settlements that were valued at between

Seventy-Five and One Hundred Million Dollars ($75 - $100 Million) was approximately

21% percent. Stuart J. Logan, Jack Moshman and Beverly C. Moore, Jr., *Attorney Fee*

*Awards in Common Fund Class Actions,* 24 Class Action Rep. 169 (2003). (Executive

Summary attached as Exhibit A).

2

The fact that Google is paying this in addition to the payment to the Class is irrelevant. From Defendant's point of view, it is paying $75 million to settle this case, (plus the $34.5 million it is paying to establish the Registry). The manner in which this is allocated between the Class and Class Counsel is of little or no consequent to Google. It is only concerned as achieving global peace and is willing to pay more than $104 million to achieve this. Other than the money to establish the Registry, it is not concerned over the allocation between the Class and its Counsel.

There is a even a provision in the Settlement that establishes a "clear sailing provision." "Google...agrees not to undermine in any way, or encourage anyone else to undermine in any way, the petition for attorneys' fees filed by Counsel for the Author Sub-Class so long as such petition seeks fees and expenses in the amount of thirty million United States dollars (U.S. $30 million.)" Settlement Agreement. ¶5.5 Note that this does not even say **"$30 million or less."** Google is not even recognizing the Court's obligation to set a fee. It is just agreeing to pay $30 million in fees and expenses. "Clear sailing provisions ... represent *prima facie* evidence of simultaneous negotiations of merit relief and fees, which is a practice fraught with serious ethical concerns for lawyers representing the class. Both courts and commentators have expressed apprehension that a plaintiff's counsel may be accepting a lower settlement for the class in exchange for a generous and non-adversarial treatment of fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul.L.Rev. 813, 815 (2003) (advocating *per se* ban on clear sailing clauses). The Fifth Circuit has stated that "A district court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of

3

attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir. 1980).

The amount of fees is also objected to because there is no evidence of the basis of the fee request. The Court assumes the position of a fiduciary for the Class when the question of Attorneys' fees arises. At that point, Counsel and the Class have differing goals. Dozens of cases have confirmed and identified this fiduciary role. It is axiomatic that the Court stands in a fiduciary relationship to the class when the matter of fees is addressed. It is clearly unfair to the class to approve attorneys' fees when there is no basis for doing so. The amount of class counsel's fees must bear a reasonable relationship to the actual benefit to the class. This was pointed out by the Court in the case *of In Re Excess Value Insurance Coverage Litigation No. M-21-84, MDL 1339 (SD NY November 2, 2005*) where the Honorable Richard Berman reduced Class Counsel's fee significantly after analyzing the actual benefits to the class as compared to the requested fee.

Other Courts have commented on the relationship between Class Counsel and their clients, the Class, when the issue of attorneys' fees arises in the context of common fund settlements. For example: In *Wise v. Popoff,* et al. 835 F. Supp. 977, (E.D. Mich. 1993) the court describes the roles as follows:

> An attorney's role changes once he files a fee petition. No longer a fiduciary for his client he becomes nothing more complex than **another claimant against the fund created for the client's benefit.** The court must, in turn, become "the fiduciary for the fund's beneficiaries **and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications.**" *Skelton v. General Motors Corp., 860 F 2d 250*, 253 (7th Cir. 1988), cert denied, 493 US 810, 110 S.

4

Ct. 53, 107 L. Ed. 2d 22 (1989). A court should not "rubber stamp" fee applications *In re Cincinnati Gas & Electric Co. Securities Litigation,* 643 F. Supp. 148, 152 (S.D. Ohio 1986). The fact that the settling defendant may agree with the fee application (or, as in this case, be persuaded to remain silent about it) is **irrelevant** to the Court's analysis because the defendant having already paid the settlement amount, has little interest in the portion of the fund that the class attorney is allowed to retain" (emphasis added.)

This Honorable Court, therefore, must act as a fiduciary for the Class and conduct an in depth investigation of the basis for the requested fee. The Court should at least determine what the Lodestar amount is (hours expended time hourly billing rate) and whether that bears a rational relationship to the fee requested. The Court should investigate not only the amount of time expended, but by whom it was expended. Was it by a partner, an associate, a paralegal or a contract attorney, and were the rates charged reasonable? Did one person take or defend a deposition, or were many associates in attendance? All of these matters should be investigated to make sure that the Class is not being overcharged.

The question of how to calculate the fee must also adhere to the teachings of *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Albany*, 484 F.3d 162 (2d Cir. 2007). In this case, the Second Circuit (with the Honorable Sandra Day O'Connor sitting by assignment), elaborated on the "preference for moderation" it had articulated in *Goldberger v. Integrated Resources Inc.*, 209 F. 3d 43 (2nd Circuit 2000) seven years earlier. In *Arbor Hill*, the Court emphasized that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *Id*. at 169, and that "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Id*. at 164. This Court is urged to consider what percentage

5

of the $75 million that Google has agreed to pay a "reasonable, paying client" would be

willing to pay.  Objectors submit that the amount would be closer to 20% (equivalent to

$15 million) than to 40 % (equivalent to $30 million).  The balance should go to the

Settlement Fund for the benefit of the Class.

Before *Arbor Hill*, district courts focused on the theoretical *upper limit* of

attorneys' fees, beyond which the fees would shock the conscience, violate the Rules of

Professional Conduct, or otherwise be "absurd."  See *In re Visa Check/Mastermoney

Antitrust Litig.* 297 F. Supp. 2d at 522 (describing requested fee of $609 million, which

was almost ten times hourly rate, as "absurd").  An attorney's fees almost had to be

grounds for professional discipline before a district court would lower it or deny approval

to a motion for fees.  In light of *Arbor Hill*, however, it is clear that the entire procedure

that a district court should follow in trying to ascertain a minimum reasonable fee has

fundamentally changed.  Rather than starting with the agreed to amount of fees and

(possibly) working down from there, a district court should instead start at zero and move

up incrementally until it arrives at a number that is not unfair to the Class or to Class

Counsel.

It is also well settled that a court should conduct a lodestar cross-check to

determine the reasonableness of the fee. *In re Cendant Corp. Securities Litigation,* 404 F.

3d 173, 188 (3rd Cir 2005)*.  See also *In re Cendant PRIDES Litigation,* 243 F. 3d 722,

742 (3rd Cir. 2001)*; In reRite Aid Corporation Securities Litigation,* 396 F. 3d 294, 305-

307.(3rd. Cir. 2005).  Of course, in this instance, Objectors are unable to offer an

independent analysis of the reasonableness of the fee, or the number of hours spent, or

the billing rate claimed because to date, no such fee application has yet been filed.  Such

analysis would examine the number of hours, the hourly rates for lawyers, law clerks and paralegals, whether lawyers have charged for performing law-clerk or paralegal work, and related issues which typically arise in class actions. The Court also must analyze the requested multiplier to make sure it is reasonable in light of the risk that Class Counsel took, if any.

**PROCEDURAL ANOMOLY**

The attorneys' fees request is also objected to as being untimely because the Notice fails to comply with Fed R. Civ. P. 23 (h) and insufficient information is available to the Class at this time. The Notice fails to provide the information required by Fed. R. Civ. P. 23(h) which states:

> (1)    *Motion for Award of Attorney Fees.*  A claim for an award of attorney fees and nontaxable costs must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision, at a time set by the court. Notice of the motion must be served on all parties and, for motions by class counsel,  directed to class members in a reasonable manner.

> (2)    *Objections to Motion.*  A class member, or a party from whom payment is sought, may object to the motion.

Notwithstanding the fact that the Fairness Hearing was originally scheduled for June 11, 2009, with an objection deadline in May, no fee petition has been filed as of the date that these objections are being filed.

This does not comport with the requirements of Rule 23(h). The Notice merely states that Google has agreed to pay up to $30 million in fees. Class members are forced to speculate about counsel's fee request at the time that they file their objections. The method followed in this case results in the bizarre procedural anomaly of requiring objections to the fee motion to be filed before the motion itself has been filed.

**BOOK RIGHTS REGISTRY**

Google has agreed to provide $34.5 million to fund the establishment and initial operations of the Book Rights registry. Notice 8 (b). This is admirable. However, after the initial payment by Google, the Registry will be funded by taking an administrative fee as a percentage of revenues received from Google. *Id.* The open question is the amount of this "administrative fee." Is it five (5%) percent or Fifty (50%) percent of the revenue, or more likely something in between. This is unclear and must be clarified before the settlement agreement is approved.

In addition, Google is paying Rightsholders 63% of the revenue it receives from the digital commercialization of their works. It is retaining 37% as its profit. It should pay ALL costs of administering the Registry from the 37% profit since, but for the digitalization of copyrighted works, it would not have this revenue stream at all.

Objectors respectfully adopt and incorporate into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections.

The Class members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, particularly the legal fees that are proposed to be paid.

These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objectors. All of the legally required prerequisites material to these Objections have been met.

WHEREFORE, Objectors respectfully request that this Court:

A.    Upon proper hearing, sustain these Objections;

B.    Continue the issue of attorneys' fees and expense reimbursement for a subsequent hearing;

8

C.      Upon proper hearing, enter such Orders as are necessary and just to

adjudicate these Objections and to alleviate the inherent unfairness, inadequacies

and unreasonableness of the Settlement and the requested attorneys' fees and

expenses.

Respectfully submitted,

 /s/ Eric S. Horowitz
Eric S. Horowitz (EH-1815)
Zane and Rudofsky
601 West 26th St. #1111
New York, NY 10001
Voice         (212) 245-2222
Facsimile    (212) 541-5555
E-mail       esh@zrlex.com

Edward F. Siegel (Ohio Bar No. 0012912)
27600 Chagrin Blvd #340
Cleveland, Ohio    44122
Voice         (216) 831-3424
Facsimile    (216) 831-6584
E-mail       efsiegel@efs-law.com
(pro hac vice pending)

Law Office of Edward W. Cochran
20030 Marchmont Road
Shaker Heights, OH 44122
Voice: 216-751-5546
Facsimile: 216-751-6630
Email:  edwardcochran@wowway.com

Darrell Palmer (SBN 125147)
Law Offices of Darrell Palmer
603 North Highway 101, Ste A
Solana Beach, California 92075
(858) 792-5600
(858) 792-5655
Darrell.palmer@cox.net

Counsel for Objectors

9

CERTIFICATE OF SERVICE

The foregoing Objections were filed with the Court's electronic system on September 4, 2009, and were by such system served upon all counsel of record.  In addition, courtesy copies were sent by by ordinary US mail, postage prepaid to the following:

Michael J. Soni, Esq.
Boni & Zack, LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004

Jeffrey P. Cunard, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Daralyn J. Durie, Esq.
Keker & Van Nest LLP
710 Sansome Street
San Francisco CA 94111

                                                    __/s/ Eric S. Horowitz_____
                                                    Eric S. Horowitz