DOC #296



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| The Authors Guild, *et al.*,<br><br>       *Plaintiffs*,<br><br>v.<br><br>Google, Inc.,<br><br>       *Defendant*. | Case No. 05 CV 8136 (DC)<br><br>**OBJECTION OF PROQUEST LLC<br>TO PROPOSED SETTLEMENT** |

Office of the Clerk
J. Michael McMahon
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

## INTRODUCTION

### I. DESCRIPTION OF PROQUEST LLC

ProQuest, LLC (hereinafter "ProQuest") objects to the proposed Google Book Settlement as a Class Member who has played by the rules of copyright and contract law for decades and now risks being punished for that vigilance by the unintended consequences of an overly broad mass settlement. ProQuest asks that while the Court is weighing the profound benefits and risks of the Proposed Settlement as it relates to the traditional books at the center of the debate, it also consider that there are socially and economically important sub-markets of other written materials that the settlement as written will unfairly damage.

ProQuest and its predecessors-in-interest have been preserving, reproducing and distributing valuable, hard-to-find texts since 1938, including 2.4 million American dissertations and theses

which would be severely impacted by the Proposed Settlement. Beginning with the then-modern technology of microfilm and continuing to advance through the CD-ROM and Internet years, ProQuest has been a global leader in providing research and educational resources to the academic, library and general research market segments. Through subscriptions at almost all public libraries, colleges and universities in the United States and its open web offerings, ProQuest makes available billions of pages of works, including journals, books, dissertations and general interest titles. For decades, ProQuest has scrupulously observed the copyright interests of millions of dissertation authors and thousands of print publishers, entering into separate agreements with each owner and paying agreed-upon royalties from the re-sale of the information assets. Our publishing program spans the digitization of the treasures of the English language (*e.g.*, collections such as *Early English Books Online* and *Periodical Archive Online*); the aggregation of the world's premier scholarly journals that are otherwise available online only by paid subscriptions (in subject-matter research databases such as *ABI/INFORM* for business studies or in broad offerings such as *ProQuest Central* with more than 5,700 scholarly/peer-reviewed full-text journals); and the creation of complete digital reproduction from first edition forward of many of the most important newspapers in the world (ProQuest Historic Newspapers: *The New York Times*, *The Wall Street Journal*, *The Chicago Tribune*, *The Guardian* and *Observer*, and 27 other leading newspapers as of 2009).

For the purpose of the Court's consideration of our position on the Proposed Google Book Settlement ("Proposed Settlement"), ProQuest's unique role in the scholarly dissertations publishing process is most germane. Starting in 1939 through its predecessor-in-interest UMI, ProQuest has entered into royalty bearing agreements with effectively all American Ph.D. candidates to publish their dissertations in print, microfilm and/or digitally. In addition to selling

print and PDF copies of the dissertations on a "per request" basis, ProQuest has published a periodical guide indexing all of the dissertations and providing abstracts as a tool to enhance their discoverability. In 1987, those finding tools were digitized on CD-ROMS, and since 1997 the finding tools and the full text of dissertations have been collected in a subscription database for online research and retrieval. Through this integrated publishing program, ProQuest serves students' need to formally publish their dissertations; universities' need to collect the scholarly output of their communities; archivists' need to preserve the intellectual heritage of our time; and researchers' need to discover, understand and build on the knowledge represented in these works. The business of publishing scholarly dissertations funds these crucial roles ProQuest plays in academic recognition, historical preservation and scholarly research. If Google is permitted to leverage Court approval of this Proposed Settlement beyond traditional books to include specialized smaller but invaluable businesses such as dissertations publishing, unintended, unfair and irrevocable damage will be done to the health of many market segments. While ProQuest can speak only to dissertations publishing, there are also small private presses, aggregated specialized content publishers, finding tool subscription companies, and specialized non-profit publishers who may be unfairly supplanted.

## II. PROQUEST'S STANDING

ProQuest has standing to lodge these objections as Class Member under both the Publisher Sub-Class and the Author Sub-Classes. ProQuest is a Publisher Sub-Class Member under Section 1.120 of the Proposed Settlement because it publishes, and/or is exclusive licensee of, Books, Inserts and/or Periodicals. ProQuest is also an Author Sub-Class Member under Section 1.14 as the author of Books such as directories and indexes, as well as other primary works. ProQuest also rises to speak for the interests of those dissertation authors who have federally registered

their copyright interests. Approximately one million authors have directly retained ProQuest to seek that registration on their behalf and that responsibility includes the duty to speak up when their copyright is threatened. In 1998, the U.S. Library of Congress recognized ProQuest's appropriateness as a representative for these authors and their works by naming us its official repository for digital dissertations.

### III. SUMMARY OF PROQUEST'S OBJECTIONS AND WHY THE SETTLEMENT SHOULD BE REJECTED

The Proposed Settlement would upend the copyright law ecosystem by allowing Google to take a huge collection of dissertations from library shelves and digitize them under an imposed business model without asking for the authors' permission. With these unique advantages, Google would sell finding tools and full-text access in unfair competition to existing programs offered by publishers such as ProQuest. The result would be devastating to such programs because those publishers invested heavily to create their collections under the rigors of existing copyright law and continue to pay agreed-upon royalties to the authors. Under the claim of bringing progress, Google would destroy the system that has actually delivered progress to authors, researchers and archivists for many decades. It is not a change in technology that will disrupt the existing ecosystem, but the unilateral change of law that the Proposed Settlement proposes.

In addition to digitizing from paper books, the Proposed Settlement purports to authorize Google to cut its costs and increase its quality by wholesale digitization of works from microform collections that ProQuest and other publishers skillfully and expensively created over decades. The Proposed Settlement discloses no consideration whatsoever of the contractual or copyright considerations that have governed creation and distribution of works in microform.

From the perspective of a dissertations publisher, the Proposed Settlement is fundamentally flawed in that works such as dissertations should never have been included in the Proposed

Settlement's definition of "Books"; the rules governing Commercial Availability should be clear and concrete enough to prevent Google from subverting an existing marketplace; and there should be no blanket release authorizing Google to digitize works wholesale from microfilm collections created by publishers such as ProQuest. ProQuest's dissertation publishing program is just one example of the many vital businesses that have grown up in the existing copyright law ecosystem. Like an unregulated land developer erecting an admittedly impressive skyscraper, the Proposed Settlement threatens to bulldoze through interconnected business and social environments that no one has taken into consideration. Instead, the Court should demand an "environmental impact analysis" before authorizing the Proposed Settlement to strip this existing, robust publishing landscape.

## OBJECTIONS

### I.   THE PROPOSED SETTLEMENT IS UNFAIR TO PUBLISHERS OF DISSERTATIONS AND MICROFORMS

#### A.   It is Unfair to Treat Dissertations as "Books" Subject to the Proposed Settlement

Apparently without notice to or input from any publisher or author of dissertations, the Proposed Settlement purports to include these unique works in its grant of "Book" rights to Google. Dissertations, however, are not explicitly included in any defined term in the Proposed Settlement. Instead, the term pops into the Settlement documents unannounced in one reference at the bottom of the first page of Attachment 'J' and nowhere else. If approved, this 'afterthought' threatens to destroy a vibrant business that has long served the needs of dissertation authors, universities and libraries. Every doctoral candidate publishes his or her dissertation as a condition of being awarded their advanced degree. ProQuest has licensed,

organized, and published over 2.4 million dissertations and theses for over half a century. The taking, use and display of dissertations by Google is fundamentally unfair to Class Members similarly situated as ProQuest, for four fundamental reasons:

**1.    Dissertations are not lost. Including dissertations in the Proposed Settlement is not necessary and does not advance a social good.**

As to dissertations, the Proposed Settlement is not needed to rediscover works "lost" to society. ProQuest has invested decades of work and money individually abstracting and indexing ("A&I") dissertations published in the U.S. as far back as 1939 making each and every one of them easily findable. Those A&I collections, titled "UMI Dissertations Abstracts International," exist in print in libraries all over the world. Well over 2,500 institutions worldwide use ProQuest's enhanced online service to discover and research these dissertations through highly detailed, digital versions of the dissertations abstracts and indices ("ProQuest Dissertations and Theses"). Anyone in the world with an Internet connection can already discover and obtain these dissertations through ProQuest's existing open web service, 'Dissertations Express.'

**2.    Dissertations are readily accessible. Any step to encompass dissertations in the Proposed Settlement is both unnecessary to advance its "research and preservation" goal and overreaching in that it will destroy a vibrant, existing business.**

The Proposed Settlement is in part based on a stated "research and preservation" goal of providing access to texts that are at risk, rare and/or hard to access. ProQuest has carefully preserved nearly all (about 95%) of the dissertations published in the U.S. as far back as 1939. ProQuest has over 2 million dissertations recorded on archival quality microform, which constitutes a massive investment including collection, filming, vaults and climate control. ProQuest has also created easy and reliable access to all of the dissertations. For example,

virtually every dissertation is available in full text to anyone in the world through ProQuest's PDF and print-on-demand programs. Hundreds of thousands of dissertations have been and continue to be reproduced, delivered and put in use through this program each year. This system is not obsolete.

**3. Dissertations are being actively sold. Any step to encompass dissertations in the Proposed Settlement is unnecessary to advance the "long tail" of value goal.**

The Proposed Settlement is based on the stated economic premise of reinserting fallow works back into the stream of commerce. However, there exists now an active market for dissertation sales: over 2 million dissertations are offered in multiple formats to educational institutions, government and individuals with as many as 8.2 million searches conducted monthly on ProQuest's sites, 3.8 million downloads per year and an additional 300,000 individual copy sales. These offerings are not hidden or obscure. ProQuest sells products into virtually all academic research libraries in the world, as well as to other universities, colleges, K-12 schools, public libraries, government agencies, companies and individuals. The Proposed Settlement would disrupt a robust model that already compensates RightsHolders and degree-granting institutions. ProQuest, and similarly situated Class Members, have existing contracts which channel sales royalties to all dissertation authors. Degree-granting institutions participate in numerous programs that provide them with collection-grade copies of their students' dissertations. Rather than promoting dissemination of dissertations, approval of the Proposed Settlement would destroy the existing infrastructure without any plan or commitment to replace it. By painstakingly entering into legal agreements with each RightsHolder, ProQuest created and protects in archival microfilm the largest and most complete collection of dissertations in the

world. Allowing dissertations to simply be taken under the Proposed Settlement would destroy the economic model which funds the ongoing collection, distribution and preservation of these works. Dissertations are not "lost," "fallow," or out of commerce.

**4.    The Proposed Settlement is structurally deficient because it is underfunded. Dissertations, could consume the entire settlement proceeds. Any step to encompass dissertations in the Proposed Settlement will produce an unfair, negative result not only for dissertation authors but other RightsHolders as well.** If dissertations were treated as "Books" under the Proposed Settlement, then each dissertation RightsHolder would be entitled to an upfront payment of $60 from the settlement fund. There are at least 2.3 million dissertations in copyright in the United States, which amounts to $138,000,000. Even if only half of the dissertations have had their copyright federally registered (a very conservative estimate based on ProQuest's first-hand experience), the amount due will still be $69 Million. A total of $45 Million has been set aside in the Proposed Settlement to pay all RightsHolders, of whom dissertation authors are just one unrepresented subset.

It is likely that the amount due for dissertations will be a real, not hypothetical, expense. These individual dissertation authors are not missing. While ProQuest holds non-exclusive rights to print the dissertations on paper (as distinguished from its exclusive rights to many of the dissertations in microform format), ProQuest has also been retained by about one million of the individual authors as their agent for copyright. If the Proposed Settlement were approved in its current form, ProQuest would be obliged to file with the BRR as a Claimant acting on behalf of those RightsHolders to ensure that all of its represented dissertation authors receive the compensation to which they will be due. ProQuest pays dissertation authors royalties on its sale of their dissertations, so it has a longstanding and highly effective infrastructure for delivering

earned funds to these RightsHolders. As to the rest of the dissertation authors, the Court should expect their degree-granting institutions to undertake an extensive outreach program to ensure that those authors, too, are compensated by Google for their works. Given that the institutions and ProQuest maintain databases of the authors' last known addresses, and in view of the close communications within the scholarly community, it should be anticipated that the majority of those not represented by ProQuest will demand payment either individually or by aligning with their schools.

Interjecting dissertations as "Books" subject to the Proposed Settlement is therefore unnecessary to achieve the Settlement's stated ends. It would instead brush aside a healthy model that serves vital needs of the scholarly community, undermine rather than support the next innovation, and seriously threaten the overall settlement structure. Dissertations and the business that stewards them would be unfairly harmed by the Proposed Settlement.

### B. "Commercially Available" as Defined Discriminates Against Non-traditional Publishers, Imposing Unfairness on ProQuest and other Class Members

In the structure of the Proposed Settlement the definition of "Commercially Available" is crucial to determining what display options are available and what revenues flow to whom. That definition is vague, ambiguous and unreasonably subject to Google's unilateral determination. If Google deems a work as not "Commercially Available," it has more power and control over the work, with the copyright owner commensurably less. As defined under the Proposed Settlement, "Commercially Available" means: "that the RightsHolder of such Book . . . is, at the time in question, offering the Book . . . for sale new through one or more then-customary channels of trade in the United States." Proposed Settlement, § 1.28. Section 3.2(d) further details the basis for such determination by Google, including analyzing "multiple third-party databases as well as . . . the Book's retail availability based on information that is publicly available on the Internet"

and "various sources." The vaguely defined terms in Section 3.2 give extraordinary latitude to Google to make the determinations of whether a work is "Commercially Available." Even though virtually every single work in ProQuest's dissertations publishing program is available for sale individually and in collections in paper, microfilm and digital formats, the language of the Proposed Settlement makes it impossible to predict how Google would rule on the question of commercial availability.

Under the settlement schema, the act of actually making the works commercially available does not authorize one to contest the issue of Commercial Availability--only the holder of a copyright interest has that privilege. As the Proposed Settlement would explicitly authorize Google to digitize dissertations from microform, and as ProQuest is the exclusive licensee of microform publishing rights for hundreds of thousands of dissertations, ProQuest holds a copyright interest in those works. ProQuest's standing both as a Class Member and as a RightsHolder as to those dissertations cannot be questioned. ProQuest will be a legitimate Claimant on the dissertation authors' behalf as to all of the dissertations which it is licensed to sell. However the non-exclusive nature of the scholarly authors' print publishing (as distinguished from microform publishing) contracts presents the risk of a loophole allowing Google to ignore the fact that ProQuest is manifestly offering all the dissertations "for sale new through one or more then-customary channels of trade in the United States." This problem is not unique to dissertations and ProQuest. Any other business with a non-traditional model will find itself in this position.

In effect, the Proposed Settlement gives Google (the party with the financial incentive to find works not "Commercially Available") the discretionary authority to arbitrarily determine what constitutes commercial availability on a case by case basis. No court will ever again be allowed to review this discretion. The appeal process in the Proposed Settlement is entirely internal and

secret. (Section 9.8). This is fundamentally unfair to other publishers and the entire publishing ecosystem by creating a private copyright system. It is manifestly unfair to establish vague and ambiguous standards for "Commercial Availability" and then also bar entities that are contracted stewards of these works commercial availability (such as ProQuest), to have standing to dispute Google's unilateral determination. The fact that the steward's rights are non-exclusive does not make them irrelevant.

Furthermore, "information that is publicly available on the Internet" suggests that the determination will likely be limited to discovering books that are available through Google-like means of mass distribution to the general public. This fails to take into account the existing industry standards of making works, such as dissertations, available for sale on a "per request" or "on-demand" basis. While it happens that ProQuest does maintain a robust web presence, not every publisher may advertise every opportunity for sale online. The proposed settlement displays the hubris of assuming that if it's not online it doesn't matter. It is a gross overstatement to represent that "Commercial Availability" can be fairly determined as defined by the Proposed Settlement.

### C. "Including Microform" is Overreaching and Results in Unfairness to the Class.

Under the Proposed Settlement, the definition of digitizing individual paper books gratuitously grants Google the right to copy whole collections of works published in microform by parties such as ProQuest and does not require Google to disclose which works it has digitized from microform. Giving away the right to digitize from microfilm is a bald taking of microform publishers' rights.

Microform exceeds the scope and dimension of the Proposed Settlement, which is, by Google's own definition, a book-scanning project. Empowering Google to take microforms is an asset-

grab that allows Google an expedited way to digitize with dramatically reduced expense. No consideration was given to any issues associated with digitizing from film. No parties to the settlement negotiation represented anyone with an interest in the microform. It is unfair to ProQuest and similarly situated Class Member to be forced to forfeit a non-digital asset that it has assembled and invested at great expense. *See, e.g.,* Proposed Settlement, §§ 1.46, 1.82, 2.2 and 3.1. Digitization from microform should be prohibited in the Proposed Settlement.

ProQuest invented many of the tools, techniques and standards which allowed for the creation of this massive collection of works. We have spent more than 70 years and well over a hundred million dollars creating microfilm records of books, dissertations and other works. The skill, selection and composition that went into creating the unique collections are a key intellectual property asset of ProQuest. Without our permission or any compensation the Proposed Settlement would allow Google to benefit unfairly from all that value. The Proposed Settlement bars any third party from duplicating Google's data corpus under the logic that it would be unjust to allow such taking after Google has invested so much expertise, time and money in creating the scanned copies of books from the libraries. ProQuest and other Class Members are being denied that same fundamental protection. This is true even with respect to the expanse of dissertations and other materials for which ProQuest is, by virtue of contract with the RightsHolder/dissertation author, the exclusive publisher in microform format. Google would enjoy the benefits of a double standard: one rule to itself in the digital medium and then applying a different rule to microform publishers. Allowing the Proposed Settlement to include microform amounts to an unauthorized taking. This is especially true as the definition of Books is limited to "hard copy." Including "microform" in the Proposed Settlement imposes unfairness on ProQuest and other Class Members.

## II. THE PROPOSED SETTLEMENT IMPOSES AN UNFAIR BURDEN ON CLASS MEMBERS

### A. The Proposed Settlement Unfairly Shifts the Transactional Burden to Class Members.

#### 1. The Burden of Lodging Claims:

According to the settlement description, Google is scanning whatever books it finds on library shelves without individual review or consideration. After its own discretionary review of Commercial Availability, Google will assume that it may display all the works unless the RightsHolder of a work in question undertakes its own separate, detailed review of every work it claims. Section 3.1(b)(i) of the Proposed Settlement does not further define what specific information is needed. As part of its contractual responsibilities to authors, ProQuest is the agent for U.S. Copyright registration for approximately one million dissertations. This represents roughly one-half of the over two million dissertations in our publishing program. Simple arithmetic demonstrates that the claim notification process for Publishers of large portfolios such as dissertations is a nearly impossible burden to be met. Neither is there any obligation that Google maintain a list of works that it has digitized in an accurate, complete, updated or useable form that allows RightsHolders to make claims. Surely this oversight should be corrected so that, if approved, the Proposed Settlement can be fairly administered.

#### 2. "Periodicals" while excluded under the terms of Proposed Settlement, as a practical matter are not differentiated in the actual corpus. Burdening Class Members to search the corpus for their periodicals and petition to exclude them is unfair.

When Google scanned the ten million "books" in its wholesale digitization of the participating libraries, it is apparent that it also scanned works supposedly excluded in the Proposed Agreement. Indeed, Google's practice of scanning every bound volume from library shelves, without first conducting a serious review of the materials to be scanned will necessarily sweep

up scholarly journals, magazines and other "Periodicals." It is the common practice of libraries to bind periodicals and ephemera between hard covers for convenience at the end of each year. These bound Periodicals become outwardly indistinguishable from books. ProQuest made a cursory review of Google Books looking for just its own works and found multiple issues of its periodicals even though each copyrighted work is clearly identified as a serial and is therefore a "Periodical." *See, e.g.,* printouts of Google Book Search results for ProQuest periodicals attached hereto as Exhibit A. There is no way to know how many Periodicals have been inadvertently added to the corpus. While Google may offer to remove these works as they are identified, there is nothing in the Proposed Settlement as it exists to keep it from extending its "opt out" philosophy past "Books" to include "Periodicals" as well.

**3.     The "Safe Harbor" offered to Google under the Proposed Settlement will reward overreaching and stifle innovation.**

Google alone is granted "safety" from all liability arising from any errors it may make in using, copying, distributing or creating derivative works from presumed public domain works. This "Safe Harbor" from liability granted to Google is too broad. Proposed Settlement § 3.2(d)(v) and Attachment "E." At least four pages of the Proposed Settlement and all of Article 10 are dedicated to thoroughly and irrevocably releasing Google. Such releases are over-broad and reach beyond what can be now known or anticipated by the Class Members.

Furthermore, the Safe Harbor provisions apply only to Google. Anyone else who wants to use one of these books would face the draconian penalties of statutory copyright infringement if it turned out the book was actually still in copyright. Even with all this effort detailed in Exhibit E, one will not be able to say with certainty that a book is in the public domain. To effect such

clarity that would require a legislative change along the lines of the pending "orphan works" legislation.

### III. THE PROPOSED SETTLEMENT IRREMEDIABLY DISRUPTS THE EXISTING "COPYRIGHT ECOSYSTEM" IN FAVOR OF GOOGLE, WHICH IS UNFAIR TO CLASS MEMBERS

#### A. The Proposed Settlement Violates Copyright Law

The Proposed Settlement represents a violation of the Copyright Act. It modifies by judicial fiat what should only be implemented by fully-informed and carefully balanced legislation. There are unintended, unpredictable consequences to the Proposed Settlement representing massive, unprecedented change to the "copyright law ecosystem." Since the first copyright law, The Statute of Anne, was enabled in 1710, companies such as ProQuest have entered into contractual relationships in what has been the reasonable reliance on the stability of copyright law. This system has supported tremendous progress. Approving the sweeping changes inherent in the Proposed Settlement without that full information and careful balancing would impose manifest unfairness on the publishers and authors. If this Court were to approve the Proposed Settlement as written, it would transform copyright law for the private benefit of one company without appreciating the damage it may be doing to many others.

#### B. The Proposed Settlement Devalues Contracts; Defeats Legitimate Expectations; and Destroys Prior Law.

ProQuest and other Class Members have entered into contractual relationships in reliance on the stability of copyright law and that fact that copyright law has applied equally to all players. In support of academic freedom and the desire of Ph.D. authors to retain additional publication rights beyond the formal publishing of their dissertations, ProQuest has entered into non-exclusive print publishing contracts with dissertation authors (although it does hold an exclusive microform publishing right for hundreds of thousands of dissertations). This choice contributed

to the publication of further books and monographs based on the dissertations. ProQuest has been able to pay authors royalties for our publishing and preserving of these works while agreeing that each retained the right to republish his or her own work only because it was secure in the knowledge that the broad aggregation of dissertations was naturally protected by the rigors of copyright law. While ProQuest kept up with, and indeed led, the technological changes in its industry, the constancy of copyright law meant that only a party willing to enter into a separate agreement with each author, as ProQuest had already done, would be able to amass a large collection. ProQuest made and continues to make that investment to keep the technology change going forward because there was and is a revenue stream.

Without certainty in the law, the investments and flexibility that built the program would have been impossible. Without this certainty, the benefits of formal dissertation publication and preservation cannot be continued. Had ProQuest or any other publisher known that such a sweeping change to the copyright system would be achieved by one centralized scanning project, it would have conducted its business very differently—to the detriment of the entire scholarly publishing process. To allow the Proposed Settlement to be implemented as currently written would impose a hardship and unfairness on companies like ProQuest as they lose the value of their investment when they lose all the predictability upon which they had relied.

The Proposed Settlement would not merely rewrite copyright law. It would also violate fundamental fairness. In one class action settlement, the Proposed Settlement would diminish the value of every existing contractual arrangement predicated on the expectation that there were material transaction costs in managing a copyright portfolio. If approved, the Proposed Settlement will unquestionably punish those who played by the rules.

## **CONCLUSION**

The Proposed Settlement should be rejected and should be re-negotiated. It represents an unfair re-configuration of some of the central tenants of copyright law. Moreover, the unintended consequences of the Proposed Settlement would disrupt existing businesses that are as legitimate as the one Google has created and for which it now seeks judicial confirmation. There are many concrete and certain social benefits which are generated by those existing businesses that will be threatened by the pursuit of the uncertain potential new benefits which the Proposed Settlement promises. Because those existing businesses are legitimate enterprises that built their position playing by the rules of copyright and contract, substituting Google's interests for theirs is fundamentally unfair. A more flexible, clearer, more inclusive re-negotiated agreement, which provides for transparency, oversight and accountability, is what is needed to benefit the Class-Members.

Respectfully Submitted,

*Martin Kahn*

Martin Kahn, CEO

Dated: September 3, 2009

Cc:   Michael J. Boni, Esq.
      Joanne Zack, Esq.,
      Joshua Snyder, Esq.
      Boni & Zack LLC
      *Counsel for the Author Sub-Class*

      Jeffrey P. Cunard, Esq.
      Bruce P. Keller, Esq.
      Debevoise & Plimpton LLP
      *Counsel for the Publisher Sub-Class*

      Daralyn J. Durie, Esq.
      Joseph C. Gratz, Esq.
      Durie Tangri Lemley Roberts & Kent LLP
      *Counsel for Google*