UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

The Authors Guild Inc.;
Association of American
Publishers Inc.; et al.,

       *Plaintiffs,*

Lewis Hyde; Harry Lewis;
Nicholas Negroponte, Charles
Nesson,

       *Plaintiff-
Intervenors,*

v.

Google Inc.,

       *Defendant.*

Case No. 05-cv-8136-DC

---

**OBJECTIONS TO THE PROPOSED SETTLEMENT AND
MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

K.A.D. Camara *
Camara & Sibley LLP
2339 University Boulevard
Houston, Texas  77005
713-893-7973
camara@camarasibley.com

Charles R. Nesson *
1575 Massachusetts Avenue
Cambridge, Massachusetts  02138
nesson@law.harvard.edu

Martin Garbus
Eaton & Van Winkle LLP
3 Park Avenue, 16th Floor
New York, New York 10016
Direct Dial:  (212) 561-3625
Main Line:  (212) 779-9910
Fax:  (212) 779-9928
Email:  mgarbus@evw.com

Dated: September 8, 2009

    *Attorneys for Plaintiff-Intervenors*

\* Mr. Camara and Mr. Nesson intend to apply for leave to appear *pro hac vice*.  Mr. Camara is a member of the bars of Massachusetts, Texas, the District Courts for the Northern, Southern, and Western Districts of Texas, and the Fifth Circuit.  Mr. Nesson is a member of the bars of Massachusetts, the District Court for the District of Massachusetts, the First Circuit, and the Supreme Court.

**TABLE OF CONTENTS**

I. LEWIS HYDE, HARRY LEWIS, AND NICHOLAS NEGROPONTE  SEEK TO INTERVENE TO PROTECT THREE VALID, CRITICAL INTERENTS NOT REPRESENTED IN THIS SETTLEMENT. ............................1
  A. The Intervenors. ......................................1
  B. The Issue. ...........................................2
  C. The Origins of This Lawsuit. .........................4
  D. The Proposed Settlement. .............................5

II. INTERVENORS' OBJECTIONS. ..............................7
  A. The settling parties are proposing to charge the public royalties for the use of orphaned works that do not belong to them, and to convert the proceeds from such charges to their own use. ...........................................7
    1.   The settling parties have no legitimate claim to these revenues.......................................7
    2.   Users of the Public Domain are Entitled To The Revenue Generated By Orphaned Works...................9

  B. The Settling Parties are proposing an agreement that restrains trade in digitized books by establishing a substantial monopoly on all out-of-print books and a total monopoly on the subset of out-of print books that are orphan works. .........................................10

  C. The Settling Parties are Proposing to Establish a Copyright Registry Board of Directors with No Mandated Representation on the Public Interest in Fair Use. .....12

III. INTERVENORS ARE ENTITLED TO INTERVENE UNDER RULE 24 BECAUSE THEY CLAIM FOR THEMSELVES AS UNREPRESENTED MEMBERS OF THE CLASS OF AUTHORS WHO SEEK PROTECTION FOR THE PUBLIC DOMAIN. ................................................13

  A.   Standards for Intervention as of Right. ...........13

  B.   Intervenors' Motion is Timely. ....................14
    1.   Intervenors gave notice of their intention to intervene within three months of receiving notice of the proposed settlement..................................15
    2.   There is no prejudice to Plaintiffs..............16
    3.   Intervenors and the public interest they represent will be prejudiced if intervention is denied.........17
    4.   The unusual legal complexity, constitutional significance, practical importance, and unprecedented scope of the proposed settlement in this case militate in favor of a finding of timeliness...................18

C.   Intervenors' Interest is Not Adequately Protected by the Existing Parties. ................................. 19

VI.   THIS COURT WRONGFULLY DEEMED INTERVENORS' LETTER REQUESTING A PRE-MOTION CONFERENCE TO BE THEIR MOTION AND, HAVING DONE SO, IMPROPERLY DEDIED THE MOTION. ............ 19

VII.   CONCLUSION ....................................... 23

**TABLE OF AUTHORITIES**

**Cases**

*Catanzano ex rel. Catanzano v. Wing*, 103 F.3d 223, 233 (2d Cir. 1996) .............................................. 15

*Cohen v. Republic of the Philippines*, 146 F.R.D. 90, 91 (S.D.N.Y. 1993) ......................................... 14

*Counihan v. Allstate Ins. Co.*, 907 F. Supp. 54, 56 (E.D.N.Y. 1995) ......................................... 16

*Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000) ..... 21

*Farmland Dairies v. Commissioner of New York State Department of Agriculture and Markets*, 847 F.2d 1038, 1044 (2d Cir. 1988) ......................................... 15

*Hartford Fire Insurance Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) ......................................... 14

*Holocaust Victim Assets Litigation* ........................ 16

*Holocaust Victim Assets Litigation*, 225 F.3d 191, 197 (2d Cir. 2000) .............................................. 13

*Holocaust Victim Assets Litigation*, 225 F.3d at 198 ...... 13

*Holocaust Victims Assets Litigation*, 225 F.3d at 198-99 .. 15

*Johnson v. National Football League*, No. 99-cv-8582, 1999 WL 892938 at *1 n.1 (S.D.N.Y.) (Chin, J.) .............. 20

*LaRouche v. Federal Bureau of Investigation*, 677 F.2d 256, 258 (2d Cir. 1982) ..................................... 17

*Martin v. City of New York*, No. 07-cv-3784, 2008 WL 1826483 at *1 (S.D.N.Y.) ......................................... 18

*Pitney Bowes*, 25 F.3d at 70-71 ........................... 14

*Pitney Bowes*, 25 F.3d at 72 .............................. 15

*Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987) ................................. 21

*Safeco Ins. Co. of Am. v. Discovery Prop. & Cas. Ins. Co.*, No. 05-cv-8625, 2008 WL 318314 at *3 (S.D.N.Y.) (Chin, J.) ................................................. 20

*The United States Russia Investment Fund v. Neal & Co.*, No. 97-cv-1788, 1998 W 669770 at *2 (S.D.N.Y.) (Chin, J.) .. 20

*Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 ............................................... 18

*United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987) ................................................. 13

*United States v. New York*, 820 F.2d at 557 .............. 14

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) .............................................. 13

**Statutes**

Restatement of the Law, Second, Trusts, § 232 ............. 9

**Other Authorities**

Individual Practice 1(A) ................................. 20

Individual Practice 2(A) ............................. 18, 19

Individual Practices 2(B)-(E) ............................. 20
*see* Individual Practice 2(A) ............................ 20

**Rules**

Rule 23 ................................................. 17
Rule 24 ........................................... 2, 19, 21
Rule 24(a)(2) ................................... 12, 13, 16

# I. LEWIS HYDE, HARRY LEWIS, AND NICHOLAS NEGROPONTE SEEK TO INTERVENE TO PROTECT THREE VALID, CRITICAL INTERENTS NOT REPRESENTED IN THIS SETTLEMENT.

## A. The Intervenors.

Intervenors Lewis Hyde, Harry Lewis, Nicholas Negroponte and Charles Nesson ("Intervenors") are authors who claim that their interests (and those of the public) are not being adequately represented by the settling parties.

Lewis Hyde is the Richard L. Thomas Professor of Creative Writing at Kenyon College and was formerly director of the creative-writing program at Harvard University. The University of Michigan library lists eight books authored by Professor Hyde that were presumably digitized by Google in the course of their creation of Google Book Search.  These include *The Gift* (Random House, 1983), *This Error is the Sign of Love* (Milkweed Editions, 1988), and *Trickster Makes this World* (Farrar, Straus, 1998).

Harry Lewis is the Gordon McKay Professor of Computer Science at Harvard University and was formerly Dean of Harvard College. He is the author of *Excellence Without a Soul: How a Great University Forgot Education* (Public Affairs, 2006) and, co-author with Hal Abelson and Ken

1

Ledeen of *Blown to Bits: Your Life, Liberty, and Happiness After the Digital Explosion* (Addison-Wesley, 2008).

Nicholas Negroponte is a Professor of Media Technology at MIT, the founder and Chairman Emeritus of the MIT Media Laboratory, and a founder of both *Wired Magazine* and the One Laptop Per Child Association. He is the author of *Being Digital* (Vintage Books, 1995).

Charles Nesson, is the William F. Weld Professor of Law at Harvard University, the founder of the Berkman Center for Internet & Society at Harvard, and co-author with Eric Green and Peter Murray of *Evidence*, (Aspen, 2000). He is a colleague of Nicholas Negroponte in projecting education in the public domain to developing worlds through one-lap-top-per-child, of Lewis Hyde in projecting the philosophy and understanding of *The Gift* as a basis for sharing economy, and of Harry Lewis in projecting the ideals of Harvard in a networked world.

## B. **The Issue**.

Professors Hyde, Lewis, Negroponte and Nesson[1] claim the right to intervene under Rule 24 on the ground that

---

[1] Intervenors are acting in their individual capacities, not as representatives of any center of university.

neither the Authors Guild nor those designated as
representatives of the author sub-class adequately
represent them, either as authors or readers, or users of
libraries, or researchers and scholars who rely in
substantial part upon books and information fairly and
currently available in the public domain. This lawsuit will
affect the public domain and access to the store of
knowledge for generations to come.[2]  It should not be
adjudicated upon the assumption that authors (and
publishers) are rights holders interested only in
maximizing their private gain. Intervenors are authors, but
are also cultural citizens; their copyrights matter to
them, but so do larger questions of how literature and
knowledge circulate among them and among us all.

The interest of Intervenors, contrary to the stated
interest of the Authors Guild, is in negotiating a
settlement that does not unduly restrict the right of the
public to read and use their works or the works of others.
In this proposed settlement, the Authors Guild has acted

---

[2]  " Exploiting an opportunity made possible by lawsuits brought by a
small number of plaintiffs on one narrow issue, Google has negotiated a
settlement agreement designed to give it a compulsory license to all
books in copyright throughout the world forever. This settlement will
transform the future of the book industry and of public access to the
cultural heritage of mankind embodied in books." Pam Samuelson, The
Audacity     of     the     Google     Book     Search     Settlement,
<http://www.huffingtonpost.com/pamela-samuelson/the-audacity-of-the-
googl_b_255490.html>.

solely to maximize the amount of money paid to its members;
it has failed to represent authors who support a creative
commons, and thus has injured the public domain and limited
the rights of its users.

The Intervenors seek a fair balance between pecuniary
return to authors and artists and access to knowledge for
all. Intervenors seek to preserve the reading public's
right of fair use in the coming digital age. [3]

### C. **The Origins of This Lawsuit**.

Google Books is Google's project to scan and make
searchable and viewable at *books.google.com* every book in
the world.  In 2002, Google began developing technology
necessary to scan books from libraries around the world and
make their full text searchable through Google. Google then
negotiated with a series of libraries to gain access to the
books in their collections to use as the raw material for
its futuristic digital library.  By 2004, Google had
obtained agreements to digitize materials from the Bodleian
Library, the New York Public Library, the Library of
Congress, and the university libraries of Harvard,

---

[3] Both the class certification and the proposed settlement are
constructed such that "opting out" would neither further nor represent
this interest.

4

Stanford, and Michigan.  It proceeded to digitize the
collections of these libraries and has made the results
available on an ongoing basis at *books.google.com.*

On September 20, 2005, the Authors Guild and three
individual authors filed a class action against Google
alleging that Google Books constitutes copyright
infringement on a massive scale because Google did not
obtain permission from the owners of copyright in the books
it digitized before scanning those works and making them
available.  On October 19, 2005, a group of publishers
including The McGraw-Hill Companies, Pearson Education
Inc., Penguin Group (USA) Inc., Simon & Schuster Inc., and
John Wiley & Sons followed suit and sued Google for
copyright infringement on the same theory.  Google filed
answers in both cases defending on, among other grounds,
the ground of fair use.

### D. **The Proposed Settlement**.

Over the next three years, Google, the Authors Guild,
and the Association of American Publishers (which was
officially joined as a plaintiff in 2008) negotiated the
proposed settlement that is now before this Court.  The
settling parties negotiated this settlement among
themselves, in secret, and without any representative of

5

either the public domain or of readers.  None of the
Intervenors had any opportunity to observe the ongoing
negotiations or any partial or tentative drafts reached by
the parties along the way.

The settling parties state that the proposed settlement
was reached only after "two years of vigorous, hard fought,
multi-party negotiations by experienced counsel on all
sides." This is not true. Neither readers nor the public
interest were represented and their interest is being
compromised. As a result, the proposed settlement cuts a
deal that is profitable for the settling authors and
publishers and that gives Google a monopoly that it could
not obtain except by class-action settlement, but that
shortchanges the public domain and those, like Intervenors,
who contribute to and use it.

## II. INTERVENORS' OBJECTIONS.

Intervenors object to the proposed settlement on three
grounds:

    A. **The settling parties are proposing to charge the
public royalties for the use of orphaned works
that do not belong to them, and to convert the
proceeds from such charges to their own use.**

The proposed settlement can only be achieved by the Court's taking an extraordinary action: granting Google a license of rights to exploit "orphan works"[4] when the rights required for the license are held by none of the settling parties. Such a license will adversely impact crucial public interests.

### 1.   The settling parties have no legitimate claim to these revenues.

Because the owners of orphaned works are, by definition, unavailable, this Court must decide who is entitled to money that orphaned works generate.   The Settling Parties ask the court to approve a settlement assigning this money to them (6.3(a)(i)). But neither Google nor the participating authors and publishers owns or has any claim at all to the orphaned works.   The settling authors and publishers are the owners of other copyrights, not the copyrights in orphaned works.   Allowing them to claim the money would be like allowing the owner of a piece

---

[4] Orphan works  are an important subclass of copyrighted works that are created  by the long term of copyright and the fact that copyright registration is optional.  As a result, the copyright holder for many works cannot be found: the owner has died (without heirs or successors of known whereabouts), disappeared, has no interest in the work, or otherwise has abandoned active interest in the copyright.

of land to rent out his absent neighbor's property and pocket the proceeds.[5]

That the settlement proposes to distribute leftover revenues, <u>if any</u> (after the parties and their Book Rights Registry first take their shares and expenses), to charitable purposes (chosen by them alone) does nothing to establish their right to these proceeds.  And, nothing in the proposed settlement requires the charitable purpose be to benefit users of the public domain.  See 6.3(a)

### 2.   Users of the Public Domain are Entitled To The Revenue Generated By Orphaned Works.

The claim by users of the public domain to the windfall wealth that the Internet has created for orphaned works arises because, pursuant to the constitutional copyright

---

[5] Under the proposed settlement, Google would share the revenue that it generates from its use of copyrighted books (whether the copyright holder is known or not) with those authors and publishers who join the proposed settlement as follows: (1) Google takes 10% of gross revenue off the top, see Ex. E (Settlement Agreement) §§ 2.1(a), 4.5(a); (2) Google then pays 70% of the remaining 90% to the Book Rights Registry, an entity created by the settling parties, and keeps the other 30% for itself, see id.; (3) the Registry subtracts its own operating expenses from this amount, see Ex. F (Plan of Allocation) § 4.2; and (4) then distributes the remaining money as appropriate to those authors and publishers who have registered with the Registry, see Ex. F §§ 1-2.

For the unclaimed revenues attributable to orphaned works: (1) Google takes 10% off the top; (2) the Registry pays its expenses (for all works, not just orphaned works) in full; (3) the settling authors and publishers then take money up to the 10% of gross revenue on their works that Google took off the top under §§ 2.1(a) and 4.5(a) (step (1) in the calculation described in the last paragraph); and (4) the remaining money, if any, goes to charities chosen by the Registry and Google.  See Ex. E § 6.3.

bargain, the public domain is both the next and the
ultimate beneficiary of the work.  When the exclusive
rights of a copyright owner expire, the work passes,
without exception, into the public domain. As a 1988 House
of Representatives Report stated clearly:

> Under the U.S. Constitution, the primary objective
> of copyright law is not to reward the author, but
> rather to secure for the public the benefits derived
> from the author's labors.  By giving authors an
> incentive to create, the public benefits in two
> ways:  when the original expression is created
> and...when the limited term... expires and the
> creation is added to the public domain.

H.R. Rep. No. 100-609 at 17.

In no instance are third parties meant to benefit, as the
settlement would allow.  The initial beneficiary of a
copyright grant is the author; the ultimate beneficiary is
the public domain.

The situation before the Court of a copyright owner
unavailable to receive revenues from exploitation of the
work during the period of copyright is, thus, directly
analogous to that of a trust providing that the income
beneficiary receive the income from the trust corpus for a
time and then (upon a death or other event) the corpus
passes to a final successor beneficiary. See generally,
Restatement of the Law, Second, Trusts, § 232. Should the

9

income beneficiary die or otherwise disappear, the income produced should follow the corpus to benefit the successor. The public domain is this successor beneficiary.  Authors or their representatives, who had no hand or mind in creating the orphan works, and Google (beyond a distribution fee) have no legitimate claim to these revenues.

The Settlement proposes to capture income from "orphan works." The settling parties are proposing to charge the public royalties for the use of orphaned works which do not belong to them, and to convert the proceeds from such charges to their own use. Nothing in the history of copyright law, or in the law as currently written, countenances such a taking. If, in fact, orphan works are to be included in this settlement, then the proceeds should go to a fund for the public domain.

**B. The Settling Parties are proposing an agreement that restrains trade in digitized books by establishing a substantial monopoly on all out-of-print books and a total monopoly on the subset of out-of print books that are orphan works.**

Intervenors object to the monopoly powers that Google and the Books Rights Registry will acquire vis-a-vis orphan works. This settlement establishes a substantial monopoly for Google on all out-of-print books and a total monopoly

10

on the subset of out-of-print books which are "orphan works".  Google will obtain a compulsory license enabling them to exploit the commercial value of these works by exempting them from paying for the use of them.  Because of the unique nature of class action litigation, it will be virtually impossible for any other digital library or search service to receive such an exemption.

The proposed settlement gives Google a monopoly in online display and distribution of copyrighted works that it could not have obtained except by class-action settlement, and that no competitor can match.  The proposed settlement will seal Google's position at the top of the market in online display and distribution of copyrighted works because Google will be the only market participant with access to a global license for copyrighted works, both owned and orphaned.  Such a monopoly will stifle the rights of authors (those who "sell" to the digital library) and users (those who "buy" from it) — the authors and users represented by the Intervenors.

The proposed settlement would establish a total monopoly in Google to distribute out-of-print orphaned works. It accomplishes this, first and foremost, with a built-in, Court approved license to distribute orphan works. If the settlement is approved as proposed, Google will have the

11

only complete set of licenses to distribute copyrighted
works, including orphaned works, in the world. The only way
for those other than Google to obtain similar licenses will
be through class-action litigation like this.  Because,
absent the license this settlement would create, the legal
status of orphaned works is unclear, Google will be the
only entity in the world that can distribute orphaned works
with confidence about the legal consequences of doing so.
Google will thus have a monopoly in orphaned works. In the
absence of competition, the public will inevitably pay for
this monopoly.

> C.  **The Settling Parties are Proposing to Establish a
>     Copyright Registry Board of Directors with No
>     Mandated Representation on the Public Interest
>     in Fair Use.**

The settlement proposes administration by a "Board of
Directors of the Book Rights Registry."

> *"The Registry will have equal representation of the
> Author Sub-Class and the Publisher Sub-Class on its
> Board of Directors, with each act of the Board
> requiring a majority of the directors, with such
> majority including at least one director who is a
> representative of the Author Sub-Class and one
> director who is a representative of the Publisher Sub-
> Class."* (Proposed Settlement Agreement 6(b))

This provision gives responsibility for the administration
of the digital rights to all copyrighted books solely to
those who want to divide the wealth to be gained therefrom.

12

Intervenors object that there will be no representatives of libraries, scholars, researchers or of the public as members of this board of directors. The Registry promises to be an important player in the nation's cultural environment; if it is called into existence, its directors must represent the interests of non-paying fair users as well as the owners of proprietary content.

## III. INTERVENORS ARE ENTITLED TO INTERVENE UNDER RULE 24 BECAUSE THEY CLAIM FOR THEMSELVES AS UNREPRESENTED MEMBERS OF THE CLASS OF AUTHORS WHO SEEK PROTECTION FOR THE PUBLIC DOMAIN.

### A.    Standards for Intervention as of Right.

Intervenors claim the right to intervene under Rule 24(a)(2).[6] "In order to intervene as of right pursuant to Rule 24(a)(2), the applicant must: (1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the

---

[6] Rule 24 provides:

**(a) Intervention of Right.**  On timely motion, the court must permit anyone to intervene who: . . .

**(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

action; and (4) show that its interest is not adequately protected by the parties to the action." *In re Holocaust Victim Assets Litigation*, 225 F.3d 191, 197 (2d Cir. 2000).

## B.   **Intervenors' Motion is Timely.**

This intervention is timely.  Although "[t]imeliness defies precise definition," courts generally consider four factors in determining whether a motion to intervene is timely: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994); *see also United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987); *In re Holocaust Victim Assets Litigation*, 225 F.3d at 198.  Each of these factors supports the timeliness of this motion to intervene.

> ### 1.   **Intervenors gave notice of their intention to intervene within three months of receiving notice of the proposed settlement.**

Because the negotiations that resulted in the proposed settlement were conducted in secret, Intervenors did not learn of the settling parties' proposals to constrain public rights of access and fair use, to charge for works

they do not own, to divide among themselves the revenue that orphaned works will generate, and to create anticompetitive advantages in the digital distribution of out-of-print works, until the terms of their proposed settlement were announced. Although the settling parties state that class notice was mailed on January 5, 2009. many authors did not receive notice until much later. Lewis Hyde, for example, received notice by mail dated February 20. Intervenors' letter requesting a pre-motion conference, sent on April 8, 2009, (Ex. A), was timely. *See, e.g., Hartford Fire Insurance Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) (three months); *Cohen v. Republic of the Philippines*, 146 F.R.D. 90, 91 (S.D.N.Y. 1993) (five months). *Cf. Pitney Bowes*, 25 F.3d at 70-71 (intervention years after notice); *United States v. New York*, 820 F.2d at 557 (intervention 15 months after notice; collecting authorities for late intervention including seven-and-one-half months, one year, and three years).

### 2. There is no prejudice to Plaintiffs.

Cases in which the Second Circuit has found a proposed intervention prejudicial because of its potential to disrupt a negotiated settlement have all been cases in which the proposed intervenor could have learned of and asserted its interest much earlier. *See In re Holocaust*

15

*Victims Assets Litigation*, 225 F.3d at 198-99 (intervention sought eight months after settlement announced and after one year of public negotiations); *Pitney Bowes*, 25 F.3d at 72 (intervention sought fifteen months after agreed consent decree announced and after 8 months of public negotiations); *Farmland Dairies v. Commissioner of New York State Department of Agriculture and Markets*, 847 F.2d 1038, 1044 (2d Cir. 1988) (proposed intervenor failed to participate in pre-settlement negotiations even though it had participated in many similar negotiations earlier). There was no delay here. *Compare, Catanzano ex rel. Catanzano v. Wing*, 103 F.3d 223, 233 (2d Cir. 1996) (finding the issue complained of by the proposed intervenor "was clearly present in the litigation from the very beginning").

### 3. Intervenors and the public interest they represent will be prejudiced if intervention is denied.

A claim to property that will be disposed of in the underlying case is the paradigmatic situation justifying intervention as of right. *See* Fed. R. Civ. Proc. 24(a)(2) ("the court must permit anyone to intervene who . . . claims an interest relating to the property . . . that is the subject of the action"); *Counihan v. Allstate Ins. Co.*, 907 F. Supp. 54, 56 (E.D.N.Y. 1995) (government entitled to

intervene based on claim to constructive trust on property that was subject of underlying suit).

Intervenors and all public-spirited authors and public readers will be prejudiced by the Settlement because of the constraints on it places on access to and fair use of the corpus of public knowledge. Intervenors cannot protect the public claim to the revenue that orphaned works will generate through a separate suit because the class-action settlement in this case will, if approved, vest the right to this revenue in Google and the settling parties.  This case is therefore unlike *In re Holocaust Victim Assets Litigation*, in which the Court held that the prospective intervenors suffered no prejudice because they could file a separate suit against the defendant asserting their own claims.  *See* 225 F.3d at 199.

### 4. The unusual legal complexity, constitutional significance, practical importance, and unprecedented scope of the proposed settlement in this case militate in favor of a finding of timeliness.

The final factor in assessing timeliness is a catchall intended for unusual cases like this in which special circumstances make permitting intervention particularly appropriate. The practical importance and scope of the

proposed settlement in this case make it one of the most important cases in the history of the federal courts.

In determining whether the proposed settlement should be approved under Rule 23, this Court must decide whether it is entirely fair.  This Court is best equipped to make this determination through an adversarial presentation of issues.  But no present party represents the interests of authors who seek balance with the public domain rather than every last dollar, and no present party represents the public domain.

### C.   Intervenors' Interest is Not Adequately Protected by the Existing Parties.

The "minimal burden required for a showing that representation by the existing parties may be inadequate," *LaRouche v. Federal Bureau of Investigation*, 677 F.2d 256, 258 (2d Cir. 1982), is satisfied here, where Intervenors take issue not with the parties' zeal or choice of strategy, but with their interest in obtaining money and control for themselves.  *See Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.").

**VI.  THIS COURT WRONGFULLY DEEMED INTERVENORS' LETTER
      REQUESTING A PRE-MOTION CONFERENCE TO BE THEIR MOTION
      AND, HAVING DONE SO, IMPROPERLY DEDIED THE MOTION.**

Intervenors are entitled to file this motion and have
this Court rule on its merits notwithstanding Judge Chin'
Individual Practice 2(A). Intervenors file this motion
after having first attempted to comply with Judge Chin's
Individual Practice 2(A).  Individual Practice 2(A)
requires that parties, before filing any non-discovery
motion in a civil case, send a letter to Judge Chin's
chambers requesting a pre-motion conference and describing
the anticipated motion.  Judge Chin's Individual Practice
2(A) prohibits any party from filing a motion without first
seeking a pre-motion conference. *See, e.g., Martin v. City
of New York*, No. 07-cv-3784, 2008 WL 1826483 at *1
(S.D.N.Y.) (Chin, J.) (describing order after pre-motion
conference as granting "permission to file a motion").

Intervenors letter of April 8, 2009 (Ex. A) requesting
a pre-motion set forth the basis for intervention as of
right under Rule 24, submitted the letter by fax to Judge
Chin's chambers with a copy to all counsel of record, and
otherwise complied with Individual Practice 2(A).

On April 24, this Court entered an order (1) grouping
Intervenors' letter with a letter from the Internet Archive
seeking a pre-motion conference on its own motion to

intervene[7] and (2) deeming the letters to be motions for
leave to intervene and denying these motions.  *See* Ex. B.
The Court's April 24 order offers no analysis of the
grounds stated in either letter or the differences between
these grounds.  It simply denies intervention: "I have
construed their letters as motions to intervene, and the
motions are denied."  Ex. B.

It was improper and prejudicial to deem Intervenors'
letter requesting a pre-motion conference to be the motion
itself.  A letter seeking a pre-motion conference is not a
motion.  It is not filed, but only sent to chambers, and
hence does not form part of the clerk's record, *see*
Individual Practice 1(A); it is limited to three pages
without supporting exhibits, *see* Individual Practice 2(A);
it sets forth the basis for an *anticipated* motion, *see id.*;
it is the precursor to a *pre-motion* conference, *see id.*;
and it is governed by rules separate from those governing
the filing of motion papers, *compare id. with* Individual
Practices 2(B)–(E).  Because this Court erred by deeming
Intervenors' letter to be their motion, it should set aside
its April 24 order and proceed to consider this motion on
its merits.

---

[7] The Internet Archive is an online library that sought intervention in
this case to object to the proposed settlement as a competing library.
*See* Ex. D (letter from Internet Archive seeking pre-motion conference).

Even when this Court has expressed doubt about the
merits of a motion at a pre-motion conference, it has
permitted the movant to file its motion and thereby present
its argument in full, place the motion and briefing in the
record to preserve appellate review, and obtain a formal
ruling on the motion so briefed. *See, e.g., The United
States Russia Investment Fund v. Neal & Co.*, No. 97-cv-
1788, 1998 W 669770 at *2 (S.D.N.Y.) (Chin, J.); *Safeco
Ins. Co. of Am. v. Discovery Prop. & Cas. Ins. Co.*, No. 05-
cv-8625, 2008 WL 318314 at *3 (S.D.N.Y.) (Chin, J.) ("While
Safeco should have requested a pre-motion conference, its
failure to do so is not in itself a basis for denying leave
to amend."); *Johnson v. National Football League*, No. 99-
cv-8582, 1999 WL 892938 at *1 n.1 (S.D.N.Y.) (Chin, J.)
(noting failure to seek pre-motion conference but
proceeding to rule on the merits of motion).

The right to present argument on motions permitted by
the Federal Rules of Civil Procedure is fundamental. It is
of the essence of a court that it permit submission of
reasoned argument and consider such submissions on their
merits, ultimately giving reasons of its own for its
decisions. For this Court to refuse to permit the filing of
this motion and to refuse to consider its merits would be a
denial of Intervenors' fundamental right to present

21

argument to this Court, and a violation of the Due Process Clause of the United States Constitution, *Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000); *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987).


## VII. CONCLUSION and NOTICE OF OBJECTIONS

For the foregoing reasons and under the authority of Rule 24, Intervenors respectfully claim their right to intervene as of right. Additionally, Intervenors give notice of their intention to appear and speak at the October 7, 2009 fairness hearing.

> Respectfully submitted on behalf of
> Lewis Hyde, Harry Lewis, Nicholas
> Negroponte, by their counsel,[8]
>
> Charles R. Nesson
> 1575 Massachusetts Avenue
> Cambridge, Massachusetts   02138
> 617-495-4609
> nesson@law.harvard.edu
>
> K.A.D. Camara
> Camara & Sibley LLP
> 2339 University Boulevard
> Houston, Texas   77005
> 713-893-7973
> 713-583-1131 (fax)

---

[8] Thanks to Fern L. Nesson, Esq., and Eric Saltzman, Esq., for editorial contributions.

camara@camarasibley.com

Martin Garbus
Eaton & Van Winkle LLP
3 Park Avenue, 16th Floor
New York, New York 10016
Direct Dial:  (212) 561-3625
Main Line:  (212) 779-9910
Fax:  (212) 779-9928
Email:  mgarbus@evw.com

Dated: September 8, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2009, I caused this Motion to Intervene to be served by CM/ECF on counsel of record as follows:

Joseph M. Beck
Alex Seth Fonoroff
Ronald Lee Raider
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309

Michael J. Boni
J. Kate Reznick
Joanne E. Zack
Boni & Zack LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004

Adam Howard Charnes
Kilpatrick Stockton LLP
1001 West Fourth Street
Winston-Salem, NC 27101

Sanford P. Dumain
Milberg LLP
One Pennsylvania Place
New York, NY 10119

Jeffrey A. Conciatori
Quinn Emanuel Urquhart Oliver & Hedges LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

Daralyn Jeannine Durie
Joseph C. Gratz
Duri Tangri Lemley Roberts & Kent LLP
332 Pine Street, Suite 200
San Francisco, CA 94104

Laura Helen Gundersheim
Bernstein Litowitz Berger & Grossman LLP
1285 Avenue of the Americas
New York, NY 10019

Bruce P. Keller
Debevoise & Plimpton LLP
919 Third Avenue, 31st Floor
New York, NY 10022

Hadley Perkins Roeltgen
Kohn, Swift & Graf PC
One South Broad Street, Suite 2100
Philadelphia, PA 19107

Daniel Joseph Kornstein
Mikaela Ann McDermott
Kornstein Veisz Wexler & Pollard LLP
757 Third Avenue
New York, NY 10017

_Charles R. Nesson / jo_
Charles Nesson

**EXHIBIT A**

# CAMARA & SIBLEY LLP

2339 UNIVERSITY BLVD, HOUSTON, TEXAS 77005
T: 713-893-7973 - F: 713-583-1131
WWW.CAMARASIBLEY.COM

K.A.D. CAMARA
JOE SIBLEY

TIMOTHY NYBERG

K.A.D. CAMARA
CAMARA@CAMARASIBLEY.COM

April 13, 2009

The Honorable Denny Chin
United States District Judge
U.S. Courthouse, 300 Pearl Street
New York, NY 10007–1312

      RE:    Case No. 05-cv-8136-DC, *The Authors Guild Inc. et al. v. Google Inc.*

Dear Judge Chin:

Pursuant to your Individual Practice 2(A), we write to request a pre-motion conference in *Authors Guild v. Google*. We seek to file a motion for leave to intervene on behalf of Lewis Hyde, Harry Lewis, and Open Access Trust Inc., a Massachusetts nonprofit corporation dedicated to promoting access to knowledge, worldwide.

We also seek to file motions for our counsel, K.A.D. Camara of Camara & Sibley LLP and Charles Nesson of Harvard Law School to appear *pro hac vice* in association with Nathan Z. Dershowitz, a member of the bar of this Court.

Lewis Hyde, Harry Lewis, and the Open Access Trust represent the community of readers, scholars, and teachers who use orphaned works. Orphaned works are works under copyright, but with a copyright holder who has died, cannot be found, or otherwise has abandoned his work. In the status quo, users like us and commercial users like Google can and do use orphaned works, although we do so against a backdrop of potential legal liability should the owner of an orphaned work later emerge.

The parties in this case propose to change this status quo by clarifying that the use of orphaned works is, indeed, actionable copyright infringement; vesting in Google a monopoly in the lawful use of orphaned works; and dividing between themselves the proceeds of this monopoly. The Authors and Publishers, with Google's consent, purport to represent a class of copyright holders that includes the owners of orphaned works, even though neither the Authors nor the Publishers are such owners. Having turned the Authors and Publishers into legal representatives of the owners of orphaned works, Google will buy from these representatives a global license.

The proposed settlement will make Google the only company in the world with a license to use orphaned works. No other company will be able to buy a similar license because, outside the context of the proposed class-action settlement in this case, there is no one from whom to buy such a license. The Authors and Publishers join in this scheme because Google proposes to

CAMARA & SIBLEY LLP

divide with them, pursuant to the proposed settlement agreement, the revenue that the orphaned works will generate. The settling parties plot a cartel in orphaned works.

We seek intervention to defend our interest in orphaned works — to defend the public domain's claim to free, fair use. The purpose of copyright is to promote authorship and learning. Copyright does this by giving authors exclusive rights for limited times so that authors can profit from their writing by selling licenses to others. This mechanism breaks down in the case of orphaned works because, with respect to these works, there is no one from whom to buy a license. The public can buy no license; the author can reap no reward. Because exclusive rights in orphaned works do not serve the ultimate purpose of copyright, the public domain has a claim to free, fair use of orphaned works.

We have the right to intervene to present the public domain's claim to free, fair use of orphaned works. None of the present parties will present our claim. It is inconsistent with the settlement they propose. If the use of orphaned works is free and fair, then there is no exclusive license to give Google and no claim on the part of Google, the Authors, and the Publishers to the proceeds of that exclusive license. We must press our claim in this case because it is only in this case that there is a party that purports to represent the owners of orphaned works with whom we, like Google, can negotiate. Our interest in orphaned works, put in jeopardy by the proposed settlement and adverse to the interests of the settling parties, gives us the right to intervene under Rule 24.

Our request to intervene is timely. It comes shortly after the terms of the proposed settlement became public and made our interest concrete. And it comes well before the June 11, 2009, fairness hearing on approval of the settlement. The settling parties claim that class notice was mailed on January 5, although many authors did not receive notice until much later. Lewis Hyde, for example, received notice by mail dated February 20. Our intervention comes, at most, three months after notice.

We believe that the proposed settlement worked out by Google, the Authors, and the Publishers is a landmark achievement and an historic event. But the settlement currently proposed cannot be approved because it does not respect the interest of the public domain in the free, fair use of orphaned works or the revenue that these works will generate — nor was it arrived at through a process in which that interest was represented. We think that this case and the constitutional issues of national moment that it presents will be better resolved if the public domain has a seat at the table.

Lewis Hyde is Richard L. Thomas Professor of Creative Writing at Kenyon College and was formerly director of the creative-writing program at Harvard University. Harry Lewis is Gordon McKay Professor of Computer Science at Harvard University and was formerly Dean of Harvard College. Open Access Trust Inc. is a Massachusetts charitable corporation dedicated to the creation, encouragement, and maintenance of institutions that serve the goal of open access to knowledge, worldwide.

CAMARA & SIBLEY LLP

We respectfully request leave to file our motion to intervene and motions for leave for our counsel, K.A.D. Camara and Charles R. Nesson, to appear *pro hac vice*, in association with Nathan Z. Dershowitz, a member of the bar of this Court.

Respectfully submitted,

K.A.D. Camara
Camara & Sibley LLP

Charles R. Nesson
for internet & society

Nathan Z. Dershowitz
Dershowitz, Eiger & Adelson PC

3

**EXHIBIT B**



## FACSIMILE TRANSMISSION FROM:

### DENNY CHIN
United States District Judge

Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1020
New York, New York 10007-1312

Telephone: (212) 805-0200                          Facsimile: (212) 805-7906

DATE:                                       TIME:

      4/24/09                              11:22 AM

TO:      Hadrian R. Katz

FIRM:     Arnold & Porter LLP

FAX NO.:   (202) 942-5999

MESSAGE:   ** YOU ARE REQUIRED TO FAX COPIES OF THE ATTACHED
               DOCUMENT TO ALL COUNSEL OF RECORD IN THIS CASE **

Number of Pages (including this cover page):   2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

THE AUTHORS GUILD et al.,                    :

              Plaintiffs,    :

      - against -                    :            **ORDER**

GOOGLE, INC.,                                :            05 Civ. 7384 (DC)

             Defendant.    :

- - - - - - - - - - - - - - - - -x

**CHIN, District Judge**

        The Court has received requests for pre-motion
conferences by the Internet Archive, Lewis Hyde, Harry Lewis, and
the Open Access Trust, Inc. (the "proposed interveners"), seeking
leave to intervene in this action.  I have construed their
letters as motions to intervene, and the motions are denied.  The
proposed interveners are, however, free to file objections to the
proposed settlement or amicus briefs, either of which must be
filed by the May 5, 2009 objection deadline.

        SO ORDERED.

Dated:    New York, New York
        April 24, 2009

                              DENNY CHIN
                              United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4-24-09