# *lira*



Office of the Clerk
J. Michael McMahon
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007
UNITED STATES OF AMERICA

STICHTING LIRA
Siriusdreef 22–28
2132 WT Hoofddorp
Postbus 3060
2130 KB Hoofddorp
Nederland
www.lira.nl

CC: per e-mail: Michael J. Boni: bookclaims@bonizack.com
CC: per e-mail: Jeffrey P. Cunard bookclaims@debevoise.com
CC: per e-mail: Daralyn J. Durie: bookclaims@kvn.com

Hoofddorp, 31 August 2009

Dear Mr. Michael McMahon,

We, the Foundation of Dutch Authors, Stichting Lira, hereinafter: Lira, are writing to you with regard to the proposed Settlement Agreement between Google Inc., and the Authors Guild and the Association of American Publishers. Lira has decided to join the Settlement and to file claims with regard to the one-time- Cash Payments, only on behalf of our rightsholders who have mandated Lira thereto (hereinafter: member-authors). In relation to future "Display Use" under the Settlement, Lira is still surveying and evaluating which Lira member-authors are interested in giving consent to Google with regard to (future) Display Use under the Settlement.

Lira, founded in 1986, is the Dutch authors' organisation for authors and translators (hereinafter: authors). Lira, through its member-authors, represents, exploits and enforces the (copy)rights to all literary and literary-dramatic works of these member-authors resident in or citizens of the Netherlands. More information about the mandate and power of attorney authors have granted to Lira, can be found on www.lira.nl, or can be obtained from Lira or Michael J. Boni.

Lira would like to raise the following concerns and objections to this Settlement.

- **Consequences for European rightsholders**
  First of all, Lira would like to express concerns about the fact that it appears to be possible for American parties to propose a settlement in the United States (US), that also has consequences for European rightsholders, who weren't involved at all in the Settlement with Google, and who have exclusive rights on their works. According to European Copyright Law it is not allowed to digitize copyright protected works and make these available to the public without the explicit consent of the rightsholders. If a party wants to use a copyright protected work, it may contact the author/rightsholder and try to conclude a licensing agreement (opt-in). The current proposal for the Settlement seems to turn the world upside down, as Google may make use of copyright protected works from all over the world (available in American libraries) without the prior consent of

ING: 65.98.04.972

*lira*

rightsholders, as long as these rightsholders do not opt-out of the Settlement or remove works from the Google database. Lira would very much like to contribute to a broad offer of digital content and is willing to cooperate with other parties if necessary, but always on the conditions proposed by the rightsholders and with respect for their copyright.

- **Legal insecurity and uncertainty**
Lira's main concern is that the Settlement does not clarify how many books (the total number of titles) fall under the scope of the Settlement. At first, Lira was under the impression that just the books digitized by Google before or on May the 5th 2009 (the date of opt out), fell under the scope of the Settlement, in the sense that Google could just make Display Use of only these titels that were digitized before or on May the 5th 2009. This supposition was based on Section 3.1 sub b, sub i of the Settlement:
"*List of digitized Books and Government works: as of the Notice commencement date (…) Google will provide (…) Plaintiffs (…) with a list of the Books (...) Google has digitized as of the Notice Commmencement Date and the date each Book, Public Domain Book with a copyright date after 1922 and Government Work was Digitized by Google, and a separate list of all Books (...) that Google reasonable anticipates it will Digitize on or before the Opt-Out Deadline (…). Further, as soon as practicable, Google will provide Plaintiffs, in a form mutually agreed, with a final list of all Books, Public Domain Books with a copyright date after 1922 and Government Works that Google Digitized on or before the Opt-Out Deadline.*"
Contrary to Section 3.1 sub b, sub ii of the Settlement, Section 3.1 sub b, sub i of the Settlement does not provide in a link between the (final) list and the Cash Payments (other Settlement Benefits, section 5.1 of the Settlement). Therefore Lira assumed that the (final) list of books provided by Google under Section 3.1 sub b, sub i, was the same list of books that was tagged for "Display Use" under the Settlement (Display Use in the meaning of section 3.3 of the Settlement). Instead, Michael J. Boni informed Lira in a letter dated June the 19th 2009 that: "*When Google does begin to display books under the Settlement, it will display not only those books that were digitized as of May 5, 2009, but will have the right to display all "Books" covered by the Settlement that <u>are digitized at any time</u> (…) As explained above, Google is <u>continuing to digitize books after May 5, 2009</u>, and <u>will continue to do so</u> unless a Rightsholder tells Google not to digitize a book or to remove a book that has already been digitized (…) Also, Google's database is not complete (...)*".
In our view, this is not in line with the obligation of Google to publish a final list as stated in Section 3.1 sub b, sub i of the Settlement.
In practice, the total number of books that may be displayed by Google under the Settlement is not fixed, nor by number, nor by date. Consequently, Lira and rightsholders are "forced" to check on a daily basis whether Google might have digitized their books. Meanwhile, Google is allowed to display these titles ("Display Use" according to the Settlement). First of all, this system is not in line with the Dutch Copyrigh Act, according to which rightsholders must give prior consent before third parties may use their works. Secondly, the system mentionded above - as set out by Michael J. Boni – causes much

# lira

legal insecurity for rightsholders. Works by Lira's member-authors may be used and displayed by Google from the moment these works appear in the list or database of digitized works, but member-authors may not know of this use by Google, because the list of digitized works (the database as published on www.googlebookssettlement.com) is variable and is not fixed by date, nor by number of titles.

It would be recommendable - and in Lira's opinion: Google would need - to change the Settlement in such a way that Google will be obliged to publish (periodically) a fixed list of digitized works, which is not variable for a certain period (for example: 3 months) of time. During this period Display Use would not be permitted. As a result, rightsholders would have a reasonable time  - as for books digitized <u>after</u> May the 5th 2009 - to check whether their books are digitized and to remove their books or not, before Google is allowed to display these titles.

A further point is that the database gives rightsholders no certainty about the digitization status of a book. If a book has not been digitized on or before May the 5th 2009, the claim form does not give any certainty about whether it will or might be digitized by Google or not.

- **Assessment of commercial availability**
  According to section 1.28 of the proposed agreement Google will initially classify a book as 'commercially available' if Google determines that the rightsholder of this book, or the rightsholder's designated agent, is, at the time in question, offering the book for sale through one or more then-customary channels of trade in the United States.
  As a consequence of this very narrow definition, many European books are currently deemed commercially non-available (while they are still commercially available in Europe).The assessment of the commercial availability of a book is an essential element, since it is used to determine the default Display Uses under the Settlement.
  A commercially available book will be automatically removed from Display Uses while a commercially non-available book will require action from the rightsholder. Unless European rights holders change each and every individual classification, which will place an unjust and unnecessary administrative burden on them, many European books will be tagged as commercially non-available and Google will commercially be exploiting them as foreseen in the Settlement. As far as exclusive rights are concerned, rightsholders should be the ones to determine whether books are still commercially available or not. In practice this will not be the case, as wrong information in Google's database is very hard to change or cannot be changed at all by the rightsholders.

  In order to solve this profound concern, Google would at least need to change the definition from "US channels of trade" into simply "channels of trade". For further clarity, the Settlement agreement would also need to include that a book is commercially available if it is
  a) indicated as in print or as commercially available as printed book or in digital format in any information from reliable metadata providers in the US or elsewhere, and

*lira*

b) is available for sale to purchasers within the US or elsewhere, regardless of whether the rightsholder (or his/her designated agent (e.g. bookseller)) is located within or outside the US.

As mentioned before, the rightsholder should be enabled to change the commercially availability status.

- **Translators and Principal Works**
  According to section 5.1 sub a of the Settlement, "*only one Cash Payment will be made per Principal Work*". Principal works are defined in section 1.111 of the Settlement: "*Principal work means a Book's principal written work. (...). A Foreign language translation or an abridged version of a Principal Work is a different Principal Work*". In Attachment A to the Settlement Agreement, Article VI sub II, translators are not mentioned. It is not clear to Lira how the Cash Payments will be distributed between authors, translators and publishers. Will the translator of a Principal Work receive the full amount of U.S.$ 60, while the author of the originally translated work receives nothing? Lira raises the same concerns with regard to co-authors and co-translators of Principal Works. How will the distribution take place? Attachment A to the Settlement Agreement does not provide a distribution system for two or more authors/translators of a Principal Work.

- **Additional costs resulting from the proposed Google Settlement Agreement**
  Lira receives numerous indiviual questions from rightsholders (member-authors and non member-authors) with regard to the proposed Google Settlement Agreement. Lira made a significant amount of costs (extra personnel) to deal with all these questions raised by rightsholders, in addition to the costs of joining the Notification Programm (costs of the mailing to the member-authors). Further costs will have to be made for filing claims, and with regard to locating and collecting information from rightsholders with respect to the Google database and digitization status. Also, Lira will have to make additional costs as soon as the Author-Publisher procedure will come into force. According to the Settlement, Google will pay U.S.$ 34.5 milion to fund the launch and the initial operations of the Registry and to fund other administrative costs. The Registry will be responsible for locating and collecting information from rightsholders, identifying and co-ordinating payments to rightsholders, and otherwise representing the interests of rightsholders under the proposed Settlement. It is not clear to us if Lira – and other (associated) IFFRO-, European or (foreign) collecting rights societies for rightsholders - can claim additional administrative costs related to the additional work that results from the proposed Settlement and the unauthorised digitization by Google. In practice, collecting rights societies will do part of the work and business of the Registry, allowing the Registry to spend less time and costs in allocating the payments and collecting information from rightsholders. In Lira's view it would be reasonable if at least part of the additional administrative costs made by collecting rights societies for the identifying, allocation and

# lira

co-ordination of the payments to the rightsholders, would be funded by the Registry and if the Settlement would provide therein.

In the case that the Google Book Settlement should not be approved, Lira would also find it reasonable that we receive compensation to cover at least part of the expenses (e.g. costs for extra personnel) which have been made so far.

- **Attachment A, section IV of the proposed Google Settlement: Author-Controlled Determination**
  The "Author controlled" procedure *"shall apply in determining whether any Book for which the rights have not reverted to the Author (…) shall be classified as Author-Controlled"*. Lira raises the following concerns: "reversion" of rights implies an earlier transfer of rights from the Author to the Publisher. What if there was no assigment/transfer of rights to begin with and no reversion is required? Or what if there was just a limited licence given by the Author to the Publisher, for example a licence in which digital use is excluded? Will these situations be defined as "Author Controlled"? The Author-Controlled Determination should therefore - in Lira's view – be extended with descriptions of situations in which – to begin with  - the rights were not transferred by the Author to the Publisher. Furthermore, it is not clear to Lira if in this case section 6.2 sub (a) (Attachment A) or section 6.2 sub (c) (Attachment A) will apply. If the rights of the Author are not  - or have not been - transferred to the Publisher, but, for example, a limited licence was granted instead, will the Author then receive 100% of the revenues or will the Author receive 50% of the revenues and will section 6.2 sub (c) (Attachment A) apply?

- **Quality of the database**
  According to section 3.2 (d) (i) of the Settlement *"Google shall determine whether a Book is Commercially Available or not Commercially Available based on an analysis of multiple third-party databases as well as an analysis of the Book's retail availability based on information that is publicly available on the Internet. When analyzing the third-party databases, Google will use the publishing status, product availability and/or availability codes to determine whether or not the particular database being used considers that Book to be offered for sale new through one or more then-customary channels of trade in the United States"*.
  For the correct functioning of the system, it is critical which third-party databases Google will use to determine the commercial availability of a book. In the Settlement, therefore, Google should accept an obligation to use non-US, such as European, metadata providers and – if necessary -  to contact publishers and Authors /Author colllecting societies to ensure they possess the correct information of whether a book is commercially available in Europe or not. This should be undertaken prior to making any Display Uses. The handling of bibliographic and rights information in the database on the website of the Google Book Settlement involves many practical problems. It is therefore urgent that the quality and functioning of the database is improved, in order to enable rightsholders to make full use of it.

# lira

- **Lack of representation of non-US rightsholders in the Book Rights Registry (BRR)**
  Section 6.2 (b) of the Settlement establishes that the *"Registry will be organized on a basis that allows the Registry, among other things to (i) represent the interest of Rightsholders in connection with this Settlement Agreement…The Registry will have equal representation of the Author Sub-Class and the Publisher Sub-Class on its Board of Directors…"*

  The BRR will represent rightsholders world wide, negotiating on their behalf in very important matters, including terms of new revenue models. It is unfair that nothing in the Settlement ensures that non-US publishers and authors are represented in the Board of the BRR. Such a provision would be necessary in order to protect the interests of non-US copyright owners.

- **Deadline for making objections or opting out still too soon**
  Lira was pleased to hear that the deadline for making objections or opting out was postponed earlier this year. However, as European rightsholders were not represented in the negotiations, they should be allowed sufficient time to consider the possible consequences of the Settlement for themselves and to take a decision regarding the Settlement. Because of the objections mentioned in this letter, and also in view of the ongoing investigation by the European Commission of the effect of the Google Book Settlement Agreement on the European publishing sector, European authors, European consumers and society at large (a hearing of the European Commission will take place on 7 September 2009), the deadline for making objections or opting out is still too soon and should therefore be postponed.

We retain all rights we hold to all our works, presently and in the future.

Yours sincerely,

*[signature]*

Mr. Kees Holierhoek
Chairman Stichting Lira (Lira Foundation)
Siriusdreef 22-28
2132 WT Hoofddorp
The Netherlands

Postal address:
Postbus 3060
2130 KB Hoofddorp
The Netherlands