

**STANFORD COMPUTER SCIENCE**

Stanford University, Stanford, CA 94305         September 3, 2009

BY FAX (212) 805-7906

The Honorable Denny Chin
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-9-09
```

Re: The Authors Guild et al. v. Google, Inc. Case No. 1:05 cv 8136 (S.D.N.Y.)

Dear Judge Chin:

We, the undersigned, wish to submit this letter as an amicus curiae in support of the approval of the final settlement in the case referenced above.

We are computer science professors and research scientists and engineers. In our professional lives, we play several roles, as teachers, scientists, technology innovators and entrepreneurs, and authors. We wish to comment on the importance of the settlement, not only for our own scientific and academic communities but also for our culture and society.

We are of course only a microcosmic fraction of that culture. But because of our particular place at the crossroads of information technology, knowledge and education, we can perhaps see a horizon that other communities may not yet see. First, we offer our overarching view; next we offer comments specifically related to our various roles.

Much of mankind passes its culture from generation to generation primarily through its books. We strive for high rates of literacy and saturate our educational activities with books. A book is a manifestation of both content and technology. Over the centuries, there have been revolutions in the technology of books. Some of these are celebrated, like Gutenberg's printing inventions, and some pass almost unnoticed because we take them for granted, like the invention of the index to a book.

The generations alive today are fortunate to be witnessing an amazing revolution affecting the future of the book. The current revolution in electronic indexing, search and rapid access to content is as great and dramatic a revolution as was Gutenberg's. This revolution bears no single name, like "Gutenberg." As applied to books, the name "Google" is a temporary stand-in, since they arrived early at the revolutionary point. (Google was not the first there, nor will it be the last).

What is a revolution? We tell our students that they can recognize one by a change of a factor of ten in the important variable (and we give them the jargon "one order of

magnitude" or "one OM" to name this amount of change). For example, in the automobile revolution, driving is approximately one OM faster than walking. This change, one OM, changed the lives of most of our society. Here is another "one OM" example: the speed of modern airplanes vs the speed of driving. Once again, this changed the way we live and the way our society functions. Notice that there are only two OMs between walking and jetting cross-country.

The Gutenberg revolution, producing copies of books, was probably 3 or 4 OMs, and because of that it is a milestone in our cultural history. There is a point at which a big quantitative change turns into a big qualitative change.

The change that the "Google" revolution has brought to the speed with which we can find and get what we want to know from books (and other sources) is at least as great as the size of the Gutenberg revolution. What is delivered to the user in seconds and minutes would otherwise take hours, weeks, months, and might never be achievable by an individual except by visiting the Library of Congress or the other great libraries. The revolution is not only in speed but in location (it doesn't matter where you are) and in democratization of knowledge (it doesn't matter who you are).

In our roles as innovators in informational technology and occasional entrepreneurs, we were quite surprised at the audacity of the challenge that Google set itself to achieve: high-speed access to the content of ten million books. Audacity characterized the entrepreneurial spirit of the challenge, since so much of the project cost was being spent on books that would bring in almost no money (public domain books) or little money (older out-of-print books); and the size of the investment was large for so venturesome an enterprise.

In our role as technologists, we are very impressed by the technical quality of what has been achieved: audacity in the face of a technically difficult problem. But amazingly, the Google project works (!), and it delivers a span of access to book content that many of us had thought would not be achieved in our lifetimes, and at speeds that would not have been thought credible just a few years ago.

In our role as educators, we project from the success of the Google project an educational change in quality of understanding and insight by the new generations of students—one of those quality changes referred to above that arise from those OMs of technical change. This is especially true in the intellectual "browsing" and reading that will inform interdisciplinary understanding and creativity where much of the action of the future lies.

We are keen observers of the dynamics of societal change that is driven by innovations in technology. We have seen the cultural and business turbulence that accompanied the arrival of "the digital wave" in the music business, the photography and movie businesses, and in the newspaper businesses. In the case whose settlement is before the Court, the stakeholders have behaved constructively and creatively. Scores of participants from the author class, from the publisher class, from Google, from libraries, and from universities came together within their own groups and across groups to discuss, compromise, contribute, and to shape collectively the future of access to book content in the digital era. Their contribution and their achievement can not be overstated.

We urge you, the Court, to contribute to this in your judicial role, by approving the settlement that these people have so remarkably achieved. If the settlement dissolves because of the dissident voices that have commented to the Court--from a minority, some of whom speak from narrow motives of self-interest-- then our cultural and societal future will have suffered a severe blow.

Arthur Clarke, in discussing predictions of the future, spoke of a failure of nerve and a failure of imagination. Dr. Dan Greenstein, University of California Vice Provost for Academic Planning, Programs, and Coordination (and former University Librarian) sounded a similar note on August 28, 2009 in a speech to a conference on the settlement. This quote is from his speech notes:

"In all the discussion that quite properly surrounds the settlement it strikes me as really interesting (that) very rarely do you find anyone willing to commit something like 'wow - that's pretty good, imagine what we could achieve in a world where...' I have to admit, I think this represents something like a failure of our collective imagination."

We hope that the Court's approval of the settlement will be the key that unlocks "our collective imagination."

Sincerely yours,

Edward Feigenbaum
Jennifer Widom
Daphne Koller
Nils Nilsson
Jeffrey Ullman
Terry Winograd
Jure Leskovec
John Ousterhout
Mehran Sahami
Russ Altman
Gary Bradski
Stuart Card
Goeff Gordon
Shirley Tessler


Those who signed above are members of the Stanford University Computer Science Department (faculty, instructors, lecturers, research scientists, research engineers, visiting faculty, and courtesy and consulting faculty.) The views expressed above are their own views, and not necessarily that of Stanford University. They have no conflict of interest with regard to the settlement issue that is before the Court.