

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-9-09

OFFICE *of the* LIBRARIAN

September 3, 2009

The Honorable Denny Chin
United States District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

      Re: *The Author's Guild, Inc., Association of American Publishers, Inc., et al v. Google, Inc.*, Case No. 1:05 cv 8136 (S.D.N.Y.)

Dear Judge Chin:

    I hereby request this Court's permission to submit this letter in support of final settlement in *The Author's Guild et al v Google*. I write although I share many of the concerns expressed by those who oppose the settlement. In my view, however, the settlement affords benefits to the general public, to research libraries, and to higher education that significantly outweigh its downsides. Moreover, continued public scrutiny of the actions of the various parties, Google's receptivity to the concerns expressed by libraries, and what we hope will be this Court's ongoing supervision, can help to ensure that the public interest is protected in the years ahead.

    The University of Virginia Library (Library) entered into a partnership with Google in November of 2006 authorizing access to our entire circulating print collections of over five million volumes. We believed that Google's plan to digitize the holdings of many of the world's great research libraries and offer search, indexing, snippet text, and other services was a fair use under the U.S. Copyright Act that would serve the general public, students and scholars in unprecedented ways.

    The value of creating digital access to texts has been a significant priority at our institution; indeed, the Library has long been a pioneer in digitizing public domain works so they can be available online. Starting in 1992, the Library created several thousand public domain "e-texts" and made them accessible through our digital collections. The Library's Electronic Text Center itself was an early model that spurred other research libraries to make rare and otherwise unavailable texts in their collections accessible to students and scholars for textual analysis and research. Scholars at UVA and worldwide have told us that this work has allowed them to find valuable rare works and to ask new scholarly questions because these texts are available digitally.

ALDERMAN LIBRARY • P.O. BOX 400114 • CHARLOTTESVILLE, VIRGINIA 22904-4114 • PHONE (434) 924-7849 • FAX (434) 924-1431
http://www.lib.virginia.edu

Once it became clear that a new era of scholarship was emerging from the accessibility of on-line texts, the Library was successful in elevating a proposal to build the "Library of Tomorrow", i.e., the digitization of all library public domain materials, to a top priority for the University of Virginia. The University submitted a proposal to the Virginia General Assembly in the 2000-2002 biennium seeking $7.5 million to begin that process. While that proposal was unsuccessful in securing legislative funding, the University itself began to commit resources towards the "Library of Tomorrow" initiative. The Library also continued to seek and receive significant levels of external funding (e.g., more than $10 million from The Andrew W. Mellon Foundation) for digital initiatives, and it established digital partnerships with other institutions of higher education. Nevertheless, the Library quickly realized that the full cost of digitizing our collections was going to be far beyond our reach, with an estimated cost of hundreds of millions of dollars. We recognized that universities would need to collaborate not only with each other, but also find one or more commercial partners to achieve the transformative vision of building a comprehensive "digital library."

The partnership we commenced in 2006 with Google therefore allowed us to continue our past initiatives at a scale we could never have achieved alone. The settlement ensures that the majority of works scanned will now be available not simply in snippet view and for research and indexing generally, but for full text display. The vast majority of these materials are out of print and hard to find; many are orphaned. The intellectual and cultural enrichment posed by online access to millions of works published in the United States and we hope at some later point, abroad, will be substantial.

Virtually every day, our librarians field questions from faculty who want to share with students an important text the library holds that is out of print and unavailable from the publisher. Because of the universality of this experience, libraries have worked for years in support of legislative solutions to the orphan works problem. But, the history of attempts to address this and other knotty issues in copyright law has not given us confidence that the legislative process is any more likely to bring about practical, constructive change than the complex work of the parties to this class action.

Moreover, the settlement does not obviate the continued need for legislative action, nor will it prevent the many entities that have commented on the settlement to bring their issues and concerns to a statutory forum. By this settlement the U.S. Congress does not lose its constitutional authority to make and modify the law of copyrights. The voluntary actions of the parties will, however, provide access to millions of texts that have languished in research libraries, inaccessible to anyone but the lucky individuals who have borrowing rights from our institutions.

As noted, the settlement terms are a less than perfect resolution of the legal and policy issues presented in this case. The issues that concern me include but are certainly not limited to the problem that: (1) libraries as the holders of the actual texts were only indirectly and partially included in the settlement discussions; (2) academic writers and scholars were not consulted as they should have been; (3) the potential for monopolistic control over pricing because of the uniqueness of the digital resource is real; and (4) concerns relating to patron privacy in accessing a vast new digital library have not yet been adequately addressed. Countering these concerns

are the settlement's significant practical accomplishments, the review and accountability mechanisms that have been built into its core provisions, the ubiquitous access that is essential to Google's core business model that should prevent pricing that puts subscriptions out of reach, public review, and the possibility of ongoing judicial and governmental supervision.

In the end, my decision to articulate support is influenced by the spirit and sense of optimism of the founder of this great institution of public higher education. "[K]nowledge is power; …knowledge is safety, …knowledge is happiness" Thomas Jefferson wrote George Ticknor on November 25, 1817, and on June 10, 1815 to John Adams, he confided: "I cannot live without books."

Respectfully submitted,

*Karin Wittenborg*

Karin Wittenborg
University Librarian


Cc: Michael J. Boni, Esq.
    Joanne Zack, Esq.
    Joshua Snyder, Esq.
    Jeffrey P. Cunard, Esq
    Bruce P. Keller, Esq.
    Daralyn J. Durie, Esq.
    Joseph C. Gratz, Esq.