# UNIVERSITY of HOUSTON

LAW CENTER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-9-09

RAYMOND T. NIMMER
*Dean and Leonard H. Childs Professor of Law*

SEP 04 ~

The Honorable Denny Chin
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

05-CV-8136

Re: Google Book Search Settlement

Dear Judge Chin:

We are authors of several books that would be affected by the proposed Google Book Settlement (GBS). Jeff Dodd is a partner at the Houston-based law firm of Andrews Kurth. Ray Nimmer is a chaired professor and the Dean of the University of Houston Law Center. We are writing in our personal capacity as authors and not as representatives of either organization or for any client.

Many have asked our opinion of the Google Settlement. We join the broad opposition to the "settlement": This is a bad deal for everyone other than for Google (which will become an entrenched monopoly if the settlement is approved). It is also bad precedent, taking legislative prerogatives, the property rights of millions of people, and important commercial choices, and placing them in the hands of a few lawyers, a few companies, non-representative organizations, and a court.

This is not a settlement of a judicial dispute, it is an attempt to reorganize and concentrate an industry into the hands of one company and its co-venture partners (former plaintiffs) without the participation of most of those affected by it.

The Google Settlement is a bad deal for everyone except for Google. For Google, it eliminates the need to contact copyright owners for permission to copy their works, and the need to worry about their suing if Google acts without permission. For all companies who want to compete with Google, the need to negotiate will remain. Google thus obtains a huge market advantage. It may be cumbersome to deal with property rights, but that is no cause to trample on them. If carried out, the deal will create a repository of digital books but do so by wildly restricting the rights of copyright owners to control their own property, and by creating a new monopoly – Google.

The settlement terms are drafted as a complex commercial transaction. That, of course, is what it is. But most copyright owners did not authorize Google to undertake this commercial venture with their works, and most did not authorize the narrow organizations that sued Google to represent them in a commercial deal transforming their rights.



There are so many, obvious public policy objections that it is almost not necessary to mention them, but let us start with two concerns.

First, the "settlement" purports to bind copyright owners who, by the parties' own admission, cannot be found or identified. This is not an issue of how many of them there are, but supposedly an issue about the difficulty of establishing proper provenance through analysis of transfers, inheritance, and the like. But if Google cannot find them as part of a billion dollar project, how are the copyright owners expected to identify their interests, hire a lawyer, and do so before the date set for withdrawing from the "settlement"?

Second, the "settlement" purports to resolve claims that do not yet exist. This is not a case where bad acts have occurred or where damages are not yet manifest, such as in some mass tort litigation. This settlement covers **future conduct** that, **if** it occurs, would infringe a property right. Even Google (a huge company with massive assets) has not yet copied more than a small fraction of all books protected by copyright law. If the settlement were approved, it would cover **all** copyright owners in **all** books registered in the U.S. Copyright Office, including those that have not yet been copied by Google. This reaches too far. In our opinion, these owners could not even file a lawsuit against Google if they wanted to do so since no infringement has occurred in reference to their works. But they purportedly are bound by the result of a lawsuit they never authorized. This is not like class action litigation in mass torts – in those cases the class only covered people that had been affected by wrongful acts at or before the time of the lawsuit.

Consider this: You own a house in a large subdivision. Big Company (Google) plans to build towers on each property in the subdivision to create a commercial product for its exclusive use. There is no government action or regulation involved. Big Company is sued by three landowners on the north side of the subdivision whose property has already been wrongfully invaded (you are on the south side and live in pristine ignorance of the plan). The plaintiffs and the Big Company transform the case into a class action covering **all owners** in the subdivision and "settle" it, giving Big Company the right to invade every lot in the subdivision, if it pays a small standard fee and a royalty for some of its future profits   One year later, the crew shows up on your property and builds a tower authorized by the "settlement."

Do you have a right to prevent them from digging up your yard and building their tower? Do you have a right to complain that the damage to your property value was far greater than to others because your lot was expensively landscaped (e.g., more valuable)?

Not under the Google Settlement. The settlement purports to authorize future and past infringing acts, rather than simply to settle claims arising out of prior infringement. It gives Google the right to "go forth and infringe." This not only perverts the idea of class action, it is unfair to the millions of copyright owners who were not consulted and cannot truly participate. The unfairness lies in taking our property without consulting us and paying for it without distinguishing our losses from the loss suffered by others.

Google was prepared to defend the lawsuit by claiming that copying books was fair use because it was not selling the copies, but only providing access to them via a

commercial indexing tool to support a lucrative advertising and search engine business. There might be reasonable debate on this in law, but the settlement gives Google that right without the contest and effectively excludes any ability of copyright owners to contest the issue because of the economics involved. It also gives Google the right to copy and distribute some books - clearly not a fair use. We think it is unfair (and against the law) to take property and to place the owner in a position where realistically she cannot effectively complain.

But Google might argue – the settlement gives the copyright owner the right to withdraw the work if the owner chooses. The settlement does not actually do so, but this is a form of an argument Google has made for years in all contexts: "we have the right to do what we want with your property unless or until you complain about our conduct." This argument turns property rights upside down. Clearly, property rights grant a right to exclude others, but recognition of a property right in law also assumes the willingness of those in society to respect and avoid trampling on that right. The Google Settlement takes that away: **our** rights become **Google's** privilege.

Consider this: Jeff walks past your car parked on a public street and gets the desire to drive it. He enters the car, starts it, and drives off, leaving you a note that, if you find him and object to his use of your car, he will return it. You find him and he returns the car. Has he done anything wrong? Of course.

The Google Settlement adopts the view that property rights are merely a right to object and not a right to expect that people should respect them. This is a terrible change of perspective that is unfair to the millions of property rights owners involved.

It also effectively strips away the property right. Why? Consider what you as a copyright owner will do as Google marches on with its system. If you "withdraw" and sue (assuming that you can), what is the effect of being removed from Google's all encompassing index system? One commentator observed that an "orphan work" removed from Google's massive system is truly gone. Would you elect to do that for your work?

The GBS would give Google unprecedented power over hundreds of thousands of copyright owners and control of an asset that may become essential to 1) book publishers, 2) book authors, and 3) any entity that desires to operate a search or archive function regarding published books. The Settlement should not be approved unless Google and its co-venturers ensure all competitors and others access and fairly protect the copyright owners who were not represented at the "settlement" discussions and whose property is being stolen.

Over-arching any support for the Google "Settlement" is the view that this deal may create a cool and valuable "public" resource and that, without the settlement, the resource may be impossible to create. But the impossibility issue relates to the fact that the asset cannot economically be created without trampling on the property rights of hundreds of thousands of copyright owners. How can the poor big company negotiate a license with the hundreds of thousands of copyright owners that exist and the many that would say no? The GBS solves this by answering – "no need to do so, Google is doing a good (and profitable) thing, and the property owners should be happy." The fact that in the end there may be a valuable asset available to some of the public should not distract us from the reality that this asset will be under the control of a private, large and

profitable corporation who obtained it unlawfully. And no one else will be realistically able to replicate it. Ever.

Google is not altruistic, nor should it be. Making a profit is a good thing, for Google. It is doing what it proposes to do in the "Settlement" for a simple reason - profit.

What source of profit does Google expect? That is simple. If the settlement is approved and the project completed, Google will have a perpetual lock on the digitized services involved in reference to the books, to archiving books in digital form, and to providing search services with respect to that archive. The advertising and subscription income from this monopoly will be immense. Monopolies are not illegal. But monopolies created by *joint arrangements* imposed on other parties should be. As much as the cost of creating the copies is huge, the profit from having created them and the market power it will give Google are far greater. And the market control will not end. All new authors and new copyright owners, though not expressly covered by the "Settlement" are likely to find irresistible the need to allow their works to be posted in the only game in town. If your book is not there, where is it and how do I find it?

In a recent decision, the Court of Appeals for the Federal Circuit observed that a patent pool, created by agreement in order to implement a jointly developed standard, might be engaged in patent misuse to the extent that the pooling arrangement contained provisions limiting use of affected patented technology to develop a potential competing technology. We are no fans of intellectual property misuse doctrines. But this use of the "pooled" copyrights (voluntarily or forcibly pooled) to prevent development of competing technologies is an inherent feature of the Google Settlement.

Is the GBS fair to copyright owners? Certainly not:

- For copyright owners of works that have been infringed already, the GBS proposes to pay between $5 and $60. But statutory damages for infringement are $750 per work and can go much higher. A settlement making this much of a reduction in statutory damages suggests that the claim itself was invalid and the copyright owners are receiving no more than nominal compensation for a claim that seems to us to be a valid one.
- The nominal payment contemplated by GBS makes no distinction among the different works in terms of their market value, a factor that would very likely be important in any ordinary litigation or license. Clearly, copying the latest Harry Potter volume is worth more that copying the obscure book that was my first publication. Yet, Harry Potter gets $5-$60, as do we.
- The GBS would impose these nominal payment "settlements" on thousands of copyright owners of out-of-print books without adequate notice or opportunity for the property owners to object. This is the "orphan work myth." Simply because a work is out of print does not mean that the copyright owner is unavailable or, even, hard to find. Dean Nimmer, for example, recently purchased from eBay a copy of his second book – which has been out of print for many years. It is not fair to give people like such authors no realistic chance to object based on the claim (but often not the reality) that they are hard to find – indeed, everyone is easier to find in the age of the Internet.
- The copyright owners whose works have not yet been copied are treated even more unfairly. They lose the ability to prevent someone else from taking an

aspect of their property. They lost it under circumstances in which they probably could not have yet brought a federal lawsuit and through "representatives" who do not represent them.

The GBS should be rejected.

If it is not rejected, the possessor of an essential asset that dominates a market and that was created by joint conduct (the agreement) should be required to provide low cost, non-discriminatory access to all others and its profit from this anti-competitive agreement and the asset it created should be regulated.

If it is not rejected, has the court not created a private entity that wields eminent domain powers with respect to copyright? Google would possess an asset dominating a market, created by joint conduct (the agreement), and vested with the public power to take the copyright interests by judicial order. In such circumstances, why should it not be treated like a utility, common carrier, or essential facility that should be required to provide low cost, non-discriminatory access to all others? Should not its profit from this anti-competitive agreement and the asset created with the power and sanction of the court should be regulated?

We hope that you will reject the proposed settlement and we are willing to provide any further information and support that you might find useful.

Yours truly,

Raymond T. Nimmer
Leonard Childs Professor and Dean
University of Houston Law Center

Jeff Dodd
Houston, Texas

cc:
Joanne Zack, Esq., Counsel for the Author Sub-Class;
Joshua Snyder, Esq., Counsel for the Author Sub-Class
Jeffrey P. Cunard, Esq., Counsel for the Publisher Sub-Class
Bruce P. Keller, Esq., Counsel for the Publisher Sub-Class
Daralyn J. Durie, Esq., Counsel for Google
Joseph C. Gratz, Esq., Counsel for Google