


# SUSAN BERGHOLZ
## LITERARY SERVICES

August 31, 2009

Office of the Clerk, J. Michael McMahon
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

05-CV-8136

Dear J. Michael McMahon,

I operate a literary agency in New York representing more than twenty clients. I wish to object to the Google Book Settlement. i have nonetheless advised my clients not to opt out of the Google Book Settlement.

One of my consultants is Stuart Bernstein who operates a literary agency and is also Permissions Director for my agency. This letter was composed in collaboration with Stuart Bernstein who will be submitting his own copy as an objection to the Settlement. If the Settlement (as it is currently configured) is accepted by the court, I have been authorized to administer rights on behalf of a majority of my clients through the Google Book Settlement web site.

Before listing my objections to the Settlement, I would like to acknowledge the good-intentioned advocates who have invested years of time and money trying to reach a compromise in this very difficult situation. Clearly, something may be better than nothing in this case; however, there are many provisions of the Settlement that impact the various members of the class differently. It would be irresponsible not to inform the court of the ways I believe the Settlement overreaches or creates hardship for many of us.

There are several reasons for my objection:
-The Settlement goes too far. The class of copyright holders includes millions of individuals who had no input on the terms, but are included by default. Opting out of the Settlement is equivalent to a total loss of control over a copyright-protected work, unless the copyright holder has deep enough pockets to sue Google himself. Opting in means having to make potentially permanent decisions about a work under copyright without having all the facts. Even legitimate publishers of all types are currently struggling with the issues surrounding digital publishing-e-books-in a market that changes weekly. Those of us who have carefully and meticulously negotiated licenses and agreements on behalf of our authors in order to protect their copyrights in this rapidly changing atmosphere resent being forced into a prefabricated business arrangement with a corporation that has repeatedly infringed our authors' copyrights, or even with one that hasn't.

-The deadline for a decision to opt out of the Settlement precedes the court's final decision on the Settlement itself, which defies logic. The members of the class must opt in or out before knowing the final form of the Settlement.

17 WEST 10TH STREET, #5
NEW YORK, NEW YORK 10011
TEL: 212-387-0545
FAX: 212-387-0546

SUSAN@SUSANBERGHOLZ.COM

61 RANCHO MAGDALENA
LAMY, NEW MEXICO 87540
TEL: 505-466-7776
FAX: 505-466-7779

-The Settlement steamrolls over publishing industry standards and gives preferential treatment to a Goliath for-profit corporation. Copyright law and, by extension, publishing industry standards have always worked on a model in which licenser and licensee agreed to terms *before* the protected work was published. Google, with the collusion of the "Fully Participating Libraries," took an arrogant shortcut around a long-standing business practice of rights and permissions. Before copying or publishing copyrighted materials, a legitimate author, institution or publisher is required to make a formal request to a rights holder seeking *permission* to use a work protected by copyright, with the rights holder dictating the terms and, in many cases, the fee for such use. Many authors rely on these uses of copyrighted works for a healthy portion of their income.

There is no governing body or authority except a court of law that may decide if the criteria for a valid "fair use" defense have been met. By scanning copyrighted material without first seeking the permission of the copyright holders, Google was betting that its own deep pockets and tremendous clout would protect it from the copyright holders, who are, on the whole, less well-off and therefore disinclined or unable to sue. The Settlement is the direct result of this financial disadvantage on the part of authors and publishers. If a smaller company had committed the numerous violations of copyright that Google has committed, the Settlement would look very different, or the smaller company would have lost in court. The scales of Justice are not balanced by this Settlement.

- The January 5, 2010 deadline for claiming a payment for a book or insert must be extended. For those of us who have licensed thousands of inserts over the years, the process of searching for them within other works via the Settlement web site, which we have already determined is rife with errors and redundancies, is a daunting one. For us, the Settlement becomes an outrageous administrative chore we are being coerced into performing, and many of us will have to spend countless hours at the Settlement web site, or hire new staff to do so, hunting down books and inserts for authors who have been publishing for decades. We have already devoted considerable time and money to the job of gathering information from contracts and files (including pre-computer era paper files) that contain data we will need in order to make accurate claims for books and inserts in time for the impending January 5, 2010 deadline. But, inexplicably, the Settlement offers absolutely no deadline by which payments will be made as a result of these claims. Who makes a deal without terms of payment?

The cumbersome process of claiming our books and inserts on the Settlement web site forces rights holders to *work* for Google by correcting Rights Registry records for each book and insert, then agree to a set of predefined terms regardless of the scope of the infringement or the degree to which it impacted the protections afforded by the law to original works. It is a task that yields few rewards. An insert that has appeared in one hundred books-amounting to one hundred cases of infringement-results in only one compensatory payment. If it is an insert that was excerpted from another scanned book, it yields no additional payment.

Yet, if the rights holder fails in his diligent effort to locate and claim a particular insert (an insert, mind you, for which he had previously negotiated a strictly defined permission license with a legitimate licensee) that material may become freely available, potentially destroying the value of the material for future licensing by putting it on public display as a search result. With the clumsy design and execution of the Settlement web site, only the savviest searchers and persistent claimants will complete the process with 100% accuracy.

-Google gets a de facto license to infringe. Under the terms of the Settlement, Google is given permission to continue scanning works protected by copyright. While there is a 27-month deadline imposed on the class for removing a book from Google's database, calculated from the filing date of the Settlement documents, Google didn't have to stop scanning on that date and doesn't have to stop scanning ever again. This creates a Google loophole in copyright law and makes Google the only entity domiciled in the part of the civilized world protected by international copyright conventions that is permitted to infringe on an author's copyright until the author tells it not to. Copyright holders should be permitted to remove their books from Google's database at any time beyond the 27-month deadline.

17 WEST 10TH STREET, #5  
NEW YORK, NEW YORK 10011  
TEL: 212-387-0545  
FAX: 212-387-0546

SUSAN@SUSANBERGHOLZ.COM

61 RANCHO MAGDALENA  
LAMY, NEW MEXICO 87540  
TEL: 505-466-7776  
FAX: 505-466-7779

-The Settlement creates two monopolies. In a competitive market for content, Google earned sole access to a huge market of "orphan" books (those not claimed by a copyright holder) via copyright infringement. It also won access to millions of out of print books, which it can market through a variety of programs. By getting out so far ahead of the pack and forcing all copyright holders to participate in one way or another, Google has essentially beat out its competition, who will take years to catch up. In disputing the antitrust concerns, the parties to the Settlement tell us that the Rights Registry is non-exclusive and will create other opportunities for rights holders. Yet the Rights Registry constitutes the second monopoly created by the Settlement. According to the Settlement, the Registry will have negotiating power on behalf of all copyright holders to enter into new business models, either with Google or any other third party. Although copyright holders will be able to opt out of these potential new modes of licensing, the Registry immediately gains an unregulated power to influence industry precedents, prices, royalty rates and other terms. The Registry is another idea that should have stayed simple, but its creation has been molded by the requirements of its first big deal, The Google Book Settlement. With the example being set here, any other Goliath corporation with deep pockets will be encouraged to infringe first and settle with the Registry later. It's a sure path to a sweetheart deal.

-The sweep and scope of this Settlement is way out of proportion to the limited scope of the class action. The parties have gone beyond finding a remedy for their disagreements and created a new business model that does not address the issue of copyright infringement. Publishing, like the music industry before it, is struggling to protect its content from new technology that facilitates piracy, false claims of "fair use," and those who do not understand or respect the rights of creators to control their original works. The class action subverts U.S. Copyright Law and international copyright conventions rather than bringing the parties into compliance with those laws and conventions.

The Google Book Settlement is a slap on the wrist for wrongdoing and a perpetuation of it. In fact, it's more than a settlement, it's a business plan for Google. At the very least, opting out should protect copyright holders from further infringement. But instead, it leaves them to fend for themselves against one of the richest, most powerful companies in the world. That company has just been given license to continue its manipulative business practices. If I possessed unlimited resources, I would opt out and sue Google.

Sincerely,

Susan Bergholz

cc: Michael J. Boni, bookclaims@bonizack.com
    Jeffrey P. Cunard, bookclaims@debevoise.com
    Daralyn J. Durie, bookclaims@durietangri.com

17 WEST 10TH STREET, #5
NEW YORK, NEW YORK 10011
TEL: 212-387-0545
FAX: 212-387-0546

SUSAN@SUSANBERGHOLZ.COM

61 RANCHO MAGDALENA
LAMY, NEW MEXICO 87540
TEL: 505-466-7776
FAX: 505-466-7779