# AAUP
American Association of University Professors

*Academic Freedom for a Free Society*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-9-09

September 4, 2009

The Honorable Denny Chin
c/o Office of the Clerk, J. Michael McMahon
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09-09-09

Re: *The Authors Guild et al. v. Google Inc.*, No. 05 Civ. 8136 (DC)

Dear Judge Chin:

    The American Association of University Professors (AAUP) submits this letter in response to the proposed settlement agreement in this case. This letter is neither in opposition to nor in support of the proposed settlement agreement; instead it raises concerns about the Google Library Project and the proposed settlement agreement on behalf of the interests of college and university faculty and the public in enabling the free exchange of information.

    Founded in 1915, the AAUP is the nation's oldest and largest body dedicated to the faculty's role in the advancement of higher education. The AAUP's purpose is to advocate for academic freedom and shared college and university governance, to define fundamental professional values and standards for higher education, and to ensure higher education's contribution to the common good. The AAUP has approximately 48,000 members nationwide, composed of faculty, librarians, graduate students, and academic professionals, with local campus chapters in approximately 40 states.

    In its foundational statement of principles on academic freedom almost a century ago, the AAUP recognized that every college and university, regardless of the source of its charter or funding, is a "public trust" – "a great and indispensable organ of the higher life of a civilized community." 1915 *Declaration of Principles on Academic Freedom and Academic Tenure*. The statement also explains that by virtue of their prolonged and specialized training, university faculty members are uniquely positioned to serve society by "impart[ing] the results of their own and of their fellow-specialists' investigation and reflection, both to students and to the general public, without fear or favor." The 1967 *Joint Statement on Rights and Freedoms of Students*, furthermore, recognized that the

1133 Nineteenth Street, NW • Suite 200
Washington, DC 20036-3655
Phone: 202.737.5900 • Fax: 202.737.5526
Web: www.aaup.org 

"[f]reedom to teach and freedom to learn are inseparable facets of academic freedom. The freedom to learn depends upon appropriate opportunities and conditions in the classroom, on the campus, and in the larger community."[1]

The scholarly work that is produced at colleges and universities is integral to higher education and to its operation for the public good, including faculty development, student instruction, and the expansion of public knowledge. The AAUP believes that open access to academic research and the ability to disseminate scholarly publications freely are essential to the academic enterprise. Moreover, institutional libraries within which such scholarly works reside are a key component of that public trust; access to scholarly works must not be at risk of being closed off to society at large.

While the AAUP has identified a number of areas of concern regarding the Google Library Project and the proposed settlement agreement, this letter does not analyze them in detail; many of our concerns have been expressed by other letters and amicus briefs previously filed with the court, including the briefs filed by the American Library Association, the Association of College and Research Libraries, and the Association of Research Libraries, as well as a letter submitted by faculty members from the University of California system. Instead, this letter focuses on one aspect of the proposed settlement agreement that has the potential to address many of our concerns: the Book Rights Registry (BRR).

According to the proposed settlement, the not-for-profit BRR is intended to represent the rights holders and will assist Google in implementation of the Library Project. The composition of the BRR is therefore likely to be a crucial element in the successful operation of the Library Project. This litigation and the related settlement negotiations have focused largely on commercial interests. Because the proposed composition of the BRR requires an equal representation of authors and publishers from the plaintiff classes, the AAUP is concerned that the BRR will be populated primarily by those with a commercial interest in the project, with insufficient representation of authors who prize open access over monetary value.

For example, the vast majority of the approximately 8,000 members of the Authors Guild, the primary plaintiff representing the interests of the author class, are for-profit authors. The Authors Guild has thus understandably focused its efforts so far on ensuring that the settlement agreement provides for appropriate revenue sharing for its members with copyright interests – an interest that faculty authors share but that for many is subordinate to their interest in principles of open access. In addition, although some institutions of higher education have already entered into partnerships with Google, and more are likely to follow, they may have institutional interests that differ in some respects from those of individual faculty authors.

---

[1] The Joint Statement was developed by a committee composed of representatives of the AAUP, the United States National Student Association (now the United States Student Association), the Association of American Colleges (now the Association of American Colleges and Universities), the National Association of Student Personnel Administrators, and the National Association of Women Deans and Counselors. It was reaffirmed by an interassociation task force in 1992.

For these reasons, the AAUP believes that it is important to include an independent faculty voice on the BRR to represent the many authors among the more than 1.2 million faculty members around the country. Without significant representation on the BRR of academic authors whose primary interest is in making their works widely available to a scholarly audience, an independent and non-commercial voice concerned with the public's interest in open access principles and in the development of privacy protections related to academic research may be lost.

The AAUP therefore requests that the court actively monitor the development and future operation of the BRR to ensure that academic authors have a significant presence on the Registry, in order to preserve open access to information and the development of scholarly knowledge.

Thank you for your consideration of our views on the Library Project and the proposed settlement agreement.

Sincerely,

Gary Rhoades
General Secretary