# OLSWANG

The Honourable Denny Chin
Office of the Clerk
J. Michael McMahon
U.S. District Court for the Southern District of
New York
500 Pearl Street
New York, New York 10007

**Email** Clive.Gringras@olswang.com
**Direct line** +44 (0) 20 7067 3189

8 September 2009

Our ref.   CQG\X6992-9999
Your ref.   Case No. 1:05-cv- 08136-DC

**By Fax and Post**



Dear Judge Chin

### Re: The Authors Guild et al. v. Google, Inc. Case No. 1:05 cv 8136 (S.D.N.Y.)

Olswang LLP is a European law firm and we act on behalf of the following 21 UK literary agencies: Aitken Alexander Associates Ltd, A.M. Heath & Co. Ltd, A P Watt Ltd, Brie Burkeman & Serafina Clarke Ltd, Capel & Land Ltd, Christine Green Authors' Agent, Christopher Little Literary Agency, Curtis Brown Group Ltd, David Higham Associates, Dinah Wiener Ltd, Gregory & Company Authors' Agents, hhb agency Ltd, Jenny Brown Associates, Johnson & Alcock Ltd, Lavinia Trevor Literary Agency, Lutyens & Rubinstein, The Peters Fraser & Dunlop Group Ltd, Pollinger Limited, Rogers, Coleridge & White Ltd, The Ampersand Agency, Watson, Little Ltd. (the "UK Agents")

On behalf of the UK Agents, we respectfully request the Court's permission to file this letter as an amicus curiae brief to address certain concerns of UK authors who have not opted-out of the proposed settlement agreement in this proceeding. The brief, below, is in support of neither party. The UK Agents represent a wide range of authors from modern-day writers through to authors of classics such as D.H. Lawrence ("UK Authors"). Because the UK Agents collectively represent so many leading English-language authors, both in relation to publication of their works in the United Kingdom and in the U.S., they are extremely well positioned to advise this Court as to how the proposed Settlement Agreement would impact foreign authors.

In this letter we seek to persuade your Honour that the UK Authors: were not fairly represented; are not fairly part of the class; will be treated with greater prejudice than authors from the United States; and, received insufficient notice.

Olswang LLP is a limited liability partnership registered in England and Wales with registered number OC343060. We use the word partner to refer to a member of Olswang LLP, or an employee or consultant of Olswang LLP or any of its affiliated businesses with equivalent standing and qualifications.
A list of the members (and of the non-members who are designated as partners) of Olswang LLP is available for inspection at its registered office

90 High Holborn      T +44 (0) 20 7067 3000
London WC1V 6XX      F +44 (0) 20 7067 3999
www.olswang.com      DX 37972 Kingsway          Olswang LLP is regulated by the Solicitors Regulation Authority

3773753-1

**UK Authors not fairly represented**

The Authors Guild, the body which purported to represent the views of the UK Authors cannot do so; it does not accept as members UK authors with non-American publishers. The Authors Guild stipulates that only two types of membership are available to authors: Regular and Associate. The membership terms for Regular and Associate are clear:

> "Book authors must be published by an established American publisher... Works published by foreign publishers are not accepted as a basis for membership."

This restricted membership must be contrasted with the proposed Settlement Agreement which widely stretches to works with a "U.S. Copyright Interest". This means works protected by the laws of a country which is a member of the Berne Convention; that has included the United Kingdom since 1887.

It is not fair for the Authors Guild, an organisation that refuses to extend membership to authors of foreign published works, to have represented their views.

**UK Authors not fairly part of Class**

This firm has been reliably informed that U.S. class actions must afford the same rights to all in the class. Your American authors can judge whether their works are being legitimately treated by Google. They can look online to see Google's use of their books; in effect, they and their estates can police their rights and spot any abuse by Google.

Google expressly restricts the UK Authors in the country of their residence, as individuals based outside the United States of America, from seeing any exploitation of their works (Section 17.7(a)(i) of the proposed Settlement Agreement). How are the UK Agents and the UK Authors to ensure that Google is behaving honestly with the works that Google has scanned and is exploiting? Indeed, how is every foreign rightsholder to check whether Google is sticking to its hundreds of pages of obligations in the proposed Settlement?

It cannot be fair that a large percentage of the class, some say over 50% are foreign writers'[1], cannot determine whether their rights are being honoured under the proposed Settlement Agreement.

---

[1] *Lavoie, B; Connaway, LS; Dempsey, L: D-Lib Magazine, September 2005, Volume 11 Number 9, Anatomy of Aggregate Collections, The Example of Google Print for Libraries.*

### UK Authors' greater prejudice

Under the proposed Settlement Agreement, Google determines which works are and which works are not "commercially available". This determination is not made by the author and is not made by the publisher. Even where agent, author and publisher are content, even pleased, with a book's sales in the U.S. Google is able to set a higher standard and declare the book "not commercially available".

The determination of "commercially available" or "not commercially available" is the critical pivot in balancing whether Google can exploit works without needing to seek further permission from their rightsholders. Where a work is deemed by Google to be "not commercially available", that work is susceptible to wider exploitation – even though no express permission has been given for that use.

Because the UK Authors write in English, their books are readable by a large percentage of U.S. readers. But because these authors are resident in and can more easily promote their works in the United Kingdom, it is often the case that their works sell better in the United Kingdom than in the United States of America. It follows that even though these books may be bestsellers in the UK, and well-read in the U.S., Google's rules for determination will tend to favour U.S. authors as opposed to UK authors.

### Mandatory notification trivial to achieve

We are reliably informed that under all class action settlements, it is mandatory that the Court must direct to class members the best notice that is practicable under the circumstances, including individual notice to members who can be identified through reasonable effort.

Individual notice to members has not been comprehensive; many of the UK Authors have not been notified. Nor have the UK Agents representing those authors been notified. This is despite the fact that Google seems to have been able to locate the works of the UK Authors. This is despite the fact that many authors who are members of the class will be users of Google's services, such as Google Mail; Google, can easily contact those authors.

Google is also aware, with precision, of the number of notices it has sent to individuals in the United Kingdom. It will also be aware of the number of UK authors whose books it has or will scan to exploit further. Google must have considered how it would notify the remainder. And the Court must determine what should have been Google's best notice that was practicable under the circumstances.

Google has over 80% of the UK internet search traffic. It would have been practicable – trivial in fact – for Google to have posted a notice relating to the proposed Settlement Agreement on its '.co.uk' homepage. Google does use this homepage to advertise its other services such as

YouTube and other products such as its web browser, Google Chrome. Not only would this means of notification have cost Google significantly less than almost all other means of notification, it would have ensured significantly more UK authors were notified of the proposed Settlement Agreement. For each of the foregoing reasons, the UK Agents respectfully request that this Court decline to certify the class with respect to foreign rightsholders.

Yours faithfully

*[signature]* LLP

**OLSWANG LLP**