Office of the Clerk, J. Michael McMahon

U.S. District Court for the Southern District of New York

500 Pearl Street

New York, New York 10007



# Objections

# To

# The Google Book Settlement

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9-9-09_

Motohisa Ohno

Email: mohno@mohno.com

Address: 3-23-30 Higashi-Toyoda, Hino, Tokyo 191-0052

05- CV- 8136

I have objections to the google book settlement after the communications with the administrator of the settlement.   I require modifications the settlement or just repealing it.

Summary of concerns

### 1.  The Berne Convention
The settlement violates the Berne Convention because it's a "formality" which the convention prohibits.

### 2.  Doubtful commitment Japanese works are protected as well as English works
It doesn't seem that the Counsel has enough quality and capacity to handle claims from Japanese copyright holders in my experience with the Counsel.

### 3.  Security of the Book Rights Registry
It's quite easy to control *illegally* The Book Right Registry.   Authors (copyright holders) are required to keep watching the registry to protect their rights although many of (Japanese) authors are not aware of the registry.

Summary of requirements

### 1.  Cover only the U.S. books unless having explicit applications
According to the Berne Convention (Article 5 (1)), the settlement may cover only the U.S. books.   The settlement may accept explicit applications from foreign countries. Please remember all authors have to submit applications to get benefits from the settlement.

### 2.  Limit the _safe harbor_ rule
To make the Counsel have response to treat claims in reasonable time, they should have some penalty if they can't do their duty, e.g., US$10 for each one business day delay.

### 3.  Otherwise, just take down the settlement
In fact, the settlement makes every author has some task to protect their works. They might be required to spend more if the registry would be violated.

### Concerns

### 1. The Berne Convention

According to the Berne Convention, Article 5 (2), "The enjoyment and the exercise of these rights shall not be subject to any formality". The settlement, however, requires an formality to protect copyrights, obviously. The Counsel didn't admit the Book Rights as a formality. The Counsel answered as the following (Appendix L, p.A-37);

*It is not. It is a non-profit organization representing authors and publishers in the settlement (as well as in connection with potential licenses with competitors of Google)...*

However, it doesn't matter whether a formality is based on non-profit organization or non-exclusive. For example, copyright holders in the U.S. are required to contain copyright notice to protect their works until 1988. The Berne Convention, on the other hand, provided for copyright protection for a single term based on the life of the author, and did not require registration or the inclusion of a copyright notice to appeal the copyright existence. Copyright holders are no longer required to contain any notice after the U.S. participation in the Berne Convention in 1989. Obviously, the Book Rights Registry is a formality which is prohibited by the Berne convention.

In fact, there will be serious problem if the copyright protection depends on a formality because copyrights of works might not be protected if copyright holders are not aware of the formality. The notice of the settlement was published just once on newspapers. Some paper/online media took up this topic though. It seems most Japanese copyright holders still are not aware of the settlement or don't understand the settlement correctly.

The Counsel answered repeatedly that copyright holders can protect their works as they wish. In other words, copyright holders need to maintain the registry to protect their works.

*The Berne convention
http://www.wipo.int/treaties/en/ip/berne/trtdocs_wo001.html

\*Note:

There are popular formalities or similar mechanism on Internet although the Counsel didn't mention.

a) robots.txt

Search Engines avoid to copy the content if "robots.txt" disable it.   However, it can be fair because the mechanism of "robots.txt" is very famous to web site creators, especially business people.

Mr. Alexander Macgillivray, Google associate general counsel, said the following;
""Even though **the Copyright Act does not grant a copyright owner a veto over such uses**, it is our policy to allow any rightsholder, in this case newspaper or wire service, to remove their content from our index…"
(Source: CNet, http://news.cnet.com/8301-1023_3-10213903-93.html)

b) notice & take down

It looks a formality but it is not. The rule protects a provider from illegal upload by other people besides a provider.

## 2. Doubtful commitment Japanese works are protected as well as English works

Actually, there are many evidences that Japanese copyright holders worry about the fairness after the communications with the Counsel.

2 (a) Translation quality of the settlement web site

The Japanese translation of the settlement website (http://www.googlebooksettlement.com/r/home?hl=ja) is terrible and not maintained well. For example, I told a serious mistake in March 1, 2009 (Appendix A, p.A-4).

*When you download an spreadsheet stored book information, there is a field which titled as the following;*

### 現在「市販中」と区分されている書籍については、和解していますか？
*(\*literal translation: Do you settle the book currently designated as "Commercially Available"?)*

*This is very non-sense in Japanese but you will find the following text in English spreadsheet;*

*Is the book currently designated as "Commercially Available" under the Settlement?*

*It should be translated to "和解に基づいて、この書籍は「市販中」と区分されていますか？". This is very important section to designate the status of books, "In-Print" or "Out-of-Print". Many people might understand this section as "Do you settle?"   It's terrible mistake.*

### The Counsel hasn't fixed the serious mistake yet although I told them 5 months ago.

In fact, the communication with the Counsel was NOT quite comfortable because the Japanese are not translated. They should answer in 2 business days according to answering machine. However, I needed to wait for 10+ days to have answers to the first questions. Sometimes, they won't answer until I send the questions in English. Therefore, **I strongly doubt their quality and capacity** to treat claims from Japanese copyright holders. (Please see the appendix for the details)

2 (b) The agreement is only written in English only

The settlement agreement is written in English although the google book settlement website is translated in Japanese (whatever the quality is).

The settlement makes copyright holders require to register and update information at The Book Rights Registry to protect their works (whatever the registry is a formality or not). Therefore, the Counsel must translate the agreement in Japanese to the copyright holders can understand the agreement correctly.

### 3. Security of the Book Rights Registry

It's serious problem that **the Book Rights Registry IS NOT SECURE** against illegal applications.   I created 2 fake accounts to demonstrate this, i.e., "bookmanager" and "publisherjapan" and submit applications for 5 books with each account in June 9 and June 18. (Appendix P, A-53).

There is, however, no claim to the illegal applications for over 2 months.   One book has another applicant obviously however I haven't any inquiry from him.   As mentioned above, most Japanese authors are not aware of the Book Rights Registry.   Some authors are aware of the registry including the books are listed in Appendix P. However, it doesn't seem they understand to need monitoring the registry to avoid illegal applications.

The weakness is essential of the registry because it's built on virtual space without any real evidence.   Actually, I could make fake "evidence" with the agreement template like this; http://www.jbpa.or.jp/pdf/publication/publication01.pdf

I don't know how the Counsel tells the illegal applications from the true applications only via Internet.   Of course, it couldn't be taken to legal issue unless it was reported … with spending much money for the lawyers … might require the U.S. attorneys with English communications.   So, there might be no problem while most authors are not going to take legal actions ......   **NO WAY!**

**This vulnerability brings seriously risk to copyright holders.**

**Requirements**

**1.  Cover only the U.S. books unless having explicit applications**

I can't understand why the settlement expands the coverage to worldwide from the beginning.    Here is the Berne convention, Article 5 (1);

*Authors shall enjoy, in respect of works for which **they are protected** under this Convention, in countries of the Union **other than** the country of origin, the rights which their respective laws do now or may hereafter grant to their nationals, as well as the rights specially granted by this Convention.*

In fact, the Berne convention requires the foreign works are protected _than_ the nation works.   It doesn't require _quite equivalent_ protection.   So, the settlement may cover only the U.S. works without any violation to the Berne Convention.   Of course, the settlement accepts explicit applications from the foreign authors.

**2.  Limit the _safe harbor_ rule**

There is no description in Japanese documents at googlebooksettlement.com but there must be the safe harbor rule in the agreement according to the news.
As mentioned above, there is strongly doubtful their support quality and capacity so that they have to pay penalty if they can't provide enough support.

**3.  Otherwise, just take down the settlement**

Of course, I believe it's the best choice to take down the settlement unless having significant improvement to solve the problems mentioned in this objections.
I don't know if it's possible.

Office of the Clerk, J. Michael McMahon
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

# Objections
# To
# The Google Book Settlement

# [Appendixes]

Motohisa Ohno
Email: mohno@mohno.com
Address: 3-23-30 Higashi-Toyoda, Hino, Tokyo 191-0052

*The appendix A to O are the messages between the Counsel and I.
 The appendixes don't cover whole messages but they may provide the rest of messages if you need.

*Note: I tried to translate Japanese messages in English to help understanding my messages.

## Appendix A.

Inquiry message from me to the Counsel in **March 1, 2009**, English translated version.

*I'm not a native English speaker so that the English text might not be accurate.
And I didn't send this English message but it might help you understand what I said.
The settlement administrator or other people could help to improve the translation.
The original email written in Japanese, see Appendix B.

From: Motohisa Ohno
To: booksettlement_ja@rustconsulting.com
Cc: Motohisa Ohno
Sent: Sunday, March 01, 2009 1:09 AM
Subject: About the google book search

Dear the Google Book Search, Settlement Administrator,

I have some questions regarding to the google book search. I'm asking you because you will reply promptly. Please understand I'm going to publish your answers on my blog.
*I have already posted an entry about some questions on my blog so that you may post comments to the questions there.
-> http://blogs.itmedia.co.jp/mohno/2009/02/google-7a50.html

The

1. The definition of "Display Use"

There are descriptions of "Display Use" in both "FAQ" and "Terms". The description in FAQ mentions only partially use for book search but it in Terms mentions whole use for out-of-print books.

[FAQ]
http://www.googlebooksettlement.com/help/bin/answer.py?answer=118704&hl=en#q30
[Terms]
http://www.googlebooksettlement.com/help/bin/answer.py?answer=118722&hl=en#display_uses

"The summary notice" says the following. So, is it ok to understand "Display-Use" including "whole of book would be published or sold if they are designated as out-of-print" as mentioned in the description in Terms?

The settlement, if Court-approved, will authorize Google to scan in-copyright Books and Inserts in the United States, and maintain an electronic database of Books. For out-of-print Books and, if permitted by Rightsholders of in-print Books, Google will be able to sell access to individual Books and institutional subscriptions to the database, place advertisements on any page dedicated to a Book, and make other commercial uses of Books.

[The summary notice]
http://www.googlebooksettlement.com/r/view_summary_notice

2. The definition of "Out-of-Print"
According to the description of "Commercially Availability" in Terms, "A book is Commercially Available if, at the time in question, the rightsholder of the book, or the rightsholder's designated agent, is offering the book for sale new through one or more then-customary channels of trade in the United States." So, if a book is not for sale through any channel in the United States, the book is designated as Out-Of-Print, isn't it? Then, most of Japanese books are designated as Out-of-Print. Is it correct understanding?
*Note: In fact, most of Japanese books are designated as Out-of-Print according to the data.

Appendixes

[Terms]
http://www.googlebooksettlement.com/help/bin/answer.py?answer=118722&hl=en#commercial_availabili
ty


3. How you define "one work"?

According to the description in FAQ, "Only one $60 Cash Payment will be made for a Principal Work".

[FAQ]
http://www.googlebooksettlement.com/help/bin/answer.py?answer=118704&hl=en#q25

In fact, some "works" are published as hardcover books then published as paperback books. Many short stories will be included in various books or one book might include many short stories written by different writers. An author might rewrite a work. How you judge "one work".

If an author wrote a lot of stories which are published repeatedly, it might be difficult to track all book information regarding to them. The database might not have complete information of all authors. They might not find all book information only with searching data at the settlement web site. How you treat such case?

4. The Berne Convention
According to the news report, "This settlement in the United States is regarding to the agreement of understanding "fairuse" and Japanese works have also copyrights in the United States as well as United States works according to the Berne convention." Partially use could be recognized as "fair use"(no infringement of copyrights) but "whole display use" would be infringement of copyrights unless have agreement of copyright holders. Actually, "commercial availability" of a book does NOT match availability through the United States distributors. For example, Amazon Japan delivers (exports) books to the United States.

And aaccording to the Berne convention, article 5(2), "The enjoyment and the exercise of these rights shall not be subject to any formality". If copyright holders need "formality", e.g., "notation" or "registration" like the Book Rights Registry, to protect their works, it infringe the Berne Convention.

[The Berne Convention]
http://www.wipo.int/treaties/en/ip/berne/trtdocs_wo001.html

Additionally, FAQ and terms are translated to Japanese but the most important document, the settlement agreement, is still in English (not translated). If an author think it's important to understand the agreement before to act, and they don't understand English, they might not take any action although they need to act to protect their works because most Japanese books are designated as out-of-print. In such case, you still protect their works. Otherwise, it obviously infringes "no formality rule" of the Berne Convention.

It doesn't seems that most authors have enough time and money to take an legal action in the United States if their works are violated. Actually, most Japanese books are not scanned at this moment but some books are scanned although they are available at Japanese distributors. It's very unfair that Japanese authors need to take a legal action to protect their copyrights.


5. Japanese translation
In fact, Japanese translator regarding to the Japanese translation of the settlement might not understand the settlement accurately. So, you don't want to translate to avoid legal issues because of mis-translation. For example, there is "contained in Article X" but there isn't "Article X" in the agreement.

[FAQ]

Appendixes

http://www.googlebooksettlement.com/help/bin/answer.py?answer=118704&hl=en#q33

When you download an spreadsheet stored book information, there is a field which titled as the following;

現在「市販中」と区分されている書籍については、和解していますか？
(*literal translation: Do you settle the book currently designated as "Commercially Available"?)

This is very non-sense in Japanese but you will find the following text in English spreadsheet;

Is the book currently designated as "Commercially Available" under the Settlement?

It should be translated to "和解に基づいて、この書籍は「市販中」と区分されていますか？". This is very important section to designate the status of books, "In-Print" or "Out-of-Print". Many people might understand this section as "Do you settle?". It's terrible mistake.


As mentioned above, it's not fair action to require Japanese authors/copyright holders to take any action and try to use their works. What do you think about it?
Please reply from person who can understand Japanese correctly.

Motohisa Ohno

Appendixes

## Appendix B.

Inquiry message from me to the Counsel in **March 1, 2009**, Japanese original version.

\*The English translated version, see Appendix (2)

From: Motohisa Ohno
To: booksettlement_ja@rustconsulting.com
Cc: Motohisa Ohno
Sent: Sunday, March 01, 2009 1:09 AM
Subject: Re: Google ブック検索について

Google ブック検索・和解管理者様

はじめまして。
Google ブック検索に関して色々と疑問点があるのですが、E メールでの質問には迅速にお答えいただけるとのことですので、お尋ねします。なお、お返事は私のブログにて公開するつもりですので、ご了承ください。
※いくつかの疑問点は、すでにブログに投稿しておりますので、そちらにコメントくださってもかまいません。
→ http://blogs.itmedia.co.jp/mohno/2009/02/google-7a50.html

1.「表示使用」の定義
FAQ と用語集の両方に「表示使用」の説明がありますが、前者はあくまでブック検索のための一部の使用のみを指し示しており、後者は市販されていない（Out-of-Print、絶版）書籍について、著作物としての公開や販売を含んでいるようです。

[FAQ の説明]
http://www.googlebooksettlement.com/help/bin/answer.py?answer=118704&hl=ja#q30
[用語集の説明]
http://www.googlebooksettlement.com/help/bin/answer.py?answer=118722&hl=ja#display_uses

「概要通知書」には、以下の通り記載されておりますので、これは用語集の説明にあるとおり、表示使用については「市販されていない書籍について、著作物として公開や販売をされることを含む」と考えてよいでしょうか。

この和解が裁判所に承認されると、グーグルが、著作権のある書籍および挿入物等をスキャンして電子的な書籍データベースを維持することが許可されます。絶版の書籍および、権利者の許可が下りた場合に、発売中の書籍については、グーグルは、個別の書籍へのアクセス権や組織によるデータベースの利用権の販売、書籍のすべてのページに広告を載せる権利、および書籍の商用使用をすることができるようになります。

[概要通知書]
http://www.googlebooksettlement.com/r/view_summary_notice

2.「絶版」の定義

用語集の「市販」の説明には、「問題の時点でその書籍の権利保持者または権利保持者が制定した代理人が米国内における１つ以上の通例の取引経路において新書として本を販売している時、その書籍は市販されているとみなされます」と書かれています。これは、米国の書籍流通で取り扱われていないものは、すべて絶版（Out-of-Print）扱いになると考えてよいでしょうか。この場合、おそらく日本の書籍の大部分は、絶版とみなされることになります。この理解は正しいでしょうか。
※実際、日本で販売中の多くの書籍が、市販されていないことになっています。

[用語集の説明]
http://www.googlebooksettlement.com/help/bin/answer.py?answer=118722&hl=ja#commercial_availability

## 3.「1 つの著作」の判別

FAQ の説明では、「主要作品に対する支払は 1 度だけ」とあります。

[FAQ の説明]
http://www.googlebooksettlement.com/help/bin/answer.py?answer=118704&hl=ja#q25

実際、著作（作品）の中には、ハードカバーで出版されたのち、ペーパーバックなど別の形で出版されるものがあります。あるいは、多くの短編を執筆し、複数の書籍に分散して収録されたり（繰り返し収録されるものもある）、書籍が複数の著者による作品をまとめて収録している場合もあります。場合によっては、作品に手を加えて、再度出版するということもあります。こうした場合に、誰がどのようにして「1 つの著作」と判断するのでしょうか。

数多くの著作を持つ著者にとっては、過去に自分の著作が収録されたすべての書籍を追跡することが難しい可能性があります。書籍検索で利用できるデータベースにはすべての著者名が登録されているわけではありません。自分の作品の表示使用を禁止したい場合でも、収録された書籍を網羅できないおそれがあります。「作品が収録されていること自体が唯一の証拠」である場合、どのように対応されるのでしょうか。

## 4. ベルヌ条約との関係

報道では「米国での和解はフェアユースの合意点に関するものであるため、ベルヌ条約の規定により、日本の著作物も米国で著作権が発生するために、和解の影響が日本の著作物にも及ぶ」と説明されています。ブック検索用に部分的に使用・公開するという点についてはフェアユース（著作物の侵害にあたらない）として認められるかもしれませんが、（前述の 1. および 2. の理解が正しい場合）絶版の著作物を、著作物そのものとして公開したり販売するということについては、著作者の同意なしにはできないのではないでしょうか。たとえば、米国の書籍流通で取り扱われているかどうかは、米国で著作物を入手できるかどうかとは必ずしも一致しません。たとえば、日本の amazon は米国への書籍の配送も受け付けています。

ベルヌ条約による著作物の保護は、「いかなる方式の履行をも要しない」（第五条(2)）と規定されており（無方式主義）、著作物の保護を受けるために著作権表記や登録などの方式を求めるのであれば、それはベルヌ条約に反します。

[ベルヌ条約]
http://www.cric.or.jp/db/z/t1_index.html

また、FAQ や用語集などは翻訳されているものの、和解契約書は英文のまま公開されています。「契約」を正しく理解しなければ何もすべきでない、という人にとって、英語が理解できなければ、そもそも本和解サイトでアカウントを取得したり、申請などをしない可能性もあります。その場合に、「絶版」扱いされているからといって、著作物の保護を受けられなくなる可能性があるのであれば、それはベルヌ条約の無方式主義に反するとしか言えません。

自分の著作物がベルヌ条約に反した使われ方がされた場合でも、実際に米国に出かけて裁判を起こすことができるほど時間と資金に余裕のある著作者ばかりではありません。実際には、日本の書籍のほとんどはスキャン対象にもならないでしょうが、スキャンが終了しているもの（かつ日本で販売中のもの）があるのも事実です。著者の意に反して無断使用したものを、異議があるなら個別に申し立てる（あるいは裁判を起こす）ことを求めるというのは、著作者への対応として不当ではないでしょうか。

## 5. 日本語訳

和解契約書が日本語訳されていない理由には、このサイトの翻訳担当者が、そもそもこの和解を正確に理解しておらず、日本語訳の間違いによる法的な責任を回避したいということではないかとすら思えます。たとえば、和解の放棄について書かれた以下の FAQ では「第 X 条に記載」という表現がありますが、この第 X 条は和解契約書のどこにも見当たりません。

[FAQ の説明]

Appendixes

http://www.googlebooksettlement.com/help/bin/answer.py?answer=118704&hl=ja#q33

さらに、書籍を検索してダウンロードできる日本語のスプレッドシートには、以下のような項目があります。

**現在「市販中」と区分されている書籍については、和解していますか？**

これは意味の分からない文章ですが、英文のスプレッドシートをダウンロードすると以下のように書かれていることがわかります。

Is the book currently designated as "Commercially Available" under the Settlement?

**正しく訳すと、「和解に基づいて、この書籍は「市販中」と区分されていますか？」となるでしょう。この項目は書籍が市販されているかどうかを示す極めて重要な項目であるにも関わらず、ほとんどの人は「和解しているかどうか？」という（間違った）認識を持ちかねない深刻な誤訳です。**

**以上のような状況で、日本の著作者に対して手続きを要求し、独自の判断で著作物を使用するのは、あまり誠実な行動とは見受けられませんが、どのようにお考えでしょうか。日本語が正しく理解できる方からのお返事をお待ちしております。**

**大野　元久**

Appendixes

## Appendix C.

Reply message from the Counsel to me in **March 11, 2009**, English version.

From: "BookSettlement_ja" <BookSettlement_ja@rustconsulting.com>
To: "Motohisa Ohno" <mohno@mohno.com>
Sent: Wednesday, March 11, 2009 2:35 AM
Subject: RE: Google ブック検索について

1. Google will have the right to make Display Uses of all Books that are classified as not
Commercially Available. The Rightsholder of a Book, however, has the right to remove the Book from
GLP (by request received on or before April 5, 2011) or exclude it at any time from some or all
Display Uses. Google does not have the right to make any Display Uses of Books that are classified
as Commercially Available unless the Rightsholder authorizes Google to include the Book in one or
more Display Uses; the Rightsholder also has the right to remove the Book from all uses by Google
(by request received on or before April 5, 2011). Removal requests received after April 5, 2011 will be
honored only if the Book for which removal is requested has not been digitized at the time the
request is made.

In the future, Google and the Registry may agree to develop other Access Uses, including consumer
subscriptions (similar in concept to the institutional subscriptions); print on demand Books; custom
publishing (per-page pricing of content for course packets or other forms of custom publishing for the
educational and professional markets); PDF downloads (consumers would be able to download a PDF
version of a Book); and summaries, abstracts or compilations of Books. Rightsholders will be notified,
either directly or through the Registry's website, of all new commercial uses that Google is
authorized to make, and will have an opportunity at any time to exclude any of their Books from any
or all of these uses.

2. If you are a citizen of another country or live in another country, you are likely to own a U.S.
copyright interest if:
o Your Book was published in the United States;
o Your Book was not published in the United States, but your country has copyright relations with
the United States because it is a member of the Berne Convention; or
o Your country had copyright relations with the United States at the time of the Book's publication.

You should assume that you own a U.S. copyright interest in your Book, unless you are certain that
your Book was published in, and that you reside and are located in, one of the few countries that
have not had or do not now have copyright relations with the United States. The Copyright Office
has published a list of countries with which the United States has copyright relations, available at
www.copyright.gov/circs/circ38a.html . If you have further questions about whether you own a U.S.
copyright interest in your Book or Insert, you can contact Class Counsel, who are the attorneys
representing the Settlement Class. Their names and contact information are on the Notice. You
may also seek advice from an attorney or a rights organization in your country.

For purposes of the Settlement (and only for such purposes), a Book is deemed "in-print" if it meets
one of the following two tests:

(a) Test 1. The Book is "in-print" under the terms of the author-publisher contract or the contract
does not provide for reversion under any circumstances. For this purpose, the Book may be "in-print"
even if the contract does not use the term "in-print." If the contract measures "in-print" by reference
to revenues earned, and more than 50% of the revenues paid to a publisher from exploitation of a
Book are generated by Google's exploitation of a Book in the revenue models authorized in the
Settlement, then those revenues shall NOT be considered in determining whether this Test 1 has
been met. If the contract measures "in-print" by units sold or some measure other than revenues,
then an equivalent principle will be applied in determining whether this Test 1 has been met. That a

Book or information about a Book is included in a database, or that information about the Book is provided in search engine results, does not, by itself, mean that the Book is "in-print." A Book is not "in-print" if the contract provides for reversion and all of the criteria for reversion have been met (except that the author need not have sent a request for reversion to the publisher even if required by the contract); or

(b) Test 2. The publisher, consistent with any rights it may have in the Book under the author-publisher contract, publicly has announced to the trade that it has undertaken concrete steps to publish an existing or new edition of the Book, and that edition is published within twelve months of the announcement.

(4) Disputes Over Whether a Book is In-Print or Out-Of-Print

Members of the Author Sub-Class and Publisher Sub-Class, or their representatives on the Board of the Registry, may dispute the status of a Book as "in-print" or "out-of print" by notifying the Registry with evidence (such as contracts, royalty statements, trade announcements, or affidavits) sufficient to establish whether or not the Book meets either of the two tests in paragraph (3) above. The other party will have the right to respond, but, if it does not do so within 120 days, the status of the Book will be changed. If both the author and the publisher submit competing evidence and are not able to resolve the matter by agreement, then the Registry, or an arbitrator selected by the Registry, will resolve the dispute by reviewing each party's evidence, as well as any other relevant evidence and arguments submitted by the parties, including the course of dealing between the parties and industry standards and practices. The Registry's (or arbitrator's) decision will be final, although the decision pertains only to the Settlement, and may not be used for any other purpose, such as a precedent in a different, non-Settlement related dispute between the author and publisher of the same Book.

3. "Principal Work" means a Book's principal written work. A Principal

Work can be a collective work, such as a collection of short stories or plays. A Book contains only one Principal Work but may contain other text, such as a foreword, afterword and annotations. A foreign language translation or an abridged version of a Principal Work is a different Principal Work. Two (2) or more Books that contain the same Principal Work but that each contains different or additional Protected Expression are considered to be different Books. By way of example, two (2) Books that have the same Principal Work (e.g., The Old Man and the Sea) but have different forewords or additional annotations (e.g., the Hueber Verlag and the Scribner editions) are different Books under this Settlement Agreement. A hard cover Book and a soft cover Book may have the same Principal Work, but are considered different Books under this Settlement Agreement (even if they contain no additional matter) if the hard cover Book and the soft cover Book have different ISBNs.

4. This question we have forwarded to Class Counsel for an answer. As soon as we receive a reply we will forward it on to you.

5. Your translation concerns regarding the Japanese website have been forwarded to Class Counsel.

Appendixes

## Appendix D.

Reply message from the Counsel to me in **March 13, 2009**, Japanese version.

From: "BookSettlement_ja" <BookSettlement_ja@rustconsulting.com>
To: <mohno@mohno.com>
Sent: Friday, March 13, 2009 7:52 AM
Subject: RE: Google Book Search

Motohisa Ohno,

Attached is a pdf file.

Google Book Search Settlement Administrator, c/o Rust Consulting,

P.O. Box 9364, Minneapolis, MN  55440-9364   UNITED STATES OF AMERICA
This message (including any attachments) may contain confidential or otherwise privileged information
and is intended only for the individual(s) to which it is addressed. If you are not the named addressee you
should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if
you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission
cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for
any errors or omissions in the contents of this message or that arise as a result of e-mail transmission. If
verification is required please request a hard-copy version from the sender.

Rust Consulting, Inc.
www.rustconsulting.com

ご質問の電子メールありがとうございます。

1. Google は、市販されていないと分類された本の表示使用をする権利を持ちます。書籍の権利保有者は、(2011
年4月5日以前にリクエストが受領されることにより)いつでも GLP から書籍を取り除く、または全部また
は部分的な表示使用から除外することができます。権利保有者が1つ以上の表示使用に書籍を含めるよう
Google に許可しない限り、Google は、市販されていると分類された本の表示使用を行うことはできません。
権利保持者には(2011 年4月5日以前にリクエストが受領されることにより)Google によるすべての使用か
ら書籍を除外する権利があります。2011 年4月5日より後に受け取った除外リクエストは、リクエストを行
った時点でデジタル化されていない書籍に関してのみ受理されます。

将来的に、Google とレジストリは、消費者購読(織による購読と類似した考え方);印刷オンデマンド書籍;
カスタム出版(ページごとの価格設定をした教育および専門市場向けの講座用テキスト類またはその他のカス
タム出版);PDF のダウンロード(消費者が書籍の PDF 場=ジョンをダウンロードできる);および書籍の概
要、要約または編集物を含むその他のアクセス使用についての同意をする可能性があります。Google が認可
される新規の商的使用はすべて、権利保持者に対し、直接またはレジストリのウェブサイトを通して通知され、
そのような使用のすべてまたは一部からすべての書籍をいつでも排除する機会があります。

2. 他の国の市民権を持っている、または他の国に住んでいる場合、以下の場合に米国著作権を持っている可
能性があります:
o 貴殿の書籍が合衆国内で出版された;
o 貴殿の書籍は合衆国内で出版されていないが、貴殿の国がベルヌ条約に加盟しており、合衆国と著作権関係
を結んでいる;または
o 貴殿の国が書籍が出版された段階で合衆国と著作権関係を結んでいた。
米国と著作権関係を現在持っていない数国において書籍を出版し、居住または本拠地をおいていることが確実
ではないかぎり、米国における著作権を有していると考

えるべきでしょう。合衆国著作権局は米国が著作権関係を結んでいない国のリスト公表しており http://www.copyright.gov/circs/circ38a.html、または和解管理者から入手することができます。**貴殿の書籍か挿入物が合衆国著作権を有しているかどうかについての質問のあるかたは、和解集団を代表する集団弁護士に連絡することができます。弁護士の氏名および連絡先は通知に記載してあります。また、貴殿の国内の弁護士または権利組織に相談する方法もあります。**

書籍が刊行中であるか絶版かの決定
和解用の目的で（それだけの目的で）書籍は以下の 2 つのテストのうち 1 つに当てはまれば「刊行中」とみなされます：

(a)
テスト 1 著者－パブリッシャー契約の条項に基づいて書籍は「刊行中」であるまたは契約が、いかなる状況下においても復帰権を規定していない。この目的では、契約が「刊行中」という言葉を使用しない場合でも書籍は「刊行中」であることがあります。もし契約が、収入の獲得を基準として「刊行中」と評価した場合において、書籍の利用によってパブリッシャーに支払われる収入の 50%を超える部分が和解に認可された収入モデルに基づいて Google の書籍の利用によって生成されている場合、これらの収入は、テスト 1 に当てはまるかどうかの決定においては考慮されません。契約が販売単位または収入以外のその他の評価により「刊行中」と評価する場合には、このテスト 1 に当てはまるかどうかの決定でも、同等の原則が適用されます。書籍、または書籍に関する情報がデータベースに含まれていること、または書籍の情報が検索エンジンの結果に出てくること自体は、本が「刊行中」であることを意味しません。契約が復帰権を全く規定していなく、復帰権に関するすべての条件を満たしている場合、書籍は「刊行中」であるとはみなされません（契約上で必要とされていても、著者が復帰権リクエストをパブリッシャーに送る必要がない場合を除く。）；または

(b)
テスト 2 著者－パブリッシャー契約上のすべての書籍に関する権利と一致して、パブリッシャーが、書籍の現存するまたは新版を発行する具体的な手続きを取ったことを業界に公に発表し、その発表から 12 ヶ月以内にその版が発行された場合。

(4)
本が刊行中であるか絶版であるかの論争について
著作下位集団およびパブリッシャー下位集団の構成員、またはレジストリ理事会の代表者は、書籍が上述の(3)の 2 つのテストに当てはまるかどうかを確立するのに十分な証拠（契約書、印税明細書、業界発表または供述書等）をレジストリに送ることにより、書籍の状態が刊行中であるか絶版であるかの論争を起こすことができます。相手方当事者は、返答の権利がありますが 120 日以内に行わなかった場合には、書籍の状態は変更されることになります。著者およびパブリッシャーが相対する証拠を提出し、同意して論争の解決ができない場合には、レジストリまたはレジストリが選択した調停者がそれぞれの当事者の証拠、また当事者間の取引過程、業界基準および慣行を含む、当事者が提出したその他の関連する証拠および論拠を検討して論争の解決をします。レジストリ（または調停者）の決定は、和解に関する決定に限りますが、最終的なもので、その他の目的、例えば同じ本に関する著者およびパブリッシャー間の異なった、本和解に関係ない論争用の判例としては使用できません。

3.「主要作品」とは、書籍内の主な作品のことです。つまり、まえがき、あとがき、脚注およびその他の要素を含まない書籍の部分です。外国語翻訳と短縮されたバージョンは異なる主要作品です。2 つの同じ主要作品を含むより多くの本が作動する、しかし、各々が異なるかあるいは追加の保護される表現を含んでいる 異なる本があるとみなされる。この和解検索では、ハードカバー本と柔らかいカバー本が同じ主要作品であっても、ISBN が同じでなければ、違う主要作品と考えられている。

4. この質問はクラス弁護士に送りました。答えもらってから、あなたへ返事します。

5. 日本語ウエブサイトの翻訳関心事は、クラス弁護士へ送りしました。

以上、この度はご回答の返事が遅れたことをまことに申し訳ございませんでした。
また何かご質問があれば、お気軽に以下までご連絡ください。
フリーダイヤル 0120-948-079 / 月曜～金曜 午前 7 時～午後 8 時（CST）

Appendixes

## Appendix E.

Inqury message from me to the Counsel in **March 13, 2009**, English translated version.
*I translated this for help to understand the original message, too.
 I didn't send the English version to the Counsel.
 The original email written in Japanese, see Appendix F.

From: "Motohisa Ohno" <mohno@mohno.com>
To: "BookSettlement_ja" <BookSettlement_ja@rustconsulting.com>
Cc: "Motohisa Ohno" <mohno@mohno.com>; <bookclaims@bonizack.com>
Sent: Friday, March 13, 2009 8:00 PM
Subject: Re: Google Book Search

(looping Boni & Zack LLC, again)

Dear, Rust Consulting, Inc.

I haven't received another answer in Japanese, yet.
However, I'm asking more questions now because I don't want to wait for so long time.
Please see attached text (written in Japanese).
I require the followings;

- Prompt reply for the acknowledgement of receiving this message.
- Estimated date for the answers within 2 business days.
- Answers within reasonable time unless you don't change the timelimit, May 5, 2009, to object the settlement.

Thank you,
Regards, Motohisa

About questions regarding to the google book search settlement

Summary

1. The Berne Convention
2. The definition of "Out-of-Print"
3. The works don't match the books
4. Access from outside the U.S.
5. Terrible translation
6. The validation of the applications

1. The Berne Convention
You have to understand the basic rule, that is, you can allow anything _only when_ you have the rights to allow. And you can't allow anything when you don't have the rights to allow. The examples you shown, ASCAP or BMI, are good examples to explain. They don't have rights to allow anything about Japanese music directly. However, they and JASRAC (Japanese music copyright society) have agreements for music copyrights for each country. That's why your country may use/perform Japanese music through ASCAP/BMI and my country may use/perform US music through JASRAC. The Berne Convention is not the reason. The settlement is quite different from them. It just means you need agreements with foreign societies (organizations) at first. Otherwise, you can allow nothing.

In fact, the Berne convention allows leeway to your country to determine the rule, e.g., the definition of "fair use", _unless_ it doesn't depends on a formality. So, you may define the rule which everybody should follow in your country. Actually, the rules are differences among countries. You, however, misunderstand "national treatment" at this point. You have to protect foreign works _as well as_

national works. That is, the rule should be enough to protect the rights which any copyright holder don't need to deny. Any copyright holder can't control the way of "protection" and "redress". If some copyright holders may deny the rule, it's _unfair_ to the others who don't know (or can't change) the rule, e.g., the Book Rights Registry in this case. The settlement permits copyright holders to disable "Display Use" based on the registry. That is, copyright holders need a "formality" _to protect_ their rights.

There is another example in Japan, i.e., the music CD renal business. You may rental any music CD with some fee (defined between rental shops and copyright holders) after protection period (max 1 year, designated by copyright holders) in Japan. No music copyright holder can deny rentaling their CD or extend the protection period beyond one year. On the other hand, No rental shop can rental any music CD without the fee. This is leeway of "protection and redress."

It's interesting that you advertised the effects of the settlement on newspapers, at least in Japan, perhaps worldwide. If copyright holders take only advantages of the settlement, you don't need to spend big money for such advertisement. However, the advertisement indicates you are aware of disadvantages of the settlement to significant copyright holders. You are also aware you need to let them to deny the rule _with a formality_, i.e., the Book Rights Registry. The settlement obviously infringes the Berne Convention.

If the settlement follows the "Opt-In" style, for example, any copyright holders or publishers join the registry _accordingt to their wish_, it doesn't matter. It's just a style like ASCAP/BMI/JASRAC. If nobody can disable the rule under the settlement, it also follows the convention. I wonder it's acceptable to the U.S. copyright holders, though. If the settlement covers only the U.S. books, "I" don't care.

It's serious concern of the settlement.

2. The definition of "Out-of-Print"

In fact, many "In-Print" Japanese books are designated as "Out-of-Print" according to the Book Rights Registry because the books are not available thru the U.S. distributors. You, however, may import most of such books thru http://amazon.jp/, for example. Is it fair to desinate "Out-of-Print" for such books? Actually, a friend working in a publisher was not aware of this because he understood the settlement is regarding to only "Out-of-Print" books. And there is serious mistake in translation (as mentioned below) which makes many people misunderstand the situation.

Additionally, two books for same work are considered different books under the settlement according to your answer. That's why a work is desinated as "Out-of-Print" according to the registry although the work is still "In-Print" in different book. That is, if a book is "Out-of-Print", the work in the book may not be "Out-of-Print". You need to aggregate the registry database not to publish "In-Print" _works_. I don't think it's possible automatically.

3. The works don't match the books

I already mentioned a part of this as above.

It's difficult to list the whole books for some authors. Typically, they can search their books with their name at http://www.googlebooksettlement.com/ . However, there are many authors who names less than 4 _Kanji_ letters. They can't search their books because the site needs 4+ letters to search books. The registry doesn't have accurate information because of database limitation. For example, there is a book which has short stories written by 50+ writers. I have no wonder authors don't have the complete list. If the contracts with publishers expires, they may keep the copyrights of the works if they didn't keep the list.

4. Access from outside the U.S.

As mentioned above, nobody can grant to use the works if they don't have rights to grant.   There is just a rule under the settlement.   So, why is it "fair" use to restrict the access area within the U.S?   It seems to focus on only benefits of the U.S. people with sacrifice of foreign books.

5. Terrible translation

The web site, http://www.googlebooksettlement.com/, is not only difficult to understand, but also have serious mistakes in translation.   I think the most serious mistake is the following;

When you download an spreadsheet stored book information, there is a field which titled as the following;

現在「市販中」と区分されている書籍については、和解していますか？
(*literal translation: Do you settle the book currently designated as "Commercially Available"?)

Most of cells are filled as "いいえ"(means "No").   It's non-sense sentense in Japanese.   But some people might understand "No, I don't settle anything, of course."   The original title is the following;

Is the book currently designated as "Commercially Available" under the Settlement?

It's just the field to desinate the status of books, "In-Print" or "Out-of-Print".   It has not been fixed yet although I told it 2 weeks ago.

Of course, I see the communication between you and I is also terrible, long time to have answers, no reply to phone inquiry, wrong encoding in email message, messages written by non-native Japanese speakers and so on.

I can't believe the party (Rust Consulting?) regarding to the settlement is fair to Japanese copyright holders.

6. The validation of the applications

I wonder how do you determine the _right_ proposals from right copyright holders or not, especially foreign people.   I have already edited the status of my books.   That is, anybody can edit any books without any authorization or verification.   If someone edits the database in bad faith, who can fix the issue?   How?   They need to claim to you?   In English?   They need to go legal action in this country?   Try to find the bad person?     For small money?   Can you imagine any realistic approach to solve it?

There could be bad person in music under ASCAP/BMI/JASRAC.   However, the database has been establised in each company with explicit contracts so that it's not easy to break.

In another scenario, authors and publishers might conflict.   Typically, there is a exclusive contract between an author and a publisher.   So, the author can't allow you to publish their books without the publisher's permission.   Some authors, however, claims to take money although the contracts are not expired.   How do you make the _right_ decision in such case?

## Appendix F.

Inqury message from me to the Counsel in **March 13, 2009**, Japanese original version.
*I sent this message as PDF in March 18, 2009 as their request.
 The English translated version, see Appendix E.

From: "Motohisa Ohno" <mohno@mohno.com>
To: "BookSettlement_ja" <BookSettlement_ja@rustconsulting.com>
Cc: "Motohisa Ohno" <mohno@mohno.com>; <bookclaims@bonizack.com>
Sent: Friday, March 13, 2009 8:00 PM
Subject: Re: Google Book Search

(looping Boni & Zack LLC, again)

Dear, Rust Consulting, Inc.

I haven't received another answer in Japanese, yet.
However, I'm asking more questions now because I don't want to wait for so long time.
Please see attached text (written in Japanese).
I require the followings;

- Prompt reply for the acknowledgement of receiving this message.
- Estimated date for the answers within 2 business days.
- Answers within reasonable time unless you don't change the timelimit, May 5, 2009, to object the settlement.

Thank you,
Regards, Motohisa

グーグルブック検索の和解に対する疑問について

目次

1. ベルヌ条約
2. 「絶版」の定義
3. 作品と書籍の不一致
4. 米国外からのアクセス
5. 酷い翻訳 6. 申請の正当性

1. ベルヌ条約

ごく一般的な規則として、誰でも、許可できる権利があるものだけを許可することができます。許可する権利がないものを許可することはできません。提示された ASCAP や BMI は、これを説明するよい例です。彼らは、日本の音楽について直接許諾を与える権利を持っていません。しかし、JASRAC（日本の音楽著作権団体）と、お互いの国における音楽著作権の同意を結んでいます。だからこそ、米国で ASCAP/BMI を通じて日本の音楽を利用することができ、日本では JASRAC を通じて米国の音楽を利用することができるのです。これは、この和解とは、まったく別のものです。あなた方は、まず国外の著作権団体と同意を結ぶ必要があるのです。そうしなければ、何も許諾することはできません。

もちろん、ベルヌ条約は、方式に頼らないのであれば、フェアユースの定義のような規則を国ごとに決める余地を認めています。実際、こうした規則は国によって違います。この和解は、この点においても「内国民待遇」を誤解しています。海外の作品は、国内の作品と"同等以上"に保護する必要があります。つまり、この規則は、方式に頼らず、"どの著作権者も拒否できない程度"に、十分に保護しなければならないということです。著作権者が、保護と救済の方法を制御できてはいけないのです。もし、著作権者が規則を拒否できるとすると、その規則を知らないか変更できないような

他の著作権者に対して不公平になります。この和解における書籍版権レジストリがその例です。この和解は、著作権者がレジストリに従って表示使用を禁止できることを認めています。つまり、著作権者は権利の保護を強めるために「方式」を必要としているのです。

別の例として、日本における音楽 CD のレンタル業を挙げてみます。日本では、どんな音楽 CD も、一定の保護期間（著作権者が指定、最大１年）を経過すれば、救済としての料金（レンタル店団体と著作権者団体の間で決定）を支払うことでレンタルすることができます。音楽著作権者は、彼らの CD のレンタルを禁止したり、保護期間を１年を超えて延長することはできません。逆に、レンタル店は手数料を払わずに音楽 CD をレンタルすることはできません。これが「保護と救済」の余地というものです。

今回、和解の影響について、少なくとも日本、おそらく世界中で、新聞広告を出したということは興味深いものです。もし、著作権者が和解の成果として利益だけを得るのであれば、この広告のために多額の費用を費やす必要はありません。しかし、この広告は、和解の結果、多くの著作権者に不利益を与える可能性についてあなたが気づいているということを意味しています。さらに言えば、この書籍版権レジストリのような「方式によって」規則を拒否できる必要があるほどに弱い保護であることにも気付いているのです。この和解は、明らかにベルヌ条約に違反するものです。

もし、和解が「オプトイン」形式であれば、たとえば、著作権者や出版社が自らの意思でレジストリに参加するというものであれば、問題はありません。これは、ASCAP/BMI/JASRAC のような形式です。あるいは、誰もこの和解によって規則を拒否できないのであれば、それも条約にしたがっているということになります。それが米国の著作権者に受け入れられるかどうかは疑問ですが。また、和解が米国内の書籍だけを対象にしているなら、"私"は気にしません。

これは、この和解の深刻な懸念です。

2.「絶版」の定義

事実、多くの「刊行中」の日本の書籍が、米国の流通で扱っていないために、書籍版権レジストリで「絶版」と指定されています。しかし、これらの多くは、たとえば http://amazon.jp/ を通じて輸入できます。こうした書籍を「絶版」と指定することが公正なのでしょうか。実際に出版社で働いている友人のひとりは、このことに気付いていませんでした。この和解を、ほんとうに「絶版」の書籍に関するものだと理解していたからです。また、翻訳されている内容には、多くの人が状況を誤解しかねない深刻な誤訳（後述）があります。

さらに、回答によれば、同じ作品に対する2つの書籍は別の書籍とみなされることになっています。レジストリにしたがうと、ある作品が「絶版」として指定されているものでも、その作品を収録した別の書籍が「刊行中」であるかもしれません。「刊行中」の作品をオンライン公開しないためには、データベースの集約が必要です。そんなことが自動的に可能だとは思えません。

3. 作品と書籍の不一致

問題点の一部は、前述したものです。

著者によっては、自分の作品を収録している書籍をすべてリストアップすることは困難かもしれません。通常は、http://www.googlebooksettlement.com/ において、彼らの著者名をもとに検索できます。しかし、日本には漢字で４文字に満たない作者がたくさんいます。書籍検索では、４文字以上を必要とするため、こうした作者は名前で検索ができません。レジストリが常に正確な情報を持っているわけでもありません。たとえば、50 人以上の作者が書いた短編を収録している書籍があります。著者が、完全なリストを持っていなくても不思議はありません。出版社との契約が失効すれば、リストを保持していなくても、作品の著作権は保持できるからです。

4. 米国外からのアクセス

先に書いた通り、許諾する権利を持っていないのに作品の利用を許諾することはできません。和解に基づいて規則があるだけです。であれば、なぜ国外からのアクセスを制限することが「公正な使用」になるのでしょうか。これは、海外の書籍を犠牲にして、米国民の利益だけを考えているように見えます。

5. 酷い翻訳

ウェブサイト（http://www.googlebooksettlement.com/）は、理解しにくいだけでなく、深刻な誤訳があります。最も深刻だと思う誤訳は以下のものです。

**書籍情報を保持するスプレッドシートをダウンロードすると、次のような項目があります。**

現在「市販中」と区分されている書籍については、和解していますか？

ほとんどのセルは「いいえ」と書かれています。これは日本語としてナンセンスですが、人によっては「いいえ、もちろん私は和解していない」と思うかもしれません。元々のタイトルは、以下のようになっています。

Is the book currently designated as "Commercially Available" under the Settlement?
（和解に基づいて、この書籍は「市販中」と区分されていますか？）

この項目は書籍が市販されているかどうかを示す極めて重要な項目です。2週間前に連絡したものですが、いまだに**修正されていません。**

今回の問い合わせも酷いものでした。回答までに長い時間がかかるばかりか、電話での問い合わせには返事もありません。電子メールでの返事はエンコードが間違っており、回答は日本語を話すような人でない人が書いたものです。

この和解を担当する組織（Rust Consulting?）が、日本の著作権者に対して公正な対応ができるとは、とうてい信じることができません。

6. 申請の正当性

実のところ、どのようにして正しい著作権者から送られてきた正しい申請であるかどうかを判断するのか疑問です。私は、私自身の書籍の状態を変更しましたが、つまり、誰もが、何の承認も証明書もなく、どんな書籍でも編集できるということです。誰かが黙って悪意でデータベースを編集したら、誰が問題を修正できるのでしょう。時々チェックして、問題を見つけた時に伝えればよいのでしょうか。それは英語で伝えるのでしょうか。あるいは自分たちの国で裁判を起こす必要があるのでしょうか。悪意の誰かは、どうやって調べればよいのでしょう。しかも、わずかなお金のために。このような問題が生じたときに、現実的な解決策があるのでしょうか。 もちろん、音楽における ASCAP/BMI/JASRAC においても悪い人がいあるかもしれません。しかし、データベースはそれぞれの企業で契約に基づいて構築されていますから、簡単に壊すことはできません。 別の例として、著者と出版社の間で矛盾が生じるかもしれません。通常は、著者と出版社は独占的契約を結んでいます。したがって著者は、出版社の断りなく、書籍のオンライン発行を認めることはできません。しかし、著者は契約が失効していないのにお金をもらおうと申請を出すかもしれません。このような場合に、どうやって正しい判断を下すことができるのでしょうか。

Appendixes

## Appendix G.

Reply message from the Counsel to me in April 7, 2009, English version.
*The Japanese version in April 2, 2009, see Appendix H.

From: "BookSettlement_ja" <BookSettlement_ja@rustconsulting.com>
To: "Motohisa Ohno" <mohno@mohno.com>
Sent: Tuesday, April 07, 2009 2:50 AM
Subject: RE: Google Book Search

Please see attached.

Dear Mr. Ohno,

Thank you for your inquiry. We apologize for the delay, which is due to travel
and wanting to ensure that you receive full and complete answers to your questions and
concerns.

1. The Berne Convention

We understand your position with respect to what you regard as the "opt in" nature of the settlement, the
Berne Convention and formalities. Although you already have our views of why the Settlement complies
with the Berne Convention, we will attempt to respond to each of your further points below. You first
assert that permission needs to be obtained from a copyright organization outside the United States in
order to exploit rights from copyright owners in that country in the United States. With great respect, we
do not agree with that suggestion.

First, the settlement, if approved, will provide authorization from class members worldwide, but it does so
only with respect to their United States copyright interests. As we explain below, in most situations
copyright owners are free to agree to authorize use of their works in any territory on a non-exclusive basis.
Furthermore, to the extent that they have granted exclusive rights to a national copyright organization,
then it is that copyright organization that is the "rightsholder" under the settlement, and that
organization should claim books under the settlement.

From our correspondence, it seems that it may be useful to summarize the procedures and effects of class
action lawsuits in the United States. We realize that such a procedure is not common outside the United
States and is not available in Japan.

In the United States, an individual may bring a lawsuit against someone who has violated his or her legal
rights on behalf of both himself and "a class" of all individuals whose legal rights have been similarly
violated. Class actions can be used to enforce nearly all forms of legal protections, such as
anti-discrimination laws, product defect laws, and corporate securities laws. Class action lawsuits are
also used in the copyright area, where the actions of one or more parties (defendants) infringe the rights of
multiple plaintiffs in identical ways. In this case, a group of copyright holders brought a lawsuit against
Google for copyright infringement on behalf of all other copyright holders whose U.S. copyrights in books
had been allegedly infringed by Google. Whether the books were published in the United States or Japan
or any other country, there is no absolutely no difference in the nature or scope of Google's alleged
infringements. For that reason, the class action suit that was filed included all copyright owners, both
authors and publishers, and without regard to whether they reside within or outside of the United States,
and without regard to the place of first publication of the books. The suit, as originally filed, made no
distinction between United States and non-United States persons and works because, under United
States copyright law, protection against infringing behavior applies equally to United States and
non-United States persons.

Like any lawsuit between private parties, a class action lawsuit can be settled on terms that are mutually
agreed upon by the parties. Here, the parties were the author and publisher representatives of the class

(as plaintiffs) and Google (as defendant). When settling a class action, however, United States law provides additional protections for members of the plaintiff class who were not at the settlement negotiations. A class action settlement must be explicitly approved by a court as fair, reasonable, and adequate to the members of the class as a whole. In addition, as a matter of fairness, reasonable effort must be made to notify the class of the settlement because class members will be bound to the terms of the settlement unless they "opt out" of the settlement. Opting out of the settlement means that the class member preserves all of his rights to bring a lawsuit against the defendant.

Class action lawsuits can and often do include class members from outside the United States. They include lawsuits brought to remedy violations of the securities laws (where shares are held worldwide, and a shareholder located outside the United States would have a right to sue for violation of such law) or to remedy other types of violations (such as the Holocaust claims litigation, where class members, victims of the Holocaust, were located in many countries worldwide).

In all cases, there is a requirement that "notice" be provided to class members, and that the notice be the best practicable notice possible. Notice does not have to reach every single class member for class members to be bound. In this case, a United States federal judge has approved the notice program that we are following. In this case, please note that only claims under United States copyright law are being released by class members who do not opt out. Other class action settlements approved by federal courts have broader scope, and may release claims that could be brought under the laws of other countries, as well. In this case, however, the scope of the settlement is limited to claims that have been brought, or could be brought, in the United States under the United States Copyright Act.

Second, the settlement only provides non-exclusive rights to the Registry to authorize Google to engage in certain activities. The Registry's authorization to Google also is non-exclusive. The Registry may authorize third parties if it obtains the consent of claiming Rightsholders to do so.

Furthermore, at any time, a class member (whether in the United States, Japan, or elsewhere) can enter into separate agreements with other organizations (such as the Copyright Clearance Center) or with Google or any other user of the class member's work. Such non-exclusivity is an essential element of the settlement. In this regard, the settlement works just like ASCAP/BMI, the examples you cite. Those arrangements are (and must be, under United States law) non-exclusive. Any owner of a musical work can license works separately and directly to end users; licensing works through ASCAP/BMI is a convenience for both copyright owners and performers of musical works, but it is not required. Similarly, unless a Japanese musical work copyright owner has entered into an exclusive license with JASRAC, that copyright owner would be free to enter into its own arrangements with United States users. Again, although ASCAP/BMI and its arrangements with JASRAC may be convenient for both copyright owners and users, they are not exclusive.

At any time, under the settlement, any Rightsholder can withdraw its authorization to Google to display books by instructing Google to exclude one, more or all of its books from display uses. Prior to April 2011, the Rightsholder also can withdraw all authorizations from Google by asking that the books be removed altogether from all servers.

In short, we do not share your view that the right to exploit the United States copyright interest in Japanese books must involve an agreement between the Registry and a Japanese licensing organization. It is true that Japanese rights organizations can claim books, either as agents or as exclusive licensees of Japanese authors and publishers. In such cases, the Japanese rights organizations would have to have the right (or mandate) from their members. Having Japanese rights organizations files claims for their members also may be convenient for both the Registry and for the Japanese authors and members.

We are unaware of any provision of United States law that would prohibit a user located in the United States from entering into an arrangement directly with copyright owners in Japan, that is, without going through a Japanese rights organization. The class action settlement, if and when approved by the federal court, itself establishes such a direct arrangement. Through the class action settlement, each class member does authorize Google to engage in certain activities, with the Book Rights Registry providing important clearing and revenue distribution functions.

We do not believe that the settlement is based on a "mistaken understanding" of national treatment. Class members, whether domiciled within or outside the United States, are treated equally. Indeed, the settlement does not distinguish between United States and non-United States class members. We do not share your view that there is any difference between the two groups of class members. They have identical rights under the settlement.

The settlement does distinguish between works based on their place of first publication. In this regard, however, United States works are disadvantaged, as compared to other works: United States works must have been registered with the Copyright Office before January 5, 2009 to be covered by the settlement, and be eligible for its benefits. There is no registration requirement for works that are not United States works. Thus, we believe that Japanese works are protected at least equally to United States works.

We wish to correct your misimpression about the newspaper advertisements you saw in Japan. They are part of the extensive worldwide notice program approved by the federal court, discussed above. Publications of summary notice are a standard and widely accepted practice in notifying class members of a settlement. In this case, plaintiffs published notice in hundreds of publications worldwide, to supplement the program of providing direct notice to members of the settlement class.

Finally, the settlement only covers books "in" the United States and only allows for their exploitation in the United States. If plaintiffs had excluded books first published outside the United States, there may have been an unfairness that some could have argued would have violated the spirit of the Berne Convention.

In summary, we do not share your view that the prohibition on formalities in the Berne Convention applies to the settlement. The settlement is not an act of legislation of the United States Congress. The settlement does not treat non-United States works (and copyright owners) worse than United States works (and copyright owners). The fact that the settlement grants all Rightsholders the ability to exclude or remove books does not, in our view, implicate the Berne Convention.

2. The definition of "out-of-print"

Under the Settlement, whether a book is "in-print" or "out-of-print" determines the split of revenues between authors and publishers, and who among them has the right to manage ways in which the book is displayed. Rightsholders may at any time challenge Google's initial categorization of a book as "in-print" or "out-of-print."

Whether a book is "commercially available" determines Google's initial ability to display a book. If a book is determined to be "not commercially available," Google will be able to display the book without the express authorization of the Rightsholder. As you appreciate, at any time the Rightsholder may instruct Google not to display the book. If the book is deemed to be "commercially available," Google will not be able to display the book unless the Rightsholder expressly grants permission.

If a book is determined to be "commercially available," it will initially be categorized as "in-print." If a book is determined to be "commercially unavailable," it will initially be categorized as "out-of-print."

The initial determination of whether a book is "commercially available" depends on whether U.S. customers can purchase a new copy of a book through customary channels of trade. If, as you note, a book is indeed available to U.S. customers through Amazon's Japanese website, then the book will be classified as "commercially available." Indeed, the parties to the settlement have stated that if a book is "commercially available" outside the United States – such that it could be purchased by users in the United States – the book should be regarded as "commercially available" within the United States.

You identify certain issues with the metadata included in the database. Multiple sources are used to assemble this database. We have recently observed that some of the metadata providers have inconsistent records. Due to the duplication of metadata records, one work can appear as two different records. This is because metadata records are not always tied to specific works. Google has decided not to aggregate such

records into a single record, unless it appears reasonably clear that the two records refer to the same work. When Google digitizes a book, it will have better information about that book and will be able to correct the metadata and match Rightsholders' claims with actual books.

In order to accurately determine the commercial availability of books, Google is compiling a database based on information acquired from metadata providers both within and outside the U.S. This database is being updated and enhanced continuously. Over time, we expect that this will lead to more accurate classification of Japanese works available in Japan that can be purchased by U.S. customers. For claiming Rightsholders, of course, the initial classification of a book is not as important, because a Rightsholder can exclude the book from all display uses, or remove the book entirely, without regard to whether it is classified as commercially available or not commercially available.

In response to your question about classifications for two different publications of a single work: The Settlement provides that if any publication of a work is classified as "commercially available," all other books containing that work (such as earlier editions) will automatically be classified as "commercially available" (meaning that Google will not be able to display the book without permission). Thus, regardless of the classification by the metadata providers or in the database, none of those books may be displayed without the Rightsholder's express authorization.

3. Discrepancy between the works and the books

Thank you for these comments. We are actively working with Google to improve the database and the claiming interface, and we will pass along this issue facing Japanese authors. You indicate that you have claimed your own books. If so, you have some familiarity with the finding function on the settlement website. Your comment refers to the finding function on Google Book Search, which is available to the public. To which site are your comments directed?

Under the Settlement, short stories included in books may qualify as "Inserts." If so, they will be covered by the terms of the Settlement. The author should claim his Insert through the claiming process. If the rights in a short story have reverted to the author, as you mention, authors may claim that Insert and indicate that rights have reverted during the claiming process. Rightsholders of Inserts can exclude Inserts from all display uses.

4. Access from outside the United States

You are correct that the Settlement only authorizes Google to display Books to readers within the United States. This is because the Settlement only releases claims under U.S. copyright law. Class members who own United States copyright interests (whether they are located in Japan or elsewhere) are releasing only those claims. (These are claims that they possess as a result of the Berne Convention, United States law implementing the Berne Convention and Google's activities, which plaintiffs alleged to be infringing.) At any time, authors or publishers of works outside of the United States can instruct Google to not display their books to readers within the United States.

We do not fully understand your reference to "fair use." Principles of fair use are not applicable to Google's rights under the Settlement. You seem to be asserting that it is unfair for users from outside the United States to not have access to books scanned and displayed by Google. The settlement does not authorize Google to scan a book outside the United States. The settlement does not authorize Google to display a book outside the United States. But, the settlement does not prohibit those activities by Google. Thus, the settlement is entirely neutral on uses outside the United States. Under the settlement, Google is free to scan and display outside the United States, but may be at risk for copyright infringement, under national law (for example, in Japan) if it does so.

In short, the settlement is fully consistent with the principles of territoriality and copyright. Plaintiffs' position is that Google was infringing United States copyright rights when it scanned and displayed snippets in the United States without authorization. The settlement settles only those United States law

claims and only authorizes Google to display content in the United States.

5. Terrible translation

The accuracy of the translations of the Settlement Notice and Claim form is among our highest priorities. Professional translators were used to prepare the Japanese translations of the claiming website and forms. We are currently looking into the translation error that you have referenced. To the extent you think there are other errors in our translations, please let us know.

6. Legitimacy of applications

The integrity of the claiming process is central to the Settlement. The parties have implemented a number of security measures to protect the claiming database from unauthorized outside access.

No person has access to the metadata records or should be able to edit specific records, or damage the integrity of the database as a whole.

Only claimants can assert claims in a book. If you have claimed a book, you will know if anyone else subsequently claims the book or has already claimed the book. Both an author and a publisher may claim one book, for example. The "book details" page identifies whether someone else has claimed your book. If this happens you will be asked whether you want to contact the other claimant, to resolve the conflict (if there is one).

If the person who claims your book is not a Rightsholder (for example, is not a publisher of a book you wrote), then the settlement includes procedures for challenging claims. If you are unable to work out the dispute with the other claimant, then the Registry is available to resolve claims.

You also ask about persons who claim books with malicious intent or to commit fraud. With respect to books that are claimed by legitimate Rightsholders, they will receive notice of other claimants and will be able to take action, themselves or through the Registry. For books that are not claimed by anyone at all, the Registry will have fraud detection and security measures in place. You also ask about contradictions between authors and publishing companies. For books that are classified as "in print," the publisher must take the initiative to authorize Google to display the books. The author cannot claim the book and authorize such exploitation on his own. Thus, there is no possibility – for an in-print book – of an author authorizing exploitation and receiving money without the publisher also making the same authorization. In all cases, before instructing Google to include a book in one or more display uses, the Registry must obtain the initial authorization of the publisher. Even if the author authorizes exploitation of an in-print book, the settlement expressly provides that the Registry must pay all money from such exploitation to the publisher; the publisher, in turn, would share the revenues with the author. In no situation, would the Registry pay revenues from exploitation of an in-print book directly to the author. Thus, we do not understand how the author could profit in the situation you describe.

For out of print books, the Registry pays the author and the publisher shares of revenue directly to the author and the publisher. If an author claims an out of print book, the author receives 65% of the revenues received by the Registry (for books published before 1987) and 50% of the revenues received by the Registry (for books published in 1987 and thereafter). These amounts will be paid by the Registry to the author regardless of whether the publisher ever claims the book. Similarly, the Registry will pay the publisher's share to the publisher even if the author never claims the book.

We believe the Registry will be an effective way to administer the Settlement and facilitate the resolution of conflicting claims. Your email mentions "All of this, for only a small amount of money." We assume by this you are referring to the minimum $60 cash payment per work for Google's past infringement. Of course, where Google is displaying works within the United States, Rightsholders also will receive a share of revenues earned for advertising, institutional subscriptions sales, and consumer purchases. Moreover, the Settlement does not preclude the Registry from pursuing (with Rightsholders' approval) additional revenue opportunities in the future. For many authors in the United States, however, there is the added,

though non-economic, interest in participating in a program that allows readers to discover books that are only in a few United States libraries and, absent the settlement, cannot be easily found or read by users.

Please let us know if you have any additional questions.

Appendixes

## Appendix H.

Reply message from the Counsel to me in April 2, 2009, Japanese version.

---

From: "BookSettlement_ja" <BookSettlement_ja@rustconsulting.com>
To: "Motohisa Ohno" <mohno@mohno.com>
Sent: Wednesday, March 11, 2009 2:35 AM
Subject: RE: Google ブック検索について

Motohisa Ohno,

Attached is a PDF file.

Google Book Search Settlement Administrator
c/o Rust Consulting

P.O. Box 9364

Minneapolis, MN 55440-9364

United States of America
This message (including any attachments) may contain confidential or otherwise privileged information
and is intended only for the individual(s) to which it is addressed. If you are not the named addressee you
should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if
you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission
cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for
any errors or omissions in the contents of this message or that arise as a result of e-mail transmission. If
verification is required please request a hard-copy version from the sender.

Rust Consulting, Inc.
www.rustconsulting.com

---

拝啓

大野様

この度はお問い合せいただきましてどうもありがとうございました。出張のため、および貴殿のご質問およびご懸念に対して完全かつ全面的にお答えすることを徹底するために、ご返答が遅れましたことをお詫び申し上げます。

1. ベルヌ条約
私どもは、貴殿が「オプトイン」とみなされるところの和解の性質、ベルヌ条約、および形式における貴殿のご見解を理解いたします。この和解がベルヌ条約に従うものである理由につきましては、貴殿は私どもの観点をすでにご存知でいらっしゃいますが、以下において貴殿のお問い合わせの要点に対しまして一つずつお答えするよう努めさせていただきます。

貴殿はまず、米国において米国外の国の著作権保有者からの権利を利用するためには、米国外の著作権組織から許可を取得する必要があると主張されています。大変残念ながら、私どもはこのご進言には同意いたしかねます。第一に、本件和解は、もし承認されれば、世界中の集団訴訟の集団構成員から承認されることになりますが、それは米国内の著作権の利害関係においてのみの承認です。以下に説明いたしますとおり、大半の状況においては、著作権保有者は、本人の作品の使用を非独占ベースでいかなる領域においても自由に承認することができます。さらに、彼らが国内の著作権組織に独占権を付与済みである場合には、和解の下での「権利保有者」はその著作権組織となり、当該組織が和解に基づき書籍の権利を請求すべきとなります。

Appendixes

貴殿とのやりとりからお察しいたしますに、米国における集団訴訟の手続きと効果に関する簡単な説明をご覧いただくことが有用であるように見受けられます。このような手続きは米国以外の国々では一般的ではないこと、日本では適用されていないことを私どもは理解しております。

米国では、一個人は、本人の法的権利を侵害した者に対し、本人自身ならびにその法的権利が同様に侵された他の個人全員の「集団」の両方を代表して、訴訟を提起することができます。集団訴訟は、例えば差別禁止、製造物欠陥、法人の証券に関する法律など、ほぼすべての形体の法的保護を執行するために利用可能とされています。また集団訴訟は、著作権分野においても、単数または複数の当事者(被告)の行為が複数の原告の権利を同一の方法で侵害する場合に、利用されます。当該訴訟事件におきましては、著作権保有者の一集団が、本人の書籍の米国著作権がGoogle によって侵害されたと主張する他の著作権保有者全員を代表して、Google に対して著作権侵害訴訟を提起しました。書籍が米国、日本、またはそれ以外の国で出版されたか否に関わらず、Google のへ申し立てられた侵害容疑の性質または範囲には相違は一切ありません。従って、提起された当該集団訴訟には、その居住地が米国内か米国外かに関わらず、また書籍の最初の出版地域を問わず、著作者と出版社の両方のすべての著作権保有者が含まれました。当該訴訟は、当初に提起されたとおり、米国人であるか否か、米国の作品であるか否かの区別を一切つけておりません。なぜなら米国の著作権法上、侵害行為に対する保護は米国人と非米国人に平等に適用されるからです。

集団訴訟は、民間当事者間の訴訟と同様に、両当事者間により相互に合意された条件での和解が可能です。当該集団訴訟事件においては、両当事者とは、著者および出版社の集団代表(原告)と Google(被告)でした。しかしながら、米国の法律では、集団訴訟の和解に際し、和解交渉に加わらなかった原告の集団構成員には追加の保護が与えられます。集団訴訟の和解は、集団全体として集団構成員にとって公正、妥当、かつ適切であると、裁判所により明示的に承認されなければなりません。さらに、集団構成員は「オプトアウト」しない限りは和解の条件に拘束されることになることから、公正さの問題として、和解について集団に通知するうえで相応の努力が払われなければなりません。和解をオプトアウトすることは、集団構成員が被告に対して訴訟を提起する本人のすべての権利を保持することを意味します。

集団訴訟は、米国外からの集団構成員を含めることができ、実際に頻繁に含めています。これらには、証券法違反(株式が世界中で保有され、米国外に居住する株主が証券法違反のかどで提訴する権利を有する場合)、または、その他の種類の違反(集団構成員がホロコースト犠牲者であり、世界中の多数の国々に居住する、ホロコースト損害賠償請求訴訟)に対する救済を求めて提起された訴訟などが挙げられます。

いかなる集団訴訟事件においても、「通知」が集団のメンバーに提供されること、その通知が実際的に可能な限り最善の通知であることが要件とされます。通知は、結束する集団の全構成員一人一人に届く必要はありません。当該訴訟事件におきましては、米国連邦裁判所の判事は、私どもが従っている通知プログラムを承認しました。当該訴訟事件に関しましてはオプトアウトを選択していない集団構成員メンバーにより米国著作権法上の請求のみが解決されることに、ご注目ください。連邦裁判所によって承認された他の集団訴訟の和解は、より広範囲を対象としており、他国の法律の下に提起され得た請求も解除する可能性もあります。しかし、当該訴訟事件におきましては、和解の範囲は米国著作権法の下に米国内で提起されました、または提起され得た申立てに限定されています。

第二に、和解は、「レジストリ」に対して Google が特定の活動に従事することを正式に認可する非独占的な権利を提供するにすぎません。レジストリによる Google の正式認可もまた非独占的なものとなります。レジストリは、請求当事者である権利保有者の然るべく同意を得た場合には、第三者を正式に認可することができます。

さらに、集団構成員(その所在が米国、日本、あるいはその他を問わず)は、随時、他の組織(著作権クリアランスセンターなど)、Google、または当該集団構成員の作品の他の使用者との間に別個に契約を締結することもできます。かかる非独占性は和解に必要不可欠な要素です。この点につきましては、和解は、貴殿が引用なさいました ASCAP/BMI の事例のように機能します。当該取り決めは非独占的です(そして米国法上は非独占的でなければなりません)。音楽作品のいかなる所有者もその作品をエンドユーザーに個別にまたは直接的にライセンスを供与することができ、ASCAP/BMI を通した作品のライセンス供与は著作権保有者にとっても音楽作品の実演者にとっても便利なものですが、命じられたものではありません。これと同様に、日本の音楽作品の著作権保有者は、JASRAC との間に独占的ライセンス契約を締結済みでない限り、米国のユーザーとの間に本人自身の取決めを自由に締結することができます。ここでも再び、ASCAP/BMI と JASRAC との取り決めは著作権保有者とユーザーの両方にとって便利となり得ます、それらは非独占的です。

当該和解の下では、権利保有者は随時、Google に対して本人の単数、複数、または全部の書籍を表示利用から除外するよう指示することにより、Google に与えた書籍を表示する正式認可を撤回することができます。権利保有者はさらに、2011 年 4 月より前には、書籍を全サーバーから除外するよう依頼することにより、Google から正式認可を全面的に撤回することもできます。

端的に申し上げますと、米国の著作権の利益を日本の書籍における米国著作権の利権を利用する権利は、レジストリと日本のライセンス供与組織との間の協定が関与しなければならないとの貴殿のご見解には、私どもは賛同いたしかねます。日本の権利組織が日本の著作者および出版社の代理人または独占的ライセンシーとして書籍に対する権利を主張することができることは事実です。かかる場合、日本の権利組織はその会員から権利（または命令）を付与されていなければならないことになります。さらに、日本の権利組織にその会員のために申立てを提起させることは、レジストリにとっても日本の著作者や会員にとっても便利なことかもしれません。

私どもは、米国在住のユーザーが日本国内の著作権保有者と取り決めを直接、すなわち日本の権利組織を通さずに、締結すること禁止する米国の法律の条項を存じておりません。当該集団訴訟の和解は、連邦裁で承認されればその時点において、そのこと自体が直接の取り決めを確立したことになります。この和解により、各集団構成員は、Google が特定の活動に従事することを正式に認可し、版権レジストリが重要な決済および収益分配の機能を提供することになります。

私どもは、和解が内国民待遇原則の「誤解」に基づいたものであるは考えておりません。集団構成員は、米国内に居住するか否かを問わず、同等に扱われます。実際、和解は米国内の集団構成員と米国外の集団構成員を区別していません。この二組の集団構成員の間には何らかの差異が存在するという貴殿のご見解には私どもは賛同いたしかねます。集団構成員は和解上。同一の権利を有します。

和解は、最初に出版された場所に基づき作品を区別しています。しかし、この点については米国の作品は他国の作品に比べて不利になります。米国の作品は、和解の対象とされ和解の便益に適格とされるには、2009 年1月5 日より前に米国著作権局に登録済みでなければならないのです。米国の作品でない作品に対しては、登録要件は一切ありません。したがいまして、日本の作品は米国の作品と少なくとも同等に保護されているものと私どもは確信しております。

私どもといたしましては、貴殿が日本でご覧になった新聞広告から受けられた誤解を解くことができれば、と望む次第です。新聞広告は、上述いたしましたとおり、連邦裁により承認された全世界を対象とした包括的通知プログラムの一環です。略式通知の公表は、集団構成員に和解を通知するための標準的で広く認められている慣行です。当該訴訟事件におきましては、原告は、集団構成員に直接通知を提供するプログラムを補完するものとして、世界中で数百紙誌にも及ぶ刊行物上で通知を公表しました。

最後に、和解は米国内に存在する書籍のみを対象とし、米国内での使用のみを許可します。仮に原告が米国外で最初に出版された書籍を除外したならば、ベルヌ条約の精神にそむくものとして異議が主張され得るような不公正さが生じていたかもしれません。

以上を要約いたしますと、和解にはベルヌ条約における正規の形式に対する禁止が適用されるとの貴殿のお考えには私どもは賛同いたしかねます。和解は米国連邦議会の立法行為ではありません。和解は、米国外の作品（およびその著作権保有者）を米国の作品（およびその著作権保有者）に比べて劣悪に扱うものではありません。和解が権利保有者全員に書籍を除外または撤回する能力を付与している事実は、私どもの見解におきまして、ベルヌ条約の含意にほかなりりません。

2.「絶版」の定義

和解の下では、書籍が「出版中」か、それとも「絶版」かが、著作者と出版社の間の収入の配分の割合、および二者のいずれが書籍の表示方法を統制する権利を有するかを、決定します。権利保有者は、Google による書籍の「出版中」または「絶版」の当初の分類に対し、随時、異議を申し立てることができます。

書籍が「市販されている」か否かが、書籍を表示する Google の当初の能力を決定します。書籍が「市販されていない」と判断された場合には、Google は権利保有者の明示的な正式認可がなくとも書籍を表示することができます。貴殿もご理解のとおり、権利保有者は Google に対して書籍を表示しないよう随時指示することができます。書籍が「市販

されている」とみなされれば、Google は、権利保有者が明示的に許可を付与しない限りは、その書籍を表示すること ができません。

書籍は、「市販されている」と判断された場合、当初は「出版中」として分類されます。「市販されていない」と判断され た場合には、当初は「絶版」として分類されます。

書籍の「市販されている」か否かの当初の判断は、米国の顧客が新品の一冊の書籍を一般の通商チャネルを通して 購入できるか否かに依拠します。貴殿がご指摘されましたように、書籍がアマゾン・ドット・コムの日本のウェブサイトを 通して米国の顧客にも事実入手可能である場合には、その書籍は「市販されている」と分類されます。実際、和解の 両当事者は、書籍が米国外で「市販されていて」米国内のユーザーにも購入可能である場合には、その書籍は米国 内で「市販されている」とみなされるべきであると名言しています。

貴殿は、データベースに含まれているメタデータによる特定の問題を取り上げられておられます。かかるデータベース の収集に多数のソースが利用されています。私どもでは最近、メタデータのプロバイダーの一部が一貫性のない記録 を有していることを知りました。メタデータの記録の複製のために、一つの作品が二つの異なる記録のように見える可 能性があるのです。これは、メタデータの記録が常に特定の作品に連結しているとは限らないからです。Google は、 二つの記録が同一の作品に言及していることが合理的に明確であると考えられない限り、かかる複数の記録を単一 の記録にまとめないことを決定しました。Google は、書籍をデジタル化する際にはその書籍に関するよりよい情報を 有しているはずであり、メタデータを是正し、権利保有者の主張と実際の書籍とを整合することができるでしょう。

Google は、書籍が市販されているか否かを正確に判断するために、米国内外のメタデータ・プロバイダーから入手し た情報に基づいたデータベースを編集しています。このデータベースは継続的に更新され強化されます。この作業が、 時を経て、日本で入手可能であり米国の顧客が購入できる日本の作品のより正確な分類につながることを、私どもは 期待しております。無論のことながら、請求当事者である権利保有者にとって、書籍の当初の分類はそれほど重要で はありません。なぜなら、権利保有者は、市販されているか否かの分類に関わらず、書籍を表示利用から除外するこ とも、書籍を全面的に撤回することもできるからです。

単一の作品の二つの異なる出版物に関する分類に関する貴殿の質問につきましては、以下のとおりお答えいたしま す。和解は、ある書籍の一つの出版物が「市販されている」と分類された場合には、その作品を包含する他のすべて の書籍（早期版も含みます）も「市販されている」と自動的に分類される、と規定しています。（すなわち、Google は、 許可なしにはその書籍を表示することはできないという意味です。）したがいまして、メタデータ・プロバイダーによる分 類かデータベースにおける分類かに関わらず、それらの書籍はいかなるものも権利保有者の明示的な正式認可なし には表示されてはならないことになります。

## 3. 作品と書籍の相違

このご意見をいただきましたことをありがたく存じます。私どもは Google と積極的に協力し、データベースならびに請 求インターフェイスの改善に努めております。日本の著作者が直面しているこの問題は、必ず先方に伝えます。貴殿 ご自身がご自分の書籍について権利を主張なさったと示唆されておられますが、もしそうでいらっしゃるなら、和解の ウェブサイトにある検索機能についてご存知でいらっしゃると存じます。貴殿のご意見は、Google のブックサーチ検 索機能について言及されていますが、これは一般の方々に利用可能とされているものです。貴殿のご意見はどのウェ ブサイトについて述べられたものでしょうか。

和解の下、書籍に含まれる短編（ショートストーリー）は「挿入物」に適格とされる可能性があります。もしそうされた場 合には、それらは和解の条件の対象とされます。著作者は、請求過程を通じて本人の挿入物を主張すべきです。貴 殿が言及されましたとおり、短編における権利が著者に戻された場合には、著作者はその挿入物について権利を主 張し、権利が請求過程中に戻されたことを示唆することができます。挿入物の権利保有者は、挿入をすべての表示利 用から除外することができます。

## 4. 米国外からのアクセス

和解は Google に書籍を米国内の読者に対して表示することのみを承認します。貴殿はこの点において正しくていら っしゃいます。これは、和解は、米国著作権法上の請求を解除することに限られるからです。米国の著作権の利権を 保有する集団構成員（居住が日本の国内または国外を問わず）は、その請求のみを解除することになります。（当該

請求は、ベルヌ条約、ベルヌ条約を実践する米国の法律、ならびに Google の活動の結果として、集団構成員が有するものですが、原告はこの Google の活動に対して侵害を申立てました。)米国外の著作者および出版社は、随時、Google に対して米国内の読者に対して書籍を表示しないよう指示することができます。

私どもでは、貴殿が言及されますところの「公正な利用」の意味を完全に理解できずにおります。「公正な利用」の原則は、和解上の Google の権利には適用されません。貴殿は、Google によってスキャンされ表示された書籍にアクセスできないことは米国外のユーザーにとって不公平であると主張されているようにお見受けします。しかしながら、和解は、Google に対して米国外の書籍をスキャンすることを正式に認可していません。和解はまた、Google に対して米国外の書籍を表示することも正式に認可していません。しかし、和解は Google のかかる活動を禁止しているわけでもありません。したがいまして、和解は米国外での利用においては完全に中立です。和解上、Google は米国外では自由にスキャンし表示することができることになりますが、もしそうした場合には、国内法（例えば日本など）上で、著作権法侵害のリスクを冒す可能性があります。

端的に申しますと、和解は属地主義と著作権の原則に完全に一致するものです。原告の主張は、Google が米国内で無断に書籍の断片をスキャンし表示した際に米国の著作権法を侵害した、ということでした。和解は、米国法律上における請求のみを和解し、Google の米国内におけるコンテンツの表示のみを正式に認可するものです。

5. 劣悪な翻訳

和解通知書と請求書式の正確な翻訳は、私どもの優先事項の中でも最も重要なことです。請求のウェブサイトと書式の翻訳には専門の翻訳者が雇用されました。私どもでは現在、ご指摘いただきました誤訳を検討しております。さらなる誤訳にお気づきになられました場合には、是非とも私どもまでお知らせ下さい。

6. アプリケーションの合法性

請求過程の完整性は和解の中枢を成します。両当事者は、請求データベースを外部からの不正アクセスから保護するために、多数のセキュリティ対策を実施しています。

いかなる人も、メタデータの記録にアクセスできず、特定の記録を編集することもデータベース全体の整合性を損なうこともできないはずです。書籍における請求は、請求者のみが主張することができます。貴殿が貴殿の書籍に関して請求がなされていれば、その後に誰か他の人が同一の書籍またはすでに請求済みの書籍について請求した場合、そのことが判明します。例えば、著作者と出版社の両方が同一の書籍について請求する可能性がありますが、「書籍の詳細」のページによって、誰か他の人が同一の書籍について請求したか否かが明確にされます。このような事態が発生した場合には、その相反（もしあれば）の解決のためにかかる他の請求者に連絡を取るかどうかを質問されます。

書籍に関する請求者が書籍の権利保有者ではない場合（例えば、貴殿の執筆された書籍の出版社でない場合）、和解には、請求に対して異議を申し立てる手続きも含まれます。他方の請求者との間で紛争を解決できない場合には、レジストリを申立て解決に利用できます。

貴殿はさらに、悪意をもって、または詐欺を行う意図で書籍の請求を行う者に関してお尋ねでいらっしゃいます。合法的な権利保有者によって請求される書籍に関しては、当該権利保有者は他の請求者についての通知を受け、ご本人、またはレジストリを通じて措置を講じることができます。誰によっても一切請求されていない書籍に関しては、レジストリが詐欺の検知対策およびセキュリティ対策を整備するはずです。

貴殿はまた、著作者と出版社との間の矛盾についてお聞きでいらっしゃいます。「出版中」として分類されている書籍に関しては、出版社が Google による当該書籍の表示を正式認可するためのイニチアチブを取らなければなりません。

著作者は、書籍を請求すること、またはかかる利用を自分自身で正式認可することはできません。したがいまして、出版中の書籍に関しましては、著作者が、利用の正式認可を行う出版社なしに、同一の正式認可を行い金銭を受領する可能性は皆無です。あらゆる場合において、レジストリは、Google に対して書籍を単数または複数の表示利用のために含めるよう指示する前に、出版社から当初の正式認可を得なければなりません。著作者が出版中の書籍の利用を正式認可する場合でさえも、和解では、レジストリはかかる利用から稼得された金額を出版社に全額支払わなければならないこと、当該出版社は次にかかる収益を著作者と共有することができることを、明示的に規定しています。

いかなる状況においても、レジストリが出版中の書籍の利用からの収益を著作者に直接支払うことは決してありませ
ん。したがいまして、著作者が貴殿の描写なさった状況においていかして利益を得ることができるのかを、私どもは理
解いたしかねます。

絶版の書籍に関しましては、レジストリは、著作者と出版社の収益の分け前を、著作者と出版社に直接支払います。
著者が絶版の書籍について請求を行う場合には、当該著作者は、(1987 年より前に出版された書籍については)レジス
トリが受け取った収益の65%を、さらに(1987 年以降に出版された書籍については)レジストリが受け取った収益の
50%を、それぞれ受領します。これらの金額は、出版社がその書籍について請求するか否かとは無関係に、レジスト
リから著作者に支払われます。同様に、レジストリは、著作者が書籍について請求しない場合でさえも、出版社の分け
前を出版社に支払います。

私どもは、レジストリが和解を管理し相対する請求の解決を促進する効果的な方法であると確信しております。貴殿
は、電子メールに「こんなに大騒ぎしたのに結局これっぽちの少額」と記されていらっしゃいます。これは、Google の過
去の侵害に対して 1 作品当たり最低 60 ドルの現金を支払うことに貴殿が言及なさったものと、私どもは想定いたし
ます。当然のことながら、Google が米国内で作品を表示している場合には、権利保有者は広告、機関サブスクリプシ
ョン売上高、消費者購入から稼得された収益の分け前を受け取ることになります。

さらに、和解は、レジストリが将来において追加の収益の機会を(権利保有者の承認により)追求することを予め除外
していません。とはいえ、米国内の多数の著作者にとっては、米国内のごく少数の図書館のみに収められていて和解
がなければ容易に見つけられることも読まれることもなかったような書籍を、読者が発見することを可能にするプログ
ラムに参加することは、経済的利益ではないものの、付加的な利益に他ならないのです。

他にご質問等ございましたら、どうぞ私どもまでお知らせください。

Jeffrey P. Cunard, Esq. (Publisher Sub-Class Counsel)
Debevoise & Plimpton LLP
555 13th Street, N.W.
Suite 1100 East
Washington, D.C. 20004
Telephone: (202) 383-8043
Facsimile: (202) 383-8118

Michael J. Boni (Author Sub-Class Counsel)
Boni & Zack LLC
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004
610-822-0201
610-822-0206 (fax)
610-348-2526 (mobile)
mboni@bonizack.com

Appendixes

## Appendix I.

Inqury message from me to the Counsel in April 8, 2009, English translated version.
*I translated this for help to understand the original message, too.
 I didn't send the English version to the Counsel.
 The original email written in Japanese, see Appendix J.

From: Motohisa Ohno
To: BookSettlement_ja
Cc: Motohisa Ohno
Sent: Wednesday, April 08, 2009 1:31 AM
Subject: Re: Google Book Search

Dear sir,

I attached a PDF file which have further questions.
Actually, your answers were incomplete and limited so that I was very disappointed.
Please answer to them very soon unless you postpone the time limit.
Don't take too much time to answer this time.

Thank you,
Regards, Motohisa

Mr. Jeffrey P. Cunard
Mr. Michael J. Boni

Thank you for the reply. I, however, was very disappointed with the incomplete and limited answers.

1. The Berne Convention

I didn't mention anything of "Class Action" and I don't think there is issue of the mechanism of class action.   The settlement is regarding to "copyright" so that it affects copyright works beyond the U.S. For example, any legislation for copyright would also affect copyright works beyond the U.S.   Actually, the result of class action is different from legislation because you could still go legal action by excluding from "class".   I don't point it.   So, you don't need to explain the mechanism of class action.

I just mentioned "if the protection way of copyright works depends on any formality, it infringes the Berne Convention" (*1)". "The ability to exclude or remove books" which you mentioned in the last part of the answer #1 is implemented as "The Book Rights Registry" under the settlement.   If a copyright holder may exclude or remove books with the Registry, they can control the copyright protection with the Registry.   That is, the copyright protection depends on a formality.   How can you say "the Registry is not a formality"?

*1 The Berne Convention
http://www.wipo.int/treaties/en/ip/berne/trtdocs_wo001.html
→"The enjoyment and the exercise of these rights shall not be subject to any formality", Article 5 (2).

1-a. Are United States works and non-United States works protected equally?

Your answer says "we believe that Japanese works are protected at least equally to United States works."
I wonder it.   The website
http://www.googlebooksettlement.com/ is translated to Japanese, but the settlement agreement(*2) is still
in English.   That is, you need English skill as well as American people to understand the agreement
accurately.   Actually, the Japanese translated text is not only easy to understand but also serious
mistakes.   And they are not fixed yet.   The summary notice on newspapers is also hard to read as

Japanese text so that most of Japanese people may not know the accurate information. I asked some friends in the publishing industry and found they thought "the settlement is regarding to only out-of-print books. They didn't think they need any action until I told them. (This is also problem because the copyright protection depends on a formality.) Do you have a plan to fix the mis-translate text and notice it to Japanese copyright holders?

In short, Japanese people need "Internet ability", "Aware of mis-translation", "English skill to read the settlement agreement" to understand the agreement accurately. Can you still say "United States works and non-United States works are protected equally?"

On the contrary, if we would have "The Japanese Book Rights Registry" web site written in Japanese, having also the U.S. book information, copy-free as default unless the copyright holders deny, you could still say "United States works are protected at least equally as Japanese works?" Please answer the following quesitons to make my concerns clear;

Q1. How many Japanese have contacted you about the serious mis-translation like me?
Q2. How much (in percentage) Japanese copyright holders understand the settlement agreement in your opinion as the settlement administrator? And why (any evidence)?

*2 The settlement agreement
http://www.googlebooksettlement.com/r/view_settlement_agreement


2. The definition of "Out-of-Print"

You said "a book is indeed available to U.S. customers through Amazon's Japanese website, then the book will be classified as "commercially available." " It was unexpected answer. Currently, the data from the settlement website (http://www.googlebooksettlement.com/) indicates "Out-of-Print" for most of books including recently published. Of course, you may imports with Amazon's Japanese website (amazon.jp). It means the Registry has wrong data for most of Japanese books. Who will fix the data? I don't think publish company and authors are aware of the mistakes. (Please remember there were serious mis-translating.) "if they don't fix the data by themselves, their copyright works are not protected" doesn't mean only infringement of the Berne Convention but also lack of copyright protection.


3. The difference between works and books

It just mean that copyright works will not be protected unless copyright holders keep the accuracy of the registry, a formality, which is denied by the Berne Convention.


4. Access from the outside U.S.

I'm interested in the answer. I, however, don't go further at this moment to focus the other problems.


5. Terrible translation

I found you haven't fixed the mistakes. How long do you need to fix the mistakes? There is less than one month to the limit as you know. Do you have a plan to notice the correction widely? I can easily guess there are a lot of copyright holders who don't take any action because the notice on newspaper is hard to understand or they didn't read the notice. Will you improve the text easily understand as the settlement administrator's responsible?


6. The validation of the proposals

You said "If you have claimed a book, you will know if anyone else subsequently claims the book or has already claimed the book." However, you will know only if you check the information at the website. As I tested, I don't have any notification from the website when another one edits the information which I have already edited. If copyright holders think they don't need any action (as mentioned above), they would not be aware of any bad proposals.

If (bad) someone get money with (wrong) applications of publishing works in bad faith and (correct) copyright holders don't take any action until they are aware, how you treat the case as the settlement administrator?  Do you think you can make the bad person refund?  Otherwise, you disable the works without refunding?

It might be solved if all copyright holders register their works in the Registry and the Registry always send notifications to everyone regarding to the works.  Otherwise, any copyright holders need to check the Registry whether any bad action is there.  This is also a problem because of the Book Right Registry, a formality.

Actually, you didn't answer how you identify whether the proposal is correct.  The Registry doesn't have e-mail address.  Is it possible to identify?


I require answers to these so soon.  Don't take long time like before.

Appendixes

## Appendix J.

Inquiry message from me to the Counsel in **April 8, 2009**, Japanese original version.
\*The English translated version, see Appendix I.

From: Motohisa Ohno
To: BookSettlement_ja
Cc: Motohisa Ohno
Sent: Wednesday, April 08, 2009 1:31 AM
Subject: Re: Google Book Search

Dear sir,

I attached a PDF file which have further questions.
Actually, your answers were incomplete and limited so that I was very disappointed.
Please answer to them very soon unless you postpone the time limit.
Don't take too much time to answer this time.

Thank you,
Regards, Motohisa

Jeffrey P. Cunard 様
Michael J. Boni 様

お返事ありがとうございます。しかし、かなり時間がかかったにも関わらず、お答えは不完全かつ限定的なもので、大変失望いたしました。

1. ベルヌ条約
まず、私は集団訴訟(class action)という制度については何も指摘していませんし、問題とも考えていません。今回の和解が「著作権」に関する取り決めだからこそ、米国外の著作物に影響するのです。集団訴訟の結果でなくても、著作権に対する立法行為によっても、やはり米国外の著作物に影響します。立法行為と違い、集団から除外することで引き続き適法性について争うことはできますが、その点について指摘しているのではありません。したがって、集団訴訟の仕組みを解説くださる必要はありません。

私の指摘は「著作権保護が方式(formality)に依存することは、ベルヌ条約(※1)違反である」ということです。1.の回答の末尾に書かれている「書籍を除外または撤回する能力("the ability to exclude or remove books")」は、今回の和解における版権レジストリによって実装されます。版権レジストリによって書籍を除外できるということは、著作権保護を版権レジストリによって制御できるということです。これは、まさに著作権保護が方式に依存しているということです。どのような見解において、「版権レジストリは方式でない」ということができるのでしょうか。

※1 ベルヌ条約
http://www.wipo.int/treaties/en/ip/berne/trtdocs_wo001.html
→Article 5(2)より "The enjoyment and the exercise of these rights shall not be subject to any formality"

1-a. 米国人と非米国人は同等か

お答えによれば「日本の作品は米国の作品と少なくとも同等に保護されているものと私どもは確信しております("we believe that Japanese works are protected at least equally to United States works")」とのことです。はたしてそうでしょうか。和解サイトは翻訳されているものの、もっとも重要な取り決めを記した和解契約書(※2)は、英文のままです。和解について正確に理解するためには、米国人と同じ程度に英語を読む能力が必要になります。また、和解サイトの日本語訳はわかりにくいだけでなく、先に指摘した通り、誤訳があり、いまだに訂正されていません。新聞に掲載された和解通知書の日本語版はわかりにくいもので、ここから正確な情報を知ることは困難です。出版業界の複数の知り合いに尋ねてみましたが、みな「この和解は絶版書籍に関するもの」だと認識し、私が指摘するまで何らかの対

応が必要と考えている人はいませんでした（これは著作権保護に版権レジストリという方式を採用しているための問題でもあります）。今から和解サイトの誤訳を訂正して、その訂正を著作権者に伝える予定はあるのでしょうか。

端的に言って、日本人が和解を正確に理解するためには「インターネットが使えること」「和解サイトの誤訳に気付くこと」「和解契約書を英文で読む能力があること」といったハードルを乗り越える必要があります。それでもなお、米国の作品と"同等"に保護されている、と言えるのでしょうか。

逆に、日本で「日本独自の版権レジストリを管理するため、日本語のみで記載された Web サイト」が用意され、著作権者が指定するまでは複製自由として米国の書籍を含め手登録された場合、米国の作品は日本の作品と同等に扱われているとお考えになるでしょうか。この疑問を明確にしたいので、以下の質問にお答えください。

Q1. これまでに私と同じように誤訳を指摘した日本人は、何人いましたか？
Q2. 和解管理者として、日本人の著作権者のうち何割が和解契約書を正しく理解していると考えていますか？　その根拠は何でしょうか？

※2 和解契約書
http://www.googlebooksettlement.com/r/view_settlement_agreement


## 2. 絶版の定義

お答えによれば「書籍がアマゾン・ドット・コムの日本のウェブサイトを通して米国の顧客にも事実入手可能である場合には、その書籍は「市販されている」と分類されます（"a book is indeed available to U.S. customers through Amazon's Japanese website, then the book will be classified as "commercially available."）」とのことです。これは非常に意外でした。現在、和解サイトで得られる日本の書籍のほとんどは、最近出版されたものを含めて絶版（Out-of-Print）と分類されています。もちろん、これらは アマゾンの日本のウェブサイト（amazon.jp）を通じて入手できます。つまり版権レジストリの情報は、日本の書籍に関しては、ほとんど間違っているということです。誰がこの修正を行うのでしょうか。出版社も著者も、それほど多くのデータが間違っているとは思っていないでしょう。誰が、修正の必要性を伝え、誰がその責任を負うのでしょうか（深刻な誤訳があったことを思い出してください）。「対応しなければ著作物が保護されない」のであれば、ベルヌ条約に違反するだけでなく、著作権が十分に保護されないことになります。


## 3. 作品と書籍の違い

これも、ベルヌ条約が否定している方式である版権レジストリを整備しなければ、正しく著作権保護が受けられないことを意味しているに他なりません。


## 4. 米国外からのアクセス

非常に興味深いお答えですが、他の点を優先するため、ここではこれ以上は追及しません。


## 5. 劣悪な翻訳
いまだに修正されていないようですが、訳語が訂正されるまでにどれくらいかかるのでしょうか。除外や異議申し立てまで1カ月もないのですが、訳語が訂正されたら、それをどのように周知させるのでしょうか。そうでなくても、新聞に掲載されたわかりにくい和解通知書により、誤解したまま対応を放置している著作権者はかなりいるものと推測します。和解管理者として、自らの責任でわかりやすく改善する意思はあるのでしょうか。


## 6. 申請の正当性
お答えによれば、「貴殿が貴殿の書籍に関して請求がなされていれば、その後に誰か他の人が同一の書籍またはすでに請求済みの書籍について請求した場合、そのことが判明します（"If you have claimed a book, you will know if anyone else subsequently claims the book or has already claimed the book."）」となっていますが、これがわかるのは自分で確認したときだけです。私が調べた限りにおいて、私が申請した後で、誰か別の人が申請を出しても、

そのことが私宛にメールで通知されるわけではありません。前述の通り、対応が必要ないと考えている著作権者の作品については、誰かが不正な申請をしても、気づく可能性はまずありません。

たとえば、正当な著作権者が何の対応しないまま、悪意の第三者が作品の公開に合意して報酬を受け取ったとします。正当な著作権者が後から気付いて作品の公開を停止したい場合、和解管理者はどのように不正請求者から報酬を返還させるのでしょう。あるいは、報酬が返還されない場合でも、正当な著作権者の請求にしたがって、公開を停止するのでしょうか。

こうした問題を避けるためには、すべての著作権者が版権レジストリに登録し、版権レジストリは請求を他の競合する申請者に通知するという仕組みが必要です。そうでなければ、著作権者は、日ごろから版権レジストリに対する不正な申請が行われていないかを確認しなければなりません。これも版権レジストリという方式を採用することの問題です。

そもそも、申請が正当な著作権者によるものだということを、どのようにして判断するのかをお答えいただいていません。版権レジストリには、著者の電子メールが登録されているわけではありません。誰が正当な著作権者であるかを、どのように判断できるのでしょうか。

前回のように時間をかけず、すぐに回答してください。

Appendixes

Appendix K.
The message from me to the Counsel in April 10, 2009 in English.
*They tried to communicate via phone but I didn't think it was good idea. So, I asked to communicate via Instant messaging but they didn't have an IM account.

From: Motohisa Ohno
To: Michael Boni
Cc: Cunard, Jeffrey P. ; thodne@rustconsulting.com ; BookSettlement_ja ; Joanne Zack ; Ohno Motohisa
Sent: Friday, April 10, 2009 11:45 AM
Subject: Re: Google Book Search

Oops,

I'm also asking the following which are in the latest Japanese questions;

Q1. How many Japanese have contacted you about the serious mis-translation like me?
Q2. How much (in percentage) Japanese copyright holders understand the settlement agreement in your opinion as the settlement administrator?   And why (any evidence)?

Thank you,
Regards, Motohisa

From: Motohisa Ohno
Sent: Friday, April 10, 2009 11:29 AM
To: Michael Boni
Cc: Cunard, Jeffrey P. ; thodne@rustconsulting.com ; BookSettlement_ja ; Joanne Zack ; Ohno Motohisa
Subject: Re: Google Book Search

Dear Michael,

Yes, I meant "Instant Messenger".
I'm not sure your working time but what about tomorrow morning (in US)?
http://timeanddate.com/worldclock/fixedtime.html?day=10&month=4&year=2009&hour=22&min=0&sec=0&p1=248

By the way, have you read my latest questions? (I hope so)
I'm asking the followings;

- Do you think if "The Book Rights Registry" is a formality or not?   If not, why?
- Do you think if United States works and non-United States (especially, Japanese) works protected equally although the settlement agreement is

written in English and translated text of http://www.googlebooksettlement.com/ is not only hard to read but also have many mistakes?
- If a book is classified as "commercially available" which is available through http://amazon.jp/, most information of the Registry are wrong.

Who will fix the mistakes?
- What plan do you have for the current terrible translation?
- How do you identify whether an application to the Registry is proposed from the correct copyright holder?

Please see the latest questions for the details.

Appendixes

Appendix L.
The message from the Counsel to me in April 12, 2009 in English.
*They didn't provided Japanese answer corresponding to this message.

From: Michael Boni
To: Motohisa Ohno
Cc: Cunard, Jeffrey P. ; Joanne Zack ; thodne@rustconsulting.com
Sent: Sunday, April 12, 2009 5:54 AM
Subject: RE: Google Book Search

Dear Motohisa:

Our responses follow your questions below, in blue.

Kind regards,

Mike and Jeff

**Michael J. Boni**

**Boni & Zack LLC**

**15 St. Asaphs Rd.**

**Bala Cynwyd, PA 19004**

**610-822-0201**

**610-822-0206 (fax)**

**610-348-2526 (mobile)**

**mboni@bonizack.com**

**CONFIDENTIALITY NOTICE:**

**The foregoing message is intended only for the addressee. The contents of this message may be subject to the attorney-client privilege, the attorney work product privilege, or other applicable legal privileges. If you have received this message and are not the intended recipient, please delete this message promptly and notify the sender.**

- Do you think if "The Book Rights Registry" is a formality or not? If not, why?

 It is not. It is a non-profit organization representing authors and publishers in the settlement (as well as in connection with potential licenses with competitors of Google). It will be set up to find rightsholders, pay them their revenues from the use of their books in the settlement. The Registry is a licensing agent for rightsholders; they may instruct the Registry at any time to exclude their books from display uses or, before April 2011, remove their books altogether. Because the settlement structure is not exclusive, rightsholders are free to license their works through another organization, such as the Japan Writers Association or Copyright Clearance Center, or license their works directly to Google or any other user. The Registry and the settlement structure is not a condition of copyright protection in the United States.

Copyright owners are free to release claims for infringement against defendant infringers, whether by contract, in a negotiated settlement or in a class action settlement. (This is why we explained to you how class actions work in the United States.) The release of a claim against an infringer does not make "copyright protection dependent on formalities."

Finally, in both this set of questions and previously, you have asserted that the class action settlement, and the use of the Registry, is a formality contrary to the Berne Convention. As you may know, the Berne Convention has no direct applicability in the United States. One provision of the Copyright Act states that "No right or interest in a work eligible for protection under [the Copyright Act] may be claimed by virtue of, or in reliance upon, the provisions of the Berne Convention, or the adherence of the United States thereto." 17 U.S.C. Section 104(c). That is, only United States law (not the Berne Convention) governs the treatment of United States and non-United States works. We believe that the class action settlement is fully compliant with the requirements of United States law.

> - Do you think if United States works and non-United States (especially, Japanese) works protected equally although the settlement agreement is written in English and translated text of http://www.googlebooksettlement.com/ is not only hard to read but also have many mistakes?

We regret that the Japanese translations are not free of errors. You have brought a few errors to our attention; those are being corrected and will appear in corrected form on the website in the next few days. You have suggested that there are other mistakes, but you have not identified them. Other than you, no one else has brought any mistakes to our attention. We do not believe that Japanese authors and publishers are being treated any differently than U.S. authors and publishers. We are doing our best to respond to questions about the settlement from authors and publishers all over the world, both inside and outside of the U.S. We understand your concern that the Settlement Agreement itself is only available in English; however, the Notice in this case is very detailed and summarizes the principal points of the settlement from the perspective of authors and publishers. In addition, if Japanese authors or publishers have any questions about the Settlement, they are invited to ask questions of the Settlement Administrator or Class Counsel. You and a small number of people and organizations have written to us from Japan asking questions about the Settlement.

You have suggested that Japanese people have to overcome the hurdles of being able to use the Internet in order to understand the settlement. In fact, we provide paper forms (available by calling the Settlement Administrator or by sending postal mail to the Settlement Administrator). Several claimants around the world have done so. In addition, the Settlement Administrator has received telephone calls about the settlement (More than 140 from Japan alone) and responds to questions over the telephone.

> - If a book is classified as "commercially available" which is available through http://amazon.jp/, most information of the Registry are wrong.

The information in the Settlement database comes from multiple providers of information, including metadata providers and online retailers. That information can be used by Google for Google's initial classification of a book as "Commercially Available" or "not Commercially Available." Google and we are committed to improving the quality of the data in the database, including acquiring books metadata from Japanese providers. In addition, as you are aware, any rightsholder can correct the classification of a book, if it believes that the book is Commercially Available, even if the database indicates that it is not. Moreover, any claimant can exclude his or her book from all "display uses" or

"remove" a book entirely - without regard to the classification of a book as "Commercially Available" or not, and without regard to whether Google's classification is erroneous.   In this respect, the classification of the book as "Commercially Available" is largely irrelevant to the rights of the rightsholder under the Settlement.

Who will fix the mistakes?

Class Counsel and Google are working very hard to ensure that the Commercial Availability classification system will produce a much lower error rate than it is presently producing.


- What plan do you have for the current terrible translation?

We have made corrections to the Japanese version of the website and Notice.   Changes in response to your concerns have been made and will be posted on the website in the next several days.   Although no one, other than you, has brought any errors regarding the Japanese version of the website and Notice to our attention, we will continue to correct any mistakes when they are brought to our attention.

How do you identify whether an application to the Registry is proposed from the correct copyright holder?

As we indicated previously, the Registry will use fraud detection algorithms to identify claims that may not be valid.   Also, the Registry will perform audits of claims, and take other measures to keep fraudulent claims to a minimum.   Of course, if and as soon as another person claims the same book with the Registry, the other claimants will be notified.   If there is a conflict in claims, the Registry will investigate and determine the true rightsholder based on the evidence presented.

Q1. How many Japanese have contacted you about the serious mis-translation like me?

No one else.   We have had a number of inquiries from organizations representing a large number of rightsholders (author and publisher associations) and none of them have raised any questions about the quality of the translations.

Q2. How much (in percentage) Japanese copyright holders understand the settlement agreement in your opinion as the settlement administrator?   And why (any evidence)?


We have no way of knowing how many Japanese copyright holders understand the settlement agreement. As required by United States law, Notice of the settlement has been distributed directly to rightsholders and, as you know, a Summary Notice also has been published in Japanese newspapers.   The Notice and the Summary Notice clearly and prominently invite any person having a question to contact the Settlement Administrator, in writing (email or postal mail) or by telephone.   The Settlement Administrator has received approximately 140 calls from Japan (not including approximately 60 "test" calls), and has responded to every call with no follow up complaints from the callers.

Appendixes

Appendix M.
The message for additional questions from the Counsel to me in April 13, 2009 in English.

From: Michael Boni
To: Motohisa Ohno
Cc: Cunard, Jeffrey P. ; Joanne Zack ; thodne@rustconsulting.com ; booksettlement_en@rustconsulting.com
Sent: Monday, April 13, 2009 11:26 PM
Subject: RE: Google Book Search

Dear Motohisa,

The quote from Google's website below, which I put in green color, was missing an important clause, which I inserted below in blue.

Sorry for the confusion.

Kind regards,

Mike


**Michael J. Boni**

**Boni & Zack LLC**

**15 St. Asaphs Rd.**

**Bala Cynwyd, PA 19004**

**610-822-0201**

**610-822-0206 (fax)**

**610-348-2526 (mobile)**

**mboni@bonizack.com**


**CONFIDENTIALITY NOTICE:**

**The foregoing message is intended only for the addressee. The contents of this message may be subject to the attorney-client privilege, the attorney work product privilege, or other applicable legal privileges. If you have received this message and are not the intended recipient, please delete this message promptly and notify the sender.**

**From:** Michael Boni
**Sent:** Monday, April 13, 2009 10:21 AM
**To:** Motohisa Ohno
**Cc:** Cunard, Jeffrey P.; Joanne Zack; thodne@rustconsulting.com; booksettlement_en@rustconsulting.com
**Subject:** RE: Google Book Search

Dear Motohisa:

Appendixes

In the interest of time, I provide very brief responses to your inquiries, in blue below.  We are extremely busy trying to respond to many other class members as well, so please forgive the brevity of these responses.  Also, I invite my colleagues to clarify or add to my responses if appropriate, as these are my responses only, not theirs.

Kind regards,

Mike

**Michael J. Boni**

**Boni & Zack LLC**

**15 St. Asaphs Rd.**

**Bala Cynwyd, PA 19004**

**610-822-0201**

**610-822-0206 (fax)**

**610-348-2526 (mobile)**

**mboni@bonizack.com**

**CONFIDENTIALITY NOTICE:**

**The foregoing message is intended only for the addressee.  The contents of this message may be subject to the attorney-client privilege, the attorney work product privilege, or other applicable legal privileges.  If you have received this message and are not the intended recipient, please delete this message promptly and notify the sender.**

**From:** Motohisa Ohno [mailto:mohno@mohno.com]
**Sent:** Monday, April 13, 2009 9:27 AM
**To:** Michael Boni
**Cc:** Cunard, Jeffrey P.; Joanne Zack; thodne@rustconsulting.com; booksettlement_en@rustconsulting.com; Ohno Motohisa
**Subject:** Re: Google Book Search

(looping booksettlement_en@rustconsulting.com)

Dear Michael, (or the settlement administrator),

I have another slight question although I'm not sure if you can answer it.
Google is going to expand the agreement to worldwide according to this;
http://books.google.com/googlebooks/agreement/

This in not correct.   See the following language from Google's website:

International users

Because this agreement resolves a United States lawsuit, it directly affects only those users who access Book Search in the U.S.; anywhere else, the Book Search experience won't change. Going forward, we hope to work with international industry groups and individual rightsholders to expand the benefits of this agreement to users around the world.

Google may try to expand uses outside the U.S., but can not do so "under the "agreement."    It will have to "work with individual international industry groups and individual rightsholders to expand **the benefits of** this agreement" outside the U.S.  This means that Google will be able to use books outside the U.S. **only** with the express authorization of rightsholders (or as permitted under the laws of the countries in which Google hopes to make uses of the books), but Google can not do so "under the Agreement."

Is the payment $60 for each principal work only for display-use from the U.S.?  The payment is for the books that Google has scanned from U.S. libraries without permission as of May 5 2009.
When Google expands the area of the service to worldwide, will (or would)
they pay similar cost for each country?  We do not know under what terms Google will be authorized to use books outside of the U.S.
(It doesn't seem to be realistic though.)
Otherwise, if an author accept this agreement and receive the payment,
could his works be used in other countries without further payment
in such case?  No, not under the Agreement.  Google will have to negotiate a separate license with that author.

I guess the answer might be "undefined" however I think it's important
to know for Japanese authors.


Thank you,
Regards, Motohisa

Appendixes

Appendix N.
The message from me to the Counsel in May 1, 2009 in English (the original).
In April 29, the Court announced the extension of the deadline to opt out or object to September 4, 2009.

Dear Mr. Michael J. Boni,

Honestly speaking, I didn't imagine the deadline could be extended.
Acually, I don't need "words" but I can watch how your "words" work for a while.
(I was preparing the objections to the settlement though.)

Now, let me ask some technical questions to make me understand the situation correctly.

Q1. Control of "Display Uses"

There is only single option to control of "Display Uses" which have 8 types according to the description;
http://www.googlebooksettlement.com/help/bin/answer.py?answer=118722&hl=en#display_uses

What types of Display Uses will be allowed against a book which is designated as "out-of-print" when a copyright holder chooses "opt-out"?

As I understanding, if a book is designated as "out-of-print" (even if the status is wrong), all of 8 types of Display Uses will be allowed by default.
If a copyright holder remains the class member, I understand they can disable all types of Display Uses.
If a copyright holder chooses "opt-out" and do nothing else, what Display Uses will be happened on the book?

Q2. What types of Display Uses will be allowed against a book which is designated as "out-of-print" when a publisher choose "opt-out" and an author do nothing? What Display Uses will be happened on the book?

<<Background>>
I'm not sure whether you understand the Japanese custom regarding to publishing business.
Usually, publishers have only the rights of _paper_ publishing by default.
They don't have any rights of _online_ publishing_ (like this) unless having special contract with authors.
So, many publishers think they can't control (prohibit or allow) "display-use" of each book.

Here is an comment of a publisher, "Hituzi Shobo" from http://www.hituzi.co.jp/kotoba/20090428ns.html;
"... (according to their business size) we can't take a legal action in fact so that we will remain the class member. We are not pleased to do but we have no other realistic choice. ..."

I'd like to know whether I recommend them to choose just "opt-out" or "remain the class member and exclude books regarding to the publisher".

By the way, now I have time to check how your words work.
So, I'll test your words by myself before sending the objections to the court.

Test 1: The quality of the settlement website

Actually, the quality of the Japanese pages were terrible as I told you.
For example, the Japanese main page (http://www.googlebooksettlement.com/r/home?hl=ja) doesn't have any information of the deadline extention although the English page (http://www.googlebooksettlement.com/r/home?hl=en) has been updated. It's an evidence you don't

care Japanese right holders. I hope you will update the page and improve whole pages of the web site very soon. If you care Japanese right holders as well as US right holders, you have no other choice.

Now I have saved the some typical Japanese pages on http://www.googlebooksettlement.com/ .
I'll check how you improve the web site in next month.


Test 2: A lot of mistakes of the "commercial availability" field for Japanese books on the Book Rights Registry

According to your answer, books should be designated as "commercially available" if they are available on http://amazon.jp/ .
There are still a lot of mistakes on database as I told you.
I have saved infomation of some publishers.
I'll check how they are fixed by your efforts in next month.


Test 3: The Book Rights Registry

I'll modify some other's book information on the registry.
 (I'll choose books randomly and use fake name, of course.)
According to your explanation, the registry is secured and such fake applications will be eliminated.
I'll tell you what books are targeted after the test.


I don't change my mind by your words but could change by your deeds.
I'm waiting for a month then let's see the results.

Thank you,
Regards, Motohisa
----- Original Message -----
From: Michael Boni
To: Motohisa Ohno
Cc: Cunard, Jeffrey P. ; Joanne Zack
Sent: Wednesday, April 29, 2009 7:03 AM
Subject: R: Google Book Search


Dear Mr. Ohno,

You know very well that I care very much about Japanese copyright holders. I plan to visit Japan at the end of May to meet with the Japan Writers Association, and my colleague Jeffrey Cunard plans to visit Japan with me to meet with the Japan Publishers Association. We have inquired with the Settlement Administrator as to why it has taken so long to work on the translations, and I will have an answer to you shortly. You should know that the Court has extended the deadline to opt out or object by 4 months, to September 4, 2009.

I would appreciate it if you were to give us the benefit of the doubt, instead of falsely accuse us as you do of not caring about the rightsholders we represent, including Japanese rightsholders. I have always treated you with respect and dignity, and you might consider doing the same.

Kind regards,

Mike

**Michael J. Boni**
Boni & Zack LLC

Appendixes

**15 St. Asaphs Rd.**
**Bala Cynwyd, PA 19004**
**610-822-0201**
**610-822-0206 (fax)**
**610-348-2526 (mobile)**
mboni@bonizack.com

**Da:** Motohisa Ohno [mailto:mohno@mohno.com]
**Inviato:** mar 4/28/2009 1:24
**A:** Michael Boni
**Cc:** Cunard, Jeffrey P.; Joanne Zack; Motohisa Ohno
**Oggetto:** Re: Google Book Search

Dear Michael,

I was wondering why you haven't fixed the mistake which I told 2 months ago.

I could not find any improvement in Japanese translation.

You didn't give the Japanese translated answers.

And I'm still in "opt-out" state.

Obviously, you don't care Japanese copyright holder's rights.

By the way, I found you were going to extend the the period for an extra 60 days;

http://googlepublicpolicy.blogspot.com/2009/04/extending-notice-on-google-book-search.html

So, I'd like to ask whether this means the period to file an objection or not.

Thank you,

Regards, Motohisa

----- Original Message -----

From: "Motohisa Ohno" <mohno@mohno.com>

To: "Michael Boni" <MBoni@bonizack.com>

Cc: "Cunard, Jeffrey P." <jpcunard@debevoise.com>; "Joanne Zack" <JZack@bonizack.com>; "Motohisa

Ohno" <mohno@mohno.com>

Sent: Friday, April 17, 2009 1:36 AM

Subject: Re: Google Book Search

> Dear Michael,

>

> I'd like to have Japanese translated answers as I told you.

> And I wondered whether you have read the last Japanese questions (in details).

>

> At this moment, I see that you are not fair to Japanese copyright holders

> so that I don't think there is any way to change my mind.

>

> By the way, "The Japan Writer's Association" announced a press release

> regarding to the settlement;

> http://www.bungeika.or.jp/pdf/statement_for_google.pdf

>

> You will find a few "misunderstanding" in the release.

> It means, however, many authors don't understand the settlement correctly.

>

> Thank you,

> Regards, Motohisa

>

> ----- Original Message -----

> From: "Michael Boni" <MBoni@bonizack.com>

> To: "Motohisa Ohno" <mohno@mohno.com>

> Cc: "Cunard, Jeffrey P." <jpcunard@debevoise.com>; "Joanne Zack" <JZack@bonizack.com>

> Sent: Thursday, April 16, 2009 11:36 PM

> Subject: RE: Google Book Search

>

>

>> Dear Motohisa,

>>

>> Is there no way you will permit us to discuss with you your concerns, in an effort to see if you might decide not to object? We

>> will supply the translator at our cost, of course.

>>

>> If there is no way we can change your mind, we will of course change your status back from an "opt out" to a "class member."

>>

>> Kind regards,

>>

>> Mike

>>

>> Michael J. Boni

>> Boni & Zack LLC

>> 15 St. Asaphs Rd.

>> Bala Cynwyd, PA 19004

>> 610-822-0201

>> 610-822-0206 (fax)

>> 610-348-2526 (mobile)

>> mboni@bonizack.com

>>

>>

>> CONFIDENTIALITY NOTICE:

>>

>> The foregoing message is intended only for the addressee.   The contents of this message may be subject to the attorney-client

>> privilege, the attorney work product privilege, or other applicable legal privileges.   If you have received this message and are

>> not the intended recipient, please delete this message promptly and notify the sender.

>>

>> -----Original Message-----

>> From: Motohisa Ohno [mailto:mohno@mohno.com]

>> Sent: Thursday, April 16, 2009 10:24 AM

>> To: booksettlement_en@rustconsulting.com

>> Cc: Michael Boni; Ohno Motohisa

>> Subject: Re: Google Book Search

>>

>>> "Out-Out"

>>

>> Just typo,.   Of course, "Opt-Out".

>>

>> Motohisa

>>

>> ----------------------------------------------

>> From: "Motohisa Ohno" <mohno@mohno.com>

>> Sent: Thursday, April 16, 2009 11:08 PM

>> To: <booksettlement_en@rustconsulting.com>

>> Cc: "Michael Boni" <MBoni@bonizack.com>; "Ohno Motohisa" <mohno@mohno.com>

>> Subject: Re: Google Book Search

>>

>>> Dear sir,

>>>

Appendixes

>>> I found that the mis-translation, which I pointed out, has been fixed although couldn't find others.

>>> Obviously, there were different between Japanaese FAQ and English FAQ;

>>> http://www.googlebooksettlement.com/help/bin/answer.py?answer=118704&hl=ja   *max=#79

>>> http://www.googlebooksettlement.com/help/bin/answer.py?answer=118704&hl=en *max=#81

>>> *It seems to be added 20. and 21 in English version but no update found in other language versions.

>>>

>>> By the way, please put me (mohno@mohno.com) back to the class member at

http://www.googlebooksettlement.com/ .

>>> I have outted-out myself but it was a mistake.

>>> You should not use the same Japanese word "除外" for different English words,

>>> e.g., "out-out", "exclude" because it makes confuse.

>>> I have to back to the class member to object to the settlement.

>>>

>>> Thank you,

>>> Regards, Motohisa

Appendixes

Appendix O.
The message from the Counsel to me in May 7, 2009 in English and Japanese (the original).

From: Nickolaus, John
To: mohno@mohno.com
Sent: Thursday, May 07, 2009 5:27 AM
Subject: Google Book Search Settlement

Please see attached.

<<The following is the attached document *italic part is just repeating my question>>

*Dear Mr. Michael J. Boni,*
*Honestly speaking, I didn't imagine the deadline could be extended.*
*Acually, I don't need "words" but I can watch how your "words" work for a while.*
*(I was preparing the objections to the settlement though.)*
*Now, let me ask some technical questions to make me understand the situation correctly.*
*Q1. Control of "Display Uses"*
*There is only single option to control of "Display Uses" which have 8 types according*
*to the description;*
*http://www.googlebooksettlement.com/help/bin/answer.py?answer=118722&hl=en#displa*
*y_uses*
*What types of Display Uses will be allowed against a book which is designated as*
*"out-of-print" when a copyright holder chooses "opt-out"?*

IF A COPYRIGHT HOLDER OPTS OUT OF THE SETTLEMENT, HE IS NOT ENTITLED TO PARTICIPATE
IN THE SETTLEMENT, AND RETAINS HIS RIGHT TO SUE GOOGLE FOR COPYRIGHT INFRINGEMENT.
IF THE PERSON OPTING OUT PROVIDES SPECIFIC IDENTIFICATION REGARDING HIS OR HER BOOKS,
GOOGLE HAS ADVISED THAT, AS A MATTER OF ITS CURRENT POLICY, IT WILL TREAT THE "OPT
OUT" AS A REQUEST NOT TO MAKE ANY DISPLAY USES OF THE BOOK, INCLUDING SNIPPETS. IN
ADDITION, GOOGLE WILL TREAT THIS AS A REQUEST THAT THE BOOK NOT BE SCANNED (IF IT HAS
NOT ALREADY BEEN SCANNED). IF THE BOOK HAS ALREADY BEEN SCANNED, GOOGLE WILL NOT REMOVE
THE BOOK, BUT WILL NOT DISPLAY IT. IF THE PUBLISHER OPTS OUT AND PROVIDES IMPRINTS,
THEN GOOGLE WILL ATTEMPT TO MATCH THE BOOKS IN ITS DATABASE WITH THE IMPRINTS. GOOGLE
HAS ADVISED THAT, AS A MATTER OF POLICY, GOOGLE WILL NOT SELL ACCESS TO SUCH BOOKS
AND IT WILL NOT SCAN THE BOOK (IF IT HAS NOT ALREADY BEEN SCANNED).
著作権保持者が和解からオプトアウト［不参加を選択］する場合、その著作権保持者は和解に参加する資格を
失いますが、グーグルを著作権侵害で訴える権利を保持することとなります。オプトアウトする人が自分の書
籍を特定して識別するための情報を提供すれば、グーグルは現時点での方針として、そのオプトアウトを、抜
粋表示も含めた表示使用を一切しないことを求める要請とみなし、扱います。さらにグーグルはこのオプトア
ウトを、（まだスキャンされていない場合）書籍をスキャンしないことを求める要請であるとみなし、扱いま
す。もしもその書籍が既にスキャンされていた場合は、グーグルはその書籍を削除することはしませんが、表
示しません。もしも出版社がオプトアウトを望み、出版事項詳細を提供すれば、グーグルはデータベースから
その書籍の出版事項の照合を試みます。グーグルはこれらの書籍へのアクセスを販売せず、（まだその書籍が
スキャンされていない場合には）以後スキャンしないという方針を表明しています。

*As I understanding, if a book is designated as "out-of-print" (even if the status is*
*wrong), all of 8 types of Display Uses will be allowed by default.*
*If a copyright holder remains the class member, I understand they can disable all types*
*of Display Uses.*
*If a copyright holder chooses "opt-out" and do nothing else, what Display Uses will*
*be happened on the book?*
AS STATED IN THE ANSWER ABOVE, IF THE PERSON OPTING OUT SPECIFICALLY IDENTIFIES THE
BOOK, THEN, AS A MATTER OF GOOGLE'S POLICY, IT WILL NOT DISPLAY THE BOOKS.
上記にお答えしたように、オプトアウトを選択する人がその書籍を特定して識別できる情報を提供した場合は
表示しない、というのがグーグルの方針です。

*Q2. What types of Display Uses will be allowed against a book which is designated as "out-of-print" when a publisher choose "opt-out" and an author do nothing? What Display Uses will be happened on the book ?*

THE PUBLISHER OR THE AUTHOR OPTING OUT HAS NO RIGHTS TO MANAGE OR CONTROL THE PRICING OF ANY BOOK UNDER THE SETTLEMENT. THUS, IF THE PUBLISHER OPTS OUT AND THE AUTHOR DOES NOTHING, THE DEFAULT RULES UNDER THE SETTLEMENT FOR DISPLAY USES OF THE BOOK WILL CONTROL, AND GOOGLE WILL BE ABLE TO DISPLAY THE BOOK. THE AUTHOR WILL RECEIVE HIS/HER SHARE OF THE PAYMENTS FROM SUCH EXPLOITATION. THE PUBLISHER WILL NOT RECEIVE ANY SHARE OF PAYMENTS FROM EXPLOITATION.

オプトアウトする出版社あるいは著者は、この和解においては、いかなる書籍の価格も、それを管理あるいは統制する権利を有しません。よって、仮に出版社がオプトアウトを選択し、著者が何も選ばなかった場合は、書籍の表示使用に関する本件和解条件のデフォルト規定［既定規則］により、グーグルはその書籍の表示が出来ることになります。そのような営利的利用が生じた場合、著者は相応額の支払いを受けることになるでしょう。またそのような営利的利用が生じても、出版社への支払いはありません。

*<<Background>>*
*I'm not sure whether you understand the Japanese custom regarding to publishing business.*
*Usually, publishers have only the rights of _paper_ publishing by default.*
*They don't have any rights of _online_ publishing_ (like this) unless having special contract with authors.*
*So, many publishers think they can't control (prohibit or allow) "display-use" of each book.*

THE AUTHORS WHO NEGOTIATED THIS SETTLEMENT WITH GOOGLE AGREE THAT THIS IS THE CASE AS WELL IN THE U.S. THE PUBLISHERS, HOWEVER, HAVE PRESENTED VALID, COLORABLE ARGUMENTS THAT THE PUBLISHERS OF THE SAME BOOKS ALSO HAVE COPYRIGHT CLAIMS AGAINST GOOGLE FOR THE INFRINGEMENT OF THE SAME BOOKS, AND THAT COMPETING CLAUSES IN THE BOOK PUBLISHING CONTRACTS (FOR EXAMPLE, NON-COMPETE CLAUSES, EXCLUSIVE RIGHTS TO PROMOTE THE BOOK, SALE OF THE BOOK IN FORMATS NOW IN EXISTENCE OR DEVELOPED IN THE FUTURE, AND OTHERS) CONFER ON BOTH THE AUTHOR AND THE PUBLISHER RIGHTS OF RECOVERY AS A RESULT OF GOOGLE'S ALLEGED INFRINGEMENT. IN ORDER TO RESOLVE THIS ISSUE EFFICIENTLY AND IN THE INTEREST OF BOTH THE AUTHOR SUB-CLASS AND PUBLISHER SUB-CLASS, THE PARTIES NEGOTIATED THE AUTHOR-PUBLISHER PROCEDURES, WHICH IS ATTACHMENT A TO THE SETTLEMENT AGREEMENT. FOR OUT OF PRINT BOOKS, GOOGLE IS OBTAINING RIGHTS OF DISPLAY FROM BOTH THE AUTHORS AND THE PUBLISHERS. AS DISCUSSED PREVIOUSLY, AT ANY TIME EITHER OF THE AUTHOR OR THE PUBLISHER CAN EXCLUDE SUCH A BOOK FROM ONE, SOME OR ALL DISPLAY USES. BEFORE APRIL 5, 2011, EITHER THE AUTHOR OR THE PUBLISHER CAN REMOVE SUCH BOOK. FOR IN PRINT BOOKS, BOTH THE PUBLISHER AND THE AUTHOR MUST AGREE TO INCLUDE THE BOOK IN THE SETTLEMENT AGREEMENT PAYMENT PROGRAMS. THIS IS THE CASE WHETHER THE PUBLISHER HAS BEEN EXPRESSLY GRANTED ONLINE OR DIGITAL RIGHTS, OR NOT.

グーグルとのこの和解交渉に関与した著者集団も、米国でも同様の事態があると考えています。他方で出版社側からは、同じ書籍の出版社も同様に同一書籍に係る著作権侵害をグーグルに対し申立てる権利があり、書籍の出版契約における競合に関する条項（例えば、競合禁止条項、書籍の独占販売権、現存あるいは将来開発される様式での書籍の販売、その他）においてはグーグルの問われている侵害行為に因る回復を求める権利が著者にも出版社にも同等に与えられている、という正当かつ説得性のある議論が提出されました。著者下位集団と出版社下位集団双方の利益に適うようこの問題を効果的に解決するため、両者で交渉し「著者─パブリッシャーの手続き」を協議しました。これは和解契約書の添付文書Aに記されています。

絶版の書籍に関しては、グーグルは著者と出版社双方から表示の権利を獲得しています。これまでにもお話ししたように、著者または出版社のいずれの一者も、当該書籍を一点、複数点、あるいは全面的に表示使用から外すことができます。２０１１年４月５日まで、著者または出版社のいずれの一者も当該書籍を除去することができます。現在入手可能な書籍を和解契約の支払いプログラムに含めるためには、出版社と著者双方の同意が必要です。これは、出版社がオンラインあるいはデジタル著作権を明示的に所有する場合にも、そうでない場合にも該当します。

### Appendixes

*Here is an comment of a publisher, "Hituzi Shobo" from*
*http://www.hituzi.co.jp/kotoba/20090428ns.html;*
*"... (according to their business size) we can't take a legal action in fact so that*
*we will remain the class member. We are not pleased to do but we have no other realistic*
*choice. ..."*

BY AGREEING TO PARTICIPATE IN THE SETTLEMENT, AUTHORS AND PUBLISHERS ARE IN ESSENCE
AGREEING THAT THE SETTLEMENT'S TERMS WILL GOVERN THE USE AND REVENUE-SPLITTING OF THE
BOOK, BUT ONLY IN THE GOOGLE BOOK SEARCH PROGRAM. IN ALL OTHER RESPECTS, THE TERMS
OF THE CONTRACT BETWEEN THE AUTHOR AND THE PUBLISHER GOVERN AS TO ALL OTHER TRANSACTIONS.
AT ANY TIME, AN AUTHOR OR PUBLISHER CAN REMOVE HIS, HER OR ITS BOOK UNDER THE SETTLEMENT.
FURTHERMORE, ANY RIGHTSHOLDER CAN, IF HE, SHE OR IT WISHES, INCLUDE THE BOOK IN GOOGLE'S
SEPARATE PARTNER PROGRAM. IN ADDITION, UNDER THE SETTLEMENT, EITHER THE AUTHOR OR THE
PUBLISHER CAN EXCLUDE AN OUT OF PRINT BOOK FROM ONE, SOME OR ALL DISPLAY USES.
和解への参加同意により、著者と出版社は、その書籍の使用および利益の分配については和解条件に従う旨、
実質的に同意したことになります。ただしこれは、グーグル書籍検索プログラムに限定されます。他のすべて
の事例における他のあらゆる取引は、著者と出版社間の契約条件に準拠することになります。いかなる時点に
おいても、著者あるいは出版社は、自著あるいは自社の書籍を和解対象から外すことができます。さらに、著
作権保持者は希望により自著あるいは自社の書籍をグーグルによる別個のパートナー・プログラムに含めるこ
とができます。これに加え、和解契約によれば、著者あるいは出版社は絶版の書籍を一点、複数点あるいは全
面的に表示使用から除くことができます。

*I'd like to know whether I recommend them to choose just "opt-out" or "remain the class*
*member and exclude books regarding to the publisher".*

WE RECOMMEND THAT BOTH THE PUBLISHER AND THE AUTHOR CLAIM THEIR BOOK AND DECIDE WHAT
USES THEY WOULD LIKE MADE OF THE BOOK UNDER THE SETTLEMENT PROGRAM. THE ONLY BENEFIT
OF OPTING OUT IS FOR A RIGHTSHOLDER TO PRESERVE ITS RIGHT TO SUE GOOGLE IN THE UNITED
STATES FOR SCANNING AND DISPLAYING THE RIGHTSHOLDER'S BOOK. IF AN AUTHOR OR PUBLISHER
WOULD LIKE TO PRESERVE THAT RIGHT, THEN IT SHOULD OPT OUT.
我々がお薦めするのは、著者と出版社双方が自著あるいは自社の書籍を申告し、本件のプログラム下、その書
籍の使用形式を選ぶという方法です。オプトアウトにより著作権保持者が得る唯一の便益は、グーグルに対し、
その書籍をスキャンし表示したことに対する訴訟をアメリカ合衆国内で起こす権利を保持する、ということで
す。もしも著者あるいは出版社がその権利を保持したいのであれば、オプトアウトすべきでしょう。

*By the way, now I have time to check how your words work.*
*So, I'll test your words by myself before sending the objections to the court.*
*Test 1: The quality of the settlement website*
*Actually, the quality of the Japanese pages were terrible as I told you.*
*For example, the Japanese main page*
*(http://www.googlebooksettlement.com/r/home?hl=ja) doesn't have any information of*
*the deadline extention although the English page*
*(http://www.googlebooksettlement.com/r/home?hl=en) has been updated. It's an*
*evidence you don't care Japanese right holders. I hope you will update the page and*
*improve whole pages of the web site very soon. If you care Japanese right holders as*
*well as US right holders, you have no other choice.*

WE ARE WORKING AS FAST AS WE CAN TO UPDATE AND IMPROVE THE WEBSITES IN ALL THE LANGUAGES
IN WHICH IT IS PRESENTED. THE DEADLINE EXTENSION IS NOW POSTED.
我々はウェブサイトの表示言語全ページにおいて、できる限り早急なアップデートおよび改善に努めています。
オプトアウト期限の延長についても表示されました。

*Now I have saved the some typical Japanese pages on*
*http://www.googlebooksettlement.com/ .*
*I'll check how you improve the web site in next month.*

PLEASE LET US KNOW WHAT YOU LEARN.
また何かわかればご教示ください。

Appendixes

---

*Test 2: A lot of mistakes of the "commercial availability" field for Japanese books*
*on the Book Rights Registry*
*According to your answer, books should be designated as "commercially available" if*
*they are available on http://amazon.jp/ .*
*There are still a lot of mistakes on database as I told you.*
*I have saved infomation of some publishers.*
*I'll check how they are fixed by your efforts in next month.*

WE AND GOOGLE ARE WORKING VERY HARD TO IMPROVE THE COMMERCIAL AVAILABILITY
CLASSIFICATION SYSTEM. GOOGLE WILL BE ACQUIRING INFORMATION ABOUT JAPANESE AND OTHER
COUNTRIES' BOOKS FROM SOURCES OF METADATA, INCLUDING ONLINE BOOK STORES, AND
INTEGRATING THAT INFORMATION INTO ITS DATABASE. THAT PROCESS WILL TAKE MONTHS. AS YOU
UNDERSTAND, THERE IS NO CONSEQUENCE AT ALL TO HOW A BOOK IS DESIGNATED TODAY
(COMMERCIALLY AVAILABLE OR NOT). THE CLASSIFICATION IS ONLY IMPORTANT (A) AFTER THE
SETTLEMENT IS APPROVED AND BECOMES EFFECTIVE AND (B) ONCE GOOGLE SCANS A BOOK AND INTENDS
TO DISPLAY IT.

我々もグーグルも、「市販」分類システムを改善すべく最善を尽くしています。グーグルは、日本および他国
の書籍についての情報に関してはオンライン書店を含めたメタデータ情報源から得、その情報をデータベース
に組み入れていくことになります。このプロセスには何ヶ月もかかるでしょう。ご理解のことと存じますが、
現時点である書籍がどのように指定されているか（市販されているか否か）は重要ではありません。この分類
は（A）和解が承認され効力を持った後、および（B）グーグルが書籍をスキャンし、それを表示しようとし
た場合にのみ重要となるのです。

*Test 3: The Book Rights Registry*
*I'll modify some other's book information on the registry.*
*(I'll choose books randomly and use fake name, of course.)*
*According to your explanation, the registry is secured and such fake applications will*
*be eliminated.*

I'LL TELL YOU WHAT BOOKS ARE TARGETED AFTER THE TEST.
PLEASE LET US KNOW WHAT YOU LEARN, ALTHOUGH ANY SETTLEMENT CLASS MEMBER CAN SUBMIT
ANY CLAIM FOR ANY BOOK THEY WISH AT THIS TIME. PLEASE RECALL THAT THE CERTIFICATION
REQUIRES A STATEMENT FROM THE RIGHTSHOLDER THAT HE, SHE OR IT OWNS A COPYRIGHT IN A
BOOK. WE EXPECT THAT IT WILL TAKE TIME TO IDENTIFY FRAUDULENT CLAIMS . WE WILL BEGIN
THIS PROCESS AFTER THE LATER OF THE EFFECTIVE DATE AND JANUARY 5, 2010. HOWEVER, NO
PAYMENTS WILL BE MADE TO RIGHTSHOLDERS UNTIL AFTER THE EFFECTIVE DATE AND CERTAINLY
NOT BEFORE CONFLICTS ARE RESOLVED AS TO THE TRUE RIGHTSHOLDERS OF A WORK.
何かわかったらどうぞご教示ください。ただし現時点では、和解集団のあらゆるメンバーがいかなる書籍に関
する請求をすることも可能です。認証には著作権保持者による、書籍の著作権を所有するという声明が必要で
す。不正な請求を検出するにはいくらか時間がかかると予想されます。このプロセスは、発効日あるいは２０
１０年１月５日の、どちらか後の日に開始されます。しかし、著作権保持者への支払いが発生するのは発効日
以降、作品の真の著作権保持者が誰かといった対立が解消されてからになります。

*I don't change my mind by your words but could change by your deeds.*
*I'm waiting for a month then let's see the results.*
*Thank you,*
*Regards, Motohisa*

Appendixes

## Appendix P.
The current results of the fake applications.

Fake Account Name: bookmanager

# Google ブック検索和解

**申し立てフォーム**

アカウント | 検索と申し立て | 管理 | よくある質問(FAQ) | 除外 | 最新の更新

## 申し立てを行った書籍および挿入物の管理

お客様が申し立てを行ったすべての書籍および挿入物のリストは下記のとおりです。書籍名をクリックすると詳細ページが表示されます。詳細ページには、書籍がGoogleによってデジタル化されているかどうか、市販状況などの、書籍に関する情報が掲載されています。また、権利主張内容、書籍の完全除外、表示使用の可否など、申し立てに関する情報の変更も詳細ページで行うことができます。詳細ページでは今後さらに多くの項目が設定可能になる予定です。申し立て履歴を見る »

申し立てが行われている書籍および挿入物を検索

表示: 5 冊 ページ (5 冊の書籍)

| 書籍名 | 著者 | 年 | 刻印 | その他の申立人 | 許可なくデジタル化されています。 | 市販状況 | 最終更新日 |
|---|---|---|---|---|---|---|---|
| Manyuaru baiburu | Edmond H Weiss Atsushi Kobayashi | 1987 | Keigaku Shuppan | -- | いいえ | いいえ | 2009/06/09 1 33 |
| 情報通信革命と日本企業 | 池田信夫 | 1997 | NTT出版 NTT Shuppan | -- | はい | いいえ | 2009/06/09 1 24 |
| 裁判員制度はいらない | 高山俊吉 | 2006 | Kōdansha 講談社 | -- | いいえ | はい | 2009/06/09 1 36 |
| 逆境こそ成功のチャンス | 中谷彰宏 | 2003 | Kōsaidōshuppan 廣済堂出版 | -- | いいえ | はい | 2009/06/09 1 44 |
| 電脳便り霞 | 中村正三郎 | 1997 | ビレッジセンター出版局 Birejjisentāshuppankyoku | -- | いいえ | いいえ | 2009/06/09 1 29 |

表示: 5 冊 ページ (5 冊の書籍)

結果をスプレッドシートとしてダウンロード



Appendixes

Fake Account Name: publisherjapan

# Google ブック検索和解

**異議** | **申し立てフォーム** | アカウント | 検索と申し立て | 管理 | よくある質問(FAQ) | 除外 | 最新の更新

## 申し立てを行った書籍および挿入物の管理

お客様が申し立てを行ったすべての書籍および挿入物のリストは下記のとおりです。書籍名をクリックすると詳細ページが表示されます。詳細ページには、書籍がGoogleによってデジタル化されているかどうか、市販状況などの、書籍に関する情報が掲載されています。また、権利主張内容、書籍の完全除外、表示使用の可否など、申し立てに関する情報の変更も詳細ページで行うことができます。詳細ページでは今後さらに多くの項目が設定可能になる予定です。 申し立て履歴を見る »

申し立てが行われている書籍および挿入物を検索

表示: 5冊 ページ (5冊の書籍)

| 書籍名 | 著者 | 年 | 発行元 | その他の申立人 | 許可なくデジタル化されています。 | 市販状況 | 最終更新日 |
|---|---|---|---|---|---|---|---|
| Appuru to gūguru | 小川浩 林信行 | 2008 | インプレス R&D | -- | いいえ | はい | 2009/06/18 15 36 |
| Hiton dewa ikirarenai no mo gei no uchi | 内田樹 | 2008 | 文藝春秋 | -- | いいえ | はい | 2009/06/18 15 30 |
| Houchou hasami cutter knife dosu kiri | Ryo Kawakita  Nawo Kawakita  Daisuke Tsuda  Futoshi Uehara | -- | VAP Japan | -- | いいえ | いいえ | 2009/06/18 15 28 |
| Tsukaeru asoberu tābo ninukusu apunkēshon | 小寺信良 | 1998 | ディー・アート | 信良 小寺 | いいえ | はい | 2009/06/18 15 32 |
| 螢車男 | 中野独人 | 2007 | 新潮社 | -- | いいえ | はい | 2009/06/18 15 35 |

---

Gmail カレンダー ドキュメント 写真 リーダー サイト ウェブ その他 ▾          publisherjapan@gmail.com | 設定 | 旧バージョン | ヘルプ | ログアウト

## Gm il.

メールを検索  ウェブを検索   検索オプションを表示 フィルタを作成

**メールを作成**

メールの長期保存なら – ad.barracuda.co.jp/ma/ – アンチスパムで実績のバラクーダ 低価格・簡単設定                スポンサーリンク ▸

受信トレイ
スター付き ☆
送信済みメール
下書き
プライベート
旅行
他 6 個 ▾

連絡先
ToDoリスト

– チャット
検索、追加、招待

**連絡先管理者**

mohno

アーカイブ  迷惑メールを報告  削除  移動▾  ラベル▾  その他の操作▾  更新          1 - 4 / 4
選択: すべて 選択解除 既読 未読 スター付き スターなし

| | BookSettlement | 版権管理レジストリに登録するメールアドレスを確認してください ... | 6月18日 |
| | Gmail チーム | 色やテーマを使って Gmail のデザインを自由に設定 設定 [...] から... | 6月9日 |
| | Gmail チーム | 携帯電話で Gmail にアクセス 外出先でちょっとした空き時間に... Gmail | 6月9日 |
| | Gmail チーム | 連絡先と古いメールをインポート Yahoo! Hotmail AOL などのウェブメール POP ... | 6月9日 |

選択: すべて 選択解除 既読 未読 スター付き スターなし
アーカイブ  迷惑メールを報告  削除  移動▾  ラベル▾  その他の操作▾  更新          1 - 4 / 4

Gmail のメールを別のメールアカウントに自動転送してみよう。 詳細
現在 7363MB 中 0MB (0%) 使用しています。

前回のアカウント アクティビティ 8月6日 (IP 119.82.202.112)。 もっと見る
Gmail の表示形式 標準 | チャットを OFF にする | 問題 HTML 詳細
©2009 Google – 利用規約 – プライバシー ポリシー – Google ホーム