Regarding No.05 CV8136 (DC)
    The Authors Guild, Inc., the Association of American Publishers et al Plaintiffs
                                  v
                          Google Inc. Defendant

September 4, 2009

The Hon. Denny Chin
US District Court for the Southern District of Manhattan
500 Pearl Street
New York, NY 10007

Dear Judge Chin,

As the author of several books, plus portions of anthologies, all of which were published before Sept. 5, 2009, I write to put my objections before you.

<u>The so-called remedy is disproportionate, duplicious, and bears little relationship to the offense.</u> Google, saying it was merely creating the equivalent of a giant library card catalog, started scanning books without the permission of rights holders. The Authors Guild, commendably to my mind, sued. When the matter went to settlement, we were still hearing about the fabulous digital library Google intended to give us. Three years later, the settlement is announced, and what we have before us instead is a giant online bookstore, with the Authors Guild and AAP as storekeepers.

The fact that millions of writers were wronged was used as an excuse to wrong us yet again. We writers have become Google's cover while it prepares to do battle with Amazon.

Calling the proposed new Book Rights Registry a "registry" is clever duplicity. It isn't just a channel for payments. It would set up a prodigious bureaucracy, one that will demand copies of letters and contracts I signed 30 years, three children, 12 computers and three houses ago -- and I'd better come up with them, or my work will be declared an "orphan book" owned by Google. If I complain, the matter will go to arbitration with a good chance the decision will be sealed.

This new entity is to control the sale of writers' digital books and indeed, every future digital product. We are locked in. Never mind all the opt in, opt out business. If you have the choice of selling your work under the terms set by Google and the BRR, or not selling it at all, you're in a straightjacket. Of course, we're told we will make money here, and make money there, with various "licenses." Just like the way we all got rich from letting Google place ads on our blogs.

What relationship is there between being the sole digital bargaining agent for both writers and publishers, forever, and the fact that Google scanned our books without permission? Why can't there just be a simple payout, which is what we anticipated?

<u>We writers already have a registry to distribute payments for copyright infringement.</u> It's called the Authors Registry. Writer groups – including the Authors Guild, one of the founders – enroll their members, as do more than 100 literary agencies. Individual writers can join for $10. The

Authors Registry is good at finding writers due a check; they've doled out $8 million to date, according to their website.

Requiring authors to opt out, rather than the reverse, lets Google rob writers. Google repeatedly has said what it deems most valuable is the indexing and learning that results from crawling through millions of books.

The way this settlement is structured, it is as though a burglar breaks into my house and steals a manuscript off my desk. Under duress, he gives the manuscript back, but continues to use the knowledge gleaned from reading it. He does this many times over. Millions of times. Then he pays a little money to each person burglarized, and keeps using the knowledge he stole, which in the aggregate is worth vastly more than the reparations.

Given the nature of Google's business, this opt out is a shameful wink and nod to outright theft. Please scrap it. Let rights holders opt in, if they want their books digitized.

Copyright laws are turned topsy-turvy. A further ill effect is that if a writer has not opted out of the settlement before an arbitrary date, and Google has scanned his or her book, it stays in the database even if the rights holder asks for removal. ("Turning off display" of a book is not the same as removing it. That which is turned off, can be turned on again.) Suddenly, the copyright owner no longer controls the book, Google does. Since when do we allow Google and a committee to write our copyright laws? What a wretched precedent! Please don't let it happen. While I hope that you will let writers decide whether they want their works in the database, please at least remove all deadlines for opting out.

The size of the "writer" class. As best I can determine, there presently are about 30 million books within copyright in the United States, yet the writer "class" in this class action looks like a fiefdom. Not all writers are "joiners," and if they aren't, I haven't a clue how to get them represented. Still, the class can rather easily be enlarged. There is a group called The Author's Coalition, formed to receive royalties for foreign publishers, which has 20 writer organizations as members. Those 20 groups, among themselves, represent 120,000 writers. Beyond that, I can name at least a dozen other writer's organizations. I suggest using a rota system for representing writers on any registry used in this settlement.

The size of the "publisher" class. There are thousands of publishers, yet only four major houses would be represented on the Book Rights Registry – the very ones that have the greatest stake in stifling innovation and keeping things as they are. This is not fair or representative.

The lack of auditing and public oversight. Sir, for any registry we are to have, please direct there be some manner of external oversight. The way this settlement now is structured, although millions of dollars due writers will be handled, no audit is specified and nobody is looking over any shoulders. Google gets to review the accounts, period. The opportunities for bribery and dealing are obvious. (There also seems to be gargantuan leeway over what Google, and eventually, the BRR, can call an "expense" and thus deduct from monies due rights holders.)

No language directing the BRR to act in writer's best interests. If only one agency is to bargain for us when it comes to all things digital, that is a reasonable, fair expectation.

Not enough privacy protection; no stringent limits on Google's use of reader data. Yes, Google knows a great deal about us already. But my skin crawls at the thought that Google could decide to sell information on what each 13-year-old girl in Houston is reading. Or give the FBI a list of everyone who has read snippets about growing oriental poppies.

Google has the motto "don't be evil," and declares it won't spill data about individuals. But we writers all toiled away as individuals when we were writing our books. Google didn't mind walking over us and still doesn't. Why should we believe Google won't be equally dismissive of other rights?

I do recognize that much about how Google operates is proprietary, making it difficult to monitor any limitations. Nevertheless, please direct that limits be set. It is time.

Disclosure. I come before you as an individual writer, but the court should know that I am a member of the Authors Guild and the Investigative Reporters and Editors, and president of the American Society of Journalists & Authors.

With respect and thanks,

Salley Shannon