# Coalition for Action
## "Copyright for Education and Research"
Aktionsbündnis „Urheberrecht für Bildung und Wissenschaft"

Prof. Dr. Rainer Kuhlen
Speaker of the Coalition „Copyright for Science and Education" - Germany

Office of the Clerk, J. Michael McMahon
U.S. District Court for the Southern District of New York

500 Pearl Street
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-9-09

RECEIVED
SEP - 2 2009
CLERK'S OFFICE
S.D.N.Y.

Santa Barbara, CA, Berlin August 31st 2009

Objection on behalf of the Coalition "Copyright for Education and Science" (CCES) (Germany) in the case of

The Authors Guild, Inc., Association of American Publishers, Inc., et al., Plaintiffs,
v.
Google Inc., Defendant.
Case Number 05 CV 8136 (S.D.N.Y.)

The Coalition "Copyright for Education and Science" (CCES) represents the interests of scholars and educators in Germany with respect to copyright.

The basis of the Coalition is the so-called Goettingen Declaration. Its main message is:

> "In a digitized and networked information society, access to global information for the purposes of education and science must be guaranteed at all times from any place."

The Declaration has been signed by most science-related organizations in Germany[1] and by more than 7000 individuals (mainly scholars, university teachers, and librarians).

Among the signatories including universities, libraries, archives, learned societies and university publishers the following six from the Alliance of Science Organizations figure prominently: Fraunhofer-Gesellschaft zur Förderung der angewandten Forschung e.V.;

---

[1] For further information cf. the Website: http://www.urheberrechtsbuendnis.de/index.html.en

**Mail adresse**

Aktionsbündnis „Urheberrecht für Bildung und Wissenschaft"      Unter den Linden 6     Tel +49-(0)30 2093 4523     rainer.kuhlen@uni-konstanz.de
c/o Institut für Bibliotheks- und Informationswissenschaft      D -10099 Berlin                                      www.urheberrechtsbuendnis.de

Helmholtz-Gemeinschaft Deutscher Forschungszentren e.V.; Hochschulrektorenkonferenz; Max-Planck-Gesellschaft; Wissenschaftsgemeinschaft Gottfried Wilhelm Leibniz e.V.; Wissenschaftsrat[2].

Similar to many other science and library organizations, the CCES is not opposed to approval of the Settlement in general. The Settlement has the potential to provide public access in a new electronic form, not only to books which are no longer copyright-protected but also to books which are no longer available on the market or to so-called orphan works.

The Settlement thus allows activities which are in principle compatible with scholars' and educators' interests both in being as widely visible on the web as possible and in having access to as many resources as possible for their work as researchers and teachers. Scientists are always at once producers of new knowledge and users of existing knowledge – and much of this knowledge is still contained in books.

This said, the CCES continues to worry about whether the Settlement will sufficiently take into account the major concern of an increasing number of scholars and educators, namely to have free access to digitized works and to use them under the open access paradigm.

The open access paradigm is being used more and more as a normal practice in science and education for making knowledge available to the public (in electronic form). We thus advocate the following:

Scientific works which are made available to the public by Google Book Search must satisfy at least the first condition of the Berlin Declaration[3]:

> "The author(s) and right holder(s) of such contributions grant(s) to all users a free, irrevocable, worldwide, right of access to, and a license to copy, use, distribute, transmit and display the work publicly and to make and distribute derivative works, in any digital medium for any responsible purpose, subject to proper attribution of authorship (community standards, will continue to provide the mechanism for enforcement of proper attribution and responsible use of the published work, as they do now), as well as the right to make small numbers of printed copies for their personal use."

This condition must also apply to orphan works, although these are in most cases not subject to proper attribution of authorship.

In the interest of free access to digitized works from research and education the CCES suggests the following improvements to the Settlement:

---

[2] Although the Alliance of German Science Organisations share the general view of the CCES with respect to copyright and freedom of information in science and education, the following positions of the CCES have not been explicitly coordinated with the "Alliance".

[3] Cf Berlin Declaration on Open Access to Knowledge in the Sciences and Humanities (2003) (http://oa.mpg.de/openaccess-berlin/berlindeclaration.html). This Declaration is in accordance with the spirit of the Declaration of the Budapest Open Access Initiative, the ECHO Charter and the Bethesda Statement on Open Access Publishing.

(1) Scientific works should be excluded from exclusive commercial services such as pay-per-view by default, in particular when these works had been publicly funded. These commercial services should only be possible in cases where authors explicitly allow commercial exploitation (for whatever reason). This does not mean that commercial services which contain digitized material from research and education should not be permitted. As long as free access to the basic material (according to open access principles) is guaranteed, there are no objections to commercial usage, let alone to income from advertisement.

(2) The stipulation mentioned in (1) should also be part of any subscription package which Google Inc. or other licensees might sell to libraries or other public research and education institutions.

(3) CCES cannot accept the Settlement providing Google with a quasi monopoly over the usage of out-of-print and orphan works. Other organizations, in particular libraries, which might wish to digitize the same works again (for whatever reason) should enjoy the same freedom from legal (copyright) constraints as is guaranteed to Google. No quasi monopoly can be in the public interest; any suspected quasi monopoly should be considered under a antitrust perspective. The Settlement must not establish new obstacles to potential Google competitors or even to public institutions.

(Although this may be a problem requiring resolution through legislation, for instance changing the copyright law with respect to out-of-print and orphan works, the Court might also find a solution in the Settlement.)

(4) The Settlement should demand that Google and any other future licensees guarantee the long-term preservation of the digitized material. This could, for instance, be achieved by providing the respective national libraries with those digitized objects which fall under their mandate to preserve their national cultural heritage.

(5) The CCES also has some concerns and suggestions with respect to the *Book Rights Registry*:

> (5-1) In general, the Settlement should take into account the global dimension and consequences of the Settlement. It is not acceptable for the Book Rights Registry to be solely in the responsibility of and under the sole jurisdiction of US American institutions.

> (5-2) Therefore, it is unfitting for the Association of American Publishers and the Authors Guild to be given the exclusive mandate to exercise the rights of heterogeneous and globally distributed authors to their digitized works or of intermediaries such as libraries, whose duty it is to preserve the cultural heritage and make it available to the public.

> (5-3) There should be public control over the contracts for library packages mentioned above, in particular in order to monitor price policies. The CCES does not believe that this control should be exercised by a U.S. District Court but rather by an international organization (cf. 5-6).

> (5-4) It should be within the mandate of the *Book Rights Registry* (in coordination with relevant international organizations) to set up rules and standards for the quality of digitized objects, for instance for the quality of the

display, but also for the quality of metainformation (description of the digitized objects). This is essential for high quality search results.

(5-5) The CCES suggests that the board of directors of the *Book Rights Registry* should a) have a more international composition, b) have at least one member from science or education, c) one member from consumer/tax payer organizations, and d) one member from institutions such as libraries, archives or public information transfer centers.

(5-6) Finally, the CCES proposes that the *Book Rights Registry* be monitored by a neutral international organization, for instance by UNESCO, the UN organization for education, science, culture, and communication.

It is very unlikely that the CCES can take part in the Fairness-Hearing for the Settlement announced by the Court for October 7th in New York. Nevertheless the CCES hopes that the Court will take our remarks and suggestions into account in its future decision process.

Respectfully yours

*[signature]*

Prof. Dr. Rainer Kuhlen
Speaker of the Coalition "Copyright for Education and Science"
Unter den Linden 6
D -10099 Berlin
Germany
http://www.urheberrechtsbuendnis.de/
URL: www.kuhlen.name
Email: rainer.kuhlen@uni-konstanz.de


Notice per email to:

Michael J. Boni, Esq.
Joanne Zack, Esq.
Joshua Snyder, Esq
Boni & Zack LLC

15 St. Asaphs Road
Bala Cynwyd, PA 19004
bookclaims@bonizack.com

Daralyn J. Durie, Esq.
Joseph C. Gratz, Esq.
Durie Tangri Lemley Roberts & Kent LLP
332 Pine Street, Suite 200
San Francisco, CA 94104
UNITED STATES OF AMERICA
bookclaims@durietangri.com