# SFWA — SCIENCE FICTION & FANTASY WRITERS OF AMERICA

**P.O. BOX 877, CHESTERTOWN, MD 21620**
execdir@sfwa.org - 410-778-3052

September 2, 2009

**VIA FEDERAL EXPRESS**

Office of the Clerk
J. Michael McMahon
The Honorable Denny Chin
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/10/09

RECEIVED SEP - 3 2009 CLERK'S OFFICE S.D.N.Y.

**RE:   Objection to Google Book Settlement and Notice of Intent to Appear at Fairness Hearing in *The Authors Guild, Inc., et al. v. Google Inc.*, Case No. 05 CV 8136 (S.D.N.Y.)**

Dear Judge Chin:

This letter is sent in protest to the proposed settlement in *The Authors Guild, Inc., et al. v. Google Inc.* ("the Settlement"). The objection is lodged on behalf of the Science Fiction and Fantasy Writers of America, Inc. ("SFWA"), a non-profit organization of professional writers of science fiction, fantasy, and related genres. Founded in 1965, the organization currently includes over 1,500 speculative authors, artists, editors, and allied professionals. Past and present SFWA members include such prominent authors as Isaac Asimov, Anne McCaffrey, Ray Bradbury, and Andre Norton. SFWA is well-known for its annual presentation of the prestigious Nebula Awards, for excellence in science fiction and fantasy writing. Among its other functions, SFWA assists members in legal disputes with publishers, and hosts the well-known Writer Beware website, located at the domain name, http://www.sfwa.org/for-authors/writer-beware/.

Office of the Clerk, J. Michael McMahon
Page 2
September 2, 2009

SFWA holds over 40 copyright registrations in a number of anthologies, which it publishes annually, including, among others, the Nebula Awards Showcase (since 1966), the SFWA Grand Masters, and the Science Fiction Hall of Fame (volumes I – IV).

SFWA is deeply concerned about the potential negative ramifications of the Settlement on its membership. As set forth more fully below, SFWA believes the Settlement fails for a number of reasons, specifically: (1) it effectively creates a monopoly for Google Inc. ("Google"), conferring significant market power on Google, which will drastically curtail the commercial options of SFWA's authors; (2) the proposed class definition and representatives do not effectively represent the individuals who have the greatest interest in the lawsuit and negotiated Settlement; and (3) the Settlement permits Google to circumvent existing copyright laws that the plaintiffs in this action sought to enforce. In sum, SFWA asserts that the Settlement will have a negative effect on the authors whose interests SFWA has represented for years.

I. **The Settlement Permits a Monopoly That Would Restrict Authors' Options**

The Settlement should be rejected because it grants a significant and unwarranted market power to Google, conferring upon it an unjustified power to dominate the market for out-of-print books. The Settlement grants Google unfettered control over the manner in which out-of-print books are offered to the general public, and unlimited authority to set prices, primarily in the case of orphan works. Google would have virtually exclusive control over the out-of-print book market. It would serve as the sole gatekeeper for the distribution of out-of-print works.

SFWA's own Ray Bradbury once noted, "Without libraries what have we? We have no past and no future." Effort to make more books and publications accessible to the general public

Office of the Clerk, J. Michael McMahon
Page 3
September 2, 2009

is a commendable goal. This goal, however, should not be pursued at the expense of placing exclusive power in the hands of any one entity, in this case Google.

Under the terms of the Settlement, the future of online research would be compromised by Google, which would serve as the central gatekeeper for the distribution of out-of-print works, setting prices with little concern over free market considerations and with little input from the author and/or purchasing public. Google would, by law, be the only entity with permission to sell out-of-print orphan works. By creating a monopoly over the online publication of certain works, the Settlement effectively negates any other entities or systems from competing with Google and offering similar services at competitive prices.

SFWA agrees with Brewster Kahle, founder of the Internet Archive, who stated, "Google is trying to monopolize the library system. If this deal goes ahead, they're making a real shot at being 'the' library and the only library." *See International Business Times*, August 22, 2009.

The Settlement fails to recognize the possibility that new media may exist for the distribution of the out-of-print works that are the subject of the Settlement. Amazon, Yahoo!, or the Internet Archive all may provide competing systems for the distribution of the works covered by the Settlement. The Settlement's creation of the Book Rights Registry limits the ability of authors to shop their books to different systems and secure better deals for the digitized publication of out-of-print books. By offering Google exclusive rights to orphan out-of-print works that are in university libraries, the Settlement permits Google to be the sole entity to build a significant digital collection of copyrighted books.

Should the Settlement be approved, there will be a ceiling on the amount of money authors may make on the sale of their works, in this case 63% of all revenues that Google

receives from the commercial uses of the works in the Google library. While many may view this as a substantial sum of money for out-of-print books, authors have no ability to challenge this fee once entered in the Settlement. Google will essentially serve as the sole literary agent for all rightsholders, setting the price for online consumer access to out-of-print works. The Settlement thus effectively dictates a market model for the value and future value of the electronic rights in books.

Thus, at least financially, the Settlement will have the reverse effect of its authors' expressed intentions. It would create fewer, rather than more, options for SFWA's authors to control and profit from their intellectual property. The Settlement allows the Book Rights Registry to act the sole literary agent for the rightsholders covered by the Settlement.

With the Settlement, each author in the class will essentially be forced to surrender all rights in the online publication of their works. The freedom that each author should possess in holding a copyright in such work will be usurped by one entity, which will, for all intents and purposes, dictate the manner in which works are distributed to the public.

## II. The Proposed Settlement Class Does Not Satisfy the Requirements of Rule 23 and Due Process

The Settlement does not satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. Under the Settlement the due process rights of the absent class members are not protected, and they should not be bound by its terms. Importantly, notice has not been effected to all individual class members, as required under Fed. R. Civ. P. 23(c)(2)(B). The inadequacy of notice is particularly troublesome here, where individuals' intellectual property rights are

Office of the Clerk, J. Michael McMahon
Page 5
September 2, 2009

being transferred and Google would be released for future acts of infringement. On that ground alone, then, the Settlement should be rejected.

Moreover, the putative class representatives are inadequate and non-typical representatives of the absent class members whose interests are at the heart of this action, and thus do not satisfy the requirements of Fed. R. Civ. P. 23(a). The Settlement identifies members of the Author Sub-Class in the lawsuit as "authors, and their heirs, successors and assigns, as well as all other members of the Class who are neither publishing companies nor their successors or assigns" (the "Class"). The Authors Guild (the "AG") and the Association of American Publishers (the "AAP") and the individual named class representatives (collectively, the "Representatives") are inadequate Representatives of the class for at least three reasons.

First, the Representatives do not adequately represent the authors of sub-classes. For example, the authors of scholarly books, the works perhaps most significantly affected by the Settlement, are not well-represented. A majority of the out-of-print works contained in university libraries targeted by the Google Book Rights Registry are research-oriented. The proposed Representatives are not appropriate class representatives for the scholarly works group. There is no evidence that those authors were given any voice in negotiating the Settlement, not that the Representatives have even solicited, much less presented, their position.

Furthermore, none of the individual named class representatives are authors of adult trade fiction. Thus, they do not adequately represent the interests of many SFWA members, whose works are widely distributed in the stream of commerce. Considering that the AG's position on the Settlement is at odds with SFWA's, SFWA believes that its interests, and those of many of its members, are not being adequately voiced in the Settlement and negotiation process.

Office of the Clerk, J. Michael McMahon
Page 6
September 2, 2009

      This point is exacerbated by the fact that the interests of authors are simply not aligned with those of publishers. They have not historically been aligned, and they should not be now. Authors seek to maintain as many rights in their work as possible. Publishers seek to control many such rights in order to promote their own interest and profit. Accordingly, the Court should question an agreement accepted by two groups whose interests are traditionally diametrically opposed.

      Second, the Representatives have not presented the position of current licensees of works; therefore, the Settlement does not protect their interests. SFWA is the publisher of an annual collection of award-winning Science Fiction literature and short stories, called the <u>Nebula Awards Showcase</u>. Like many editors of anthologies, SFWA has a unique arrangement with the contributors to and publishers of the SFWA anthology. The Settlement fails to contemplate such arrangements, especially how such relationships will determine whether the work is made available to the Google library, how the prices will be set, and how any revenues will be split among the editor, author, and publisher.

      Third, and perhaps most important, the Representatives do not adequately represent the body of authors with the greatest interest in the Settlement – the "John Doe" holders of copyrights in orphan works. A large portion of the Class defined in the Settlement consists of authors of out-of-print works who are unidentified and who have not received adequate notice, as required under Fed. R. Civ. P. 23. These works will be published and distributed if the Settlement is approved, despite the fact that the authors of the orphan works have had no voice in the terms of the Settlement. Because the Settlement requires Class members to opt out (not in) if they do not desire to be included in the Settlement, copyright holders of orphan works will

automatically be deprived of their intellectual property rights without their consent. That result also should be fatal to approval of the Settlement. If the Settlement is approved, standard class protections would be completely destroyed, and the due process requirements and protections inherent in Fed. R. Civ. P. 23 are ignored.

### III.   The Settlement Contravenes the Protections of U.S. Copyright Law

Under the Settlement, Class members would lose the substantive protections afforded them under federal copyright law, subjecting them to a compulsory license. First, the Settlement fails to address whether Google's past actions violated U.S. copyright law or whether the acts fell under a fair use exception. Going forward, the Settlement obfuscates the issue of how Google's scans and publication of the literary snippets would be interpreted under U.S. copyright law.

The central issue at the heart of the original lawsuit with the AG and the AAP – whether Google's digitization of over seven million books constituted "fair use" under U.S. copyright laws – has not been satisfactorily resolved. Under the terms of the Settlement, that lack of clarity will have a far-reaching impact on interpretation of U.S. copyright law. The plaintiffs asserted that Google was infringing the copyrights of the authors of the works. The Settlement effectively grants Google a retroactive license for all works that had been digitized. The Settlement does not address Google's violation of U.S. copyright laws via the library digitization and demonstration of book snippets. Because the Settlement thus potentially offers Google vast immunity from otherwise infringing uses of author's copyrights, it does not set good precedent for courts interpreting the fair use doctrine in the context of digital media.

Office of the Clerk, J. Michael McMahon
Page 8
September 2, 2009

Second, the Settlement permits Google to usurp the rights belonging to authors of orphan works, who had no opportunity to "opt out" of the Settlement. As noted above, most of the works covered by the Settlement are out-of-print orphan works with no identifiable rightsholders. They have not been given adequate notice, and accordingly, they cannot take the active step of opting out.

Nevertheless, the Settlement provides a license to Google to display, publish, and distribute copies of the orphan works. This arrangement is problematic because the rightsholders of the orphan works never agreed to enter into such a license. Accordingly, via the Settlement, Google received broad rights in works even though such rights were never provided to Google by the owners. The Settlement therefore undermines the very foundation of the U.S. Copyright Act, which bestows on authors a bundle of rights, such as the right to reproduce a work, prepare a derivative work based on the original product, and the right to distribute the work. The Settlement disregards such statutory rights, which are inherent to each author, by passing such rights to Google, who will, via the Settlement, act in the place of the orphan work rightsholder.

The Settlement thus would effect a profound change in the way the bundle of rights created under the Copyright Act are distributed. Even if a rightsholder of a work is unknown, U.S. law allows for a copyright in a work to endure for the life of the author plus 70 years. The Settlement would create a new model in which rights would pass automatically to Google if the work was deemed "out-of-print" or "not commercially available" and an orphan work. Such a massive sea change in U.S. copyright law is an exercise better left to Congress, and should not be given to independent parties with a vested financial interest in such an arrangement.

Office of the Clerk, J. Michael McMahon
Page 9
September 2, 2009

## IV. **Conclusion**

According to former SFWA member Isaac Asimov, "A subtle thought that is in error may yet give rise to fruitful inquiry that can establish truths of great value." Efforts to make the vast collection of out-of-print works accessible to more individuals are commendable. A universal library, which allows researchers and scholars to access a realm of resources that were unavailable before, offers a great benefit to society.

Despite these lofty goals, SFWA asks the Court to assess the ramifications of the Settlement. What price are we to pay for the development of a virtual library? Should we allow Google an effective monopolization over the sale and distribution of out-of-print works whose copyright owner is unknown? Should we allow the parties to the Settlement to override the fundamental principles of U.S. copyright law in order to effect a commercially beneficial resolution? Are we to allow a non-representative class to dictate the terms of a settlement, which will have a far-reaching effect on many individuals for many years to come? Shouldn't major changes to the foundations of U.S. copyright law be scrutinized and handled by Congress, not private entities with selfish interests?

SFWA thinks not. The criticisms hurled at the Settlement are rooted in legitimate fears about the far-reaching impact of the world it will create for past, present, and future generations of authors. The Settlement should not be approved solely because of its commendable mission. As noted above, the Settlement is fundamentally flawed in a number of key areas.

The Settlement and the debate it has created has set in motion a number of crucial discussions. While the Settlement's current paradigm for a universal library is unacceptable and inappropriate, SFWA believes that the class members, if properly heard, might be able to achieve

Office of the Clerk, J. Michael McMahon
Page 10
September 2, 2009

a just resolution. At this point, however, SFWA respectfully requests that the Court reject the proposed Settlement, considering not only the serious failures of the class protections here, but also the potentially disastrous anticompetitive effect the Settlement would endorse.

Finally, SFWA requests the opportunity to appear at the Fairness Hearing in this matter currently scheduled for October 7, 2009. Accordingly, SFWA is filing in conjunction with this Letter of Objection, a Notice of Intent to Appear at the Fairness Hearing. Due to time constraints and my limited time in New York City, I respectfully request the opportunity to be called to testify on October 7, 2009.

Dated: September 2, 2009
                                             Respectfully submitted,

Science Fiction and Fantasy Writers of America, Inc.
PO Box 877
Chestertown, MD 21620
execdir@sfwa.org

By: _____
Russell Davis
President, SFWA

Office of the Clerk, J. Michael McMahon
Page 11
September 2, 2009

## CERTIFICATE OF SERVICE

Russell Davis, President of SFWA, says that on September 2, 2009, he served a copy of this Objection to Google Book Settlement and Notice of Intent to Appear at Fairness Hearing upon:

Michael J. Boni, Esq.
Joanne Zack, Esq.
Joshua Snyder, Esq.
Boni & Zack LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004
bookclaims@bonizack.com

Jeffrey P. Cunard, Esq.
Bruce P. Keller, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
bookclaims@debevoise.com

Daralyn J. Durie, Esq.
Joseph C. Gratz, Esq.
Durie Tangri Lemley Roberts & Kent LLP
332 Pine Street, Suite 200
San Francisco, CA 94104
bookclaims@durietangri.com

via electronic mail.

I declare that the statement above is true to the best of my information, knowledge and belief.

Russell Davis