

protecting
and promoting
authors' rights

BY FAX (212) 805-7906

The Honorable Denny Chin
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-9-09

Friday, September 04, 2009

Re: The Authors Guild et al. v. Google, Inc. Case No. 1:05 cv 8136 (S.D.N.Y.)

Dear Judge Chin:

The Authors' Licensing and Collecting Society (ALCS) wishes to submit this letter in relation to the final settlement approval in this case.

The Authors' Licensing and Collecting Society Limited ('ALCS') is the UK collecting society for writers of all genres of literary and dramatic copyright works including fiction, journalism, plays, poetry, academic texts, TV and radio scripts and story-lines, dramatisations, translations, abridgements and adaptations.

Established in 1977 and wholly owned and governed by the writers it represents (of whom there are currently over 73,000), ALCS is a not-for-profit, non-union organisation. The Society's governing body, the Board of Directors, is composed of elected writers. Since its foundation, ALCS has paid writers over £200 million in fees and today it continues to identify and develop new sources of income for writers.

We serve two core purposes. Firstly, we collect secondary royalties on behalf of writers across the UK and abroad and pay them directly, twice yearly. Secondly, we also campaign and lobby on issues of importance to writers both at a national and international level, ensuring that writers' rights are both recognized and rewarded.

The proposed Google settlement agreement is an important issue for our members. It is our understanding that more UK books were digitised by

Authors' Licensing &
Collecting Society Ltd

The Writers' House
13 Hayden Street
London EC3N 1DB

Tel 020 7264 5700
Fax 020 7264 5755
Email: alcs@alcs.co.uk
www.alcs.co.uk



INVESTOR IN PEOPLE

The UK Collective Rights Management
Society for Writers

Registered in England & Wales No 1310636
Registered Office as above

Google and are included in the settlement agreement than books published in any other country with the exception of the United States itself. We have already identified more than 18,000 of our members and 37,000 works as being directly affected by the settlement.

In relation to the settlement ALCS has from the outset taken the stance of informing our book and article writer Members about the agreement, its implications and the options available without giving advice on what action writers should take.

However, as a result of this sharing of information on the proposed Settlement we received back from our Members in excess of 2,000 letters and emails and have dealt with a large number of phone calls. Almost all of this correspondence has related to the wish for a writer to register and benefit from the settlement and the subsequent formation of a Book Rights Registry. Many members also asked ALCS to undertake the administration of payments due. What we have not received from any of the 43,000 book writer Members we contacted was anything at all expressing objections, anger of outrage at the proposed settlement.

Our experience is that UK Writers overwhelmingly support the proposed Settlement because it offers a new opportunity to advance authors' rights and interests, providing them with a new channel of revenue and giving them control over how their works are used online. In particular, it opens up a new commercial window for works that have been out-of-print yet still retain value. Many writers in the United Kingdom are self employed and, due to the nature of writing, have not always been able to make regular pension contributions. These writers particularly benefit from the supplementary payment streams such as is being proposed by the formation of a Book Rights Registry, because they offer an important level of income support at a time when writers no longer receive significant royalties from the actual book sales themselves.

It is also our understanding that the not-for-profit Book Rights Registry will operate as a collecting society having a similar function to that of ALCS with a governance structure equally representing authors and publishers. There are many well established collecting societies throughout UK, Europe and indeed the rest of the world. These societies offer effective low cost rights clearance for the benefit of rightsholders ranging from performer, artists and musicians to directors, publishers and producers. In an increasingly global marketplace, collecting societies employ reciprocal agreements to administer global repertoires and help markets work efficiently thus creating significant value for both rightsholders and consumers within a legal licensed framework. And by centralising functions such as locating rightsholders, as well as the

collection and payment of royalties, collecting societies also overcome otherwise insurmountable transaction bottlenecks. Collecting societies are recognized by scholars and economists as an essential input into innovation and creativity.

It is our belief that the settlement and the subsequent formation of the Book Rights Registry in the United States would offer similar benefits to both domestic and international rights holders and provides a pragmatic way out of the legal impasse of works appropriated for public consumption without the permission of the rights owner and in contravention of the spirit and letter of internationally accepted copyright law, which would otherwise set a dangerous precedent for corporate piracy of individual rights recognized as such by the Universal Convention on Human Rights 1946.

Yours sincerely,

Owen Atkinson
Chief Executive Officer