UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────── X
The Author's Guild, Inc., Association of American

Publishers, Inc., et al.

            Plaintiffs,        Case No.: 05 CV 8136 (DC)

    v.

Google, Inc.,

            Defendant.
──────────────────────────────── X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/10/09

**OBJECTION AND NOTICE OF INTENT TO APPEAR OF CLASS MEMBER JUNJI SUZUKI TO PROPOSED SETTLEMENT BETWEEN PLAINTIFFS THE AUTHORS GUILD, INC., ASSOCIATION OF AMERICAN PUBLISHERS, INC., ET AL. AND GOOGLE, INC.**

     I represent <u>194 writers</u> in Japan who are members of the Japan Visual Copyright Association ("JVCA"), a copyright protection and management organization. On a personal level, I am also an author with respect to the Japanese books set forth in Exhibit A. We are class members to the subject class action by virtue of Article 5 Section (3) of the Berne Convention for the Protection of Literary and Artistic Works (hereinafter "Berne Convention.") I am submitting this objection letter to bring this honorable court's attention to concerns that I and my clients share with respect to the proposed Google Book Settlement Agreement.

     At foremost, this court has no constitutional authority to approve a Settlement Agreement that effectively circumvents the prevailing international treaties. Article 9 Section 1 of the Berne Convention states "[a]uthors of literary and artistic works protected by this Convention shall have the *exclusive right* of authorizing the reproduction of these works, in any manner or form." In other words, those who wish to commercially exploit in-copyright literary works are required to obtain the copyright holders' approval. However, the proposed class action settlement provides Google a *presumptive non-exclusive right* to commercially exploit literary works that are in copyright but out-of-print, i.e., books that are not commercially available in the United

1

States through traditional channels of trade. The proposed class action settlement agreement violates Article 9 by giving benefit of the doubt to Google whenever it wishes to commercially exploit in-copyright but out-of-print literary works. Under the Federal Constitution, the power to sign and ratify international treaties is shared only by the President and the Senate; it would be unconstitutional for this court to approve the proposed Google Book Settlement because it encroaches upon the Separation of Powers carefully crafted by our Founding Fathers.

Second, the proposed settlement agreement is an abuse of class actions due to its over-inclusive effect. This court, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, certified an "authors' sub-class" that comprehensively covers authors and copyright holders of Books published on or before January 5, 2009. It must be emphasized that Google has not completed digitization of all books published before January 5, 2009. See § 5.1(a) of the Proposed Settlement Agreement. Legislative history shows that class actions under Rule 23(b)(3) were introduced to remedy past harmful conduct that, on an individual claim basis, could not feasibly be prosecuted for economic reasons. Even in mass tort class action cases involving future claimants, future claimants are typically exposed to some form of past harmful conduct; their claims are considered "not present" only because they have not manifested any damages. See Anchem Products, Inc. vs. Windsor, 521 U.S. 591 (1997). Applying the Anchem analysis, a majority of the authors and copyright holders in this case are neither present nor future claimants because their works have yet been digitized. Certification of an authors' sub class under these circumstances operates more like a forced licensing scheme rather than the remedying of past harm, i.e., its effects are more quasi-legislative rather than judicial.

Third, as addressed by many copyright holders worldwide, the Google Book Settlement still stirs confusion regarding how the "In-Print / Out-of-Print" definition will apply to overseas in-print literary works that are not widely distributed here in the United States. For example, both my and many of my clients' literary works are in-print only in Japan; they may be purchased on-line by a resident in the United States but the settlement agreement is silent as to

whether "online purchases" via amazon.com or amazon.co.jp qualify as customary channels of trade. On June, 3, 2009, Plaintiff's counsel did publicly announce that literary books currently in-print in Japan but not widely available in the United States will be treated as "In-Print" for purposes of the Settlement Agreement by Google. However, the agreement has not been revised to incorporate this stated viewpoint.

Fourth, Section 10.2(b) of the proposed settlement agreement states "no [copyright infringement] claims are released with respect to any acts of copying, transmission or distribution of a Book or Insert that Google undertakes in response to a search or other request of a user outside of the United States [which] results in [the] displaying [of] parts or all of such Book or Insert in such user's jurisdiction." Again, Plaintiff's counsel did state that Google will take necessary measures to prevent access to the Google Library Project by users residing outside the United States, once the proposed settlement agreement takes effect. However, neither Plaintiff's counsel nor Google have explained the actual infrastructure that will be implemented to effect the promises made by Google. As such, there are legitimate concerns whether such promises are technologically feasible given the Internet's borderless nature.

Fifth, the proposed settlement agreement requires future disputes between authors and Google concerning the Google Library Project to be subject to commercial arbitration in New York unless another place is agreed to by the parties. For many authors and copyright holders living outside the United States, traveling to New York for a dispute resolution is financially burdensome, which may discourage them from actively policing their copyrights. In order to remedy this situation, a book registry, which is functionally similar to the one contemplated under the Settlement Agreement, should be separately established.

In conclusion, this court's approval of the subject settlement agreement would not only defeat public policies underlying class actions certified under Rule 23(b)(3), but would also raise concerns and distrust to the integrity of this country's legal system. For these reasons, the

proposed Google Book Settlement Agreement should be rejected.

Respectfully submitted,

Junji Suzuki
MARSHALL·SUZUKI LAW GROUP, LLP
150 Spear Street, Suite 725
San Francisco, CA 94105
Tel: 415-618-0090
Fax: 415-618-0190
Email: junji@marshallsuzuki.com

4

## Attachment

· Your Honour, if this settle agreement attempts to settle copyright infringement claims globally, then filing of objections as well as making an appearance for the Fairness Hearing should also be made open

·· it is unfair for copyright owners living outside the United States to be forced to retain local counsel and then file a pro-hac vice application to retain counsels outside New York.