# Kenyon College

SEP 03 2009

JUDGE CHIN'S CHAMBERS

Lewis Hyde
Richard L. Thomas Professor
of Creative Writing
Bailey House
Kenyon College
Gambier, Ohio 43022-9623
740-427-5343 phone
hyde@kenyon.edu
www.lewishyde.com

The Honorable Denny Chin
% Office of J. Michael McMahon, Clerk
U.S. District Court, Southern District of New York
500 Pearl Street
New York, NY  10007

August 31, 2009

Dear Judge Chin:

I write to object to some of the terms of the settlement that has been proposed by the litigants in Case No. 05 CV 8136, *The Authors Guild, Inc., et al. v. Google Inc.*

I am a member of the Author Sub-Class in this law suit.  The University of Michigan library lists eight books of mine that we may assume were digitized by Google in the course of their creation of Google Book Search.  These include *The Gift* (Random House, 1983), *This Error is the Sign of Love* (Milkweed Editions, 1988), and *Trickster Makes this World* (Farrar, Straus, 1998).

As an author I am also a reader, a user of libraries, and a beneficiary of the public domain.  I say this because I believe that the settlement in question amounts to a major intervention in our national cultural policy, one that will affect the U.S. knowledge ecology for generations to come.  It therefore should not be adjudicated upon the assumption that we authors (and our publishers) are rights holders only.  We are cultural citizens as well; our copyrights matter to us, but so do larger questions of how literature and knowledge circulate among us.

It is my understanding that courts hold fairness hearings in class action law suits in order to determine whether all members of the class find the proposed settlement fair, adequate and reasonable.  While I applaud many of the elements of the settlement in question, I am nonetheless troubled by several others.  To be specific:

*  I object to the settlement's proposed capture of income from orphan works.  I can think of nothing in the history of copyright law, or in the law as currently written, that would countenance such a taking.  As a 1988 House of Representatives Report stated clearly:



Hyde - 2

> Under the U.S. Constitution, the primary objective of copyright law is not to reward the author, but rather to secure for the public the benefits derived from the author's labors. By giving authors an incentive to create, the public benefits in two ways: when the original expression is created and...when the limited term... expires and the creation is added to the public domain. [H.R. Rep. No. 100-609 at 17]

In no instance are third parties meant to benefit, as the settlement would allow. The primary beneficiary of a copyright grant is the author and, as copyright expert Melville Nimmer once wrote, "the ultimate beneficiary is the public domain." [*Nimmer on Copyright* III at 13] To allow other parties to intervene between the author and the public would be like allowing an executor to drain an estate before distributing it to the rightful heirs.

The settling parties must therefore find some better way to dispose of the unclaimed funds that accrue from orphan works. My own suggestion would be for the court to appoint a guardian or trustee charged not just with the task of representing absent owners but with a mandate to do so in the light of copyright's traditional double focus: rights holders must be given their due and, where no rights holder can be found, the public domain must be the beneficiary.

\* I object to the monopoly powers that Google and the Books Rights Registry will acquire, should the court approve the orphan works elements of the settlement. Approving the settlement as it stands will in essence grant the settling parties a compulsory license enabling them to exploit the commercial value of orphan works. Because of the unique nature of class action litigation it will be virtually impossible for any other digital library or search service to receive such an exemption. Google will thus be in a position to monopolize this important part of our emerging knowledge economy.

Again, history makes it clear we should be wary of such broad powers in regard to the circulation of knowledge. Copyright has long been classified as a monopoly privilege and in that context, as Lord Macaulay famously said, "...monopoly is an evil. For the sake of the good we must submit to the evil; but the evil ought not to last a day longer than is necessary for the purpose of securing the good." [*Misc. Works* (1880) at 233]

Hyde - 3

In our own tradition, as you may know, Thomas Jefferson believed that the Constitution ought to have prohibited monopolies in general and, if an exception were to be made for copyright, belived that it should be strictly limited.  In a letter to James Madison dated 28 August 1789 Jefferson suggested the following addition to the Bill of Rights:  "Monopolies may be allowed to persons for their own productions in literature..., for a term not exceeding -- years, but for no longer term, and no other purpose."  (As for the term, Jefferson's usual suggestion was 19 years.)

In short, monopoly privileges in the world of public expression have been viewed with extreme skepticism ever since the the first appearance of a public sphere in the eighteenth century.  It would be dangerous indeed to grant them now to the private parties who propose this settlement.

*  Finally, I object to the fact that no representative of libraries or of the public interest will be a voting member of the board of directors of the Books Rights Registry.  The Registry promises to be an important player in the nation's cultural environment; if it is called into existence, its directors must represent the users as well as the owners of proprietary content.

In sum, while I support many elements of the settlement as currently drafted, in regard to the items I have here listed I do not consider it to be fair and reasonable.  I urge you to take these issues into account as you approach the difficult task of deciding whether or not to approve the settlement.

Yours sincerely,

Lewis Hyde

cc:

Michael J. Boni, et al., Boni & Zack LLC, Bala Cynwyd, PA.
Jeffrey P. Cunard, el al., Debevoise & Plimpton LLP, New York, NY
Daralyn J. Durie, et al., Durie Tangri Lemley Roberts & Kent LLP,
     San Francisco, CA