

Noordhoff Uitgevers
Winschoterdiep 70A
9723 AB Groningen
P.O. Box 58
9700 MB Groningen
The Netherlands

t +31 (0) 50 522 69 22
f +31 (0) 50 527 75 99
www.noordhoffuitgevers.nl
info@noordhoff.nl

FROM
Arjen Holl
CEO Noordhoff Uitgevers B.V.
a.holl@noordhoff.nl
t 00 31 (0)50 52 26 259
f 050 52 74 035

TO
Office of the Clerk
J. Michael McMahon
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007
UNITED STATES OF AMERICA

REGARDING
Objections and comments to the Google Book Settlement

REFERENCE

DATE
1 September 2009

RECEIVED SEP - 3 2009 CLERK'S OFFICE S.D.N.Y.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/10/09

Dear Sir Michael McMahon,

We (Noordhoff Uitgevers B.V., hereinafter called "Noordhoff") are writing to you in regards to the proposed Settlement Agreement between Google Inc., and the Authors Guild and the Association of American Publishers.

Noordhoff Uitgevers B.V. (hierna "Noordhoff"), a Dutch company having its registered office at Groningen, the Netherlands, is the biggest publisher in the area of educational products in the Netherlands. Noordhoff specialises in editing information into teaching material for the full range of educational institutions. Noordhoff is a operating company of the Infinitas Learning Group, together with 6 other educational publisers (Plantyn N.V. in Belgium, Liber AB in Sweden, Nelson Thornes Ltd in the United Kingdom, Bildungsverlag Eins GmbH in Germany, Verlag Jugend & Volk GmbH in Austria and Müszaki Kiadó in Hungary). For more information please refer to www.noordhoff.nl and/or www.infinitaslearning.com.

**We would like to make the following objections and comments to the Google Book Settlement:**

- **Consequences for European rightholders**

First of all we would like to express our concerns about the fact that it appears to be possible for American parties to propose a settlement in the United States (US), that has also consequences for European rightholders, who weren't involved at all in the settlement with Google, and who have still exclusive rights on their works. Noordhoff is the (free) rightsholder on all of her publications. According to European Copyright Law it is not allowed to digitize copyright protected works and make these available to the public without the explicit consent of the rightholders. If a party wants to use a copyright protected work, he should contact for example the publisher and can try to conclude a licensing agreement (opt-in). The current proposal for the Settlement seems to be the world turned upside down, as Google can make use of copyright protected works from all over the world (available in American libraries) without the prior consent of rightholders, as long as these rightholders do not opt-out of the Settlement. We would very much like to contribute to a broad offer of digital content and if necessary and indicated are willing to cooperate with other parties, however this should be the rightsholders decision. Noordhoff decides whether and the conditions on which she is prepared to concude a licenseagreement. Therefore (according to Noordhoff) Google is acting illegal towards Noordhoff by digitizing the works (and probably making them available to the public) without Noordhoffs prior consent.



**Next to this fundamental objection we have the following objections:**

- **Determination of commercial availability**

According to section 1.28 of the proposed agreement Google will initially classify a book as 'commercially available' if Google determines that the rightsholder of such book, or the rightsholder's designated agent, is, at the time in question, offering the book for sale through one or more then-customary channels of trade in the United States.

As a consequence of this very narrow definition, a lot of European books are currently considered as non commercially available (while they are still commercially available in Europe).
The determination of the commercial availability of a book is very important, because it is used to determine the default display uses under the settlement. A commercially available book will be automatically removed from display uses while a non-commercially available book will require action from the rightsholder. Unless European publishers change the classification one-by-one, which places an unnecessary administrative burden on them, European books will be tagged as non-commercially available and Google will be exploiting the book commercially as foreseen in the settlement. As far as exclusive rights are concerned, the rightsholder is and should be the one who can determine whether a book is still commercially available or not. In practice this seems not to be the case, as wrong information in the database of Google is very hard to change or cannot be changed at all by the publisher.

In order to solve this serious concern, Google would at least need to change the definition from "US channels of trade" to simply "channels of trade". In order to seek further clarity, it would also be useful if the settlement agreement includes that a book is commercially available if it is
a) indicated as in print or as commercially available as printed book and/or in digital format in information from any reliable metadata providers in the US or elsewhere and
b) is available for sale new to purchasers within the US or elsewhere, regardless of whether the rightsholder (or its designated agent (e.g. bookseller) is located within or outside the US.
As mentioned before, the publisher should be able to change the commercially availability status.

If our concerns are not taken into account, we will be obliged to remove all our books and inserts from the Google database and from all servers or sources from which Google or the participating libraries could make any uses.

Even if a book is no longer commercially available, exploitation by Google can be very harmful to Noordhoff: every (say) 4 years educational books are to be revised. However, selling the previous edition can be very harmful to the exploitation of the revised version. Moreover, Noordhoff should be the one to decide whether of not she wants to digitize her books and sell them in a digital form.

- **Bad quality of the database**

According to section 3.2 (d) (i) of the settlement "Google shall determine whether a Book is Commercially Available or not Commercially Available based on an analysis of multiple third-party databases as well as an analysis of the Book's retail availability based on information that is publicly available on the Internet. When analyzing the third-party databases, Google will use the publishing status, product availability and/or availability codes to determine whether or not the particular database being used considers that Book to be offered for sale new through one or more then-customary channels of trade in the United States".

For the correct functioning of the system, it is critical which third-party databases Google uses to determine the commercial availability of a book. Therefore, Google should commit in the settlement to use non-US, such as European, metadata providers and contact publishers to ensure that they have correct information regarding whether a book is commercially available in Europe or not. This must be done prior to making any display uses under authorisations in the settlement agreement.


Noordhoff Uitgevers

The management of bibliographic and rights information in the database on the website of the Google Book Settlement leads to a lot of practical problems. It is therefore urgent that the quality and functioning of the database is improved in order to allow righstholders to make full use of it. Currently, it is extremely burdensome and confusing for a European publisher to claim books in the database. For example, section 3.2(d)(i) of the settlement refers to the need to group books together if a book is commercially available and a previous edition is also in the database. In this case, both books would have to be tagged as commercially available in order to avoid "cannibalisation" of new editions. This is however currently not the case, at least for European books, leading to lengthy and costly processes for the publishers, who have to claim the same book several times to be sure that it will be tagged as commercially available. Furthermore the database contains incorrect information. For example, in several cases the name of the rightsholder is incorrect. A correct functioning of the database in practical terms should be a pre-condition before any display uses foreseen in the settlement are allowed.

- **Uncertainty about digitization status**

Another point is that the database gives the rightsholder no certainty about the digitization status of a book. If it has not been digitized on or before May 5, 2009, the claim form does not give any certainty about whether the book will still be digitized by Google or not. Besides the fact that Google needs the prior consent of the rightsholder in order to be able to digitize the book (as mentioned earlier in this letter), the rightsholder should not have to check the database everytime, but be informed by Google about this.

- **Lack of representation of non-US rightsholders in the Book Rights Registry (BRR)**

Section 6.2 (b) of the settlement establishes that the "Registry will be organized on a basis that allows the Registry, among other things to (i) represent the interest of Rightholders in connection with this settlement Agreement...The Registry will have equal representation of the Author Sub-Class and the Publisher Sub-Class on its Board of Directors..."

The BRR will represent rightholders world wide negotiating on their behalf very important matters including terms of new revenue models. It is unfair that nothing in the settlement ensures that there will be non-US publishers and authors in the Board of the BRR. Such a commitment is necessary in order to protect the interests of non-US copyright owners.

- **Deadline for making objections or opting out still too short**

We were glad that the deadline for making objections or opting out was postponed earlier this year. As however European rightsholders weren't part of the negotiations, they should have enough time to think about the possible consequences of the settlement for them and should have enough time to make a decision with regard to the settlement. Also because of the objections mentioned in this letter, and because of the ongoing investigation of the European Commission on the effect of the Google Book Settlement Agreement on the European publishing sector, European authors, European consumers and society at large (a hearing of the European Commission will take place on 7 September 2009), the deadline for making objections or opting out is still too short and should therefore be postponed. This would subsequently mean that the deadline for claiming cash payments also has to be postponed.

Therefore we retain all rights we presently and in the future hold to all our works.

Yours sincerely,
Noordhoff Uitgevers B.V.

A.M.W. Holl
CEO