UNIVERSITY OF MICHIGAN

# Library

September 4, 2009

Paul N. Courant
University Librarian and Dean of Libraries
Harold T. Shapiro Collegiate Professor of Public Policy
Arthur F. Thurnau Professor
Professor of Economics and of Information

818 Harlan Hatcher Graduate Library South
Ann Arbor, Michigan 48109-1205
734 764-9356   pnc@umich.edu

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-10-09

The Honorable Denny Chin
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, #1020
New York, NY 10007

In Re:  The Authors Guild, et al. v. Google, Inc., Case Number 1:05 ev 8136 (S.D.N.Y.)

Dear Judge Chin:

I, hereby, request this court's permission to submit this letter as an amicus curiae supporting final settlement approval in the above-referenced case.

I write on behalf of the University of Michigan, where I am University Librarian and Dean of Libraries, Harold T. Shapiro Collegiate Professor of Public Policy, Arthur F. Thurnau Professor, and professor of economics and of information. The University of Michigan is a comprehensive, Research I, international university that has been in existence significantly longer than Michigan has been a state. We have three campuses in Michigan with a total of over 50,000 students. Annually, our library acquisitions now exceed twenty million dollars and our students purchase approximately thirty-five million dollars in texts for their courses, which makes us one of the largest customers and promoters of authors' and publishers' works in the world.

We support this settlement because its overwhelming benefits to libraries, the academy, and the world hearken back to our fundamental motivations for partnering with Google to digitize the University of Michigan Library collection.

**Preservation:** The print collections of the world's libraries are *literally* turning to dust, as hundreds of millions of books printed on acidic paper age and become brittle in library stacks around the globe. The books and the knowledge within them are disintegrating faster than librarians and archivists are able to preserve them, even collectively. The University of Michigan has been one of the most successful academic research libraries in its efforts to preserve its collections in digital formats. Prior to our partnership with Google Inc., we digitized between 5,000 and 10,000 works each year, a rate that put us ahead of other digitizing libraries and well behind the books, which were already decomposing before we could get to them. At that rate, we estimated that it would take us approximately 900 years to preserve our 2002 collection digitally. Our partnership with Google, which the settlement will preserve, will enable us to preserve approximately eight million works in less than a decade. Given the scope of Google Book Search (GBS), this will mean—despite the ravages of war, weather, neglect, and time—that GBS can preserve for the world in excess of fifty million unique works that comprise the bulk of printed human knowledge. Because they are being digitized *now*, works that would

The Author's Guild et al v. Google Inc.                                                                                              Doc. 514

have been lost forever have the opportunity to exist in perpetuity. This settlement will enable preservation of our human heritage to continue at an unprecedented scale.

**Access:** There was a time when libraries operated akin to mausoleums, allowing few, if any, to view the ossified remains within. Centuries ago, books were so difficult to produce and so expensive that library curators felt little choice but to prioritize preservation and the security of the texts over making the works available for people to read.[1] Today, we realize that access to works of knowledge is fuel for the engine that promotes progress in society; indeed, we preserve works because we want as many people as possible to have access them. Anyone who comes to our library is welcome to read anything and everything in our collection. GBS enables people to identify works of interest from among the most distinguished libraries in the world and to locate and buy or borrow them. This ability to search and to access the world's great library collections is of extraordinary public value. The settlement goes beyond even this, enabling any postsecondary or public library to provide free access to the entire digitized corpus. Moreover, books long left for dead by their authors or publishers have been maintained by academic libraries and through this settlement can be immediately and broadly available to anyone with an internet connection anywhere in the United States.

**Access for People Who Have Print Disabilities:** This settlement, which arose from a dispute that did not center on disability law, is unprecedented in that it overtly and intentionally includes access for people who have disabilities, *as a forethought*. It is likely that this settlement will have its most palpable positive benefit for people who have print disabilities. Migrating the written record to a digital format will make it possible for people with a variety of types of disability to get what most people already have—access to the knowledge within the books that interest them. One of the primary reasons the University of Michigan asked Google to digitize our collection was to enable our patrons who have print disabilities to get the kind of immediate access that our other patrons have. Because it can take weeks to digitize a long text, our students, faculty, and staff who have print disabilities who were studying, conducting research, preparing for classes, and participating in the academic colloquy were forced to lag behind because the majority of our library was not available in a format accessible to them. We have already implemented a mechanism that enables people who have print disabilities to access our digitized books in a manner consistent with the perspectives of the parties in this settlement and disability organizations, such as the National Federal for the Blind. And the settlement will reach far beyond our library. Google Book Search will increase the number of books available to people who have print disabilities by three orders of magnitude—from tens of thousands to tens of millions.

**Research:** Google Book Search has broad appeal because it enables the public to search across millions of books to find pieces of text of interest to them—something the legal world has been accustomed to for some time. To round out the their understanding of their personal pursuits, the

---

[1] We still have these proclivities. For instance, the first book in the University of Michigan Library's collection, Audubon's Birds of America, is worth millions of dollars and almost no one has access to it. Once it is digitized, however, anyone will be able to virtually leaf through its pages, take in its elegant pictures, and read about the then-proclivities of now-extinct birds.

weekend genealogist, the baseball enthusiast, and the armchair Harlan Hatcher historian all have the opportunity to unearth the lost, un-indexed treasures buried in the corpus of the human record digitized from our vast collections. People are drawn to GBS because it allows them to visit—for them—uncharted territories and then to either buy or borrow the source materials of interest to them. The settlement will enable the public to find and purchase books that have not been for sale for decades, many of which have only been available to users of a handful of libraries. Moreover, the entire corpus of text can be used for linguistic analysis, natural language processing, and other computationally-intensive research techniques that will enable scholars to learn new things about language, thought, and meaning. We already have a line of scholars who are interested in conducting research that will be made possible by the settlement.

**Curation:** With the vast bulk of our collections in digital form, we can take much better care of our print collections, because the digital copies can become (subject to appropriate legal arrangements) the principal copies of use. Libraries will be able to collaborate, and to hold securely amongst them the best print copies. This will reduce the costs of higher education and secure for posterity the original versions of the scholarly and cultural records. The settlement will give us the ability to create innovative library finding tools, add metadata to extant records, and transform library research in ways that were heretofore unimaginable.

**Continued Digitization:** The University of Michigan began digitizing portions of its collection at least a decade before Google Inc. even existed. Due to the immense opportunities in preservation, access, accessibility, research, and curation made possible by digital technology, it has been our objective to make the best use of this technology to the extent lawfully possible. It is at the heart of our mission to make it easy for people to find and use works of authorship and to do so with the long-term interests of the public in mind. This is why we continue to digitize ourselves—even though Google is currently out-pacing us by a factor of a hundred or more—and why we will still continue to be interested in other lawful digitization projects. GBS has made possible what only existed in librarian science fiction novels and, still, we are already thinking about what might come next.

In sum, we believe that this settlement advances the most noble purposes of our university and other universities, of our libraries and other academic libraries, and of the public at large. Google Book Search is in a position to make the knowledge of the world easily available across the country. It's a remarkable vision, and a remarkable achievement, and we are whole-hearted in our support of it.

Sincerely yours,

Paul N. Courant