USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-10-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE AUTHORS GUILD, INC., ASSOCIATION OF AMERICAN PUBLISHERS, INC., ET AL.,<br><br>Plaintiffs,<br><br>-v-<br><br>GOOGLE INC.,,<br><br>Defendant. | Case No.: 05 CV 8136 (DC)<br><br>**OBJECTION OF JIRO MAKINO AND IWAO KIDOKORO TO THE PROPOSED SETTLEMENT AND TO CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS AND SUB-CLASSES** |

## **INTRODUCTION**

The Author's Guild et al v. Google Inc.    Doc. 533

We, Jiro Makino and Iwao Kidokoro, are co-author of several books published in Japan. They are Digital Copyrights (Softbank Publishing, 2002), Accusation through the Internet (Mainichi Communications, 2003), the Mechanism of Electronic Authentication and the Basics of PKI (Mainichi Communications, 2003), Quick Overview of Personal Information Protection Act (Mainichi Communications, 2003), and Practice of Personal Information Protection Act (Mainichi Communications, 2005). Jiro MAKINO is an attorney at law in Japan. Iwao Kidokoro is a visiting professor at Center for Global Communications, the International University of Japan.

The proposed settlement agreement ("the Settlement Agreement") contains serious defects in that it requires a decision which exceeds proper scope of jurisdiction by ignoring the global nature of the Internet. It disregards the fact that works will be distributed in the entire world, and regards the issue as a domestic issue within the U.S.

Furthermore, the Settlement Agreement focuses its scope only on a legal decision as to permissibility of digitization of the subject works, and contains significant defects in that it ignores the underlying issue of existing mode of "digital data search system." It fails to acknowledge important issues of how to guarantee fairness and

diversity of the search by giving priority to economy without making sufficient consideration in cultural diversity. As a result, it suffers from extreme bias of the search results.

**ARGUMENT**

1. Jurisdictional Issues

We respect the review of this case by the court. This case, however, applies to the authors in the entire world, and ultimately relates to the realization of global distribution of the information about copyrighted works. It should be treated as a global issue and should not be treated as a limited domestic issue within the country. As in the Unite States, state and federal laws exist separately and jurisdiction is respectively divided, different legal theory and different jurisdiction should be applied for the issues that go beyond the U. S. borders.

(1)    The Scope of Authors

Since this case affects the rights and obligations of all authors in the entire world, it is necessary to publish the notice of rights and explain the limitations of rights and consideration. Anyone lacks a standing to file a suit without these explanations. Authors of various countries do not know the class action filed in the U.S. and have not approved the legitimacy of its procedure. In terms of legal requirements, causation, and indication of intent, it is extremely unrealistic and hypothetical to regard that the attorneys representing only a certain portion of U.S. authors can represent all the authors in the entire world.

(2)    Users

Since not only the U.S. citizens but people in the entire world can use the web, if Google opens a book search site, it is obvious that it can be used at any place in the entire world. According to the Settlement Agreement, sales of the right to use database will be limited within the U.S. However, this is only formal limitation which can be easily nullified both in terms of technology and operation. In addition, as the web is a global communication tool, irrespective of Google's subjective understanding, the U.S. book search site will be wide open to all citizens in the entire world. It facilitates the use by all users in the entire world and the use cannot be contained within

the U.S.

(3) Publishers

A copyright registry will be established and all books in the entire world and the entire information about authors will be monopolistically controlled. It will give a decisive influence to the publishing environment in all countries. This will affect the publication environment. Small publishing companies will be eliminated, and, as a result, the cultural diversity will be denied. This is not simply a domestic legal issue within the U.S., but becomes a global issue due to the use of the Internet,.

2. Enforcement of Publication Agreements under the Settlement Agreement is Impossible

The Settlement Agreement not only provides compensations for the publications that are already digitized, but permits the use of relevant data in the future as well. It establishes the right of publication for all works. Furthermore, it mandates publication obligation to out-of-print books as they can be published without permission. For authors, works are their idea and personality themselves. Authors themselves own the right to decide what to do with their thoughts, that is, their works, just as a human being has a right to decide his/her own way of life. The right to make these decisions have to be respected just like an individual has to be respected.

If the only possible effect of the Settlement Agreement is to avoid litigation by paying compensations, it can be regarded effective. The Settlement Agreement, however, has further effect in that it establishes new rights and obligations, thus we conclude that the Settlement Agreement exceeds the proper scope of a class action settlement.

3. Neutrality of the Copyright Registry

Under the Settlement Agreement, a copyright registry will be established at Google's cost to manage works. However, if all authors in the entire world become plaintiffs, converting all works in the entire world into data, and realize the use by the web, it will significantly affect the authors in the entire world. This is not an issue only for Google. As it will affect the authors in the entire world, it must be established as a system that can properly handle the rights and interests to be affected. Copyright

management organization must be established with care as an entity which can conduct the work fairly and properly. Google should support this effort. Nevertheless, the framework to establish the management organization included in the Settlement Agreement is not well organized and lacks required fairness.

4. Authors' Privacy

The Settlement Agreement allows Google to collect users' personal information comprehensively and guarantees Google to monopolize personal information on book search. Information on book search, book purchase, and book use profoundly relates to one's belief or thought. Private enterprises should not own and analyze them. By separating book purchase information and payment information, Japan adapts a mechanism that credit card companies could not get users' purchase data. To allow book search without establishing a mechanism that prohibits the collection and possession of information relating to one's thought or belief causes serious violation of privacy law or personal data protection law.

5. Reasonableness of Search Systems
(1) Distinction between Appropriateness of Digitization and Fairness of Search Systems

First of all, digitization is a method for book search and merely provides a method of delivery. Digitization itself does not have any specific meaning. An important point is that, books will be offered to the users only after digitized, disclosed, made searchable and made deliverable, but this type of offer could be biased. If entire work is digitized, an aggregated huge amount of digital information must be made searchable.

As in the past, the published books were made available for use, after being collected in the libraries, classified and indexed, huge amount of digital data will be made usable for the users only by means of digital data search capability. Therefore, it is imperative for any search system to provide a search environment with fair and comprehensive search method that does not discriminate any work and does not interfere with the freedom of expression of the authors. If search method itself includes an algorism that results errors and bias, and gives more weight to certain books,

and results special bias, usage of digitized date will be significantly restricted.

The Settlement Agreement is silent as to the search after the digitization and the fairness in use to be provided to the users, and no discussion has been conducted at all. In the past, books were classified according to the book classification system and target books were equally searched. This method has been acknowledged as a common world wide method and widely used. Thus, books as analog information were offered equal opportunities to be read, and the users were provided the right to use all of the books equally.

(2)  The Status quo of the Book Search

Book searches conducted in Japan indicate certain characteristics. If we search books using specific keywords, the examination preparation books and the examination taking technique related books, that is, the type of books assumed to be sold in the largest numbers occupy higher rankings of search results. The results showed that most of important, specialized, systematic and basic academic books were rarely listed within top 100th. The search using important words in the legal field around the world and legal terms as key words yielded similar results.

Not only in Japan but all over the world, among the digitized books, because of the algorism which accord higher value to the type of books that are inexpensive and sold in large numbers, such type of books occupy the top level of the search results, or if the books which Google regards important occupy the top level of the search results, it would tarnish culture and ideas.

If the book search promoted in the Settlement Agreement yields the results described above, it will be an intentional discrimination of the books, infringement of freedom of ideas, and tarnish of culture and history. It results that the books Google prefers will occupy the top level of the searches, and that young students mainly read these books alone. As a result, the risk of control of ideas left unchecked.

Already, Google claimed that they had an authority to decide as to the information search, display of the result, and ranking of the result, and that its authority cannot be impaired as it is the right of freedom of expression. U.S. courts have approved Google's claims.

"In addition, the Court finds that PageRanks do not contain provably false connotations. PageRanks are opinions - opinions of the significance of particular Web sites as they correspond to a search query. Other search engines express different opinions, as each search engine's method of determining relative significance is unique. The Court simply finds there is no conceivable way to prove that the relative significance assigned to a given Web site is false. Accordingly, the Court concludes that Google's PageRanks are entitled to "full constitutional protection." Jefferson County, 175 F.3d at 852 (quoting Milkovich, 497 U.S. at 20)". (Search King, Inc. v. Google Tech., Inc., No. CIV-02-1457-M, 2003 U.S. Dist. LEXIS 27193, at 11) .

"Google suggested at oral argument that an average viewer of a PageRank would understand it to be a matter of opinion, rather than a statement of fact, and thus would not understand it to be defamatory." (Kinderstart.com LLC v. Google, Inc., No. C 06-2057 JF (RS), 2006 U.S. Dist. LEXIS 82481, at 41 n. 11).

According to this theory, Google, as one of the media companies, has the freedom to have its own view of value and political opinion, and to evaluate freely, to give priorities, to deny, and to discriminate the information it handles, and U.S. Courts affirmed Google's claims as freedom of expression.

No guaranty or consensus exists in anywhere that this theory will not be applied directly to the book searches. Rather, the freedom of expression is applied to Google, an evaluation standard of Google, will be applied, and, in addition, current book search algorism that Google owns will be applied all over the world, thus, Google's ranking as media will become controlling. The book search system established in this manner will be a search system controlled by Google's ideas.

As described above, in the Settlement Agreement where digitization of the books that facilitates book search is the issue, nothing is discussed as to the maintenance of the fairness of the search system, its most important issue. Thus, it infringes the freedom of being searched and the right of search of the users. This issue is far more important than the issue of whether digitization is acceptable or not. Digitization is an issue of the form of existence of information and not the issue of how to handle its right.

Digitization of the books is important as a basic condition to provide searchability and is a necessary task to be done to facilitate searches of a large volume of books, thus must be welcome.

Legal issues, however, are how the search subjects are handled, provided to, and used by the users, when the search results are used, and how the right holders of such digital and analogue information will be treated. Key issue is the handling of the rights itself, that is, in this case, the method of book information usage, and the method of how it is offered to the users.

This Settlement Agreement has a serious defect in that nothing is discussed and envisioned as to the most important issues. Without amending this defect, the Settlement Agreement will be meaningless.

## CONCLUSION

The Settlement Agreement contains serious defects in that it requires a decision which exceeds proper scope of jurisdiction for the case and in that it ignores the global nature of the Internet (its capacity that all of the users in the entire world can use it simultaneously). It disregards the fact that works will be distributed in the entire world, and regards the issue as a domestic issue within the U.S.

Furthermore, the Settlement Agreement focuses its scope only on a legal decision as to permissibility of digitization of the subject works, and contains significant defects in that it ignores the underlying issue of existing mode of "digital data search system." It fails to acknowledge important issues of how to guarantee fairness and diversity of the search by giving priority to economy without making sufficient consideration in cultural diversity. As a result, it suffers from extreme bias of the search results.

For the reasons explained above, we respectfully request that the Court to reject the Settlement Agreement or decline to certify the class with respect to Japanese or foreign authors.

September 4, 2009

Respectfully submitted,

Makino Jiro

makino@makino-law,jp

Iwao Kidokoro

kidokoro@glocom.ac.jp

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                        :
The Authors Guild, Inc., et al.,                        :   Case No. 05 CV 8136 (DC)
                                                        :
                                                        :   ECF Case
                        Plaintiffs,                     :
                                                        :
            v.                                          :
                                                        :   **CERTIFICATE OF SERVICE**
Google, Inc.,                                           :
                                                        :
                        Defendant.                      :
                                                        :
------------------------------------------------------- x

We hereby certify that on the seventh day of September, 2009, we caused a true and correct copy of our Objection to the Proposed Settlement Class and Sub-Class to be served by electronic transmission (e-mail) upon the below listed counsel at the e-mail addresses designated for service of Objections in this action:

Michael J. Boni, Esq.
Joanne Zack, Esq.
Joshua Snyder, Esq.
Boni & Zack LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004
bookclaims@bonizack.com

Jeffrey P. Cunard, Esq.
Bruce P. Keller, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
bookclaims@debevoise.com

Daralyn J. Durie, Esq.
Joseph C. Gratz, Esq.
Durie Tangri Lemley Roberts & Kent LLP
332 Pine Street, Suite 200
San Francisco, CA 94104
bookclaims@durietangri.com

Dated: September 7, 2009

Respectfully submitted,

牧野 二剛

Makino Jiro

makino@makino-law,jp

Iwao Kidokoro

kidokoro@glocom.ac.jp