Case 1:05-cv-⬚⬚-⬚⬚    Document 180    Filed 08/31/2009    ⬚ of 7

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-11-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

The Authors Guild Inc., Association of American Publishers Inc., et al.,

        Plaintiffs,

- v. —

Google Inc.,

        Defendant.

------------------------------------- x

Case No. 05-cv-8136 (DC)

Declaration of
Ministerialdirigent
Dr. Johannes Christian Wichard

    I, Johannes Christian Wichard, declare under the penalty of perjury under the laws of the United States, the following:

    1.    I am the Deputy Director General of the Directorate Commercial and Economic Law in the Federal Ministry of Justice of the Federal Republic of Germany ("Germany") and make this declaration based upon my personal knowledge. I submit this declaration to apprise the Court of the significant adverse impact that the proposed Settlement would have upon authors, publishers and digital publishers and digital libraries in Germany and the European Union ("EU").

    2.    The Federal Republic of Germany is historically called "Das Land der Dichter und Denker" ("the land of poets and thinkers"). German literature can be traced back to the Middle Ages and the works of such accomplished authors as Walther von der Vogelweide and Wolfram von Eschenbach. German authors and poets have won great renown, including Johann Wolfgang von Goethe and Friedrich Schiller. The Brothers Grimm folk tales popularized German folklore on an international level. German authors such as Thomas Mann, Bertolt Brecht, Hermann Hesse, Heinrich Böll and Günter Grass have been famed for their Twentieth

Century literature. An impressive number of German authors have won the Nobel Prize for literature. German authors and publishers produce around sixty thousand new books each year.

3. Germany is the birthplace of modern printing and publishing. In 1439, Johannes Gutenberg of Mainz initiated the worldwide revolution in information technology through his invention of the movable type printer. The high quality and relatively low cost of the Gutenberg Bible established the superiority of movable type and, as a result, printing presses rapidly spread across Europe and later throughout the world. The invention of the Gutenberg press has been seen by many as the critical event of the Second Millennium and greatly influenced the Renaissance and spread of science and culture throughout Europe.

4. Germany is the third largest book producer in the world. The German book market represents eighteen percent of all books published worldwide. Books and other publishing products represented 2 billion Euros in German exports in 2005. In Germany, there are more than 22,000 businesses which can be counted as part of the production or distribution book trade, 15,853 of which are publishing companies. Germany's Frankfurt Book Fair, one of the oldest and most prestigious, has a tradition that spans over five hundred years and is still considered the world's most important event for international publishing. In 2008, more than 7,000 publishing companies and 100 countries exhibited 402,284 products at the Frankfurt Book Fair, including 123,496 new releases. The next Frankfurt Book Fair is scheduled for October 14 through October 18, 2009. A second world-class book fair is staged every spring in Leipzig and serves as a bridge to Eastern European countries. This past year 2,135 exhibitors from 38 countries participated and 147,000 visitors attended.

### German Laws Protect the Rights of Authors and Publishers

5. Germany has a tradition of protecting the cultural and scientific assets and rights of authors and publishers in their written works. In 1886, Germany adhered to the Bern

Case 1:05-cv-08136-DC   ent 180   Filed 08/31/2009   Page 3 of 7

Convention and was an original signatory to the World Copyright Treaty in 1994. Article 6 of the WCT provides that authors of literary works enjoy the exclusive right of authorizing the making available to the public of the original and copies of their written works. German law prohibits digital copying and display of works by protecting the right of making available to the public as an author's exclusive right. See German Copyright Act, § 19a and corresponding EU-Directive[1], Article 3, ¶ 2. Under the German Copyright Act, authors as rightsholders must give consent before any literary work is copied or displayed. Digitization constitutes reproduction within the meaning of Section 16 of the German Copyright Act and this is an exclusive right of the author.

      6.      Google's rules on Library on-premises display is substantially different from the corresponding, and much more limited, rule on such displays in Germany. Google would make books broadly available at Library access terminals. Such a broad right of use and access does not exist under German law. The German limitation for Public Library use merely allows the making available of works at terminals on the Library premises. Article 52b, styled, "Communication of works at terminals in public libraries, museums and archives," clearly provides, "So far as there are no contractual provisions to the contrary, it shall be permissible to make published works available from the stocks of publicly accessibly libraries, museums or archives, which are not for direct or indirect economic or commercial advantage, exclusively on the premises of the relevant institution at terminals dedicated to the purpose of research and for private study. In principle, copies of a work in excess of the number stocked by the institution

---

[1] DIRECTIVE 2001/29/EC OF THE EUROPEAN PARLIAMENT AND OF THE COUNCIL of 22 May 2001 on the harmonisation of certain aspects of copyright and related rights in the information society.

Case 1:05- -136-DC   Document 180   Filed 08/31/2   age 4 of 7

shall not be made simultaneously available at such terminals. Equitable remuneration shall be paid in consideration of their being made available. The claim can be made only through a collecting society."

7.     The European Digital Library ("Europeana") and the Deutsche Digitale Bibliothek (the German Digital Library or "DDB") or the commercial project, www.libreka.de, have sought to make literary works available to the public in libraries where the rightsholder's consent has been obtained or where a statutory exception applies. Europeana and DDB seek to ensure that digital control of European and German national literary and cultural heritage remains with the public, and thus a democratic responsibility, while fully respecting existing copyright rights.

8.     The German Ministry of Justice issued a press release from Berlin, 5 July 2007, describing this carefully tailored balancing of rights:

> Building upon the first reform enacted in 2003, the Second Basket will further adapt German copyright law to the "digital age" and new technological developments. The Act establishes an appropriate balance between copyright holders' interests in the safeguarding and exploitation of their intellectual property and the interests of the equipment industry, consumers and science in using the works of right holders. "The basic parameters of copyright law must be analyzed regularly and adapted to technological changes. The balance between the rights of copyright holders and the public interest must be constantly fine-tuned. This Act is something we can be proud of. It provides an important contribution that will help Germany stay up to date in the information society," stated Federal Minister of Justice Brigitte Zypries.

9.     Germany strongly protects the privacy of individuals who use the Internet through two laws -- the Federal Data Protection Act (Bundesdatenschutzgesetz or "BDSG") of 1990, amended in 2009, and the Telemedia Act (Telemediengesetz or "TMG") of 2007, amended in 2009. German law requires that any provider of services on the Internet must offer anonymizing or pseudonymizing services to recipients of the service if this is technologically

Case 1:05-cv-08136-DC   Document 18   c 08/31/2009   Page 5 of 7

feasible and reasonable. Providers of services may collect and use personal data for the provision of telemedia only to the extent that the Telemedia Act or another statutory provision referring expressly to telemedia permits it or the recipient of the service has given his or her approval. Use for other purposes is only permitted under narrowly tailored legal provisions or with the consent of the data subject, namely the person whose personal information is being collected. Data subjects must be informed of the type, scope and purpose of the collection, processing and use of personal data and the user's right to withdraw permission at any time prior to the beginning of the collection. The EU-Directive 2002/58/EC of 2002 further ensures that such personal data is protected in the same manner throughout the single European market.

By failing to ensure similar or adequate privacy protections, the Settlement violates well-established national and international privacy laws.

10. The proposed Settlement raises an even more fundamental issue of fairness, causing concern that German authors may find their own voices unheard. The plaintiff Authors Guild, representative of the author sub-class, cannot adequately and fairly represent German authors or their interests because of its limitations on membership. I am advised that, for an author to join the Authors Guild, he or she must have been published by an established American publisher.[2] A publication by a non-U.S. publisher will not qualify an author for membership. This fails to acknowledge the important role that German authors play in world literature or that not all German authors will have secured a U.S.-publishing arrangement. As a consequence, there are few German authors who are members of the Authors Guild. This, in turn, means that German authors have had little or no say in the settlement process even though

---

[2] See the Authors Guild website at https://www.authorsguild.org/join/eligibility.html, visited on August 31, 2009.

Case 1:05-cv-08136-DC   Document 180   Filed 08/31/2009   Page 6

any German author who published a book on or after January 1, 1923 and on or before January 5, 2009 is a member of a sub-class represented by an organization that excludes them from membership.

11.     Similarly, the plaintiff Association of American Publishers does not adequately and fairly represent German publishers or their interests because its membership is only open to "all U.S. companies actively engaged in the publication of books, journals, and related electronic media."[3]  A non-U.S. publisher by definition would not be permitted membership.  As a consequence, there are no German publishers who are member of the Association of American Publishers.  The occupational and professional organization representing the German book trade is the Börsenverein des Deutschen Buchhandels in Frankfurt/Main (the "BDB"), which was founded in Leipzig in 1825.  It represents book publishers, intermediaries and general book retailers.  In 1964, the BDB founded the Ausstellungs und Messe GmbH, which organizes the previously-described Frankfurt Book Fair.  The highpoint of every Frankfurt Book Fair is the award of the Peace Prize of the German Book Trade.  In spite of its prestigious roots and importance to global book publishing, the BDB is nowhere found to be part of or represented in the proposed Settlement.

12.     The proposed Settlement will have an immediate impact upon German authors, publishers and digital libraries by setting a industry-changing precedent that not only gives defendant Google an unfair advantage over all other digital libraries (commercial and non-commercial) in the United States and Germany, but also will flout German laws that have been established to protect German authors and publishers, including with respect to digital copying,

---

[3]     See Association of American Publishers website, http://www.publishers.org/main/Membership/member_01.htm, visited on August 31, 2009.

Case      cv-08136-DC    Document 180    Filed 08      09    Page 7 of 7

publishing and the dissemination of their works. The decision of this Court with respect to this Settlement will have the dramatic and long-range effect of creating a new worldwide copyright regime without any input from those who will be greatly impacted -- German authors, publishers and digital libraries and German citizens who seek to obtain access to digital publications through the Google service.

13.    I, Johannes Christian Wichard, declare under the penalty of perjury under the laws of the United States, that the foregoing is true and correct.

Executed:    Berlin, Germany,
             August 31, 2009

_____
Johannes Christian Wichard