

United States District Court
Southern District of New York

------------------------------------------------------------x

The Authors Guild, Inc.,
Association of American Publishers,
Inc., et al

        Plaintiffs

        v.

Google, Inc.,

        Defendant

------------------------------------------------------------x

Case No. 05 CV 8136-DC

**BRIEF *AMICI CURIAE* OF LYRASIS, INC., NYLINK AND BIBLIOGRAPHICAL CENTER FOR RESEARCH ROCKY MOUNTAIN, INC. IN SUPPORT OF MODIFICATION OF PROPOSED SETTLEMENT**

**PRELIMINARY STATEMENT**

The *amici* named below object to the proposed Google Books Settlement, No. 05 CV 8136-DC (hereafter "Settlement"), with respect to the definition of "Institutional Consortium" in §1.73. While the Settlement has the potential to provide unprecedented public access to a digital library containing millions of books, and therefore could advance the core mission of *amici*'s member libraries, it could also, if not modified, lead to an unwarranted exclusion of library consortia from access to the digital resources governed by the Settlement. This result would be to the great detriment of *amici,* their participating libraries, and most importantly the patrons of those libraries. *Amici* therefore respectfully request that this Court modify §1.73 of the Settlement to address the concerns set forth in this brief.

If broadly construed, §1.73 will create a non-competitive environment within the library vendor community. Its terms, particularly the language excluding "OCLC-affiliated networks"

1

from the definition of "Institutional Consortium" (hereafter the "Exclusion"), are no longer representative of the current marketplace, if indeed they ever were. Maintenance of a broad Exclusion would create a severe competitive disadvantage for a single class of library consortia that fall under the scope of the undefined term of "OCLC-affiliated networks." Going forward, a broad Exclusion could prevent *amici* and other similar organizations from being able to provide essential services to member libraries and their patrons, who will be deprived of access to the transformational digital resource governed by the Settlement. Given the significant investment of time and resources needed to create a digital library similar to that assembled by Google, it is likely that *amici* would not be able to offer their library patrons access to a meaningful competing digital library within the foreseeable future.

Therefore, if left to stand and if applied to *amici*, the broad Exclusion in the Settlement will impair *amici*'s fundamental mission of providing free access to information, and will likely have a significant and lasting deleterious impact upon the mission of every organization that Google may deem to fall within the undefined category of "OCLC-affiliated networks." Such an Exclusion could have the effect of virtually shutting out *amici* and other similar networks from participation in the digital library of the future. *Amici* respectfully submit that this Exclusion, if not modified, may also create a legally-countenanced restraint of trade against a single class of library consortia. The result of this broad and ill-defined Exclusion will cause grave harm to *amici* and their patrons, harm which is unjustifiable and wholly gratuitous to the professed public-serving purpose of the Settlement.

## IDENTITY AND INTEREST OF *AMICI CURIAE*

*Amicus curiae* Lyrasis, Inc. is a nonprofit membership organization representing over 4,000 academic, public and special libraries and cultural heritage organizations within the United

States. Lyrasis is dedicated to providing and improving the services and value of libraries and to promoting the public interest in a free and open information society. Lyrasis is a 501(c)(3) non-profit organization that provides its member libraries with educational, consulting and discount purchasing services. Lyrasis formed in April 2009 through the merger of two prior organizations that served largely contained geographic territories (SOLINET, serving the southeastern United States, and PALINET, serving the mid-Atlantic states). On October 1, 2009 a third organization (NELINET, serving the New England states) will join with Lyrasis.

*Amicus curiae* NYLINK is a nonprofit membership organization of all types of libraries and cultural heritage organizations located throughout the State of New York. Although it operates independently, NYLINK is an office of State University of New York

*Amicus curiae* Bibliographical Center for Research Rocky Mountain, Inc. ("BCR") is a 501(c)(3) nonprofit organization headquartered in Aurora, Colorado. It serves the states located in the Midwestern and Southwestern United States.

## ARGUMENT

*Amici* are consortia of libraries located within the United States. Because of the Settlement's inherent vagueness and imprecision, however, *amici* have no way to determine whether they fall within the definition of "Institutional Consortium" in §1.73 of the Settlement. That section defines "Institutional Consortium" as a "group of libraries, companies, institutions or other entities located within the United States that is a member of the International Coalition of Library Consortia *with the exception of Online Computer Library Center (OCLC) - affiliated networks*" (emphasis added). *Amici* participate in all activities of the International Coalition of Library Consortia ("ICOLC"), and have limited contractual relationships with OCLC. As explained below, however, the Settlement does not permit *amici* to determine whether any or all

3

00001/546/1129193.1

of them are "members" of ICOLC or "affiliates" of OCLC, simply by virtue of their dealings with these two named organizations.

*Amici* do not oppose approval of the Settlement in general, but believe that §1.73 must be modified to address three principal concerns:

- First, there is no definition in the Settlement nor any consensus understanding within the library profession at large as to what institutions may fall within the definition of the term "OCLC-affiliated network," or the definition of the term "member of the" ICOLC.[1]

- Second, even if there had ever been an understanding in the past as to what constituted an "OCLC-affiliated network," that understanding most recently became moot by reason of a substantial change in OCLC business arrangements that OCLC itself caused to go into effect on July 1, 2009.

- Third, there is not now and never was any justification for the exclusion of this one ill-defined category of organizations from participation in the programs and services established by the Settlement, ostensibly for the benefit of the reading public.

In short, the OCLC-affiliate exclusion in the Settlement, §1.73, should be deleted in its entirety from the Settlement. In the alternative, it should be construed to apply only to a very narrow subset of library groups, not to *amici*.

---

[1] To be clear, *amici* believe that they qualify as Institutional Consortia under the Settlement as it is presently written. ICOLC is an informal body. *Amici* are certainly "members" of ICOLC to the extent that anyone is or can be, but do not believe that ICOLC "membership" can or should have any bearing whatsoever on whether an entity qualifies under §1.73. Further, even if ICOLC "membership" is a condition for qualifying under §1.73, *amici* do not believe that they are "affiliates" of OCLC.

4

**The Definition of "Institutional Consortium" in §1.73 is Facially Unenforceable**

For more than thirty (30) years, prior to July 1, 2009, *amicus* Lyrasis, its predecessors and other similar organizations throughout the United States including *amici* NYLINK and BCR served as intermediary regional service providers ("RSPs") to their respective geographic regions for OCLC, Inc., pursuant to non-exclusive written agreements.[2] However, OCLC and these intermediaries such as *amici* have always been, and remain today, entirely separate legal entities, having no formal "affiliation" whatsoever. In the past, *amici* and other RSPs provided training, billing and support to individual libraries on behalf of OCLC, but nothing precluded the RSPs from engaging in separate contractual agreements with other providers, including with organizations and corporations that might compete with OCLC. Many RSPs were independent 501(c)(3) corporations, or they were state agencies or quasi-state agencies. Nearly all RSPs were also longstanding members of the International Coalition of Library Consortia.

Beginning July 1, 2009, OCLC's relationship with *amici* and the other RSPs changed dramatically. The longstanding RSP contractual agreements were unilaterally vacated by OCLC and replaced with what OCLC terms "Partner" agreements, under which the former RSPs may continue to provide certain reduced services to their member libraries, but under which the

---

[2] By way of background, OCLC is a nonprofit, membership, computer library service and research organization that provides computer-based cataloging, reference, resource sharing, eContent, preservation, library management and Web services to more than 71,000 libraries in 112 countries and territories. OCLC and its member libraries worldwide have created and maintain WorldCat, the world's richest online resource for finding library materials. In May, 2008, OCLC and Google announced that they had signed an agreement under which Google will share data and links to digitized books with OCLC. http://newsbreaks.infotoday.com/newsbreaks/OCLC-tightens-links-toGoogle-book-search-49260.asp.

5

libraries may also go directly to OCLC for those services. OCLC may unilaterally cancel this "Partner" arrangement at any time. The former RSPs, such as *amici*, accordingly have far less connection with OCLC than they did previously, although the OCLC's wholly-owned service centers continue to operate in various locations, as they did prior to July 1, 2009. If any entities were to fall within the term "OCLC-affiliated networks" used in the Exclusion, it is solely these service centers, and not *amici*, who should more properly be termed "affiliates" of OCLC.

In light of the enormous change in the relationship between *amici* and OCLC since July 1, 2009, the inherent problems of the "Institutional Consortium" definition in § 1.73, and particularly the Exclusion, are glaringly obvious.

Section § 1.73 defines "Institutional Consortium" as a "group of libraries, companies, institutions or other entities located within the United States that is a member of the International Coalition of Library Consortia ***with the Exclusion of Online Computer Library Center (OCLC) - affiliated networks***"(emphasis added). There are three major problems with this language.

First, the International Coalition of Library Consortia ("ICOLC") is not a legally constituted body. It has no formal organizational bylaws, membership criteria or structure, nor any defined or permanent membership. Technically, there are no "members" of ICOLC. It is simply an informal body that provides continuing education and communication among those who voluntarily choose to participate in its activities. Those activities include hosting a listserv to provide an informal information exchange among organizations that choose to participate, issuing very occasional public statements, and holding twice-yearly meetings that may be attended by anyone associated with a library consortium.

Second, §1.73 fails to define the meaning of the term "affiliated" in the phrase "OCLC-affiliated network." What degree of affiliation is required to trigger the Exclusion? Certainly

6

after July 1, 2009 *amici* and the other former RSPs no longer consider themselves "affiliated" with OCLC, they simply have limited contractual relationships with the organization, as *amici* do with many others (including OCLC's competitors).

Third, assuming *arguendo* that the Exclusion is intended to apply to *amici*, neither §1.73 nor any other section of the Settlement provides any reason *why* this group of *amici* should be treated as a class of one, and therefore prohibited from participating in the Settlement.

For these reasons, *amici* submit that the definition in §1.73, and particularly the Exclusion, is unenforceable on its face. It is not "fair, reasonable and adequate" under Rule 23(e), Fed. R. Civ. Pro., it does not comport with fundamental fairness or the public interest, and as argued in other *amicus* briefs filed in this action[3] the result of enforcing the Exclusion against *amici* could be to create an unlawful restraint of trade to the severe and unjustified financial detriment of *amici*.

By arguably singling out only one type of organization, the Exclusion creates an uneven playing field among libraries, and in effect gives Google absolute and unfettered discretion to determine who counts as a consortium and who does not. Absent a more concrete and specific definition of "OCLC-affiliated networks," the term is subject to interpretation that may be in Google's interest, but not in the public interest. Any number of other organizations besides the former RSPs of OCLC might be excluded; there are many other consortia that should arguably receive similar treatment because they have some agreement or arrangement with OCLC. For example, these could include the Boston Library Consortium, the Committee on Institutional Cooperation, the Connecticut Library Consortium, and Orbis/Cascade. All have contracted directly with OCLC to provide their members with services, just as *amici* have. Ultimately, the

---

[3] See, e.g., *Objection of Amazon.com., Inc. to Proposed Settlement*, filed Sept. 1, 2009.

7

effect of a broadly-interpreted Exclusion will be to deprive the reading public of the full benefits they deserve from the Settlement.

Furthermore, the period during which the Settlement was negotiated and provisionally approved was contemporaneous with (or just prior to) the time that OCLC was negotiating its own new Partner Program agreements. Therefore, the definition of "OCLC-affiliated network" is at best a historical artifact which, if applied literally, might reach no one or, alternatively, every consortium that has some passing connection to OCLC. What is not in doubt, however, is that if the Exclusion is allowed to stand, it will hobble the ability of an important segment of the library consortium community to obtain for its patrons the rewards of informational access they have been promised under the Settlement. Therefore, unless the Exclusion in §1.73 is stricken or modified, it could become a Court-sanctioned blunt instrument that could ensure a monopoly for some in what should otherwise be a growth opportunity for the entire library consortium community and a benefit to all library patrons.

### The Settlement Creates Concentrated Control

The Settlement provides an opportunity for Google, and Google alone, to further the mission of libraries by providing people in the United States with unprecedented online access to books. This concentrates the power to determine the accessibility of information in the hands of a highly powerful organization that dominates its market. OCLC too, which has entered into a relationship with Google, will have enormous power under the Exclusion as presently drafted, to the extent that it can unilaterally deem some consortia to be its "affiliates." The Settlement specifies *inter alia* at §§4.1, 4.5, and 7.2 that Google is granting rights to certain unnamed

00001/546/1129193.1

"Institutional Consortia" to engage in business arrangements with Google,[4] but the Settlement arguably goes further by tacitly allowing Google to delegate to an independent third-party, OCLC, the unconstrained right to determine which organizations may not participate under this agreement.

Ultimately, the key failing of the Settlement is that it neither defines the scope of the Exclusion (i.e., fails to precisely define the term "OCLC-affiliated network"), nor does it provide any substantial reason for the need to create this Exclusion *vel non*. By essentially (if surreptitiously) delegating the definitional discretion to OCLC, the Settlement gives OCLC – a *non*-party, not subject to the court's supervision -- virtually complete control over what will rapidly become an essential public good. The Settlement thus predefines in perpetuity who may reap the benefits of participation and who will be excluded entirely from participation.[5] This does not adequately serve the interest of the public, in whose name so much of the Settlement has been promoted.

## CONCLUSION

The concerns discussed above all flow from the potential for judicially-sanctioned concentration of power concerning two sets of legal rights: the right to determine the conditions of use and resale of Settlement-governed materials, and the right to determine the channels of distribution of those materials (*i.e.*, which library consortia may or may not participate under this Settlement). Fortunately, the Settlement that seeks to order these legal rights also contains a

---

[4] These sections of the Settlement provide *inter alia* for "Institutional Corsortia" to have the ability to sell Institutional Subscriptions, and to offer certain discounts, advantages which could be denied to *amici* under a broad reading of the Exclusion.

[5] *Amici* recognize that as a theoretical matter, nothing in the Settlement prevents another entity from undertaking a mass digitization effort similar to Google's, but this is a "let them eat cake" argument; the enormous cost of such an undertaking, and Google's significant time advantage means that no other entity is likely to be a viable competitor in the foreseeable future.

9

means of addressing the possible abuses outlined above. Specifically, the Settlement provides that this Court "shall retain jurisdiction over the interpretation and implementation of the Settlement Agreement."[6] Thus, the parties acknowledge this Court's authority to regulate their conduct under the Settlement. *Amici* respectfully urge the Court to exercise this authority vigorously to ensure equitable treatment of all potential library consortium partners, and thereby to ensure the broadest possible public benefit from the services the Settlement enables.

Specifically, *amici* respectfully request that the Court delete the existing definition of "Institutional Consortium" in §1.73 in its entirety and substitute the following definition: "any legally-constituted group of libraries, companies, institutions or other entities located within the United States."

Dated: September 4, 2009

> Respectfully submitted,
> COWAN, LIEBOWITZ & LATMAN, P.C.
>
> *[signature]*
>
> Robert W. Clarida, Esq. (RC-3190)
> Cowan, Liebowitz & Latman, P.C.
> 1133 Ave. of the Americas
> New York, New York 10036-6799
> (212) 790-9266
> rwc@cll.com
>
> Attorneys for *amici curiae* Lyrasis, Inc.,
> NYLINK and Bibliographical Center for
> Research Rocky Mountain, Inc.

---

[6] Settlement at §17.23.

00001/546/1129193.1