UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-11-09

The Authors Guild, Inc., et al.,  )
                              )   Case No. 05 CV 8136
      Plaintiffs,          )
                              )
v.                            )   OBJECTION OF AMERICAN
                              )   PSYCHOLOGICAL ASSOCIATION
                              )   TO PROPOSED SETTLEMENT
Google, Inc.,               )
                              )
     Defendant.         )
                              )

## INTRODUCTION

The American Psychological Association ("APA") objects to the proposed Google Book Settlement (the "Proposed Settlement") because APA, like other class members, is not being adequately compensated for its proprietary works for the following reasons: 1) the Google Book Project circumvents APA's current licensing scheme and prevents APA from earning substantially more through its own licensees; 2) The Proposed Settlement does not address Google's willful activities with respect to APA and possibly other class members; and 3) the Proposed Settlement fails to include periodicals and other proprietary reference materials that do not fit the Proposed Settlement's definition of "Book."

**I.   THE PROPOSED COMPENSATION STRUCTURE IS INADEQUATE**

    *A.  Google's Book Project Circumvents APA's Current Licensing Scheme and Prevents APA From Earning Substantially More Through Its Own Licensees*

By digitizing some of APA's books that were published within the last six years, Google has circumvented APA's policy of not licensing books within the first six years following publication. Moreover, Google's proposal of $60 per digitized book to be paid to class members

is substantially less than the amount that APA would expect to negotiate had Google entered into a license with APA. Under APA's typical licensing scheme, following the initial six year period, APA would require a minimum of $700 per title per year plus royalties. For books that were published 11-15 years after publication, APA would require a minimum of $350 per title per year plus royalties. As a result, the $60 per book compensation to which APA is entitled under the Proposed Settlement does not adequately compensate APA.

### B. The Proposed Settlement is Inadequate Because it Does Not Address Google's Willful Activities with Respect to APA and Possibly Other Class Members

The compensation structure to class members in the Proposed Settlement fails to differentiate between works that were infringed versus works that were willfully infringed. Instead, the terms provide for $60 per book regardless of whether the books were digitized willfully or not. In APA's case, on information and belief, the facts demonstrate that Google willfully infringed APA's copyright in its works when Google continued to digitize APA's works after APA sent Google express notice not to digitize.

    i.    Google Willfully Infringed APA's Rights by Digitizing Works After APA's Explicit Instruction Not to Do So

On October 12th, 2005, a few months following the announcement of Google's policy to allow copyright owners to opt out of Google's digitization efforts, APA sent a letter to Google specifically directing Google not to digitize any APA-copyrighted material. (*See* attached G. VandenBos letter to S. Wojcicki). APA's letter included a list of all APA copyrighted works to be excluded from Google's digitization efforts. Google confirmed receipt of APA's October 12th letter and confirmed that APA's list of works to be excluded from Google's digitization efforts was uploaded into Google's system on December 19, 2005. This list contained a header that read "GOOGLE PRINT LIBRARY EXCLUSION LIST" and covered 1,117 APA works

published from 1894 to 2005. Along with that acknowledgment, Google encouraged APA to inform Google of any changes that need to be made to the list.

Despite APA's explicit October 2005 instructions not to digitize any of its works, the facts demonstrate that Google continued to digitize hundreds of APA works. According to the Books Rights Registry established under the Proposed Settlement, as of August 14, 2009, there were approximately 950 APA works that have been digitized, including approximately 270 books and hundreds of journals, reference guides and other proprietary works. Many of these works have played a critical role in establishing APA as the foremost psychology publisher in the world, and as such, represent an irreplaceable part of APA's legacy.

Google's act of making exact copies of APA's proprietary works, in this case in digital form – despite APA's explicit instructions not to digitize any APA works –constitutes willful copyright infringement. Even if the copying occurred before Google received notice from APA not to digitize, then Google's actions would still constitute willful infringement due to Google's failure to remove and delete the digital files from its servers after notice from APA. Moreover, were the Court to find that Google's acts were not willful, then Google would still be liable for copyright infringement because its acts have impaired APA's exclusive right to control the use, reproduction and distribution of its works – and, importantly, its acts would not be considered a fair use under the law.

    ii.    Fair Use Does Not Apply to APA's Works That Google Digitized

In its pleadings before this Court, Google asserted a fair use defense to its acts of digitization. However, the particular facts articulated above as applied to the four fair use factors (*See* 17 U.S.C. § 107) demonstrate that Google's fair use defense is unpersuasive.

Under the first factor – the purpose or character of use - Google would argue that its goal

of providing an online searchable database of millions of books is highly transformative, and therefore fair, because such a use promotes research and knowledge. However, in situations like this where the defendant converted the infringed works into a new medium without permission, courts have determined that this creates a presumption that the use is not fair. (See *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001); *UMG Recordings v. MP3.com, Inc.*, 92 F. Supp. 2d 349 (SDNY 2000); and *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104 (2d Cir.1998)). Moreover, despite Google's claimed good intentions, Google stands to generate millions of dollars in advertising revenue through its unauthorized activities. Overall, this factor tilts in favor of APA.

Under the second fair use factor – the nature of the copyrighted work – most, if not all, of the APA books that Google digitized without permission are creative works, which weighs against Google's fair use claim, although the works were all obtained from publicly available libraries rather than private collections. Balancing these factors, this prong favors APA.

Under the third fair use factor – the amount and substantiality of the portion used – Google would likely argue that it was reasonable and necessary to copy entire works and display snippets of text in order to create an accurate and comprehensive online book index. However, the courts have consistently held that wholesale copying is not allowed when the infringed works had been distributed in a new medium without any change in the character of the use. (See *A & M Records, Inc. v. Napster, Inc.*, *UMG Recordings v. MP3.com, Inc.*, and *Infinity Broad. Corp. v. Kirkwood* referenced above.) Whether accessing the hard copy in the library or pulling up reference to it on the Internet, the purpose remains to inform and educate the reader. This factor favors APA.

Finally, when assessing the impact the digitization has on future commercial exploitation

of the work – the fourth fair use factor – Google would argue that the snippets that it displays should not adversely impact the marketability of APA's digitized books, because those snippets are not adequate substitutes for the books as a whole. However, APA already invests substantial resources in its own commercially available electronic databases such as PsycBOOKS, PsycINFO and PsycARTICLES, and opposes any effort by Google to compete with those databases. The sheer magnitude of the Google Library Project and resulting online book database will be so large that it is hard not to imagine an adverse effect upon APA's existing proprietary databases and APA's publishing program as a whole. Accordingly, while arguments are available to both parties with respect to this prong of the test, this factor weighs in APA's favor.

In short, under any scenario, Google violated APA's rights when it digitized its works without consent. Had APA litigated this case rather than choosing to remain in the Proposed Settlement, Google could ultimately be liable for, at a minimum, statutory damages ranging from $750 to $30,000 for each infringing work, and up to as high as $150,000 per infringing work if, as the facts demonstrate, Google were found to have willfully infringed APA's rights. With the number of APA works that were digitized without permission totaling approximately 950, the total amount of statutory damages available to APA – which could exceed *one billion dollars* depending on how many of the works were found to have been willfully infringed – demonstrates the inadequacy of the compensation set forth in the Proposed Settlement.

C. *The Proposed Settlement Is Inadequate Because it Does Not Include Periodicals and Other Highly Proprietary Works that Google Digitized Without Permission*

The Proposed Settlement excludes periodicals, journals and other reference materials that Google has already digitized without APA's permission. These works consist of some of APA's most proprietary publications and, as a result, the Proposed Settlement should contain

compensation provisions for these types of works.

As indicated by the Book Rights Registry, Google digitized approximately 455 APA journals without permission. If hard-bound library volumes of these journals were digitized, then an entire year's worth of journals may actually have been digitized for each of those 455 entries. Assuming that each journal publishes an average of 5 issues and 110 articles/items per year, as many as 2,275 issues and 50,050 articles/items have been digitized without APA's permission—comprising a significant part of APA's historical and valuable journal output. Furthermore, Google digitized approximately 115 items that comprise or describe other important APA products, such as *Psychological Abstracts* and related materials, and approximately 110 commercial publications that have been critical to APA's organizational and financial foundation, such as *The Publication Manual of the American Psychological Association* (which is one of APA's most proprietary, most profitable, and therefore most highly guarded works).

Overall, approximately two thirds of the APA works digitized by Google without consent are not covered by the Proposed Settlement. Accordingly, APA respectfully asks that the Court expand the scope of the Proposed Settlement and establish adequate compensation to address these proprietary works.

## II. CONCLUSION

As it currently stands, the Proposed Settlement does not provide adequate compensation to APA because the $60 per book is substantially less than what APA would otherwise receive through traditional licensing; the compensation does not account for Google's willful acts; and the Proposed Settlement avoids compensation for the numerous periodicals and other non-book publications that Google digitized without authorization. Accordingly, APA respectfully

requests that the Court impose a substantial increase in compensation to class members and an expansion of the settlement to include periodicals and other publications.

Date: September 3, 2009

Respectfully Submitted,

Jesse Raben
Associate General Counsel
**American Psychological Association**
750 First Street NE
Washington, D.C. 20002-4242



AMERICAN
PSYCHOLOGICAL
ASSOCIATION

October 12, 2005

Susan Wojcicki
Director of Product Management
Google
1600 Amphitheatre Parkway
Mountain View, CA 94043

Dear Ms. Wojcicki:

The purpose of this letter is to inform you that the American Psychological Association does not wish any APA-copyrighted material from any year to be digitized by Google for inclusion in any Google or Google-related product. This includes books under the following APA imprints: APA Books, Magination Press, and APA LifeTools.

APA's copyright clearly states:
"...no part of this publication may be reproduced or distributed in any form or by any means, or stored in a database or retrieval system, without the prior written permission of the publisher."

I enclose a complete list of all APA-copyrighted titles to be excluded from any and all Google products, including, but not limited to, Google Print.

Sincerely,

Gary R. VandenBos, PhD
Publisher
American Psychological Association


Please Recycle

750 First Street, NE
Washington, DC 20002-4242
(202) 336-5500
(202) 336-6123 TDD

Web: www.apa.org