Lynne D. Finney, J.D., M.S.W.
PO Box 681539
Park City, UT 84068-1539
PHONE: 435-649-2378

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-11-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------

| | |
|---|---|
| The Authors Guild, Inc., Association of American Publishers, et. al. ) | Case No. 05 CV 8136 JES (DC) |
| ) | |
| Plaintiffs, ) | **DECLARATION OF LYNNE D. FINNEY,** |
| ) | **AUTHOR, COPYRIGHT OWNER, AND** |
| v. ) | **PUBLISHER, IN OPPOSITION TO** |
| ) | **SETTLEMENT AGREEMENT** |
| Google Inc., . ) | |
| ) | |
| Defendant ) | Case No. _____ |
| ) | |

---------------------------------------------------------------

STATE OF UTAH          )
                       :          ss.
SUMMIT COUNTY          )

I, Lynne D. Finney declare as follows:

I am the author of four published books, two with editions in one or more of Spain, India, China, and Russia; the copyright owner of all four books, the publisher of two books under the dba "Changes Publishing", and a retired attorney and law professor.

One of my books, Reach for the Rainbow, was published by a large publisher, the Putnam Publishing Group, now Penguin Putnam in New York; and others by smaller publishers in California, New Harbinger and Crossing Press, which have since been merged into other companies.

The website indicates that Reach for Joy published by Crossing Press has already been scanned.

I have not yet opted out of the lawsuit because I was told my a representative of the Settlement Administrator that I had to be part of the lawsuit in order to protest the settlement.

I have taught courses for writers at the University of Utah, Writers at Work, the League of Utah Writers, libraries and other organizations. Courses included self-publishing and how to get

1

books published by large and small publishing companies.  Until I received that notice of this lawsuit, I had never heard of "The Authors Guild."

I received a form notice about the above-captioned case addressed to my publishing company, Changes Publishing.

I received no other notice of this lawsuit or settlement even though the copyrights on my books are registered in my name at the same address as Changes Publishing, the same address I've had for more than twenty years.

THE SETTLEMENT ADMINISTRATOR PROVIDED UNFAIR,  MISLEADING, AND BIASED  INFORMATION ON THE RECORDED 888 PHONE NUMBER LISTED ON THE NOTICE TO AUTHORS.

Notices sent to author class members state "If you have questions about the settlement...call the Settlement Administrator at 1.888.356.0248."

Although the court settlement administrator is supposed provide impartial information to class members, only the benefits of the settlement are covered in this recording.  The many detriments are not.

The Settlement Administrator is an agent of a United States Federal Court and is acting in the name of the Court.

Authors have the right to assume that are receiving fair, impartial, truthful, unbiased information on this recorded message about the settlement so they can make an informed decision on a case that affects their existing copyrights and other legal rights.  This is definitely *not* the case with the Settlement Administrator's recording.

Option 4 on the recording is "to hear the benefits of the settlement."  There is no option for authors to hear the detriments.

The recording deceives authors into believe that there are no arguments against the settlement, although in truth there are many.

Authors are being defrauded. Any consents to the settlement by authors who listened to this recording are irreparably tainted and are invalid.

THE REQUIREMENT THAT AUTHORS TAKE ACTION TO "OPT OUT" OF THE SETTLEMENT IS UNFAIR AND DEPRIVES AUTHORS OF THEIR COPYRIGHTS.

AUTHORS FOLLOWED THE LAW AND PROTECTED THEIR WORKS AS PROVIDED BY FEDERAL LAW WHEN WHEN THEY REGISTERED THEIR WORKS WITH THE UNITED STATES COPYRIGHT OFFICE AS REQUIRED BY LAW.

IT IS UNLAWFUL AND UNFAIR FOR THIS COURT TO PLACE THE BURDEN ON COPYRIGHT OWNERS TO OPT OUT OF THIS LAWSUIT

In a normal class action, class members are given the option of agreeing to be parties to the lawsuit by opting in. As a lawyer and law professor, I am familiar with class actions and was involved as an attorney in one of the largest at the time. I have never heard of case where class members who do not opt in are bound by it.

The burden should not be on the authors who own their copyrights to have to opt out of this settlement that allows Google to violate their rights without their permission.

THE AUTHORS GUILD IS NOT A LEGITIMATE REPRESENTATIVE OF THE AUTHORS CLASS

The number of authors whose rights will be destroyed in the lawsuit number in the hundreds of thousands, possibly over a million.

3

The Authors Guild admits it represents only eight thousand (8,000) authors. And since authors are independent and have a variety of opinions, it is difficult to believe that even the 8,000 agreed to this lawsuit and understood the implications.

The name "Authors Guild" is misleading. The Authors Guild is not a corporation or legal entity. It can only act through its members. When I asked the Settlement Administrator if the Court had investigated the Authors Guild to verify if its 8,000 members understood the lawsuit and had voted for it and the settlement, I was stonewalled. First they said they didn't know. Then they said I would have to talk to the attorneys, but would not provide any phone numbers.

The Authors Guild is not a union like the well-known Writers Guild of America that represents screenwriters. The Writers Guild actually represents a majority of screenwriters and has a huge staff to protects their rights.

Authors do not have such a guild because most cannot afford the dues. There is a reason for the common term "starving writer."

Many people think of John Grisham, J.K. Rowling, Danielle Steele, and other well-known authors on the New York Times Bestseller List. These authors are a miniscule percent of the total number of published authors.

The same is true of publishers. There are many more small publishers, and authors who self-publish their own books, than the small number of large publishers who can afford to pay to be members of the Plaintiff Publishers Association.

Court approval of this settlement will deprive hundreds of thousands of authors of their copyrights. The majority of authors are a vulnerable unprotected group who do not have the financial means to protect themselves. They cannot sue a corporate predator like Google. If authors opt out of the settlement, they lose because Google can continue to violate their copyrights with impunity. These authors cannot afford to sue Google.

4

If authors opt in, they will only be paid what the Google monopoly decides to pay them, if Google pays them at all. If Google does not, it is not financially feasible for these authors for sue for the small amounts owed.

How can I assume Google will not pay? Because it has already done it.

The truth is that only the large publishers will benefit financially from the settlement and most do not even own the copyrights. In the vast majority of publishing contracts, publishers do not own the copyrights. Authors own the copyrights and license them to publishers. The standard contracts of large New York publishers are licensing agreements. Some specialized publishers, such as law book publishers, buy and register the copyright, but this is the exception, not the rule.

I ask that the court take judicial notice of this generally recognized fact and practice in the publishing industry - or look at fiction books in your own library.

I do not believe authors are being adequately represented in this lawsuit. At the very least, this Court should have appointed a public interest law organization or law school clinic to adequately represent the enormous author class.

THE NOTIFICATION TO AUTHORS IS NOT ONLY MISLEADING BUT ALSO INADEQUATE.

The settlement in this case affects a million authors and copyright owners, their heirs and assigns. Not all of them could possibly have been notified. If even one was missed, this settlement is unfair.

Even those authors who actually received a notice, most would be hard pressed to understand it. Even as an attorney who taught a law school course that included copyright law and practiced in that area, I had difficulty understanding it.

Authors who received the notice had a right to assume that their rights were protected by their copyright registration and that they could throw the notice in the trash.

Court approval of this settlement will result in one of the greatest miscarriages of justice in American history.

If the settlement is approved, authors will be deprived of their rights.  There is no appeal from a settlement.

Would this Court seriously entertain this settlement if it involved the infringement of registered patents?

THE COURT IS EXCEEDING ITS JURISDICTION BY REWRITING UNITED STATES COPYRIGHT STATUTES.  THE EFFECT OF THE SETTLEMENT AMOUNTS TO VIRTUAL REPEAL OF THE COPYRIGHT ACT.

The fact that this Court is even considering approval of the settlement is hard to believe.

The policy implications of this lawsuit are far-reaching: Google's monopoly, the impact on free speech and access to information, the demise of public libraries.  I join with those whose protests cover those issues.

Changes in United States Copyright statutes should be make by Congress not this Court.

THE ANTITRUST DIVISION OF THE DEPARTMENT OF JUSTICE IS INVESTIGATING THE ANTITRUST ASPECTS OF THE LAWSUIT.  THIS COURT SHOULD NOT ACT ON ANY SETTLEMENT WHILE THAT INVESTIGATION IS PENDING.

There appears to be little dispute over the fact that Google violated copyright laws and the rights of both the author and publisher classes.

The Plaintiffs sought an injunction against Google and the Court should grant that injunction as requested.

I declare that the above is true and correct based on knowledge and belief.

_Lynne D. Finney_

Lynne D. Finney, J.D., M.S.W.