**Holly K. Towle**
1661 Harbor Ave. SW #400  Seattle, Washington  98126

August 31, 2009

Office of the Clerk
J. Michael McMahon
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-11-09
```

Attn:  The Honorable Judge Denny Chin

Re:     Google Book Settlement

Dear Judge Chin:

I write to object to the Google Book Settlement ("GBS").  I write on my own behalf as a class member and not on behalf of my law firm or any client.  I believe the GBS will perpetrate immense unfairness to me and others in the class who have not cut special deals.[1]

I am a lawyer and co-author of *The Law of Electronic Commercial Transactions* (A.S. Pratt & Sons, 2003-2009) (http://www.sheshunoff.com/store/F53.html).  It is an excellent book but most importantly, it used to be mine.  Google now effectively owns and controls it and several libraries helped Google to do that.  They all violated existing law and should not be allowed to do so or be rewarded.

Thank you for seeking comment from authors.  But for your action, few seem to have noticed that the Google emperor has no clothes.  Accordingly, I hope you will consider my views below.

**1.     Class Action Contortion**.  The GBS litigation is a misuse of the class action structure.  Class actions can right *wrongs* such as correcting deceptive disclosures about goods sold to consumers.  But copyright law tracing back to the U.S. Constitution makes my book my asset.  If I had a patent, trademark or publicity rights, they too would be my assets.  I should be able to do *nothing* and still control my assets.  The GBS is being used to steal assets rather than to remedy wrongs.

Under the GBS, my asset is now effectively subject to Google's private compulsory license and may be used by Google to make its own private profits.  This license is imposed not by legislatively created statute, nor by a government, nor after a condemnation conducted under severe restrictions and ample due process.  It was effected by a private corporation with so much money that no one can sustain litigation against it.  Even the book publishers could not sustain their litigation – the publishers agreed to a defeat that parades as a settlement.

I can opt out of the class but so what?  My book remains stolen by Google and subject to its private, compulsory license.  **The critical point, however, is that even if I had the resources to sue, I should not have sue to control my asset**. Copyright law made it my book: it should have remained untouchable by Google.  Google did not engage in lawful fair use: it copied (or plans to copy) the entire, 2 volume treatise.

This sleight of hand was accomplished a use of the class action structure which turns copyright law on its head.  It puts me in a hole out of which I must now attempt to crawl.  Google should be in that hole, not me. Google should have contacted and obtained permission from each and every author (or their publishers) in the world of each book it includes in its database.  A daunting task? Of course.  But the fact that it would be daunting to get permission from millions of consumers to obtain a consumer report on each for some "good" program perceived by an actor, does not mean the actor can skip that legal step and unlawfully obtain copies from a willing accomplice.  I was entitled by law to say yes or no to Google's copying of my entire book. Google didn't bother to ask and now all authors are in my hole.

Orphan works? If no one was around to ask, Google could have limited its class action to that narrow group and focused debate on policy issues exclusive to orphan works. Instead, orphan works are covering for Google's asset grab.

**2.     Public Benefit – Irrelevant and Essentially Non-Existent.** The press and Google are full of the public benefits flowing from Google's supposed largess in saving us all from our own ignorance about what law should allow and how great the world envisioned by Google is.  The reality is more Orwellian, as one pictures Google deciding who will not be allowed to conduct research in Google's database. Theoretically I could go to one of the mere two other complete databases that Google will provide to its library partners in crime.  But they are universities with insufficient funding and their copies will quickly fall behind, leaving Google with the last robust database. George Orwell would get the irony.

And in reality, public benefit is beside the point.  The public does not own the world's books – their authors own them.   The public doesn't complain when governments downzone private land in violation of applicable zoning laws because the public gets open space and is thrilled not to have to pay for it.  That doesn't make an unauthorized downzone lawful, however, and it is the private land owner whose cry in the wilderness is not heard as the public and press applaud the new open space.  Google didn't even have to comply with condemnation restrictions (such as by being a government and proving public necessity and no private gain).  Google simply broke the law and stole the books – why worry about a little thing like law when Google believes that it can "do no harm" and knows what's best for the world.

If public good were relevant here, which it is not, there is too little of it.  Google appears to take 37% free and clear – Wow.  Honest labor by those complying with law doesn't pay that well.

Google touts its largess of providing *one* terminal per library[2] (if it deigns to provide even one).   Again, Wow – how can anyone give that credence?  Below is a picture of one of several public computer terminals in the downtown branch of the Seattle public library taken on a business morning, i.e., this high public usage was not over a weekend or lunch break:



One terminal is laughable, even if public good were relevant.

3. **Public Wrong.** The settlement should be rejected. Google and the libraries should be told to obey the law. If Google is actually convinced that fair use allows what it is doing, then it should seek a judgment on the legal question and let the question work its way up to the U.S. Supreme Court. I certainly hope Google is not correct, but if it is, the U.S. Supreme Court should be the one to throw away copyright law, not the libraries, not Google and not Google's foreign or other successor, whoever that might be someday.[3]

If the settlement is not rejected, I would appreciate very much anything you can do to rebalance it. Google should not profit from its wrongdoing and should not become the effective ruler of the book world and future research. I suspect that one reason more voices are not speaking out against the settlement is fear (rightly or wrongly) of landing on Google's blacklist. What researcher can afford that?

Neutral parties should also be substituted for current players for the ongoing roles such as the Board of the Book Rights Registry. For example, the libraries most likely to become the keepers of the non-Google located Research Corpus are the very universities who assisted Google in its book grab, the University of Michigan and the University of California at Berkeley. I suspect, but do not know, that these universities have also received material monetary donations from Google. This is a bit like putting the fox in the henhouse. If the theft of books by those libraries and Google is going to be enshrined, persons in charge of maintaining the shrine should be persons who have more respect for the law.

There are plenty of universities that can do this job, especially if Google is required to remediate some of the harms it has caused, such as by adequately funding the caretaking by non-accomplice universities. For example, the co-author of my book is a copyright law scholar and Dean of the University of Houston Law Center. I would trust that institution to uphold the law and properly secure the future, and that law school did not collude with Google. Have that or others that honor copyright law be the keepers of the Research Corpus databases if the settlement must be approved. However, the settlement should not be approved.

You, Judge Chin, seem to be the only roadblock to the elimination of copyright law. Thank you for your willingness to consider class member comments regarding the unfairness of this important matter.

Sincerely,

Holly K. Towle

cc: Joanne Zack, Esq., Counsel for the Author Sub-Class; Joshua Snyder, Esq., Counsel for the Author Sub-Class; Jeffrey P. Cunard, Esq., Counsel for the Publisher Sub-Class; Bruce P. Keller, Esq., Counsel for the Publisher Sub-Class; Daralyn J. Durie, Esq., Counsel for Google; Joseph C. Gratz, Esq., Counsel for Google

---

[1] See e.g., GBS at §17.9(Google has already made and may continue to make separate deals with class members).

[2] See GBS § 4.8(a)(i)(3) Google **may** provide the Public Access Service to each not-for-profit Higher Education Institution and Public Library that so requests at no charge (and without any payment to the Rightsholders, through the Registry or otherwise (other than as set forth in Section 4.8(a)(ii) (Printing)) as follows:. . . **in the case of each Public Library, no more than one terminal per Library Building.**

[3] See GBS at §17.30 (Google may freely assign all obligations in a merger etc. – although the GBS is binding upon the successor, it may have even less regard for U.S. law than Google.