UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



The Authors Guild, Inc., *et al.*,  )
　　　　　　　　　　　　　　　　　)
　　Plaintiffs,　　　　　　　　　　)　Case No. 05 CV 8136 (DC)
　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
Google Inc.,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　Defendant.　　　　　　　　　　)

**OBJECTIONS OF WASHINGTON LEGAL FOUNDATION
TO PROPOSED SETTLEMENT AND TO CERTIFICATION OF
THE PROPOSED SETTLEMENT CLASS AND SUBCLASSES**

The Washington Legal Foundation (WLF) hereby files its objections to the proposed settlement and the proposed certification of the case as a class action. WLF is filing these objections as a member of the Publisher Sub-Class as well on behalf of a number of its members who are members of the Author Sub-Class. WLF does not believe that the proposed settlement is fair, reasonable, and adequate with respect to absent class members. WLF agrees with many of the comments of others who have objected to the fairness of the settlement to absent class members; rather than repeat all those arguments here, WLF instead focuses on due process issues raised by the proposed class certification. WLF does not believe that notification of absent class members was sufficient to meet due process requirements. Moreover, given inherent conflicting interests among members of the Author Sub-Class, WLF is concerned about the ability of class representatives to adequately represent the interests of all class members.

**I.　Interests of WLF**

The Washington Legal Foundation is a nonprofit public-interest law and policy center

located in Washington, D.C., with members in all 50 States. WLF devotes a significant portion of its resources to protecting the rights of property owners, including owners of intellectual property. WLF is the owner of the copyright on hundreds of publications published by its Legal Studies Division on a wide variety of legal issues. Among those publications are several books that were published before January 5, 2009 and that are registered with the U.S. Copyright Office. Accordingly, WLF is a member of the Publisher Sub-Class as defined by the proposed class settlement. WLF has published several articles directly related to issues raised in this lawsuit, including Glenn G. Lammi, COUNSEL'S ADVISORY: *Book Search Suit Settlement Merits Broader Public Attention* (Washington Legal Found. April 10, 2009).

WLF members include authors of copyrighted works who are members of the Author Sub-Class. WLF is filing these comments on its own behalf as a member of the Publisher Sub-Class and on behalf of its members who are members of the Author Sub-Class.

## II.    Due Process Considerations

As the U.S. Supreme Court recognized in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999), this nation has a "deep-rooted historic tradition" of granting everyone his day in court and of refusing to bind him to any court judgment unless he either voluntarily appeared as a party in that court or has been made a party by service of process. While the Court has created limited exceptions to that general rule in connection with class actions, it has made clear that due process imposes strict limits on the power of state and federal courts to bind nonparties to a class action judgment. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

*Shutts* held that "[i]f the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal due process protection." *Id.*

That protection includes: (1) "notice plus an opportunity to be heard and participate in the litigation"; (2) "an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court"; and (3) "that the named plaintiff at all times adequately represent the interests of the absent class members." *Id.* at 812.[1]

*Shutts* stated that its due process holding was applicable to class actions "wholly or predominately involving claims for money judgments," *id.* at 811 n.3, and was not necessarily applicable to other types of class actions. While some aspects of this case can fairly be characterized as non-monetary claims, WLF nonetheless submits that *Shutts*'s due process directives are fully applicable to this case, given that: (1) the primary focus of the case is the payment of money for the use of copyrighted works; (2) the decision of the parties to seek certification under Fed.R.Civ.P. 23(b)(3) indicates a recognition of the need to abide by the due process strictures imposed by *Shutts*.[2] Moreover, the parties have submitted nothing to the Court suggesting that the *Shutts* due process directives should not be made applicable to this case.

---

[1] While *Shutts* involved a Fourteenth Amendment due process challenge to class action procedures in a state court, the Supreme Court's discussion of *Shutts* in *Ortiz* makes clear that *Shutts* applies to the Fifth Amendment's Due Process Clause as well. *Ortiz*, 527 U.S. at 848 & n.24.

[2] WLF does not understand the parties to be seeking certification under Rule 23(b)(2), nor would any such certification be appropriate. That rule is limited to cases in which "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." As we read the proposed settlement, it grants no injunctive or declaratory relief to the parties. Even if the relief outlined in the settlement did include aspects that might be deemed injunctive or declaratory in nature, that would not exempt the parties from the need to comply with the *Shutts* due process directives with respect to those portions of the settlement involving award of money damages. *See, e.g., Brown v. Ticor Title Co.*, 982 F.2d 386, 392 (9th Cir. 1992) (citing *Shutts* for the proposition that an absent class plaintiff in a Rule 23(b)(2) class action may not be bound by any portion of a judgment that affects his/her claim for money damages), *writ dism'd*, 511 U.S. 117 (1994).

### A. Notice

A long line of U.S. Supreme Court decisions has held that the Due Process Clause requires *at a minimum* that notice be mailed to each affected party for which an address is available. The Court squarely addressed notice requirements in the class action context in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974). The Court held that under Fed.R.Civ.P. 23(c)(2), "[i]ndividual notice [of a pending Rule 23(b)(3) class action] must be sent to all class members whose names and addresses may be ascertained through a reasonable effort." *Eisen,* 417 U.S. at 173. Although it cited Rule 23, *Eisen* was without doubt grounded on due process principles. It explained that "'the 'mandatory notice pursuant to subdivision (c)(2) . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject.'" *Eisen,* 417 U.S. at 173 (quoting Advisory Committee Note). The Court cited *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950), and *Schroeder v. City of New York,* 371 U.S. 208 (1962), as providing the constitutional underpinnings of notice requirements and made clear that those two cases are fully applicable in the class action context. *Id.* at 174-75.

In *Mullane,* the Court held that notice and an opportunity to be heard in pending proceedings were fundamental requisites of the right of procedural due process and that notice is not constitutionally sufficient unless it is "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314. *Mullane* did not authorize courts to engage in a cost-benefit analysis and to reject notice by mail where its high costs outweigh the likelihood that class members will receive notice. Rather, it required that notice be provided in a manner "reasonably certain to inform those affected." *Mullane,* 339 U.S. at 315. As the Court explained

in *Eisen, Mullane* "held that publication notice could not satisfy due process where the names and addresses of the beneficiaries were known." *Eisen,* 417 U.S. at 174.

The Court reiterated its absolute preference, as a matter of federal constitutional law, for mailed notice over notice by publication in *Schroeder.* 371 U.S. at 212-13. The Court termed notice by publication "a poor and sometimes a hopeless substitute" for more direct forms of notice, and said that its "justification is difficult at best." *Id.* at 213. *Eisen*'s citation to *Schroeder* strongly supports a conclusion that the Court viewed Rule 23(c)(2)'s individual notice requirement as mandated by the Due Process Clause.

Any doubts on that score were laid to rest by *Shutts,* a case that directly addressed the due process requirements that must be met before an absent class member can be bound by a court judgment. The Court relied explicitly on both *Mullane* and *Eisen* in holding that in such circumstances, the Due Process Clause prohibits a court from binding an absent class member to a court judgment unless he has received at least the level of notice required by *Mullane,* that is, the "best practicable" notice that is "'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Shutts,* 472 U.S. at 812 (quoting *Mullane,* 339 U.S. at 314). Because *Mullane* and *Eisen* had made clear that notice as so defined meant, at a minimum, sending notice to all interested parties whose names and addresses could reasonably be ascertained, *Shutts*'s citation to *Mullane* and *Eisen* can only mean that the notice-by-mail requirement is constitutionally mandated.

Nor can mailed notice be excused on the ground that it is not practicable – *e.g.,* the costs of mailed notice would make the costs of maintaining the class action prohibitively expensive.

5

As the Court noted in *Eisen* and again in *Amchem Products*, notice requirements "may not be relaxed based on high cost." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617 (1997) (citing *Eisen,* 417 U.S. at 173-77). Indeed, the Court suggested in *Amchem* the possibility that huge plaintiff classes may *never* be permissible because of the difficulty in providing class members with the notice mandated by the Due Process Clause. *Id.* at 628.

If notice is constitutionally inadequate, a class action should not be certified because it could not withstand a later challenge by absent class members. An absent class member who fails to opt out of a settlement does not thereby forfeit his right to contest the adequacy of notice. Due process requires that absent class members be given the opportunity to challenge a judgment – based either on inadequacy of notice or inadequacy of representation – in subsequent proceedings. *Hansberry v. Lee,* 311 U.S. 32 (1940); *Richards v. Jefferson County,* 517 U.S. 793 (1996). *See,* Henry Monaghan, "Antisuit Injunctions and Preclusion Against Absent Nonresident Classmembers," 98 COLUM. L.REV. 1148 (1998).

B.      Adequacy of Representation

As noted above, *Shutts* also held that due process requires that "the named plaintiff at all times adequately represent the interests of the absent class members." *Shutts,* 472 U.S. at 812. Of course, a named plaintiff cannot adequately represent the interests of one whose interests are not fully aligned with the named plaintiff. "[C]lass settlements must provide 'structural assurance of fair and adequate representation for the diverse groups and individual affected.'" *Ortiz,* 527 U.S. at 854 (quoting *Amchem,* 521 U.S. at 627). Such structural assurances include dividing the class into "homogeneous subclasses" with separate representation to eliminate conflicting interests. *Id.*

The importance of examining adequacy of representation is heightened when, as here, class certification is being sought in connection with a settlement. *Ortiz*, 527 U.S. at 849. A defendant is likely to challenge certification up until the moment of settlement and thus is likely – when certification is sought in advance of settlement – to bring to the attention of the court all the reasons why the named plaintiffs may not adequately represent absent class members. But when the defendant agrees to a settlement and has a vested interest in seeing the class certified, it falls largely to the court to explore reasons why the named plaintiffs may not be adequate class representatives.

### III. THE NOTICE PROVIDED TO CLASS MEMBERS REGARDING CLASS SETTLEMENT WAS CONSTITUTIONALLY DEFICIENT

In its order granting preliminary approval of settlement, the Court directed counsel to class members "by email, postal mail, postage prepaid, at the last known mailing address, or other means of dissemination." In advance of the Fairness Hearing, Plaintiffs' counsel are required to file information indicating how it complied with that notice requirement. WLF has seen a listing of the publications in which the parties agreed to place advertisements regarding the proposed settlement (Attachment K to the Settlement Agreement), but it has not seen a document describing how the parties intended to comply with the mailing portion of the notification requirement. WLF eagerly awaits receipt of such a document in advance of the Fairness Hearing.

The evidence available to WLF to date, however, indicates that the mailing of notice was woefully deficient. WLF is a member of the Publisher Sub-Class, but it did not receive notice of the proposed settlement by mail. Indeed, no one affiliated with WLF has seen any advertisement

regarding the settlement; WLF learned of the proposed settlement only because it was contacted by others who objected to its terms. WLF has also heard from quite a few members of the Author Sub-Class who did not receive mailed notice, including Authors whose names and addresses were readily ascertainable by Plaintiffs' counsel.

Article XII of the Settlement Agreement provides as follows:

> Direct Notice – sending the Notice (translated from English whenever appropriate) by email or first class mail, postage prepaid, to those Settlement Class members that can be identified by any reasonable means, with notice by email used whenever possible, and postal notice limited to those Settlement Class members whose email addresses are unavailable.

WLF notes that the Settlement Agreement's preference for email over postal mail is directly contrary to the due process requirements set forth *Eisen* and other cases cited above. 417 U.S. at 173-74. Email may be less expensive than postal mail, but it is far less likely to be read by recipients, and the notice requirements "may not be relaxed based on high cost." *Amchem*, 521 U.S. at 617. Moreover, spam filters in place on many computers will block access to the mass emails apparently contemplated by the parties.

The Plaintiffs admit that membership in the Author Sub-Class numbers in the millions. WLF recognizes that a valid mailing address cannot be found for every class member, but all evidence suggests that an address can be located for a substantial portion of them. The United States Copyright Office maintains massive, publicly available records regarding copyright holders. While it may not always be possible, based on those records, whether there is a valid copyright holder for a given work (and if so, who), that difficulty is not the issue here. Sending a letter to *every* person listed with the United States Copyright Office, at the listed address, is the most reasonable (and only constitutionally acceptable) method of notifying class members

regarding the proposed settlement.

Based on the anecdotal evidence we have seen to date, Plaintiffs' counsel failed to conduct such a mailing. If the evidence at the Fairness Hearing demonstrates that counsel did not undertake such a mailing, the notice to absent class members was constitutionally deficient – and thus the class should not be certified.

The evidence available to WLF suggests that the parties are attempting to rely primarily on notice by publication to spread the word regarding the proposed settlement. But as noted above, the Supreme Court has repeated determined that notice by publication is constitutionally deficient when it is reasonably possible to send notice to absent class members by U.S. Mail. *Eisen*, 417 U.S. at 175. If magazine and newspaper advertisements really were superior to direct mail in terms of drawing the attention of targeted segments of the public, then marketers who rely heavily on direct mail have been acting in a highly irrational manner.[3]

Of course, WLF cannot contend that it did not eventually receive notice of the proposed settlement; we would not be in a position to file these comments without such notice. But the fact that WLF received notice does not eliminate our right to object to the settlement on behalf of those who did not. For example, *Shutts* made clear that defendants are entitled to oppose class certification by invoking the due process rights of others – the absent class members who were to be bound by the judgment in violation of their right:

---

[3] One could reasonably assume that magazine publishers are among the most knowledgeable regarding the effectiveness of print marketing in reaching highly specific markets. If so, then there is a lesson to be learned from the manner in which magazine publishers promote themselves to the targeted audiences likely to purchase their magazines: virtually all of their promotional dollars go into direct mail, while virtually none goes into print advertising. *See, e.g.,* J. Edmonson, "Publishers' Anti-Ad Attitude Worsening," Business Marketing (Oct. 1, 1995).

> Whether it wins or loses on the merits, [the defendant] has a distinct and personal interest in seeing the entire plaintiff class bound by res judicata just as [the defendant] is bound. The only way a class action defendant like [the defendant] can assure itself of this binding effect of the judgment is to ascertain that the forum court has jurisdiction over every plaintiff whose claim it seeks to adjudicate, sufficient to support a defense of res judicata in a later suit for damages by class members.

*Shutts,* 472 U.S. at 805. WLF has a similar interest in ensuring that any class action judgment to which it is bound will also be binding on all other absent class members. Because the notice provided by Plaintiffs' counsel was constitutionally deficient, the Court should reject the proposed settlement.

## IV. DUE TO INHERENT CONFLICTS, THE NAMED PLAINTIFFS CANNOT ADEQUATELY REPRESENT THE INTERESTS OF ALL ABSENT CLASS MEMBERS

All of the millions of authors included within the plaintiff class are lumped into a single Author Sub-Class. The interests of those authors with respect to this settlement differ dramatically from one another. Thus, their interests cannot all be adequately represented within a single sub-class, and due process prohibits approval of a settlement based on such an alignment because the named plaintiffs cannot possibly adequately represent the interests of all authors within this large group with divergent interests.

WLF expects that these divergent interests will be discussed at length at the Fairness Hearing and thus will only briefly discuss the issue here. For example, only those class members whose works have already been copied by Google are entitled to cash payments under the Settlement Agreement. Thus, the financial interests of those whose works have been copied diverge from the interests of class members whose works have not been copied. The former have an interest in maximizing cash payments, while the latter would prefer to see a smaller portion of

the settlement pot allocated to those cash payments and a larger portion allocated to compensation for copying to be performed by Google in the future.

Another distinction among class members involves orphan works – that is, works whose owners are difficult (if not impossible) to ascertain. The owners of orphan works (who may not even know that the hold any ownership interests) have an obvious interest in ensuring that a large portion of settlement funds is dedicated to identifying the ownership of orphan works. On the other hand, the owners of works whose ownership is readily identifiable have an interest in holding down such search costs. If less money is devoted to such search efforts, a correspondingly greater percentage of settlement funds will be available to provide compensation to them.

The named plaintiffs cannot possibly represent the divergent interests of all these absent class members at the same time. In the absence of a further differentiation of plaintiffs into homogeneous sub-classes, the proposed settlement violates the due process rights of the absent class members.

## CONCLUSION

The Washington Legal Foundation objects to the proposed settlement agreement for the reasons stated and requests that the Court deny certification of the proposed settlement class and sub-classes.

                                                 Respectfully submitted,

*/s/ Daniel J. Popeo*

Daniel J. Popeo
  Chairman and General Counsel
Richard A. Samp
  Chief Counsel
Washington Legal Foundation
2009 Massachusetts Avenue, NW
Washington, DC 20036
202-588-0302

September 4, 2009

Copies of the foregoing comments have been sent by email to the following:

| | | |
|---|---|---|
| Michael J. Boni | Jeffrey P. Cunard | Daralyn J. Durie |
| Joanne Zack | Bruce P. Keller | Joseph C. Gratz |
| Boni & Zack LLC | Debevoise & Plimpton LLP | Durie Tangri Lemley Roberts |
| 15 St. Asaphs Road | 919 Third Avenue | & Kent LLP |
| Bala Cynwyd, PA 19004 | New York, NY 10022 | 332 Pine St., Suite 200 |
| bookclaims@bonizack.com | bookclaims@debevoise.com | San Francisco, CA 94104 |
| | | bookclaims@durietangri.com |