**DICKSTEIN**SHAPIRO LLP

1825 Eye Street NW | Washington, DC 20006-5403
TEL (202) 420-2200 | FAX (202) 420-2201 | dicksteinshapiro.com

September 1, 2009

The Honorable Denny Chin
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *The Author's Guild Inc. et al. v. Google Inc., No. 05 Civ. 8136 (DC)*

Dear Judge Chin:

Pursuant to 2(A) of Your Honor's Individual Practices, we write on behalf of The American Society of Media Photographers, Inc. ("ASMP"), the Graphic Artists Guild ("GAG"), the Picture Archive Council of America ("PACA"), and the North American Nature Photographers Association ("NANPA")[1], as well as photographers Joel Meyerowitz, Dan Budnik, Peter Turner and Lou Jacobs Jr. (collectively, the "Photographers and Graphic Artists"), to request a pre-motion conference in the above-referenced case.

As discussed below, out of an abundance of caution, Photographers and Graphic Artists seek the Court's leave to file a motion to intervene as of right under Fed. R. Civ. P. 24(a)(2), or with the Court's permission under Rule 24(b)(2), for the limited purposes of filing their objections to the Proposed Settlement and preserving their right to appeal. We submit that the Photographers and Graphic Artists on whose behalf we file are, and continue to be, class members who do not need leave to file objections. Nonetheless, in the event that anyone challenges our clients' standing to be heard as of right regarding their objections to the settlement, we seek leave on their behalf to move to intervene. We also seek leave to be heard at the Fairness Hearing on October 7, 2009, and to move for the admission of undersigned counsel Charles D. Ossola and Elaine Metlin of the law firm Dickstein Shapiro LLP, and of Victor S. Perlman, Managing Director and General Counsel of ASMP, to appear on behalf of the Photographers and Graphic Artists *pro hac vice*.

The reasons for seeking leave to intervene arise out of the complex and arbitrary nature of the settlement agreement, and the evolving definition of the class composition during the course of this lawsuit. When this action first commenced in September 2005, the class definition encompassed only literary works. When the First Amended Complaint was filed in June 2006, unbeknownst to Photographers and Graphic Artists, the class definition was greatly expanded to include *all* copyright owners owning the copyrights to works in the University of Michigan Library. Unsurprisingly, the vast expansion of Google's potential liability coincided with the commencement of settlement negotiations. For more than two years, throughout the settlement negotiations, the class definition remained the same, and yet the interests of Photographers and

---

[1] ASMP, founded in 1944, has 39 chapters nationwide and 7000 members, including many of the world's foremost photographers. ASMP's mission is to promote and protect photographers' rights, including their intellectual property. GAG is committed to improving conditions for all graphic artists and raising standards for the entire industry by promoting and protecting the social, economic and professional interests of its members. PACA represents the vital interests of image archives of every size, from individual photographers to large corporations, who license images for commercial reproduction. PACA leads advocacy, education, and communication efforts on copyright and standard business practices that affect the image licensing industry. NANPA is the first and premiere association in North America committed solely to serving the field of nature photography.

Washington, DC | New York, NY | Los Angeles, CA

Graphic Artists were not represented (as confirmed by their exclusion from the proposed Settlement Class). Then abruptly, having obtained the leverage that the expanded class afforded, class counsel and the class representatives limited the settlement to authors and publishers, abandoning the interests of photographers, graphic artists and many others. Throughout that more than two-year period, class counsel and the class representatives owed a duty to the entire class to protect their interests. Their utter failure to fulfill their fiduciary obligations was made clear when the settlement agreement excluded the vast majority of photographers and graphic artists from the settlement.

The inherent unfairness of this disparate impact of the Proposed Settlement on Photographers and Graphic Artists is readily apparent from these facts. Many of our clients' respective members fall within the current class definition but some no longer do. Many own the copyrights in works (*i.e.*, "books" of photographs or graphic arts) covered by the Proposed Settlement, but due to the arbitrary exclusion of photographs and graphic arts from the definition of "inserts" in the Proposed Settlement, most (and in many cases, the same individuals) also have a very substantial body of work that is not covered by the settlement.

The Proposed Settlement purports to serve the interests of the class members, Google, and the larger public interest; instead, it serves the financial interests of only a select few while irrevocably damaging the interests of others. The visual arts community has copyright interests at stake heretofore *identical* to, and just as important as, the copyright interests of authors and publishers that this Proposed Settlement is designed to protect. Historically among the most vulnerable of copyright owners with respect to their ability to retain and profit from their copyrights, Photographers and Graphic Artists have recently faced even higher hurdles with the decline of traditional print media. Those who have survived have sought to find new and innovative ways to license their works, especially in the context of electronic media. However, the Proposed Settlement would create an almost insuperable barrier to their ability to protect their copyrights from Google's past and future massive and wholesale infringement of their rights.

The Proposed Settlement, if approved, would likely have a profound, negative impact on the interests of the Photographers and Graphic Artists. First and most obvious, Google has committed willful infringement through the unauthorized copying of photographs and other visual material published in "books," yet many Photographers and Graphic Artists will be paid nothing for past infringement. Many of the over seven million books Google claims to have already digitized contain photographs and artworks in which the Photographers or Graphic Artists retained the copyrights. Yet not a cent of the $45 Million set aside by the Proposed Settlement for payment of compensation for past infringements would be paid to Photographers or Graphic Artists, with the narrow exception of those who themselves (rather than the publisher or author) own the copyrights in the "books" that were scanned by Google. There is no conceivable justification for this unjust and entirely inequitable result.

Under the Proposed Settlement, Google would have an unlimited license to digitize and commercialize books in the future, yet Photographers and Graphic Artists would be excluded from the Proposed Settlement's revenue-sharing formula and the proposed Book Rights Registry. Thus, one of the principal benefits of the Proposed Settlement for Settlement Class members would not benefit Photographers or Graphic Artists. To the extent that to-be-digitized books include photographs and artworks in which the copyrights are owned by the Photographers or Graphic Artists (potentially millions of books), Photographers and Graphic Artists would be paid nothing for the commercialization of their photographs or other visual

works as published in the books digitized by Google in the future. The granting of a virtually unlimited license to Google to commercialize books, together with the complete lack of compensation for past and future uses of photographs and other visual materials in those books, would be manifestly unfair to Photographers and Graphic Artists.

The valuation scheme provided for in the Proposed Settlement, while not specifically applicable to photographs or most visual material, would likely become the "market standard" for photographs and other visual works as well. The payment by Google of a mere $15 per "insert" or $60 per "book" for past infringement is woefully inadequate and comes nowhere close to approximating the true market value of the copyrighted work. The market power of Google and the publishers is such that negotiation for fair compensation of a Photographer or Graphic Artist's work in the future is likely to be circumscribed by this Proposed Settlement. There would be a "market standard" in place that valued past infringement, and arguably future infringement, at extraordinary low levels of compensation.[2]

For Photographers and Graphic Artists who seek to license their works for future uses, especially in the digital context, the Proposed Settlement is likely to dominate the marketplace to such an extent that they will be unable to obtain fair compensation in such licensing transactions. They would thereby suffer the worst of both worlds—cut out of any of the potential benefits flowing from the Proposed Settlement, and yet adversely affected by the marketplace impact of the valuations reflected in the settlement terms. Further, if the Proposed Settlement—and new class definition—were to be approved by the Court, it would serve *de facto*, and perhaps *de jure*, as a limiting factor if Photographers and Graphic Artists were to file a separate class action against Google.

A draft of this letter was circulated last night to counsel for the existing parties seeking their consent to our request to intervene. We appreciate the Court's consideration of this letter.

Respectfully yours,

Charles D. Ossola

Elaine Metlin

Victor S. Perlman
Managing Director and General
Counsel, ASMP

cc: Counsel for the Parties

---

[2] Users will inevitably ask, "If a whole book is worth only $60, how much could any individual photograph or illustration be worth?", despite the fact that many photographs and other visual works license for many thousands of dollars for a single use.