```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/4/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
THE AUTHORS GUILD et al.,              :

        Plaintiffs,     :

  - against -                           :     **MEMORANDUM DECISION**

GOOGLE, INC.,                          :     05 Civ. 8136 (DC)

        Defendant.       :
- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**   BONI & ZACK LLC
    By: Michael J. Boni, Esq.
15 St. Asaphs Road
Bala Cynwyd, PA  19004
    Attorneys for Author Plaintiffs

DICKSTEIN SHAPIRO LLP
    By: Shirley O. Saed, Esq.
        Charles D. Ossola, Esq.
        Elaine Metlin, Esq.
1825 I Street, Northwest
Washington, DC  20006

    -and-

VICTOR S. PERLMAN, ESQ.
General Counsel
American Society of Media
Photographers, Inc.
150 North Street
Philadelphia, PA  19160
    Attorneys for Proposed Intervenors

**CHIN, District Judge**

      The American Society of Media Photographers, the Graphic Artists Guild, the Picture Archive Council of America, the North American Nature Photography Association, Joel Meyerowitz, Dan Budnik, Pete Turner, and Lou Jacobs, Jr. (the "movants") move, pursuant to Federal Rule of Civil Procedure

59(e), for reconsideration of the Court's denial of their earlier motion to intervene in this case.

The movants make two arguments for intervention. First, they argue that they are entitled to intervene as of right under Rule 24(a)(2). Second, in the alternative, they ask the Court to exercise its discretion to permit them to intervene under Rule 24(b)(2). For the reasons that follow, the motion is denied in its entirety.

## BACKGROUND

This is a class action brought by the Authors Guild, various publishing firms, and certain individual authors on behalf of all holders of United States copyright interests in books and other specified textual works. (2d Am. Comp. ¶ 34). Holders of United States copyright interests in pictoral materials -- except for the illustrations of children's books -- are explicitly excluded from the class of plaintiffs. (Id. ¶ 38). The second amended complaint alleges that defendant Google, Inc. ("Google") infringed plaintiffs' copyrights when it scanned copyrighted materials without permission, and made plans to provide those materials to the public through an online searchable database. (Id. ¶ 47).

After long negotiations, plaintiffs and Google submitted a proposed settlement agreement to the Court on October 28, 2008. The proposed settlement purports to allocate rights to the copyrighted materials at issue, providing royalty payments to known copyright owners in exchange for Google's permission to publish the materials online, and setting up a separate entity called the Books Rights Registry to manage and distribute royalty

payments. Notice was sent to class members on January 5, 2009. A fairness hearing was scheduled and adjourned several times because of the complexity of the issues and the number of supporters and objectors who wished to be heard. The hearing was set for October 7, 2009, but it was once again delayed when the United States Department of Justice raised concerns about antitrust and other issues implicated by the proposed settlement. Currently, the parties are renegotiating the proposed settlement agreement, working with the Department of Justice to address the concerns. The parties are due to file the revised proposed settlement agreement with the Court on November 9, 2009.

The movants, persons and entities holding copyright interests in pictoral materials, seek to intervene in the litigation.

## DISCUSSION

### A. Applicable Law

Under Rule 24(a)(2), "to intervene as of right . . . an applicant must (1) timely file an application; (2) show an interest in the action; (3) demonstrate that the interest may be impaired by the disposition of the action; and (4) show that the interest is not protected adequately by the parties to the action. New York News Inc. v. Kheel, 972 F.2d 482, 485 (2d Cir. 1992) (citation omitted). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996) (quoting Farmland Dairies v. Comm'r, 847 F.2d 1038, 1043 (2d Cir. 1988)).

The timeliness decision is based on a set of flexible criteria and it is subject to the district court's discretion. United States v. Yonkers Bd. of Educ., 801 F.2d 593, 594-95 (2d Cir. 1986); see also United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994). "The length of time the applicant knew or should have known of his interest before making the motion" is one of the most important factors to be considered in determining timeliness. Catanzano, 103 F.3d at 232. As the Second Circuit has noted, "timeliness defies precise definition." Pitney Bowes, 25 F.3d at 70. Among the factors to be considered are "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." Id., 25 F.3d at 70 (citation omitted).

Under Rule 24(b)(2), the district court's discretion is broad. Sackman v. Liggett Group, 167 F.R.D. 6, 22 (E.D.N.Y. 1996). The text of the rule directs the court to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(2).

B. **Application**

The movants' request to intervene is untimely and the parties would be prejudiced if the movants were allowed to intervene now. This litigation was initiated in September 2005, and it has garnered extensive media attention ever since. The movants have been aware of the litigation since it was filed more

than four years ago, and they have known that they were not intended to be included in the class of plaintiffs. (See, e.g., Letter from Boni & Zack LLC, dated 10/5/09, Ex. A). Now, they argue that their intervention is still timely because 1) their attorneys only finished reviewing the parties' proposed settlement agreement in February 2009, and 2) any motion for intervention within a settlement's "opt-out" period should be considered presumptively timely. Neither of these arguments, however, mitigates the prejudice that intervention would impose on the parties to the case.

      Whether a motion to intervene is "timely" is driven heavily by an analysis of prejudice: whether the parties to the case will be prejudiced by intervention, and whether the proposed intervenor will be prejudiced by being kept out of the litigation. See Pitney Bowes, 25 F.3d at 72-73. Though the movants seem to propose that the Court adopt a per se rule that any motion within a settlement's "opt-out" period be considered presumptively timely, "it is incorrect to adopt a per se rule. . . . Instead, the determination [of timeliness] must be based on all the circumstances of the case." United States v. State of New York, 820 F.2d 554, 557 (2d Cir. 1987). In this case, the parties will be far more prejudiced by intervention than the movants will be prejudiced by a denial of their motion to intervene.

      The parties to this litigation have been negotiating and renegotiating a complicated settlement agreement for several years. In the last two months, the parties have begun working with the Department of Justice to revise the agreement to attempt

-5-

to avoid antitrust problems, and they are due to re-file their new settlement proposal on November 9, 2009. The proposed settlement, if approved, would allocate rights to millions of textual materials. It represents thousands of hours of discussion, compromise, and legal draftmanship. Yet, the movants propose to intrude at the very end of this long process, and to add the question of millions of pictoral materials to the equation. Intervention could "destroy [the parties'] settlement and send[] them back to the drawing board." In re Holocaust Victim Asset Litig., 225 F.3d 191, 199 (2d Cir. 2000).

The movants, on the other hand, are not unduly prejudiced by the proposed settlement in this case. The proposed settlement does not concern the rights to their pictoral materials and it binds them in no way. The movants are free to initiate their own litigation, and to invest the time, money, and energy to seek out their own settlement with Google. The movants claim that it would be "burdensome and prejudicial" to be forced to file their own lawsuit. (Mov. Mem. at 6). This argument is not persuasive, however, because the ordinary burden of filing a lawsuit does not constitute an impediment to a party's capacity to protect its rights. See id. (citing SEC v. Everest Mgmt. Corp., 475 F.2d 1236, 1239 (2d Cir. 1972)) ("the potential obstacles to the pursuit of an independent lawsuit do not 'impair or impede the applicant's ability to protect [its] interest'"). The movants may not delay or destroy the parties' settlement because they wish they had been involved in the litigation from the outset.

The movants argue that the royalty payments to textual copyright holders under the proposed settlement will effectively serve as a "ceiling" in the future, and that the movants lack the market power to negotiate a better deal for themselves separately. (Mov. Mem. at 9). This argument is speculative. Even assuming it is correct, it shows that the movants wish to intervene in this lawsuit -- rather than file their own lawsuit -- so that they can achieve a better deal than they could negotiate on their own by injecting themselves into a process that is already well underway and putting the entire settlement at risk. This is exactly the type of prejudice that Rules 24(b)(2) and 24(a)(2) seek to avoid.

Finally, the movants argue that the broad class definition in the first amended complaint vested them with rights in the litigation, and that class counsel acted "egregious[ly]" by not representing them adequately, and by negotiating them out of the settlement. In the original complaint, plaintiffs defined the class to include anyone who holds a copyright in a "literary work" in the University of Michigan library. (Comp. ¶ 20). In the first amended complaint, the class was expanded to include anyone who holds a copyright in a "work" in the University of Michigan library. (1st Am. Comp. ¶ 22). Finally, in the second amended complaint, the class was limited to holders of United States copyright interests in Books and other textual materials, not including "pictoral works." (2d Am. Comp. ¶ 38).

The movants are incorrect: the broad class that was defined in the first amended complaint does not entitle them to intervene at this late date. "The broad language of a complaint

-7-

does not vest in putative class members a right to be part of the class ultimately certified by the District Court." Holocaust Litigation, 225 F.3d at 202. The center of this litigation has always been copyrighted textual materials. I reject the argument that class counsel acted in bad faith in the way they defined the class because there are legitimate reasons for limiting the class to holders of textual copyrights. See McBean v. City of New York, 228 F.R.D. 487, 497 (S.D.N.Y. 2005) (Lynch, J.) ("Th[e] argument [that the parties acted in bad faith] would have weight if there were no conceivable justification for plaintiffs' decision to narrow the class aside from desiring a quick and easy settlement.").

The holders of pictoral copyrights are differently situated from the holders of textual copyrights. Frankly, in the context of a online database that is searchable using keywords, it makes sense to prioritize the rights to word-based material. It is true that the class could have included the owners of pictoral copyrights, as well, but the class members are not under an obligation to resolve every conceivable controversy under the auspices of this litigation. As long as movants retain their right to bring their own lawsuit, they have not been harmed by this litigation, and they do not retain an automatic right to intervene a year after the proposed settlement agreement was filed. From the perspectives of fairness and efficiency, it makes more sense for the movants to file their own lawsuit than to be permitted to delay this lawsuit.

## **CONCLUSION**

For the reasons set forth above, the motion is hereby DENIED.

SO ORDERED.

Dated:  New York, New York
        November 4, 2009

_____
DENNY CHIN
United States District Judge