UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

The Authors Guild, Inc., *et al.*,                    :

                                            :          Case No. 05 CV 8136-DC

                           Plaintiffs,          :              ECF Case

                                              :

                 vs.          :          MEMORANDUM OF LAW IN

                                              :          SUPPORT OF

                                              :          AMAZON.COM, INC.'S

Google, Inc.                                          :          MOTION FOR

                                              :          RECONSIDERATION OF

                Defendant.          :          ORDER GRANTING

                                              :          PRELIMINARY APPROVAL

                                              :          OF AMENDED

                                              :          SETTLEMENT AGREEMENT

                                              :

                                              :          *Filed Electronically*

-------------------------------------------------------------x

AMAZON.COM, INC.
David Zapolsky, Esq. (DZ-8058)
davidz@amazon.com
Vice President & Associate General Counsel
Litigation & Regulatory Affairs
1200 12th Avenue South
Suite 1200
Seattle, Washington 98144
Telephone:    (206) 266-1323
Facsimile:    (206) 266-7010

IRELL & MANELLA LLP
David Nimmer
(CA State Bar No. 97170)
(Admitted *Pro Hac Vice*)
dnimmer@irell.com
Alexander F. Wiles
(CA State Bar No. 73596)
(Admitted *Pro Hac Vice*)
awiles@irell.com
1800 Avenue of the Stars
Suite 900
Los Angeles, California 90067-4276
Telephone:    (310) 277-1010
Facsimile:    (310) 203-7199

Counsel for Amazon.com, Inc.

2154544

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     RECONSIDERATION OF THE COURT'S ORDER IS APPROPRIATE
        BECAUSE THE COURT DID NOT CONSIDER CONTROLLING
        DECISIONS NOT MENTIONED BY THE MOVING PARTIES AND
        BECAUSE OPPOSING PARTIES WERE NOT, AND COULD NOT
        HAVE BEEN, HEARD BEFORE THE ORDER ISSUED ...................................... 2

III.    THE AMENDED SETTLEMENT CANNOT BE PRELIMINARILY
        APPROVED ......................................................................................................... 6

        A.      The Proposed Amended Settlement Cannot Be Preliminarily
                Approved Insofar As It Purports To Release Google And Others
                From Liability For Actions They May Take In The Future. ........................ 7

        B.      The Proposed Amended Settlement Improperly Releases Google,
                Its Partner Libraries, And Others From Claims Based On Future
                Conduct. ................................................................................................... 9

        C.      If The Court So Elects, It Can Give The Parties The Opportunity
                To Correct This Defect By Eliminating Releases For Future
                Conduct. ................................................................................................. 12

IV.     IF PRELIMINARY APPROVAL IS STILL GRANTED, THE COURT
        SHOULD AMEND ITS ORDER TO PERMIT SUPERSEDING
        OBJECTIONS COVERING ALL FLAWS OF THE PROPOSED
        AMENDED SETTLEMENT ............................................................................... 15

V.      CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Pipe & Const. Co. v. Utah*,
  414 U.S. 538 (1974) .................................................................................................. 4

*Amchem Prod., Inc v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................. 8

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) .................................................................................... 6

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) .................................................................................................. 4

*Doe v. New York City Dep't of Soc. Servs.*,
  709 F.2d 782 (2d Cir. 1983) ..................................................................................... 3

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) .................................................................................... 6

*Henderson v. Metro. Bank & Trust Co.*,
  502 F. Supp. 2d 372 (S.D.N.Y. 2007) ...................................................................... 5

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
  241 F.R.D. 182 (S.D.N.Y. 2007) .......................................................................... 2, 3

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
  2006 WL 903236 n.15 (S.D.N.Y. Apr. 6, 2006) ....................................................... 4

*In re Asbestos Litig.*,
  90 F.3d 963 (5th Cir. 1996) ...................................................................................... 8

*In re Initial Public Offering Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005) .............................................................................. 6

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
  236 F.R.D. 53 (D. Me. 2006) .................................................................................... 6

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) .............................................................................. 6

*In re REFCO, Inc. Sec. Litig.*,
  No. 05 Civ. 8626 (GEL) (S.D.N.Y. Dec. 2, 2008) ................................................... 4

*Karvaly v. Ebay, Inc.*,
  245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................................ 7

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
  660 F.2d 9 (2d Cir. 1981) ...................................................................... 7, 8

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
  157 F. Supp. 2d 561, 578 (E.D. Pa. 2001) ................................................ 8

*Uhl v. Thoroughbred Technology and Telecommunications, Inc.*,
  309 F.3d 978 (7th Cir. 2002) ............................................................... 8, 9

*UniSuper Ltd. v. News Corp.*,
  898 A.2d 344 (Del. Ch. 2006) ............................................................ 8, 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................. 7, 11

**Statutes**

17 U.S.C. § 506(a) ...................................................................................... 10

**Other Authorities**

5 James Wm. Moore et al., *Moore's Federal Practice*
  § 23.165[2] (3d ed. 2009) ...................................................................... 6

Andrew Richard Albanese & Norman Oder, *Corner Office: Google's Dan
  Clancy*, Libr. J., May 1, 2009 ............................................................. 11

*Competition and Commerce in Digital Books: Hearing Before H. Comm. on the
  Judiciary*, 111th Cong. (Sept. 10, 2009)............................................. 13, 14

*Manual for Complex Litigation (Fourth)* § 21.632 (2004)...................................... 3

*Manual for Complex Litigation (Third)* § 30.41 (1995) ......................................... 3

**Rules**

Fed. R. Civ. P. 6.......................................................................................... 4

Fed. R. Civ. P. 5(b)(2)(E) ............................................................................ 4

7B Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
  and Procedure § 1797.3 ......................................................................... 8

Southern District of New York Local Rule 6.1(b) ................................................ 4

Southern District of New York Local Rule 6.3 ................................................... 2

# I.       INTRODUCTION

Amazon.com, Inc. ("Amazon"), a class member, respectfully requests the Court to reconsider its Order Granting Preliminary Approval of Amended Settlement Agreement, Dkt. # 772 ("Order").  Amazon believes that reconsideration is appropriate here, where the Court (1) did not consider controlling Second Circuit authority due to the failure of the moving parties to brief a critical issue, and (2) ruled without the benefit of opposing viewpoints from then-putative class members who were not involved in the parties' settlement negotiations.  In addition, the Court's order was actually issued slightly before one of the bases of the Plaintiffs' Motion for Preliminary Approval ("Motion")—the plaintiffs' Third Amended Complaint—was approved and docketed.  Indeed, the Third Amended Complaint has yet to be released to the public; Amazon obtained a non-conformed copy by contacting one of Plaintiffs' attorneys shortly after the Court order permitting the plaintiffs to file it.  Amazon has worked diligently to prepare its opposition to preliminary approval and asks that the Court reconsider its Order in light of the arguments herein.

Preliminary approval should be denied because the Amended Settlement Agreement (hereinafter "Proposed Amended Settlement") falls outside the range of possible approval due to a clear and fatal flaw:  The releases of liability, and the accompanying "bar order," are overbroad and in contravention of well-established Second Circuit authority.  Instead of only releasing claims that are part of the "identical factual predicate" as the claims at issue in this litigation (i.e., Google's past scanning and display of "snippets" of copyrighted works), the Proposed Amended Settlement releases Google, its library partners, and others from liability for future copyright infringement, including claims based on activities in which Google has not engaged, and would not engage, because doing so would have subjected it to criminal liability.  These future acts clearly lie beyond the scope of the

underlying litigation, and this Court has no power to bar Class Members from suing over actions that Google has not yet taken. This version of the settlement is thus doomed from the start and fails to satisfy even the low standard for preliminary approval.

Instead of squandering resources by proceeding with a settlement that faces certain rejection at the final approval stage, the Court should deny preliminary approval, and, if the Court so elects, provide the parties with another 30-45 days to renegotiate a settlement that remedies this fatal flaw, by limiting the scope of the releases of Google, its library partners and others to liability for past acts of infringement. Google would then be allowed to engage in future infringing conduct only after receiving permission from each rightsholder whose copyright would be infringed by the contemplated conduct. If the parties' own statements are to be believed, these modifications will not unduly reduce the value and promise that the parties ascribe to the Proposed Amended Settlement.

Should the Court decide that preliminary approval is still appropriate, it should amend its Order to give objecting class members the right to withdraw their previous objections in favor of filing updated, complete objections stating all arguments, both old and new, against the Proposed Amended Settlement. This would not only save the Court time and effort, but, more importantly, would avoid prejudicing objectors by unduly handicapping their ability to present arguments accurately and forcefully.

## II. RECONSIDERATION OF THE COURT'S ORDER IS APPROPRIATE BECAUSE THE COURT DID NOT CONSIDER CONTROLLING DECISIONS NOT MENTIONED BY THE MOVING PARTIES AND BECAUSE OPPOSING PARTIES WERE NOT, AND COULD NOT HAVE BEEN, HEARD BEFORE THE ORDER ISSUED

Under this Court's Local Rule 6.3, reconsideration is appropriate "where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 241 F.R.D. 182, 183 (S.D.N.Y.

2007) (internal quotations omitted); *see also id.* ("[T]he movant must demonstrate 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" (quoting *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).  Here, the Court should reconsider its Order because, in preliminarily approving a Proposed Amended Settlement with impermissibly broad releases, the Court never considered Second Circuit decisions that demonstrate the existence of an obvious flaw in the Proposed Amended Settlement and because the Court issued the Order before any opposition could be presented.  The need for reconsideration is heightened here by the failure of the parties to address in their moving papers the already front-and-center dispute over the propriety of forward looking releases[1] and by their erroneous contention that this Court ought not accept oppositions to the Motion.

Contrary to the Plaintiffs' argument in Section IV.H of Plaintiffs' Memorandum of Law in support of their Motion, oppositions to the Motion by members of the putative class are appropriate.  In reviewing a class action settlement for preliminary approval, "it is often prudent [for the judge] to hear not only from counsel but also from the named plaintiffs, from other parties, and from attorneys who represent individual class members but did not participate in the settlement negotiations."  *Manual for Complex Litigation (Fourth)* § 21.632 (2004); *see also* *Manual for Complex Litigation (Third)* § 30.41 (1995) (In its initial evaluation, "[t]he court may want to hear not only from counsel but also from the named plaintiffs, from other parties, and from attorneys who did not participate in the

---

[1] *See* Statement of Interest of the United States of America Regarding Proposed Class Settlement at 6-8 (Dkt. # 720); Objection of Amazon.com, Inc. to Proposed Settlement at 34-40 (Dkt. # 206); Objections of Arlo Guthrie, Julia Wright, Catherine Ryan Hyde, and Eugene Linden to Proposed Class Action Settlement Agreement at 13-16 (Dkt. # 209); Objections to Class Action Settlement and Notice of Intent to Appear on Behalf of Class Members Harold Bloom et al. at 4-12 (Dkt. # 273).

negotiations."); *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, 2006 WL 903236 at

*13 n.15 (S.D.N.Y. Apr. 6, 2006) (quoting *Manual for Complex Litigation (Third)*, and

noting that an objection to the settlement's handling of funds "is precisely the type of

objection that would have been beneficially brought to the Court's attention at the

preliminary fairness hearing"). Considering the complexity of the Proposed Amended

Settlement, there is no doubt that the views of members of the putative class who did not

participate in the negotiations would have been useful to the Court.[2]

Normally, under the Southern District of New York's Local Rule 6.1(b) and Federal

Rules of Civil Procedure 6 and 5(b)(2)(E), oppositions to the Motion would have been due

on December 4, 2009.[3] The Order came nine business days earlier, however. Prematurely

granting a motion for preliminary approval before hearing objections is sufficient grounds

for a court to reconsider an order. *See In re REFCO, Inc. Sec. Litig.*, No. 05 Civ. 8626

(GEL) (S.D.N.Y. Dec. 2, 2008), *available at*

http://www.refcosecuritieslitigation.com/courtdox/2008-12-02-

ORDERLeadUnderwriterDefmotiontoRecon-prelimapprove-particalsettle.pdf.

---

[2] The two cases plaintiffs cited to support their position are entirely inapposite. Neither addresses the propriety of oppositions to a motion for preliminary approval or of objections at the preliminary approval stage. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 552-53, 560-61 (1974) (addressing whether the filing of a class action tolls the statute of limitations for all purported members of the class when class status was later denied for failing the numerosity requirement, and holding that purported class members' motions to intervene after the denial of class status were timely); *Califano v. Yamasaki*, 442 U.S. 682, 684 (1979) (questions before the Supreme Court were "whether petitioner must grant respondents the opportunity for an oral hearing before [Social Security overpayment] recoupment begins, and whether jurisdiction under § 205(g) of the [Social Security] Act . . . permits a federal district court to certify a nationwide class and grant injunctive relief").

[3] This due date is computed using the version of the rules in effect before the planned December 1, 2009 amendments, as the Proposed Amended Settlement was served on November 13. The default due date is likely even later, given that the operative complaint in this matter—the Third Amended Complaint—is still unavailable from the Court's PACER system more than four business days after the Motion itself was filed.

(reconsidering order granting preliminary approval; "[a]s the objecting Lead Underwriters correctly point out, the Court granted Lead Plaintiffs' motion for preliminary approval prematurely, before the time for objections had expired, based on Lead Plaintiffs' representation that no objections would be forthcoming").  Furthermore, the ability of opposing class members to comprehend and respond to the Proposed Amended Settlement has been stymied by their inability to access the Plaintiffs' Third Amended Complaint from the Court's docket.  As noted in the Plaintiffs' Motion, changes made in the Third Amended Complaint formed some of the basis for the alterations found in the Proposed Amended Settlement, yet the Court's Order accepting the parties' stipulation and permitting the filing of the Third Amended Complaint was issued concurrently with the preliminary approval Order.[4]  While courts frown upon motions for reconsideration that raise arguments that could have been presented earlier, *see Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 375-76 (S.D.N.Y. 2007), this case is the exact opposite: Amazon wishes to present its argument for the first time.

The lack of opposing viewpoints is particularly detrimental here, where it led the Court to issue an Order that overlooked the law on the scope of releases.  As is explained below, the Proposed Amended Settlement contains releases that are far beyond the range of potentially acceptable class action settlement releases, and thus it cannot be approved, even preliminarily.  The Plaintiffs' one-sided presentation also resulted in an Order that unfairly and unnecessarily restricts further objections in a manner that disserves the Court while prejudicing objecting class members.

---

[4] As noted above, Amazon was able to proceed with this motion only by obtaining a non-conformed copy from one of the Plaintiffs' attorneys.

## III. THE AMENDED SETTLEMENT CANNOT BE PRELIMINARILY APPROVED

While the standard for preliminary approval is not high, the process still serves an important function: to determine whether a settlement is "within the range of possible approval. . . . [I]ts purpose . . . is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (internal quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 236 F.R.D. 53, 55-56 (D. Me. 2006) ("Before incurring the expense of widescale notice, it makes sense for a judge to say that a particular settlement has no chance of approval."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209-10 (S.D.N.Y. 1995) (quoting *Armstrong*). Because a court can only preliminarily approve a settlement that is capable of being approved following a fairness hearing, it follows that a court cannot grant preliminary approval of a settlement with "obvious deficiencies." *See In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, *has no obvious deficiencies*, does not improperly grant preferential treatment to class representatives or segments of the class *and falls within the range of possible approval*, preliminary approval is granted." (emphasis added) (internal quotations omitted)); 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.165[2] (3d ed. 2009) (If, after preliminary review, a court finds the settlement "is obviously unfair, the court may give the parties an opportunity to withdraw it and save themselves the time and expense of giving notice to the class"). While Amazon believes that other serious, and likely fatal, problems continue to plague the Proposed Amended Settlement, and reserves its right to object on those bases if necessary, the

relatively low standard for preliminary approval means that only obvious and clearly fatal flaws should be raised at this juncture. There is such a flaw here: this Court cannot preliminarily approve the Proposed Amended Settlement because the proposed releases in Article X are unambiguously—and impermissibly—overbroad.

**A.   The Proposed Amended Settlement Cannot Be Preliminarily Approved Insofar As It Purports To Release Google And Others From Liability For Actions They May Take In The Future.**

A proposed settlement's overbroad releases warrant rejection of that settlement at the preliminary approval stage. *See Karvaly v. Ebay, Inc.*, 245 F.R.D. 71, 85-90 (E.D.N.Y. 2007) (noting that "[t]he Court's most serious concern with the terms of the proposed settlement is the unduly broad general release[:]" The release "render[s] the proposed settlement untenable even at [the] preliminary stage" and is one of several "obvious deficiencies . . . that would preclude the Court from granting preliminary approval to the settlement in its current form, even if the class were certifiable." (internal quotations omitted)). There is likewise little doubt in this circuit about what is and is not permissible in terms of the scope of releases in class action settlements. While a settlement can release claims that were not specifically alleged in the litigation, a settlement cannot release claims that are not part of the "identical factual predicate" as the class claims. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 109 (2d Cir. 2005) (approving settlement and concluding that scope of release was proper because all released claims arose out of the "identical factual predicate" as claims in the complaint); *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 16-18 (2d Cir. 1981) (reversing approval of settlement in class action alleging harm to those who liquidated their positions in certain futures contracts during specific period, when release extended to claims by persons who had not liquidated their positions by the end of that period); *see also UniSuper Ltd. v. News Corp.*, 898 A.2d

344, 347 (Del. Ch. 2006) ("A settlement can release claims that were not specifically asserted in an action, but can only release claims that are based on the 'same identical factual predicate' or the 'same set of operative facts' as the underlying action."). If a judgment after trial cannot extinguish certain claims, these claims cannot be released in a settlement of that action. *See Nat'l Super Spuds*, 660 F.2d at 17.

This limitation has constitutional origins. *See In re Asbestos Litig.*, 90 F.3d 963, 1015-1026 (5th Cir. 1996) (Smith, J., dissenting) (noting that no case has "advanced the radical proposition that a federal court, in approving a class action settlement—i.e., in the exercise of its Article III jurisdiction—can release claims not presenting a case or controversy"), *vacated*, 521 U.S. 1114 (1997); *see also* 7B Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1797.3 (3d ed. 2009) (commenting that in *Amchem Prod., Inc v. Windsor*, 521 U.S. 591 (1997), the Supreme Court "expressed serious concerns about the viability of settlements containing future claims," but "these challenges to the judicial resolution of possible future claims remain undecided."). Thus, a class action settlement that purports to release the defendant for future conduct not at issue in the underlying litigation fails not only procedural rules applicable in this circuit, but raises serious constitutional concerns as well.

The parties may argue that *Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 309 F.3d 978 (7th Cir. 2002), allows this Court to approve a class action settlement that includes a release by class members of future claims arising from future conduct. But, read thus, *Uhl* would be inconsistent with Second Circuit law and other similar authority, *see Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 578 (E.D. Pa. 2001); *UniSuper*, 898 A.2d at 347-48. *Uhl* is also distinguishable. Yet for present purposes, the Court need not concern itself either with the contours of *Uhl* or with all

the reasons that it is inapplicable here.[5]  The releases of the Proposed Amended Settlement

are so far afield from the underlying conduct in this case that, even read most expansively,

*Uhl* could not salvage the parties' current proposal.  At most, accounting for both the

circumstances of *Uhl* and constitutional considerations, the settling parties can argue that

*Uhl* stands for the proposition that a class action settlement can release a party from liability

for future conduct of the same type as the past acts being litigated.[6]  As the next section

makes clear, however, the proposed settlement here purports to release Google and other

parties from liability for acts of infringement arising out of future business models

completely divorced from anything that Google has done in the past.  *Uhl* is thus of no help

to the parties.

> **B.     The Proposed Amended Settlement Improperly Releases Google, Its Partner Libraries, And Others From Claims Based On Future Conduct.**

The Proposed Amended Settlement releases Google, its contractors, licensees, agents

and successors "*after the Effective Date*, [for] any act or omission authorized by this

Amended Settlement Agreement . . . when that act or omission is undertaken by a Person

who is authorized to undertake it under this Amended Settlement Agreement."  Proposed

Amended Settlement §§ 10.1(f) (emphasis added); 10.1(g); 10.2(a).  Moreover, the Proposed

Amended Settlement also releases Cooperating Libraries, Fully Participating Libraries,

---

[5] If the parties choose to revise the settlement a second time and limit their revisions so as to put the settlement at the outer boundaries of *Uhl*, then at that time it would be necessary for the Court to consider in detail the meaning and applicability of *Uhl*.  Amazon wishes its position to be clear that *Uhl* should not be applied in this circuit and that, even if it were, *Uhl* would not support the release of claims based on any future conduct here. Amazon leaves that issue to another day, if it ever matures into a point that must be decided.

[6] In *Uhl,* the settling parties limited themselves to enabling the specific acts that were the subject of the case.  That litigation challenged defendant's right to lay cable; correlatively, the easements granted were for the "specific purpose of laying cable."  *Uhl*, 309 F.3d at 980-82.

Other Libraries and Public Domain Libraries from liability for the same acts or omissions. *Id.* §§ 10.1(b), (d), (h), (j); 10.2(a).

These "act[s] or omission[s]" include future acts similar to those that Google and its partner libraries have already engaged in, such as the digitization of books not yet digitized by Google. *Id.* § 3.1(a). Yet the fact that Google has already taken similar actions in the past does not bring such future actions into the same factual predicate as the underlying litigation. *UniSuper*, 898 A.2d at 347. For those Rightsholders whose work Google has yet to digitize, this Court has no power to bar them from asserting claims should Google do so in the future.

Even more egregiously, the settlement releases future claims against Google for *types* of infringement expected to be undertaken for the first time *after* the Effective Date of the Settlement. These actions are clearly not part of the identical factual predicate of the litigation.[7] They include:

- Sale of institutional subscriptions to the digitized database of books and inserts, Proposed Amended Settlement § 4.1;

- Sale to consumers of books and inserts and of the right to view, print, and copy/paste those words or portions thereof, *id.* § 4.2;

- "Additional" revenue models, including Print on Demand, File Download, and Consumer Subscription Models, *id.* § 4.7; and

- Unspecified future amendments to the Settlement Agreement, *id.* § 17.27.

The sale of books or subscriptions to a database of scanned works is conduct in which Google has not yet engaged and, because of criminal sanctions, almost certainly would never engage without a clear license to do so. *See* 17 U.S.C. § 506(a) (defining copyright infringement as a criminal offense when undertaken willfully and for commercial

---

[7] Google itself disclaims the ability to craft privacy policies regarding certain of its additional revenue models because "[t]hose additional services have not yet been designed."

advantage). That conduct is not at issue in the litigation. Likewise, "additional revenue models" and "future amendments" to the settlement are, by definition, not at issue in this litigation for the simple reason that they do not yet exist.[8]

Finally, the releases contemplated by the Proposed Settlement are so overbroad that they even apply to third parties, such as libraries that in the future participate in Google's digitization process, "resellers" that in the future sell to their end users access to the works digitized by Google, and entities that copy or use copyrighted works in reliance on an agreement with the Registry in the event that Google foregoes particular business models. Proposed Amended Settlement §§ 10.1(f), (g); 10.2(a). While libraries that have already allowed Google to digitize their collections may be released from liability for their prior conduct, *see Wal-Mart Stores, Inc.,* 396 F.3d at 109, the "identical factual predicate rule" does not allow for release of third parties who have had no involvement to date in the activity that led to the claims against Google.

The releases in the Proposed Amended Settlement are far too broad. The Court simply does not have the power to bar future claims arising from future conduct against

---

Google Books Privacy Policy, *available at* http://books.google.com/googlebooks/privacy.html.

[8] Even Dan Clancy, Engineering Director for Google Book Search, has acknowledged that what Google could achieve through litigation and final judgment would be confined to snippet display. In an interview with the *Library Journal*, Clancy discussed the breadth of the original settlement's releases, stating:

> The settlement was driven by what we felt was, in the end, better for everyone and better for users in particular. . . . This settlement is an opportunity to do what, I think, from a user perspective is far better. The snippets we've been showing are a far cry from what the user wants, and really the only solution was a partnership. We assume we would have gone through the courts and won. But once we won, we still would've had snippets.

Andrew Richard Albanese & Norman Oder, *Corner Office: Google's Dan Clancy*, Libr. J., May 1, 2009, at 26, 26, *available at* http://www.libraryjournal.com/article/CA6652445.html.

Google, its partner libraries or unknown third parties.[9]  Because of this flagrant deficiency, the Proposed Amended Settlement should be rejected at the preliminary approval stage.

> **C.** **If The Court So Elects, It Can Give The Parties The Opportunity To Correct This Defect By Eliminating Releases For Future Conduct.**

Although this obvious defect in the Proposed Amended Settlement precludes preliminary approval, the Court, if it so chooses, can give the parties the opportunity to cure this deficiency over the next 30 to 45 days.  The parties can do so by agreeing not to release Google, its library partners and other third parties from liability for future acts of infringement and by requiring that Google obtain rightsholder approval for each proposed future act that would otherwise constitute copyright infringement.[10]  If the parties' statements over the past several months about "orphan works" are to be believed, they cannot argue that such an amendment would gut the proposed settlement's value to them.

The premise of both the initial proposed settlement and the Proposed Amended Settlement is that, in order to create a sufficiently valuable corpus of works for Google's future projects, any settlement must provide Google with a license for the future use of class members' works unless they come forward and ask not to be included.  Yet, in defending the *de facto* exclusivity that such an arrangement would grant Google over large numbers of

---

[9] In fact, the Proposed Amended Settlement's creation of an "Unclaimed Works Fiduciary," underscores the impropriety of its releases.  *See* James Grimmelmann, *GBS: Is the UWF a Blackwater for the Orphans?*, *available at* http://laboratorium.net/archive/2009/11/14/gbs_is_the_uwf_a_blackwater_for_the_orphans ("What other class action is so dangerous to class members that they need an ongoing guardian, able to act on their behalf without instructions, just to safeguard their interests?  It's precisely because the settlement trades in future claims based in future conduct that these possibilities for abuse arise and must be guarded against.").

[10] Although curing this deficiency would be a productive step towards crafting a settlement that this Court might ultimately be able to approve, the application of the release to future conduct is not the only problem with the Proposed Amended Settlement.  As previously stated, given the low standard for preliminary approval, Amazon limits this

copyrighted works, the parties have repeatedly asserted that this feature of the proposed

settlement is insignificant, because there are in fact very few literary orphan works.  These

two positions are logically inconsistent.  If the corpus of orphan works is small, then

modifying the settlement to require rightsholder consent for future uses—thus making

orphan works ineligible for these projects—should be inconsequential.

      The parties have made their views known repeatedly while attempting to dismiss the

impact of Google holding a *de facto* exclusive license to use orphan works:

- On plaintiff's side, Roy Blount, Jr., President of the Authors Guild, wrote:

  > "Some people have the impression that most out-of-print books are
  > orphans.  That's not true.  Most authors I know have written some books
  > that are out of print.  Me too.  We are all findable. . . . I sit on the board of
  > the Authors Registry, a non-profit organization that helps pay authors for
  > photocopy and other uses of their books from overseas.  Its success rate at
  > finding authors of out-of-print books is upwards of 80%.  If you look for
  > authors, the odds of finding them go way up. . . . [O]rphan books are only a
  > small part of the settlement."

  Roy Blount, Jr., *Let's Not Lose Our Heads Over a "Monopoly" of Orphans*, June
  24, 2009, *available at* http://www.authorsguild.org/advocacy/articles/roy-blount-
  on-google-orphans.html.

- Paul Aiken, Executive Director of the Authors Guild, made the same point even
  more emphatically just a few months ago:

  > "No issue has been more misunderstood or misreported regarding this
  > settlement than the unclaimed or 'orphan' works issue.  The primary
  > misconception is the size of the problem: it's much smaller than has
  > commonly been reported, for several reasons.  First, finding the rights
  > owner of a book is not as daunting as many seem to believe.  Books do not
  > present the classic orphan works problem, photographs do. . . . Books . . .
  > always contain author and publisher information, and there's often a
  > copyright registration record to help locate the rights owner. . . . When an
  > author is identified, then requests for all kinds of other uses . . . can be
  > relayed to the author or the author's agent and acted upon. . . . Of course,
  > there may still be books whose rightsholders prove difficult to find. . . . But
  > the facts suggest, contrary to the gloomy scenarios painted by the critics,
  > that *the number of such books ultimately will be quite low*."

  *Competition and Commerce in Digital Books: Hearing Before H. Comm. on the
  Judiciary*, 111th Cong. (Sept. 10, 2009) (written statement of Paul Aiken,

---

motion to the most egregious aspect of the Proposed Amended Settlement, reserving its
other objections.

Executive Director, Authors Guild) (emphasis added), *available at* http://judiciary.house.gov/hearings/pdf/aiken090910.pdf.

- The defendant apparently shares this view. David C. Drummond, Senior Vice President of Corporate Development and Chief Legal Officer of Google, stated:

  > "The orphan works problem is being exaggerated. . . . We believe that the number of works that are truly orphaned will be small."

  *Competition and Commerce in Digital Books: Hearing Before H. Comm. on the Judiciary*, 111th Cong. (Sept. 10, 2009) (oral response of David C. Drummond, Senior Vice President of Corporate Development and Chief Legal Officer, Google Inc.), at time 00:59:35, video webcast *available at* http://judiciary.edgeboss.net/real/judiciary/full/full09102009.smi.

While Amazon is highly skeptical of these claims, the parties cannot have it both ways. Taking at face value the parties' contention that most rightsholders can be located through a diligent search means that there is no reason to stretch the class action mechanism beyond its breaking point.

From the broader policy standpoint, it is Mr. Aiken, the Executive Director of the Author's Guild, who, in a 2005 letter to the United States Copyright Office, highlighted the issue that is paramount in this context: "Above all, the law must not take away the rights of owners who could be found by a truly diligent search." Letter from Paul Aiken to Jule L. Sigall, Associate Register for Policy & International Affairs, U.S. Copyright Office (May 9, 2005), at 5, *available at* http://www.copyright.gov/orphan/comments/reply/OWR0135-AuthorsGuild.pdf. By continuing on an opt-out basis, the Proposed Amended Settlement suffers from exactly the flaw that the Author's Guild condemned in that letter. The Register of Copyrights made essentially this same point in her comments to Congress, observing that the previous proposed settlement amounted to a derogation of Congress' role in copyright policy by privately legislating unique rules applicable only to Google. *See Competition and Commerce in Digital Books: Hearing Before H. Comm. on the Judiciary*, 111th Cong. (Sept. 10, 2009) (written statement of Marybeth Peters, Register of Copyrights), *available at*

http://judiciary.house.gov/hearings/pdf/Peters090910.pdf ("Many out-of-print works have rights holders who are both identifiable and locatable through a search. . . . Until there is a legislative solution, it is our strong view that Google should conduct itself according to the same options available to other users of copyrighted works: secure permission; forego the use; use the work subject to risk of liability; or use the work in accordance with fair use or another limitation or exception."). The parties have the power to modify the proposed settlement so that it no longer amounts to an act of private legislation. If this Court chooses to do so, it can give them an opportunity to fix this obvious defect.

## IV. IF PRELIMINARY APPROVAL IS STILL GRANTED, THE COURT SHOULD AMEND ITS ORDER TO PERMIT SUPERSEDING OBJECTIONS COVERING ALL FLAWS OF THE PROPOSED AMENDED SETTLEMENT

In the event that the Court still decides that preliminary approval of the Proposed Amended Settlement is appropriate, Amazon urges the Court to amend its Order so as not to constrain the ability of objectors to voice their complaints. Paragraph 18 currently states that the Court will consider all previously filled Objections, and that any new filings are forbidden from covering aspects of the Proposed Amended Settlement that have not been amended. While facially appealing, this approach is unfair to objectors. The various provisions of the Proposed Amended Settlement are interrelated, so that limiting filings to only the changes artificially partitions objectors' arguments and prevents them from presenting the Court with cohesive and accurate filings. Objectors are relegated to trying to draw the Court's attention to relevant arguments that are buried in otherwise outdated filings. Furthermore, this prejudice to objectors is unnecessary as it actually increases the workload of the Court by requiring it to sift through old filings in search of paragraphs and sections that are still relevant, and then to stitch those portions together with newer filings.

Instead, the Court should amend Paragraph 18 to allow objectors to announce in their new filing that they intend for it to supersede their previous objection and are including in this new filing all relevant arguments against approval of the Proposed Amended Settlement—including those arguments that remain despite the parties' amendments. For objectors who make such a statement, their previous objections would effectively be withdrawn. For objectors who do not make such a statement, the Court could follow the existing Paragraph 18 framework, considering both the original objection and the newly filed objection, which would address only the amendments.

## V.    CONCLUSION

For the foregoing reasons, Amazon respectfully asks the Court to reconsider its Order. Upon reconsideration, the Court should deny the parties' Motion for Preliminary Approval of the Amended Settlement Agreement, or at very least amend its Order to give objectors the option of withdrawing their previous objections in favor of a new, complete objection covering all problems, new and old, with the Proposed Amended Settlement.

Dated: November 20, 2009

Respectfully submitted,

IRELL & MANELLA LLP

By: _____s/ Alexander F. Wiles_____
        Alexander F. Wiles
        (Admitted *Pro Hac Vice*)
        (CA State Bar No. 73596)

        David Nimmer
        (Admitted *Pro Hac Vice*)
        (CA State Bar No. 97170)

IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, California 90067-4276
Telephone:    (310) 277-1010
Facsimile:    (310) 203-7199
awiles@irell.com
dnimmer@irell.com

Counsel for Amazon.com, Inc.

AMAZON.COM, INC.

David Zapolsky, Esq. (DZ-8058)
Vice President & Associate General Counsel
Litigation & Regulatory Affairs
1200 12th Avenue South, Suite 1200
Seattle, Washington 98144
Telephone:    (206) 266-1323
Facsimile:    (206) 266-7010
davidz@amazon.com