# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK



The Authors Guild Inc., Association
of American Publishers Inc., et al.,

Plaintiffs,

v.

Google Inc.,

Defendant.

05-cv-8136

**OBJECTIONS OF NIYOGI BOOKS, IPP CATALOGUE PUBLICATIONS, STAR PUBLICATIONS PVT. LTD., PUSTAK MAHAL, UNICORN BOOKS PVT. LTD, LAXMI PUBLICATIONS PVT. LTD., PRAGUN PUBLICATION, ESS ESS PUBLICATIONS, NEW CENTURY PUBLICATION, DAYA PUBLISHING HOUSE, ARORA LAW BOOK AGENCY, DR. SAROJINI PRITAM AND AAKAR BOOKS TO THE PROPOSED REVISED SETTLEMENT AND BRIEF OF AMICI CURIAE, FEDERATION OF INDIAN PUBLISHERS, THE INDIAN REPROGRAPHIC RIGHTS ORGANIZATION AND PROFESSOR RAVI SHANKER**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**..................................................................

**INTRODUCTION**..................................................................1

**INTEREST OF PARTIES**..................................................................2

**ARGUMENTS**..................................................................3

**JURISDICTION**..................................................................11

**CONCLUSION**..................................................................11

# TABLE OF AUTHORITIES

## Statutes and Legislative Material

House Report on the Berne Convention Implementation Act of 1988, H.R. Rep. No. 100-609, (1988)

## Rules

Federal Rules of Civil Procedure, Rule 23

## Other Authorities

Berne Convention for the Protection of Literary and Artistic Works, Sept. 8, 1886 (Paris Text 1971 as amended Sept. 28, 1979)

Cottier/Veron, Concise International and European IP Law

India Copyright Act, 1957

Supreme Court of India in *Canara Bank v Sir Debasis Das & ors*, AIR 2003 Supreme Court 2041

Supreme Court of India in *Uma Nath Pandey & ors v State of of U.P.*, Criminal Appeal No. 471 of 2009

Trade-Related Aspects of Intellectual Property Rights Agreement

William Belanger, *U.S Compliance with the Berne Convention*, 3 Geo. Masan Indep. L. Rev. 373

World Intellectual Property Organization. Guide to the Berne Convention for the Protection of Literary and Artistic Works (1978)

## INTRODUCTION

While the scope of the Proposed Revised Settlement has been narrowed by excluding India, it continues to provide Google with sweeping rights to exploit works of Indian authors/publishers under copyright protection without their express permission/consent, a violation of international and Indian copyright laws. The Proposed Revised Settlement also retains some of the fundamental flaws of the Proposed Original Settlement inasmuch as it (like its predecessor) remains a privately negotiated document which purports to bind a number of authors/publishers who were not given an opportunity to participate in such negotiations, and which if approved by the Court, would grant Google comprehensive rights in the protected works of such authors/publishers. Furthermore, Google has, contrary to principles of natural justice and fair procedure, failed to provide individual notice to the affected parties of the Proposed Revised Settlement.

It is therefore respectfully submitted that the Court should reject the Proposed Revised Settlement with respect to Indian class members for the following reasons:

(i) The Proposed Revised Settlement, continues to violate the provisions of the international treaties, by illegally copying works under copyright protection without the express authorization of the copyright holder, a right guaranteed by the Berne Convention;

(ii) The Proposed Revised Settlement, like its predecessor has been negotiated behind closed doors by five publishers and a few authors on behalf of all affected authors/publishers evincing a complete lack of transparency; furthermore Google's subsequent actions of placating some countries and not others is confusing and discriminatory;

(iii) Google has failed to provide individual notice to authors/publishers affected by the Proposed Revised Settlement, many of whom remain unaware that their rights are affected by the Proposed Settlement Agreement.

## INTEREST OF PARTIES

The objections are brought on behalf of Niyogi Books, IPP Catalogue Publications, Star Publications (Pvt.) Ltd., Pustak Mahal, Unicorn Books Pvt. Ltd, Laxmi Publications Pvt. Ltd., Pragun Publication, Ess Ess Publications, New Century Publication, Daya Publishing House, Arora Law Book Agency, Dr. Sarojini Pritam and Aakar Books, (hereinafter referred to as the "**Parties**"). The Parties submit that they are distinguished authors and/or publishers, who, to the best of their knowledge are class members under the Proposed Revised Settlement as they have works that are either registered with the United States Copyright Office or published in the United Kingdom, Canada or Australia as of January 5, 2009.

Additionally, the Federation of Indian Publishers (hereinafter referred to as "**FIP**"), is the representative body of publishers in India, registered in India as a Society under the Societies Registration Act, 1860. The Indian Reprographic Rights Organization (hereinafter referred to as "**IRRO**") is the sole and exclusive copyright society mandated by the Department of Copyright, Government of India to issue blanket / transactional reprographic usage licenses for foreign and Indian authors and publishers in India. Some of the members of FIP and IRRO are class members and therefore IRRO and FIP are interested in putting forward concerns raised by some of their members on the Proposed Revised Settlement.[1] Professor Ravi Shanker, is an author, but not a class member but is interested is outlining his concerns regarding the Proposed Revised Settlement.

---

[1] Although the IRRO, FIP and Professor Ravi Shanker are not objecting class members, they respectfully request leave to join this brief as amicus curiae.

## ARGUMENTS

### I. THE PROPOSED REVISED SETTLEMENT CONFLICTS WITH U.S TREATY OBLIGATIONS UNDER THE BERNE CONVENTION AND TRIPS; AND IS VIOLATIVE OF INDIAN COPYRIGHT LAW

**The Berne Convention**

The Berne Convention for the Protection of Literary and Artistic Works (hereinafter referred to as the "**Berne Convention**"), is considered to be the world's premier copyright treaty; and represents an international consensus on copyright protection.[2]

The Berne Convention establishes the "*convention minima*"[3], which is the minimum substantive protection that member countries must provide to authors of literary and artistic works. The exclusive rights established under the Berne Convention include the right of reproduction, referred to as the "*essence of copyright*"[4], which provides authors of literary works with the "*exclusive right*"[5] of authorizing the reproduction of such works, in any manner or form. While member countries may establish exceptions to these exclusive rights through domestic legislation. such exceptions must not conflict with the "*normal exploitation of the work*"[6] or "*unreasonably prejudice*"[7] the legitimate interests of the author. The Berne Convention also provides that the enjoyment and exercise of author's rights shall not be subject to any

---

[2] House Report on the Berne Convention Implementation Act of 1988, H.R. Rep. No. 100-609, 100th Cong.. 2d Sess. 27 (1988).

[3] William Belanger, *U.S Compliance with the Berne Convention*, 3 Geo. Masan Indep. L. Rev. 373 at 387.

[4] World Intellectual Property Organization, Guide to the Berne Convention for the Protection of Literary and Artistic Works (1978) at 54.

[5] Article 9 (1), Berne Convention.

[6] Article 9 (2), Berne Convention.

[7] Article 9 (2), Berne Convention.

formality,[8] thus creating an international standard of providing copyright protection to authors without burdening them with unnecessary procedures.

The importance of the Berne Convention has been reiterated time and again by the United States. In fact, the House Report on the Berne Convention Implementation Act of 1988 states that *"the United States, as a leader in the creation and global exploitation of copyrighted works, has a great interest in a strong and viable copyright system"*; further that *"adherence of the United States to the Berne Convention will strongly encourage other countries to adopt and enforce high levels of protection."* [9]

## TRIPS

The Trade-Related Aspects of Intellectual Property Rights Agreement (hereinafter "**TRIPS Agreement**") further strengthens international obligations made with respect to intellectual property rights. Article 13 of the TRIPS Agreement [10] is similar to Article 9(2) of the Berne Convention and further reinforces the commitments made by member countries to protect exclusive rights of authors by providing that limitations/exceptions to exclusive rights can only be implemented if they do not conflict with a normal exploitation of work and must not unreasonably prejudice the legitimate interest of the right holder. In fact, the Report of the panel on US-Copyright Homestyle Exception highlights the importance of this Article by providing that *"limitation or exception in national legislation should be clearly defined and should be narrow in its scope and reach"*.[11]

---

[8] Article 5 (2), Berne Convention.

[9] House Report on the Berne Convention Implementation Act of 1988, H.R. Rep. No. 100-609, (1988).

[10] Article 13, Trade-Related Aspects of Intellectual Property Rights Agreement.

[11] Report of the panel on US-Copyright Homestyle Exception cited in Cottier/Veron, Concise International and European IP Law at 47.

- 4 -

Adherence to the standards established by the Berne Convention, and later the TRIPS Agreement is a commitment by its member countries, including the United States and India to protect and enforce the copyright of all authors, and Google's unilateral actions, if approved, will succeed in overturning the very foundations of international copyright law as it will completely eviscerate the exclusive rights granted by law to the copyright holder and impose unnecessary burdens and procedures on copyright holders, actions which offend the spirit of the international law of copyright.

**Indian Copyright Law**

In India, under the Indian Copyright Act of 1957 (hereinafter "**the Indian Copyright Act**"), copyright subsists in *inter alia*, original literary works.[12] As per the provisions of the Berne Convention, under the Indian Copyright Act, copyright protection arises automatically upon creation of the work and there is no formality of registration required to receive the benefit of copyright protection. Furthermore the Act expressly gives the owner of the copyright in a work, the exclusive right to do certain acts in relation to the copyright work including to *"reproduce the work in any material form including the storing of it in any medium by electronic means"*.[13]

While fair use/fair dealing provisions exist in the Indian Copyright Act, such exceptions are limited [14] and there is no exception for scanning and copying of entire works, thus making scanning and copying of entire works without permission/authorization of the copyright holder, copyright infringement and subject to civil and criminal remedies under the Indian Copyright Act. Google's actions of illegally copying millions of books in which copyright subsists, without the express permission/authorization of the copyright holders, is therefore nothing but copyright infringement and blatant misappropriation of property.

---

[12] Section 13, Indian Copyright Act 1957.

[13] Section 14, Indian Copyright Act 1957.

[14] Section 52, Indian Copyright Act 1957.

- 5 -

Thus the essence of copyright protection is the copyright holder's right to take action to prevent others from violating his copyright.

In addition, Google has retained the opt-out mechanism in the Proposed Revised Settlement, according to which, if a class member remains silent, he is deemed to have accepted the terms of the settlement and is bound by it. This opt-out mechanism, which is contrary to fundamental tenets of copyright law, is an audacious attempt by Google to override established principles of copyright law which requires the express permission of the copyright holder for the grant of exclusive rights.

**Impact of the Proposed Revised Settlement on Indian Authors/Publishers**

The Proposed Revised Settlement brings within its scope all books that have either been registered with the United States Copyright Office or published in United Kingdom, Canada and Australia as of January 5, 2009.[15] While India has been excluded from the countries covered under the Proposed Revised Settlement, the Proposed Revised Settlement continues to impact a number of Indian authors/publishers who fall into the following categories:

i. Indian authors whose works are either registered with the United States Copyright Office or published in United Kingdom, Canada and Australia as of January 5, 2009;

ii. Indian authors/publishers, whose books have already been scanned and included by Google in its database.

---

[15] Under Clause 1.19 of the Proposed Revised Settlement, Book has been defined as "a written or printed work that as of January 5, 2009 (a) had been published or distributed to the public or made available for public access as a set of written or printed sheets of paper bound together in hard copy form under the authorization of the work's U.S. copyright owner, (b) was subject to a Copyright Interest, and (c) (1) if a "United States work," as defined in 17 U.S.C. § 101, was registered with the United States Copyright Office, and (2) if not a United States work, either (x) was registered with the United States Copyright Office, or (y) had a place of publication in Canada, the United Kingdom or Australia, as evidenced by information printed in or on a hard copy of the work".

- 6 -

**Indian authors whose works are either registered with the United States Copyright Office or published in United Kingdom, Canada and Australia as of January 5, 2009**

For this category of authors/publishers, the opt-out mechanism envisaged by the Proposed Settlement Agreement allows Google to scan and copy works without the permission/authorization of the copyright holders, a provision which completely turns copyright/property rights on its head. If approved, it would amount to judicial endorsement for infringers everywhere to copy works under copyright protection without any fear of repercussion.

The only benefit of opting out would be that an author/publisher would retain the right to sue Google for its infringing actions. Google would continue to commercialize even if you opt out. Realistically, this is not a feasible option, especially for a number of authors/publishers who would not be able to afford legal actions in foreign jurisdictions. For Indian authors/publishers, this is essentially no right at all, as most do not have the funds to conduct expensive litigation in foreign jurisdictions.

The Proposed Revised Settlement also continues to impose formalities on authors/publishers by requiring registration of such authors/publishers and their works, and continuous monitoring of the database in order to receive any benefits under the Proposed Revised Settlement, which is arduous and time consuming.

The Proposed Revised Settlement is therefore grossly unfair to such Indian authors as it contradicts the foundation of copyright law as established by the Berne Convection and TRIPS Agreement; and agreed to by signatories including the United States and India.

**Indian authors/publishers, whose Books have already been scanned and included by Google in its database;**

Google has already scanned already scanned over 7 million books for its database[16] without seeking the permission/authorization of the copyright holders. The Revised Settlement Agreement nowhere states that it will delete the databases of the books already scanned, which are no longer covered under the Proposed Revised Agreement.

Thus for this category of authors/publishers, Google will continue using the database of scanned books, which has been acquired without their permission/consent. Furthermore, for copyright owners of works that have already been illegally scanned, Google proposes to pay between $5 and $ 60 for each such work. [17] This is a nominal sum keeping in mind the fact that copyright infringement in the United States carries statutory damages starting at $ 750, which, depending on the circumstances, may be higher.

## II. THE PROPOSED REVISED SETTLEMENT FAILED TO PROVIDE ADEQUATE NOTICE TO INDIAN AUTHORS/PUBLISHERS AND IS THEREFORE CONTRARY TO PRINCIPLES OF NATURAL JUSTICE AS WELL AS FEDERAL RULES OF PROCEDURE

Principles of natural justice are not codified laws but are "*principles ingrained into the conscience of man*" [18], and based "*substantially on natural ideals and human values*".[19] One of the universally recognized principles of natural justice '*audi alteram partem*' includes within its ambit the right of a person to receive notice, which is clear and precise.[20] Principles of natural justice are concerned with

---

[16] Posting of David Drummond, *New chapter for Google Book Search*, available at http://googleblog.blogspot.com/2008/10/new-chapter-for-google-book-search.html.

[17] Clause 2.1 (b) of the Revised Proposed Settlement.

[18] Supreme Court of India in *Uma Nath Pandey & ors v State of of UP.*, Criminal Appeal No. 471 of 2009.

[19] Supreme Court of India in *Uma Nath Pandey & ors v State of of U.P.*, Criminal Appeal No. 471 of 2009.

[20] Supreme Court of India, *Canara Bank v Sir Debasis Das & ors*, AIR 2003 Supreme Court 2041.

procedural fairness, and statutory rules of procedure have incorporated such principles in order to ensure fair and just processes.

Rule 23 of the Federal Rules of Procedure, specifically Rule 23(e)(1) provides for individual notice to all affected parties who can be identified through 'reasonable effort'.[21] Google was well aware of the identity of the copyright holders of books that have already been scanned; and could have, with reasonable diligence, determined the identity of copyright holders of books that are either registered in the U.S or published in UK, Canada and/or Australia and proceeded to send individual notices to such named authors/publishers.

However, efforts by Google to send individual notices to class members have been less than adequate. None of the Parties to this objection have received individual notice of the Proposed Revised Settlement; a fundamental flaw that smacks of unfairness; the individual notice requirement being especially critical for a number of reasons, particularly that the Proposed Revised Settlement is a complex legal document that has serious implications for copyright holders; many Indian authors/publishers are not even aware that their rights are being affected by this settlement and will continue to remain in such ignorance and unknowingly become bound by the terms, without being able to exercise any choice in the matter of use of their intellectual property rights.

### III. THE AGREEMENT NEGOTIATIONS USED TO ARRIVE AT THE PROPOSED REVISED SETTLEMENT LACK TRANSPARENCY; GOOGLE'S SUBSEQUENT ACTIONS ARE CONFUSING AND DISCRMINATORY

---

[21] Rule 23 (c)(2)(B) of the Federal Rules of Civil Procedure which provides that "the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort".

The Revised Proposed Settlement, like its predecessor, was privately negotiated by five publishers and a few authors purporting to represent the entire author and publisher class, as a consequence excluding thousands of potential beneficiaries of the agreement from participation. Reports further suggest that the five publishers negotiating on behalf of the publisher class have already entered into separate agreements with Google[22], which, if true, means that these publishers will not be bound by the terms of the Revised Proposed Settlement. In any event, the Revised Proposed Settlement allows publishers to negotiate separate settlements with Google.[23] This makes the entire negotiation proceedings a sham from the beginning because the negotiating publishers did not represent the interests of thousands of authors/publishers on behalf of whom they have negotiated an agreement, which ultimately is not binding on them.

Google's approach to opposition in different countries is also perplexing. Reports [24] state that Google has apologized to China for its conduct and has promised not to scan any more books without permission of the Chinese authors; no such apology has been forthcoming for authors/publishers of other countries. This conduct inescapably leads to the conclusion Google is interested in responding only where criticisms of its actions have garnered unwanted publicity, while ignoring authors/publishers of other countries. Such discriminatory treatment, apart from showing a complete disregard for transparent negotiations, is unfair and unreasonable.

---

[22] *"Insider Deals for Publishers? Where there's smoke..."*, available at http://www.openbookalliance.org/2009/11/insider-deals-for-publishers-where-there%E2%80%99s-smoke%E2%80%A6/.

[23] Clause 17.9 of the Revised Proposed Settlement.

[24] *"Google sorry for 'poor communication' in China"*, available at http://news.cnet.com/8301-30684_3-10432212-265.html.

- 10 -

## JURISDICTION

It is respectfully stated that these objections are being filed by the Parties without submitting to the jurisdiction of this Court and without prejudice to the legal rights/remedies available to them under Indian law.

## CONCLUSION

For each of the foregoing reasons, it is respectfully requested that the Court grant the following reliefs in favor of the Parties:

(i) Decline to certify the class with respect to Indian authors/publishers and
(ii) Order Google to delete permanently the database(s) of books that have been already scanned insofar as the copyright in such books subsists in favor of Indian authors/publishers.

Respectfully submitted,

Shakti Malik (SHAKTI MALIK, General Secretary, The Federation of Indian Publishers)

Anand Bhushan (ANAND BHUSHAN, Secretary General, Indian Reprographic Rights Organisation)

(RAVI SHANKER, AUTHOR)

*[signature]* (BIKASH DE NIYOGI, PUBLISHER, NIYOGI BOOKS)

*[signature]* (NARESH KHANNA, PUBLISHER, IPP CATALOG PUBLICATIONS)

*[signature]* (AMARNATH VARMA, Publishers, Star Publications (P) Ltd.)

*[signature]* (ASHOK KUMAR GUPTA, PUBLISHER, PUSTAK MAHAL)

*[signature]* (ASHOK KUMAR GUPTA, PUBLISHER, UNICORN BOOKS PVT. LTD.)

R. K. Gupta (RAJINDER KUMAR GUPTA, PUBLISHERS, LAXMI PUBLICATIONS PVT LTD)

*[signature]* (PARMIL MITTAL, PUBLISHER, DRAGUN PUBLICATION)

*[signature]* (SUMIT SETHI, PUBLISHER, ESS ESS PUBLICATIONS)

*[signature]* (SANDEEP SURY, Publisher, New Century Publications)

*[signature]* (ANIL MITTAL, Publisher, Daya Publishing House)

*[signature]* (ROHIT SETH, Publisher, Atlantic Book Agency)

*[signature]* (Dr SAROJINI PRITAM, Author, Authors Guild of India)

*[signature]* (K.K SAXENA, PUBLISHER, AAKAR BOOKS)