

**FEDERACIÓN DE GREMIOS DE EDITORES DE ESPAÑA**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-26-2010
```

January 26, 2010

The Honorable Denny Chin
United States District Judge
Daniel Patrick Moynihan Courthouse,
500 Pearl Street
New York, NY 10007

Fax: + 1 212 805 7906

Re: *The Authors Guild, Inc. et al v. Google Inc.*, Case No. 05 CV 8136 (S.D.N.Y.).

Dear Judge Chin:

My name is Antonio Ma. Avila and I am the Executive Director of the Federación de Gremios de Editores de España

We write to object to the Amended Settlement Agreement. We do not have the resources to provide this Court with legal briefing regarding our objections nor do we wish to burden this Court with duplicative filings. We therefore object to the Amended Settlement Agreement by reference to the observations of Börsenverein des Deutschen Buchhandels, Syndicat National de l'edition and Associazione Italiana Editore, in its amicus curiae letter, which hereby become an integral part of our own objections as filed herewith.

Thank you in advance for your consideration of this letter.

Respectfully yours,

[signature]

cc: Michael J. Boni, Esq.
    Joanne Zack, Esq.
    Jeffrey P. Cunard, Esq.
    Bruce P. Keller, Esq.
    Daralyn J. Durie, Esq.
    Joseph C. Gratz, Esq.

CEA BERMÚDEZ, 44 - 2.º DCHA.
28003 MADRID
TEL.: 91 534 51 95
FAX: 91 535 26 25
E-Mail: fgee@fgee.es
Web: federacioneditores.org

E mail copies to:

- Counsel for the Author sub-class: bookclaims@bonizack.com;
- Counseil for the Publisher sub-class: bookclaims@debevoise.com;
- Counsel for Google: bookclaims@durietangri.com]

P.J. Objections du Federación de Gremios de Editores de España

ALLEGATIONS TO THE NEW AGREEMENT SUBMITTED BY THE FEDERACIÓN DE GREMIOS DE EDITORES DE ESPAÑA.

1. It is very difficult to accurately determine whether or not Spanish publishers are included in the agreement. The problem is that, according thereto, all Spanish books that have been registered with the U.S. copyright office or published simultaneously in Spain and the United States, Canada, United Kingdom or Australia fall within its scope.

   It is very difficult or nearly impossible for Spanish publishers to ascertain beyond a doubt whether their books have been registered with the U.S. copyright office. Until 1978, publishers were advised to register their books with the U.S. office, for otherwise they were devoid of any protection. Google has very likely decided to use this criterion because in the event of claims for infringement, rights holders are only entitled to damages if the book is registered (otherwise they only receive the actual loss).

   Nonetheless, publishers bear an unjust burden if, in the absence of a quick and efficient system, they are obliged to verify whether their works have been registered. That the records prior to 1978 were digitized and published on the Internet by Google only a few weeks ago impedes satisfactory and systematic searches.

   Moreover, the digitization of records and their on-line availability on a date so close to the deadline for objecting, withdrawing from the agreement and so on has generated confusion among rights holders. Many publishers and authors still do not know whether they are affected by the agreement. For all the foregoing, we feel that the criterion used by Google, i.e., that books must be registered for inclusion in the agreement, is open to criticism and should not be applied to Spanish works.

2. The provision in the agreement on determination of "commercial availability" of a work fails to take account of the database of commercialized works. Despite the efforts deployed in this regard, Google has still not agreed to take account of the existing databases of commercialized books.

3. Hence, the danger that Google may create a monopoly of digital book distribution and sales persists.

4. In another vein, it should be made absolutely clear, and the judiciary should be advised accordingly, that if Spanish books are excluded from the new agreement, Google may not use the books already digitized that they intended to include in the first agreement with no explicit authorization from the rights holders. Otherwise, the exclusion from the new agreement would be meaningless and stakeholders would not be entitled to indemnity, which would lead to profoundly unfair discrimination.