# THE **PUBLISHERS** ASSOCIATION



29b Montague Street
London WC1B 5BW
Tel: +44 (0)207 691 9191
Fax: +44 (0)207 691 9199
Email: mail@publishers.org.uk
Website: www.publishers.org.uk

27 January 2010

Office of the Clerk
J. Michael McMahon
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Dear Judge Chin

**The Authors Guild, Inc., Association of American Publishers, Inc., et al. v. Google Inc., No. 05 CV 8136 (DC)**

I am writing in my capacity as Chief Executive Officer of the Publishers Association (PA), which is the leading trade organisation serving book, journal and electronic publishers in the UK. Our core service is representation and lobbying, around copyright, rights and other matters relevant to our members.

The publishing industry in the UK is estimated to be worth in excess of £5 billion; over £1 billion is accounted for annually by exports. The industry publishes around 120,000 new titles annually and sold an estimated 855 million books in 2008. The PA represents roughly 80% of the industry by turnover. We have around 100 members who collectively account for approximately 250 imprints. Our members include consumer trade, children's books, academic, educational and professional publishers.

Books published by the PA's members were included in the original Settlement by virtue of the broad definition of a "Book". Under the revised scope of the Amended Settlement, a "Book" is now explicitly defined as a work "published in the United Kingdom", amongst other criteria. The PA engaged closely with the Parties to the Settlement during the redrafting, in particular our sister organisation, the Association of American Publishers. We also reviewed drafts of the Amended Settlement Agreement before it was filed. The PA was asked whether it would be able to offer its support for the Settlement on the basis of the revised definition of a "Book" and other amendments. Following a vote of our ruling Council, the PA took the decision to broadly support the Amended Settlement Agreement.

This broad support is not unanimous. There are some members, including Hachette UK, who remain opposed. The PA's support is also without prejudice to the positions of individual publishers in the UK which remain reserved. Nevertheless, we considered on balance that the Amended Settlement Agreement offers all UK

# THE PUBLISHERS ASSOCIATION

publishers who wish to remain in it an improved deal. Most significantly, the Amended Settlement gives rightsholders a greater degree of control over their works. It also restricts the circumstances under which a rightsholder's work will be determined to be commercially unavailable, and so offers rightsholders greater security in that regard. It further provides greater representation for UK publishers by guaranteeing that Book Rights Registry Board of Directors will have at least one representative of the Publisher Sub-Class representing the UK.

More broadly, we note that the Settlement avoids a definitive judicial resolution on the legal question of whether Google's scanning is a fair use, where an adverse outcome would have been detrimental to the interests of rightsholders. By remaining in the Settlement, we consider that rightsholders can assert a level of control over their works for which they otherwise might have had to bring a costly and time-consuming suit against Google in the US.

The PA therefore respectfully asks the Court to approve the Amended Settlement Agreement.

Yours sincerely,

*[signature]*

Simon Juden
Chief Executive Officer