**CEDRO**
CENTRO ESPAÑOL DE DERECHOS REPROGRÁFICOS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/28/10

Magdalena Vinent
Directora General
Presidenta de IFRRO

JAN 27 2010

The Honorable Denny Chin
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

2010, January 22nd

**RE: THE AUTHOR'S GUILD ET AL. V. GOOGLE, INC. - CASE NO. 1: 05-CV-08136 (DC)**

Dear Judge Chin:

We respectfully request the court's permission to submit this letter as an amicus curiae brief opposing approval of the Amended Settlement Agreement[1] in the above case.

CEDRO is the Spanish Collective Management Organization, (CMO) which administers the Intellectual Property rights of authors and publishers in Spain. It was authorized for that purpose in 1988 by the Spanish Ministry of Culture and nowadays it has more than 17.000 members

When the Settlement Agreement was first announced in November 2008, CEDRO gave authors and publishers the opportunity to have CEDRO fiduciary administer certain rights under the Settlement Agreement. The vast majority of them chose this option.

CEDRO appreciates that the parties to the case, by restricting the definition of "Book", have excluded many foreign authors and publishers from the scope of the Amended Settlement Class and have thus tried to meet the wish of these rightsholders not to be drawn into a settlement agreement in which they were not represented. Nevertheless, the situation under the Amended Settlement Agreement is:

- Many Spanish authors and publishers still remain in the Amended Settlement Class.

- Even more of them are now left in doubt as to whether they fall into the Amended Settlement Class or not.

The Amended Settlement Agreement provides neither the Spanish authors nor publishers nor collective societies with adequate tools for the clarification of the actual status of a book. Therefore, Spanish authors and publishers still have a legitimate interest in this case, as does CEDRO as fiduciary manager of their rights under the Amended Settlement Agreement.

CEDRO further accepts that at this point in time, objections to the terms of the Amended Settlement Agreement shall be limited to the provisions amended from the original Settlement Agreement. For the purpose of this amicus curiae brief, we shall limit ourselves in the same way. Each of the issues raised below results from the fact that the mechanism

---

[1] Capitalized words in this letter shall have the meaning as defined in the Amended Settlement Agreement.

CEDRO

provided by the Amended Settlement Agreement for limiting the scope of the Amended Settlement Class falls short of effectively narrowing it to an English speaking territory.

### 1.1 Difficulties in distinguishing between amended settlement class members and non-members.

The Amended Settlement Agreement does not provide an adequate test for distinguishing between authors and publishers who are part of the Amended Settlement Class and those who are not. As a CMO, CEDRO is dependent on standardized procedures to keep administration costs down. CEDRO cannot engage in disputes over countless works. The Amended Settlement Agreement therefore jeopardizes CEDRO's service to Spanish authors and publishers to the extent their rights under the Amended Settlement Agreement are concerned. But if authors and publishers were to make use of their rights under the Amended Settlement Agreement themselves, they would face, at least, the same obstacles as CEDRO.

The definition of the Amended Settlement Class turns on the definition of "Book" (cf. Sections 1.13, 1.19 and 1.75 of the Amended Settlement Agreement). The changes made to the definition of Book in the Amended Settlement Agreement were intended to narrow the class to include countries with a common legal heritage and similar book industry practices. However, there remain two significant groups of foreign works which, as a rule, continue to fall within the scope of the definition of Book, as set forth below.

### 1.2 Books registered with the United States Copyright Office

Even if not a United States work, as defined in 17 U.S.C. § 101, any written or printed work published on or before January 5, 2009 is a Book within the meaning of the Amended Settlement Agreement if such work was registered with the United States Copyright Office (Sec. 1.19 (c) (2) (x)).

Until the United States Copyright Act of 1976 came into effect on January 1, 1978, no work would be granted copyright protection in the United States unless registered.

Consequently, a considerable number of Spanish books which reached the United States before 1978 were registered with the United States Copyright Office and therefore fall within the scope of the Amended Settlement Agreement. Numerous Spanish publishers have continued registering their books even after this point as registration is required before a lawsuit for infringement can be filed and as a prerequisite for certain remedies. In practice, the exact number of Spanish books registered is unknown.

For the rightsholders, it is impracticable to research which of their works have been registered, in particular as regards the period before 1978. The information on registrations and documents dating before 1978 is available only on catalog cards which may be inspected during the Copyright Office's opening hours[2]. No online search is available. .. The average author and most for foreign publishers will neither have the financial means to personally visit the Copyright Office nor to have the Copyright Office staff or a private service conduct a search against payment of

---

[2] United States Copyright Office, Circular 23, page 1. See www.copyright.gov/circs/circ23.pdf, visited on January 6, 2010.

**CEDRO**

an hourly fee. They are therefore not able to verify if a work is a Book within the definition of Sec. 1.19 of the Amended Settlement Agreement or not.

The same is true for CEDRO. Its data bases do not include any information as to whether a work was registered with the US Copyright Office or not.

Only recently, Google claimed to have made available online 90 volumes of the Catalog of Copyright Entries it scanned from the Copyright Office Catalog.[3] They appear to be searchable online through Google Books. This only highlights the fundamental problem arising from the Amended Settlement Agreement's approach in defining the Amended Settlement Class. In any case, the search options provided by Google are not suitable for efficient and automated rights clearing.

(a) Rightsholders outside the United States have not been informed of the new search options. Yet the Amended Settlement Agreement holds them responsible for determining whether they are members of the Amended Settlement Class or not.

(b) The new search option came very shortly before the deadline of January 28, 2010 for opting back in or opting out of the Amended Settlement Agreement. Rightsholders were not given sufficient time to check their data.

(c) There is no link from the data base of Copyright Entries to any data base of Digitized Books.

(d) It is not possible to run automated searches in the data base of Copyright Entries and automatically match search results with any other data base, e.g. a publisher's or a collecting society's data base.

(e) Spot checks have revealed that the quality of the data base of Copyright Entries is poor. Misspellings occur.

1.3 **Works published in Canada, the United Kingdom or Australia**

Under Sec. 1.19 (c) (2) (y) of the Amended Settlement Agreement, even if the work is not registered with the United Copyright Office it is still a Book provided that it had a place of publication in Canada, the United Kingdom or Australia. According to the Amended Settlement Agreement, this shall be

> "evidenced by information printed in or on a hard copy of the work..."
>
> ... include for example, a statement that the Book was "published in Canada, the UK or Australia," or the location or address of the publisher in one of those three countries."

These criteria are so vague that there will innumerable cases of doubt in which Google and the rightsholder may argue either way.

---

[3] See http://books.google.com/googlebooks/copyrightsearch.html, visited on January 20, 2010.

**CEDRO**

2. **Continued discrimination against Spanish Rightholders.**

It has been shown that a significant number of Spanish authors and publishers remain within the scope of the Amended Settlement Class and a possibly even greater number of Spanish rightsholders are forced to give attention to the Amended Settlement Agreement due to the uncertainties of whether they are part of the Amended Settlement Class or not. Therefore, the systematic exclusion of Spanish representatives and the disregard of Spanish rightsholders' needs raise further concerns.

2.1 **Lack of Spanish translation of the Amended Settlement Agreement**

The Amended Settlement Agreement is available in English only. It is a complex 150-page legal document and therefore even someone fluent in everyday English as a foreign language will not be able to grasp all relevant details or to discuss these with legal counsel of his or her choice. Under these circumstances, the lack of an official Spanish translation amounts to an intolerable discrimination of Spanish authors and publishers.

2.2 **No proper representation of non-English speaking Rightsholders**

It is equally discriminating that according to Sec. 6.2 (b) (ii), the Board of Directors of the Books Rights Registry shall be made up of at least one representative from the United States, Canada, the United Kingdom and Australia for each of the Sub-Classes, ignoring any other nation which may account for a significant proportion of either Sub-Class.

3. **Prohibition of using works non-included in the Amended Settlement Agreement**

The Amended Settlement Agreement does not expressly state any specification to make clear that any use of the works excluded from the Amended Settlement Agreement shall need the express consent of their rightholders or the relevant CMO.

**CONCLUSION**

CEDRO therefore requests the Court to deny final approval of the Amended Settlement Agreement unless the following amendments are made:

(a) Google is required to provide, free of charge, a data base containing all Books, as defined in Sec. 1.19 of the Amended Settlement Agreement, written by Spanish authors or published in Spain. Such data base shall be for reference purposes only and the rightsholders should retain the right to prove that a work included in the data base is not a Book within the meaning of Sec. 1.19 of the Amended Settlement Agreement.

(b) Google is required to provide, free of charge, a Spanish translation of the Amended Settlement Agreement which is as authoritative as the English version.



(c)   Sec. 6.2 (b) (ii) of the Amended Settlement Agreement is further amended to include at least one Spanish representative of the Author Sub-Class and one Spanish representative of the Publisher Sub-Class, or, alternatively, to include at least one Spanish representative if Spain accounts for at least 5 % of the Rightsholders.

(d)   The Amended Settlement Agreement shall state an express specification to make clear that any use of the works excluded from the Amended Settlement Agreement shall need the express consent of their Rightholders or their relevant CMO.

Respectfully Submitted

Madgalena Vinent Gener

C.E.O. of CEDRO