05-cv-8136

18 Jan 2010

To Boni & Zack LLD
& copies to J M McMahon, Clerk
(J M McMahon, Clerk, US District Court SDNY)

This is a response & some objections on Amended Settlement (Google Book), provided before deadline of 28 Jan 2010.

I assume by receiving the Amended that 1 am on record as opted in. I am an author with 5 books of yet unknown status. I have studied some of the enormous Settlement & find it more complex than a book contract. You seem to have covered many bases for authors at the expense of:we will never catch all the ins & outs. I am still trying to crack how to find whether Google co pied any of my books before 2009. On 30 Aug 2009 1 sent a page of my concerns & objections to 3 parties, & a few of those seem to have been worked on.

This time 1 note for you: (by Summary number)
1 struggled with what "display" means & assume a broad def. of books has been un-clarified. I think two gen- eral digital formats exist for text: as a picture page by page (PDF), and as fully digitized characters. Picture form is less easily misused & content cannot be tinkered with or corrupted. It makes huge files & can be printed, as pictures of pages only. Digitized text allows full searches & tinkering. It can be searched, legitimate uses, but also to locate & persecute the writer (yes those with hostile motives will discover this). writers need control over these paths.

8 Commitment to maintaining registry & library must be perpet- ual & fully responsible, regardless of what happens to Google. & Allowing other companies to sell our books for our benefit is only fair, but the more actors, the more chance for slipups. 14- unclear whether rightsholder can set whatever price 18- good that pictorial works are books, including ones composed basically of graphic art of photographs, but then what is the Confusing rules that the illustrations in a book are "insert" not covered? Aside from who owns inserted pictures, have you asked all this settled clearly in favor of authors? — strong objection to apparent exclusion of music books (books containing mainly musical scores). Music publishers should be asked if they want protection. Many serious scholarly books exist which are a mix of discussion & scores. These books are read in textual & musical language, & played from. These de- serve proper dissemination & protection, & many are difficult to find now. Electronic display of scores will be increasing (as pictures or other file methods).
—Thus Settlement must look ahead to new media & m ethods to come that will use already published material, both to protect & to make more widely available.
—some "inserts" are short musical scores; many illustrations were arranged for one-time publication in a book & all owners cannot be traced or renegotiated.

---

From John Mauldin, 858 Sequoya
PuebloWest CO 81007; 719-547-2739

Page 2 of comments & objections on Amended Google Settlement 18 Jan 2010, to Boni & Zack, copies to McMahon,clerk, & Durie et al

I tried but failed to limit to ½ page. I have showed some of the confusions a partially digitally literate author might encounter, & one partially experienced with publishing.

I have talked with two experts on computer files, scanning, & printing, and cannot clear up all confusion here. You must check my comments with your experts. On the website and in th summaries of settlement 1 cannot find clear information on digital files of text. (PDF & other files seems to be some- times only pictures of text, other times character codes are there in more-or-less accessible form.) Is Google doing the next step beyond pictures of text and interpreting^ in Pixels those pages as characters & words? This is the only way books can be internally searchable for any words, and the process of back-conversion is never perfect, leaving a variety of errors and the impossibility of ever printing that searchable text on screen or on paper as 100% perfect near-resemblance to the original book. Lawyers, authors, publishers need to ponder the significance of this.

In 1990s publishers began shifting to digital files to pro- duce books, therefore searchable text. Is Google obtaining these? Surely they must pay highly for such files before be- coming a new publisher/seller. *

I assume, without any evidence yet, that Google has provided a list of all books copied before 2009, which may be on websi & at least you have. The Settlement sets rules for all books after 2009(?). Are you aware that Google is copying a truck- load of books everyday from Stanford? Are they entering all those in a list?  Are they avoiding all books which might b in print & owned by someone? How do they know what they can sc. In the discussion of "snippet display" 1 could deduce that (a) Google can word-search books, and (b) any user can see 4 lines of text freely from a book that a word-search found. (Good luck to scholars; this will rarely yield useful result)

My experts alerted me to whether "digital signatures" & oth Security measures are to be used to keep control of property. USDC SDNY details like this in Settlement, only a mention of DOCUMENT Thanks for your attention & indulgence. hours to do &
ELECTRONICALLY FILED          can't see typing
DOC #:                        John H. Mauldin
DATE FILED: 1/28/10           858 E. Sequoya Drive
                              Pueblo West, CO 8100

*note: authors & users might assume someone buying a book as digital file or print-out will obtain a product resembling the original; there are many ways they could be deceived.