UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
THE AUTHORS GUILD, INC., ASSOCIATION :
OF AMERICAN PUBLISHERS, INC., et al., :
                                        Plaintiffs, :
                                         :       No. 05 Civ. 8136 (DC)
             v. :
GOOGLE INC., :
                                    Defendant. :
-------------------------------------------------------------- X

# SUPPLEMENTAL OBJECTIONS OF ARLO GUTHRIE, JULIA WRIGHT, CATHERINE RYAN HYDE, AND EUGENE LINDEN TO THE AMENDED CLASS ACTION SETTLEMENT AGREEMENT

DEVORE & DEMARCO LLP
Andrew C. DeVore (AD - 3511)
Amin Kassam (AK - 7860)
99 Park Avenue, 16th floor
New York, New York 10016
(212) 922-9499

*Attorneys for Class Members Arlo Guthrie, Julia Wright, Catherine Ryan Hyde, and Eugene Linden*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii
PRELIMINARY STATEMENT ..................................................................................................... 1
STATEMENT OF FACTS .............................................................................................................. 2
I.   PROCEDURAL BACKGROUND ....................................................................................... 2
II.  THE THIRD AMENDED COMPLAINT ............................................................................ 3
III. THE AMENDED SETTLEMENT AGREEMENT .............................................................. 3
   A.   The Amended Class Definition.................................................................................. 3
   B.   Future Exploitation of Authors' Works ..................................................................... 4
   C.   Competition-Related Amendments............................................................................ 4
   D.   New Representations Regarding the Google Books Database .................................. 5
OBJECTIONS................................................................................................................................... 5
I.   THE AUGMENTED GROUP OF NAMED AUTHOR PLAINTIFFS
     FAILED TO REPRESENT ADEQUATELY
     CRITICAL INTERESTS OF THE AUTHOR SUB-CLASS ............................................... 5
   A.   The Addition of New Authors Lacking Significant Trademark Interests Cannot Cure
       The Impermissibly Broad Release of Claims Under the Proposed Settlement .................. 6
   B.   The Continued Devaluation of Inserts Demonstrates Both that
       The Named Author Plaintiffs Inadequately Represented the Author Sub-Class and
       The Need for Insert Authors to be Represented as a Separate Sub-Class ......................... 7
   C.   The Named Author Plaintiffs Failed to Represent Adequately Authors' Interests
       In Regards to Non-Display Uses of Their Works .............................................................. 9
II.  AMENDMENTS TO THE AGREEMENT IMPERMISSIBLY RELEASE CLAIMS NOT
     ASSERTED IN THE COMPLAINT AND CLAIMS AS TO FUTURE CONDUCT ......... 10
III. AMENDMENTS TO THE AGREEMENT UNDERSCORE THE UNFAIRNESS OF
     CERTAIN ASPECTS OF THE SETTLEMENT TO AUTHORS....................................... 11
   A.   The Revisions to the Agreement to Address Antitrust Concerns
       Fail to Protect Authors from Potential Discrimination by Google .................................. 12
   B.   Despite a Commitment to Correct Identified Errors, the Google Books Database
       Remains Critically Flawed and Should Be Corrected Before Approval ......................... 13
CONCLUSION................................................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................................ 8

*Authors Guild, Inc., et. al. v. Google, Inc.*,
    No. 05 Civ. 8136 (DC) ....................................................................................................... 1

*Boucher v. Syracuse Univ.*,
    164 F.3d 113 (2d Cir. 1999) ............................................................................................... 9

*In re Joint Eastern and Southern Dist. Asbestos Litig.*,
    982 F.2d 721 (2d Cir. 1992) ............................................................................................... 9

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ........................................................................................... 7, 11

*Reed Elsevier v. Muchnick*,
    129 S. Ct. 1523 (2009) .................................................................................................. 4, 8

Class members Arlo Guthrie, Julia Wright, Catherine Ryan Hyde, and Eugene Linden (the "Objecting Authors"), by their attorneys DeVore & DeMarco LLP, respectfully submit these Supplemental Objections to the amended class action settlement agreement reached in *The Authors Guild, Inc., et. al. v. Google, Inc.*, No. 05 Civ. 8136 (DC) (the "Amended Agreement"). As required by the Court's orders of November 18 and December 1, 2009, these objections are limited to changes in the Amended Agreement and supplement the objections and proposed solutions filed by the Objecting Authors to the original settlement agreement on September 2, 2009 (the "Objections").

## PRELIMINARY STATEMENT

The Google Books Settlement as amended remains a remarkable attempt to use the vehicle of class-action law to define the market for the exploitation of authors' works in the digital world. In doing so, the settlement would grant Google extraordinary and unequalled rights to exploit and generate revenue from a digital database of some substantial portion of the world's English-language works. While the settlement may provide a public good, the Objecting Authors continue to believe that absent further modification any such benefit would come at a disproportionate and unfair cost to authors.

The amendments to the proposed settlement – addressed principally to concerns raised by the Department of Justice and foreign rightsholders – fail to address critical objections raised by the Objecting Authors and other author class members. The Objecting Authors thus are constrained to supplement and reiterate certain of their prior objections in light of those amendments: *First*, as explained below, the addition of four foreign named authors does not change the fact that, collectively, the named author plaintiffs ("Named Author Plaintiffs") failed to represent adequately the interests of other members of the Author Sub-Class. *Second*, the Amended Agreement impermissibly authorizes future exploitations of authors' works and

releases claims never alleged in any complaint in this action. *Third*, amendments designed to address anti-competitive aspects of the settlement fail to address authors' legitimate concerns about potential discrimination against them by Google. *Finally*, while Google has made a modest commitment to improve the claiming process and correct errors in the Google Books Database, continuing fundamental problems with the Database demonstrate the need for the Court to require Google to correct the Database *before* approving the Settlement.[1]

## STATEMENT OF FACTS

I. PROCEDURAL BACKGROUND

Plaintiffs filed their first complaint on September 20, 2005, alleging copyright infringement arising out of Google's unauthorized scanning of millions of copyrighted books, inserts, and lyrics. Google continued to scan copyrighted works without authorization, has already scanned many millions of works, and is projected to scan many millions more. (DeVore Decl. ¶ 2, Ex. A.)[2] Plaintiffs filed a Second Amended Complaint along with a Settlement Agreement on October 28, 2008. The Court preliminarily approved that settlement and set May 5, 2009, as the date to file objections or opt-out. In response to concerns raised by the Objecting Authors and others, however, the Court extended that deadline to September 4, 2009. Over the course of the following several months, the Court received over five-hundred submissions, the great majority raising fundamental objections to the proposed settlement. The U.S. Department of Justice's Antitrust Division opened its own investigation and filed a Statement of Interest on September 18, 2009. In the face of this overwhelming opposition, the parties requested and the Court approved a further extension to allow them time to fix at least some of the settlement's

---

[1] Purely for the Court's convenience in considering the full range of their objections, the Objecting Authors have attached their prior Objections as Exhibit 1 to these Supplemental Objections.
[2] All citations to Declarations refer to the Declarations filed in support of the Objections except for the Supplemental Declaration of Catherine Ryan Hyde ("Suppl. Hyde Decl."), attached as Exhibit 2.

2

flaws. The parties thereafter filed the Third Amended Complaint ("TAC") and Amended Agreement, which the Court preliminarily approved on November 19, 2009.

## II. THE THIRD AMENDED COMPLAINT

The only significant change in the TAC is the inclusion of additional Representative Plaintiffs from the United Kingdom, Canada, and Australia, among them authors Maureen Duffy, Daniel Jay Baum, Margaret Drabble, and Robert Pullan. These new authors collectively have published approximately 100 works, most of which are out of print. Even with four new authors, the handful of Named Author Plaintiffs still plainly represent only a minute fraction of the millions of authors whose works Google has already scanned and whose rights will be fundamentally affected by the settlement.

Like the first and second complaints, the TAC is grounded solely in copyright infringement and seeks relief relating only to copyright infringement. (TAC ¶¶ 63-79.) Nowhere, in any complaint, do plaintiffs allege such claims as trademark infringement, other Lanham Act violations, state law publicity rights, tortious interference with contract, *prima facie* tort, unfair competition, or any other tort or statutory violation.

## III. THE AMENDED SETTLEMENT AGREEMENT

The Amended Agreement left untouched most of the flawed provisions to which the Objecting Authors objected to in the prior version, and the Objecting Authors continue to object to those provisions. In conformance with the Court's orders, these Supplemental Objections focus on the flaws apparent in or impacted by changes to the settlement.

### A. The Amended Class Definition

In the face of overwhelming global opposition, the Amended Agreement narrows the class of plaintiffs to Rightsholders in Books or Inserts either registered with the United States

3

Copyright Office or published in Canada, the United Kingdom, or Australia. (ASA § 1.19.) Even with this change, however, the settlement still would grant Google perpetual rights in most of the world's English-language works.

The Amended Agreement also narrows the definition of "Inserts" to exclude all such works that have not been separately registered with the U.S. Copyright Office. (ASA § 1.75). This Amendment may have dramatic consequences for authors who have numerous unregistered Inserts, particularly in light of the question now pending before the Supreme Court in *Reed Elsevier v. Muchnick*, 129 S.Ct. 1523 (2009), as to whether such unregistered rights holders *should* be eligible to participate in class action settlements for copyright infringement such as this one.

B. Future Exploitation of Authors' Works

The amendments also would permit Google and the Books Right Registry to exploit works through three Additional Revenue Models: Print on Demand, File Download, and Consumer Subscription Models. (ASA § 4.7.) No such exploitations are alleged or even remotely suggested in any complaint. And rather than electing to opt into those exploitations, authors must affirmatively inform Google of their desire to exclude works from these revenue models. (*Id.*) Moreover, the Amended Agreement would grant the Books Right Registry the right to license Rightsholders' U.S. copyrights to any third party "to the extent permitted by law." (ASA § 6.2(b)(i).)

C. Competition-Related Amendments

The revisions to address anti-competitive aspects of the settlement appear to respond principally to concerns raised by the Department of Justice. (*See, e.g.,* ASA §§ 3.8(a), 4.2(a)-(c), 4.5(a)(iii).). Those revisions do not address authors' legitimate concern that Google

will use its enhanced market power to discriminate against them in search rankings and other ways, while stripping them of any legal right to challenge such discrimination.

D. New Representations Regarding the Google Books Database

The Amended Agreement now includes a promise by Google to "use reasonable commercial efforts to correct errors in the Books Database as Google discovers such errors or as they are identified to Google." (ASA § 13.3.) It also includes a brand-new disclaimer, however, that although countless works from around the globe are now contained in the Database, their presence in the Database does not mean that they are "Book[s] within the meaning of Section 1.19 (Book)." (ASA § 3.1(b)(ii).)

## OBJECTIONS

I. THE AUGMENTED GROUP OF NAMED AUTHOR PLAINTIFFS FAILED TO REPRESENT ADEQUATELY CRITICAL INTERESTS OF THE AUTHOR SUB-CLASS

The *post-hoc* inclusion of four authors from the United Kingdom, Canada, and Australia did not – and could not possibly – address the objection that the Named Author Plaintiffs failed to represent adequately core interests of other members of the Author Sub-Class and agreed to terms that unnecessarily and unfairly impair authors' rights and interests. As Plaintiffs' supporting memorandum concedes, these new foreign authors were added to correspond with the Amended Agreement's limitation of the class of Rightsholders to authors in the U.S. and those three countries. (Mem. in Support of Prelim. Approval at 3.) Like the other Named Author Plaintiffs, the add-on authors do not appear to have any of the critical interests relinquished under the prior agreement, and the provisions undermining those interests remain largely unchanged.

Under Federal Rule of Civil Procedure 23(a)(4), class representatives must "fairly and adequately protect the interests of the class." (*See* Obj. at 10 (noting that a critical adequacy

5

concern is whether a class representative has an interest that conflicts with the rest of the class, as determined through close inspection of the proposed settlement).) Here, notwithstanding the addition of four new authors, the terms of the proposed settlement demonstrate that the Named Author Plaintiffs failed to represent adequately the interests of the Author Sub-Class by (1) improperly releasing valuable trademark and other claims, (2) unfairly undervaluing Inserts, and (3) failing to compensate authors for the Non-Display Uses of their works.

> A. The Addition of New Authors Lacking Significant Trademark Interests Cannot Cure the Impermissibly Broad Release of Claims Under the Proposed Settlement

Despite multiple opportunities, Plaintiffs have never alleged claims for anything but copyright infringement. (TAC ¶¶ 63-79.) Yet the Amended Agreement again purports to release "each and every Claim of every Rightsholder that has been or could have been asserted in the Action against any Google Releasee (including all Claims of copyright infringement, trademark infringement, or moral rights violation)." (ASA §§ 10.1 (b), (d), (f), (h), (j), 10.2(a).) That ungrounded and overbroad release strips authors of any ability to protect against damaging future uses of their intellectual property by bringing, for example, trademark, right of publicity, non-disparagement, or tortious interference claims.

As before, that overbroad release may not have raised substantial concerns for the four new authors, who appear to have no demonstrable trademark interest in their works. As demonstrated in the Objections, however, this is not the case for many other authors, who have licensed their works for movies, television programming, charities, and other uses, and have developed substantial trademark and other corresponding rights never at issue in this case. (*See, e.g.,* Hyde Decl. ¶¶ 3, 4(f); Leslie Decl. ¶ 4(d).) The substantial overbreadth of this release alone demonstrates that the Named Author Plaintiffs "had no incentive to maximize the recovery" for those claims, *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d

768, 801 (3d Cir. 1995), and failed to represent those claims adequately on behalf of the Objecting Authors and other absent class members.

    B.    The Continued Devaluation of Inserts Demonstrates Both that the Named Author Plaintiffs Inadequately Represented the Author Sub-Class and <u>The Need for Insert Authors to be Represented as a Separate Sub-Class</u>

The Amended Agreement continues unfairly to disadvantage Insert authors relative to Book authors. That substantial disparity underscores the Objecting Authors' objection that Insert authors have not been adequately represented, and suggests that Insert authors require representation as a separate sub-class.

As the Objecting Authors have previously demonstrated, the proposed settlement substantially undervalues the rights of Insert authors. For example, Insert authors may only Exclude their works from all, but not less than all, Display Uses, (ASA § 3.5(b)(i)), a Hobson's choice that if taken would deny Insert authors the principal benefits of remaining in the settlement of increased exposure for and revenue from their works. Insert authors also cannot exclude their works from sales by Google if the author of the Book containing those works agrees to such sales, (ASA § 3.5(b)(i)), and receive *no revenue at all* from advertising against their works. (ASA, Attach. C § 2.3.) Rather, Insert authors are consigned to accept $15 for Google's past infringement of their works, and a small Inclusion Fee of "no less than US $50 per Entire Insert and US $25 per Partial Insert" solely for future subscription uses of those works, *subject to a cap of $500 for all uses ever*. (ASA, Attach. C § 1.2.) Yet authors like Catherine Ryan Hyde and Eugene Linden command as much as $1,000 or $1,500 for the inclusion of just one of their works in a larger work. (Hyde Decl. ¶ 4(d); Linden Decl. ¶ 3(d).) The continuing dysfunction of the Google Books Database compounds these disparities, making it difficult to determine which works are included as Inserts and Partial Inserts, and nearly impossible for

7

authors with many Inserts to make even the initial determination of their rights and remedies for either past infringement or future uses of their works. (*See* Suppl. Hyde Decl. ¶ 6(c).)

The Amended Agreement's revised definition of Inserts further erodes the rights of Insert authors. While the prior Agreement included as Inserts all United States works "covered by" a copyright registration, (SA § 1.72), Inserts are now limited to works that are either independently registered or excerpted from another registered work. (ASA § 1.75.) As a result, the vast array of unregistered Inserts contained in Books – all of which still appear to remain subject to commercial exploitation by Google – are no longer "Inserts" under the terms of the Amended Agreement, (*see* Suppl. Hyde Decl. ¶ 6(d)), and their authors will receive no compensation whatsoever for their past or future infringement. This alteration is particularly troubling given that the Supreme Court could well conclude, in *Reed Elsevier v. Muchnick*, 129 S.Ct. 1523 (2009), that authors of such unregistered Inserts *should* be allowed to participate in precisely such class action settlements for copyright infringement.

Taken together, these substantial disparities suggest a conflict inherent in the basic structure of the settlement that should be remedied by the creation of a new sub-class to represent the interests of Insert authors. Adding a new named plaintiff who has authored Inserts cannot remedy this problem. Where the interests of sub-groups within a class are so demonstrably antagonistic, that conflict cannot be resolved simply by including among class representatives individuals who are members of each sub-group. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 627 (1997) (holding that class representation was inadequate in part because "[a]lthough the named parties alleged a range of complaints, each served generally as a representative for the whole, not for a separate constituency."). Rather, this conflict suggests an imperative to create a sub-class for Insert Rightsholders tasked solely with representation of the

distinct interests of that group. *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118-19 (2d Cir. 1999) (potential conflict between women interested in playing varsity softball and those interested in playing varsity lacrosse in a Title IX action necessitated division of class into separate sub-classes); *see also In re Joint Eastern and Southern Dist. Asbestos Litig.*, 982 F.2d 721 (2d Cir. 1992). Because the Amended Agreement remains fundamentally unfair to Insert authors, the Objecting Authors request that the Court require the creation of a sub-class of Insert authors to protect their specific and distinct interests.[3]

      C.      The Named Author Plaintiffs Failed to Represent Adequately
Authors' Interests in Regards to Non-Display Uses of Their Works

The addition of new Named Author Plaintiffs also cannot cure plaintiffs' failure to represent authors' interests adequately by granting Google unfettered control over Non-Display Uses of their works without regard for the tremendous value to be derived from, and risks associated with, such uses. As explained in the Objections, such uses are at the very core of Google's powerful revenue engine, which produced $5.5 billion in total revenue in the first quarter of 2009, 97% of which was derived from advertising and much of that through the lucrative *but "non-display"* AdWords program. (Obj. at 7-9, 12-13; DeVore Decl. ¶ 5.) Yet nothing in the Amended Agreement precludes Google from, for example, using authors' trademarks as AdWords, analyzing the entire works of an author and selling those analytical results to third-party behavioral advertisers, or analyzing and selling demographic information regarding who is reading which works by what authors or relating to which subjects. (*See* Obj. at 20; Hyde Decl. 4(f); Wright Decl. 3(c).) Compounding this problem is the fact that the agreement would strip authors of any right to sue Google for any reason in connection with such uses. (*See* ASA §§ 10.1, 10.2.) Book authors' only recourse as to Non-Display Uses is to

---

[3]     *See* Suppl. Obj., App. A ¶ 1(Proposed Solution 9).

Remove their works entirely from GBS. (ASA §§ 2.1, 3.5(a).) That option is not available at all to Insert authors and may be illusory for Book authors as well, since nothing in the Agreement dictates that removal shall prevent Google from making Non-Display Uses of an author's Book. (*See* Obj. at 18; ASA § 1.124.) Even that limited Removal right disappears entirely on March 9, 2012. (ASA § 3.5(a)(iii).)

The fact that authors will receive no compensation whatsoever for lucrative Non-Display Uses, have marginal or no tools to prevent such uses, and shortly will be prohibited entirely from doing so demonstrates plainly that the Named Author Plaintiffs failed to grasp and represent adequately authors' interests relating to such uses.

II. AMENDMENTS TO THE AGREEMENT IMPERMISSIBLY RELEASE CLAIMS NOT ASSERTED IN THE COMPLAINT AND CLAIMS AS TO FUTURE CONDUCT

The Amended Agreement's overbroad release of claims not asserted in the complaint and claims as to future conduct continues to dangerously undermine the rights of class members. Like the prior agreement, the Amended Agreement requires class members to release "each and every Claim of every Rightsholder that has been or could have been asserted in the Action against any Google Releasee (including all Claims of copyright infringement, trademark infringement, or moral rights violation)" that arises out of uses of authors' works. (ASA § 10.1(f).) Remarkably, the Amended Settlement would further *widen* the scope of unalleged conduct, providing that the Books Right Registry may license authors' U.S. copyrights to any third party "to the extent permitted by law," (ASA § 6.2(b)(i)), and cement Google's right to exploit those works through Print on Demand, File Download, and Consumer Subscription Revenue Models. (ASA § 4.7.) No claim other than copyright, and no such future exploitation, was ever alleged in any one of the three complaints filed in this action.

The overbroad release of unalleged claims and claims as to future conduct are not only harmful to authors; as set forth in the Objections, they are impermissible under well-established law. (*See* Obj. pp. 13-16.) Accordingly, the Objecting Authors reassert their objection to the release of unalleged claims and claims as to future conduct and request that the Court limit any such release to claims and conduct alleged in the TAC.[4]

III. AMENDMENTS TO THE AGREEMENT UNDERSCORE THE UNFAIRNESS OF CERTAIN ASPECTS OF THE SETTLMENT TO AUTHORS

As set forth in the Objections, in considering whether to approve any proposed class action settlement the court must determine whether the settlement is fair, adequate, and reasonable to class members. (Obj. at 16.) A settlement that "benefits certain groups of the class more than others suggests that the district court did not adequately discharge its duties to safeguard the interests of the absentees." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 808-10 (3d Cir. 1995) (reversing approval of class settlement because proposed agreement was unfair to certain segments of class). Moreover, the right to opt out "does not relieve the court of its duty to safeguard the interests of the class and to withhold approval from any settlement that creates conflicts among the class." *Id.* 55 F.3d at 809.[5]

The Objections demonstrated that certain aspects of the Amended Agreement are unfair to authors and should not be approved. (*See* Obj. at 16-24.) As set forth below, the Amended Agreement compounds those concerns by failing either to (1) protect authors from potential discrimination by Google or (2) correct fundamental problems with the Google Books Database.

---

[4]  *See* Obj., App. A ¶ 1 (Proposed Solution 1).
[5]  Opting out also simply is not a viable solution for a majority of authors, who have neither the resources to take on Google nor the desire to miss out on the potential benefits of the unique exposure that Google alone can offer for their works or the compensation potentially available under the agreement.

A. The Revisions to the Agreement to Address Antitrust Concerns
Fail To Protect Authors from Potential Discrimination by Google

The settlement would cement Google's dominance in Internet search, and in the market for book search in particular. (*See* Obj. at 22.) Yet the revisions to the Amended Agreement designed to address antitrust concerns, (*see, e.g.,* ASA §§ 3.3, 3.8, 4.2, 4.5), fail entirely to address authors' critical fear that Google might use that power to discriminate against authors who choose to opt-out, Remove or Exclude their works, or otherwise comment on or take issue with the settlement – now or at any time in the future. Absent an express prohibition, such authors are particularly concerned that Google could abuse its position as the dominant search engine – and likely exclusive book search engine – by lowering them and their works in search results such that they are effectively eliminated from public view. (*See* Obj. at 23, Wright Decl. ¶ 3(f).) This concern is particularly acute for authors who sell their works through their own websites or other on-line platforms. (*See, e.g.*, Hyde Decl. ¶ 2; Linden Decl. ¶ 2; Guthrie Decl. ¶ 2.) Moreover, because Google's search algorithms are confidential, authors will have little way to discover and even less ability to prove that they have been discriminated against in this manner.

Any such action by Google to use its market power to discriminate against authors and alternative distribution platforms in this way constitutes anticompetitive conduct prohibited under Section 2 of the Sherman Act. (Obj. at 22-23.) In order to prevent such discrimination, the Objecting Authors request that the Amended Agreement include an express provision that precludes Google from altering its web search or AdWords algorithms in a manner that discriminates against authors.[6]

---

[6] *See* Obj., App. A ¶ 6 (Proposed Solution 6).

B.  Despite a Commitment to Correct Identified Errors, the Google Books Database Remains Critically Flawed and Should Be Corrected Before Approval

As described in the Objections, authors have found the Google Books Database to be "remarkably burdensome, time-consuming, and frustrating." (*See* Obj. at 24; Hyde Decl. ¶ 4(b); Linden Decl. ¶ 3(e); Wright Decl. ¶ 3(g); Leslie Decl. ¶ 4(e).) The Amended Agreement's new disclaimer that "[t]he inclusion of a work within the Books Database does not, in and of itself, mean that the work is a Book within the meaning of Section 1.19 (Book)," (ASA § 3.1(b)(ii)), exacerbates the severe problems already identified. With a database teeming with national and international works – many now likely excluded under the narrowed scope of the agreement – that disclaimer leaves authors no way of knowing whether entries in the Database qualify as "Books" under the settlement or how much they might be paid either for past infringement or future exploitations of their works. As a matter of fundamental fairness, authors should not be forced to opt in or out of the settlement without the ability to understand fully and effectively these basic issues.[7]

Moreover, Google's new commitment to "use reasonable commercial efforts to correct errors in the Books Database as Google discovers such errors or as they are identified to Google," (ASA § 13.3), does not address this concern. *First*, the amendment does not even obligate Google – with its demonstrated technical prowess as the creator of the world's most popular Internet search engine – to fix basic defects in the Database. Instead, Google has promised to make some effort to fix problems it either is alerted to or stumbles upon, leaving untold numbers of holes and inaccuracies in the Database and placing authors in the untenable position of using a defective tool to attempt to police their own works and spend valuable time and resources pushing Google to fix the errors it has created.

---

[7] *See* Suppl. Obj., App. A ¶ 2 (Proposed Solution 10).

*Second*, the commitment itself is remarkably vague and shallow. "Commercially reasonable" is not defined, and there is no general obligation to correct the Database, no timetable for correcting identified errors, and no enforcement mechanism. Yet the innumerable errors in the Database may have profound consequences for authors. In just one example, an error in publication date could make a work appear to be in the public domain and thus available for display without compensation to the author.

*Third*, authors' recent attempts to utilize the Database demonstrate that it remains deeply and unfairly flawed notwithstanding Google's modest new promise. For example, on top of defects already documented, (*see* Hyde Decl. ¶ 4(c)), when Catherine Ryan Hyde searched for her works on January 6, 2010, she found forty-two works. (Suppl. Hyde Decl. ¶ 6(b).) The next day, *eight* of those works were missing. (*Id.*) The Database also listed four editions of her work *Electric God* – works that have been out of print for years – as commercially available. Furthermore, at least five works previously *claimed* by Ms. Ryan now show "Catherine Ryan Hyde" as their *title*. When Ms. Ryan clicked on those entries in an attempt to determine what they were, she received notice from Google that the entries may be Inserts and that it is her obligation to provide the Registry with identifying information so that the Registry might contact her "if a potential match is found." (*Id.* at ¶ 6(c).) As the author of numerous Inserts, that notice leaves Ms. Ryan utterly unable to determine which of five works identically titled "Catherine Ryan Hyde" correspond with any of her works. (*Id.*) Moreover, even after Ms. Hyde put Google on express notice in September 2009 of the fact that the Database lists her incorrectly as one of the authors of the screenplay for *Pay It Forward*, (Hyde Decl. ¶ 4(c)), Google still has not corrected this error, failing in its commitment to correct even known errors. (Suppl. Hyde Decl. ¶ 6(b).)

14

Given the fact that these fundamental defects go to the very heart of authors' abilities to assess their rights and obligations under the settlement, the Objecting Authors request that that Google be required to correct the errors in the Google Books Database before the settlement is approved.[8]

## **CONCLUSION**

For all of the reasons set forth in the Objections and these Supplemental Objections, the Objecting Authors object to the Amended Agreement and respectfully request that the Court revise the Amended Agreement to address their objections before it is approved.

New York, New York
Dated: January 28, 2010

                                        Respectfully submitted,

                                        DEVORE & DEMARCO LLP

                                        By: /s/ Andrew C. DeVore
                                               Andrew C. DeVore (AD – 3511)
                                               Amin Kassam (AK - 7860)
                                               99 Park Avenue, 16th floor
                                             New York, New York 10016
                                             (212) 922-9499

                                             *Attorneys for Class Members Arlo Guthrie, Julia Wright, Catherine Ryan Hyde, and Eugene Linden*

---

[8] *See* Obj., App. A ¶ 7 (Proposed Solution 7).

# APPENDIX A – SUPPLEMENTAL PROPOSED SOLUTIONS

(For ease of consideration, the following Proposed Solutions continue the numbering of the Proposed Solutions, numbered 1 through 8, set forth in Appendix A to the Objections.)

(9) Require Insert authors to be represented by a separate sub-class. (Suppl. Obj. § I.C); and

(10) Obligate Google to include only Books, as defined in the Amended Settlement, in the Google Books Database. (Suppl. Obj. § III.B.)