## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE AUTHORS GUILD et al.,<br>                          Plaintiffs,<br>-against-<br>GOOGLE, INC.,<br>                          Defendant. | Master File No.<br>05 Civ. 8136 (DC) |

## OBJECTIONS TO AMENDED CLASS ACTION
## SETTLEMENT AND NOTICE OF INTENT TO APPEAR,
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

**COMES NOW** OBJECTOR, DARLENE MARSHALL, an identified Class Member to this action, by and through her undersigned counsel of record, and hereby files these Objections to the Amended Settlement of Class Action, and in support thereof states as follows:

### PROOF OF MEMBERSHIP IN CLASS

1.      Objector DARLENE MARSHALL, hereafter referred to as "MARSHALL" who is a member of the Author Sub-Class, meets all criteria for such membership.  She is originally represented by N. Albert Bacharach Jr., whose address is 115 NE 6th Avenue, Gainesville, FL 32601;  Frank H. Tomlinson, Esq., whose address is 15 North 21st Street, Suite 302, Birmingham, Alabama 35203; and Paul S. Rothstein, Esq., whose address is 626 N.E. First Street, Gainesville, FL 32601.

2.      The parties to this cause have entered into a proposed Amended Settlement Agreement and Release (hereinafter "ASA").

3.    MARSHALL believes that the proposed ASA is not fair, adequate, or reasonable.  As a result, MARSHALL respectfully submit that this Court should decline to approve the proposed ASA as currently presented.

4.    MARSHALL now enters her appearance in this cause, announces her intent to appear through counsel at the scheduled hearing, in order to participate in further proceedings before this Court and to prosecute her Objections to any settlement or other resolution proposed to the Court which is not fair, adequate and reasonable.

5.    Because of such legal failures and insufficiencies as alleged herein by reference, the Court should withdraw its preliminary approval Order material to the proposed ASA and enter its supplemental Order requiring further proceedings in this action. By such further proceedings the Court should consider and determine the contested and challenged issues raised in these Objections.

## NOTICE OF INTENT TO APPEAR

MARHSALL hereby gives notice that she intends to appear by counsel at the Fairness Hearing that is presently scheduled to be held in this matter on February 18, 2010 before the Honorable Denny Chin, United States District Judge, at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007-1312.

## OBJECTIONS

The proposed Class Action Settlement is inadequate, unfair and unreasonable for the following reasons:

### I.     A Class Action is an Improper Vehicle for the Commercial Transaction that Constitutes the Majority of the ASA

When a Court certifies a class for settlement purposes only, certification requires heightened attention to the justification for binding the class members. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Viewing the ASA with the heightened attention required by *Amchem*, it becomes clear that the ASA is contrary to the requirements of Rule 23 and violative of the due process rights of absent class members.

In the two-part ASA, one part releases Google from liability for past copyright infringement. This portion, unfair and inadequate given the minimum statutory damages for copyright infringement, follows the standard class action procedure for releasing a defendant from liability for its past acts in exchange for consideration. However, the second portion, referenced as the Commercial Portion, is completely contrary to the purposes of the class action mechanism and flagrantly violates the due process rights of absent class members. The Commercial Portion of the ASA refers not to past behavior of Google, but to <u>future behavior</u>, in effect granting Google a license to digitize, display, commercialize,

3

profit from, and otherwise use authors' works in exchange for Google's establishment of an organization called the Book Rights Registry ("BRR"), and an agreement that Google will pay to class member authors a portion of the revenues generated by Google's use of their works. Many of the class members who will be affected by the ASA likely do not realize that the ASA will divest them of their right to enforce their copyright against Google for certain uses. Some class members have not even been harmed in that Google has not even digitized nor used their books in any way inconsistent with their copyright. Thus, the Commercial Portion of the ASA attempts to impose what is essentially a contractual agreement onto absent class members, without their consent, through the mechanism of a class action. If the ASA is approved by the Court, it will effect a massive transfer of intellectual property rights from the class member holders of the copyrights to Google through the procedural mechanism of Rule 23. In many cases, this transfer will occur without actual notice to class members, as notice generally has been by publication. Such a use of Rule 23 is improper, and violative of the Rules Enabling Act's requirement that the Rules of Procedure not abridge, enlarge, or modify any substantive right. 28 U.S.C. § 2072(b).

In this action, Google has violated class members' substantive rights in the use of their creative work established by federal copyright law. Those copyrights are a federal grant of property interest. *Davis v. Blige*, 505 F.3d 90, 98 (2d Cir.

4

2007). Google should not be allowed to use the procedural process of Rule 23, through a class action mechanism, to modify the substantive intellectual property rights conferred on class members by Congress. It is improper. In fact, by allowing Google to acquire through the class action mechanism a commercial arrangement that it could not have achieved in the marketplace, at least not without an immense expenditure of capital and effort, would be to reward Google for its flagrant and widespread copyright infringement.

There is no question that an individual author, engaged in a copyright dispute with Google, could agree to grant Google certain rights to use her work in the future. This is merely the freedom of contract protected by our system of laws. The problem arises when this eminently reasonable and legal transaction is translated into the class action context, where individual authors, some without knowledge or sufficient understanding of the ramification of the settlement agreement, and some without having had any harm to her rights at all, are required to either accept a settlement agreement to which she was not a negotiating party or take affirmative action to opt out of the settlement terms. Under this agreement, if an author did nothing, Google would be protected from suit for its breach of that author's copyright. Furthermore, and at the very least, such a flagrant method of divesting authors of their rights should require **actual notice** in order to comply with the demands of due process.

5

The coercive elements of the ASA, which attempt to enforce through a class action what could virtually never be accomplished in the marketplace, raise the specter of a specific troubling provision in the ASA and Google's past self-censorship.  On page 46 of the ASA is a clause titled "Google's Exclusion of Books" and provides that Google may, at its discretion, exclude certain books from its display uses "for editorial or non-editorial" uses.  The only definition of "editorial reasons" available is in the clause itself and is broad, vague, and phrased only in the negative: "...editorial reasons (*i.e.*, not for quality, user experience, legal or other non-editorial reasons)...".  The only obligation Google has in this regard is that it notify the BRR of any exclusion for editorial reasons and of any information Google has relevant to the BRR's use of the excluded book.  Thus, Google has enormous discretion to exclude books for non-editorial reasons, which are ill-defined, in which case it would not need to notify anyone of this exclusion, as well as enormous discretion to exclude books for editorial reasons, subject only to the requirement that Google notify an organization for, which as of now, Google itself is the only source of funding.  Even taking into account Google's very recent about-face on the issue of self-censorship in China, the editorial exclusion provision of the ASA, coupled with Google's acquiescence to government censorship of searches in China since 2006 raises acute public policy concerns and the question of what entities it wants to oversee and regulate access to knowledge

6

in the future.  Casting a gaze into the future, MARSHALL can see that this ASA may well form the foundation of a complete reorganization of human access to knowledge and information, one which seems likely in the future to largely, if not completely, supplant traditional analog information interfaces such as books and other print materials.  If such a reorganization is going to retain or express any of those ideals which have always formed the foundation of the liberty of thought and expression, it must be guided not by an organization the final loyalty of which must necessarily be to its quarterly financial statement, but by those governed by the democratic process and held accountable to the people, whose birthright and heritage this knowledge is.

## II.    The Notice Afforded Class Members was Improper Under Rule 23 and Violated Due Process

Rule 23 provides that the notice given to class members must be the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  Fed. R. Civ. P. 23(c)(2)(B).  In fact, individual notice must be given to all class members whose names and addresses may be ascertained through reasonable effort.  *See Eisen v. Jacquelin*, 417 U.S. 156, 173 (1974).  Media and other information suggests that notice to class members has been primarily based on publication of the Summary Notice rather than on individual notice, and that in fact only a fraction of the class

members have received individual notice.  Given that most of the class members are registered with the Copyright Office, and that Google must surely have identifying information about the authors of works it has already digitized, the information required to give individual notice to the majority of the class members is surely available through reasonable effort.  Therefore, individual notice to those class members is required by Rule 23, regardless of expense.  *Amchem*, 521 U.S. at 617.

Because the ASA would involve the compulsory transfer of property rights from class members to Google, any notice other than actual, individual notice would violate due process.  Class members' intellectual property rights under copyright law exist quite apart from Google's infringement of those rights, and nothing in Google's infringement abridges or dilutes those rights.  Thus, this action, incited as it was by Google's copyright infringement, should not be used as a mechanism to force class members to either act to protect their rights or be divested of them.  Class members should not have to take affirmative action to secure those rights conferred upon them by Congress, which is precisely what Google's use of a class action as a commercial bargaining device forces class members to do.  At the very least, class members should not have their intellectual property rights taken away without individual, actual notice of the possibility of losing their rights.  Even assuming that the Court has jurisdiction to approve the

Commercial Portion of the ASA, to do so without actual, individual notice clearly violates due process.

Additionally, the wording of the Notice creates issues. The Summary Notice states that this action arose out of claims that Google violated the copyrights of class members by digitizing books and displaying portions of them without permission. From this assertion, a reader might reasonably infer that the ASA references only claims regarding past actions of Google, and that the ASA would have no effect on future claims. A class member whose work had not been scanned and displayed by Google might reasonably assume that the action had nothing to do with him. Such a class member might do nothing more, as a result of which inaction the class member's property rights would be transferred to Google, without the class member's knowledge or consent. For this reason also the Notice does not comport with the requirement of Rule 23 or due process.

## III.    The ASA Provides Inadequate Compensation to Class Members

The ASA is not fair, adequate nor reasonable because it fails to adequately compensate class members for Google's past copyright infringements. The ASA provides for payments to class members in the amounts of $60.00 per book, $15.00 per insert, and $5.00 per partial insert. These amounts do not adequately compensate the class members, given that all such works were protected by copyright, and the minimum statutory damages award for copyright infringement is

$750.00  17  U.S.C. § 504(c)(1).  The minimum damages may be increased for willful acts of copyright infringement, and considering that Google systematically digitized millions of copyrighted works for commercial gain, and continued to do so after it was sued for copyright infringement, there exists a significant possibility that Google would face liability for willful violations of copyright.  Despite the extent of Google's probable exposure to liability for copyright infringement and the potential for enormous statutory damages, the ASA offers no justification for the paucity of funds allocated to class members to resolve their claims for copyright infringement beyond gen eralized assertions that all litigation comes with some risk, a fact ubiquitously true, and meaningless.

In addition to the inadequacy of the ASA regarding past claims, the benefits the ASA purports to grant class members in exchange for what is in effect a compulsory license in class members' intellectual property are too uncertain.  All of the  class members' benefits under the Commercial Portion of the ASA are contingent upon the creation and maintenance of a nominally separate entity, the BRR.  The BRR is responsible for disbursing the revenues to class members from Google's future commercial uses of copyrighted materials.  However, apart from Google's initial allocation of funds to begin the BRR, there is no guarantee that the BRR will be adequately funded, or will continue to function to provide benefits to class members.  According to the ASA, it seems that even if the BRR fails, Google

will retain its interest in class members' intellectual property rights and class members will have no effective mechanism for the enforcement of their benefits under the ASA.

Furthermore, given the paltry and uncertain nature of the benefits for class members under the ASA, the release of claims is overbroad and excessive.

## IV.  Significant Inter-Class Conflicts Exist Which Preclude Class Certification

The ASA purports to create a single author subclass, however, within that subclasses are conflicts that prevent the ASA from meeting the requirements of Rule 23.  The Rule requires that the claims of a representative plaintiff be typical of the claims of absent class members.  Within the purported author subclass there exist at least two axes of divergent interests: class members with present claims for infringement and those whose copyrights have not yet been infringed, and rightsholders of orphan works and those of non-orphan works.  Those class members who already have a claim against Google for past actions have an interest in allocating more funds to the portion of the settlement that resolves claims for past actions, whereas those without an already-existing claim have more of an interest in enhancing the Commercial Portion of the ASA.

Similarly, the interests of the owners of rights in orphan works diverge from those with rights in non-orphan works because the value of the ASA is dependent

upon the ability of the authors to be identified, located and paid their settlement share and any proceeds from the Commercial Portion of the ASA.

Because of these divergent interests, a uniform author subclass cannot be certified, and subclasses within the author class should be created, each represented by separate counsel and a distinct class representative plaintiff.

## V.    The Court Does not Have Jurisdiction to Grant Google a Compulsory License to the Works of Absent Class Members

Because the ASA purports to address not only past behavior and copyright infringement, but also possible future claims of copyright infringement, the "case or controversy" requirement of Article III of the Constitution precludes this Court from exercising jurisdiction over this action or approving the ASA. Insofar as the ASA addresses potential future claims for copyright infringement, and especially in that many of the "class members" have not even had their books scanned or displayed by Google, the Commercial Portion of the ASA does not deal with any actual case or controversy between Google and those parties the ASA purports to include as class members, and therefore is beyond the jurisdiction of this Court, This Court does not have any authority to approve the Commercial Portion of the ASA. *See Amchem*, 521 U.S. at 613.

## VI.    The ASA Raises Serious Antitrust Concerns

Because the ASA purports to effect a comprehensive transfer of intellectual property rights from class members to Google if class members fail to opt out,

creating a system of compulsory licenses for Google's benefit, the ASA raises serious concerns regarding violations of antitrust laws. Even though the ASA does not include provisions like the "most favored nation" clause of the previous proposed settlement, given the fact that any other entity wishing to compete with Google would have to acquire through individual negotiation from autonomous individuals without the benefit of the compulsion of the class action mechanism which Google is attempting to use to secure licenses at a fraction of the cost of negotiating with each individual class member, the ASA would create monopolistic power for Google. The Department of Justice has raised issues regarding the anticompetitive effect of the ASA, and if the DOJ has now withdrawn its objections to the ASA, it is only because it is satisfied that Google will not later be able to use the ASA and the *Noerr-Pennington* doctrine as a shield against subsequent antitrust actions, not because it necessarily approves of the ASA or because it has conclusively determined that the ASA will not have an anticompetitive effect.

## VII.  The Requested Attorney's Fees are Unreasonable

Given the aforementioned issues regarding the ASA, and especially the inadequacy of the payments for Google's past violation of copyright, and the fact that the majority of the ASA is aimed at providing Google with an enormously liberal license to digitize, display and use copyrighted books to its commercial

advantage, the requested attorney's fees are completely unreasonable and should not be approved by this Court.

## CONCLUSION

The ASA is primarily a commercial endeavor which attempts to divest authors of substantive rights which were conferred by Congress in exchange for uncertain compensation in the future. A class action maintained pursuant to the procedure of Rule 23 is an improper forum for such an agreement. Furthermore, no court has jurisdiction over the Commercial Portion of the settlement in so far as it applies to the rights of those who have not yet been harmed by Google's actions, and who therefore have no actual case or controversy. The notice to class members is deficient, especially given that without taking any action and even without actual notice, the substantive rights of class members may be transferred to Google. The compensation for class members is woefully inadequate when compared with the minimum statutory damages, even taking into account the ubiquitous risks of litigation. Significant inter-class conflicts exist, precluding certification of a single author subclass and necessitating the appointment of additional class representatives and class counsel to adequately represent all of the conflicting interests of authors. The ASA raises serious antitrust concerns, and in light of all of these issues with the ASA, regardless of how much work went into its creation, the requested attorney's fees are excessive and unreasonable. Google is attempting

14

to circumvent the admittedly arduous, even herculean process of negotiating with rightsholders to obtain the right to use works legally. However, the fact that one's own proclivities and desires make compliance with the law difficult or inconvenient has never been sufficient justification for failing to confine one's actions to that law. Two avenues exist within the confines of the law through which Google could attempt to accomplish the digitization and use of the works affected by the ASA. First, they could negotiate with all rightsholders whose works they wanted to use. Second, they could lobby Congree to change the copyright laws in order to facilitate the use of copyrighted material without permission, or to grant compulsory licenses like the ones Google is attempting to acquire through the judicial process. Any other method, including leveraging the class action mechanism to accomplish its ends, should be prohibited.

WHEREFORE, MARSHALL respectfully requests that this Court:

1.    Upon proper hearing, sustain these objections;

2.    Upon proper hearing, continue the issue of attorney's fees until such time as can be ascertained the actual benefits to class members;

3.    Upon proper hearing, enter such orders as are necessary and just to adjudicate these objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the ASA.

Respectfully submitted,


Matthew Weiss
NY Bar No.: 9972
WEISS & ASSOCIATES, P.C.
419 Park Avenue South
Second Floor
New York, New York 10016
Phone: (212) 683-7373
Fax: (212) 726-0135


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic filing on this 28th day of January, 2010 to:

| **Counsel for the Author Sub-Class** | Bala Cynwyd, PA 19004 | **Counsel for Publisher Sub-Class** |
|---|---|---|
| Michael J. Boni, Esq. | bookclaims@bonizack.com | Jeffrey P. Cunard, Esq. |
| Joanne Zack, Esq. | | Bruce P. Keller, Esq. |
| Joshua Snyder, Esq. | | James J. Pastore, Esq. |
| Boni & Zack, LLC | | Debevoise & |
| 15 St. Asaphs Rd. | | Plimption, LLP |

919 Third Avenue
New York, NY 10022
bookclaims@debevoise.
com

**<u>Counsel for Google</u>**
Daralyn J. Durie, Esq.
David J. Silbert, Esq.
Joseph C. Gratz, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
<u>bookclaims@kvn.com</u>

Matthew Weiss
NY Bar No.: 9972
WEISS & ASSOCIATES, P.C.
419 Park Avenue South
Second Floor
New York, New York 10016
Phone: (212) 683-7373
Fax: (212) 726-0135