**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
:
The Authors Guild Inc., Association of American   :
Publishers Inc., et al.,                                              :   Case No. 05-CV-8136 (DC)
    Plaintiffs,                                                       :
:
        - v. –                                                         :   OBJECTION OF THE STATE OF
:   CONNECTICUT TO AMENDED
Google, Inc.,                                                             :   CLASS-ACTION SETTLEMENT
    Defendant.                                                       :
:   *Filed Electronically*
:
------------------------------------------------------------X

          RICHARD BLUMENTHAL
          ATTORNEY GENERAL
          OF CONNECTICUT

\*   Richard Blumenthal   RB6515
    Attorney General
    55 Elm Street, P.O. Box 120
    rachel.davis@po.state.ct.us
    karen.gano@po.state.ct.us
    Attorney General
    Office of the Attorney General
    55 Elm Street, P.O. Box 120
    Hartford, CT 06141-0120
    (860) 808-5020
    (860) 808-5347

\*  Counsel of Record

Case 1:05-cv-08136-DC    Document 851    Filed 01/28/2010    Page 2 of 15

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.    Operation of Section 6.3 of the Amended Settlement Agreement Results in Misappropriation of Unclaimed Funds Collected for Unregistered Rightsholders in Violation of State Law ............................................................. 2

    II.   Independence of the Unclaimed Works Fiduciary created by Section 6.2(b)(iii) is Illusory Because It Binds the Fiduciary to Breach of Loyalty to Rightsholders ............................................................................. 5

    III.  Disposition of Unclaimed Funds in the Amended Settlement Agreement Continues to Render an Unlawful Conversion of Charitable Funds .................................. 8

    IV.  The State of Connecticut Denies That It Is a Member of Any Class In This Proceeding .............................................................................................. 9

CONCLUSION .......................................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Cases**

*Ahern v. Kappalumakkel et al*, 97 Conn. App. 189, 903 A.2d 266, 270 (Conn. App. 2006) ......... 6

*Dunham* v. *Dunham*, 204 Conn. 303, 528 A.2d 1123 (1987) ........................................................ 6

*Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996) ................................ 6

*Duncan* v. *Higgins*, 129 Conn. 136 (1942) ................................................................................. 9

**Statutes and Constitutional Provisions**

U.S. Const. Art. I, § 8, cl. 8; 17 U.S.C. § 101 et seq. (2009) ......................................................... 4

Conn. Gen. Stat. § 3-65c ................................................................................................................ 7

Conn. Gen. Stat. § 3-70a ................................................................................................................ 7

Conn. Gen. Stat. § 3-61a ................................................................................................................ 3

Conn. Gen. Stat. § 3-64a ................................................................................................................ 3

Conn. Gen. Stat. § 3-65b ................................................................................................................ 3

Conn. Gen. Stat. § 3-66b ................................................................................................................ 3

Conn. Gen. Stat. § 3-125 .............................................................................................................. 10

Conn. Gen. Stat. § 45a-514 ............................................................................................................ 8

Conn. Gen. Stat. § 47-2 .................................................................................................................. 8

**Other Authorities**

*Opinion of the Attorney General of the State of Connecticut*, 1981 Conn. AG Lexis
    85 (Sept. 18, 1989) ................................................................................................................. 6

**INTRODUCTION**

The State of Connecticut, by its Attorney General Richard Blumenthal ("The Attorney General"), on behalf of the State and the public interest in preserving unclaimed property and charitable interests within its boundaries, ("Connecticut"), hereby responds to the Court's invitation to submit comments on the amendments to the proposed class action settlement.[1] The Attorney General also hereby gives notice of his intent to appear at the fairness hearing scheduled for February 18, 2010.

Connecticut submitted comments to the Settlement Agreement on September 8, 2009 ("September Comments") objecting to the proposed settlement's violation of individual protected property rights and state unclaimed property and charities laws. After that proposal was withdrawn, Connecticut sought without success to resolve its concerns in discussions with the parties. Because the Amended Settlement Agreement still fails to resolve the legal flaws previously presented to the Court, Connecticut is compelled to object to the settlement as drafted and urges the Court to reject it.

In its September Comments, Connecticut specifically outlined three areas of concern with regard to the Settlement Agreement. While modifications in the Amended Settlement Agreement affect each of the areas of concern, the modifications do not eliminate any of Connecticut's original concerns. In particular:

1. The original Settlement Agreement violated state unclaimed property laws by misappropriating unclaimed funds for the maintenance of the Book Rights Registry ("BRR") created by the Settlement Agreement, and by reimbursing authors and publishers by "topping up" their payments under the distribution plan.

---

[1] By submitting these comments, Connecticut does not concede its membership in any class in this litigation. As previously presented to the Court, as a sovereign state Connecticut cannot be brought into this litigation or its settlement without its consent.

1

      The Amended Settlement Agreement eliminates the "topping up" payments, but continues to unlawfully misappropriate unclaimed funds for the maintenance of the Book Rights Registry ("BRR").

2.     The Amended Settlement Agreement does not correct the likelihood that charitable assets will be unlawfully converted to commercial purposes by potentially retaining and dispersing unclaimed funds generated by copyrights held by or for the benefit of charities or charitable trusts and disbursing them for the benefit of BRR and for the benefit of alternate charitable purposes not approved by a court of proper jurisdiction in accordance with State law.

3.     The Amended Settlement Agreement fails to acknowledge this Court's lack of jurisdiction to bring the states into this litigation and subject them to the scope of the proposed Settlement. As set forth in our September Comments, Connecticut, and every state, is protected by the Eleventh Amendment and the doctrine of sovereign immunity, and cannot be swept into this litigation or its proposed resolution by settlement except by express consent.

   Each of these concerns is discussed in detail below, and each warrants rejection – or, at the very least, revision – of the proposed settlement.

## ARGUMENT

**I. Operation of Section 6.3 of the Amended Settlement Agreement Results in Misappropriation of Unclaimed Funds Collected for Unregistered Rightsholders in Violation of State Law**

Section 6.3(a)(ii) of the Amended Settlement Agreement refers to "abandoned funds" as revenues relating to claimed books (books for which Rightsholders have registered with BRR),

2

which revenues have been "abandoned." These revenues will be surrendered to "the appropriate governmental authority." Revenues payable to Rightsholders who have not registered with BRR, however, will not be surrendered to the "appropriate governmental authority" for the benefit of those Rightsholders, but rather, will be retained by BRR for a period of five years. *See* Amended Settlement Agreement 6.3(a)(i)(2).

At the end of the five-year period, the Unclaimed Works Fiduciary (Fiduciary) may authorize the expenditure of up to 25% of the unclaimed funds to finance efforts to locate the rightful owner. *Id.* If the registry is unable to locate the rightful owner after ten years, then the funds are to be donated to a charity that promotes reading and literacy as defined under the settlement. Amended Agreement 6.3(a)(i)(3).

Under Connecticut's unclaimed property law, unregistered Rightsholders are afforded the same protections as Registered Rightsholders. At the end of three years, unclaimed funds, whether held by BRR for registered or unregistered Rightsholders whose rights are subject to the laws of Connecticut, should be turned over to the Connecticut State Treasurer to be preserved for its rightful owner. *See generally,* Conn. Gen. Stat. §§ 3-61a (Escheat of Property Held by a Fiduciary), 3-64a (Escheat of Property Presumed Abandoned Generally), and 3-66b (Escheat of Unclaimed Intangible Property). Nearly every state in the country has a similar law requiring that unclaimed property be turned over to the state at the end of a three-year or five-year period from the time the property became eligible for transfer or distribution to the Rightsholder. Connecticut, like many other states, imposes a substantial statutory penalty for funds not timely turned over and disposed of under its unclaimed property laws. *See* Conn. Gen. Stat. § 3-65b and September Comments, pages 8 – 10.

The Amended Settlement Agreement continues to deny those who hold constitutionally protected copyrights the benefits of those rights in favor of a commercial enterprise, Google, that has exploited the copyrighted work without the permission of the Rightsholder.  *See* U.S. Const. Art. I, § 8, cl. 8.  After the BRR is established, Google will be completely freed from the obligation to locate and compensate Rightsholders for the unfettered exploitation of their copyrighted works.  BRR will assume the responsibility of locating and compensating Rightsholders on behalf of Google.  After its first five years of operation, BRR's administrative costs for fulfilling Google's obligation to the  Rightsholders of exploited works will be paid, in part, through the unlawful retention and expenditure of up to 25% of revenues due to unregistered Rightsholders.  *See* Amended Settlement Agreement § 6.3(a)(i)(2).   Under Connecticut law, Rightsholders are entitled to the full measure of their property, and may not have that property diminished to pay fees to locate them without explicit authorization from the State Treasurer.[2]

Supposedly the 25% taken from Rightsholders will be used to locate unregistered Rightsholders and give them notice of their right to claim their constitutionally protected compensation (less 25%), but this lucrative arrangement for BRR and Google provides significant disincentive for BRR to diligently carry out its fiduciary responsibility to the Rightsholders for whom it is holding compensation due to them from Google.  Locating unregistered Rightsholders in the first five years after funds are payable would deprive BRR of income for its operations.  Further, BRR has no particular incentive to locate the unregistered Rightsholders even in years six through ten, because after the tenth year, the unregistered Rightsholders rights', contrary to state law and property rights guaranteed by the United States Constitution, are expunged.

---

[2] See September Comments at page 7 for discussion of the appropriate escheatment procedure in the event that Google cannot determine the location of a rightsholder.  As explained there, in no case is Google relieved of its duty to escheat unclaimed funds, and the only question is the state to which the funds should be escheated.

The proposed settlement states that BRR will ensure distribution of remaining unclaimed funds to literacy-based organizations recommended by Google and libraries that have participated in Google's use of copyrighted works. While these may be worthy causes, they should not be funded with assets wrongfully obtained from Rightsholders. Adhering to the state unclaimed property laws furthers significant public interests, as escheated funds are made available for educational funding and other public purposes without diminishing any Rightsholders' lawful property interests.

Therefore, the Amended Settlement Agreement still unlawfully seeks to circumvent state unclaimed property laws in favor of private parties who have no cognizable right to the funds escheated.

## II. Independence of the Unclaimed Works Fiduciary created by Section 6.2(b)(iii) is Illusory Because It Binds the Fiduciary to Breach of Loyalty to Rightsholders

Section 6.2(b)(iii) proposes to install an "independent" "Unclaimed Works Fiduciary" ("Fiduciary") empowered to use unclaimed funds to locate rightsholders, to consult with the Board of Directors of the BRR on locating rightsholders, to approve the timing of motions by the BRR to cy pres unclaimed funds to literacy-based charities, and to exercise certain other powers on behalf of Rightsholders pursuant to Sections 3 and 4 of the Amended Settlement Agreement. However, the Fiduciary does not possess adequate authority, independence, or discretion to properly carry out these functions or comply with fiduciary duties owed to Rightsholders.

In effect, the Fiduciary serves primarily to dissociate Google from the unlawful disposal of absent class members' funds and as a proxy to authorize future methods of income generation at the expense of the underlying property owner. The Fiduciary is not free to act on behalf of unregistered Rightsholders to protect their unclaimed property interest because its discretion is

5

narrowly defined to ensure that the Fiduciary's actions merely facilitate the scheme structured by Section 6 of the Amended Settlement Agreement for the unlawful retention, expenditure, and disposition of unclaimed property described above.

This so-called "Fiduciary" would be little more than an employee, whose role should not be falsely aggrandized by the title and whose functions are inherently conflicted. The term "fiduciary" "connotes the idea of trust or confidence, contemplates good faith, rather than legal obligation, as the basis of the transaction, refers to the integrity, the fidelity, of the party trusted, rather than his credit or ability, and has been held to apply to all persons who occupy a position of peculiar confidence towards others, . . . " One essential characteristic of a fiduciary relationship is that "there must be such circumstances as indicate a just foundation for a belief that in giving advice or presenting arguments one is acting not in his own behalf, but in the interests of the other party." *Opinion of the Attorney General of the State of Connecticut*, 1981 Conn. AG Lexis 85 (Sept. 18, 1989) (citations omitted).

A fiduciary or confidential relationship is broadly defined as a relationship that is "characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." *Ahern v. Kappalumakkel et al*, 97 Conn. App. 189, 194, 903 A.2d 266, 270 (Conn. App. 2006) citing *Dunham* v. *Dunham*, 204 Conn. 303, 322, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996).

If the Fiduciary truly represents the best interests of the Rightsholders whom he supposedly represents, he will breach his obligations to Google and BRR under the terms of the

6

Amended Settlement Agreement. On the other hand, if the Fiduciary acts solely within the constraints of discretion defined by the Amended Settlement Agreement, he will breach his duty of loyalty to the Rightsholders he supposedly represents. The proposed Fiduciary, therefore, merely creates an illusion of fair representation for the constitutionally protected property rights of those whose works have been unlawfully exploited by Google for commercial gain, when, in fact, the Fiduciary is not at all independent and owes its duty to BRR and not unregistered Rightsholders under the terms of the Amended Settlement Agreement.

The Fiduciary's role and ability to act on behalf of unregistered Rightsholders is significantly constrained by the terms of the Amended Settlement Agreement. At the six-year point, the Fiduciary is authorized to allow the release of up to 25% of the funds retained for unregistered Rightsholders. Any released funds are to be used to locate unregistered Rightsholders. The Fiduciary will be giving the BRR additional funds to accomplish what has been stated to be its primary mission, when it has already been unsuccessful in locating those Rightsholders for five years. A fiduciary that is truly free to act on behalf of its principals should have substantial trepidation over authorizing this expenditure.

The parties do not write on a clean slate. Connecticut law – as in other states – precludes those holding unclaimed property from deducting expenses or fees from the funds without permission of the State Treasurer. Conn. Gen. Stat. § 3-65c. Thus, the Fiduciary and the BRR lack discretion to withdraw and expend these funds as anticipated by the agreement. In addition, Connecticut's unclaimed property laws would preserve those funds for Rightsholders in their entirety for an indefinite period of time. *See* Conn. Gen. Stat. § 3-70a ("any person claiming an interest in property surrendered to the Treasurer… may claim such property…at any time thereafter.")

7

In sum, the provisions of the settlement agreement establishing a Fiduciary violate Connecticut law.

### III. Disposition of Unclaimed Funds Pursuant to the Amended Settlement Agreement Will Result in Unlawful Conversion of Charitable Funds

The Amended Settlement Agreement proposes to expunge the property rights of the unregistered Rightsholders after ten years by distributing them to literacy-based charities. This disposition would occur through *cy pres* motions brought by BRR, Google and the participating libraries. Any such action would be impermissible under Connecticut charities law, which requires that all unclaimed funds – including unclaimed funds belonging to charities – be escheated to the state. Only the State, acting through its Attorney General, has standing to seek a cy pres of escheated charitable assets.

As set forth in the September Comments, BRR's expenditure of any portion of charitable funds or distribution of any portion of such funds other than to the Rightsholder or to the appropriate state's unclaimed property custodian will constitute a breach of fiduciary duty and an unlawful conversion of charitable property. *See* Conn. Gen. Stat. §§ 45a-514 and 47-2 (property dedicated to charitable purpose shall be used for that purpose forever and for no other purpose). Every state, through common law or statutory provisions, similarly protects charitable assets. Therefore, compliance with the provisions of the Amended Settlement Agreement with regard to retention, expenditure and distribution of revenues due to unregistered Rightsholders for whom the copyright is for the benefit of charitable purposes would result in an unlawful conversion of charitable assets under the law of every state. Distribution of revenues due to unregistered Rightsholders in accordance with state unclaimed property laws will ensure that charitable assets continue to be held indefinitely for the intended charitable purposes in accordance with state law.

8

Connecticut law requires that if it has become impossible to distribute the funds for the intended charitable purpose (for example, when a charitable Rightsholder no longer exists), then a court of proper jurisdiction may redirect the funds to an alternative charitable purpose that as nearly as possible approximates the original charitable Rightholder's purposes. *Duncan v. Higgins*, 129 Conn. 136 (1942).  However, as explained herein and in the September Comments, unclaimed charitable assets must be escheated to the State.  Thereafter, in the appropriate case, the Attorney General as representative of the public interest in charitable funds – not Google or the BRR – has standing to bring a cy pres motion with respect to such escheated charitable funds.  Any other disposition of charitable assets would constitute an unlawful conversion of the assets and a violation of unclaimed property law.

**IV.     The State of Connecticut Is Not a Member of Any Class In This Proceeding And Cannot be Subject to the Terms of the Settlement Agreement.**

Connecticut has a sovereign interest in preserving the rights and property of our citizens, including by safeguarding property and preserving charitable interests.  As set forth in its September Comments, incorporated herein by reference, subjecting Connecticut to the provisions of this agreement or including it in a settlement class would violate the State's immunity from suit in federal court under the Eleventh Amendment and the doctrine of state sovereign immunity. Federal courts may not disregard Connecticut law unless that law does major damage to an important federal interest.  Here, there is a strong federal interest in applying Connecticut law out of respect for state interests and state sovereignty, and no countervailing interest requiring that Connecticut be subjected to this agreement.

In addition, inclusion of Connecticut in the Settlement Class would contravene Connecticut law requiring that only the Attorney General, or those acting under his direction,

9

represent the State in any civil legal matter.³  See Conn. Gen. Stat. § 3-125 ("Attorney General shall have general supervision over all legal matters in which the state is an interested party…. He shall appear for the state … in all civil suits and other civil proceedings… in which the state is a party or is interested … and all such suits shall be conducted by him or under his direction.") In this case, it is undisputed that Class Counsel is not acting under the direction of the Connecticut Attorney General and has not been authorized by the Connecticut Attorney General to represent the State of Connecticut.  As more fully set forth above, there is a strong federal interest in respecting state sovereignty as reflected in the Eleventh Amendment, the doctrine of state sovereign immunity, and the numerous federal court decisions interpreting these legal principles.

Thus, allowing Class Counsel, without state authorization, to represent, compromise, and usurp unclaimed property, would directly contravene Connecticut state law without any countervailing clear and substantial federal interest or major harm done to those clear and substantial interests.

## **CONCLUSION**

For all the foregoing reasons, the State of Connecticut respectfully requests that the Court reject the proposed settlement.

---

³ The Amended Settlement Agreement amends the Settlement to exclude "the departments, agencies and instrumentalities of the United States Government," Definition 1.13 "Amended Settlement Class," but does exclude the States from the class definition.  The Amended Settlement Agreement also adds a provision in Section 6.3(a)(i)(3) to provide "notice and an opportunity to be heard by the attorneys general of all states in the United States" when the Book Rights Registry is moving that the Court distribute unclaimed funds to literacy-based charities.  These additions do not recognize or resolve the sovereign immunity and constitutional objections raised by Connecticut.

       Respectfully submitted,

       RICHARD BLUMENTHAL
       ATTORNEY GENERAL

\*   /s/Richard Blumenthal
    Richard Blumenthal    RB6515
    Attorney General
    55 Elm Street, P.O. Box 120
    Hartford, CT  06141-0120
    Tel: (860) 808-5020
    Fax: (860) 808-5347
    rachel.davis@po.state.ct.us
    karen.gano@po.state.ct.us

\* Counsel of Record

11

**CERTIFICATE OF SERVICE**

The foregoing Objection of the State of Connecticut to Class-Action Settlement was served on all counsel of record on January 28, 2010, by electronic mail through the Court's CM/ECF system.

/s/Gary M. Becker
Gary M. Becker
Assistant Attorney General