UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

The Authors Guild Inc., Association of American
Publishers Inc., et al.,

      Plaintiffs,

  – v. –            Case No. 05-cv-8136 (DC)

Google Inc.,

      Defendant.
_____


**MEMORANDUM OF LAW IN OPPOSITION TO THE AMENDED SETTLEMENT
AGREEMENT ON BEHALF OF THE FEDERAL REPUBLIC OF GERMANY**

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Edwin Komen, Esq. (EK-DC Bar No. 924209)
(Pro Hac Vice)
Theodore C. Max, Esq. (TM-1742)
30 Rockefeller Plaza
New York, New York  10017
Tel.: (212) 332-3602
Fax:  (212) 332-1201
Counsel for Federal Republic of Germany

Dated:  New York, New York
    January 28, 2010

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .............................................................................................................................3

POINT I

THE AMENDED SETTLEMENT AGREEMENT DOES NOT
ELIMINATE FATAL FLAWS RELATING TO GERMAN AUTHORS
AND PUBLISHERS OR INTERNATIONAL COPYRIGHT LAWS ....................3

    A.    The Amended Settlement Agreement's Definition of "Book"
        Includes German Authors .............................................................................3

POINT II

THE AMENDED SETTLEMENT AGREEMENT DOES NOT
AMELIORATE THE FATAL FLAWS IDENTIFIED BY THE UNITED
STATES ......................................................................................................................9

    A.    The Amended Settlement Agreement Does Not Satisfy Federal
        Rule of Civil Procedure 23 ............................................................................9

    B.    No Showing Has Been Made That Proper Robust Notice Has Been
        Provided ......................................................................................................10

    C.    The Amended Settlement Agreement Destroys the Landscape of
        World Copyright Law .................................................................................11

CONCLUSION .......................................................................................................................13

# TABLE OF AUTHORITIES

## Cases

Anchem Prods., Inc. v. Windsor,
  521 U.S. 591 (1997) ................................................................................................ 10

City Merchandise v. Kings Overseas,
  No. 99 CV 10456, 2001 U.S. Dist. LEXIS 3176 (S.D.N.Y. March 22, 2001) ............ 6

DO Denim, LLC v. Fried Denim, Inc.,
  634 F. Supp. 2d 403 (S.D.N.Y. 2009) ........................................................................ 6

Eisen v. Carlisle & Jacquelin,
  417 U.S. 156 (1974) ................................................................................................ 10

## Statutes

The Copyright Act of 1909, 35 Stat. 1075, 17 U.S.C. § 13 (1976 ed.) ............................ 6
17 U.S.C. § 101 ................................................................................................................ 6
17 U.S.C. § 411(a) ........................................................................................................... 6

## Rules

Fed. R. Civ. Proc. 23 .............................................................................................. passim.

## Miscellaneous

"Hearing on Competition and Commerce in Digital Books: The Proposed Google Book
  Settlement Before the House Comm. on the Judiciary," 111th Cong., 1st Sess. at 5 (2009),
  (Statement of Marybeth Peters, Register of Copyrights) ........................................ 11

Lewis R. Clayton, "The Latest on Google Settlement, Patent Case Transfers, Dilution,"
  New York Law Journal, p. 3 (January 13, 2010) ....................................................... 5

United States Copyright Office, Circular 23, p. 1 ........................................................... 6

http://www.googlebooksettlement.com/r/view_notice,
  Supplemental Notice to Authors, Publishers, and Other Book
  Rightsholders about the Google Book Settlement, p. 2 ............................................ 7

http://books.google.com/support/partner/bin/answer.py?answer=166297, Options Available to
  Former Class Members ............................................................................................. 7

http://www.googlebooksettlement.com/help/bin/answer.py?answer=118704&hl=en#q41a .......... 6

## PRELIMINARY STATEMENT

In the Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Amended Settlement Agreement ("Memorandum of Law in Support"), the Plaintiffs Authors Guild, Inc. and the Association of American Publishers, Inc. and their named members ("Plaintiffs") contend they have eliminated the serious and substantial legal obstacles to the Amended Settlement Agreement ("ASA") filed on November 13, 2009, previously voiced by the Federal Republic of Germany[1], the French Republic, the United States Department of Justice and hundred of others by "substantially reduc[ing] the scope of the class from the Settlement Agreement:"

> First, and most significantly, the international scope of the class has been reduced by narrowing the definitions of "Book" and "Insert." Only Rightsholders in a "Book" or "Insert," as these are defined in the ASA, are members of the Amended Settlement Class. . . .
>
> A work is now included in the settlement only if, by January 5, 2009, it has been registered with the United States Copyright Office, or published in Canada, the United Kingdom, or Australia.

Memorandum of Law in Support, pp. 3-4.

The Memorandum of Law in Support also chronicles the following modifications made to narrow the territorial reach of the proposed Amended Settlement Agreement *only to* the United States, Canada, the United Kingdom and Australia and to successfully address concerns raised in opposition to the proposed Google Book Settlement: (1) Limiting the definition of "Commercially Available"; (2) Taking steps to address concerns voiced regarding the

---

[1] See Memorandum of Law in Opposition to the Settlement Proposal on Behalf of the Federal Republic of Germany ("Memorandum of Opposition") filed on August 31, 2009. Although Germany, as required by Order of the Court, is only commenting on the revisions to the original Settlement Agreement as set forth in the Amended Settlement Agreement, it respectfully submits that many of its previously voiced concerns and objections remain unanswered by Google and reserves all rights for argument at the Fairness Hearing.

anticompetitive nature of the Google Book Settlement; (3) Changing and setting limits on additional revenues to be earned by Google; and (4) Establishing a fiduciary for unclaimed books and unclaimed funds to address concerns regarding "Orphan Works." In spite of these "improvements," the new Amended Settlement Agreement continues to impose a <u>de facto</u> compulsory license with respect to worldwide digital book copyrights under the guise of an intellectual property class action.

   The Federal Republic of Germany does not question the sincerity or good intentions behind these modifications as it likewise strenuously supports the creation and realization of digital libraries accessible to the global public by Internet or any other new media. In fact, Germany and its fellow European nations have taken affirmative steps to create a European Digital Library ("Europeana") that balances the needs of authors and publishers with those of users in a way that meets the best interests of both. <u>See</u> Memorandum in Opposition, pp. 5-6. Unfortunately, Google's modifications do not eliminate the fatal flaws at the core of the Amended Settlement Agreement, most notably headlined by the wholesale grab for a <u>de facto</u> compulsory license covering the display and non-display uses of worldwide digital book copyrights under the guise of an intellectual property class action.

   Part of the problem, and one of the basic reasons these issues remain so intractable to a quick fix, stems from a creative use of the United States class action system to effectuate this <u>de facto</u> compulsory license for use of works by both identifiable authors and Orphan Works. As is chronicled more fully below, the Amended Settlement Agreement, is not, as heavily advertised by Google, simply limited to authors and publishers in the United States, Canada, the United Kingdom and Australia. International authors remain subject to the Amended Settlement Agreement if they have registered with the U.S. Copyright Office. As

many German authors and publishers have sought registration with the U.S. Copyright Office, the Amended Settlement Agreement continues to impact them. Thus, the Amended Settlement Agreement fails to reach a resolution that is truly fair to all regardless of national origin. By failing to consider the honest criticism of Germany, the proposal continues to reward Google for its alleged illegal scanning activities all to the detriment of German authors and publishers. Granting Google a de facto exclusive license with regard to "Orphan Works" sets a dangerous precedent and has the added effect of discouraging equitable, fair and comprehensive solutions through the more appropriate channels of international treaties and cooperation or legislation. Accordingly, even if adopted *with the best of intentions*, the Amended Settlement Agreement ends up reminding of how that *most ominous of roads is paved.*

## ARGUMENT

### POINT I

THE AMENDED SETTLEMENT AGREEMENT
DOES NOT ELIMINATE FATAL FLAWS
RELATING TO GERMAN AUTHORS AND
PUBLISHERS OR INTERNATIONAL COPYRIGHT LAWS

A.   The Amended Settlement Agreement's Definition of "Book" Includes German Authors

In response to objections filed by the Federal Republic of Germany and French Republic, as well as objections raised by the United States Department of Justice, the Plaintiffs and defendant Google contend to have reduced "the international scope of the class . . . by narrowing the definitions of Book and Insert."[2] The definition of "Book" was limited with the

---

[2]   In its Statement of Interest, the United States Department of Justice, citing briefs filed on behalf of Germany and France, stated on page 11 that "the Proposed Settlement raises concerns about the adequacy of representation with respect to foreign rightsholders" and noted that France and Germany had raised "serious concerns." See Statement of Interest, pp. 11, 15-16.

intent to exclude international authors and publishers other than those from the United States, Canada, the United Kingdom and Australia:[3]

> "Book" means a written or printed work that as of January 5, 2009 (a) had been published or distributed to the public or made available for public access as a set of written or printed sheets of paper bound together in hard copy form under the authorization of the work's U.S. copyright owner, (b) was subject to a Copyright Interest, and (c) (1) if a "United States work," as defined in 17 U.S.C. § 101, was registered with the United States Copyright Office, and (2) if not a United States work, either (x) was registered with the United States Copyright Office, or (y) had a place of publication in Canada, the United Kingdom or Australia, as evidenced by information printed in or on a hard copy of the work. . . .

ASA, p. 4. While this effort to limit the class of authors and publishers has reduced the scope of the class somewhat, it has not eliminated the problems which were previously the subject of objections because the definition of "Book" by its nature, includes within the class, German authors and implicates their rights as well as the rights of the German publishers.

First, if a German author has secured a copyright for his or her "Book" in the United States Copyright Office or the "Book" was published in Canada, the United Kingdom or Australia, notwithstanding the professed intent of the Plaintiffs and defendant Google to "substantially reduc[e] the scope of the class from the Settlement Agreement," that particular German author is within the Author Sub-Class under the Amended Settlement Agreement. This also would apply to German authors whose books have been published in Germany in German and translated into English and (i) copyrighted in the United States or (ii) published in Canada, the United Kingdom or Australia, in which case the translation is considered a "Book." As a

---

[3]   It is curious to note that there is no logical reason to limit the settlement class to works published in these three English-speaking nations -- possibly suggesting expediency (these are the ones who may not oppose or challenge the ASA) over legitimacy, thus fragmenting the class action membership for the sake of securing easy approval.

result, there are a great number of German authors who remain impacted by the Amended Settlement Agreement, even if this is wholly unintended. By fragmenting German authors and publishers by the technical formality of registration, contrary to the Berne Convention, the Amended Settlement Agreement makes it even more difficult for authors to identify themselves as in or outside of the Author Sub-Class.

Second, since the Amended Settlement Agreement includes German authors (and by corollary German publishers) by virtue of the amended definition of "Books," the position of German authors and publishers is further jeopardized by the misleading contention that the Amended Settlement Agreement is limited in territorial scope. Google's lack of proper notice and a ready means to identify the actual status of an author's books complicates this further. The media claims and submissions to the Court by Plaintiffs and defendant Google that the Amended Settlement Agreement only applies to American, British, Canadian and Australian books is at best misleading, even if not intentionally so.[4] As a result, it is likely that German authors and publishers may erroneously believe that the Amended Settlement Agreement does not apply to them, when, in fact, their copyrights remain compromised.

Third, Google has made the situation worse by failing to afford German authors and publishers a practical mechanism for quickly and effectively ascertaining: (1) whether their "Book" has been scanned by defendant Google; or (2) whether the "Book" was registered with

---

[4]   See, e.g., Lewis R. Clayton, "The Latest on Google Settlement, Patent Case Transfers, Dilution," New York Law Journal, p. 3 (January 13, 2010)("The revised agreement is limited to American, British, Canadian and Australian works."). Plaintiffs and defendant Google previously and repeatedly contended that the originally proposed Google Book Settlement Agreement only applied to United States authors and publishers because it was brought in a United States court. As evidenced by the prior opposition of Germany and others, this was not the case. See Memorandum in Opposition, pp. 6, 20-22; Statement of Interest, p. 11. As a result, Plaintiffs and defendant Google formally withdrew the previous Google Book Settlement at the status hearing on October 7, 2009.

Start:

the Copyright Office or published in Canada, the United Kingdom and Australia. In fact, one can only determine whether a "Book" has been scanned by registering with the Registry (or "opting in"). See Frequently Asked Question Number 49: "Does the registry provide a way for a class members to know if their Books have already been digitized in a US library?" ("**Once you have claimed your books**, a details page on the website for each claimed Book will inform you whether that Book was digitized by May 5, 2009.")(Emphasis added), http://www.googlebooksettlement.com/help/bin/answer.py?answer=118704&hl=en#q41a.[5]

One cannot readily determine whether a book is registered with the United States Copyright Office unless the works were registered on or after 1978, the effective date of the current Copyright Act of 1976. Prior to that date, registrations made under the Copyright Act of 1909 were maintained by typing or printing on old-fashioned file cards. These records can only be searched manually by travelling to the Copyright Office in Washington DC or hiring the Copyright Office or a private search firm to inspect these records for a fee. See United States Copyright Office, Circular 23, p. 1. This manual search may be required for the books of German and many other international authors because, prior to 1978, a United States registration was needed to bring an action to enforce any copyright whether domestic or foreign.[6] No exceptions were made for international authors. As a result, prior to 1978, the Börsenverein des

---

[5] In other words, one can determine if they should remain in the class or opt out only after irrevocably opting in.

[6] The Copyright Act of 1909, 35 Stat. 1075, 17 U.S.C. § 13 (1976 ed.). This pre-infringement action registration requirement is continued under Section 411(a) of the Copyright Act of 1976, effective on and after January 1, 1978. This current pre-action requirement, however, now only extends to United States works and does not apply to works by foreign authors first published outside the United States and not thereafter published, or "simultaneously" published in the U.S. within thirty days. 17 U.S.C. § 101 (definition of "United States work"); see also DO Denim, LLC v. Fried Denim, Inc., 634 F. Supp. 2d 403, 406 (S.D.N.Y. 2009); City Merchandise v. Kings Overseas, No. 99 CV 10456, 2001 U.S. Dist. LEXIS 3176, at * 4 (S.D.N.Y. March 22, 2001).

Deutschen Buchhandels ("Börsenverein"), the leading and largest German publishing association created in 1825, recommended registration of German books with the Copyright Office in order to avoid loss of U.S. protection. See Submission of VG Wort dated January 28, 2010, pp. 2-3. As a consequence, a significant number of German authors remain in the Author Sub-Class but likely do not know it.[7]

By way of summary, the Amended Settlement Agreement is problematic for the following reasons:

- The Amended Settlement Agreement Impacts German Author's and Publisher's Rights: Contrary to the intentions underlying the Amended Settlement Agreement, German authors are included in the Author Sub-Class by virtue of: (a) registration in the Copyright Office, or (b) publication in Canada, the United Kingdom or Australia;

- Lack of Representation On the Board of the Books Registry: Even though many German authors (as well as other international authors) and publishers remain a significant percentage of the Class, they are still not represented on the Board of the Books Registry -- a problem common to international authors, except those from Australia, Canada and the United Kingdom. As noted in Germany's previously filed objections, even if such authors were represented, it is not clear who would have the authority to fairly appoint members to the Books Registry, an uncertainty compounded by the fact that German authors and publishers are generally not permitted membership in either of the associational Plaintiffs. In stark contrast, German publishing rights societies have no input; See Memorandum in Opposition; pp. 20-22 (effect of Proposed Settlement Agreement upon German authors and publishers).

- Lack of International Focus By the Board of Books Registry: The Books Registry and the problems set forth previously regarding the Books Registry are still problematic because it is a domestic, rather than international, organization that results from a Court's action rather than a proper international treaty-based accord. Also, the proposed modification regarding Unclaimed Funds does not address the concerns voiced previously regarding German law. See Memorandum in Opposition, pp. 11-15, 16;

---

[7] Even though Google states that its website provides directions for authors who were previously in but are no longer part of the class. See "Supplemental Notice to Authors, Publishers, and Other Book Rightsholders About the Google Book Settlement," p. 2 at http://www.googlebooksettlement.com/r/view_notice. But, the so-called "Options Available to Former Settlement Class Members" section provides no such directions. See http://books.google.com/support/partner/bin/answer.py?answer=166297.

- <u>The Unlawful Registration Requirement Remains:</u>  As noted previously in the Memorandum in Opposition at page 12, an essential feature of international copyright law, as mandated by the Berne Convention, is the prohibition of any formality as a precondition for enjoying or enforcing a copyright interest.  The proposed Amended Settlement Agreement, as written, still creates a <u>de facto</u> registration requirement in that authors and publishers must opt-in or opt-out and file a detailed registration form proving they are registered or published in a qualified country with the soon-to-be created Book Rights Registry in order to be entitled to any payments and rights as an Author.  These requirements constitute a Berne-prohibited formality as a condition for enjoyment or enforcement of copyright in the class action.  These added formalities virtually assure that many German and other international authors will be disenfranchised through oversight;

- <u>Google Should Establish A Comprehensive Database of Scanned Books:</u> Google should be required to supply a comprehensive a database, without requiring an author to choose between opting in or opting out until all authors can determine whether or not they are an Author Sub-Class member and whether they have a claim against Google.  Even if they have a record of U.S. registration, German authors could still face the ironic dilemma of inclusion in the class while their books are defined in the Amended Settlement Agreement as "Out of Print" because they were only published in Germany or countries other than the United States, Canada, Australia, and the United Kingdom.[8]

- <u>The Amended Settlement Agreement Provides Google With An Exclusive License to Use "Orphan Works":</u>  The Amended Settlement Agreement still rewards Google -- a serial scanning infringer -- with a <u>de facto</u> exclusive license regarding copyrights held by authors for books published in the United States, Canada, Australia, and United Kingdom, as well as over German and other international authors whose books have been registered in the United States.  Competing digital libraries in Germany ("Deutsche Digitale Bibliothek") and throughout the world do not enjoy rights to such authors or "Orphan Works" because Germany requires licensing of rights prior to the usage of Orphan Works.  Such a sweeping <u>de facto</u> compulsory license system would require legislative action (equivalent to Congressional action) in Germany.  Germany respects copyrights of authors for his or her life plus seventy years.  In order to stop Google's scanning and commercial exploitation, each German author would have to bring his or her costly legal action since Germany does not recognize class action lawsuits and would not authorize this judicially-sanctioned result.  In fact, in the second full paragraph on page two of the Supplemental Notice, Google recognizes this deficiency and lays down the gauntlet by inviting foreign authors to sue if they have now been cut out of the settlement class.  <u>See</u> Memorandum in Opposition, pp. 13-15.

---

[8]  <u>See</u> Memorandum in Opposition, pp. 12-13, 20.

## **POINT II**

### THE AMENDED SETTLEMENT AGREEMENT DOES NOT AMELIORATE THE FATAL FLAWS IDENTIFIED BY THE UNITED STATES

At the October 7, 2009 status conference, counsel for plaintiff Author's Guild, Inc. stated that "the parties have worked on a daily basis assiduously to work in response and in tandem with the Department of Justice and the U.S. government's concerns expressed in its September 18 filing with the Court." Transcript of October 7, 2009, pp. 2-3. Unfortunately, the Amended Settlement Agreement does not reflect this assiduous work nor does it ameliorate the flaws noted by the United States of America.

A.   The Amended Settlement Agreement Does Not Satisfy Federal Rule of Civil Procedure 23

As both Germany and the United States noted previously, "the most sweeping forward-looking licensing provisions of the current Proposed Settlement (which give open-ended control to the Registry and Google for the exploitation of the rights of absent class members unless those class members opt out of those provisions) both exacerbate potential conflicts between the interests of the class representatives and those absent class members -- especially rights holders of out-of-print and foreign rightsholders -- and are difficult to square with the requirements of Rule 23." Statement of Interest, p. 5; Memorandum in Opposition, pp. 20-22. The Statement of Interest at page 11 specifically noted that: "[t]he Proposed Settlement operates to sweep the untold numbers of foreign works, whose authors, under current law, are not required to register in the manner as U.S. rightsholders. . . . [T]he parties have not demonstrated that the class included representation sufficient to protect the interest of these foreign rightsholders." As noted previously, the Amended Settlement Agreement made no effort to address this defect. Rather, Google encourages separate and parallel duplicative and wasteful copyright actions by excluding some original class members based upon false and arbitrary

-9-

geographic distinctions and by openly challenging any excluded prior class members to sue. Thus, even as Google further pares class members, it continues to scan all books, no matter the country of origin or author, without contrition. Those books will remain on Google's hard drive without territorial limitations. Google will then enjoy all the benefits of the prior flawed Settlement Agreement without suffering any further meaningful oversight or restrictions on its scanning operation.[9] This makes a mockery of Federal Rule of Civil Procedure 23 which requires "the structural assurance of fair and adequate representation." Anchem Prods., Inc. v. Windsor, 521 U.S. 591, 627 (1997). As a consequence, the conflicts between present and absent class members have been further exacerbated rather than eliminated.

B.      No Showing Has Been Made That Proper Robust Notice Has Been Provided

Similarly, rather than demonstrate that the notice provided has been sufficient to alert class members of their right to opt out, as the United States had requested, Statement of Interest, pp. 12-13, Plaintiffs and defendant Google have accelerated the time line for commentary and opting in or opting out on the Amended Settlement Agreement. Given that no direct notice has been provided to authors or publishers and there is no way an author can know that Google has scanned his or her book without opting in, the notice in this case is not sufficient under Federal Rule of Civil Procedure 23(c)(2). See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173-77 (1974)(Notice to individual class members through reasonable effort is mandatory under

---

[9]     The Statement of Interest does not prescribe the "divide and conquer" tactics advanced by the Amended Settlement Agreement but rather suggests "limiting the future rights that may be controlled by the Registry and Google." Statement of Interest, p. 8. This recommendation does not appear to have been followed in the Amended Settlement Agreement, notwithstanding the appearance of a willingness to do so. Id. Google also ignored a helpful Department of Justice recommendation that changing to an opt-in system with respect to out-of-print rightsholders would likely do little harm to Google's scanning project while going a long way to legitimizing a court-sanctioned global copyright settlement by class action pursuant to Federal Rule of Civil Procedure 23. Statement of Interest, pp. 13-14.

Rule 23(b)(3); requirement may not be relaxed due to high cost). This is especially the case where, as noted above, the criteria under the new definition of "Book" are not readily accessible or ascertainable. The special problems of notice for foreign rightsholders have not been addressed, no doubt because, as before, Plaintiffs and defendant Google have taken the position that they were never intended to be members of the class.

C.      The Amended Settlement Agreement Destroys the Landscape of World Copyright Law

Traditional United States and German copyright law allows the copyright owner to exclude others from using a copyrighted work absent authorization. In Germany, no one may scan a book for commercial purposes without the author's permission. See Memorandum in Opposition, pp. 11-15. As noted in the Memorandum in Opposition, the proposed Google Book Settlement creates an exclusive de facto compulsory license. Memorandum in Opposition, pp. 13-15. Courts and class action settlements are not the proper province for creating a cutting edge copyright statutory framework to bind future generations and impact global competition for the future of digital libraries. As the Register of Copyrights, Marybeth Peters has testified: "compulsory licenses in the context of copyright law [in the United States] have traditionally been the domain of Congress." "Hearing on Competition and Commerce in Digital Books: The Proposed Google Book Settlement Before the House Comm. on the Judiciary," 111th Cong., 1st Sess. at 5 (2009)(Statement of Marybeth Peters, Register of Copyrights). This also is the case in Germany. The proposed Amended Settlement Agreement has done nothing to address Germany's and United States' concerns regarding how Google's conduct is anathema to the fundamental principles of German and European copyright law. See Memorandum of Law in Opposition, pp. 11-15.

Instead of simplifying matters and ameliorating problems, the proposed Amended Settlement Agreement heightens the serious risks raised by this flawed solution to deal with a

-11-

critical technological development regarding publishing of the printed word. The proposed Amended Settlement Agreement further affords Google the opportunity and advantage of using the fruits of its illegal scanning activities to establish its products and services in the market so that, in future global negotiations to create a comprehensive and treaty-based or legislative solution, Google will have a head-start and significant leverage against all other competitors and international participants, thereby undermining long-established rules of copyright and traditional principals of fairness. This will further erode the international foundation of copyright law and foster disregard for treaty formalities, a result which will hinder the protection and advancement of intellectual property in the future. As such, the proposed Amended Google Book Settlement would create a bad precedent, which rewards the misinterpretation of fair use and the distortion of the American class action system to effectuate a judicially-sanctioned <u>de facto</u> compulsory digital rights license, which imperils the balance of international copyright law and usurps Congress' copyright authority under the Constitution. If Google is successful in setting such a precedent for books in this case, the same class action "legislation by litigation" strategy will probably be followed regarding other digital media, including sound recordings, motion pictures, and television.

The Amended Settlement Agreement does nothing to restrain the unfettered commercial advantages granted to Google through this class action settlement. For example, Google has the ability under the proposed Amended Settlement Agreement to advertise outside of the definition of "Advertising Uses"[10] and to sell and publish books and technology for the sale and publishing of books (machines for print on demand and digital publishing rights) which

---

[10] Not all advertising uses are "Advertising Uses" as defined. For example, advertising covering a general book search is expressly excluded from the definition of "Advertising Uses" even when the search yields only a single book as a result of an online inquiry. <u>See</u> Section 3.14.

are not within the "Commercially Available" definition as is set forth in the proposed Amended Settlement Agreement.[11] Oddly, the determination of whether a book is "Commercially Available" will be made based upon information available on the Internet so that it is possible that a book will be "Commercially Available" but deemed not so because the retail or wholesale seller does not avail itself to the Internet. In addition, if a seller sells millions of copies of a book, but only through print-on-demand publishing or e-books, this is not be deemed "Commercially Available" because this is not by definition a customary channel of trade in the Amended Settlement Agreement. (See Google Book Settlement, Para. 4.7(a)). These differences, and the failure to include cutting edge channels of trade within the scope of the Amended Settlement Agreement, give Google a commercial advantage in the emerging marketplace for distribution of electronic and digital print content.

## CONCLUSION

The Amended Settlement Agreement has the potential for permanently altering the copyright system, a system that has served us well since England enacted the Statute of Anne in 1710. Such a carefully balanced system, fine tuned over three hundred years, should only be changed through the legislative and treaty process in which all have an institutionalized voice for comment rather than through a single private class action in a United States court, in which only a limited number of voices may assert their influence.

---

[11] Also, following the definitional trail reveals that Google may make all display and non-display uses of books except as limited by the Settlement -- Section 3.3(a) -- but need only make payments for the display uses relating to the revenue models and Advertising Uses.

For all the foregoing reasons, the Court should reject the settlement proposal in its entirety or, in the alternative, exclude all German authors and publishers from the class.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: *(signature)*

Edwin Komen (EK-DC Bar No. 924209)
(Pro Hac Vice)
Theodore C. Max, Esq. (TM-1742)
30 Rockefeller Plaza, Suite 2400
New York, NY 10112
Tel.: (212) 653-8700
Fax: (212) 653-8701
Counsel for Federal Republic of Germany