- 1 -

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/28/10

Susan Price
87 Barncroft Road,
Tividale,
Oldbury
West Midlands,
B69 1TU
United Kingdom.

JAN 2 7 20.J

05-cv-8136

E-mail: susanlprice@hotmail.co.uk
Website: www.susanprice.org.uk

Dear Judge Chinn,

re: Author's Guild et al v. Google Inc.

Google Inc famously promised to 'do no evil'. Yet it seems to UK authors like myself that Google are at least naughtily intent on breaking the copyrights we fought so long and hard for, and taking a large slice of our income for themselves. It seems to us that their rationale for this is simply that they are bigger than us, and have more power.

I am an author of more than 50 books, for children and young adults. All of these books have been published in the United Kingdom, where I live, but some have also been published in the USA where they are registered with the US copyright office. I am therefore a member of the author sub-class for the above case.

I am writing to lodge the following objections to the changes in the Amended Google Book Settlement.

I am not a lawyer, so I apologize for not being able to use the correct terminology.


AMENDED SETTLEMENT CLASS
The new definition of 'book' is a distinct improvement on the original, but it still includes all books published in the UK, including those that have never been published in the USA. The logic behind this is not clear.

EXCLUSION OF EU COUNTRIES – WHY NOT UK?
The UK is a member of the European Union, but all other EU countries have been excluded. In particular, Ireland is excluded although it publishes in English, belongs to the EU and has a similar publishing industry to the UK. Surely if it is not appropriate for other EU countries to be included in the Amended Settlement, the UK should be left out as well.

NOT ALL UK BOOKS SUITABLE FOR USA
Including UK books in the Amended Settlement grants default rights to Google to make commercial use in the USA of all books published in the UK before the cut-off date that are 'Not Commercially Available', including selling digital and print-on-demand copies, without the permission of the copyright holder. This wrongly assumes that all books published in the UK are

- 2 -

suitable for publication or sale in the USA. Some books published here, especially legal ones, are written exclusively for a UK readership and contain UK-specific information and advice that would be wrong in the USA.

## RISK OF AUTHOR BEING SUED

A reader encountering such a book in a US library would hopefully realise that the book wasn't American. However, someone who purchases a new copy (either electronic or on paper) in America from an American company may naturally assume that the information it contains is relevant to America and may be caused inconvenience, distress or loss by following the advice it contains. The Amended Settlement therefore leaves UK authors open to being sued by US readers as a result of Google selling their books without their express permission and knowledge. As Google is not indemnifying them against this risk, the Amended Settlement is not fair to UK authors so they should be excluded from the class.

## AUTHORS NOT HAVING BEEN NOTIFIED.

Another serious legal situation could arise for the many UK authors who haven't received notice of the Amended Settlement and don't understand that the Amended Settlement automatically grants Google permission to copy and commercially distribute their out-of-print book. When arranging for their book to be re-published, authors may enter into a contract with another publisher granting them the exclusive rights to publish the book in the USA without realising that they no longer have the ability to do this. Again, this leaves UK authors liable to be sued so the Amended Settlement is not fair to them and they should be excluded from the class.

## POOR REPRESENTATION OF UK AUTHORS IN THIS CASE

The addition of two UK authors to the list of representative plaintiffs has not improved the representation of myself and other UK authors in this case. The addition of these two authors was not made public until the Amended Settlement was published so there was no opportunity for other UK authors to communicate with them during the negotiation phase.

One of the authors is a poet and novelist, the other is a novelist and biographer. Both have already had books digitised by Google so are entitled to the $60 per book payment. They do not adequately represent those whose books have not yet been digitised, children's authors, academic authors and those who write non-biographical non-fiction.

They have also both written books published in the US and registered with the US copyright office. They would therefore still be members of the class if UK books were excluded so they do not adequately represent UK authors who have never had a book published in the US.

## DETERMINATION OF COMMERCIAL AVAILABILITY

The changes to this part of the Amended Settlement are a definite improvement but it is still not fair, reasonable or adequate. Google have only agreed to use information from third party databases that it can obtain on '*fair and commercially reasonable terms.*' They have also only agreed to use '*commercially reasonable efforts*' to determine whether a book is 'Commercially Available' or is not.

## GOOGLE'S 'COMMERICAL REASONING' LIKELY TO BE UNFAIR TO AUTHORS

It is not fair or reasonable to take Google's commercial situation into account when deciding how best to determine a book's status under the Amended Settlement. Google stands to gain financially from classifying as many books as possible to be Not Commercially Available because this grants them default rights to make money from those books. As they face no financial penalty if they misclassify a book as Not Commercially Available when it is still for sale new, it is therefore not

- 3 -

'commercially reasonable' for them to spend much time and effort in getting the classification correct. In particular, accessing an expensive but comprehensively accurate database could easily be deemed to be 'not commercially reasonable' because the money spent in correctly ascertaining which books are commercially available would cut the number of books available for Google to exploit .

## AMENDED SETTLEMENT PLACES UNFAIR BURDEN ON COPYRIGHT HOLDERS
On the other hand, copyright holders stand to lose financially by having a book misclassified as they could lose ordinary sales if Google makes the book available online and through print-on-demand in competition with officially authorised editions on sale in bookshops. Although they can ask for the error to be corrected, they can only do this if they spot it and this puts an administrative burden on copyright holders to check the accuracy of the database. Some authors have hundreds of books to check while publishers may have thousands but the commercial effects of time spent on this task are completely ignored by the Amended Settlement. **Only Google's commercial situation is taken into account in the Amended Settlement, and this is neither fair nor reasonable**.

## ADDITIONAL REVENUE MODELS
It is good that this section is no longer so open ended. **However, it is unfair and unreasonable that it still does not require Google to have the copyright holder's express consent before producing POD and electronic versions of books deemed to be 'Not Commercially Available'.**

## GOOGLE AND INTERNATIONAL COPYRIGHT LAW
One of the most basic rights given to authors by UK, US and international copyright law is the right to reproduce their work and to grant permission to others to do so. This applies to all books that are still in copyright, not just those that are Commercially Available. Using class action law to restrict this right in favour of a single commercial company seems to be of dubious legality and goes well beyond the scope of the case being settled - a case that was never about the production and sale of new paper copies of books.

## NOT ALL BOOKS SHOULD BE ALWAYS AVAILABLE!
These additional revenue models also assume that all books that are Not Commercially Available should be made available for purchase again. This is not true. Some books are allowed to go out of print because the information and advice they contain is out of date. Occasionally books are taken out of print as part of the settlement of an accusation of libel or plagiarism. It should be enough for the authors of those books to leave matters as they are. They should not have to take further action to ensure that Google does not produce new copies of those books.

## BREAKING THE BERNE CONVENTION?
The action required by copyright holders to prevent these additional uses of their books is to either:
     1. register their details with the website, the court or counsel to opt out of the Amended Settlement:
     2. register their details with the website to claim their books and turn off the display settings.
     I believe that both the above processes count as the kind of formalities forbidden by the Berne Convention and that this court has no right to force them on UK authors who are being brought into the Amended Settlement by the use of the same convention's grant of a US copyright interest to all books published in the UK.

## UNCLAIMED WORKS FIDUCIARY – ADEQUATE REPRESENTATION?
The appointment of an unclaimed works fiduciary is definitely an improvement because it acknowledges the need for someone to speak up for copyright holders who do not know about this

- 4 -

Amended Settlement or who choose not to undergo the formality of registering their personal details. However, the fiduciary has not yet been appointed so the copyright holders of unclaimed works are still not adequately represented at this hearing and have not been adequately represented during the negotiation stage of the Amended Settlement.

## UNFAIR RESTRICTION OF FIDUCIARY'S POWERS?

Unfortunately, the fiduciary only appears to be able to act in a limited way. The last sentence of section 3.2(e)(i) states that "A direction to change the classification of a Book to a No Display Book or a group of Books to No Display Books, however, must be initiated by the Rightsholder of the Book or Books." This appears to mean that the unclaimed works fiduciary cannot do this on behalf of absent copyright holders, even when he has successfully challenged a book being classified incorrectly as Not Commercially Available. This is an unnecessary restriction of his powers that is neither fair nor reasonable as it serves only to help Google, not the absent class members.

It is fair that the person appointed as fiduciary should not also be an author or a publisher. **It is not fair that there is no equivalent provision ensuring that the fiduciary has no past or present connection with Google.**

## SUPPLEMENTAL NOTICE - FAILURE TO NOTIFY

No attempt has been made to distribute the Supplemental Notice to all class members. It has only been emailed to those who have already made their interest known by opting out, lodging an objection or registering with the website.

## REQUIREMENTS OF CLASS ACTION LAW UNMET?

A survey of UK children's authors known to the author of this letter, showed that, of the 23 who responded, less than half (11) had received the supplemental notice. Does this very limited distribution meet the requirements of Class Action Law?

## PICTORIAL WORKS.

In the Supplemental Notice, Item 18 about Pictorial Works is confusing and liable to lead to misunderstanding about who is affected by the Amended Settlement. Although it talks about picture books and manga, the sections it references are only about inserts and periodicals. Its statement that illustrations in picture books are only included in the Amended Settlement if the copyright holder of the illustrations is also a rightsholder in the book is unclear because the meaning of the term 'rightsholder' does not have the same meaning in the Amended Settlement as it does in normal life.

I have written the text for 'picture books' and for heavily illustrated books for children. I own the copyright to the text, and the artist owns the copyright to the illustrations. The illustrator is paid royalties and is, by normal definition, a rightsholder in the book.

But it is hard to understand whether s/he would be a rightsholder under the definition of the Amended Settlement. I therefore believe the notice is inadequate as it is not sufficiently easy for those who need to understand it to, in fact, understand it.

## THE AMENDED SETTLEMENT WEBSITE AND DATABASE

It is good that, in section 13.3, the Registry and Google are now obliged to maintain and improve the website and Google is supposed to try to eliminate errors in the database. However, both these requirements are too vague to be enforceable and, once again, Google's commercial needs are allowed to override the need for the accuracy in the database.

My friend and colleague, Diana Kimpton, has a particular interest in these issues, as she is a partner in a web design business, as well as an author. She has therefore made a comprehensive study of the website and database and has concluded that both are far from perfect and the database is so poor as to be not fit for purpose. I draw on her knowledge and research for the following:-

The Website
To use the website, authors first have to register their personal details and choose a user name and password. Once they have logged in to their account, they can see a list of all the books they have claimed, but this list doesn't show the ISBNs which makes identifying individual editions difficult.

The list also doesn't show the display settings for each book. This is an important omission as it makes it difficult for authors to check which settings they have chosen and to print them out as the necessary proof should there eventually be a dispute about how Google is using the book. There is a facility to download this information as a spreadsheet, but this is only available to authors with suitable software and it doesn't show the full range of display settings. Therefore, the only way for authors to keep a record of their choice of display settings is to print out the individual page for each book - an arduous task for prolific authors with large numbers of books on the database. Some writers produce series, and their editions can run into hundreds.

The project manager has suggested that a way around this problem is to submit a written list of all books together with the display settings, and to keep a copy of the submission. Again this is an arduous task for hundreds of books and, without checking the actual settings for each individual title, I will have no way of knowing if the changes I've requested have actually been made.

**This is an additional task imposed on authors solely by Google's decision to digitise their books, without express permission, and as such, is unfair and unreasonable.**

The Database
If authors wish to find out whether their books are on the database and whether they have been classified as Commercially Available, they must use the 'find and claim' facility. This can also be used for claiming books, although it is possible to submit a paper claim form instead or to upload a spreadsheet (in Microsoft Excel format only).

THE HEART OF THE AMENDED SETTLEMENT
The database lies at the heart of the Amended Settlement. It records which books have been digitised, and, more importantly, it records which books are classified as Not Commercially Available and can be used by Google without the copyright holder's permission.

THE FAILING HEART OF THE AMENDED SETTLEMENT
It only takes a few searches to show that the database is full of errors. Some books are entered without their ISBN, although they have one, which makes it impossible for Google to use third party commercial records to check if they are still on sale. Not surprisingly, every book I have found with no ISBN was also shown as Not Commercially Available. Some of these had already been digitised so there is no excuse for Google not to have recorded their ISBNs at the same time because they are written on the book.

IS GOOGLE REALLY TRYING TO BE ACCURATE?
However, these are not the only books wrongly classified as Not Commercially Available. Many others whose ISBNs are recorded are given the wrong designation, although they are readily available from www.amazon.com. This calls into question how much effort Google is putting into

- 6 -

finding up to date, correct information on availability and how effectively they are
incorporating that into the database.

## FAILURE TO APPLY CLAUSE 3.2(d)(i)(1)

Most seriously of all, the database is incapable of correctly applying clause 3.2(d)(i)(1) which states
that If a Book's Principal Work is not in the public domain under the Copyright Act in the United
States and that Book is Commercially Available, then any other Book that has the same Principal
Work (such as a previous edition) is also deemed to be Commercially Available, whether or not
such other Book is at the time in question also Commercially Available. The reason it fails to do this
is that the database does not have a reliable way to link together all the editions of the same
work, (although it does sometimes succeed in linking some of them).

## DATABASE UNLIKELY EVER TO WORK PROPERLY

The project manager assured my colleague, Ms Kimpton, that linking editions 'was something that
we are working to improve.' However, we consider that the chances of Google ever succeeding in
doing this properly are virtually non-existent, especially if their efforts are restricted to what they
decide is *commercially reasonable*. This is because different editions of the same work have
different, totally unrelated ISBNs, may be produced by different imprints and may even have
different titles - a situation that makes it extremely difficult, if not impossible, for any outside
agency, including Google and the unclaimed works fiduciary, to spot the connections between them.
The only people who can accurately link together different editions of the same work are the
copyright holders and publishers.

## COPYRIGHT HOLDERS' LOSS IS GOOGLE'S BENEFIT

The failure to apply clause 3.2(d)(i)(1) is extremely serious for copyright holders but works to the
benefit of Google. For instance, the database shows a Canadian edition of *Harry Potter and the
Goblet of Fire*, and three editions of *The Da Vinci Code*, all marked as 'Not Commercially
Available',.

All booksellers, most authors and most readers, know very well that both these books are still very
much commercially available and selling well. (My colleague Diana Kimpton has provided prints
out of these pages from the data-base with her letter.)

## GOOGLE IN DIRECT COMPETITION WITH COPYRIGHT HOLDERS

All four of these books are automatically set as Display Books because of this error. As a result, the
Amended Settlement allows Google to make copies of these books available on a commercial basis
without the permission of the copyright holders, in direct competition to editions that have been
officially authorized by J K Rowling and Dan Brown under Copyright Law.

## GOOGLE PLACES UNFAIR AND UNREASONABLE BURDEN ON AUTHORS.

If Google can't get it right for two such high profile books, what hope is there for the rest of us? It
seems that authors can change the display settings in this type of case, but that is no substitute for
correct implementation of clause 3.2(d)(i)(1). It places the administrative burden on the authors
rather than Google and only authors who claim their books and spot the mistakes will be in a
position to do these setting changes. Authors who do not claim their books for any reason are
completely unprotected as the unclaimed works fiduciary will not be able to link editions together
successfully and is, in any case, expressly forbidden from changing a book from Display to Non
Display. (section 3.2(e)(i).

Section 13.3 of the Amended Settlement is, therefore, totally inadequate because it is too vague to

- 7 -

be enforceable and it will not deal with the fundamental flaws of the database.

REMOVAL DEADLINES UNREASONABLE
There is no good reason why the removal deadline as to the libraries' digital copies has not been extended in line with the extension granted to the removal deadline as to Google. In fact, there is no good reason why either deadline exists at all. It is not fair, reasonable or adequate to impose deadlines on copyright holders removing their books when they may not discover that their books are covered by the Amended Settlement until after the deadlines have passed.

CONCLUSIONS
As a result of the above objections, I ask the court to refuse to certify the class and to reject the Amended Settlement Agreement.

If the Amended Settlement goes back for renegotiation, the minimum changes required include
    a) limiting its scope to books published in the USA;
    b) limiting its scope to allowing Google to scan books for search purposes only and to display snippets of strictly limited length, determined as a percentage of the whole work or insert.
    c) treating all in-copyright books the same so that no book that is still in copyright could be used in any way by Google without the express consent of the copyright holder. This would remove all the problems associated with deciding if a book is Not Commercially Available, remove the need for an unclaimed works fiduciary and give all copyright holders the protection they are entitled to under International Copyright Law.

Yours sincerely

Susan Price.