UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| The Authors Guild, Inc., et al, <br><br> Plaintiffs, <br><br> v. <br><br> Google, Inc. <br><br> Defendant. | FILED ELECTRONICALLY <br><br> Case No. 05 CV 8136 (DC) <br><br> OBJECTION TO AMENDED CLASS ACTION SETTLEMENT OF THE UNDERSIGNED STATES REPRESENTED BY THEIR RESPECTIVE ATTORNEYS GENERAL ON BEHALF OF THEMSELVES AND REGISTERED CHARITIES WITHIN THEIR POLITICAL BOUNDARIES |

The undersigned states hereby object to the proposed amended class action settlement and give notice of their intent to appear through counsel (Norman W. Marden, representing the Commonwealth of Pennsylvania) at the fairness hearing scheduled for February 18, 2010.

The undersigned states' Attorneys General continue to have standing as specified in our original objection(s) to the proposed settlement agreement and the undersigned State Attorneys General Objectors ("State Objectors") oppose the Amended Settlement Agreement ("Amended Agreement"), since its revised treatment of unclaimed funds still

violates state unclaimed property statutes and impermissibly disposes of charitable assets.[1]

The Amended Agreement deals superficially with the State Objectors' original concerns, but falls well short of the mark. The parties' Amended Agreement proposes to treat the unclaimed funds of Registered Rightsholders in accordance with the appropriate state unclaimed property law in an apparent effort to address the State Objectors' previously raised concerns, but it does not afford the same treatment to the unclaimed funds of unregistered Rightsholders. This different treatment is curious since the treatment of the unclaimed funds of Registered Rightsholders appears to be a tacit admission that unclaimed property laws do apply to unclaimed funds generated under this settlement. This treatment disregards the rights of absent class members.

The parties now propose to retain funds on behalf of unregistered Rightsholders for a period of five years. Amended Agreement 6.3(a)(i)(2) pp 83-4. At the end of the five-year period, the Unclaimed Works Fiduciary ("Fiduciary") may authorize the expenditure of up to 25% of the unclaimed funds to finance efforts to locate the rightful owner. Id. If the registry is unable to locate the rightful owner after ten years, then the funds are to be donated to a charity that promotes reading and literacy as defined under the Amended Agreement. Id. at 6.3(a)(i)(3) p. 84.

### Retention of Unclaimed Funds for More than Five Years Violates the Unclaimed Property Law of Every State and Territory of the United States

As a threshold matter, every state and territory of the United States that has an unclaimed property law will have had its law triggered by the end of the five-year period

---

[1] State Objectors Pennsylvania, Massachusetts and Washington jointly filed objections to the original Proposed Settlement Agreement. Missouri filed a separate objection to the original Proposed Settlement Agreement.

proposed in the Amended Agreement.[2] Most state unclaimed property laws are triggered by the expiration of a "dormancy period," which is either three years or five years for every state except North Dakota, whose statute is applicable after two years.[3] This means that under every unclaimed property law in the United States, the funds should have been turned over to the relevant state unclaimed property office before the proposed Fiduciary weighs in on any matter related to these funds. Many states' unclaimed property laws provide for substantial statutory interest and penalties applicable to funds not properly disposed of under those laws. Interest and penalties would begin to accrue on those funds retained beyond the time specified in the applicable statute.

### The Unclaimed Works Fiduciary Is Not Free to Act as a Reasonable Fiduciary Would

The Fiduciary is not free to act on behalf of unregistered Rightsholders to protect their unclaimed property, since his or her discretion is so narrowly defined as to bring about the result desired by the drafters of the provision, with little regard to serving the best interests of absent class members.

The Fiduciary's ability to act on behalf of unregistered rightsholders is significantly constrained by the terms of the Amended Agreement. After five years the Fiduciary is authorized to allow the release of up to 25% of the funds retained for unregistered Rightsholders ("Released Funds"). These Released Funds are to be used to locate unregistered Rightsholders. The Fiduciary will be giving the Book Rights Registry ("Registry") additional funds to accomplish what has been stated as one of its primary

---

[2] DAVID J. EPSTEIN, UNCLAIMED PROPERTY LAW AND REPORTING FORMS §5.21 (LexisNexis 2008) (1984).
[3] N.D. Cent. Code §47-30.1-09

functions, when it has already been unsuccessful in locating those Rightsholders for more than five years. Amended Agreement 6.1(c) p. 80.

Any true fiduciary would have substantial trepidation over authorizing this expenditure. This is especially true when the state unclaimed property laws would preserve those funds for Rightsholders in their entirety for an indefinite period of time. Indeed, it is hard to imagine how a fiduciary exercising true fiduciary duties would choose to do anything other than turning the money over to state unclaimed property funds because doing so preserves the entire corpus and avoids fees and penalties. Instead, the terms of the Amended Agreement require the Fiduciary to weigh the loss of 25% of those unclaimed funds against total forfeiture of all unclaimed funds after ten years have elapsed. If the Fiduciary does not authorize this expenditure, he or she surely risks being sued for a breach of his or her duties to unregistered Rightsholders when those unclaimed funds are privately escheated after ten years. The Fiduciary has no true discretion under the terms proposed in the Amended Agreement to disallow this expenditure, which ensures that this unlawful expense will be authorized.[4]

### The Amended Agreement Allows Twenty-Five Percent of Unregistered Rightsholders' Funds to Be Paid to Other Parties to this Lawsuit

There are no clear limits in the Amended Agreement to the Registry Board's power to disburse Released Funds to other parties to this suit, nor is the Board's discretion limited by the Fiduciary's concerns. The Amended Agreement charges the Registry with using commercially reasonable efforts to locate unregistered Rightsholders,

---

[4] State unclaimed property laws significantly restrict the ability of private holders of unclaimed funds to expend those funds, ostensibly to locate their rightful owner, by either setting limits on the amount allowed to be spent on these efforts or forbidding the practice entirely. This is done to prevent costly expenditures of unclaimed funds which may be of dubious value to the rightful owner. State unclaimed property offices maintain searchable and accessible databases of unclaimed funds, and many states periodically advertise larger sums being held on the web and in print media in hopes of locating the rightful owners.

but provides for a different means for utilizing Released Funds, as examined below. In fact, the Amended Agreement gives the Board of Directors of the Registry the final word in determining how these Released Funds are to be spent. The Fiduciary is merely consulted by the Board before the Board renders its decision and is in no way limited by any concerns expressed by the Fiduciary.

The settlement provides that these Released Funds may be used to locate unregistered Rightsholders as determined by the Registry Board, including by appropriate use of "national and international licensing and collecting societies, reproduction rights organizations, and associations of authors and publishers."[5] Unlike the section regarding charitable disposal of unclaimed funds, which "for avoidance of doubt" excludes the Authors Guild and other trade organizations, this section specifically authorizes payments to these same organizations for assistance in locating unregistered Rightsholders.[6]

These Released Funds may also be used for a host of things that benefit the parties to the Amended Agreement and the BRR, such as: 1) Paying salaries for additional Registry staff, which would be tasked with locating unregistered Rightsholders or 2) Purchasing advertising on Google for purposes of locating unregistered Rightsholders. This provision allows some parties to this lawsuit to be paid with unclaimed funds belonging to absent class members for assistance in locating those same absent class members after the Registry has failed to locate them.

### Charitable Disposition of Unclaimed Funds

The Amended Settlement Agreement proposes to dispose of unclaimed funds after ten years by distributing them to literacy-based charities. This disposition occurs

---

[5] Amended Agreement 6.3(a)(i)(2).
[6] Id. at 6.3(a)(i)(3).

through motion to the Court, after consultation with Google and the Fully Participating and Cooperating Libraries.

It is unclear why Google and the libraries are involved in the disposition of funds to which neither group has any legal right. These funds rightfully belong to the owner of the underlying work, which has no representation regarding the charitable disposition of these funds. This is especially true, since the Fiduciary is left out of this decision and can only approve the timing of the motion. Once again this limits the ability of the Fiduciary to safeguard the interests of the absent class members.

With improving literacy being the objective for the proposed charitable donation, it should be pointed out that the primary sources of literacy in the United States are the public school systems operated within the individual states. Education is primarily funded by state and local sources, accounting for 47.1 and 43.9 percent, respectively, of all public education expenditures nationwide according to a study on Public Education Finances done by the U.S. Census Bureau in 2004.

The parties propose to dispose of funds rightfully belonging to others by donating those funds to private charities instead of preserving those funds indefinitely for their rightful owners. Preservation by the states of absent class member funds would allow the states to utilize those funds for public purposes (which may include public education[7]) until the rightful owner comes forward.

Adhering to the state unclaimed property laws truly provides the best solution because it allows states to use these funds, while also preserving the funds for their rightful owner and providing a means by which those owners may reclaim their property.

---

[7] The State Objectors, of course, make no guarantee how state governments will use these funds. Some, but not all, state unclaimed property laws do have specific provisions requiring educational use of unclaimed property funds such as North Dakota and Florida.

The National Association of Unclaimed Property Administrators (NAUPA) states that claims, in most cases, may be made into perpetuity, even by the rightful owner's heirs, and that in Fiscal Year 2006 $1.754 billion was returned to the rightful owners. The desire of the parties to promote literacy, although admirable, should be legally accomplished with their own money, and not with money rightfully belonging to absent class members.

## Conclusion

At its heart, this matter is a case about the use of private property by persons other than the rightful owner for commercial gain. The right to private property –and to the proceeds from its use – was provided for by the founding fathers of our nation in the United States Constitution. The Constitution further authorized Congress to create what has become United States Copyright law.

United States Copyright law has long acknowledged the exclusive right of the owner of a copyrighted work to publish or withhold their work. The owner also has the right to profit from their work or to give it away for free. Much has been said about the public benefits of the proposed Settlement Agreement, but the copyright laws confer benefits on the public by encouraging acts of creation which result in the works at issue in this lawsuit.

If the bulk of the solution proposed in the Amended Agreement is fair to some owners of these works, it is still patently unfair to other owners because it allows the commercial exploitation of the copyrighted works of unregistered Rightsholders, without preserving the rightful owners' share of any profits gained from the use of their property. This is especially true since the Unregistered Rightsholder had no input into the terms of

the Amended Agreement, which authorizes the use of their property, establishes how profits will be split and then provides a means to deprive the Unregistered Rightsholder of even that amount.

The undersigned states have a sovereign interest in preserving the rights and property of our citizens, which includes safeguarding property and preserving it for the rightful owners.

                                  Respectfully submitted,

                                  THOMAS CORBETT, JR.
                                  Attorney General

By: _____
      James A. Donahue, III
      Chief Deputy Attorney General
      Attorney ID #42624
      jdonahue@attorneygeneral.gov

_____
s/ Norman W. Marden
Deputy Attorney General
Attorney ID #203423
nmarden@attorneygeneral.gov

Jennifer A. Thomson
Deputy Attorney General
Attorney ID #89360
jthomson@attorneygeneral.gov

Office of Attorney General
Antitrust Section
14th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-4530

8

Respectfully submitted,

THE COMMONWEALTH OF
MASSACHUSETTS

By its attorney,

MARTHA COAKLEY
ATTORNEY GENERAL

_____
Matthew M. Lyons, BBO 657685
Assistant Attorney General
Public Protection and Advocacy Bureau
Antitrust Division
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617) 727-2200, Ext. 2128
matthew.lyons@state.ma.us

January 28, 2010

ROBERT M. MCKENNA
Attorney General of Washington State

TINA E. KONDO
Deputy Attorney General
Antitrust Division Chief

/s/ Jonathan A. Mark
Jonathan A. Mark
Assistant Attorney General
WSBA No. 38051
Office of the Attorney General of Washington
Antitrust Division
800 5th Ave, Suite 2000
Seattle, WA 98104-3188
Tel: (206) 389-3806
Fax: (206)464-6338
Email: jonathanm2@atg.wa.gov