**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| The Authors Guild, Inc., Association of American Publishers, et. al., | Case No. 05 CV 8136-DC |
| Plaintiffs, | DECLARATION OF DR. CHRISTIAN SPRANG |
| v. | |
| Google Inc., | |
| Defendant. | |

1.      I, Dr. Christian Sprang, am a citizen of the Federal Republic of Germany and Justiziar/Senior Legal Counsel of the Börsenverein des Deutschen Buchhandels (the "Börsenverein"), the leading association of book publishers in my country.  I am not a native speaker of the English language, although I have some fluency in the language, and, accordingly, this declaration was translated for me into German before I signed it below.  Except as otherwise stated, I have personal knowledge of the matters I discuss below.

2.      I previously submitted a declaration with this Court on or about August 31, 2009 in connection with a prior set of Objections.  That declaration provides information about Börsenverein and its members and addresses various problems associated with the original settlement agreement that was presented to this Court in this case.  The problems that I addressed in my earlier declaration persist under the proposed Amended Settlement Agreement ("ASA").  I submit this additional declaration to supplement my earlier declaration and to address certain additional problems with the ASA.

**The Vague and Unmanagable Definition of Books**

3.      It is my understanding that a number of Börsenverein's members are putative members of the settlement class, as defined in the ASA, as I believe that they own or control one or more Books, under any of the possible meanings of the term as used in the ASA.  Nevertheless, I understand that Börsenverein's members have had substantial difficulties determining whether, and how many of, the numerous works that they own or control may be a Book under the ASA, either because such work was registered with the United States Copyright Office or had a "place of publication" in the United Kingdom, Australia or Canada.  Registration practices have varied from year to year and publisher to publisher, although we understand that a number of publishers, especially science and education publishers, did register their books with the U.S. Copyright Office if they planned to publish them in the U.S at any point in time (even well after publication elsewhere).

4.      It is very difficult for our members to determine whether and/or which of their works were registered with the United States Copyright Office, at least for works that were registered before 1978 (as this information is not available on the Copyright Office's website).  For example, it is common in the book industry for publication rights to be transferred and re-transferred between authors and publishers.  Accordingly, current rightsholders of Books governed by the ASA are not necessarily the original rightsholders.  In addition, as explained in our accompanying submission, the significance of registration has fluctuated dramatically over time and has been of almost no importance for foreign rightsholders for several decades, making it less important for foreign rightsholders to maintain accurate historic records since 1922 of their works'

registration status. It is my understanding that our members also have a difficult time

accessing records for events in the past, given the disruptions caused by World War II,

which resulted in records being lost or destroyed. None of the publishers I have spoken

to possess records that enable them to determine the registration status of all of the works

they have published in the ninety-year span covered by the ASA.

5.      In addition, as set forth in our Objections, the "place of publication

standard" in the ASA is indefinite. Even if it were definite and clear (and it is not), it

would require our members to review all of the hard copy printings of all of their works

published since 1922. To the extent our members currently possess all such copies, such

a review would be immensely burdensome.

### Problems With The Supplemental Notice

6.      It is my understanding that a German translation of a Supplemental

Notice regarding the ASA was distributed on or about December 14, 2009. This

Supplemental Notice, a true and correct copy of which is attached here as Exhibit A,

contained numerous translation errors. I have been informed that a revised version of the

Supplemental Notice was posted to the Settlement website by January 7, 2010 (the

"Revised Supplemental Notice"), but, to the best of my knowledge, our organization did

not receive this revised notice by mail or email. In any event, the revised Supplemental

Notice continues to contain translation errors. A true and correct copy of this Revised

Supplemental Notice is attached here as Exhibit B.

7.      I have found only one instance where the Revised Supplemental Notice

made a material improvement to the initial Supplemental Notice. The translation of

"comic books," originally translated into the non-existent term "Bilderromane," was

changed to "grafische Romane."  Many of the other changes, such as the shifting of

sentence order, do not add to the clarity of the notice.

8.      In many cases, the Revised Supplemental Notice introduces significant

translation errors.  It provides literal, unintelligible translations of terms of art applicable

to the class action mechanism, such as "fairness hearing," "final approval" of the

Amended Settlement, "Amended Settlement Class," and "opt out."  Because the concept

of a class action is foreign to German law, it is insufficient to provide literal translation of

"der Stichtag" (meaning reference date or test day) instead of "die Frist" to describe

applicable deadlines, which could mislead class members into believing that the stated

date is not a firm deadline.  While the initial notice used the latter, correct term, the

revised notice incorrectly used the former.  Similarly, while the initial notice informed

class members that they could "raise objections" ("Einwände erheben") before January

28, 2010, the revised version nonsensically tells them that they may "settle objections"

("Einwände einlegen") before this date.

9.      Other significant errors arise in both versions of the Supplemental

Notice.  The term "Inserts" was incorrectly translated again, this time as "Beilagen," a

term describing a print supplement to a newspaper or magazine, rather than "Beiträge,"

the correct term.  The term "Consumer Purchase" is not translated or explained, and is

accordingly unclear.  "Pictorial Works" is inadequately translated as "Bilderwerke," a

non-existent term.  "Adequate" in the phrase "fair, reasonable, and adequate" is

incorrectly translated as "korrekt" ("accurate") rather than "ausgewogen" ("adequate").

The description of changes in Google's rights to "display" works is also confusing.

"Display" is translated as "anzeigen," a capacious term that can mean "show," but can

also mean "announce," "advertise," "indicate," "suggest," "report," and "give notice." Accordingly, the reader cannot tell from this highly ambiguous term alone that the Notice is discussing the online display of a work.

10.    The use of defined terms (words with initial caps such as "Removal") in the Revised Supplemental Notice is also confusing because in the German language regular nouns are printed with initial caps as well.  Accordingly, the description of Removal deadlines, translated as "Removal from Google," is confusing.  The reference to the removal date for the libraries' digital copies is similarly unclear.  In any event, that sentence is misleading to foreign rightsholders given the importance of the changes to them.  The Supplemental Notice also contains a number of grammatical and capitalization errors that also hinder comprehensibility.

11.    The Revised Supplemental Notice is additionally unclear to readers accustomed to German bookselling practices.  For example, under Germany's book-pricing regime, prices are set by the publisher.  Accordingly, the references in the document to "Settlement Controlled Pricing" are not comprehensible to the German reader.

12.    Since December, I have not met any person who has received the Supplemental Notice who has been able to understand from the German translation of the Supplemental Notice what exactly the ASA covers.  From my discussions with these individuals, I have determined that much of this confusion is the result of the multitude of translation errors.

13.    It is my understanding that large numbers of our publisher members never received the Supplemental Notice or Revised Supplemental Notice at all.

**Inaccurate Press Reports Regarding the ASA**

14.     A number of news articles have been published in Germany regarding the ASA.  Those reports mistakenly reported or suggested that the ASA no longer impacted the rights of citizens of this country.  For example, two of Germany's most prominent newspapers, the Frankfurter Allgemeine Zeitung and the Süddeutsche Zeitung, ran articles immediately after the ASA was announced suggesting that the settlement no longer covered authors and publishers in continental Europe.  Thus, the Frankfurter Allgemeine Zeitung published an article on November 16, 2009, with the misleading headline "Google lässt Auslandstitel aus Buchvergleich fallen" or "Google Drops Foreign Titles out of Book Settlement."  The article went on to report that "Die Freitagnacht beim zuständigen New Yorker Richter eingereichte Neufassung des Vergleichs umfasst fast keine nicht englischsprachigen Bücher mehr"—the "The new version of the settlement which was submitted to the judge in New York on Friday night no longer applies to virtually any books which are not in the English language."  And on the same day, the Süddeutsche Zeitung published an article with the misleading headline "Weltbibliothek wird kleiner; Ohne Kontinentaleuropa: Google schränkt Buch-Digitalisierung ein" or "World's Library Grows Smaller; Without Continental Europe: Google Limits Digitisation of Books."  True and correct copies of these articles are attached here as Exhibit C.

15.     For each of the foregoing reasons, and for the reasons set forth in the Objections, Börsenverein objects to the Amended Settlement Agreement and respectfully urges the Court not to approve it.

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed on January 2?, 2009

Dr. Christian Sprang

# Exhibit A

**Von:** booksettlement_de@rustconsulting.com [mailto:booksettlement_de@rustconsulting.com]
**Gesendet:** Montag, 14. Dezember 2009 22:06
**An:** Sprang, Dr. Christian
**Betreff:** Vom Gericht genehmigte Aktualisierung betreffend den Google Buchsuche-Vergleich

### UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## Ergänzende Mitteilung für Autoren, Verleger und andere Bücher-Rechteinhaber zum Google-Buch-Vergleich

Die Parteien der *Autorengilde, et al. v. Google Inc.* haben einen Vergleich im Rechtstreit von Oktober 2008 angekündigt und eine Mitteilung dieses Vergleichs (der "Ursprüngliche Vergleich") versandt. Die Parteien haben jetzt den ursprünglichen Vergleich als Folge der Diskussionen mit dem amerikanischen Justizministerium und der Einwände zum ursprünglichen Vergleich geändert (der "Geänderte Vergleich"). Der geänderte Vergleichsvertrag ("ASA". Amended Settlement Agreement), sowie der ursprüngliche Vergleichsvertrag und die ursprüngliche Mitteilung, können unter http://www.googlebooksettlement.com/intl/de/ eingesehen oder beim Vergleichsverwalter angefordert werden.

Diese ergänzende Mitteilung soll nicht die ursprüngliche Mitteilung ersetzen, sondern sie nur ergänzen. Diese ergänzende Mitteilung erläutert:

1. Die inhaltlichen Änderungen des ursprünglichen Vergleichs,
2. Ihre Rechte unter dem Vergleichsvertrag, und
3. Das Datum der geplanten Fairness-Anhörung, bei der über die endgültige Genehmigung des Vergleichsvertrags entschieden wird.

---

**WICHTIGE AKTUALISIERUNG**: Die Frist für die Anmeldung von Büchern und Beilagen zur Barzahlung wurde vom 5. Januar 2010 auf den 31. März 2011 verlängert. Die Frist zur Entfernung von Google wurde vom 5. April 2011 auf den 9. März 2012 verlängert. (Die Frist bezüglich der Entfernung der digitalen Kopien der Bibliotheken bleibt beim 5. April 2011.)

---

### Zusammenfassung der Änderungen zum ursprünglichen Vergleich

**1. Geänderte Vergleichsklasse.** Die Definition von Büchern wurde eingeschränkt. Aus diesem Grund sind viele Mitglieder der Klasse unter dem ursprünglichen Vergleich nicht mehr Mitglieder der Klasse unter dem geänderten Vergleich.

1

*Rechteinhaber, die in die geänderte Vergleichsklasse einbezogen sind*

- Für US-Werke bleibt die Definition von Büchern im Großen und Ganzen unverändert: US-Werke müssen bis zum 5. Januar 2009 beim United States Copyright Office registriert und veröffentlicht worden sein, um in den geänderten Vergleich einbezogen zu werden.
- Werke, die keine US-Werke sind, sind nur im geänderten Vergleich einbezogen, wenn sie bis zum 5. Januar 2009 veröffentlicht und bis zu diesem Datum entweder beim United States Copyright Office registriert wurden oder ihr Erscheinungsort in Kanada, im Vereinigten Königreich ("UK") oder in Australien lag.

Infolge der Einschränkung der Definition von Büchern wurde auch die Reichweite der Definition von Beilagen eingeschränkt.

**Bitte beachten Sie, dass Sie eventuell ein Mitglied der geänderten Vergleichsklasse sein könnten, auch wenn Sie nicht in den USA, in Kanada, im UK oder in Australien wohnhaft sind.** Wenn Ihr Werk die obigen Kriterien erfüllt, dann sind Sie ein Mitglied der geänderten Vergleichsklasse, unabhängig davon, wo sie wohnhaft sind, und auch unabhängig davon, wo Ihr Werk sonst noch veröffentlicht wurde. (ASA, Paragraf 1.19)

Einem Werk wird ein Erscheinungsort in Kanada, im UK oder in Australien zugeschrieben, wenn das gedruckte Exemplar Informationen enthält, die anzeigen, dass der Erscheinungsort in einem dieser drei Länder lag. Solche Informationen können z. B. die Aussage, dass das Buch "in [Kanada oder Großbritannien oder Australien] veröffentlicht" wurde, oder den Standort oder die Adresse des Verlegers in einem dieser drei Länder beinhalten.

*Rechteinhaber, die nicht in die geänderte Vergleichsklasse einbezogen sind*

**Infolge dieser Änderungen, falls das einzige US-Urheberrecht, das Sie besitzen, sich auf Werke bezieht, die entweder (a) nicht bis zum 5. Januar 2009 beim United States Copyright Office registriert und veröffentlicht oder (b) bis zu diesem Datum nicht in Kanada, im UK oder in Australien veröffentlicht wurden, sind Sie kein Mitglied der geänderten Vergleichsklasse, auch wenn Sie ein Mitglied der ursprünglichen Vergleichsklasse waren.**

Falls Sie kein Mitglied der geänderten Vergleichsklasse sind, sind Sie nicht zur Teilnahme am geänderten Vergleich berechtigt, und Sie werden nicht an dessen Bedingungen gebunden. Sie behalten weiterhin alle Rechte, Google für die Digitalisierung und den unerlaubten Gebrauch Ihres urheberrechtlich geschützten Materials zu verklagen. Wenn Sie Google für die Digitalisierung und den unerlaubten Gebrauch verklagen möchten, müssen Sie einen separaten Prozess anstrengen. Ihre Rechte können eventuell durch Verjährungsvorschriften beeinflusst sein. **Wenn Sie an einem Prozess gegen Google interessiert sind, sollten Sie Ihren Rechtsanwalt konsultieren.**

Falls Sie ein Mitglied der Klasse unter dem ursprünglichen Vergleich waren, aber kein Mitglied der Klasse unter dem geänderten Vergleich sind, sollten Sie http://books.google.com/books-partner-options besuchen, um sich über Googles gegenwärtiges Vorgehen in Bezug auf die Entfernung Ihrer Werke aus den Datenbanken zu informieren sowie über Googles Interesse daran, Ihre Werke in Modellen, die denjenigen in dem geänderten Vergleich ähnlich sind, unter ähnlichen Bedingungen zugänglich zu machen.

**2. Lieferbar.** Der geänderte Vergleich stellt klar, dass ein Buch lieferbar ist, wenn es von einem Verkäufer irgendwo in der Welt einem Kunden in den USA, in Kanada, im UK oder in Australien

neu zum Verkauf angeboten wird. (ASA, Paragraf 1.31)

Der geänderte Vergleich sieht jetzt vor, dass Google ein Buch, das es als "Nicht lieferbar" klassifiziert, für mindestens 60 Tage nach dieser Klassifikation oder dem Inkrafttreten des geänderten Vergleichs, je nachdem, welches später eintritt, nicht anzeigen wird. Der geänderte Vergleich sieht jetzt auch vor, dass, wenn ein Rechteinhaber erklärt, dass ein Buch lieferbar ist, Google das Buch nicht anzeigen wird, es sei denn, dass Google diese Behauptung erfolgreich vor Gericht anficht. (ASA, Paragrafen 3.2(d)(i) und 3.3(a))

**3. Vertretung von kanadischen, UK und australischen Rechteinhabern im Gremium der Registrierstelle.** Der geänderte Vergleich sieht vor, dass das Gremium der Buchrechte-Registrierstelle (Book Rights Registry) (die "Registrierstelle") mindestens je einen Autor und Verleger als Direktor aus Kanada, UK und Australien haben wird. (ASA, Paragraf 6.2(b)(ii))

**4. Überwachung für Rechteinhaber außerhalb der USA.** Da die im geänderten Vergleich autorisierten Dienstleistungen Verbrauchern außerhalb der Vereinigten Staaten nicht zur Verfügung stehen, wird die Registrierstelle auf Anfrage die Nutzung von Büchern und Beilagen durch Google überwachen, um zu garantieren, dass diese den Anforderungen des geänderten Vergleichs und den Anweisungen der Rechteinhaber entsprechen, und wird bestrebt sein, den Rechteinhabern Mittel zur Verfügung zu stellen, damit sie selbst die von ihnen beanspruchten Bücher und Beilagen überwachen und überprüfen können. (ASA-Paragraf 6.1(f))

**5. Schlichtung von Streitfällen als Option für Rechteinhaber.** Der geänderte Vergleich sieht jetzt vor, dass Rechteinhaber sich einverstanden erklären können, Streitfälle nicht im Wege des im geänderten Vergleichs vorgesehenen Streitbeilegungsmechanismus zu schlichten. Außerdem können Rechteinhaber (aber nicht Google) per Telekonferenz oder Videokonferenz an Schlichtungen teilnehmen, um Reisekosten zu sparen. (ASA, Paragrafen 9.1(a) und 9.3(a))

**6. Unabhängige Vertretung für Rechteinhaber von nicht beanspruchten Büchern und Beilagen.** Die Registrierstelle wird einen Treuhänder beinhalten, der die Verantwortung für die Vertretung der Interessen von Rechteinhabern in Bezug auf die Verwertung von nicht beanspruchten Büchern und Beilagen haben wird. (ASA, Paragraf 6.2(b)(iii))

**7. Nicht beanspruchte Bücher und Beilagen und nicht beanspruchte Geldmittel.** Der geänderte Vergleich stellt klar, dass die Registrierstelle von Anfang an Geldmittel aus dem Vergleich einsetzen wird, um zu versuchen, Rechteinhaber aufzufinden. Der geänderte Vergleich sieht jetzt auch vor, dass Geldmittel, die Rechteinhabern für nicht beanspruchte Bücher und Beilagen ("nicht beanspruchte Geldmittel") zustehen, von der Registrierstelle nicht zum Zweck der allgemeinen Geschäftstätigkeit oder für Rücklagen benutzt und nicht an beanspruchende Rechteinhaber verteilt werden. Der geänderte Vergleich nimmt die folgenden Änderungen zum ursprünglichen Vergleich vor: (a) Nachdem nicht beanspruchte Geldmittel fünf Jahre lang gehalten wurden, darf die Registrierstelle, gemeinsam mit den Organisationen in Kanada, im UK und in Australien und in Abstimmung mit dem Treuhänder, bis zu 25 % der Geldmittel für den alleinigen Zweck der Auffindung von Rechteinhabern einsetzen; und (b) die restlichen nicht beanspruchten Geldmittel werden für die Rechteinhaber mindestens 10 Jahre lang gehalten. Danach kann die Registrierstelle, vorbehaltlich der Genehmigung des Treuhänders hinsichtlich des Timings, das Gericht um Erlaubnis bitten, die nicht beanspruchten Geldmittel an das Lesen und Schreiben fördernde Wohlfahrtsorganisationen in den USA, in Kanada, im UK und in Australien zu verteilen, und zwar nach Benachrichtigung der Rechteinhaber, der Attorneys General aller Staaten der USA und der voll teilnehmenden und mitwirkenden Bibliotheken. (ASA, Paragraf 6.3)

3

**8. Verpflichtung zur Verbesserung des Prozesses der Anspruchstellung und der Website.** Der geänderte Vergleich sieht vor, dass die Registrierstelle und Google (solange Google der Registrierstelle operativ unterstützt) die zum Zweck des Vergleichs betriebene Website betreuen und verbessern werden, um die Geltendmachung von Ansprüchen für Bücher und Beilagen zu erleichtern. Google verpflichtet sich auch, Fehler in der Bücherdatenbank zu beheben. (ASA, Paragraf 13.3)

**9. Zusätzliche Einkommensmodelle.** Der geänderte Vergleich begrenzt jetzt das Potenzial neuer Einkommensmodelle auf die folgenden drei zusätzlichen Einkommensmodelle, die von der Registrierstelle genehmigt werden müssen:

1. Print on demand ("POD"),
2. Datei-Download (früher "PDF Download") und
3. Benutzer-Abonnements.

Der geänderte Vergleich beschränkt POD, falls eine Genehmigung erteilt wird, auf Bücher, die nicht lieferbar sind. Außerdem schreibt der geänderte Vergleich vor, dass die Aufteilung des Einkommens zwischen Google und den Rechteinhabern aus den zusätzlichen Einkommensmodellen die gleiche ist wie für die bestehenden Einkommensmodelle.

Schließlich sieht der geänderte Vergleich vor, dass Rechteinhaber von beanspruchten Werken (und der Treuhänder für nicht beanspruchte Werke) rechtzeitig benachrichtigt werden, bevor ein zusätzliches Einkommensmodell gestartet wird, um ihnen Gelegenheit zu geben, Werke aus diesem Modell auszuschließen. (ASA, Paragraf 4.7)

**10. Zustimmung zu einer anderen Einkommensaufteilung für lieferbare Bücher.** Für lieferbare Bücher sieht der geänderte Vergleich vor, dass entweder Google oder der Rechteinhaber die Möglichkeit hat, eine Neuverhandlung der Standardeinkommensaufteilung von 63/37 Prozent für die Einkommensmodelle, einzeln oder insgesamt, zu verlangen. Wenn sie zu keiner Einigung kommen können, ist keine der Parteien gezwungen, die Bücher des Rechteinhabers unter diesen Einkommensmodellen anzubieten. (ASA, Paragraf 4.5(a)(iii))

**11. Rabatte auf den Verbraucher-Listenpreis.** Google hat von jetzt an ein uneingeschränktes Recht, den Listenpreis für Bücher zum Verkauf an Verbraucher zu rabattieren, solange Google weiterhin 63 % des nicht rabattierten Listenpreises an die Registrierstelle für Rechteinhaber zahlt. Die Registrierstelle kann Google auch erlauben, Sonderangebote für Bücher zum Verkauf an Verbraucher zu einem geringeren Preis als dem Listenpreis anzubieten und 63 % des rabattierten Listenpreises an die Registrierstelle für Rechteinhaber zu zahlen. Beanspruchende Rechteinhaber (und der Treuhänder für nicht beanspruchte Bücher) müssen jedoch über diesen vorgeschlagenen diskontierten Preis unterrichtet werden, und können dies für ihre (oder die nicht beanspruchten) Bücher ablehnen. (ASA, Paragrafen 4.5(b)(i) and (ii))

**12. Wiederverkauf des "Consumer Purchase" Service.** Der geänderte Vergleich sieht vor, dass Google Drittparteien gestatten muss, den Verbrauchern Zugang zu Büchern zu verkaufen, die im Rahmen des Google "Consumer Purchase" Service angeboten werden, wobei der Wiederverkäufer bei der Einkommensaufteilung den größeren Teil des 37-prozentigen Google-Anteils erhält. (ASA, Paragraf 4.5(b)(v))

**13. Gleichbehandlungsklausel (d. h. "Meistbegünstigungsklausel").** Paragraf 3.8 (a) des ursprünglichen Vergleichs wurde im geänderten Vergleich gestrichen.

**14. Vom Vergleich kontrollierte Preisgestaltung.** Der geänderte Vergleich stellt klar, dass der Algorithmus, der benutzt wird, um die vom Vergleich kontrollierten Preise für den "Consumer Purchase" zu berechnen, so entwickelt wird, dass dieser die Preise eines wettbewerblichen Marktes simuliert und dass der Preis für ein Buch ohne Rücksicht auf Preisänderungen bei anderen Büchern bestimmt wird. Der geänderte Vergleich stellt auch klar, dass die Registrierstelle den vom Vergleich kontrollierten Preis für ein Buch nur den Rechteinhabern des Buches offenlegen wird. (ASA, Paragrafen 4.2(b)(i)(2), 4.2(c)(ii)(2) und 4.2(c)(iii))

**15. Änderung der Funktionalitätseinschränkungen.** Rechteinhaber können Google ermächtigen, die infolge des geänderten Vergleichs vorgesehenen standardmäßigen Funktionalitätseinschränkungen von Einkommensmodellen, wie z. B. kopieren/einfügen und ausdrucken, zu ändern oder zu entfernen. (ASA, Paragraf 3.3(g))

**16. Unterstützung alternativer Lizenzen durch die Registrierstelle (einschließlich der "Creative Commons"-Lizenz).** Der geänderte Vergleich sieht vor, dass die Registrierstelle den Wünschen der Rechteinhaber entgegenkommen und erlauben wird, ihre Werke über alternative Lizenzen für "Consumer Purchase" zugänglich zu machen, einschließlich der "Creative Commons"-Lizenz. Zu weiteren Informationen über die "Creative Commons"-Lizenzen besuchen Sie bitte http://www.creativecommons.org. Der geänderte Vergleich stellt auch klar, dass es Rechteinhabern frei steht, den "Consumer Purchase"-Verkaufspreis für ihre Bücher an Verbraucher auf Null zu setzen. (ASA, Paragrafen 1.44, 4.2(a)(i) und 4.2(b)(i)(1))

**17. Terminals für öffentlichen Zugang.** Der geänderte Vergleich autorisiert die Registrierstelle, einer Erhöhung der Zahl der Terminals für den öffentlichen Zugang in einer öffentlichen Bibliothek zuzustimmen. (ASA, Paragraf 4.8(a)(i)(3))

**18. Bilderwerke.** Unter dem geänderten Vergleich fallen Illustrationen in Kinderbüchern nicht mehr unter die Definition von Beilagen. (ASA, Paragraf 1.75.) Der geänderte Vergleich ändert jedoch nicht die Einbeziehung von Bildwerken, wie z. B. Bilderromane und Bilderbücher für Kinder, in die Definition von Büchern und sieht vor, dass der geänderte Vergleich Google nur berechtigt, die Bildwerke in solchen Büchern anzuzeigen, wenn der Inhaber eines US-Urheberrechts auf das Bildwerk auch ein Rechteinhaber des Buches ist. Der geänderte Vergleich stellt auch klar, dass Comic-Hefte als Periodika anzusehen sind und dass Periodika (sowie Kompilationen von Periodika) nicht unter die Definition von "Büchern" fallen und nicht Teil des geänderten Vergleichs sind. (ASA, Paragraf 1.104)

**19. Musiknotensätze.** Die Definition des Buches wurde im geänderten Vergleich geändert, um die Absicht der Parteien besser erreichen zu können, Bücher auszuschließen, die hauptsächlich zum Musizieren benutzt werden. (ASA, Paragraf 1.19) "Musiknotensätze" sind auch nicht mehr in der Definition der Beilagen enthalten. (ASA, Paragraf 1.75)

**20. Fristen zur Geltendmachung von Ansprüchen auf Nutzung und Einbeziehungsgebühren.** Nutzungsgebühren werden für Rechteinhaber, die noch keine Ansprüche für ihre Bücher eingereicht haben, von nun an für mindestens zehn Jahre zurückbehalten, und Rechteinhaber können jetzt Einbeziehungsgebühren geltend machen, wenn sie Ansprüche für ihre Bücher oder Beilagen innerhalb von zehn Jahren anstatt von fünf Jahren nach Inkrafttreten des geänderten Vergleichs einreichen, in beiden Fällen so wie im ursprünglichen Vergleich vorgesehen. (Zuteilungsplan Abschnitte 1.1(c), 1.2(c) und 2.2)

## Ihre Rechte unter dem geänderten Vergleichsvertrag

Mitglieder der geänderten Vergleichsklasse haben die folgenden Optionen:

| Falls Sie. | Dann. | Frist |
|---|---|---|
| in der geänderten Vergleichsklasse bleiben möchten (wenn Sie nicht vorher aus dem ursprünglichen Vergleich ausgetreten sind) | brauchen Sie zurzeit nichts unternehmen. | entfällt |
| in der geänderten Vergleichsklasse verbleiben und berechtigt bleiben wollen, eine Barzahlung für alle vor dem 5. Mai 2009 gescannten Bücher oder Beilagen zu erhalten, aber noch keine Ansprüche für Ihre Bücher und Beilagen eingereicht haben | müssen Sie einen Anspruch einreichen, indem Sie das unter http://www.googlebooksettlement.com/intl/de/ oder beim Vergleichsverwalter erhältliche Antragsformular verwenden. | 31. März 2011 |
| bereits Bücher und Beilagen unter Verwendung des Antragsformulars beansprucht haben | brauchen Sie zurzeit keine zusätzlichen Schritte hinsichtlich dieser Bücher und Beilagen unternehmen. | entfällt |
| aus dem ursprünglichen Vergleich ausgetreten sind und dem geänderten Vergleich nicht beitreten wollen | Sie brauchen nicht - und sollten nicht - erneut austreten. Ihr Austritt aus dem ursprünglichen Vergleich gilt auch als Austritt aus dem geänderten Vergleich. | entfällt |
| nicht aus dem ursprünglichen Vergleich ausgetreten sind, aber aus dem geänderten Vergleich austreten möchten | können Sie das erledigen, indem Sie den Anweisungen in der ursprünglichen Mitteilung und unter http://www.googlebooksettlement.com/intl/de/ folgen. | 28. Januar 2010 |
| aus dem ursprünglichen Vergleich ausgetreten sind und den Wunsch haben, dem geänderten Vergleich beizutreten | können Sie das erledigen, indem Sie den Vergleichsverwalter oder Sammelklageanwalt benachrichtigen oder indem Sie das "Beitrittsformular" unter http://www.googlebooksettlement.com/intl/de/ ausfüllen. | 28. Januar 2010 |
| einen Einwand gegen die Bedingungen des geänderten Vergleichs einlegen möchten | Wenn Sie nicht ausgetreten sind, können Sie einen Einwand einlegen, indem Sie die Anweisungen in der ursprünglichen Mitteilung und unter http://www.googlebooksettlement.com/intl/de/ folgen.<br><br>Zu diesem Zeitpunkt können Sie nur einen | 28. Januar 2010 |

| | | |
|---|---|---|
| | Einwand gegen die Bestimmungen einlegen, die den ursprünglichen Vergleich ändern. Alle Einwände, die in Verbindung mit dem ursprünglichen Vergleich erhoben wurden, bleiben erhalten, sofern sie nicht zurückgezogen werden, und sollten nicht wieder eingereicht werden. | |
| bei der Fairness-Anhörung erscheinen und angehört werden möchten, jedoch noch keine Mitteilung zu Ihrer Absicht zu erscheinen eingereicht haben | müssen Sie eine Mitteilung über Ihre Absicht zu erscheinen einreichen, indem Sie die Anweisungen in der ursprünglichen Mitteilung und unter http://www.googlebooksettlement.com/intl/de/ befolgen. | 4. Februar 2010 |

## Neues Datum der Fairness-Anhörung

Das Gericht wird am 18. Februar 2010 um 10.00 Uhr im Gerichtssaal 11A des US District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, NY 10007 eine Fairness-Anhörung halten, um zu prüfen, ob der geänderte Vergleich, so wie er im ASA festgelegt ist, fair, korrekt und angemessen ist. Für weitere Informationen lesen Sie bitte die ursprüngliche Mitteilung hinsichtlich der Teilnahme an der Fairness-Anhörung.

**Falls Sie irgendwelche Fragen hinsichtlich dieser ergänzenden Mitteilung oder des geänderten Vergleichs haben, setzen Sie sich bitte mit den Rechtsanwälten der Gruppe oder mit dem Vergleichsverwalter in Verbindung, deren Kontaktinformationen Sie in der ursprünglichen Mitteilung oder unter http://www.googlebooksettlement.com/intl/de/ finden können. Sie können mit dem Vergleichsverwalter auch wie folgt in Verbindung treten:**

Google Book Search Settlement Administrator
c/o Rust Consulting, Inc.
PO Box 9364
Minneapolis, MN 55440-9364, USA
+1.612.359.8600 (Es können Telefongebühren anfallen. Gebührenfreie Nummern sind unter http://www.googlebooksettlement.com/intl/de/ zu finden.)

This message (including any attachments) may contain confidential or otherwise privileged information and is intended only for the individual(s) to which it is addressed. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message or that arise as a result of e-mail transmission. If verification is required please request a hard-copy version from the sender.

Rust Consulting, Inc.
www.RustConsulting.com

```
_____
This email has been scanned by the Postini Email Security System.
For more information please visit http://www.postini.com/
_____
```

# Exhibit B

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

# Ergänzende Mitteilung für Autoren, Verleger und andere Bücher-Rechteinhaber zum Google-Buch-Vergleich

Die Parteien in *Authors Guild, et al. v. Google Inc.* verkündeten im Oktober 2008 einen Vergleich im Rechtsstreit und verschickten eine Mitteilung dieses Vergleichs (der „Ursprüngliche Vergleich"). Die Parteien haben jetzt den Ursprünglichen Vergleich als Folge der Diskussionen mit dem amerikanischen Justizministerium und der Einwände zum Ursprünglichen Vergleich geändert (der „Geänderte Vergleich"). Der Geänderte Vergleichsvertrag (englisches Akronym: ASA) sowie der ursprüngliche Vergleichsvertrag und die ursprüngliche Mitteilung können unter http://www.googlebooksettlement.com/intl/de/ eingesehen oder vom Vergleichsverwalter mittels der auf Seite 6 angegebenen Kontaktinformationen angefordert werden.

Diese Ergänzende Mitteilung soll nicht die ursprüngliche Mitteilung ersetzen, sondern sie nur ergänzen. Diese Ergänzende Mitteilung erläutert:

1) Die inhaltlichen Änderungen des Ursprünglichen Vergleichs,
2) Ihre Rechte unter dem Geänderten Vergleich (siehe diese Ergänzende Mitteilung Seite 5), und
3) Das Datum der Fairness-Anhörung, die anberaumt wurde, um festzustellen, ob der Geänderte Vergleich die endgültige Zustimmung erhalten sollte (siehe diese Ergänzende Mitteilung Seite 6).

---

**WICHTIGE AKTUALISIERUNG**: Der Stichtag für die Anmeldung von Büchern und Beilagen zur Barzahlung wurde vom 5. Januar 2010 auf den 31. März 2011 verschoben. Der Stichtag zur Entfernung von Google wurde vom 5. April 2011 auf den 9. März 2012 verschoben. (Der Stichtag zur Entfernung hinsichtlich der digitalen Kopien für Bibliotheken bleibt beim 5. April 2011).

---

## Zusammenfassung der Änderungen zum Ursprünglichen Vergleich

**1.    Geänderte Vergleichsklasse.**  Die Definition von Büchern wurde eingeschränkt.  Aus diesem Grund sind viele Mitglieder der Klasse unter dem Ursprünglichen Vergleich nicht mehr Mitglieder der Klasse unter dem Geänderten Vergleich.

### *Rechteinhaber, die in die Geänderten Vergleichsklasse einbezogen sind*

- Für US-Werke bleibt die Definition von Büchern im Großen und Ganzen unverändert:  US-Werke müssen bis zum 5. Januar 2009 beim United States Copyright Office registriert und veröffentlicht worden sein, um im Geänderten Vergleich einbezogen zu werden.
- Werke die keine US-Werke sind, sind nur im Geänderten Vergleich einbezogen, wenn sie bis zum 5. Januar 2009 veröffentlicht und bis zu diesem Datum entweder beim United States Copyright Office registriert wurden oder ihr Erscheinungsort in Kanada, im Vereinigten Königreich („UK") oder in Australien lag.

Infolge der Einschränkung der Definition von Büchern wurde auch die Reichweite der Definition von Beilagen eingeschränkt.

**Bitte beachten Sie, dass Sie eventuell ein Mitglied der Geänderten Vergleichsklasse sein könnten, auch wenn Sie nicht in den USA, in Kanada, im UK oder in Australien wohnhaft sind.**  Wenn Ihr Werk die obigen Kriterien erfüllt, dann sind Sie ein Mitglied der Geänderten Vergleichsklasse unabhängig davon, wo sie wohnhaft sind und auch unabhängig davon, wo Ihr Werk sonst noch veröffentlicht wurde.  (ASA, Paragraf 1.19)

Einem Werk wird ein Erscheinungsort in Kanada, im UK oder in Australien zugeschrieben, wenn das gedruckte Exemplar Informationen enthält, die anzeigen, dass der Erscheinungsort in einem dieser drei Länder lag. Solche Informationen können z.B. die Aussage beinhalten, dass das Buch „in [Kanada oder Großbritannien oder

Australien] veröffentlicht" wurde, oder dass der Standort oder die Adresse des Verlegers in einem dieser drei Länder liegt.

### *Rechteinhaber, die nicht in die Geänderten Vergleichsklasse einbezogen sind*

**Infolge dieser Änderungen, falls das einzige US-Urheberrecht, das Sie besitzen, sich auf Werke bezieht, die entweder (a) nicht bis zum 5. Januar 2009 beim United States Copyright Office registriert und veröffentlicht oder (b) bis zu diesem Datum nicht in Kanada, im UK oder in Australien veröffentlicht worden sind, sind Sie nicht ein Mitglied der Geänderten Vergleichsklasse, auch wenn Sie ein Mitglied der Ursprünglichen Vergleichsklasse waren.**

Falls Sie kein Mitglied der Geänderten Vergleichsklasse sind, sind Sie nicht zur Teilnahme am Geänderten Vergleich berechtigt, und Sie werden nicht an dessen Bedingungen gebunden. Sie behalten weiterhin alle Rechte, Google wegen der Digitalisierung und des unerlaubten Gebrauchs Ihres urheberrechtlich geschützten Materials zu verklagen. Wenn Sie Google wegen der Digitalisierung und des unerlaubten Gebrauchs verklagen möchten, müssen Sie einen separaten Prozess anstrengen. Ihre Rechte können eventuell durch Verjährungsvorschriften beeinflußt sein. **Wenn Sie an einem Prozeß gegen Google interessiert sind, sollten Sie Ihren Rechtsanwalt konsultieren.**

Falls Sie ein Mitglied der Klasse unter dem Ursprünglichen Vergleich waren, aber kein Mitglied der Klasse unter dem Geänderten Vergleich sind, sollten Sie http://books.google.com/books-partner-options besuchen, um sich über Googles gegenwärtiges Vorgehen in Bezug auf die Entfernung Ihrer Werke aus seinen Datenbanken zu informieren, sowie über Googles Interesse daran, Ihre Werke in Modellen, die denen im Geänderten Vergleich ähnlich sind, unter ähnlichen Bedingungen zugänglich zu machen.

**2.     Lieferbar.** Der Geänderte Vergleich stellt klar, dass ein Buch Lieferbar ist, wenn es von einem Verkäufer irgendwo in der Welt einem Kunden in den USA, in Kanada, im UK oder in Australien neu zum Verkauf angeboten wird. (ASA, Paragraf 1.31.)

Der Geänderte Vergleich sieht jetzt vor, dass Google ein Buch, das es als Nicht Lieferbar klassifiziert, für mindestens 60 Tage nach dieser Klassifikation oder nach dem Inkrafttreten des Geänderten Vergleichs, was immer später eintritt, nicht anzeigen wird. Der Geänderte Vergleich sieht jetzt auch vor, dass, wenn ein Rechteinhaber erklärt, dass ein Buch Lieferbar ist, Google das Buch nicht anzeigen wird, es sei denn, dass Google diese Behauptung erfolgreich vor Gericht anficht. (ASA, Paragraf 3.2 (d) (i) und 3.3 (a))

**3.     Vertretung von kanadischen, UK und australischen Rechteinhabern im Gremium der Registrierstelle.** Der Geänderte Vergleich sieht vor, dass das Gremium der Buchrechte-Registrierstelle (Book Rights Registry) (die „Registrierstelle ") mindestens je einen Autor und Verleger als Direktor aus Kanada, UK und Australien haben wird. (ASA, Paragraf 6.2 (b)(ii))

**4.     Überwachung für Rechteinhaber außerhalb der USA.** Da die im Geänderten Vergleich autorisierten Dienstleistungen für Verbraucher außerhalb der Vereinigten Staaten nicht zur Verfügung stehen, wird die Registrierstelle auf Anfrage die Nutzung von Büchern und Beilagen durch Google überwachen, um zu garantieren, dass diese den Anforderungen des Geänderten Vergleichs und den Anweisungen der Rechteinhaber entsprechen, und wird bestrebt sein, den Rechteinhabern Mittel zur Verfügung zu stellen, damit sie selbst die von ihnen beanspruchten Bücher und Beilagen überwachen und überprüfen können. (ASA, Paragraf 6.1.(f))

**5.     Schlichtung von Streitfällen als Option für Rechteinhaber.** Der Geänderte Vergleich sieht jetzt vor, dass Rechteinhaber sich einverstanden erklären können, Streitfälle nicht im Wege des im Geänderten Vergleich vorgesehenen Streitbeilegungsmechanismus zu schlichten. Außerdem können Rechteinhaber (aber nicht Google) per Telekonferenz oder Videokonferenz an Schlichtungen teilnehmen, um Reisekosten zu sparen. (ASA, Paragraf 9.1 (a) und 9.3 (a))

**6.     Unabhängige Vertretung für Rechteinhaber von nicht beanspruchten Büchern und Beilagen.** Die Registrierstelle wird einen Treuhänder haben, der die Verantwortung für die Vertretung der Interessen von

2

Rechteinhabern in Bezug auf die Verwertung von nicht beanspruchten Büchern und Beilagen haben wird.  (ASA, Paragraf 6.2 (b)(iii))

**7.     Nicht Beanspruchte Bücher und Beilagen und Nicht Beanspruchte Geldmittel.**  Der Geänderte Vergleich stellt klar, dass die Registrierstelle von Anfang an Geldmittel aus dem Vergleich einsetzen wird, um zu versuchen, Rechteinhaber aufzufinden.  Der Geänderte Vergleich sieht jetzt auch  vor, dass die Registrierstelle Geldmittel, die Rechteinhabern für nicht beanspruchte Bücher und Beilagen („Nicht Beanspruchte Geldmittel") zustehen, nicht zum Zweck der allgemeinen Geschäftstätigkeit oder für Rücklagen benutzen und nicht an beanspruchende Rechteinhaber verteilen wird.  Der Geänderte Vergleich nimmt die folgenden Änderungen zum Ursprünglichen Vergleich vor:  (a) nachdem Nicht Beanspruchte Geldmittel für die Dauer von fünf Jahren gehalten wurden, darf die Registrierstelle gemeinsam mit Organisationen in Kanada, im UK und in Australien, und in Abstimmung mit dem Treuhänder, bis zu 25 % der Geldmittel für den alleinigen Zweck der Auffindung von Rechteinhabern einsetzen; und (b) die restlichen Nicht Beanspruchten Geldmittel werden für Rechteinhaber für die Dauer von mindestens 10 Jahren gehalten, worauf die Registrierstelle, vorbehaltlich der Genehmigung des Treuhänders hinsichtlich des Zeitpunkts, das Gericht um Erlaubnis bitten kann, die Nicht Beanspruchten Geldmittel an gemeinnützige Bildungseinrichtungen in den USA, in Kanada, im UK und in Australien zu verteilen, und zwar nach Benachrichtigung der Rechteinhaber, der Attorneys General aller Staaten der USA und die voll teilnehmenden und kooperierenden Bibliotheken.  (ASA, Paragraf 6.3.)

**8.     Verpflichtung zur Verbesserung des Prozesses der Anspruchstellung und der Website.**  Der Geänderte Vergleich sieht vor, dass die Registrierstelle und Google (solange Google die Registrierstelle operative unterstützt) die zum Zweck des Vergleichs betriebene Website betreiben und verbessern werden, um die Geltendmachung von Ansprüchen für Bücher und Beilagen zu erleichtern.  Google verpflichtet sich auch, Fehler in der Buch-Datenbank zu beheben.  (ASA, Paragraf 13.3.)

**9.     Zusätzliche Einkommensmodelle.**  Der Geänderte Vergleich begrenzt jetzt die Möglichkeit neuer Einkommensmodelle auf die folgenden drei zusätzlichen Einkommensmodelle, die durch die Registrierstelle genehmigt werden müssen:

      1)   Print on demand („POD"),
      2)   Datei-Download (früher „PDF Download ") und
      3)   Benutzer-Abonnement.

Der Geänderte Vergleich beschränkt POD, falls eine Genehmigung erteilt wird, auf Bücher, die Nicht Lieferbar sind.  Außerdem schreibt der Geänderte Vergleich vor, dass die Aufteilung des Einkommens zwischen Google und den Rechteinhabern aus den zusätzlichen Einkommensmodellen die gleiche ist, wie für die bestehenden Einkommensmodelle.

Schließlich sieht der Geänderte Vergleich vor, dass Rechteinhaber von beanspruchten Werken (und der Treuhänder für nicht beanspruchte Werke) rechtzeitig benachrichtigt werden, bevor ein zusätzliches Einkommensmodell gestartet wird, um ihnen Gelegenheit zu geben, Werke aus diesem Modell auszuschließen.  (ASA, Paragraf 4.7.)

**10.     Zustimmung zu einer Anderen Einkommensverteilung für Lieferbare Bücher.**  Für Lieferbare Bücher sieht der Geänderte Vergleich vor, dass entweder Google oder der Rechteinhaber die Möglichkeit hat, eine Neuverhandlung der Standardeinkommensverteilung von 63/37 für einzelne oder alle Einkommensmodelle zu verlangen.  Wenn sie zu keiner Einigung kommen können, ist keine der Parteien gezwungen, die Bücher des Rechteinhabers unter diesen Einkommensmodellen anzubieten.  (ASA, Paragraf 4.5 (a) (iii).)

**11.     Rabatte auf den Verbraucher-Listenpreis.**  Google hat von jetzt an ein uneingeschränktes Recht, den Listenpreis für Bücher zum Verkauf an Verbraucher zu rabattieren, solange Google weiterhin 63 % des nicht rabattierten Listenpreises an die Registrierstelle für Rechteinhaber zahlt.  Die Registrierstelle kann Google auch erlauben, Sonderangebote für Bücher zum Verkauf an Verbraucher zu einem geringeren Preis als dem Listenpreis anzubieten und 63 % des rabattierten Listenpreises an die Registrierstelle für Rechteinhaber zu zahlen.  Beanspruchende Rechteinhaber (und der Treuhänder für Nicht Beanspruchte Bücher) müssen jedoch über diesen

vorgeschlagenen diskontierten Preis unterrichtet werden, und können dies für ihre (oder die Nicht Beanspruchten) Bücher ablehnen. (ASA, Paragraf 4.5 (b) (i) und (ii))

12.     **Wiederverkauf des „Consumer Purchase" Service.** Der Geänderte Vergleich sieht vor, dass Google Drittparteien gestatten muss, Verbrauchern Zugang zu Büchern zu verkaufen, die im Rahmen des Google „Consumer Purchase" Service angeboten werden, wobei der Wiederverkäufer den größeren Teil des 37-prozentigen Einkommensanteils von Google erhält. (ASA, Paragraf 4.5 (b) (v))

13.     **Gleichbehandlungsklausel (d.h. „Meistbegünstigungsklausel").** Paragraf 3.8 (a) des Ursprünglichen Vergleichs wurde im Geänderten Vergleich gestrichen.

14.     **Vom Vergleich Kontrollierter Preis.** Der Geänderte Vergleich stellt klar, dass der Algorithmus, der benutzt wird, um die vom Vergleich Kontrollierten Preise für das „Consumer Purchase" zu berechnen, so entwickelt wird, dass dieser die Preise eines wettbewerblichen Marktes simuliert und dass der Preis für ein Buch ohne Rücksicht auf Preisänderungen bei anderen Büchern bestimmt wird. Der Geänderte Vergleich stellt auch klar, dass die Registrierstelle den vom Vergleich Kontrollierten Preis für ein Buch nur den Rechteinhabern des Buches offenlegen wird. (ASA, Paragraf 4.2 (b) (i) (2), 4.2 (c) (ii) (2) und 4.2 (c) (iii))

15.     **Änderung der Funktionalitätseinschränkungen.** Rechteinhaber können Google ermächtigen, die infolge des Geänderten Vergleichs vorgesehenen standardmäßigen Funktionalitätseinschränkungen von Einkommensmodellen, wie z.B. kopieren/einfügen und ausdrucken, zu ändern oder zu entfernen.

16.     **Unterstützung Alternativer Lizenzen durch die Registrierstelle (einschließlich der „Creative Commons"-Lizenz).** Der Geänderte Vergleich sieht vor, dass die Registrierstelle den Wünschen der Rechteinhaber entgegenkommen und erlauben wird, ihre Werke über alternative Lizenzen für „Consumer Purchase" zugänglich zu machen, einschließlich der „Creative Commons"-Lizenz. Zu weiteren Informationen über die „Creative Commons"-Lizenzen besuchen Sie bitte http://www.creativecommons.org. Der Geänderte Vergleich stellt auch klar, dass es Rechteinhabern frei steht, den „Consumer Purchase" Verkaufspreis für ihre Bücher an Verbraucher auf Null zu setzen. (ASA, Paragraf 1.44, 4.2 (a) (i) und 4.2 (b) (i) (1))

17.     **Terminals für Öffentlichen Zugang.** Der Geänderte Vergleich autorisiert die Registrierstelle, einer Erhöhung der Zahl der Terminals für den öffentlichen Zugang in einer öffentlichen Bibliothek zuzustimmen. (ASA, Paragraf 4.8 (a) (i) (3))

18.     **Bilderwerke.** Unter dem Geänderten Vergleich fallen Illustrationen in Kinderbüchern nicht mehr unter die Definition von Beilagen. (ASA-Paragraf 1.75.) Der Geänderte Vergleich ändert jedoch nicht die Einbeziehung von Bildwerken, wie z.B. grafische Romane und Bilderbücher für Kinder, unter der Definition von Büchern und sieht vor, dass der Geänderte Vergleich Google nur berechtigt, die Bildwerke in solchen Büchern anzuzeigen, wenn der Inhaber eines US-Urheberrechts auf das Bildwerk auch ein Rechteinhaber des Buches ist. Der Geänderte Vergleich stellt auch klar, dass Comic-Hefte als Periodika anzusehen sind und dass Periodika (sowie Kompilationen von Periodika) nicht unter die Definition von „Bücher" fallen und nicht Teil des Geänderten Vergleich sind. (ASA, Paragraf 1.104)

19.     **Musiknotensätze.** Die Definition des Buches wurde im Geänderten Vergleich geändert, um die Absicht der Parteien besser erreichen zu können, Bücher auszuschließen, die hauptsächlich zum Musizieren benutzt werden. (ASA, Paragraf 1.19) „Musiknotensätze" sind auch nicht mehr von der Definition der Beilagen erfasst. (ASA, Paragraf 1.75)

20.     **Stichtag zur Geltendmachung von Ansprüchen auf Nutzung- und Einbeziehungsgebühren.** Nutzungsgebühren werden für Rechteinhaber, die noch keine Ansprüche für ihre Bücher eingereicht haben, von nun an für mindestens zehn Jahre zurückbehalten, und Rechteinhaber können jetzt Einbeziehungsgebühren geltend machen, wenn sie Ansprüche für ihre Bücher oder Beilagen innerhalb von zehn Jahren, anstatt von fünf Jahren, nach Inkrafttreten des Geänderten Vergleichs einreichen, in beiden Fällen so wie im Ursprünglichen Vergleich vorgesehen (Zuteilungsplan Abschnitte 1.1(c), 1.2(c) und 2.2)

# Ihre Rechte unter dem Geänderten Vergleichsvertrag

Mitglieder der Geänderten Vergleichsklasse haben die folgenden Optionen:

| Falls Sie… | Dann… | Frist |
|---|---|---|
| in der Geänderten Vergleichsklasse bleiben möchten (wenn Sie nicht vorher aus dem Ursprünglichen Vergleich ausgetreten sind) | brauchen Sie zurzeit nichts zu unternehmen. | entfällt |
| in der Geänderten Vergleichsklasse verbleiben und berechtigt bleiben wollen, eine Barzahlung für alle am oder vor dem 5. Mai 2009 gescannten Bücher oder Beilagen zu erhalten, aber noch keine Ansprüche für Ihre Bücher und Beilagen eingereicht haben | müssen Sie einen Anspruch einreichen, indem Sie das unter http://www.googlebooksettlement.com/intl/de/ oder beim Vergleichsverwalter erhältliche Antragsformular verwenden. | 31. März 2011 |
| bereits Bücher und Beilagen unter Verwendung des Antragsformulars beansprucht haben | brauchen Sie zurzeit keine zusätzlichen Schritte hinsichtlich dieser Bücher und Beilagen zu unternehmen. | entfällt |
| aus dem Ursprünglichen Vergleich ausgetreten sind und dem Geänderten Vergleich nicht beitreten wollen | brauchen Sie - und sollten Sie - nicht wieder austreten.   Ihr Austritt aus dem Ursprünglichen Vergleich gilt auch als Austritt aus dem Geänderten Vergleich. | entfällt |
| nicht aus dem Ursprünglichen Vergleich ausgetreten sind, aber aus dem Geänderten Vergleich austreten möchten | können Sie das erledigen, indem Sie den Anweisungen in der ursprünglichen Mitteilung und unter http://www.googlebooksettlement.com/intl/de/ folgen. | 28. Januar 2010 |
| aus dem Ursprünglichen Vergleich ausgetreten sind und den Wunsch haben, dem Geänderten Vergleich beizutreten | können Sie das erledigen, indem Sie den Vergleichsverwalter oder dem Sammelklageanwalt benachrichtigen oder indem Sie das „Beitrittsformular" unter http://www.googlebooksettlement.com/intl/de/ ausfüllen. | 28. Januar 2010 |
| einen Einwand gegen die Bedingungen des Geänderten Vergleichs einlegen möchten | Wenn Sie nicht ausgetreten sind, können Sie einen Einwand einlegen, indem Sie die Anweisungen in der ursprünglichen Mitteilung und unter http://www.googlebooksettlement.com/intl/de/ befolgen. Zu diesem Zeitpunkt können Sie nur einen Einwand gegen die Bestimmungen einlegen, die den Ursprünglichen Vergleich ändern. Alle in Zusammenhang mit dem Ursprünglichen Vergleich eingelegten Einwände bleiben erhalten, sofern sie nicht zurückgenommen werden, und sollten nicht neu eingereicht werden. | 28. Januar 2010 |
| bei der Fairness-Anhörung erscheinen und angehört werden wollen und bisher noch keine Mitteilung über Ihre Absicht zu erscheinen eingereicht haben | Sie müssen eine Mitteilung über die Absicht zu erscheinen einreichen, indem Sie die Anweisungen in der ursprünglichen Mitteilung und unter http://www.googlebooksettlement.com/intl/de/ befolgen. | 4. Februar 2010 |

## Neues Datum der Fairness-Anhörung

Das Gericht wird am 18. Februar 2010 um 10:00 Uhr im Gerichtssaal 11A des US District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, NY 10007 eine Fairness-Anhörung durchführen, um zu prüfen, ob der Geänderte Vergleich, so wie er im ASA festgelegt ist, fair, korrekt und angemessen ist.  Für weitere Informationen lesen Sie bitte die ursprüngliche Mitteilung hinsichtlich der Teilnahme an der Fairness-Anhörung.

**Falls Sie irgendwelche Fragen hinsichtlich dieser Ergänzenden Mitteilung oder des Geänderten Vergleichs haben, setzen Sie sich bitte mit den Rechtsanwälten der Gruppe oder mit dem Vergleichsverwalter in Verbindung, deren Kontaktinformationen Sie in der ursprünglichen Mitteilung oder unter http://www.googlebooksettlement.com/intl/de/ finden können.  Sie können mit dem Vergleichsverwalter auch wie folgt in Verbindung treten:**

Google Book Search Settlement Administrator
c/o Rust Consulting, Inc.
PO Box 9364
Minneapolis, MN 55440-9364
USA
+1.612.359.8600 (Es können Telefongebühren anfallen.  Gebührenfreie Nummern sind unter
        http://www.googlebooksettlement.com/intl/de/ zu finden.)

# Exhibit C

**Source:** Frankfurter Allgemeine Zeitung of November 16, 2009
**Page:** 15

# Google lässt Auslandstitel aus Buchvergleich fallen

Der amerikanische Internetkonzern beugt sich dem Druck aus vielen Ländern und krempelt das Abkommen um. Aber die Kritik verstummt nicht.

lid. NEW YORK, 15. November. Der amerikanische Internetkonzern Google hat seinen umstrittenen Buchvergleich mit Autoren und Verlegern radikal verändert und sich damit insbesondere dem massiven Widerstand im Ausland gebeugt. Die Freitagnacht beim zuständigen New Yorker Richter eingereichte Neufassung des Vergleichs umfasst fast keine nicht englischsprachigen Bücher mehr. Google reagiert damit auf die scharfe Kritik, die vor allem aus Ländern wie Deutschland und Frankreich gekommen ist. Sogar Bundeskanzlerin Angela Merkel hat sich in die Diskussion eingeschaltet und die Buchvereinbarung von Google abgelehnt.

Nach der abgeänderten Version umfasst der Buchvergleich nur noch Werke, die entweder bei der amerikanischen Urheberrechtsbehörde registriert oder in anderen englischsprachigen Ländern wie Großbritannien, Australien und Kanada erschienen sind. Damit fallen "mehr als 95 Prozent" aller nicht englischsprachigen Bücher aus der Vereinbarung, sagte Paul Aiken, der Chef der amerikanischen Autorengewerkschaft, am Samstag in einer Telefonkonferenz. Die Zahl der herausgenommenen Bücher gehe "sicher in die Millionen". Nur ein sehr kleiner Teil nicht englischsprachiger Werke sei auch bei der amerikanischen Behörde registriert.

Google teilte mit, der neue Vergleich beschränke sich nun auf Länder "mit einer gemeinsamen Rechtstradition und ähnlichen Praktiken in der Buchindustrie". Der bei Google für das Buchprojekt verantwortliche Dan Clancy sagte, er sei enttäuscht, dass eine Reihe von Büchern nun nicht mehr erfasst würden. Google werde sich aber "in Kürze" mit Autoren und Verlegern in Ländern wie Deutschland und Frankreich treffen und hoffe, zu einer ähnlichen Vereinbarung zu kommen wie in Amerika.

Der Vergleich zwischen Google und amerikanischen Autoren- und Verlegerorganisationen wurde ursprünglich im Herbst vergangenen Jahres geschlossen. Er war das Ergebnis einer jahrelangen juristischen Auseinandersetzung zwischen Google und der Buchbranche. Google begann im Jahr 2004 damit, in großem Stil Bücher zu digitalisieren und auf seiner Internetseite verfügbar zu machen, ohne dies mit etwaigen Inhabern von Urheberrechten abzusprechen.

Der amerikanische Verlegerverband und die Autorengewerkschaft verklagten Google im Jahr 2005, und dieser Rechtsstreit fand mit dem Vergleich im Oktober 2008 ein vorläufiges Ende. Google erklärte sich darin zur Zahlung von 125 Millionen Dollar bereit, die unter anderem in eine neue Instanz zur Verwaltung von Buchrechten gesteckt werden sollten. Im Gegenzug erlaubte der Vergleich Google, weiter Bücher einzuscannen und zu vermarkten. Seit dem Vergleich, der von Anfang an unter dem Vorbehalt einer richterlichen Genehmigung stand, hat sich aber eine wachsende Front von Google-Gegner gebildet. Massive Opposition kam dabei vor allem aus dem Ausland. Aber auch das amerikanische Justizministerium erhob Einspruch und äußerte die Befürchtung, Google könnte mit der Vereinbarung eine beherrschende Position bei der Vermarktung digitaler Bücher bekommen. Zu den Kritikpunkten gehörte der Umgang mit Büchern, die zwar nicht mehr lieferbar sind, aber noch unter Urheberrecht stehen. Google darf dem ursprünglichen Vergleich zufolge diese Bücher auf seiner Seite verkaufen und in Ausschnitten umsonst zeigen, es sei denn, der Inhaber der Urheberrechte lehnt dies mit einem sogenannten "opt out" ausdrücklich ab. Häufig sind die Urheberrechtsinhaber aber nicht auffindbar.

Die neue Version des Buchvergleichs sieht auch Änderungen für diese Fälle vor. Es bleibt zwar grundsätzlich bei der "opt out"-Regelung. Allerdings solle nun ein unabhängiger Treuhänder bestimmt werden, der allein für diese Bücher zuständig ist und die mit ihnen erzielten Erlöse verwalten soll. Sollten die Inhaber der Urheberrechte dieser Bücher nicht innerhalb von zehn Jahren ihre Ansprüche reklamieren, sollen die Erlöse an wohltätige Zwecke verteilt werden. In der Neufassung verspricht Google weiterhin, seine digitale Bibliothek an andere Unternehmen zu lizenzieren.

Es ist offen, ob Google und seine Partner damit die Bedenken des amerikanischen Justizministeriums zerstreuen konnten. Paul Aiken wies aber darauf hin, es habe bei der Neuformulierung des Vergleichs einen engen Dialog

1

mit der Behörde gegeben. Bei einer prominenten Gruppe von Gegnern stieß der abgeänderte Buchvergleich sofort auf Kritik: Die Organisation "Open Book Alliance", der sich Google-Wettbewerber wie Microsoft, Amazon und Yahoo angeschlossen haben, sprach von einem "Taschenspielertrick". Die Neufassung ändere nichts an den "fundamentalen Fehlern" in dem Abkommen.

Der New Yorker Richter Denny Chin wird sich nun mit der neuen Einigung beschäftigen. Paul Aiken sagte, er rechne nicht vor nächster Woche mit einer Reaktion des Richters. Der Richter werde dann einen Zeitrahmen setzen, in dem Einspruch gegen die Neufassung erhoben werden kann. Eine Anhörung vor dem Gericht, in der eine endgültige Entscheidung über den Vergleich getroffen werden kann, schlagen Google und seine Partner für 18. Februar 2010 vor.

5 / 15

**Abbildung** Automatischer Buchscanner.

**Abbildung** Foto ddp

© 2009 PMG Presse-Monitor GmbH

6 /

**Quelle**        Süddeutsche Zeitung vom 16.11.2009
**Seite**         11
**Ressort**       Feuilleton

Süddeutsche Zeitung                              FEUILL|

# Weltbibliothek wird kleiner

## Ohne Kontinentaleuropa: Google schränkt Buch-Digitalisierung ein

Google hat seine Pläne, eine Art digitaler Weltbibliothek im Internet aufzubauen, vorläufig stark eingeschränkt. Nach dem überarbeiteten Entwurf des „Google Settlement" zur Bereitstellung digitalisierter Bücher, den Google zusammen mit den Verbänden der amerikanischen Autoren und Verleger am Freitag in New York vorstellte, sollen nun nur noch Bücher online verfügbar gemacht werden, die in den USA, Kanada, Großbritannien und Australien erschienen sind.

Nach dem neuen Entwurf soll zudem ein unabhängiger Treuhänder eingesetzt werden, der über den Umgang mit vergriffenen Büchern – deren Rechteinhaber unbekannt oder nicht kontaktierbar sind – wacht und Lizenzen zu ihrer Verwertung im Internet auch an Google-Konkurrenten wie Amazon oder Microsoft erteilen kann. Das Geld, das damit verdient wird, soll für zehn Jahre eingefroren werden. Wenn die Rechteinhaber während dieser Zeit ihre Ansprüche nicht geltend machen, soll es Wohlfahrtszwecken zukommen. Damit sind die umstrittensten Aspekte von Google Books erheblich entschärft.

Google hatte das ursprüngliche Modell am 7. Oktober dem zuständigen New Yorker Richter Denny Chin vorlegen sollen. Doch schon seit Anfang des Jahres wurde die Kritik daran weltweit immer lauter. Nach Autoren und den Vertretern der Buchbranche, vor allem aus Deutschland und Frankreich, kritisierten auch europäische Politiker das Vorgehen von Google. Als schließlich das US-Justizministerium den Richter im September bat, den Entwurf wegen des problematischen Umgangs mit dem Urheberrecht abzulehnen, blieb Google und seinen Partnern aus der amerikanischen Buchbranche nichts anderes übrig, als die Modalitäten in Rekordzeit zu überarbeiten. Richter Chin wird über den neuen Entwurf nun Anfang nächsten Jahres entscheiden.

Mit der neuen Fassung bemühen sich Google und die Verleger auch, von der US-Regierung geäußerte Sorgen aus der Welt zu räumen, Google schaffe sich eine Monopolstellung im digitalen Buchmarkt. Konkurrenten wie Microsoft, Yahoo und Amazon haben es nun leichter, eigene Online-Bibliotheken aufzubauen. In ersten Reaktionen zeigten sich diese allerdings nicht zufrieden. Peter Brantley, der Vorsitzende der Open Book Alliance, einem Verband von Google-Konkurrenten, Universitäten, Bibliotheken und Museen, bezeichnete die Modifikationen als „Täuschungsmanöver": „Das Settlement dient nach wie vor ausschließlich den privaten kommerziellen Interessen von Google und seinen Partnern."

Der Google-Sprecher Dan Clancy sagte, er sei enttäuscht, dass die Buchsuche sich nun beim urheberrechtlich geschütztem Material auf englischsprachige Texte beschränke. Doch man gebe nicht auf: Gespräche mit Verlagen und Autoren in Europa sollen in Kürze beginnen.        jhl

SZdigital: Alle Rechte vorbehalten – Süddeutsche Zeitung GmbH, München
Jegliche Veröffentlichung exklusiv über www.sz-content.de

© 2009 PMG Presse-Monitor GmbH