

**DIREKTION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-29-10

The Honorable Denny Chin
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

JAN 2 2010

RE: THE AUTHOR'S GUILD ET AL. V. GOOGLE, INC. - CASE NO. 1: 05-CV-08136 (DC)

Dear Judge Chin:

We respectfully request the court's permission to submit this letter as an amicus curiae brief opposing approval of the Amended Settlement Agreement[1] in the above case.

ProLitteris is the only Swiss Copyright Collecting Society representing 9'000 Swiss authors and 800 Swiss publishers of literary works. We represent their copyright interests. Founded 1974 ProLitteris distributes almost USD 20 million amongst Swiss rightsholders per year (1).

ProLitteris appreciates that the parties to the case, by restricting the definition of *"Book"*, have excluded many foreign authors and publishers from the scope of the Amended Settlement Class and have thus tried to meet the wishes of these rightsholders not to be drawn into a settlement agreement in which they were not represented. Nevertheless, the situation under the Amended Settlement Agreement is:

- Many Swiss authors and publishers still remain in the Amended Settlement Class.

- Even more of them are now left in doubt as to whether they fall into the Amended Settlement Class or not.

The Amended Settlement Agreement provides neither the Swiss authors nor publishers nor collecting societies with adequate tools for clarification of the actual status of a book. Therefore, Swiss authors and publishers still have a legitimate interest in this case, as does ProLitteris.

ProLitteris further accepts that at this point in time, objections to the terms of the Amended Settlement Agreement shall be limited to the provisions amended from the original Settlement Agreement. For the purpose of this amicus curiae brief, we shall limit ourselves in the same way. Each of the issues raised below results from the fact that the mechanism provided by the Amended Settlement Agreement for limiting the scope of the Amended Settlement Class falls short of effectively narrowing it to an English speaking territory.

---

[1] Capitalized words in this letter shall have the meaning as defined in the Amended Settlement Agreement.

Universitätstrasse 100
Postfach, 8033 Zürich
Tel +41 (0)43 300 66 15
Fax +41 (0)43 300 66 68
www.prolitteris.ch

▶ProLitteris

1. **DIFFICULTIES IN DISTINGUISHING BETWEEN AMENDED SETTLEMENT CLASS MEMBERS AND NON-MEMBERS**

   The Amended Settlement Agreement does not provide an adequate test for distinguishing between authors and publishers who are part of the Amended Settlement Class and those who are not. As a collecting society representing authors and publishers, ProLitteris is dependent on standardized procedures to keep administration costs down. ProLitteris cannot engage in disputes over countless works. The Amended Settlement Agreement therefore jeopardizes ProLitteris's service to Swiss authors and publishers to the extent that concerns their rights under the Amended Settlement Agreement. But if authors and publishers were to make use of their rights under the Amended Settlement Agreement themselves, they would face the same obstacles as ProLitteris.

   The definition of the Amended Settlement Class turns on the definition of "Book" (cf. Sections 1.13, 1.19 and 1.75 of the Amended Settlement Agreement). The changes made to the definition of Book in the Amended Settlement Agreement were intended to narrow the class to include countries with a common legal heritage and similar book industry practices. However, there remain two significant groups of foreign works which, as a rule, continue to fall within the scope of the definition of Book, as set forth below.

   1.1 **Books registered with the United States Copyright Office**

   Even if not a United States work, as defined in 17 U.S.C. § 101, any written or printed work published on or before January 5, 2009 is a Book within the meaning of the Amended Settlement Agreement if such work was registered with the United States Copyright Office (Sec. 1.19 (c) (2) (x)).

   Before 1978, in Switzerland a large number of Swiss publishers registered their books with the United States Copyright Office. The reason was that until the United States Copyright Act of 1976 came into effect on January 1, 1978, no work would be granted copyright protection in the United States unless registered.

   Consequently, a considerable number of Swiss books which reached the United States before 1978 were registered with the United States Copyright Office and therefore fall within the scope of the Amended Settlement Agreement. Numerous Swiss publishers have continued registering their books even after this point as registration is required before a lawsuit for infringement can be filed and as a prerequisite for certain remedies. In practice, the exact number of Swiss books registered is unknown.

▶ProLitteris

For the rightsholders, it is impracticable to research which of their works have been registered, in particular in relation to the period before 1978. The information on registrations and documents dating before 1978 was available only until a few days ago, only on catalog cards which may be inspected during the Copyright Office's opening hours[2]. No online search is available for this time period. The average author and most foreign publishers will neither have the financial means to personally visit the Copyright Office nor to have the Copyright Office staff or a private service conduct a search against payment of an hourly fee. They are therefore not able to verify if a work is a Book within the definition of Sec. 1.19 of the Amended Settlement Agreement or not.

The same is true for ProLitteris. Its data bases do not include any information as to whether a work was registered with the Copyright Office or not.

Only recently, Google claimed to have made available online 90 volumes of the Catalog of Copyright Entries it scanned from the Copyright Office Catalog.[3] They appear to be searchable online through Google Books. This only highlights the fundamental problem arising from the Amended Settlement Agreement's approach in defining the Amended Settlement Class. In any case, the search options provided by Google are not suitable for efficient and automated rights clearing.

(a)  Rightsholders outside the United States have not been informed of the new search options. Yet the Amended Settlement Agreement holds them responsible for determining whether they are members of the Amended Settlement Class or not.

(b)  The new search option came very shortly before the deadline of January 28, 2010 for opting back in or opting out of the Amended Settlement Agreement. Rightsholders were not given sufficient time to check their data.

(c)  There is no link from the data base of Copyright Entries to any data base of Digitized Books.

(d)  It is not possible to run automated searches in the data base of Copyright Entries and automatically match search results with any other data base, e.g. a publisher's or a collecting society's data base.

(e)  Spot checks have revealed that the quality of the data base of Copyright Entries is poor. Misspellings such as "Kiepenheyer" instead of the name "Kiepenheuer" occur.

---

[2] United States Copyright Office, Circular 23, page 1. See www.copyright.gov/circs/circ23.pdf, visited on January 6, 2010.

[3] See http://books.google.com/googlebooks/copyrightsearch.html, visited on January 20, 2010.

1.2 **Works published in Canada, the United Kingdom or Australia**

Under Sec. 1.19 (c) (2) (y) of the Amended Settlement Agreement, even if the work is not registered with the United States Copyright Office it is still a Book provided that it had a place of publication in Canada, the United Kingdom or Australia. According to the Amended Settlement Agreement, this shall be

> *"evidenced by information printed in or on a hard copy of the work"*

including

> *"for example, a statement that the Book was "published in [Canada] or [the UK] or [Australia]," or the location or address of the publisher in one of those three countries."*

These criteria are so vague that there will innumerable cases of doubt in which Google and the rightsholder may argue either way.

2. **CONTINUED DISCRIMINATION AGAINST SWISS RIGHTSHOLDERS**

It has been shown that a significant number of Swiss authors and publishers remain within the scope of the Amended Settlement Class and a possibly even greater number of Swiss rightsholders are forced to give attention to the Amended Settlement Agreement due to the uncertainties of whether they are part of the Amended Settlement Class or not. Therefore, the systematic exclusion of Swiss representatives and the disregard of Swiss rightsholders' needs raise further concerns.

2.1 **Lack of German, French and Italian translation of the Amended Settlement Agreement**

The Amended Settlement Agreement is available in English only. It is a complex 150-page legal document and therefore even someone fluent in everyday English as a foreign language will not be able to grasp all relevant details or to discuss these with legal counsel of his or her choice. Under these circumstances, the lack of an official German, French and Italian translation amounts to an intolerable discrimination of Swiss authors and publishers.

2.2 **No proper representation of non-English speaking Rightsholders**

It is equally discriminating that according to Sec. 6.2 (b) (ii), the Board of Directors of the Books Rights Registry shall be made up of at least one representative from the United States, Canada, the United Kingdom and Australia for each of the Sub-Classes, ignoring any other nation which may account for a significant proportion of either Sub-Class.

**ProLitteris**

3. **CONCLUSION**

    ProLitteris therefore requests the Court to deny final approval of the Amended Settlement Agreement unless the following amendments are made:

    (a) Google is required to provide, free of charge, in a machine readable fashion, a data base containing all Books, as defined in Sec. 1.19 of the Amended Settlement Agreement, written by Swiss authors or published by Swiss publishers. Such data base shall be for reference purposes only and the rightsholders should retain the right to prove that a work included in the data base is not a Book within the meaning of Sec. 1.19 of the Amended Settlement Agreement.

    (b) Google is required to provide, free of charge, a German, French and Italian translation of the Amended Settlement Agreement which is as authoritative as the English version.

    (c) Sec. 6.2 (b) (ii) of the Amended Settlement Agreement is further amended to include at least one Swiss representative of the Author Sub-Class and one Swiss representative of the Publisher Sub-Class, or, alternatively, to include at least one representative for each nation in each Sub-Class in which this nation accounts for at least 5 % of the Rightsholders.

Respectfully submitted,

*[signature]* 21 January 2010

Franziska Eberhard

Executive Vice President ProLitteris

cc: Michael J. Boni, Esq.
Joanne Zack, Esq.
Joshua Snyder, Esq.
Boni & Zack LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004
United States of America
Bookclaims@bonizack.com

Jeffrey P. Cunard, Esq.
Bruce P. Keller, Esq.
Debevoise & Plimpton LLP
919 third Avenue
New York, NY 10022
United States of America
Bookclaims@debevoise.com

- 6 -

**ProLitteris**

Daralyn J. Durie, Esq.
Joseph C. Gratz, Esq.
Durie Tangri Lemley Roberts & Kent LLP
332 Pine Street, Suite 200
San Francisco, CA 94104
United States of America
Bookclaims@durietangri.com