


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/29/10

JAN 29 2010

Per Courier
The Honorable Denny Chin
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007
United States of America

STICHTING LIRA
Siriusdreef 22–28
2132 WT Hoofddorp
Postbus 3060
2130 KB Hoofddorp
Nederland
www.lira.nl

**Date:** January 26th, 2010

**Re: The Author's Guild ET AL.V. Google, INC. -Case No.1:05-cv-08136 (DC)**

Dear Judge Chin,

We respectfully request the court's permission to submit this letter as an amicus curiae brief opposing approval of the Amended Settlement Agreement in the above case.

Lira, founded in 1986, is the Dutch authors' organisation for authors and translators (hereinafter: authors). Lira, through its members-authors, represents, exploits and enforces the (copy)rights to all literay-dramatic works of these member-authors resident in or citizens of the Netherlands. More information about the mandate and power of attorney authors have granted to Lira, can be found on www.lira.nl, or can be obtained from Lira or Michael J. Boni.

When the Settlement Agreement was first announced in November 2008, Lira gave Dutch authors the opportunity to have Lira administer certain rights under the Settlement Agreement. The vast majority of them chose this option.

Lira appreciates that the parties to the case, by restricting the definition of "Book", have excluded many foreign authors and publishers from the scope of the Amended Settlement Class and have thus tried to meet the whishes of these rightsholders not to be drawn into the settlement agreement in which they were not represented. Nevertheless, the situation under the Amended Settlement Agreement is:

- Many Dutch authors still remain in the Amended Settlement class;
- Even more of them are now left in doubt as to whether they fall into the Amended Settlement Class or not.

1

# *lira*

The Amended Settlement Agreement provided neither the Dutch authors nor publishers nor collecting societies with adequate tools for clarification of the actual status of a book. Therefore, Dutch authors and publishers still have a legitimate interest in this case, as does Lira in managing their members' rights under the Amended Settlement Agreement.

Lira further accepts that at this point in time, objections to the terms of the Amended Settlement Agreement shall be limited to the provisions amended from the original Settlement Agreement. For the purpose of this amicus curiae brief, we shall limit ourselves in the same way. Each of the issues raised below results from the fact that the mechanism provided by the Amended Settlement Agreement for limiting the scope of the Amended Settlement Class falls short of effectively narrowing it to an English speaking territory.

## 1. DIFFICULTIES IN DISTINGUISHING BETWEEN AMENDED SETTLEMENT CLASS MEMBERS AND NON-MEMBERS

The Amended Settlement Agreement does not provide an adequate test for distinguishing between authors and publishers who are part of the Amended Settlement Class and those who are not. As a collecting society representing authors, Lira is dependent on standardized procedures to keep administration costs down. Lira cannot engage in disputes over countless works. The Amended Settlement Agreement therefore jeopardizes Lira's service to Dutch authors to the extent that concerns their rights under the Amended Settlement Agreement. Individual authors exercising their righs under the Amended Settlement Agreement would also face the same obstacles as Lira.

The definition of the Amended Settlement Class turns on the definition of "Book" (cf. Sections 1.13, 1.19 and 1.75 of the Amended Settlement Agreement). The changes made to the definition of Book in the Amended Settlement Agreement were intented to narrow the class to include countries with a common legal heritage and similar book industry practices. However, there remain two significant groups of foreign works which, as a rule, continue to fall within the scope of the definition of Book, as set forth below.

### 1.1. Books registered with the United States Copyright Office

Even if not a United States work, as defined in 17 U.S.C.par.101, any written or printed work published on or before January 5, 2009 is a Book within the meaning of the Amended Settlement Agreement if such work was registered with the United States Copyright Office (Sec. 1.19 (c) (2) (x)).

For the rightsholders, it is impracticable to research which of their works have been registered, in particular in relation to the period before 1978. Until only a few days ago, the information on registrations and documents prior to 1978 was available only on catalog cards which may be inspected during the Copyright Office's opening hours. No online search is available for this time period. The average author and most foreign publishers will neither

2

# *lira*

have the financial means to personally visit the Copyright Office nor to have the Copyright Office staff or a private service conduct a search against payments of an hourly fee. They were therefore not able to verify if a work is a Book within the definition of Sec. 1.19 of the Amended Settlement Agreement or not.

The same is true for Lira. Its data bases do not include any information as to whether a work was registered with the Copyright Office or not.

Only recently, Google claimed to have made available online 90 volumes of the Catalog of Copyright Entries it scanned from the Copyright Office Catalog. They appear to be searchable online through Google Books. This only highlights the fundamental problem arising from the Amended Settlement Agreement's approach in defining the Amended Settlement Class. In any case, the search options provided by Google are not suitable for efficiënt and automated rights clearing.

(a) Rightsholders outside the United States have not been informed of the new search options. Yet the Amended Settlement Agreement holds them responsible for determining whether they are members of the Amended Settlement Class or not.

In addition, under the Amended Settlement Agreement, it seems even more complicated to determine whether or not a certain title falls within the scope of the Settlement, as article III, 3.1 sub b, sub ii of the Amended Settlement Agreement provides the following definition of "books database": *the inclusion of a work within the Books Database does not, in and of itself, mean that the work is a Book within the meaning of Section 1.19 (Book).'*

Google's database of digitized books is therefore not suitable for foreign rightsholders to determine whether they are members of the Amended Settlement Class or not.

(b) The new search option came very shortly before the deadline of January 28, 2010 for opting back in or opting out of the Amended Settlement Agreement. Rightsholders were not given sufficient time the check their data.

c) There is no link from the data base of Copyright Entries to any data base of Digitized Books.

(d) It is not possible to run automated searches in the data base of Copyright Entries and automatically match search results with any other data base, e.g. a publisher's or a collecting society's data base.

(e) Spot checks have revealed that the quality of the data base of Copyright Entries is poor. Misspellings occur.

**lira**

### 1.2 Works published in Canada, the United Kingdom or Australia

Under Sec. 1.19 (c) (2) (y) of the Amended Settlement Agreement, even if the work is not registered with the United Copyright Office it is still a Book provided that it had a place of publication in Canada, the United Kingdom or Australia. According to the Amended Settlement Agreement, this shall be

> *"evidenced by information printed in or on a hard copy of the work"*

including

> *"for example, a statement that the Book was "published in [Canada] or [the UK] or [Australia]," or the location or address of the Publisher in one of those three countries."*

These criteria are so vague that there will innumerable cases of doubt in which Google and the rightsholder may argue either way.

By way of example, some books lack specific information of place of publication, or will mention two locations of publication, for example Amsterdam and New York and/or will mention two ISBN numbers.

Furthermore, it is not clear to Lira what will happen with translated works. If a original (Dutch) work was published in the Netherlands, and then translated in English and published in - for example - Canada, does this translated work fall within the scope of the Amended Settlement Agreement?

## 2. CONTINUED DISCRIMINATION AGAINST DUTCH RIGHTSHOLDERS

It has been shown that a significant number of Dutch authors remain within the scope of the Amended Settlement Class and a possibly even greater number of Dutch rightsholders are forced to give attention to the Amended Settlement Agreement due to the uncertainties of whether they are part of the Amended Settlement Class or not. Therefore, the systematic exclusion of Dutch representatives and the disregard of Dutch rightsholders' needs raise further concerns.

### 2.1 Lack of Dutch translation of the Amended Settlement Agreement

The Amended Settlement Agreement is available in English only. It is a complex 150-page legal document and therefore even someone fluent in everyday English as a foreign language will not be able to grasp all relevant details or to discuss these with Legal counsel of his or her choice. Under these circumstances, the lack of an official Dutch translation amounts to an intolerable discrimination of Dutch authors and

# lira

publishers.

## 2.2 No proper representation of non-English speaking Rightsholders

It is equally discriminating that according to Sec. 6.2 (b) (ii), the Board of Directors of the Books Rights Registry shall be made up of at least one representative from the United States, Canada, the United Kingdom and Australia for each of the Sub-Classes, ignoring any other nation which may account for a significant proportion of either Sub-Class.

## 3. DISPLAY BOOKS

In article 3.3 sub a (Display Books) of the Amended Settlement Agreement it is stated that *"Google will not make Display Uses of any Book that Google has classified as not Commercially Available until the later of the Effective Date or sixty (60) days after notifying the Registry that Google has classified such Book as not Commercially Available'"*.

This article is not very clear to Lira. Lira's main concern is that Google is allowed to Display Books as soon as a Book is classified as Non Commercially Available, since the term of sixty (60) days does not seem obligatory and *"until the later of the Effective Date"* is also an option. Furthermore, the term of sixty (60) days is too short for rightsholders. They cannot be expected to check Google's data base every two (2) months. This term should be extended to at least ninety (90) days. Lira therefore requests the Court to adapt this Article, in a way that Google – under any circumstances – is not allowed to Display any Book after the classification of Non Commercially within a fixed term of ninety (90) days.

## 4. CONCLUSION

Lira therefore requests the Court to deny final approval of the Amended Settlement Agreement unless the following amendments are made:

(a) Google is required to provide, free of charge and formatted in a machine readable fashion, a data base containing all Books, as defined in Sec. 1.19 of the Amended Settlement Agreement, written by Dutch authors and/or published by Dutch publishers. Such data base shall be for reference purposes only and the rightsholders should retain the right to prove that a work included in the data base is not a Book within the meaning of Sec. 1.19 of the Amended Settlement Agreement.

# *lira*

(b) Google is required to provide, free of charge, a Dutch translation of the Amended Settlement Agreement which is as authoritative as the English version.

(c) Sec. 6.2 (b) (ii) of the Amended Settlement Agreement is further amended to include at least one Dutch representative of the Author Sub-Class, and one Dutch representative of the Author Sub-Class and one Dutch representative of the Publisher Sub-Class, or, alternatively, to include at least one representative for each nation in each Sub-Class in which this nation accounts for at least 5 % of the Rightsholders.

(d) Sec.3.3 (a) of the Amended Settlement Agreement is further amended to the extent that Google is - under any circumstances - not allowed to Display Books after the classification of Non Commercially Available within a fixed term of at least ninety (90) days.

Respectfully submitted,

Mr. Kees Holierhoek

Chairman Stichting Lira (Lira Foundation)

Siriusdreef 22-28
2132 WT Hoofddorp
Mail address:

Postbus 3060,

2130 KB Hoofddorp, The Netherlands

Cc: Michael J. Boni, Esq.
 Joanne Zack, Esq.
 Joshua Snyder, Esq.
 Boni & Zack LLC
 15 St. Asaphs Road
 Bala Cynwyd, PA 19004
 United States of America
 Bookclaims@bonizack.com

*lira*

CC: Jeffrey P. Cunard, Esq.
Bruce P. Keller, Esq.
Debevoise & Plimpton LLP
919 third Avenue
New York, NY 10022
United States of America
Bookclaims@debevoise.com

Daralyn J. Durie, Esq.
Joseph C. Gratz, Esq.
Durie Tangri Lemley Roberts & Kent LLP
332 Pine Street, Suite 200
San Francisco, CA 94104
United States of America
Bookclaims@durietangri.com