FEB 0 1 2010

JUDGE CHAMBERS

Lewis Hyde • 8 Donnell Street
Cambridge, MA 02138

The Honorable Denny Chin
% Office of J. Michael McMahon, Clerk
U.S. District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

27 January 2010

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/2/10

Dear Judge Chin:

I write to amend the letter of objection that I wrote last August in regard to *The Authors Guild, Inc., et al. v. Google Inc.* (Case No. 1:05-cv-08136-DC). My August letter is on file with your office as Document 480.

I shall here limit my remarks to provisions of the amended settlement that are changed from the original settlement, specifically to the role of the newly proposed trustee for orphan works.

I object to the fact that, despite the amended settlement's creation of an Unclaimed Works Fiduciary (UWF), the monopoly powers that Google and the Books Rights Registry will acquire, should the Court approve the orphan works elements of the settlement, still stand. The settling parties have limited the role of the UWF such that he may discharge some duties of the registry in some circumstances, but little else. He cannot act fully on behalf of the rightsholders of unclaimed books; he cannot, for example, license their work to third parties.

To put this another way, it is still the case that an approved settlement will in essence grant the settling parties unique compulsory licenses for the exploitation of orphan works. But why make such licenses unique? If the Court and the settling parties believe that they can authorize compulsory licenses of any sort, why not go the extra step and grant such licenses broadly so that competing providers can enter this market?

To address the problem of monopoly in the market for digital books the UWF should be empowered to act as a true trustee. As such, he should make every effort to locate lost owners, communicate to

them their rights under the approved settlement, and pay them their due. Absent their instructions to the contrary, he should deliver the works of lost owners to the public through the efficiencies of a fully competitive market.

As Chief Justice Rehnquist has written in regard to the larger purposes of our copyright laws: "We have often recognized the monopoly privileges that Congress has authorized ... are limited in nature and must ultimately serve the public good..." (*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). In regard to both content owners and the public, then, the fiduciary needs to operate in an open economy of knowledge and, for that, he will need the freedom to license work to other actors.

(Note: I have asked my attorney, Eric Saltzman, to separately address the question of the UWF's authority to license orphaned works to others; please see the attached addendum to this letter.)

Yours sincerely,

*[signature]*

Lewis Hyde
Richard L. Thomas Professor of English
Kenyon College


cc by e-mail:

   Michael J. Boni, et al.
   Jeffrey P. Cunard, et al.
   Daralyn J. Durie, et al.

Eric F. Saltzman
27 January 2010

The Honorable Denny Chin
c/o Office of J. Michael McMahon, Clerk
U.S. District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *The Authors Guild, Inc., et al. v. Google Inc.* (Case No. 1:05-cv-08136-DC).

Dear Judge Chin:

My client, Lewis Hyde, tells the Court in his letter of January 27th that the new proposed settlement cannot be fair to the owners of the copyrights in the orphan works and to the public unless it allows the Unclaimed Works Fiduciary to make licenses to other providers to allow competition with the monopoly plan that Google and the Plaintiffs now propose to the Court.

I would like to offer the Court additional support for Professor Hyde's objection and suggestion.

If the named plaintiffs or others who "opt in" to the settlement wish to sign on to it with their own copyrights (and if it survives any antitrust process), then that shall be their prerogative. However, the combination in this class action lawsuit of inadequate representation and significant actual conflicts among the so-called class should make the Court skeptical of granting a monopolistic license of the absent members' copyrights.

If the Court does decide to approve a settlement of the case, it should not approve one where Plaintiff's counsel have consented to deliver the licenses for the orphan works to just one licensee.

It would be a complete fiction to say that Plaintiffs' attorneys have adequately represented the orphan works authors and their successors in interest in this case. The original settlement proposal clearly demonstrated counsel's willingness and ability to compromise or, at least, to ignore the orphan works owners' interests in favor of the named plaintiffs who engaged them and whose assent they needed to cut the deal.

The problem of plaintiff counsel shaping a settlement attractive to the clients before them at the expense of absent class members is a well-discussed problem in class action jurisprudence. This Court may take notice of an incentive in that direction, the more than

Eric F. Saltzman

fifty million dollars of fees that Google has agreed to pay to Plaintiffs' counsel if the settlement goes through.

Allow me to point out two methods whereby the proposed settlements seriously shortchanged the orphan works owners to enrich other class members at their expense.

The proposed settlement provides that "Google will make a Cash Payment of at least $60 per Principal Work, $15 per Entire Insert and $5 per Partial Insert for which at least one Rightsholder has registered a valid claim *by the opt-out deadline*" (*Emphasis supplied*). According to the settlement, total payments will amount to $45 million.

By definition, no orphan work Rightsholders could meet this registration condition. Thus was the settlement engineered so that the rightsholders of orphan works and their successors-in-interest would not and could not get any share of the up-front payments total.

Evidently, in dividing up the scores of millions of dollars that defendant Google was ultimately willing to pay up-front (i.e., unrelated to yet unproven forthcoming revenues) to settle the lawsuit, counsel felt no obligation to share any of it with the orphan works owners, even if the rightsholder should later appear and wish to register and claim that payment. This very large slice of the pie would go only to the known rightsholders, their de facto clients.

This economic discrimination against the orphan works rightsholders went beyond just up-front payments. It also took unclaimed (after five years) revenues from exploitation of the orphan works and assigned them to the known rightsholders of other books, thus promising still further enrichment of the client sub-class with actual control over the settlement.

That particular feature drew such unpleasant attention to the bias in representation in favor of the known rightsholders (and disfavoring the orphan works rightsholders) that it was written out of the settlement proposal now before the Court. Nevertheless, the Plaintiffs' counsel who now urge the court to approve this revised settlement agreement are the same counsel who, in the first settlement go-around, assured the Court then (as they do now) that they had adequately represented the entire class, including the orphan works rightsholders.

Commonality and adequacy of representation are two touchstones for class certification. "The adequacy inquiry under Rule 23 (a) (4) serves to uncover conflicts of interest

Eric F. Saltzman

between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591 at 625 (1997).

In *Amchem*, the Supreme Court upheld the Third Circuit Court's decertification of the class because it found that "…the settling parties achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected. The Third Circuit found no assurance here that the named parties operated under a proper understanding of their representational responsibilities. That assessment is on the mark." *Id* at 595.

As demonstrated above, much less than promising the "structural assurance of fair and adequate representation for the diverse groups and individuals affected", the settlements that were and are proposed to this Court suggest that advantaging the named class members at the expense of the unrepresented orphan works rightsholders was a goal successfully achieved during the settlement negotiation.

Accordingly, if the Court will entertain a settlement, it should itself take on the burden of making sure that the orphan works rightsholders interests are well protected. At this point, the best way to do so is to free the orphan works from the monopoly straitjacket that the proposed settlement forces on them.

Let the parties live with the deal they made for the parties who were, in fact, adequately and aggressively represented. For the inadequately represented sub-class, the orphan works rightsholders, the Court should empower the UWF (or similar fiduciary) to license their works into the open market. With this authority going forward, the UWF will, as well, be able to adjust licensing of digital rights in these works to the market conditions in an area that is still very new and sure to develop in ways that are, today, impossible to predict.

Professor Hyde's objection addresses the two enormous flaws in the proposed settlement: 1. the actual conflicts within the class together with the failure of adequate representation of the orphan works rightsholders, and 2. the anti-competitive effect of the full copyright term license it would grant to Google only. The first undermines both the process by which the settlement was achieved and, correspondingly, the public confidence in the courts. The second hurts both the orphan works rightsholders <u>and</u> the strong public interest in access to the knowledge and creativity these books offer.

Short of a initiating a new attempt at settlement -- with new counsel for the orphan works rightsholders -- the changes Professor Hyde proposes would achieve a result that would be fair for <u>all</u> the parties and for the public.

Eric F. Saltzman

Very truly yours,

*Eric F Saltzman*

Eric F. Saltzman, Attorney

Not admitted to practice in the U.S. District Court Southern District of New York
Admitted to practice in The Commonwealth of Massachusetts,
Washington State and U.S. District Court Western District of Washington

Telephone: 917 797-5678  Fax: 917 456-0404  Email: esaltzman@pobox.com