FEB 04 2010

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

AUTHORS GUILD, *et al.* ) Case No. 1:2005cv08136
  Plaintiffs, )
 ) **NOTICE OF INTENT TO APPEAR**
  v. ) **AT FAIRNESS HEARING**
 )
GOOGLE, INC. )
  Defendant )

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/4/10

Please take note that the undersigned intends to appear at the Fairness Hearing in this case, currently scheduled for February 18, 2010, appearing on her own behalf.

Dated: January 28, 2010

*Sarah Canzoneri*
Sarah Canzoneri
3716 Garfield Street, NW
Washington, DC 20007
(202) 625-2124

Sarah Canzoneri
3716 Garfield Street, NW
Washington, DC 20007
(202) 625-2124

January 28, 2010

Office of the Clerk, J. Michael McMahon
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Attention: The Honorable Denny Chin

Re:    Objections of Children's Book Authors & Illustrators to the Amended Google Book Search Settlement Agreement
Case No. 1:05-CV-8136- DC (S.D.N.Y.)

Dear Judge Chin:

    We are all members of the Children's Book Guild of Washington, DC, and members of the class in this case. The Guild has not taken a position on the proposed settlement, and we cannot speak for the organization. However, we believe that it is very important for you to hear objections to the settlement that (unlike most of the objections) come from the viewpoint of authors and illustrators of children's books.

    We strongly object to changes made to the definition of "insert" in the Amended Settlement Agreement; and we believe that these changes make it clear that the representative plaintiffs and class counsel have not fairly and adequately protected the interests the defined class. Because of this, we urge the Court to reject the Amended Settlement Agreement.

    When reviewing a proposed settlement in a class action, the court should "[c]onsider whether the counsel who have negotiated the settlement have fairly represented the interests of all class members." *Manual for Complex Litigation - Fourth* §21.612, at 314, citing *Amchem Products, Inc. V. Windsor*, 591 U.S. 591, 620 (1997). In this case, the Court has already received numerous memoranda and letters indicating that class counsel have not fairly represented the interests of all class members.[1] The revision of the definition of "insert" in the Amended Settlement Agreement is a particularly egregious example of the class counsel's complete disregard for the interests of absent class members.

---

[1] See, e.g., Letter from Pamela Samuelson, Docket No. 336, Objections To Settlement. Document filed by Harrasowitz, Media 24 et al., Docket No. 405 at 29, Memorandum of Law in Opposition filed by Yahoo! Inc.. Docket No. 288 at 11-12.

The definition of "inserts" in the Amended Settlement Agreement effectively removes two groups of people from the class: (1) Children's book illustrators who are not also the authors of the books in which their illustrations appear; and (2) Authors of written inserts whose copyrights have not been registered separately from the registration of the copyright to the book in which the inserts appear.

Both of these groups have been members of the class since the original complaint was filed in September, 2005. Yet at this late date, for no apparent reason, the parties have agreed to drop these people out of the class. As the court noted in Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072 (2d Cir. 1995)

> [b]oth class representatives and class counsel have responsibilities to absent members of the class. Under Rule 23, the court cannot properly certify the action to proceed as a class action unless it is satisfied that the representative plaintiffs "will fairly and adequately protect the interests of the class. ¶ 24 of Maywalt at http://openjurist.org/67/f3d/1072

In Maywalt, the class representatives were trying to dismiss the class counsel. In this case, the class representatives and their counsel are trying to dismiss members of the class. Clearly, the class counsel are not protecting the interests of these absent class members. Instead, the representatives are actively working to undermine the interests of these class members.

The two groups dropped from the settlement through the revised definition of "insert" are not the only class members who will be harmed by the revision. In many children's books, the story is told through both words and illustrations and the interaction of the two is critical. Moreover, in children's books, the words often appear in or printed over the illustrations. As a result – because Google scans full pages – even the words will not be shown if the illustrations cannot be shown.[2]

Given all this, it is very unlikely that anyone is going to want to pay to view these books without the illustrations. So children's book authors who have not illustrated their own books are likely to receive less payments under the Amended Settlement than they would have under the original proposed settlement.

A court's evaluation of a proposed settlement under Rule 23(e)(1)(C) "calls for a comparative analysis of the treatment of class members vis-a-vis each other...." *Manual for Complex Litigation - Fourth* §21.62, at 315. However, in this case, the revised definition of

---

[2]A book by Betty Miles, one of the class representatives, is a good example of this problem. Compare the display on Google Books, http://books.google.com/books?id=f7UThWtgVf4C&printsec=frontcover&source=gbs_navlinks_s#v=o nepage&q=&f=false, with the "Look Inside" on Amazon.com linked there and found at http://www.amazon.com/Goldilocks-Three-Bears-Ready-Read/dp/068981786X/ref=sr_1_1?ie=UTF8& s=books&qid=1264746078&sr=1-1. (Our apologies for not providing a hard copies as an attachment, but we lack the devious computer skills needed to download or print out these protected web pages.)

"insert" means that similarly situated class members would be treated differently under the settlement. The definition of "book" in the Amended Settlement Agreement [3] does not exclude illustrations. Indeed, a wordless book of illustrations fits within this definition. So children's book authors who illustrate their own books and children's book illustrators who create books without words would have their books displayed with the illustrations. This means that these children's book authors' and illustrators' books will be more sellable on Google Books that the books of the "author-only" and "illustrator-only" class members.

In the case of the writers of literary inserts, there would also be differing treatment of similarly situated class members. Those who happened to have the copyrights for their inserts registered separately from the collective work in which the inserts appear would get benefits, while other writers of inserts would get nothing. In the world of writing for children it is common to have stories, articles, and poems published in magazines, and later published in books, such as anthologies or reading books. Understandably, the authors seldom have stand-alone registrations of the copyrights for the short pieces. So it appears that they would get no payments under the settlement for their writing when it appears in a book, even though the copyright for the book has been registered.[4]

In their brief supporting approval of the Amended Settlement Agreement, class counsel do not even mention the language added to the "insert" definition, so we can only speculate about why they agreed to it. Perhaps class counsel believed that this change is a "clarification" of the earlier definition, but if the earlier definition was clear enough for the original proposed settlement, why change it now? Moreover, under the Copyright Act, the registration of a

---

[3] This is the definition of in the Amended Settlement Agreement:
A "Book" is a written or printed work that meets the following three conditions on or before January 5, 2009:
 * It was published or distributed to the public or made available on sheets of paper bound together in hard copy form for public access under the authorization of the work's U.S. copyright owner; and
 * If a "United States work," it was registered with the U.S. Copyright Office, and if not a "United States work," it was either registered with the U.S. Copyright Office or was published in Canada, the United Kingdom or Australia; and
 * It is subject to a U.S. copyright interest (either through ownership, joint ownership, or an exclusive license) implicated by a use authorized, or for which compensation could be payable, by the Settlement.

[4] Under the convoluted language of the "insert" definition, it is possible that if a magazine publisher who first publishes a story registers a copyright for the magazine, this *might* mean that the story was "registered as part of another registered work from which it was excerpted". However, until recently it was common for American children's magazine publishers to buy only North American serial rights, so the story may not be deemed to be "excerpted" from the magazine. The fact that the Amended Settlement Agreement has no definitions of "excerpted", "registered", "work", or "registered work" adds to the confusion. This is also another example of the diversity of concerns of members in the over-broad Author Subclass.

collective work as a whole defeats a defense of "innocent infringement" of an unregistered portion of the collective work. US Copyright Office document at http://www.copyright.gov/fls/fl104.html, and 17 USC §404.

The plaintiffs claim that Google infringed the class' copyrights through its Library Program. Because Google scans whole books in the Library Program, and the definition of "book" in the settlement agreement includes only books with registered copyrights, there is no need to separate out written inserts that have not been registered individually; and doing so would only make administration of the settlement more difficult. Finally, it is worth noting that the significance of registration in a copyright infringement suit may well be changed by the Supreme Court's decision in the pending case of Reed Elsevier v. Muchnick (No. 08-103).

In a class action, "[c]ounsel owe a duty of candor to the court to disclose all information relevant to the fairness of the settlement" and in evaluating the settlement, "the court should take into account not only the presentations of counsel but also information from other sources, such as comments from class representatives...." *Manual for Complex Litigation - Fourth* §21.642, at 325.

In this case, class counsel have obscured the damage to children's book illustrators and have not even *mentioned* the damage to authors with inserts that are not registered separately from the book in which they appear. The Supplemental Notice is written in such a way that a children's book illustrator could easily miss the fact that s/he is to be dropped from the class;[5] and there is not a single word in the notice about the class members who have rights in written inserts that would be excluded under the amended settlement. Meanwhile, the Authors Guild put a news item on its web site announcing the filing of the Amended Settlement Agreement; this news item says nothing at all about either children's book illustrators or about the excluded inserts. See 11/13/09 - Amended Settlement Filed in Authors Guild v. Google http://www.authorsguild.org/advocacy/articles/amended-settlement-filed-in-authors-guild.html

In their Memorandum supporting their Motion for Preliminary Approval of Amended Settlement Agreement, class counsel briefly mention the exclusion of children's book illustrations from the definition of "insert" in a sentence devoted mainly to music books. Memorandum at 4. However, counsel offer no reason whatsoever for the exclusion of children's book illustrations; nor do they make any attempt to justify depriving a large number of class members of any benefits under the settlement.

The class members who have rights in the excluded written inserts are given even shorter shrift. Indeed, class counsel say nothing at all about these writers. The fact that they are to be excluded from benefits under the Amended Settlement Agreement is not mentioned anywhere in the class counsel's Memorandum, so it is not surprising that class counsel do not try to justify the exclusion of these writers.

---

[5] There is one sentence about children's book illustrations on page 4 almost at the end of the Supplemental Notice.

Throughout this case, the class representatives and class counsel have ignoring the interests of many groups of members of the entire class; and their treatment of children's book illustrators and the excluded insert writers is another example of their failure to fairly and adequately represent the entire class.

As people who work with children, we are excited about the idea of a huge library on line, readily accessible to scores of people. We would love to see excellent out-of-print books for children made available to them through computers in their schools and libraries. However, the proposed settlement in this case cannot create a wonderful library, much as we may wish it could.

Moreover, the Court must be guided by the law; and in this case it is very clear that the class representatives and class counsel have already done a poor job of representing the entire class fairly and adequately and cannot be expected to do so in the future. For this reason, among others, we urge you to refuse to approve the Amended Settlement Agreement.

Respectfully,

*Sarah Canzoneri*
Sarah Canzoneri


On behalf of the following children's book authors and illustrators:

Priscilla Cummings
Annapolis, MD

Ellen Butts
Bethesda, MD

Rebecca Jones
Annapolis, MD

David Mangurian
Bethesda, MD

Joyce Schwartz
Bethesda, MD

CC: Michael J. Boni, Esq.
Joanne Zack, Esq.
Joshua Snyder, Esq
*Counsel for Author Sub-Class*

Jeffrey P. Cunard, Esq.
Bruce P. Keller, Esq.
*Counsel for the Publisher Sub-Class*

Daralyn J. Durie, Esq.
Joseph C. Gratz, Esq.
Durie Tangri LLP
*Counsel for Google*