UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

The Authors Guild, Inc., Association of American     :
Publishers, Inc., et al.,     :

    :

     Plaintiffs,     :

    :    Case No. 05 CV 8136-DC

       v.     :

    :    **FILED**

Google Inc.,     :    **ELECTRONICALLY**

    :

     Defendant.     :

------------------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF MOTION OF COUNSEL FOR THE AUTHOR SUB-CLASS FOR AN AWARD OF FEES AND REIMBURSEMENT OF COSTS

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................1

II. THE LITIGATION HISTORY DEMONSTRATES SUBSTANTIAL BENEFITS FOR THE CLASS AND AUTHOR SUB-CLASS............................................................2

III. ARGUMENT ....................................................................................................6

    A. Plaintiffs' Counsel Are Entitled to Reasonable Attorneys' Fees and Reimbursement of Expenses.........................................................................6

        1. The *Goldberger* Analysis.............................................................6

    B. Counsel's Requested Fee Is Reasonable Under the Second Circuit's *Goldberger* Factors. .......................................................................7

        1. The Time and Labor Expended By Counsel...............................7

        2. The Magnitude And Complexities Of The Litigation.................8

        3. The Risk of the Litigation ...........................................................9

        4. The Quality of Representation ..................................................10

        5. The Fee Is Reasonable In Relation To The Settlement............11

        6. The Requested Award Is Necessary To Encourage Attorneys To Pursue Cases Protecting Authors' Rights As Well As Other Cutting-Edge Representative Litigation. ...................................12

    C. The Fee is Reasonable and Justified Under Both the Lodestar and Percentage of Recovery Methods ............................................................14

        1. Counsel's Lodestar Demonstrates the Reasonableness of the Requested Fee .........................................................................14

        2. The Percentage of the Recovery Method..................................15

IV. THE OBJECTIONS TO COUNSEL'S REQUEST FOR A FEE AWARD AND REIMBURSEMENT OF EXPENSES ARE WITHOUT MERIT ....................................19

V. ALLOCATION OF APPROVED FEES AMONG CLASS COUNSEL ..........................24

VI. THE EXPENSES INCURRED BY COUNSEL WERE REASONABLE AND NECESSARY TO THE EFFECTIVE PROSECUTION OF THIS ACTION AND SHOULD BE REIMBURSED .......................................................................25

VII. CONCLUSION................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alpine Pharm., Inc. v. Chas. Pfizer & Co.*,
    481 F.2d 1045 (2d. Cir. 1973)..........................................................................12

*Arenson v. Bd. of Trade*,
    372 F. Supp. 1349 (N.D. Ill. 1974) ....................................................................15

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) ....................15

*Bessey v. Packerland Plainwell, Inc.*,
    No. 06-95, 2007 U.S. Dist. LEXIS 79606 (W.D. Mich. Oct. 26, 2007)..................22

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)..............................................................................17

*In re Charter Commc'ns, Inc.*,
    MDL No. 1506, 2005 U.S. Dist. LEXIS 14772 (E.D.Mo. June 30, 2005)..............14

*City of Detroit v. Grinnell*,
    495 F.2d (2d Cir. 1974).................................................................................8, 11

*Danny Kresky Enters. Corp. v. Magid*,
    716 F.2d 215 (3d Cir.1983)................................................................................25

*Fears v. Wilhelmina Model Agency*,
    No. 02-4911, 2009 U.S. Dist. LEXIS 85252 (S.D.N.Y. Sept. 15, 2009)................10

*Goldberger v. Integrated Res., Inc.,*
    209 F.3d 43 (2d Cir. 2000)...........................................................................6, 7, 12

*Greene v. Emersons Ltd.*,
    1987 U.S. Dist. LEXIS 3980 (S.D.N.Y. 1987) ....................................................18

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...........................................................................................15

*Hicks v. Morgan Stanley & Co.*,
    No. 01-10071, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005)................17

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................................17

*In re APAC Teleservices, Inc. Sec. Litig.*,
No. 97 Civ. 9145, 1999 U.S. Dist. LEXIS 17908 (S.D.N.Y. Dec. 10, 2001) .........................18

*In re Bisys Sec. Litig.*,
No. 04-3840, 2007 U.S. Dist. LEXIS 51087 (S.D.N.Y. July 11, 2007) ..................... 17, 21-22

*In re Blech Sec. Litig.*,
2002 U.S. Dist. LEXIS 23170 (S.D.N.Y. 2002) .....................................................18

*In re Bolar Pharm. Co. Sec. Litig.*,
966 F.2d 731 (2d Cir. 1992) (*per curiam*) ...............................................................7

*In re Cenco, Inc. Sec. Litig.*,
519 F. Supp. 322 (N.D. Ill. 1981) ...........................................................................15

*In re Chambers Dev. Sec. Litig.*,
912 F.Supp. 852 (W.D. Pa. 1995) ..........................................................................25

*In re Copley Pharm., Inc.*,
1 F. Supp. 2d 1407 (D. Wyo. 1998) ..............................................................8, 10, 12

*In re Crazy Eddie Sec. Litig.*,
824 F. Supp. 320 (E.D.N.Y. 1993) .........................................................................18

*In re Diet Drugs Prods. Liab. Litig.*,
MDL No. 1203, 2002 U.S. Dist. LEXIS 19396 (E.D. Pa. Oct. 3, 2002) ................................25

*In re Gen. Pub. Utils. Sec. Litig.*
No. 79-1420, 1983 U.S. Dist. LEXIS 11641 (D.N.J. Nov. 16, 1983) ....................................15

*In re Gitano Group, Inc. Cons. Sec. Litig.*,
Master File No. 91 Civ. 1440 (SS), (S.D.N.Y. Oct. 31, 1994) ................................................18

*In re Initial Pub. Offering Sec. Litig.*,
No. 21 MC 92, 2009 U.S. Dist. LEXIS 93162 (S.D.N.Y. Oct. 5, 2009) ..................................17

*In re Linerboard Antitrust Litig.*,
MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) ................................17

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
540 F.2d 102 (3d Cir. 1976)....................................................................................14

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................. *passim*

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................9, 11

*Mun. Auth. of Bloomsburg v. Pa.*,
    527 F. Supp. 982 (M.D. Pa. 1981) ........................................................................15

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................14

*In re New York City Mun. Sec. Litig.*,
    MDL No. 314-M-21-22, 1984 U.S. Dist. LEXIS 18167 (S.D.N.Y. Mar. 28, 1984) ..............18

*In re Plug Power, Inc. Sec. Litig.*,
    No. 00-6766 (S.D.N.Y. Apr. 29, 2005) ........................................................................17

*In re Priceline.com, Inc. Sec. Litig.*,
    No.00-1884, 2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007) ...................17

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
    148 F.3d 283 (3d Cir. 1998) ........................................................................25

*Rabin v. Concord Assets Group, Inc.*,
    No. 89-6130, 1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) .................15

*Random House, Inc., v. RosettaBooks LLC.*,
    283 F. 3d 490 (2d Cir. 2002) ........................................................................24

*In re Relafen Antitrust Litig.*,
    No. 01-12239-WGY, 2004 U.S. Dist. LEXIS 28801 (D. Mass. Apr. 9, 2004) ....................18

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................................................14

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005) ........................................................................14

*In re RJR Nabisco, Inc. Sec. Litig.*,
    MDL No. 818, 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) .............15

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997) ................................................................ 14-15

*Steiner v. Williams*,
    Nos. 99-10186, 99-1479 2001, U.S. Dist. LEXIS 7097 (S.D.N.Y. May 31, 2001) ............12

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
    No. 03-4578, 2005 U.S. Dist. LEXIS 9705 (E.D. Pa. May 19, 2005) ...................15

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999) ........................................................................9, 14, 17

*In re Sunbeam Sec. Litig.,*
176 F. Supp. 2d 1323 (S.D. Fla. 2001) ....................................................................17

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989)..............................................................................7

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa
U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ................................................................12

*In re Vitamins Antitrust Litig.,*
No. 99-197, 2001 U.S. Dist. LEXIS 25067 (D.D.C. July 16, 2001) ......................18

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985)....................................................................10, 16

*Warren v. Xerox Corp.,*
*No.* 01-2909, 2008 U.S. Dist. LEXIS 73951 (E.D.N.Y. Sept. 19, 2008)................18

*Wilson v. Airborne, Inc.*,
No. 07-770, 2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008)................22

*In re Xcel Energy, Inc., Sec. Derivative and "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ......................................................................14

**DOCKETED CASES**

*Carlson v. Milberg LLP,*
No. 09-0544-cv (2d Cir. Dec. 9, 2009) ....................................................................21

*In re Columbia Sec. Litig.*,
89 Civ. 6821 (LBS) (S.D.N.Y. Feb. 15, 1995) ......................................................18

*In re Deutsch Telekom AG Sec. Litig.*,
No. 00-9475 (NRB) (S.D.N.Y. June 7, 2005).........................................................17

*Dusek v. Mattel, Inc.,*
No. CV 99-10864-MRP (C.D. Cal. Sept. 29, 2003) ..............................................17

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
No. M-02-1486-PJH (N.D. Cal. Aug. 16, 2007).....................................................17

*In re Freelance Works in Literary Databases Copyright Litig.*,
MDL No. 1379 (S.D.N.Y.) .......................................................................................24

*Hwang v. Smith Corona Corp. Consol.*,
No. B89-450 (D. Conn. Mar. 12, 1992)...................................................................18

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...............................................................................................13

*In re JWP, Inc. Sec. Litig.*,
    Master File No. 92 Civ. 5815 (S.D.N.Y. Jan. 24, 1997) (Conner, J.).....................................18

*Levy v. Southbrook Int'l Invs., Ltd.,*
    Nos. 99-10186, 99-1479, 2001 U.S. Dist. LEXIS 7097 (S.D.N.Y. May 31, 2001) ...............13

*In re Medical X-Ray Film Antitrust Litig.*,
    CV-93-5904 (E.D.N.Y. Aug. 13, 1998)...................................................................................18

*Reynolds v. Repsol YPF, S.A.*,
    Civ. A. No. 1:06-cv-00733-DAB (S.D.N.Y May 7, 2008)............................................... 16-17

*In re Wedtech Sec. Litig.*,
    Nos. M21-46, MDL 735 (LBS) (S.D.N.Y. July 30, 1992) ......................................................18

**RULES**

Fed. R. Civ. P. 23 .........................................................................................................................4, 5

## I.     INTRODUCTION

Counsel for the Author Sub-Class respectfully submit this memorandum of law in support of their petition for an award of attorneys' fees – a negotiated amount of $30 million in attorneys' fees and reimbursement of out-of-pocket expenses in connection with the prosecution and settlement of this action.  The requested attorneys' fees and expenses are paid separately by Google, wholly apart from the relief to the Class, and do not reduce the level of the benefits made available to the Class.

This litigation began in 2005, and during the next four and a half years Counsel for the Author Sub-Class have vigorously represented the Class, with no compensation.  In the fall of 2006, after substantial discovery, the parties agreed to attempt to settle this litigation.  They then spent more than two years negotiating the terms and language of the settlement agreement and exhibits, negotiations that involved complex and marathon sessions.  The parties undertook an unprecedented, worldwide notice program.  They conceived the Books Rights Registry and highly creative settlement administration protocols.  Separate Counsel for the Author Sub-Class and the Publisher Sub-Class (collectively "Class Counsel") participated in the settlement discussions with Google.  Other parties participating in the negotiations included: the Authors Guild (the nation's leading authors' rights group), the Association of American Publishers ("AAP") (the nation's leading publishers' rights group), and representatives from three major University libraries.

After notice of the original settlement was disseminated, in response to numerous objections and the filing of a Statement of Interest by the Department of Justice ("DOJ"), and after further negotiations, taking into consideration not only the objections but also the DOJ's Statement of Interest, the parties executed the Amended Settlement Agreement ("ASA").

The ASA was achieved after intense and aggressive negotiations. Due to the large number of competing interests at stake, the negotiations were very difficult, time-consuming, and labor-intensive. As shown below, a tremendous amount of research, briefing, analysis, discovery, and negotiating was necessary in order to achieve the resulting settlement. That the negotiations produced the exceptional results they did on behalf of the authors and publishers is a testament to the hard work, dedication, negotiating skill, and perseverance of Class Counsel. In particular, the results achieved in the settlement for authors, vis-à-vis both Google and the Publisher Sub-Class, are due to the hard work and tenacity of Counsel for the Author Sub-Class.

Counsel for the Author Sub-Class request $29,786,489 in attorneys' fees and $213,511 in costs, for a total award of $30 million. In light of the unique circumstances of this case, such an award is well deserved and should be approved. Courts in the Second Circuit have discretion to apply either the lodestar or percentage of recovery method in determining the fairness of fee petitions. Under either method, this fee application is reasonable and justified.

## II. THE LITIGATION HISTORY DEMONSTRATES THE SUBSTANTIAL BENEFITS ACHIEVED FOR THE CLASS AND AUTHOR SUB-CLASS

The exceptional benefits to the Class are set forth in the Memorandum in Support of Plaintiffs' Motion for Final Settlement Approval, Notice of Class Action Settlement ("Notice") and Supplemental Notice. At a minimum, the Class has received a common benefit, before attorneys' fees, of at least $34.5 million plus $45 million, or $79.5 million. Additionally, since Google's agreement to pay counsel fees is for the Author Sub-Class's benefit (inasmuch as the Author Sub-Class is not otherwise responsible for fees), the true benefit is at least $79.5 million plus $30 million, or $109.5 million.

This $109.5 million does not include any payments above $45 million that Google may have to pay in release of the authors' actual infringement claims, or any of the 63% of the

revenues members of the Author Sub-Class will earn from the Revenue Models going forward. The Revenue Models, of course, are a primary benefit conferred on the Class, and the parties expect they will confer on the Class many millions of dollars in the years to come.[1]  Described below are the efforts of Counsel for the Author Sub-Class that were necessary to bring about the settlement.

Before the commencement of litigation, Counsel for the Author Sub-Class extensively researched and investigated the potential claims against Google, conferred and strategized with Associational Plaintiff the Authors Guild, as well as with the publishers' counsel, regarding the claims to be brought, and prepared the initial complaint.  After commencing the litigation, Counsel for the Author Sub-Class performed the following necessary work in connection with this litigation: participated in numerous in-person and telephonic meetings with the Authors Guild and the named plaintiffs, the publishers' counsel, and the AAP; defeated a pre-motion argument by Google to dismiss the complaint and strike the class allegations; prepared for and participated in status conferences before this Court; researched a staggering array of factual and legal issues, including those pertaining to class certification, damages, standing requirements (trade associational standing as well as class representative and absent class member standing), Berne Convention and other international copyright treaty issues, the fair use defense, and appropriate injunctive relief remedies.  Counsel for the Author Sub-Class reviewed more than four million pages of documents related to Google's activities, and also reviewed many

---

[1]     Counsel for the Publisher Sub-Class did not proceed on a contingency fee basis, but rather entered into a standard hourly fee arrangement with the American Association of Publishers ("AAP") in connection with *McGraw-Hill Cos., Inc. v. Google Inc.*, No. 05 CV 8881 (S.D.N.Y.) (the "Publisher Action").  Google agreed to pay $15.5 million to settle the publishers' action, out of which the publishers' counsel expect to be paid.  *See* ASA Attach. I (Notice) at 27.

thousands of publisher documents relevant to the authors' and publishers' respective copyright and contractual interests in the books digitized by Google. During the pre-trial stage of the proceedings, counsel were closely monitoring pending and resolved fair use cases potentially relevant to the present litigation.

In the fall of 2006, the parties began settlement negotiations, which proved to be uniquely complex and difficult given the competing interests of the parties involved (authors, publishers, Google, and libraries) and the necessity of resolving issues relating not only to monetary compensation for past infringement, but also to the uses that Google and the libraries could and could not make of the millions of books Google already digitized.

Throughout the course of the negotiations that led to the original and amended settlement agreements, Counsel for the Author Sub-Class faced an extremely large number of tasks and issues. They retained and worked closely with a number of experts in the areas of book publishing, online security, non-profit corporate counsel (for assistance with the Registry), Rule 23, foreign rights groups, database design, and more. They participated in meetings with Google and publisher representatives to discuss and hammer out appropriate security standards. They negotiated with the participating libraries over terms in the Settlement such as the uses the libraries could make of their digital copies, the censorship provision and other terms relevant to both the libraries and the Rightsholders. Over the course of countless in-person and telephonic meetings, and abundant correspondence, the authors' counsel ultimately negotiated a compromise with counsel and representatives for the Publisher Sub-Class with respect to the Author-Publisher Procedures. Negotiating the language of the settlement papers and briefing two motions for preliminary settlement approval took an extraordinary amount of time given the scope of the original and amended settlement agreements and attachments.

Counsel spent a prodigious amount of time working on the notice program and Settlement Website. They worked closely with the notice provider, Kinsella Media, the Settlement Administrator, Rust Consulting, Google and counsel for the Publisher Sub-Class. In addition, counsel were engaged in the investigations opened by the DOJ and six state Attorneys General. That investigation required counsel to negotiate the scope of and respond to civil investigative demands made on their client, the Authors Guild, review and produce responsive documents, research and draft memoranda on issues such as antitrust, Rule 23, and state escheat and abandoned property laws. Further, counsel participated in many in-person meetings, conference calls, and exchanges of written correspondence with representatives of the regulatory agencies, and just as many strategy meetings with Google and the publishers' counsel with respect to the regulatory investigations.

Furthermore, for the better part of 2009, they responded to hundreds and hundreds of class member inquiries. They traveled to New York, Europe, and Japan to meet with and address rights groups interested in learning about the settlement. They also engaged in dozens of conference calls and video-conferences with Reproduction Rights Organizations ("RROs") for the same purpose. They continue to respond regularly to Class member inquiries, authors' agents, and rights groups, and anticipate continuing to do so for the foreseeable future. Counsel have performed a vast array of other necessary work in the litigation and settlement negotiations, as detailed in counsel's declarations. *See* Declaration of Michael J. Boni ("Boni Dec.") ¶¶ 11-16; Declaration of Sanford P. Dumain ("Dumain Dec.") (Ex. F to Boni Dec.) ¶ 1; Declaration of Robert J. LaRocca ("LaRocca Dec.") (Ex. G to Boni Dec.) ¶¶ 5-6. Counsel for the Author Sub-Class have been working with the publishers' counsel on plaintiffs' motion for final settlement approval and supporting papers. This is a very time-consuming, labor-intensive project in light

of their having to review, research, and respond to approximately 500 objections and two DOJ

Statements of Interest.  Counsel will also represent the Author Sub-Class at the final fairness

hearing on February 18, 2010.  Finally, in the event the Court grants final settlement approval

and an objector appeals, counsel will be responsible for defending the fairness of the settlement

on appeal.  In short, it is a certainty that counsel will spend a considerable amount of time

representing the Author Sub-Class after the fairness hearing.  Boni Dec. ¶ 16.

## III.    ARGUMENT

### A.    Plaintiffs' Counsel Are Entitled to Reasonable Attorneys' Fees and Reimbursement of Expenses

#### 1.    The *Goldberger* Analysis

Courts traditionally have used two methods to calculate reasonable attorneys' fees in

class action settlements: the "lodestar method" and the "percentage of recovery" method.

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 46-47 (2d Cir. 2000).  The lodestar method

ascertains the number of hours reasonably billed, and then multiplies that figure by an

appropriate hourly rate.  *Id*.  Under the percentage of recovery method, the court sets a

percentage of the recovery as a fee.  *Id*.

No matter which method is chosen – lodestar/multiplier or percentage of recovery – the

fees awarded must be "reasonable" under the circumstances.  *Goldberger*, 209 F.3d at 47.

"What constitutes a reasonable fee is properly committed to the sound discretion of the district

court, . . . and will not be overturned absent an abuse of discretion, such as mistake of law or a

clearly erroneous factual finding." *Id.*[2]  The Second Circuit has affirmed that in exercising its discretion to determine the reasonableness of a fee, the district courts should be guided by six traditional criteria: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).  As this Court has observed, in applying these criteria, "a Court essentially makes no more than a qualitative assessment of a fair legal fee under all the circumstances of the case."  *Union Carbide*, 724 F. Supp. at 166.

As set forth herein, under either methodology – percentage of recovery or lodestar – the Author Sub-Class's Counsel's requested fees are reasonable.

**B.**  **Counsel's Requested Fee Is Reasonable Under the Second Circuit's *Goldberger* Factors**

**1.**  **The Time and Labor Expended By Counsel**

Counsel for the Author Sub-Class investigated and prosecuted this litigation intensely and thoroughly for the past four years.  Thousands of hours have been spent developing the authors' case against Google, with the resulting settlement providing tremendous benefits to the authors that they could not possibly have achieved in the absence of the ASA.  *See supra* at 2-6, and declarations cited therein.

---

[2]     The Second Circuit has held that the already deferential "abuse of discretion" standard of review "takes on special significance when reviewing fee decisions." *Goldberger*, 209 F.3d at 47.  *See also id.* at 48 (acknowledging that "[t]he district court, which is intimately familiar with the nuances of the case, is in a far better position to make [such] decisions than is an appellate court, which must work from a cold record.") (quoting *In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir. 1992) (*per curiam*)).

Counsel for the Author Sub-Class expended over 19,000 hours with a resulting lodestar of more than $10 million in the investigation, prosecution, and settlement of this litigation. Boni Dec. Ex. A. Additional substantial hours and resources will necessarily be expended assisting Class members with their claims, assisting with the establishment of the Registry, responding to other inquiries, as well as overseeing the settlement administration process and distributing Cash Payments.

### 2. The Magnitude And Complexities Of The Litigation

Not only was this case factually complex, but the issues were also legally complicated. From the inception of the case and throughout the settlement negotiations spanning over two years, Class Counsel waged many battles with Google on numerous legal and factual issues. "[F]ocused and diligent labor was also required because of the novelty and difficulty of the legal questions involved…." *In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1413 (D. Wyo. 1998).[3]

The settlement also raised issues in which the interests of the authors and publishers were not aligned. Accordingly, Counsel for the Author Sub-Class proposed that sub-classes be formed with separate representation of the Publisher Sub-Class by Debevoise & Plimpton LLP, which was representing the five publishing company plaintiffs in the Publisher Action. Counsel for the Author Sub-Class and counsel for the Publisher Sub-Class negotiated the Author-Publisher Procedures and the Plan of Allocation, which are attached as Attachments A and C to the ASA. This negotiation was complex and protracted, and resulted in truly exceptional benefits to the Author Sub-Class.

---

[3] Courts have recognized that where the lodestar method is used, great emphasis should be placed on the complexity of the litigation and the benefits conferred on the Class. *See generally City of Detroit v. Grinnell,* 495 F.2d at 448, 457 (2d Cir. 1974).

The magnitude and complexity of this case particularly militates in favor of granting plaintiffs' requested fee. Counsel are to be credited for their creativity, persistence, patience, and endurance, all of which were necessary to bring about the substantial benefits the ASA confers on the Author Sub-Class.

### 3. The Risk of the Litigation

The Second Circuit holds the risk of litigation to be "perhaps the foremost factor to be considered in determining" attorneys' fees. *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 139 (S.D.N.Y. 2008) (quoting *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005)). Counsel for the Author Sub-Class undertook the prosecution of this highly complex matter on a wholly contingent basis. No Author Sub-Class member was asked to pay fees or advance costs. In the four and one-half years of this litigation, counsel for the Author Sub-Class have received no compensation whatever. In fact, counsel for the Author Sub-Class expended $213,511 in costs, with no assurance of reimbursement. Boni Dec. ¶ 20. *See In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (class counsel not only undertook risks of litigation, but advanced their own funds and financed the litigation).

The substantial financial risk to counsel of receiving no recovery was enormous. At no time was success in any sense guaranteed. To the contrary, the risks involved in the prosecution of this litigation were significant. *See* Mem. of Law in Support of Plaintiffs' Motion For Final Settlement Approval at 40-47. Counsel for the Author Sub-Class bore the risk of the case being dismissed at the pre-trial stage, of not prevailing at trial if the case progressed that far, or even possibly losing an appeal. Further, counsel have invested substantial time and cost defending the Settlement, which has been railed against by hundreds of objectors, and which in itself is hardly a lock for final settlement approval after the exhaustion of all appeals.

### 4.     The Quality of Representation

Counsel for the Author Sub-Class include lawyers with decades of experience in prosecuting and trying complex actions. Counsel for the Author Sub-Class are highly reputable and skilled attorneys. *See* Boni Dec. Ex. E (firm bio); Dumain Dec. Ex. C (same); LaRocca Dec. Ex. C (same). The quality of representation is further demonstrated by the settlement benefits obtained for the Class. The quality of representation is commonly measured by the result obtained. *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002). Likewise, as held in *Fears v. Wilhelmina Model Agency*, No. 02-4911, 2009 U.S. Dist. LEXIS 85252, at *35-36 (S.D.N.Y. Sept. 15, 2009): "Plaintiffs' Counsel secured a substantial settlement in uncharted waters, and this achievement goes a long way to confirm the overall quality of the representation provided to the class." The results achieved have been outstanding, particularly in light of the unique circumstances and legal and factual complexities of this case.

The quality of opposing counsel is also an important factor for the Court to consider in evaluating the quality of services provided by Class Counsel. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985). Opposing counsel Wilson, Sonsini, Goodrich & Rosati, Keker & Van Nest, and Durie Tangri LLP are all highly respected and exceptionally skilled attorneys. When the authors had to negotiate disputes in the litigation and settlement with the publisher plaintiffs, counsel were opposed by senior copyright and complex litigation counsel at Debevoise & Plimpton LLC, also highly respected and exceptionally skilled attorneys. As the court stated in *Copley*: "[T]he skill required to perform the legal service presented by the instant case was great, particularly where class counsel were faced with opposing counsel of such high quality." *Copley* 1 F. Supp. 2d at 1413-14.

All counsel have meticulously negotiated every issue, word, and nuance of the Settlement. Counsel for the Author Sub-Class were able to procure an extraordinary settlement for the Author Sub-Class in the face of this opposition because of their skill, experience and recognized reputation in the class action and complex litigation fields.

### 5. The Fee Is Reasonable In Relation To The Settlement

Under the unique circumstances of this litigation, the fee requested is reasonable. *Merrill Lynch Tyco*, 249 F.R.D. at 141 ("Fee awards should be assessed based on the unique circumstances of each case") (quoting *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 236 (S.D.N.Y. 2005)). *See also Grinnell*, 495 F.2d at 470 ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended."). The settlement was achieved after years of intense and aggressive litigation and negotiations. Despite the numerous challenges counsel faced, they remained steadfast in their relentless efforts to protect the rights of the Author Sub-Class and to achieve a fair, reasonable and adequate recovery. The fee here is clearly justifiable. *See also* Sections III.C.1 and 2, *infra*. It is also important to note that the fees were not negotiated until after all the substantive settlement terms were resolved. Boni Dec. ¶ 17. Further, any reduction in fees will not benefit the Class at all; rather those amounts would go back to Google. *Id.*

6. **The Requested Award Is Necessary To Encourage Attorneys To Pursue Cases Protecting Authors' Rights As Well As Other Cutting-Edge Representative Litigation**

The Second Circuit has repeatedly recognized that private attorneys should be encouraged to undertake the risks required to represent those who would otherwise be unprotected. *Goldberger*, 209 F.3d. at 51 ("There is also commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."); *Alpine Pharm., Inc. v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1050 (2d. Cir. 1973) ("In the absence of adequate attorneys' fee awards, many antitrust actions would not be commenced."). "Private attorneys should be encouraged to take the risks required to represent those who would not otherwise be protected from socially undesirable activities like securities fraud." *Maley*, 186 F. Supp. 2d at 374. *See also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ("The fees awarded must be reasonable, but they must also serve as an inducement for lawyers to make similar efforts in the future."). As one court noted: "[A] class action was in many ways the only means of redress for these claimants, requiring an enormous investment of time and resources with no guarantee that counsel would recoup most or any of this investment." *Copley*, 1 F. Supp. 2d at 1414.

Counsel for the Author Sub-Class assumed significant risk in this case of first impression. Courts have held that "[c]ases of first impression generally require more time and effort on the attorneys' part. Although this greater expenditure of time in research and preparation is an investment by counsel in obtaining knowledge which can be used in similar later cases, he should not be penalized for undertaking a case which may 'make new law.' Instead, he should

be appropriately compensated for accepting the challenge."[4]  *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  As detailed throughout this memorandum, the novelty and difficulty in prosecuting this case is evident:  Counsel for the Author Sub-Class were faced with complicated issues, not widely known, and had to educate themselves as to the merits of the claims and the factual complexities of this case.

Further, in undertaking this litigation, Counsel for the Author Sub-Class took a tremendous risk that, in the end, nothing would be recovered.  The theory on which plaintiffs' complaint was based was novel and risky, and the difficulty for Counsel for the Author Sub-Class was enhanced to a large extent because this was a case of first impression.  Yet even after years of litigation dealing with these novel issues of law, Counsel for the Author Sub-Class achieved exceptional results, culminating in the ASA which provides significant and substantial benefits for the Class and Author Sub-Class.

This case also has served the public interest.  But for this class action, the copyright laws protecting authors from copyright infringement over the Internet would not have been effectively enforced, millions of out-of-print books would continue to remain in obscurity and garner few new readers and no new income stream, and the reading public would not have this tremendous books database resource.

---

[4]     *See also Steiner v. Williams*, Nos. 99-10186, 99-1479, 2001 U.S. Dist. LEXIS 7097, at *19 (S.D.N.Y. May 31, 2001) (awarding 30% because plaintiffs' argument was "novel and risky" and because "counsel took a tremendous risk that, in the end, nothing would be recovered"); *Levy v. Southbrook Int'l Invs., Ltd.*, 2001 U.S. Dist. LEXIS 7097 (S.D.N.Y. May 31, 2001) (awarding requested 30% fee where plaintiff's theory was novel and risky).

**C.** **The Fee is Reasonable and Justified Under Both the Lodestar and Percentage of Recovery Methods**

        **1.** **Counsel's Lodestar Demonstrates the Reasonableness of the Requested Fee**

The requested fee award is justified under the lodestar method. Under this method, a court, in a contingency fee case, may adjust counsel's reasonable hourly fee by a multiplier that reflects both the risk that there will be no recovery (and hence no attorneys' fees), and the quality of counsel's work. *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976). Here, the lodestar of Counsel for the Author Sub-Class as of February 5, 2010 is $10,075,062. Boni Dec. Ex. A. The quality of the work performed by Counsel for the Author Sub-Class clearly justifies a multiplier of 2.96, resulting in a fee of approximately $29.8 million.

In contingent litigation, courts routinely award multipliers between 3 and 6. *See, e.g., In re Charter Commc'ns, Inc.*, MDL Docket No. 1506, 2005 U.S. Dist. LEXIS 14772, at *56 (E.D. Mo. June 30, 2005) (multiplier of 5.61 "falls within the range of multipliers found reasonable for cross-check purposes by courts in other similar actions."); *In re Xcel Energy, Inc., Sec. Derivative and "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) (awarding fee equal to a 4.7 multiplier); *Maley*, 186 F. Supp. 2d at 369 (4.65 multiplier was considered "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) (a lodestar multiplier in the range of 4.5 to 8.5 was "unquestionably reasonable"); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 588-90 n. 44 (E.D. Pa. 2005) (6.96 multiplier approved); *Sumitomo*, 74 F. Supp. 2d at 399 (finding multipliers of 3 to 4.5 to be common); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding a 3.97 multiplier and noting that "multipliers of between 3 and 4.5 have become common") (citations omitted); *Roberts v. Texaco, Inc.*, 979 F.

Supp. 185, 198 (S.D.N.Y. 1997) (5.5 multiplier approved); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. 03-4578, 2005 U.S. Dist. LEXIS 9705, at *60 (E.D. Pa. May 19, 2005) (multiplier of 15.6 approved); *In re RJR Nabisco, Inc. Sec. Litig.*, MDL No. 818, 1992 U.S. Dist. LEXIS 12702, at *16-22 (S.D.N.Y. Aug. 24, 1992) (6 times lodestar approved); *Rabin v. Concord Assets Group, Inc.*, No. 89-6130, 1991 U.S. Dist. LEXIS 18273, at *4 (S.D.N.Y. Dec. 19, 1991) (multiple of 4.4: "In recent years multipliers of between 3 and 4.5 have been common."); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) ("the range of lodestar multiples in large and complicated class actions runs from a low of 2.26 to a high of 4.5") (citations omitted); *In re Gen. Pub. Utils. Sec. Litig.* No. 79-1420, 1983 U.S. Dist. LEXIS 11641 (D.N.J. Nov. 16, 1983) (multiple of 3.45 awarded); *Mun. Auth. of Bloomsburg v. Pa.*, 527 F. Supp. 982 (M.D. Pa. 1981) (multiple of 4.5 awarded); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (multiple of 4.0 awarded); *Arenson v. Bd. of Trade*, 372 F. Supp. 1349 (N.D. Ill. 1974) (multiple of 4.0 awarded).

The cases cited above are mainly securities and antitrust actions. The fact that this case involves issues of first impression and provides an extraordinarily beneficial result for book authors and their heirs militates even more strongly in favor of awarding a multiplier here. Under the circumstances of this case, Counsel for the Author Sub-Class is plainly entitled to a multiplier of 2.96.

## 2. The Percentage of the Recovery Method

The percentage of the recovery approach heeds the Supreme Court's admonition that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Under this approach, class counsel is entitled to a fee award based on a percentage of the total benefit conferred on the class.

Here, the total immediate benefit to the Amended Settlement Class is $109.5 million, consisting of $45 million for Cash Payments, $34.5 million for the Books Rights Registry, and $30 million for attorneys' fees and expenses. Such $109.5 million benefit does not include the substantial future benefits of the settlement – future royalty payments by Google to Class members under the Revenue Models. It also does not include the $15.5 million paid by Google to settle the Publisher Action, which also will benefit the Class: it is being used to cover the attorneys' fees and expenses of Counsel for the Publisher Sub-Class, with the remainder to be used to establish a fund to serve the interests of both publishers and authors.[5] ASA Attach. I (Notice) at 27.

"Courts in [the Second] Circuit have awarded fees ranging from 15% to 50% of the settlement fund." *Maley*, 186 F. Supp. 2d at 370; *accord Warner*, 618 F. Supp. at 749 ("Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions.").

Recent fee awards confirm that percentage awards of 25% or higher continue to be commonly awarded by district courts in the Second Circuit. *See In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92, 2009 U.S. Dist. LEXIS 93162 (S.D.N.Y. Oct. 5, 2009) (one-third of the net-settlement fund awarded); *Reynolds v. Repsol YPF, S.A.*, Civ. A. No. 1:06-cv-00733-

---

[5]    If the $15.5 million in settlement benefits in the Publisher Action are added to the $109.5 million in immediate settlement benefits in the class action, the immediate settlement benefits to the Class total $125 million. Similarly, if we assume that counsel for the Publisher Sub-Class incurred a comparable lodestar to the authors' counsel, i.e., approximately $10 million, the total fees of Class Counsel would be $39.8 million, which is 31.8% of $125 million. If we assume that counsel for the Publisher Sub-Class's fees have reached the $15.5 million that Google agreed to pay to settle the Publisher Action, then Class Counsel's total fees would be $45.3 million, or 36% of $125 million.

DAB, slip op. at 1 (S.D.N.Y May 7, 2008) (Batts, J.) (awarding 25% of $8 million settlement fund and noting that "courts throughout the [Second] Circuit regularly award fees of 25% to 30% or more of the total recovery"); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007) (approving award of 30%); *In re Priceline.com, Inc. Sec. Litig.*, No. 00-1884, 2007 U.S. Dist. LEXIS 52538, at *5 (D. Conn. July 20, 2007) (awarding a fee of 30% of an $80 million dollar fund); *In re Bisys Sec. Litig.*, No. 04-3840, 2007 U.S. Dist. LEXIS 51087, at *8 (S.D.N.Y. July 11, 2007) (awarding 30% of $65.87 million fund); *In re Deutsch Telekom AG Sec. Litig.*, No. 00-9475 (NRB) (S.D.N.Y. June 7, 2005) (28% of $120 million fund); *Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 U.S. Dist. LEXIS 24890 at *24-25 (S.D.N.Y. Oct. 19, 2005) (30% of a $10 million fund is "consistent with fees awarded in comparable class action settlements in the Second Circuit"); *In re Plug Power, Inc. Sec. Litig.*, No. 00-6766, slip op. (S.D.N.Y. Apr. 29, 2005) (awarding 30% of $9 million fund); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 422 (S.D.N.Y. 2001) (awarding fees in the amount of 25% of the total recovery); *Sumitomo*, 74 F. Supp. 2d 393 (27.5% of $116.6 million).

Other federal courts with recent awards of 25% or more include: *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* No. M-02-1486-PJH (N.D. Cal. Aug. 16, 2007) (25% of $325 million); *In re Cardizem CD Antitrust Litig.,* No. MDL 1278 (NGE) (E.D. Mich. Nov. 26, 2002) (30% of $110 million); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at *1-*2 (E.D. Pa. June 2, 2004) (30% of a $202.5 million fund); *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1337 (S.D. Fla. 2001) (25% of a $110 million fund); *Dusek v. Mattel, Inc.,* No. CV 99-10864-MRP (C.D. Cal. Sept. 29, 2003) (27% of a $122 million fund).

Second Circuit and other federal courts have also awarded a one-third or higher percentage of the recovery in many cases. *See, e.g., Warren v. Xerox Corp., No.* 01-2909, 2008 U.S. Dist. LEXIS 73951, at *22 (E.D.N.Y. Sept. 19, 2008) (33.33% of fund); *Maley*, 186 F. Supp. 2d at 369 (33% of a $11.5 million fund); *In re Relafen Antitrust Litig.*, No. 01-12239-WGY, 2004 U.S. Dist. LEXIS 28801, at *20-*21 (D. Mass. Apr. 9, 2004) (33 1/3% of a $175 million fund); *In re Blech Sec. Litig.*, No. 94-7696, 2002 U.S. Dist. LEXIS 23170, at *5 (S.D.N.Y. Nov. 27, 2002) (33 1/3% of the settlement fund); *In re APAC Teleservices, Inc. Sec. Litig.*, No. 97-9145, 1999 U.S. Dist. LEXIS 17908, at *2 (S.D.N.Y. Nov. 12, 1999) (33% of a $21 million fund); *In re Vitamins Antitrust Litig.,* No. 99-197, 2001 U.S. Dist. LEXIS 25067, at *68 (D.D.C. July 13, 2001) (33.7% of a $360 million fund); *In re Medical X-Ray Film Antitrust Litig.*, No. CV-93-5904 (E.D.N.Y. Aug. 13, 1998) (33% of a $39.4 million fund); *In re JWP, Inc. Sec. Litig.*, Master File No. 92 Civ. 5815 (S.D.N.Y. Jan. 24, 1997) (Conner, J.) (33% of a $39 million fund); *In re Columbia Sec. Litig.*, No. 89 Civ. 6821 (LBS) (S.D.N.Y. Feb. 15, 1995) (33% of a $25 million fund); *In re Gitano Group, Inc. Consol. Sec. Litig.*, Master File No. 91 Civ. 1440 (SS) (S.D.N.Y. Oct. 31, 1994) (33% of a $14 million fund); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (33.81% of a $42 million fund); *In re Wedtech Sec. Litig.*, M21-46, Nos. MDL 735 (LBS) (S.D.N.Y. July 30, 1992) (33% of the settlement fund); *Hwang v. Smith Corona Corp. Consol.*, No. B89-450 (TFGD) (D. Conn. Mar. 12, 1992) (33% of a $25 million fund); *In re New York City Mun. Sec. Litig.*, MDL No. 314-M-21-22, 1984 U.S. Dist. LEXIS 18167 (S.D.N.Y. Mar. 28, 1984) (33% of a $13,450,000 fund); *Greene v. Emersons Ltd.*, No. 76-2178, 1987 U.S. Dist. LEXIS 3980, at *5-6 (S.D.N.Y. May 20, 1987) (awarding fees and expenses of 46.2% of the fund).

An award here of $29.8 million in fees to Counsel for the Author Sub-Class, representing 27.2% of the immediate benefits of $109.5 million to the Class, is fully justified here by the facts and the law.[6]

## IV.  THE OBJECTIONS TO COUNSEL'S REQUEST FOR A FEE AWARD AND REIMBURSEMENT OF EXPENSES ARE WITHOUT MERIT

Although many objections to the original settlement and ASA have been filed, only a few concern the fee request.  Almost all of the fee-based objections fall under one of the following categories:

(1)     Objections based on underestimation of the ASA's value.  *See* Objection of Harold Bloom et al., D.I. 273 at 27 (arguing that the $35 million to set up the registry and the $30 million in counsel fees should not be included in the benefit to the Class);[7] Alex M.G. Burton, D.I. 625 at 10 (valuing settlement at only $45 million); Charles D. Weller and Dirk Sutro, D.I. 280 at 2 (valuing settlement at $75 million); David Meininger, D.I. 531 at 8 (benefits from the Registry are speculative); Anthony L. DeWitt, D.I. 82 at 8.[8]

---

[6]     Even if one were to assume that counsel for the Publisher Sub-Class were to receive all of the $15.5 million Google agreed to pay to settle the Publisher Action, $45.3 million in fees is 36% of the immediate $125 million fund, which is eminently reasonably under the circumstances.

[7]     Bloom also argues that the $15.5 million to the publisher plaintiffs in the Publisher Action should not be included in a total class benefit of at least $125 million.  The Authors' counsel, however have not done so in their calculation that $29.8 million in fees represents 27.2% of a $109.5 million (not $125 million) fund.

[8]     In addition, Objector DeWitt, at 9, states that the total fee and expense award should be no more than $5 million, without any explanation as to the origin of that number.

(2)     Objections to fees based on inadequacy of the settlement.  *See* Objections of Robert M. Kunstadt, D.I. 74 at 2 (no fee should be awarded because settlement is inadequate); Scott Gant, D.I. 143 at n.85 (because settlement is inadequate, counsel's fee request is unwarranted); Darlene Marshall, D.I. 850 at 13-14 (late-filed objection).[9]

(3)     Objections to the process by which Google agreed to pay the fee separately.  *See* Objections of Kathy Rowland, D.I. 126 at 1 (asking the Court to "scrutinize" the fee award to "ensure no conflicts or collusion was present"); Sanchez Annex Writers Grotto, D.I. 131 at 1 (noting the possibility that fee award is "incentive to make this deal go through"); Charles D. Weller and Dirk Sutro, at 3 (noting ethical concerns); American Society of Media Photographers, Inc. et al., D.I. 218 at 17 (same); Anthony L. DeWitt, D.I. 82 at 5-6 (same).

(4)     Objections to insufficient documentation in the notice supporting the fee request. *See* Objections of Charles D. Weller and Dirk Sutro, at 4 (requiring "reasonable relationship" between fee and benefit to class); Harold Bloom et al., at 27; Anthony L. DeWitt, D.I. 82 at 7-8; Alex M.G. Burton, at 10 (questioning the amount of litigation supporting the fee).

As to the first group of objections, counsel have already demonstrated in this submission as well as their briefs supporting final approval that the ASA offers monumental value to the Author Sub-Class.  The value of this benefit includes not only the $45 million minimum in damage awards and the $34.5 million to establish the Registry and pay for notice and settlement administration, but also the $29.8 million in attorneys' fees that otherwise would be owed by class members.  The value of the Registry is an extraordinary benefit for authors.  This non-profit

---

[9]     Darlene Marshall had earlier filed a timely objection that, as to fees, characterized the fee request as "excessive and unreasonable," D.I. 301 at 3, without any further explanation of her position.

licensing and collecting society will not only represent authors' interests under the ASA (*e.g.*, clear rights, attempt to locate Rightsholders who have not registered their works or claimed their revenues, enforce Google's contractual obligations, and issue payments), but it will also provide consenting authors the opportunity to further license their works to distributors other than Google.[10] Based on the total benefit to Class members of *at least* $109.5 million, the $29.8 million fee request is appropriate.

As to the second group of objections, counsel have elsewhere demonstrated the reasonableness of the settlement, as well as the reasonableness of the fee request.

As to the third group of objections, counsel have also demonstrated in this submission as well as in the Boni declaration that the attorneys' fee was separately negotiated after the other terms of the settlement were agreed to, and that there was nothing unethical or inappropriate about the manner in which the Author Sub-Class counsel's fees were negotiated.  Boni Dec. ¶ 17.

As to the fourth group of objections, the notice to class members indicated that counsel would seek up to $30 million in attorneys' fees and costs.  It is well established that counsel are under no obligation to substantiate their fee request in their notice beyond indicating the maximum amount of the fee request.  *See, e.g., Carlson v. Milberg LLP*, No. 09-0544-cv (2d Cir. Dec. 9, 2009) (notice that contained fee request expressed as a percentage of recovery sufficient). In *In re Bisys*, 2007 U.S. Dist. LEXIS 51087, at *5, the court held:

---

[10]     The DeWitt Objection (at 8 n.4) suggests that the $35 million value attributed to the creation of the database is "greatly inflated" based on DeWitt's (a respiratory therapist) experience in creating databases.  DeWitt's objection ignores the fact that the database the Registry will have to create and operate will be extremely complex.  He also ignores the fact that the Registry will function as much more than a database, as plaintiffs describe above.

> The actual application for fees was not filed until after the deadline for objections had elapsed. . . .  Nonetheless, members of the class were plainly on notice that the attorneys' fees might be as much as one-third of the fund and so had every reason to raise an objection if they thought this was excessive. . . .  Nor is such a manner of notification unusual in this context.

Other courts are in accord.  *See Bessey v. Packerland Plainwell, Inc.*, No. 06-95, 2007 U.S. Dist. LEXIS 79606, at *11 (W.D. Mich. Oct. 26, 2007) ("Although no separate notice of class counsels' motion for attorney's fees was sent to class members, reasonable notice of the maximum amount counsel intended to seek was included in the Class Notice describing the settlement."); *Wilson v. Airborne, Inc.*, No. 07-770, 2008 U.S. Dist. LEXIS 110411, at *15 (C.D. Cal. Aug. 13, 2008) (holding that notice of the requested attorneys' fees was reasonable where "the [class] notice . . . stated that up to 25 percent of the proposed settlement fund could be approved by the Court for attorneys' fees, and that the Court would consider the amount of any attorneys' fee award at the June 16, 2008, hearing").  It would not make practical sense to require attorneys to file fee applications before the class objection deadline, because counsel generally discuss in the fee application the "reaction of the class" to the Class Notice, which would not be possible if counsel had to file the fee request prior to the objection deadline.  Requiring attorneys to include in a class action notice the lengthy details usually set forth in fee requests would only render class action notices more complicated for the average reader.

The only objection not covered in one of these categories is the argument of Objectors Charles D. Weller and Dirk Sutro that the fee request should not exceed 21% of the total settlement value based on an "average" fee request set forth in a 2003 article.  That "average" fee ignores the many cases cited above approving fees substantially greater than 21%, and ignores the uniquely complex and innovative nature of this litigation and the skill and creativity required to resolve it appropriately.

Weller and Sutro (at 6) (as does Gant at 47 n. 25) argue that any fee decrease from the $30 million request "should go to the Settlement Fund for the benefit of the Class," but fail to recognize that under the ASA any fees awarded that are less than the agreed amount will go back to Google. Boni Dec. ¶ 18. Moreover, Weller and Sutro's argument assumes, without stating any basis for this assumption, that the settlement and the fee request were negotiated together, where an increase in fee request comes at the expense of the settlement, and this is simply untrue. *Id.*

Finally, a recently filed objection raised the issue of attorneys' fees.[11] That objection is untimely as it was filed after the deadline set forth in the original Notice and concerned a provision that was not amended, in violation of the Court's November 19, 2009 Order limiting new objections to the amended provisions. See Nov. 19, 2009 Order ¶ 18; Supplemental Notice at 5 ("At this time, you may only object to the provisions amending the Original Settlement.").

Even if the Court were to overlook such violation, the objection is baseless, mean-spirited and belies an ideological disdain for class actions. It argues (i) that the settlement has not been brought by a "copyright firm" – Boni & Zack, lead counsel for the Author Sub-Class, being "class action men," and (ii) that the work done was "outside the subject matter of the case," and therefore should not be rewarded. D.I. 862 at 7, 20. First, Boni & Zack would be honored to be characterized as "class action men" were it not for the fact that name partner Joanne Zack is a woman. We are extremely proud of the work we do and of the cases we have successfully prosecuted. Boni Dec. Ex. E (firm bio).

---

[11] D.I. 862 at 20 (Writers' Representatives LLC and Richard A. Epstein).

Second, included in the array of disciplines in which Boni & Zack, and their named partners, have practiced are three of the most high profile, cutting edge copyright cases of the decade: (1) *In re Freelance Works in Literary Databases Copyright Litig.*, MDL No. 1379 (S.D.N.Y.), in which Mr. Boni and Ms. Zack represent a class of freelance authors whose copyrighted works were allegedly infringed by being displayed on electronic databases without their authorization. That case settled, the district court (Daniel, J.) granted final approval of the settlement, the Second Circuit reversed on a jurisdictional technicality (whether unregistered works can be the subject of a class action settlement), the Supreme Court granted certiorari and, after briefing and argument, the Court's decision is pending; (2) *Random House v. RosettaBooks LLC*, in which Mr. Boni and Ms. Zack represented a start up e-book publishing company sued by Random House and threatened with a preliminary injunction motion on the first day it opened for business. A court in this district (Stein, J.), after an evidentiary hearing, denied the injunction (150 F. Supp. 2d 613 (S.D.N.Y. 2001)), and that decision was upheld on appeal (283 F.3d 490 (2d Cir. 2002)); and (3) the present case, which incorporated many of the copyright principles at play in the previous copyright actions. In addition, Mr. Boni has counseled the Authors Guild in various copyright-related matters since late 1999. Boni Dec. ¶ 1.[12]

## V. ALLOCATION OF APPROVED FEES AMONG CLASS COUNSEL

Courts generally approve fee applications that request a single aggregate fee award with allocations to specific firms to be determined by lead counsel, who are most familiar with the work done by each firm and each firm's overall contribution to the litigation. Lead counsel are

---

[12]      As to the charge that the work we performed was "outside the subject matter of the case," that is a frivolous claim. The work counsel performed is described in detail in the supporting declarations, and all such work was necessary to the prosecution and settlement of this action. *See* Boni Dec. ¶¶ 8-16; Dumain Dec. ¶ 1; LaRocca Dec. ¶¶ 5-6.

the attorneys "better able to decide the weight and merit of each [counsel's] contributions." *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2002 U.S. Dist. LEXIS 19396, at *65 (E.D. Pa. Oct. 3, 2002). From an efficiency standpoint, leaving allocation to lead counsel makes sense because it relieves the Court of the "difficult task of assessing counsel's relative contributions." *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F. 3d 283, 329 n. 96 (3d Cir. 1998). Here, lead counsel Boni & Zack should be permitted to allocate the attorneys' fees awarded by the Court to Counsel for the Author Sub-Class.

## VI. THE EXPENSES INCURRED BY COUNSEL WERE REASONABLE AND NECESSARY TO THE EFFECTIVE PROSECUTION OF THIS ACTION AND SHOULD BE REIMBURSED

Counsel for the Author Sub-Class request reimbursement of $213,511 in aggregate expenses. The expenses include, among other things, expert fees, computerized legal research services, travel costs, and copying costs. The expenses advanced by counsel were reasonable and necessary to the prosecution of the case, and should therefore be reimbursed. *See Danny Kresky Enters. Corp. v. Magid*, 716 F.2d 215, 219-20 (3d Cir. 1983); *In re Chambers Dev. Sec. Litig.*, 912 F.Supp. 852, 863 (W.D. Pa. 1995) ("Plaintiffs' counsel also are entitled to be reimbursed for all reasonable expenses necessary for the successful prosecution of this litigation.").

## VII.  CONCLUSION

Second Circuit law overwhelmingly supports plaintiffs' fee request. Without any guarantee of success, Counsel for the Author Sub-Class pursued this litigation at their own risk and expense for more than four years.  Counsel have had to navigate heretofore uncharted waters.  The settlement they achieved on behalf of the Settlement Class and the Author Sub-Class is exceptional, particularly when weighed against the myriad litigation risks the Class would have faced.  The public interest has been well served by the resolution of this copyright litigation.

DATED:  February 11, 2010                  Respectfully submitted,

/s/ Michael J. Boni
Michael J. Boni (pro hac vice)
Joanne Zack (JZ 6432)
Joshua D. Snyder
Theresa J. Henson
BONI & ZACK LLC
15 St. Asaphs Rd.
Bala Cynwyd, PA  19004

Sanford P. Dumain (SD8712)
Milberg LLP
One Pennsylvania Plaza
New York, NY 10119

Robert J. LaRocca
KOHN SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107

*Attorneys for Plaintiffs The Authors Guild, Inc.,
Herbert Mitgang, Betty Miles, Daniel Hoffman,
Paul Dickson, Joseph Goulden, Maureen Duffy,
Daniel Jay Baum, Margaret Drabble, Robert
Pullan, and the Author Sub-Class*