UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

The Authors Guild, Inc., Association of American   :
Publishers, Inc., et al.,   :

      :

    Plaintiffs,   :

      :  Case No. 05 CV 8136 (DC)

    v.   :

      :  **FILED ELECTRONICALLY**

Google Inc.,   :

      :

    Defendant.   :

------------------------------------------------------------------x

### DECLARATION OF MICHAEL J. BONI IN SUPPORT OF FINAL SETTLEMENT APPROVAL AND APPLICATION OF COUNSEL FOR THE AUTHOR SUB-CLASS FOR AWARD OF FEES AND REIMBURSEMENT OF COSTS

I, Michael J. Boni, declare as follows:

1.    I am a partner with the law firm of Boni & Zack LLC. My firm represents Associational Plaintiff The Authors Guild, Inc. ("Authors Guild") and Plaintiffs Herbert Mitgang, Betty Miles, Daniel Hoffman, Paul Dickson, Joseph Goulden, Daniel Baum, Robert Pullan, Margaret Drabble and Maureen Duffy, and serves as lead counsel for the Author Sub-Class in this action. We assumed such representation and role in 2007 when I left former lead authors' counsel Kohn, Swift & Graf, P.C. and opened Boni & Zack LLC. I have counseled the Authors Guild with respect to numerous copyright litigation matters since 1999.

2.    I submit this Declaration in support of Plaintiffs' motion for final settlement approval and also in support of the Author Sub-Class counsel's application for an award of attorneys' fees and reimbursement of expenses reasonably incurred in the course of their representation. The time expended in preparing this Declaration is not included in this request.

3.    Some objectors complain that the settlement agreement is too long and complicated, or that it should have been translated into languages other than English. United

States class action law, however, does not require dissemination of the settlement agreement, only notice of the settlement. I have been prosecuting class actions since 1990, many years before class action settlement websites were used. Before class action settlement websites became routine, the Class Notice (or published Summary Notice) was the only way that class members could learn about the settlement. That is because the settlement agreement itself was available only by visiting the courthouse and reviewing the case file in the clerk's office, or by making a specific inquiry to the plaintiffs' counsel. It was only after class action settlement websites became routine that the settlement agreement itself was posted. Such postings are not required by any law or rule, but rather have in the last several years been placed on the sites as a courtesy to class members.

4.      Some objectors claim that Rightsholders of Inserts should have the right to remove their Inserts and to exclude them from less than all Display Uses. In the settlement negotiations, I and other negotiators for Plaintiffs fought hard for these provisions. Google, however, would not agree, contending that removal of Inserts, and their exclusion on a piecemeal basis, would be too technologically burdensome. Plaintiffs concluded that, because Insert Rightsholders have the right to exclude their Inserts (or portions of their Inserts) from all Display Uses, the treatment of Inserts under the ASA nevertheless is fair, adequate and reasonable.

5.      Based on a review by counsel for the Author Sub-Class of thousands of author-publisher contracts produced in discovery by the publisher Plaintiffs, Plaintiffs concluded, and counsel for the Publisher Sub-Class agreed, that most form book publishing contracts in the late 1980s began to include express electronic rights grants to the publisher. Counsel for the Author Sub-Class and the Publisher Sub-Class thus agreed that authors would receive a greater revenue split for books published prior to 1987 than those published thereafter.

6.　　　During the settlement negotiations, Plaintiffs raised the issue of Google's ability not to display certain Books for reasons of its choosing. Even though Plaintiffs acknowledged that, as a private entity and in the absence of state action, Google was not limited by First Amendment restrictions, Plaintiffs nevertheless insisted on protections that would preclude Google from engaging in unfettered "censorship-like" activity. The parties held extensive discussions about this subject, and the libraries involved in the negotiations were actively involved in those discussions as well. I participated in all such discussions. After hearing from David Drummond (Google's Chief Legal Officer), Alexander MacGillivray (Google's then lead legal negotiator) and Daniel Clancy (Engineering Director of Google Book Search), Plaintiffs concluded that Google has no interest in "censorship," but Google did not want to bind itself to an open-ended obligation to display every book it scanned. Because this issue was so important to Plaintiffs and the libraries, however, and notwithstanding Google's stated position with respect to "censorship," Plaintiffs, with the assistance of the libraries, negotiated for and obtained the critical anti-censorship provision at ASA § 3.7 (e).

7.　　　During settlement negotiations, Plaintiffs sought to include revenue models for Google's use of Non-Display Uses. Google would not agree under any circumstance, and Plaintiffs concluded that this term was not worth walking away from the settlement and its many benefits to the Class.

8.　　　Before the commencement of litigation, counsel for the Author Sub-Class extensively researched and investigated the potential claims against Google, conferred and strategized with Associational Plaintiff the Authors Guild, as well as with the publishers' counsel, regarding the claims to be brought, and prepared the initial complaint.

9.     After commencing the litigation, Counsel for the Author Sub-Class performed the following necessary work in connection with this litigation: participated in numerous in-person and telephonic meetings with the Authors Guild and the named Plaintiffs, the publishers' counsel, Associational Plaintiff the American Association of Publishers ("AAP"), successfully defeated a pre-motion argument by Google to dismiss the complaint and strike the class allegations; prepared for and participated in status conferences before this Court; researched a staggering array of factual and legal issues, including those pertaining to class certification, damages, standing requirements (trade associational standing as well as class representative and absent class member standing), Berne Convention and other international copyright treaty issues, the fair use defense, and appropriate injunctive relief remedies. Counsel for the Author Sub-Class reviewed over four million of pages of documents related to Google's activities, and also reviewed many thousands of publisher documents relevant to the authors' and publishers' respective copyright and contractual interests in the books digitized by Google. During the pre-trial stage of the proceedings, counsel were closely monitoring pending and resolved fair use cases potentially relevant to the present litigation.

10.    In the fall of 2006, the parties began settlement negotiations, which proved to be uniquely complex and difficult given the competing interests of the parties involved (authors, publishers, Google, and libraries) and the necessity of resolving issues relating not only to monetary compensation for past infringement, but also to the uses that Google and the libraries could and could not make of the millions of books Google already digitized.

11.    Throughout the course of the negotiations that led to the original and amended settlement agreements, Counsel for the Author Sub-Class faced an extremely large number of tasks and issues. They retained and worked closely with a number of experts in the areas of

book publishing, online security, non-profit corporate counsel (for assistance with Registry issues), Rule 23, copyright rights groups, database design, and more. They participated in meetings with Google and publisher representatives to discuss and finalize appropriate security standards. They negotiated with the participating libraries over terms in the settlement such as the uses the libraries could make of their digital copies, the censorship provision and other terms relevant to both the libraries and the Rightsholders. Over the course of countless in-person and telephonic meetings, and reams of correspondence, the authors' counsel negotiated a compromise with the Publisher Sub-Class counsel and representatives with respect to the Author-Publisher Procedures. Negotiating the language of the settlement papers and briefing two motions for preliminary settlement approval took an extraordinary amount of time given the scope of the original and amended settlement agreements and attachments.

12.     Counsel spent a large amount of time working on the notice program and Settlement Website. They worked closely with the notice provider, Kinsella Media, the Settlement Administrator, Rust Consulting, Google and counsel for the Publisher Sub-Class.

13.     In addition, counsel were engaged in the investigations opened by the DOJ and six state Attorneys General. That investigation required counsel to negotiate the scope of and respond to civil investigative demands made on their client the Authors Guild, review and produce responsive documents, and research and draft memoranda on issues such as antitrust, Rule 23 and state escheat and abandoned property laws. Further, counsel participated in many in-person meetings, conference calls and written correspondence with representatives of the regulatory agencies, and many meetings with Google and the publishers' counsel with respect to the regulatory investigations.

14. For the better part of 2009, counsel responded to hundreds and hundreds of class member inquiries. They traveled to New York, Europe and Japan to meet with and address rights groups interested in learning about the settlement. They also engaged in dozens of conference calls and video-conferences with RROs for the same purpose. They continue to respond regularly to class member inquiries, authors' agents, and rights groups, and anticipate continuing to do so for the foreseeable future.

15. The following is a non-exhaustive list of specific work and services Boni & Zack performed in this litigation, as reflected in the firm's contemporaneous, daily time records: reviewed documents produced in discovery; led and participated in countless in-person and telephone conferences between co-counsel, the Guild, counsel for the Publisher Sub-Class, and with defense counsel and representatives of Google on every aspect of the litigation and settlement; participated in telephonic and in-person Court hearings and conferences; reviewed documents produced in discovery by Google and the publisher Plaintiffs; reviewed presentations regarding economic and pricing models related to settlement; analyzed author-publisher contracts; prepared proposals concerning electronic rights under the settlement; researched orphan works legislation; prepared memoranda analyzing author publisher-contracts; corresponded with the parties on a numerous occasions regarding the non-disclosure agreement; prepared a master document analyzing clauses in publisher contracts; researched issues related to foreign and government publishers in books scanned by Google; participated in scores of meetings with the Authors Guild, AAP, counsel for the Publisher Sub-Class, and Registry executive director-designate Michael Healy regarding formation of the Registry; worked with retained corporate counsel, the Authors Guild, and counsel for the Publisher Sub-Class on Registry charter issues; participated in numerous meeting with the Author Sub-Class's security

experts and with the Publisher Sub-Class's experts on strategies for negotiating an acceptable security protocol with Google; participated in security protocol negotiations with Google; corresponded and participated in telephone conferences among the parties concerning issues with the participating libraries; reviewed memoranda concerning economic and sales issues; researched foreign use issues; researched copyright status of United States and foreign-published books in Google's samples of scanned works, and prepared memoranda concerning copyright status of such books; served as lead negotiator for the authors concerning the settlement term sheet, and reviewed and revised scores of iterations of the term sheet; served as lead negotiator for the authors in the negotiations with respect to the Settlement Agreement and ASA, which included scores of meetings with the parties in New York (sixteen meetings alone at Google's New York offices), Mountain View, CA and Bala Cynwyd, PA, by videoconference and WebEx, by telephone and by reams of email correspondence; reviewed and revised scores of drafts of the settlement proposals and draft settlement agreements, including the ASA; corresponded with the Notice Provider, Settlement Administrator and counsel for the Publisher Sub-Class regarding notice translation issues; conducted extensive research and analysis of potential antitrust, Rule 23 and other issues related to the settlement, and drafted memoranda concerning such research and analysis; corresponded with the parties regarding non-consumptive library uses; researched Noerr-Pennington immunity issue; researched and retained experts on metadata and databases; negotiated with other counsel concerning revisions to the Case Management Order; researched censorship issues and corresponded with clients, the parties and library representatives regarding such issues; corresponded with the parties and clients regarding press inquiries and settlement publicity; negotiated the Author-Publisher Procedures over the course of nearly two years with counsel for the Publisher Sub-Class, the AAP and the publisher representatives; researched

special master and claim dispute terms in class settlement agreements; researched most-favored-nation provisions; researched notice issues; researched international notice issues; researched electronic rights and author advance issues in publisher contracts; corresponded with the parties and certain rights groups regarding metadata issues, including correspondence with a metadata expert; stayed abreast of pending patent suits against Google; corresponded with counsel for libraries concerning release issues; researched regarding res judicata issues; researched the Digital Millennium Copyright Act; researched and corresponded with the parties regarding reseller issues; researched agency issues under Rule 23; worked closely with civil procedure and copyright expert Arthur Miller in connection with class certification issues; worked with counsel for the Publisher Sub-Class on preparing the second and third amended complaints; drafted a motion for preliminary settlement approval and a supporting memorandum, and conducted related legal research; reviewed and helped draft settlement website materials and mock-ups; participated in conference calls regarding tax issues; researched potential escheat issues; participated in numerous in-person (including in Tokyo, Japan, Munich, Germany, and Milan, Italy), telephone and video-conferences with foreign RROs; drafted long-form and summary notices, worked with the Notice Provider and counsel for the Publisher Sub-Class to prepare the a Notice Program, and researched issues concerning dissemination of notice, including numerous conference calls and reams of email correspondence with Kinsella Media and Rust Consulting; worked with the parties on developing the Settlement Website and claiming process; met with and retained a consultant regarding claim form issues; prepared an opposition to a motion to change the date of the final approval hearing; worked with the parties and the Settlement Administrator to prepare call center scripts and responses to frequently asked questions; negotiated the Settlement Website's privacy policy; participated in conference calls with the

parties regarding Google's privacy policy; responded to many hundreds of email, postal mail and telephone inquiries from class members; prepared for and met in New York with the Association of Authors Representatives; worked with counsel for the Publisher Sub-Class on preparing and finalizing numerous consultation agreements, including with experts and with Mr. Healy and his counsel; participated in a conference at Columbia University regarding the settlement; participated in a conference call with parties seeking to intervene; opposed intervention motions; corresponded with the Court on settlement-related issues; filed a response to class members' request to extend the opt-out deadline; engaged in the investigations opened by the DOJ and six state Attorneys General, including negotiating the scope of and responding to civil investigative demands made on the Authors Guild, gathering, reviewing and producing responsive documents, researching and drafting memoranda on issues such as antitrust, Rule 23 and state escheat and abandoned property laws, participating in many in-person meetings, conference calls and written correspondence with representatives of the regulatory agencies, and many meetings with Google and counsel for the Publisher Sub-Class with respect to the regulatory investigations; worked with the parties on negotiating Library-Registry Agreements with participating libraries; helped Paul Aiken prepare for his testimony at a House Judicial Committee Hearing on the Settlement; attended the House Judiciary Hearing in Washington, D.C.; drafted correspondence to counsel for the House Judiciary Committee; met with the William Morris Enterprise agency in New York; participated in a telephone conference with the European Commission, helped prepare a written submission to the European Commission, and participated in telephone conferences regarding a European Commission hearing; negotiated with the Songwriters Guild of America ("SGA") on amending settlement language regarding musical notation, and secured the SGA's agreement to withdraw its objection.

16.     Furthermore, this firm has been working with counsel for the Publisher Sub-Class on Plaintiffs' motion for final settlement approval and supporting papers. This has been a very time-consuming, labor-intensive project in light of their having to review, research and respond to approximately 500 objections and two DOJ Statements of Interest. Counsel will also represent the Author Sub-Class at the final fairness hearing on February 18, 2010. In the event the Court grants final approval and an objector appeals, counsel will represent the Author Sub-Class on appeal. Additional substantial hours and resources will necessarily be expended assisting Class Members with their claims, assisting with the establishment of the Registry, responding to other inquiries, as well as overseeing the settlement administration process and distributing Cash Payments. Based on my 20 years of practicing class action law and my knowledge of this action, I reasonably predict that counsel will spend hundreds of additional hours, at least, representing the Author Sub-Class after the fairness hearing.

17.     The parties negotiated for two years before they executed the Settlement Agreement on October 28, 2008. It was not until the parties resolved all substantive terms of the Settlement Agreement that counsel for the Author Sub-Class and Google began to negotiate counsel's attorneys' fees and reimbursement of costs.

18.     The requested attorneys' fees and expenses are paid separately by Google and in no way reduce the level of the benefits made available to the Class. Google has agreed to pay to Counsel for the Author Sub-Class fees and expenses in addition to and wholly apart from the relief to the Class. Any reduction in the fees Google has agreed to pay will be retained by Google.

19.     Attached as Exhibit A is a summary of the lodestars of the three firms that comprise counsel for the Author Sub-Class. The total number of hours for attorney and

paraprofessional time reflected on Exhibit A is 19,016.55, representing a lodestar of $10,075,062.50.

20.     Attached as Exhibit B is a summary of the expenses reasonably incurred by counsel for the Author Sub-Class in connection with the litigation. The aggregate of the expenses reasonably incurred in this litigation is $213,510.67, reflecting primarily expert, travel, research, copying and document costs, and other necessary expenses.

21.     The total number of hours expended on this litigation by my firm is 9,778.75 hours. The total lodestar for my firm is $6,260,112.50.

22.     The schedule attached hereto as Exhibit C is a detailed summary indicating the amount of time spent by the partners, associates, and professional staff of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates. This schedule was prepared from "Timeslips" time records regularly prepared and maintained by my firm, which are available at the request of the Court. None of this time includes time that I (or any other attorney with my firm) expended while with our former firm Kohn, Swift & Graf, P.C.

23.     The hourly rates for the attorneys and professional staff in my firm included in Exhibit A are the same as the regular, current rates charged for their services in non-contingent matters and/or which have been accepted and approved by courts in other class action litigation.

24.     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

25.     As detailed in Exhibit D, my firm has incurred a total of $151,700.37 in un-reimbursed expenses in connection with the prosecution of this litigation.

26. The expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

27. Attached hereto as Exhibit E is a biography of my firm and attorneys in my firm who were principally involved in this litigation.

28. Attached as Exhibit F is the Declaration of Sandy P. Dumain.

29. Attached as Exhibit G is the Declaration of Robert J. LaRocca.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 11th day of February 2010 at Bala Cynwyd, Pennsylvania.


_____
Michael J. Boni

*The Authors Guild, Inc., Association of American Publishers, Inc., et al. v. Google Inc.*

## LODESTAR REPORT

### ALL FIRMS

**Reporting Period: Inception through February 5, 2010**

| Firm Name | Cumulative Hours | Cumulative Lodestar |
|-----------|------------------|---------------------|
| Boni & Zack LLC | 9778.75 | $6,260,112.50 |
| Kohn, Swift & Graf, P.C. | 4,718.80 | $2,073,625.00 |
| Milberg LLP | 4,519.00 | $1,741,325.00 |
| **TOTAL** | **19,016.55** | **$10,075,062.50** |

**EXHIBIT B**


*The Authors Guild, Inc., Association of American Publishers, Inc., et al. v. Google Inc.*


**EXPENSE REPORT**

**ALL FIRMS**

| Firm Name | Cumulative Total |
|---|---|
| Boni & Zack LLC | $151,700.37 |
| Kohn, Swift & Graf, P.C. | $53,845.50 |
| Milberg LLP | $7,964.80 |
| **TOTAL EXPENSES** | **$213,510.67** |

# EXHIBIT C

## The Authors Guild, Inc., Association of American Publishers, Inc., et al. v. Google Inc.

### TIME REPORT
### BONI & ZACK LLC

### Reporting Period: Inception through February 5, 2010

Catagories:

| | | | |
|---|---|---|---|
| A | Pre-Filing Investigation | E | Court Appearances, Trial, Appeal |
| B | Pleadings | F | Settlement |
| C | Briefs, Motions, Research | G | Case Management & Strategy |
| D | Discovery | | |

| NAME | Status* | A | B | C | D | E | F | G | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Michael J. Boni | P | | 6.50 | 46.50 | 20.00 | | 4819.00 | 105.50 | 4997.50 | $675.00 | $3,373,312.50 |
| Joanne Zack | P | | | | | | 3317.50 | 8.50 | 3326.00 | $675.00 | $2,245,050.00 |
| Joshua D. Snyder | P | | | 189.50 | | | 366.25 | | 555.75 | $500.00 | $277,875.00 |
| Kate Reznick | A | | | | | | | | 193.75 | $300.00 | $58,125.00 |
| Theresa J. Henson | A | | | 149.25 | 9.25 | | 266.50 | | 425.00 | $500.00 | $212,500.00 |
| Joanne Noble | C | | | 39.75 | | | 2.25 | | 42.00 | $450.00 | $18,900.00 |
| Michelle Wimberly | PL | | | 11.75 | | | 79.75 | 2.50 | 94.00 | $175.00 | $16,450.00 |
| Edmunds Brokans | C | | | | | | | | 74.25 | $400.00 | $29,700.00 |
| John Herron | C | | | | | | | | 70.50 | $400.00 | $28,200.00 |
| **TOTALS** | | 0.00 | 6.50 | 436.75 | 29.25 | 0.00 | 8851.25 | 116.50 | 9778.75 | | $6,260,112.50 |

*Status: P=Partner, A=Associate, PL=Paralegal, C=Contract Attorney

<u>**EXHIBIT D**</u>

*The Authors Guild, Inc., Association of American Publishers, Inc., et al. v. Google Inc.*

**EXPENSE REPORT**

**BONI & ZACK LLC**

**Reporting Period: Inception through January 31, 2010**

| Expense Category | Amount |
|---|---|
| Computer and Electronic Research | **$6,017.82** |
| Expert Witness and Consultant Fees | **$86,511.16** |
| Filing, Service, Transcript and Witness Fees | -------- |
| Long Distance Telephone & Facsimile | **$1,473.02** |
| Photocopying (including commercial or internal copying) | **$11,281.94** |
| Postage & Overnight Delivery (FedEx, UPS) | **$548.22** |
| Travel, Food, and Lodging | **$44,742.66** |
| Miscellaneous | **$1,125.55** |
| **TOTAL EXPENSES** | **$151,700.37** |

**Exhibit E**

**BONI & ZACK LLC**

**Firm Resume**

Boni & Zack LLC is a law firm in Bala Cynwyd, Pennsylvania, founded in March 2007. Boni & Zack focuses on class action and complex litigation under antitrust, intellectual property, consumer and securities laws.

Boni & Zack currently serves as lead counsel or on plaintiffs' Executive Committee in the following cases: *In re Freelance Works in Literary Databases Copyright Litig.*, MDL No. 1379 (S.D.N.Y.); *The Authors Guild, et al. v. Google Inc.,* No. 05-CV-8136 (S.D.N.Y.); *In re Yahoo Litig.,* No. 06-2737-CAS (C.D. Cal.); and *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig., MDL No. 1720.*

In addition, Boni & Zack is currently representing plaintiffs in the following actions: *In re Pressure Sensitive Labelstock Antitrust Litig.*, MDL No. 1556 (M.D. Pa.); *In re Chocolate Confectionary Antitrust Litig.*, MDL No. 1935 (M.D. Pa.); *In re Replacement Filter Antitrust Litig.,* MDL 1957 (D. Conn.); *In re Flat Glass Antitrust Litig.*, MDL No. 1942 (W.D. Pa.); *In re Packaged Ice Antitrust Litig.*, MDL No. 1952 (E.D. Mich.); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869 (D.D.C.); *In re Fasteners Antitrust Litig.*, MDL No. 1912 (E.D. Pa.); *In re Urethane Antitrust Litig. (Polyether Polyols)*, MDL No. 1616 (D. Kan.); *In re Refrigerant Compressors Antitrust Litig.*, MDL No. 2042 (E.D. Mich.); *In re Blood Reagents Antitrust Litig.,* MDL No. 2081; *In re Pre-filled Propane Tank Marketing & Sales Practices Litig.*, MDL No. 2086; *In re Chase Bank USA, N.A., "Check Loan" Contract Litig,* MDL No. 2032 (N.D. Cal.); *In re Wellbutrin XL Antitrust Litig.*, 08-CV-2433 (E.D. Pa.); *Standard Iron Works v. Arcelormittal, et al.*, 08-CV-5214 (N.D. Ill.); *In re Puerto Rican Cabotage Antitrust Litig.,* MDL No. 1960 (D.P.R.).

**<u>Michael J. Boni</u>** founded Boni & Zack LLC in March 2007 after practicing complex commercial litigation for nearly 20 years.  He specializes in antitrust, copyright, consumer, shareholder and class action litigation.

Mr. Boni graduated from the University of Pennsylvania School of Law, received an M.A. degree in psychology from the University of Connecticut, and received an A.B. degree from Albright College. Mr. Boni is admitted to practice in Pennsylvania, the Supreme Court of the United States, the United States Courts of Appeals for the Second, Third, Sixth and Ninth Circuits, and the United States District Courts for the Eastern District of Pennsylvania, Northern District of California and Eastern District of Michigan.

Mr. Boni has served as lead counsel in a number of complex matters, including *The Authors Guild, et al. v. Google Inc.*, No. 05-CV-8136-JES (S.D.N.Y.) (copyright infringement class action settlement pending concerning the Google Book Search program); *In re Literary Works in Electronic Databases Copyright Litig.*, MDL No. 1379

(S.D.N.Y.) (copyright class action settlement approved and on appeal); *Random House, Inc. v. Rosetta Books, LLC, et al.*, No. 01-Civ-1728 (S.D.N.Y.) (successful defense against copyright infringement claims brought by Random House against e-book publisher Rosetta Books); *In re Pillar Point Partners Antitrust and Patent Litig.*, MDL No. 1202 (D. Ariz.) (antitrust class action settlement); *In re Western States Wholesale Natural Gas Antitrust Litig.*, MDL No. 1566 (D. Nev.) (antitrust class action settlement); *Mikhail, et al. v. Toshiba America Information Systems, Inc.*, No. BC 278163 (Superior Ct. Cal.) (consumer class action settlement); *Anderson v. Toshiba America Information Systems, Inc.*, BC 299977 (Cal. Sup. Ct., L.A. County) (consumer class action settled); *In re Yahoo! Litig.*, CV06-2737-CAS (C.D. Cal.) (class action settlement approved on behalf of Yahoo's advertising customers for alleged unfair business practices); *Next Proteins International v. Radonsky, et al.*, No. BC 304799 (Superior Ct. Cal.) (consumer class action settled); *In re RF Tags Antitrust Litig.*, No. 02-CV-3730 (D.N.J.) (antitrust class action settlement); *Pilkington, et al. v. U.S.Search.com*, No. BC 234858 (Superior Ct. Cal.) (consumer class action settlement); *True Communication, Inc., d/b/a Metrodate.com v. The Gator Corporation*, No. CIV 430620 (Superior Ct. Cal.) (unfair competition class action settled); *Miller v. Pep Boys, Inc.*, et al., No. 0201-41489 (C.C.P. Phila. Cy.) (consumer class action settled); *Kleeman v. Verizon Communications Inc., et al.* (consumer class action settled); *In re Rio Hair Naturalizer Products Liability Litig.*, MDL No. 1055 (E.D. Mich.) (product liability class action settlement); *In re AMC Shareholder Derivative Litig.*, No. 12855 (Del. Chancery) (settlement); *Winigrad v. Franklin Electronics,* (Superior Ct. N.J.) (consumer class action settled); *Pacillo v. Philips Electronics*, (Superior Ct. N.J.) (consumer class action settled).

In its opinion granting final settlement approval in *Rio*, the court stated that "the work of [lead counsel] and the manner in which they conducted themselves exhibited the very highest level of professionalism and competence in our legal system." 1996 U.S. Dist. LEXIS 20440, *57 (E.D. Mich. December 20, 1996).

Mr. Boni recently served on the Executive Committee in *In re OSB Antitrust Litig.*, Master File No. 06-CV-00826 (E.D. Pa.) (antitrust class action settlement), and on Plaintiff's Executive Committee in *In re Sovereign Bancorp, Inc. Shareholders Litig.*, Nov. Term 2008, Case 2587 (Phila. C.C.P.) (shareholder class and derivative action settlement pending approval). He presently serves on the Executive Committee of *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-md-1720 (E.D.N.Y.)

In addition, Mr. Boni has played an integral role in the presentation of other complex matters, including: *In re Relafen Antitrust Litig.*, Master File No. 01-12239 (D. Mass.) (antitrust class action settlement); *In re Disposable Contact Lens Antitrust Litig.*, MDL Docket No. 1030 (M.D. Fla.) (antitrust class action settlement); *Schwab v. America Online, Inc.*, No. 96 CH 13732 (Cook County, Ill.) (consumer class action settlement); *In re Intelligent Electronics, Inc. Securities Litig.*, Master File No. 92-CV-1905 (E.D. Pa.) (securities class action settlement); *In re Lockheed Securities Litig.*, Master File No. CV89-6745-TJH (Bx) (C.D. Ca.) (securities class action settlement); *In re Orion Securities Litig.*, Civil Action No. 91-3304 DT (JRx) (E.D.N.Y.); *In re Budd Pension*

*Plan Litig.*, Master File No. 91-4082 (E.D. Pa.) (ERISA class action settled); *In re Toys "R" Us Antitrust Litig.*, MDL Docket No. 1211 (E.D.N.Y.) (antitrust class action settlement); *First Eastern Corporation, et al. v. Mainwaring, et al.*, Civil Action No. 92-CV-1176 (RLB) (E.D. Pa.).

Mr. Boni was named one of Pennsylvania's "Super Lawyers" in 2005, 2006, 2007, 2008, 2009 and 2010.

Mr. Boni is a past Chair of the Board of Directors of the Anti-Defamation League (Metropolitan Philadelphia Board), and is a member of the Board of Directors of Community Legal Services in Philadelphia and serves on that Board's Leadership Council.

**<u>Joanne Zack</u>** represents clients in complex litigation in a variety of areas, including antitrust, copyright, ERISA, securities, breach of contract, and breach of fiduciary duty. She has tried cases and argued appeals in both federal and state court.

Ms. Zack was a shareholder at Kohn, Swift and Graf from 1988 to 2004, and was associated with Cleary, Gottlieb, Steen and Hamilton in New York from 1981 to 1986. She also served as Law Clerk to the Honorable Charles L. Brieant of the United States District Court for the Southern District of New York. She graduated from Carleton College and N.Y.U. Law School, where she was elected to Order of the Coif and served as Research Editor of the Law Review.

Ms. Zack is admitted to practice in the courts of Pennsylvania and New York, the Second, Third and Federal Circuit Courts of Appeals, the Eastern District of Pennsylvania, and the Southern and Eastern Districts of New York. She has served on the boards and executive committees of Community Legal Services of Philadelphia and Philadelphia VIP, and as a sponsor in Philadelphia Futures Sponsor a Scholar program. In 2001, she received the Champion of Justice Award from CLS.

Representative cases include: *The Authors Guild, et al. v. Google, Inc.* (S.D.N.Y.) (copyright class action challenging Google's digitization of books); *In re OSB Antitrust Litig.*, 2007 U.S. Dist. LEXIS 56584 (E.D. Pa. 2007)(price-fixing class action in the paper industry); *In re Linerboard Antitrust*, 305 F.3d 145 (3d Cir. 2002) and 203 F.R.D. 199 (E.D. Pa. 2001)(output restriction class action involving corrugated containers); *Rossi v. Standard Roofing, Inc*., 156 F.3d 452 (3d Cir. 1998)(refusal to deal in the roofing industry); *Tabas v. Tabas*, 47 F.3d 1280 (3d Cir. 1995)(alleged civil RICO); *Alvord-Polk, Inc. v. F. Schumacher & Co*., 37 F.3d 996 (3d Cir. 1994)(refusal to deal in the wallpaper industry); *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685 (3d Cir. 1993)(City's violation of civil rights through abuse of police power); *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp*., 995 F.2d 414 and 425 (3d Cir. 1993) (price fixing in the business jet industry); *Breard v. Sachnoff & Weaver, Ltd*., 941 F.2d 142 (2d Cir. 1991)(securities fraud tax shelter); *Ellis National Bank of Jacksonville v. Irving Trust Co.*, 786 F.2d 466 (2d Cir. 1986)(ERISA action); *In re Assicurazioni Generali S.P.A. Holocaust Insurance Litig.*, 228 F. Supp. 2d 348 (S.D.N.Y. 2002)(class action against life

insurers for breach of contract); *Random House, Inc. v. Rosetta Books, LLC*, 150 F. Supp. 2d 613 (S.D.N.Y. 2001), *aff'd*, 283 F.3d 490 (2d Cir. 2002) (alleged copyright violation); *Milandco Ltd., Inc. v. Washington Capital Corp*., 2001 U.S. Dist. LEXIS (E.D. Pa. 2001)(alleged breach of contract for real estate); *Borkon v. Saidel*, 1995 U.S. Dist. LEXIS 11707 (E.D. Pa. 1995)(alleged securities fraud); *Goldberg v. Hankin*, 835 F. Supp. 815 (E.D. Pa. 1993)(alleged securities fraud); *Schutte v. Maleski, et al*., 1993 U.S. Dist. Lexis 8332 (E.D. Pa. 1993) and 1993 U.S. Dist. Lexis 6980 (E.D. Pa. 1993) (ERISA class action); *Bloch v. SmithKline Beckman Corp*., 1988 U.S. Dist. LEXIS 12397 (E.D. Pa. 1988)(monopolization in the pharmaceutical industry); *Rosefielde v. Falcon Jet Corp*., 701 F. Supp. 1053 (D. N.J. 1988)(price fixing in the business jet industry); *EGW Partners, L.P. v. Prudential Insurance Co*., 2003 Phila. Ct. Com. Pl. Lexis 29 (Commerce 2003)(breach of contract and misrepresentation); *Desert Equities v. Morgan Stanley Leveraged Equity Fund*, 624 A.2d 1199 (Del. Supreme 1993)(breach of contract).

**Joshua D. Snyder** has been with Boni & Zack LLC since it opened in 2007 and became a partner in 2008. His practice focuses on complex litigation, including antitrust, consumer protection, copyright, ERISA, and securities class actions.

Mr. Snyder is participating or has participated in the following cases, among others: *The Authors Guild, et al. v. Google Inc.*, No. 05-CV-8136 (S.D.N.Y.); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426 (E.D. Pa.); *In re Freelance Works in Literary Databases Copyright Litig.*, MDL No. 1379 (S.D.N.Y.); *In re OSB Antitrust Litig.*, Civ. A. No. 06-0826 (E.D. Pa.); *In re Urethane Antitrust Litig. (Polyether Polyols)*, MDL No. 1616 (D. Kan.); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-md-1720 (E.D.N.Y.); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869 (D.D.C.); *In re Refrigerant Compressors Antitrust Litig.*, MDL No. 2042 (E.D. Mich.); *In re Sovereign Bancorp Inc. Shareholders Litig.*, Nov. Term, 2008, No. 2587 (Phila. Cty. Ct. Common Pleas); *Webster v. Hercules, Inc*., Civ. A. No. 05-6404 (E.D. Pa.); *In re Western States Wholesale Natural Gas Antitrust Litig.*, MDL No. 1566 (D. Nev.); and *In re Yahoo! Litig.*, No. 06-2737 (C.D. Cal).

Prior to joining Boni & Zack, Mr. Snyder was an associate with Kohn, Swift & Graf, P.C., where his practice also focused on complex litigation. Following law school, he served as a law clerk to the Honorable Berle M. Schiller of the United States District Court for the Eastern District of Pennsylvania and to the Honorable Thomas L. Ambro of the United States Court of Appeals for the Third Circuit.

Mr. Snyder is a graduate of the Pennsylvania State University (B.A., History, B.A. Philosophy 1998) and the Harvard Law School (J.D. 2001), where he was a member of the Harvard Legal Aid Bureau. He has handled a variety of pro bono matters.

Mr. Snyder was named one of Pennsylvania's "Super Lawyers Rising Stars" in 2008 and 2010.

**Theresa J. Henson** joined Boni & Zack LLC in January 2008. She was formerly associated with Meredith Cohen Greenfogel & Skirnick, PC of Philadelphia, where she practiced in the areas of antitrust, securities fraud, ERISA and other complex litigation.

Ms. Henson is participating or has participated in the following cases, among others: *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869 (D.D.C.); *In re Western States Wholesale Natural Gas Antitrust Litig.*, MDL No. 1566 (D. Nev.); *In Re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.,* MDL No. 1720 (E.D.N.Y.); *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.)(antitrust class action settled); *In re AOL Time Warner, Inc. Securities and ERISA Litig.*, MDL No. 1500 (S.D.N.Y.) (securities class action settled); *In re Dynamic Random Assess Memory (DRAM) Antitrust Litig.*, No.M-02-1486 PJH (N.D. Cal.); *In re K-Dur Antitrust Litig.*, MDL No. 1419 (D. N.J.); *In re X-Ray Film Antitrust Litig.*, No. CV 93 5904 (CPS) (E.D.N.Y.); *In re Commercial Tissue Antitrust Litig.*, MDL No. 1189 (N.D. Fla.); *In re Industrial Silicon Antitrust Litig.*, 95-2104 (W.D. Pa.); *In re Tobacco Antitrust Litig.*, MDL No. 1342; *In re High Pressure Laminates Antitrust Litig.*, MDL No. 11368 (CLB); *In re Sulfuric Acid Antitrust Litig.*, MDL No. 1536; *In re Carbon Fibers Antitrust Litig.*, CV-99-07796-FMC (RNBx); *In re Insurance Brokerage Antitrust Litig.*, MDL No.1663 (D. N.J.); *In re Flat Glass Antitrust Litig.*, MDL No. 1200 (W.D. Pa.); and *In re Urethane Antitrust Litig. (Polyether Polyols)*, MDL No. 1616 (D. Kan.).

Ms. Henson is a graduate of St. Joseph's University and Widener University School of Law. She is admitted to practice in the Pennsylvania and New Jersey Courts and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey.