UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| The Authors Guild, Inc., Association of American Publishers, Inc., et al.,<br><br>       Plaintiffs,<br><br> v.<br><br>Google Inc.<br><br>       Defendant. | Case No. 05 CV 8136 (DC) |

**DECLARATION OF DANIEL CLANCY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF AMENDED SETTLEMENT AGREEMENT**

I, Daniel Clancy, hereby declare as follows:

1. I am Engineering Director of Google Book Search. I make the following declaration based on my personal knowledge and if called upon to do so could testify competently to the matters set forth herein.

2. Capitalized terms in this declaration have the meanings ascribed to them in the Amended Settlement Agreement.

3. In 2004, Google announced that it planned to create an online database of all of the world's books, beginning with agreements with major university research libraries in the United States.

4. Since that announcement, Google has spent hundreds of millions of dollars researching, developing, patenting and implementing cutting edge digital scanning technology, entered into agreements with the Universities of Michigan, Stanford, California, Wisconsin and many others, copied the entirety of over ten million books, delivered copies to some of the libraries, stored other digital copies on Google's servers and, since 2005, displayed snippets of text online in response to search requests.

5. To date, Google has Digitized over twelve million books, and intends to continue Digitizing books in the future.

6. To date, Library-Registry Agreements have been signed by the University of Wisconsin, Stanford University, and the University of Virginia.

7. Google has no interest in censorship. Indeed, Google's mission is to organize the world's information and make it universally accessible and useful.

8. It would be technologically burdensome to implement the exclusion of Inserts on a piecemeal basis, rather than from all Display Uses, because it would require the maintenance and tracking of numerous versions of a given Book, one for each Display Use, each containing only those Inserts which may be used in that Display Use. Such piecemeal exclusion would also be frustrating to users.

9. Google has received metadata from 48 libraries.

10. Google pays approximately $2.5 million per year to license metadata from 21 commercial databases of information about books.

11. Google has gathered 3.27 billion records about Books, and analyzed them to identify more than 174 million unique works.

12. Google has developed algorithms to compare these numerous sources of metadata and identify the most accurate data about each book.

13. Named plaintiff Herbert Mitgang's book *Civilians Under Arms* was Digitized on February 29, 2008, before the Cash Payment deadline of May 5, 2009. His book *The Man Who Rode the Tiger* was Digitized on June 29, 2009, after the Cash Payment deadline of May 5, 2009.

14. Named plaintiff Paul Dickson's book *From Elvis to E-Mail* was Digitized on September 19, 2008, before the Cash Payment deadline of May 5, 2009. His book *Out of This World* was Digitized on September 3, 2009, after the Cash Payment deadline of May 5, 2009.

15. Named plaintiff Daniel Jay Baum's book *The Final Plateau* was Digitized on July 23, 2008, before the Cash Payment deadline of May 5, 2009. His book *Teenage Pregnancy* has not yet been Digitized.

16. Named plaintiff Joseph Goulden's book *The Super-Lawyers* was Digitized on October 1, 2008, before the Cash Payment deadline of May 5, 2009. His book *The Million Dollar Lawyers* has not yet been Digitized.

17. Named plaintiff The McGraw-Hill Companies, Inc. is publisher of *The McGraw-Hill Film Viewer's Guide*, which was Digitized on April 11, 2008, before the Cash Payment deadline of May 5, 2009. It is also publisher of *Imprint: The McGraw-Hill Book Company Story*, which was Digitized on August 27, 2009, after the Cash Payment deadline of May 5, 2009.

18. Named plaintiff Penguin Group (USA) Inc. is publisher of *The Penguin Book of Japanese Verse*, which was Digitized on October 26, 2007, before the Cash Payment deadline of May 5, 2009. It is also publisher of *Penguin Social Sciences Survey*, which was Digitized on November 30, 2009, after the Cash Payment deadline of May 5, 2009.

19.     Named plaintiff Macmillan Publishers Limited is publisher of *The Macmillan Atlas History of Christianity*, which was Digitized on March 27, 2007, before the Cash Payment deadline of May 5, 2009.  It is also publisher of *The Macmillan Book of Business and Economic Quotations*, which was Digitized on December 17, 2009, after the Cash Payment deadline of May 5, 2009.

20.     Named plaintiff Melbourne University Publishing Limited is publisher of *The University of Melbourne: A Centenary Portrait*, which was Digitized on June 22, 2007, before the Cash Payment deadline of May 5, 2009.  It is also publisher of *Melbourne Studies in Education*, which was Digitized on September 16, 2009, after the Cash Payment deadline of May 5, 2009.

21.     In a post on the Google Public Policy Blog on July 23, 2009, available at http://googlepublicpolicy.blogspot.com/2009/07/google-books-settlement-and-privacy.html, I stated:

> We have a strong privacy policy in place now for Google Books and for all Google products. But our settlement agreement hasn't yet been approved by the court, and the services authorized by the agreement haven't been built or even designed yet. That means it's very difficult (if not impossible) to draft a detailed privacy policy. While we know that our eventual product will build in privacy protections – like always giving users clear information about privacy, and choices about what if any data they share when they use our services – we don't yet know exactly how this all will work. We do know that whatever we ultimately build will protect readers' privacy rights, upholding the standards set long ago by booksellers and by the libraries whose collections are being opened to the public through this settlement.

22.     Because of the unstructured nature of most data available on the web, it would have been infeasible to attempt to use the Google search engine to generate a list of class members to whom notice was to be sent, and such an attempt would be error-prone.  Similarly, because of "optical character recognition" errors and the unstructured nature of the data, it would have been infeasible and error-prone to attempt to derive class member contact information from Google's scans of individual books.

I certify under penalty of perjury that the foregoing is true and correct.

---
Daniel Clancy
February 11, 2010
New York, New York