# EXHIBIT A

September 4, 2009

To:

**Belgium** - Vlaamse Uitgevers Vereniging
**Bulgaria** - Асоциация "Българска книга"
**Denmark** - Danske Forlæggerforeningen
**Estonia** - Eesti Kirjastuste Liit
**Finland** - Suomen Kustannusyhdistys Ry
**Greece** - Πανελλήνια Ομοσπονδία Εκδοτών Βιβλιοπωλών
**Iceland** - Félags íslenskra bókaútgefenda
**Ireland** - The Irish Book Publishers' Association
**Italy** - Associazione Italiana Editori
**Lithuania** - Lietuvos leideju asociacija
**Luxembourg** - Fédération Luxembourgeoise des Editeurs
de Livres
**The Netherlands** - Nederlands Uitgeversverbond
**Poland** - Polska Izba Książki
**Portugal** - Associação Portuguesa de Editores e Livreiros
**Slovenia** - Slovenian Publishers Association
**Spain** - Federación de Gremios de Editores de España
**United Kingdom** - The Publishers Association

Google Book Settlement

The attached sets out certain understandings among the undersigned with respect to the Settlement Agreement in *The Authors Guild, Inc., Association of American Publishers, Inc., et al. v. Google, Inc.*, Case No. 5 CV 8136-DC (S.D.N.Y.). These undertakings will be memorialized in the briefs in support of the motion for final approval of the Settlement Agreement submitted to the Court by Google and Plaintiffs. The undersigned acknowledge that the recipients of this letter are not, by the fact of their having received it, in any way prejudiced in filing objections to aspects of the Settlement Agreement other than the following matters, which are addressed in the attached: the definition of Commercially Available, the basis for determination of Commercial Availability; and the composition of the Board of the Book Rights Registry.

In addition, the fact that the Federation of European Publishers (FEP) has coordinated this letter on behalf of some of its member associations does not imply the endorsement of the letter either by FEP or by any of its member associations that are not addressees of the letter and, accordingly, the undersigned agree that they shall not represent, imply or suggest otherwise to any third party, including any court of law.

Signature blocks on following pages.

_____

Michael Boni
Boni & Zack LLC
Counsel for the Author Sub-Class

_____

Jeffrey P. Cunard
Debevoise & Plimpton LLP
Counsel for the Publisher Sub-Class

2

Paul Aiken
Executive Director
The Authors Guild, Inc.


Tom Allen
President and Chief Executive Officer
Association of American Publishers, Inc.

FEP 090409F.DOC

Paul Aiken
Executive Director
The Authors Guild, Inc.

Tom Allen
President and Chief Executive Officer
Association of American Publishers, Inc.

FEP 090409F.DOC

David Drummond
SVP, Corporate Development and Chief Legal Officer
Google Inc.

1.    Definition of Commercially Available[1]

Section 1.28 of the Settlement Agreement defines a Book as "Commercially Available" if the "Rightsholder of [a] Book, or such Rightsholder's designated agent, is, at the time in question, offering the Book (other than as derived from a Library Scan) for sale new through one or more then-customary channels of trade in the United States." A Book is offered "for sale new through one or more then-customary channels of trade in the United States" and, therefore, will be classified as Commercially Available under the Settlement, if Google, independently or through the Book Rights Registry, learns that the Book is available for sale new to purchasers within the United States or elsewhere, regardless of whether the Rightsholder (or its designated agent (e.g., a book seller)) is located within or outside the United States.

2.    Basis for Determination of Commercial Availability

The Books Database was designed to assist Rightsholders in identifying their Books for claiming by listing records of Books available from various sources of metadata. Once Rightsholders claim their Books, they are able to select Display Uses as they desire. A Book's status as Commercially Available or not Commercially Available is used to determine the default Display Uses under the Settlement Agreement, both to the extent that a Rightsholder claims a Book and does not change the defaults and for any Book that has not been claimed. A Rightsholder is also able to provide to the Book Rights Registry information regarding whether a Book is Commercially Available for the purpose of changing the Book's classification.

Google, Plaintiffs, Class Counsel and the Book Rights Registry are committed to continuing to improve the quality of the data in the Books Database with respect to whether a Book is Commercially Available or not Commercially Available. Pursuant to Section 3.2(d) of the Settlement Agreement, Google shall determine whether a Book is or is not Commercially Available "based on an analysis of multiple third-party databases as well as an analysis of the Book's retail availability based on information that is publicly available on the Internet." Google, in determining whether Books that are published and offered for sale outside the United States are Commercially Available, will use methods similar to those Google uses for Books that are published and offered for sale within the United States. In fact, Google is already using information obtained both from databases outside the United States regarding the commercial availability of such Books and from online bookstores, including those based in Europe. If, using such methods, Google determines that a Book is listed as in print or is otherwise indicated as available for purchase new in any metadata source that is reliable for the type or group of books to which such Book belongs or in any online bookstore source, then that Book will be classified as Commercially Available.

FEP has provided a list (annexed hereto) of providers of metadata that contain information as to whether a Book published and offered for sale in Europe is currently in print. Google commits to incorporate into its process for determining which Books are Commercially Available information from providers of databases of metadata to the extent (1) Google and the Book Rights Registry can obtain access to such databases on fair and commercially reasonable

---

[1] Capitalized terms as used herein shall have the same meanings as in the Settlement Agreement.

FEP 090409F.DOC

terms, (2) those databases generally provide information regarding the status of Books as Commercially Available, and (3) Google or the Book Rights Registry are not already taking such information into account through other sources Google or the Book Rights Registry use in determining the Commercial Availability of Books; provided that the Book Rights Registry, after consulting with the FEP or a relevant national publisher association, agrees that such other sources provide information that is equivalent to the information already being taken into account by Google or the Book Rights Registry. The continued cooperation and assistance of FEP, its national publisher associations and individual publishers in helping Google to obtain the licenses to use the information from providers of databases of metadata on fair and commercially reasonable terms is much appreciated. In addition, the FEP has provided a list of websites based in Europe through which new Books are available for purchase (annexed hereto). Google will incorporate information obtained from those websites into its determination of which Books are Commercially Available for so long as those websites are publicly accessible for crawl. Google is committed to ensuring that the information from these websites and databases are incorporated into the process of determining which Books are Commercially Available prior to making any Front Matter Display, Access Uses and Preview Uses. Google is committed to act expeditiously to ensure that the information mentioned above is integrated in the process of determining which Books are Commercially Available. Once a Book is classified as Commercially Available, it will be treated as such under the Settlement for so long as such Book is actually Commercially Available, subject to the Author-Publisher Procedures.

Plaintiffs, Class Counsel, the Book Rights Registry and Google will continue to assist Rightsholders in claiming their Books and will work cooperatively with FEP and representatives of its national publisher associations to improve the quality of the Books Database, including with respect to such matters as precedence among the multiple sources of data that are used to determine whether Books are classified as Commercially Available.

Google will also commit to collaborate with FEP and representatives of its national publisher associations to improve Google's ability to group Books together that may be derived from the same Principal Work for the purposes of inheriting Commercial Availability determinations, as required by Section 3.2(d)(i)(1) of the Settlement Agreement.

Pursuant to the Settlement Agreement, the Book Rights Registry will promptly inform any Rightsholder who has claimed a Book of any change in the classification of such Book from Commercially Available to not Commercially Available (Section 3.2(e)(ii)) and/or that such Book has been Digitized by Google (Section 6.6(a)(ii)).

Plaintiffs also are committed to continuing to improve the accuracy of the Books Database independent from Google. For its part, Google reaffirms its desire to accept additional information from the Book Rights Registry and other Rightsholder organizations that will assist in the accurate classification of a Book with respect to whether it is Commercially Available and other issues related to the implementation of the Settlement Agreement.

3.    Book Rights Registry Governance

Plaintiffs and Class Counsel are committed to ensuring that the Book Rights Registry represents the worldwide class of Rightsholders whose copyright interests are implicated by the

6

Settlement Agreement. To protect the interests of copyright owners outside the United States, Plaintiffs and Class Counsel, who are responsible for establishing the Book Rights Registry according to the requirements of the Settlement Agreement, commit to at least the following governance measures. First, at least one publisher director of the Book Rights Registry will be either an executive of a publishing house owned by a non-United States entity or a representative of a publishers' association located outside the United States. Second, at least one author director will be either an author who is not a United States national or a representative of an authors' rights organization located outside the United States. Third, the Book Rights Registry will establish one or more advisory boards with full representation from Rightsholders located outside the United States and will consult with such groups with respect to all issues arising under the Settlement that affect the interests of Rightsholders outside the United States.

4. <u>Commitments of Plaintiffs</u>

Once the Book Rights Registry is formed, the undertakings of Plaintiffs and Class Counsel will be assigned to the Book Rights Registry.

7

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| Frederick A. Uhl | ) | |
| and | ) | |
| Timothy Elzinga, | ) | |
| | ) | |
| on behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. IP00-1232-C B/S |
| | ) | |
| v. | ) | |
| | ) | |
| Thoroughbred Technology and | ) | |
| Telecommunications, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF CLASS ACTION LAWSUIT AND PROPOSED SETTLEMENT**

> THIS NOTICE IS SENT BY ORDER OF THE
> COURT.
> PLEASE READ THIS NOTICE CAREFULLY.
> IT AFFECTS YOUR LEGAL RIGHTS.
> YOU MAY BE ENTITLED TO BENEFITS
> UNDER THE PROPOSED SETTLEMENT.
> YOU ARE NOT BEING SUED.

**TO:** **All owners of land underlying or adjoining certain settlement corridors where Thoroughbred Technology and Telecommunications, Inc., (T-Cubed) has or intends to install a telecommunication system.**

## TABLE OF CONTENTS

THE PURPOSE OF THIS DOCUMENT IS TO NOTIFY YOU . . . . . . . . . . . . . . . . . . . . . . . 3

WHY AM I RECEIVING THIS NOTICE? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

WHAT IS THIS CLASS ACTION? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

WHO ARE THE MEMBERS OF THE SETTLEMENT CLASS? . . . . . . . . . . . . . . . . . . . . 6

WHERE ARE THE SETTLEMENT CORRIDORS INCLUDED IN THIS CLASS
ACTION? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

WHAT COMPENSATION WILL CLASS MEMBERS RECEIVE? . . . . . . . . . . . . . . . . . . 7

WHAT IS CLASS CORRIDOR, LLC? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

WHAT ARE TELECOMMUNICATION ASSETS? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

WHAT DO I HAVE TO GIVE UP TO RECEIVE COMPENSATION? . . . . . . . . . . . . . . . 9

HOW WILL THE SETTLEMENT AFFECT MY TAXES? . . . . . . . . . . . . . . . . . . . . . . . . 10

HOW WILL ATTORNEYS' FEES AND OTHER COSTS OF SETTLEMENT BE
PAID? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

WHO ARE THE PLAINTIFFS' CLASS COUNSEL? . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

HOW DO I MAKE SURE I AM INCLUDED IN THE SETTLEMENT CLASS? . . . . . . . . 11

WHAT ARE THE CONSEQUENCES OF OPTING OUT? . . . . . . . . . . . . . . . . . . . . . . . . 12

WHAT DO I DO IF I WANT TO OPT OUT? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

WHAT DO I DO IF I WANT TO MAKE COMMENTS OR OBJECTIONS TO THE
COURT? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

HOW DO I GET MORE INFORMATION? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

WHAT DO I DO IF I HAVE MORE QUESTIONS? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

WHAT ARE THE IMPORTANT DATES? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**THE PURPOSE OF THIS DOCUMENT IS TO NOTIFY YOU:**

- A lawsuit exists against a company called T-Cubed that has installed a telecommunication system within certain railroad rights-of-way and plans to continue to install its telecommunication system in railroad rights-of-way.

- You may be a member of a conditionally certified class of plaintiffs in the lawsuit.

- There is a proposed Settlement of the lawsuit under which T-Cubed, the defendant in the lawsuit, has agreed to pay cash and other compensation to qualified Class Members as well as the costs of this Settlement and attorneys fees. The benefits to qualified Class Members include the following:

  - If the telecommunication system is installed on a Class Member's side of a right-of-way the Class Member will receive cash at a rate between $6,000 per mile and $31,875 per mile.

  - Class Members will receive equity interests in Class Corridor, LLC, which has been created by Class Counsel as a part of this Settlement. Class Corridor, LLC will develop telecommunications assets for the benefit of Class Members. Class Corridor, LLC will also receive easements from Class Members and transfer some easements to T-Cubed.

- The Court preliminarily approved the proposed Settlement on April 24, 2001.

- You have rights as a Class Member to obtain the benefits of, or to object to, or exclude yourself ("opt out") from the proposed Settlement. Information about how to opt out is contained in this Notice.

- **If you received a personally addressed copy of this Notice you are on the preliminary list of Class Members and need do nothing more at this time to be included on the list of Class Members. If the Notice was not personally addressed to you, you should see the instructions in this Notice for contacting the Claims Administrator.**

**All Class Members who do not exclude themselves from the Settlement on a timely basis, as described below, will be entitled to the Settlement benefits, will be granting easements and will be bound by the orders issued by the Court regarding the Settlement.**

**WHY AM I RECEIVING THIS NOTICE?**

This Notice concerns a proposed settlement of claims relating to a telecommunication conduit system installed or to be installed by T-Cubed on ten rights-of-way (Settlement Corridors) running through the states of Alabama, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Michigan, Mississippi, North Carolina, Ohio, Pennsylvania, South Carolina, Tennessee, Virginia, and West Virginia.

You are receiving this Notice to advise you of certain benefits you may be entitled to receive under the Settlement of this class action lawsuit. Research of real estate tax assessment records shows that at one time you owned land adjacent to or underlying the Settlement Corridors. The portion of the Settlement Corridor nearest land you may own is shown in red on the map included with this Notice packet.

If you owned land adjacent to or underlying the Settlement Corridors on June 5, 2001, you are a member of the conditionally certified class. **If you received a personally addressed Notice you are on the preliminary list of Class Members and need do nothing more at this time to be included on the list of Class Members.** If you do not believe you owned land adjacent to or underlying a Settlement Corridor on June 5, 2001, please notify the Claims Administrator (Telephone: 866-653-5344; email: [FiberOpticFundI@pcit.com;](FiberOpticFundI@pcit.com) address: Fiber Optic Fund I Settlement Center, P.O. Box 227118, Dallas, TX 75222-7118). If you sold or transferred the land to someone else prior to June 5, 2001, please give this Notice to the buyer and/or contact the Claims Administrator. If you sold or sell the land after June 5, 2001, you are still a Class Member. The person purchasing the land from you is not a Class Member.

If you received this notice from a prior owner, please contact the Claims Administrator to see if you should be included on the list of Class Members.

Sending this Notice is not an expression by the Court of any opinion as to the likelihood of recovery by the Plaintiffs if the lawsuit were to be tried, or as to the merits of any defenses asserted by T-Cubed. Rather, the purpose of this Notice is to inform you that a settlement has been proposed, and preliminarily approved by the Court, and to inform you of your rights under the proposed Settlement.

**WHAT IS THIS CLASS ACTION?**

Frederick A. Uhl and Timothy Elzinga, on their own behalf and on behalf of other similarly situated property owners, filed a class action complaint in the United States District Court for the Southern District of Indiana, Indianapolis Division, which was assigned to Judge Sarah Evans Barker. The complaint alleged claims for slander of title, trespass and declaratory relief against the defendant, T-Cubed. The complaint arose from T-Cubed's plans to install a telecommunication system made up of thousands of miles of telecommunications conduits or fiber optic cable, installed or to be installed within rail corridors in the eastern half of the United States. T-Cubed claimed a right to install the telecommunication system under rights assigned it by Norfolk Southern Railway Company and other railroad companies. The complaint alleged, among other things, that Plaintiffs and other Class Members owned the land over which the Settlement Corridors run and that the railroads' right to use the land was limited to railroad purposes. The complaint alleged that T-Cubed had no right to install its telecommunication system on the rail

corridors without Class Members' permission or a valid court decree. T-Cubed denies these allegations.

Class action suits like this case are lawsuits in which the claims and rights of many people are decided in a single court proceeding brought by representative plaintiffs (the class representatives). This avoids the necessity for hundreds, or even thousands, of people to file similar individual lawsuits, enables the court system to resolve these claims in a more efficient and economical way, and seeks to assure that people with similar claims are treated similarly.

Class Counsel negotiated with representatives of T-Cubed in an effort to explore whether the claims of the Plaintiffs and other Class Members could be resolved. The negotiations took many months, beginning even before the lawsuit was filed. The negotiations involved the exchange of extensive information.

As a result of these negotiations, the parties signed a Settlement Agreement and presented it to the Court for preliminary approval. On October 3, 2000, the Court preliminarily approved the Settlement Agreement and conditionally certified a settlement class of the owners of land adjacent to or underlying the rail corridors that made up the Settlement Corridors.

In a class action, the court is responsible for determining at the outset whether the class representatives and their attorneys (Class Counsel) are in a position to adequately represent the interests of the Class Members. The Court in this case has preliminarily determined that the class representatives and their attorneys are in a position to adequately represent the interests of the Class Members.

Furthermore, when the court is asked to approve a class action settlement, as in this case, the court must also determine whether the settlement is fair, reasonable, and adequate under the circumstances, and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued to a conclusion. The Court in this case has preliminarily approved the Settlement as fair, reasonable, adequate and in the best interests of the class. The Court will determine whether it should grant final approval of the Class Settlement after the Fairness Hearing to be held on August 21, 2001.

After the Court preliminarily approved the Settlement in October, 2000, the parties worked to identify the owners of the more than 50,000 parcels of land that adjoin the Settlement Corridors. On April 19, 2001 the Settlement Agreement was amended to reflect improvements in the structure and settlement process and to adjust the description of the Settlement Corridors to reflect T-Cubed's current plans. The Court preliminarily approved the amended and restated Settlement Agreement on April 24, 2001.

Class Members are not individually responsible for the costs or fees of Class Counsel, which are subject to court award. In this case, all such costs and fees, if approved by the Court in accordance with the Settlement Agreement, will be paid separately by T-Cubed or Class Corridor, LLC and will not reduce the amount of benefit payments to Class Members.

**WHO ARE THE MEMBERS OF THE SETTLEMENT CLASS?**

The Class Members are those persons who owned the land adjacent to or underlying the Settlement Corridors on June 5, 2001, the record date set by the Court.

If a person's property is separated from a Settlement Corridor by only a road, street, highway, interstate or railroad right-of-way, that person is still a Class Member.

The Settlement Agreement provides that Class Members are entitled to compensation even if T-Cubed could prove that the railroad owned complete title to the Settlement Corridor. It is not necessary for a Class Member to prove he or she owns title superior to T-Cubed's in order to participate in the Settlement.

In certain cases, the potential Class Member on one side of a Settlement Corridor may contend, and may be able to prove, that he or she owns the entire Settlement Corridor, not just the land on one side of the Settlement Corridor. In that case the landowner adjacent to the other side of the Settlement Corridor will be treated as a Non-Cable-Side Class Member. Absent such a dispute, the adjacent landowners on each side will be presumed to own the land to the mid-point of the Settlement Corridor.

Certain individuals and entities are excluded from the Settlement Class. Those excluded are:

- Persons owning property separated by a river from a Settlement Corridor;

- T-Cubed, its parent, subsidiaries, affiliates or any of their directors or officers;

- Any state or municipality;

- The United States government;

- Any government that has a treaty with the United States; and

- Any railroad or any person controlled by, under the control of, or under common control with any railroad.

After the telecommunication system is installed, some Class Members will be designated Cable-Side Class Members and some Class Members will be designated Non-Cable-Side Class Members depending on the side of the Settlement Corridor in which the telecommunication system is actually installed. Because the telecommunication system from place to place moves from one side to the other of the Settlement Corridors, a Class Member may be a Cable-Side Class Member for only part of his or her land adjacent to the Settlement Corridor.

**WHERE ARE THE SETTLEMENT CORRIDORS INCLUDED IN THIS CLASS ACTION?**

This Settlement covers ten Settlement Corridors along which T-Cubed has installed or intends to install a telecommunication system.

With limited exceptions, the corridors are all within active rail corridors.

1.      Atlanta, GA - Jacksonville, FL
2.      Atlanta, GA - Chattanooga, TN
3.      Chattanooga, TN - Cincinnati, OH
4.      Chattanooga, TN - Memphis, TN
5.      Cincinnati, OH - Bellevue, OH
6.      Detroit, MI - Toledo, OH
7.      Atlanta, GA - Charlotte, NC
8.      Chicago, IL - Harrisburg, PA
9.      Harrisburg, PA - Alexandria, VA
10.    Cleveland, OH - Erie, PA

Other companies may have installed telecommunications cables in the Settlement Corridors in the past. This Settlement does not address those actions or affect any rights you might have as a result. It applies only to the telecommunication system installed or to be installed by T-Cubed or its designee, along the ten specified corridors.

The complaint filed in this action will not be dismissed as to any claims beyond those covered by the Settlement Agreement.

**WHAT COMPENSATION WILL CLASS MEMBERS RECEIVE?**

The Court's order approving the Settlement will grant easements for the installation of the telecommunication system on the Settlement Corridors. The Settlement provides for both cash compensation and non-cash compensation in exchange for granting this easement in the rail corridor.

- All Class Members will receive membership interests in Class Corridor, LLC, a company created by Class Counsel to receive, hold, and manage non-cash compensation that the Settlement Class and Class Counsel may receive from T-Cubed if the Settlement is approved. This non-cash compensation consists of a note from T-Cubed which, under certain circumstances, may result in Class Corridor, LLC receiving telecommunication assets. As owners of membership interests in Class Corridor, LLC, Class Members would be entitled to share in any revenues that Class Corridor, LLC, may earn from those telecommunication assets. **While T-Cubed will transfer telecommunication assets to Class Corridor, LLC under the terms of the Settlement, T-Cubed will not manage Class Corridor, LLC. It will be independently managed and outside T-Cubed's control. T-Cubed has no role in, or responsibility for, the creation, management or operation of Class Corridor, LLC.**

- Also, in the event T-Cubed has installed or installs a telecommunication system on the half of the rail corridor next to the Class Member's land (thereby making the Class Member a Cable-Side Class Member), the Class Member will receive cash compensation and percentage-of-revenue payments based on the linear feet

of telecommunication system installed on the Class Member's side of the Settlement Corridor:

Cash compensation, at the rate of $6,000 per linear mile for that portion of the Class Member's land adjoining the side of the Settlement Corridor where the telecommunication system is installed; and

A percentage of the revenue (distributed on the same linear mile basis) that T-Cubed realizes upon the sale, lease, license or other disposition of conduits. The aggregate percentage-of-revenue payments to the Class Members will equal a percentage of the gross receipts T-Cubed receives with respect to the fourth and successive conduits. For the fourth through seventh conduits, Cable-Side Class Members will receive 7.5% of the gross receipts based on a stipulated minimum price of $30,000 per mile. For the eighth and each additional conduit, Cable-Side Class Members will receive 11.25% of the gross receipts with the same minimum price guarantee. If the entire telecommunication system is sold, leased or otherwise transferred to third parties for no more than the minimum stipulated price, the cash compensation may reach $31,875 per mile.

This description summarizes the compensation Class Members will receive if the Settlement is approved by the Court. Class Members interested in learning more should review the complete Settlement Agreement. Instructions for reviewing the complete Settlement Agreement are found in the section titled "How Do I Get More Information?"

## WHAT IS CLASS CORRIDOR, LLC?

Subject to the Court's approval of the Settlement and in exchange for transferring their easements to Class Corridor, LLC, Class Members will receive membership interests in Class Corridor, LLC, a Delaware limited liability company, organized by Class Counsel for the benefit of members of the settlement class to permit them to retain control of continuous corridor rights and to receive future financial benefits that may be generated from telecommunications uses of the corridors other than by T-Cubed. Subject to the Court's approval of the capital structure, outside investors and management will also have interests in Class Corridor, LLC.

Membership interests in Class Corridor, LLC will be distributed to Class Members in reliance on the exemption from registration under Securities Act of 1933 contained in section 3(a)(10) of the Securities Act of 1933, as amended. Accordingly, no registration statement has been filed with the Securities and Exchange Commission with respect to these membership interests.

There is no trading market for Class Corridor, LLC membership interests and Class Corridor, LLC does not expect a market to develop after the distribution.

Ownership of a membership interest in Class Corridor, LLC may entitle the holder to receive cash distributions from it. All members of Class Corridor, LLC will receive their allocable share of any income received from the exploitation of telecommunication assets transferred to it by T-Cubed. T-Cubed has no role in, or responsibility for, the creation, management or operation of Class Corridor, LLC.

**WHAT ARE TELECOMMUNICATION ASSETS?**

The telecommunication system T-Cubed is installing is made up of a bundle of empty pipes that are called conduits. The conduits are leased to telecommunications companies who fill the conduits with fiber optic cable used to send signals for telephone calls, Internet transmissions and other communications. The telecommunications companies may pay entirely in cash, or may pay in whole or in part by giving T-Cubed some of the fiber optic strands that are included in the cables.

The total amount of compensation Class Members will receive depends in part on T-Cubed's success in selling, leasing or otherwise transferring the conduits installed on the Settlement Corridors. The market for conduits is subject to many factors including the supply of conduits, the demand for fiber optic capacity on the Settlement Corridors, the availability of financing for conduit purchases and the overall strength of the economy.

As of April 1, 2001, conduit system construction had begun on the following Settlement Corridors:

- Atlanta, GA - Jacksonville, FL
- Atlanta, GA - Chattanooga, TN
- Detroit, MI - Toledo, OH
- Chicago, IL - Harrisburg, PA
- Harrisburg, PA - Alexandria, VA

In each of the above Settlement Corridors, T-Cubed has entered into contracts pursuant to which third parties are obligated to acquire at least three conduits.

**WHAT DO I HAVE TO GIVE UP TO RECEIVE COMPENSATION?**

The Settlement Agreement provides that, in exchange for the benefits provided, Class Members who do not opt out of the Settlement Class give up any rights they may have to object to T-Cubed's use of the rail corridor for telecommunications purposes. Through the Court's final order and judgment approving this Settlement, each Class Member will be deemed to have transferred to Class Corridor, LLC an easement for telecommunications purposes over the rail corridors and other existing rights-of-way that make up the Settlement Corridors. Once T-Cubed has selected which side of the Settlement Corridor it will use for its telecommunication system, Class Corridor, LLC will convey to T-Cubed a perpetual easement and right-of-way over, across and under the Class Member's interest (if any) in the real estate that makes up the Cable-Side of the Settlement Corridor. Class Corridor, LLC will retain the easement on the Non-Cable-Side of the Settlement Corridor.

The easements will terminate on any corridor where the telecommunication system has not been installed within four years after the effective date of the Court's final order and judgment.

**The easements will not diminish Class Members' use or enjoyment of their adjacent property because the Settlement Corridors run within existing rail corridors or other existing rights-of-way.**

9

**HOW WILL THE SETTLEMENT AFFECT MY TAXES?**

The law firm of Fried, Frank, Harris, Shriver & Jacobson ("Fried, Frank") was retained by Class Counsel to provide advice on the tax consequences to Class Members as a result of the receipt of interests in Class Corridor, LLC. The following is a brief summary of their analysis. Fried, Frank has advised that the transfer of your easements to Class Corridor, LLC and the receipt of the interests in Class Corridor, LLC in exchange thereof will not result in a taxable event to you. Class Corridor, LLC will be treated as a partnership for income tax purposes and will not itself be subject to federal income tax. Instead, you must report separately on your federal income tax return your share of Class Corridor, LLC's income, gain, losses and deductions for each taxable year. Additionally, you will be taxed on your allocable share of any income that Class Corridor, LLC receives from leasing telecommunication assets. You will be taxed on your allocable share, whether or not paid to you, of any cash compensation and the fair market value of any asset compensation paid by T-Cubed under the proposed settlement. Class Corridor, LLC intends to make cash distribution necessary to pay any tax liability. The Claims Administrator for Class Corridor, LLC will provide you with the information necessary to report such payments to the Internal Revenue Service on your federal income tax return.

You may be subject to backup withholding at a rate of 31% if you fail to furnish your social security or taxpayer identification number and certain other information.

A complete copy of the Fried, Frank analysis is available at www.ClassCorridorLLC.com or may be obtained from the Claims Administrator (Telephone: 866-653-5344; email: FiberOpticFundI@pcit.com; address: Fiber Optic Fund I Settlement Center, P.O. Box 227118, Dallas, TX 75222-7118).

Your receipt of benefits under the proposed Settlement could have tax consequences for you. Tax matters are complicated and the tax consequences of the proposed Settlement may vary, depending on your individual circumstances. Accordingly, Class Counsel, counsel for T-Cubed and the representatives of the Claims Administrator <u>CANNOT</u> advise you about the tax consequences of receiving Settlement benefits in your particular circumstances. You should consult your own tax advisor to determine any federal, state, local or foreign tax consequences that could result from the proposed Settlement.

**HOW WILL ATTORNEYS' FEES AND OTHER COSTS OF SETTLEMENT BE PAID?**

If the proposed Settlement is approved by the Court, Class Counsel will ask the Court to approve the payment of fees to Class Counsel pursuant to an agreement negotiated with T-Cubed. With the Court's approval, T-Cubed will pay to Class Counsel cash in an amount equal to $2,000 per linear mile of conduits for the first three conduits installed in the Settlement Corridor. In addition, T-Cubed will pay to Class Counsel, from time to time, cash in an amount equal to a percentage of the gross receipts T-Cubed receives with respect to the fourth and successive conduits installed in the Corridors. Class Counsel will receive 2.5% of the gross receipts from conduits four through seven and 3.75% of the gross receipts of all subsequent conduits.

In addition, Class Counsel will be entitled to 25% of the telecommunication assets transferred to Class Corridor, LLC. Class Counsel will not hold a membership interest in Class Corridor, LLC, but they will be entitled to counsel fees equal to 25% of the revenue produced by the assets. In

the event Class Corridor, LLC is sold or liquidated, Class Counsel will be entitled to counsel fees equal to 25% of the proceeds of the sale or liquidation. In the event Class Corridor, LLC, or its successor, conducts an initial public offering of its securities, Class Counsel will be entitled counsel fees equal to securities equal to 25% of the aggregate equity of Class Corridor, LLC.

T-Cubed has the obligation to pay all the costs of administering this Settlement. To the extent all the compensation provided by this Settlement is not claimed by Class Members, the unclaimed funds will be placed in a special reserve account. Funds can be drawn from the special reserve account by T-Cubed, Class Counsel or Corridor, LLC for the following purposes in the following order of priority:

- Settlement administration costs;

- The reasonable costs of obtaining easements to excluded properties where required;

- Tax and securities counsels' fees and expenses incurred in connection with Class Corridor, LLC;

- A reserve fund of $1.5 million to be used for purposes consistent with the Settlement and approved by the Court; and

- Excess funds to Class Corridor, LLC for the benefit of its members.

**WHO ARE THE PLAINTIFFS' CLASS COUNSEL?**

The Class Counsel are:

- Nels Ackerson and Kathleen C. Kauffman, The Ackerson Group, Washington, D.C.;

- Henry J. Price, Price, Potter, Jackson & Mellowitz, P.C., Indianapolis, Indiana;

- John B. Massopust, Zelle, Hofmann, Voelbel, Mason & Gette LLP, Minneapolis, Minnesota; and

- Roger C. Johnson, Koonz, McKenney, Johnson, DePaolis & Lightfoot, Washington, D.C.

**HOW DO I MAKE SURE I AM INCLUDED IN THE SETTLEMENT CLASS?**

If you received this Notice addressed to you personally, you are on the list of potential Class Members. You need do nothing more at this time if you want to participate in the benefits of the Settlement. You will remain a Class Member if you do not "opt out" or exclude yourself from the Settlement. If the Settlement is given final approval by the Court after the Fairness Hearing, the Claims Administrator will send you a Benefit Notice that will inform you of what additional information you will need to provide. The minimum information required will be a tax

identification number. For most Class Members, this will be their social security number. For the largest claims, deed information will be required. Thus, if you do not opt out, but fail to respond to a Benefit Notice, your claim will be extinguished without payment of any compensation.

If you did not receive a copy of this Notice personally addressed to you, but believe you are qualified to be a Class Member, you must complete a roll registration form. The roll registration form must be completed and mailed to the Claims Administrator postmarked by July 13, 2001. You may request a form by contacting the Claims Administrator (Telephone: 866-653-5344; email: FiberOpticFundI@pcit.com; address: Fiber Optic Funds I Settlement Center, P.O. Box 227118, Dallas, TX 75222-7118). Alternatively, you may write the Claims Administrator and provide the following information by a letter postmarked by July 13, 2001.

- Your name, address and telephone number;

- The Settlement Corridor on which you believe you own property that qualifies you for membership in the class;

- The location of your property (address, state, tax identification number);

- The number of linear feet you claim on a Settlement Corridor;

- The manner in which title to the property is held; and

- The names of all co-owners of the property.

## WHAT ARE THE CONSEQUENCES OF OPTING OUT?

All potential Class Members except the named representative Settlement Class Plaintiff, Mr. Elzinga, are entitled to "opt out" or exclude themselves from the Settlement Class. No cash, membership interests or other benefits of the Settlement will be distributed to a Class Member who opts out of the Settlement, and the rights of that Class Member against the T-Cubed will not be affected.

In determining whether to opt out of the Settlement Class, you should consider, among other factors:

- Whether you could prove title superior to T-Cubed's in an individual action;

- Whether you can afford the costs of an individual suit;

- Whether you would recover more compensation in an individual suit;

- Whether you may be able to negotiate a better settlement on your own; and

- Whether the total compensation to be paid to you is fair and reasonable.

If you opt out, you and all co-owners of your property will be removed from the Settlement Class.

If you opt out, you will have no right to object to the Settlement, appear at the Fairness Hearing, or appeal any order of the Court.

T-Cubed has the right under the Settlement Agreement to withdraw from the Settlement Agreement if:

- More than 10% of the recipients of this Notice exercise their right to opt out; or

- Settlement Class Members representing more than 10% of the total mileage of the Settlement Corridors elect to opt out.

T-Cubed has 21 days after being informed by the Claims Administrator that one of the foregoing opt out conditions has been met to withdraw from the Settlement Agreement.

**WHAT DO I DO IF I WANT TO OPT OUT?**

You can opt out of the Settlement Class by providing the following information to the Claims Administrator. The opt out information must be postmarked by July 28, 2001.

- Your decision to opt out;

- Your name, address and telephone number;

- The Settlement Corridor on which you believe you own property that qualifies you for membership in the class;

- The location of your property (address, state, tax identification number);

- The number of linear feet you claim on a Settlement Corridor;

- The manner in which title to the property is held; and

- The names of all co-owners of the property.

You must provide complete information in order for your opt out request to be effective.

**WHAT DO I DO IF I WANT TO MAKE COMMENTS OR OBJECTIONS TO THE COURT?**

On October 3, 2000 and on April 24, 2001 the Court preliminarily approved this Settlement as fair, adequate and reasonable to the Settlement Class. On May 2, 2001, the Court approved this Notice and directed that it be mailed to Class Members. The Court will conduct a hearing in the United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana 46204, in room 210, at 2:00 p.m. on August 21, 2001, to make a final determination whether the Class Representative and Class Counsel and fees should be approved and whether the proposed Settlement is fair, reasonable, and adequate and should be approved. All Class Members who do not opt out have a right to attend the hearing. The Court may, without further notice to Class Members, continue or adjourn the hearing.

- Any Class Member, who does not opt out may present written comments or objections to the proposed Settlement, Class Representative or Class Counsel by mailing the same, postmarked no later than July 28, 2001, to:

Fiber Optic Fund I Settlement Center
P.O. Box 227118
Dallas, TX 75222-7118

- Any request to appear at the hearing, in person or through counsel, must be clearly indicated on the written submission and postmarked no later than July 28, 2001.

- Class Members who support the proposed Settlement need not appear at the hearing or submit any comments.

- Any Class Member not submitting written comments or objections postmarked by July 28, 2001, will be deemed to have waived objection and be foreclosed from objecting (by appeal or otherwise) to the proposed Settlement.

**Because there are more than 50,000 Class Members, the Court cannot respond to telephone inquiries from Class Members. Please do not call the Court or the Clerk of the Court.**

**HOW DO I GET MORE INFORMATION?**

You may ask questions or make requests of the Court appointed Claims Administrator (Telephone: 866-653-5344; email: FiberOpticFundI@pcit.com; address: Fiber Optic Funds I Settlement Center, P.O. Box 227118, Dallas, TX 75222-7118).

This Notice is only a summary of the proposed Settlement, which is set forth in a more detailed document called the Thoroughbred Technology and Telecommunications, Inc. First Amended and Restated Class Settlement Agreement. The full text of this document is available at the following web site: www.FiberOpticFundI.com. Class Corridor, LLC is more fully discussed in documents called the Class Corridor, LLC Information Statement and the Class Corridor, LLC Limited Liability Company Agreement. Tax issues in connection with interests in Class Corridor, LLC are discussed in a tax memorandum. The full text of each of these documents is available at the following web site: www.ClassCorridorLLC.com and each of these documents is deemed to be incorporated by reference into this Notice. You may request a copy of any of these documents from the Claims Administrator.

In addition, the entire case file, including the complaint, the Settlement Agreement and all Court Orders are on file at the office of the Clerk of Court. You may inspect these documents at the Clerk's Office at any time during normal business hours, Monday through Friday, 8:30 a.m. to 5:00 p.m. The address of the Clerks Office is: United States Courthouse, 46 East Ohio Street, Room 105, Indianapolis, IN 46204.

The Office of the Clerk of Court is not permitted to give legal advice. Settlement Administration Center personnel are authorized to answer administrative and clerical inquiries relating to claims and claims process, but not to give legal advice.

**WHAT DO I DO IF I HAVE MORE QUESTIONS?**

You may obtain further information concerning the proposed Settlement and your rights and options:

- By requesting legal assistance from Class Counsel by calling 866-653-5344, or by e-mailing questions to TCubedSettlement@ackersonlaw.com, or

- By consulting an attorney of your choice.

You may retain an attorney of your own choice for advice concerning your rights or to provide services in presenting a claim under the Settlement, but you will be responsible for the fees and expenses of such attorney. You are not required, however, to have private counsel in order to submit a claim for benefits.

**WHAT ARE THE IMPORTANT DATES?**

These are the important dates and deadlines for Class Members:

- June 5, 2001 is the date on which you must own real estate adjoining or underlying the Settlement Corridors in order to be a Class Member;

- July 13, 2001 is the postmark deadline for informing the Claims Administrator that you should be added to the list of Class Members; **if you received a personally addressed Notice you are on the preliminary list of Class Members and need do nothing more at this time to be included on the list of Class Members;**

- July 28, 2001 is the date by which "opt out" requests must be postmarked;

- July 28, 2001 is the postmark deadline for written comments on the Settlement;

- August 21, 2001 is the date of a court hearing to finally determine the fairness, adequacy, and reasonableness of the proposed Settlement.

**SAVE THIS NOTICE FOR PERIODIC REFERENCE REGARDING RIGHTS AND BENEFITS, THE CLAIMS PROCESS, DEADLINES, TELEPHONE NUMBERS, AND INTERNET ADDRESSES.**

**THIS CLASS SETTLEMENT NOTICE WAS APPROVED ON MAY 2, 2001, BY THE HONORABLE SARAH EVANS BARKER, UNITED STATES DISTRICT JUDGE FOR DISTRIBUTION TO PUTATIVE CLASS MEMBERS AS AN OFFICIAL NOTICE OF THE COURT.**

/S/
Laura A. Briggs
Clerk of the Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| Frederick A. Uhl and Timothy Elzinga<br>    on behalf of themselves<br>    and all others similarly situated, | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | Civil Action No. IP00-1232-C B/S |
| Thoroughbred Technology and<br>Telecommunications, Inc., | ) <br> ) <br> ) | |
| Defendant. | ) | |

## THOROUGHBRED TECHNOLOGY AND TELECOMMUNICATIONS, INC.
## FIRST AMENDED AND RESTATED
## CLASS SETTLEMENT AGREEMENT

The settlement class of landowners described below (the "Settlement Class"), by and through their undersigned counsel (the "Settlement Class Counsel"), and Thoroughbred Technology and Telecommunications, Inc. ("T-Cubed") previously entered into a Class Settlement Agreement dated September 22, 2000 (the "Original Settlement Agreement"), which provided for settlement of the claims described in the Original Settlement Agreement, pursuant to the terms and conditions set forth therein, subject to the approval of the Court. The Settlement Class, by and through Settlement Class Counsel, and T-Cubed hereby agree to amend and restate the Original Settlement Agreement in its entirety pursuant to this First Amended and Restated Settlement Agreement (this "Agreement").

WHEREAS, T-Cubed claims to have obtained certain rights from Norfolk Southern Railway Company, certain of its subsidiaries and Pennsylvania Lines LLC (collectively the "Railroad") to occupy certain land (defined *infra* as the "Real Estate") for a telecommunications system (defined *infra* as the "Telecommunications System") to be installed by T-Cubed or its assignees, licensees, or transferees.

WHEREAS, on August 2, 2000, Settlement Class Counsel filed a Class Action Complaint, as amended on September 20, 2000 (as amended, the "Complaint") on behalf of Frederick A. Uhl ("Uhl") and Timothy Elzinga ("Elzinga") (collectively "Plaintiffs") as representative class plaintiffs, and on behalf of all others similarly situated (the "Class"), seeking among other things, a declaration of the respective rights of T-Cubed and the Class in the Real Estate, a declaration of the rights of the Class to occupy and use their interest in the Real Estate for telecommunications purposes, and an award of damages to the Class against T-Cubed.

WHEREAS, T-Cubed has denied and continues to deny Plaintiffs' claims in the Complaint, has denied any wrongdoing or liability to Plaintiffs of any kind, and contends that it has numerous affirmative defenses.

WHEREAS, Settlement Class Counsel have conducted a thorough examination and investigation of the facts and law relating to the matters set forth in the Complaint.

WHEREAS, the Parties have engaged in extensive, arm's-length negotiations extending for a period of many months regarding the settlement of claims in respect of their respective interests in the Real Estate underlying or adjoining certain active rail corridors (defined *infra* as

the "Settlement Corridors") which T-Cubed has used or intends to use for the Telecommunications System.

WHEREAS, the Parties acknowledge that (a) the highest and best use of the Settlement Class Members' interest in the Real Estate is the development of Telecommunications Systems, (b) T-Cubed, with the participation of the Settlement Class, is well-placed to initiate the development of the Settlement Corridors for Telecommunications Systems, and (c) time is of the essence in developing and marketing the Settlement Corridors for Telecommunications Systems.

WHEREAS, after analyzing the facts and law applicable to Plaintiffs' claims, and taking into account the burdens, risks, uncertainties, and expense of litigation, as well as the fair, cost-effective, and assured method of resolving claims of the Settlement Class under this Agreement, the undersigned Settlement Class Counsel have concluded that this Agreement offering substantial cash and income compensation benefits per linear mile of Settlement Corridor plus substantial non-cash and prospective benefits, is fair, reasonable, adequate, and in the best interests of the Settlement Class.

WHEREAS, T-Cubed has similarly concluded that this Agreement is desirable in order to reduce the time, risk, and expense of multiple-claim litigation, and to resolve finally and completely the claims of the members of the Settlement Class as to their interest in the Real Estate underlying or adjoining the Settlement Corridors.

WHEREAS, the Parties have agreed to settle claims related to T-Cubed's (or its subsidiaries', assignees', licensees', lessees', sublessees', pledgees' or transferees') use of the

Real Estate to develop a Telecommunications System only, and are not settling any other company's use of the Real Estate for telecommunications purposes.

WHEREAS, the Parties agree that all Settlement Class Members, except Elzinga, shall have the right to exclude themselves ("opt out") under Federal Rule of Civil Procedure 23(c) as provided in this Agreement.

NOW, THEREFORE, the undersigned Parties hereby amend and restate the Original Settlement Agreement in its entirety, and stipulate and agree that all claims of the Settlement Class against T-Cubed and the other "Released Parties" (as defined *infra*) as to the Settlement Corridors shall be finally settled and resolved on the terms and conditions set forth below, subject to the Court's approval of this Agreement as a fair, reasonable, and adequate settlement under Federal Rule of Civil Procedure 23(c).

## I. <u>DEFINITIONS</u>

As used in this Agreement and its Exhibits, the following terms shall have the meanings set forth below. Terms used in the singular shall be deemed to include the plural and vice versa; the term "person" shall include, as appropriate, legal entities as well as natural persons.

**"Administrative and Claims Account"** means the interest-bearing account to be opened by the Claims Administrator at a financial institution recommended by the Claims Administrator, approved by the Court, and reasonably acceptable to T-Cubed and Settlement Class Counsel, and out of which the Claims Administrator will pay Settlement Administration Costs and the Cash Payments to qualifying Settlement Class Members.

**"Cable"** means a fiber optic or other telecommunications cable, and its protective casing, splice connections, splice boxes, handholes, manholes and vaults. "Cable" does not include any electronics or optronics necessary to create telecommunications capacity on Optical Fibers in a Cable.

**"Cable Side"** means the side of the Settlement Corridor on which the Telecommunications System has been or will be installed. At any given point on the Settlement Corridor there can be only one Cable Side. T-Cubed has the right, in its sole business judgment, to choose which side will be the Cable Side at each point of the Settlement Corridor.

**"Cash Payments"** means the cash compensation detailed in Section IV. D. and E. and seventy-five percent (75%) of the DOF Cash Payment.

**"Cash Payment Calculation Miles"** means the total number of miles along the Cable Side of each portion of a Settlement Corridor in which the Telecommunications System is installed, LESS the total number of miles along each portion of a Settlement Corridor which adjoins or overlies any Real Estate (not including roads, railroad rights of way, or yards or terminals used for railroad operations) owned by: (a) the Railroad, T-Cubed, or their parents, subsidiaries, affiliates or any of their officers or directors, (b) the United States government (including any departments or agencies thereof) and governments that have treaties with the United States, and (c) persons opting out of the Settlement Class. Additionally, the total number of Cash Payment Calculation Miles shall be adjusted to reflect (i) mileage adjustments based on the inclusion within the Settlement Corridors of segments controlled by parties other than Railroad (which segments are further described on Exhibit A), in the event T-Cubed has obtained access to such segments, and (ii) mileage adjustments based on alternative routes between the

points that would have been encompassed by the foregoing segments in the event (1) T-Cubed has not obtained access to such segments, (2) T-Cubed has elected to install the Telecommunications System in such alternative routes, and (3) T-Cubed and Settlement Class Counsel agree, each in its sole discretion, to the inclusion of such routes in this Agreement. The parties to this Agreement acknowledge that some Real Estate included in determining the number of Cash Payment Calculation Miles for purposes of this definition may be owned by entities excluded from the definition of the Settlement Class.

**"Claims Administrator"** means the person selected by the Parties and appointed by the Court as provided in Section V. A. of this Agreement.

**"Claims Protocol And Responsibilities Of Claims Administrator"** means the process set forth on <u>Exhibit B</u> attached to this Agreement governing claims and payments from and to certain Settlement Class Members.

**"Class Corridor, LLC"** means the entity, or its successor, to be formed to hold and sell easements to T-Cubed in consideration of T-Cubed providing to Class Corridor, LLC and to the Settlement Class Members, as applicable, the Settlement Class Compensation detailed in this Agreement.

**"Complaint"** means the Class Action Complaint (and all amendments thereto) filed in this Court in this action by Uhl and Elzinga, as class representatives.

**"Conduit"** means a single enclosed conduit or duct suitable for the installation of a Cable, along with pull boxes, handholes, manholes, markers and other related facilities.

**"Conduit Disposition Price"** shall mean the present value of all consideration received or receivable by T-Cubed in connection with the Disposition of a Conduit, including, without limitation, the fair value of any in-kind consideration and the present value of consideration receivable with respect to any extended or renewed term of a lease or other Disposition where T-Cubed has the right in its discretion or at its direction to effect or require such extension.

**"Conduit System"** means the system of Conduits contemplated by this Agreement. Conduit System includes lateral connections of any length or description, but excludes any equipment shelters or regeneration sites.

**"Court"** means the United States District Court for the Southern District of Indiana, Indianapolis Division.

**"Cy Pres Funds"** means those portions of the Administrative and Claims Account which are designated, funded and distributed in accordance with Section V.E.8. of this Agreement.

**"Defendant"** means Thoroughbred Technology and Telecommunications, Inc.

**"Disposition"** means: (i) a sale, lease, license, grant of an indefeasible right to use, or other transfer by T-Cubed of a Conduit installed in the Conduit System anticipated by this Agreement, or (ii) the titling of such a Conduit wholly in a party other than T-Cubed, provided such party is not contractually obligated to effect a sale, lease, license, grant of indefeasible right to use, or other transfer of such Conduit to T-Cubed at any time thereafter.

**"DOF Cash Payment"** means the dark optical fiber cash payment of $316 per DOF Mile to Class Corridor, LLC payable under the DOF Notes and described in Section IV.F.2.

**"DOF Mile"** means, in the event of a Disposition of at least four Conduits in a particular Settlement Corridor, a linear mile of dark Optical Fiber that T-Cubed installs, has installed, obtains control or possession of (or enters into a binding agreement with a third-party in respect of any of the foregoing) for its own account in all Conduits installed in that particular Settlement Corridor; provided that (i) no miles of dark Optical Fiber in excess of sixteen (16) dark Optical Fibers in a particular Settlement Corridor shall be counted as DOF Miles, (ii) of the miles not excluded by subparagraph (i) above, only fifty percent (50%) of the miles of any such dark Optical Fibers per Settlement Corridor shall be counted as DOF Miles; and (iii) such dark Optical Fibers to be counted in the calculation of DOF Miles shall be of the same type and quality as the dark Optical Fibers obtained by T-Cubed for its own account or shall otherwise be mutually agreed to by Class Corridor, LLC and T-Cubed.

**"DOF Note"** or **"DOF Notes"** individually or collectively, as the context requires, means the non-transferable note or notes from T-Cubed to Class Corridor, LLC described in Section IV.F.2. Each of the DOF Notes shall conform to the provisions of this Agreement, and shall otherwise be in a form mutually and reasonably acceptable to Settlement Class Counsel and T-Cubed. There shall be only one DOF Note per Settlement Corridor.

**"DOF Option"** means Class Corridor, LLC's right to require T-Cubed to satisfy its obligations under a particular DOF Note with a particular In-Kind Payment pursuant to Section IV.F.3.

**"DOF Payment"** means the DOF Cash Payment or In-Kind Payment, as applicable.

**"Final"** as applied to the Order and Judgment, means that the time for appeals has expired with no timely appeals noticed or that all appeals have been exhausted from the Order and Judgment approving this Agreement.

**"Final Date"** means the date that the Order and Judgment is Final.

**"Formal Fairness Hearing"** means the hearing conducted by the Court in connection with the determination of the fairness, adequacy, and reasonableness of this Agreement under Federal Rule of Civil Procedure 23(e). The date of the Formal Fairness Hearing shall be set by the Court and communicated to the Settlement Class in a Court-approved T-Cubed Class Settlement Notice (a "Notice") under Federal Rule of Civil Procedure 23(c)(2).

**"Initial Funding Trigger Date"** means the date that is the earlier of: (A) thirty (30) days after the Order and Judgment has become Final, or (B) the date the Final Order and Judgment is recorded in the land records of each jurisdiction in which the Settlement Corridors are located.

**"In-Kind Payment"** means individually for a particular Settlement Corridor and collectively for all Settlement Corridors, as the context requires, the transfer to Class Corridor, LLC of up to sixteen (16) specified strands per Settlement Corridor of dark Optical Fibers installed in one or more Conduits in a particular Settlement Corridor in satisfaction of T-Cubed's obligations under the particular DOF Note associated with such Settlement Corridor, as described in Section IV.F.1.

**"Non-Cable Side"** means the side of the Settlement Corridor opposite from the side on which the Telecommunications System has been or will be installed.

**"Non-Cash Payment"** means the payments detailed in Subsections IV. F. (with respect to the In-Kind Payment, if applicable), G. and H.

**"Notice Date"** means the date on which the Court-approved Notice to Settlement Class Members is mailed.

**"Optical Fiber"** means an individual fiber optic strand within a Cable permitting the transmission of communications signals.  A "dark Optical Fiber" means an Optical Fiber without electronics or optronics, and which is not "lit" or activated.

**"Opt-Out Deadline"** means the date set by the Court as the last day opt-out notices may be post-marked to be effective.

**"Order and Judgment"** means the order to be entered by the Court, (i) approving this Agreement substantially in accordance with its terms as fair, adequate, and reasonable under Federal Rule of Civil Procedure 23(e), (ii) confirming Settlement Class certification under Federal Rule of Civil Procedure 23(b) and 23(e), (iii) containing the provisions set forth in Section IV. H. creating, confirming and granting the Settlement Corridor Easements as more particularly described in Section IV. H.,  and (iv) making such other findings and determinations as the Court deems necessary and appropriate to effectuate the terms of this Agreement.

**"Parties"** means the Plaintiffs and the Defendant.

**"Plaintiffs"** means the individuals named as Plaintiffs in the Complaint.

**"Preliminary Approval"** means the Court's conditional certification of the Settlement Class and preliminary approval of this Agreement pursuant to Federal Rule of Civil Procedure 23(b) and entry of Orders providing for class notice.

**"Real Estate"** means land that is underlying or adjoining active railroad corridors utilized by Norfolk Southern Railway Company, certain of its subsidiaries, Pennsylvania Lines LLC and other railroads (collectively "Railroad") as to which T-Cubed claims to have obtained access and occupancy rights for the installation, operation, maintenance, renewal, marketing and transfer of use of the Telecommunications System.

**"Record Date"** means the date fixed by the Court as the date by which the Settlement Class Member must have established their ownership of Real Estate adjoining or underlying the Settlement Corridors to qualify for benefits under this Agreement. Subject to the Court's approval, the Record Date will be seven (7) days after the Notice Date.

**"Released Parties"** means (1) T-Cubed, its parent, subsidiaries (including, without limitation, T-Cubed of North America, Inc., a Delaware corporation, T-Cubed of South Carolina, Inc., a South Carolina corporation, and T-Cubed of Virginia, Inc., a Virginia public service corporation), and its and their affiliates, directors, officers, lessees, sublessees, licensees, sublicensees, agents, attorneys, assigns and all past, present and future transferees or co-holders of rights or interests from or with T-Cubed or its subsidiaries in Conduits or Optical Fibers installed in the Telecommunications System; and (2) Pennsylvania Lines LLC, and its directors, officers, lessees, sublessees, licensees, sublicensees, agents, attorneys, and assigns, such release as to all Released Parties only with respect to the Settlement Class Claims.

**"Settlement Administration Costs"** means all costs, expenses and fees reasonably incurred by T-Cubed to administer the settlement contemplated by this Agreement, including without limitation costs, fees and expenses incurred in (i) identifying and confirming potential Settlement Class Members, including without limitation, the fees and expenses of vendors

compiling information on the Settlement Class, the fees and expenses of the Claims Administrator's contractors, and costs of producing maps of the Settlement Corridors for use by the contractors, (ii) preparing and disseminating notice of, and information pertaining to, the settlement contemplated hereunder to Settlement Class Members, (iii) establishing and funding the day-to-day operations and functions of the Settlement Claims Office, (iv) retaining and compensating the Claims Administrator, the Settlement Claims Officers and any agents, contractors or employees of the foregoing, (v) creating and maintaining the Administrative and Claims Account, (vi) recording the Final Order and Judgment and the assignments of the Cable Side Settlement Corridor Easements from Class Corridor, LLC to T-Cubed, provided, however, that the amount of attorneys' fees (as distinct from recording fees and taxes) incurred in recording the Final Order and Judgment and the assignments which may be included as Settlement Administration Costs shall not exceed $100,000, and (vii) analyzing, preparing, submitting, prosecuting, defending and appealing claims hereunder.

**"Settlement Class"** means all persons owning Real Estate underlying or adjoining the Settlement Corridors; provided, however, that the Settlement Class shall not include T-Cubed, its parent, subsidiaries, affiliates or any of their directors or officers, any State Government or Municipality, the United States government or governments that have treaties with the United States, any railroad or any person controlled by, under the control of, or under common control with any railroad.  For purposes of this definition of the Settlement Class:  (a) persons owning Real Estate which is separated from a Settlement Corridor only by an adjoining road, street, highway, interstate or railroad corridor which is not a Settlement Corridor shall be deemed to be included in the Settlement Class, but the governmental or other entities claiming to own any

interest in such road, street, highway, or interstate or railroad corridor which is not a Settlement Corridor shall not be included in the Settlement Class, and (b) persons owning Real Estate which is separated from a Settlement Corridor only by a river (regardless of the navigability thereof) shall not be included in the Settlement Class.

**"Settlement Class Claims"** means any and all claims, suits or proceedings, including assigned claims, suits or proceedings, whether known or unknown, asserted or unasserted, regardless of the legal or equitable theory, that are or may be asserted now or in the future by any or all Settlement Class Members against T-Cubed or any other Released Party arising out of or relating to (i) slander of title claims related to T-Cubed's (or its assignees', licensees', lessees', sublessees', pledgees' or transferees') asserted right to install a Telecommunications System on one side (of its choosing) of the Settlement Corridors, and (ii) T-Cubed's (or its assignees', licensees', lessees', sublessees', pledgees' or transferees') installation, operation, maintenance, renewal, marketing and transfer of the Telecommunications System on the Cable Side of the Settlement Corridors, or any other claims addressed or arising out of the subject matter of the Complaint as to the Cable Side of the Settlement Corridors, including, without limitation, claims for trespass, slander of title, unjust enrichment, criminal mischief/criminal trespass, and inverse condemnation. The Settlement Class reserves all rights that they or any of them may have against T-Cubed's parent, subsidiaries, affiliates, directors, officers, sublessees, licensees, agents, and assigns with respect to all other conduct in regard to, or transfers of rights in or on, Settlement Class Members' interest in the Real Estate.

**"Settlement Class Compensation"** means collectively the Cash Payments and Non-Cash Payments, as detailed in Section IV.

**"Settlement Class Counsel"** means the following counsel:  Nels Ackerson, The Ackerson Group, Washington, D.C.;  Henry J. Price, Price, Potter, Jackson & Mellowitz, P.C., Indianapolis, Indiana; John B. Massopust, Zelle, Hofmann, Voelbel & Gette, LLP, Minneapolis, Minnesota; and Roger C. Johnson, Koonz, McKenney, Johnson, DePaolis & Lightfoot, Washington, D.C. The Court shall have continuing jurisdiction to designate additional counsel to serve as Settlement Class Counsel.

**"Settlement Class Members"** means all persons in the Settlement Class, except those persons who file valid and timely requests for exclusion before the Opt-Out Deadline.

**"Settlement Corridors"** means the proposed point-to-point routes described in Exhibit A on which T-Cubed has installed or expects to install the Telecommunications System.   The Settlement Corridors shall be described or identified (by maps, charts or otherwise) in the Court's notice to Settlement Class Members.   The Settlement Corridors may be amended from time to time to reflect (a) opt-outs, (b) the inclusion within the Settlement Corridors of segments controlled by parties other than Railroad (which segments are further described on Exhibit A), in the event T-Cubed has obtained access to such segments, and (c) the inclusion of alternative routes between the points that would have been encompassed by the foregoing segments in the event (x) T-Cubed has not obtained access to such segments, (y) T-Cubed has elected to install the Telecommunications System in such alternative routes, and (z) T-Cubed and Settlement Class Counsel agree, each in its sole discretion, to the inclusion of such routes in this Agreement.

**"Telecommunications System"** means the fiber optic telecommunications system which has been installed by T-Cubed (or its subsidiaries, assignees, licensees, lessees, sublessees, pledgees  or transferees) or is anticipated by this Agreement to be installed by T-Cubed (or its

subsidiaries, assignees, licensees, lessees, sublessees, pledgees or transferees), including the Conduit System, any Cables and Optical Fibers installed in Conduits therein, any equipment shelters and regeneration sites serving such system (together with utility lines providing electric power to such shelters and sites), and any associated equipment installed in or attached to the Conduit System.

## II. <u>REQUIRED EVENTS; COOPERATION</u>

A.     Promptly after execution of this Agreement, the Parties shall submit the Agreement to the Court for its Preliminary Approval and the Plaintiffs shall move the Court for one or more orders, which T-Cubed will not oppose, that by their terms shall:

1.     Designate Elzinga as the representative of the Settlement Class;

2.     Confirm the appointment of Settlement Class Counsel as counsel for the Settlement Class;

3.     Preliminarily and conditionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b) and preliminarily approve this Agreement for purposes of issuing notice;

4.     Determine or approve the form, contents, and method of dissemination of the formal notice to be given to the potential members of the Settlement Class;

5.     Schedule appropriate opt-out, objection, claims registration, and other settlement-related dates and deadlines for inclusion in the notice;

6.      Preliminarily approve the fee structure proposed by Settlement Class Counsel, including the mechanism of interim payments as approved by the Court; and

7.      Schedule the Formal Fairness Hearing to review comments regarding this Agreement, to consider its fairness, reasonableness, and adequacy under Federal Rule of Civil Procedure 23(b), and to enter the Final Order and Judgment.

B.      The Parties shall cooperate, assist, and undertake all reasonable actions in order to accomplish the above on the schedule set by the Court.

### III.   CERTIFICATION OF SETTLEMENT CLASS; OPT-OUT RIGHTS

A.      Subject to the Court's approval, the Plaintiffs will move, and T-Cubed will not oppose, that the Settlement Class be certified for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(b), in this action, without prejudice to the Parties' ability to contest, oppose, propose, or support class certification and related issues in this action or in any other action, proceeding, forum or context for any other purpose.

B.      Except for Elzinga, all members of the Settlement Class shall have the right to exclude themselves ("opt out") from the Settlement Class. Subject to the Court's approval, the Opt-out Deadline shall be sixty (60) days from the Notice Date, and, in any event, shall occur before the date of the Formal Fairness Hearing. Members of the Settlement Class who do not exclude themselves under the opt-out procedures set forth in Section I. D. of the Claims Protocol

And Responsibilities Of Claims Administrator as of the Opt-out Deadline shall remain Settlement Class Members. If one joint tenant or tenant in common who owns a parcel of land adjoining the Settlement Corridors excludes himself or herself from the Settlement Class, all other joint tenants or co-owners of such parcel shall also be excluded from the Settlement Class. By failing to opt out from the Settlement Class, the Members of the Settlement Class shall be deemed to have appointed the Claims Administrator as such Settlement Class Members' agent and attorney in fact for the purpose of executing and implementing this Agreement and such other documents as are necessary or required by applicable law in order to have the existence and terms of the Settlement Corridor Easements recorded, filed or registered in the land records of the appropriate jurisdiction in which the Settlement Corridors are located.

## IV. SETTLEMENT CLASS COMPENSATION

A. Forms of Compensation. Settlement Class Members will contribute the easements in the Real Estate described in Section IV.H. below to a newly formed limited liability company named Class Corridor, LLC (described in Section IV. C. below). In exchange for such contributions, the Settlement Class Members that provide the Requisite Information (as defined herein) to Class Corridor, LLC will receive equity interests in Class Corridor, LLC based on the amount of linear feet owned on the Cable Side and Non-Cable Side of the Settlement Corridor. Regardless of whether Settlement Class Members provide the Requisite Information and receive equity interests in Class Corridor, LLC, each Settlement Class Member shall contribute the easements described in Section IV.H. below. Class Corridor, LLC will hold the easements contributed to it until such time, if ever, that the Cable Side of a particular portion of a Settlement Corridor is determined, at which time the Cable Side Settlement Corridor Easements shall be sold,

assigned and transferred by Class Corridor, LLC to T-Cubed, and Class Corridor, LLC (for the benefit of the Settlement Class Members), will be entitled to the payments described in Sections IV. D. through G below. T-Cubed will pay the Settlement Class Compensation in the following four forms:

1. <u>Initial Cash Payments</u>: The initial Cash Payments described in Section IV.D. below will be paid by T-Cubed to the Claims Administrator for distribution to qualifying Settlement Class Members according to the schedule set out in Section IV.D., in exchange for the transfer by Class Corridor, LLC of the Cable Side Settlement Corridor Easements to T-Cubed and as compensation to settle the Settlement Class Claims described in this Agreement arising from T-Cubed's installation of three (3) Conduits in the Telecommunications System on the Cable Side of each Settlement Corridor. The initial Cash Payments will be distributed by the Claims Administrator to qualifying Settlement Class Members who have established ownership of Real Estate on the Cable Side of the Settlement Corridor as of the Record Date according to the requirements of this Agreement;

2. <u>Further Cash Payments: Percentage-of-Revenue Payments</u>: T-Cubed will pay to the Claims Administrator for distribution to qualifying Settlement Class Members seventy-five percent (75%) of the percentage-of-revenue payments described in Section IV. E. from Dispositions of Conduits in the Telecommunications System in excess of three (3) Conduits on the Cable

(18)

Side of each Settlement Corridor.  The Claims Administrator will distribute the percentage of revenue payments to qualifying Settlement Class Members who have established ownership of Real Estate on the Cable Side of the Settlement Corridor as of the Record Date according to the requirements of this Agreement.  The remaining 25% of the percentage of revenue payments will be paid by T-Cubed to the Claims Administrator for payment to Settlement Class Counsel.

3.    <u>The Dark Optical Fiber ("DOF") Payment</u>:  Upon the Final Date, T-Cubed will deliver to Class Corridor, LLC one DOF Note for each Settlement Corridor obligating T-Cubed to pay to Class Corridor, LLC, on the fourth anniversary of the Final Date (such date being hereinafter referred to as the "DOF Note Payment Date"), cash in the amount of $316 per DOF Mile in the corresponding Settlement Corridor if there are any DOF Miles in such Settlement Corridor.  If there are no DOF Miles in a particular Settlement Corridor on the DOF Note Payment Date, the DOF Note for such Settlement Corridor shall be marked "Canceled" by Class Corridor, LLC and returned to T-Cubed.  If there are DOF Miles in a particular Settlement Corridor, Class Corridor, LLC will have the option to require T-Cubed to satisfy the DOF Note for a particular Settlement Corridor with the In-Kind Payment of dark Optical Fibers installed in such Settlement Corridor in lieu of the DOF Cash Payment for such Settlement Corridor, on the terms and conditions set forth in Section IV.F.  T-Cubed may satisfy its obligations

under the DOF Note for a particular Settlement Corridor by making the In-Kind Payment for such Settlement Corridor, on the terms and conditions set forth in Section IV.F.  In the event the DOF Note for a particular Settlement Corridor is satisfied by the DOF Cash Payment for such Settlement Corridor on the DOF Note Payment Date, T-Cubed will distribute (i) seventy-five percent (75%) of such DOF Cash Payment to the Claims Administrator who will pay such payment to all qualifying Settlement Class Members and (ii) twenty-five percent (25%) of such DOF Cash Payment to the Settlement Class Counsel.  In the event that a DOF Note for a particular Settlement Corridor is satisfied by the In-Kind Payment relating to such Settlement Corridor, then twenty-five (25%) of the net revenues received by Class Corridor, LLC with respect to the exploitation, leasing, or disposition of the In-Kind Payment shall be paid by Class Corridor, LLC to the Settlement Class Counsel.

4.    <u>Conduit Purchase Option</u>: Class Corridor, LLC shall have the option to purchase a Conduit in the Telecommunications System on the terms and conditions set forth in Section IV. G.  Class Corridor, LLC shall have the access rights in respect of portions of the Settlement Corridors excluded from the Settlement Class as set forth in Section IV. H.

The initial Cash Payments described in Section IV.A.1. above, the percentage of revenue Cash Payments paid to Settlement Class Members as described in Section IV.A.2. above, the DOF Payment paid to Settlement Class Members described in Section IV.A.3. above, and the Conduit

Purchase Option described in Section IV.A.4. above shall not be subject to any reduction for Settlement Administration Costs, or any other costs or expenses arising from this Agreement, all of which shall be paid by T-Cubed to the Claims Administrator for payment to the parties entitled thereto. The initial Cash Payments described in Section IV.A.1 above, the portion of the DOF Payment described in clause (i) of Section IV.A.3 above, the percentage of revenue Cash Payments described in Section IV.A.2. above, and the Conduit Purchase Option described in Section IV.A.4. above shall not be subject to any reduction for Settlement Class Counsel fees and expenses, which shall be paid by T-Cubed to the Claims Administrator for payment to the Settlement Class Counsel. In no event shall T-Cubed's or Class Corridor, LLC's, as applicable, total obligation for Settlement Class Compensation and Settlement Class Counsel fees exceed the total amounts set forth in this Agreement.

B.    <u>Class Corridor, LLC Membership Allocation</u>.  In exchange for the contribution of their easements in the Real Estate to Class Corridor, LLC, all Settlement Class Members who provide their social security or tax payer identification number and also provide the property ownership information required in this Agreement (the "Requisite Information") to Class Corridor, LLC will receive interests in Class Corridor, LLC based on the amount of linear feet owned on the Settlement Corridor.  Qualifying Cable Side Settlement Class Members will receive an interest in Class Corridor, LLC entitling them to receive the payments described in Sections IV.A.1. and IV.A.2.  All qualifying Settlement Class Members will receive an interest in Class Corridor, LLC entitling them to receive their applicable portion of the DOF Payment.  The Claims Administrator will receive the Cash Payments and make the distributions called for in this Agreement.  The allocation of the Settlement Class Compensation among the Settlement Class

Members will depend on whether a Member has established ownership of Real Estate as of the Record Date on the Cable Side or the Non-Cable Side of a Settlement Corridor and on the linear feet such Settlement Class Member owns on the affected Settlement Class Corridor. The manner of allocation for each type of settlement compensation is set out in the subsequent paragraphs of this section.

      C.      <u>Establishment of Class Corridor, LLC</u>.

            1.      Before the Formal Fairness Hearing, Settlement Class Counsel shall establish Class Corridor, LLC for the purpose of (1) holding the easements described in Section IV. H. to be created by entry of the Court's order; (2) selling, assigning and transferring the Cable Side Settlement Corridor Easements to T-Cubed; (3) holding the DOF Notes and exercising any rights and options (including the DOF Option) thereunder; (4) holding and developing the Non-Cash Payments transferred by T-Cubed under the terms and conditions of this Agreement for the benefit of the Settlement Class Members; and (5) determining whether to exercise the Conduit Purchase Option and, if exercised, holding and developing the acquired Conduit. The fairness, reasonableness and adequacy of Class Corridor, LLC's plan for distribution will be reviewed by the Court as part of the Formal Fairness Hearing. There may be one or more classes of Class Corridor, LLC membership interests. Membership interests will be distributed to Settlement Class Members. The distribution of interests in Class Corridor, LLC among Settlement Class Members will be based on whether a Member

has established ownership of Real Estate as of the Record Date on the Cable Side or the Non-Cable Side of a Settlement Corridor and on the linear feet such Settlement Class Member owns on the affected Settlement Corridor. The capital structure presented to the Court for approval will include the right to issue equity and debt interests of the same or different classes to attract professional management or to obtain reasonable or necessary investment capital. T-Cubed shall have no responsibility or liability for the creation, structure, financing or operation of Class Corridor, LLC or for the issuance of its securities or other equity or membership interests therein.

2. Class Corridor, LLC will have the power to enter into contracts, including contracts with T-Cubed that will govern transfers of the Non-Cash Payments to Class Corridor, LLC, consistent with this Agreement and with the Final Order and Judgment.

3. Class Corridor, LLC will pay from its own funds all reasonable expenses, including pre-organization expenses, for its establishment and operation, including fees owed to securities and tax counsel to the extent not compensated by the Cy Pres Funds as provided in Section V.E.8. below.

D. <u>Initial Cash Payments</u>. T-Cubed shall pay to the Claims Administrator for distribution to qualifying Settlement Class Members the initial Cash Payment (hereinafter referred to as the "Initial Cash Payment") in a total amount equal to the product of: (a) $6,000, multiplied

by (b) the total number of Cash Payment Calculation Miles.  Initial Cash Payments will be paid by

T-Cubed to the Claims Administrator on the following schedule:

1.  Immediate Payment: On the Initial Funding Trigger Date, T-Cubed shall

pay to the Claims Administrator for the first 1,373 Cash Payment

Calculation Miles an amount equal to $8,238,000 (the "Immediate

Payment").  The Claims Administrator shall hold and disburse the

Immediate Payment as follows:  (i) to the extent that the installation of a

Telecommunications System in any of the Settlement Corridors has been

completed and the Cable Side of such Settlement Corridors has been

identified by delivery of "red-lined" engineering drawings of such

Settlement Corridor to the Claims Administrator, then as soon as the

Claims Administrator (or such other vendor or party engaged for such

purpose) identifies the individual Settlement Class Members entitled to

compensation after reviewing such red-lined engineering drawings, the

Claims Administrator shall disburse the applicable amounts directly to

Class Corridor, LLC which will distribute, or cause the Claims

Administrator to distribute on its behalf, the applicable amounts (in

accordance with the procedures set forth in Section V.E. and in the Claims

Protocol and Responsibilities of Claims Administrator) to Settlement Class

Members who establish ownership of Real Estate on the Cable Side of a

Settlement Corridor as of the Record Date, and (ii) to the extent that at the

time the Immediate Payment is paid to the Claims Administrator, (a) the

installation of a Telecommunications System in a particular Settlement

Corridor has not been completed, (b) the Cable Side of the Settlement

Corridors has not been identified because red-lined engineering drawings

have not yet been delivered to the Claims Administrator, or (c) the

individual Settlement Class Members entitled to compensation have not yet

been determined from the red-lined engineering drawings, then the

remainder of the Immediate Payment shall remain in the Administrative

and Claims Account pending such installation, identification and

determination (and upon such installation, identification and determination,

the appropriate amounts shall be paid to Class Corridor, LLC for

distribution to Settlement Class Members in accordance with Section

IV.D.1.(i) above). Any sums paid to the Claims Administrator by T-Cubed

pursuant to this Section IV. D. 1. which are not required to be paid to Class

Corridor, LLC because T-Cubed fails for any reason (or for no reason) to

install a Telecommunications System within the first 1,373 Cash Payment

Calculation Miles during the time period set forth in this Agreement shall

be released from the Administrative and Claims Account and promptly paid

by the Claims Administrator to T-Cubed.

2.  <u>Remaining Initial Cash Payment upon Installation on Remaining Corridor

Miles</u>:  T-Cubed shall pay to the Claims Administrator the remaining Initial

Cash Payment for the remaining number of Cash Payment Calculation

Miles in excess of the first 1,373 upon T-Cubed's commencement of

installation of the Telecommunications System on a particular Settlement

Corridor, on a Corridor-by-Corridor basis (as adjusted according to the

definition of Cash Payment Calculation Miles). Upon the completion of

installation of a Telecommunications System in a remaining Settlement

Corridor and upon the identification of the Cable Side of such Settlement

Corridors by delivery of red-lined engineering drawings of such Settlement

Corridor to the Claims Administrator, then as soon as the Claims

Administrator (or such other vendor or party engaged for such purpose)

identifies the individual Settlement Class Members entitled to

compensation after reviewing such red-lined engineering drawings, the

Claims Administrator shall disburse the applicable amounts to Class

Corridor, LLC, which will distribute, or cause the Claims Administrator to

distribute on its behalf, the applicable amounts (in accordance with the

procedures set forth in Section V.E. and in the Claims Protocol and

Responsibilities of Claims Administrator) to Settlement Class Members

who have established ownership of Real Estate on the Cable Side of the

applicable Settlement Corridor as of the Record Date.

E.    Further Cash Payments: Percentage-of-Revenue Payments.

1.    As additional consideration for the transfer of the Cable Side Settlement

Corridor Easements, T-Cubed shall pay to the Claims Administrator, for

payment to Class Corridor, LLC, 75% of the percentage-of-revenue

payments set out in the table below. Class Corridor, LLC will distribute (or

cause the Claims Administrator to distribute) the percentage-of-revenue payments to Settlement Class Members who have established ownership of Real Estate on the Cable Side of a Settlement Corridor as of the Record Date in accordance with the Claims Protocol. The percentage-of-revenue payments will be applied to actual, per-mile Conduit Disposition prices or to $30,000 per Conduit-mile, whichever is greater. In the event Class Corridor, LLC exercises the Conduit Purchase Option (as defined in Section IV. G.), T-Cubed shall be relieved of the obligation to make percentage-of-revenue payments for the purchased Conduit, or such payments may be calculated based on the exercise price, as set forth in Section IV.G. In the event Class Corridor, LLC receives the DOF Payment, the percentage-of-revenue payments for the Conduit containing such fibers (or the cash paid with respect to such fibers) shall be offset on a pro rata basis as set forth in Section IV. F. 4.

| CONDUITS | % OF GROSS RECEIPTS |
|----------|---------------------|
| 1 through 3 | 0% |
| 4 through 7 | 10% |
| 8 & Above | 15% |

F.     <u>DOF Payment</u>.

1.     As additional consideration for the transfer of the Cable Side Settlement

Corridor Easements and in payment and settlement of the Settlement Class Claims, Class Corridor, LLC shall receive from T-Cubed, on the DOF Note Payment Date (i.e. the fourth anniversary of the Final Date), a cash payment equal to $316 for each DOF Mile in a particular Settlement Corridor if there are any DOF Miles in such Settlement Corridor. This obligation shall be evidenced by the DOF Note pertaining to that particular Settlement Corridor. If there are no DOF Miles in a particular Settlement Corridor on the DOF Note Payment Date, the obligation under such DOF Note shall be $0.00 and such DOF Note shall be marked "Canceled" by Class Corridor, LLC and returned to T-Cubed. As explained below, (a) in certain instances Class Corridor, LLC shall have the right to require that T-Cubed satisfy its obligations under a DOF Note for a particular Settlement Corridor that has DOF Miles by making the In-Kind Payment, and (b) T-Cubed may elect to satisfy its obligations under any DOF Note by making the In-Kind Payment. In the event T-Cubed installs, has installed, obtains control or possession of (or enters into a binding agreement with a third-party in respect of any of the foregoing) dark Optical Fibers for its own account in Conduits installed in the Telecommunications System in a Settlement Corridor, T-Cubed shall promptly give Class Corridor, LLC's designated representative notice in writing, including full technical specifications of the dark Optical Fiber. Upon T-Cubed's Disposition of the fourth Conduit in a particular Settlement Corridor, Class Corridor, LLC may receive as specified in Sections IV.F.2. and IV.F.3. below, that number in whole

numbers closest to but not exceeding one-half, and not exceeding sixteen (16), of the same type and same quality (or as otherwise mutually agreed to by Class Corridor, LLC and T-Cubed) dark Optical Fibers then in T-Cubed's control which are installed within that same Settlement Corridor (the "In-Kind Payment"). Class Corridor, LLC shall have the right to receive up to sixteen (16) dark Optical Fibers on the same terms in each Settlement Corridor in the Telecommunications System.

2. On the Final Date, T-Cubed will deliver to Class Corridor, LLC a DOF Note for each Settlement Corridor providing for the payment to Class Corridor, LLC of cash in the amount of $316 per DOF Mile in the corresponding Settlement Corridor (the "DOF Cash Payment"), but only if there are DOF Miles in such Settlement Corridor on the DOF Note Payment Date and only if T-Cubed Disposes of at least four Conduits in such Settlement Corridor. In the event that T-Cubed installs, has installed, obtains control or possession of (or enters into a binding agreement with a third-party in respect of any of the foregoing) dark Optical Fibers for its own account in Conduits installed in the Telecommunications System in a particular Settlement Corridor, T-Cubed may elect at its sole election to satisfy its obligations under the corresponding DOF Note by making the In-Kind Payment of the dark Optical Fibers installed in such Settlement Corridor due to Class Corridor, LLC as described above in Section IV.F.1. Upon receipt of the entire DOF Payment to which Class Corridor, LLC is

entitled under a particular DOF Note (whether by the In-Kind Payment, the DOF Cash Payment or a combination thereof) for a particular Settlement Corridor, Class Corridor, LLC shall mark the corresponding DOF Note "Paid In Full" and promptly return the original of such DOF Note to T-Cubed. The DOF Notes will be governed by Virginia law. The DOF Notes will not be transferable or negotiable.

3.   Class Corridor, LLC shall have the option ("DOF Option") to require T-Cubed to satisfy a particular DOF Note with the In-Kind Payment for the corresponding Settlement Corridor in lieu of the DOF Cash Payment in accordance with this Section IV.F.3. The DOF Option shall not be exercisable before the first anniversary of the Final Date. The DOF Option will expire forty-seven (47) months after the Final Date. If T-Cubed installs, has installed, obtains control or possession of (or enters into a binding agreement with a third party in respect of any of the foregoing) a dark Optical Fiber for its own account in Conduits installed in the Telecommunications System in a particular Settlement Corridor, Class Corridor, LLC will have up to ninety (90) days from the date its designated representative receives the notice described in Section IV.F.1. above in which to provide T-Cubed with notice that it is exercising the DOF Option with respect to such Settlement Corridor. The DOF Option may be exercisable in whole or in part and from time to time. Upon T-Cubed's receipt of such notice that Class Corridor, LLC is exercising the DOF

Option with respect to such Settlement Corridor, T-Cubed shall promptly deliver the In-Kind Payment for such Settlement Corridor to Class Corridor, LLC. Upon the expiration of the DOF Option without Class Corridor, LLC exercising the DOF Option for all of the Settlement Corridors, T-Cubed may elect in its sole discretion to deliver to Class Corridor, LLC the In-Kind Payment for each Settlement Corridor for which Class Corridor, LLC has not exercised the DOF Option in lieu of the DOF Cash Payment for such Settlement Corridors as full satisfaction of the remaining unsatisfied DOF Notes.

4.      If, after the date on which Class Corridor, LLC has received the In-Kind Payment of dark Optical Fibers in different Conduits in the same Settlement Corridor, T-Cubed obtains control of, as part of one transaction, thirty-two (32) or more dark Optical Fibers in a single Conduit in such Settlement Corridor, Class Corridor, LLC may elect to receive the In-Kind Payment of sixteen (16) of such dark Optical Fibers in a single Conduit; provided that, in such event, Class Corridor, LLC shall return to T-Cubed in the same transaction all dark Optical Fibers it has theretofore been transferred. Dark Optical Fibers transferred to Class Corridor, LLC as part of the In-Kind Payment shall be offset against percentage-of-revenue compensation payable for the conduits in which such fibers are contained, with each transferred dark Optical Fiber deemed equal to 6.25% of such compensation.

5. Dark Optical Fiber transfers to Class Corridor, LLC pursuant to the In-Kind Payment shall be accomplished either through a bill of sale or a grant of an exclusive indefeasible right of use of such dark Optical Fiber, and shall be accompanied by a non-exclusive right of way sublease agreement or other agreement providing access to and use of connecting and splice points, regeneration facilities, points of presence, maintenance services, and other benefits and burdens of dark Optical Fiber ownership not less favorable than those enjoyed by T-Cubed in respect of its dark Optical Fibers co-located in the same Conduit. The parties to this Agreement acknowledge that T-Cubed's rights of access to the Railroad's rights of way are for a limited term, and therefore any access rights provided by T-Cubed to Class Corridor, LLC will be subject to the same terms (including renewals) and limitations as those binding upon T-Cubed from time to time.

G. <u>Non-Cash Payments: Conduit Purchase Option</u>.

1. Class Corridor, LLC shall have an option to purchase a Conduit in accordance with this Section IV. G. T-Cubed will grant to Class Corridor, LLC the right to purchase from T-Cubed a Conduit installed in the Telecommunications System throughout each Cable Side of the Settlement Corridors (the "Conduit Purchase Option"). The term of the Conduit Purchase Option shall commence on the effective date of T-Cubed's first Disposition of a Conduit to a third party throughout the Cable Side of the respective Settlement Corridor. The Conduit Purchase Option shall expire

on the later of (i) one (1) year after the foregoing effective date, and (ii) four (4) years after the Final Date (the "Option Expiration Date"). The Conduit Purchase Option shall terminate with respect to a Settlement Corridor if notice of exercise is not given by Class Corridor, LLC within sixty (60) days of receipt of notice (the "Acceleration Notice") from T-Cubed that T-Cubed has a bona fide offer for a Disposition of, all Conduits on the respective Settlement Corridor. Class Corridor, LLC will pay T-Cubed $100 for the Conduit Purchase Option.

2.    The exercise price for the Conduit Purchase Option per Conduit-mile shall be calculated as follows. If as of the date of exercise T-Cubed has received in its most recent Disposition of a Conduit installed in the Telecommunications System in the respective Settlement Corridor to a third party an amount equal to or greater than $30,000 per Conduit-mile, the exercise price shall be, at Class Corridor, LLC's option, (A) the per-mile amount T-Cubed received in such Disposition less the $100 that Class Corridor, LLC paid for the Conduit Purchase Option, or (B) the average of such amount and $30,000 less the $100 that Class Corridor, LLC paid for the Conduit Purchase Option; provided, that if Class Corridor, LLC elects to pay the exercise price set forth in subparagraph (B), T-Cubed shall be relieved of the obligation to pay percentage-of-revenue payments for the Conduit purchased by Class Corridor, LLC. If as of the date of the exercise T-Cubed has received in its most recent Disposition of a Conduit to a third

party an amount less than $30,000 per mile, the exercise price shall be such lesser amount; provided, that if Class Corridor, LLC elects to pay the exercise price set forth in the preceding clause, T-Cubed's percentage-of-revenue payments for the Conduit purchased by Class Corridor, LLC shall be calculated based on the exercise price. From and after six (6) months preceding the Option Expiration Date or following receipt of the Acceleration Notice, the exercise price for the Conduit Purchase Option shall be reduced by $2,000 per fiber-mile for each dark Optical Fiber fewer than sixteen (16) which T-Cubed has offered and Class Corridor, LLC has elected not to take as of such date under Section IV. F.

H. <u>Non-Cash Compensation: Settlement Corridor Easements</u>:

1. Effective immediately upon the Order and Judgment becoming Final, Elzinga and each Settlement Class Member by participating in this settlement by not opting out, hereby create, contribute, grant and convey unto Class Corridor, LLC, and its successors and assigns, two (2) parallel, contiguous, recordable, permanent and perpetual (except as provided below) easements, privileges and rights of way over, across and under Elzinga's and each Settlement Class Members' interest in the Real Estate underlying each Settlement Corridor for the purposes of placing, laying, burying, constructing, installing, operating, repairing, maintaining, renewing, rebuilding, replacing and removing the Telecommunications System. The transfer of easements will not affect past or future claims

Settlement Class Members have or might have in the future except as to the Released Parties and Class Corridor, LLC.  The width of the two easements created hereby shall each be one-half of the width of the Settlement Class Members' interest in the Real Estate underlying the applicable Settlement Corridor (measured from the center line thereof).  The easement located on the half of such Real Estate underlying the applicable Settlement Corridor which becomes the Cable Side is herein referred to as the "Cable Side Settlement Corridor Easement" and the easement located on the half of the Real Estate underlying the applicable Settlement Corridor which becomes the Non-Cable Side is herein referred to as the "Non-Cable Side Settlement Corridor Easement."  The Cable Side Settlement Corridor Easement and the Non-Cable Side Settlement Corridor Easement are sometimes hereinafter collectively referred to as the "Settlement Corridor Easements."  The Settlement Corridor Easements evidenced by the Final Order and Judgment shall be recorded by Class Corridor, LLC in the land records of the applicable jurisdiction as soon as possible after the Final Date.

2.      T-Cubed may determine in its sole discretion which side of the Settlement Corridor it will designate as the Cable Side.  In order to make that determination, T-Cubed and its employees, agents, contractors, successors and assigns shall have the full and irrevocable license and right to enter onto and occupy the Real Estate of Settlement Class Members (if any) underlying the Settlement Corridors for purposes of inspecting, surveying,

planning, engineering or doing any other thing necessary or otherwise permitted by the terms of the Settlement Corridor Easements to select the Cable Side and, to the extent the Cable Side Settlement Corridor Easements have not yet then been assigned by Class Corridor, LLC to T-Cubed, to install the Telecommunications System.  For any Settlement Corridor on which the installation of a Telecommunication System has been completed on or before the date of the Formal Fairness Hearing, T-Cubed will deliver to the Claims Administrator, within thirty (30) days after the Final Date, "red-lined" engineering drawings showing the side of the Settlement Corridor in which the Telecommunication System is located.  For any Settlement Corridor on which installation of a Telecommunication System has not been completed on or before the date of the Formal Fairness Hearing, T-Cubed will deliver to the Claims Administrator red-lined engineering drawings showing the side of the Settlement Corridor in which the Telecommunication System is located within thirty (30) days after the later to occur of (a) the Final Date, or (b) the completion of installation of the Telecommunications System in such Settlement Corridor.  For purposes of this Agreement, the installation of a Telecommunications System shall be considered completed when the Conduit System to be installed in a particular Settlement Corridor is buried in the ground for the entire length of such Settlement Corridor, the Conduits have been proofed and tested, and the Conduit System is suitable and ready for the installation of Cable. Upon receipt of the red-lined drawings for a particular Settlement Corridor,

(36)

the Claims Administrator (or such other vendor or party engaged for such purpose) shall identify as promptly as possible the Cable Side of such Settlement Corridor, and thereby identify (i) the Cable Side Settlement Corridor Easements to be assigned by Class Corridor, LLC to T-Cubed pursuant to Section IV.H.3. below, and (ii) the individual Settlement Class Member entitled to the Initial Cash Payments from Class Corridor, LLC pursuant to Section IV.D. above.

3.  Within ten (10) days after Class Corridor, LLC's receipt of T-Cubed's notice of the Cable Side designation, Class Corridor, LLC shall execute and deliver to T-Cubed a recordable assignment of the portion of the Settlement Corridor Easement which is on the Cable Side, allowing a reasonable amount of side-by-side overlap where a Telecommunications System shifts from one side of the Settlement Corridor to the other.  To assist in the orderly and prompt assignment of the Cable Side Settlement Corridor Easements to T-Cubed, Class Corridor, LLC shall designate the Claims Administrator or his designee as an authorized signatory to execute the assignments and attach to such assignments any necessary drawings and lists of parcels of Real Estate on the Cable Side to identify in the land records the Cable Side Settlement Corridor Easement's location on the Settlement Corridor.  The width of the Cable Side Settlement Corridor Easement shall be automatically narrowed to twenty (20) feet in width, measured ten feet on each side of the center line of where the Conduits are located therein (provided, however, that the width of the Cable Side

Settlement Corridor Easement shall be further narrowed as necessary to remain within the one-half of the width of the Settlement Class Members' interest in the Real Estate underlying the Settlement Corridor on the Cable Side if the width of such 20-foot easement would otherwise lie outside of such Settlement Corridor or encroach onto the Non-Cable Side of such Real Estate underlying the Settlement Corridor), together with easements ten (10) feet in width within the one-half of the width of the Settlement Class Members' interest in the Real Estate on the Cable Side for any lateral connection or distribution lines leading from the Conduit System, which lateral connections and lines T-Cubed may install in the Cable Side of the Settlement Corridor from time to time in any location and of any length along the Telecommunications System, and together with the continued right of ingress and egress over the original width of the Cable Side Settlement Corridor Easement for the purposes set forth in Section IV. H. 4. below.  In the event T-Cubed elects from time to time to relocate any portions of the Telecommunications System to any other portion of the original width of the Cable Side Settlement Corridor Easement, the 20-foot width of the Cable Side Settlement Corridor Easement shall automatically relocate to the new location of such relocated Telecommunications System (along with any necessary easements within the one-half of the width of the Settlement Class Members' interest in the Real Estate on the Cable Side for lateral connections and distribution lines relocated in connection therewith); provided, however, that such relocated 20-foot easement shall

be further narrowed as necessary to remain within the one-half of the width of such Real Estate underlying the Settlement Corridor on the Cable Side if the width of such 20-foot easement would otherwise lie outside of such Settlement Corridor or encroach onto the Non-Cable Side of such Real Estate underlying the Settlement Corridor.

4.     The Settlement Corridor Easements shall burden the portions of the Settlement Class Member's interest in the Real Estate underlying the Cable Side and Non-Cable Side of each Settlement Corridor, benefit the remainder of property rights of parties excluded from the Settlement Class (whether now existing or hereinafter acquired) in the Settlement Corridors, and shall run with title to the land.  The Settlement Corridor Easements shall be perpetual provided the Telecommunications System is installed in a Settlement Corridor within four (4) years after the Final Date.  In the event that the installation of the Telecommunications System is not complete in any portion of a particular Settlement Corridor, or in either side thereof, within four (4) years after the Final Date, both of the Settlement Corridor Easements for the remainder of that particular Settlement Corridor in which installation of the Telecommunications System has not been completed shall terminate as of such date.

5.     The parties agree that T-Cubed shall have the absolute right, without limitation and without the need to obtain the consent of any Settlement Class Member, or Class Corridor, LLC to:  (i) assign, pledge or transfer to

any party all or any part of the Cable Side Settlement Corridor Easement so long as T-Cubed remains obligated to perform, or such assignee, pledgee or transferee agrees to assume and be bound by, T-Cubed's obligations under this Agreement with respect to the Settlement Class Compensation associated with such assigned, pledged or transferred Cable Side Settlement Corridor Easement, or (ii) grant leases, subleases, sub-easements, licenses, sub-licenses or other rights to third parties in connection with Dispositions of Conduits or Optical Fibers installed in the Telecommunications System.

6. T-Cubed shall have the right to inspect, rebuild, remove, improve, relocate and replace the Telecommunications System within the Cable Side Settlement Corridor Easement, and to make such changes, alterations, substitutions, additions to or extensions of the Telecommunications System as T-Cubed, or its successors and assigns, may from time to time deem advisable. For purposes of exercising the foregoing rights, the Cable Side Settlement Corridor Easement shall include the right of ingress and egress to and from the Telecommunications System at all times.

7. Notwithstanding that the Railroad's use of the Real Estate may have been or may in the future be abandoned or terminated, the Settlement Corridor Easements may not be terminated, canceled, relinquished or released without the prior written approval of T-Cubed, or its successors and assigns, which approval may be withheld in its sole, absolute and unreviewable discretion, and which termination, cancellation,

relinquishment or release must be recorded in the land records for the jurisdiction in which the Settlement Corridor is located.  Class Corridor, LLC and all Settlement Class Members on the Cable Side, by participating in this settlement, covenant that they have the right to grant and convey the Cable Side Settlement Corridor Easement with respect to their applicable interests in the Real Estate (if any), that T-Cubed shall have quiet and peaceable possession, use and enjoyment of such portion of the Cable Side Settlement Corridor Easement, and agree that they shall execute such further assurances thereof as may be necessary, required or appropriate for the purpose of evidencing or better evidencing the existence and terms of the Cable Side Settlement Corridor Easement among the land records of each jurisdiction in which the Settlement Corridors are located, including without limitation, executing, acknowledging and delivering individual easement agreements, affidavits, certificates, powers of attorney, documents and instruments.

8.      Provided the Cable Side Settlement Corridor Easement is in effect and has been assigned to T-Cubed, T-Cubed will grant Class Corridor, LLC access and occupancy rights pursuant to the instruments described in Section IV.F.4. hereof without cost or penalty over any portion of the Cable Side of a Settlement Corridor owned by an entity or person excluded from the Settlement Class as to which portion T-Cubed has or obtains access, for the purpose of maintaining the dark Optical Fibers which Class Corridor, LLC

may receive as the In-Kind Payment, and the Conduit which Class Corridor, LLC may purchase, from T-Cubed.

9.     The Settlement Class Members (individually and on behalf of Class Corridor, LLC) and T-Cubed acknowledge and agree that the effectiveness of this Agreement shall be expressly conditioned upon the Final Order and Judgment:  (i) containing the language of Section IV. H. hereof in its entirety, (ii) confirming that the Claims Administrator is the duly authorized agent and attorney in fact on behalf of the Settlement Class Members and as such is fully authorized and empowered to effectuate this Settlement Agreement (once the Order and Judgment is Final) and thereby encumber the interest of the Settlement Class Members in the Real Estate with the terms of the Settlement Corridor Easements, (iii) being recorded, filed or registered among the land records (rather than the judgment books or records) of each applicable jurisdiction in which the Settlement Corridors are located, and (iv) being indexed against each Settlement Class Members' name or against such Settlement Class Members' interest in the Real Estate, so as to give constructive and record notice to all subsequent parties acquiring an interest in such Settlement Class Members' interest in the Real Estate of the existence and terms of the Settlement Corridor Easements.  If for any reason (whether for noncompliance with technical recording requirements, failure to properly domesticate or otherwise) the Final Order and Judgment cannot be recorded or filed in the land records as

provided above, then the Claims Administrator shall take such action as is necessary or required in order to have the existence and terms of the Settlement Corridor Easements recorded, registered or filed in such land records, including without limitation, executing, acknowledging and delivering (or having the individual Settlement Class Members, if required by applicable laws, rules and regulations, execute, acknowledge and deliver) in recordable form individual easement agreements or memoranda thereof on behalf of the Settlement Class Members located in the jurisdiction in which the Final Order and Judgment could not be recorded, containing the language of this Section IV. H. (and if necessary for proper recording and binding effect, seeking additional orders from the Court confirming that the Claims Administrator is the authorized agent and attorney in fact for such Settlement Class Members and duly authorized to execute such easement agreements).

I.    Distributions of Initial Cash Payments, Further Cash Payments, DOF Cash Payment and Non-Cash Payments.  Any Settlement Class Compensation being paid to the Claims Administrator under this Agreement for distribution to qualifying Settlement Class Members on behalf of Class Corridor, LLC shall be considered paid to the "Qualified Settlement Fund" (as defined below).  Any such payments actually made by the Claims Administrator directly to the Settlement Class Members shall be treated as if such payments were first made to Class Corridor, LLC and then distributed by Class Corridor, LLC to the Settlement Class Members.

## V. DISTRIBUTION OF SETTLEMENT CLASS COMPENSATION

A.    <u>Appointment of Claims Administrator; Establishment of Settlement Claims Office</u>

1.      As soon as practicable following the Preliminary Approval, the Parties shall jointly nominate and recommend a Claims Administrator to be appointed by the Court.  In the event the Parties cannot agree on a Claims Administrator, the Court shall be asked to select a Claims Administrator after consulting with the Parties.

2.      The Claims Administrator shall establish, oversee, and manage the "Settlement Claims Office," and shall have the authority to appoint as many "Settlement Claims Officers" as are necessary to carry out the duties of the Settlement Claims Office, as described in this Section V.  The Claims Administrator shall carry out such responsibilities in an economical and effective manner, and shall consult regularly with Settlement Class Counsel and T-Cubed's counsel.

3.      The Claims Administrator, subject to consultation with Settlement Class Counsel and T-Cubed's counsel and Court approval, may contract with independent entities to assist in carrying out Settlement Claims Office duties.

4.      The Claims Administrator shall operate under the continuing supervision and jurisdiction of the Court.  The Claims Administrator may be appointed as a Special Master and shall have, insofar as the Court deems appropriate, the immunities and attributes of a judicial officer with respect to his or her

administrative function.

5.      The Settlement Claims Office shall maintain all necessary and appropriate records relating to the payment of claims and administrative expenses. Settlement Class Counsel and T-Cubed's counsel shall be entitled to inspect and audit Settlement Claims Office records, including real property records and claimant submissions, upon reasonable notice.

6.      The Settlement Claims Office will provide Settlement Class Counsel and counsel for T-Cubed with a budget estimating expenses on a monthly and yearly basis. The Settlement Claims Office will provide to Settlement Class Counsel and T-Cubed's counsel weekly, monthly and quarterly reports on opt outs, Settlement Class Members' inquiries, Settlement Claims Office responses, claims made, approved or denied, appeals and administrative expenses, distributions of Settlement Class Compensation and any amounts held in the Administrative and Claims Account and designated as Cy Pres Funds in accordance with Section V.E.8. hereof.  Concerns of Counsel about mistakes, waste or inefficiency in the Settlement Claims Office will be raised first with the Claims Administrator and then may be raised with the Court if the concerns are not resolved to the entire satisfaction of the complainant.

B.      <u>Settlement Notice and Administrative Costs; Establishment of Administrative and Claims Account</u>

1.    T-Cubed shall be solely responsible for all Settlement Administration Costs; provided, however, that Settlement Class Members (but not the Settlement Class Counsel) shall bear any costs, expenses and fees they may incur in analyzing, preparing, submitting, prosecuting and appealing claims hereunder.  Settlement Administration Costs shall be paid out of the Administrative and Claims Account to be established by the Settlement Claims Office (or a Court-appointed escrow agent) in consultation with T-Cubed and on T-Cubed's behalf.  The Administrative and Claims Account shall be established as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and all rules and regulations thereunder.

2.    As soon as practicable following the Preliminary Approval, T-Cubed shall make an initial deposit of $300,000.00 (Three Hundred Thousand Dollars), which sum may be reduced by up to $50,000.00 for Settlement Administration Costs paid directly by T-Cubed outside of the Administrative and Claims Account, into the Administrative and Claims Account, and shall make such additional deposits thereafter as the Claims Administrator deems necessary for Settlement Administration Costs.  In evaluating the need for additional deposits, the Claims Administrator shall consider, among other things, any future amounts that may be available pursuant to Section V.E.8. below.

C.    <u>Settlement Claims Office Functions</u>

1.      The Settlement Claims Office shall be responsible for disseminating information to Class Members concerning settlement procedures, by means of, without limitation, an Internet website and a toll-free "Settlement Information Line." The Claims Administrator shall consult with T-Cubed's counsel as to the most economical and effective way to establish these devices. The nature and manner of disseminating Notice to Class Members shall be subject to Court approval.

2.      The Settlement Claims Office shall assist the Court in the processing and tabulating of opt-out requests.

3.      The Settlement Claims Office shall receive, process, classify, review, and pay Settlement Class Members' claims for Cash Payments in accordance with the terms of this Agreement and the Claims Protocol And Responsibilities Of Claims Administrator.

4.      The Settlement Claims Office shall have the power to implement reasonable procedures designed to detect and prevent payment of fraudulent claims, and otherwise to assure an acceptable level of reliability and quality control in claims processing.

D.    <u>Deposit of Cash Compensation</u>

1.      On the Initial Funding Trigger Date, T-Cubed shall make a deposit of $8,238,000 (eight million, two hundred thirty eight thousand dollars) into

the Administrative and Claims Account (as provided in Section IV.D.1.) and thereafter shall provide the remaining Initial Cash Payment consistent with Section IV.D.2.  No Settlement Class Compensation or other benefits under this Agreement shall be made or accrue to Settlement Class Members (nor shall T-Cubed incur any obligation therefor) unless and until the Order and Judgment is Final.

2.      T-Cubed shall deposit into the Administrative and Claims Account the percentage-of-revenue payments required by Section IV. E. on the first business day of each month beginning with the first business day of the first month after the Initial Funding Trigger Date.  The percentage-of-revenue payments will be accompanied by a copy of the relevant sales agreement in respect of each transferred Conduit and a schedule showing gross revenue and other compensation received from Conduit transfers to date.

3.      T-Cubed will provide the Claims Administrator with red-lined engineering drawings showing where the Telecommunications System is installed and the number of Conduits installed so the Settlement Claims Office can identify Cable Side Settlement Class Members in accordance with Section IV.H.2.

4.      If the In-Kind Payment has not been paid in lieu of the DOF Cash Payment pursuant to Section IV.F., T-Cubed shall deposit in the Administrative and Claims Account, seventy-five percent (75%) of the DOF Cash Payment

four (4) years after the Final Date (i.e. the due date of the DOF Notes) and T-Cubed shall at that time pay twenty-five percent (25%) of the DOF Cash Payment to the Settlement Class Counsel.

E.     Procedure for Paying Cash Compensation

1.     Qualifying Settlement Class Members who have established ownership of Real Estate as of the Record Date on the Cable Side of a Settlement Corridor shall be entitled to receive from the Administrative and Claims Account their portion of the Initial Cash Payment at a rate of $6,000 per linear mile based on the number of linear feet of such Settlement Class Member's Real Estate along the Cable Side of the Settlement Corridor. All Cash Payments shall be paid in a lump sum rounded to the nearest dollar.

2.     Initial Cash Payments shall be paid from the Administrative and Claims Account on a linear foot basis, with a qualifying Cable Side Settlement Class Member's compensable footage calculated according to the length of the Telecommunications System installed in the side of the Settlement Corridor that abuts or overlies such Settlement Class Member's Real Estate. Thus, if a Settlement Class Member has one hundred (100) feet of frontage on the Cable Side of a Settlement Corridor, but the Telecommunications System is installed in only fifty (50) feet of such Settlement Corridor, then the Settlement Class Member shall be deemed for purposes of calculating the Initial Cash Payment to have fifty (50) feet of

compensable footage.

3.    Seventy-five percent (75%) of the percentage-of-revenue payments will be paid to qualifying Cable Side Settlement Class Members from the Administrative and Claims Account on a linear foot basis in accordance with Section V. E. 2, and on the basis of gross receipts from T-Cubed's sales, leases, transfers or other Dispositions of Conduits in the Telecommunications System.

4.    Seventy-five percent (75%) of the DOF Cash Payment, if any, will be paid to qualifying Settlement Class Members from the Administrative and Claims Account in accordance with Section V.D.4.

5.    Cash Payments to each Settlement Class Member owning 500 feet or less of linear footage on a Settlement Corridor will be mailed by the Claims Administrator to the name and address of the Settlement Class Member shown on the tax records as of the Record Date.  Settlement Class Members in this category may be required to provide a tax identification number if the Claims Administrator concludes that the information is necessary for tax reporting requirements.

6.    Cash Payments to each Settlement Class Member owning between 501 feet and 999 feet of linear footage on a Settlement Corridor will be mailed by the Claims Administrator to Settlement Class Members who sign and return a claim letter within thirty (30) days of mailing stating that they were

the owner of the Real Estate adjoining or underlying the Settlement Corridor as of the Record Date.

7.      The procedure for requesting a claim for Cash Payment by Settlement Class Members owning 1,000 or more feet of linear footage on a Settlement Corridor is set forth in the Claims Protocol And Responsibilities Of Claims Administrator attached hereto as <u>Exhibit B</u>.

8.      Interest accrued on Cash Payments held by the Claims Administrator prior to distribution shall off-set the costs of administering this Agreement.  Cash Payments not distributed to Settlement Class Members after applicable time periods have elapsed, interest in excess of costs of administering this Agreement, and checks representing Cash Payments which are not cashed by the payees thereof for a period of 6 months after their issuance, shall constitute and be designated as Cy Pres Funds.  The Cy Pres Funds will be disbursed by the Claims Administrator for the following purposes and in the following order of priority:  (i) to pay Settlement Administration Costs and the reasonable costs and expenses (including reasonable attorneys' fees and expenses which have been approved by Settlement Class Counsel, which approval shall not be unreasonably withheld, conditioned or delayed) incurred by T-Cubed in acquiring, defending, settling and/or paying judgments for rights of way, easements, leases or other rights from owners of Real Estate who are excluded from the definition of Settlement Class but whose Real Estate is included in determining the number of Cash Payment

Compensation Miles; (ii) to the extent the Claims Administrator reasonably determines that sufficient Cy Pres Funds are available to pay the costs described in subsection (i) above which are known (regardless of when they become due), and those which are anticipated to come due in the next 90 days, then after retaining sufficient Cy Pres Funds to pay such costs, excess Cy Pres Funds (if any) may be disbursed for the payment of the attorneys' fees and expenses of Class Corridor, LLC's tax and securities counsel, not to exceed $900,000.00 in the aggregate; (iii) if any excess Cy Pres Funds still remain, then an amount not to exceed $1,500,000.00 will be held in a reserve fund to be used for purposes approved by the Court consistent with this Agreement; and (iv) the excess (if any) will be disbursed to Class Corridor, LLC for the benefit of its members.

## VI. **SETTLEMENT CLASS COUNSEL COMPENSATION**

Settlement Class Counsel shall receive its reasonable fees and expenses as awarded by the Court, in the following forms and not exceeding the following amounts. T-Cubed and Class Corridor, LLC shall not object to an award of fees, and expenses in the amounts described below and Settlement Class Counsel agree not to seek an award of fees, and expenses exceeding these amounts.

A. T-Cubed shall pay Settlement Class Counsel's fees and expenses as follows:

1. Settlement Class Counsel will be paid a cash award of fees and expenses equal to $2,000 per linear mile of Conduits for the first three (3) Conduits installed in the Telecommunications System (the "Initial Counsel Payment"). A total of $1.5 million of the Initial

Counsel Payment will be advanced five (5) business days following the entry of the Court's order preliminary approving this First Amended and Restated Settlement Agreement. In the event that T-Cubed withdraws from this Agreement pursuant to Section VII.A. or the Order and Judgment is not issued or it does not become Final, Settlement Class Counsel shall, upon written demand by T-Cubed, promptly return such $1.5 million to T-Cubed. The difference between (i) the $1.5 million paid to Settlement Class Counsel as provided above and (ii) the Initial Counsel Payment for all linear miles of all Settlement Corridors on which construction has commenced by the date of the Formal Fairness Hearing, will be paid five (5) business days after the date on which the Order and Judgment becomes Final. Thereafter, the Initial Counsel Payment not previously paid will be paid for all linear miles of a Settlement Corridor thirty (30) days after construction commences on a Settlement Corridor.

2.      Settlement Class Counsel will be paid 25% of the aggregate percentage-of-revenue payments specified in Section IV.E. above. For Dispositions made prior to the Final Fairness Hearing on which a percentage-of-revenue payment will be made under Section IV.E. above, the Settlement Class Counsel portion of the percentage-of-revenue payment will be paid five (5) business days after the date on which the Order and Judgment becomes Final. All subsequent percentage-of-revenue payments to Settlement Class Counsel will be made thirty (30) days after the Conduit Disposition triggering the right to the payment.

3.      Settlement Class Counsel will be paid 25% of the DOF Cash Payment, if any.

B.      Class Corridor, LLC shall be obligated to pay Settlement Class Counsel, as compensation for legal services rendered in connection with this Settlement, as follows:

1.      Settlement Class Counsel will be paid 25% of net revenues received by

Corridor LLC with respect to the exploitation, leasing or disposition of the In-Kind Payment, if any;

2. Settlement Class Counsel will be paid 25% of the net revenues derived from any Conduit purchased by Corridor LLC pursuant to the exercise of a Conduit Purchase Option;

3. Settlement Class Counsel will be paid an amount equal to 25% of the gross proceeds from the sale, merger or liquidation of Corridor LLC; and

4. Settlement Class Counsel will be paid upon an initial public offering of Corridor LLC (or a successor entity), an amount of stock equal to 25% of the outstanding stock (or other ownership interest) of the entity.

# VII.  RIGHT OF WITHDRAWAL; EFFECT OF WITHDRAWAL

A.  Defendant's Right of Withdrawal

T-Cubed reserves the right to withdraw from this Agreement in its sole and absolute discretion (the "Opt-Out Withdrawal Right") if (i) more than 10% of the recipients of the formal notice sent to potential members of the Settlement Class, or (ii) Settlement Class Members representing more than 10% of the total mileage of the Settlement Corridors, elect to opt out from the Settlement Class pursuant to Federal Rule of Civil Procedure 23(c) (Subsections VII. A. (i) and (ii) are individually an "Opt-Out Condition" and collectively the "Opt-Out Conditions") or (iii) the Court requires changes in any of the terms of this Agreement and any of those changes adversely impact T-Cubed's interests.  T-Cubed shall exercise the Opt-Out Withdrawal Right

within twenty-one (21) calendar days of the date on which T-Cubed is informed by the Settlement Claims Office that an Opt-Out Condition has been met. The Settlement Claims Office shall not pay any claims before T-Cubed has determined whether to exercise the Opt-Out Withdrawal Right.

      B.    <u>Effect of Withdrawal</u>

      In the event T-Cubed exercises the Opt-Out Withdrawal Right, this Agreement, all orders and judgments issued pursuant to this Agreement, and all Settlement Claims Office actions taken to implement this Agreement shall cease and terminate immediately, and shall have no further force and effect as to T-Cubed and the other Released Parties; provided, however, that T-Cubed shall be entitled as soon as reasonably practicable to a return of all funds it has deposited in, or that have been transferred to, the Administrative and Claims Account, which funds have not already been irrevocably disbursed for Settlement Administration Costs.

## VIII.  COURT'S SETTLEMENT APPROVAL ORDER

      A.    This Agreement is subject to and conditional upon the issuance by the Court, following the Formal Fairness Hearing, of a Final Order and Judgment granting approval of the Agreement substantially in compliance with its terms (subject to T-Cubed's Opt-Out Withdrawal Right pursuant to Section VII. A. above), in accordance with Federal Rule of Civil Procedure 23(e), and providing the below-specified relief. The Order and Judgment shall:

          1.    Confirm the certification of the Settlement Class under Fed. R. Civ. P. 23(c) for settlement purposes;

2.      Dismiss the Complaint with prejudice as to the Settlement Class Members as to the claims settled in this Agreement; Non-Cable Side Settlement Class Members shall retain their right to assert claims against T-Cubed only if T-Cubed seeks to develop the Non-Cable Side of a Settlement Corridor in the future unless pursuant to a separate agreement with Class Corridor, LLC;

3.      Determine that T-Cubed has no right to utilize the Settlement Class Members' interest in Real Estate adjoining or underlying the Settlement Corridors for the purposes contemplated herein except as provided in this Agreement and in the Settlement Corridor Easements;

4.      Confirm, effectuate and declare effective the grant of the Settlement Corridor Easements on the terms and conditions set forth herein.

5.      Confirm, declare, adjudge and decree that the Claims Administrator is the agent and attorney in fact for the Settlement Class Members for the purpose of effectuating the terms of this Agreement, including executing such documents and instruments as may be required pursuant to Sections IV. H.

6.      Declare, decree and direct that the Final Order and Judgment shall be recorded, filed and/or registered among the land records in each jurisdiction in which the Settlement Corridors are located in order to give constructive and record notice of the existence and terms of the Settlement Corridor Easements.

7.      Grant T-Cubed and all other Released Parties a full and final release from the Settlement Class Claims;

8.      Determine that this Agreement is fair, reasonable, and adequate, in the best interest of the Settlement Class, and non-collusive; and

9.      Expressly determine under Fed. R. Civ. P. 54(b) that there is no just reason for delay and therefore expressly direct the entry of the Final Order and Judgment.

10.     Reserve the Court's continuing and exclusive jurisdiction over the Parties with respect to the matters encompassed by this Agreement, to administer, supervise, construe, and enforce this Agreement in accordance with its terms for the mutual benefit of the Parties.

## IX.  REPRESENTATIONS AND WARRANTIES

A.      Settlement Class Counsel represent and warrant that they have the authority to enter into this Agreement on behalf of the Plaintiffs, subject to Court approval.

B.      T-Cubed has all requisite corporate power and authority to execute, deliver, and perform this Agreement and to consummate the transactions contemplated hereby.  The execution, delivery, and performance by T-Cubed of this Agreement and the consummation by it of the actions contemplated herein have been duly authorized by all necessary corporate action.  This Agreement has been duly and validly executed and delivered by T-Cubed, and constitutes its legal, valid, and binding obligation.

# X. <u>MISCELLANEOUS PROVISIONS</u>

A.      Neither this Agreement, approved or not approved, nor any exhibit, document, or instrument delivered hereunder, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement (including determinations by the Court or Special Master or Claims Administrator with respect to individual claimant appeals) is intended to be or shall be construed as or deemed to be evidence of an admission or concession by T-Cubed or any other Released Party of any liability or wrongdoing, or of the truth of any allegations in the Complaint, or that it does not currently have the rights to install the Telecommunications System in the Settlement Corridors, or of the appropriateness of class certification in this or any other action or context; and no such document, statement, determination, or other matter shall be admissible in evidence for any such purpose in this or any other proceeding.  Additionally, neither this Agreement, approved or not approved, nor any exhibit, document, or instrument delivered hereunder, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement (including determinations by the Court or Special Master or Claims Administrator with respect to individual claimant appeals) is intended to be nor shall be construed as or deemed to be evidence of an admission or concession as to the nature or scope of the Railroad's existing rights in and to the Real Estate.

B.      This Agreement, including all Exhibits attached hereto, constitutes the entire agreement by and among the Parties with regard to the subject of this Agreement, and shall supersede any previous agreements and understanding between the Parties with respect to the subject matter of this Agreement.  This Agreement may not be modified or amended except in

writing signed by all Parties hereto.

C.     This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same document.

D.     Any notice, request, instruction, or other document to be given by any party to this Agreement to any other party to this Agreement (other than class notification) shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid.

E.     All applications for Court approval or Court orders required under this Agreement shall be made on notice to all signatories hereto.

F.     This Agreement shall be construed in accordance with Indiana law.

## XI.  <u>TERMINATION OF THIS AGREEMENT</u>

This Agreement shall be automatically terminated, without notice, if the Court declines to enter its Order and Judgment or if the Court's orders as described in Section VIII. do not become Final.  In the event of termination, all Parties shall be restored to their respective positions immediately prior to execution of the Agreement.

[REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK.

SIGNATURES APPEAR ON THE FOLLOWING PAGES.]

DATED: _April 13_, 2001

PLAINTIFFS:

_Nels Ackerson, for_
_Timothy Elzinga_

Timothy Elzinga, on behalf of himself and all
others similarly situated, by Settlement Class
Counsel pursuant to due authorization

DEFENDANT:

THOROUGHBRED TECHNOLOGY AND
TELECOMMUNICATIONS, INC.

By: _C. W. Moorman_
Name: _C.W. MOORMAN_
Title: _PRESIDENT_

CLASS CORRIDOR, LLC:

CLASS CORRIDOR, LLC, a Delaware limited
liability company

By: _Nels Ackerson_
Name: _Nels Ackerson_
Title: _Chairman_

## EXHIBIT A
## SETTLEMENT CORRIDORS

| Corridor | Mileage |
|---|---|
| Atlanta, GA - Jacksonville, FL | 362 |
| Atlanta, GA - Chattanooga, TN | 170 |
| Chattanooga, TN - Cincinnati, OH | 190¹ |
| Chattanooga, TN - Memphis, TN | 299² |
| Cincinnati, OH - Bellevue, OH | 263 |
| Detroit, MI - Toledo, OH | 57 |
| Atlanta, GA - Charlotte, NC | 220 |
| Chicago, IL - Harrisburg, PA | 719 |
| Harrisburg, PA - Alexandria, VA | 169 |
| Cleveland, OH - Erie, PA | 73 |
| Total | 2522 |

---

1  A 240-mile right-of-way segment owned by the Trustees of the Cincinnati Southern Railway within the Chattanooga, TN - Cincinnati, OH Settlement Corridor is excluded from such Settlement Corridor, and the mileage shown in the table in this Exhibit A excludes such mileage.  However, the parties agree that in conjunction with any dark fiber transfers to Class Corridor, LLC pursuant to Paragraph IV.F of the Settlement Agreement, T-Cubed shall offer to sell to Class Corridor, LLC an equivalent number of dark fibers in this segment at T-Cubed's incremental cost.

2  A 31-mile right-of-way segment between  Wauhatchie, AL and  Stevenson, TN, which is appurtenant to the Chattanooga, TN - Memphis, TN Settlement Corridor, is excluded from such Settlement Corridor, and the mileage shown in the table excludes such mileage.

**CLAIMS PROTOCOL AND**
**RESPONSIBILITIES OF CLAIMS ADMINISTRATOR**

This Claims Protocol and Responsibilities of Claims Administrator (this "Claims Protocol") is <u>Exhibit B</u> to the Amended and Restated Settlement Agreement (the "Agreement") dated _____, 2001, between the settlement class of landowners (the "Settlement Class") and Thoroughbred Technology and Telecommunications, Inc. ("T-Cubed"). The Agreement, including its defined terms, is incorporated by reference. This Claims Protocol is subject to review and amendment by the Court as part of its review of the fairness, adequacy, and reasonableness of the Agreement under Federal Rule of Civil Procedure 23(e).

The purpose of this Claims Protocol is to ensure that the compensation provided in the Agreement reaches the Settlement Class Members who are entitled to it in a fast, efficient and accurate manner. It is the desire of the Parties to limit the effort required of a Settlement Class Member before he or she can obtain compensation, while ensuring that compensation goes to only qualified Settlement Class Members.

## I. <u>IDENTIFICATION OF QUALIFIED SETTLEMENT CLASS MEMBERS</u>

Settlement Class Members qualified to receive compensation under the Agreement will be those individuals or entities listed on the Settlement Class Member roll (the "Roll"). The Roll will be established and maintained by the Claims Administrator by the following procedures:

A. <u>Notice to Owners of Record on Tax Records on Record Date</u>. The Court will set the Record Date for membership in the Settlement Class. Individuals must own Real Estate underlying or adjoining a Settlement Corridor on the Record Date to qualify for inclusion on the Roll. Initially, tax records will be used to identify those individuals who own Real Estate underlying or adjoining the Settlement Corridors on the Record Date. In instances where a road

or other right-of-way abuts the Settlement Corridor, the owner of the first parcel identified with a tax I.D. number which is not a road or right-of-way on that side of the Settlement Corridor will be included on the Roll. The Claims Administrator will mail the Notice to those individuals shown on the tax records to be the owner on the Record Date. The date of mailing of the individual Notices will be the "Notice Date." Individuals and entities shown by the tax records to be the record owners of Real Estate underlying or adjoining the Settlement Corridors on the Record Date will be preliminarily included on the Roll.

B.    Additional Notice and Registration Process. Notice will also be published in selected newspapers approved by the Court that serve the areas through which the Settlement Corridors run. The Claims Administrator will maintain a web site where the Notice will be posted. The Notice will inform individuals who believe they are part of the Settlement Class, but who have not received individual notice, to call, write or email the Claims Administrator to request a form to register on the Settlement Class Member Roll. The Claims Administrator will provide Roll registration forms to all who request them. The information required on the Roll registration form will include: (i) the Settlement Class Member's name, telephone number, and address; (ii) the Settlement Corridor on which individuals believe they own Real Estate, including the identification of such Real Estate by address, locality, state and real estate tax identification number; (iii) the linear feet of ownership claimed on or adjacent to a Settlement Corridor; (iv) the manner in which title is held (e.g., joint tenancy); and (v) the names of all co-owners. Roll registration forms must be mailed to the Claims Administrator within forty-five (45) days after the Notice Date. Individuals returning a Roll registration form consistent with the requirements of this paragraph will be conditionally added to the Roll.

C.    Categories of Settlement Class Members. The Claims Administrator will list

Settlement Class Members under three categories on the Roll: Category A, Category B, and Category C.  Category A will include Settlement Class Members who own 500 or fewer linear feet on a Settlement Corridor.  Category B will include Settlement Class Members who own 501 to 999 linear feet on a Settlement Corridor.  Category C will include Settlement Class Members who own 1,000 or more linear feet on a Settlement Corridor.  To determine which category a Settlement Class Member belongs to, the Claims Administrator will determine the amount of linear feet each owner on the Roll owns on a Settlement Corridor.  If any Category A Settlement Class Members receive in the aggregate in any given calendar year Cash Payments in excess of $599, then the Claims Administrator shall take reasonable steps to ascertain such Member's social security number or other information required to comply with any IRS reporting requirements with respect thereto.

     D.    <u>Adjustments to the Roll</u>.

        1.    <u>Removal of Owners who Opt Out of the Settlement Class</u>.  The Notice to Settlement Class Members will inform them of the Opt Out Date set by the Court.  The Opt Out Date shall be at least sixty (60) days from the date of mailing of the Court's Notice, and, in any event, shall occur before the date of the Formal Fairness Hearing.  Potential Settlement Class Members who wish to opt out of the Settlement Class must provide written notice to the Claims Administrator of the decision to opt out.  The written notice of decision to opt out must be mailed by the Opt Out Date.  The written notice of the decision to opt out must include:  (i) the Settlement Class Member's name, telephone number, and address; (ii) the Settlement Corridor on which individuals believe they own Real Estate, including the identification

of such Real Estate by address, locality, state and real estate tax
identification number; (iii) the linear feet of ownership claimed on or
adjacent to a Settlement Corridor; (iv) the manner in which title is held
(e.g., joint tenancy); and (v) the names of all co-owners.  If necessary, the
Claims Administrator will contact the potential opt-out Settlement Class
Member to fill in missing information or to request additional
documentation to confirm the information provided.  The Settlement Class
Member must provide complete information for an opt-out notice to be
effective.  Individuals who opt out, and all joint owners of property owned
by them, will be removed from the Roll of Settlement Class Members.

2.      <u>Adjudication of Conflicting Claims of Ownership</u>.  The Claims
Administrator will review the preliminary Roll for conflicting claims of
ownership.  Each Settlement Class Member shall be presumed to own to
the mid-point of the Settlement Corridor for all purposes under the
Agreement and this Claims Protocol unless another Settlement Class
Member makes a conflicting claim.  Notification will be sent to those
potential class members with any conflicting claims requesting that they
provide the Settlement Claims Office with sufficient documentation so that
the Settlement Claims Office can determine which of the potential class
members has a superior claim to the portion of the Settlement Corridor at
issue.  The Settlement Claims Office shall have the conflicting claims
reviewed by two Settlement Claims Officers for validity.  The Settlement
Claims Office will determine which of the claims is superior and shall

notify the claimants, Settlement Class Counsel, and T-Cubed of the decision. The Settlement Claims Office will state the grounds for its determination and the steps necessary to file an appeal. At their election, counsel for T-Cubed and Settlement Class Counsel may file papers in support of or in opposition to any such appeals. The Roll will be adjusted to reflect the results of the adjudication of conflicting claims.

3. <u>Review of Category C Claims</u>. Category C claimants will be provided with a claim form by the Settlement Claims Office. The Category C claim form will require (i) certain personal information (name, social security number, marital status, spouse's name, and any change in marital status since the date of property acquisition); (ii) unless T-Cubed otherwise agrees to allow alternative forms of proof of ownership which T-Cubed deems sufficiently reliable and accurate, a copy of the recorded deed on which membership in the Settlement Class is based, such recorded deed must either have been certified by the recorder's office or show on its face pertinent recording information, including the date and office of recording, the deed book and page, and/or the document number; (iii) the property address; (iv) the date of property acquisition and the name of the person from whom the property was acquired; (v) the names of any co-owners and the manner in which title is held (e.g., joint tenancy); (vi) identification by subject matter and date of any post-acquisition conveyances of any interest in the property; (vii) the names and addresses of any lienholders or any other persons having a lien or security interest in the described property. The Settlement Claims Office

may request such additional information as is required to confirm the Settlement Class Member's entitlement to compensation. Each Category C claim form will be reviewed by two Settlement Claims Officers for validity. If the Settlement Claims Office determines, after a second review, that the claimant qualifies for inclusion on the Roll, the Settlement Claims Officer shall so notify the claimant, Settlement Class Counsel, and T-Cubed's Counsel. If the Settlement Claims Office determines that a claimant is not eligible for inclusion on the Roll, the Settlement Claims Office shall notify the claimant, Settlement Class Counsel, and T-Cubed of its decision. The Settlement Claims Office will state the grounds for its determination and the steps necessary to file an appeal. Either a claimant or T-Cubed shall have the right to appeal under Section IV. from Settlement Claims Office determinations on whether a Category C claimant is qualified for the Roll.

## II. NOTICE TO SETTLEMENT CLASS MEMBERS

Settlement Class Members will receive a benefits notice (the "Benefits Notice") from the Settlement Claims Office informing them of the Settlement Claims Office's determination relevant to their benefits and the documentation the Settlement Class Member must provide to receive the benefits. Those determinations are: (i) the amount of linear feet a Settlement Class Member is determined to own on a Settlement Corridor; (ii) the amount of linear feet a Settlement Class Member owns on the Cable Side of a Settlement Corridor; (iii) the amount of cash compensation a Settlement Class Member is entitled to receive when the compensation becomes due; and (iv) the number of membership interests in Class Corridor, LLC a Settlement Class Member is entitled to receive when such interests are issued. Settlement Class Members may

provide necessary information prior to the issuance of a Benefits Notice. Benefits Notices will be issued after construction on a Settlement Corridor is complete and Cable-Side designations have been made. The information required in the Benefits Notice must be provided within the time period specified in the Benefits Notice or the claim for such benefits will be barred.

## III.  PAYMENT OF CASH COMPENSATION

Settlement Class Compensation provided for in Section IV. of the Agreement will be paid according to the terms of the Agreement and this Claims Protocol. No payments will be paid until after the Claims Administrator has completed the initial review for conflicting claims under Section I. D. 2 above and the Settlement Class Members have been placed in categories under Section I. C. above. Settlement Class Members will receive Class Corridor, LLC membership interests at any time after the Final Date once they have provided the information necessary for such Settlement Class Member's category of claimants.

## IV.  APPEALS

Appeals may be made from decisions by the Settlement Claims Office on (i) inclusion on the Roll; (ii) the amount of linear feet a Settlement Class Member owns on a Settlement Corridor; (iii) the amount of linear feet a Settlement Class Member owns on the Cable Side of a Settlement Corridor; (iv) the calculation of the amount of cash compensation to which a Settlement Class Member is entitled; and (v) the amount of Class Corridor, LLC membership interests to which a Settlement Class Member is entitled. Appeals shall be made first to the Claims Administrator and then to the Court (or, at the Court's direction, a Special Master). Appeals to the Claims Administrator shall be made within 30 (thirty) days after notice by the Settlement Claims Office of the decision that is the subject of the appeal. Appeals to the Court shall be made within 30 (thirty) days after the decision of the Claims Administrator. Determinations by the Court (or the

Court's Special Master) shall be final and non-appealable.