# EXHIBIT C

**Information Statement**

# CORRIDOR ENTERPRISE, INC.

**Distribution of up to Approximately 9,250,000 Shares of Common Stock**

This information statement is being furnished in connection with the distribution by Corridor Enterprise, Inc., (the "Company"), of up to approximately 9,250,000 shares of common stock to members of the settlement class and class counsel in connection with the final resolution of several class action lawsuits filed against AT&T Corp. and AT&T Communications, Inc. (collectively "AT&T"). The lawsuits were filed on behalf of landowners alleging that AT&T's installation, occupation, maintenance and use of fiber optic or other telecommunication cables on property occupied by railroads and utilities was in violation of state law property rights of the landowners.

AT&T and the plaintiffs in the action in which this Information Statement is being issued are in the process of executing state-specific settlement agreements pursuant to a global settlement process. Some state settlements have been preliminarily approved by the Court and are pending final approval following a fairness hearing. Other state settlements are contemplated but may not yet have been filed. The status of each state settlement can be determined by accessing the class action website at http://att.fsiwebs.net/rrcorridors or http://www.right-of-way-law.com. Subject to the Court's approval of each of the settlements, the Company will distribute up to approximately 9,250,000 shares of stock of the Company to the landowners who comprise the settlement classes and to class counsel.

The Company will distribute the shares to each qualifying member of these related settlement classes who does not elect out of the settlement or of this benefit option and who provides certain required information. A qualifying member is one who possesses a fee simple interest in the "Cable-Side" or "Non-Cable Side" of the railroad corridor. Participating class members will receive one share for each 10 linear feet of real estate owned by that member along either side of the railroad corridors. Class members are not required to accept shares in the Company.

There is no trading market for the shares of the Company and we do not expect a market to develop after the distribution.

**In reviewing this information statement, you should carefully consider the matters described under the caption "Risk Factors" beginning on page 5.**

_____

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved these securities or determined if this information statement is truthful or complete. Any representation to the contrary is a criminal offense.**

_____

**We are distributing the shares in reliance on the exemption from registration under Securities Act of 1933 contained in section 3(a)(10) of the Securities Act. We have not filed a registration statement covering the shares with the Securities and Exchange Commission.**

The date of this information statement is June 30, 2003.

# TABLE OF CONTENTS

**Page**

SUMMARY ................................................................................................................................................. **1**

BRIEF HISTORY OF THE LITIGATION ...................................................................................... **1**

BUSINESS ................................................................................................................................................ **2**

MATERIAL FEDERAL INCOME TAX CONSEQUENCES ...................................................... **3**

RISK FACTORS ..................................................................................................................................... **5**

FORWARD-LOOKING STATEMENTS ........................................................................................... **7**

MANAGEMENT ...................................................................................................................................... **7**

CERTAIN TRANSACTIONS .............................................................................................................. **9**

SUMMARY OF MATERIAL TERMS OF THE ARTICLES AND BYLAWS ...................... **9**

LEGAL MATTERS ................................................................................................................................ **10**

## SUMMARY

*You should read the following summary together with the more detailed information about the Company and the shares being distributed in this offering appearing elsewhere in this information statement and the risk factors beginning on page 5. References in this information statement to "we," "us," "our," or the "Company," refer to Corridor Enterprise, Inc.*

### Business

We intend to engage in a business of:

- licensing and granting subeasements for the construction of communications systems in railroad corridors; and

- licensing and granting subeasements for other uses of the corridors that are not incompatible with the rights of the railroads; and

- related business activities.

Communication by means of light waves guided through fiber optic strands offers a number of advantages over conventional means of transmitting information. Fiber optic cables carry significantly more information than metallic conductors and, unlike metallic conductors, are not subject to electromagnetic or radio frequency interference.

We believe that the market for fiber optic cable services on many corridors is currently "overbuilt" and we cannot predict an immediate or a near term demand for additional cable in most corridors. We do, however, believe that the aggregation of the current individual rights of numerous small landowners to grant additional easements along these corridors into a single entity, the Company, may have value in the future that may substantially exceed the value of the disaggregated, individual parcels.

The railroad corridors involved in all of the cases against AT&T are located in approximately 42 jurisdictions and include a total of approximately 7,000 miles of corridor.

Note that, as set forth in paragraph 19 of the notice to class members, those class members who do not wish to participate in the Company may exclude themselves by so indicating on the claim form which accompanies the notice, and that decision will not affect the class member's eligibility for other benefits under the settlement.

### Risk Factors

This offering involves material risks. See "Risk Factors" beginning at page 5.

## BRIEF HISTORY OF THE LITIGATION

On August 21, 1998, a nationwide class action was conditionally certified against AT&T by Superior Court No. 1, Hamilton County, Indiana, Hinshaw et al v. AT&T Corp. et al, cause no. 29D01-9705-CP-308. On September 18, 1998, the Hinshaw case was removed to the United States District Court for the Southern District of Indiana, civil action no. IP 99-0549-C. Thereafter, separate lawsuits were filed on behalf of landowners in various states against AT&T where AT&T had installed cables. Those several state actions were subsequently transferred, by order of the Judicial Panel on Multi-District Litigation, and consolidated before the United States District Court for the Southern District of Indiana.

After extensive discovery and negotiations, class counsel and AT&T's counsel have agreed in principle to a global settlement process and further have agreed that the claims of the class members in each state can be separately resolved on a state-by-state basis, processing the individual state settlements in groups of approximately four to six states. It is contemplated that each state settlement will be governed by its own settlement agreement. This Information

Statement is being issued in connection with these actions. The settlement agreement provides for cash payments to be made by AT&T to the qualifying class members, the release by AT&T of any interest in the corridor beyond AT&T's 16 ½ feet wide easement and the grant of permanent limited easements across the class members' parcels to AT&T, which, inter alia, will allow AT&T to continue its telecommunications operations as provided in section VI A 1 of the settlement agreement. The cash compensation is set forth in the settlement agreement and is summarized in the notice to class members approved by the Court. The settlement agreement also provides for the creation of the Company and the transfer of the participating class members' easement rights (outside of the easement boundaries created for AT&T's benefit) for the purpose of aggregating those rights into more complete corridors and networks of corridors and the subsequent commercialization of them.

Neither AT&T nor any right-of-way provider, e.g. Consolidated Rail Corp. ("Conrail"), is involved in the creation or operation of the Company. The benefit of receiving shares in the Company which is offered to qualifying class members is separate and distinct from other benefits provided by these settlements. See sections V and VI of each state-specific settlement agreement and sections IV, V, and VI of each state-specific notice to class members for a more complete explanation of benefits in this settlement.

## BUSINESS

*We intend to engage in the business described on the following pages. Because of the material risks described under "Risk Factors" beginning on page 5 of this information statement, we cannot assure you that we will ever be able to commence the operations described below.*

### Overview

The railroad corridors vary in widths from place to place, between states, within states and between dates on which the easements giving the railroads the right to lay track were granted. Some corridors are less than 60 feet wide; others are 200 feet wide or more. AT&T will receive an easement for its fiber optic cable along a strip of land no greater than 16 ½ feet wide on the side of the railroad corridor in which AT&T's cable presently exists, which is called the "Cable Side" or "Cable Side Corridor" in the settlement agreement. The opposite side of the railroad corridor is called the "Non-Cable Side" in the settlement agreement.

Excluding the 16 ½ feet wide strip of land that is the subject of the easements to be granted to AT&T as part of the settlement agreement, the Company intends to assemble the right to grant additional easements, currently owned by the Cable-Side and Non-Cable Side landowners in the railroad corridors, and have those easement rights available for further uses. We believe that by aggregating the landowners' easement rights, we may be able to create additional value for every participating landowner by giving the Company the right to control the marketing of such rights in the future. The easement rights of qualifying class members, those who possess a fee simple interest in the corridor property, will be aggregated by order of the Court which will transfer such rights to the Company. These easement rights are defined as the right to use the corridor for telecommunications or non-railroad purposes which shall in no way affect, diminish, interfere with, or restrict any interests or rights, if any, that the right-of-way provider or its successor or successors in title have in the corridor which is claimed by the Company. We intend to engage in the following business in all or parts of approximately 42 jurisdictions where claims may be settled with AT&T:

- licensing and granting subeasements for the construction of communication systems in railroad corridors;

- licensing and granting subeasements for other uses of the corridors that are not incompatible with the rights of the railroads; and

- related business activities.

At the present time, the fiber optic cable market in many locations in the United States is characterized as overbuilt. Because of this, we cannot predict an immediate or near term demand for additional fiber optic cable on many of the corridors.

We do foresee a continued growth in scientific discovery and innovation and value in corridors that offer connectivity among distant locations. To the end of realizing that potential value for class members, class counsel have included the formation of the Company in the settlement agreement. For purposes of connecting distant locations, the individual interest of each landowner to grant an easement in one parcel in the railroad corridor is small, but aggregating all of those small interests in the Company could potentially have value. By aggregating all of those interests together in one entity, the Company will be positioned to take advantage of future innovations that require, or may benefit from, connectivity over a small or large part of the corridors that the Company will own. Such aggregation of the right to grant additional easements in the corridors shall in no way affect, diminish, interfere with, or restrict any interests or rights, if any, that the railroad or its successors or successors-in-title have in the corridors, including, but not limited to, its interests or rights in that portion of the corridor which may be claimed by the Company.

**The Railroad Corridors**

The corridors that may be included in the Company are expected to comprise approximately 7,000 miles of right-of-way which may be located in the following 41 states and the District of Columbia: Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming.

**Employees**

We have no employees at present.

**Properties**

We have no property at present.

**Legal Proceedings**

We are not involved in any legal proceedings, although class members are involved in litigation with AT&T.

## MATERIAL FEDERAL INCOME TAX CONSEQUENCES

The following summary describes some significant U.S. federal income tax consequences of your owning shares of common stock of the Company to be distributed to members of the settlement class. The summary is not a comprehensive discussion of all the tax consequences that may be relevant to you. For example, the summary is not addressed to nonresident alien individuals, or foreign corporations or to U.S. persons that are subject to special treatment under U.S. federal income tax laws, such as banks, tax-exempt organizations, insurance companies, and dealers in securities and foreign currencies. The summary also does not address tax consequences that are assumed to be generally known by investors. Additionally, this summary assumes that you have provided your social security number or taxpayer identification number and also provided the property ownership information required in the settlement agreement.

The summary is based on (i) the Internal Revenue Code of 1986, as amended (the "IRC"), the U.S. Treasury regulations promulgated under the IRC, rulings of the Internal Revenue Service (the "IRS") and court decisions, all as in effect on the date of this Information Statement and (ii) the assumption that the Company will be organized and operated in accordance with the Company's Articles of Incorporation, its Bylaws, the settlement agreement and all applicable state laws. These authorities may be repealed, revoked, reversed or modified so as to result in federal income tax consequences different from those discussed below. This discussion will not be updated to reflect any such changes.

This discussion does not address any consequences arising under the laws of any state, local or foreign jurisdiction.

**Taxation of the Company and the Company's Shareholders**

The Company will be subject to federal income taxation as a corporation and will file an annual U.S. federal corporate income tax return. Shareholders of the Company will not be taxed on income of the Company unless such income is distributed in the form of dividends. For taxable years beginning after December 31, 2002 and before January 1, 2009, dividend income of individuals will be taxed at the same rates that apply for net capital gain, currently 5% and 15%. For other taxpayers and for other taxable years for individuals, dividends will be taxed at the rates applicable to ordinary income generally. Losses incurred by the Company will not be available to the shareholders of the Company for use on their separate income tax returns.

**Transfer of Easement Rights to the Company and Distribution of Shares Intended to Qualify as Tax Exempt Under Section 351 of the IRC**

The transfer by class members to the Company of the rights to grant additional easements in the corridors and the receipt by class members of shares of common stock of the Company pursuant to the settlement agreement is intended to qualify as a tax-free exchange under section 351 of the IRC. Under section 351 of the IRC, no gain or loss is recognized for federal income tax purposes if property is transferred to a corporation by one or more persons solely in exchange for stock in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c) of the IRC) of the corporation.

The Company intends to seek a ruling from the IRS that the transfer to the Company of class members' rights to grant easements in the corridors and the receipt by class members of shares of common stock of the Company pursuant to the settlement agreements in approximately 42 jurisdictions will qualify as a tax-free exchange under section 351 of the IRC. There can be no assurance that the IRS will rule as requested by the Company. The IRS might refuse to issue a favorable ruling or may rule adversely to the Company's request. In that case, the transfer to the Company of class members' rights to grant easements in the corridors and the receipt by class members of shares of common stock of the Company as now contemplated might be treated as taxable exchanges with respect to class members transferring their rights to the Company after those class members that the IRS views as the initial group of class members making transfers to the Company. A class member treated as having made a taxable exchange would recognize gain or loss based on the difference, if any, between the class member's adjusted basis in the rights transferred and the fair market value of the shares of common stock of the Company received.

Procedurally, if necessary or desirable to achieve the favorable tax result described above, class counsel may cause the formation of six or seven separate corridor enterprise entities, each organized as a separate corporation, one for each of the six or seven groups of cases finalizing their respective settlements. Each of these separate entities would receive transfers of easements from class members in their respective groups. This modified structure would be intended to result in tax-free treatment under section 351 of the IRC for all of the class members, but would result in six or seven different Corridor Enterprise businesses, each with the right to grant easements in a few states, probably four to six. Whether those separate corporations could ever be aggregated to put all of the corridor rights in approximately 42 jurisdictions into one entity, as the Company proposes to do, is uncertain.

If the desired ruling can be obtained from the IRS, however, it is intended that the Company will be a single entity for the class members' corridor enterprise in approximately 42 jurisdictions. In the event a favorable ruling is obtained, a class member transferring to the Company the right to grant easements in the corridors would receive shares of common stock of the Company with a basis equal to the class member's adjusted basis in the easement rights.

THE TAX CONSEQUENCES OF OWNING SHARES OF COMMON STOCK OF THE COMPANY AND RECEIVING COMPENSATION FROM THE SETTLEMENT WILL DEPEND ON THE FACTS OF YOUR PARTICULAR SITUATION. BEFORE DECIDING WHETHER TO OPT OUT OF THE SETTLEMENT (OR TO ELECT NOT TO PARTICIPATE IN THE COMPANY), YOU SHOULD CONSULT WITH YOUR OWN TAX ADVISER TO UNDERSTAND FULLY THE FOREIGN, FEDERAL, STATE AND LOCAL TAX CONSEQUENCES AS WELL AS THE EFFECT OF ANY PROPOSED CHANGES IN THE TAX LAWS APPLICABLE TO OWNING SHARES OF STOCK OF THE COMPANY AND RECEIVING COMPENSATION FROM THE SETTLEMENT. CLASS COUNSEL, COUNSEL FOR THE COMPANY AND THE REPRESENTATIVES OF THE CLAIMS ADMINISTRATOR CANNOT ADVISE YOU ABOUT THE TAX CONSEQUENCES OF RECEIVING SETTLEMENT BENEFITS IN YOUR PARTICULAR CIRCUMSTANCES.

# RISK FACTORS

*You should carefully consider the risks described below in evaluating your right to receive the Company's shares. The risks and uncertainties described below are not the only risks we face. These risks are the ones we consider to be significant to your decision whether to accept the shares under the settlement agreement. There may be risks that you, in particular, view differently than we do, and there are other risks and uncertainties that are not presently known to us or that we currently consider immaterial, but that may in fact impair our business operations. If any of the following risks actually occur, our business, results of operations and financial condition would likely suffer, and the shares could lose all or part of their value.*

**The Company is not engaged in business and may never commence operations.**

At the present time, the Company is not engaged in business and there may never develop a demand for the use of the corridors that the Company proposes to assemble in the course of settling the various lawsuits against AT&T. Advances in science and new innovations, such as wireless technology, or other developments in the telecommunication industry, may result in limited or no demand for additional use of the corridors that the Company proposes to assemble.

**A significant number of class members, or class members in key locations, may be excluded from or opt out of the settlement, leaving the Company's corridors marked with gaps and hence less valuable.**

Assuming that a demand develops for the Company's corridors of real estate, if a large number of class members, or even a few class members in key locations, are excluded from or opt out of the settlement (or elect not to participate in the Company), then the Company's corridors will be less complete. Some adjoining landowners are not members of the settlement class and hence will not convey to the Company any easement rights in the railroad corridors. Examples of landowners who are not members of the settlement class are (1) railroads, (2) those who acquired their fee simple interest from a railroad subject to AT&T's preexisting rights in the land, (3) those who, prior to August 21, 1998, granted AT&T the right to operate and maintain a telecommunication cable system across the property (and the successors in interest to those landowners), (4) those whose property adjoins or underlies a railroad corridor originally derived from a federal land grant , (5) federal government entities, and (6) in certain state settlements, state government entities. In addition, if a class member opts out of the settlement, that person (and all other co-owners of the property) will not receive the cash benefits, if any, will not give written easements to AT&T and will not transfer to the Company their right to grant easements in the corridors of land which they own. Some Cable Side landowners may elect to accept the cash compensation but opt out of transferring to the Company their right to grant easements in the corridor. Finally, some Non-Cable Side landowners may elect to not participate in the Company and not transfer to the Company their right to grant easements in the corridor.

If there are a sufficient number of landowners who are either excluded from or opt out of the class (or elect not to participate in the Company), that will leave gaps in the corridors of land that the Company proposes to assemble. If there are too many of those gaps, or only a few but at key locations, then the value of the Company's real estate corridors may never materialize and the shares may never have any value.

**The Company may not receive the favorable ruling from the IRS, resulting in several smaller companies whose aggregate value may be less than the value of the Company.**

We intend to use a single corporate entity to aggregate the corridors in the approximately 42 jurisdictions. It is currently believed that the process of documenting the settlements, identifying each and every landowner on both sides of each railroad corridor—and the linear feet of frontage along the corridor owned by each—giving notice and carrying out the settlements in the approximately 42 jurisdictions will take approximately three years. Because of this three year or longer period between the first and last shares to be issued by us, we will require a ruling from the IRS that the process will result in a tax free exchange under IRC section 351 by all landowners. If the IRS will not issue the ruling as we request, then class counsel may choose to create a separate corporation for each of several groups of state settlement cases so that corridors in approximately four to six states will be contained in each of several different corridor enterprises. If this course is followed, it will result in six or seven similar corporations, each covering several different states. The value of all of these six or seven smaller corporations is likely to be less than the value of the

Company, if it were to aggregate the rights of qualifying class members from all of the approximately 42 jurisdictions into one entity.

**The Company may not be able to raise sufficient equity or debt capital to take advantage of opportunities.**

The Company has not yet raised any equity or debt capital or acquired any financing, or commitments for equity or debt capital or financing. The Company anticipates that possible sources of equity and debt capital include investments from individuals, private equity funds and venture capitalists. The Company does not have a current need for such capital, since it is not engaged in business and has no debt. If, however, an opportunity arises that the Company believes should be pursued, but that opportunity requires the Company to spend funds, it may not be able to raise the funds in order to take advantage of that opportunity.

We cannot assure you that the Company will be able to raise any equity or debt capital or acquire any credit, whether on commercially reasonable terms or otherwise. If the Company is unable to acquire the necessary amounts of equity or debt capital, or is unable to acquire the same on favorable terms, the Company may be unable to pursue opportunities. The failure of the Company to raise needed equity and/or debt capital or to acquire necessary credit could have an adverse effect on the value of the shares.

**The Company's directors have no experience in operating the Company's intended business and the Company may be unable to hire experienced and competent personnel to operate its intended business.**

The Company's current directors are the settlement class counsel and they do not have any experience in operating or managing a business like the Company. Accordingly, before beginning operations, the Company will be required to seek out and hire competent personnel to manage and operate the Company's business. We cannot be assured that the Company will be able to find, hire or afford the services of competent individuals with experience in the Company's intended business. The Company may, therefore, be unable to attract qualified personnel, or, if able to attract qualified personnel, be unable to afford the competitive compensation packages necessary to hire and retain such personnel. Without qualified, experienced individuals, the Company may be unable to operate its business profitably. If the Company is unable to operate its business profitably, the value of the shares would be adversely affected.

**The Company's intended business is highly competitive, which will make it difficult to achieve profitability.**

Fiber optic systems have been already constructed on many corridors connecting many destinations. These networks may enable their owners to lease access to their networks to others seeking high bandwidth capacity. Accordingly, there may be no immediate or near term demand to use many of the corridors of real estate that the Company is attempting to assemble.

**New technologies could reduce the demand for the Company's corridors.**

The telecommunications industry generally is subject to rapid and significant changes in technology that may adversely affect the continued use of fiber optic cable and the Company's corridors. We cannot assure you that the introduction of new products or the emergence of new technologies—such as wireless technology—will not enable competitors to install or use competing systems without the need for the Company's corridors.

**Our shares have no public market.**

Before the distribution, there was no public market for our shares. We do not expect an active public market for our shares to develop or be sustained after the distribution. Our shareholders may not be able to realize any value for their shares for an indefinite period of time.

# FORWARD-LOOKING STATEMENTS

This information statement contains forward-looking statements that involve risks and uncertainties, including those discussed in "Risk Factors" and other sections of this information statement. These statements often contain statements like believe, expect, anticipate, intend, contemplate, seek, plan, estimate or similar expressions. Forward-looking statements do not guarantee future performance. Because we cannot predict all of the risks and uncertainties that may affect us, or control the ones we do predict, these risks and uncertainties can cause our results to differ materially from the results we express in our forward-looking statements. Recognize these statements for what they are and do not rely on them as facts. We are not obligated to update forward-looking statements.

# MANAGEMENT

## Directors

Our directors and their ages as of June 30, 2003, are as follows:

| Name | Age | Position |
|------|-----|----------|
| Nels Ackerson | 59 | Chairman of the Board and Director |
| Roger C. Johnson | 51 | Director |
| Kathleen Clubb Kauffman | 49 | Director |
| John B. Massopust | 51 | Director |
| Henry J. Price | 66 | Director |

### Nels Ackerson

Mr. Ackerson is a shareholder and director of Sommer Barnard Ackerson, PC an Indianapolis, Indiana law firm, residing in that firm's Washington, D.C. office. Prior to August 2002, he was Chairman and CEO of The Ackerson Group, Chartered a Washington, D.C. law firm. He represents thousands of landowners across the United States. Before founding that firm in 1991, he was a partner in an international law firm and managing partner of one of its international offices. In addition to his firm's representation of landowners, Mr. Ackerson has represented Fortune 500 companies, international organizations, individuals and local, state, and national governments in litigation and investment matters in some 30 countries. He is a member of the International Society of Barristers and other organizations of attorneys.

### Roger C. Johnson

Mr. Johnson helped to found the law firm of Koonz, McKenney, Johnson, DePaolis and Lightfoot in 1979. He is a trial attorney and is Board Certified in civil trials by the National Board of Trial Advocacy. He served as his firm's Managing Partner from 1986-1996. His practice includes representation of thousands of landowners across the United States. He has served since 1987 on the Board of Directors of United Bank of Virginia. He is also presently on the Board of Directors of the Foundation of the Baltimore-Washington Conference of the United Methodist Church.

### Kathleen Clubb Kauffman

Ms. Kauffman has been a practicing lawyer since 1979. She is a member of the state and federal bars in the District of Columbia, Illinois and California. From 1993 to 2000 she was chief executive officer of Starr Litigation Services, the leading trial consulting company in the United States. She is currently a shareholder and director of Sommer Barnard Ackerson, P.C., an Indianapolis, Indiana law firm, residing in that firm's Washington, D.C. office. Prior to August 2002, she was a member of the law firm The Ackerson Group. Her practice includes representation of thousands of landowners across the United States. She has advised numerous Fortune 500 companies on litigation and business issues.

*John B. Massopust*

Mr. Massopust has been a partner in the law firm of Zelle, Hofmann, Voelbel, Mason & Gette or its predecessor firms since 1984. He was national managing partner of the firm's Boston, Dallas, Los Angeles, Minneapolis, and San Francisco offices from 1995 through 1998. His practice includes representation of thousands of landowners across the United States. He was also founder, CEO, and Chairman of the Board of Access Management Corporation (an information management technology company) from 1988 through 1994.

*Henry J. Price*

Mr. Price has practiced law in the State of Indiana since 1963. His practice includes representation of thousands of landowners across the United States. He has served on the Board of Directors of numerous entities including The Indiana Trial Lawyers Association, The International Society of Barristers, and The Indiana Civil Liberties Union, as well as other not-for-profit organizations. His practice since 1963 has concentrated on complex business litigation.

**Management**

The Company's board of directors will manage the Company. When the board of directors deems it appropriate, the board will engage professional management personnel to manage the Company, subject to the direction of the board.

**Additional Board Members**

The current board of directors will appoint additional members to our board of directors when the resources of the Company permit. We expect that the additional persons appointed will include persons with experience in the industry, persons with financial expertise and persons with expertise in managing businesses.

**Board of Directors**

Our bylaws authorize between 5 and 21 directors, the exact number to be fixed by the board of directors. The size of the board of directors is currently set at 5. Beginning with the first annual meeting of the shareholders, the shareholders of the Company will elect all of the members of the board of directors. Directors elected by the shareholders of the Company will serve three-year terms, with one-third of the directors elected each year.

**Indemnification of Officers and Directors**

Our bylaws contain certain indemnification provisions providing that directors, officers and certain employees and agents will be indemnified against expenses reasonably incurred by them in a claim or proceeding brought against them or threatened because of their capacity as such. We will not indemnify a director, officer, employee or agent if a court or the board of directors finds that he or she breached his or her duties through willful misconduct.

Once the Company begins conducting business and has revenue, we expect to carry an insurance policy for the protection of our officers and directors against any liability asserted against them in their official capacity.

**Executive Compensation and Employee Benefit Plans**

Before we commence doing business, we will hire employees. At that time, we are likely to adopt compensation policies designed to attract and retain highly qualified and motivated personnel. Our policies will provide for competitive rates of compensation and benefits based on performance. As part of our compensation policy, we expect to adopt long and short-term incentive plans, including equity option plans, bonus plans, and other equity-based plans.

# CERTAIN TRANSACTIONS

**Settlement Class Counsel Compensation**

The compensation of class counsel is set forth in the notice and will not be repeated in full here. There is one item concerning the compensation of class counsel that directly affects the Company and the owners of its shares that are mentioned here.

In addition to their cash compensation, which must be approved by the Court, class counsel will receive 20% of the shares of common stock of the Company, concurrently with the issuance of shares to class members who receive such shares as part of the settlement agreement.

The shares of common stock of the Company issued to class counsel will have identical rights and privileges to the shares issued to the class members.

The settlement class counsel comprises:

- Nels Ackerson, Sommer Barnard Ackerson, PC, Washington, D.C. and Indianapolis, Indiana

- Roger C. Johnson, Koonz, McKenney, Johnson, DePaolis & Lightfoot, Washington, D.C.

- John B. Massopust, Zelle, Hofmann, Voelbel & Gette, LLP, Minneapolis, Minnesota

- Henry J. Price, Price, Jackson, Waicukauski & Mellowitz, P.C., Indianapolis, Indiana

# SUMMARY OF MATERIAL TERMS OF THE ARTICLES AND BYLAWS

*The Company is a corporation organized under the Indiana Business Corporation Law (the "Indiana Statute"). The following information summarizes the material provisions of our articles, bylaws and the Indiana Statute. We will furnish you with a copy of the articles, bylaws and the Indiana Statute on request. You may also view and download a copy of the articles and bylaws at the following web site: www.right-of-way-law.com.*

**Common Shares**

Holders of common shares are entitled to one vote per share. Subject to the rights of holders of any class having a preference over the common shares as to dividends or upon liquidation, holders of common shares are entitled to such dividends as may be declared by the Company's board of directors out of funds lawfully available therefor. We do not anticipate paying dividends until such time as we are able to lease or sell our corridors and to do so profitably. Subject to the rights of holders of any class or series of shares having a preference over the common shares upon liquidation, the holders of common shares are entitled upon liquidation to receive pro rata the assets available for distribution to shareholders. The outstanding common shares offered hereby are, or when issued will be, fully paid and nonassessable.

**Effects of Indiana Law**

In the event any person acquires 10% of the voting power of the Company's common shares (an "Interested Shareholder"), then, for a period of five (5) years after such acquisition, the Indiana Statute

prohibits certain business combinations between the Company and such Interested Shareholder unless prior to the acquisition of such common shares by the Interested Shareholder, the board of directors of the Company approves the acquisition of such common shares or approves of such business combination. After such five-year period, only the following three types of business combinations between the Company and such an Interested Shareholder are permitted: (i) a business combination approved by the board of directors of the Company before acquisition of common shares by the Interested Shareholder, (ii) a business combination approved by holders of a majority of the common shares not owned by the Interested Shareholder, and (iii) a business combination in which the shareholders receive a price for their common shares at least equal to a formula price based on the highest price per common share paid by the Interested Shareholder.

**Classes of Shares**

Each share will be entitled to one vote on all matters presented to the shareholders for a vote. All of the shares to be issued pursuant to the settlement agreement, to class members and to class counsel, will be common shares, all of the same class.

## LEGAL MATTERS

The validity of the issuance of the shares offered hereby will be passed upon for us by Sommer Barnard Ackerson, PC, Indianapolis, Indiana.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| **AT&T FIBER OPTIC CABLE** | ) | **1:99-ml-9313-DFH-TAB** |
| **INSTALLATION LITIGATION** | ) | **MDL Docket No. 1313** |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | **(INDIANA ACTIVE LINES)** |
| | ) | |
| **1:98-cv-1300-DFH-TAB (Hinshaw)** | ) | |
| | ) | |

# INDIANA
## "TELECOMMUNICATION CABLE"/RAILROAD CORRIDOR
## CLASS SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

Page

LIST OF EXHIBITS ........................................................................................................................ iv

I.      DEFINITIONS ....................................................................................................................... 3

II.     PRELIMINARY APPROVAL ................................................................................................... 7

III.    CERTIFICATION OF SETTLEMENT CLASS; OPT-OUT RIGHTS................................................... 8

IV.     MONETARY TERMS .............................................................................................................. 8

        A.      Benefits Payments; Claimant Account ....................................................... 8
        B.      Notice Costs; Administrative Costs; Administrative Account ................. 8
        C.      Class Counsel Fees and Expenses................................................................. 9

V.      CASH BENEFITS ................................................................................................................. 10

        A.      Generally....................................................................................................... 10
        B.      Current Landowner Benefits...................................................................... 10
        C.      Prior Landowner Benefits........................................................................... 11
        D.      Multi-User Discount .................................................................................... 12
        E.      Class Representative Service ...................................................................... 12

VI.     NON-CASH BENEFITS: GRANT OF COMMUNICATIONS SYSTEM EASEMENT........................ 12

        A.      Generally....................................................................................................... 12
        B.      Corridor Enterprise ..................................................................................... 13

VII.    CLAIMS ADMINISTRATION ................................................................................................ 14

        A.      Claims Administrator; Claims Office ....................................................... 14
        B.      Claims Office Functions.............................................................................. 14
        C.      Filing of Claims; Claim Deadline .............................................................. 15
        D.      Claims Acceptance and Certification........................................................ 15
        E.      Settlement Documents ................................................................................ 16

VIII.   CLAIMS PROCESSING ........................................................................................................ 16

        A.      Generally....................................................................................................... 16
        B.      Classifying Railroad Source Documents .................................................. 17

IX.     RIGHT OF WITHDRAWAL; EFFECT OF WITHDRAWAL .......................................................... 18

        A.      AT&T's Right of Withdrawal...................................................................... 18
        B.      Effect of Withdrawal................................................................................... 18

X.      COURT'S SETTLEMENT APPROVAL ORDER; RELATED ORDER ............................................ 18

        A.      Approval Order ............................................................................................ 18
        B.      Related Order ............................................................................................... 21

XI.     EXCLUSIVE REMEDY; DISMISSAL OF ACTION; JURISDICTION OF COURT............................ 21

        A.      Exclusive Remedy ....................................................................................... 21
        B.      Dismissal of Action...................................................................................... 21
        C.      Continuing Jurisdiction of Court .............................................................. 21

| | | |
|---|---|---|
| XII. | REPRESENTATIONS AND WARRANTIES | 22 |
| XIII. | MISCELLANEOUS PROVISIONS | 22 |
| XIV. | TERMINATION OF AGREEMENT | 24 |

DSMDB.2041788.3

# EXHIBITS

EXHIBIT A............................................................ SETTLEMENT CORRIDORS

EXHIBIT B............................................................ GRANT OF COMMUNICATIONS SYSTEM
                                                                    EASEMENT/RELEASE

EXHIBIT C............................................................ CLAIMS PROCESSING PROTOCOL
                                                                    (INCLUDING RULES OF DEED CONSTRUCTION)

EXHIBIT D............................................................ LEGAL NOTICE

EXHIBIT E............................................................ COURT NOTICE

EXHIBIT F............................................................ EXCLUSION FORM

EXHIBIT G ........................................................... CLAIM FORM

EXHIBIT H ........................................................... RELEASE

EXHIBIT I............................................................ REQUEST FORM

| | |
|---|---|
| **IN RE:** | ) |
| **AT&T FIBER OPTIC CABLE** | )    **1:99-ml-9313-DFH-TAB** |
| **INSTALLATION LITIGATION** | )    **MDL Docket No. 1313** |
| | ) |
| | ) |
| **THIS DOCUMENT RELATES TO:** | )    **(INDIANA – ACTIVE LINES)** |
| | ) |
| **1:98-cv-1300-DFH-TAB (Hinshaw)** | ) |
| | ) |

### INDIANA
### "TELECOMMUNICATION CABLE"/RAILROAD CORRIDOR
### CLASS SETTLEMENT AGREEMENT

AT&T Corp. and AT&T Communications, Inc. and their predecessors, successors, subsidiaries, and assigns (collectively, "**AT&T**") and Plaintiffs and the Settlement Class, by and through the undersigned Class Counsel, hereby enter into this Settlement Agreement ("**Agreement**") providing for settlement of the claims described below, pursuant to the terms and conditions set forth below, subject to the approval of the Court.

WHEREAS, Class Counsel have prosecuted and are continuing to prosecute on behalf of property owners in Indiana and other States a number of lawsuits arising out of the installation, occupation, maintenance, and use of fiber optic or other telecommunication cables ("cable" or "telecommunication cable") on property occupied by railroads and utilities;

WHEREAS, on November 6, 1996, Vera J. Hinshaw, on her own behalf and on behalf of other similarly situated property owners in Indiana, filed a class action complaint in Indiana state court asserting trespass and related claims against AT&T;

WHEREAS, on August 21, 1998, a nationwide class action was conditionally certified against AT&T in Superior Court Number 1 in Hamilton County, Indiana, in *Vera J. Hinshaw, et al. v. AT&T Corp., et al.*, Cause No. 29D01-9705-CP-308 ("*Hinshaw*");

WHEREAS, on August 21, 1998, Class Counsel were appointed by the court in *Hinshaw* to represent the described nationwide class of landowners;

WHEREAS, on September 18, 1998, *Hinshaw* was removed to the United States District Court for the Southern District of Indiana;

WHEREAS, on December 7, 1999, the instant case was consolidated for pretrial proceedings with multiple similar actions, as transferred to the United States District Court for

the Southern District of Indiana by order of the Judicial Panel on Multi-District Litigation, as Case No. MDL-1313;

WHEREAS, on January 31, 2001, Plaintiffs filed an unopposed First Amended Nationwide Class Action Complaint, the operative Complaint in this matter, on behalf of Plaintiffs Vera J. Hinshaw, Generation Homes, L.L.C., Billie E. Mitchell, Velma R. Carmichael, Robert A. Petty, Barbara Viestenz, Truman A. Kingsley, Connie Kingsley, Janet L. Amunrud, and Home on the Range;

WHEREAS, AT&T has acknowledged that it has installed telecommunication cable on various rights-of-way, has asserted a right to maintain such cables, and has denied and continues to deny Plaintiff's claims in the Complaint and other similar actions, and has denied any wrongdoing or liability to Plaintiffs of any kind;

WHEREAS, Class Counsel have conducted a thorough examination and investigation of the facts and law relating to the matters set forth in the Complaint;

WHEREAS, Plaintiffs and the Settlement Class, by and through Class Counsel, and AT&T have agreed that the claims of the various members of the certified nationwide class relating to railroad corridors can be resolved on a state-by-state basis, processing the individual state settlements in groups;

WHEREAS, the Parties have engaged in extensive, arm's-length negotiations extending for a period in excess of several years regarding the settlement of Settlement Corridor Claims in Indiana and other States;

WHEREAS, after analyzing the facts and law applicable to Plaintiff's claims, and taking into account the burdens, risks, uncertainties, and expense of litigation, as well as the fair, cost-effective, and assured method of resolving claims of the Settlement Class under this Agreement, the undersigned Class Counsel have concluded that this Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class;

WHEREAS, AT&T has similarly concluded that this Agreement is desirable in order to reduce the time, risk, and expense of multiple-claim litigation, and to resolve finally and completely the Settlement Corridor Claims of the Settlement Class; and

WHEREAS, the Parties agree that all Persons who would otherwise qualify as members of the Settlement Class shall have the right to exclude themselves ("opt out") from the Settlement Class under Rules 23(b)(3) and 23(c)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") as provided in this Agreement;

NOW, THEREFORE, the undersigned Parties stipulate and agree that all Settlement Corridor Claims of the Settlement Class against AT&T and the Released Parties shall be finally settled and resolved on the terms and conditions set forth below, subject to the Court's approval of this Agreement as a fair, reasonable, and adequate settlement under Fed. R. Civ. P. 23(e).

-2-

## I. DEFINITIONS

As used in this Agreement and its Exhibits, the following terms shall have the meanings set forth below. Where the context so indicates or requires, defined terms stated in the singular shall be deemed to include the plural and vice versa.

**"Action"** means *Vera J. Hinshaw, et al. v. AT&T Corp., et al.*, Civil Action No. 1:98-cv-1300-DFH-TAB, which, as of the date by which this Agreement has been signed by all the Parties hereto, is pending before the Court.

**"Administrative Account"** means the account from which costs of administration of the Agreement shall be paid, as more fully described in Paragraph IV.B below.

**"Cable Side"** or **"Cable-Side Corridor"** means the side of the center line of the Settlement Corridor on which AT&T's telecommunication cable has been installed.

**"Cable-Side Property"** refers to Covered Property that adjoins the Cable Side of the Settlement Corridors.

**"Claim Deadline"** means a date, approximately four months from the date the Court Notice is first mailed and to be agreed by the Parties subject to the approval of the Court and communicated to the Class Members, by which all Class Members must file a signed, sworn Claim Form, as more particularly described in Paragraphs VII.C.1-3 below.

**"Claim Form"** means the form attached as Exhibit G hereto to be sent to Cable Side Class Members, and to Non-Cable Side Class Members upon request.

**"Claimant Account"** means the account from which benefits shall be paid to qualifying claimants, as more fully described in Paragraph IV.A below.

**"Claims Administrator"** means Jon D. Noland, or such other Person as may be selected by the Parties and appointed by the Court to administer claims under the Agreement.

**"Claims Office"** means "Claims Office" as that term is defined and described in Section VII below.

**"Claims Officers"** means "Claims Officers" as that term is defined and described in Section VII below.

**"Claims Processing Protocol"** means the document attached as Exhibit C hereto, which may be supplemented by requirements agreed to by the Parties, prior to the hearing on preliminary approval, subject to the approval of the Court and communicated to Class Members.

**"Class Counsel"** means Nels Ackerson, Ackerson Kauffman Fex, P.C., Washington, D.C.; Henry J. Price, Price, Waicukauski, Riley & DeBrota, LLC, Indianapolis, Indiana; Roger C. Johnson, Koonz, McKenney, Johnson, DePaolis & Lightfoot, L.L.P., Washington, D.C.; John B. Massopust, Zelle, Hofmann, Voelbel, Mason & Gette, LLP, Minneapolis, Minnesota; and any other counsel designated by the Court, which shall have continuing jurisdiction for such purpose.

"**Class Members**" means all Persons in the Settlement Class.

"**Compensation Period**" means, as to each Qualifying Parcel along the following Settlement Corridors: the Mishawaka to Chicago and the Toledo to Mishawaka railroad corridors, the period from March 1986 to the Effective Date; the Portage Branch, the Kalamazoo to South Bend, the Indianapolis to Louisville, the Morgantown to Bloomington, and the Mishawaka to Indianapolis railroad corridors, the period from January 1987 to the Effective Date; the Richmond to Muncie, the Muncie Branch and the Elkhart Branch railroad corridors, the period from August 1987 to the Effective Date; the Terre Haute Branch (Consolidated Rail Corporation (Conrail)), the Terre Haute Branch (CSX Transportation, Inc.), the Monroe Branch, the Indianapolis to Bloomington (Consolidated Rail Corporation (Conrail)), and the Indianapolis to Bloomington (CSX Transportation, Inc.) railroad corridors, the period from March 1989 to the Effective Date, and; the Ft. Wayne to Warsaw, and the Evansville Branch railroad corridors, the period from October 1989 to the Effective Date.

"**Complaint**" means the First Amended Nationwide Class Action Complaint in this Action.

"**Corridor Enterprise**" means the enterprise created by Class Counsel in accordance with, and as more particularly described in, Paragraphs VI.B.1-3 below, into which, if and as approved by the Court, may be transferred by court order easements for telecommunication and non-railroad purposes from Class Members with respect to those portions of the Settlement Corridors that are outside of the easement boundaries granted to AT&T in the Grant of Communications System Easement/Release and Final Order and Judgment.

"**Court**" means the United States District Court for the Southern District of Indiana, Indianapolis Division, and the Honorable David F. Hamilton or his successor.

"**Court Notice**" means the notice of the Agreement to be disseminated to putative Class Members which, subject to the approval of the Court, shall be in a form substantially similar to the document attached as Exhibit E hereto.

"**Covered Property**" means the Settlement Corridors in Indiana and the land in Indiana adjoining the Settlement Corridors. A piece of property does not "adjoin" a Settlement Corridor if it is physically separated from the Settlement Corridor (for example, by a river or highway). Nonetheless, for reasons of efficiency in the processing of claims, there shall be a rebuttable presumption that each landowner's property in a given area physically adjoins the Settlement Corridor if it is separated from the Settlement Corridor only by a two lane State street or road.

"**Current Landowner**" means a Class Member who holds a fee interest in Covered Property as of the Effective Date and satisfies the conditions under Paragraph V.B. below.

"**Current Landowner Benefits**" means "Current Landowner Benefits" as that term is defined and described in Paragraph V.B below.

"**Effective Date**" means the date of the Court's Order approving the final form of notice to be sent to Class Members.

-4-

**"Exclusion Form"** means the form attached as Exhibit F hereto.

**"Final"** means that no timely appeals have been taken or that all appeals taken have been exhausted.

**"Formal Fairness Hearing"** means the hearing to be conducted by the Court in connection with the determination of the fairness, reasonableness, and adequacy of this Agreement under Fed. R. Civ. P. 23(e) on a date to be set by the Court.

**"Grant of Communications System Easement/Release"** means the form of grant of permanent telecommunication easement, and related release, set forth as Exhibit B hereto.

**"Non-Cable Side"** means the side of the center line of the Settlement Corridor on which AT&T's telecommunications cable has not been installed.

**"Objection Deadline"** means the date 45 (forty-five) days from the date the Court Notice is first mailed, or such other date before the Formal Fairness Hearing to be agreed by the Parties subject to the approval of the Court and communicated to the Class Members.

**"Opt-Out Deadline"** means the date 45 (forty-five) days from the date the Court Notice is first mailed, or such other date before the Formal Fairness Hearing to be agreed by the Parties subject to the approval of the Court and communicated to the Class Members.

**"Order and Judgment"** means the order to be entered by the Court, approving the Agreement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e), confirming the Settlement Class certification under Fed. R. Civ. P. 23(b)(3) and 23(e), and making such other findings and determinations as the Court deems necessary and appropriate to effectuate the terms of the Agreement.

**"Parties"** means, collectively, Plaintiffs and AT&T.

**"Persons"** means natural or legal persons, entities, and organizations of any kind.

**"Plaintiff" or "Plaintiffs"** means Billie E. Mitchell, Velma R. Carmichael and Robert A. Petty.

**"Preliminary Approval"** means the Court's conditional certification of the Settlement Class and preliminary approval of the Agreement pursuant to Fed. R. Civ. P. 23(b)(3), 23(c)(1), and 23(e), and entry of orders providing for notice of the Agreement to putative Class Members.

**"Prior Landowner Benefits"** means "Prior Landowner Benefits" as that term is defined and described in Paragraph V.C below.

**"Qualifying Parcel"** means a parcel of Covered Property with respect to which one or more claimants qualify for compensation under the Agreement.

-5-

**"Railroad Source Documents"** means deeds or other documents granting property rights with respect to a Settlement Corridor to a railroad before AT&T's telecommunication cable was installed thereon.

**"Recorder's Office"** means a local government office in which deeds, mortgages, liens, and other instruments regarding interests in land are recorded.

**"Release"** means the form of release attached as Exhibit H hereto.

**"Released Parties"** means (1) AT&T and its predecessors, successors, and past and present subsidiaries, assigns, affiliates, officers, directors, agents, attorneys, insurers, and employees; and (2) only with respect to any and all Settlement Corridor Claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, for liability or damages arising out of or relating to AT&T's installation, occupancy, maintenance, or use of telecommunication cable that has been installed on or in a Settlement Corridor, (a) the Right-of-Way Provider, including but not limited to the following railroad companies: Consolidated Rail Corporation (Conrail), Grand Trunk & Western Railroad, CSX Transportation, Inc. and Indiana Railroad Company; (b) any and all of such Right-of-Way Provider's past or present officers, directors, agents, servants, attorneys, employees, predecessors-in-interest, successors, shareholders, subsidiaries, parents, affiliates, and assigns; and (c) any Person to which AT&T heretofore sold, granted, leased, or otherwise transferred, and/or hereafter sells, grants, leases, or otherwise transfers, all or any part of the rights in or use of a telecommunications cable system on a Settlement Corridor, as provided for in Paragraph VI.A.1 below and/or in the Grant of Communications System Easement/Release.

**"Request Form"** means the form attached as Exhibit I hereto to be sent to Non-Cable Side Class Members by which such Class Members may request a Claim Form.

**"Right-of-Way Provider"** means, as to a given Settlement Corridor, the railroad company from which AT&T acquired such rights as the railroad had to convey, to install, occupy, maintain, or use telecommunication cable thereon or therein.

**"Rules of Deed Construction"** means the Rules of Deed Construction set forth in Section V of the Claims Processing Protocol attached as Exhibit C hereto.

**"Segment"** means a portion of a Settlement Corridor encompassing both the Cable Side and Non-Cable Side.

**"Settlement Class"** means all Persons possessing or claiming to possess for some period of time during the applicable Compensation Period a fee simple interest in Covered Property; *provided*, however, that "Settlement Class" does not include: (i) railroads; (ii) Persons or entities (and their successors-in-interest) who acquired, either directly or indirectly, their fee simple interest in Covered Property from a railroad subject to AT&T's preexisting rights in the land; (iii) Persons or entities (and their successors-in-interest) who prior to August 21, 1998, granted AT&T rights to operate and maintain a telecommunication cable system across the Covered Property; (iv) federal governmental entities; (v) Persons all of whose Covered Property adjoins or underlies Settlement Corridor originally derived from federal land grant or state land grant derived from a federal land grant; or (vi) any Person who files a valid and timely Exclusion

Form on or before the Opt-Out Deadline (and any Person co-owning Covered Property with such Person).

**"Settlement Corridors"** means those portions of the Mishawaka to Chicago, Toledo to Mishawaka, the Portage Branch, the Kalamazoo to South Bend, the Indianapolis to Louisville, the Morgantown to Bloomington, the Mishawaka to Indianapolis, the Richmond to Muncie, the Muncie Branch, the Elkhart Branch, the Terre Haute Branch (Consolidated Rail Corporation (Conrail)), the Terre Haute Branch (CSX Transportation, Inc.), the Monroe Branch, the Indianapolis to Bloomington (Consolidated Rail Corporation (Conrail)), the Indianapolis to Bloomington (CSX Transportation, Inc.), the Ft. Wayne to Warsaw and the Evansville Branch railroad corridors in Indiana in which AT&T has installed fiber optic cable, as more particularly described on Exhibit "A" hereto.

**"Settlement Corridor Claim"** means (a) as to claims arising out of conduct occurring prior to the Effective Date, any such claim relating to the installation, occupation, maintenance, or use of telecommunication cable that has been installed on or in a Settlement Corridor, or any other claims addressed in or arising out of the subject matter of this Agreement or the Complaint, including without limitation claims for trespass, slander of title, unjust enrichment, criminal mischief, criminal trespass, and inverse condemnation, any and all such claims, including assigned claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, that are or may be asserted now or in the future by any or all Class Members against AT&T and/or any Released Party; and (b) any future claims that would be based upon AT&T's lawful exercise of easement rights received under the Grant of Communications System Easement/Release and/or Final Order and Judgment.

## II. PRELIMINARY APPROVAL

**A.** Promptly after the date by which this Agreement has been signed by all the Parties hereto, the Parties shall submit the Agreement to the Court for its Preliminary Approval and shall move the Court for one or more orders that by their terms shall:

    1. appoint named Plaintiffs as the representatives of the Settlement Class;

    2. confirm the appointment of Class Counsel;

    3. conditionally certify the Settlement Class under Fed. R. Civ. P. 23(b)(3) and 23(e) and preliminarily approve the Agreement (together with Exhibits) for purposes of issuing notice of the Agreement to putative Class Members;

    4. schedule the Formal Fairness Hearing, Opt-Out Deadline, Objection Deadline, Claim Deadline, and any other related dates and deadlines for inclusion in the Court Notice;

    5. approve the form, contents, and method of dissemination of the Court Notice; and

    6. preliminarily approve the fee structure proposed by Class Counsel, including the mechanism of interim payments.

-7-

**B.** The Parties shall cooperate, assist, and undertake all reasonable actions to accomplish the above on the schedule set by the Court.

## III. CERTIFICATION OF SETTLEMENT CLASS; OPT-OUT RIGHTS

**A.** Subject to the Court's approval, the Settlement Class shall be certified in this action for settlement purposes only, pursuant to Fed. R. Civ. P. 23(b)(3) and 23(e), without prejudice to the Parties' ability to contest, oppose, propose, or support class certification as to non-settled claims in this action or in any other action or for any other purpose.

**B.** All Persons who would otherwise be encompassed by the definition of the Settlement Class shall have the right to exclude themselves ("opt out") from the Settlement Class. If one of the owners of a jointly or commonly owned parcel of Covered Property excludes himself or herself from the Settlement Class, any and all co-owners of such parcel of Covered Property shall also be excluded from the Settlement Class. Persons encompassed by the definition of the Settlement Class who do not exclude themselves by mailing an Exclusion Form as of the Opt-Out Deadline shall remain Class Members.

## IV. MONETARY TERMS

### A. Benefits Payments; Claimant Account

1. Qualifying Class Members shall be paid cash benefits in a single lump sum in accordance with Section V below. These cash benefits shall not be subject to *any* reduction for the costs of notice to Class Members and administration of the Agreement, Class Counsel fees and expenses, or any other costs or expenses.

2. To facilitate payment of net cash benefits to qualifying Class Members, the Claims Office (or a Court-appointed escrow agent) shall establish a separate **"Claimant Account"** to pay claimant benefits. At AT&T's option, the Claimant Account shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and all rules and regulations thereunder. AT&T shall make an initial deposit of $100,000 (one hundred thousand dollars) into the Claimant Account, and thereafter shall provide sufficient ongoing funding of the Claimant Account to assure that qualifying Class Members are paid as soon as practicable (within 30 (thirty) days) after it is determined that they are entitled to the cash benefits. In no event shall AT&T's total obligation for Class Member benefits exceed $2.10 (two dollars and ten cents) per linear foot for Covered Property. If a qualifying Class Member is not paid as a result of AT&T's failure to provide sufficient ongoing funding, and AT&T does not cure such failure within 30 (thirty) days of having received written notice thereof by the Claims Administrator, then the Class Member shall retain all rights against AT&T and AT&T shall receive no benefits as to such Class Member under this Agreement.

3. No benefit payments may be made to any Class Members under this Agreement (nor shall AT&T incur any obligation therefor) unless and until the Order and Judgment is Final.

## B. Notice Costs; Administrative Costs; Administrative Account

1. AT&T shall be responsible for providing the Court Notice to putative Class Members.

2. AT&T shall also be responsible for the reasonable costs of administering the Agreement. In that regard, a separate **"Administrative Account,"** to be established by the Claims Office (or a Court-appointed escrow agent), shall be available to pay Claims Office administrative costs. At AT&T's option, the Administrative Account shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and all rules and regulations thereunder.

3. AT&T shall make an initial deposit of $50,000 (fifty thousand dollars) into the Administrative Account, and shall make such additional deposits thereafter as the Claims Administrator deems necessary for the reasonable expenses of administering the Agreement.

4. Class Members shall have no obligation to pay for any claims processing expenses, costs incurred by the Claims Office in responding to Class Member inquiries, or any other settlement-related administrative expenses.

## C. Class Counsel Fees and Expenses

1. In addition to and not inclusive of claimant benefit payments and costs of notice and administration, AT&T shall pay the reasonable fees and expenses of Class Counsel as awarded by the Court. Class Counsel shall seek from the Court a cash award of fees and expenses of up to 50% percent (fifty percent) of actual available benefits to the Class, not to exceed 20% (twenty percent) of total potential claimant benefits, and AT&T shall not object to an award of fees and expenses in that amount. Total potential claimant benefits are the total cash benefits available to Class Members based on the total associated linear frontage adjoining the Cable Side of the Settlement Corridors. Actual available benefits are the total cash benefits available for payment to Class Members based on the total linear frontage adjoining Settlement Corridors on the Cable Side for which (a) no showing is made that the Right-of-Way Provider owns a fee simple interest or (b) the Deed Review Committee or the Court has determined is eligible for benefits.

2. Class Counsel may seek an interim cash award (or awards) of fees and expenses of up to 90% (ninety percent) of their approved fees and expenses as stated above, which shall be payable by AT&T upon approval by the Court; *provided*, however, that AT&T shall not be required to pay any such fees and expenses unless and until the Order and Judgment is Final. Class Counsel may seek payment of the balance of their fees and expenses at the close of the Settlement. Moreover, in no event shall AT&T's total maximum obligation for Class Counsel fees and expenses over the duration of this Agreement exceed 20% (twenty percent) of total potential claimant benefits, as stated in Paragraph IV.C.1 above.

## V. CASH BENEFITS

### A. Generally

1. There shall be two categories of net cash benefits under this Agreement: Current Landowner Benefits and Prior Landowner Benefits. The total amount of both benefits to be paid in the aggregate to qualifying Class Members shall be at the rate of $2.10 (two dollars and ten cents) per linear foot, subject to downward adjustment as necessary to reflect the multi-user discount set forth in Paragraph V.D below. In circumstances where the telecommunications cable is installed along the center line of the Settlement Corridor, such benefits shall be split equally among the adjacent properties.

2. The Claims Administrator or the Claims Office under his supervision shall be responsible for reviewing and evaluating Class Member claims for Current Landowner Benefits and/or Prior Landowner Benefits in accordance with the provisions of this Agreement.

### B. Current Landowner Benefits

1. **"Current Landowner Benefits"** are the benefits to be paid to Class Members who (a) establish under the Claims Processing Protocol that they are owners of Covered Property as of the Effective Date, which ownership has been duly recorded in a deed that, under the Claims Processing Protocol, establishes either (i) the Class Member's ownership of a portion of a Cable-Side Corridor or (ii) in the absence of timely proof by another Class Member (or by AT&T) that another person or entity owns in fee the portion of the Cable-Side Corridor adjoining the Class Member's property; and (b) have the right, power, and authority to execute for the benefit of AT&T a Grant of Communications System Easement/Release as to such Covered Property.

2. Current Landowner Benefits also may be paid to Class Members who previously owned qualifying Covered Property so long as they expressly reserved in a recorded deed of conveyance (or other document recorded among the land records) the right to receive recoveries from litigation such as that commenced by the Complaint, and currently have the right, power, and authority to execute for the benefit of AT&T a Grant of Communications System Easement/Release over such Covered Property. In the event that both current and previous owners are potentially eligible for Current Landowner Benefits with respect to any parcel of Covered Property, the Claims Administrator (or Claims Office under his supervision) shall determine finally whether the current or previous owner(s) are entitled to such benefits. In no event shall the total amount of such benefits be increased as a result of such dispute.

3. Current Landowner Benefits shall be paid on a linear foot basis, where footage is calculated by the length of AT&T telecommunication cable traversing the Qualifying Parcel. That is, for example, if a Qualifying Parcel has 100 (one hundred) feet of frontage on a Settlement Corridor, but only 50 (fifty) feet of that Settlement Corridor frontage is Cable Side, then for purposes of calculating Current Landowner Benefits the Qualifying Parcel shall be deemed to have 50 (fifty) feet of compensable footage. For purposes of determining the appropriate amount of benefits to be paid to qualifying Class Members under this Agreement, the Claims Office shall calculate linear footage, wherever practicable, by using appropriate

-10-

algorithms and map projections. These calculations shall be presumptively correct and final except where the qualifying Class Member makes a showing that a calculation error greater than 15% (fifteen percent) might have occurred, in which event the Claims Office must consider all information before it and makes its best determination as to the linear footage involved under the circumstances. The Current Landowner may appeal to the Claims Administrator from this decision, as provided in Section VII.D below, and the Claims Administrator's decision shall be final.

4. Current Landowner Benefits shall be paid by Qualifying Parcel. That is, for example, if two Class Members jointly owned throughout the Compensation Period, or for a period of at least 10 (ten) years, a Qualifying Parcel on which 3,000 (three thousand) linear feet of AT&T telecommunication cable have been installed, and if that parcel qualifies for an award of $2.10 (two dollars and ten cents) per linear foot, then the total award for the parcel would be $6,300.00 (six thousand and three hundred dollars less any multi-user discount calculated in accordance with Section V.D. below), to be shared equally by the two joint owners.

5. If a qualifying Current Landowner has owned the Qualifying Parcel for at least 10 (ten) years or throughout the Compensation Period, then the Current Landowner shall receive 100% of the benefit amount for that period (i.e., $2.10 (two dollars and ten cents) per linear foot less any multi-user discount calculated in accordance with Section V.D below), and there shall be no Prior Landowner Benefits as to that parcel. If, on the other hand, the qualifying Current Landowner has not owned the parcel for at least 10 (ten) years or throughout the entire Compensation Period, then the Current Landowner shall be entitled only to 70% (seventy percent) of the full benefit amount for such parcel.

6. Current Landowner Benefits shall not be less than $100 (one hundred dollars) per Qualifying Parcel.

## C. Prior Landowner Benefits

1. **"Prior Landowner Benefits"** are the benefits to be paid to Class Members who (a) establish under the Claims Processing Protocol that during some past portion of the Compensation Period (except where the Current Landowner has owned the qualifying parcel for 10 (ten) years or more) they owned Covered Property which has been duly recorded in a deed that, under the Claims Processing Protocol, establishes the Class Member's past ownership of (i) a portion of a Cable-Side Corridor or (ii) in the absence of timely proof by another Class Member (or by AT&T) of fee ownership of the portion of Cable-Side Corridor, such Cable-Side Property; and (b) have the right, power, and authority to execute for the benefit of AT&T a Release as to such Covered Property.

2. Qualifying Prior Landowners shall receive a maximum per parcel of 30% (thirty percent) of the full benefit amount for such parcel (i.e., $0.69 (sixty-nine cents) per linear foot less any multi-user discount), to be apportioned pro rata among all qualifying Prior Landowners who file a claim as to that parcel.

-11-

3. As with Current Landowner Benefits, Prior Landowner Benefits shall be paid by Qualifying Parcel on a linear foot basis, where footage is calculated by the Claims Office in accordance with the length of AT&T telecommunication cable traversing the Qualifying Parcel.

## D. Multi-User Discount

If a qualifying Claimant's parcel adjoins or underlies that side of a Settlement Corridor Segment on which fiber optic cable has been installed by one or more companies in addition to AT&T, then the Claimant's benefit amount shall be reduced by 30% (thirty percent). Based on data provided by AT&T to the Claims Office (with a courtesy copy to Class Counsel) that a qualifying Claimant's parcel is subject to this reduction, this shall be presumptively correct and final except where the qualifying Claimant provides evidence showing that it may be incorrect, in which event the Claims Office must consider all available information before making its best determination as to whether the qualifying Claimant's parcel is subject to this reduction.

## E. Class Representative Service

In addition to all other benefits to which they may be entitled under this Agreement, the named class representatives shall each be entitled to receive $1,000 (one thousand dollars) from the Claimant Account as additional compensation for their service as class representatives in this case.

## VI. NON-CASH BENEFITS: GRANT OF COMMUNICATIONS SYSTEM EASEMENT

## A. Generally

1. AT&T and Class Members qualifying for Current Landowner Benefits under the Agreement shall execute Grants of Communications System Easement/Release (substantially identical to Exhibit B). Such grants shall give AT&T rights to continuing use for telecommunication purposes of a 16½ (sixteen and one-half)-foot-wide easement through the Cable Side of the Settlement Corridor. This permanent telecommunications easement shall grant AT&T rights to operate, maintain, upgrade and expand its existing cable, as well as to install new conduits and fiber or replacement technology within the 16 ½-foot easement (which shall be within the existing railroad corridor) and shall permit unrestricted use, licensing and assignment of such facilities, which have been or may be constructed, installed, or acquired by AT&T for its primary use. AT&T's rights thereunder shall be non-exclusive as to the Right-of-Way Provider, its successors or successors in title, and their pre-existing, current, or future licensees, provided they do not interfere with AT&T's Telecommunication Cable System. Moreover, this permanent telecommunications easement does not address the real property rights between Right-of-Way Providers and Class Members. Other than rights AT&T receives in Grants of Communications System Easement/Release and rights AT&T receives or retains pursuant to the Final Order and Judgment, AT&T shall relinquish any and all claims or rights it may have with respect to Covered Property owned by Class Members; provided, however, that AT&T shall retain all rights it possesses vis-à-vis Persons who are not Class Members (specifically including railroads). As set forth more particularly in Exhibit B, AT&T's rights hereunder shall be subject to all pre-existing uses and pre-existing rights of use of Grantor's land, except that no utility,

-12-

telecommunications, or similar cable, facilities, or equipment shall be installed within five feet on either side of AT&T's Telecommunication Cable System (except insofar as expressly allowed under Exhibit B).

2. As set forth with more particularity in the Grant of Communications System Easement/Release (Exhibit B hereto), AT&T shall release any claim vis-à-vis Class Members to any existing right in the Settlement Corridor, except as necessary for purposes of the 16½-foot easement, for example where an existing AT&T cable may cross over from one side to another (requiring compensation on both sides of the Corridor Segment), or where AT&T might in the future enter into an agreement with the Corridor Enterprise (see VI. B below).

3. The Parties shall work together to ensure that a copy of the Final Order and Judgment (and, as may be necessary for local recordation purposes, supplemental orders by the Court effectuating the Final Order and Judgment) is filed in the appropriate judgment or land records of each county in which Covered Property is located.

## B. Corridor Enterprise

1. AT&T shall not object to the opportunity offered to Class Members under the Settlement to participate in the Corridor Enterprise into which the Court may cause to be conveyed certain of the Class Members' property rights in the Settlement Corridors for the purpose of aggregating such rights (except where a Class Member affirmatively elects not to participate in this additional benefit option) provided, however, (a) the Court approves the fairness of the Settlement without regard to the value of any possible supplemental benefits from that enterprise; (b) the Final Order and Judgment (and any pertinent preliminary orders) so approving such enterprise shall merely approve the Corridor Enterprise's creation and order the transfer of easement rights (outside of the easement boundaries created for AT&T's benefit in the Grant of Communications System Easement/Release and Final Order and Judgment) from all Class Members (except those specifically declining to participate) who hold a fee interest in a Settlement Corridor Segment; and (c) such Final Order and Judgment (and any pertinent preliminary orders) shall simply aggregate the existing rights, if any, of the adjoining landowners to use the corridor for telecommunications or non-railroad purposes and shall in no way affect, diminish, interfere with, or restrict any interests or rights, if any, that the Right-of-Way Provider or its successors or successors in title have in the corridor, including, but not limited to, its interests or rights in that portion of the corridor which is the subject of the Corridor Enterprise.

2. AT&T and such Corridor Enterprise shall cooperate in good faith in the event either entity subsequently needs to traverse a portion of an easement owned by the other. The Parties recognize that such cooperation shall be subject to rail operation and rail safety and appropriate waiver of liability, and that appropriate prior notice of any such activities shall be given to any affected operating railroad.

3. Such Corridor Enterprise approved by the Court shall have the right of access to Claims Office records, but shall be subject to all restrictions governing the use of such information.

-13-

## VII. CLAIMS ADMINISTRATION

### A. Claims Administrator; Claims Office

1. The Claims Administrator shall establish, oversee, and manage the **"Claims Office,"** and shall have the authority to appoint as many **"Claims Officers"** as are necessary to carry out the duties of the Claims Office, as described in this Section VII and Section VIII below. The Claims Administrator shall carry out such responsibilities in as economical and effective a manner as possible, and shall consult with Class Counsel and AT&T on such matters.

2. AT&T, after consultation with Class Counsel and subject to Court approval, may contract with independent entities to assist in carrying out Claims Office duties.

3. The Claims Administrator shall operate under the continuing supervision and jurisdiction of the Court. The Claims Administrator may be appointed as a Special Master and shall have, insofar as the Court deems appropriate, the immunities and attributes of a judicial officer with respect to his or her administrative functions. The actions of Claims Administrator (and his employees or agents) in collection, collating, processing, evaluating and paying claims, and in executing and conveying easements to AT&T and/or the Corridor Enterprise will constitute judicial actions of the Court and will be protected, to the maximum extent allowable by law, by the doctrine of judicial immunity. AT&T will indemnify and defend the Claims Administrator from, any and all claims, damages, costs, expenses and other liabilities of every kind and nature whatsoever, including, without limitation, any liability for alleged slander of title arising from easements executed and conveyed to AT&T. The Corridor Enterprise will indemnify and defend the Claims Administrator from, any and all claims, damages, costs, expenses and other liabilities of every kind and nature whatsoever, including, without limitation, any liability for alleged slander of title arising from Corridor Enterprise easements executed and conveyed to the Corridor Enterprise.

4. The Claims Office shall maintain all appropriate records relating to land and title records and the payment of claims and administrative expenses. Class Counsel and AT&T shall be entitled to inspect Claims Office records, including real property records and claimant submissions, upon reasonable notice. This right of inspection shall not alter the proprietary nature of any proprietary documents. AT&T also shall be entitled to receive, *inter alia*, the executed releases and executed originals of all conveyance documents, so that AT&T may record the conveyance documents in the appropriate Recorder's Office. Upon the Right-of-Way Provider's request, the Right-of-Way Provider shall be provided access to documents related to the Right-of-Way Provider.

### B. Claims Office Functions

1. The Claims Office shall assist the Claims Administrator in processing and tabulating opt-out requests.

2. The Claims Office shall be responsible for disseminating information to Class Members concerning settlement procedures, by, *inter alia*, using both a "home page" on the Internet and a toll-free Claims Office telephone "hotline." AT&T shall establish an Internet "home page" for the settlement similar to that used to date in the "active line" settlements. The

-14-

Claims Administrator shall consult with AT&T as to the most economical and effective way to establish these devices. The nature and manner of disseminating such information to Class Members shall be subject to Court approval.

3. The Claims Office shall receive, process, classify, review, and pay qualifying Class Member claims in accordance with the terms of this Agreement.

4. The Claims Office shall have the power to implement reasonable procedures designed to detect and prevent payment of fraudulent claims, and otherwise to assure an acceptable level of reliability and quality control in claims processing.

## C. Filing of Claims; Claim Deadline

1. To make a claim under the Agreement, Class Members must mail or fax to the Claims Office on or before the Claim Deadline, a signed, sworn copy of the Claim Form. Class Members who do not so submit a claim by the Claim Deadline shall not be eligible for benefits under this Agreement.

2. Class Members seeking Current Landowner Benefits may receive claims processing priority by making sure that they mail or hand-deliver to the Claims Office on or before the Claim Deadline a copy of the recorded deed(s) through which the Class Member asserts current title to a parcel of Covered Property. In any event, the deed copy *must* be mailed or sent via facsimile to the Claims Office no later than 30 (thirty) days after the Claim Deadline. The deed copy must either (a) have been certified by the appropriate Recorder's Office, or (b) show on its face pertinent recording information, including date and office of recording, deed book and page, and document number.

3. Class Members shall have 30 (thirty) days from the Claim Deadline (or from a Claims Office request) to cure any deficiencies in their claim submissions.

## D. Claims Acceptance and Certification

1. The Claims Administrator, assisted by the Claims Officers, shall promptly process claims as filed and provide periodic reports on the results to the Parties and to the Court. Claims shall be processed in accordance with Section VIII below, and the **"Claims Processing Protocol"** attached as Exhibit C hereto.

2. Each claim shall be reviewed twice to determine whether it is eligible for payment under the governing criteria, first by one Claims Officer for a preliminary determination and then by another (or by the Claims Administrator) for prima facie validity. If and when the Claims Office determines, after a second review, that the claim qualifies for payment in the specified amount, the Claims Office shall so notify the claimant, Class Counsel, and AT&T, and – assuming no appeal by AT&T or claimant – arrange for the claimant to execute Settlement Documents as provided in Paragraph VII.E below. Qualifying Class Members shall be paid the finally approved amounts only after properly executing the Settlement Documents. AT&T may waive the second review requirement.

-15-

3. If the Claims Office determines that a claim is not eligible for payment under the governing criteria, the Claims Office shall notify the claimant and Class Counsel as to the Claims Office's determination and the grounds therefor. Such claimants shall have a maximum of 30 (thirty) days from the date of mailing of the Claims Office notice either to cure deficiencies in their claim submissions or to provide to the Claims Office written notice of an intention to appeal. Class Counsel, as requested, may advise and assist individual claimants with respect to their claim submissions.

4. Any appeals by Class Members or AT&T from Claims Office determinations on the merits of individual claim submissions shall be made to the Claims Administrator, whose decision shall be final. Claimants so appealing shall provide notice thereof to the Claims Office which shall provide notice of the appeal to the Parties to the Agreement. At their election, counsel for AT&T and Class Counsel may file papers in support of or in opposition to any such appeals. No benefits shall be paid to any claimant while an appeal as to that claimant's claim is pending.

## E. Settlement Documents

1. In further implementation of the Court's entry of a Final Order and Judgment, *inter alia*, releasing AT&T, all Class Members qualifying for Current Landowner Benefits shall be required, as a precondition to payment, to execute an appropriate individual Grant of Communications System Easement/Release in a form substantially identical to that set forth as Exhibit B hereto.

2. Only with respect to Current Landowner Benefit claims exceeding $10,000 in value and only if AT&T so specifically requests, certain Class Members who qualify for Current Landowner Benefits may also be required to execute a letter authorizing the Claims Office or AT&T to obtain lienholder consent and approval. (Such consent and approval shall be a prerequisite to any payment to such claimants.)

3. Class Members qualifying for Prior Landowner Benefits shall be required to execute the Release (substantially in the form of Exhibit H hereto) as a precondition to payment.

## VIII. CLAIMS PROCESSING

### A. Generally

1. The Claims Office shall review Class Member submissions and determine Class Member qualification for benefits in accordance with the Claims Processing Protocol attached as Exhibit C hereto.

2. The Claims Office shall first process claims for Current Landowner Benefits in accordance with the provisions of Section III of the Claims Processing Protocol, and then process claims for Prior Landowner Benefits in accordance with Section IV of the Claims Processing Protocol.

3. Generally speaking, the Claims Processing Protocol shall control Deed Review Committee and Claims Office determinations as to (a) whether the railroad should be

-16-

deemed to hold (or to have held when it conveyed rights to AT&T) fee simple title to a particular portion of Settlement Corridor, (b) if the railroad is not deemed to hold (or to have held) fee simple title to such segment, whether one or more Class Members qualify for compensation with respect to such property, and (c) if one or more Class Members do so qualify, under which particular benefit category or categories and for what amounts of compensation they do so qualify. As set forth in Paragraph VIII. B. below, if AT&T has not timely provided the Claims Office with evidence of Right-of-Way Provider fee ownership that conflicts with claimant's evidence of ownership of any portion of the Settlement Corridor, there shall be a presumption that the Right-of-Way Provider did not have fee simple title to the parcel at the time the Right-of-Way Provider conveyed rights to AT&T. With respect to property rights of the Right-of-Way Provider, the evidence would need to show, based upon the Railroad Source Document, as defined below, that the Right-of-Way Provider (or a predecessor in interest) from which AT&T received its rights holds a fee interest in the Cable Side of the Settlement Corridor.

## B.    Classifying Railroad Source Documents

1.    The Rules of Deed Construction set forth in Section V of the Claims Processing Protocol shall govern the Claims Administrator's determinations as to whether documents conveying an interest to the railroad (**"Railroad Source Documents"**) show that the railroad should be deemed to hold (or have held when it conveyed rights to AT&T) fee simple title to a portion of Settlement Corridor. To the maximum extent feasible consistent with the overall objective of accurately determining the fee simple owner of the parcels involved, the Rules of Deed Construction establish a "bright line" test. The test, designed to make claims processing workable and expeditious, shall be for purposes of settlement only. As with all other rules and procedures set forth in this Agreement, the test shall not constitute an admission or support any inference that their operation would be appropriate in any other context. The Rules of Deed Construction are subject to adjustment or supplementation if and as agreed in writing by the Parties, so long as they are finalized before publication of the Court Notice.

2.    A **"Deed Review Committee"** comprised of two Class Counsel representatives and two AT&T representatives shall be appointed to assist the Claims Administrator in making title determinations in certain circumstances. In the event that the Deed Review Committee does not agree upon how a Railroad Source Document should be construed, the Court shall construe the document. All ambiguities in Railroad Source Documents shall be construed in favor of the claimant.

3.    If, as of the date 45 (forty-five) days after the Claim Deadline, the Claims Office (with a courtesy copy to Class Counsel) has not received any conflicting evidence of railroad fee ownership as to a particular portion of Settlement Corridor, there shall be a presumption that the railroad did not hold fee simple title to such parcel at the time the railroad conveyed rights to AT&T. Evidence that the pertinent Right-of-Way Provider holds easement or non-fee property rights shall not be considered. As with *all* rules and presumptions used in this Agreement, this presumption, adopted for ease of administration and to save costs, shall not be useable in or relevant to any other proceeding. In the event the Claims Administrator allows the acceptance of a claim after the Claim Deadline, AT&T shall have 45 (forty-five) days from the date of acceptance of such a claim to provide evidence of railroad fee ownership of the particular portion of the Settlement Corridor adjoining the claimant's property.

4. Although AT&T shall be responsible for securing Railroad Source Documents, the Parties understand that AT&T may need the Court's assistance in securing such documents through subpoena or otherwise. Class Counsel agree to cooperate and support AT&T's efforts in this regard, and this Agreement contemplates the reservation of subpoena powers necessary for implementation of this provision. The time for submission of such evidence of railroad ownership may be extended by the Court if AT&T has demonstrated good cause for a reasonable extension. Without limitation, examples of good cause may include difficulty in obtaining copies of valuation maps or Railroad Source Documents from a Right-of-Way Provider or from the relevant Recorder's Office, inability to identify relevant parcels because of deficiencies in claimant submissions, or Class Counsel's failure fully to cooperate and support AT&T's efforts. The 45 (forty-five) day period referred to in Paragraph VIII.B.3 above may be extended by the Court if the Court determines that additional time is appropriate in light of a Right-of-Way Provider's failure to respond adequately to a lawful subpoena for such documents or Class Counsel's failure fully to cooperate and support AT&T's efforts.

## IX. RIGHT OF WITHDRAWAL; EFFECT OF WITHDRAWAL

### A. AT&T's Right of Withdrawal

If, in AT&T's reasonable discretion in light of past settlements, an excessive number of Persons opt out of the Settlement Class, AT&T shall have the right to withdraw from this Agreement within 30 (thirty) days of the date upon which AT&T is informed by the Claims Office of the number, names, and, if known, addresses of such Persons who have opted out of the Settlement Class. The Claims Office shall not pay any claims before AT&T has made a determination *not* to withdraw from this Agreement and the Agreement and the Final Order and Judgment have become Final.

### B. Effect of Withdrawal

In the event that AT&T withdraws from this Agreement, this Agreement and all orders and judgments issued to implement this Agreement shall have no further force and effect as to AT&T and the Released Parties, except that AT&T shall be entitled to a return of all monies it has deposited that have not already been disbursed for claims administration.

## X. COURT'S SETTLEMENT APPROVAL ORDER; RELATED ORDER

### A. Approval Order

This Agreement is subject to and conditional upon the issuance by the Court, following the Formal Fairness Hearing, of an **"Order and Judgment"** granting final approval of this Agreement in accordance with Fed. R. Civ. P. 23(e), and providing the below-specified relief, which relief shall be subject to the terms and conditions of this Agreement and the Parties' performance of their continuing rights and obligations hereunder. Such Order and Judgment shall:

1. approve this Agreement in all respects;

-18-

2.   provide for the Settlement Class Representatives to have and recover for himself and other members of the Settlement Class the benefits described in this Agreement, subject to the conditions and limitations stated herein;

3.   provide for payment of $1,000 (one thousand dollars) to each of Settlement Class Representatives, in addition to those benefits to which each of Class Representatives may be entitled under the settlement, upon final approval by the Court;

4.   confirm the certification of the Settlement Class under Fed. R. Civ. P. 23(b)(3) and 23(e) for settlement purposes;

5.   release AT&T and all other Released Parties from any and all Settlement Corridor Claims, including assigned claims, whether known or unknown, asserted or unasserted, regardless of legal theory that any and all Class Members have, had, or may have in the future, against AT&T or any other Released Party;

6.   dismiss with prejudice the Settlement Corridor Claims of any and all Class Members (and their successors-in-interest), without cost, now existing or hereafter brought against AT&T or any other Released Party in state or federal court;

7.   bar and permanently enjoin all Class Members (and their successors-in-interest) from instituting, asserting, or prosecuting against AT&T or any other Released Party any and all Settlement Corridor Claims the Class Members have, had, or may have in the future, against AT&T or any other Released Party, except any damages (including attorneys' fees, if any) arising from the enforcement of this Agreement;

8.   direct all Current Landowners, regardless of whether they file a claim, to execute and deliver to AT&T a Grant of Communications System Easement/Release;

9.   direct the Claims Administrator, pursuant to Fed. R. Civ. P. 70, to execute and convey to AT&T (if and when requested by AT&T) easements on behalf of Current Landowners who do not execute and deliver a Grant of Communications System Easement/Release;

10.  direct the Claims Administrator, pursuant to Fed. R. Civ. P. 70, to execute and convey to the Corridor Enterprise easements as provided in the Settlement Agreement (if and when requested by the Corridor Enterprise or Class Counsel) on behalf of Current Landowners;

11.  declare that in order to receive Current Landowner Benefits from AT&T, each qualified Current Landowner shall execute the Grant of Communications System Easement/Release, conforming the above easement to such Current Landowner;

12.  declare that AT&T or Class Counsel may, at their respective options and cost, file/record/index the Final Order and Judgment or notice thereof, in the name of each Class Member who owns any portion of the Settlement Corridor in the judgment or land records of the jurisdiction in which the real estate is located, and that the Court retains jurisdiction to enter supplemental orders and judgments to effectuate the recordation of AT&T's and Corridor Enterprise's property rights;

-19-

13. direct all Class Members who file claims to include in every deed, lease or other conveyance of any interest such Class Member may have in the Covered Property, a reference to the Final Order and Judgment and the Grant of Communications System Easement/Release;

14. declare that AT&T shall not have (and is released from, any and all claims, damages, costs, expenses and other liabilities of every kind and nature whatsoever, including, without limitation) any liability for slander of title, that may be asserted as a result of or in any way in connection with the filing/recordation/indexing of the Notice of Judgment against any person, whether a Class Member or not; provided that promptly following AT&T's determination that any such Final Order and Judgment or notice thereof was filed/recorded/indexed against a person who was not a Class Member who owned Cable-Side Corridor property as of the date of the Final Order and Judgment, AT&T promptly takes all appropriate action to cause any such Final Order and Judgment or notice thereof to be released of record, at AT&T's expense;

15. declare that Corridor Enterprise and Class Counsel shall not have (and are released from, any and all claims, damages, costs, expenses and other liabilities of every kind and nature whatsoever, including, without limitation) any liability for slander of title, that may be asserted as a result of or in any way in connection with the filing/recordation/indexing of the Final Order and Judgment transferring certain property rights of qualifying Class Members to Corridor Enterprise against any person, whether a Class Member or not; provided that promptly following Corridor Enterprise's and Class Counsel's determination that any such Order was filed/recorded/indexed against a person who was not a qualifying Class Member who owned Covered Property as of the date of the Final Order and Judgment, Corridor Enterprise and Class Counsel promptly take all appropriate action to cause any such Order to be released of record, at Corridor Enterprise's and Class Counsel's expense;

16. declare, adjudge, and decree that this Agreement provides the exclusive remedy for any and all Settlement Corridor Claims of Class Members (and any successors in interest), and for any claim arising out of the subject matter of this Agreement and the Complaint by any Class Member against AT&T and any and all other Released Parties, and with respect to AT&T's right to install, occupy, maintain, and use telecommunication cable on its 16 1/2-foot-wide strip of Settlement Corridor, as described in the Grant of Communication System Easement/Release;

17. declare that AT&T relinquish any and all claims or rights it may have as to Class Members and their successors-in-interest with respect to the Covered Property, other than the $16^{1/2}$ foot wide strip of Settlement Corridor as described in the Grant of Communications System Easement/Release, and the Final Order and Judgment;

18. determine that this Agreement is fair, reasonable, adequate, in the best interests of the Settlement Class, and non-collusive;

19. expressly determine under Fed. R. Civ. P. 54(b) that there is no just reason for delay and therefore expressly direct the entry of a final judgment with respect to all Settlement Corridor Claims of Class Members and their respective successors-in-interest;

-20-

20. reserve the Court's exclusive, general and continuing jurisdiction over the Parties to this Agreement, including AT&T and all Class Members, as needed or appropriate in order to administer, supervise, implement, interpret, or enforce the Agreement in accordance with its terms for the mutual benefit of the Parties, including the investment, conservation, protection of settlement funds prior to distribution, and distribution of settlement funds.

In addition, as set forth in Section VI.B above, the Parties understand that Class Counsel may request that the Court include in the Order and Judgment a provision approving the Corridor Enterprise's creation and order the transfer to it of easement rights (outside of the easement boundaries created for AT&T's benefit in the Grant of Communications System Easement/Release), which shall be limited to telecommunications and non-railroad purposes, from all Class Members (except those specifically declining to participate) who hold a fee interest in a Settlement Corridor Segment.

## B. Related Order

The Parties further understand that Class Counsel may request that the Court, at the time of entry of the Order and Judgment, enter an Order approving the Award and Partial Distribution of Reasonable Attorneys Fees and Expenses in accordance with Section IV.C above.

## XI. EXCLUSIVE REMEDY; DISMISSAL OF ACTION; JURISDICTION OF COURT

### A. Exclusive Remedy

This Agreement shall be the exclusive remedy for any and all Settlement Corridor Claims of Class Members and for any claim arising out of the subject matter of this Agreement and the Complaint by any Class Member against AT&T and any and all other Released Parties. No Released Party shall be subject to liability or expense of any kind to any Class Member with respect to any Settlement Corridor Claim, except as provided herein. Upon entry of the Final Order and Judgment by the Court approving this Agreement, each and every Class Member shall be barred from initiating, asserting, or prosecuting any Settlement Corridor Claim against AT&T or any and all other Released Parties. Class Members and AT&T shall retain the right to pursue any breach of the Grant of Communications Easement/Release granted hereunder pursuant to the terms thereof.

### B. Dismissal of Action

When the Court's Order and Judgment approving this Agreement becomes Final, the Settlement Corridor Claims shall be dismissed as to all Class Members.

### C. Continuing Jurisdiction of Court

The Court shall retain exclusive and continuing jurisdiction over the Action and all Parties named or described in the Complaint, and over the Agreement with respect to the performance of the terms and conditions of the Agreement, to assure that all disbursements are properly made and to interpret and enforce the Agreement's terms, conditions, and obligations, and to issue necessary document subpoenas. The Court shall have the power to approve the

-21-

Claims Administrator's designation, appointment, and removal of auditors, consultants, and disbursing agents, and the execution of contracts as necessary and appropriate to assure the administration of the Agreement.

## XII. REPRESENTATIONS AND WARRANTIES

**A.** Class Counsel represent and warrant that they have the authority to enter into the Agreement on behalf of Plaintiffs, subject to Court approval. The Agreement has been duly and validly executed and delivered by Class Counsel, and, subject to Court approval, constitutes a legal, valid, and binding obligation of the Settlement Class.

**B.** AT&T represents and warrants that it has all requisite corporate power and authority to execute, deliver, and perform the Agreement and to consummate the transactions contemplated hereby. The execution, delivery, and performance by AT&T of the Agreement and the consummation by AT&T of the transactions contemplated herein have been duly authorized by all necessary corporate action. The Agreement has been duly and validly executed and delivered by AT&T, and, subject to Court approval, constitutes its legal, valid, and binding obligation.

## XIII. MISCELLANEOUS PROVISIONS

**A.** Neither this Agreement, approved or not approved, nor any Exhibit, document, or instrument delivered hereunder, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement (including determinations by the Claims Administrator with respect to individual claimant appeals) is intended to be or shall be construed as or deemed to be evidence of an admission or concession by AT&T or any other Released Party of any liability or wrongdoing, or of the truth of any allegations in the Complaint, or of the appropriateness of class certification in any other context; no such document, statement, determination, or other matter shall be admissible in evidence for any such purpose in this or any other proceeding, or shall be useable as legal precedent on Indiana real property law or other issues in any other proceeding.

**B.** Nothing in this Agreement shall be construed to bar, release, or otherwise affect any claims and/or rights AT&T may have against a Right-of-Way Provider, insurer, or other third-party, *inter alia*, for contribution, indemnification, or insurance benefits; and AT&T specifically reserves all claims against and rights vis-à-vis such Persons.

**C.** Claims Office determinations (and any determinations from appeals therefrom) as to claim qualification and title issues, as well as property right provisions contained in the Final Order and Judgment and in any easement conveyances executed pursuant to the Agreement, shall be binding upon AT&T, the Class Members, and their successors in interest, but not upon other persons or entities not parties to this Agreement, and may not be used against a Right-of-Way Provider (or its successors, successors in title, or pre-existing, current, or future licensees) in any future proceedings.

**D.** This Agreement, including all Exhibits attached hereto, constitutes the entire agreement by and among the Parties with regard to the subject matter of the Agreement, and

-22-

shall supersede any previous agreements and understandings between the Parties with respect to the subject matter of this Agreement. The Agreement may not be modified or amended except in writing signed by all Parties hereto.

**E.** The Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same document.

**F.** Any notice, request, instruction, or other document to be given by any Party to any other Party (other than class notification) shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid as follows:

       If to AT&T:

| | |
|---|---|
| Cynthia Mahowald | B. Haven Walling, Jr. |
| AT&T Corp. | Dickstein Shapiro Morin |
| Legal Department |   & Oshinsky LLP |
| One AT&T Way | 2101 L Street, NW |
| Room 3A213 | Washington, DC 20037 |
| Bedminster, NJ 07921 | |

        If to Plaintiffs and/or Class Counsel:

| | |
|---|---|
| Nels Ackerson | Henry J. Price |
| Ackerson Kauffman Fex, PC | Price Waicukauski Riley |
| 1250 H Street, N.W., Suite 850 |   & DeBrota, LLC |
| Washington, DC 20005 | 301 Massachusetts Avenue |
| | Indianapolis, IN 46204 |

| | |
|---|---|
| Roger C. Johnson | John B. Massopust |
| Koonz, McKenney, Johnson, | Zelle, Hofmann, Voelbel, Mason |
|   DePaolis & Lightfoot, L.L.P. |   & Gette, LLP |
| 2020 K Street, N.W., Suite 500 | 500 Washington Avenue South |
| Washington, DC 20006 | Suite 4000 |
| | Minneapolis, MN 55415 |

**G.** All applications for Court approval or Court orders required under this Agreement shall be made on notice to all parties hereto.

[Remainder of Page Intentionally Left Blank]

-23-

## XIV. TERMINATION OF AGREEMENT

This Agreement shall be automatically terminated, without notice, if the Court declines to enter an Order and Judgment or if the Order and Judgment as described in Section X above, does not become Final. In the event of termination, all Parties shall be restored to their respective positions immediately prior to execution of the Agreement.

DATED: 3/30/2006

**CLASS COUNSEL**

**AT&T CORP./AT&T**
**COMMUNICATIONS, INC.**

Nels Ackerson
ACKERSON KAUFFMANN FEX, PC

Cynthia Mahowald
AT&T CORP.

Henry J. Price
PRICE WAICUKAUSKI RILEY &
DEBROTA, LLC

B. Haven Walling, Jr.
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP

Roger C. Johnson
KOONZ, MCKENNEY, JOHNSON,
DEPAOLIS & LIGHTFOOT, L.L.P.

William P. Wooden
WOODEN & McLAUGHLIN LLP

John B. Massopust
ZELLE, HOFMANN, VOELBEL,
MASON & GETTE, LLP

DSMDB.2041788.2

## XIV. TERMINATION OF AGREEMENT

This Agreement shall be automatically terminated, without notice, if the Court declines to enter an Order and Judgment or if the Order and Judgment as described in Section X above, does not become Final. In the event of termination, all Parties shall be restored to their respective positions immediately prior to execution of the Agreement.

DATED: _March 30, 2006_

**CLASS COUNSEL**

Nels Ackerson
ACKERSON KAUFFMANN FEX, PC

Henry J. Price
PRICE WAICUKAUSKI RILEY &
DEBROTA, LLC

Roger C. Johnson
KOONZ, MCKENNEY, JOHNSON,
DEPAOLIS & LIGHTFOOT, L.L.P.

John B. Massopust
ZELLE, HOFMANN, VOELBEL,
MASON & GETTE, LLP

**AT&T CORP./AT&T
COMMUNICATIONS, INC.**

Cynthia Mabowald
AT&T CORP.

B. Haven Walling, Jr.
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP

William P. Wooden
WOODEN & McLAUGHLIN LLP

-24-

## XIV. TERMINATION OF AGREEMENT

This Agreement shall be automatically terminated, without notice, if the Court declines to enter an Order and Judgment or if the Order and Judgment as described in Section X above, does not become Final. In the event of termination, all Parties shall be restored to their respective positions immediately prior to execution of the Agreement.

DATED: *March 30, 2006*

**CLASS COUNSEL**

**AT&T CORP./AT&T COMMUNICATIONS, INC.**

_____

Nels Ackerson
  ACKERSON KAUFFMANN FEX, PC

Cynthia Mahowald
  AT&T CORP.

_____

Henry J. Price
  PRICE WAICUKAUSKI RILEY &
  DEBROTA, LLC

B. Haven Walling, Jr.
  DICKSTEIN SHAPIRO MORIN
  & OSHINSKY LLP

_____

Roger C. Johnson
  KOONZ, MCKENNEY, JOHNSON,
  DEPAOLIS & LIGHTFOOT, L.L.P.

William P. Wooden by James M. Boyer
William P. Wooden
  WOODEN & McLAUGHLIN LLP

_____

John B. Massopust
  ZELLE, HOFMANN, VOELBEL,
  MASON & GETTE, LLP

-24-

# EXHIBIT A

DSMDB.2020759.5

Settlement Corridors[1]

1.      a portion of that certain corridor known as Elkhart Branch which is approximately 0.25 miles in length along Consolidated Rail Corporation (Conrail) right-of-way from a point in the Township of Concord, Elkhart County, Indiana, to a point near the intersection of Lafayette Street and Ninth Street in the Township of Concord, Elkhart County, Indiana, as depicted on AT&T Form M-77, Specification CR-95692, Sheets 1 - 2 (of 2); and

2.      a portion of that certain corridor known as Kalamazoo to South Bend which is approximately 10.44 miles in length along Grand Trunk Western Railroad right-of-way from the Michigan/Indiana State Line in the Township of Harris, St. Joseph County, Indiana, to a point near the intersection of High Street in the City of South Bend, St. Joseph County, Indiana, as depicted on AT&T Form M-77, Specification CR-95629, Sheets 55 - 66 (of 68), and Form M-77, Specification CR-95806, Sheet 1A; and

3.      a portion of that certain corridor known as Richmond to Muncie which is approximately 1.49 miles in length along Consolidated Rail Corporation (Conrail) right-of-way from the intersection with the White River in the City of Muncie, Delaware County, Indiana, to a point near the intersection of Liberty Street in the City of Muncie, Delaware County, Indiana, as depicted on AT&T Form M-77, Specification CR95624, Sheets 45 - 46 (of 46); and

4.      a portion of that certain corridor known as Indianapolis to Louisville which is approximately 108.64 miles in length along Consolidated Rail Corporation (Conrail) right-of-way from the intersection of Madison Avenue in the Township of Center, City of Indianapolis, Marion County, Indiana, to the Indiana/Kentucky State Line in the Township of Jeffersonville, Clark County, Indiana, as depicted on AT&T Form M-77, Specification CR-95561, Sheets 3 - 110 (of 113); and

5.      a portion of that certain corridor known as Mishawaka to Indianapolis which is approximately 141.11 miles in length along Consolidated Rail Corporation (Conrail) right-of-way from a point in the Township of Elkhart, City of Goshen, Elkhart County, Indiana, to a point near the intersection of St. Clair Street in the

---

[1] The Court Notice and website will contain maps to make it easier for landowners to determine if they are members of the class.

Township of Center, City of Indianapolis, Marion County, Indiana, as depicted on AT&T Form M-77, Specification CR-95574, Sheets 16 - 162 (of 167); and

6. a portion of that certain corridor known as Toledo to Mishawaka which is approximately 77.64 miles in length along Consolidated Rail Corporation (Conrail) right-of-way from the Indiana/Ohio State Line in the Township of Stafford, Dekalb County, Indiana, to the intersection of Taylor Street in the Township of Penn, City of Mishawaka, St. Joseph County, Indiana, as depicted on AT&T Form M-77, Specification CR-95486, Sheets 69 - 149 (of 150); and

7. a portion of that certain corridor known as Mishawaka to Chicago 6 which is approximately 74.21 miles in length along Consolidated Rail Corporation (Conrail) right-of-way from a point near the intersection of Dale Avenue in the Township of Penn, City of Mishawaka, St. Joseph County, Indiana, to the Indiana/Illinois State Line in the Township of North, Lake County, Indiana, as depicted on AT&T Form M-77, Specification CR-95806, sheet 3, Form M-77, Specification CR95936, Sheet 3A, and Form M-77, Specification CR-95488, Sheets 4 - 77 (of 93); and

8. a portion of that certain corridor known as Portage Branch which is approximately 5.90 miles along Consolidated Rail Corporation (Conrail) right-of-way from near the intersection of Wood Street in the Township of Westchester, Town of Porter, Porter County, Indiana, to near the intersection of 600 W. Road/Willow Creek in the Township of Portage, Porter County, Indiana, as depicted on AT&T Form M-77, Specification CR-95530, Sheets 2 - 7 (of 7); and

9. a portion of that certain corridor known as Muncie Branch which is approximately 18.03 miles in length along Consolidated Rail Corporation (Conrail) right-of-way from near the intersection of Liberty Street in the Township of Center, City of Muncie, Delaware County, Indiana, to near the intersection of Lincoln Street in the Township of Anderson, City of Anderson, Madison County, Indiana, as depicted on AT&T Form M-77, Specification CR-95625, Sheets 1 - 20 (of 20); and

10. a portion of that certain corridor known as Indianapolis to Bloomington which is approximately 43.68 miles in length along Consolidated Rail Corporation (Conrail) right-of-way from a point near the intersection of West Street in the Township of Center, City of Indianapolis, Marion County, Indiana, to near the intersection of 490 N. Road in the Township of Wayne, Owen County, Indiana, as depicted on AT&T Form M-77, Specification CR95737, Sheets 1 - 49 (of 70); and

11.    a portion of that certain corridor known as Indianapolis to Bloomington which is approximately 6.33 miles in length along CSX Transportation, Inc. right-of-way from near the intersection  of 490 N. Road in the Township of Wayne, Owen County, Indiana, to the intersection of 8th Street in the Township of Bloomington, Monroe County, Indiana, as depicted on AT&T Form M-77, Specification CR95737, Sheets 63 - 70 (of 70); and

12.    a portion of that certain corridor known as Terre Haute Branch which is approximately 1.97 miles in length along Consolidated Rail Corporation (Conrail) right-of-way from a point near the intersection of Margaret Avenue in the Township of Honey Creek, Vigo County, Indiana, to a point near the intersection of Hammill Road/ 45 DR and McDaniel Road in the Township of Honey Creek, Vigo County, Indiana, as depicted on AT&T Form M-77, Specification CR95678, Sheets 2 - 3 (of 12); and

13.    a portion of that certain corridor known as Ft. Wayne to Warsaw which is approximately 35.82 miles in length along Consolidated Rail Corporation (Conrail) right-of-way from near the intersection of Monroe Street in the Township of Wayne, City of Fort Wayne, Allen County, Indiana, to a point adjacent to U.S. Route 30 and near the intersection of County Road 325 E. in the Township of Wayne, Kosciusko County, Indiana, as depicted on AT&T Form M-77, Specification CR95713, Sheets 3 - 41 (of 47); and

14.    a portion of that certain corridor known as Monroe City Branch which is approximately 1.92 miles in length along CSX Transportation, Inc. right-of-way from a point adjacent to Old US 50 & 150 in the Township of Vincennes, Knox County, Indiana, to a point near the intersection of S.E. 400 E. Road in the Township of Palmyra, Knox County, Indiana, as depicted on AT&T Form M-77, Specification CR95679, Sheets 1 - 2 (of 6); and

15.    a portion of that certain corridor known as Terre Haute Branch which is approximately 4.86 miles in length along CSX Transportation, Inc. right-of-way, from a point near the intersection of Hammill Road/ 45 DR and McDaniel Road in the Township of Honey Creek, Vigo County, Indiana, to a point near the intersection of Highway 41 / 150 in the Township of Honey Creek, Vigo County, Indiana, as depicted on AT&T Form M-77, Specification CR95678, Sheets 3 - 6 (of 12); and

16.    a portion of that certain corridor known as Evansville Branch which is approximately 9.09 miles in length along CSX Transportation, Inc. right-of-way

from near the intersection of Baseline Road in the Township of Scott, Vanderburgh County, Indiana, to the intersection of Heidelbach Avenue in the Township of Pigeon, Vanderburgh County, Indiana, as depicted on AT&T Form M-77, Specification CR95680, Sheets 45 - 58 (of 58); and

17.    a portion of that certain corridor known as Morgantown to Bloomington which is 26.47 miles in length along Indiana Railroad Company right-of-way from the Township of Hensley, Johnson County/Township of Jackson, Morgan County Line in the Township of Jackson, City of Morgantown, Morgan County, Indiana, to the intersection of Washington Street in the Township of Bloomington, City of Bloomington, Monroe County, Indiana, as depicted on AT&T Form M-77, Specification CR-95575, Sheets 5 - 34 (of 34).

# EXHIBIT B

**INDIANA
"TELECOMMUNICATION CABLE"/
RAILROAD CORRIDOR CLASS SETTLEMENT**

**GRANT OF COMMUNICATIONS SYSTEM EASEMENT/RELEASE**

In consideration of the sum of $10 (ten dollars) and other good and valuable consideration, receipt whereof is hereby acknowledged, the undersigned, _____ (hereinafter collectively with his/her/its successors-in-interest called "**Grantor**"), **hereby grants, conveys, and assigns** to AT&T Corp., a New York corporation, its predecessors, successors, and past and present subsidiaries, assigns, affiliates, officers, directors, agents, attorneys, insurers, and employees (hereinafter called "**Grantee**"), a permanent easement to operate, maintain, reconstruct, replace, and remove its present telecommunication cable system, which system includes without limitation underground and/or surface cables, conduits, wires, pipes, ducts, waveguides, surface testing terminals, manholes, markers, regeneration huts, and other appurtenances (hereinafter collectively called "**Telecommunication Cable System**"), *all where they are presently in place*, plus future additions, upgrades, or expansions to the Telecommunication Cable System, as well as to install new conduits and fiber or replacement technology, which have been or may have been constructed, installed, or acquired by AT&T for its primary use, upon, across, or under a strip of land 16-½ (sixteen and one-half) feet wide (hereinafter called "**Grantee's Communications Corridor**"), the location of which is in _____, County of _____, State of Indiana and described as follows:

The boundaries of Grantee's Communications Corridor shall be parallel lines 8-¼ (eight and one-quarter) feet on either side of the AT&T fiber optic cable now laid (the location of which cable shall be indicated by surface markers set by Grantee at intervals on Grantee's Communications Corridor); *provided*, however, that the width of Grantee's Communications Corridor shall be reduced on one side and increased by an equal linear footage on the other side wherever necessary in order that it shall in all places remain solely within the limits of the _____ [Right-of-Way Provider (i.e., railroad company)] right-of-way easement where the AT&T Telecommunication Cable System is now laid (the "**Settlement Corridor**"), and adjacent to [or located entirely within] Grantor's real estate in [County/City] as described in [Deed Book/Page].

It is understood and agreed that the permanent easement granted herein is subject to all pre-existing uses and pre-existing rights to use, Grantor's land, whether such uses are by Grantor or others and whether for surface uses, crossings, or encroachments by communication companies or utilities, and that Grantor retains whatever existing rights it currently possesses to permit, restrict, maintain, or remove such existing uses on the land of Grantor, including land comprising Grantee's Communications Corridor; provided, however, that no utility, telecommunications, or similar cable, facilities, or equipment shall be installed hereafter within five feet on either side of AT&T's Telecommunication Cable System unless Grantee is notified in advance of any proposed encroachment within five feet of Grantee's fiber and/or conduits and

-2-

[the Right-of-Way Provider] or the successor of [Right-of-Way Provider's] existing rights bears the expense of a mutually acceptable contractor to ensure that during such construction Grantee's conduits are not harmed.  It is further understood and agreed that Grantee shall not interfere with such reasonable uses of the land of Grantor, and that Grantor retains all of its existing rights to grant, convey, assign, and restrict any and all rights (including future rights and uses) on Grantor's land that is not part of Grantee's Communications Corridor.

Grantee's rights hereunder, furthermore, shall be non-exclusive as to _____ [the Right-of-Way Provider] and Grantor, their successors or successors in title, and their pre-existing, current, or future licensees, provided that any change does not interfere with Grantee's Communication Cable System.  This Grant of Communications System Easement/Release does not address the real property rights between Grantor and _____ [the Right-of-Way Provider], its successors or successors in title, and its pre-existing, current, or future licensees.

The permanent easement granted herein, including all rights incidental thereto, shall vest in and belong to Grantee exclusive of any rights or claims of Grantor that are not expressly reserved herein, and Grantor shall have no rights to grant other or additional telecommunication easements of any kind upon, across, or under Grantee's Communications Corridor without Grantee's consent (which shall not be unreasonably withheld) and upon payment of just compensation to Grantee, and, further to ensure the integrity of the Telecommunication Cable System, and additions, upgrades, or expansions thereto, shall have no rights to grant future utility easements upon, across, or under Grantee's Communications Corridor without Grantee's consent, which shall not be unreasonably withheld.  The provisions of the foregoing sentence shall not apply to pre-existing uses and pre-existing rights of use expressly permitted in the third paragraph of this Easement/Release.

Grantee shall have the right to grant, convey, and assign to third parties in Grantee's sole and absolute discretion, and with no further compensation to Grantor, sublicenses, subeasements, or other rights, provided Grantee's rights hereunder are limited to grants, conveyances, or assignments to use excess capacity within systems and additions that were or may be constructed, installed, or acquired by AT&T for its primary use.

Grantor further grants and conveys to Grantee the following incidental rights and powers:  (1) temporary rights-of-way and easements to be used during all periods of construction, reconstruction, repair, and removal upon so much of a strip of land 10 (ten)  feet wide on each side of Grantee's Communications Corridor as is owned by Grantor; (2)  ingress and egress upon and across the lands of Grantor to and from said temporary and permanent easements for the purpose of exercising the aforesaid rights, all upon reasonable notice by Grantee; (3) in keeping with environmentally safe and sound practices, the right to clear all trees, roots, brush, vines, overhanging limbs, and other obstructions from the surface and subsurface of the above-described permanent easement as are reasonably necessary for Grantee's use and operations, and during periods of construction, reconstruction, repair, and removal only, the same rights on the surface and subsurface of the above-described temporary easement, subject to just compensation to Grantor for damage caused by such acts of Grantee.

DSMDB.2041789.3

Grantor hereby covenants that Grantor will not make any change by grading or otherwise to the surface or subsurface of the land immediately adjacent to Grantee's Communications Corridor in such a manner that will interfere with Grantee's rights herein granted.

Grantor shall have the right to use and enjoy the land hereby encumbered by the above-described temporary and permanent easement so long as such use does not violate Grantee's rights of use and enjoyment of such land as herein granted.

**Grantor hereby releases** (1) Grantee and its predecessors, successors, and past and present subsidiaries, and their respective assigns, affiliates, officers, directors, agents, attorneys, insurers, and employees with respect to Settled Claims; and (2) only with respect to any and all claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, for liability or damages arising out of or relating to Grantee's installation, occupancy, maintenance, or use of telecommunication cable that has been installed on or in a Settlement Corridor, the Right-of-Way Provider; all of such Right-of-Way Provider's past or present officers, directors, agents, servants, attorneys, employees, predecessors-in-interest, successors, shareholders, subsidiaries, parents, affiliates, and assigns; and any Person to which AT&T heretofore sold, granted, leased, or otherwise transferred, and/or hereafter sells, grants, leases, or otherwise transfers, all or any part of the rights in or use of a Telecommunication Cable System on a Settlement Corridor which has been or may be constructed, installed, or acquired by AT&T for its primary use.

**"Settled Claims"** means (a) as to claims arising out of conduct occurring prior to [TO BE ADDED: The Effective Date], any such claims relating to the installation, occupation, maintenance, or use of telecommunication cable that has been installed on or in the Settlement Corridor, or any other claims addressed in or arising out of the subject matter of the Indiana "Telecommunication Cable"/Railroad Corridor Class Settlement Agreement, dated _____, or the First Amended Nationwide Class Action Complaint in *Vera J. Hinshaw, et al., v. AT&T Corp., et al.*, Case No. 1:98-cv-1300-DFH-TAB (S.D. Ind.) ("Class Settlement"), including without limitation claims for trespass, slander of title, unjust enrichment, criminal mischief, criminal trespass, and inverse condemnation, any and all such claims, including assigned claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, that are or may be asserted now or in the future by any or all Class Members against AT&T and/or any Released Party; and (b) any future claims that would be based upon AT&T's lawful exercise of easement rights received under this Grant of Communications System Easement/Release and/or Final Order and Judgment.

Grantee releases Grantor from any and all damages and liability of any kind, whether past, present, or future, and whether foreseen or unforeseen, arising directly or indirectly on or from Grantor's use of Grantee's Communications Corridor, including any damages to Grantee's Telecommunication Cable System, except upon proof of Grantor's negligence, and if such negligence shall be proven then such damages and liability shall be limited to costs of repair and restoration and shall not include consequential damages. Grantor and Grantee shall mutually indemnify, defend, and hold harmless each other from any loss, damages, injuries, or liability, arising directly or indirectly in whole or in part from either party's negligent actions upon or negligent use of the land encumbered by Grantee's Communications Corridor.

DSMDB.2041789.3

Grantor represents, warrants, covenants, and agrees that – except as to any ownership interest of (1) Grantee and (2) any railroad company from which Grantee acquired rights to install, occupy, maintain, or use telecommunication cable on the property herein identified as Grantee's Communications Corridor, including but not limited to _____ Corporation, and any and all of such railroad company's predecessors-in-interest, successors, shareholders, subsidiaries, parents, affiliates, and assigns, or anyone claiming title through any of them – Grantor is the fee simple owner of the property and/or has the right, power, and authority to grant and convey to Grantee the above-described rights and easement. If Grantee so specifically requests, and the Grantor receives in excess of $10,000 (ten thousand dollars) in class settlement benefits, Grantor may also be required to execute a letter authorizing Grantee to obtain lienholder consent and approval.

Grantor and Grantee expressly acknowledge and agree that this Grant of Communications System Easement/Release sets forth the entire understanding and agreement of Grantor and Grantee with respect to Grantor's and Grantee's use, maintenance, and operation of Grantee's Communications Corridor. As between Grantor and Grantee, any prior easement, license, or other similar rights with respect to Grantee's use of Grantor's property from any source derived is hereby disclaimed and of no further force or effect, and Grantee relinquishes any and all prior claims it may have as to Grantor's property and to the Settlement Corridor; provided, however, that Grantee shall retain all rights it possesses vis-à-vis railroads and other third parties.

Other than rights Grantee receives in Grants of Communications System Easement/Release and rights Grantee receives or retains pursuant to the Order and Judgment in the Class Settlement, Grantee relinquishes any and all claims or rights it may have with respect to the Settlement Corridor; provided, however, that Grantee shall retain all rights it possesses vis-à-vis Persons who are not Class Members (specifically including railroads).

Grantee shall not acquire any easement rights in the Settlement Corridor except within the boundaries of Grantee's Communications Corridor or, outside of such boundaries, where AT&T might in the future enter into an agreement with a corridor ownership enterprise. The covenants, rights, terms, conditions, and provisions herein shall extend to and be binding upon the parties hereto and their respective heirs, executors, administrators, personal representatives, successors, assigns, lessees, and agents.

Grantor acquired his/her/its right, title, and interest in and to the land that is subject to this permanent easement pursuant to instrument dated _____ and recorded _____ as Instrument Number _____, Book _____, pages _____, in the _____ County (Indiana) Recorder's Office.

DSMDB.2041789.3

Signed, sealed, and witnessed this _____ day of _____ _____ at
_____.

                                        GRANTOR:

                                        _____ (SEAL)
                                        Name:

                                        _____ (SEAL)
                                        Name:

Accepted and Agreed to
this ____ day of _____, _____

GRANTEE:
AT&T Corp.
3001 Cobb Parkway, NW
Room 162-022
Atlanta, GA  30339

By:

_____
Name

                                        [jurat]

DSMDB.2041789.3

# EXHIBIT C

# CLAIMS PROCESSING PROTOCOL

## I. INTRODUCTION

The "Indiana 'Telecommunication Cable'/Railroad Corridor Class Settlement Agreement" (**"Agreement"**) provides for compensation to be paid to Class Members who satisfy the requirements of this Claims Processing Protocol (**"Protocol"**). The Claims Office shall review Class Members' submissions and determine Class Members' qualifications for benefits in accordance with this Protocol.

Generally speaking, this Protocol controls the following determinations to be made by the Claims Office for purposes of this Agreement only:

A. whether the Right-of-Way Provider will be deemed to hold (or to have held when it conveyed rights to AT&T) fee simple title to a particular portion of Cable-Side Corridor;

B. if the Right-of-Way Provider is not deemed to hold (or to have held) fee simple title to such portion of Cable-Side Corridor, whether one or more Class Members qualify for compensation with respect to such property; and

C. if one or more Class Members do so qualify, under which particular benefit category or categories and for what amount of compensation they do so qualify.

In determining whether the Right-of-Way Provider held fee simple title to a particular portion of Cable-Side Corridor when the Right-of-Way Provider conveyed rights to AT&T, the Claims Office shall follow the Rules of Deed Construction in Section V, below. As set forth in Paragraph VIII. B. of the Settlement Agreement, if AT&T has not timely provided the Claims Office with evidence of Right-of-Way Provider fee ownership that conflicts with claimant's evidence of ownership of any portion of the Settlement Corridor, there shall be a presumption that the Right-of-Way Provider did not have fee simple title to the parcel at the time the Right-of-Way Provider conveyed rights to AT&T. As with *all* rules and presumptions set forth in the Agreement, this presumption, adopted for ease of administration and to save costs, shall not be useable or relevant in any other proceeding.

The Claims Office shall first process claims for Current Landowner Benefits in accordance with the provisions of Section III below, and then process claims for Prior Landowner Benefits in accordance with Section IV below.

## II. CLASSIFICATION

After the Claims Administrator, applying the Rules of Deed Construction after consultation with the Deed Review Committee (see Section V below), has classified pertinent Railroad Source Documents as "fee" or "easement" documents, as applicable, the Claims Office will mail to all Class Members who are ineligible for benefits on "fee" grounds and who did file a claim a notification as to the Deed Review Committee's classification of the Railroad Source Document pertinent to their claims and their rights, if any, to appeal such classification. Class Members who receive an "easement" classification may be eligible for compensation.

DSMDB.2054742.2

# III.     CLAIMS FOR CURRENT LANDOWNER BENEFITS

## A.     Submission of Claim Form and Copy of Deed(s)

1.     Each Class Member seeking Current Landowner Benefits must complete, sign, and submit to the Claims Office a Claim Form and a copy of the recorded deed(s) through which the Class Member asserts title to a portion of a Cable-Side Corridor.  The copy of such deed must either (a) have been certified by the appropriate Recorder's Office or (b) show on its face pertinent recording information, including the date and office of recording, the deed book and page, and the document number.

2.     Deeds that by their terms expressly describe ownership of the land *underlying* the Cable-Side Corridor shall be processed in accordance with the provisions of Paragraph III.B below.  Deeds that by their terms expressly describe ownership of land *adjoining*, but not underlying, the Cable-Side Corridor shall be processed in accordance with the provisions of Paragraph III.C below.

## B.     Processing of Claimant Deeds That Reflect Current Ownership of Land Underlying a Portion of a Cable-Side Corridor

1.     In processing claimant deeds that expressly reflect ownership of the land underlying a Cable-Side Corridor, if no competing claim of current ownership is presented, there shall be a presumption that the Class Member owned the described property as of the date of the deed purportedly vesting title in the Class Member.  If the deed's description includes the Cable-Side Corridor, and no conflicting evidence is produced, then the Class Member shall be eligible for Current Landowner Benefits.

2.     If a competing claim of current ownership is presented, then the Claims Administrator shall resolve the conflicting claims by construing the competing deeds in accordance with the Rules of Deed Construction and, where necessary (as in the case of competing Class Member claims), applicable Indiana law.

## C.     Processing of Claimant Deeds That Reflect Current Ownership of Cable-Side Property

If the landowner produces a deed as to Cable-Side Property – i.e., to property adjoining a Cable-Side Corridor – and makes a claim for Current Landowner Benefits, and such deed does not expressly reflect current ownership of land underlying the particular portion of Cable-Side Corridor (and does not expressly exclude any interest in the Cable-Side Corridor), and if it is concluded that the Right-of-Way Provider does not hold (or, at the time of its conveyance of rights to AT&T, did not hold) fee simple title to such portion, then, absent proof by AT&T or another Class Member that another Person holds fee simple title to the land underlying the adjoining Cable-Side Corridor, the claimant shall qualify for Current Landowner Benefits.

## D.     Presumptions re Linear Footage and Cable Location

1.     For purposes of determining appropriate amount of benefits to be paid to qualifying Class Members under the Agreement, the Claims Office shall calculate linear footage,

wherever practicable, by using appropriate algorithms and map projections. These calculations shall be presumptively correct and final except where the qualifying Class Members make a showing that a calculation error greater than 15% (fifteen percent) might have occurred, in which event the Claims Office must consider all information before it makes its final determination under the circumstances as to the linear footage involved.

2. There shall be a rebuttable presumption that maps, "as built" engineering drawings, and similar documents used in the regular course of a company's business to show, among other things, the location of fiber-optic cable on a given Settlement Corridor, currently reflect the location of such cable with the Settlement Corridor.

**E.** **Preliminary Approvals; Appeals**

1. Claimants who satisfy (or fail to satisfy) all of the criteria for Current Landowner Benefits, including those specified in Paragraph III.F below, shall have their claims preliminarily approved (or disapproved) by the Claims Office. In preliminarily approving a claim, the Claims Office also shall determine the amount of the award to which the Class Member is entitled under the Agreement.

2. Any appeals (by Claimants or AT&T) from preliminary approvals (or disapprovals) by the Claims Office shall be made to the Claims Administrator within 30 (thirty) days of the mailing of the notice thereof. The Claims Administrator's determinations shall be final and non-appealable.

**F.** **Final Approval; Final Documentation**

1. The Claims Office shall not finally approve a Current Landowner Benefits claim for payment until any appeal as to such claim is determined and all current co-owners of the Qualifying Parcel file a Claim Form and execute a Grant of Communications System Easement/Release in a form substantially identical to that set forth as Exhibit B to the Agreement. Only as to claimants qualifying for Current Landowner Benefits exceeding $10,000 (ten thousand dollars) in value and only where specifically requested by AT&T, such claimants also may be required (before finally qualifying) to execute a letter authorizing the Claims Office or AT&T to obtain lienholder consent and approval to such release and conveyance in a form mutually acceptable to AT&T and Class Counsel.

2. If a claim for Current Landowner Benefits is finally approved for payment and there are no competing claims to the cash benefit from third parties, the Claims Office shall pay the claim within 30 (thirty) days. If a competing claim is submitted, the Claims Office shall place the benefit amount in an interest-bearing escrow account (with interest for the benefit of the successful claimant) pending resolution of the competing claim by the Claims Administrator.

**IV.** **CLAIMS FOR PRIOR LANDOWNER BENEFITS**

**A.** **Submission of Claim Form**

1. Each Class Member seeking Prior Landowner Benefits must complete and submit a signed, sworn Claim Form and provide the same information required of claimants for

-4-

Current Landowner Benefits, *except* that Class Members seeking Prior Landowner Benefits are generally not required to provide a copy of a deed or information concerning lienholders.

2. A Class Member seeking Prior Landowner Benefits will be required to submit a copy of a recorded deed reflecting such Class Member's prior ownership of a parcel of Covered Property only if specifically asked to do so by the Claims Office in an individual case.

### B. Claims Processing

1. Claims for Prior Landowner Benefits shall be processed after claims for Current Landowner Benefits have been preliminarily approved for payment.

2. Class Members submitting claims for Prior Landowner Benefits may appeal preliminary determinations to the Claims Administrator. The Claims Administrator's determination of any such appeal shall be final and non-appealable.

3. All claimants for Prior Landowner Benefits who co-owned a Qualifying Parcel during the same period must consent to the Settlement before any Prior Landowner Benefits may be paid and must execute an appropriate individual release of claims (in the form of Exhibit H) against AT&T and the other Released Parties in accordance with the terms of this Settlement.

4. If a claim for Prior Landowner Benefits is finally approved for payment and there are no competing claims to the cash benefit from third parties, the Claims Office shall pay the claim within 30 (thirty) days of final approval.

## V.     RULES OF DEED CONSTRUCTION

### A. Generally

1. The following "**Rules of Deed Construction**" govern the Claims Administrator's determinations as to whether documents conveying an interest in land to the Right-of-Way Provider or its railroad or other predecessor in interest (**"Railroad Source Documents"**) show that the Right-of-Way Provider should be deemed to hold (or have held when it conveyed rights to AT&T) fee simple title to a particular portion of Cable-Side Corridor. The Rules of Deed Construction establish "bright line" tests so as to expedite the processing of claims and increase certainty of benefit payments. The rules are for purposes of settlement only, and, like other rules and procedures in the Agreement, shall not constitute an admission or support any inference that their operation would be appropriate in any other context.

2. A "**Deed Review Committee**" comprised of two Class Counsel representatives and two AT&T representatives shall be appointed to assist the Claims Administrator in making title determinations. Specifically, any Railroad Source Document that is not subject to prima facie classification by the characteristics set forth in the Rules of Deed Construction shall be submitted to the Deed Review Committee. The Deed Review Committee may classify a Railroad Source Document as conveying an "easement" or "fee simple" notwithstanding the document's failure to satisfy the "bright line" criteria set forth in the Rules of Deed Construction for "easement" or "fee simple" documents. In the event that the Deed Review Committee does not agree upon how a Railroad Source Document should be construed,

the Court shall construe the document, and the Court's decision shall be final and non-appealable. All ambiguities in Railroad Source Documents shall be construed in favor of the claimant.

**B.    Language Establishing a Railroad's Fee Simple Title**

1.    If the Railroad Source Document does not anywhere describe or refer to the conveyed interest as an "easement" or "license" or "use" or "right" or "right-of-way" or "right of occupation," if the interest conveyed is not limited in time, and if there is no language limiting the conveyance to "railroad uses" or "railroad purposes," then if the Railroad Source Document contains any of the following formulations (in either words or substance), the Railroad Source Document shall be deemed for purposes of the Agreement only to convey fee simple title to the railroad company:

(a)    "convey or warrant" or "grant, convey, and warrant" the described real estate;

(b)    "grant, bargain, sell, and convey" the described real estate;

(c)    "grant" or "convey" or "transfer" or "bargain" or "sell" or "quitclaim" all of grantor's "right, title, and interest" in the described real estate; and/or

(d)    grant or convey or transfer or sell the described real estate in "fee" or "fee simple" or "fee simple absolute," or "absolutely."

2.    For purposes of Subparagraph V.B.1 above, "real estate" broadly includes the conveyance of a certain described area of real property, whether denominated real estate, real property, a parcel of land, a strip of land, a piece of land, a tract of land, "all that certain lot, piece or parcel of land," or an area with certain dimensions or borders.

**C.    Language Establishing a Railroad's Easement**

If the Railroad Source Document does not contain any of the formulations listed in Subparagraphs V.B.1(a) through (d) above, or if the Railroad Source Document describes or refers to the interest conveyed with the limiting formulations (in either words or substance) noted in Subparagraph V.B.1, then the document shall be deemed for purposes of this Agreement to convey an easement.

**D.    Rules Are Not Exclusive**

The Parties understand that the "bright line" rules in V. B and V. C above are not exclusive, and the failure of either of those rules to include certain language or formulations does not mean that any such omitted language or formulation may not also be appropriately deemed to create a fee or easement in certain circumstances.

*[End of the Claims Processing Protocol]*

DSMDB.2054742.2

# EXHIBIT D

DSMDB.2041791.3

**LEGAL NOTICE**

**UNITED STATES DISTRICT COURT - SOUTHERN DISTRICT OF INDIANA**
*Vera J. Hinshaw, et al. v. AT&T Corp., et al.*, Case No. 1:98-cv-1300-DFH-TAB

# ATTENTION - OFFICIAL COURT NOTICE

# ALL PERSONS[1] WHO OWN (OR OWNED[2]) LAND UNDERLYING OR ADJOINING THE FOLLOWING RAILROAD CORRIDORS IN INDIANA:

- **Mishawaka to Chicago**
- **Toledo to Mishawaka**
- **Portage Branch**
- **Kalamazoo to South Bend**
- **Indianapolis to Louisville**
- **Morgantown to Bloomington**
- **Mishawaka to Indianapolis**
- **Richmond to Muncie**
- **Muncie Branch**
- **Elkhart Branch**
- **Terre Haute Branch (Consolidated Rail Corporation (Conrail))**
- **Terre Haute Branch (CSX Transportation, Inc.)**
- **Monroe Branch**
- **Indianapolis to Bloomington (Consolidated Rail Corporation (Conrail))**
- **Indianapolis to Bloomington (CSX Transportation, Inc.)**
- **Ft. Wayne to Warsaw**
- **Evansville Branch**

**Your rights may be affected by a proposed class action settlement under which AT&T, which owns telecommunication cable on such property, has agreed to pay net compensation benefits of up to approximately $2.10 per linear foot to qualifying Class Members.**

**FOR DETAILED INFORMATION AND FORMS CONTACT**
**The Indiana Case**
**TeleCable Settlement Center**

**BY CALLING:** 1-800-436-6136
**BY E-MAILING:** TeleCableCenter@lecg.com
**OR BY WRITING:** The TeleCable Settlement Center at
P.O. Box 131110
Dallas, TX 75313-1110

**THE SETTLEMENT DOCUMENTS AND FORMS MAY ALSO BE ACCESSED**
**at the Class Settlement Home Page on the Internet at**
**http://att.fsiwebs.net/rrcorridors**

**PLEASE NOTE THE FOLLOWING IMPORTANT DATES**
Deadline to Comment, Object, or Opt Out: _____, _____
Fairness Hearing: _____, _____

---

[1] And their estates or representatives.

[2] For some period of time after AT&T cable was installed on the railroad corridor.

Claims Deadline: _____, _____

**EXHIBIT E**

DSMDB.2041792.3

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| AT&T FIBER OPTIC CABLE | ) | 1:99-ml-9313-DFH-TAB |
| INSTALLATION LITIGATION | ) | MDL Docket No. 1313 |
| | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | (INDIANA ACTIVE LINES) |
| | ) | |
| 1:98-cv-1300-DFH-TAB (Hinshaw) | ) | |
| | ) | |

**INDIANA**
**"TELECOMMUNICATION CABLE"/RAILROAD CORRIDOR**
**CLASS SETTLEMENT COURT NOTICE**

> ## PLEASE READ THIS COURT NOTICE CAREFULLY.
> ## IT AFFECTS YOUR LEGAL RIGHTS.

- **TO: All persons[1] who own or owned[2] land underlying or adjoining the following railroad corridors in Indiana:** Mishawaka to Chicago, Toledo to Mishawaka, Portage Branch, Kalamazoo to South Bend, Indianapolis to Louisville, Morgantown to Bloomington, Mishawaka to Indianapolis, .Richmond to Muncie, Muncie Branch, Elkhart Branch, Terre Haute Branch (Consolidated Rail Corporation (Conrail)), Terre Haute Branch (CSX, Transportation, Inc.), Monroe Branch, Indianapolis to Bloomington (Consolidated Rail Corporation (Conrail)), Indianapolis to Bloomington (CSX Transporation, Inc.), Ft. Wayne to Warsaw, and Evansville Branch.

You are notified of:

- The conditional certification of a non-mandatory class of plaintiffs, of which you may be a member. The preliminary approval of a proposed class action settlement under which AT&T has agreed to pay net compensation benefits of up to approximately $2.10 (two dollars and ten cents) per linear foot to Class Members who qualify as provided in the Settlement Agreement.

- A court hearing on _____ to finally determine the fairness, reasonableness, and adequacy of the proposed settlement.

- Your rights as a Class Member to support, participate in, and obtain the benefits of, object to, or exclude yourself ("opt out") from the proposed settlement.

- These important dates and deadlines for Class Members:

| | |
|---|---|
| _____, _____ | The Opt-Out Deadline and The Deadline for Comments or Objections |
| _____, _____ | The Fairness Hearing |
| _____, _____ | The Claim Deadline |

---

[1] And their estates or representatives.

[2] For some period of time after the AT&T cable was installed on the corridor.

### CONTENTS OF THIS INDIANA
### "TELECOMMUNICATION CABLE"/
### RAILROAD CORRIDOR
### CLASS SETTLEMENT COURT NOTICE

Page

I.      THE LITIGATION ....................................................................................................1

II.     ABOUT CLASS ACTIONS ......................................................................................2

III.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ................................2

IV.     SUMMARY OF PROPOSED SETTLEMENT .........................................................3

V.      CASH COMPENSATION PROGRAM.....................................................................4

VI.     NON-CASH BENEFITS ...........................................................................................5

VII.    EASEMENT RIGHTS/RELEASE OF CLAIMS ......................................................6

VIII.   ADMINISTRATIVE COSTS/ATTORNEYS' FEES AND EXPENSES ..................7

IX.     CLAIMS ADMINISTRATION .................................................................................7

X.      AT&T'S WITHDRAWAL OPTION .........................................................................8

XI.     OPT-OUT RIGHTS OF CLASS MEMBERS ...........................................................8

XII.    IF YOU OPT OUT ...................................................................................................8

XIII.   IF YOU REMAIN IN THE CLASS...........................................................................9

XIV.    FAIRNESS HEARING .............................................................................................9

XV.     REPRESENTATION ..............................................................................................10

XVI.    ADDITIONAL INFORMATION ............................................................................10

DSMDB.2041792.3

## I.   THE LITIGATION

**1. "Telecommunication Cable" Cases.** A number of lawsuits have been filed in recent years on behalf of the owners of property underlying or adjoining railroad corridors on which fiber optic and other underground telecommunication cables ("telecommunication cable" or "cable") have been installed. The plaintiffs in these cases assert various claims against the railroads and/or telecommunication companies concerning the railroad companies' right to license the telecommunication companies to install the cable. This Court Notice concerns a proposed settlement of claims relating to telecommunication cable on certain railroad corridors in the State of Indiana.

**2. Background:**
**Nationwide Litigation and Indiana-Only Settlement.** On November 6, 1996, Vera Hinshaw, on her own behalf and on behalf of other similarly situated property owners in Indiana, filed a class action complaint in Indiana state court asserting trespass and related claims against AT&T Corp. and AT&T Communications, Inc. ("AT&T"). Following substantial discovery and certain motions practice, on August 21, 1998, an Indiana state court approved the filing and certification of a nationwide class complaint by Vera Hinshaw and others against AT&T. The named plaintiffs in that complaint own property adjoining various active and/or abandoned railroad corridors. Beginning in 1987, after contracting with the railroads for permission to do so, AT&T installed telecommunication cable in those corridors. Ms. Hinshaw alleged, among other things, that the railroads did not own or have the authority on many segments of these corridors to permit AT&T to lay the cable and that AT&T was required instead to contract with (or condemn the property of) the owners of property adjoining these corridors. The complaint in the nationwide class action sought compensatory and punitive damages against AT&T for trespass, unjust enrichment, slander of title, and related causes of action. The nationwide class consisted of "all owners of land in the United States that is or was subject to any easement for a limited purpose held by a railroad, pipeline, or other utility company on which AT&T has entered to install or maintain a fiber optic or other telecommunication cable without obtaining the consent of the owner of the land."

On September 18, 1998, AT&T removed the *Hinshaw* case to the United States District Court for the Southern District of Indiana, Indianapolis Division, before Judge David F. Hamilton (referred to in this Court Notice as "this Court" or "the Court"). The parties engaged in extensive negotiations concerning the claims of that class. In April 1999, Class Counsel filed a new Indiana class complaint relating to AT&T cable on "abandoned" railroad corridors in the State of Indiana only, and Class Counsel and counsel for AT&T executed and filed a settlement agreement resolving the claims of that class. In September 1999, this Court approved that agreement after a fairness hearing.

Subsequently, Class Counsel filed and similarly resolved through settlement class actions involving abandoned railroad corridors in Arkansas, Connecticut, Maine, New Hampshire, and Ohio and claims involving active railroad corridors in California, Connecticut, Delaware, Florida, Kentucky, Iowa, Idaho, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, New Hampshire, Ohio, Pennsylvania, Texas, Utah, Vermont, Virginia, West Virginia, Washington and Wisconsin.

**3. This Case: The "Indiana/Hinshaw" Litigation.** On December 7, 1999, the instant case was consolidated for pretrial proceedings with multiple similar actions, as transferred to the United States District Court for the Southern District of Indiana by order of the Judicial Panel on Multi-District Litigation, as Case NO. MDL-1313. On January 31, 2001, Plaintiffs filed an unopposed First Amended Nationwide Class Action Complaint, the operative Complaint in this matter, on behalf of Plaintiffs Vera J. Hinshaw, Generation Homes, L.L.C., Billie E. Mitchell, Velma R. Carmichael, Robert A. Petty, Barbara Viestenz, Truman A. Kingsley, Connie Kingsley, Janet L. Amunrud, and Home on the Range.

Class Counsel and AT&T engaged in extensive negotiations with respect to the *Indiana* railroad corridor mileage. On _____, Class Counsel and AT&T executed and filed the "Indiana 'Telecommunication Cable'/Railroad Corridor Class Settlement Agreement," together with Exhibits (referred to in this Court Notice as the "Settlement" or the "Agreement" or the "Settlement Agreement"), which encompasses the "railroad corridor" claims of the Complaint and seeks certification of the

---

SETTLEMENT BENEFITS
ARE DESCRIBED
IN PARAGRAPHS 14 - 19

Settlement Class, for which Billie E. Mitchell, Velma R. Carmichael and Robert A. Petty are the class representatives.

**4. Court Rulings.** The Court has made no ruling as to the merits of plaintiffs' claims or defendants' denials or defenses. Sending this Court Notice is not an expression by the Court of any opinion as to the likelihood of recovery by plaintiffs or as to the merits of any defense asserted by AT&T. Rather, the purpose of this Court Notice is to inform you that a settlement has been proposed, and preliminarily approved by the Court, and to inform you of your rights with respect to and under the proposed settlement.

## II.     ABOUT CLASS ACTIONS

**5. Nature of Class Actions.** Class actions are lawsuits in which the claims and rights of many people are decided in a single court proceeding brought by representative plaintiffs (the class representatives). This avoids the necessity for hundreds, or even thousands, of people to file similar individual lawsuits, enables the court system to resolve these claims in a more efficient and economical way, and seeks to assure that people with similar claims are treated similarly. In a class action, the court has a responsibility to assure that prosecution and resolution of the class claims by the class representatives and class counsel is fair. Class members are *not* individually responsible for the costs or fees of class counsel, which are subject to court award. **In this case, all such costs and fees would be paid separately by AT&T and would not reduce the amount of benefit payments to Class Members.**

## III.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

**6. Class Certification.** On _____, this action was conditionally certified by this Court under Rule 23(b)(3) of the Federal Rules of Civil Procedure as a class action for settlement purposes on behalf of all persons and entities who may have claims against AT&T or other Released Parties (see Paragraph 21 below) arising out of AT&T's installation, occupation, maintenance, and use of telecommunication cable on "identified" railroad corridors in Indiana.

(a)     Except as provided in (b) below, the Settlement consists of all persons or entities possessing – for some period of time after the AT&T cable was installed – a fee simple interest in land underlying or adjoining the following railroad corridors in Indiana:

- Mishawaka to Chicago
- Toledo to Mishawaka
- Portage Branch
- Kalamazoo to South Bend
- Indianapolis to Louisville
  - Morgantown to Bloomington
  - Mishawaka to Indianapolis
  - Richmond to Muncie
  - Muncie Branch
  - Elkhart Branch
  - Terre Haute Branch (Consolidated Rail Corporation (Conrail))
- Terre Haute Branch (CSX Transportation, Inc.)
- Monroe Branch
- Indianapolis to Bloomington (Consolidated Rail Corporation (Conrail))
- Indianapolis to Bloomington (CSX Transportation, Inc.)
- Ft. Wayne to Warsaw
- Evansville Branch

as specifically scheduled on Exhibit A to the Agreement. More particularized maps of these corridors may be accessed at http://att.fsiwebs.net/rrcorridors. These railroad corridors are referred to in this Court Notice as the "Settlement Corridors."

(b)     Not included in the Settlement Class are the following:

(1)     railroads;

(2)     persons or entities (and their successors-in-interest) who acquired, either directly or indirectly, their fee simple interest from a railroad subject to AT&T's preexisting rights in the land;

> **SAVE THIS COURT NOTICE FOR PERIODIC REFERENCE REGARDING RIGHTS AND BENEFITS, THE CLAIMS PROCESS, DEADLINES, TELEPHONE NUMBERS, AND E-MAIL ADDRESSES**

DSMDB.2041792.3

(3) persons or entities (and their successors-in-interest) who prior to August 21, 1998, granted AT&T rights to operate and maintain a telecommunication cable system across the property;

(4) federal governmental entities;

(5) persons all of whose property adjoins or underlies railroad corridors originally derived from federal land grant or state land grant derived from federal land grant;

(6) persons or entities who elect to exclude themselves from ("opt out" of) the Settlement Class by return of a completed Exclusion Form, received or postmarked no later than _____; and

(7) owners of jointly owned parcels of land underlying or adjoining a Settlement Corridor, one or more of whose co-owners excludes himself or herself from the Settlement Class under Paragraph 6(b)(3) above.

(c) If you are covered by the above class membership definition, you will be a Class Member, whether or not you are a member of (or have excluded yourself from) another class action in federal or state court.

**7. Class Action.** The Settlement Class claims are limited to claims against AT&T and other Released Parties arising out of AT&T's installation, occupation, maintenance, and use of telecommunication cable that has been installed on the Settlement Corridors. These claims include claims for trespass, slander of title, and unjust enrichment.

**8. Representative Plaintiff.** Billie E. Mitchell, Velma R. Carmichael and Robert A. Petty have been designated as the Representative Plaintiffs for the Settlement Class.

**9. Class Counsel.** Nels Ackerson, Henry J. Price, Roger C. Johnson, and John B. Massopust have been designated as Class Counsel. The Court has reserved the power to designate other attorneys as additional or replacement Class Counsel if the need arises.

## IV. SUMMARY OF PROPOSED SETTLEMENT

**10. The Settlement Agreement.** The complete Settlement Agreement is even more lengthy and complex than this Court Notice, and is available for public inspection in the Office of the Clerk of the Court, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana 46204, during normal business hours. Copies can be obtained from the Office of the Clerk of the Court by payment of the copying and mailing expense of $0.50 per page, or can be printed from http://att.fsiwebs.net/rrcorridors. This Court Notice summarizes the provisions of the Settlement Agreement in sufficient detail so that most people should not need to obtain a copy of the Settlement Agreement itself.

**11. Overview of Benefits.** The compensation program described in this Court Notice has been designed so that qualifying Class Members will receive direct cash payments calculated by linear foot in accordance with predetermined compensation amounts. These payments are not subject to *any* reduction for administrative or class notice costs, fees and expenses of Class Counsel, or any other costs. The net cash payments that are available to qualifying Class Members under this program are described in Paragraphs 14-17 below. Paragraphs 18-20 discuss additional non-cash benefits. Finally, Paragraphs 23-24 describe AT&T's separate obligations to fund the administrative and other costs of the settlement and to pay court-awarded fees and expenses for Class Counsel.

**12. Recommendation of Class Counsel.** Class Counsel recommend the Court's approval of the proposed settlement as fair, reasonable, and adequate, and in the best interests of Class Members. The Settlement provides cash benefits of $2.10 (two dollars and ten cents) per linear foot (subject to possible adjustment in certain circumstances under Paragraphs 15 through 17 below). The cash and non-cash benefits will not be reduced by any costs of attorneys' fees, and Class Members will not be required to pay any fees to Class Counsel out of their pockets. The Settlement eliminates the risks and delays associated with any contested trial. Settlement benefits should begin to be paid within a matter of months after a judgment approving the Settlement becomes final.

**13. AT&T's Position.** Although agreeing to the proposed settlement, AT&T denies any wrongdoing or any legal liability of any kind. AT&T has agreed to

-3-

the Settlement not only because of the risk of adverse judgments in some cases, but also because of the substantial time, expense, and other burdens it would incur even in successfully defending cases. AT&T believes that, at the same time, the Settlement will also be in the best interests of the owners of property underlying or adjoining Settlement Corridors, in that, by taking advantage of the potential savings in "transaction costs" resulting from a class settlement, the amounts actually paid to Class Members under the Settlement will, in AT&T's opinion, exceed recoveries obtained through individual claims and lawsuits and, where applicable, condemnation proceedings. AT&T has reserved the right to withdraw from the Settlement Agreement if, in its reasonable discretion in light of past settlements, the number of persons opting out of the Settlement Class is excessive.

## V.     CASH COMPENSATION PROGRAM

**14.  Two Benefit Categories.**  The Settlement creates two categories of cash benefits:  Current Landowner Benefits and Prior Landowner Benefits. Generally speaking, Current and Prior Landowner Benefits are payable to qualifying Class Members who establish under settlement criteria that they currently or previously owned property underlying the side of the center line of a Settlement Corridor on which AT&T telecommunication cable is located (the "Cable Side" or "Cable-Side Corridor Segment").

**15.  Current Landowner Benefits.**  Current Landowner Benefits are cash benefits payable to Class Members who establish under the Claims Processing Protocol (Attachment C hereto and Exhibit C to the Agreement) that they (i) are owners of Covered Property (as defined in the Agreement) as of the Effective Date of the Settlement Agreement (and have the right, power, and authority to grant to AT&T an easement in the form of Attachment B hereto, which is also Exhibit B to the Agreement), or (ii) previously owned such property, expressly reserved in a recorded deed of conveyance (or other document recorded among the land records) the right to receive any recovery from litigation such as that commenced by the Complaint, and have the right, power, and authority to grant to AT&T an easement over such property in the form of Attachment B.  **Generally speaking, under the Claims Processing Protocol, Class Members who own property adjoining the Cable Side of a Settlement Corridor can qualify for Current Landowner Benefits if the railroad did not own the** **particular segment of railroad corridor in "fee" (but merely had an easement) when the railroad conveyed rights to AT&T.**

(a)  Current Landowner Benefits are payable on a linear foot basis, calculated by the length of AT&T telecommunication cable traversing the Class Member's property.  (Linear footage is to be determined by algorithmic methods using map projections.  See Attachment C hereto.)  Current Landowner Benefits are to be paid per linear foot, with a guaranteed minimum payment of $100 (one hundred dollars) per each Qualifying Parcel (as defined in the Agreement).

(b)  Current Landowner Benefits are payable to a single owner or group of owners of a qualifying parcel of land.  Thus, for example, if two Class Members jointly owned a parcel on which 500 linear feet of AT&T telecommunication cable have been installed, and if that parcel qualifies for an award of $2.10 per linear foot, then the total award for that parcel would be $1,050.00 (less any multi-user discount as explained in Paragraph 17, below), to be shared equally by the two joint owners as Class Members.  In addition, there may be portions of Settlement Corridors in which the fiber optic cable was installed in the center line of the settlement corridor.  In these instances, benefits may be divided equally between qualifying class members on either side of the Settlement Corridor.

(c)  If a current landowner has owned the parcel qualifying for benefits for at least 10 (ten) years or throughout the Compensation Period (as defined in Paragraph 16 below), then the current landowner shall receive 100% (one hundred percent) of the benefit amount for that parcel (i.e., $2.10 per linear foot less any multi-user discount calculated in accordance with Paragraph 17 below).  If, on the other hand, the qualifying current landowner has not owned the parcel for at least 10 (ten) years or throughout the Compensation Period, then the current landowner shall receive 70% (seventy percent) of the benefit amount to which the current landowner would otherwise be entitled.  Class Members desiring more detailed information about their specific properties, including a preliminary evaluation of potential Current Landowner Benefits, may call **1-800-436-6136** or inquire via the Internet by contacting <TeleCableCenter@lecg.com>.

**16.  Prior Landowner Benefits.**  Prior Landowner Benefits are cash benefits payable to Class

Members who establish under the Claims Processing Protocol that, during some past portion of the "Compensation Period" (but not currently), they owned property in a Cable-Side Corridor Segment, and that the current owner(s) of such property has not owned it for at least 10 (ten) years (and have the right, power, and authority to grant to AT&T an easement in the form of Attachment B hereto, which is also Exhibit B to the Agreement). Compensation Period means, as to each Qualifying Parcel along the following Settlement Corridors: the Mishawaka to Chicago and the Toledo to Mishawaka railroad corridors, the period from March 1986 to the Effective Date; the Portage Branch, the Kalamazoo to South Bend, the Indianapolis to Louisville, the Morgantown to Bloomington, and the Mishawaka to Indianapolis railroad corridors, the period from January 1987 to the Effective Date; the Richmond to Muncie, the Muncie Branch and the Elkhart Branch railroad corridors, the period from August 1987 to the Effective Date; the Terre Haute Branch (Consolidated Rail Corporation (Conrail)), the Terre Haute Branch (CSX Transportation, Inc.), the Monroe Branch, the Indianapolis to Bloomington (Consolidated Rail Corporation (Conrail)) and the Indianapolis to Bloomington (CSX Transportation, Inc.) railroad corridors, the period from March 1989 to the Effective Date; and the Ft. Wayne to Warsaw and the Evansville Branch railroad corridors, the period from October 1989 to the Effective Date.

(a) As with Current Landowner Benefits, Prior Landowner Benefits shall be paid on a linear foot basis, calculated by the length of AT&T telecommunication cable located on the qualifying parcel.

(b) A Class Member who qualifies for Prior Landowner Benefits shall be entitled to 30% (thirty percent) of the full benefit amount specified for such parcel (less any multi-user discount) to be shared equally among all qualifying Prior Landowners who file a claim as to that parcel.

**17. Multi-User Discount**.

(a) If a qualifying Claimant's parcel adjoins or underlies that side of a Settlement Corridor Segment on which fiber optic cable has been installed by one or more companies in addition to AT&T, then the Claimant's benefit amount shall be reduced by 30% (thirty percent). Based on data provided by AT&T to the Claims Office (with a courtesy copy to Class Counsel) that a qualifying Claimant's parcel is subject to this reduction,

this shall be presumptively correct and final except where the qualifying Claimant provides evidence showing that it may be incorrect, in which event the Claims Office must consider all available information before making its best determination as to whether the qualifying Claimant's parcel is subject to this reduction.

(b) The qualifying Claimant retains all rights of recovery against other fiber optic companies.

## VI. NON-CASH BENEFITS

**18. Relinquishment of Rights by AT&T.** Other than rights AT&T receives in the 16½-foot-wide Grant of Communications System Easement/Release (see Attachment B) and in the Order and Judgment approving the Settlement Agreement, AT&T shall relinquish any claim vis-à-vis Class Members to any existing right in the Settlement Corridors except where AT&T might in the future enter into an agreement with the Corridor Enterprise (see below).

**19. Corridor Enterprise.** In addition to receiving cash compensation, Class Members who hold a fee interest in the Settlement Corridor also have the option to participate on a voluntary basis in the Corridor Enterprise which Class Counsel created for the benefit of the settlement classes in the fiber optic class actions filed against AT&T and presented to the Court for approval, and may seek to offer as an additional benefit in this settlement as well. (AT&T agreed not to object to the opportunity offered to Class Members under the Corridor Enterprise so long as, the Court approves the fairness of the Settlement without regard to the possible supplemental benefits of that enterprise, and the enterprise is otherwise consistent with the Settlement Agreement's Corridor Enterprise provisions.) If any Class Members do not wish to participate in that enterprise, they may exclude themselves by so indicating on either the accompanying Claim Form (Exhibit G to the Settlement Agreement) or Request Form (Exhibit I to the Settlement Agreement); that decision shall not affect the Class Member's eligibility for any other benefits under the Settlement Agreement. (Class Members who do not so exclude themselves shall be deemed as wishing to participate.)

Class Counsel believe that some or all of the Settlement Corridors may be valuable for additional telecommunications or non-railroad business uses, in addition to the easements that are being granted to AT&T

as part of this Settlement. The Corridor Enterprise is a corporation formed to aggregate corridor rights in or across right-of-way parcels owned by Class Members, with the intent of enhancing the value of the Class Members' right-of-way property by the creation or preservation of continuous corridors. For all Class Members who are deemed to own the fee and participate (by not excluding themselves on either the Claim Form or the Request Form), the Court may be asked to accomplish the transfer of their remaining easement rights in the corridor (i.e., easement rights not granted to AT&T) to the Corridor Enterprise in exchange for equity shares in the Corridor Enterprise, and to cause the participating Class Members' names to be added to the list of owners of equity in the Corridor Enterprise without the necessity of their signing any additional documents. Class Counsel believe that other persons or entities, like AT&T, may wish to acquire access under or across the strips of railroad right-of-way land which comprise the corridors for telecommunications or non-railroad business purposes.

By controlling the corridors as units, the Corridor Enterprise may license, lease, sell, or use them for the benefit of participating Class Members, in any manner not inconsistent with the rights of the railroad ("right-of-way provider") or the rights granted to AT&T under this Settlement. (The Corridor Enterprise shall in no way affect, diminish, interfere with, or restrict any interests or rights, if any, that the right-of-way provider or its successors have in the corridor.) If the Corridor Enterprise is successful, participating Class Members, as equity owners, should expect to receive a share of any profits. In the absence of a Corridor Enterprise, Class Counsel believe, such possible future corridor-related profits might not be available to Class Members. As with any business enterprise, however, such benefits are not certain to result; and Class Counsel cannot predict the likelihood of success. Class Counsel will receive no additional fee beyond the fee approved by the Court for creation of the Corridor Enterprise, but may receive rights to a portion of the equity or profits earned by the Corridor Enterprise, in lieu of a cash fee, subject to approval by the Court. Copies of an Information Statement containing more detailed information about the Corridor Enterprise may be obtained through www.right-of-way-law.com or by calling 1-877-288-2808. Neither AT&T nor anyone other than participating Class Members or their successors and Class Counsel will be issued shares of ownership in the Corridor Enterprise. AT&T will not be responsible for any costs associated with the Corridor Enterprise, and will

not have any ownership interest or control of the Corridor Enterprise.

**20. Administrative Services and Class Counsel Work.** Class Members shall have no obligation to pay for any claims processing expenses, Class Counsel services on behalf of the Settlement Class, costs incurred by the Claims Office in responding to Class Member inquiries, or any other settlement-related administrative expenses.

## VII. EASEMENT RIGHTS/ RELEASE OF CLAIMS

**21. Grant of Communications System Easement/Release.** Class Members who qualify for Current Landowner Benefits shall be required to execute a Grant of Communications System Easement/Release in the form of Exhibit B to the Settlement Agreement, set forth as Attachment B hereto. This document provides, among other things, for conveyance of a permanent easement to AT&T for telecommunications purposes, subject to existing rights and other restrictions, on a 16½-foot-wide strip of the Settlement Corridor where AT&T telecommunication cable is currently located.

**22. Release of Claims.** As more particularly set forth in Exhibit B hereto, Class Members shall release all claims they have against AT&T and other "Released Parties" arising out of or relating to the installation, occupation, maintenance, or use of telecommunication cable that has been installed on or in Settlement Corridors. "Released Parties" means (1) AT&T and its predecessors, successors, and past and present subsidiaries, assigns, affiliates, officers, directors, agents, attorneys, insurers, and employees; and (2) only with respect to any and all Settlement Corridor Claims, whether known or unknown, asserted or unasserted, regardless of legal theory, for liability or damages arising out of or relating to AT&T's installation, occupation, maintenance, or use of telecommunication cable that has been installed on or in a Settlement Corridor, (a) the Right-of-Way Provider (the railroad company from which AT&T acquired such rights as the railroad had to convey, to install, occupy, maintain, or use telecommunications cable thereon or therein), including but not limited to the following railroad companies: Consolidated Rail Corporation (Conrail), Grand Trunk & Western Railroad, CSX Transportation, Inc. and Indiana Railroad Company; (b) any and all of such Right-of-Way Provider's past or present officers, directors, agents,

servants, attorneys, employees, predecessors-in-interest, successors, shareholders, subsidiaries, parents, affiliates, and assigns; and (c) any Person to which AT&T heretofore sold, granted, leased or otherwise transferred, and/or hereafter sells, grants, leases or otherwise transfers, all or any part of the rights in or use of a telecommunications cable system on a Settlement Corridor, provided such telecommunications system is constructed, installed, or acquired by AT&T for its own primary use and/or as provided for in the Grant of Communications System Easement/Release. Class Members retain all other claims, if any, against the listed railroads except those released above relating to AT&T cable.

## VIII. ADMINISTRATIVE/NOTICE COSTS/ ATTORNEYS' FEES AND EXPENSES

**23. Administrative/Notice Costs.** AT&T is responsible for the reasonable costs of administering the Settlement and providing this Court Notice. AT&T has made an initial deposit of $50,000 (fifty thousand dollars) into an administrative account for this purpose, and shall make additional deposits in the future as the Court deems necessary.

**24. Class Counsel Fees and Expenses.** AT&T is also responsible for the reasonable fees and expenses of Class Counsel as awarded by the Court. Class Counsel have agreed not to seek an award of fees and expenses in excess of up to 50% of actual available benefits to the Class, not to exceed 20% of total potential claimant benefits, and AT&T has agreed not to object to an award of fees and expenses in that amount. Total potential claimant benefits are the total cash benefits available to Class Members based on the total associated linear frontage adjoining the Cable Side of the Settlement Corridors. Actual available benefits are the total cash benefits available for payment to Class Members based on the total linear frontage adjoining Settlement Corridors on the Cable Side for which (a) no showing is made that the Right-of-Way Provider owns a fee simple interest or (b) the Deed Review Committee or the Court has determined is eligible for benefits.

## IX. CLAIMS ADMINISTRATION

**25. Claims Administration; Claims Office.** After consulting with the parties, the Court has appointed Jon D. Noland as Claims Administrator. The Claims Administrator, with the assistance of his agents or employees, including Claims Officers, shall be responsible for processing and evaluating claims. Operations of the Claims Office shall be subject to the continuing jurisdiction of the Court and subject to Court review.

## 26. Filing of Claims.

(a) If you wish to apply for Current Landowner Benefits, you must mail or fax to the Claims Office at (214) 753-5050 by the Claim Deadline a completed Claim Form and a copy of the recorded deed(s) through which you assert title. The deed copy must either (i) have been certified by the recorder's office or (ii) show on its face pertinent recording information, including the date and office of recording, deed book and page, and document number. A photocopy of the deed that you obtained and had recorded when you purchased your property should be sufficient.

(b) If there are liens on your property, and your claim is in excess of $10,000 (ten thousand dollars), before receiving benefits, you also may be asked to provide a letter authorizing the Claims Office or AT&T to obtain the lienholder's consent and approval to your release of AT&T. (Such consent and approval shall be a prerequisite to such payment).

(c) If you wish to apply only for Prior Landowner Benefits, you must mail or fax a completed Claim Form to the Claims Office by the Claims Deadline, but you do *not* need to submit a copy of your deed. In certain circumstances the Claims Office might later ask for a copy of the deed to your property, but the filing of the Claim Form normally will satisfy your claim filing obligation.

(d) Class Members shall have 30 days from the Claims Deadline (or from a Claims Office request) to cure any deficiencies in the claim submission.

(e) The Claims Office, if requested, will acknowledge receipt of your Claim Form and your documentation, and provide information as to your claim's status. The Claims Office is not permitted to give legal advice.

(f) All claims must be signed under penalties of perjury.

DSMDB.2041792.3

**27. Claims Processing; Appeals.**

(a) The Claims Office shall promptly process claims as filed in accordance with the Claims Processing Protocol, which is Exhibit C to the Settlement Agreement and is set forth as Attachment C hereto.

(b) If the Claims Office determines that a claim is not eligible for payment under governing criteria, the Claims Office shall notify the claimant and Class Counsel as to its determination and the grounds therefor. Such claimants shall have a maximum of 30 (thirty) days from the date of mailing of the Claims Office's notice either to cure deficiencies in their claim submissions or to provide written notice of an intention to appeal. Class Counsel, as requested, may advise and assist individual claimants with respect to their claim submissions.

(c) Any appeals by Claimants or AT&T from Claims Office determinations on the merits of individual Class Member claim submissions shall be made to the Claims Administrator within 30 (thirty) days of the date of the mailing and, the decision of the Claims Administrator shall be final. Claimants so appealing shall provide notice thereof to the Claims Office which shall provide notice of the appeal to the parties to the Settlement Agreement. At their election, counsel for AT&T and Class Counsel may file papers in support of or in opposition to any such appeals. No claimant so appealing shall be paid while such claimant's appeal is pending.

**28. Payments.** Claims will be paid within 30 (thirty) days of final approval, except that no claims shall be paid unless and until an Order and Judgment is entered approving the Settlement and such Order and Judgment has (after any appeals) become final.

**29. Maintenance of Records.** The Claims Office will maintain all documents and records relating to the submission and review of claims under the compensation program.

## X. AT&T'S WITHDRAWAL OPTION

**30. AT&T's Right of Withdrawal.** If, in AT&T's reasonable view in light of past settlements, an excessive number of Persons have opted out of the Settlement Class, AT&T shall have the right to withdraw from the Settlement Agreement within 30 (thirty) days of the date when the Claims Office informs AT&T of the

names, numbers of Persons, and, if known, addresses of such Persons who have opted out of the Settlement Class. The Claims Office shall not pay any claims before AT&T has made a determination to remain in the Settlement, and the Settlement and the Final Order and Judgment have become Final.

## XI. OPT-OUT RIGHTS OF CLASS MEMBERS

**31. Opt-Out Right.** Because this class action is certified under Federal Rule of Civil Procedure 23(b)(3), potential Class Members are afforded the opportunity to exclude themselves from the Settlement Class, if they so desire. The effects of opting out and of remaining in the Settlement Class are discussed in Paragraphs 33-34 below.

(a) To exercise the right to opt out, you must complete and sign the enclosed Exclusion Form, which is Exhibit F to the Agreement, and return it, postmarked no later than _____, _____, to:

Indiana Case
TeleCable Settlement Center
Attn: Exclusion
P.O. Box 131110
Dallas, TX 75313-1110

The Exclusion Form should **NOT** be sent directly to the Clerk of the Court.

(b) **If you file an Exclusion Form and opt out, do not submit a Claim Form; you will *not* be eligible for benefits.**

(c) If one of the current owners of a jointly owned parcel of land underlying or adjoining a Settlement Corridor excludes himself or herself from the Settlement Class, all of the co-owners of that parcel shall also be excluded from the Settlement Class.

**32. Personal and Individual Choice; Effect on Others.** The decision whether to exclude yourself (and your co-owners) from the Settlement Class is yours alone. It should be made only after considering the effects of that decision on your rights. You should be aware, however, that if AT&T concludes that too many persons have excluded themselves from the Settlement Class, it would have the option to withdraw from the Settlement – which would affect the benefits afforded to

-8-

persons wanting to participate in the Settlement and could even lead to cancellation of the Settlement.

## XII.    IF YOU OPT OUT

**33.    Effects of Exclusion.**  If you opt out by _____, ____ (the opt-out deadline):

(a)    You (and your co-owners) will **NOT** be eligible to receive any benefits under the Settlement Agreement.

(b)    You (and your co-owners) will retain any rights you may have to file or pursue – at your own expense or as part of another class action – any claims and lawsuits against AT&T and any of the Released Parties concerning AT&T cable on the Settlement Corridor. State laws may limit the time within which any suits must be filed.  The existence or terms of the Settlement Agreement or this Court Notice cannot be used as evidence of any admission by AT&T or any other Released Party regarding fault, liability, level of damages, or any similar issues.

(c)    If you are a current owner, you may be subject to an individual condemnation suit by AT&T under the laws of Indiana, in which AT&T might seek to condemn a permanent easement for telecommunication purposes.

## XIII.    IF YOU REMAIN IN THE CLASS

**34.    Effects of Remaining in the Settlement Class.**  If you are a Class Member and do not opt out by the opt-out deadline, you will remain a Class Member without taking any further action.  As a Class Member:

(a)    If you qualify and timely file a claim form, you may receive cash benefits of up to approximately $2.10 per linear foot with a $100 minimum payment per Qualifying Parcel, with no obligation on your part to pay administrative expenses or attorneys' fees.

(b)    You may present any written comments or objections concerning the proposed Settlement you want the Court to consider at the fairness hearing and may appear in person or through counsel at the hearing (see Paragraph 35 below).  This objection may include objections as to the adequacy of the Class Representative or Class Counsel.

(c)    You and any listed co-owners will (if the Settlement is approved) be members of the Settlement Class whose rights are determined by the Settlement Agreement and the Order and Judgment, which shall affirm AT&T's right, as to all Class Members and their successors, to use a 16½-foot-wide strip of the Settlement Corridor in accordance with the terms of the Grant of Communications System Easement/Release; and you will release any further claims against AT&T and other Released Parties arising out of AT&T's installation, occupation, maintenance, and use of telecommunication cable that has been installed on Settlement Corridors, but you will retain any rights to any claims or lawsuits against other persons and entities for matters not relating to AT&T's telecommunication cable.  State laws may limit the time within which such suits must be filed.

## XIV.    FAIRNESS HEARING

**35.    Final Hearing; Purposes.**  The Court has preliminarily approved this Settlement as fair, reasonable, and adequate to the Settlement Class, but the Court will conduct a hearing to make a final determination whether the proposed settlement is fair, reasonable, and adequate and should be approved.  The Court may, without further notice to Class Members, continue or adjourn and reconvene the hearing in the same or another United States Courthouse as may be suitable in light of any objections or other comments from Class Members.

(a)    Any Class Member who does not elect to be excluded from the Settlement Class may present written comments or objections to the proposed settlement by mailing the same, postmarked no later than _____ , ____, to:

Indiana Case
TeleCable Settlement Center
Attn: Objections
P.O. Box 131110
Dallas, TX  75313-1110

Any request to appear at the hearing, in person or through counsel, must be clearly indicated on the written submission and mailed postmarked no later than _____, ____.  Anyone submitting comments or objections to the proposed settlement no later than _____, _____, will receive confirmation of the date and location of the final fairness hearing.

-9-

(b) Class Members who support the proposed settlement need not appear at the hearing or submit any comments. Any Class Member not submitting written comments or objections by _____, _____, will be deemed to have waived objection and be foreclosed from objecting (by appeal or otherwise) to the proposed settlement.

(c) by visiting the website http://att.fsiwebs.net/rrcorridors.

## XV.    REPRESENTATION

**36. Employment of Attorneys.** You may retain an attorney of your own choice for advice concerning your rights or to provide services in presenting a claim under the Settlement, but you will be responsible for the fees and expenses of such attorney. You are not required, however, to have private counsel in order to submit a claim.

## XVI.    ADDITIONAL INFORMATION

**37. Court Filing.** You may inspect documents on file with the Court at the Office of the Clerk of the Court, United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana 46204 during regular business hours and may obtain copies of these documents (including the Settlement Agreement and the _____, _____ Order conditionally certifying the Settlement Class and preliminarily approving the Settlement) by payment of $0.50 per page. The Office of the Clerk of the Court is not permitted to give legal advice. The Claims Office is authorized to answer administrative and clerical inquiries relating to claims and the claim process, but not to give legal advice.

**38. Assistance. You should save this Court Notice for reference concerning your rights and benefits, the claim process, the important deadlines, and telephone numbers and Internet addresses.** You may obtain further information concerning the proposed settlement and your rights and options in any one or more of the following ways:

(a) by requesting legal assistance from Class Counsel by use of the toll-free Settlement Information Line at **1-877-288-2808**, or by e-mailing questions to **<mdabio@price-law.com>**;

(b) by consulting an attorney of your choice; or

This Court Notice was approved on _____, ____, by the Honorable David F. Hamilton, U.S. District Court, Judge for the Southern District of Indiana, after consulting with Class Counsel and counsel for AT&T, for distribution to putative Class Members as an official notice of the Court.

/s/ _____

Laura A. Briggs
Clerk of the Court

**ATTACHMENTS:**

    **A**   Settlement Corridor Map
    **B**   Grant of Communications System Easement/Release (Agreement Exhibit B)
    **C**   Claims Processing Protocol  (Agreement Exhibit C)

DSMDB.2041792.3

# EXHIBIT F

DSMDB.2041794.3

# INDIANA
## "TELECOMMUNICATION CABLE"/
## RAILROAD CORRIDOR CLASS SETTLEMENT

| EXCLUSION FORM |
|---|

**This is NOT a Claim Form. It EXCLUDES you (and any co-owners) from
the Settlement Class. Use this form ONLY if you wish to "OPT OUT" of the Settlement Class.
DO NOT use this form if you want to receive benefits under the Settlement.**

- **If Property Owner is an Individual, Complete the Front of This Form**

- **If Property Owner is an Organization or Other Entity, Complete the Back of This Form**

---

### IDENTITY OF INDIVIDUAL PERSON TO BE EXCLUDED FROM SETTLEMENT CLASS

| *First Name* | *Middle Name/Initial* | *Last Name* | *Social Security Number* |
|---|---|---|---|
| | | | |

| *Other Names by Which You Also Are or Were Formerly Known (e.g., Maiden Name)(or Court-Appointed Representative's Name)* | | *Date of Birth* |
|---|---|---|
| | | |

| *Current Mailing Address (or Court-Appointed Representative's Address) (Street or P.O. Box)* | | *E-mail Address* |
|---|---|---|
| | | |

| *City* | *State* | *ZIP Code* | *Telephone Number (with Area Code)* |
|---|---|---|---|
| | | | |

### TELECOMMUNICATION CABLE PROPERTY LOCATION
*(if different from mailing address above)*

| *Street Address* | *City* | *State* | *ZIP Code* |
|---|---|---|---|
| | | | |

Check one:

    I am the above-identified person. I am signing this form as an election to exclude myself (and any co-owners) from the Indiana "Telecommunication Cable"/Railroad Corridor Settlement Class.

    I am the guardian, custodian, executor, or other court-appointed representative of the above-identified person (or person's estate). I am signing this form as an election to exclude such person (and any co-owners) from the Indiana "Telecommunication Cable"/Railroad Corridor Settlement Class. [Please attach copy of court order appointing you as representative, and provide your name, mailing address, and telephone number in the above blocks as indicated.]

*IN DOING SO, I UNDERSTAND THAT I WILL NOT RECEIVE ANY OF THE BENEFITS PROVIDED FOR IN THE SETTLEMENT.*

_____         _____
    *Date Signed*             *Signature (Property Owner or Court-Appointed Representative)*

*To be effective as an election to be excluded from the Settlement Class, this form must be completed, signed, and mailed (postmarked no later than _____,____) to Indiana Case, TeleCable Settlement Center, P.O. Box 131110, Dallas, TX 75313-1110.*

*The consequences of returning this Exclusion Form are explained in Paragraph 33 of the Court Notice.*

DSMDB.2041794.3

## IDENTITY OF ORGANIZATION OR ENTITY
## TO BE EXCLUDED FROM SETTLEMENT CLASS

| | |
|---|---|
| *Name of Organization or Entity* | *Legal Description (partnership, corporation, etc.)* |

*Current Mailing Address (Street or P.O. Box)*

| *City* | *State* | *ZIP Code* | *Country (if not U.S.)* | *Telephone No. (with Area Code)* |
|---|---|---|---|---|

### TELECOMMUNICATION CABLE PROPERTY LOCATION
*(if different from mailing address above)*

| *Street Address* | *City* | *State* | *ZIP Code* |
|---|---|---|---|

1.  Please provide your full name and indicate your position in or relationship to the organization or entity you represent.

    _____

    _____

2.  Please provide a current (business or home) address and telephone number for you, if different from the address and telephone number above.

    _____

    _____

    _____

3.  Provide any additional comments you would like to make to clarify this filing.

    _____

    _____

    _____

I am signing this form as an election to exclude the above-identified organization or entity from the Indiana "Telecommunication Cable" /Railroad Corridor Settlement Class. *IN DOING SO, I UNDERSTAND THAT THE ABOVE-IDENTIFIED ORGANIZATION OR ENTITY WILL NOT RECEIVE ANY OF THE BENEFITS PROVIDED FOR IN THE SETTLEMENT.*

_____     _____
*Date Signed*                                        *Signature (Property Owner or Representative)*

**To be effective as an election to be excluded from the Settlement Class, this form must be completed, signed, and mailed (postmarked no later than _____,____) to Indiana Case, TeleCable Settlement Center, P.O. Box 131110, Dallas, TX 75313-1110.**

*The consequences of returning this Exclusion Form are explained in Paragraph 33 of the Court Notice.*

DSMDB.2041794.3

# EXHIBIT G

# INDIANA
## "TELECOMMUNICATION CABLE"/
## RAILROAD CORRIDOR CLASS SETTLEMENT

---

### CLAIM FORM

---

**To make a claim for settlement benefits, you must complete the entire Claim Form,
sign it on the last page, and either fax it to (214) 753-5044 or send it to the following address
no later than _____, ____:**

Claims Administrator
Indiana Case
TeleCable Settlement Center
Attn: Claims
P.O. Box 131110
Dallas, TX 75313-1110

### _Claim Form Notes and Instructions_

1) Please type or print legibly in ink. Attach additional sheets if space is insufficient.
2) A separate Claim Form must be submitted for each parcel of land adjoining or underlying the Settlement Corridor(s).
3) The person who submits the Claim Form will be considered the primary contact for this Settlement. However, benefit checks will be payable to all owners of the parcel.
4) If you receive multiple Claim Forms and/or Notice Packages for this Settlement:
   a) You may own multiple parcels adjacent to the Settlement Corridor(s). Please submit a separate Claim Form for each of your parcels of land; and/or
   b) The Settlement Corridor may split your parcel. Generally speaking, only parcels on the cable side of the corridor are eligible for cash benefits.
5) Please attach a copy of appropriate legal documentation if needed to support a change in parcel ownership resulting from marriage, divorce, death, etc. (i.e. marriage certificate, divorce decree, death certificate, etc.).
6) If you have any questions or need further assistance, please call the Settlement Center toll free at 1-800-436-6136.

### _Please review the following guidelines to assist with your completion of this Claim Form_:

- Complete Section I _or_ Section II:
  - Section I – If you are an individual.
  - Section II – If you represent an organization or other entity.
- Answer Questions 1 through 4.
- Answer Questions 5 through 11 _only_ if you **currently** own the parcel.
- Answer Questions 12 through 14 _only_ if you **no longer** own the parcel.
- Sign and date the Claim Form on Page 4.
- Specific information regarding your property is listed on Page 4 of this Claim Form.

DSMDB.2041795.3

## Section I.

| IF PROPERTY OWNER IS AN INDIVIDUAL PERSON: | | | |
|---|---|---|---|
| *First Name* | *Middle Name/Initial* | *Last Name* | *Social Security Number* |
| *Other Names by Which You Also Are or Were Formerly Known (e.g., Maiden Name)* | | | *Date of Birth* |
| *Current Mailing Address (Street or P.O. Box)* | | *E-mail Address* | |
| *City* | *State* | *Zip Code (or Country if not USA)* | *Telephone No. (with Area Code)* Daytime    Evening |
| *Marital Status (Circle One):* MARRIED    DIVORCED    SINGLE    WIDOWED | | *Name of Spouse (if married)* | *Spouse's Social Security Number* |
| *Has marital status changed since you acquired the property?*    Yes    No | | | |
| *If YES, please explain:* | | | |

## Section II.

| IF PROPERTY OWNER IS AN ORGANIZATION OR OTHER ENTITY: | |
|---|---|
| *Name of Organization/Entity* | *Legal Description and State of Organization (partnership, corporation, etc.)* |
| *Name and Title of Representative* | *E-mail Address* |
| *Current Mailing Address (Street or P.O. Box) for Organization/Entity* | *Taxpayer I.D. No.* |
| *City*    *State*    *Zip Code* | *Country (if not U.S.A.)*    *Telephone No. (with Area Code)* |

## QUESTIONS 1-4:  FOR ALL CLAIMANTS

1. Do you **CURRENTLY** own the parcel described on Page 3 of this claim form?        Yes        No
   **If yes, ATTACH a copy of the RECORDED deed by which you acquired the property.**

2. Beside yourself, are/were any other persons or entities listed on the deed?        Yes        No
   If yes, please list their name(s) below and state their relationship, if any, to you:

-3-

| | | |
|---|---|---|
| Name | Relationship | Social Security Number |

| | | |
|---|---|---|
| Name | Relationship | Social Security Number |

| | | |
|---|---|---|
| Name | Relationship | Social Security Number |

| | | |
|---|---|---|
| Name | Relationship | Social Security Number |

3. Provide a description of the parcel for which you are claiming settlement benefits (e.g. farm, business, homestead, etc.).

_____

_____

4. Provide the address of the parcel for which you are claiming settlement benefits:

| *Street Address (if none, please describe location)* | *City* | *State* | *Zip Code* |
|---|---|---|---|
| *Property Tax Identification Number (found on property tax records distributed by your state or county taxing authority):* | | | |

## QUESTIONS 5-11: FOR CURRENT LANDOWNERS

**If you CURRENTLY OWN the parcel described in Question 3 of this Claim Form and are seeking *Current Landowner Benefits*, please answer the following questions. (If you do <u>not</u> currently own the parcel, skip to Question 12.)**

5. On what date did you (or the person or entity you represent) acquire the property? _____/_____/_____

6. From whom was the property acquired (name, address, and telephone number if known)?

_____

7. Have you (or the person or entity you represent) conveyed any interest in the property since acquiring it?     Yes     No

8. If you answered "Yes" to Question 7, identify the nature of the interest conveyed (*e.g.*, partial ownership, mortgage lien, fee interest, lien, easement, etc.), the date of conveyance, and the person or entity to whom the interest was conveyed:

| | | |
|---|---|---|
| Interest Conveyed | Month/Year | To Whom Conveyed |

| | | |
|---|---|---|
| Interest Conveyed | Month/Year | To Whom Conveyed |

DSMDB.2041795.3

9.  Provide the names and addresses of any lienholders (including banks and mortgage companies) or any other persons or entities having a lien or security interest in the property for which you are claiming benefits.

_____     _____
Name                                            Address

_____     _____
Name                                            Address

10. Check the following box <u>ONLY</u> if you do <u>NOT</u> wish to participate in the Corridor Enterprise discussed in Paragraph 19 of the Court Notice.

I do <u>NOT</u> want to participate in the Corridor Enterprise.

11. To qualify for *Current Landowner Benefits*, **you must attach a copy of the recorded deed through which you are claiming benefits**. The copy must either have been certified by the appropriate Recorder's Office or show on its face pertinent recording information (the date and office of recording, the deed book and page, and the document number). **Your claim will be considered incomplete if a recorded deed is not attached, and you will not qualify for benefits unless the claim is completed and a copy of the recorded deed is provided.**

Have you attached a copy of the recorded deed?          Yes          No

## QUESTIONS 12-14:  FOR PRIOR LANDOWNERS

**If you NO LONGER OWN the parcel described in Question 3 of this Claim Form and are seeking *Prior Landowner Benefits*, please answer the following questions:**

12. On what date did you acquire the property?  _____/_____/_____

13. On what date did you dispose of the property?  _____/_____/_____

14. To whom did you sell the property (name, address, and telephone number if known)?  _____

_____

| THE CLASS MEMBER CLAIMING |
| BENEFITS MUST COMPLETE AND SIGN BELOW |

I declare under penalty of perjury that the information on this Claim Form is true, correct, and complete to the best of my knowledge, information, and belief.

_____     _____
*Date Signed*                           *Signature (Class Member or Representative)*

***NOTE:  To preserve eligibility for Landowner Benefits under the Settlement, this Claim Form must be completed, <u>signed</u>, and mailed or faxed to the Claims Administrator, postmarked no later than _____, ____.***

DSMDB.2041795.3

***RELEVANT PARCEL INFORMATION:***

**Tax Parcel ID Number:**
**Property Address:**
**Property Description:**

**Name**
**Care Of**
**Address1**
**Address2**
**City, State Zip**

DSMDB.2041795.3

# EXHIBIT H

# INDIANA "TELECOMMUNICATION CABLE"/ RAILROAD CORRIDOR CLASS SETTLEMENT

## RELEASE

In consideration of the sum of $10 (ten dollars) and other good and valuable consideration, receipt whereof is hereby acknowledged, the undersigned, _____ (hereinafter collectively with his/her/its successors-in-interest called "**Releasor**"), **hereby releases** (1) AT&T Corp., a New York corporation, its associated and allied companies, and its and their successors and assigns (hereinafter called "**AT&T**") and its predecessors, successors, and past and present subsidiaries, assigns, affiliates, officers, directors, agents, attorneys, insurers, and employees with respect to Settled Claims; and (2) only with respect to any and all claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, for liability or damages arising out of or relating to AT&T's installation, occupancy, maintenance, or use of telecommunication cable that has been installed on or in a Settlement Corridor, the Right-of-Way Provider; all of such Right-of-Way Provider's past or present officers, directors, agents, servants, attorneys, employees, predecessors-in-interest, successors, shareholders, subsidiaries, parents, affiliates, and assigns; and any Person to which AT&T heretofore sold, granted, leased, or otherwise transferred, and/or hereafter sells, grants, leases, or otherwise transfers, all or any part of the rights in or use of a Telecommunications Cable System on a Settlement Corridor which has been or may be constructed, installed, or acquired by AT&T for its primary use.

"**Telecommunication Cable System**" means AT&T's present telecommunication cable system, which system includes without limitation underground and/or surface cables, conduits, wires, pipes, ducts, waveguides, surface testing terminals, manholes, markers, regeneration huts, and other appurtenances.

"**Settled Claims**" means claims arising out of conduct occurring prior to _____, ____ relating to the installation, occupation, maintenance, or use of telecommunication cable that has been installed on or in a railroad corridor covered by the Indiana "Telecommunication Cable"/Railroad Corridor Class Settlement Agreement, dated _____, ____, or the Class Action Complaint in *Vera J. Hinshaw, et al v. AT&T Corp., et al.,* Case No. 1:98-cv-1300-DFH-TAB (S.D. Ind.) ("a Settlement Corridor"), including without limitation claims for trespass, slander of title, unjust enrichment, criminal mischief, criminal trespass, and inverse condemnation, any and all such claims, including assigned claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, that are or may be asserted now or in the future by any or all Class Members against AT&T and/or any Released Party; and (b) any future claims that would be based upon AT&T's lawful exercise of easement rights received under the Grant of Communications System Easement/Release and/or Final Order and Judgment.

Dated: _____

Signed: _____

# EXHIBIT I

## INDIANA
## "TELECOMMUNICATION CABLE"/
## RAILROAD CORRIDOR CLASS SETTLEMENT

| REQUEST FORM |
|---|

**The Claims Office's records reflect that you are the owner of property that adjoins a Settlement Corridor on the opposite side of where AT&T telecommunications cable has been installed. Pursuant to the Settlement Agreement, you would not be eligible for cash benefits from AT&T, unless this information is in error or you can show ownership of the cable side of the Settlement Corridor. You still will be eligible, however, to receive whatever benefits may flow from a Corridor Enterprise.**

**If you believe your property adjoins the side of the Settlement Corridor where AT&T telecommunications cable has been installed OR if the deed to your property includes the side of the Settlement Corridor where AT&T telecommunications cable has been installed, you may be eligible for cash benefits from AT&T and should request a claim form immediately.**

**<u>PLEASE READ THE ENCLOSED COURT NOTICE FOR FURTHER INFORMATION ABOUT SETTLEMENT BENEFITS AND THE CORRIDOR ENTERPRISE.</u>**

   To request a Claim Form, and/or exclude yourself from participation in the Corridor Enterprise, please provide the requested information on the back of this Request Form and either fax the Form to the Claims Office at (214) 753-5044, or send it to the following address:

**Claims Administrator**
**Indiana Case**
**TeleCable Settlement Center**
**Attn: Claims**
**P.O. Box 131110**
**Dallas, Texas 75313-1110**

You may also download a Claim Form from the Settlement's website:
**http://att.fsiwebs.net/rrcorridors**

If you have any questions regarding this form, please contact the Settlement Center at:
1-800-436-6136

**All claims must be filed no later than _____, _____.**

**(See reverse of page)**

DSMDB.2041797.3

## IF PROPERTY OWNER IS AN INDIVIDUAL PERSON:

| | | | |
|---|---|---|---|
| *First Name* | *Middle Name/Initial* | *Last Name* | *Social Security Number* |
| *Other Names by Which You Also Are or Were Formerly Known (e.g., Maiden Name)* | | | *Date of Birth* |
| *Current Mailing Address (Street or P.O. Box)* | | *E-mail Address* | |
| *City* | *State* | *ZIP Code* | *Telephone Number (with Area Code)* |

## IF PROPERTY OWNER IS AN ORGANIZATION OR OTHER ENTITY:

| | | |
|---|---|---|
| *Name of Organization/Entity* | *Legal Description and State of organization (partnership, corporation, etc.)* | |
| *Name of Representative* | *E-mail Address* | |
| *Current Mailing Address (Street or P.O. Box) for Organization/Entity* | *Taxpayer I.D. Number* | |
| *City* | *State* | *ZIP Code* | *Country (if not U.S.A.)* | *Telephone No. (with Area Code)* |

## TELECOMMUNICATION CABLE PROPERTY LOCATION
### *(if different from mailing address above)*

| | | | |
|---|---|---|---|
| *Street Address* | *City* | *State* | *ZIP Code* |

I believe I may be eligible for cash benefits from AT&T because:

      (a) my property adjoins a Settlement Corridor on the side on which AT&T telecommunications cable has been installed **or**,

      (b) the deed to my property includes the property on the side of the Settlement Corridor on which AT&T telecommunications cable has been installed. Please send me a Claim Form.

      I do <u>NOT</u> want to participate in the Corridor Enterprise.

_____  
Date Signed

_____  
Signature

DSMDB.2041797.3