| | | | | |
|---|---|---|---|---|
| **Authors** | **37,412** | 4,890 | 297,321 | 8 |
| **Agents** | **4,312** | 0 | 22,354 | 5 |
| **Publisher** | **880** | 814 | 787,942 | 895 |

| | | | | |
|---|---|---|---|---|
| **United States (US)** | **21,787** | 19,960 | 1,490 | 337 |
| **Canada (CA)** | **3,818** | 3,537 | 246 | 35 |
| **United Kingdom (GB)** | **3,070** | 2,764 | 216 | 90 |
| **Australia (AU)** | **2,197** | 1,894 | 267 | 36 |

| | | | | |
|---|---|---|---|---|
| **United States (US)** | **564,477** | 179,257 | 377,091 | 8,129 |
| **Canada (CA)** | **116,832** | 21,690 | 94,771 | 371 |
| **United Kingdom (GB)** | **217,716** | 36,021 | 174,936 | 6,759 |
| **Australia (AU)** | **19,000** | 14.432 | 3.621 | 947 |

| | |
|---|---|
| **Authors** | **20,696** |
| **Agents** | **534** |
| **Publisher** | **599** |

*Notes:*
*\* country detected using browser settings*
*\* more top countries can be seen in corresponding graphs attached*

GOOGLE BOOK SEARCH SETTLEMENT ADMINISTRATOR
C/O RUST CONSULTING
PO BOX 9364
MINNEAPOLIS, MN 55440-9364
UNITED STATES OF AMERICA

April 8, 2009

To Whom It May Concern

As an author (or author's heir or successor) your legal rights may be affected by the proposed settlement of a class action lawsuit regarding Google's scanning of books and other writings.

A summary of the Google Book Search settlement appears [at the end of this email/on the reverse of this page].  Please read this summary carefully.

If you have questions about the settlement, please visit http://www.googlebooksettlement.com, email the Settlement Administrator at BookSettlement@rustconsulting.com.

**Persons Outside the United States:** This settlement may affect you because it covers U.S. copyright interests in books published outside the United States. If you hold such an interest in a book or other material in a book, this settlement could bind you unless you timely opt out.

# If You Are a Book Author, Book Publisher or Other Person Who Owns a Copyright in a Book or Other Writing,

## Your rights may be affected by a class action settlement regarding Google's scanning and use of Books and other writings.

Authors and publishers filed a class action lawsuit, claiming Google violated the copyrights of authors, publishers and other copyright holders ("Rightsholders") by scanning in-copyright Books and Inserts, and displaying excerpts, without permission. Google denies the claims. The parties have agreed to a settlement. This summary provides basic information about the settlement. "Books" and "Inserts" are described below.

### What Does the Settlement Provide?

The settlement, if Court-approved, will authorize Google to scan in-copyright Books and Inserts in the United States, and maintain an electronic database of Books. For out-of-print Books and, if permitted by Rightsholders of in-print Books, Google will be able to sell access to individual Books and institutional subscriptions to the database, place advertisements on any page dedicated to a Book, and make other commercial uses of Books. At any time, Rightsholders can change instructions to Google regarding any of those uses. Through a Book Rights Registry ("Registry") established by the settlement, Google will pay Rightsholders 63% of all revenues from these uses.

Google also will pay $34.5 million to establish and fund the initial operations of the Registry and for notice and settlement administration costs, and at least $45 million for cash payments to Rightsholders of Books and Inserts that Google scans prior to the deadline for opting out of the settlement.

### Who Is Included?

The settlement class includes all persons worldwide who hold a U.S. copyright interest in any Book or Insert. **The meaning of "U.S. copyright interest" is broad. Wherever you are located, please read the full Notice to determine whether you are included in the settlement.**

There are two Sub-Classes:
- The *"Author Sub-Class"* (authors of Books and other writings, and their heirs, successors and assigns), and
- The *"Publisher Sub-Class"* (publishers of Books and periodicals, and their successors and assigns).

### What Material Is Covered?

"Books" include in-copyright written works, such as novels, textbooks, dissertations, and other writings, that were published or distributed in hard copy format on or before **January 5, 2009**. U.S. works must be registered with the U.S. Copyright Office to be included in the settlement. "Books" do not include periodicals, personal papers, sheet music, and public domain or government works.

"Inserts" include any text and other material, such as forewords, essays, poems, quotations, letters, song lyrics, children's Book illustrations, sheet music, charts, and graphs, if independently protected by U.S. copyright, contained in a Book, a government work or a public domain book published on or before **January 5, 2009** and, if U.S. works, registered (alone or as part of another work) with the U.S. Copyright Office. Inserts do not include pictorial content (except for children's Book illustrations), or any public domain or government works.

**The Notice contains a more detailed description of these terms and other essential information about the settlement.**

### What Should I do?

Please read the full Notice, which is available at http://www.googlebooksettlement.com. Decide whether you should:
- Remain in the settlement. If you do so, you will be bound by the Court's rulings, including a release of your claims against Google.
- Object to or comment on the settlement. You must object/comment in writing by **May 5, 2009**.
- Opt out of the settlement and keep your right to sue Google individually. You must opt out in writing by **May 5, 2009**.
- File a claim for a cash payment (if you are eligible to do so). You must file your claim by **January 5, 2010**.

The Court has appointed Class Counsel to represent the two Sub-Classes. If the settlement is approved, Class Counsel for the Author Sub-Class will request attorneys' fees and expenses that Google has agreed to pay. You can also hire your own attorney at your own cost.

The Court will determine whether to approve the settlement at a Fairness Hearing on **June 11, 2009 at 1:00 p.m.**

## Get Complete Information, Including the Full Notice:

## Visit: www.googlebooksettlement.com  Call: 1-888-356-0248

**Write:  Google Book Search Settlement Administrator, c/o Rust Consulting
P.O. Box 9364, Minneapolis, MN  55440-9364 United States of America**

**GOOGLE BOOK SEARCH SETTLEMENT
ADMINISTRATOR
C/O RUST CONSULTING, INC.
PO BOX 9364
MINNEAPOLIS, MN 55440-9364
UNITED STATES OF AMERICA**

To whom it may concern:

You are receiving this notice because our records indicate you are a book publisher. Your legal rights in the United States and those of the authors whose books you publish may be affected by the settlement of a class action lawsuit in the United States regarding Google's scanning of books and other writings.

Enclosed please find the full Notice, which has detailed information about the settlement, important terms, the claims process, and key dates. It is also available in PDF form, along with other detailed information about the settlement, at http://www.googlebooksettlement.com. These documents and assistance with the claims process are also available from the Settlement Administrator by email (booksettlement_en@rustconsulting.com) or telephone (Toll-Free 1.888.356.0248).

We would appreciate your assistance in distributing information about the settlement to as many authors and heirs as possible. We ask that you distribute the Notice or information containing the links above to them. We can provide assistance, including sample language that you could use to communicate with authors, whether in emails or on inserts to enclose with royalty checks.

If you have questions about the settlement, please visit http://www.googlebooksettlement.com or email the Settlement Administrator at booksettlement_en@rustconsulting.com. If you have questions about distributing the Notice or about the ongoing program to notify class members worldwide about this settlement, please contact the Notice Provider at at GoogleSettlement@kinsella novak.com.

Sincerely, Google Book Search Settlement
Administrator
booksettlement_en@rustconsulting.com
Toll-Free 1.888.356.0248

# If You Are A Book Author, Book Publisher
# Or Other Person Who Owns A Copyright In Books
# Or Other Writings,

## Your Rights May Be Affected By A Class Action Settlement
## Regarding Google's Digitization Of Books And Other Writings.

**Attention Authors And Publishers Outside The United States:**
**The Settlement May Affect Your Rights As Well.**
**Please Read This Notice Carefully.**

- A class action lawsuit claims that Google violated the copyrights of authors, publishers and other owners of U.S. copyrights in books and other writings by digitizing (scanning) them, creating an electronic database of books, and displaying short excerpts without the copyright owners' permission.

- A proposed settlement of the lawsuit (referred to in this Notice as the "Settlement") has been reached on behalf of a class of all owners of U.S. copyrights in books and in writings included in books and other works published on or before January 5, 2009. **Books published after January 5, 2009 are not included in the Settlement.** (Please see Question 6 below for a description of "Books," as this Notice uses that term.) There are two sub-classes:

  - The "Author Sub-Class" (authors of Books and other writings, their heirs, successors and assigns, and all other Settlement Class members who are not members of the Publisher Sub-Class), and

  - The "Publisher Sub-Class" (companies that publish Books and periodicals and their successors and assigns).

- The Settlement benefits to the class include:

  - 63% of the revenues earned from Google's sale of subscriptions to an electronic Books database, sale of online access to Books, advertising revenues, and other commercial uses.

  - US $34.5 million paid by Google to establish and maintain a Book Rights Registry ("Registry") to collect revenues from Google and distribute those revenues to copyright owners.

  - The right of copyright owners to determine whether and to what extent Google may use their works.

- US $45 million paid by Google to copyright owners whose Books and Inserts Google digitized without permission on or before May 5, 2009.

**NOTE:** To participate in the Settlement, you must complete the **Claim Form**. It is available at http://www.googlebooksettlement.com. If you do not have access to the Internet, you may request a **Claim Form** from the Settlement Administrator. (See Question 24 below for the Settlement Administrator's contact information.)

### Your Rights And Options
### – And The Deadlines To Exercise Them –
### Are Explained In This Notice

# WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**     **4**
1. Why did I get this Notice? ........................................................................................... 4
2. What is the lawsuit about? .......................................................................................... 4
3. What is a class action? ................................................................................................ 4
4. Why is there a Settlement? ......................................................................................... 5
5. Who is a Class Member? ............................................................................................. 5
6. What are "Books" and "Inserts" as used in the Settlement and this Notice? ............. 7
7. Who are the Participating Libraries? .......................................................................... 9

**BENEFITS OF THE SETTLEMENT**     **9**
8. Overview of the Settlement Benefits ........................................................................... 9
9. What are Rightsholders' rights regarding their Books and Inserts? ......................... 11
10. What are Authors' and Publishers' rights under the Author-Publisher Procedures?.. 20

**REMAINING IN THE SETTLEMENT**     **23**
11. What happens if I do nothing? .................................................................................. 23
12. What entities am I releasing? .................................................................................... 23
13. If I remain in the Settlement, what claims am I specifically giving up? ................... 24

**OPTING OUT OF THE SETTLEMENT**     **25**
14. What do I do if I don't want to be in the Settlement? ............................................... 25
15. How do I opt out of the Settlement? ......................................................................... 25

**OBJECTING TO OR COMMENTING ON THE SETTLEMENT**     **25**
16. May I object to or comment on the Settlement? ....................................................... 25
17. What is the difference between objecting to the Settlement and opting out of the Settlement? ............................................................................................................... 26

**THE LAWYERS REPRESENTING YOU**     **27**
18. Do I have a lawyer representing my interests in these cases? ................................... 27
19. How will the lawyers be paid? .................................................................................. 27
20. Should I get my own lawyer? ................................................................................... 27

**THE COURT'S FINAL APPROVAL HEARING**     **27**
21. When and where will the Court decide whether to grant final approval of the Settlement? ............................................................................................................... 27
22. Must I attend the Fairness Hearing? ......................................................................... 28
23. May I speak at the Fairness Hearing? ....................................................................... 28

**GETTING MORE INFORMATION**     **28**
24. Where do I obtain more information? ........................................................................ 28

This Notice is only a summary of the Settlement Agreement and of your rights. You are encouraged to review the complete Settlement Agreement carefully. It is available at http://www.googlebooksettlement.com/agreement.html or from the Settlement Administrator. (See Question 24 for the Settlement Administrator's contact information.)

## BASIC INFORMATION

**1.    Why did I get this Notice?**

You received this Notice because the Settlement may affect you. You may be a Book author, publisher, or other person who owns a U.S. copyright interest in Books, or in other writings that are included in Books, public domain works or government works (called "Inserts" in the Settlement), that Google is digitizing without permission.

This Notice explains:

- What the lawsuit and the Settlement are about.

- Who is affected by the Settlement.

- Who represents the Sub-Classes.

- Your legal rights.

- How and by when you need to act.

**2.    What is the lawsuit about?**

This lawsuit involves Google's highly publicized Google Library Project ("GLP"). In 2004, Google announced that it had entered into agreements with several libraries to digitize Books and other writings in those libraries' collections. Google has already digitized over seven million books, including millions of Books that are still in copyright in the United States. Google users can search Google's "digital library" and view "snippets," meaning several lines of text, from Books.

GLP is one way in which Google is digitizing Books for its "Google Book Search" program (see http://books.google.com). The Google Partner Program (under which Google gets permission from publishers and authors to use their copyrighted works, see https://books.google.com/partner) also contributes works to Google Book Search. Although the Partner Program is not the subject of this Settlement, this Settlement might affect members of the Partner Program.

**3.    What is a class action?**

In a class action lawsuit, one or more "class representatives" sue on behalf of others who have similar claims. All such persons are, together, a "class" and each is a "class member." The Court must determine if it will allow the lawsuit to proceed as a class action. If it does, the Settlement will affect everyone who is a member of the class. To find out if you are a member of the class in this Settlement, see Question 5 below.

In this lawsuit, the persons who sued ("Plaintiffs") and Google Inc. ("Google," the "defendant") have agreed to the Settlement. As part of the Settlement, several libraries that have permitted or will permit Google to digitize Books and other works in their collections may also participate in the Settlement ("Participating

Libraries"). The Court has preliminarily approved the Settlement for the Class and the two Sub-Classes of affected persons – the Author Sub-Class and the Publisher Sub-Class.

Five publishers have brought a separate lawsuit against Google involving GLP that raises issues identical to those in this class action lawsuit. The publishers' lawsuit will be dismissed after the date when the Settlement of this lawsuit becomes final (the "Effective Date"). For more information about the publishers' lawsuit, go to Question 19 below.

## 4.    Why is there a Settlement?

After lengthy investigations by the Plaintiffs and Google, including the review of millions of pages of documents produced by the parties, and after more than two years of settlement negotiations, the parties agreed to the Settlement.

A settlement is an agreement between a plaintiff and a defendant to resolve a lawsuit. Settlements conclude litigation without the court or a jury ruling in favor of the plaintiff or the defendant. A settlement allows the parties to avoid the cost and risk of a trial. In the settlement of a class action lawsuit, the representatives for the class and their attorneys ask the court to approve the settlement as fair, reasonable and adequate. In this case, if the Court approves the Settlement, then Google will no longer be legally responsible for the claims made in this lawsuit.

Google denies any wrongdoing or liability, and denies that any member of the class is entitled to compensation for damages. The Court has not ruled on any of the parties' claims.

## 5.    Who is a Class Member?

The class consists of all persons (and their heirs, successors and assigns) who, as of January 5, 2009 (the Notice Commencement Date), own a "U.S. copyright interest" in one or more Books or Inserts that is "implicated by a use" authorized by the Settlement (the "Class") (See Question 9 below for a description of such uses).

You own a "U.S. copyright interest" if you own, or have an exclusive license in, a copyright protected by United States copyright law. For example, if you are an author, you own the copyright in your Book (unless you have completely assigned all of your copyright interests to another person or unless you wrote the Book as a "work for hire"). You also own a U.S. copyright in a Book if you have the exclusive right to publish that Book in the United States or if you have the legal right to sue another for infringing your rights in the Book. Several persons may have U.S. copyright interests in the same Book, such as co-authors, an author and a publisher, and heirs of an author.

**ATTENTION: AUTHORS AND PUBLISHERS OUTSIDE THE UNITED STATES:** If you are a rightsholder who is a national of, or is otherwise located in, a country other than the United States, you are likely to own a U.S. copyright interest if (a) your Book was published in the United States, or (b) your Book was not published in the United States, but your country has copyright relations with the United States because it is a member of the Berne Convention, or (c) your country had copyright relations with the United States at the time of the Book's publication. **You should assume that you own a U.S. copyright interest in your Book, unless you are certain that your Book was published in, and that you reside and are located in, one of the few countries that have not had or do not now have copyright relations with the United States. The U.S. Copyright Office has published a list of countries with which the United States has copyright relations, available at http://www.copyright.gov/circs/circ38a.html or from the Settlement Administrator. If you own a copyright in a Book or Insert published in a country outside the United States, you are advised to seek advice from an attorney or a Reproduction Rights Organization if you have questions**

**concerning whether to participate in or opt out of the Settlement. You may also call the appropriate telephone number on the list attached to this Notice for further advice.**

**ATTENTION HEIRS OF AUTHORS:** Because the Settlement involves the digitization and use of Books published many decades ago, it is expected that a sizable portion of the Settlement Class will consist of authors' heirs, successors and assigns. Wherever this Notice refers to "authors," it is referring as well to all of their heirs, successors and assigns who hold a U.S. copyright interest in the authors' works.

**All Class members** should go to http://www.googlebooksettlement.com to access a searchable **database of Books that are covered by this Settlement.** This database also lists government works and public domain books that Google has digitized, which may contain Inserts. The list attempts to include all in-copyright Books published on or before January 5, 2009. There will, however, be some Books covered by the Settlement that are not on the list. Therefore, even if your Book is not on the list, so long as you own a U.S. copyright interest in a Book published on or before January 5, 2009, you should consider yourself a Class member.

- "Books" and "Inserts" are important terms that are defined in Question 6 below.

- A U.S. copyright interest that is "implicated by a use" covered under the Settlement is a copyright interest in the rights to reproduce and display Books and Inserts in Display Uses, Non-Display Uses and the permitted library uses described at Questions 9(F), 9(G) and 9(I) below and in the Settlement Agreement in Article VII. "Display Uses" and "Non-Display Uses" are defined in Questions 9(F) and 9(G) below.

The Class is divided into two Sub-Classes: the Author Sub-Class and the Publisher Sub-Class.

*Author Sub-Class*

The Author Sub-Class consists of members of the Class who are authors and their heirs, successors and assigns, as well as all other members of the Class who are neither publishing companies nor their successors or assigns.

The following individuals are serving as the Author Sub-Class Representatives: Herbert Mitgang, Betty Miles, Daniel Hoffman, Paul Dickson and Joseph Goulden. The interests of the Author Sub-Class are also represented by The Authors Guild (http://www.authorsguild.org). All Author Sub-Class Representative Plaintiffs and The Authors Guild endorse the Settlement and recommend that other members of the Author Sub-Class participate in the Settlement.

*Publisher Sub-Class*

The Publisher Sub-Class consists of all members of the Class that are Book publishing companies or are periodical (e.g., newspapers, magazines, journals) publishing companies that own a U.S. copyright interest in an Insert or have published a Book, and their respective successors and assigns.

The following entities are serving as the Publisher Sub-Class Representatives: The McGraw-Hill Companies, Inc., Pearson Education, Inc., Penguin Group (USA) Inc., Simon & Schuster, Inc., and John Wiley & Sons, Inc. The interests of the Publisher Sub-Class are also represented by the Association of American Publishers (http://www.publishers.org). All Publisher Sub-Class Representative Plaintiffs and the Association of American Publishers endorse the Settlement and recommend that other members of the Publisher Sub-Class participate in the Settlement.

*Rightsholders*

Members of the Author Sub-Class and Publisher Sub-Class who do not timely and properly opt out of the Settlement (see Question 15 below) are referred to in the Settlement and in this Notice as "Rightsholders."

*Books Containing Pictorial Works*

Photographs, illustrations, maps, paintings and other pictorial works in Books are covered by the Settlement ONLY when either (a) the U.S. copyright interest in the pictorial work is owned by a person who is also a copyright owner of the Book containing the pictorial work or (b) the pictorial work is an illustration in a children's Book (see below). For example, if a copyright owner of a Book on photography is also a copyright owner of photographs in that Book, those photographs are covered by the Settlement. However, the Settlement does not cover any other photographs in the Book whose copyright is owned only by persons who are not copyright owners of the Book. Similarly, if a history Book contains a series of maps where the copyrights to those maps are owned only by persons other than a copyright owner of that history Book, those maps are not covered by the Settlement.

*Children's Book Illustrations*

Children's Book illustrations are covered by the Settlement. If you are a children's Book illustrator and have a copyright interest in your illustrations, you should claim your rights for those illustrations on the Claim Form as a Book. If you have a copyright interest in the illustrations to a Book, but do not have a copyright interest in the Book containing those illustrations, then you should claim your rights for those illustrations on the Claim Form as Inserts.

*Excluded from the Class*

Photographs, illustrations, maps, paintings and other pictorial works in Books are not considered Inserts (except for children's Book illustrations). These pictorial works are not covered by the Settlement, **UNLESS** a U.S. copyright interest in these works is held by a Rightsholder of the Book containing these pictorial works (as explained above). Therefore, to the extent that persons only own copyrights in these pictorial works and not in a Book or Insert, they are *not* members of the Class. The Settlement neither authorizes nor prohibits Google from displaying these pictorial works through the Settlement, and no claims are released concerning any use of these pictorial works.

*Author-Publisher Procedures*

Counsel for the Author Sub-Class and Counsel for the Publisher Sub-Class have established Author-Publisher Procedures, which are an important part of the Settlement. Among other things, the Author-Publisher Procedures set forth the authors' and the publishers' respective rights concerning Google's use of – and who is paid for – in-print and out-of-print Books under the Settlement. The Author-Publisher Procedures are summarized in Question 10 below, and you are also encouraged to review the Author-Publisher Procedures in their entirety, available at http://www.googlebooksettlement.com/agreement.html (see Attachment A to the Settlement Agreement) or from the Settlement Administrator.

**6.    What are "Books" and "Inserts" as used in the Settlement and this Notice?**

*Books*

For purposes of the Settlement, a "Book" is a written or printed work on sheets of paper bound together in hard copy form that, on or before January 5, 2009:

- Was published or distributed to the public or made available for public access under the authorization of the work's U.S. copyright owner(s); and

- Was registered with the U.S. Copyright Office, UNLESS the work is not a United States work under the U.S. Copyright Act, in which case such registration is not required; and

- Is subject to a U.S. copyright interest (either through ownership, joint ownership, or an exclusive license) implicated by a use authorized by the Settlement. See Question 9 for such uses.

**EXCLUDED** from the definition of "Book" are the following:

- Periodicals (e.g., newspapers, magazines or journals). See Section 1.102 of the Settlement Agreement for a full definition of "Periodicals."

- Personal papers (e.g., unpublished diaries or bundles of notes or letters).

- Sheet music and other works that are used primarily for the playing of music. See Section 1.16 of the Settlement Agreement for a more detailed description of these works.

- Public domain works, meaning works that are in the public domain under the U.S. Copyright Act.

- Government works, meaning written works that are not subject to copyright because they are authored by the U.S. government or that are subject to equivalent treatment under any state's law, as defined in Section 1.64 of the Settlement Agreement.

*Inserts*

For purposes of this Settlement, an "Insert" must:

- Consist either of (1) text, such as forewords, afterwords, prologues, epilogues, poems, quotations, letters, textual excerpts from other Books, periodicals or other works, or song lyrics; or (2) tables, charts, graphs, musical notation (i.e., notes on a staff or tablature); or (3) children's Book illustrations; and

- Be contained in a Book, government work or public domain book published on or before January 5, 2009; and

- Be protected by a U.S. copyright, where the U.S copyright interest in the Insert is held by someone *other than* a Rightsholder of the Book's "Principal Work." "Principal Work" is further defined in Question 8(C) below. For example, if you own rights in a poem that is contained in a Book for which you also hold a U.S. copyright interest, then your poem, as it appears in your Book, is not an Insert; however, it would be an Insert if the poem is contained in a Book for which someone else holds the U.S. copyright interest; and

- Be registered, either alone or as part of another work, with the U.S. Copyright Office on or before January 5, 2009, UNLESS the Insert or work is not a United States work under the U.S. Copyright Act, in which case such registration is not required.

**EXCLUDED** from the definition of "Insert" are:

- Pictorial works, such as photographs, illustrations (other than children's Book illustrations), maps and paintings.

- Works that are in the public domain under the U.S. Copyright Act.

For purposes of receiving payments for the use of Inserts, the Settlement identifies two types of Inserts:

"Entire Insert," which is an Insert that is an entire work, e.g., forewords, afterwords, introductions, entire works included in anthologies, entire poems, entire short stories, the entire lyrics of a song, and entire essays.

"Partial Insert," which is any other type of Insert, e.g., excerpts from a Book or magazine article, quotations, stanzas from poems or portions of a song's lyrics.

**To search for or identify your Inserts, go to http://www.googlebooksettlement.com, contact the Settlement Administrator, or call the appropriate number at the end of this Notice (Appendix).**

## 7. Who are the Participating Libraries?

The Settlement Agreement identifies several categories of Participating Libraries based on their level of participation in the Settlement: Fully Participating Libraries, Cooperating Libraries, Public Domain Libraries and Other Libraries. For further information regarding the rights of, obligations of and releases of claims against these libraries, see Questions 12 and 13, below, or Article VII of the Settlement Agreement. For the form of the agreements between the Registry and the Fully Participating Libraries, the Cooperating Libraries and the Public Domain Libraries, see Attachment B to the Settlement Agreement or contact the Settlement Administrator. The Settlement Agreement is available at http://www.googlebooksettlement.com/agreement.html.

Fully Participating Libraries are libraries that are allowing Google to digitize Books in their collections and to which Google is providing a "Library Digital Copy" (or "LDC") of those Books. The Settlement Agreement provides that Fully Participating Libraries will be able to make certain uses of their LDCs. To include as many Books as possible in GLP, Google will attempt to expand the list of Participating Libraries, including by adding libraries that are:

- Cooperating Libraries. These libraries receive the same participatory rights and obligations under the Settlement Agreement as a Fully Participating Library, except that they do not receive or have access to a Library Digital Copy, and they agree to delete any digital copies of Books received from Google.

- Public Domain Libraries. These libraries agree to provide only public domain books to Google for digitization, agree to delete any digital copies of Books received from Google, and do not receive or have access to a Library Digital Copy.

- Other Libraries. These libraries agree to provide Books to Google, but do not agree to become a Fully Participating Library, a Cooperating Library or a Public Domain Library. Some of these libraries may have received, or will receive, digital copies of Books from Google. No claims are released with respect to any uses of digital copies by Other Libraries.

- For a list of the libraries that Plaintiffs currently have authorized to become Fully Participating Libraries and Cooperating Libraries, go to http://www.googlebooksettlement.com/agreement.html (see Attachment G of the Settlement Agreement) or contact the Settlement Administrator.

# BENEFITS OF THE SETTLEMENT

## 8. Overview of the Settlement Benefits

> **Key provisions of the Settlement Agreement are summarized below. You are encouraged to review the entire Settlement Agreement at http://www.googlebooksettlement.com/agreement.html. You can download a copy of the Settlement Agreement from that website or you may request a written copy from the Settlement Administrator or by calling the appropriate number at the end of this Notice (Appendix).**

### A. Google's Use of and Payment for Books

Plaintiffs view the Settlement as an excellent opportunity to breathe new commercial life into potentially tens of millions of out-of-print Books, and to provide an innovative marketing tool for authors and publishers of in-print Books. Under the Settlement, Google is authorized to 1) continue to digitize Books and Inserts, 2) sell to

institutions subscriptions to an electronic Books database, 3) sell online access to individual Books, 4) sell advertising on pages from Books, and 5) make other uses, all as further described under "Access Uses" in Question 9(F)(1) below. Google will pay Rightsholders, through the Registry, 63% of all revenues received from these uses. The Registry will distribute those revenues to Rightsholders in accordance with the Plan of Allocation and the Author-Publisher Procedures, which are described in Questions 9(K) and 10 below.

Rightsholders can exclude their Books from some or all of these uses, as described in Question 9 below. Rightsholders can also remove their Books altogether from the electronic Books database (if already digitized) so long as the request is made on or before April 5, 2011. Rightsholders at any time can request Google not to digitize their Books, and Google will honor the request if it has not already digitized the Book.

## B. The Book Rights Registry

The Settlement establishes a not-for-profit Book Rights Registry that will maintain a database of Rightsholders, collect their contact information and information regarding their requests with respect to uses of Books and Inserts, and identify, locate and coordinate payments to Rightsholders. The Registry will represent the interests of the Rightsholders, both in connection with the Settlement as well as in other commercial arrangements, including with companies other than Google (subject to the express approval of the Rightsholders of the Books involved in such other commercial arrangements).

To fund the establishment and initial operations of the Registry, Google has agreed to pay US $34.5 million. A portion of that payment will be used for the costs of notice to the Class (including the distribution of this Notice), and for claims administration until the Registry is fully operational.

All funds received by the Registry will be for the direct or indirect benefit of the Rightsholders. After the funding of its initial operations by Google's payment, the Registry will be funded by taking an administrative fee as a percentage of revenues received from Google.

The Registry will be jointly managed by a Board comprising an equal number of representatives of the Author Sub-Class and Publisher Sub-Class – at least four author directors and at least four publisher directors. All decisions of the Board will require a majority of the directors, with such majority to include at least one author director and one publisher director. Certain matters will require super-majority votes of the Board.

## C. Payment For Books Already Digitized

Google has agreed to pay a minimum of US $45 million to make cash payments for all of the Books and Inserts that Google digitized without permission on or before May 5, 2009 (i.e., the Opt-Out Deadline) ("Cash Payment"). Google will make a Cash Payment of at least US $60 per Principal Work, US $15 per Entire Insert, and US $5 per Partial Insert for which at least one Rightsholder has registered a valid claim on or before January 5, 2010. Only one Cash Payment will be made for the same content that Google digitized, regardless of the number of Books or Inserts containing such content. For example, only one Cash Payment will be made for the hard cover and soft cover editions of a Book, even if Google digitized both of them separately, and only one Cash Payment will be made for several digitizations of the same Book or for content that is contained, as Inserts, in multiple Books. Also, only one US $60 Cash Payment will be made for content that appears both as a Book and also as an Insert in another Book (e.g., because a portion of the first Book was quoted in the second Book). Each Book contains only a single Principal Work. For example, a Book of the novel *The Old Man and the Sea* might contain an introduction, footnotes and an afterword. The novel itself would be that Book's Principal Work; each of the other materials would be an Insert (if the U.S. copyright interest in those other materials is held by someone other than the Rightsholder of the Principal Work). Similarly, a Book could contain several short stories from a variety of authors (e.g., the *Best Short Stories of 2008*). The Book's Principal Work would be the entire collective work (the collection of short stories), and each separate short story (as well as any introductory essay) would be considered an Insert (if the U.S. copyright interest in such story is held by a Rightsholder other than the Rightsholder of the Principal Work). See Section 1.111 of the Settlement Agreement for a full definition of "Principal Work."

- Depending on the number of Principal Works and Inserts claimed by Rightsholders, if the total amount distributed to all such Rightsholders is less than US $45 million, the Registry will distribute the balance to such Rightsholders up to a maximum of US $300 per Principal Work, US $75 per Entire Insert, and US $25 per Partial Insert. Any remaining funds thereafter will be paid under the Plan of Allocation.

- If more than US $45 million is required to pay all of the eligible claims for Cash Payments, then Google will pay the additional funds necessary to make all such Cash Payments.

Plaintiffs believe that Rightsholders of Books and Inserts that Google digitized on or before May 5, 2009 without authorization are entitled to Cash Payments because they have an additional claim that other Rightsholders do not have, i.e., a claim for copyright infringement for which monetary relief is being sought in this lawsuit. Under the Settlement, other Rightsholders will be able to direct Google not to digitize their Books, but Rightsholders whose Books and Inserts are already digitized had no such opportunity. Plaintiffs believe that the Cash Payments are fair and reasonable consideration for those Rightsholders' release of claims for monetary relief for Google's unauthorized digitization.

**To receive a Cash Payment for already digitized Books and Inserts, you must complete the Claim Form on or before January 5, 2010.**

### D.     Hosted Version of Book for Rightsholders

At the Rightsholder's request, Google will provide a hosted version of the Rightsholder's Book(s) for use on the Rightsholder's website. See Section 3.11 of the Settlement Agreement for further details.

### E.     Timing of Settlement Benefits

It will take considerable time to implement the commercial uses authorized under the Settlement, implement the elections made by Rightsholders for their Books and Inserts, and make Cash Payments. The commercial uses and other settlement benefits described in this Notice will not occur until after the Effective Date, and further time will be required after that date in order to establish the Registry and clear rights so that the appropriate Rightsholders receive their due and owing benefits. Please be patient, and visit the Settlement Website at http://www.googlebooksettlement.com regularly for updates.

## 9.     What are Rightsholders' rights regarding their Books and Inserts?

Under GLP, Google has been digitizing – and will continue to digitize – Books from Participating Libraries and other sources. Google is developing a searchable electronic database of many millions of Books (as well as public domain books and government works). The Settlement provides that Google will sell subscriptions to that database, and online access to individual Books to consumers. In addition, Google will earn revenues from advertising on web pages dedicated to a single Book. As described in Question 8(A) above, all those revenues will be split 63%/37% between the Rightsholders and Google, respectively. The following is a summary of Google's authorization to use Books and Inserts and of Rightsholders' rights with respect to all such uses. **The complete description of all rights and obligations is set out in the Settlement Agreement, available at http://www.googlebooksettlement.com/agreement.html or from the Settlement Administrator.**

### A.     Classification of Books as "Commercially Available" or not "Commercially Available" and as "In-Print" or "Out-of-Print"

The Settlement provides that all Books will be initially classified as either "Commercially Available" or not "Commercially Available" as of January 5, 2009. Google will initially classify a Book as "Commercially Available" if Google determines that the Rightsholder, or the Rightsholder's designated agent (e.g., a literary agent or publisher), is currently (i.e., at the time Google makes the initial determination) offering the Book for sale through one or more then-customary channels of trade in the United States.

This classification has two purposes:

- Google will have the right to make Display Uses of all Books that are classified as not Commercially Available. The Rightsholder of a Book, however, has the right to remove the Book from GLP (by request received on or before April 5, 2011) or exclude it at any time from some or all Display Uses. Google does not have the right to make any Display Uses of Books that are classified as Commercially Available unless the Rightsholder authorizes Google to include the Book in one or more Display Uses; the Rightsholder also has the right to remove the Book from all uses by Google (by request received on or before April 5, 2011). Removal requests received after April 5, 2011 will be honored only if the Book for which removal is requested has not been digitized at the time the request is made.

- Under the Author-Publisher Procedures, a Book classified as Commercially Available is presumptively classified as "in-print" and a Book classified as not Commercially Available is presumptively classified as "out-of-print." Classification of a Book as in-print or out-of-print has certain important consequences, as described below. **The use in this section of the Notice of the terms "in-print" and "out-of-print" is only for convenience, only for purposes of the Settlement and for Google's use of and payment for Books, and does not affect how those terms are used in the industry or in author-publisher contracts.** Potentially, two Rightsholders with U.S. copyright interests in the same Book (e.g., both the author and the publisher) may not agree whether a Book is, for purposes of this Settlement, "in-print" or "out-of-print." The Author-Publisher Procedures set forth a process for resolving those disputes, and set forth precise definitions for the terms "In-Print" and "Out-of-Print." See Question 10 below for further details concerning the Author-Publisher Procedures.

Rightsholders and the Registry will have the right to challenge Google's initial classification of a Book as Commercially Available or not Commercially Available. Any disputes with Google over the proper classification of a Book will be resolved through the Settlement's dispute resolution process, described in Question 9(M) below.

**To find out whether your Book has initially been determined to be Commercially Available or not Commercially Available, go to http://www.googlebooksettlement.com or contact the Settlement Administrator.**

### B.    Out-Of-Print Books

The Settlement authorizes Google to make Display Uses and Non-Display Uses of each out-of-print Book for the term of the U.S. copyright for that Book, without further action or direction by the Book's Rightsholder, UNLESS the Rightsholder of the Book directs Google not to do so. A Rightsholder who so directs Google can later authorize Google to make such uses of some or all of the Book. Display Uses are described in Question 9(F) below and Non-Display Uses are described in Question 9(G) below. For more information on removing a Book, see Question 9(D) below.

If a Rightsholder excludes a Book that is not Commercially Available from the institutional subscription use (see Question 9(F)(1)(a) below), then that Book will also be excluded from sales to individual consumers. In addition, a Rightsholder who excludes a Book from an institutional subscription use is not eligible to receive an Inclusion Fee (see Question 9(K) below for details).

The Author-Publisher Procedures provide that the author or, for good reason, the publisher of an out-of-print Book (other than a reverted Book, an "author-controlled" Book or a work-for-hire Book) may exclude a Book from one or more Display Uses. See Question 10 below for a summary of the Author-Publisher Procedures.

**In order to participate in the Settlement, receive the benefits for the use of your out-of print-Books in GLP, or to exclude your Books from one or more Display Uses, you must complete the Claim Form. There is no time limit for you to exclude your Books from any Display Uses, and you can change any exclusion decision at any time.**

## C.  In-Print Books

The Settlement provides that Google may not make any Display Uses of any in-print Book UNLESS the Rightsholders of that Book authorize Google to include the Book in one or more such uses. If the Rightsholders decide to authorize Display Uses, the Book will be subject to the economic terms provided under the Settlement; however, a Rightsholder may be able to negotiate different terms with Google through the Partner Program. Under the Settlement, Google has the right to make Non-Display Uses of an in-print Book for the term of the U.S. copyright for that Book, UNLESS the Rightsholder timely removes the Book. For information on removing a Book, see Question 9(D) below. For information on Non-Display Uses, see Question 9(G) below.

The Author-Publisher Procedures provide that both the author and publisher of an in-print Book (other than a work-for-hire Book) must agree to authorize any Display Uses. See Question 10 below for a summary of the Author-Publisher Procedures.

**To authorize one or more Display Uses of any of your in-print Books in GLP, you must complete the Claim Form. After Google has been authorized to make Display Uses of any of your in-print Books, you can change those instructions at any time.**

## D.  Complete Removal of Books

Rightsholders have the right to remove their Books, that is, to require that all digital copies of those Books be deleted from all servers or sources from which Google or the Fully Participating Libraries could make any uses. Removal requests must be received on or before April 5, 2011. Removal requests received after that date will be honored only if the Book has not been digitized at the time the request is received.

Note that each Fully Participating Library may make certain uses of Books included in its Library Digital Copy (see Question 9(I) below). Rightsholders can only preclude their Books from all such uses if they timely remove their Books.

A removal request will not require Google or a Fully Participating Library to destroy back-up tapes or other back-up storage media that may contain copies of otherwise removed Books. **The only way a Rightsholder can preserve rights to bring claims against Google and the Fully Participating Libraries for maintaining removed Books on back-up tapes or other back-up storage media is to opt out of the Settlement. Question 15 below informs you how to opt out of the Settlement.**

Even if a Rightsholder removes a Book, it may be possible to contact Google subsequently to attempt to negotiate a separate deal for inclusion of the Book in the Partner Program.

**If you want to participate in the Settlement but also want your Books removed, you must fill out the Claim Form on or before April 5, 2011. Thereafter, Google will honor "do not digitize" requests only if a Book has not been digitized as of the date of the request.**

## E.  Inserts

Rightsholders of Inserts have the right to exclude Inserts from all – but not less than all – Display Uses. This right is limited to the Insert itself and not any other portion of the Book, government work or public domain book that contains the Insert.

**If you own a U.S. copyright interest in an Insert and wish to register your rights in the Insert, you must complete the Claim Form.**

If the Books, government works or public domain books containing your Insert have not yet been digitized by Google, then Google will search for your content until it completes digitizing Books for GLP. If Google finds what appears to be your content in a Book, government work or public domain book, it will notify you. You will then be asked to confirm that the content contained in the Book, government work or public

13

domain book is an Insert. After your confirmation, you will (1) be eligible to receive an Inclusion Fee under the Plan of Allocation (see Question 9(K) below); and (2) have the right to exclude your Insert(s) from Display Uses.

You will be eligible for an Inclusion Fee if you do not exclude your Insert from Display Uses and if you otherwise satisfy the eligibility criteria on the Claim Form. If you wish to exclude your Insert from Display Uses after having received your Inclusion Fee, you will have to first return the fee.

**If you want to participate in the Settlement but exclude any of your Inserts from Display Uses, you must complete the Claim Form. There is no time limit for you to exclude any of your Inserts from all – but not less than all – Display Uses, and you can change any exclusion decision at any time.**

The Rightsholder of the Book containing your Insert and, in some cases, Google, can challenge your exclusion request if they believe that they have the legal or contractual right to display your Insert as part of a Book. Any disputes over the exclusion of an Insert from a Book will be resolved through the Settlement's dispute resolution process, described in Question 9(M) below. With respect to Inserts in government works and public domain books, Google may reject your request to exclude your Insert from the government work or public domain book. If that happens, you will have the right either to (1) sue Google or (2) arbitrate against Google pursuant to the Settlement's dispute resolution process.

Under the Settlement, Google has the right to make Non-Display Uses of Inserts for the term of the U.S. copyright for those Inserts. Insert Rightsholders cannot "remove" an Insert. **The only way you can preserve your right to bring claims against Google and the Fully Participating Libraries for Non-Display Uses and for retaining your Inserts on back-up tapes or other back-up storage media is to opt out of the Settlement altogether. Question 15 below informs you how to opt out of the Settlement.**

F.      **Display Uses**

Subject to Rightsholders' exclusion and removal rights discussed above, the Settlement authorizes Google to make the following Display Uses of all out-of-print Books and, upon the express authorization of Rightsholders, in-print Books:

(1)     <u>Access Uses</u>: Access uses are viewing and annotating the entire Book, and printing and copying/pasting portions of the Book, subject to certain page number limitations. The following are the Access Uses that Google is or may be authorized to make:

      (a)     <u>Institutional Subscriptions</u>: Educational, government and corporate institutions will be able to purchase time-limited subscriptions (e.g., by semester or by year) for their students or employees to access the full contents of the institutional subscription database. Google may also offer subscriptions to discipline-based collections. The pricing of the institutional subscription may vary over time, including to reflect increases in the size of the institutional subscription database. For information on how subscriptions will be priced, see Section 4.1 of the Settlement Agreement.

      (b)     <u>Consumer Purchases</u>: Individual users will be able to purchase the right to access Books online. Rightsholders will have two options for setting the sale price of their Books: they can set the price themselves or they can allow Google to set the price based on a multi-factor formula that is designed to maximize revenues for the sale of the Book (the "Settlement Controlled Price").

      (c)     <u>Public Access at Libraries and Elsewhere</u>: Google will provide, on request, a "Public Access service" for free through a computer terminal at each public library building and through an agreed number of computer terminals at non-profit colleges and universities located in the United States. The Public Access service will provide the same access to Books as Google offers in the institutional subscriptions, except that users will not be able to copy/paste or annotate any portions of a Book. At public libraries that are able to

14

charge for printing, and at all college and university libraries, users will be able to print pages for a per-page fee. Upon Registry approval, Public Access service terminals may be made available for a viewing and per-page printing fee at commercial businesses, such as copy centers, which will share those fees with Google and the Rightsholders. Revenues from the Public Access service will be based on a per-page charge for printing, with Google collecting the revenues from public and higher education libraries or copy centers and sending 63% of those revenues to the Registry on behalf of Rightsholders.

(d) <u>Other Potential Commercial Uses</u>: In the future, Google and the Registry may agree to develop other Access Uses, including consumer subscriptions (similar in concept to the institutional subscriptions); print on demand Books; custom publishing (per-page pricing of content for course packets or other forms of custom publishing for the educational and professional markets); PDF downloads (consumers would be able to download a PDF version of a Book); and summaries, abstracts or compilations of Books. **Rightsholders will be notified, either directly or through the Registry's website, of all new commercial uses that Google is authorized to make, and will have an opportunity at any time to exclude any of their Books from any or all of these uses.**

(2) <u>Preview Use</u>: In response to a user's search, Google may allow the user to view up to 20% of a Book (no more than five adjacent pages) before making a purchase decision, but not to copy/paste, annotate or print any pages from the Book ("Standard Preview"). For Books of fiction, Google will block the last 5% of the Book (or a minimum of the final fifteen pages of the Book). Also, for Books of fiction, Google may display up to 5% or fifteen pages (whichever is less) adjacent to where a user lands on a given page. Rightsholders may also select another preview option, in which the pages available for preview are fixed (up to 10% of the pages of the Book, as chosen by Google and, if a mechanism to do so is developed, chosen by the Rightsholder) ("Fixed Preview"). The pages presented to the user with Fixed Preview do not depend on the user's search. Rightsholders will have the ability to change the type of Preview available for any of their Books at any time. Preview uses are designed to serve as a marketing tool to sell the Book for Consumer Purchase or otherwise. Rightsholders are also expected to receive advertising revenues from advertisements placed on Preview Use pages for a Book. See Section 4.3 of the Settlement Agreement for a complete description of the Preview Use options available to Rightsholders.

(3) <u>Snippet Displays</u>: In response to a user's search, Google may display about three or four lines of text from a Book (a "snippet"), with up to three snippets per user for that Book. Rightsholders are expected to receive advertising revenues from advertisements placed on web pages that display one or more snippets from, and are devoted to, a single Book.

(4) <u>Display of Bibliographic Pages</u>: Google may display to users a Book's title page, copyright page, table of contents, and index.

**To exclude any of your Books and Inserts from Display Uses, see Question 9(B-E) above.**

**G.   Non-Display Uses**

Subject to Rightsholders' removal rights discussed in Question 9(D) above, Google will be permitted to make Non-Display Uses of the Books and Inserts. Non-Display Uses are uses that do not involve displaying any content from a Book to the public. Examples include display of bibliographic information, full-text indexing (without displaying the text), geographic indexing of Books, algorithmic listings of key terms for chapters of Books, and internal research and development at Google. Rightsholders may not exclude Books or Inserts from Non-Display Uses.

**You may only prevent Google from making Non-Display uses of any of your Books if you make a timely request for removal of your Book. See Question 9(D) above.**

**You may only preserve your right to bring claims against Google for its Non-Display Use of any of your Books or Inserts if you opt out of the Settlement altogether. Question 15 below informs you how to opt out of the Settlement.**

### H.     Advertising Uses

Google may include advertisements on Preview Use pages and on web pages dedicated to a single Book, including pages displaying snippets, bibliographical information, and search results from a user's search performed within a single Book. Rightsholders of Books will earn 63% of the revenues from such advertisements. Google may also place advertisements on other Google products and services (e.g., search result pages, Google Maps), but Rightsholders of Books will not earn revenues from those advertisements.

**Rightsholders of Books will have the right to direct Google not to include any advertising on any pages dedicated to a single Book, but not on pages resulting from a user's search over multiple Books or over other content. In order to preclude advertising on any web pages dedicated to any of your Books, you must complete the Claim Form.**

### I.     Uses by Fully Participating Libraries

The Settlement permits Google to provide to each Fully Participating Library a digital copy of all the Books in that library's collection (a "Library Digital Copy" or "LDC"), provided Google digitizes a certain amount of Books at that library. Fully Participating Libraries are authorized to use their LDC:  (a) to make copies to preserve, maintain, manage and keep current that LDC; (b) to provide access to Books in the LDC to users who have disabilities that render them unable to use printed versions of Books; (c) to create a print replacement copy of a Book that is damaged, deteriorating, lost or stolen; (d) to use indexes and finding tools, and to display snippets in connection with finding tools (except if a Rightsholder of a Book for which Display Uses are not authorized directs the Fully Participating Libraries not to do so); (e) to permit faculty and staff to use up to five pages of a Book that is not Commercially Available for personal scholarly use and classroom use, if those Books are not in the Institutional Subscription; (f) for Non-Consumptive Research (subject to the limitations described in Question 9(J) below); (g) if the U.S. Copyright Act is amended to allow use of orphan works, to use Books from their LDC in accordance with the amended statute; and (h) for other lawful uses that a Rightsholder or the Registry approves (the Registry may only approve uses that do not impair any rights of the Rightsholders).  The Settlement Agreement also prohibits Fully Participating Libraries from making certain uses of their LDC; however, fair uses of Books that are not Commercially Available are not prohibited if no Institutional Subscription is available.

### J.     Research Corpus

In addition, digital copies of all Books digitized by Google at libraries will be combined into a "Research Corpus." The Research Corpus may be hosted at up to two separate sites ("Host Sites") at any given time. With the Registry's approval, Google could become an additional Host Site (i.e., a third Host Site if two already exist). The Research Corpus will be made available to "qualified users" solely for engaging in specific types of research, including:  (a) computational analysis of the digitized images to either improve the image or extracting textual or structural information from the image; (b) extracting information to understand or develop relationships among or within Books; (c) linguistic analysis, to better understand language, linguistic use, semantics and syntax as they evolve over time and across genres of Books; (d) automated translation (without actually producing translations of Books for display purposes); and (e) developing new indexing and search techniques.  For more information regarding the types of research permitted in connection with the Research Corpus, see Section 7.2(d) of the Settlement Agreement.  In addition, such research also can be conducted on LDCs at Fully Participating Libraries. **Books will be excluded from the Research Corpus and LDCs if they are removed (see Question 9(D) above).**

**Book or Insert Rightsholders can only preserve their claims against Google and the Fully Participating Libraries for use of Books and Inserts in the Research Corpus by opting out of the Settlement Agreement. See Question 15 for more information regarding how to opt out.**

**For any Books that are Commercially Available as of January 5, 2009, or within two years thereafter, the Rightsholder has the right to withdraw the Books from the Research Corpus as long as they remain Commercially Available. If your Book is Commercially Available, and you would like to withdraw your Book from the Research Corpus, you must complete the Claim Form.**

The Research Corpus and its use are subject to detailed requirements and limitations, all set forth in the Settlement Agreement, available at http://www.googlebooksettlement.com/agreement.html (see section 7.2(d) of the Settlement Agreement) or from the Settlement Administrator, as well as in agreements between the Registry and each Host Site.

**K.    Plan of Allocation/Unclaimed Funds**

(1)    <u>Plan of Allocation</u>

Rightsholders who register with the Registry will be compensated in United States dollars for Google's commercial uses of their Books and Inserts. The principles for compensation are set out in a Plan of Allocation, available at http://www.googlebooksettlement.com/agreement.html (see Attachment C to the Settlement Agreement) or from the Settlement Administrator. Compensation to Rightsholders will be based both on the actual usage of Books ("Usage Fees") and on the inclusion of Books and Inserts in the institutional subscription database ("Inclusion Fees").

(a)    <u>Usage Fees</u>. Usage Fees will be paid to Books Rightsholders for all revenue models. For usage of a Book in subscriptions, the Registry will calculate "usage" based on a number of factors, including the number of times users view the Book, how much of the Book is viewed, and the Book's Settlement Controlled Price, relative to the usage of other Books used in the same reporting period. For other uses, Usage Fees will be based on the price at which the Book is sold, the number of pages printed, or the advertising revenues that it earns. The Registry will calculate Usage Fees on a per-Book basis every reporting period, which reporting period will be determined by the Registry based on efficiency. No Usage Fees are paid for Inserts.

(b)    <u>Inclusion Fees</u>. Inclusion Fees will be paid for eligible Books and Inserts from revenues the Registry receives from sales of subscriptions. The target Inclusion Fee for Books is US $200/Book and the minimum Inclusion Fee for Inserts is US $50/Entire Insert and US $25/Partial Insert. For Inserts, the Inclusion Fees for all content from a single work that appears in other works is capped at US $500, no matter how many Inserts are created from the content and no matter in how many other works the Insert appears. Rightsholders are eligible for an Inclusion Fee so long as their Books or Inserts are not excluded from subscriptions by them or any other Rightsholder of the same Book or Insert. (If Google determines not to include a Book in the subscription database for whatever reason, the Book and Insert Rightsholders of that Book are still eligible to be paid Inclusion Fees.) **Once Rightsholders have received their Inclusion Fees, they will no longer be permitted to exclude their Books or Inserts from subscriptions unless the Inclusion Fees are returned to the Registry.**

Google's sale of subscriptions to a database of Books is a new business model. Accordingly, the compensation for the inclusion and use of Books and Inserts in subscriptions cannot be quantified with any degree of certainty. This is particularly the case with respect to the Inclusion Fees, and it is possible that the Inclusion Fee Fund might not be sufficient after ten years to pay all eligible Rightsholders' full Inclusion Fees. Plaintiffs hope that sales of subscriptions will be robust and that there will be more than enough funding to pay all Inclusion Fees. If that is the case at the end of the ten years after the Registry first receives subscription revenues, then Rightsholders will receive more than the Inclusion Fees specified above. If, at the end of ten years, the

funds are insufficient, however, the Registry Board will determine whether the Rightsholders' overall best interests are served by continuing payment of Inclusion Fees for Books or terminating those fees in favor of payment only of Usage Fees. If a majority of the Board votes to discontinue funding Inclusion Fees for Books before the target Inclusion Fee of US $200/Book is reached, then Books Rightsholders may not receive US $200 for Inclusion Fees, the available funds will be distributed to eligible Rightsholders at that time and, thereafter, Books Rightsholders will only receive Usage Fees. (If the Registry Board does not vote to discontinue funding for Inclusion Fees for Books, then that funding will continue, as described in Question 9(K)(1)(b) and (c) below.) In any event, Inclusion Fees for Inserts will continue to be funded until the Registry pays US $50/Entire Insert and US $25/Partial Insert.

**In order to receive an Inclusion Fee for any of your Books or Inserts, you must register them with the Registry by completing the Claim Form within five years of the Effective Date. The website http://www.googlebooksettlement.com will post the Effective Date when it occurs but, in the meantime, you are encouraged to register your Books and Inserts as soon as possible.**

(c)     Allocation of Subscription Revenues Between Usage and Inclusion. From the net revenues the Registry receives from subscriptions (i.e., after payment of the Registry administrative fees), 75% will be paid into a Usage Fee Fund and 25% will be paid into an Inclusion Fee Fund. The Inclusion Fee Fund itself will be divided into two sub-funds: 80% (of the 25%) will go into a Book Sub-Fund and 20% (of the 25%) will go into an Insert Sub-Fund. If, on or before the tenth anniversary of the date on which the Registry first receives subscription revenues, there are sufficient funds in the Inclusion Fee Fund to pay US $200/Book, US $50/Entire Insert and US $25/Partial Insert, then all Inclusion Fee Funds will be distributed at that time. If there are not enough funds by the tenth anniversary date to pay such amounts, then, thereafter, 10% of the net revenues the Registry receives from subscriptions will be paid into the Inclusion Fee Fund for so long as is necessary to pay US $200/Book, US $50/Entire Insert and US $25/Partial Insert, unless, with respect to Books, a majority of the Board of the Registry votes to discontinue paying subscription revenues into the Book Sub-Fund.

The allocation between Usage Fees and Inclusion Fees described above reflects the Plaintiffs' attempt to fairly and equitably balance the following competing considerations: (1) the value of a Book that is actually "used," and (2) the value that a Book or Insert contributes to the overall value of the subscription database by virtue of its being included in the database and made available to users.

(d)     Summary of Other Provisions. (1) No Usage Fees or Inclusion Fees for a particular Book or Insert will be paid until the Registry has cleared disputes among Rightsholders with respect to that Book or Insert. (2) For every registered Rightsholder, the Registry will maintain an account for the Rightsholder's registered Books and Inserts, and will pay Usage Fees and Inclusion Fees, or combinations of such fees, only when the Rightsholder is due an amount (e.g., US $25) below which it would not be efficient for the Registry to issue payments. (3) An Insert Rightsholder can receive a higher Inclusion Fee by demonstrating to the Registry that the contract with the Book Rightsholder provides for payment of an amount greater than the Inclusion Fees for Inserts. (4) All disputes regarding the allocation of revenues among Book Rightsholders will be resolved under the Author-Publisher Procedures (except for disputes between multiple publishers of the same Book or Principal Work), and all disputes regarding the allocation of revenues for Inserts will be resolved in binding arbitration under the rules set forth in Article IX of the Settlement Agreement.

(2)     <u>Unclaimed Funds</u>

The Registry will likely receive revenues from Google that are due to Rightsholders who do not register with the Registry or who do not claim their funds within five years after the Effective Date (for Inclusion Fees), or within five years after their Books are used (for Usage Fees) ("Unclaimed Funds"). Unclaimed Funds will be distributed as follows: (a) **Unclaimed Funds from Subscription revenues** will first be used to defray operational expenses of the Registry and maintain reserves for the Registry, and any remaining Unclaimed Funds will be paid on a proportional basis to registered Rightsholders whose Books earned Subscription Usage Fees during the reporting period in which the Unclaimed Funds were earned; and (b) **Unclaimed Funds from Book Use revenues** will first be used to defray operational expenses of the Registry and maintain reserves for the Registry; then, any remaining Unclaimed Funds will be paid on a proportional basis to registered Rightsholders whose Books earned Book Use revenues during the reporting period in which the Unclaimed Funds were earned, until Rightsholders of a single Book have received, in total, 70% of the revenues Google received for the Book Use of that Book; and then, for any Unclaimed Funds remaining thereafter, to not-for-profit entities that directly or indirectly benefit the Rightsholders and the reading public.

## L.    Security Provisions

Google and Plaintiffs (including Plaintiffs' experts) developed a security standard to ensure that Books and Inserts are subject to appropriate levels of security (the "Security Standard"). The Security Standard addresses several areas of security: breaches of security with respect to Books at Google, breaches of security of the Fully Participating Libraries' LDCs, breaches of security at the Research Corpus Host Sites, and efforts to restrict unauthorized access to Books. The Security Standard requires that Google, each Fully Participating Library and each Host Site develop its own Security Implementation Plan, which must comply with the Security Standard and which is subject to the Registry's approval. The Security Standard, Attachment D to the Settlement Agreement, may be obtained at http://www.googlebooksettlement.com/agreement.html or from the Settlement Administrator. In addition, the Settlement Agreement and the Registry's agreements with the Fully Participating Libraries and the Host Sites provide for remedies for security breaches. Further information on those remedies is set out at Article VIII of the Settlement Agreement, available at http://www.googlebooksettlement.com/agreement.html or from the Settlement Administrator.

## M.    Dispute Resolution

Google, the Registry, Rightsholders, Participating Libraries and the Host Sites will attempt to informally resolve most disputes concerning matters pertaining to the Settlement. If, after thirty days, they are unsuccessful, then the dispute will go to arbitration, and the arbitrator's decision will be final and binding on the parties to the dispute. Examples of disputes that will be subject to arbitration are (a) disagreements over pricing and other economic terms; (b) disagreements over claimed security breaches; (c) disagreements over whether a Book is in-print or out-of-print (only if the dispute is between an author and a publisher) or disagreements over whether a Book is in the public domain; and (d) disagreements over whether Google or a Fully Participating Library has made use of a Book that is not authorized under the Settlement. This is an illustrative, not an exhaustive, list of potential types of disputes subject to arbitration. You should read Article IX of the Settlement Agreement, the Author-Publisher Procedures (Attachment A to the Settlement Agreement) and the Library-Registry Agreements (Attachment B to the Settlement Agreement), all available at http://www.googlebooksettlement.com/agreement.html or from the Settlement Administrator, for a description of which disputes are subject to binding arbitration or to litigation.

The Court will have continuing jurisdiction to resolve all other disputes concerning the parties' obligations under the Settlement Agreement and the other agreements. In addition, for expedited relief, or where the breach is repeated, willful or intentional, the parties reserve their right to sue in court for temporary injunctive relief without first going to arbitration.

### N. Non-Exclusive Rights

Rights granted to Google and the Participating Libraries are non-exclusive only, and Rightsholders have every right to authorize, through the Registry or otherwise, any individual or entity, including direct competitors of Google, to use their works in any way, including ways identical to Google's and the Participating Libraries' authorized uses. Rights and authorizations granted to Google and the Participating Libraries are not transfers of copyright ownership to those works, and nothing in the Settlement Agreement shall operate to transfer any copyright ownership interests in Rightsholders' works.

## 10. What are Authors' and Publishers' rights under the Author-Publisher Procedures?

Both an author and a publisher may have U.S. copyright interests in the same Book. The respective rights of members of the Author Sub-Class and the Publisher Sub-Class are addressed in the Author-Publisher Procedures, available at http://www.googlebooksettlement.com/agreement.html (see Attachment A to the Settlement Agreement) or from the Settlement Administrator. The following is a summary of the Author-Publisher Procedures:

(1)  In-Print Books

In order for Google to make Display Uses of any in-print Book, both the author (other than a work-for-hire author) and the publisher must agree to authorize Google to make Display Uses in accordance with a process set out in the Author-Publisher Procedures. The Registry will pay revenues earned from Google's use of an in-print Book (including Cash Payments for a Book digitized by Google on or before May 5, 2009) to publishers, who will then pay authors in accordance with the terms of the author-publisher contract for that Book. If the author is not satisfied with the amount of the payment made by the publisher, then the dispute may be resolved, with the Registry's assistance, in arbitration. This arbitration right does not apply to authors and publishers of educational Books (i.e., Books that, when published, were intended primarily for sale to educational markets (i.e., K-12, Higher Education, continuing education, vocational, professional, self-study, and similar educational markets) for use in educational programs); disputes between those parties must be resolved under the terms of the individual author-publisher contract for the educational Book.

For any in-print Book for which Google is authorized to make Display Uses, both the author and publisher have the right to request removal of the Book or to exclude the Book from any and all Display Uses. In those cases, the more restrictive directions (whether received from the author or the publisher) will be controlling. If the author and publisher agree that Google may make consumer use of an in-print Book, the publisher has the right to control the pricing of the Book. If, however, the author objects to the price and is unable to persuade the publisher to change the price, the author may exclude the Book from consumer uses.

(2)  Out-of-Print Books

(a)  Removal and Exclusion From Display Uses. As described above, the Settlement Agreement provides that all out-of-print Books are automatically included in all Display Uses. Rightsholders can make decisions as to removal, exclusion and pricing of any out-of-print Book as follows: (a) for Books that are works-for-hire, only the publisher can make the removal, exclusion and pricing decisions; (b) for Books where rights have reverted to the author or where such Books are considered "author controlled" (see the following paragraph), only the author can make removal, exclusion and pricing decisions; and (c) for all other unreverted Books, either the author, or the publisher for good cause articulated, can make removal and exclusion decisions, and either can make pricing

decisions (the more restrictive directions as to level of access, and the higher price, will govern).

For purposes of the Settlement (and only for such purposes), a Book will be considered "author controlled" if the Book is eligible for reversion under the author-publisher contract, the author has sent (or sends) a request for reversion to the publisher and the publisher has not responded to that request for either ninety days or any written response period specified in the author-publisher contract, whichever period is longer. If those conditions are met, the author may send a request to the Registry (with a copy to the publisher) to treat the Book as "author-controlled." In that request, the author must affirm that the Book is no longer "in print" as defined in Test 1 (see Question 10(3)(a) below) and that the publisher's response period (i.e., the longer of ninety days or the period set forth in the author-publisher contract) has expired; the request must include a copy of the request for reversion previously sent to the publisher and a copy of the applicable author-publisher contract (if the author has it).

If the publisher does not dispute the request in writing within 120 days, the Registry shall deem the Book to be "author-controlled." If the publisher timely disputes the request, the parties shall submit the issues in dispute to the Registry for decision.

(b)    <u>Allocation of Cash Payments and Revenues</u>. The Registry will make all payments with respect to an out-of-print Book separately to the Book's author and publisher, as follows: (a) 100% to the author for any Book that has reverted or is "author controlled"; (b) 100% to the publisher for any Book that is a work-for-hire; and (c) for all other unreverted Books, 65% to the author and 35% to the publisher if the Book was published prior to 1987, and 50% to the author and 50% to the publisher if the Book was published in 1987 or thereafter.

(3)    <u>Determination of Whether a Book is In-Print or Out-Of-Print</u>

For purposes of the Settlement (and only for such purposes), a Book is deemed "in-print" if it meets one of the following two tests:

(a)    <u>Test 1</u>. The Book is "in-print" under the terms of the author-publisher contract or the contract does not provide for reversion under any circumstances. For this purpose, the Book may be "in-print" even if the contract does not use the term "in-print." If the contract measures "in-print" by reference to revenues earned, and more than 50% of the revenues paid to a publisher from exploitation of a Book are generated by Google's exploitation of a Book in the revenue models authorized in the Settlement, then those revenues shall NOT be considered in determining whether this Test 1 has been met. If the contract measures "in-print" by units sold or some measure other than revenues, then an equivalent principle will be applied in determining whether this Test 1 has been met. That a Book or information about a Book is included in a database, or that information about the Book is provided in search engine results, does not, by itself, mean that the Book is "in-print." A Book is not "in-print" if the contract provides for reversion and all of the criteria for reversion have been met (except that the author need not have sent a request for reversion to the publisher even if required by the contract); or

(b)    <u>Test 2</u>. The publisher, consistent with any rights it may have in the Book under the author-publisher contract, publicly has announced to the trade that it has undertaken concrete steps to publish an existing or new edition of the Book, and that edition is published within twelve months of the announcement.

(4)     <u>Disputes Over Whether a Book is In-Print or Out-Of-Print</u>

Members of the Author Sub-Class and Publisher Sub-Class, or their representatives on the Board of the Registry, may dispute the status of a Book as "in-print" or "out-of print" by notifying the Registry with evidence (such as contracts, royalty statements, trade announcements, or affidavits) sufficient to establish whether or not the Book meets either of the two tests in paragraph (3) above. The other party will have the right to respond, but, if it does not do so within 120 days, the status of the Book will be changed. If both the author and the publisher submit competing evidence and are not able to resolve the matter by agreement, then the Registry, or an arbitrator selected by the Registry, will resolve the dispute by reviewing each party's evidence, as well as any other relevant evidence and arguments submitted by the parties, including the course of dealing between the parties and industry standards and practices. The Registry's (or arbitrator's) decision will be final, although the decision pertains only to the Settlement, and may not be used for any other purpose, such as a precedent in a different, non-Settlement related dispute between the author and publisher of the same Book.

(5)     <u>Other Disputes</u>

All disputes between co-authors, or between an author's heirs, or between multiple other Rightsholders who are members of the Author Sub-Class must be resolved in arbitration. Disputes between multiple Rightsholders that are members of the Publisher Sub-Class may, but are not required to, be resolved in arbitration.

(6)     <u>Allocation of Unclaimed Funds Between Authors and Publishers</u>

Subject to the Unclaimed Funds provision described in Question 9(K)(2) above, all revenues allocated under the Author-Publisher Procedures to Author Sub-Class members that are unclaimed will be distributed to claiming Author Sub-Class members, and all revenues allocated to Publisher Sub-Class members that are unclaimed will be distributed to claiming Publisher Sub-Class members.

(7)     <u>Google Partner Program</u>

A Rightsholder might decide to place a Book in the Partner Program instead of in Display Uses under the Settlement Agreement because it believes it might be able to negotiate better economic terms with Google or for some other reason. The Settlement with Google pertains only to Display Uses under the Settlement Agreement, and not to the Partner Program. The Author-Publisher Procedures provide Rightsholders of an in-print Book with certain rights if another Rightsholder in the same Book places the Book in the Partner Program (or any other Google program similar to the revenue models under the Settlement Agreement) instead of in the revenue models under the Settlement Agreement. These rights pertain only to Books published under an author-publisher contract executed prior to 1992 and that had not been amended thereafter to address electronic rights. They are summarized as follows:

(a)     <u>Removal or Transfer Requests</u>. A Rightsholder who believes Google is using an in-print Book in the Partner Program (or any other Google program with revenue models similar to the Settlement Agreement) without the necessary authorization from the Rightsholder may request that Google either remove the Book from the other Google program or transfer the Book from the other Google program into the Settlement Agreement program. **The request must be made to the Registry and Google using the notification form at http://www.googlebooksettlement.com or from the Settlement Administrator. Google will notify the person or entity that permitted Google to use the Book in the Partner Program or other Google program. If that person or entity objects to the removal or transfer request within thirty days, it must do so by**

notifying the Registry and Google using the notification form at
http://www.googlebooksettlement.com or from the Settlement Administrator.

(b) Undisputed Requests. If the person or entity who permitted Google's use in the Partner Program or other Google program fails to respond to the notification within thirty days, then Google will remove the Book or transfer it to the Settlement Agreement program as requested by the requesting Rightsholder. If transferred into the Settlement Agreement program, the Book will become subject to the Settlement Agreement and payments will be made in accordance with the Author-Publisher Procedures.

(c) Disputed Removal Requests. If the request is for Google to remove the Book from the Partner Program or other Google program (as opposed to transferring the Book to the Settlement Agreement program), and if the request is disputed by the other Rightsholder, then Google will decide whether or not to honor the request. Any party seeking to challenge Google's decision may sue the other party to determine who has the right to authorize Google to use the Book in the Partner Program or other program. No rights are released against Google with respect to any decision by Google to use or remove the Book.

(d) Disputed Transfer Requests. If the request is for Google to transfer the Book from the Partner Program or other Google program to the Settlement Agreement program, then Google will stop using the Book in such other Google program until the competing Rightsholders resolve their dispute. Either Rightsholder may sue the other to determine who has the right to authorize Google to use the Book in the Partner Program or other Google program. In any event, Google will only include the Book in the Settlement Agreement program if the competing Rightsholders jointly authorize Google to do so, or if one of the competing Rightsholders obtains a court ruling giving it authority to request Google to do so.

> **The above is only a summary of the Author-Publisher Procedures, and you are encouraged to review those procedures, which are available at http://www.googlebooksettlement.com/agreement.html (see Attachment A to the Settlement Agreement) or from the Settlement Administrator.**

## REMAINING IN THE SETTLEMENT

### 11.    What happens if I do nothing?

If you are a member of the Author Sub-Class or Publisher Sub-Class, you need not do anything at this time if you want to remain in the Settlement. If you choose to remain in the Settlement, your rights in this litigation will be represented by the Sub-Class Representatives and by Class Counsel. You will receive the benefits of the Settlement if approved by the Court (and if you timely submit the applicable forms), and your claims against Google and the Participating Libraries will be released and will be dismissed by the Court. If you remain in the Settlement, you will be bound by any judgment or determination of the Court in connection with the Settlement, whether favorable or unfavorable.

### 12.    What entities am I releasing?

As of the Effective Date, Rightsholders will release claims against Google and all of the Participating Libraries, and each of their past, present, and future parents, predecessors, successors, subsidiaries, affiliates, and divisions, and each of their respective officers, directors, employees and others listed in Article X of the Settlement Agreement. For the specific claims being released against each of these entities, see Question 13

below. For more details regarding the entities released, please see the complete text of the releases, contained in Article X of the Settlement Agreement.

## 13. If I remain in the Settlement, what claims am I specifically giving up?

The following is a summary of the claims Rightsholders will release as of the Effective Date. For more details regarding the released claims, please see the complete text of the releases, contained in Article X of the Settlement Agreement.

Rightsholders release all claims against Google and each Participating Library that arise out of certain conduct occurring prior to the Effective Date, including Google's digitization of Books and Inserts; Google's use of digital copies in Google's products and services; each library's provision of Books and Inserts to Google for digitization; Google's provision of digital copies to libraries and the libraries' receipt of those copies (except Google's provision of digital copies to Other Libraries after December 27, 2008); and the libraries' (except for the Other Libraries') uses of those digital copies in a manner consistent with the Settlement Agreement. If, however, an Other Library makes an unlawful use of any digital copies, no claims against such Other Library for its provision of Books to Google, or the receipt of any digital copies, are released.

Rightsholders release all claims against Google, and each Fully Participating Library, Cooperating Library and Public Domain Library that, after the Effective Date, arise out of any act or omission authorized by the Settlement Agreement or by an applicable Library-Registry Agreement. No claims arising after the Effective Date are released against Other Libraries.

**However:**

1. None of the claims of Class members who timely opt out of the Settlement are released or in any way adversely affected by the Settlement.

2. The Settlement provides that Google and the Fully Participating Libraries are authorized to use Books and Inserts only in accordance with the Settlement and any applicable Library-Registry Agreement, and no claims are released that are based on any use of Books and Inserts not authorized by the Settlement Agreement or an applicable Library-Registry Agreement.

3. No claims are released for violations of any of Google's or a Participating Library's obligations under the Settlement Agreement or an applicable Library-Registry Agreement.

4. No claims are released for the unauthorized use by Google of Books and Inserts other than in the Settlement Agreement programs.

5. No claims are released with respect to the use by Google of Inserts in government works and public domain books if Google rejects a Rightsholder's exclusion request. See Section 3.5(b)(vii) of the Settlement Agreement for further details.

6. No claims are released with respect to any acts or omissions after October 28, 2008 that, if occurring after the Effective Date, would not be authorized by the Settlement Agreement.

7. No claims are released with respect to any uses of digital copies by Other Libraries.

8. No claims are released with respect to use of Books and Inserts outside the United States or with respect to any digitization outside the United States.

9. No claims are released with respect to any acts of Google in the United States, in response to a request of a user outside the United States, that results in displaying parts of a Book or Insert, in the user's jurisdiction, unless the display is lawful or Google has obtained permission for that display.

# Opting Out of the Settlement

## 14. What do I do if I don't want to be in the Settlement?

If you do not want to be included in the Settlement and you want to retain the right to sue Google and the Participating Libraries, you must take steps to "opt out" of the Settlement. By opting out, you retain the right to file your own lawsuit or join another lawsuit against Google about the claims in this lawsuit.

If you opt out of the Settlement, you will not be eligible for a Cash Payment or to participate in any of the revenue models under the Settlement. You will, however, have the right to bring your own lawsuit. In addition, even if you opt out of the Settlement, you may still be able to contact the Registry or Google at a later date to attempt to negotiate a separate deal for inclusion of your Books in any of the Settlement Agreement programs.

## 15. How do I opt out of the Settlement?

You may opt out of the Settlement by:

1) going online at http://www.googlebooksettlement.com and following the instructions to opt out on or before May 5, 2009, or

2) sending written notice by first class mail, postage prepaid, on or before May 5, 2009, to the Settlement Administrator at: Google Book Search Settlement Administrator, c/o Rust Consulting, PO Box 9364, Minneapolis, MN 55440-9364, UNITED STATES OF AMERICA. The postmark will determine the time of mailing.

You need not state your reason for opting out. However, your opt-out request must be signed or, if submitted online, completed, by an authorized person, must state which Sub-Class you wish to opt out of (either the Author Sub-Class or Publisher Sub-Class), must provide your name and address or, if you are an author's agent, must provide the name of the Author Sub-Class member on whose behalf you are acting (i.e., the person whose name appears as the author of the Book or Insert), and any pseudonym used to author the Books, if applicable. To ensure that Google clearly understands which Books and/or Inserts may be implicated by a decision to opt out, members of the Publisher Sub-Class must identify all of the imprints under which they publish, or have published, Books in which they hold a U.S. copyright interest. Google and Plaintiffs request (but do not require) that all members of the Author Sub-Class or Publisher Sub-Class provide the following information with respect to each Book and Insert in which they hold a U.S. copyright interest: title, author, publisher and ISBN (if the Book has an ISBN).

# Objecting to or Commenting on the Settlement

## 16. May I object to or comment on the Settlement?

Yes. If you do not opt out of the Settlement, you have the right to object to or comment on any or all of the Settlement, including the entry of final judgment dismissing the litigation with prejudice, and the request for attorneys' fees and costs of Counsel for the Author Sub-Class. If you wish to object to the Settlement, you must, on or before May 5, 2009, file with the Court a statement of your objection or position to be asserted and the grounds for your objection, together with copies of any supporting papers or briefs to:

Office of the Clerk
J. Michael McMahon
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007
UNITED STATES OF AMERICA

You must also serve a copy of such papers by email or first class mail on the following attorneys:

| Counsel for the Author Sub-Class: | Counsel for the Publisher Sub-Class: | Counsel for Google: |
|---|---|---|
| Michael J. Boni, Esq. | Jeffrey P. Cunard, Esq. | Daralyn J. Durie, Esq. |
| Joanne Zack, Esq. | Bruce P. Keller, Esq. | David J. Silbert, Esq. |
| Joshua Snyder, Esq. | Debevoise & Plimpton LLP | Joseph C. Gratz, Esq. |
| Boni & Zack LLC | 919 Third Avenue | Keker & Van Nest LLP |
| 15 St. Asaphs Road | New York, NY 10022 | 710 Sansome Street |
| Bala Cynwyd, PA 19004 | UNITED STATES OF | San Francisco, CA 94111 |
| UNITED STATES OF | AMERICA | UNITED STATES OF |
| AMERICA | bookclaims@debevoise.com | AMERICA |
| bookclaims@bonizack.com | | bookclaims@kvn.com |

You may appear at the hearing in person or, if you are represented by an attorney, your attorney may appear in person, and state why the Settlement or any part of the Settlement should not be approved. You must give notice of your or your attorney's intent to do so in the statement you file with the Court.

Unless you object as provided in this Notice, you will not be entitled to contest the terms and conditions of the Settlement, including the application by Counsel for the Author Sub-Class for attorneys' fees and costs, and persons who fail to object as provided shall be deemed to have waived and shall be forever foreclosed from raising any such objections.

## 17. What is the difference between objecting to the Settlement and opting out of the Settlement?

You may object to the Settlement if you remain a class member and are subject to the Settlement, if approved, but disagree with some aspect of the Settlement. An objection allows your views to be heard in Court.

In contrast, opting out means that you are no longer a member of the Class and that you do not want to be subject to the terms and conditions of the Settlement. Once you opt out, you lose any right to object to the Settlement, because the Settlement will no longer affect you.

# THE LAWYERS REPRESENTING YOU

## 18.   Do I have a lawyer representing my interests in these cases?

Yes. The Court has appointed the following law firms to represent you and other class members:

| Counsel for the Author Sub-Class | Counsel for the Publisher Sub-Class |
|---|---|
| Michael J. Boni, Esq.<br>Joanne Zack, Esq.<br>Joshua Snyder, Esq.<br>Boni & Zack LLC<br>15 St. Asaphs Road<br>Bala Cynwyd, PA 19004<br>UNITED STATES OF AMERICA | Jeffrey P. Cunard, Esq.<br>Bruce P. Keller, Esq.<br>Debevoise & Plimpton LLP<br>919 Third Avenue<br>New York, NY 10022<br>UNITED STATES OF AMERICA |

## 19.   How will the lawyers be paid?

Counsel for the Author Sub-Class will request that the Court award attorneys' fees and expenses of US $30 million. Subject to Court approval, Google will pay those attorneys' fees and expenses. (Counsel for the Author Sub-Class has incurred approximately $140,000 in expenses as of the date of the Settlement Agreement.) Google will pay those fees and expenses in addition to the amounts it has agreed to pay to Sub-Class members and Rightsholders.

Counsel for the Publisher Sub-Class have agreed not to seek attorneys' fees or reimbursement of expenses from the class action settlement funds. Instead, counsel for the Publisher Sub-Class will be paid from the settlement between Google and the publishers in the related case, *The McGraw-Hill Companies, Inc. et al. v. Google Inc.*, Case No. 05 CV 8881 (S.D.N.Y.). The five publisher plaintiffs in that action are Sub-Class Representatives on behalf of the Publisher Sub-Class. Contingent upon the Settlement Agreement becoming final, they will dismiss their separate suit against Google after the Effective Date. Google has agreed to pay US $15.5 million in settlement of that action. Counsel for the Publisher Sub-Class will be paid their attorneys' fees and costs from that amount, and the rest will be used by the Association of American Publishers to establish a fund to serve the interests of both publishers and authors. The use of the remaining funds is subject to prior approval of a majority of the members of the Board of Directors of the Registry, including at least one author director and one publisher director.

## 20.   Should I get my own lawyer?

You do not need to hire your own lawyer, but if you want your own lawyer to speak for you or appear in Court, you must file a Notice of Intent to Appear. See Question 23 below to find out how to submit a Notice of Intent to Appear. If you hire a lawyer to appear for you in the lawsuit, you will have to pay for your lawyer.

# THE COURT'S FINAL APPROVAL HEARING

## 21.   When and where will the Court decide whether to grant final approval of the Settlement?

The Court will hold a Fairness Hearing on June 11, 2009 at 1:00 p.m. EDT in Courtroom 14C of the United States District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, NY 10007, to consider whether the Settlement is fair, adequate and reasonable. At or after the Fairness Hearing, the Court will decide whether to approve the Settlement and the motion for attorneys' fees and expenses. If comments or objections have been received, the Court will consider them at that time.

The time and date of the hearing may be rescheduled by the Court without further notice. **If you desire to participate in the Settlement, you are not required to do anything further at present.**

## 22. Must I attend the Fairness Hearing?

No. Attendance is not required. Class Counsel are prepared to answer the Court's questions on your behalf. If you or your own lawyer wants to attend the Fairness Hearing, you may do so at your own expense.

## 23. May I speak at the Fairness Hearing?

Yes. You may speak at the Fairness Hearing or hire your own lawyer to speak for you. If you want to do so, you must file a "Notice of Intent to Appear" with the Court. The Notice of Intent to Appear must include the name and number of this lawsuit (*The Authors Guild, Inc., et al. v. Google Inc.*, No. 05 CV 8136), and state that you wish to enter an appearance at the Fairness Hearing. It also must include your name, address, telephone number and signature as well as the name and address of your lawyer, if one is appearing for you. You cannot speak at the Fairness Hearing if you opt out of the Settlement. Your Notice of Intent to Appear **must** be filed with the Court on or before May 5, 2009, at:

> Office of the Clerk
> J. Michael McMahon
> U.S. District Court for the Southern District of New York
> 500 Pearl Street
> New York, New York 10007
> UNITED STATES OF AMERICA

Copies of the Notice of Intent to Appear must be emailed or sent by postal mail, postmarked on or before May 5, 2009, to:

| Counsel for the Author Sub-Class: | Counsel for the Publisher Sub-Class: | Counsel for Google: |
|---|---|---|
| Michael J. Boni, Esq. | Jeffrey P. Cunard, Esq. | Daralyn J. Durie, Esq. |
| Joanne Zack, Esq. | Bruce P. Keller, Esq. | David J. Silbert, Esq. |
| Joshua Snyder, Esq. | Debevoise & Plimpton LLP | Joseph C. Gratz, Esq. |
| Boni & Zack LLC | 919 Third Avenue | Keker & Van Nest LLP |
| 15 St. Asaphs Road | New York, NY 10022 | 710 Sansome Street |
| Bala Cynwyd, PA 19004 | UNITED STATES OF | San Francisco, CA 94111 |
| UNITED STATES OF | AMERICA | UNITED STATES OF |
| AMERICA | bookclaims@debevoise.com | AMERICA |
| bookclaims@bonizack.com | | bookclaims@kvn.com |

# GETTING MORE INFORMATION

## 24. Where do I obtain more information?

The Settlement Agreement, its attachments and the other legal documents that have been filed with the Court in this lawsuit contain more details about the Settlement. You may look at and copy these legal documents at any time during regular office hours at the Office of the Clerk, J. Michael McMahon, U.S. District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007. These documents are also available on the Settlement website at http://www.googlebooksettlement.com.

In addition, if you have any questions about the lawsuit or this Notice, you may:

- Visit the Settlement website at http://www.googlebooksettlement.com,

- Contact the Authors Guild at http://www.authorsguild.org, or the Association of American Publishers at http://www.publishers.org,

- Call the appropriate number at the end of this Notice (Appendix), or

- Write to:

> Google Book Search Settlement Administrator
> c/o Rust Consulting, Inc.
> PO Box 9364
> Minneapolis, MN 55440-9364
> UNITED STATES OF AMERICA

If you change your address or if this Notice was not mailed to your correct address, you should notify the Settlement Administrator. If the Settlement Administrator does not have your correct address, you may not receive your benefits under the Settlement or notice of important developments.

# APPENDIX: SETTLEMENT ADMINISTRATOR TELEPHONE NUMBERS

Complete information about the Settlement, and the Claim Form, are available at http://www.googlebooksettlement.com. Class members may request assistance and ask questions through that website.

For Class Members who are unable to have access to the website or who require additional assistance, please contact the Settlement Administrator using the telephone numbers on the following pages. Where possible, these numbers are toll-free. In countries in which toll-free numbers are not available, please use the international toll number (+1.612.359.8600) and, if you wish, the Settlement Administrator will call you back.

| Country | Phone Number |
| --- | --- |
| Albania | Toll-Free 00 800 0010 (wait for tone) 888.839.1909 |
| Algeria | 00 1.612.359.8600 |
| Andorra | 00 1.612.359.8600 |
| Angola | Toll-Free 808 000 011 (wait for tone) 888.839.1909 |
| Anguilla | Toll-Free 1.888.839.1909 |
| Antigua and Barbuda | Toll-Free 1.800.988.7132 |
| Argentina | Toll-Free 0800.666.1520 |
| Armenia | Toll-Free 0 800 10 111 (wait for tone) 888.839.1909 (select locations); or 00 1.612.359.8600 |
| Aruba | 00 1.612.359.8600 |
| Australia | Toll-Free 1.800.669.201 |
| Austria | Toll-Free 00 800 8000 3300 |
| Azerbaijan | 00 1.612.359.8600 |
| Bahamas | Toll-Free 1.888.762.3775 |
| Bahrain | Toll-Free 800.19.908 |
| Bangladesh | Toll-Free 157 0011 (wait for tone) 888.839.1909; or 00 1.612.359.8600 |
| Barbados | Toll-Free 1.800.988.7146 |
| Belarus | Toll-Free 8 (wait for tone) 800 101 (wait for tone) 888.839.1909 (select locations); or 8 (wait for tone) 10 1.612.359.8600 |
| Belgium | Toll-Free 00 800 8000 3300 |
| Belize | Toll-Free 811 (wait for tone) 888.839.1909 (select locations); or 00 1.612.359.8600 |
| Benin | Toll-Free 102 (wait for tone) 888.839.1909 |
| Bermuda | Toll-Free 1.800.988.7139 |
| Bolivia | Toll-Free 800.10.0675 |
| Bosnia & Herzegovina | Toll-Free 00 800 0010 (wait for tone) 888.839.1909 (select locations); or 00 1.612.359.8600 |
| Botswana | 00 1.612.359.8600 |
| Brazil | Toll-Free 0800.891.7626 |
| British Virgin Islands | Toll-Free 1.800.988.7149 |
| Brunei | Toll-Free 800 1111(wait for tone) 888.839.1909 |
| Bulgaria | Toll-Free 00 800 8000 3300 |
| Burkina Faso | 00 1.612.359.8600 |
| Burundi | 00 1.612.359.8600 |
| Cambodia | Toll-Free 1 800 881 001 (wait for tone) 888.839.1909 (select locations); or 001 1.612.359.8600 |
| Cameroon | 00 1.612.359.8600 |
| Canada | Toll-Free 1.888.356.0248 |
| Cape Verde | 0 1.612.359.8600 |
| Cayman Islands | Toll-Free 1.800.988.7151 |
| Central African Republic | 00 1.612.359.8600 |
| Chad | 15 1.612.359.8600 |
| Chile | Toll-Free 1230.020.9265 |
| China | Toll-Free 00 800 8000 3300 |

| Country | Phone Number |
| --- | --- |
| Colombia | Toll-Free 01800.700.2137 |
| Comoros | 00 1.612.359.8600 |
| Cook Islands | Toll-Free 09 111 (wait for tone) 888.839.1909 |
| Costa Rica | Toll-Free 0800.044.0102 |
| Cote d'Ivoire | 00 1.612.359.8600 |
| Croatia | Toll-Free 0800.222.460 |
| Cyprus | Toll-Free 00 800 8000 3300 |
| Czech Republic | Toll-Free 00 800 8000 3300 |
| Democratic Republic of the Congo | 00 1.612.359.8600 |
| Denmark | Toll-Free 00 800 8000 3300 |
| Djibouti | 00 1.612.359.8600 |
| Dominica | Toll-Free 1.800.988.7130 |
| Dominican Republic | Toll-Free 1.888.751.8874 |
| East Timor | 00 1.612.359.8600 |
| Ecuador | Toll-Free 1.800.010.575 |
| Egypt | Toll-Free 2510 0200 (wait for tone) 888.839.1909 (Cairo); Toll-Free 02 2510 0200 (wait for tone) 888.839.1909 |
| El Salvador | Toll-Free 800.6599 |
| Equatorial Guinea | 00 1.612.359.8600 |
| Estonia | Toll-Free 00 800 8000 3300 |
| Falkland Islands | 00 1.612.359.8600 |
| Faroe Islands | 00 1.612.359.8600 |
| Fiji | Toll-Free 004 890 1001 (wait for tone) 888.839.1909 |
| Finland | Toll-Free 00 800 8000 3300 |
| France | Toll-Free 00 800 8000 3300 |
| French Guiana | Toll-Free 0800 99 0011(wait for tone) 888.839.1909 |
| French Polynesia | 00 1.612.359.8600 |
| Gabon | 00 1.612.359.8600 |
| Gambia | 00 1.612.359.8600 |
| Georgia | 8 (wait for tone) 10 1.612.359.8600 |
| Germany | Toll-Free 00 800 8000 3300 |
| Ghana | Toll-Free 0191 (wait for tone) 888.839.1909 |
| Gibraltar | Toll-Free 8800 (wait for tone) 888.839.1909 |
| Greece | Toll-Free 00.8004.414.6186 |
| Greenland | 00 1.612.359.8600 |
| Grenada | Toll-Free 1.800.988.7159 |
| Guadeloupe | 00 1.612.359.8600 |
| Guam | Toll-Free 1.888.356.0248 |
| Guatemala | Toll-Free 138 120 (wait for tone) 888.839.1909; or Toll-Free 999 91 90 (wait for tone) 888.839.1909 |
| Guinea | 00 1.612.359.8600 |
| Guinea-Bissau | 00 1.612.359.8600 |
| Guyana | Toll-Free 159 (wait for tone) 888.839.1909 |

| Country | Phone Number |
| --- | --- |
| Haiti | Toll-Free 183 (wait for tone) 888.839.1909 (English);  or Toll-Free 181 (wait for tone) 888.839.1909 (Creole) |
| Honduras | Toll-Free 800 0123 (wait for tone) 888.839.1909 |
| Hong Kong | Toll-Free 3071.5077 |
| Hungary | Toll-Free 00 800 8000 3300 |
| Iceland | Toll-Free 00 800 8000 3300 |
| India | Toll-Free 000.800.440.1709 |
| Indonesia | Toll-Free 001.803.017.7714 |
| Ireland | Toll-Free 00 800 8000 3300 |
| Isle of Man | +1.612.359.8600 |
| Israel | Toll-Free 00 800 8000 3300 |
| Italy | Toll-Free 00 800 8000 3300 |
| Jamaica | Toll-Free 1.800.988.7135 |
| Japan | Toll-Free 0120.948.079 |
| Jersey & Guernsey | +1.612.359.8600 |
| Jordan | Toll-Free 18 800 000 (wait for tone) 888.839.1909 |
| Kazakhstan | Toll-Free 8 (wait for tone) 800 121 4321 (wait for tone) 888.839.1909 |
| Kenya | 000 1.612.359.8600 |
| Kiribati | 00 1.612.359.8600 |
| Kuwait | 00 1.612.359.8600 |
| Kyrgyzstan | 00 1.612.359.8600 |
| Laos | 00 1.612.359.8600 |
| Latvia | Toll-Free 00 800 8000 3300 |
| Lebanon | 00 1.612.359.8600 |
| Lesotho | 00 1.612.359.8600 |
| Liberia | 00 1.612.359.8600 |
| Libya | 00 1.612.359.8600 |
| Liechtenstein | 00 1.612.359.8600 |
| Lithuania | Toll-Free 00 800 8000 3300 |
| Luxembourg | Toll-Free 00 800 8000 3300 |
| Macau | Toll-Free 0800 111 (wait for tone) 888.839.1909 |
| Macedonia | Toll-Free 0 8000 4288 (wait for tone) 888.839.1909 |
| Madagascar | 00 1.612.359.8600 |
| Malawi | 00 1.612.359.8600 |
| Malaysia | Toll-Free 1.800.88.0895 |
| Maldives | 00 1.612.359.8600 |
| Mali | 00 1.612.359.8600 |
| Malta | Toll-Free 00 800 8000 3300 |
| Marshall Islands | 011 1.612.359.8600 |
| Martinique | Toll-Free 0800 99 0011 (wait for tone) 888.839.1909 |
| Mauritania | 00 1.612.359.8600 |
| Mauritius | Toll-Free 802.044.0053 |
| Mayotte | 00 1.612.359.8600 |
| Mexico | Toll-Free 01.800.681.1853 |
| Micronesia | Toll-Free 288 (wait for tone) 888.839.1909 |
| Moldova | 00 1.612.359.8600 |
| Monaco | Toll-Free 800.93412 |
| Mongolia | 001 1.612.359.8600 |
| Montenegro | 00 1.612.359.8600 |

| Country | Phone Number |
| --- | --- |
| Montserrat | Toll-Free 1.888.839.1909 |
| Morocco | Toll-Free 002 11 0011 (wait for tone) 888.839.1909 |
| Mozambique | 00 1.612.359.8600 |
| Namibia | 00 1.612.359.8600 |
| Nauru | 00 1.612.359.8600 |
| Netherlands | Toll-Free 00 800 8000 3300 |
| Netherlands Antilles | Toll-Free 1.888.839.1909 |
| New Caledonia | 00 1.612.359.8600 |
| New Zealand | Toll-Free 0800.447.916 |
| Nicaragua | Toll-Free 1 800 0164 (wait for tone) 888.839.1909 |
| Niger | 00 1.612.359.8600 |
| Nigeria | 009 1.612.359.8600 |
| Niue | 00 1.612.359.8600 |
| Northern Mariana Islands | 1.612.359.8600 |
| Norway | Toll-Free 00 800 8000 3300 |
| Oman | 00 1.612.359.8600 |
| Pakistan | Toll-Free 00800.900.44023 |
| Palau | 011 1.612.359.8600 |
| Palestinian Territories | 00 1.612.359.8600 |
| Panama | Toll-Free 00.1.800.203.1978 |
| Papua New Guinea | 05 1.612.359.8600 |
| Paraguay | 002 1.612.359.8600 |
| Peru | Toll-Free 0800.54026 |
| Philippines | Toll-Free 1.800.1.441.0425 |
| Poland | Toll-Free 00 800 8000 3300 |
| Portugal | Toll-Free 00 800 8000 3300 |
| Puerto Rico | Toll-Free 1.888.356.0248 |
| Qatar | 00 1.612.359.8600 |
| Republic of the Congo | 00 1.612.359.8600 |
| Reunion | Toll-Free 0800 99 0011 (wait for tone) 888.839.1909 |
| Romania | Toll-Free 08008.94930 |
| Russia | Toll-Free 8 10 (wait for tone) 800 8000 3300 (Moscow); or 8 (wait for tone) 10 1.612.359.8600 |
| Rwanda | 00 1.612.359.8600 |
| Saint Helena | 00 1.612.359.8600 |
| Saint Kitts and Nevis | Toll-Free 1.800.988.7156 |
| Saint Lucia | 1.612.359.8600 |
| Saint Pierre & Miquelon | Toll-Free 0800 99 0011 (wait for tone) 888.839.1909 |
| Saint Vincent & the Grenadines | Toll-Free 1.800.988.7134 |
| Samoa | 0 1.612.359.8600 |
| Sao Tome and Principe | 00 1.612.359.8600 |
| Saudi Arabia | Toll-Free 800.844.6841 |
| Senegal | Toll-Free 800 103 073 (wait for tone) 888.839.1909 |
| Serbia | 00 1.612.359.8600 |
| Seychelles | 00 1.612.359.8600 |

| Country | Phone Number |
|---|---|
| Sierra Leone | Toll-Free 1100 (wait for tone) 888.839.1909 |
| Singapore | Toll-Free 800.130.1602 |
| Slovakia | Toll-Free 00 800 8000 3300 |
| Slovenia | Toll-Free 0800.80419 |
| Solomon Islands | 00 1.612.359.8600 |
| Somalia | 00 1.612.359.8600 |
| South Africa | Toll-Free 0.800.981.216 |
| South Korea | Toll-Free 00.308.13.1762 |
| Spain | Toll-Free 00 800 8000 3300 |
| Sri Lanka | 00 1.612.359.8600 |
| Sudan | 00 1.612.359.8600 |
| Suriname | Toll-Free 156 (wait for tone) 888.839.1909 (select locations); or 00 1.612.359.8600 |
| Swaziland | 00 1.612.359.8600 |
| Sweden | Toll-Free 00 800 8000 3300 |
| Switzerland | Toll-Free 00 800 8000 3300 |
| Syria | Toll-Free 0 801 (wait for tone) 888.839.1909 |
| Taiwan | Toll-Free 0800666907 |
| Tajikistan | 8 (wait for tone) 10 1.612.359.8600 |
| Tanzania | 000 1.612.359.8600 |
| Thailand | Toll-Free 001.800.13.203.2853 |
| Togo | 00 1.612.359.8600 |
| Tokelau | 00 1.612.359.8600 |
| Tonga | 00 1.612.359.8600 |
| Trinidad and Tobago | Toll-Free 1.800.205.9433 |
| Tunisia | 00 1.612.359.8600 |

| Country | Phone Number |
|---|---|
| Turkey | Toll-Free (90)212.414.2697 |
| Turkmenistan | 8 (wait for tone) 10 1.612.359.8600 |
| Turks & Caicos | Toll-Free 0.1.888.839.1909 |
| Tuvalu | 00 1.612.359.8600 |
| U.S. Virgin Islands | Toll-Free 1.888.356.0248 |
| Uganda | 000 1.612.359.8600 |
| Ukraine | Toll-Free 8 (wait for tone) 100 11 (wait for tone) 888.839.1909 (select locations); or 8 (wait for tone) 10 1.612.359.8600 |
| United Arab Emirates | Toll-Free 8000.441.6842 |
| United Kingdom | Toll-Free 00 800 8000 3300 |
| United States | Toll-Free 1.888.356.0248 |
| Uruguay | Toll-Free 000.401.902.14 |
| Uzbekistan | Toll-Free 8 (wait for tone) 641 7440010 (wait for tone) 888.839.1909 (select locations); or 8 (wait for tone) 10 1.612.359.8600 |
| Vanuatu | 00 1.612.359.8600 |
| Venezuela | Toll-Free 0.800.100.9129 |
| Vietnam | Toll-Free 1 201 0288 (wait for tone) 888.839.1909 (select locations); or 00 1.612.359.8600 |
| Wallis and Futuna | 19 1.612.359.8600 |
| Yemen | 00 1.612.359.8600 |
| Zambia | Toll-Free 00 899 (wait for tone) 888.839.1909 |
| Zimbabwe | Toll-Free 110 989 90 (wait for tone) 888.839.1909; or Toll-Free 00-899 (wait for tone) 888-839-1909 (select locations); or 00 1.612.359.8600 |

# Supplemental Notice To Authors, Publishers And Other Book Rightsholders About The Google Book Settlement

The parties in *Authors Guild, et al. v. Google Inc.* announced a settlement of the litigation in October 2008 and sent out a Notice of that settlement (the "Original Settlement"). The parties have now amended the Original Settlement in response to discussions with the United States Department of Justice and objections to the Original Settlement (the "Amended Settlement"). The Amended Settlement Agreement ("ASA"), as well as the original Settlement Agreement and the original Notice, may be found at http://www.googlebooksettlement.com or obtained from the Settlement Administrator, using the contact information on page 6.

This Supplemental Notice is not designed to replace the original Notice, but rather, to supplement that Notice. This Supplemental Notice identifies:

1) The material amendments to the Original Settlement,
2) Your rights under the Amended Settlement (see this Supplemental Notice page 5), and
3) The date of the fairness hearing scheduled to determine whether the Amended Settlement should be granted final approval (see this Supplemental Notice page 6).

IMPORTANT UPDATE: The deadline to claim Books and Inserts for Cash Payments has been extended from January 5, 2010 to March 31, 2011. The Removal deadline as to Google has been extended from April 5, 2011 to March 9, 2012. (The Removal deadline as to the libraries' digital copies remains April 5, 2011.)

## Summary of Amendments to the Original Settlement

**1.    Amended Settlement Class.**  The definition of Books has been narrowed.  As a consequence, many class members under the Original Settlement are no longer class members under the Amended Settlement.

### *Rightsholders Who Are Included in the Amended Settlement Class*

- For United States works, the definition of Books remains largely unchanged:  United States works must have been published and registered with the United States Copyright Office by January 5, 2009 to be included in the Amended Settlement.
- Under the Amended Settlement, however, if the works are not United States works, they are only included in the Amended Settlement if they were published by January 5, 2009 and either were registered with the U.S. Copyright Office by that date or their place of publication was in Canada, the United Kingdom ("UK") or Australia.

As a result of the narrowing of the definition of Books, the scope of Inserts has been narrowed as well.

**Please note that you may be a member of the Amended Settlement Class even if you do not reside in the United States, Canada, the UK or Australia.**  If your work meets the criteria above, then you are a member of the Amended Settlement Class regardless of where you reside and regardless of where else your work may also have been published.  (ASA Section 1.19)

A work will be considered to have a place of publication in Canada, the UK or Australia if its printed copy contains information indicating that the place of publication was in one of those three countries.  Such information may include, for example, a statement that the book was "Published in [Canada or the UK or Australia]," or the location or address of the publisher in one of those three countries.

_**Rightsholders Who Are Not Included in the Amended Settlement Class**_

As a result of these amendments, if the only United States copyright interests you own are in works that were not either (a) published and registered with the United States Copyright Office by January 5, 2009 or (b) published in Canada, the UK or Australia by that date, you are not a member of the Amended Settlement Class, even if you were a member of the original Settlement Class.

If you are not a member of the Amended Settlement Class, you will not be eligible to participate in the Amended Settlement and you will not be bound by its terms. You retain all rights to sue Google for its digitization and use of your copyrighted material without your permission. If you wish to sue Google for such digitization and use, you must do so in a separate lawsuit. Your rights may be affected by laws limiting the time within which you may bring such a suit. **If you are interested in bringing a lawsuit against Google, you should consult your own attorney.**

If you were a class member under the Original Settlement, but are not a class member under the Amended Settlement, you should visit http://books.google.com/books-partner-options in order to learn about Google's current policies with respect to the removal of your works from its databases, as well as Google's interest in making your works accessible in models similar to those in the Amended Settlement under similar terms.

2. **Commercially Available.** The Amended Settlement clarifies that a Book is Commercially Available if it is being offered for sale new by a seller anywhere in the world to a buyer in the United States, Canada, the UK or Australia. (ASA Section 1.31)

The Amended Settlement now provides that Google will not display any Book it classifies as not Commercially Available for at least 60 days after the date of that classification, or the Effective Date, whichever is later. The Amended Settlement also now provides that, if a Rightsholder asserts that a Book is Commercially Available, Google will not display the Book unless Google successfully challenges that assertion in a dispute. (ASA Sections 3.2(d)(i) and 3.3(a))

3. **Representation of Canadian, UK and Australian Rightsholders on the Board of the Registry.** The Amended Settlement provides that the Board of the Book Rights Registry (the "Registry") will, at a minimum, have one author and publisher director each from Canada, the UK and Australia. (ASA Section 6.2(b)(ii))

4. **Monitoring for Rightsholders Outside the United States.** Because the services authorized by the Amended Settlement will be unavailable to users outside the United States, the Registry will, upon request, monitor Google's use of Books and Inserts to ensure that they conform to the requirements of the Amended Settlement and to Rightsholders' instructions, and will attempt to provide a means for such Rightsholders themselves to monitor and verify their claimed Books and Inserts. (ASA Section 6.1(f))

5. **Dispute Resolution Optional For Rightsholders.** The Amended Settlement now provides that Rightsholders may agree not to arbitrate disputes between or among them under the dispute resolution mechanism in the Amended Settlement. In addition, Rightsholders (but not Google) can elect to participate in any arbitration by teleconference or videoconference in order to save travel costs. (ASA Sections 9.1(a) and 9.3(a))

6. **Independent Representation For Rightsholders of Unclaimed Books and Inserts.** The Registry will include a fiduciary who will have the responsibility for representing the interests of Rightsholders with respect to the exploitation of unclaimed Books and Inserts. (ASA Section 6.2(b)(iii))

7. **Unclaimed Books and Inserts and Unclaimed Funds.** The Amended Settlement clarifies that, from its inception, the Registry will use settlement funds to attempt to locate Rightsholders. The Amended

Settlement also now provides that funds owed to Rightsholders of unclaimed Books and Inserts ("Unclaimed Funds") will not be used by the Registry for general operations or reserves and will not be distributed to claiming Rightsholders. The Amended Settlement makes the following changes to the Original Settlement: (a) after Unclaimed Funds are held for five years, the Registry, in collaboration with organizations in Canada, the UK and Australia, and in consultation with the fiduciary, may use up to 25% of the funds for the sole purpose of locating Rightsholders; and (b) remaining Unclaimed Funds will be held for the Rightsholders for at least 10 years, after which the Registry, subject to fiduciary approval as to timing, may apply to the Court for permission to distribute Unclaimed Funds to literacy-based charities in the United States, Canada, the UK and Australia, upon notice to Rightsholders, the attorneys general of all states in the United States and Fully Participating and Cooperating Libraries. (ASA Section 6.3)

**8.      Commitment to Improving Claiming Process and Website.** The Amended Settlement provides that the Registry and Google (for as long as Google continues to provide operational support for the Registry) will maintain and improve the Settlement Website to facilitate the claiming of Books and Inserts. Google will also work to correct errors in the Books Database. (ASA Section 13.3)

**9.      Additional Revenue Models.** The Amended Settlement now limits the potential new revenue models to the following three additional Revenue Models, which must be approved by the Registry:
> 1)  Print-on demand ("POD"),
> 2)  File download (formerly "PDF Download"), and
> 3)  Consumer subscription.

The Amended Settlement limits POD, if approved, to Books that are not Commercially Available. In addition, the Amended Settlement specifies that the revenue split between Google and Rightsholders as to the additional Revenue Models will be the same as for the existing Revenue Models.

Finally, the Amended Settlement provides that Rightsholders of claimed works (and the fiduciary for unclaimed works) will be given timely advance notice before an additional Revenue Model is launched, with an opportunity to exclude works from that model. (ASA Section 4.7)

**10.     Agreeing to Different Revenue Splits for Commercially Available Books.** For Commercially Available Books, the Amended Settlement provides that either Google or the Rightsholder will have the ability to request renegotiation of the 63/37 standard revenue split for any or all revenue models. If they cannot reach an agreement, then neither of the parties is obligated to offer the Rightsholder's Books in the revenue models. (ASA Section 4.5(a)(iii))

**11.     Discounting off Consumer Purchase List Price.** Google will now have an unlimited right to discount the List Price of Books for Consumer Purchase, so long as it continues to pay 63% of the undiscounted List Price to the Registry for Rightsholders. The Registry may also authorize Google to make special offers of Books for Consumer Purchase at reduced prices from the List Price and pay 63% of the discounted List Price to the Registry for Rightsholders. Claiming Rightsholders (and the fiduciary for unclaimed Books), however, will be notified of this reduced price proposal and can disapprove it for their (or unclaimed) Books. (ASA Sections 4.5(b)(i) and (ii))

**12.     Resale of Consumer Purchase.** The Amended Settlement requires that Google allow third parties to sell consumer access to Books offered through Consumer Purchase, with the reseller receiving a majority of Google's 37% share of the revenue split. (ASA Section 4.5(b)(v))

**13.     Non-discrimination Clause (i.e., "Most Favored Nations" clause).** Section 3.8(a) of the Original Settlement has been eliminated from the Amended Settlement.

**14.    Settlement Controlled Pricing.** The Amended Settlement clarifies that the Pricing Algorithm used to establish the Settlement Controlled Prices for Consumer Purchase will be developed to simulate the prices in a competitive market and that the price for a Book will be established without regard to changes to the price of any other Book. The Amended Settlement also clarifies that the Registry will not disclose the Settlement Controlled Price for a Book to anyone other than the Book's Rightsholders. (ASA Sections 4.2(b)(i)(2), 4.2(c)(ii)(2) and 4.2(c)(iii))

**15.    Modification of Feature Restrictions.** Rightsholders may authorize Google to modify or remove the Amended Settlement's default restrictions on Revenue Model features, such as copy/paste and print. (ASA Section 3.3(g))

**16.    Registry Support for Alternative Licenses (Including Creative Commons).** The Amended Settlement provides that the Registry will facilitate Rightsholders' wishes to allow their works to be made available through alternative licenses for Consumer Purchase, including through a Creative Commons license. For information about Creative Commons licenses, visit http://www.creativecommons.org. The Amended Settlement also clarifies that Rightsholders are free to set the Consumer Purchase price of their Books at zero. (ASA Sections 1.44, 4.2(a)(i) and 4.2(b)(i)(1))

**17.    Public Access Terminals.** The Amended Settlement authorizes the Registry to agree to increase the number of public access terminals at a public library building. (ASA Section 4.8(a)(i)(3))

**18.    Pictorial Works.** The Amended Settlement no longer includes children's book illustrations in the definition of Inserts. (ASA Section 1.75) The Amended Settlement, however, does not change the inclusion of pictorial works, such as graphic novels and children's picture books, in the definition of Books and provides that the Amended Settlement only authorizes Google to display the pictorial images in such Books if a U.S. copyright owner of the pictorial image also is a Rightsholder of the Book. The Amended Settlement also clarifies that comic books are considered to be Periodicals and that Periodicals (as well as compilations of Periodicals) are not included in the definition of "Books," and thus are not in the Amended Settlement. (ASA Section 1.104)

**19.    Music Notation.** The definition of Book was amended in the Amended Settlement to better achieve the parties' goal of excluding books that are primarily used to play music. (ASA Section 1.19) Also, "music notation" is no longer included in the definition of Inserts. (ASA Section 1.75)

**20.    Deadline to Claim Usage and Inclusion Fees.** Usage Fees will now be held for Rightsholders who have not yet claimed their Books for at least ten years and Rightsholders will now be eligible for Inclusion Fees if they claim their Books or Inserts within ten years of the Effective Date, instead of five years, in both cases as had been provided in the Original Settlement. (Plan of Allocation Sections 1.1(c), 1.2(c) and 2.2)

4

# Your Rights Under the Amended Settlement Agreement

Members of the Amended Settlement Class have the following options:

| If you... | Then... | Deadline |
|---|---|---|
| Wish to remain in the Amended Settlement Class (if you did not previously opt out of the Original Settlement) | You need not do anything at this time. | N/A |
| Wish to remain in the Amended Settlement Class and wish to be eligible to receive a Cash Payment for any Book or Insert scanned on or before May 5, 2009 but haven't yet claimed your Books and Inserts | You must submit a claim by using the Claim Form, available at http://www.googlebooksettlement.com or from the Settlement Administrator. | March 31, 2011 |
| Have already claimed Books and Inserts using the Claim Form | You need not take any additional steps at this time with respect to those Books and Inserts. | N/A |
| Opted out of the Original Settlement, and wish to remain opted out of the Amended Settlement | You need not – and should not – opt out again. Your opting out of the Original Settlement will serve as an opt-out of the Amended Settlement as well. | N/A |
| Did not opt out of the Original Settlement but wish to opt out of the Amended Settlement | You may do so by following the instructions in the original Notice and at http://www.googlebooksettlement.com. | January 28, 2010 |
| Opted out of the Original Settlement and wish to opt back in to the Amended Settlement | You may do so by notifying the Settlement Administrator or Class Counsel or by filling out the "Opt-Back-In Form" at http://www.googlebooksettlement.com. | January 28, 2010 |
| Wish to file an objection to the terms of the Amended Settlement | If you have not opted out, you may file an objection by following the instructions in the original Notice and at http://www.googlebooksettlement.com. At this time, you may only object to the provisions amending the Original Settlement. All objections filed in connection with the Original Settlement are preserved unless withdrawn and should not be refiled. | January 28, 2010 |
| Wish to appear and be heard at the Fairness Hearing and have not yet filed a Notice of Intent to Appear | You must file a Notice of Intent to Appear by following the instructions in the original Notice and at http://www.googlebooksettlement.com. | February 4, 2010 |

# Rescheduled Date of the Fairness Hearing

The Court will hold a Fairness Hearing on February 18, 2010 at 10 a.m. in Courtroom 11A of the United States District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, NY 10007, to consider whether the Amended Settlement, as set forth in the ASA, is fair, adequate and reasonable. Please review the original Notice for further information concerning participation in the Fairness Hearing.

**If you have any questions concerning this Supplemental Notice or the Amended Settlement, please contact Class Counsel, or the Settlement Administrator, whose contact information may be found in the original Notice or at http://www.googlebooksettlement.com. You may also contact the Settlement Administrator at:**

Google Book Search Settlement Administrator
c/o Rust Consulting, Inc.
PO Box 9364
Minneapolis, MN 55440-9364
+1.612.359.8600 (Tolls may apply. Toll-free numbers are available at
    http://www.googlebooksettlement.com.)



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Rachel Edwards, hereby confirm that recordings for Interactive Voice Response (IVR) system completed for Rust Consulting in conjunction with *The Authors Guild, Inc., et al. v. Google Inc., Case No. 05 CV 8136 (S.D.N.Y.)* are, to the best of my knowledge and belief, true and accurate translations from English into Arabic, Bulgarian, Cantonese, Croatian, Czech, Danish, Dutch, Finnish, French, German, Greek, Hebrew, Hindi, Hungarian, Indonesian, Italian, Japanese, Korean, Lithuanian, Malay, Mandarin, Norwegian, Polish, Portuguese, Brazilian Portuguese, Romanian, Russian, Serbian, Slovak, Slovenian, Spanish, Swedish, Thai, Turkish, Vietnamese, Afrikaans, Albanian, Armenian, Belorussian, Bengali, Catalan, Estonian, Georgian, Gujarati, Haitian Creole, Icelandic, Kazakh, Khmer, Kannada, Latvian, Macedonian, Malayalam, Maltese, Marathi, Punjabi, Tagalog, Tajik, Tamil, Telugu and Urdu.

*Rachel Edwards*
Rachel Edwards
Department Manager, Media Services

Sworn to before me this
January 28, 2010

*Stephanie Dill*
Signature, Notary Public

Stephanie Dill
Notary Public, State of New York
No. 01DI6180934
Qualified in NEW YORK County
Commission Expires Jan 22, 2012
Stamp, Notary Public



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Erica S. Levine, hereby confirm that the translations of the Website Help Center materials, Claim Forms, Claiming Spreadsheets and Supplemental Notices completed for Rust Consulting in conjunction with *The Authors Guild, Inc., et al. v. Google Inc., Case No. 05 CV 8136 (S.D.N.Y.)* are, to the best of my knowledge and belief, true and accurate translations from English into Arabic, Bulgarian, Simplified Chinese, Traditional Chinese, Croatian, Czech, Danish, Dutch, Finnish, French, German, Greek, Hebrew, Hindi, Hungarian, Indonesian, Italian, Japanese, Korean, Lithuanian, Malay, Norwegian, Polish, Portuguese, Brazilian Portuguese, Romanian, Russian, Serbian, Slovak, Slovenian, Spanish, Swedish, Thai, Turkish and Vietnamese.

Erica S. Levine
Department Manager
Branding, Marketing & Communications

Sworn to before me this
January 29, 2010

Signature, Notary Public

KRISTIN MILORO
Notary Public - State of New York
No. 01MI6212799
Qualified in New York County
Commission Expires Oct 19, 2013

Stamp, Notary Public

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM

# Language Innovations, LLC™

*Helping businesses communicate worldwide™*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel    202 349.4180
fax    202 349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Settlement Website Frequently Asked Questions and Answers,** is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Rust Consulting Inc.** The original document(s) was translated from **English** into Arabic, Bahasa Indonesian, Bulgarian, Chinese (Cantonese), Chinese (Mandarin), Croatian, Czech, Danish, Dutch, English, Finnish, French, German, Greek, Hebrew, Hindi, Hungarian, Italian, Japanese, Korean, Lithuanian, Malay, Norwegian, Polish, Portuguese (Brazilian), Portuguese (Continental), Romanian, Russian, Serbian, Slovak, Slovenian, Spanish, Swedish, Thai, Turkish, and Vietnamese by a professional translator fluent in both the source and target languages and at completion delivered to the client in January, 2009.

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: February 5, 2010

Signature:

Brian Friedman, Director
Language Innovations, LLC

# Language Innovations, LLC™

*Helping businesses communicate worldwide™*

1725 I Street, NW
Suite 300
Washington, D.C. 20006

tel    202 349.4180
fax    202 349.4182
email: translate@languageinnovations.com

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document(s), **Ref.: Interactive Voice Response messaging**, is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client, **Rust Consulting Inc.** The original document(s) was translated from **English** into Afrikaans, Albanian, Arabic, Armenian, Azerbaijani, Bahasa Indonesian, Belarusian, Bengali, Bosnian, Bulgarian, Catalan, Chinese (Cantonese), Chinese (Mandarin), Creole (Haitian), Croatian, Czech, Danish, Dutch, English, Estonian, Finnish, French, Georgian, German, Greek, Gujarati, Hebrew, Hindi, Hungarian, Icelandic, Italian, Japanese, Kannada, Kazakh, Khmer, Korean, Lao, Latvian, Lithuanian, Macedonian, Malay, Malayalam, Maltese, Marathi, Norwegian, Polish, Portuguese (Brazilian), Portuguese (Continental), Punjabi, Romanian, Russian, Serbian, Sinhala, Slovak, Slovenian, Spanish, Swedish, Tagalog, Tajik, Tamil, Telugu, Thai, Turkish, Turkmen, Ukrainian, Urdu, and Vietnamese by a professional translator fluent in both the source and target languages and at completion delivered to the client in January, 2009.

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: February 5, 2010

Signature:

Brian Friedman, Director
Language Innovations, LLC