**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| The Authors Guild, Inc., Association of American Publishers, Inc., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Google, Inc.<br><br>Defendant. | **Case No. 05 CV 8136-JES**<br><br>**SUPPLEMENTAL OBJECTION OF ABSENT CLASS MEMBER DAVID MEININGER** |

# SUPPLEMENTAL OBJECTION OF
# ABSENT CLASS MEMBER DAVID MEININGER

Despite having timely filed an objection to the proposed Settlement Agreement, and having requested time to present oral argument at the fairness hearing, objector David Meininger ("Objector") was not provided an opportunity to speak at the hearing. Accordingly, Mr. Meininger now files this supplemental objection to address issues raised by the settling parties and class members at the hearing on the parties' motion for final approval on February 18, 2010.

**I. THE LACK OF TRANSPARENCY AND DISCLOSURE RESULTING FROM THE SETTLING PARTIES' FAILURE TO INTRODUCE EVIDENCE SUFFICIENT TO SUPPORT THE SETTLEMENT PREVENTS THE COURT FROM ADEQUATELY EVALUATING THE SETTLEMENT**

Notwithstanding the substantial barriers to approval implicated by antitrust law, separation of powers, and international and domestic copyright law, the settling parties have inexplicably failed to provide information necessary to evaluate the fairness, adequacy, and reasonableness of the proposed settlement. Accordingly, not only is the Court unable to effectively perform its duties in the absence of meaningful substantive

1

information, class members are unable to make an informed decision concerning whether to opt-out or participate in the proposed Registry.

For example, Google has not, and will not, disclose its pricing algorithm. The Amended Settlement Agreement states, in pertinent part,

> ". . .(a) Google has no obligation to disclose the Pricing Algorithm or any other Confidential Information of Google to the Registry or any third-party experts retained by the Registry, except as necessary for the Registry's experts to validate the reasonableness of the Pricing Algorithm and to verify its conclusions, . . ." [ASA 4.2(c)(ii)(3)]

Given the far reaching implications of the pricing algorithm (and Google's *de facto* monopoly if the proposed settlement is approved), the methodology for pricing should obviously be disclosed. Rather than providing this information to class members and the Court regarding how it will, for example, price books, Google, along with its "Registry experts," has merely said, in essence, "trust us." Google insists that its algorithm will accurately model a competitive market but has introduced no evidence that this is, in fact, the case. If it weren't sufficiently disappointing that the settling parties have taken this "black box" approach, Google has also failed to adequately demonstrate the methodology by which it will evaluate and/or modify its pricing model on a going forward basis in order to account for changes in the marketplace. The need for disclosure of the pricing structure is further underscored by the potential antitrust issues implicated through effectuation of the proposed settlement..

Objector raised issues concerning the transparency of the Settlement Agreement and proposed Registry in his original objection. Those concerns have yet to be addressed by the settling parties. Counsel for the publisher sub-class tried to downplay the significance of these issues by characterizeing the objectors' concerns at the fairness

hearing as "speculative arguments." Unfortunately, class members cannot help but speculate at this point due to the lack of substantive disclosure by the settling parties. The settling parties possess this information but have failed and refused to disclose it. This nondisclosure is exacerbated by allegations that the notice campaign was inadequate.

## II. CLASS MEMBERS SHOULD NOT BE BOUND BY THE TERMS OF THE SETTLEMENT BY DEFAULT. RATHER, THIS SHOULD BE AN "OPT-IN" CLASS.

Google has consistently refused to settle this case on an "opt-in" basis instead of the proposed "opt-out" paradigm. As the Court observed at the final fairness hearing, making the registry an "opt-in" proposition could allay many of the concerns expressed by objectors. Allowing Google to include copyrighted works, "orphaned" or otherwise, in the Registry without express approval of the authors violates copyright law. *See* 17 U.S.C. § 106.

As Amazon argues, by compelling participation by all rightsholders who do not affirmatively opt-out, the settlement becomes the mechanism for collective action by rightsholders in selecting a distributor. This results in the danger of a monopolistic arrangement whereby Google has exclusive access to a large percentage of works in existence. At a minimum, the Registry should be subject to restrictions similar to those placed on BMI and ASCAP including the requirement to license all similarly situated users on a non-discriminatory basis.

As blogger Jay Lake writes, "This [settlement agreement] is no different from me deciding I can come to your house, use your lawnmower, borrow your car and cook on

your grill, and then telling you that unless you tell me in writing by a certain date that I cannot use your property, my right to use your property stands."

### III. BENEFITS PROVIDED BY COPYRIGHT LAW GO BEYOND ENSURING THAT AN AUTHOR RECEIVES MONETARY PAYMENT FOR A SPECIFIC WORK

Counsel for Google stated at the fairness hearing that the opt-out paradigm was acceptable because authors of orphaned works would not be receiving compensation otherwise. Google argues that the purpose of copyright law is to protect the economic interest of the author which Google equates with paying cash to the author. This is an oversimplification of the *raison d'etre* and attendant benefits of copyright law.

For example, as Professor Samuelson pointed out at the fairness hearing, many authors – particularly those in academic or research fields – support open access and desire that their works be freely distributed for the common good. Similarly, authors may simply wish to control where and how their books are distributed. Perhaps, for instance, a rightsholder does not wish for his or her work to be promoted in conjunction with certain other products, or in a certain manner, such as a pop-up advertisement. In short, copyright law is designed to allow authors to retain control over their works. Copyright protection is not designed exclusively to ensure payment of the author as suggested by Google. The protections afforded by the Copyright Act should be available to the author as long as the statute permits without requiring additional vigilance on the part of the author to protect the scope and manner of use.

## IV. THE PROPOSED SETTLEMENT IS AN IMPROPER USE OF RULE 23, IS CONTRARY TO WELL-ESTABLISHED NOTIONS OF SEPARATION OF POWERS, CREATES A *DE FACTO* MONOPOLY IN VIOLATION OF ANTITRUST LAWS, AND IMPROPERLY EXTINGUISHES FUTURE CLAIMS

Concerns regarding antitrust violations, separation of powers, and the Agreement's overly broad release have been briefed extensively, and the Court has heard oral argument on these matters. Objector joins in the argument of other objectors, including Amazon and Microsoft, that Congress, not the judiciary, is the appropriate governmental branch to write copyright law. The settlement as proposed goes beyond asking the Court to interpret existing law, or resolve a pending dispute. Rather, the settling parties are asking the Court to essentially create new law and bless a forward-looking business deal. Moreover, the settlement not only releases claims for past conduct, but releases Google from claims for future infringement as well. This is not a proper use of Rule 23. The parties are asking the Court to tread into the realm of legislation – a function specifically reserved for Congress under Article I of the United States Constitution.

Additionally, as briefed by the United States Department of Justice, the settlement agreement creates a *de facto* monopoly with Google as the only competitor in the digital rights marketplace with the ability to exploit virtually every work ever published. This universe of works includes the so-called unclaimed "orphan works." Google asserted at the fairness hearing that the settlement did not preclude "anyone" from implementing their own Registry or online distribution device. Objector views this argument with skepticism given the substantial technical, financial, and legal barriers to entry. Specifically, if the settlement is approved as proposed, future would-be digital content

distributors would be forced to negotiate and/or litigate a license to distribute each work in the collection, whereas Google would have *carte blanche* authority to distribute any work with impunity as a result of this settlement. This legal barrier alone is enough to discourage most, if not all, entities contemplating digital distribution of copyrighted works.

## V. APPROVAL OF THE SETTLEMENT AS PROPOSED WILL OPEN THE DOOR FOR EXORBITANT PRICING

By approving the proposed settlement, this Court will cause consumer prices for copyrighted works to increase substantially. Increased prices serve as a barrier to access which is ironic given that the settlement is being touted as increasing access to printed material. One needs look no further than the relatively recent wave of industry consolidation that concentrated control of academic journals in the hands of five publishing companies. These five firms have increased subscription prices 227% from 1986 – 2002.[1] Accordingly, many libraries had no choice but to cancel subscriptions. The proposed settlement poses a similar risk.

## VI. CONCLUSION

The settling parties are engaged in a campaign of concealment and misdirection in order to facilitate one of the largest, if not the largest, intellectual property grabs in history. The proposed settlement runs afoul of both antitrust and copyright law, is overly broad in that it releases future conduct, and steps improperly beyond a justiciable controversy into the realm of legislation. The proposed settlement not only infringes on the rights of authors, it threatens to further restrict access to printed works by increasing

---

[1] Janet Morrissey, *Librarians Fighting Google's Book Deal*, TIME MAGAZINE (June 17, 2009).

prices as a result of decreased competition.  Accordingly, Objector respectfully requests that this Court deny approval of the settlement as proposed.

    /s/  John W. Davis           .
John W. Davis, CA Bar #200113
Admitted *Pro Hac Vice*
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone:  619.400.4870
Facsimile:  619.342.7170

*Counsel for David Meininger*