Michael J. Boni (pro hac vice)
Joanne Zack
BONI & ZACK LLC
15 St. Asaphs Road
Bala Cynwyd, PA  19004
(610) 822-0200 (phone)
(610) 822-0206 (fax)
MBoni@bonizack.com
JZack@bonizack.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| The Authors Guild, Inc., Associational Plaintiff, Betty Miles, Joseph Goulden, and Jim Bouton, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>Google Inc.,<br><br>        Defendant. | Case No. 05 CV 8136-DC<br><br><br>**FILED ELECTRONICALLY** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 3

    A.  Representative Plaintiffs, Defendant, and Proposed Class Definition.................. 3

    B.  Google's Copying of Over Twelve Million Books.............................................. 4

    C.  Google's Indiscriminate Copying is Ongoing .................................................... 6

III.  CLASS CERTIFICATION IS WARRANTED UNDER RULE 23........................... 7

    A.  Elements of Rule 23(a) and (b)(3) and Applicable Standards ............................. 7

    B.  The Class is Ascertainable and the Requirements of Rule 23(a) are
        Readily Met......................................................................................................... 8

        1.  The Class is Ascertainable ...................................................................... 8

        2.  The Proposed Class Satisfies Rule 23(a) ................................................ 9

            a.  Numerosity is Satisfied ................................................................ 9

            b.  Commonality is Satisfied............................................................. 9

            c.  Typicality is Satisfied ................................................................. 11

            d.  Adequacy is Satisfied ................................................................. 13

    C.  The Requirements of Rule 23(b)(3) are Met...................................................... 14

        1.  Common Questions of Law or Fact Predominate as to
            Plaintiffs' Claims ................................................................................. 14

        2.  A Class Action is the Superior and Most Efficient Method for
            Adjudicating this Action ....................................................................... 21

IV.  CONCLUSION................................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Adelphia Commun. Corp. & Litig.*,
No. 06-5636, 2008 U.S. App. LEXIS 6625 (2d Cir. 2008) ...................................13

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)...................................................................................................15

*Am. Geophysical Union v. Texaco*,
60 F.3d 913 (2d Cir. 1994)........................................................................................20

*Arista Records LLC v. Doe*,
604 F.3d 110 (2d Cir. 2010)......................................................................................15

*Basic Books, Inc. v. Harper & Row Publishers, Inc.*,
758 F. Supp. 1522  (S.D.N.Y. 1991).........................................................................20

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010)............................................................................10, 15, 20

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)...................................................................................................19

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco*
*Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007) ...........................................13

*Collins v. Olin Corp.*,
248 F.R.D. 95 (D. Conn. 2008)..................................................................................17

*Cortner v. Israel*,
732 F.2d 267 (2d Cir. 1984).......................................................................................12

*David v. Showtime/The Movie Channel, Inc.*,
697 F. Supp. 752 (S.D.N.Y. 1988) ...................................................................11, 12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)...................................................................................................15

*Fidelis Corp. v. Litton Indus., Inc.*,
293 F. Supp. 164 (S.D.N.Y. 1968) ...........................................................................9

*Fox v. Cheminova, Inc.*, 213 F.R.D. 113 (E.D.N.Y. 2003) ...............................................21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)......................................................................................13

*Gen. Tel. Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982)................................................................................................7

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985).......................................................................................15, 19

*Harris v. Simon & Schuster, Inc.*,
    646 F. Supp. 2d 622 (S.D.N.Y. 2009)...................................................................12

*Infinity Broad. Corp. v. Kirkwood*,
    150 F.3d 104 (2d Cir. 1998).............................................................................18, 20

*In re Initial Pub. Offerings Sec. Litig.* ("*IPO*"),
    471 F.3d 24 (2d Cir. 2006)....................................................................................7, 8

*Island Software & Computer Serv. v. Microsoft Corp.*,
    413 F.3d 257 (2d Cir. 2005)..................................................................................16

*Joel A. v. Guiliani*,
    218 F.3d 132 (2d Cir. 2000)..................................................................................13

*Korn v. Franchard Corp.*,
    456 F.2d 1206 (2d Cir. 1972) .................................................................................9

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011)..................................................................................13

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    202 F.R.D. 12 (D.D.C. 2001)................................................................................23

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)......................................................................11, 13, 14

*In re Methyl Tertiary Butyl Ether* ("*MTBE*") *Prods. Liab. Litig.*,
    209 F.R.D. 323 (S.D.N.Y. 2002) ...........................................................................8

*In re Napster, Inc. Copyright Litig.*,
    MDL-00-1369, 2005 U.S. Dist. LEXIS 11498
    (N.D. Cal. June 1, 2005) ............................................................................... passim

*In re Nassau County Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006)..................................................................................15

*Nicholson v. Williams,*
    205 F.R.D. 92 (E.D.N.Y. 2001) ............................................................................11

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,*
    166 F.3d 65 (2d Cir. 1999)....................................................................................20

*Nw. Nat'l Bank of Minneapolis v. Fox & Co.,*
    102 F.R.D. 507 (S.D.N.Y. 1984) ...........................................................................9

*Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,*
    558 F.2d 1090 (2d Cir. 1977)................................................................................15

*Pa. Ave. Funds v. Inyx Inc.,*
    08 Civ. 6857, 2011 U.S. Dist. LEXIS 72999 (S.D.N.Y. July 5, 2011) ...............22

*Ringgold v. Black Entm't Television, Inc.,*
    126 F.3d 70 (2d Cir. 1997)....................................................................................20

*Repp v. Webber,*
    132 F.3d 882 (2d Cir. 1997)..................................................................................10

*Robidoux v. Celani,*
    987 F.2d 931 (2d Cir. 1993)...................................................................................9

*Ryan v. Carl Corp.,*
    No. C97-3873, 1999 U.S. Dist. LEXIS 366 (N.D. Cal. Jan. 12, 1999) .......7, 11, 13

*Seijas v. Republic of Arg.,*
    606 F.3d 53 (2d Cir. 2010)...............................................................................14, 22

*Shahriar v. Smith & Wollensky Rest. Group, Inc.,*
    659 F.3d 234 (2d Cir. 2011)...................................................................................8

*Shelter Realty Corp. v. Allied Maint. Corp.,*
    75 F.R.D. 34 (S.D.N.Y. 1977) .............................................................................14

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
    464 U.S. 417 (1984)..............................................................................................19

*Tatz v. Nanophase Techs. Corp.,*
    No. 01 C 8440, 2003 U.S. Dist. LEXIS 9982 (N.D. Ill. June 12, 2003) ..............22

*In re Universal Serv. Fund Tel. Billing Practices Litig.,*
    219 F.R.D. 661 (D. Kan. 2004)............................................................................22

*UMG Recordings, Inc. v. MP3.Com, Inc.,*
    92 F. Supp. 2d 349 (S.D.N.Y. 2000).....................................................................20

*United States v. ASCAP*,
    599 F. Supp. 2d 415 (S.D.N.Y. 2009)..................................................20

*In re Visa Check/Mastermoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)...................................................7, 13, 20

*Wal-Mart Stores, Inc. v. Dukes*,
    __ U.S. __, 131 S. Ct. 2541 (2011)....................................................7, 9

*Wal-Mart Stores, Inc. v. Visa US.A., Inc.*,
    396 3d 96 (2d Cir.), *cert denied*, 544 U.S. 1044 (2005) ........................................13

*Wu v. Pearson Educ., Inc.*,
    10 Civ. 6537, 2011 U.S. Dist. LEXIS 112308.................................10, 15

## **Rules**

17 U.S.C. §§ 101-803 ..........................................................................10

17 U.S.C. § 106 ..................................................................................10

17 U.S.C. § 107 ..................................................................................18

17 U.S.C. § 501(b) ............................................................................. 12

17 U.S.C. § 504.............................................................................2, 16, 17

FED. R. CIV. P. 23........................................................................... passim

## **Other**

2 A. CONTE & H. NEWBERG, NEWBERG ON CLASS ACTIONS § 4.25 (4th ed. 2002)...........15

5 J. MOORE ET AL., MOORE'S FEDERAL PRACTICE - Civil § 23.46 (3d ed. 2011) ..............22

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222 (2004)..........................................8

## I.      INTRODUCTION

This litigation arises from Google's business decision to gain a competitive edge over its rivals in the search engine market by making digital copies of millions of "offline" printed materials.  As part of this digitization project, Google unilaterally decided to copy not just works in the public domain, but also works still in-copyright, without seeking or obtaining authorization from their copyright owners.

Rather than obtaining licenses from copyright owners for the digital use of their printed works, Google instead entered into agreements with libraries to gain access to these works.  A number of university libraries allowed Google to make digital copies of the books in the libraries' collections, including in-copyright books.  In exchange, Google provided digital copies of the books to the libraries.  Google refers to this massive copyright infringement as its "Library Project."

Google currently maintains on its servers millions of complete digital copies of in-copyright books copied as part of its Library Project, and the libraries also maintain millions of complete digital copies of these books provided to them by Google.  In response to search requests by users of its search engine, Google publicly displays expression from these copyrighted books.

This case is exceptionally well-suited for class certification. All of the facts concerning Google's Library Project are in Google's possession.  Google claims no copyright interest or license in the works copied. On the contrary, Google's stated goal has been to copy all of the world's printed offline books, and Google has acted to accomplish that goal by copying all types of printed offline materials, including books, journals, and dissertations, without authorization from the copyright owners. Google has copied all types of books, whether in-copyright or out-of-

copyright, fiction or non-fiction. Copyright owners are merely the passive victims of Google's digitization campaign. Google's unilateral actions constitute copyright infringement, entitling Google's victims to statutory damages, which plaintiffs elect pursuant to 17 U.S.C. § 504(c)(1), as well as declaratory and injunctive relief.

As shown below,[1] the requirements of Rule 23 of the Federal Rules of Civil Procedure are clearly met here. Under Rule 23, the Court determines if the threshold elements of Rule 23(a) are satisfied – namely, whether (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Here, the class is very large since Google has admittedly digitized millions of Books; the case involves multiple questions of law and fact common to the class, including whether Google infringed copyrights by digitizing, distributing, and publicly displaying content from Books on its commercial website, without authorization from the copyright owners; the representative plaintiffs, like all members of the class, are authors whose works were digitized by Google without their authorization in its Library Project; and they and their counsel will vigorously pursue and protect the interests of the class.

In addition, plaintiffs satisfy Rule 23(b)(3), which requires that questions of law or fact common to the class "predominate over any questions affecting only individual members," and

---

[1] Class discovery has not been bifurcated from merits discovery in this case. Document production between the parties is ongoing at this time. Plaintiffs' depositions will be taken by Google beginning on December 15, 2011. Google's witnesses will be deposed by plaintiffs beginning in early 2012. Accordingly, to the extent Google asserts that plaintiffs have failed to meet their burden to prove any of the requirements of Rule 23, plaintiffs will provide additional evidence supporting such requirements in their reply brief in support of this motion.

that class treatment will be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).  Here, the common questions arising from Google's massive project to scan library books without authorization predominate over any questions affecting only individual class members.  Finally, for the vast majority of class members, a class action is the only viable option, rendering class treatment far superior to any alternative method of adjudication.

For the reasons discussed below, plaintiffs respectfully submit that the Court should certify the class under Rule 23(b)(3).

## II.   STATEMENT OF FACTS

### A.   Representative Plaintiffs, Defendant and Proposed Class Definition

As part of its Library Project, Google has copied Books in which representative plaintiffs Betty Miles, Joseph Goulden and Jim Bouton[2] own United States copyright interests registered within three months of publication such that they may claim statutory damages for their infringement.[3]  As with all books copied as part of its Library Project, Google did not seek or obtain permission for its copying, distribution or display of these works.[4]

Plaintiffs now seek certification under Rule 23(a) and (b)(3) of a class ("Class"), defined as follows:

---

[2] Three plaintiffs named in the Fourth Amended Class Action Complaint ("Complaint"), ECF No. 985 – Herbert Mitgang, Daniel Hoffman, and Paul Dickson – are withdrawing as class representatives.

[3] *See* Declaration of Joanne Zack (December 12, 2011) ("Zack Decl."), Exs. 15, 16 and 17 (U.S. Copyright Office certificates of registration).

[4] The Authors Guild, Inc., the nation's largest organization of authors, is an associational plaintiff, but not a Rule 23 class representative, in this case. The Authors Guild advocates for and supports the copyright and contractual interests of published writers, and seeks equitable relief here for authors affected by Google's copyright infringement.

All persons residing in the United States who hold a United States copyright interest in one or more Books reproduced by Google as part of its Library Project, who are either (a) natural persons who are authors of such Books or (b) natural persons, family trusts or sole proprietorships who are heirs, successors in interest or assigns of such authors. "Books" means each full-length book published in the United States in the English language and registered with the United States Copyright Office within three months after its first publication.[5]

## B.    Google's Copying of Over Twelve Million Books

Google owns and operates the largest Internet search engine in the world.[6]  Each day, millions of people use Google's search engine free of charge,[7] while commercial and other entities pay to display ads to visitors to Google's websites.  For the year ended December 31, 2010, Google reported over $29 billion in revenue generated "primarily by delivering relevant, cost-effective online advertising."[8]

On December 14, 2004, Google announced that it had entered into agreements with four university libraries and one public library to "digitally scan books from their collections so that users worldwide can search them in Google."[9]  According to Google's press release, Google was "working with libraries to digitally scan books from their collections, and over time will integrate this content into the Google index, to make it searchable for users worldwide."  *Id.*

Google's goal in its Library Project is to digitally copy all of the world's books, regardless of their content.  *See, e.g.*, Sergey Brin, *A Library to Last Forever*, N.Y. TIMES, Oct. 8,

---

[5] Excluded from the Class are the directors, officers and employees of Google; personnel of the departments, agencies and instrumentalities of the United States Government; and Court personnel.

[6] *See, e.g.*, Zack Decl. Ex. 1, p.1 (print-out from http://investor.google.com/corporate/faq.html) ("Google is now widely recognized as the world's largest search engine.").

[7] *See* Zack Decl. Ex. 2 (*Google has one billion users,* THE ECONOMIC TIMES, June 22, 2011, available at http://articles.economictimes.indiatimes.com/).

[8] Zack Decl. Ex. 3, pp. 3, 50 (2010 Google Form 10-K (excerpts).

[9] Zack Decl. Ex. 4, p.1 (Google Dec. 14, 2004 press release).

2009, at A31 ("Because books are such an important part of the world's collective knowledge and cultural heritage, Larry Page, the co-founder of Google, first proposed that we digitize all books a decade ago, when we were a fledgling startup.").[10]

Since the December 2004 announcement, Google has entered into agreements with additional libraries, developed scanning technology that allows library books to be copied, and copied the entirety of over twelve million books.[11] In exchange for access to a library's books, Google provides digital copies of the scanned books to the contributing library, and also stores digital copies of the books on its own servers.[12]

In addition, since 2005, Google has displayed text online in response to search requests by users of its search engine. Users can search Google's database of books and view verbatim excerpts – which Google calls "snippets" – from books that have been scanned. Google describes a "snippet" as "a few sentences showing your search term in context."[13] However, by performing multiple searches using different search terms (including multiple search terms suggested by Google itself), a user can view far more than a "few sentences" from a book copied in the Library Project. *See* Zack Decl. Ex. 10 (copies of multiple Google search results, some

---

[10] Zack Decl. Ex. 5, p.2.

[11] *See* Zack Decl. Ex. 6 (June 7, 2007 announcement by Google identifying libraries participating in Google's book scanning project). Google reported the twelve million figure in its 2009 Form 10-K. *See* Zack Decl. Ex. 7, p. 3 ("To date, we have scanned and indexed over 12 million books for search.")

[12] *See* Zack Decl. Ex. 8 (print-out from http://support.google.com/books/bin/answer.py?hl=en&answer=43751) ("Each library will receive a digital copy of every book we scan … from their respective collections.")

[13] Zack Decl. Ex. 9 (print-out from http://books.google.com/googlebooks/-screenshots.html#snippetview); *see also* Zack Decl. Ex. 20 print-out from http://support.google.com/books/bin/answer.py?hl=en&answer=43729/.)

.

based on search terms suggested by Google, for Jim Bouton, Ball Four).[14]

Google's scanning project has a commercial purpose. Google undertook the Google Library Project to gain a competitive advantage over other participants in the search engine market, by offering a wealth of content not available elsewhere.[15] Google uses the works obtained from libraries and other sources to attract visitors to its website,[16] thereby increasing its attractiveness to advertisers.

### C.    Google's Indiscriminate Copying is Ongoing

Google continues as part of its Library Project to copy, distribute, and display Books without copyright owner authorization and, by all indications, will continue to do so unless enjoined. Google's actions, unless restrained, will continue to cause damages and irreparable injury to representative plaintiffs and the class members through the continued copyright infringement of their Books. Plaintiffs and the other class members have suffered damages and are in imminent danger of suffering further damages from Google's unlawful practices.

---

[14] Even minor variations in search terms will result in different displays of text. *Compare* Zack Decl. Ex. 11 (snippet results for search term "pitch" in Ball Four) with Ex. 12 (snippet results for search term "pitches" in Ball Four).

[15] For example, Microsoft, which also offers an Internet search engine (presently referred to as "Bing"), digitized approximately 750,000 books before ending its scanning project "in the face of competition from Google." Zack Decl. Ex. 13 (Miguel Helft, *Microsoft Will Shut Down Book Search Program*, N.Y. Times, May 24, 2008); *see also id.* (industry analyst explaining that "[o]ne of the reasons people turn to Google is that it tries to be a search player in all aspects of search" and that following Microsoft's announcement, people performing book searches were likely to "turn to Google with increasing frequency").

[16] *See, e.g.,* Zack Decl. Ex. 14 (statement on Google's website inviting visitors to "[s]earch the latest index of the world's books. Find millions of great books you can preview or read for free.").

## III.   CLASS CERTIFICATION IS WARRANTED UNDER RULE 23

### A.   Elements of Rule 23(a) and (b)(3) and Applicable Standards

A party moving for class certification must meet the requirements of Rule 23(a) and, in addition, show that the action can be maintained under Rule 23(b)(1), (2), or (3). The requirements of Rule 23(a) are satisfied if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). In addition, courts have read a fifth "implied requirement of ascertainability" with respect to the class definition. *In re Initial Pub. Offerings Sec. Litig.* ("*IPO*"), 471 F.3d 24, 30 (2d Cir. 2006).

Plaintiffs move for certification under Rule 23(b)(3). Certification under subsection 23(b)(3) is warranted if questions of law or fact "predominate over any questions affecting only individual members," and class resolution will be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).[17] Class certification is

---

[17] Plaintiffs have alleged that class certification is appropriate under Rule 23(b)(2) and (b)(3), and clearly meet the requirements of Rule 23(b)(2) for an injunctive and declaratory relief class. *See Ryan v. Carl Corp.,* No. C97-3873, 1999 U.S. Dist. LEXIS 366, at *18 (N.D. Cal. Jan. 12, 1999). However, Plaintiffs now move for class certification under Rule 23(b)(3), which permits certification of classes seeking damages, as well as injunctive and declaratory relief. As the Second Circuit stated in *In re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 145 (2d Cir. 2001), *overruled on other grounds by IPO*, 471 F.3d at 24, it is not necessary to decide whether Rule 23(b)(2) certification is appropriate when the requirements of Rule 23(b)(3) are satisfied. *See id.* at 147 ("In any event, the primary concern about certifying a class with significant damages under Rule 23(b)(2) is the absence of mandatory notice and opt-out rights. Because these rights are guaranteed under Rule 23(b)(3), pursuant to which this action will now proceed, our inquiry need progress no further.") (citations omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2557 (2011).

proper if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982)). A "district court may certify a class only after making determinations that each of the Rule 23 requirements has been met," and plaintiffs bear the burden of proof. *Shahriar v. Smith & Wollensky Rest. Group, Inc.,* 659 F.3d 234, 251 (2d Cir. 2011)(quoting *IPO*, 471 F.3d at 41). As the Second Circuit Court of Appeals explained in *IPO*:

> The Rule 23 requirements are threshold issues, similar in some respects to preliminary issues such as personal or subject matter jurisdiction. We normally do not say that a district court makes a "finding" of subject matter jurisdiction; rather, the district court makes a "ruling" or a "determination" as to whether such jurisdiction exists. . . . The same approach is appropriate for Rule 23 requirements. For example, in considering whether the numerosity requirement is met, a judge might need to resolve a factual dispute as to how many members are in a proposed class.

471 F.3d at 40.

While a district court should resolve any disputed factual issues necessary to making its determination that the requirements of Rule 23 have been satisfied, the "district court should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Id.* at 41.

Against this backdrop, class certification is appropriate here, as we demonstrate below.

### B. The Class is Ascertainable and the Requirements of Rule 23(a) are Readily Met

#### 1. The Class is Ascertainable

As a threshold matter, the proposed class definition must be precise, objective, and ascertainable. *See* FED. R. CIV. P. 23(c)(1)(B) ("An order that certifies a class action must define the class[.]"); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* 209 F.R.D. 323, 337 (S.D.N.Y. 2002) ("identifiable class exists" if members can be ascertained by reference to "objective criteria" and it is "administratively feasible" for a court to determine); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222 (2004) ("An identifiable class exists if its members can

be ascertained by reference to objective criteria…. [M]embership in a Rule 23(b)(3) class ordinarily should be ascertainable when the court enters judgment.").

The proposed class definition here is based on objective criteria and therefore meets the ascertainability standard. Persons can determine objectively whether their books have been published in English in the United States, and whether their copyrights have been timely registered with the United States Copyright Office. Whether a Book has been scanned as part of Google's Library Project can be objectively determined from Google's data and records.

### 2.    The Proposed Class Satisfies Rule 23(a)

#### a.    Numerosity is Satisfied

The first requirement under Rule 23(a) is that the class must be so numerous that joinder is "impracticable." FED. R. CIV. P. 23(a)(1). Impracticability means difficulty or inconvenience of joinder; the rule does not require impossibility of joinder. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("Impracticable does not mean impossible."); *Nw. Nat'l Bank of Minneapolis v. Fox & Co.*, 102 F.R.D. 507, 511 (S.D.N.Y. 1984) (numerosity requires that the court "find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable"). Google has admittedly scanned millions of books, *see* Zack Decl. Ex. 7, thereby infringing the copyrights of at least many thousands of authors, which is more than enough to satisfy the numerosity requirement. *See, e.g., Robidoux*, 987 F.2d at 935-36 (class size of 40 or more may satisfy numerosity); *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972) (certifying class which may have been limited to 70 investors); *Fidelis Corp. v. Litton Indus., Inc.*, 293 F. Supp. 164, 170 (S.D.N.Y. 1968) (certifying class of 35-70 individuals).

#### b.    Commonality is Satisfied

Rule 23(a)'s second requirement is the existence of "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). To establish commonality, plaintiffs must identify an issue

of fact or law whose resolution "is central to the validity of each" class member's claim. *Wal-Mart*, 131 S.Ct. at 2551. As the Supreme Court explained in *Wal-Mart*, under Rule 23(a)(2), plaintiffs' claims "must depend upon a common contention . . . capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. The requirement is satisfied by "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal citation, emphasis and quotation marks omitted). "[E]ven a single common question" will suffice to establish commonality. *Id.* at 2556 (internal quotation marks omitted); *see also Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) ("commonality requirement is met if there is a common question of law or fact shared by the class").

This case involves a number of common questions of law and fact. The Copyright Act of 1976 ("Copyright Act"), 17 U.S.C. §§ 101-803, grants copyright owners a bundle of exclusive rights, including the rights to "reproduce the copyrighted work in copies," "distribute copies," and "in the case of literary" works, the right to "display the copyrighted work publicly." *Id.* § 106. "Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997).

Questions of law or fact common to the Class include the following:

- Whether Google digitized Books, distributed copies of Books to libraries, and publicly displayed content from Books on its commercial website without authorization from the copyright owners as part of its Library Project;

- Whether such actions constitute copyright infringement;

- Whether Google's actions constitute a "fair use" of the Books;

- Whether Google's actions are ongoing, such that injunctive relief is appropriate; and

- Whether members of the Class are entitled to statutory damages.

These questions are central to the litigation, and the common answers to these common questions will be fundamental to the resolution of the case.  Thus, the commonality requirement is met.  *See Wu v. Pearson Educ., Inc.*, 10 Civ. 6537, 2011 U.S. Dist. LEXIS 112308, at *42 (S.D.N.Y. Sept. 30, 2011) (commonality satisfied in copyright infringement action); *In re Napster, Inc. Copyright Litig.*, MDL-00-1369, 2005 U.S. Dist. LEXIS 11498, at *14 (N.D. Cal. June 1, 2005) (certifying class in a copyright infringement action, where "the claims of each member of the class fundamentally arise from the same factual predicate: namely, that Napster users infringed the class member's exclusive rights in one or more copyrighted musical compositions" and that an individual defendant was secondarily liable); *Ryan v. Carl Corp.*, No. C97-3873, 1999 U.S. Dist. LEXIS 366, at *18 (N.D. Cal. Jan. 12, 1999) (commonality requirement met in copyright infringement action where "plaintiffs essentially are challenging a standard business procedure followed by [defendant] in copying and distributing articles without the permission of the authors" and class members' infringement claims "share this common core of salient facts"); *David v. Showtime/The Movie Channel, Inc.*, 697 F. Supp. 752, 756 (S.D.N.Y. 1988) (certifying class and finding "[n]umerous questions of both fact and law are common to the class including whether defendant violated the federal copyright laws").

### c.    Typicality is Satisfied

The claims of the class representative also must be "typical" of the claims of the class. FED. R. CIV. P. 23(a)(3); *see also Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997) (typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability") (internal quotation marks omitted); *Nicholson v. Williams*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001) ("Under this elastic standard named plaintiffs can represent class members who suffer different injuries so long as all of the injuries are shown to result from the same practice.").

Here, all plaintiffs own United States copyrights in Books, *see* Zack Decl. Exs. 15-17, that have been copied, distributed, and displayed by Google without authorization as part of its Library Project.[18]  Each representative plaintiff has at least one copyrighted Book that was infringed by Google's Library Project, and the claims of the representative plaintiffs and all members of the Class depend on proof of the same acts by Google.[19]

Typicality is satisfied here, where all putative class member claims arise from the same events or course of conduct and are based on similar legal arguments, and the representative plaintiffs have the same interests and have suffered the same injuries as the other members of the proposed class.  *Cf. Napster*, 2005 U.S. Dist. LEXIS 11498, at *17-18 (holding typicality satisfied in copyright infringement class action); *Ryan*, 1999 U.S. Dist. LEXIS 366, at *20-26 (same); *David*, 697 F. Supp. at 757 (same).

---

[18] Jim Bouton is the author and copyright holder of several Books. He holds the United States copyright in BALL FOUR (registration number A173097, *see* Zack Decl. Ex. 15), which has been infringed by Google, *see* Zack Decl. Exs. 10-12.

Betty Miles is the author of several Books of children's and young adult fiction. She holds the United States copyright in THE TROUBLE WITH THIRTEEN (registration number TX0000338841, *see* Zack Decl. Ex. 16), which has been infringed by Google, *see* Zack Decl. Ex. 18.

Joseph Goulden is the author of several Books. He holds the United States copyright in THE SUPERLAWYERS: THE SMALL AND POWERFUL WORLD OF THE GREAT WASHINGTON LAW FIRMS (registration number A346254, *see* Zack Decl. Ex. 17), which has been infringed by Google, *see* Zack Decl. Ex. 19.

[19] Under 17 U.S.C. § 501(b), "the legal or beneficial owner of an exclusive right under a copyright" has standing to sue for infringement.  An author who grants third-party rights in his work in exchange for the payment of royalties is deemed a "beneficial owner" and retains standing to sue.  *See Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) ("When a composer assigns copyright title to a publisher in exchange for the payment of royalties, an equitable trust relationship is established between the two parties which gives the composer standing to sue for infringement of that copyright"); *Harris v. Simon & Schuster, Inc.*, 646 F. Supp. 2d 622, 632 (S.D.N.Y. 2009) (author who granted rights in a work in exchange for the payment of royalties "qualifies as a 'beneficial owner,' and retains standing to sue").

### d.    Adequacy is Satisfied

The final requirement of Rule 23(a) is that the representative party must fairly and adequately represent the interests of the class.  FED. R. CIV. P. 23(a)(4).  Adequacy is a two-pronged analysis:  (1) the named plaintiffs must not have claims antagonistic to or in conflict with other class members, and (2) class counsel must be qualified, experienced, and generally able to conduct the litigation.  *See Marisol A.*, 126 F.3d at 378.

A proposed class representative is adequate unless the representative has a fundamental conflict with absent class members.  *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *Visa Check*, 280 F.3d at 145.  Here, the interests of the named plaintiffs do not conflict with those of the absent class members.  Plaintiffs do not have any interests antagonistic to those of the other class members, and all are committed to the vigorous prosecution of this action.

The representative plaintiffs each hold a United States copyright interest in a Book copied by Google in its Library Project.  The interests of the representative plaintiffs are aligned with other class members, as they seek to end Google's copyright infringement of their works and to recover statutory damages.  *See In re Adelphia Commun. Corp. & Litig.*, No. 06-5636, 2008 U.S. App. LEXIS 6625, at *6 (2d Cir. March 27, 2008) (summary order) ("interests of class members need only be substantially similar, not identical") (citing *Wal-Mart Stores, Inc. v. Visa US.A., Inc.*, 396 3d 96, 111 (2d Cir.), *cert denied*, 544 U.S. 1044 (2005)); *see also Flag Telecom*, 574 F.3d at 35-36 (single class could be certified despite potential conflict between class members holding two types claims); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 246 (2d Cir. 2007) (to be "fundamental," a conflict should go to the "very heart of the litigation"); *Visa Check*, 280 F.3d at 145 (conflict

must be more than merely speculative or hypothetical); *Joel A. v. Guiliani*, 218 F.3d 132, 139 (2d Cir. 2000) (no "obvious conflict" found).  In short, plaintiffs' interests in prosecuting this action include protecting their copyrights and "obtaining compensation for the unauthorized use" of their works.  *Napster*, 2005 U.S. Dist. LEXIS 11498, at *19.  This prong of the adequacy requirement is met.

Second, plaintiffs are represented by experienced and able counsel with extensive experience in copyright and class action litigation.  *See* Zack Decl. Ex. 21-23 (firm resumes).  Since the outset of this litigation in 2005, counsel have pursued this matter vigorously and competently on behalf of plaintiffs and all other members of the putative class, and the second prong of 23(a)(4) analysis is satisfied.  *See Marisol A.*, 126 F.3d at 378 ("Rule 23(a)(4) requires that plaintiffs demonstrate that class counsel is qualified, experienced, and generally able to conduct the litigation.") (internal quotation marks and citation omitted).

### C.      The Requirements of Rule 23(b)(3) are Met

Rule 23(b)(3) requires a finding of "predominance" and "superiority," *i.e.*, a finding that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  In determining whether these requirements have been met, the court should consider the issue of manageability, which is "peculiarly within a district court's discretion."  *Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010).

### 1.      Common Questions of Law or Fact Predominate as to Plaintiffs' Claims

"To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are

identical." *Napster*, 2005 U.S. Dist. LEXIS 11498, at *28. "The predominance requirement calls

only for predominance, not exclusivity, of common questions." *Shelter Realty Corp. v. Allied*

*Maint. Corp.*, 75 F.R.D. 34, 37 (S.D.N.Y. 1977). The purpose of the predominance inquiry is to

allow the Court to determine whether proposed classes are "sufficiently cohesive to warrant

adjudication by representation." *See Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997);

*accord Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010); *In re Nassau County Strip Search*

*Cases*, 461 F.3d 219, 225 (2d Cir. 2006).

"[C]onsiderations of judicial economy heavily favor litigating … common issues once, as

part of a single class action, rather than rehashing the same questions of law and fact" in

individual lawsuits. *Napster*, 2005 U.S. Dist. LEXIS 11498, at *29; *see also* 2 A. CONTE & H.

NEWBERG, NEWBERG ON CLASS ACTIONS § 4.25, p. 156 (4th ed. 2002) (predominance test "asks

whether a class suit for the unitary adjudication of common issues is economical and efficient in

the context of all of the issues in the suit").

Here, common questions of law or fact predominate over any issues affecting only

individual class members. *See* FED. R. CIV. P. 23(b)(3); *see also Wu,* 2011 U.S. Dist. LEXIS

112308, at *13-14 (concluding that the predominance requirement was satisfied where "[a]ll of

the claims revolve around the same issue of law, namely whether [defendant] violated the

copyright holder's rights").

To establish infringement of copyright, "two elements must be proven: (1) ownership of a

valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*

*Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Harper & Row,*

*Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 548 (1985); *Arista Records LLC v. Doe*, 604

F.3d 110, 117 (2d Cir. 2010).

The first element of ownership is susceptible of proof through public records. "The Copyright Office certificate of registration is *prima facie* evidence of the facts stated therein. This has generally been held to mean *prima facie* proof of ownership and validity." *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 n.1 (2d Cir. 1977) (citation omitted); *see also Island Software & Computer Serv. v. Microsoft Corp.,* 413 F.3d 257, 261 (2d Cir. 2005) (district court was entitled to take judicial notice of federal copyright registrations, as published in the Copyright Office's registry). The Class has been defined to include only persons who hold a copyright interest in Books registered with the Copyright Office in time to qualify for statutory damages under 17 U.S.C. § 504(c)(1). Further, the purpose of Google's Library Project is to copy works in which Google concededly has no copyright ownership interest, without authorization from those who do hold the copyrights.

As the district court found in *In re Napster, Inc. Copyright Litigation*, MDL-00-1369, 2005 U.S. Dist. LEXIS 11498 (N.D. Cal. March 31, 2005), the need to determine the ownership of copyrighted works does not preclude a finding of predominance in a copyright infringement class action. The *Napster* case arose from the copyright infringement committed by users of Napster's "peer-to-peer" file-sharing network. In opposition to plaintiffs' motion for class certification, defendants argued that proof of ownership, registration and actual damages required a work-by-work analysis, thereby defeating predominance. *Id.* at *28. The district court rejected this argument, stating it found defendant's "understanding of the predominance requirement to be unduly restrictive." *Id.* The court explained that viewing ownership issues as "purely 'individual issues' ignores the fact that the claims of every member of the class are uniformly premised upon the uploading or downloading of a copyrighted work." 2005 U.S. Dist. LEXIS 11498, at *28-29. Similarly, here, plaintiffs' claims all stem from Google's unilateral

16

decision to digitally copy, distribute and display expression from millions of "offline" printed books without a license.

The second, "copying," element of plaintiffs' claims will involve common proof demonstrating that Google has, without copyright owner authorization, (a) copied millions of in-copyright books; (b) distributed millions of digital copies of these books to libraries; and (c) displayed expression from these books to visitors to its website.  These facts will be proven from common evidence obtained from Google's own records and witnesses identifying the Books copied, distributed and displayed as part of its Library Project. [20]  Whether these actions constitute copyright infringement is the overriding common question in this case.

The relief sought by the Class presents no individualized issues here.  Under 17 U.S.C. § 504(c)(1), "the copyright owner may elect, at any time before final judgment is rendered, *to recover, instead of actual damages and profits, an award of statutory damages* for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually … in a sum of *not less than $750* or more than $30,000 as the court considers just."  (emphasis added).  In this case, plaintiffs and the Class have elected to seek the statutory minimum of $750 per work. [21]  As such, any award of damages will not require a work-by-work damages inquiry.[22] Similarly, the claims for equitable and declaratory relief present common

---

[20] In discovery, Google has provided data concerning Books scanned to date in its Library Project.

[21]  To the extent that class members believe they are entitled to a higher amount of statutory damages, or wish to claim another measure of damages such as actual damages, those class members will be entitled to opt-out of the Class.  *See* Rule 23(c)(2)(B)(providing, in relevant part, that notice to members of "any class certified under Rule 23(b)(3) . . . must concisely and clearly state in plain, easily understood language . . . that the court will exclude from the class any member who requests exclusion . . . .").

[22] Notably, "courts have repeatedly stated that differences in the amount" of damages does not defeat predominance.  *Collins v. Olin Corp.*, 248 F.R.D. 95, 105 (D. Conn. 2008).

*footnote continued*

questions of law.

Google raises a "fair use" defense in this action. *See* 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."). This defense involves an examination of the following four factors set out in the statute: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the original work. *Id.*

Because it is an affirmative defense, Google has the burden to prove that its uses of the Books are protected by the "fair use" doctrine. *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 107 (2d Cir. 1998). Plaintiffs will present common evidence to rebut this defense. Such evidence will include, *inter alia*, common proof of the facts that:

- Google's Library Project involves Google's digital copying, distribution and display in its search engine of expression from "offline" printed Books.

- To date, as part of its Library Project, Google has copied in their entirety and displayed expression from millions of in-copyright works, including in-print and out-of-print works, fiction and non-fiction works, reference works, anthologies, educational works, textbooks, dissertations, monographs, journals, government publications, and other type of works.

- All of Google's activities in its Library Project are undertaken without permission from copyright owners.

- Google undertook the Library Project for commercial reasons to gain a competitive advantage over other participants in the search engine market.

---

Here, because plaintiffs have elected the minimum statutory damages, individual questions concerning the amount of damages are not even presented.

- Google does not use the Books copied in its Library Project for the purpose of criticism, commenting on the Books, news reporting, teaching, scholarship, or research.

- In order to gain access to "offline" printed Books for its Library Project, Google has entered into agreements with numerous libraries and distributed to them millions of complete digital copies of in-copyright Books.

- Each in-copyright Book copied by Google as part of its Library Project was copied by Google in its entirety one or more times.

- As part of its Library Project, Google maintains on its servers digital copies of millions of in-copyright Books.

- In response to search inquiries by users of its search engine, Google searches the complete text of Books copied in its Library Project, and displays multiple excerpts of verbatim expression from the Books.

- Books copied as part of its Library Project are at risk of further unlawful distribution, because Google's security measures may be breached due to the actions of outside parties, employee error, malfeasance, or otherwise, and, as a result, an unauthorized party may obtain access to data held by Google.

- Google does not consider itself responsible for, or monitor and control, the security of the digital copies of Books distributed by it to libraries in its Library Project.

- Books copied in the Library Project are at risk of further unlawful distribution because the security measures of libraries may be breached due to the actions of outside parties, employee error, malfeasance, or otherwise, and, as a result, an unauthorized party may obtain access to data held by such libraries.

- Google has not compensated copyright owners for its uses of in-copyright Books as part of its Library Project.

These common questions of fact, which will be proved primarily from Google's records and witnesses and from expert witnesses, are relevant to the determination of the common legal question whether the activities undertaken by Google in connection with its Library Project are protected by the fair use doctrine. *See, e.g., Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 578 (1994) (the central purpose of the fair use determination is to see whether the "new work" alters the first work with "new expression, meaning, or message"); *Harper & Row v. Nation*

*Enters.*, 471 U.S. 539, 546 (1984) (copyright protection "applies equally to works of fiction and

nonfiction"); *Sony Corp. of Am. v. Universal City Studios*, Inc., 464 U.S. 417, 451 (1984)

(to negate fair use one need only show that if the challenged use "should become widespread, it

would adversely affect the potential market for the copyrighted work"); *Nihon Keizai Shimbun,*

*Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 72 (2d Cir. 1999) (abstracts of news articles that

directly translate plaintiffs' news articles were not protected as a fair use); *Infinity Broadcast*,

150 F.3d at 108-109 (service allowing subscribers to listen over the telephone in remote cities to

copyrighted radio broadcasts was not a fair use, where the rebroadcast merely changed the

format of the copyrighted material and added no new expression, meaning or message); *Ringgold*

*v. Black Entm't Television, Inc.*, 126 F.3d 70, 78-79 (2d Cir. 1997) (display of posters in a

televised scene was not a fair use when the decorative use replicated the original use); *Am.*

*Geophysical Union v. Texaco,* 60 F.3d 913, 926 (2d Cir. 1994) (copying of entire works

"militates against" a finding of fair use); *United States v. ASCAP*, 599 F. Supp. 2d 415, 424

(S.D.N.Y. 2009) (playing of "ringtones" previews without a license was not a fair use of

copyrighted music); *UMG Recordings, Inc. v. MP3.Com, Inc.*, 92 F. Supp. 2d 349, 351

(S.D.N.Y. 2000) (mere retransmission of unauthorized copies in another medium is not by itself

a fair use); *Basic Books, Inc. v. Harper & Row Publishers, Inc.*, 758 F. Supp. 1522 (S.D.N.Y.

1991) (sale of course packets to college students not a fair use).

Moreover, while it seems implausible that Google will argue that its fair use defense is

weaker for some types of Books than it is for other types of Books, even if Google does posit

some differences in the application of the fair use defense to individual Books, the mere presence

of such differences does not defeat predominance. Although "a defense may arise and may

affect different class members differently, [this] does not compel a finding that individual issues

predominate over common ones." *Brown,* 609 F.3d 467, 483 (2d Cir. 2010) (quoting *Visa Check*, 280 F.3d at 138).

Accordingly, the "predominance" requirement of Rule 23(b)(3) is clearly met here: the numerous common questions of facts and law raised by Google's Library Project far outweigh any issues affecting only individual class members.

### 2.  A Class Action is the Superior and Most Efficient Method for Adjudicating this Action

Rule 23(b)(3) provides that certification is warranted if a class-wide trial is "superior to other available methods for the fair and efficient adjudication of the controversy." Here, class certification is far more fair and efficient than any other procedure available for resolving the factual and legal issues raised by plaintiffs' claims. The core issues in the case – Google's actions under its Library Project – are common.[23] Furthermore, denying certification would lead to duplicative and wasteful litigation; while the vast majority of authors would almost certainly fail to pursue their claims based, not on a lack of underlying merit, but rather on the relatively

---

[23] Rule 23(b)(3) sets forth a non-exhaustive list of factors to consider in determining superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Consideration of these factors supports a finding that the superiority requirement is met. *See Napster*, 2005 U.S. Dist. LEXIS 11498, at *30-31 (applying Rule 23(b)(3) factors to copyright infringement class action and concluding that "a class action is clearly the most efficient and in all likelihood the most equitable method for resolving the parties' dispute"); *see also Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 130-131 (E.D.N.Y. 2003) (applying factors and concluding that "a class action is the superior method of resolving liability issues when litigation by each individual plaintiff would risk disparate results among those seeking redress, … would exponentially increase the costs of litigation for all, and would be a particularly inefficient use of judicial resources.") (internal quotation marks and citations omitted).

small size of their potential recovery measured against the high cost of litigation against Google.

As courts have explained in finding superiority satisfied:

> Here, the obvious alternative to a class action would be for plaintiffs to bring individual suits against defendants. This would be grossly inefficient, costly, and time consuming because the parties, witnesses, and courts would be forced to endure unnecessarily duplicative litigation. The millions of class members are dispersed across the country, each with relatively similar claims. It can reasonably be anticipated that many of the individual claims will involve relatively insubstantial amounts of money such that a class action is perhaps the only feasible way for plaintiffs to pursue those claims. Thus, the court is persuaded that a class action is by far the most superior method for resolving the claims at issue in this lawsuit.

*In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 679 (D. Kan. 2004); *see also Seijas v. Republic of Arg.,* 606 F.3d 53, 58 (2d Cir. 2010) ("However, the district court correctly determined that proceeding individually would be prohibitive for class members with small claims. In such circumstances, the class action device is frequently superior to individual actions."); 5 J. MOORE ET AL., MOORE'S FEDERAL PRACTICE - Civil § 23.46[1] (3d ed. 2011) ("In determining superiority, courts must consider alternative methods of adjudicating the dispute. Superiority is determined by comparing the efficiency and fairness of all available methods of adjudicating the matter.").

Similar reasoning applies here. By combining the claims of individual authors challenging Google's Library Project into a single action – claims that they could not as a practical matter effectively assert alone against Google, those claims are presented far more fairly and efficiently than they would be in individual actions, which would require the same issues to be litigated multiple times. *See Pa. Ave. Funds v. Inyx Inc.,* 08 Civ. 6857, 2011 U.S. Dist. LEXIS 72999, at *30-31 (S.D.N.Y. July 5, 2011) ("Given the potential class size and the likelihood that individual recovery may be relatively modest, class certification is appropriate. Litigating each claim individually would likely result in wasteful and repetitive lawsuits, thus

ineffectively utilizing the resources of the judiciary and the parties."); *Tatz v. Nanophase Techs.*

*Corp.*, No. 01 C 8440, 2003 U.S. Dist. LEXIS 9982, at *27-29 (N.D. Ill. June 12, 2003)

("Indeed, any alternative to this class action could create duplication of actions, the very evil that

Rule 23 was designed to prevent…. A class action is a superior means to adjudicate claims of

class members who would be overwhelmed by the defendants' resources if they attempted to

prosecute their individual claims.") (internal quotation marks and citations omitted); *In re*

*Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. 12, 31 (D.D.C. 2001) ("Class certification

thus provides the opportunity for an efficient resolution of a multitude of common issues for the

entire class in a single forum. A class action would also provide inclusion of those members who

would otherwise be unable to afford independent representation.") (internal citations omitted).

## IV.   CONCLUSION

Based on the foregoing, plaintiffs respectfully request that their Motion for Class

Certification be granted.

Dated: December 12, 2011

/s/ Joanne Zack
Joanne Zack
Michael J. Boni (pro hac vice)
Joshua D. Snyder
BONI & ZACK LLC
15 St. Asaphs Rd.
Bala Cynwyd, PA  19004
(610) 822-0200 (phone)
(610) 822-0206 (fax)
JZack@bonizack.com
MBoni@bonizack.com
JSnyder@bonizack.com

Robert J. LaRocca
KOHN SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone:  (215) 238-1700
Facsimile:  (215) 238-1968
rlarocca@kohnswift.com

Sanford P. Dumain
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119
Tel:   (212) 594-5300
Fax:  (212) 868-1229
sdumain@milberg.com

*Counsel for Plaintiffs*
