IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE AUTHORS GUILD, INC., Associational Plaintiff, BETTY MILES, JOSEPH GOULDEN, and JIM BOUTON, on behalf of themselves and all other similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>GOOGLE INC.,<br><br>            Defendant. | Civil Action No. 05 Civ. 8136 (DC)<br><br>**ECF Case** |
| THE AMERICAN SOCIETY OF MEDIA PHOTOGRAPHERS, INC., GRAPHIC ARTISTS GUILD, PICTURE ARCHIVE COUNCIL OF AMERICA, INC., NORTH AMERICAN NATURE PHOTOGRAPHY ASSOCIATION, PROFESSIONAL PHOTOGRAPHERS OF AMERICA, LEIF SKOOGFORS, AL SATTERWHITE, MORTON BEEBE, ED KASHI, JOHN SCHMELZER, SIMMS TABACK, LELAND BOBBE, JOHN FRANCIS FICARA, and DAVID W. MOSER, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>GOOGLE INC.,<br><br>            Defendant. | Civil Action No. 10 Civ. 2977 (DC)<br><br>**ECF Case** |

**DEFENDANT GOOGLE INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS**

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   PROCEDURAL BACKGROUND.................................................................... 2

    A.   *Authors Guild*............................................................................................ 2

    B.   *ASMP* ...................................................................................................... 3

III.  ARGUMENT .................................................................................................... 3

    A.   12(b)(1) Standard ...................................................................................... 3

    B.   The Associations Lack Standing............................................................... 4

         1.   There can be no associational standing where individual members'
             participation is necessary to litigate the claim or to provide the
             requested relief.........................................................................................5

         2.   Copyright claims require the participation of individual copyright
             holders, and cannot be litigated on an association-wide basis...................7

         3.   The allegations and claims at issue here are particularly unsuited to
             association-wide litigation and association-wide relief. ..........................11

             a.   The fair use inquiry requires participation of individual
                 members of all of the associations. ................................................11

             b.   The claim asserted and the relief requested by the Authors
                 Guild both require participation of individual members...............14

             c.   The claim asserted and the relief requested by the ASMP
                 both require participation of individual members.........................16

IV.  CONCLUSION................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.V. v. iParadigms, LLC,*
    562 F.3d 630 (4th Cir. 2009) ................................................................... 12

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,*
    436 F.3d 82 (2d Cir. 2006) ....................................................................... 3

*Association for Information Media & Equipment v. Regents of the University of California,*
    No. CV 10-9378 CBM (MANx) (C.D. Cal. Oct. 3, 2011) ........................ 7, 8, 10, 11

*Aurecchione v. Schoolman Transp. Sys., Inc.,*
    426 F.3d 635 (2d Cir. 2005) .................................................................. 3, 4

*Bano v. Union Carbide Corp.,*
    361 F.3d 696 (2d Cir. 2004) .................................................................. 5, 6

*Bill Graham Archives v. Dorling Kindersley Ltd.,*
    448 F.3d 605 (2d Cir. 2006) ................................................................... 12

*Blanch v. Koons,*
    467 F.3d 244 (2d Cir. 2006) ................................................................... 13

*Brattleboro Pub. Co. v. Winmill Pub. Corp.,*
    369 F.2d 565 (2d Cir. 1966) ................................................................... 16

*Bridgeman Art Library, Ltd. v. Corel Corp.,*
    36 F. Supp. 2d 191 (S.D.N.Y. 1999) ..................................................... 13

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994) ........................................................................... 11, 12

*CBS Broadcasting, Inc. v. Echostar Communications Corporation,*
    450 F.3d 505 (11th Cir. 2006) ................................................................ 10

*Chicago Bd. of Educ. v. Substance, Inc.,*
    354 F.3d 624 (7th Cir. 2003) ................................................................... 8

*Dallal v. New York Times,*
    No. 05-2924-cv, 2005 WL 5281006 (2d Cir. Nov. 7, 2005) ..................... 18

*Dresser v. William Morrow & Co.,*
    105 N.Y.S.2d 706 (1st Dep't 1951),
    *aff'd*, 107 N.E.2d 89 (N.Y. 1952) ......................................................... 15

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ............................................................................................... 13

*Field v. Google Inc.*,
  412 F. Supp. 2d 1106 (D. Nev. 2006) ................................................................... 12

*Franklin Elec. Publishers, Inc. v. Unisonic Prods. Corp.*,
  763 F. Supp. 1 (S.D.N.Y. 1991) ............................................................................. 8

*Guadagno v. Wallack Ader Levithan Associates*,
  932 F. Supp. 94 (S.D.N.Y. 1996) ........................................................................... 4

*Harper & Row Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985)........................................................................................... 12, 13

*Hunt v. Washington State Apple Adver. Comm'n*,
  432 U.S. 333 (1977)................................................................................... passim

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Brock*,
  477 U.S. 274 (1986) ................................................................................................ 6

*Itar-Tass Russian News Agency v. Russian Kurier*,
  No. 95 Civ. 2144 (JGK), 1997 WL 109481 (S.D.N.Y. Mar. 10, 1997),
  *rev'd in part*, 153 F.3d 82 (2d Cir. 1998) ........................................................... 10

*Jarvis v. Cardillo*,
  No. 98 CIV. 5793 RWS, 1999 WL 187205 (S.D.N.Y. Apr. 6, 1999) ...................... 4

*Johnston v. HBO Film Mgmt., Inc.*,
  265 F.3d 178 (3d Cir. 2001) ................................................................................. 18

*K-Beech, Inc. v. Does 1-29*,
  Case No. CV 11-3331(JTB)(ETB), 2011 WL 4401933 (E.D.N.Y. Sept. 19, 2011) ................. 8

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811 (9th Cir. 2003) ............................................................................... 12

*Leibovitz v. Paramount Pictures Corp.*,
  948 F. Supp. 1214 (S.D.N.Y. 1996),
  *aff'd*, 137 F.3d 109 (2d Cir. 1998) ..................................................................... 12

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) .................................................................................. 4

*Maxtone-Graham v. Burtchaell*,
  631 F. Supp. 1432 (S.D.N.Y. 1986),
  *aff'd*, 803 F.2d 1253 (2d Cir. 1986) ................................................................... 13

*McCracken v. Best Buy Stores, L.P.*,
   248 F.R.D. 162 (S.D.N.Y. 2008) ................................................................. 19

*Michaels v. Internet Entm't Group, Inc.*,
   No. CV 98-0583 DDP (CWx), 1998 WL 882848 (C.D. Cal. Sept. 11, 1998) ........................ 12

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*,
   712 F. Supp. 2d 84 (S.D.N.Y. 2010),
   *on reconsideration in part*, No. 09-CV-2669 LAP,
   2010 WL 3958841 (S.D.N.Y. Sept. 27, 2010)................................................. 17

*Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*,
   604 F. Supp. 2d 665 (S.D.N.Y. 2009) ..................................................... 4, 6

*National Association of Freelance Photographers v. Associated Press*,
   No. 97 Civ. 2267 (DLC), 1997 WL 759456 (S.D.N.Y. Dec. 10, 1997)..................... 9, 10, 11

*New York State Nat'l Org. for Women v. Terry*,
   886 F.2d 1339 (2d Cir. 1989) ................................................................. 6

*Olan Mills, Inc. v. Linn Photo Co.*,
   795 F. Supp. 1423 (N.D. Iowa 1991),
   *rev'd*, 23 F.3d 1345 (8th Cir. 1994)......................................................... 10

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ............................................................... 12

*Random House, Inc. v. Rosetta Books LLC*,
   150 F. Supp. 2d 613 (S.D.N.Y. 2001),
   *aff'd*, 283 F.3d 490 (2d Cir. 2002)..................................................... 14, 15

*Rent Stabilization Ass'n of City of New York v. Dinkins*,
   5 F.3d 591 (2d Cir. 1993) ..................................................................... 6

*Sharkey v. Quarantillo*,
   541 F.3d 75 (2d Cir. 2008) ................................................................... 4

*Silvers v. Sony Pictures Entm't, Inc.*,
   402 F.3d 881 (9th Cir. 2005) ................................................................. 4

*Thompson v. County of Franklin*,
   15 F.3d 245 (2d Cir. 1994) ................................................................... 5

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
   517 U.S. 544 (1996)........................................................................... 5

*Ward v. Nat'l Geographic Soc'y*,
   208 F. Supp. 2d 429 (S.D.N.Y. 2002) ........................................................ 16

*Wood v. Houghton Mifflin Harcourt Pub. Co.*,
    589 F. Supp. 2d 1230 (D. Colo. 2008) ................................................................... 18

*Wu v. Pearson Educ., Inc.*,
    No. 09 Civ. 6557 (RJH), 2010 WL 3791676 (S.D.N.Y. Sept. 29, 2010) ................................ 18

**Statutes**

17 U.S.C. § 107 ................................................................................................... 11, 12

17 U.S.C. § 107(1) ..................................................................................................... 12

17 U.S.C. § 201(b) ..................................................................................................... 15

17 U.S.C. § 204(a) ..................................................................................................... 15

17 U.S.C. § 501(b) ....................................................................................................... 4

17 U.S.C. § 501(e) ..................................................................................................... 11

**Rules**

Fed. Rule Civ. P. 12(b)(1) ....................................................................................... 3, 13

**Other Authorities**

Martin P. Levin, *The Contemporary Guide to Negotiating the Author-Publisher Contract*,
    54 N.Y.L.S. L. Rev. 447 (2010) ............................................................................... 14

Pierre N. Leval, *Toward a Fair Use Standard*,
    103 Harv. L. Rev. 1105 (1990) ................................................................................ 12

PLUS Coalition, *The PLUS Glossary of Picture Licensing*, *at*
    http://www.useplus.com/useplus/glossary.asp ......................................................... 18

S. Rep. No. 94-473 (1975) ......................................................................................... 13

## I.    INTRODUCTION

This Memorandum of Law is filed in support of Google's Motion to Dismiss the Fourth

Amended Complaint in *The Authors Guild, Inc. et al. v. Google Inc.*, No. 05 CV 8136 (DC)

("*Authors Guild*" or "*AG*") and in support of Google's Motion to Dismiss the First Amended

Complaint in *The American Society of Media Photographers, Inc. et al. v. Google Inc.*, No. 10

CV 2977 (DC) ("*ASMP*").

Both the *Authors Guild* and *ASMP* cases seek relief for alleged copyright infringement.

The claims are made not only by individuals claiming to own copyrights alleged to have been

infringed, but also by associations seeking relief on behalf of their members.[1]  *See* Fourth

Amended Complaint, *AG* ECF No. 985 ("*AG* Compl."), at ¶¶ 1, 7; First Amended Complaint in

*ASMP* ("*ASMP* Compl."), *ASMP* ECF No. 29 at ¶¶ 11, 16-21.  But Plaintiffs in both cases fail to

plead facts showing that the associations have standing to bring these copyright claims.  For that

reason, the claims of the associations must be dismissed.

The associations are not proper parties to this copyright infringement case because they

themselves do not claim to own any copyright at issue.  They are suing on behalf of their

members, on an "associational standing" theory.  *AG* Compl. at ¶ 19; *ASMP* Compl. at ¶ 21.  But

associational standing requires that "neither the claim asserted nor the relief requested requires

the participation of individual members in the lawsuit."  *Hunt v. Washington State Apple Adver.*

*Comm'n*, 432 U.S. 333, 343 (1977).  Individual copyright owners' participation is necessary to

establish a claim for copyright infringement.  Because the claims asserted and the relief

---

[1] The Authors Guild is the only associational plaintiff in the *Authors Guild* action.  The associations in the *ASMP* action are the ASMP (freelance photographers), the Graphic Artists Guild ("GAG") (freelance illustrators), Picture Archive Council of America, Inc. ("PACA") (stock photo houses), North American Nature Photography Association ("NANPA") (amateur and professional nature photographers), and Professional Photographers of America ("PPA") (primarily wedding and portrait photographers).

requested thus require the participation of individual members in the lawsuit, the associations lack standing to assert copyright claims on behalf of their members.

For these reasons and as set forth more fully below, the claims of the associations should be dismissed with prejudice.

## II.     PROCEDURAL BACKGROUND

### A.     *Authors Guild*

The Authors Guild, Inc. ("Authors Guild"), as putative associational plaintiff, along with a number of individual authors, filed the original complaint in the *Authors Guild* case on September 20, 2005.  *AG* ECF No. 1 (Complaint).  Google answered, and discovery ensued.  *AG* ECF No. 14 (Answer), ECF No. 29 (Case Management Plan).  In 2007, the parties began settlement discussions in earnest.  The parties presented a proposed settlement agreement to Judge Sprizzo, who was then presiding over the case.  *AG* ECF No. 55 (motion for preliminary approval); *AG* ECF No. 64 (order granting preliminary approval).  The case was reassigned to Judge Chin on January 8, 2009.  *AG* ECF No. 70.  After notice of the proposed settlement was disseminated to members of the putative class, a number of objections were submitted.  In light of these objections, the parties submitted an Amended Settlement Agreement ("ASA") on November 13, 2009.  *AG* ECF No. 768.  Preliminary approval of the ASA was granted on November 19, 2009.  *AG* ECF No. 772.  Further objections were submitted, and a final fairness hearing was held on February 18, 2010.  *AG* ECF No. 963 (transcript of proceedings).  In an order dated March 22, 2011, this Court denied approval of the ASA.  *AG* ECF No. 971.  Plaintiffs filed the Fourth Amended Complaint on October 14, 2011.  *AG* ECF No. 985.  This memorandum is submitted in support of Google's motion to dismiss that Complaint.

### B.    *ASMP*

The ASMP moved to intervene in the *Authors Guild* case, and its motion was denied on September 2, 2009.  *AG* ECF No. 428.  The ASMP moved for reconsideration on September 25, 2009, *AG* ECF No. 738, and its motion was denied on November 4, 2009.  *AG* ECF No. 765. The ASMP filed a notice of appeal, *AG* ECF No. 780, but voluntarily dismissed its appeal, and the Second Circuit issued its mandate on February 25, 2010.  *AG* ECF No. 960.

On April 7, 2010, the ASMP, as putative associational plaintiff, along with four other associations and a number of individual photographers and illustrators, all as putative class representatives, filed the original complaint in the *ASMP* action.  *ASMP* ECF No. 1.  The *ASMP* case was accepted as related to the *Authors Guild* case.  *ASMP* ECF No. 7.  Plaintiffs filed the First Amended Complaint on November 18, 2011.  *ASMP* ECF No. 29.  This memorandum is submitted in support of Google's motion to dismiss that Complaint.

## III.   ARGUMENT

Plaintiff associations—the AG, ASMP, GAG, PACA, NANPA, and PPA—lack standing to assert the copyright infringement claims set forth in their Complaints, and those claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

### A.    12(b)(1) Standard

"[T]he proper procedural route" for a standing challenge "is a motion under Rule 12(b)(1)."  *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006).  "Although lack of Article III standing and subject matter jurisdiction are distinct concepts," they are considered using the same framework, since both are "limitation[s] on the authority of a federal court to exercise jurisdiction."  *Id.*  Plaintiffs bear the burden of showing the existence of subject matter jurisdiction by a preponderance of the evidence.  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  Though "no presumptive

truthfulness attaches to the complaint's jurisdictional allegations," *Guadagno v. Wallack Ader Levithan Associates*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996), a court should "'constru[e] all ambiguities and draw[ ] all inferences' in a plaintiff's favor." *Aurecchione*, 426 F.3d at 638 (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *see also Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008).  Contested jurisdictional allegations need not be accepted as true, and the Court may consider matters outside the complaint. *Jarvis v. Cardillo*, No. 98 CIV. 5793 RWS, 1999 WL 187205, at *2 (S.D.N.Y. Apr. 6, 1999). *See Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 604 F. Supp. 2d 665, 669 (S.D.N.Y. 2009).

## B.     The Associations Lack Standing.

Plaintiff associations do not own copyrights alleged to have been infringed, and do not have standing to sue for copyright infringement.

The Copyright Act places limitations on standing to sue for copyright infringement.  "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it."  17 U.S.C. § 501(b).  While "[t]he statute does not say expressly that *only* a legal or beneficial owner of an exclusive right is entitled to sue," "Congress' explicit listing of who *may* sue for copyright infringement should be understood as an *exclusion of others* from suing for infringement." *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (emphasis in original).

The associations do not claim to be the legal or beneficial owners of any exclusive right alleged to have been infringed. *AG* Compl. at ¶ 19; *ASMP* Compl. at ¶ 21.  Thus, unless they can derive standing from their members' copyrights on an "associational standing" theory, their claims must be dismissed.  The associations cannot meet the associational standing test because

4

litigating a copyright infringement claim requires the participation of the copyright holder—in every copyright case as to copyright ownership, and particularly in these cases as to fair use.

> 1. **There can be no associational standing where individual members' participation is necessary to litigate the claim or to provide the requested relief.**

"Associational standing carves only a narrow exception from the ordinary rule that a litigant must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 (2d Cir. 2004) (internal quotation marks and citation omitted). "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) **neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit**." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). The third prong of the *Hunt* test is an issue of prudential standing, *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557 (1996), and such issues may be raised at any time by the parties or *sua sponte*. *Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994).

"The organization lacks standing to assert claims of injunctive relief on behalf of its members where the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof, or where the relief requested would require the participation of individual members in the lawsuit." *Bano*, 361 F.3d at 714 (internal quotation marks and citation omitted). "If the involvement of individual members of an association is necessary, either because the substantive nature of the claim or the form of the relief sought requires their participation, we see no sound reason to allow the organization standing to press their claims[.]"

*Id.* at 715.  "In such circumstances, the standing of an association is limited to bringing claims arising out of injuries that the organization, not simply its members, suffered."  *Id.*

"In contrast, where the organization seeks a purely legal ruling without requesting that the federal court award individualized relief to its members, the *Hunt* test may be satisfied."  *Id.* *See, e.g.*, *Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Brock*, 477 U.S. 274, 287 (1986) (finding associational standing because "[t]he suit raises a pure question of law: whether the Secretary properly interpreted the Trade Act's TRA eligibility provisions"); *Nat'l Ass'n of Letter Carriers, AFL-CIO*, 604 F. Supp. 2d at 672 (finding associational standing because the question whether the Inspector General of the United States Postal Service could lawfully request an employee's medical records was a pure question of law).

Where associations seek standing to litigate claims not presenting pure issues of law, standing has been granted only where every element of the plaintiff's claim can be proved using association-wide facts and where the relief requested can be granted on an association-wide basis.  *See, e.g.*, *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1349 (2d Cir. 1989) (affirming associational standing where "[u]ncontroverted affidavits of plaintiffs, their members and third-parties, along with certain stipulations of fact entered into by defendants, were sufficient to provide a legal basis for court-ordered interim relief and, ultimately, for the permanent relief granted"); *cf. Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993) (denying associational standing because the court "would have to engage in an *ad hoc* factual inquiry for *each* landlord who alleges that he has suffered a taking") (emphasis in original).

### 2.   Copyright claims require the participation of individual copyright holders, and cannot be litigated on an association-wide basis.

Every copyright, and every alleged copyright infringement, is different.  For that reason, claims for copyright infringement cannot be adjudicated, nor relief granted, without the participation of those who own the copyrights at issue.

A recent case is directly on point.  In *Association for Information Media & Equipment v. Regents of the University of California*, No. CV 10-9378 CBM (MANx) (C.D. Cal. Oct. 3, 2011) ("*AIME*"),[2] an association of copyright holders sued the University of California.  The association, AIME, sought injunctive and declaratory relief barring the University of California from making a large number of copyrighted works available online.  *Id.* at 2.  But before reaching the merits of the copyright dispute, the court considered the argument that AIME lacked standing to sue for copyright infringement.  *Id.* at 6.  The court applied the three-part associational standing test set forth in *Hunt*.  *Id.*  It held the first prong was satisfied, since the complaint alleged that a particular member of AIME owned a registered copyright that was the subject of the infringement claim.  *Id.*  The second prong, too, was satisfied, since the dispute was germane to AIME's purpose as an organization.  *Id.*

But the third prong—the requirement that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit"—was not satisfied.  *Id.* at 7.  "In order to establish a claim for copyright infringement, individual copyrights owners' participation is necessary.  This is because having the rights over a copyright is essential to establishing a copyright infringement claim."  *Id.* at 7.  As noted above, ownership of a

---

[2] *Available at* http://www.aime.org/news.php?download=nG0kWaN9ozI3plMlCGRm and attached to Google's Request for Judicial Notice as Exhibit 1.

registered copyright is an element of every claim for copyright infringement as to United States works.  *See, e.g.*, *K-Beech, Inc. v. Does 1-29*, Case No. CV 11-3331(JTB)(ETB), 2011 WL 4401933, at *1 (E.D.N.Y. Sept. 19, 2011).  If AIME were to proceed with its case, it would have to identify each work at issue, trace the chain of title of its copyright, present a registration for that copyright, and show that the owner of the copyright at the time of the alleged infringement was a member of AIME.  *See, e.g.*, *Franklin Elec. Publishers, Inc. v. Unisonic Prods. Corp.*, 763 F. Supp. 1, 4 (S.D.N.Y. 1991) ("Rule 8 requires that plaintiff state in his infringement claim which specific original works are the subject of the claim, that plaintiff owns the copyright, that the works have been registered in compliance with the copyright statute and by what acts and during what time defendant has infringed the copyright.").  That process could not proceed without the participation of individual members in the lawsuit, because those facts are in the possession of the individual association members.

AIME had argued "that because it only seeks declaratory relief, no individualized participation by members is necessary."  *AIME* at 7.  The court rejected this contention, because "the scope of that declaratory relief would be limited by the rights that members have over the copyrights."  *Id.*  Critically, the *Hunt* test allows associational standing only when "neither the claim asserted *nor the relief requested* requires the participation of individual members in the lawsuit."  *Hunt*, 432 U.S. at 343 (emphasis added).  Any injunctive or declaratory relief ordered in a copyright case can extend only to the plaintiffs' particular works, not to copyrighted works generally.  *See Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 632 (7th Cir. 2003).  Because determining the scope of the relief requested would require the participation of individual members of the suit, the *AIME* court held, associational standing was precluded by *Hunt*.  *AIME* at 7.  AIME's copyright claims were dismissed.  *Id.*

8

Judge Cote's decision in *National Association of Freelance Photographers v. Associated Press*, No. 97 Civ. 2267 (DLC), 1997 WL 759456 (S.D.N.Y. Dec. 10, 1997) ("*NAFP*") dealt with similar facts and reached the same outcome.  In that case, the National Association of Freelance Photographers ("NAFP") alleged that the Associated Press ("AP") had infringed NAFP members' copyrights by reproducing and distributing their photographs without permission.  *Id.* at *2-*3.  The AP contended that it had that permission by virtue of each photographer's endorsement of a check which purported to transfer copyright in certain photographs to the AP when the photographer deposited the check.  *Id.*  The NAFP brought the lawsuit to challenge that blanket practice, which had been used by AP with respect to all of its freelance photographers.  *Id.*

The NAFP sought a declaratory judgment that the endorsement of checks was not effective to transfer copyright to the AP, and sought an injunction against further use of any freelance photographs pursuant to a transfer of copyright effected through endorsement of checks.  *Id.* at *3.  Judge Cote observed that "[t]he grounds proffered for the injunction, essentially that AP engaged in unauthorized use of Freelance Photographers' copyrighted materials and failed to compensate or credit Freelance Photographers for those uses, all depend at root on proof of copyright ownership in the subject materials[.]"  *Id.* at *7.  Because "proof of copyright ownership cannot be adduced without the participation of individual photographers, who would have to establish that their endorsement of payment checks from AP was ineffective to transfer copyright, or that they had other individual arrangements or dealings with AP that negated the effect of the transfer," the court held that the third prong of the *Hunt* test was not met, and that NAFP therefore lacked standing.  *Id.*

9

On three occasions, courts have purported to permit associational standing in copyright cases. Those cases differ in critical ways from this one, and those exceptions prove the wisdom of the rule set forth in *AIME* and *NAFP*.

- The court in *Itar-Tass Russian News Agency v. Russian Kurier*, No. 95 Civ. 2144 (JGK), 1997 WL 109481 (S.D.N.Y. Mar. 10, 1997), *rev'd in part*, 153 F.3d 82, 84 (2d Cir. 1998), held that an association of Russian journalists, UJR, had standing. The *Itar-Tass* court's analysis of the third factor of *Hunt* relied on the fact that "this lawsuit has been litigated" through discovery and a bench trial "without the need for the participation of UJR's members," and thus the question whether the case could be litigated without the participation of individual association members was moot. *Id.*

- One Northern District of Iowa decision held, without analysis, that an association had associational standing to assert copyright claims. That decision was reversed without analysis of the standing question, and the case settled before a decision on remand. *See Olan Mills, Inc. v. Linn Photo Co.*, 795 F. Supp. 1423, 1428 (N.D. Iowa 1991), *rev'd*, 23 F.3d 1345 (8th Cir. 1994).

- In *CBS Broadcasting, Inc. v. Echostar Communications Corporation*, 450 F.3d 505, 517 n.25 (11th Cir. 2006), the court stated in a footnote, without analysis of the *Hunt* factors, that associations of television stations had standing to assert copyright claims. But in that case, the court appears to have found that *each and every* member of the associations had standing under the particular portion of the Copyright Act at issue in that case, which confers standing on television stations

whose signals are rebroadcast by satellite carriers, whether or not those stations own copyright in the programs being transmitted.  *See* 17 U.S.C. § 501(e).  In each of these cases, the difficult questions of ownership and interpretation of individual contractual terms which arose in *AIME* and *NAFP* were not present.  Thus, except in the rarest of circumstances, copyright cases are unsuited to adjudication on an association-wide basis because the claims asserted and the relief requested both require the participation of individual association members in order to prove copyright ownership.

### 3. The allegations and claims at issue here are particularly unsuited to association-wide litigation and association-wide relief.

These cases present a set of claims requiring even more participation from individual association members than those in *AIME* and *NAFP*.  Here, as in *AIME* and *NAFP*, a claim is being made about use of a wide variety of copyrighted works—and, for each such work, proof of copyright ownership by an individual member of one of the associations would have to be provided.  Standing should be denied for that reason alone.  But these cases will require substantially more individualized proof than either *AIME* or *NAFP*, for the reasons set forth below.

### a. The fair use inquiry requires participation of individual members of all of the associations.

First, a central issue in these cases is whether the conduct alleged in the Complaints constitute fair use under 17 U.S.C. § 107.  Litigating that issue will require the participation of individual association members, because many of the relevant facts are specific to the particular work in question.

Fair use must "be judged case by case, in light of the ends of the copyright law." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 (1994).  It is "not to be simplified with bright-line rules."  *Id.* at 577.  "[F]air use analysis must always be tailored to the individual

11

case." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 552 (1985).  The fair use

inquiry requires "individualized analysis."  *Leibovitz v. Paramount Pictures Corp.*, 948 F. Supp.

1214, 1219 (S.D.N.Y. 1996), *aff'd*, 137 F.3d 109 (2d Cir. 1998); *see Michaels v. Internet Entm't*

*Group, Inc.*, No. CV 98-0583 DDP (CWx), 1998 WL 882848, at *4 n.3 (C.D. Cal. Sept. 11,

1998) ("[T]he fair use test is highly individualized.").

Among the issues relevant to the fair use inquiry[3] are the second and fourth fair use

factors: "the nature of the copyrighted work" and "the effect of the use upon the potential market

for or value of the copyrighted work."  17 U.S.C. § 107.  Both of those inquiries depend on the

particular copyrighted work at issue.

Some books are highly creative; some are mere compilations of facts or quotations from

other works which are subject only to the thinnest copyright.  *See, e.g.*, *Campbell*, 510 U.S. at

---

[3] The transformative nature of Google's use is highly relevant to the fair use inquiry, but can be
shown without work-by-work analysis, because Google's use is transformative regardless of the
nature of the book at issue.  Because of the transformative nature of the use, the first fair use
factor—"the purpose and character of the use"—weighs heavily in Google's favor.  17 U.S.C. §
107(1); *see Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006)
("Most important to the court's analysis of the first factor is the 'transformative' nature of the
work.").  Use of a work is transformative, and therefore likely to be found to be fair use, when it
"adds something new, with a further purpose or different character" than the original work,
rather than a use which "merely supersedes the objects of the original creation."  *Campbell*, 510
U.S. at 569, 579 (citing Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV. 1105,
1111 (1990)).  Google's use—scanning, indexing, and the display of short "snippets" in response
to search queries—is highly transformative, and analogous conduct has led to findings of fair use
primarily on the basis of that transformativeness.  *See, e.g.*, *A.V. v. iParadigms, LLC*, 562 F.3d
630 (4th Cir. 2009) (holding that copying for the purpose of indexing a large corpus of
copyrighted papers was fair use due in large part to its transformativeness); *Perfect 10, Inc. v.*
*Amazon.com, Inc.*, 508 F.3d 1146, 1169-70 (9th Cir. 2007) (holding that copying for the purpose
of rendering searchable a large corpus of copyrighted photographs was fair use in large part due
to its transformativeness); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) (same); *Field*
*v. Google Inc.*, 412 F. Supp. 2d 1106, 1118 (D. Nev. 2006) (holding that copying for the purpose
of making more reliably available a large corpus of copyrighted web pages was fair use due in
large part to its transformativeness).

586 (noting the highly expressive nature of the work at issue, *Oh, Pretty Woman*, in holding that

the use at issue was fair); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358 (1991)

(denying copyright protection to a telephone book, an unoriginal compilation of facts).  The

same is true of photographs.  *See, e.g.*, *Blanch v. Koons*, 467 F.3d 244, 257 (2d Cir. 2006)

(noting the creative nature of the source photograph in holding that the use at issue was fair);

*Bridgeman Art Library, Ltd. v. Corel Corp.*, 36 F. Supp. 2d 191, 200 (S.D.N.Y. 1999) (denying

PACA member Bridgeman Art Library's claim to copyright in photographs of artwork due to

lack of originality).  The court cannot analyze the nature of the copyrighted work unless the

copyrighted work is before the court, and bringing each individual association member's

copyrighted work before the court requires the participation of those individual members.

An effect upon the market for a book, too, cannot be shown without the participation of

individual copyright holders.  For example, at the most basic level, some of the books in Google

Book Search are in print; others are out of print.  "Although going out of print does not terminate

a copyright, it is an appropriate element to consider when assessing the impact on a copyrighted

work's potential market."  *Maxtone-Graham v. Burtchaell*, 631 F. Supp. 1432, 1438 (S.D.N.Y.

1986), *aff'd*, 803 F.2d 1253 (2d Cir. 1986); *see Harper & Row*, 471 U.S. at 553 ("If the work is

'out of print' and unavailable for purchase through normal channels, the user may have more

justification for reproducing it.") (quoting S. Rep. No. 94-473, at 64 (1975)).  At the very least,

the determination of whether a book is still being sold is one that must be inquired into on a

book-by-book basis, and will require participation of individual association members in the

litigation.

While the merits of Google's fair use defense are not at issue in this 12(b)(1) motion,

given the central role that fair use is to play in these cases, the individualized factual issues

13

which will be presented by the fair use issue demonstrate that associational standing is
inappropriate in this case.

           **b.**      **The claim asserted and the relief requested by the Authors
Guild both require participation of individual members.**

Second, the Authors Guild seeks injunctive and declaratory relief as to all in-copyright
books on behalf of those books' authors.  The question whether the author of a book owns the
rights necessary to assert such a claim depends on facts in the possession of the author, requiring
the participation of individual author members in the lawsuit.

Due to the nature of publishing contracts, some authors own a legal or beneficial interest
in the copyright in their books.  Some do not.  Answering the question whether a particular
author owns a particular copyright interest in his or her book requires interpretation of the terms
of the particular publishing contract at issue.  *See, e.g.*, *Random House, Inc. v. Rosetta Books
LLC*, 150 F. Supp. 2d 613, 614-16 (S.D.N.Y. 2001), *aff'd*, 283 F.3d 490 (2d Cir. 2002).
Publishing contracts are frequently heavily negotiated, and the terms frequently depart from any
standard form contract.  The Authors Guild advises: "If you sign the form contract as you
received it, you might well regret it later because the terms you ultimately accept will govern
your relationship with the publisher for years after the contract is signed."  Tad Crawford & Kay
Murray, *The Writer's Legal Guide: An Authors Guild Desk Reference* 152 (3d ed. 2002)
(relevant excerpts attached as Exhibit 2 to Google's Request for Judicial Notice).  *See generally*
Martin P. Levin, *The Contemporary Guide to Negotiating the Author-Publisher Contract*, 54
N.Y.L.S. L. Rev. 447 (2010).

Whether copyright resides in the author or in the publisher or some other entity requires
individualized inquiry.  To use the Authors Guild's *Writer's Legal Guide* as an example, one co-
author's copyright interest is held by that co-author, but the other co-author's copyright interest

14

is not.  *See, e.g.*, Crawford & Murray, copyright page ("© 2002 by Tad Crawford and The

Authors Guild, Inc.").  This may be due to assignment of rights or because the author wrote the

book within the scope of his or her employment.  *See* 17 U.S.C. §§ 204(a) (governing transfers

of copyright ownership), 201(b) (providing that the employer, not the author, owns copyright in

a "work made for hire").  *See also, e.g.*, *Dresser v. William Morrow & Co.*, 105 N.Y.S.2d 706

(1st Dep't 1951), *aff'd*, 107 N.E.2d 89 (N.Y. 1952) (adjudicating a dispute regarding a book

contract which provided for a transfer of copyright in exchange for an "outright fixed payment").

Thus, the particular contract language at issue is central to the litigation of the claim.

      Nor, even when the contract language is presented, is its interpretation always

straightforward.  For example, the allocation of rights as between the author and publisher with

respect to electronic uses of books has been hotly contested.  In *Random House*, 150 F. Supp. 2d

at 614, litigation raged regarding the interpretation of a single clause in a single publisher's book

contract: the author's transfer of "the right to 'print, publish and sell the work[s] in book form.'"

Random House contended that this gave it, not the author, the right to publish the book in

electronic "e-book" form; the author and his e-book publisher contended that this language

reserved to the author the electronic rights.  *Id.* at 614-15.  Only after a lengthy examination of

the particular terms of the Random House contract was the court able to conclude that with

respect to the particular language in the contract at issue, Random House did not have the

electronic rights.  *Id.* at 620-23.

      These issues will be even thornier with respect to books written before the enactment of

the Copyright Act of 1976, which made significant changes to the law of copyright ownership.

For example, under the previous statute, the Copyright Act of 1909, determining whether

copyright arose in the writer or in someone else as a "work for hire" turns on the capacious test

whether the work was created at the "instance and expense" of another who had "the right to exercise control over the manner in which the artist executed the work" and whether there exists a later written or oral agreement reserving copyright in the writer. *Ward v. Nat'l Geographic Soc'y*, 208 F. Supp. 2d 429, 435, 438 (S.D.N.Y. 2002) (applying the 1909 Act and denying summary judgment on the "work for hire" question due to "a genuine issue of fact regarding the existence of an implied-in-fact agreement that he would retain copyright in his work"); *Brattleboro Pub. Co. v. Winmill Pub. Corp.*, 369 F.2d 565, 567 (2d Cir. 1966) (under the 1909 Act, "copyright shall be in the person at whose instance and expense the work is done").

Thus, determining whether and to what extent an author has a copyright interest in a book he or she wrote requires the participation of that individual author, because the question turns on particularized facts in the possession of each individual author.

### c.   The claim asserted and the relief requested by the ASMP both require participation of individual members.

Third, turning to the *ASMP* case, the *ASMP* plaintiffs assert claims not only as to books displayed only as "snippets" in reliance on fair use, but also as to books some of whose full pages are displayed pursuant to a license granted by the publisher. *ASMP* Compl. at ¶ 58; *see* http://books.google.com/googlebooks/screenshots.html.  ASMP alleges that "Google has formed a 'Partner Program' through which book publishers provide Google with physical or digital copies of Books, and the Visual Works contained therein," and that "Google then distributes and displays the Books and Visual Works that Google obtained from its 'Partner' as part of Google Book Search." *Id.* Plaintiffs in *ASMP* assert that a question exists with respect to Partner Program books as to whether the book's publisher had the right to grant that license, or whether that license was outside the scope of the rights which the publisher was permitted to grant under its own license with the photographer in question. *ASMP* Compl. at ¶ 43.

Even if the contracts were uniform, determining the threshold question whether each photograph at issue has been registered would be no easy task, and would require individualized investigation.   Many photographers do not register their copyrights, and others register them in a manner that has been held invalid.  *See Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, 712 F. Supp. 2d 84, 95 (S.D.N.Y. 2010), *on reconsideration in part*, No. 09-CV-2669 LAP, 2010 WL 3958841 (S.D.N.Y. Sept. 27, 2010) (holding that the copyright registrations with respect to "millions" of photographs are invalid for failure to list the photographer and identify the photograph at issue).

But licenses for the inclusion of photographs in books are not of uniform scope.  Each individual license "should include the parties, permissions, constraints, requirements, conditions, image information and other relevant information."  American Society of Media Photographers, *ASMP Professional Business Practices in Photography* 22 (7th ed. 2008) (relevant excerpts are attached to Google's Request for Judicial Notice as Exhibit 3).  The ASMP recommends to its members that licenses specify the particular "category/type of media in which your image may be reproduced,"  the "format in which the specified media may be distributed," the "locations/positions at which your image may appear in/on the specified media," the "maximum number of placements permitted in each instance of that media," the "maximum size at which the image may be reproduced," the "maximum number of design versions, editions, or issues in/on which your image may be reproduced," and the "total copies distributed or displayed."  *Id.* at 22-23.  There are so many variables and so much nonstandard contract language, in fact, that plaintiffs ASMP and PACA have joined other organizations to form an industry group that published a listing of terms used in these licenses.  There are more than 1,000 such terms.  *See* PLUS Coalition, *The PLUS Glossary of Picture Licensing*, *at*

17

http://www.useplus.com/useplus/glossary.asp; *see Wood v. Houghton Mifflin Harcourt Pub. Co.*,

589 F. Supp. 2d 1230, 1237 (D. Colo. 2008) (analyzing the terms of multiple licenses for

inclusion of photographs in books, many of which included hand-written changes to material

terms).

Contract terms are not consistent between different pictures in the same book, let alone

between different books by the same publisher. *See, e.g.*, *Wu v. Pearson Educ., Inc.*, No. 09 Civ.

6557 (RJH), 2010 WL 3791676, at *1 (S.D.N.Y. Sept. 29, 2010) (dismissing some copyright

claims by photographer against book publisher but allowing others to proceed based on differing

license terms).  Even if the terms used by each particular publisher were uniform, the plaintiffs'

claims would still require a massive number of individualized inquiries, since there are more

than 10,000 publishers in the Partner Program.  *See ASMP* Compl. at ¶ 3;

http://www.google.com/googlebooks/history.html ("Over 10,000 publishers and authors from

100+ countries are participating in the Book Search Partner Program.").

Digital rights frequently turn on oral licenses or nebulous, shifting notions of "industry

practice."  *See, e.g.*, Brief of Amicus Curiae American Society of Media Photographers in *Dallal

v. New York Times*, No. 05-2924-cv (2d Cir. Nov. 7, 2005), *available at* 2005 WL 5281006 ("For

longer than most of the parties involved in this case can remember, until the mid-1990's, the

default assumption, both written and unwritten, in the trade was that freelance photographers

granted publishers one-time, first-time North American print rights in exchange for their

assignment fees.").  Cases which turn on the presence or absence of an oral agreement—which

are likely to encompass all of the associations' claims in *ASMP* as to works in the Partner

Program—are not susceptible to association-wide proof.  Class action cases bear this out.  *See,

e.g.*, *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 190 (3d Cir. 2001) ( "it has become well-

settled that, as a general rule, an action based substantially on oral rather than written communications is inappropriate for treatment as a class action"); *McCracken v. Best Buy Stores, L.P.*, 248 F.R.D. 162, 163 (S.D.N.Y. 2008) ("plaintiffs' claims rely on oral representations of individual sales clerks that do not lend themselves to 'generalized proof'").

Even those licenses for inclusion of photographs in periodicals that are written, rather than oral, differ substantially from publication to publication. Each publication's contract for its photographers "is quite different and requires individual attention," and terms differ even among different uses of the same form, since "many photographers have had success with contract cross-outs and modifications." *ASMP Professional Business Practices in Photography* at 120, Google Request for Judicial Notice Exhibit 3.

Thus, litigation of the associations' claims in *ASMP* will require not only determination of which members in fact own registered copyrights, but which particular photographs' license terms permit the publishers to license electronic reproduction. These inquiries will inevitably require the participation of individual members, both to prove up the claims at issue and to determine the scope of available remedy.

The associations' claims are barred by *Hunt* and should be dismissed.

## IV.    CONCLUSION

In both the *Authors Guild* and *ASMP* cases, the participation of individual association members will be required to prove copyright ownership and to litigate the fair use issue. Additionally, in the *ASMP* case, the participation of individual association members will be required to litigate the terms of their contracts with publishers of books in which their photographs appear. The claims of the associations should be dismissed without leave to amend because they lack standing as a matter of law, since they do not themselves own copyrights and do not meet the test for associational standing set forth in *Hunt*.

19

Dated:  December 22, 2011                    Respectfully submitted,


                                   By:   */s/ Joseph C. Gratz*
                                         _____
                                         Daralyn J. Durie (*pro hac vice*)
                                         ddurie@durietangri.com
                                         Joseph C. Gratz (*pro hac vice*)
                                         jgratz@durietangri.com
                                         DURIE TANGRI LLP
                                         217 Leidesdorff Street
                                         San Francisco, CA  94111
                                         Telephone:  415-362-6666
                                         Facsimile:  415-236-6300

                                         Attorneys for Defendant GOOGLE INC.