# EXHIBIT 7

**MACMILLAN PUBLISHING COMPANY**
A DIVISION OF MACMILLAN, INC
866 Third Avenue, New York, N. Y. 10022

AGREEMENT made this, 15th  day of  September        , 19 89 ,
between Macmillan Publishing Company, a division of Macmillan,
Inc., 866 Third Avenue, New York, NY 10022 (the "Publisher")
and  Jim Bouton, 265 Cedar Lane, Teaneck, NJ  07666        (the "Author")
with respect to a book tentatively entitled
  BALL FOUR                                          (hereinafter
referred to as the "Work").

1.   **Grant of Rights**

Author grants to Publisher the exclusive right to print,
publish, distribute and sell the Work and to exercise
the subsidiary rights listed in paragraph 5 below
throughout the world United States of America, its territories
and dependencies, Canada, and the Philippine Republic, and United
States installations abroad, and non-exclusively in the Open Market
excluding the British Commonwealth

(hereinafter the "Territory").   Except as otherwise
provided herein, Publisher may exercise the rights
granted for the full term of copyright (including any
renewals and extensions) provided by law in each country
included within the Territory, under any copyright laws
now or hereafter in force.

2.   **The Work**

a)   The Work is described as follows: Jim Bouton's BALL FOUR is an account,
in journal form, of his years in major league baseball. The Work  is  of approximately
80,000 words, with a new epilogue by Author.

b)   Except as otherwise disclosed by Author to
Publisher prior to the execution of this Agreement,
Author agrees that the Work will be Author's next
published work.   Author will deliver to Publisher
on or before October 15, 1989          ("Due Date"),
time being of the essence, two cleanly typed
/epilogue for the          doubled-spaced copies of the manuscript of the /
Work, all in form and content satisfactory to
Publisher and complete and ready for the
copyeditor, along with all illustrations,
photographs, charts and any other necessary
material, all in a form suitable for
reproduction.   Author will submit with the
manuscript on or before the Due Date all necessary
permissions, releases, licenses and consents.   If
requested by Publisher, Author shall prepare and
deliver to Publisher, within fourteen days after
Publisher's request therefor, a legibly typewritten
index.   If the Author does not prepare the index or
if the index is not satisfactory, then Publisher
may have the index prepared at Author's expense.

c)   1)   If Author does not deliver the complete
manuscript of the Work to Publisher within
thirty days after the Due Date, or at another
date as may have been agreed to by Editor-in-
Chief or Officer of Publisher in writing, then
upon Publisher's written notification thereof,
Author will repay to Publisher all amounts
paid to Author under this Agreement.   If the
Work is delivered but deemed unsatisfactory,
then upon Publisher's written notification
thereof, Author will repay to Publisher all
amounts paid to Author under this Agreement
from the first and any proceeds of a sale of
the Work, or a substantially similar work, to
another party or publisher but in no event
later than six months after Publisher's
written notification (regardless of whether or
not the Work has been resold).   Author hereby
assigns to Publisher the right to receive all
sums due to Author from any subsequent sale or
other exploitation of the said Work, limited
to the total amounts paid to Author under this
Agreement.   Upon repayment in full, Publisher

- 2 -

will return to Author all rights granted
herein.

2)   If Author fails to repay Publisher in full all
sums paid to or for the benefit of Author
under this Agreement, then Publisher may, in
addition to its other remedies, retain for its
own account monies due Author under the terms
of any other agreements between Author and
Publisher until the amounts so retained equal
the amount owing to Publisher.

d)   If Publisher decides to submit the manuscript of
the Work to its legal counsel for review, then the
Work shall not be deemed complete and satisfactory
unless all changes which may be requested by
Publisher on advice of legal counsel or by legal
counsel have been made by Author, regardless of
whether any advance payment otherwise due to Author
on delivery and acceptance of the manuscript has
been made.   Nothing contained in this paragraph
will alter or vary any of the parties' rights under
paragraph 12 of this Agreement.

e)   The Work shall not be considered as satisfactory
and accepted for publication by Publisher until an
Officer of Publisher provides written notification
to Author of Publisher's acceptance.

3.   <u>Advance</u>

Publisher shall pay to Author as an advance against all
monies accruing to Author under this Agreement the sum
of , which shall be
paid as follows:
the signing of the Agreement; and
on the acceptance by the Publisher of a complete and satisfactory
manuscript of the epilogue for the Work.

- 3 -

**4.   Book Royalties**

Publisher will pay to Author the following amounts:

a)   <u>Domestic</u>

   1)   <u>Hardcover</u>

On all copies, less returns, of a regular trade hardcover edition (and revisions thereof) sold by Publisher in the United States through normal trade channels (except as hereinafter set forth), the following royalties: Ten percent (10%) of the suggested retail list price on the first 5,000 copies sold; twelve and one-half percent (12½%) on the next 5,000 copies sold; and fifteen percent (15%) on all copies sold thereafter.



   2)   <u>Paperback</u>

On all copies, less returns, of a paperback edition, sold by Publisher in the United States through normal trade channels (except as hereinafter set forth), a royalty of six percent (6%) of the suggested retail list price on the first 10,000 copies sold and seven and one-half percent (7 1/2%) on all copies in excess of 10,000.

   3)   ~~Unbound Sheets~~

On sales of sheets of the Work, ten percent (10%) of the amounts actually received by Publisher from such sales.

   4)   <u>Special Sales</u>

On all copies, less returns, of a regular hardcover or paperback edition sold by Publisher outside normal wholesale and retail channels in the United States at a discount greater than fifty percent (50%), ten percent (10%) of the amounts actually received.

b)   **Export**
On all copies, less returns, of a regular trade hardcover edition or a paperback edition of the Work sold by Publisher outside the United States, an amount equal to ten percent (10%) of the amounts actually received.

c)   **Premium**
On all copies of the Work sold by Publisher for premium use, and on all copies sold of an edition specifically manufactured for another party, Publisher shall pay five percent (5%) of the amounts actually received.

d)   **Direct Marketing**
On all copies, less returns, of the Work sold by Publisher directly to consumers as distinct from sales made to bookstores or wholesalers, five percent (5%) of the amounts actually received, exclusive of shipping, handling and sales tax.

e)   **Promotions**
On all copies of the Work given away or sold at or below Publisher's cost to promote the sale of the Work, no royalty shall be paid.

f)   ~~**Special Printings**~~
~~If in order to maintain the Work in print Publisher arranges for a printing of less than 2,000 copies, then the royalties on all copies sold which were produced from such printing shall be one-half of the royalty rates set forth in this paragraph 4.~~

5.   **Subsidiary Rights**

a)   The exclusive subsidiary rights referred to in paragraph 1 include all of the rights enumerated below. The amounts actually received from the sale or license of such rights within the Territory are to be shared by Author and Publisher in the percentages indicated:

~ 5 ~

/epilogue for the

| | | | Author's Share | Publisher's Share |
|---|---|---|---|---|
| 1) | First Serial<br>To license the/Work in whole or in part, or in a condensed or abridged version, in periodicals or newspapers, in one or more installments, before publication in book form. | | 75% | 25% |
| 2) | Second Serial<br>To license the Work in whole or in part, or in a condensed or abridged version, in periodicals or newspapers, in one or more installments, after publication in book form. | | 50% | 50% |
| 3) | Reprints<br>To license the Work to one or more publishers for reproduction in full-length, condensed or abridged versions in hardcover or paperbound reprint editions, including mass-market, trade paperback or large-print editions. | | 50% | 50% |
| 4) | Permissions, Anthologies, Extracts, Abridged Versions, Collections<br>To license for publication excerpts, adaptations or abridgements of all or part of the Work. In addition, if the Publisher publishes the complete Work in a collection or anthology with one or more other works, Author shall be entitled to receive that proportion of the royalty payable under paragraph 4 (Book Royalties) which the Work bears to the total number of works contained in such collection. | | 50% | 50% |
| 5) | Book Club<br>To license the right to print, publish, and sell an edition of the Work to a book club or any organization which purchases book club rights, in full-length, condensed or abridged versions. | | 50% | 50% |

b)  Promotional and Free Copies
Publisher may publish or permit others to publish or broadcast without charge and without royalty such selections from the Work for publicity purposes as may, in its opinion, benefit the sale

- 6 -

of the Work. Publisher shall also be authorized to license publication of the Work without charge and without royalty in Braille or by any other method primarily designed for the physically handicapped.

c)  **Intra-Corporate Transactions**
Publisher shall have the right to license any of the subsidiary rights enumerated in paragraph 5 (a) to any of its subsidiaries, affiliates or divisions provided that the terms thereof are no less favorable than those which would be offered by an unrelated third party under comparable circumstances.

6.  **Publication**

a)  Within eight months of its acceptance of the final manuscript and delivery of any other materials required pursuant to paragraph 2 (b), Publisher will publish the Work at its own expense, in hardcover and/or in paperback, in a style, manner, and at a price it deems best suited to the sale of the Work. It is understood that advertising, number and destination of free copies and all details of design, manufacture, distribution, marketing and promotion shall be at the discretion of Publisher. Publisher's failure to publish within such period shall not be deemed a breach of the Agreement if the delay is caused by any circumstances beyond its reasonable control.

b)  In the event the Publisher shall fail to publish the Work within eight (8) months after Publisher's acceptance of the Work, the Author may as Author's sole remedy at any time thereafter serve a written demand upon the President and Publisher of the Adult Trade Division by registered mail, return receipt requested, requiring the Publisher to publish the Work within ninety (90) days after receipt of such written demand, and if the Publisher shall fail to comply with such demand within such ninety-day (90) period, then this Agreement shall terminate without further notice at the end of such period and all rights, title and interest in and to the Work shall revert to the Author for the Author's sole use and disposition. In the event of termination by the Author pursuant to this paragraph, such payments as shall have been made to the Author hereunder as advances shall be deemed in full discharge of all Publisher's obligations to the Author pursuant to this

- 7 -

Agreement and no other damages, claims, actions or proceedings, either legal or equitable for breach of contract, default, failure to publish or otherwise, may be claimed, instituted, or maintained by the Author against the Publisher.

7. **Author's Name**

Publisher and its licensees may use Author's name, photograph and likeness in the Work and in all revisions thereof and in connection with the Work's advertising, promotion and the exercise of all rights granted to Publisher hereunder. Publisher agrees to consult Author on such uses of Author's name, photograph and likeness.

8. **Copyright**

Publisher shall register the Work for copyright in the United States in the name of: <u>Jim Bouton</u>.
If any part of the Work has been published and registered for copyright prior to January 1, 1978, Author: (i) agrees to timely apply for the renewal of said copyright prior to the expiration of the first term thereof, (ii) authorizes Publisher to make such application in the name of Author, and (iii) if this Agreement has not been terminated previously, hereby assigns to Publisher the sole and exclusive right to print, publish and sell the Work, and exercise the other rights referred to herein, during the full term of renewal and extensions of copyright, on the same terms and conditions as for the original copyright term.

9. **Reports and Payments**

a) After publication of the Work, Publisher shall render semi-annual statements of Author's earnings under this Agreement as of each June 30 and December 31 and shall mail the statements and applicable payments during the following September and March respectively, but not later than September 30 and March 31. In reporting sales, Publisher may withhold a reasonable reserve for future returns. After Publisher has recouped the advance, Publisher shall pay Author the royalties and other payments due Author herein less any overpayment or other indebtedness of Author to Publisher. An unearned advance for the Work shall not be deemed an indebtedness for purposes hereof.

/for the first three (3) accounting periods after publication, and shall repay such reserve in the fourth accounting period. Such reserve for returns shall not exceed forty percent (40%) of the amount due.

b) Author or a certified public accountant designated by Author may inspect Publisher's books and records, insofar as they relate to the Work, once a

- 8 -

year upon written request and during normal
business hours, in order to verify the accuracy of
Publisher's statements issued in respect to the
Work. If an error is discovered as a result of any
such examination, the party in whose favor the
error was made shall promptly pay to the other the
amount of the error. Any such examination shall be
at Author's expense unless errors in accounting to
Author's disadvantage amounting to five percent
(5%) or more of the total sum paid to Author in
that accounting period shall be found; and in such
event Publisher shall pay the amount of the error
and contribute to the reasonable costs of the
examination, in an amount not to exceed the amount
of the error.

* It is understood and agreed that the Author shall receive a fifty percent (50%) discount of
the suggested retail price, which is the best price offered to a third party at this time.

10. **Author's Copies**                    /twenty (20)

Publisher shall furnish to Author, free of charge, ~~ten~~/
~~(10)~~ copies of the initial edition of the Work and,
should Author desire more copies for personal use,
Publisher shall supply such copies at one-half (1/2) the
suggested retail price.* No royalties shall be paid on
copies purchased by Author. Author will be billed for
such copies and payment shall be made within thirty days
of receipt of bill.

11. **Excess Inventory**

a)   If at any time after one year from publication of
the Work, Publisher has copies on hand which, in
its judgment, cannot be sold through usual
marketing channels, Publisher may sell such copies
at a "remainder price," that is, at a special
discount of sixty percent (60%) or more from the
retail list price. All copies sold at a remainder
price shall be accounted for separately and not
included in sales totals, and the royalty on each
copy sold shall be ten percent (10%) of the net
amount received by Publisher reduced by the
manufacturing cost. Publisher will not pay any
royalties on copies sold at or below manufacturing
cost.

b)   If the sale at a remainder price involves the
entire inventory, Publisher will notify Author in
advance of the planned sale and provide Author with
the opportunity to purchase all or part of the
inventory at the remainder price. Author must

- 9 -

notify Publisher within thirty days of the date of Publisher's notification as to whether or not Author wishes to make such purchase.

12. **Warranty and Indemnity**

a) **Warranty**

Author warrants and represents that:

1) Author is the sole author and proprietor of the Work.

2) Author has full power and authority to make and perform this Agreement and to grant the rights granted hereunder, and that Author has not previously assigned, transferred or otherwise encumbered the same.

/the epilogue

3) The Work is not in the public domain, and / has not been previously published.

4) The Work does not infringe upon any statutory or common law copyright or other literary property right.

5) The Work does not invade the right of privacy of any person, nor contain any matter libelous or otherwise in contravention of the rights of any third party; and, if the Work is not a work of fiction, all statements in the Work asserted as facts are true and accurate, based upon reasonable research.

6) The Work contains no matter which violates any federal or state statute or regulation thereunder, nor is it in any other manner unlawful.

7) The Work contains no recipe, formula or instruction injurious to the user.

b) **Indemnity**

1) Subject to the provisions of this subparagraph 12 (b), Author hereby indemnifies and agrees to hold Publisher, any seller of the Work and Publisher's licensees harmless from any claims, losses, or damages, including reasonable attorneys' fees, incurred or sustained by any of them,

- 10 -

in connection with or resulting from any
claim, action, or proceeding arising out of
or relating to a breach of any of Author's
warranties, representations or agreements
herein contained.    In defending any such
claim, action, or proceeding, Publisher may
use counsel of its own selection.  Publisher
shall promptly notify Author of any such
claim, action or proceeding. From the date
of notice of claim, Publisher and Author
shall each pay one-half of the expenses
actually incurred in defending the claim.
In addition, Publisher shall have the right
to withhold its reasonable estimate of the
total damages and expenses from sums
otherwise payable to Author pursuant to this
or any other agreement between Author and
Publisher and to apply such sums to payment
of such estimated damages and expenses. Any
settlement of a claim, action, or proceeding
in excess of Five Thousand Dollars ($5,000)
shall be subject to Author's approval, such
approval not to be unreasonably withheld or
delayed.

2)    In the event a final judgment is entered
      against Publisher, Author shall be liable
      for and shall pay to Publisher the amount of
      said judgment and shall reimburse Publisher
      for any and all expenses incurred in said
      action, including counsel fees.

3)    In the event of a settlement, Author shall
      be liable for and pay to Publisher (i) fifty
      percent (50%) of the amounts paid by
      Publisher in settlement and (ii) fifty
      percent (50%) of the amount of Publisher's
      counsel fees and other expenses, provided,
      however, that Author will pay all counsel
      fees incurred after Author withheld approval
      of a settlement offer which Publisher found
      acceptable and any amount paid in settlement
      in excess of the amount of settlement
      Publisher originally approved.

4)    In the event such claim, suit, or action is
      discontinued or dismissed without liability
      to Publisher, Author shall be liable for and
      shall pay to Publisher fifty percent (50%)
      of the amount of Publisher's counsel fees
      and other expenses.

- 11 -

c) <u>Survival of Warranties and Indemnities</u>

Any warranties, representations, agreements or indemnities contained in this paragraph shall survive the termination of or any reversion of rights under this Agreement.

13. <u>Out of Print</u> (See Rider A)

a) The Work shall be considered in print if it is on sale by Publisher in any edition or if it is subject to an option or an outstanding license under this Agreement. If the Work is not in print, Author may request in writing that Publisher keep the Work in print. Publisher will have six months in which to comply. If Publisher fails to comply, or does not wish to keep the Work in print, then at the end of such six-month period this Agreement shall terminate and all of the rights granted to Publisher shall revert to Author, upon and subject to the payment by Author to Publisher of any outstanding indebtedness. An unearned advance for the Work shall not be deemed an indebtedness.

b) In the event of termination, Author shall have the right to purchase the film or plates, if available, of the Work at one-third (1/3) of the manufacturing cost, including composition, and any remaining copies or sheets of the Work at the manufacturing cost. If Author does not elect to make this purchase within thirty days, then Publisher may dispose of such materials as it sees fit.

14. <u>Publisher's Trademarks</u>

Author acknowledges that Publisher has sole and exclusive ownership of the trademark, trade name, logo, imprints and any other identification now or hereafter used by Publisher. Nothing in this Agreement (including, but not limited to, the right of Author to purchase books and film on termination) shall permit Author to use Publisher's identification during the term of this Agreement or thereafter, without first obtaining Publisher's consent in writing.

- 12 -

15. **Additional Documents**

    a)  Each party agrees to execute such documents as may be reasonably necessary to confirm the rights of the other party in respect of the Work.

    b)  If the Work has been previously published and the rights have reverted to Author, Author shall provide Publisher with the documentation relating to the reversion of rights and certified copies of the original copyright registration certificate.

16. **Force Majeure**

Neither Author nor Publisher shall be liable because of delays in its performance caused by wars, civil riots, strikes, fires, acts of God, governmental restrictions or because of other similar circumstances beyond either party's control, provided such delay does not exceed three months. If a party's performance is delayed for a period in excess of three months, then the other party shall have the right to terminate this Agreement.

17. **Competitive Work**

If the Work hereunder is a nonfiction work, then, during the term of this Agreement, Author agrees not to publish or authorize publication of any other work covering substantially the same subject matter as the Work which would be directly competitive to the Work and likely to detract from, impair or frustrate Publisher's sales of the Work or Publisher's ability to exercise in full its rights in and to the Work.

- 13 -

18. **Miscellaneous Provisions**

a) This Agreement constitutes the complete understanding of the parties. No modification, waiver, or extension of any provision hereof shall be valid unless in writing and signed by both parties and no waiver shall be deemed a continuing one.

b) This Agreement shall bind and inure to the benefit of the heirs, executors, administrators and legal representatives of Author, and upon the successors and assigns of Publisher. However, all obligations and rights of Author, other than the right to receive payment, are personal and non-assignable.

c) This Agreement shall be deemed to have been entered into in the State of New York and shall be interpreted and construed in accordance with the laws of the State of New York applicable to agreements executed and to be performed therein with each party. Each party hereby agrees to submit to the sole and exclusive _in personam_ jurisdiction of the courts of the State of New York, New York County, for the resolution of all disputes between them or, if jurisdictional prerequisites exist at the time, to the sole and exclusive _in personam_ jurisdiction of the Federal Courts of New York, with venue to be in the Southern District of New York.

- 14 -

d) Author agrees to purchase from Publisher no fewer than 2,000 hardcover copies of the Work within the first four (4) years after publication/ No royalties will be paid to Author on such copies.
/at a fifty percent (50%) discount of retail list price.
e) Author agrees to supply to Publisher, as soon as possible after the signing of this Agreement, satisfactory documentation from Bookcrafters, Inc. that they have no further right, title, and interest in and to the Work.

Macmillan Publishing Company, a division of Macmillan, Inc.

_____
Author

███████████████████████
Social Security No.

_____
By

*USA*
Citizenship

3/89

- 15 -

RIDER A

1. It is understood and agreed that the Author retains the electronic reproduction rights (including audio cassette tapes).

2. Nothwithstanding the above, if the hardcover edition is deemed out of print which shall mean that the entire inventory of the Work has been remaindered, upon Author's written request, hardcover rights only shall immediately revert to Author, subject to the repayment by Author to Publisher of any outstanding indebtedness, and subject to Publisher's right to continue to share in any income or royalties under any existing subsidiary rights licenses for the Work.

It is understood and agreed that such hardcover rights shall be limited to sale and distribution of such hardcover rights only, and Author agrees not to license or permit to be published by any other party any editions of the Work having a trim size smaller than or a paper quality lower than Publisher's original hardcover edition.

In addition, it is understood and agreed that if Publisher sells less than 1,000 copies of the hardcover edition in a year, Author agrees to buy the existing remaining stock in Publisher's inventory, upon Author's written request, and Author shall be granted a reversion of rights as stipulated above.

In the event of a partial remainder, it is understood and agreed that the Author will be offered such remainder copies of the hardcover edition, and Author hereby agrees to buy the existing stock in the Publisher's inventory, *and Author shall be granted a reversion of rights as stipulated above.*

**THE LYONS PRESS**
246 Goose Lane   •   Guilford, CT 06437

AGREEMENT made this 15th day of April, 2005, between

Jim Bouton
P.O. Box 188
36 Millard Road
North Egremont, MA 01252

(hereinafter called "the Author") and The Lyons Press, a division of Morris Book Publishing, LLC, a Georgia limited liability company, having its place of business at 246 Goose Lane, P.O. Box 480, Guilford, CT 06437 (hereinafter called "the Publisher").

WHEREAS the Author is compiling, has written, compiled or edited a literary work at present entitled

*Foul Ball*

Consisting of approximately **120,000** words (hereinafter called "the Work") it is mutually agreed between the parties hereto as follows:

1. The Author undertakes to deliver one copy of the completed manuscript of the Work and a word-processing disk ready for composition by **April 22, 2005** (hereinafter called the "delivery date") and the Publisher shall, unless prevented by strikes, walkouts, war, or other circumstances beyond its control, within four **months** of the acceptance of the manuscript produce and publish the Work in paperback form.

(A) The Author shall deliver valid written permission for the use of any copyrighted material in the Work from the proprietors thereof (such permission to extend to all rights granted herein) and shall supply all necessary illustrations, maps, charts, and photographs, at his own expense, on or before the delivery date hereof. If the Author fails to do so, the Publisher shall have the right to secure such permissions and/or to prepare or cause to be prepared any of the said items, and charge the cost thereof to the Author's royalty account.

(B) If the Author fails to deliver the manuscript within ninety days of the delivery date, the Publisher shall not be required to publish the Work and shall have the right, exercisable in its sole discretion, to recover from the Author, and the Author hereby agrees to repay on demand, any amounts advanced to the Author hereunder, upon receipt of which in full by the Publisher this Agreement shall terminate, notwithstanding any subsequent delivery.

2. The Author hereby warrants to the Publisher that the Work is original, that he is the sole author or proprietor thereof, and has full power to enter into this Agreement, that it shall contain nothing that infringes upon any existing copyright, and that it shall contain nothing obscene, libelous, or defamatory, and that all statements contained therein purporting to be facts are true and the Author will indemnify and keep the Publisher indemnified against any loss, injury or damage **(including legal costs or expenses incurred and any compensation costs and disbursements paid by the Publisher on the advice of counsel and with the concurrence of the Author or his Counsel to compromise or settle any claim)** occasioned to the Publisher in consequence of any breach of this warranty or arising out of any claim alleging that the Work constitutes an infringement of copyright or contains obscene, libelous, or defamatory matter. **Author reserves the right to control the defense and settlement of any action brought pursuant to this warranty. However, The Lyons Press reserves the right to prosecute any lawsuit against itself or its principals at its own expense.**

3. In consideration of the payments herein mentioned, the Author hereby grants to the Publisher the sole and exclusive right to produce and publish the Work in the English language or any abridgement of the Work or any substantial part of the Work for the legal term of the copyright throughout **North America**, including renewals and extensions, and undertakes that he will not during the continuance of this Agreement without the consent of the Publisher publish or cause to be published by anyone other than the Publisher any work that shall be an expansion or abridgement or adaptation of the Work or on the same or essentially similar subject matter as the Work.

4. The Publisher shall not be responsible for any loss or damage to the Work, including illustrations and other materials, by fire or otherwise, while it is in the Publisher's custody or in the custody of third parties during the course of production.

5. The Publisher **agrees that it will consult author regarding** the paper, printing, binding, jacket, and embellishments, the manner and extent of advertising, the number and distribution of free copies for the press or otherwise, and the price and terms of sale of the first or any subsequent edition shall be in its sole discretion. Except as otherwise herein provided, the Publisher shall bear the expenses of production and advertising.

6. The published price of the Work shall be about **$16.95** per copy (paperback) but the Publisher shall have the power in its discretion to alter the published price of any edition as it may think fit and to sell part or the whole of the residue of any edition at a reduced price, or as a remainder at the best prices such remainder stock shall fetch. The Publisher shall give the Author the first refusal of purchasing the remainder stock at manufacturer's cost. This offer shall be deemed to be refused if no reply is received by the Publisher within fourteen (14) days after posting such offer **via certified mail.**

7. (a) During the legal term of unrestricted copyright the Publisher agrees to pay the Author the following royalties, based upon net sales **(gross sales less returns)** and subject to a reasonable reserve for returns of **twenty-five percent (25%)**, as follows:

   (i)      Six percent (6%) on the published price in the United States of America on the first 10,000 copies (0 to 10,000) sold of the regular paperback trade edition of the Work.

            Seven percent (7%) on the published price in the United States of America on the next 10,000 copies (10,001 to 20,000) sold of the regular paperback trade edition of the Work

            Eight percent (8%) on the published price in the United States of America on the next 10,000 copies of the regular paperback trade edition of the Work (20,001 to 30,000), and

            Nine percent (9%) on the published price in the United States of America on the next 25,000 copies of the regular paperback trade edition of the Work (30,001 to 55,000), and

            Ten percent (10%) on the published price in the United States of America on any copies of the regular paperback trade edition of the Work sold thereafter.

   (b) The Publisher agrees to pay the Author an advance of ████████ against all earnings accruing hereunder: ██████ upon the signing of this contract and ██████ upon delivery of a complete typescript (and all illustrative material) acceptable to the Publisher. No earnings hereunder shall be payable until this advance shall be recouped. In the event that the book is not deemed acceptable by the Publisher by May 1, 2005, all rights will revert to the Author and Author shall repay any and all advances.

   (c) No royalties shall be paid on copies represented free of charge to the Author or to others or to the press or destroyed by fire, water, in transit, or otherwise, or sold at less than cost.

8. In order to keep the Work up to date the Author shall, if it be necessary, on terms to be negotiated in good faith, edit and revise all editions of the Work and shall supply new matter that may be needful to that end.

9. Accounting of all the Author's earnings hereunder, accompanied by payment of any monies due, shall be rendered no later than May 15 and November 15 of each year, with reference to the periods ending the preceding December 31 and June 30, respectively. Statements shall include the following information:
(a) The net number of copies (gross sales less returns) sold at each royalty rate during the applicable period;

10. The Author shall receive on publication **twenty (20)** copies of the Work free of charge and shall have the right to purchase copies at cost, to be determined by Publisher at time of printing, said cost not to exceed **$2.50.**

11. The copyright to the Work shall be taken out by the Publisher at its own expense in the United States of America in the name of **Jim Bouton**. The Publisher may at its election secure copyright on the Work in such countries as may be covered by this Agreement.

12. In the event for any reason whatsoever the book is not published by August 1, 2005, all rights shall revert to the Author and Author shall repay all advances.

13.(a) If the Work shall be out of print and off sale in all editions, including reprints, whether over the Publisher's imprint or another imprint, and if there be no contract for any impeding edition, and if upon notification from the Author, the Publisher shall not within six (6) months of such notice notify the Author of its intention to publish or cause to be published a new edition or impression of at least five hundred (500) copies within six months, then this Agreement shall be terminated by the Publisher or the Author, in which case all rights granted to the Publisher shall revert to the Author, subject, however, to any grant of rights made to third parties prior to the termination date or the right of the Author or Publisher to participate in the proceeds therefrom as hereinabove set forth.

(b) Author owns the films and/or diskette from which the Work will be printed and agrees to provide said diskette free-of-charge to the Publisher, and upon the termination of this Agreement for any cause, the Publisher shall return to the Author the printing film, if available, and any or all remaining sheets or copies, at the Publisher's cost of manufacture.

(c) A bankruptcy or sale of The Lyons Press automatically terminates this agreement, though Publisher reserves the right to continue to sell any existing stock.

14. Any notice to be given hereunder shall be sent by registered or certified mail, return receipt requested, addressed to the parties at their respective addresses given herein. Either party may designate a different address by notice so given. Notices to the Author should also be sent to Kaufmann, Feiner, Yamin, Gildon & Robbins LLP, 777 Third Avenue, New York, New York, 10017, Attn. Ronald E. Feiner, Esq.

15. The waiver of a breach of any terms hereof or any default hereunder shall not be deemed a waiver of any subsequent breach or default, whether of the same or similar nature, and shall not in any way affect the other terms hereof. No waiver or modification shall be valid or binding unless in writing and signed by the parties.

16. This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, and assigns of the Author and the successors and assigns of the Publisher. The Author shall not make any assignment of this Agreement, in whole or in part, without the prior approval of the Publisher.

17. This Agreement and all matters and issues collateral thereto shall be governed by the laws of the State of Connecticut.

18. This Agreement shall not be binding upon either Publisher or Author unless duly executed and delivered by both parties.

19. This Agreement contains the whole understanding of the parties, supercedes all previous oral or written representations or Agreements, and may not be changed, modified or discharged orally. Any modification, change, or discharge of this Agreement must be in writing and signed by the Publisher and Author.

20. All monies due to the Author under the terms of this Agreement shall be paid to:

> Jim Bouton
> P.O. Box 188
> 36 Millard Road
> North Egremont, MA 01252

whose receipt shall be a full and sufficient discharge.

21. "The Work," as used throughout the above agreement, shall include printed books only.

22. The Author hereby reserves all rights not expressly granted to the Publisher in this Agreement. Without limiting the generality of the foregoing, the Author shall have the right to publish, or cuase to be published, the work in any and all territories other than North America, in any language and in any edition, media, and format, and shall have the sole right to exploit any and all subsidiary rights in the Work.

FOR THE AUTHOR:                          FOR THE LYONS PRESS:

Signed by: _____     Signed by: _____

Witness: _____       Witness: _____

Signed by: _____

Witness: _____

Author-Proprietor to supply the following:

~~SS#~~ _Jim Bouton Enterprises_          or Tax Identification # ███████████

SS# _____            or Tax Identification # _____

Agreement dated this 16th day of September, 2011 between:

RosettaBooks LLC, a Delaware limited liability company with offices at 200 West 57th Street, Suite 904, New York, NY 10019 ("Publisher") and Jim Bouton ("Rightsholder") regarding *Ball Four* (ISBN# 0-9709117-0-x, last printed by Bulldog Publishing LLC) and *Foul Ball* (ISBN# 1-59228-867-7, last printed by Lyons Press, a division of Globe Pequot) (the "Works").

1.    The Works have previously been published in a print format.

2.    The Rightsholder grants the Publisher the right to publish, transmit, distribute, sell and produce (collectively "Distribute") the Works in "e-book" form or format and through any platform of distribution now known.  The Rightsholder reserves the rights to "enhanced e-books," apps and the like. The Publisher will design and digitize the Works at Publisher's expense from two print copies supplied by the Rightsholder and if not previously published from a digital version of the texts. The Publisher will digitize the Works at Publisher's expense.

3.    The grant of rights in this agreement shall be exclusive for the full term hereof.

4.    Subject to the last two sentences in this paragraph, the term of this agreement shall be five years from the date on which Publisher first makes the Works generally available to the public for downloading and/or reading on a digital display screen ("Effective Date"). However, if the Works are not so published within six months from the date of execution of this agreement, all rights to the Works shall revert to the Rightsholder and this agreement will be null and void.  After five years, this agreement shall automatically renew for one year additional periods unless terminated in writing by either the Publisher or the Rightsholder. Notwithstanding the foregoing, Rightsholder will be entitled to terminate this agreement within two years of the Effective Date if, as of the end of such two year period, combined sales of e-books of Ball Four and Foul Ball do not exceed $4,000.

5.    Without limitation, the Publisher shall have the following rights:

A.    To Distribute the Works in the English language worldwide.

B.    To use the name, approved likeness, biography and autograph of the Rightsholder to advertise, promote, market and publicize the exploitation of the Works and the activities of the Publisher.

C.    To advertise, promote, market and publicize the Works in any and all media including, without limitation, in the print media.

D.    To Distribute the Works as a whole; provided, however, that Publisher will not change the text of the Works without the consent of the Rightsholder.

E.    To Distribute the Works by any and all means, including, without limitation, by subscriptions or direct sales and into any and all markets including, without limitation, the educational market.

F.     To Distribute the Works on any commercial basis it elects, including, without limitation, by including advertising material in connection therewith; provided, however, in no event will the Rightsholder (and/or the author if other than the Rightsholder) be portrayed as endorsing any product or service other than the Works.  Publisher shall not authorize any advertising with or within the Works without the written approval of Rightsholder.

G.     To Distribute portions of the Works (not to exceed 2,500 words in connection with any use) on a free or no-charge basis in order to promote the sale or exploitation of the Works.

H.     To assist the marketing of the Works, to enhance and augment the Works with surrounding text, links to other websites and such other content and by such other means as Publisher determines will enhance the experience of the consumer.  Such enhancements and augmentations will be subject to the approval of the Rightsholder, such approval not to unreasonably withheld.

I.     The Publisher will prepare an electronic jacket at its expense and submit it for approval by the Rightsholder.

6.     Promptly following execution of this agreement, the Rightsholder will provide (if they wish) to the Publisher materials such as testimonials, awards and critical commentary relating to the Rightsholder and/or the Works for use in enhancing the electronic edition of the Works and for advertising, promotion and publicity of same.

7.     A.     The Rightsholder warrants and represents that it is the sole owner of the rights conveyed in this agreement, that such rights are not in the public domain, that such rights are free and clear of any encumbrances that would affect the exercise by the Publisher of the rights granted to it hereunder, that neither the titles nor the content contained therein infringes or will infringe on the legal rights of any third party, that the Rightsholder has the full power and authority to enter into and fully perform the terms of this agreement and that the exercise by Publisher of the rights herein granted will not conflict with any rights of any third party.

B.     The Publisher warrants that it is free to enter into and fully perform the terms of this agreement.

8.     The Publisher will take commercially reasonable steps to assure that the security of the electronic editions of the Works referred to herein are consistent with industry standards.  Publisher's editions of the Works shall be protected with DRM software.

9.     The Publisher will include a copyright notice in the electronic editions for the content of the Works in the same manner as the copyright notices contained on the title page of the Works unless the Rightsholder gives Publisher timely notice of a different copyright notice.  Publisher shall own all right, title and interest in and to any content that it creates or causes to be created that is used in connection with the electronic edition and the digitizing and the augmentation of the Works, although the Rightsholder is free to use any and all such material in connection with the promotion, licensing and sale of the Works in forms other than e-book form and on Rightsholders website in connection with the promotion of the Works in any form, including e-book form.

- 2 -

10.     All rights not licensed to the Publisher under this agreement are reserved by the Rightsholder including, without limitation, any printed editions of the Work and any audio, television, motion picture and dramatic rights relating to the Works; provided, however, that the Publisher may advertise, promote, market and publicize the rights granted to it hereunder by any of the foregoing means.

11.     As the sole and entire compensation payable to the Rightsholder for the rights granted to the Publisher hereunder and the representations, warranties and agreements of the Rightsholder herein contained, the Publisher shall pay to the Rightsholder the following:

For each title of the Works, a royalty of fifty per cent (50%) based upon Publisher's Receipts for the first 2,500 units sold and sixty per cent (60%) based upon Publisher's Receipts thereafter. "Receipts" means the amount actually received by the Publisher from the sale of the electronic editions of the Works, net of the following items: discounts, fees or commissions to third parties which sell the Work through websites or other distribution channels. The Publisher agrees not to use a standard digital list price of less than $8.99. The Publisher will not accept terms of sale from Web sites of less than 50% of the digital list price. The Publisher may temporarily use lower digital list prices as part of promotions. For example, a site wide Kindle promotion for two weeks might have a digital list price of $3.99 or $2.99. If the book is selected for a Kindle Daily Deal (a highly promoted 24 hour selection) the digital list price would have to be $1.99 and the terms of sale for that one day 35% of digital list. The two books might be promoted on Nook as part of a bundle in which case for the digital list price for the bundle is likely to be $8.99 and the terms of sale 65% of digital list price.

12.     Not later than sixty (60) days following the end of each six-month period during the term hereof ending on June 30th and December 31st, the Publisher will forward to the Rightsholder a statement showing the computation of Receipts and simultaneously with the rendition of each such statement the Publisher will pay to the Rightsholder and Agent (see paragraph 14) the amounts shown to be due thereon, in split payments (90% to Rightsholder and 10% to Agent), to the following:

Jim Bouton Enterprises, LLC
P.O. Box 909
15 Harrison Caulkin Road
Alford, MA 01230

        and

Michael J. Boni
Boni & Zack LLC
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004

13.     Upon reasonable notice to the Publisher and not more frequently than once during each year of the Term and the one-year period following the Term, the Rightsholder shall have the right to examine the books and records maintained by the Publisher that relate to sales of the

-  3  -

Works, in order to verify accountings, at the place where such books and records customarily are kept. To the extent the audit reveals any discrepancy from the payment terms under this agreement, the Publisher will pay such discrepancy. If there is a discrepancy of more than five per cent against the Rightsholder, the Publisher shall pay the cost of the audit, in addition to the amount of the discrepancy.

14.    The Rightsholder appoints Michael J. Boni, Boni & Zack LLC, as his agent ("Agent") with respect to this agreement. Agent is authorized to act on behalf of Rightsholder as to any matters pertaining to this agreement. For his services, Agent shall receive payment of 10% of the payment the Publisher owes the Rightsholder under paragraphs 11 and 12. The payments made in this manner constitute all of Rightsholders obligations to Agent for Agent's services under this agreement.

15.    All matters relating to the distribution, presentation, format, sale, marketing, exploitation, license and pricing of the Works hereunder shall be solely and exclusively within the discretion of the Publisher, subject, however, to the Rightsholder's right of consultation prior to implementation.

16.    Neither the Rightsholder nor the Publisher shall have the right to assign this agreement, except that the Publisher may assign this agreement and/or any of its rights hereunder to a related or affiliated entity or to an entity that acquires all or substantially all of its assets. Notwithstanding the foregoing, if and as of the date the Publisher files for bankruptcy protection, all rights granted herein by Rightsholder to Publisher shall automatically revert to Rightsholder.

17.    This agreement contains the sole and entire understanding between the parties with respect to its subject matter, may not be altered, modified or amended except in writing signed by the party to be charged, shall be governed by and construed in accordance with the laws of the State of New York and may be executed in counterparts. The state and federal courts located in New York County shall have exclusive jurisdiction of any dispute between the parties relating in any way to this agreement.

IN WITNESS WHEREOF the parties have executed this agreement as of the date and year first above set forth.

ROSETTABOOKS LLC

By _____
      Arthur Klebanoff, CEO

By: _____          Tax ID No. # _____
      Jim Bouton

By: _____          Federal ID # _____
      Michael J. Boni

– 4 –

Works, in order to verify accountings, at the place where such books and records customarily are kept. To the extent the audit reveals any discrepancy from the payment terms under this agreement, the Publisher will pay such discrepancy. If there is a discrepancy of more than five per cent against the Rightsholder, the Publisher shall pay the cost of the audit, in addition to the amount of the discrepancy.

14.     The Rightsholder appoints Michael J. Boni, Boni & Zack LLC, as his agent ("Agent") with respect to this agreement. Agent is authorized to act on behalf of Rightsholder as to any matters pertaining to this agreement. For his services, Agent shall receive payment of 10% of the payment the Publisher owes the Rightsholder under paragraphs 11 and 12. The payments made in this manner constitute all of Rightsholders obligations to Agent for Agent's services under this agreement.

15.     All matters relating to the distribution, presentation, format, sale, marketing, exploitation, license and pricing of the Works hereunder shall be solely and exclusively within the discretion of the Publisher, subject, however, to the Rightsholder's right of consultation prior to implementation.

16.     Neither the Rightsholder nor the Publisher shall have the right to assign this agreement, except that the Publisher may assign this agreement and/or any of its rights hereunder to a related or affiliated entity or to an entity that acquires all or substantially all of its assets. Notwithstanding the foregoing, if and as of the date the Publisher files for bankruptcy protection, all rights granted herein by Rightsholder to Publisher shall automatically revert to Rightsholder.

17.     This agreement contains the sole and entire understanding between the parties with respect to its subject matter, may not be altered, modified or amended except in writing signed by the party to be charged, shall be governed by and construed in accordance with the laws of the State of New York and may be executed in counterparts. The state and federal courts located in New York County shall have exclusive jurisdiction of any dispute between the parties relating in any way to this agreement.

IN WITNESS WHEREOF the parties have executed this agreement as of the date and year first above set forth.

ROSETTABOOKS LLC

By:     _____
        Arthur Klebanoff, CEO

By _____
Jim Bouton

By: _____
Michael J. Boni

Tax ID No. # ████████

Federal ID # ████████

–  4  –