# EXHIBIT 8

# AGREEMENT FOR TRANSLATION AND PUBLICATION INTO CHINESE PRINTED IN SIMPLIFIED CHARACTERS

**DATE**:     5th September 2011

**WORK**:     KOREA: THE UNTOLD STORY OF THE WAR
              With a new introduction by the author

**AUTHOR**:   JO SEPH C. GOULDEN

**COPYRIGHT DATE**: 1982 BY JOSEPH C. GOULDEN
              Introduction copyright date: 2011 by Joseph C. Goulden

**PROPRIETOR**:   JOSEPH C. GOULDEN
              **c/o**   BRANDT & HOCHMAN LITERARY AGENTS, INC.
              Room 2310, 1501 BROADWAY NEW YORK, NY 10036 U.S.A.

**CHINESE LANGUAGE PUBLISHER**: Beijing Xiron Books Co., Ltd.,
              **Address**: No.23 Wai Guan Dong Jie, Chaoyang District, 100011
              Beijing, P.R.China

**DURATION**:   **FIVE (5 ) Years** From the date of this Agreement

**TERRITORY**: Mainland China, Excluding Taiwan, Hong Kong S.A.R. & Macau S.A.R.

**LANGUAGE**: Chinese, Printed in Simplified Characters

**RIGHTS GRANTED**:  Publish in Book Format only as defined in THE ADDENDUM

**EDITIONS**:   Volume Rights

**ROYALTY ADVANCE**: US$ ▮▮▮▮ (▮▮▮▮▮▮ U.S. dollars)
The non-refundable Royalty advance is due upon signature by the Publisher and must be received within thirty (30) days from the date of this Agreement.

**ROYALTY RATE**:
              8% (eight percent) for all copies sold from 1 to 20,000.
              9% (nine percent) for all copies sold from 20,001 to 50,000.
              10% (ten percent) for all copies sold above 50,000.

The royalty rate is calculated on the Published List price as defined in the Addendum

## ACCOUNTING PERIODS:

The details of the accounting periods are defined in the Addendum. Within thirty (30 days) of publication the Publisher must notify the agent of the Published List price. Royalty accounting periods end on June 30 and December 31.

## PUBLICATION DATE:

The publisher agrees to publish its edition of the Work within **eighteen (18) months** from the date of this agreement.

## COMPLIMENTARY COPIES:

At the Publisher's expense, within thirty (30) days the Publisher will send eight (8) complimentary copies directly to the Proprietor at the address above, and four (4) copies to the co-agent.

## FIRST PRINTING:

The first printing will consist of not less than 70,000 copies.

## SPECIAL ARRANGEMENTS:

a) In no event shall the Publisher's first publication of the Work be earlier than that of the original American Publisher.

b) The publisher shall have the right to produce and publish the work in association with a licensed state publishing house, thus rendering legal publication within mainland china.

c) Advertisements may not be inserted or printed in any edition of the Work without the Proprietors express written approval.

d)  Editorial changes required by the Chinese government shall be submitted to the Author in English prior to publication at the earliest moment such is available for author approval. If the author dis-approves of the government's edits, the Author must repay the Royalty advance, less taxes and commissions, and all rights granted under this agreement shall forthwith revert to the Author.

## JURISDICTION:

This agreement shall be construed in accordance with the laws of the State of New York.

## IN WITNESS WHEREOF:

The parties hereunto set their hands and signatures, as well as the legal red seals for the Chinese publishers, on the day, month and year first written above

For and on behalf of the publisher                    For and on behalf of the proprietor

**CO-AGENT:** BIG APPLE AGENCY, INC.

LABUAN, MALAYSIA.

(Company LL 03055, Incorporated in Malaysia Under the Offshore Companies Act 1990)

**Registered Address:**

LOFSA

UNIT 3(I), 3RD FLOOR MAIN OFFICE TOWER,

FINANCIAL PARK LABUAN,

JALAN MERDEKA 87000, W.P. LABUAN,

MALAYSIA.

**Mailing Address:**

Attn. Ms. Lily Chen

3/F, NO.838, ZHONGSHAN BEI ROAD, ZHA BEI DISTRICT

SHANGHAI 200070, PR CHINA

(Hereafter referred as the Agent)

The Agency accepts payment in United States dollars. Below the banking instructions:

| | |
|---|---|
| **Bank Name:** | **The Hong Kong and Shanghai Banking Corporation Limited Taiwan OBU Branch (HSBC)** |
| **Account Name:** | **Big Apple Agency, Inc.** |
| **Account No:** | **101-014298-031** |
| **Bank Address:** | **333 Keelung Road, Sec. 1, Taipei 110, Taiwan** |
| **Swift Code:** | **HSBCTWTPOBU** |
| **TELEX No.:** | **10934 HSBCTPI** |

As witness to the above

For and on behalf of BIG APPLE

AGENCY, INC.,

LABUAN, MALAYSIA

*Dr. Luc Kwanten*

*Executive Director*

*Big Apple Agency, Inc.*

*Labuan, Malaysia*

*Corporate Registration: LL 03055*

Dr. Luc Kwanten

Executive Director

# APPENDIX
# TO
# CHINESE LANGUAGE TRANSLATION
# PUBLISHING AGREEMENT

The Publisher shall imprint on its Edition the following :

出版者應於其中文版上列印以下字樣

## TITLE (書名)

The title, in the original language, shall appear beneath the translated
title on the title page and the copyright page of every copy printed.
於中文版之書名頁及版權頁上，將原文書名列於中文書名下方

## AUTHOR CREDIT   ( 作者 )

The name of the author shall appear with due prominence on the title page, the
binding and the cover/jacket of every copy printed and on all advertisements and
publicity for the Work issued or authorized by the Publisher or its licensees.
作者名字應被列於中文版之書名頁，版權頁以及與中文版相關之所有宣傳文件
中。

## COPYRIGHT NOTICE   ( 版權聲明 )

Each copy of the Publisher's Edition will contain a notice in English and
in the contracted language states the following :
出版者應於其中文版版權頁上註明以下之聲明 :

**KOREA: THE UNTOLD STORY OF THE WAR by JOSEPH C. GOULDEN**
**Copyright: © 1982 BY JOSEPH C. GOULDEN**
**Introduction Copyright © 2011 by Joseph C. Goulden**
**This edition arranged with BRANDT & HOCHMAN LITERARY AGENTS,**
**INC.**
**through BIG APPLE AGENCY, INC., LABUAN, MALAYSIA.**
**Simplified Chinese edition copyright:**
**20XX Beijing Xiron Books Co., Ltd.,**
**All rights reserved.**

LRD/BK/SW/16011–CN0669/CN0669/11012

## ADDENDUM TO THE AGREEMENT FOR
## TRANSLATION AND PUBLICATION IN SIMPLIFIED
## CHINESE CHARACTERS

**1.   PUBLICATION RIGHTS GRANTED**

a)     In consideration of the payments mentioned in the Agreement and subject to the provisions of this Agreement and those of the Addendum hereinafter contained, the Proprietor hereby grants the Publisher an exclusive license for the term of this Agreement, subject to earlier termination as set out below, to print, reprint and publish in the contracted language throughout the contracted territory   to and for resale to the book trade and by no other means and in no other markets; print being defined as the placement of ink on paper.

b)     The publisher shall have the right for the purposes of promoting the Publisher's edition to use or authorize to use short extracts, not exceeding 2,000 Chinese characters, and illustrations from the Publisher's edition, in such manner and in such media as the Publisher may deem advisable, subject to the proviso in the case of any illustrations so used that the necessary rights therein are vested with the Publisher and to the permission and payment by the Publishers to third parties with whom the rights are thus vested.

c)     The license granted to the Publisher in clause 1.a does not cover any illustration included in the work, and the Publisher must make its own arrangements with the owners of such illustrations for the right to include them in their edition.

d)     The license and the rights granted herewith are personal to the Publisher and may not be assigned without prior written consent of the Proprietor.

e)     The license and the rights granted herewith are personal to the Publisher and the edition cannot be published under an imprint not owned by the Publisher without prior written consent of the Proprietor

f)     The license and the rights granted herewith cannot be used as collateral to or transferred in lieu of payment to any third parties.

**2.   RESERVED RIGHTS**

It is understood and agreed that all rights not specifically granted by the Agreement and its Amendment, either now in existence or hereafter coming into existence are reserved and remain the property of the Proprietor. By means of example, but not limited thereto, are electronic, digital and web-based rights including Internet downloads.

**3.   CONTRACT EXECUTION**

a)     If the amount due as a royalty advance as specified in the agreement is not paid within thirty (30) days from the date mentioned in the opening clause of the Agreement, the Publisher shall has no license and no rights in respect to the work.

b)     If the situation referred to in clause 3.a. does occur, neither the Proprietor nor his duly appointed agent have any obligation to further notify the Publisher and are free to present the work to other interested publishers.

c)     The Publisher remains liable for the entire amount of the advance after the Publisher have signed the agreement or if payment is refused by the banking authorities.

**4.  PAYMENT INSTRUCTIONS**

a)  All sums due under this agreement are to be paid to the agent in accordance with the agent's lawful instructions, and receipt of such payment by the agent shall be a good and valid discharge of the Publisher's financial obligations under this Agreement and its Addendum, unless otherwise notified in writing the agent who will transmit a copy of the notification to the proprietor

b)  If the Publisher fails to make the payment as required by the Agreement and the provisions of article 3.a of the present addendum, article 3.b. of the same amendment will come into effect immediately and without further notification.

c)  All monies due under this Agreement and its Amendment are to be paid in dollars of the United States of America without any deduction in respect to bank charges or otherwise.

d)  The agent will issue an invoice for the gross amount due to the Proprietor.

e)  Upon its discretion, but without exposing the Proprietor to foreign exchange risks, the agent may at times accept payment in a currency other than United States of America dollars.

f)  No debit balance arising the Publisher's favor under the terms of any other agreements with the Proprietor for other works published by the Publisher under the terms of an Agreement and Addendum shall be offset by the Publisher against any credit balance arising in favor of the Proprietor for other agreements.

**5.  AUDIT RIGHTS**

a)  The Publisher shall keep accurate accounts and records, together with all supporting vouchers, invoices or the like, in respect to its printing, binding and sales of the Publisher's edition.

b)  The publisher shall keep the same records as specified in 5.a. of the present Addendum and on all matters relevant to the calculations of royalties under this Agreement and Addendum and shall, if so requested, make such records available to the Proprietor and its authorized Agent.

c)  Upon the written request of the Proprietor or its authorized Agent, the publisher will provide the documentation described in 5.a and 5.b within fourteen (14) days of the date of the notification.

d)  If the supporting documentation is not provided within thirty (30) days from the date determined in 5.c. the contract is automatically cancelled without any prejudice to the legal and financial rights of the Proprietor.

e)  Upon persistent refusal to provide the documentation as described in 5.a and 5.b, the Proprietor reserves the right to legal recourse as provided for by the laws of the legal residence of the Publisher.

f)  The Publishers agrees to send statements showing the number of copies printed and the date of completion of each reprinting, number of copies sold, number of free copies distributed, number of copies remaindered, cumulative total sales and amounts realized from any licensing income or any publication under this agreement.

**6.  TRANSLATION**

The Publisher undertakes and agrees:

a)  That the Publisher's Edition will contain a true and accurate translation of the Work and that such a translation will be made at the Publisher's own expense, and that no text or authorized illustrations from the Work will be altered or omitted from the Publisher's Edition, nor any material added or included, without the prior consent in writing of the Proprietor.

b) That where the source of any material reproduced in the Publisher's Edition of the Work has been credited in the work, it will similarly be credited in the Publisher's edition.

c) The Publisher may edit materials to the extent mandatory to achieve a competent and idiomatic translation. Such editions and revisions shall not materially change the meaning or otherwise materially alter the text.

d) Unless otherwise agreed upon, the Publisher's edition will correspond to the format known in the U.S. and U.K. book market as "Trade Paperback," with the provision that the preparation, publication, distribution, price and promotion are entirely at the Publisher's discretion.

e) The Proprietor through its agent reserves the right to approve the quality of the translation PRIOR to publication, and said review shall be completed within sixty (60) days from the receipt of the translation in either typed or electronic format.

f) The Proprietor reserves the right to recall all copies of the Publisher's edition if AFTER publication it is discovered that the Publisher's edition materially alters the text and materially alters the meaning of the work, and, under these circumstances, the Proprietor reserves the right to legal and compensatory damages.

g) The Proprietor shall have the right to approve any title which is different than a literal translation of the original title and the right to approve cover art, such approvals not to be unreasonably withheld. The translated title and a sample of the cover art shall be sent to the Proprietor at the earliest possible moment in advance of publication.

h) Advertisements may not be inserted or printed in any edition of the Work without the Proprietor's express written approval.

i) In the event the Proprietor should at any time dispose of motion picture or other performance rights in the said Work, then the purchaser of said motion picture or other performance rights shall have the right to publish or cause to be published in the language of the agreement excerpts, synopses, novelizations, serializations, scenarios, and/or summaries up to a total of 10,000 (ten thousand) words in length of the Work and/or of any photoplay based on the Work for the purpose of advertising and exploitation of said motion picture, but such novelizations and/or serializations shall not be made to appear as if written by the Author.

## 7. ILLUSTRATIONS

a) The illustrations contained in the Work are not an integral part of the present Agreement and Amendment and are subject to separate negotiations, payment of fees to the Proprietor and or third parties.

b) If the Proprietor or third parties provide the material for the reproduction of the illustrations contained in the Work, the Publisher will pay for the material, shipping and handling costs, said payment to be made PRIOR to the delivery of the materials.

c) The Publisher is responsible for the production, at its own expense, of the covers for the Publisher's Edition; it is understood that said covers would be in good taste and not materially alter or influence the content of the Work.

d) If the Publisher wishes to use the original covers and/or the illustrations on the flaps of the Work, they are to be negotiated and paid for separately and may be subject to restrictions imposed by the copyright owners of such artwork.

e) The Proprietor's agent will be compensated by the Publisher for any negotiations related to artwork and illustrations on behalf of the Publisher as said material is not included in the Agreement.

## 8. PRICE AND PRINTINGS

a) Upon publications of the Publisher's Edition, the Publisher will notify the agent of the price at which the Publisher's edition will be sold in the territory of the Agreement, the Published Price.

b) The Publisher will indicate the number of printings on the copyright page of the Publisher's Edition.

c) Prior to a promotional sale at a price less than the Published Price, the Publisher will inform the agent of said promotion, the promotional price and the number of copies to be offered during the promotion as well as the duration of the promotion.

d) Prior to export to other territories in which the Publisher's Edition can legally be sold, the Publisher will inform the agent of such territories, the export price and the number of copies exported.

e) The Published Price serves as the base for the calculation of royalties.

f) The Publisher will provide the agent with certified copies—red seals—from the printing plant indicating the date and number of copies printed for the first printing and any subsequent printings

## 9.   ROYALTIES

a) The royalty statements are due as of the 30th day of June and the 30th day of December after the date of first publication and on this schedule for the duration of the Agreement.

b) It is the responsibility of the Publisher to provide the royalty statements to the Agent on the dates stated in this Amendment and this without any reminder from the Agent; failure to provide the royalty statement can result in the summary cancellation of the contract.

c) Payment for any royalties owed must be made by July 30 and January 30; in the latter case and depending on the date of the Chinese New Year, prior to the start of the Chinese New Year holidays.

d) If no royalty statements are received within sixty (60) days from the due date, the Agent will automatically issue an invoice for five thousand (5,000) copies of the Publisher's edition, and for which payment will be due immediately.

e) A maximum of five percent (5%) can be given away as free and complimentary copies as well as a maximum of five percent (5%) as damaged copies. If the number of damaged copies exceed this amount, the Publisher forthwith will provide the Proprietor with the supporting documents.

## 10.   TERMINATION

Without prejudice to any claims that the Proprietor may have against the Publisher for damages and/or otherwise, the Proprietor may forthwith with summary terminate this agreement in any one or more of the following circumstances:

a) If the Publisher shall fail to make any payments on its due date as required by this agreement or within seven calendar days thereof.

b) If the Publisher's cheque has not been honored by the banking authority and the Publisher fails to provide payment in cash to the Agent within seven calendar days.

c) If the Publisher (being a company) shall go into liquidation (other than a bona fide liquidation for the purpose of restructuring the terms of which have been provided to the Proprietor prior to such a liquidation) so shall suffer a Receiver to be appointed in respect to any part of its undertaking or ANY partner thereof shall become bankrupt.

d) If the Publisher moves its business location without a forwarding address and a forwarding telephone number in which case the Proprietor reserves the right of legal action against the Publisher and ANY of its partners.

e) If the Publisher shall commit any other breach of this Agreement which, in the case of a breach capable of remedy, it shall fail to remedy within thirty (30) days of receiving written notice by the Proprietor or its agent to do so.

f)   If the Publisher shall allow the Publisher's edition to remain out of print or off the market for more than six months.

g)   If the Publisher sells any copies of the Publisher's edition by way of remainder prior to the third year of the first date of publication.

h)   If no reprint of the translated work takes places within three (3) years of the first date of publication.

i)   If no royalty statements are received, or if there are no royalties due other than the paid advance within three (3) years from the first date of publication.

On termination of this Agreement, howsoever arising:

j)   The license and all rights granted to the Publisher shall forthwith cease subject to the provision that the continued sale of copies in stock will be allowed for a period of three (3) months from the date of termination; any copies found to be under the Publisher's control after that date will be deemed pirated copies.

k)   The Publisher agrees that the Chinese translation copyright is an underlying copyright of the original work and that therefore, upon termination of this Agreement, the Publisher has no right to any publication, reproduction and other usage whether for free or for pay and will not use the translation or excerpts thereof in its own works or in works authored by third parties.

l)   If, on account of a translation contract, the Chinese translation copyright is vested with the translator, the translator is bound by article 10.j and it is the responsibility of the Publisher to inform the translator thereof.

m)   All moneys which the Publisher may be owing to the Proprietor under this agreement shall be due and payable immediately, including all royalties due on the copies in stock.

n)   The Publisher shall at the option of the Proprietor destroy or hand over to the proprietor all film, printing plates, disks and other materials produced for the Publisher's Edition.

## 11.   OUT OF PRINT AND REMAINDER

a)   On the Publisher's Edition going out of print or off the market, the Publisher will notify the Proprietor in writing.

b)   The work will be considered out of print in the language of the Agreement if fewer than twenty-five (25) copies of the Publisher's edition in good condition remain available to the general public.

c)   The Work will be considered out of print if for two consecutive royalty statements less than fifty (50) copies have been sold.

d)   The Work will be considered out of print if within three years from the date of publication no reprint of one thousand (1,000) copies or more has taken place.

e)   No copies of the Publisher's Edition shall be sold by way of remainder within three (3) years from the first date of publication. For the purpose of the agreement the term "remainder" shall be deemed as a sale at one-fourth or less of the Published Price first notified.

## 12.   RENEWALS

Upon the expiration of this agreement, it may be possible to renew this Agreement subject to the following conditions:

a)   It is the responsibility of the Publisher to be aware of the expiration date of the Agreement and to take the appropriate action within three (3) months of the expiration date; neither the Proprietor nor the Agent has any responsibility in reminding the Publisher.

b)   The Publisher agrees and acknowledges that Agreement renewal is not automatic.

c)   All royalty statements must have been received and paid on time,

d) A new advance or guarantee against royalties already paid must be negotiated as well as a new agreement signed.

**13.   COPYRIGHT NOTICE**

a)   Promptly upon the completion of the translation, the Publisher shall secure whatever copyright protection is available in the territory to the Work and the Translation, including the title if permitted under the copyright laws of the territory.

b)   If, under the terms of the copyright, the translation copyright becomes vested with the Publisher or the Translator, the commercial or any other exploitation of these rights is expressly prohibited and cannot contravene the terms and the duration of this Agreement; not to any rights vested in the underlying copyright of the original language material.

c)   The Publisher will display on the copyright page of the Publisher's edition, the copyright of the original edition in the original edition, and it is the Publisher's responsibility that this copyright statement is correct.

**14.   AGENCY CLAUSE**

The Proprietor hereby irrevocably appoints Big Apple Agency as a legal entity and individually Ms. Lily Chen and Dr. Luc Kwanten, as it sole and exclusive agent with respect to the rights in the said Work granted herein, and the Proprietor authorizes and directs the Publisher to make payment to Big Apple Agency, Lily Chen or Dr Luc Kwanten who are a duly constituted agent for the Proprietor. In consideration for services rendered they are entitled to a commission 10% and Chinese Withholding tax before transferring the remaining monies to the Proprietor. The provisions of this paragraph shall survive the expiration of this Agreement.

**15.   COPYRIGHT INFRINGEMENT**

a)   In the event the copyright of the translation shall be infringed within the territory, the Publisher, at his own expense shall take such steps as may be necessary to restrain such infringement and in the event that the Publisher shall collect damages therefore, the Publisher shall pay to the Proprietor one-half of all the sums so collected after deduction of legal expenses and court fees.

b)   In the event of an infringement, the Proprietor, at the request of the Publisher, may provide the Publisher with the legal power of attorney and other documentation required under the laws of the territory to enable the Publisher to begin legal proceedings.

**16.   WARRANTY**

The Proprietor hereby warrants that it has the power to enter into this Agreement and to grant the license and rights included in this Agreement and Amendment, and that no material which the Publisher is authorized to translate and reproduce in the Publisher's Edition of the Work infringes any existing copyright. The Proprietor undertakes to indemnify the Publisher against any loss, injury or damage sustained by the Publisher by reason of breach by the Proprietor of this clause.

**17.   SIGNATURES AND JURISDICTION**

a)   The language of this Agreement and Amendment is English as written and spoken in the United States of America.

b)   The interpretation of this contract is governed by the laws and regulations of the State of New York.

c)   It is understood that signatures will be in accordance with the laws of the country of the proprietor and in accordance with the laws of the territory; the former being the name and the signature of the duly authorized person, the latter the signature of the authorized person and the red seal [big] of the Publisher.

LRD/BK/SW/16011–CN0669/CN0669/11012

**18.    ENTIRE AGREEMENT**

This agreement consists of two indivisible parts; the Agreement listed the specific conditions and the Amendment listing the general condition. This constitutes the entire understanding between the parties hereto and may not be amended, changed, altered or otherwise modified except in writing signed by both parties and witnessed by the agent.

**DOVER**

31 East Second Street, Mineola, NY 11501 • (516) 294-7000

Customer Service Fax: (516) 294-9758
Editorial Fax: (516) 873-1401
Finance Fax: (516) 742-6953
Sales Fax: (516) 742-5049

## DOVER PUBLICATIONS, INC.

### PUBLICATION RIGHTS

**PROPRIETOR:**   Joseph Goulden
c/o Brandt & Hochman Literary Agents, Inc.
1501 Broadway
New York, NY 10036

**AUTHOR:**   Joseph Goulden

**WORK:**   *The Dictionary of Espionage: Spookspeak Into English*
Copyright © NY: Stein and Day, 1986
(Originally published under the pseudonym Henry S.A. Becket)

**CONTRACT #:**   1110-03

**ADVANCE:**   Advance of ▮▮▮▮ against royalties of:

6% of Dover's net receipts up to 5,000 copies sold,
7% of Dover's net receipts on the second 5,000 copies sold, and
8% of Dover's net receipts after 10,000 copies have been sold.

**PAYABLE:**   Advance payable: ▮▮▮▮ on agreement and ▮▮▮▮ on receipt and
acceptance of the completed manuscript

**DATE:**   November 5, 2010

Proprietor hereby grants and assigns to Dover Publications, Inc., and Dover Publications, Inc., hereby accepts from Proprietor the irrevocable and exclusive right and license to publish, print, distribute and sell copies of the Author's Work in the English language throughout the world, beginning on the specified date, subject to all of the attached Terms and Conditions.

By: _____
Author/Proprietor

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Social Security Number**

November 30, 2010
**Date**

By: _____
Christopher J. Kuppig, President
Dover Publications, Inc.

## TERMS AND CONDITIONS

1.     Dover Publications, Inc., (Dover) shall have the unrestricted right: to reprint and duplicate the Work by any method or means of literary and mechanical reproduction (including without limitation photo-offset lithography or other form of photographic reproduction); to publish the Work as a book in any form Dover may see fit (including hard-cover, paperback, microfilm, microfiche, or any other print or electronic format); to advertise, distribute and sell any number of copies of the Work at whatever price and by whatever method Dover may determine; and to use in connection therewith the Author's name, likeness and biography (which Proprietor will furnish on request).  It is understood in this regard that Author will be given customary credit in the usual literary fashion; that no editorial changes will be made in the Work without Author's or Proprietor's approval; that Dover's printing and duplication of the Work will be comparable in style and quality to other Dover publications; and that Dover's distribution and sale of the published Work will be done in a respectable and dignified manner in keeping with the contents of the Work.   Proprietor expressly agrees that during the continuation of Dover's exclusive license hereunder, Proprietor will not publish or sell, or otherwise authorize or permit publication or sale of the Work in the United States or abroad.

2.     In full consideration of the exclusive license granted by Proprietor to Dover herein, Dover will pay to Proprietor a ▮▮▮▮▮▮ advance, payable on agreement and receipt of materials, against the following royalties, based upon net receipts of copies sold:

> **6% of Dover's net receipts up to 5,000 copies sold,**
> **7% of Dover's net receipts on the second 5,000 copies sold, and**
> **8% of Dover's net receipts after 10,000 copies have been sold.**

Net receipts shall be defined as Dover's revenue realized from all channels of sales minus applicable discounts, returns and allowances.  Royalties shall be accounted semi-annually as of the close of Courier Corporation's fiscal quarters on or about, but no later than December 31 and June 30 each year following publication of the Dover editions.  Royalty statements shall be rendered, with any payments due Proprietor, after the advance has been earned out, within 90 days of the end of these stated periods.

3.     Dover will have no interest in subsidiary rights and will refer all inquiries to the Proprietor.

4.     Proprietor hereby warrants and represents that Proprietor has the unequivocal right to enter into this agreement, that Proprietor is the sole and complete owner of all rights in the Work exclusively licensed to Dover herein; that Proprietor has not licensed, assigned or otherwise disposed of any right, title or interest in the Work inconsistent with the exclusive license to Dover hereunder; that the Work is in valid and subsisting copyright in the United States and abroad, that the Work has not been copied in whole or in part from any other work and does not infringe upon any statutory or common law copyright, proprietary or other right; and that neither the Work nor Dover's publication and sale thereof constitutes a libel, violation of the right of privacy, or invasion of any other right or interest of any third party. Proprietor further warrants and agrees that Proprietor will do nothing to forfeit the copyright in or to the Work or permit the Work to go into the public domain, nor perform or permit any act that will otherwise reduce or impair the value of the Work or Dover's exclusive license hereunder.  Proprietor will indemnify and hold Dover harmless from and against any and all claims, damages, liabilities, losses, suits or actions, including attorney fees, arising out of breach of any warranty, representation or agreement made by Proprietor herein.

5.    Proprietor will upon request furnish to Dover true copies of any and all documents evidencing Proprietor's ownership of all rights in the Work (including the return of publishing rights to Proprietor by any previous publisher), and will execute whatever documents are requested by Dover in effectuation of Dover's exclusive license hereunder.  Proprietor will renew or cause the copyright in the Work to be renewed in the United States, and does hereby appoint and institute Dover as Proprietor's attorney in fact to renew on Proprietor's behalf in the event that Proprietor shall not have done so within ninety (90) days prior to the last day of the original copyright term.

6.    Dover will supply Proprietor with **12** free copies of the Work as published by Dover. Proprietor acknowledges that Dover may authorize free quotation of excerpts from the Work, as Dover may consider desirable for promotion and sale of the Work. Proprietor may purchase copies of the books at a discount of 50% off Dover's retail price.

7.    In the event of infringement or possible infringement of the copyright in the Work, Dover and Proprietor will discuss appropriate legal or other action to be taken with respect thereto. If no joint action can be mutually agreed upon within a reasonable period, either Dover or Proprietor shall have the independent right to bring legal action to enjoin such infringement and/or for damages there from, in which event, the other party will cooperate reasonably therein.  In the event of joint action, expenses and recoveries will be shared equally; in the event of individual action, the other party will participate neither in expenses nor recoveries.

8.    The Proprietor shall retain all rights in the Work not granted to Dover herein.  In the event that copies of the Work are out-of-stock and so unavailable for purchase from Dover at any time or times. Proprietor may request Dover to reprint and put copies back into stock for that purpose.  Should Dover indicate to Proprietor its decision not to reprint and put copies back into stock as requested, Dover's exclusive license hereunder shall terminate forthwith.  Should Dover not so indicate to Proprietor but nevertheless fail to reprint, and put copies back into stock within nine (9) months after receipt of Proprietor's request, Dover's exclusive license hereunder shall automatically terminate upon the last day of said nine (9) month period.  Otherwise, Dover's exclusive license shall continue on all of the terms and conditions hereof.

9.    Dover shall have the right to re-license or reassign any or all of the rights licensed to Dover by Proprietor herein on the sole condition that no such re-license or reassignment will diminish or affect any of Dover's obligations hereunder.

10.    All sums of money due the Author under this Agreement shall be paid to the Author's agent, **Brandt & Hochman Literary Agents, Inc., 1501 Broadway, New York, NY 10036**, and receipt by said agent shall be a good and valid discharge of all such indebtedness.  Said agent is hereby empowered by the Author to act on his behalf in all matters pertaining to and arising from this Agreement.  It being the specific intent of the Author that the agent be a third party beneficiary to this Agreement to the extent designated, for services rendered and to be rendered, the Author does irrevocably assign and transfer to said agent, and said agent shall retain, a sum equal to ~~ten~~ percent (~~10%~~) out of all gross monies payable to the account of the Author under this Agreement.  Fifteen (15%)

11.    Any sums payable by the Publisher under this Agreement and paid to the agent, pursuant to this paragraph shall constitute a full and valid discharge of the Publisher in respect thereto.  Nothing in the foregoing shall be construed to obligate the Publisher to pay such ten percent (10%) sum to the agent. The Publisher's sole obligation shall be to remit to the agent sums due the Author, if any, after deducting there from any deductions or withholdings permitted under this paragraph.

12.    This agreement represents the entire understanding between Dover and the Proprietor, and no amendment or modification thereof shall be effective unless in writing and signed by both parties.

13.    Any controversy or claim arising out of this Agreement shall be settled by arbitration in accordance with the rules then obtaining of the American Arbitration Association.  The Arbitration shall take place in the City of New York.