# EXHIBIT 9


greement

between

Matthew B. Miles
Michael Huberman

(author)

and

**Sage Publications, Inc.**
2455 Teller Road
Newbury Park, California 91320

**FOR BOOK PUBLICATION OF:**

QUALITATIVE DATA ANALYSIS:
A New Sourcebook of Methods, Second Edition

Dated

July 9, 1991

AGREEMENT made this 9th day of July, 1991, between Sage Publications, Inc., 2455 Teller Road, Newbury Park, California 91320 (hereinafter called the Publisher) and

Matthew B. Miles
Senior Research Associate
Center for Policy Research
475 Riverside Drive, Suite 7228
New York, NY 10115

Michael Huberman
Faculty of Psychology and Education
University of Geneva
24, rue General-Dufour
1211 Geneva 20 93 33 Switzerland

(hereinafter called the Author), with respect to a work tentatively entitled

QUALITATIVE DATA ANALYSIS: A New Sourcebook of Methods, Second Edition

(hereinafter called the Book) and consisting of not more than

Five hundred fifty (550) manuscript pages

typewritten, double-spaced 8 1/2" by 11" pages/including tables, figures, charts, graphs, and similar materials.

(1800 characters per page)

## I. RIGHTS

The Author hereby grants and assigns to the Publisher, its successor and assigns (and the term "PUBLISHER" is deemed to include all of the foregoing), the following exclusive rights in the Book during the term or terms of copyright and all renewals and extensions thereof:

To publish and market the Book throughout the world, to publish or license others to publish the Book in whole or in part in periodicals, to cause or license the Book to be translated into any and all languages for publication and sale throughout the world, to publish or license publication of the Book in whole or in parts in editions, reprints, selections, book club editions, digests, abridgements, microfilms, microcards, or in any other present and future media, and in all forms of merchandising and commercial use.

## II. ROYALTIES

The publisher shall pay to the Author royalties during the term or terms that the above rights are protected by the copyright laws of the respective countries. Such royalties will be determined according to the following scale:

(a) Ten percent (10%) on sales of the first 2,500 copies of the Book in its hardcover edition; twelve and one-half percent (12½%) on copies 2,501 - 5,000; and fifteen percent (15%) on all copies thereafter.

(b) In the event of a paper bound edition by the Publisher, royalties shall be ten percent (10%) of all cash received from the sales of the Book.

(c) In the event the publisher sells a quantity (100 or more) of the Book to a single buyer at a discount of more than fifty percent (50%) of the list price, then the royalty on such sale and/or sales shall be fifty percent (50%) of the royalties provided above.

(d) In the event the Publisher shall license others to reprint the Book in whole or in part, then the Author's royalty shall be fifty percent (50%) of the Publisher's cash receipts from such licensing arrangements.

(e) Royalties on copies sold to a book club shall be ten percent (10%) of all cash received from such sales.

(f) On copies sold by existing and future foreign subsidiaries (or affiliated foreign companies) of Sage Publications, Inc., each such subsidiary/affiliated company shall make its own accounting to the Author and pay a royalty equal to ten percent (10%) of net sales of the Book in all editions. If necessary, due to currency transfer regulations, said accountings may be reported and paid by Sage Publications, Inc., on behalf of any or all such subsidiaries/affiliates.

(g) No royalties shall be paid on copies furnished gratis for review, advertising, promotion, bonus, sample, or like purposes, or on any returned or refunded copies. Except as specifically provided in items (b) through (f) above, no royalties shall be paid on income received other than from sales of the Book in its original edition and reprints thereof.

## III. PAYMENT OF ROYALTIES

(a) The publisher shall render a statement of account on or before the 28th day of February, 1994, covering the period from publication through the 31st day of December, 1993, and once each year thereafter.

(b) Within sixty (60) days from the statement date, the Publisher shall pay the Author all royalties then due.

(c) If the amount of royalties actually earned in any future statement period is less than twenty-five dollars ($25.00) the amount due shall be accrued but not paid.

(d) The Publisher also agrees to present to the Author twelve (6 hardcover, 6 paperback) copies of the Book. The Author shall be entitled to purchase additional copies of the Book at forty percent (40%) discount off the list price on the understanding that such copies shall not be resold.

(e) Other:

## IV. THE MANUSCRIPT AND PUBLICATION

(a) The Author shall deliver to the Publisher on or before the 15th day of October .*see below 19 92 , time being of the essence, two complete double-spaced (typewritten copies of the Book (original and clean copy), in content and form satisfactory to the Publisher and ready for the printer, together with all permissions necessary for the reproduction of copyright material therein secured at the Author's own expense.

Such permission charges may, upon agreement in writing by the parties to this contract, be paid by the Publisher upon publication of the Book, and such expenses deducted from the Author's royalties.

(b) If the manuscript as delivered is not in form ready for the printer, but is otherwise satisfactory to the Publisher, the Author shall have the option, after written notice from the Publisher, of making it ready for the printer within thirty (30) days; upon the Author's failure to do so, the Publisher may have the manuscript properly prepared at the Author's expense. The Author agrees to supply with the manuscript and suitable for reproduction all photographs, illustrations, drawings, charts, and other material necessary to the completion of the Book. If the Author fails to do so, the Publisher shall have the right to supply them and charge the cost against any sums payable to the Author.

(c) The Author shall read and correct manuscript and proofs when and if submitted, and return promptly corrected manuscript or proofs to the Publisher. The Publisher may charge the Author for expenses incurred as a result of excessive changes in proofs [defined as more than five percent (5%) of the original cost of setting type]. Such charges may be deducted from royalties, upon agreement in writing between the Publisher and the Author.

(d) The Publisher shall publish the Book at its own expense and in such style and manner at such price as it deems best suited to sale thereof. The Publisher may make the manuscript conform to such style of punctuation, spelling, capitalization and usage as it deems appropriate.

(e) In the event that an index is to be included in the Book, the Author shall prepare and deliver to the Publisher index copy and such other similar matter as may be required by the Publisher in connection with the publishing of said Book, within fifteen (15) days after final page proofs are mailed to the Author by the Publisher. In the event the Publisher shall not receive such index copy and other matter in a form acceptable to it, within the time specified above, it may have such copy and other matter prepared at the expense of the Author.

(f) The Publisher shall be responsible for only the same care of any property of the Author in its hands as it takes of its own and shall be responsible for the safety of such property from fire, water or loss only to such an amount as the cost of re-typing the manuscript and replacing any artwork.

## V. OUT OF PRINT PROVISIONS

If the Book shall at any time be out of print, the Author may give written notice to the Publisher of his desire to terminate this agreement, and in such event the Publisher shall declare within sixty (60) days in writing whether or not it intends to reprint or cause the Book to be reprinted. If the Publisher declares its intention to do so, such publication shall take place not more than six (6) months from the giving of such notice. If the Publisher shall within sixty (60) days declare in writing that it does not intend to reprint or cause the Book to be reprinted, or if the Publisher within said time declares that it does so intend, but within six (6) months such publication does not take place, then all rights granted hereunder shall terminate and revert to the Author at the end of such sixty (60) days or six (6) month period, as the case may be.

If the Book be out of print and the Publisher gives the Author three (3) months notice in writing of its intention to discontinue publication, then this agreement shall terminate at the expiration of said three (3) month period. The Author may then buy the plates or negatives including the original composition at one-half the original cost thereof.

The Book shall not be deemed out of print so long as it is on sale in any edition whether published by the Publisher or by others so long as there is in existence a contract for publication which requires future publication of the Book.

## VI. FORCE MAJEURE

The Book shall not be deemed out of print nor shall the Publisher be liable with respect to the original or any other edition, for delays caused by wars, civil riots, strikes, fires, acts of God, governmental restrictions or other similar or dissimilar circumstances beyond its control.

## VII. WARRANTIES

(a) The Author warrants and represents that he is the sole owner of the Book and all the rights herein granted and has full right and power to make this agreement; that the Book is not a violation of any copyright, proprietary or personal right; that he has not in any manner granted, assigned, encumbered or disposed of any of the rights herein granted to the Publisher or any rights adverse or inconsistent therewith; that there are no rights outstanding which would diminish, encumber or impair the full enjoyment or exercise of the rights herein granted the Publisher; that no part of the Book is libelous, obscene or unlawful, or violates any right of privacy.

(b) The Author agrees to hold harmless and indemnify the Publisher against any claim, demand, suit, action, proceeding, recovery or expense of any nature whatsoever arising from any claim of infringement of copyright or

*The Author shall deliver one copy of the manuscript to the Publisher for review on or before ~~April 1~~, 1992.
June 15,

MBM IAH CTH
8/16/91

proprietary right, or from claims of libel, obscenity, unlawfulness or invasion of privacy based upon or arising out of any matter or thing contained in the Book, or from any breach of warranties or representation herein contained. In addition to other remedies, the Publisher may withhold as offset royalties due the Author. The Publisher may, at its sole discretion and expense, retain counsel and may at its sole discretion compromise any such claim or suit brought against it.

(c) The warranties, representations and indemnities shall survive the termination of this agreement.

## VIII. COPYRIGHT

The Publisher shall copyright the Book in the name of Matthew B. Miles and Michael Huberman

## IX. SPECIAL PROVISIONS

(a) The Publisher agrees to pay the Author an advance against royalties in the amount of [redacted] dollars ([redacted]) to be paid as follows:

1. [redacted] on signature of this Agreement and
2. [redacted] on delivery and acceptance of the complete and finished manuscript of the Book.

It is understood that if the Author fails to deliver the manuscript or if the manuscript is unacceptable and the Book is not published, the Author will repay the advance received to the Publisher.

(b) The Publisher shall pay the Author a grant of [redacted] ([redacted]) to be paid as follows:

1. [redacted] on November 15, 1991 and
2. [redacted] on February 15, 1992.

(c) The Publisher shall consult with the Author on the cover and interior design of the Book.

(d) The Author shall revise the Book at the request of the Publisher and shall supply any new matter necessary from time to time to keep the Book up to date. If the Author shall neglect or be unable to revise or supply new matter at a time and in a form satisfactory to the Publisher, then, after consultation with the Author, the Publisher may engage some other person or persons to do so. When such revisions are not made by the Author, the Publisher shall cause such fact to be evident in the revised subsequent edition. The Publisher shall cause such fact to be evident in the revised subsequent edition. The Publisher shall have all the rights in connection with all subsequent editions that the Publisher is entitled to in the original Book.

All royalties to the Author on revised editions shall be computed from the beginning of the schedule set forth in Clause II. If others than the Author revise any editions of the Book, then the Author shall receive as royalties on the first such edition fifty percent (50%) of the royalties otherwise due herein and twenty-five percent (25%) of such royalties on any subsequent revisions.

THIS AGREEMENT SHALL bind and inure to the benefit of the heirs, executors, administrators, and legal representatives of the Author, and upon the successors and assigns of the Publisher. However, all obligations of the Author are personal and nonassignable. This Agreement constitutes the complete understanding of the parties and shall be interpreted according to the laws of the State of California, regardless of the place of execution. No modification or waiver of any provision hereof shall be valid unless in writing and signed by both parties.

Matthew B. Miles
AUTHOR Matthew B. Miles
SS# [redacted]
DATE 8/8/91

Michael Huberman
AUTHOR Michael Huberman
SS# [redacted]
DATE 8.8.91

AUTHOR
SS#
DATE

Charles T. Hendrix
FOR SAGE PUBLICATIONS, INC.
Charles T. Hendrix

Vice President
TITLE
DATE 9-3-91

AUTHOR
SS#
DATE

AUTHOR
SS#



Alfred · A · Knopf *Incorporated*

PUBLISHER OF BORZOI BOOKS

*Cables:* KNOPF NEW YORK
*Telephone:* (212) 751-2600

*201 East 50th Street*
*New York, N.Y. 10022*

December 29, 1987

Ms. Betty Miles
94 Sparkill Avenue
Tappan, New York 10983

Dear Ms. Miles:

Reference is made to the following agreements (the Agreements) between you and us for the works (the Works) as noted:

| The Works | The Agreement Dates |
|---|---|
| ALL IT TAKES IS PRACTICE | April 3, 1976 |
| LOOKING ON | (undated 1977) |
| THE TROUBLE WITH THIRTEEN | December 29, 1977 |
| MAUDIE AND ME AND THE DIRTY BOOK | May 7, 1979 |
| THE REAL ME | November 26, 1973 |
| I WOULD IF I COULD | December 29, 1977 |
| JUST THE BEGINNING | July 21, 1975 |
| SINK OR SWIM | March 3, 1982, as amended |

This letter, when signed by you and by us, will evidence the amending of the Agreements, as follows:

1. We agree to publish, in accordance with the following schedule, a softcover edition of each of the Works at our own expense, in such style and manner, under such imprint and at such price as we deem suitable, provided, that we shall not be responsible for delays caused by any circumstances beyond our control:

- THE TROUBLE WITH THIRTEEN - no later than Spring 1989;
- ALL IT TAKES IS PRACTICE and LOOKING ON - no later than Fall 1989;
- All the other Works - no later than the Fall or Spring publishing period occurring immediately after the 12 month

anniversary of the expiration of the existing softcover license agreements covering each of such Works.

2. We agree to reissue a Gilbralter Library Edition of each of the Works which is not now in print in such an edition not later than Fall 1988 and to include such editions in the seasonal catalog for the period in which each of such editions are published.

3. As an additional advance against and on account of all royalties accruing to you under the Agreements, we agree to pay you [redacted]; payable [redacted] on January 15, 1988, and [redacted] on publication by us of the first softcover edition of any of the Works.

4. We agree to pay you the following royalty on the catalog retail price (which, for purposes of the calculation of royalties pursuant to subdivisions a. and b., below, shall in no event be deemed less than $2.95) of every copy of each of the Works sold by us, less actual returns and a reasonable reserve for returns:

a. For each of MAUDIE AND ME AND THE DIRTY BOOK and THE TROUBLE WITH THIRTEEN - 7% up to and including 150,000 copies of each Work; and 8% thereafter.

b. For each of all the other Works - 6% up to and including 150,000 copies of each Work; and 7% thereafter.

Notwithstanding the foregoing, the royalties in subdivisions a. and b., above, will be based on the amount actually received for any sales at a discount of more than 60%

from the actual catalog retail price and the computation of copies sold shall be exclusive of copies sold to book clubs and by other special sales.

5. As your agent has by letter agreement (a copy of which is annexed hereto and incorporated herein) relinquished all rights that such agent may have in any of the Works, it is hereby agreed that paragraph 25 in each of the Agreements (except the Agreement for SINK OR SWIM) is deleted and that all sums of money due you on or after November 1, 1987, under any of the Agreements (including the Agreement for SINK OR SWIM) shall be paid directly to you and that receipt by you of such payments shall be a good and valid discharge of our indebtedness to you under the Agreements and this letter.

6. Except as expressly modified hereby the Agreements are ratified, confirmed and remain in full force and effect.

If the foregoing terms are in accordance with your understanding, please sign and return the original and all copies of this letter to us for our signature.

Sincerely yours,

ALFRED A. KNOPF, INC.

By ______________________

AGREED:

______________________
Betty Miles



Alfred·A·Knopf, Inc.

AGREEMENT made this 22 day of October, 19 74 between ALFRED A. KNOPF, INC., 201 East 50th Street, New York, N.Y. 10022 (referred to as the Publisher), and

**Betty Miles**

whose address is **94 Sparkhill Avenue Tappan, New York 10983**

who is a citizen of **the United States** and resident of (state) **New York** (referred to as the Author and designated by the masculine singular pronoun)

WHEREAS the parties wish respectively to publish and have published a work (referred to as the work) of **juvenile non-fiction** provisionally titled

**LOVE**

NOW, THEREFORE, they mutually agree as follows:

*Grant of Rights*

1. The Author grants to the Publisher during the term of copyright, including renewals and extensions thereof:

a. Exclusive right in the English language, in the United States of America, the Philippine Republic, and Canada, and non-exclusive right in all other countries except the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, to:

i. Print, publish and sell the work in book form;

ii. License publication of the work (in complete, condensed or abridged versions) by book clubs, including affiliates of the Publisher;

iii. License publication of a reprint edition by another publisher with the consent of the Author. The Author shall be deemed to have given consent if within twenty (20) days after the forwarding of written request he fails to notify the Publisher in writing of his refusal to consent;

iv. License publication of the work (in complete, condensed, adapted or abridged versions) or selections from the work in anthologies and other publications, in mail-order and schoolbook editions, as premiums and other special editions and through microfilm and with the Author's consent Xerox or other forms of copying; **and the non-exclusive right to record ~~or grant licenses~~***

v. [struck out]

vi. License periodical publication after book publication to the extent that any such right is available;

vii. **Produce or** ~~[struck out], subject to the approval of the Author~~ **license** ~~adaptation of the work for filmstrips, printed cartoon versions~~ [struck out];

viii. License, without charge, transcription or publication of the work in Braille or in other forms, for the physically handicapped;

ix. For publicity purposes, publish or permit others to publish or broadcast (but not dramatize) by radio or television, without charge, such selections from the work as in the opinion of the Publisher may benefit its sale.

b. [struck out] than Canada), the Republic of South Africa, and the Irish Republic, ~~the rights granted~~ in subdivision a. above, revocable by ~~the Author with respect to~~ any country for which no license or option has been given [struck out]

~~c. Exclusive right to license in all foreign languages and all countries, the rights granted in subdi~~vision a. above, revocable by the Author with ~~respect to each language or country~~ for which no license or ~~option has been given within three (3) years after first publication in the United States.~~

d. [struck out] likeness of the Author, the work and the title of the work, ~~in whole or in part, or any~~ adaptation thereof as the basis for ~~trademark or trade name for~~ other products or for any other commercial use in connection [struck out]

*Delivery of Satisfactory Copy*

2. The Author **has delivered** two complete copies (original and clean copy) of the manuscript of the work in the English language [struck out] in length, in content and form satisfactory to the Publisher,** together with any permission required pursuant to Paragraph 3 [struck out] not later than **January 1, 1975**

If he fails to do so the Publisher shall have the right to supply them and charge the cost against any sums accruing to the Author. The complete manuscript shall include the following additional items:

**** and agrees to deliver approximately 60 black and white photographs satisfactory to the Publisher.**

If the Author fails to deliver the manuscript within ninety (90) days after the above date the Publisher may terminate this agreement by giving written notice, whereupon the Author agrees to repay forthwith all amounts which may have been advanced hereunder.

*Permission for Copyrighted Material*

3. If the Author incorporates in the work any copyrighted material, he shall procure, at his expense, written permission to reprint it.

*** ~~to record~~ the text of the work, or an adaptation, abridgement or extract thereof in any form of sound reproduction for the school and library markets;**

*Author's Warranties and Indemnities*

4. a. The Author warrants that he is the sole author of the work; that he is the sole owner of all the rights granted to the Publisher; that he has not previously assigned, pledged or otherwise encumbered the same; that he has full power to enter into this agreement; that except for the material obtained pursuant to Paragraph 3 the work is original, has not been published before, and is not in the public domain; that it does not violate any right of privacy; that it is not libelous or obscene; that it does not infringe upon any statutory or common law copyright; and that any recipe, formula or instruction contained in the work is not injurious to the user.

b. In the event of any claim, action or proceeding based upon an alleged violation of any of these warranties (i) the Publisher shall have the right to defend the same through counsel of its own choosing, and (ii) no settlement shall be effected without the prior written consent of the Author, which consent shall not unreasonably be withheld, and (iii) the Author shall hold harmless the Publisher, any seller of the work, and any licensee of a subsidiary right in the work, against any damages finally sustained. If such claim, action or proceeding is successfully defended or settled, the Author's indemnity hereunder shall be limited to fifty per cent (50%) of the expense (including reasonable counsel fees) attributable to such defense or settlement; however, such limitation of liability shall not apply if the claim, action or proceeding is based on copyright infringement.

c. If any such claim, action or proceeding is instituted, the Publisher shall promptly notify the Author who shall fully cooperate in the defense thereof, and the Publisher may withhold payments of reasonable amounts due him under this or any other agreement between the parties.

d. These warranties and indemnities shall survive the termination of this agreement.

*Conflicting Publication*

5. The Author agrees that during the term of this agreement he will not, without the written permission of the Publisher, publish or permit to be published any material, in book or pamphlet form, based on material in the work.

*Date, Style and Price of Publication*

6. Within **two years** the Author has delivered the manuscript in conformity with Paragraph 2, the Publisher shall publish the work at its own expense, in such style and manner, under such imprint and at such price as it deems suitable. The Publisher shall not be responsible for delays caused by any circumstance beyond its control. No changes in the manuscript or the provisional title shall be made without the consent of the Author. However, in no event shall the Publisher be obligated to publish a work which in its opinion violates the common law or statutory copyright or the right of privacy of any person or contains libelous or obscene matter.

*Proofreading and Author's Corrections*

7. The Author agrees to read, revise, correct and return promptly all proofs of the work and to pay in cash or, at the option of the Publisher, to have charged against him, the cost of alterations, in type or in plates, required by the Author, other than those due to printer's errors, in excess of ten per cent (10%) of the cost of setting type, provided a statement of these charges is sent to the Author within thirty (30) days of the receipt of the printer's bills and the corrected proofs are presented upon request for his inspection.

*Copyright*

8. The Publisher shall copyright the work in the name of the Author, in the United States, in compliance with the Universal Copyright Convention, and apply for renewals of such copyright. If copyright should be in the name of the Publisher, it shall assign such copyright upon request of the Author. The Publisher agrees to arrange for the sale of the work in Canada. If the Publisher adds illustrations or other material, and if copyright is in the Author's name, he agrees, upon request, to assign the copyright of such material. If the Author retains the right to periodical or foreign publication before publication by the Publisher, he shall notify the Publisher promptly of any arrangement of such publication or any postponement thereof. In the event of a periodical publication, if the copyright shall be in the name of any person other than the Author, he shall promptly deliver to the Publisher a legally recordable assignment of such copyright or of the rights granted. In the event of a publication outside the United States, promptly thereafter, he shall furnish to the Publisher three copies of the first published work and the date of such publication.

*Advance Payments*

9. The Publisher shall pay to the Author as an advance against and on account of all moneys accruing to him under this agreement, the sum of [redacted] dollars ($[redacted]), payable **as follows:**

**$[redacted] on signing hereof; and**
**$[redacted] on delivery and acceptance of the photographs in conformity with Paragraph 2.**

Any such advance shall not be repayable, provided that the Author has delivered the manuscript in conformity with Paragraph 2 and is not otherwise in default under this agreement.

*Royalty Payments*

10. The Publisher shall pay to the Author a royalty on the retail price of every copy sold by the Publisher, less returns (except as set forth below):

**For the hardcover edition**

a. **i. Ten** per cent (**10** %) up to and including **12,000** copies; **and**
**Twelve** per cent (**12** %) in excess of **12,000** copies~~xxxxxxxxx~~.

**ii. For a paperback edition: Five per cent (5%) up to and including 10,000 copies and six per cent (6%) in excess of 10,000 copies.** and seven per cent (7%) in excess of 100,000 copies sold.

Where the discount in the United States is forty-eight per cent (48%) or more from the retail price, the rate provided in this subdivision a. shall be reduced by one-half the difference between forty-four per cent (44%) and the discount granted. In no event, however, shall such royalty be less than one-half of the rate provided herein. If the semi-annual sales aggregate fewer than 400 copies, the royalty shall be two-thirds (⅔) of the rate provided in this subdivision a. if such copies are sold from a second or subsequent printing. Copies covered by any other subdivision of this Paragraph shall not be included in such computation.

*Mail Order Sales*

b. Five per cent (5%) of the amount received for copies sold directly to the consumer through the medium of mail-order or coupon advertising, or radio or television advertising.

*Premiums and Subscriptions*

c. Five percent (5%) of the amount received for copies sold by the Publisher's Premium or Subscription Books Wholesale Department.

*College Sales*

d. Ten per cent (10%) for hard-cover copies and five per cent (5%) for soft-cover copies sold with a lower retail price as college textbooks.

1214 7-72

less returns;

*School Editions*

e. For a School edition the royalty provided in subdivision a. of this Paragraph but no more than:

i. Ten per cent (10%) of the amount received for a Senior High School edition;

ii. Eight per cent (8%) of the amount received for a Junior High School edition;

iii. Six per cent (6%) of the amount received for an Elementary School edition.

iv. Five per cent (5%) of the school list price for copies sold, less returns in Learning Units.

*Lower-price Editions*

f. Five per cent (5%) for an edition published at a lower retail price or for an edition in the Modern Library (regular or giant size) or in Vintage Books; and two per cent (2%) or two cents (2¢) per copy, whichever is greater, for an edition in the Modern Library College Editions.

*Export Sales*

g. Ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold for export.

*Special Sales*

h. For copies sold outside normal wholesale and retail trade channels, ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold at a discount between fifty per cent (50%) and sixty per cent (60%) from the retail price and five per cent (5%) of the amount received for copies sold at a discount of sixty per cent (60%) or more from the retail price, or for the use of the plates by any governmental agency.

*No Royalty Copies*

i. No royalty shall be paid on copies sold below or at cost including expenses incurred, or furnished gratis to the Author, or for review, advertising, sample or like purposes.

*Receipts From Other Rights*

j. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision a., ii, iii, iv, vi. At the Author's request his share from book club and reprint licensing, less any unearned advances, shall be paid to him within two weeks after the receipt thereof by the Publisher. If the Publisher rebates to booksellers for unsold copies due to the publication of a lower-price or reprint edition, the royalty on such copies shall be the same as for such lower-price edition.

*First Serial*

k. [redacted]

*British*

l. [redacted]

*Translation*

~~m. Seventy-five per cent (75%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision c.~~

*Commercial*

n. [redacted]

*Share to Other authors*

o. If any license granted by the Publisher pursuant to Paragraph 1 shall include material of others, the amount payable to the Author shall be inclusive of royalty to other authors.

*Performance Rights*

[redacted]

11. In the event of the disposition of performance rights, the Publisher may grant to the purchaser the privilege to publish excerpts and summaries of the work in the aggregate not to exceed * for advertising and exploiting such rights, provided, however, that such grant shall require the purchaser to take all steps which may be necessary to protect the copyright of the work.

* approximately ten per cent (10%) of the text of the work.

*Rights retained by Author*

12. The Author agrees to notify the Publisher promptly of the disposition of any right which the Author has retained for himself.

*Reports and Payments*

13. The Publisher shall render semi-annual statements of accounts to the first day of April and the first day of October, and shall mail such statements during the July and January following, together with checks in payment of the amounts due thereon.

Should the Author receive an overpayment of royalty rising from copies reported sold but subsequently returned, the Publisher may deduct such overpayment from any further sums due the Author.

Upon his written request, the Author may examine or cause to be examined through certified public accountants the books of account of the Publisher in so far as they relate to the sale or licensing of the work.

INITIAL A BM P

~~Notwithstanding anything to the contrary in this or any prior agreement between the parties, the Author shall in no event be entitled to receive under this and all prior agreements with the Publisher more than $ during any one calendar year. If in any one calendar year the total of the sums accruing to the Author under this and all prior agreements with the Publisher shall exceed such amount, he shall be entitled to receive the excess amount in any succeeding calendar year in which the sums accruing to him under this and all prior agreements with the Publisher do not exceed the maximum herein stated, provided that the total amount to which the Author may be entitled under this and all prior agreements with the Publisher in any succeeding calendar year shall not exceed the maximum herein stated.~~

*Option for Next Work*

14. [redacted] same to any other publisher. The Publisher shall be entitled to a period of six weeks after ~~the submission~~ of the completed manuscript, which period shall not commence to run prior to ~~one month~~ after the publication of the work covered by this agreement, within which to notify ~~the Author~~ of its decision. If within that time the Publisher shall notify the Author of its ~~desire to~~ publish the manuscript, it shall thereupon negotiate with him with respect to the terms ~~of such~~ publication. If within thirty (30) days thereafter the parties are unable in good faith ~~to arrive~~ at a mutually satisfactory agreement for such publication, the Author shall be free ~~to submit~~ his manuscript elsewhere, provided, however, that he shall not enter into a contract ~~for the~~ publication of such manuscript with any other publisher upon terms less favorable than [redacted].

*Copies to Author*

15. On publication the Publisher shall give ten (10) free copies to the Author, who may purchase further copies for personal use at a discount of forty percent (40%) from the retail price.

*Discontinuance of Publication*

16. If the Publisher fails to keep the work in print and the Author makes written demand to reprint it, the Publisher shall, within sixty (60) days after the receipt of such demand, notify the Author in writing if it intends to comply. Within six (6) months thereafter, the Publisher shall reprint the work unless prevented from doing so by circumstances beyond its control. If the Publisher fails to notify the Author within sixty (60) days that it intends to comply, or, within six (6) months after such notification, the Publisher declines or neglects to reprint the work, then this agreement shall terminate and all rights granted hereunder except those deriving from the option in Paragraph 14 shall revert to the Author, subject to licenses previously granted, provided the Author is not indebted to the Publisher for any sum owing to it under this agreement. After such reversion, the Publisher shall continue to participate to the extent set forth in his agreement in moneys received from any license previously granted by it. Upon such

termination, the Author shall have the right for thirty (30) days thereafter to purchase the plates, if any, at one-fourth of the cost (including type setting).

If the work is under contract for publication or on sale in any edition in the United States, it shall be considered to be in print. A work shall not be deemed in print by reason of a license granted by the Publisher for the reproduction of single copies of the work. If the Publisher should determine that there is not sufficient sale for the work to enable it to continue its publication and sale profitably, the Publisher may dispose of the copies remaining on hand as it deems best, subject to the royalty provisions of Paragraph 10. In such event, the Author shall have the right, within two (2) weeks of the forwarding of a written notice from the Publisher, to a single purchase of copies at the "remainder" price.

*Author's Property*

17. Except for loss or damage due to its own negligence, the Publisher shall not be responsible for loss of or damage to any property of the Author

*Return of Manuscripts*

18. In the absence of written request from the Author prior to publication for their return, the Publisher, after publication of the work, may dispose of the original manuscript and proofs.

*Suits for Infringement of Copyright*

19. If the copyright of the work is infringed, and if the parties proceed jointly, the expenses and recoveries, if any, shall be shared equally, and if they do not proceed jointly, either party shall have the right to prosecute such action, and such party shall bear the expenses thereof, and any recoveries shall belong to such party; and if such party shall not hold the record title of the copyright, the other party hereby consents that the action be brought in his or its name.

*Bankruptcy and Liquidation*

20. If (a) a petition in bankruptcy is filed by the Publisher, or (b) a petition in bankruptcy is filed against the Publisher and such petition is finally sustained, or (c) a petition for arrangement is filed by the Publisher or a petition for reorganization is filed by or against the Publisher, and an order is entered directing the liquidation of the Publisher as in bankruptcy, or (d) the Publisher makes an assignment for the benefit of creditors, or (e) the Publisher liquidates its business for any cause whatever, the Author may terminate this agreement by written notice and thereupon all rights granted by him hereunder shall revert to him. Upon such termination, the Author, at his option, may purchase the plates as provided in Paragraph 16 and the remaining copies at one-half of the manufacturing cost, exclusive of overhead. If he fails to exercise such option within sixty (60) days after the happening of any one of the events above referred to, the Trustee, Receiver, or Assignee may destroy the plates and sell the copies remaining on hand, subject to the royalty provisions of Paragraph 10.

*Sums Due and Owing*

21. Any sums due and owing from the Author to the Publisher, whether or not arising out of this agreement, may be deducted from any sum due or to become due from the Publisher to the Author pursuant to this agreement. For the purposes of this Paragraph a non-repayable unearned advance made to the Author pursuant to another agreement shall not be construed as being a sum due and owing, unless the Author is in default under such other agreement.

*Law Applicable*

22. This agreement shall be interpreted according to the law of the State of New York.

*Assignment*

23. This agreement shall be binding upon the heirs, executors, administrators and assigns of the Author, and upon the successors and assigns of the Publisher, but no assignment except to an affiliate of the Publisher shall be binding on either of the parties without the written consent of the other.

*Complete Agreement and Modification*

24. This agreement constitutes the complete understanding of the parties. No modification or waiver of any provision shall be valid unless in writing and signed by both parties.

25. All sums of money due the Author under this agreement shall be paid to the Author's agent, McIntosh and Otis, Inc., 18 East 41 Street, New York, New York 10017, and the receipt of the said McIntosh and Otis, Inc., shall be a good and valid discharge of all such indebtedness; and the said McIntosh and Otis, Inc. is hereby empowered by the Author to act in all matters arising from and pertaining to this agreement. The Author does hereby irrevocably assign and transfer to McIntosh and Otis, Inc. and McIntosh and Otis, Inc. shall retain a sum equal to ten percent (10%) out of all monies due and payable to and for the account of the Author under this agreement.

IN WITNESS WHEREOF the parties have duly executed this agreement the day and year first above written.

ALFRED A. KNOPF, INC.

In the presence of

.......................................... By .......................................... *The Publisher*

In the presence of

Matthew B. Miles .......................................... Betty Miles .......................................... *The Author*

1215 7-72



# Alfred · A · Knopf, Inc.

AGREEMENT made this 3rd day of April, 1975, between ALFRED A. KNOPF, INC., 201 East 50th Street, New York, N.Y. 10022 (referred to as the Publisher), and

**Betty Miles**

whose address is **94 Sparkill Avenue**
**Tappan, New York 10983**

who is a citizen of **the United States** and resident of (state) **New York**
(referred to as the Author and designated by the masculine singular pronoun)

WHEREAS the parties wish respectively to publish and have published a work (referred to as the work) of **juvenile fiction** provisionally titled

**ALL IT TAKES IS PRACTICE**

NOW, THEREFORE, they mutually agree as follows:

*Grant of Rights*

1. The Author grants to the Publisher during the term of copyright, including renewals and extensions thereof:

a. Exclusive right in the English language, in the United States of America, the Philippine Republic, and Canada, and non-exclusive right in all other countries except the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, to:

i. Print, publish and sell the work in book form;

ii. License publication of the work (in complete, condensed or abridged versions) by book clubs, including affiliates of the Publisher;

iii. License publication of a reprint edition by another publisher with the consent of the Author. The Author shall be deemed to have given consent if within twenty (20) days after the forwarding of written request he fails to notify the Publisher in writing of his refusal to consent;

iv. License publication of the work (in complete, condensed, adapted or abridged versions) or selections from the work in anthologies and other publications, in mail-order and schoolbook editions, as premiums and other special editions and through microfilm and with the Author's consent Xerox or other forms of copying; **and the non-exclusive right to record or grant licenses to***

[struck out]

vi. License periodical publication after book publication to the extent that any such right is available;

~~vii. subject to the approval of the Author,~~ **Produce, or license** ~~adaptation of the work for filmstrips, printed cartoon versions and mechanical reproduction;~~

INITIAL A P

viii. License, without charge, transcription or publication of the work in Braille or in other forms, for the physically handicapped;

ix. For publicity purposes, publish or permit others to publish or broadcast (but not dramatize) by radio or television, without charge, such selections from the work as in the opinion of the Publisher may benefit its sale.

~~[struck out] than Canada), the Republic of South Africa, and the Irish Republic, the rights granted in subdivision a. above, revocable by the Author with respect to any country for which no license or option has been given within eighteen (18) months after first publication in the United States.~~

c. Exclusive right to license in all foreign languages and all countries, the rights granted in subdivision a. above, revocable by the Author with respect to each language or country for which no license or option has been given within three (3) years after first publication in the United States.

d. Exclusive right to use or license others to use, subject to the approval of the Author, the name and likeness of the Author, the work and the title of the work, in whole or in part, or any adaptation thereof as the basis for trademark or trade name for other products or for any other commercial use in connection [struck out]

*Delivery of Satisfactory Copy*

2. The Author agrees to deliver two complete copies (original and clean copy) of the manuscript of the work in the English language of approximately **30,000** words in length, in content and form satisfactory to the Publisher, together with any permission required pursuant to Paragraph 3, and all photographs, illustrations, drawings, charts, maps and indexes suitable for reproduction and necessary to the completion of the manuscript not later than **April 1, 1976.**

If he fails to do so the Publisher shall have the right to supply them and charge the cost against any sums accruing to the Author. The complete manuscript shall include the following additional items:

If the Author fails to deliver the manuscript within ninety (90) days after the above date the Publisher may terminate this agreement by giving written notice, whereupon the Author agrees to repay forthwith all amounts which may have been advanced hereunder.

*Permission for Copyrighted Material*

3. If the Author incorporates in the work any copyrighted material, he shall procure, at his expense, written permission to reprint it.

***record the text of the work or an adaptation, abridgment or extract thereof in any form of sound reproduction for the school and library markets;**

*Author's Warranties and Indemnities*

4. a. The Author warrants that he is the sole author of the work; that he is the sole owner of all the rights granted to the Publisher; that he has not previously assigned, pledged or otherwise encumbered the same; that he has full power to enter into this agreement; that except for the material obtained pursuant to Paragraph 3 the work is original, has not been published before, and is not in the public domain; that it does not violate any right of privacy; that it is not libelous or obscene; that it does not infringe upon any statutory or common law copyright; and that any recipe, formula or instruction contained in the work is not injurious to the user.

b. In the event of any claim, action or proceeding based upon an alleged violation of any of these warranties (i) the Publisher shall have the right to defend the same through counsel of its own choosing, and (ii) no settlement shall be effected without the prior written consent of the Author, which consent shall not unreasonably be withheld, and (iii) the Author shall hold harmless the Publisher, any seller of the work, and any licensee of a subsidiary right in the work, against any damages finally sustained. If such claim, action or proceeding is successfully defended or settled, the Author's indemnity hereunder shall be limited to fifty per cent (50%) of the expense (including reasonable counsel fees) attributable to such defense or settlement; however, such limitation of liability shall not apply i' the claim, action or proceeding is based on copyright infringement.

c. If any such claim, action or proceeding is instituted, the Publisher shall promptly notify the Author who shall fully cooperate in the defense thereof, and the Publisher may withhold payments of reasonable amounts due him under this or any other agreement between the parties.

d. These warranties and indemnities shall survive the termination of this agreement.

*Conflicting Publication*

5. The Author agrees that during the term of this agreement he will not, without the written permission of the Publisher, publish or permit to be published any material, in book or pamphlet form, based on material in the work.

*Date, Style and Price of Publication*

6. Within ~~xxxxxx~~ **two years** after the Author has delivered the manuscript in conformity with Paragraph 2, the Publisher shall publish the work at its own expense, in such style and manner, under such imprint and at such price as it deems suitable. The Publisher shall not be responsible for delays caused by any circumstance beyond its control. No changes in the manuscript or the provisional title shall be made without the consent of the Author. However, in no event shall the Publisher be obligated to publish a work which in its opinion violates the common law or statutory copyright or the right of privacy of any person or contains libelous or obscene matter.

*Proofreading and Author's Corrections*

7. The Author agrees to read, revise, correct and return promptly all proofs of the work and to pay in cash or, at the option of the Publisher, to have charged against him, the cost of alterations, in type or in plates, required by the Author, other than those due to printer's errors, in excess of ten per cent (10%) of the cost of setting type, provided a statement of these charges is sent to the Author within thirty (30) days of the receipt of the printer's bills and the corrected proofs are presented upon request for his inspection.

*Copyright*

8. The Publisher shall copyright the work in the name of the Author, in the United States, in compliance with the Universal Copyright Convention, and apply for renewals of such copyright. If copyright should be in the name of the Publisher, it shall assign such copyright upon request of the Author. The Publisher agrees to arrange for the sale of the work in Canada. If the Publisher adds illustrations or other material, and if copyright is in the Author's name, he agrees, upon request, to assign the copyright of such material. If the Author retains the right to periodical or foreign publication before publication by the Publisher, he shall notify the Publisher promptly of any arrangement of such publication or any postponement thereof. In the event of a periodical publication, if the copyright shall be in the name of any person other than the Author, he shall promptly deliver to the Publisher a legally recordable assignment of such copyright or of the rights granted. In the event of a publication outside the United States, promptly thereafter, he shall furnish to the Publisher three copies of the first published work and the date of such publication.

*Advance Payments*

9. The Publisher shall pay to the Author as an advance against and on account of all moneys accruing to him under this agreement, the sum of [redacted] dollars ($[redacted]), payable **as follows:**

**[redacted] on signature hereof; and**
**[redacted] on delivery and acceptance of the complete manuscript in conformity with Paragraph 2.**

Any such advance shall not be repayable, provided that the Author has delivered the manuscript in conformity with Paragraph 2 and is not otherwise in default under this agreement.

*Royalty Payments*

10. The Publisher shall pay to the Author a royalty on the retail price of every copy sold by the Publisher, less returns (except as set forth below):

a. **Ten** per cent ( **10** %) up to and including **12,000** copies; **Twelve and one-half** per cent ( **12½** %) in excess of **12,000** copies ~~xxxxxxxxxxxxx xxxxxxx xxxxxxxxxxxxxxxxxxxxxx copies~~

Where the discount in the United States is forty-eight per cent (48%) or more from the retail price, the rate provided in this subdivision a. shall be reduced by one-half the difference between forty-four per cent (44%) and the discount granted. In no event, however, shall such royalty be less than one-half of the rate provided herein. If the semi-annual sales aggregate fewer than 400 copies, the royalty shall be two-thirds (⅔) of the rate provided in this subdivision a. if such copies are sold from a second or subsequent printing. Copies covered by any other subdivision of this Paragraph shall not be included in such computation.

*Mail Order Sales*

b. Five per cent (5%) of the amount received for copies sold directly to the consumer through the medium of mail-order or coupon advertising, or radio or television advertising.

*Premiums and Subscriptions*

c. Five percent (5%) of the amount received for copies sold by the Publisher's Premium or Subscription Books Wholesale Department.

*College Sales*

d. Ten per cent (10%) for hard-cover copies and five per cent (5%) for soft-cover copies sold with a lower retail price as college textbooks.

turns; For a filmstrip made by Publisher pursuant to Paragraph 1.a.vii., 25¢ for every filmstrip sold, less returns;

INITIAL A P

*School Editions*

e. For a School edition the royalty provided in subdivision a. of this Paragraph but no more than:
i. Ten per cent (10%) of the amount received for a Senior High School edition;
ii. Eight per cent (8%) of the amount received for a Junior High School edition;
iii. Six per cent (6%) of the amount received for an Elementary School edition.
iv. Five per cent (5%) of the school list price for copies sold, less returns, in Learnin Units.

*Lower-price Editions*

f. Five per cent (5%) for an edition published at a lower retail price or for an edition in the Modern Library (regular or giant size) or in Vintage Books; and two per cent (2%) or two cents (2¢) per copy, whichever is greater, for an edition in the Modern Library College Editions.

*Export Sales*

g. Ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold for export.

*Special Sales*

h. For copies sold outside normal wholesale and retail trade channels, ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold at a discount between fifty per cent (50%) and sixty per cent (60%) from the retail price and five per cent (5%) of the amount received for copies sold at a discount of sixty per cent (60%) or more from the retail price, or for the use of the plates by any governmental agency.

*No Royalty Copies*

i. No royalty shall be paid on copies sold below or at cost including expenses incurred, or furnished gratis to the Author, or for review, advertising, sample or like purposes.

*Receipts From Other Rights*

INITIAL A P

j. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision a., ii, iii, iv, vi. and vii. At the Author's request his share from book club and reprint licensing, less any unearned advances, shall be paid to him within two weeks after the receipt thereof by the Publisher. If the Publisher rebates to booksellers for unsold copies due to the publication of a lower-price or reprint edition, the royalty on such copies shall be the same as for such lower-price edition.

*First Serial*

[illegible] States and Canada granted pursuant to Paragraph 1, subdivision a., v.

*British*

l. Eighty per cent (80%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision b.

*Translation*

m. Seventy-five per cent (75%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision c.

*Commercial*

n. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision d., provided that all expenses in connection therewith shall be borne by the [illegible]

*Share to Other authors*

o. If any license granted by the Publisher pursuant to Paragraph 1 shall include material of others, the amount payable to the Author shall be inclusive of royalty to other authors.

*Performance Rights*

[illegible]

11. In the event of the disposition of performance rights, the Publisher may grant to the purchaser the privilege to publish excerpts and summaries of the work in the aggregate not to exceed [illegible]* for advertising and exploiting such rights, provided, however, that such grant shall require the purchaser to take all steps which may be necessary to protect the copyright of the work.
*approximately ten per cent (10%) of the text of the work.

*Rights retained by Author*

12. The Author agrees to notify the Publisher promptly of the disposition of any right which the Author has retained for himself.

*Reports and Payments*

13. The Publisher shall render semi-annual statements of accounts to the first day of April and the first day of October, and shall mail such statements during the July and January following, together with checks in payment of the amounts due thereon.

Should the Author receive an overpayment of royalty rising from copies reported sold but subsequently returned, the Publisher may deduct such overpayment from any further sums due the Author.

Upon his written request, the Author may examine or cause to be examined through certified public accountants the books of account of the Publisher in so far as they relate to the sale or licensing of the work.

Notwithstanding anything to the contrary in this or any prior agreement between the parties, the Author shall in no event be entitled to receive under this and all prior agreements with the Publisher more than $ during any one calendar year. If in any one calendar year the total of the sums accruing to the Author under this and all prior agreements with the Publisher shall exceed such amount, he shall be entitled to receive the excess amount in any succeeding calendar year in which the sums accruing to him under this and all prior agreements with the Publisher do not exceed the maximum herein stated, provided that the total amount to which the Author may be entitled under this and all prior agreements with the Publisher in any succeeding calendar year shall not exceed the maximum herein stated.

*Option for Next Work*

14. The Author agrees to grant the first option on to the Publisher his next book-length work of juvenile fiction [illegible] terms be arrange [illegible] of the completed manuscript, which period shall not commence to run prior to one month after the publication of the work covered by this agreement, within which to notify the Author of its decision. If within that time the Publisher shall notify the Author of its desire to publish the manuscript, it shall thereupon negotiate with him with respect to the terms of such publication. If within thirty (30) days thereafter the parties are unable in good faith to arrive at a mutually satisfactory agreement for such publication, the Author shall be free to submit his manuscript elsewhere, provided, however, that he shall not enter into a contract for the publication of such manuscript with any other publisher upon terms less favorable than [illegible]

*Copies to Author*

15. On publication the Publisher shall give ten (10) free copies to the Author, who may purchase further copies for personal use at a discount of forty percent (40%) from the retail price.

*Discontinuance of Publication*

16. If the Publisher fails to keep the work in print and the Author makes written demand to reprint it, the Publisher shall, within sixty (60) days after the receipt of such demand, notify the Author in writing if it intends to comply. Within six (6) months thereafter, the Publisher shall reprint the work unless prevented from doing so by circumstances beyond its control. If the Publisher fails to notify the Author within sixty (60) days that it intends to comply, or, within six (6) months after such notification, the Publisher declines or neglects to reprint the work, then this agreement shall terminate and all rights granted hereunder except those deriving from the option in Paragraph 14 shall revert to the Author, subject to licenses previously granted, provided the Author is not indebted to the Publisher for any sum owing to it under this agreement. After such reversion, the Publisher shall continue to participate to the extent set forth in his agreement in moneys received from any license previously granted by it. Upon such

*r re

termination, the Author shall have the right for thirty (30) days thereafter to purchase the plates, if any, at one-fourth of the cost (including type setting).

If the work is under contract for publication or on sale in any edition in the United States, it shall be considered to be in print. A work shall not be deemed in print by reason of a license granted by the Publisher for the reproduction of single copies of the work. If the Publisher should determine that there is not sufficient sale for the work to enable it to continue its publication and sale profitably, the Publisher may dispose of the copies remaining on hand as it deems best, subject to the royalty provisions of Paragraph 10. In such event, the Author shall have the right, within two (2) weeks of the forwarding of a written notice from the Publisher, to a single purchase of copies at the "remainder" price.

*Author's Property*

17. Except for loss or damage due to its own negligence, the Publisher shall not be responsible for loss of or damage to any property of the Author

*Return of Manuscripts*

18. In the absence of written request from the Author prior to publication for their return, the Publisher, after publication of the work, may dispose of the original manuscript and proofs.

*Suits for Infringement of Copyright*

19. If the copyright of the work is infringed, and if the parties proceed jointly, the expenses and recoveries, if any, shall be shared equally, and if they do not proceed jointly, either party shall have the right to prosecute such action, and such party shall bear the expenses thereof, and any recoveries shall belong to such party; and if such party shall not hold the record title of the copyright, the other party hereby consents that the action be brought in his or its name.

*Bankruptcy and Liquidation*

20. If (a) a petition in bankruptcy is filed by the Publisher, or (b) a petition in bankruptcy is filed against the Publisher and such petition is finally sustained, or (c) a petition for arrangement is filed by the Publisher or a petition for reorganization is filed by or against the Publisher, and an order is entered directing the liquidation of the Publisher as in bankruptcy, or (d) the Publisher makes an assignment for the benefit of creditors, or (e) the Publisher liquidates its business for any cause whatever, the Author may terminate this agreement by written notice and thereupon all rights granted by him hereunder shall revert to him. Upon such termination, the Author, at his option, may purchase the plates as provided in Paragraph 16 and the remaining copies at one-half of the manufacturing cost, exclusive of overhead. If he fails to exercise such option within sixty (60) days after the happening of any one of the events above referred to, the Trustee, Receiver, or Assignee may destroy the plates and sell the copies remaining on hand, subject to the royalty provisions of Paragraph 10.

*Sums Due and Owing*

21. Any sums due and owing from the Author to the Publisher, whether or not arising out of this agreement, may be deducted from any sum due or to become due from the Publisher to the Author pursuant to this agreement. For the purposes of this Paragraph a non-repayable unearned advance made to the Author pursuant to another agreement shall not be construed as being a sum due and owing, unless the Author is in default under such other agreement.

*Law Applicable*

22. This agreement shall be interpreted according to the law of the State of New York.

*Assignment*

23. This agreement shall be binding upon the heirs, executors, administrators and assigns of the Author, and upon the successors and assigns of the Publisher, but no assignment except to an affiliate of the Publisher shall be binding on either of the parties without the written consent of the other.

*Complete Agreement and Modification*

24. This agreement constitutes the complete understanding of the parties. No modification or waiver of any provision shall be valid unless in writing and signed by both parties.

25. All sums of money due the Author under this agreement shall be paid to the Author's agent, McIntosh and Otis, Inc., 18 East 41st Street, New York, New York 10017, and the receipt of the said McIntosh and Otis, Inc., shall be a good and valid discharge of all such indebtedness; and the said McIntosh and Otis, Inc., is hereby empowered by the Author to act in all matters arising from and pertaining to this agreement. The Author does hereby irrevocably assign and transfer to McIntosh and Otis, Inc. and McIntosh and Otis, Inc. shall retain a sum equal to ten per cent (10%) out of all monies due and payable to and for the account of the Author under this agreement.

IN WITNESS WHEREOF the parties have duly executed this agreement the day and year first above written.

In the presence of

ALFRED A. KNOPF, INC.

By ............ *The Publisher*

In the presence of

Ellen Miles ............

Betty Miles ............ *The Author*

1215 7-72

Social Security Number

ad

# Alfred · A · Knopf, Inc.

AGREEMENT made this 29 day of December, 1977, between ALFRED A. KNOPF, INC., 201 East 50th Street, New York, N.Y. 10022 (referred to as the Publisher), and

Betty Miles

whose address is 94 Sparkill Avenue Tappan, NY 10963

who is a citizen of the United States and resident of (state) New York (referred to as the Author and designated by the masculine singular pronoun)

WHEREAS the parties wish respectively to publish and have published a work (referred to as the work) of juvenile fiction provisionally ~~titled~~ UNTITLED Novel, II (I Would If I Could)

NOW, THEREFORE, they mutually agree as follows:

*Grant of Rights*

1. The Author grants to the Publisher during the term of copyright, including renewals and extensions thereof:

a. Exclusive right in the English language, in the United States of America, the Philippine Republic, and Canada, and non-exclusive right in all other countries except the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, to:

i. Print, publish and sell the work in book form;

ii. License publication of the work (in complete, condensed or abridged versions) by book clubs, including affiliates of the Publisher;

iii. License publication of a reprint edition by another publisher with the consent of the Author. The Author shall be deemed to have given consent if within twenty (20) days after the forwarding of written request he fails to notify the Publisher in writing of his refusal to consent;

iv. License publication of the work (in complete, condensed, adapted or abridged versions) or selections from the work in anthologies and other publications, in mail-order and schoolbook editions, as premiums and other special editions and through microfilm and with the Author's consent Xerox or other forms of copying; and the non-exclusive right to record or grant licenses *

~~v. License periodical publication, including magazines, newspapers and digests, prior to book publication;~~

vi. License periodical publication after book publication to the extent that any such right is available;

** ~~vii. Produce, or subject to the approval of the Author, license an adaptation of the work for filmstrips, printed cartoon versions and mechanical reproduction;~~

viii. License, without charge, transcription or publication of the work in Braille or in other forms, for the physically handicapped;

ix. For publicity purposes, publish or permit others to publish or broadcast (but not dramatize) by radio or television, without charge, such selections from the work as in the opinion of the Publisher may benefit its sale.

~~b. Exclusive right to license in the English language throughout the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, the rights granted in subdivision a. above, revocable by the Author with respect to any country for which no license or option has been given within eighteen (18) months after first publication in the United States.~~

~~c. Exclusive right to license in all foreign languages and all countries, the rights granted in subdivision a. above, revocable by the Author with respect to each language or country for which no license or option has been given within three (3) years after first publication in the United States.~~

~~d. Exclusive right to use or license others to use, subject to the approval of the Author, the name and likeness of the Author, the work and the title of the work, in whole or in part, or any adaptation thereof as the basis for trademark or trade name for other products or for any other commercial use in connection with such other products.~~

*Delivery of Satisfactory Copy*

2. The Author agrees to deliver two complete copies (original and clean copy) of the manuscript of the work in the English language of approximately 40,000 words in length, in content and form satisfactory to the Publisher, together with any permission required pursuant to Paragraph 3, and all photographs, illustrations, drawings, charts, maps and indexes suitable for reproduction and necessary to the completion of the manuscript not later than September 1, 1979.

If he fails to do so the Publisher shall have the right to supply them and charge the cost against any sums accruing to the Author. ~~The manuscript shall include the following additional items:~~

If the Author fails to deliver the manuscript within ninety (90) days after the above date the Publisher may terminate this agreement by giving written notice, whereupon the Author agrees to repay forthwith all amounts which may have been advanced hereunder.

*Permission for Copyrighted Material*

3. If the Author incorporates in the work any copyrighted material, he shall procure, at his expense, written permission to reprint it.

| INITIAL | |
|---|---|
| A | BM |
| P | [illegible] |

* To record the text or an adaptation, abridgment, or extract thereof in any form of sound reproduction for the school and library markets;

~~** vii. Produce, or subject to the approval of the Author, license an adaptation of the work for filmstrips, printed cartoon versions and mechanical reproduction.~~

*Author's Warranties and Indemnities*

4. a. The Author warrants that he is the sole author of the work; that he is the sole owner of all the rights granted to the Publisher; that he has not previously assigned, pledged or otherwise encumbered the same; that he has full power to enter into this agreement; that except for the material obtained pursuant to Paragraph 3 the work is original, has not been published before, and is not in the public domain; that it does not violate any right of privacy; that it is not libelous or obscene; that it does not infringe upon any statutory or common law copyright; and that any recipe, formula or instruction contained in the work is not injurious to the user.

b. In the event of any claim, action or proceeding based upon an alleged violation of any of these warranties (i) the Publisher shall have the right to defend the same through counsel of its own choosing, and (ii) no settlement shall be effected without the prior written consent of the Author, which consent shall not unreasonably be withheld, and (iii) the Author shall hold harmless the Publisher, any seller of the work, and any licensee of a subsidiary right in the work, against any damages finally sustained. If such claim, action or proceeding is successfully defended or settled, the Author's indemnity hereunder shall be limited to fifty per cent (50%) of the expense (including reasonable counsel fees) attributable to such defense or settlement; however, such limitation of liability shall not apply i' the claim, action or proceeding is based on copyright infringement.

c. If any such claim, action or proceeding is instituted, the Publisher shall promptly notify the Author who shall fully cooperate in the defense thereof, and the Publisher may withhold payments of reasonable amounts due him under this or any other agreement between the parties.

d. These warranties and indemnities shall survive the termination of this agreement.

*Conflicting Publication*

5. The Author agrees that during the term of this agreement he will not, without the written permission of the Publisher, publish or permit to be published any material, in book or pamphlet form, based on material in the work.

*Date, Style and Price of Publication*

6. Within ~~one year~~ two years after the Author has delivered the manuscript in conformity with Paragraph 2, the Publisher shall publish the work at its own expense, in such style and manner, under such imprint and at such price as it deems suitable. The Publisher shall not be responsible for delays caused by any circumstance beyond its control. No changes in the manuscript or the provisional title shall be made without the consent of the Author. However, in no event shall the Publisher be obligated to publish a work which in its opinion violates the common law or statutory copyright or the right of privacy of any person or contains libelous or obscene matter.

*Proofreading and Author's Corrections*

7. The Author agrees to read, revise, correct and return promptly all proofs of the work and to pay in cash or, at the option of the Publisher, to have charged against him, the cost of alterations, in type or in plates, required by the Author, other than those due to printer's errors, in excess of ten per cent (10%) of the cost of setting type, provided a statement of these charges is sent to the Author within thirty (30) days of the receipt of the printer's bills and the corrected proofs are presented upon request for his inspection.

*Copyright*

8. The Publisher shall copyright the work in the name of the Author, in the United States, in compliance with the Universal Copyright Convention, and apply for renewals of such copyright. If copyright should be in the name of the Publisher, it shall assign such copyright upon request of the Author. The Publisher agrees to arrange for the sale of the work in Canada. If the Publisher adds illustrations or other material, and if copyright is in the Author's name, he agrees, upon request, to assign the copyright of such material. If the Author retains the right to periodical or foreign publication before publication by the Publisher, he shall notify the Publisher promptly of any arrangement of such publication or any postponement thereof. In the event of a periodical publication, if the copyright shall be in the name of any person other than the Author, he shall promptly deliver to the Publisher a legally recordable assignment of such copyright or of the rights granted. In the event of a publication outside the United States, promptly thereafter, he shall furnish to the Publisher three copies of the first published work and the date of such publication.

*Advance Payments*

9. The Publisher shall pay to the Author as an advance against and on account of all moneys accruing to him under this agreement, the sum of [redacted] dollars ($[redacted]), payable as follows:

$[redacted] on signing hereof; and
[redacted] on delivery and acceptance of the complete and satisfactory manuscript in conformity with Paragraph 2.

Any such advance shall not be repayable, provided that the Author has delivered the manuscript in conformity with Paragraph 2 and is not otherwise in default under this agreement.

*Royalty Payments*

10. The Publisher shall pay to the Author a royalty on the retail price of every copy sold by the Publisher, less returns (except as set forth below):

a. Ten per cent ( 10 %) up to and including 10,000 copies; twelve and one-half per cent ( 12½%) in excess of 10,000 copies xxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxx. If the semi-annual sales aggregate fewer than 400 copies, the royalty shall be two-thirds (⅔) of the rate provided in this subdivision a. if such copies are sold from a second or subsequent printing. Copies covered by any other subdivision of this Paragraph shall not be included in such computation. Royalty will be based on amount received for any sales at a discount of more than fifty percent (50%) from the retail price.

*Mail Order Sales*

b. Five per cent (5%) of the amount received for copies sold directly to the consumer through the medium of mail-order or coupon advertising, or radio or television advertising.

*Premiums and Subscriptions*

c. Five percent (5%) of the amount received for copies sold by the Publisher's Premium or Subscription Books Wholesale Department.

*College Sales*

d. Ten per cent (10%) for hard-cover copies and five per cent (5%) for soft-cover copies sold with a lower retail price as college textbooks.

1214-72

For records made by Publisher pursuant to Paragraph 1.a.iv. ~~and filmstrips made by Publisher pursuant to Paragraph 1.a.viii. five percent (5%) of the Publisher's net receipts.~~ five percent (5%) of the Publisher's net receipts.

*School Editions*

e. For a School edition the royalty provided in subdivision a. of this Paragraph but no more than:

i. Ten per cent (10%) of the amount received for a Senior High School edition;
ii. Eight per cent (8%) of the amount received for a Junior High School edition;
iii. Six per cent (6%) of the amount received for an Elementary School edition.
iv. Five percent (5%) of the school list price for copies sold, less returns Learning Units.

*Lower-price Editions*

f. Five per cent (5%) for an edition published at a lower retail price or for an edition in the Modern Library (regular or giant size) or in Vintage Books; and two per cent (2%) or two cents (2¢) per copy, whichever is greater, for an edition in the Modern Library College Editions.

*Export Sales*

g. Ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold for export.

*Special Sales*

h. For copies sold outside normal wholesale and retail trade channels, ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold at a discount between fifty per cent (50%) and sixty per cent (60%) from the retail price and five per cent (5%) of the amount received for copies sold at a discount of sixty per cent (60%) or more from the retail price, or for the use of the plates by any governmental agency.

*No Royalty Copies*

i. No royalty shall be paid on copies sold below or at cost including expenses incurred, or furnished gratis to the Author, or for review, advertising, sample or like purposes.

*Receipts From Other Rights*

j. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision a., ii, iii, iv, vi ~~and vii.~~ At the Author's request his share from book club and reprint licensing, less any unearned advances, shall be paid to him within two weeks after the receipt thereof by the Publisher. If the Publisher rebates to booksellers for unsold copies due to the publication of a lower-price or reprint edition, the royalty on such copies shall be the same as for such lower-price edition.

*First Serial*

~~k. Ninety per cent (90%) of the amount received from the disposition of licenses in the United~~ States and Canada granted pursuant to Paragraph 1, subdivision a., v.

*British*

l. Eighty per cent (80%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision b.

*Translation*

m. Seventy-five per cent (75%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision c.

*Commercial*

n. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision d., provided that all expenses in connection therewith shall be borne by the ~~Publisher.~~

*Share to Other authors*

o. If any license granted by the Publisher pursuant to Paragraph 1 shall include material of others, the amount payable to the Author shall be inclusive of royalty to other authors.

*Performance Rights*

~~11. The Author appoints the Publisher as his exclusive agent to dispose of the performance rights including dramatic, musical, radio, television, motion picture and allied rights ... consent, and the Publisher shall receive a commission of ten per cent (10%) of the amount received.~~

In the event of the disposition of performance rights, the Publisher may grant to the purchaser the privilege to publish excerpts and summaries of the work in the aggregate not to exceed ~~7,500 words~~* for advertising and exploiting such rights, provided, however, that such grant shall require the purchaser to take all steps which may be necessary to protect the copyright of the work.

* approximately ten percent of the text of the work

*Rights retained by Author*

12. The Author agrees to notify the Publisher promptly of the disposition of any right which the Author has retained for himself.

*Reports and Payments*

13. The Publisher shall render semi-annual statements of accounts to the first day of April and the first day of October, and shall mail such statements during the July and January following, together with checks in payment of the amounts due thereon.

Should the Author receive an overpaymen: of royalty rising from copies reported sold but subsequently returned, the Publisher may deduct such overpayment from any further sums due the Author.

Upon his written request, the Author may examine or cause to be examined through certified public accountants the books of account of the Publisher in so far as they relate to the sale or licensing of the work.

~~Notwithstanding anything to the contrary in this or any prior agreement between the parties the Author shall in no event be entitled to receive under this and all prior agreements with the Publisher more than $ during any one calendar year. If in any one calendar year the total of the sums accruing to the Author under this and all prior agreements with the Publisher shall exceed such amount, he shall be entitled to receive the excess amount in any succeeding calendar year in which the sums accruing to him under this and all prior agreements with the Publisher do not exceed the maximum herein stated, provided that the total amount to which the Author may be entitled under this and all prior agreements with the Publisher in any succeeding calendar year shall not exceed the maximum herein stated.~~

*Option for Next Work*

14. The Author agrees to ~~submit~~ grant to the Publisher ~~his~~ option on next book-length work of juvenile fiction on terms to be arranged. ~~before submitting the same to any other publisher. The Publisher shall be entitled to a period of six weeks after the submission of the completed manuscript, which period shall not commence to run prior to one month after the publication of the work covered by this agreement, within which to notify the Author of its decision. If within that time the Publisher shall notify the Author of its desire to publish the manuscript, it shall thereupon negotiate with him with respect to the terms of such publication. If within thirty (30) days thereafter the parties are unable in good faith to arrive at a mutually satisfactory agreement for such publication, the Author shall be free to submit his manuscript elsewhere, provided, however, that he shall not enter into a contract for the publication of such manuscript with any other publisher upon terms less favorable than those offered by the Publisher.~~

*Copies to Author*

15. On publication the Publisher shall give ten (10) free copies to the Author, who may purchase further copies for personal use at a discount of forty percent (40%) from the retail price.

*Discontinuance of Publication*

16. If the Publisher fails to keep the work in print and the Author makes written demand to reprint it, the Publisher shall, within sixty (60) days after the receipt of such demand, notify the Author in writing if it intends to comply. Within six (6) months thereafter, the Publisher shall reprint the work unless prevented from doing so by circumstances beyond its control. If the Publisher fails to notify the Author within sixty (60) days that it intends to comply, or, within six (6) months after such notification, the Publisher declines or neglects to reprint the work, then this agreement shall terminate and all rights granted hereunder except those deriving from the option in Paragraph 14 shall revert to the Author, subject to licenses previously granted, provided the Author is not indebted to the Publisher for any sum owing to it under this agreement. After such reversion, the Publisher shall continue to participate to the extent set forth in his agreement in moneys received from any license previously granted by it. Upon such

termination, the Author shall have the right for thirty (30) days thereafter to purchase the plates, if any, at one-fourth of the cost (including type setting).

If the work is under contract for publication or on sale in any edition in the United States, it shall be considered to be in print. A work shall not be deemed in print by reason of a license granted by the Publisher for the reproduction of single copies of the work. If the Publisher should determine that there is not sufficient sale for the work to enable it to continue its publication and sale profitably, the Publisher may dispose of the copies remaining on hand as it deems best, subject to the royalty provisions of Paragraph 10. In such event, the Author shall have the right, within two (2) weeks of the forwarding of a written notice from the Publisher, to a single purchase of copies at the "remainder" price.

*Author's Property*

17. Except for loss or damage due to its own negligence, the Publisher shall not be responsible for loss of or damage to any property of the Author

*Return of Manuscripts*

18. In the absence of written request from the Author prior to publication for their return, the Publisher, after publication of the work, may dispose of the original manuscript and proofs.

*Suits for Infringement of Copyright*

19. If the copyright of the work is infringed, and if the parties proceed jointly, the expenses and recoveries, if any, shall be shared equally, and if they do not proceed jointly, either party shall have the right to prosecute such action, and such party shall bear the expenses thereof, and any recoveries shall belong to such party; and if such party shall not hold the record title of the copyright, the other party hereby consents that the action be brought in his or its name.

*Bankruptcy and Liquidation*

20. If (a) a petition in bankruptcy is filed by the Publisher, or (b) a petition in bankruptcy is filed against the Publisher and such petition is finally sustained, or (c) a petition for arrangement is filed by the Publisher or a petition for reorganization is filed by or against the Publisher, and an order is entered directing the liquidation of the Publisher as in bankruptcy, or (d) the Publisher makes an assignment for the benefit of creditors, or (e) the Publisher liquidates its business for any cause whatever, the Author may terminate this agreement by written notice and thereupon all rights granted by him hereunder shall revert to him. Upon such termination, the Author, at his option, may purchase the plates as provided in Paragraph 16 and the remaining copies at one-half of the manufacturing cost, exclusive of overhead. If he fails to exercise such option within sixty (60) days after the happening of any one of the events above referred to, the Trustee, Receiver, or Assignee may destroy the plates and sell the copies remaining on hand, subject to the royalty provisions of Paragraph 10.

*Sums Due and Owing*

21. Any sums due and owing from the Author to the Publisher, whether or not arising out of this agreement, may be deducted from any sum due or to become due from the Publisher to the Author pursuant to this agreement. For the purposes of this Paragraph a non-repayable unearned advance made to the Author pursuant to another agreement shall not be construed as being a sum due and owing, unless the Author is in default under such other agreement.

*Law Applicable*

22. This agreement shall be interpreted according to the law of the State of New York.

*Assignment*

23. This agreement shall be binding upon the heirs, executors, administrators and assigns of the Author, and upon the successors and assigns of the Publisher, but no assignment except to an affiliate of the Publisher shall be binding on either of the parties without the written consent of the other.

*Complete Agreement and Modification*

24. This agreement constitutes the complete understanding of the parties. No modification or waiver of any provision shall be valid unless in writing and signed by both parties.

25. All sums of money due the Author under this agreement shall be paid to the Author's agent, McIntosh and Otis, Inc., 475 Fifth Avenue, New York, New York 10017, and the receipt of the said McIntosh and Otis, Inc. shall be a good and valid discharge of all such indebtedness; and the said McIntosh and Otis, Inc. is hereby empowered by the Author to act in all matters arising from and pertaining to this agreement. The Author does hereby irrevocably assign and transfer to McIntosh and Otis, Inc. and McIntosh and Otis, Inc. shall retain a sum equal to ten percent (10%) out of all monies due and payable to and for the account of the Author under this agreement.

IN WITNESS WHEREOF the parties have duly executed this agreement the day and year first above written.

ALFRED A. KNOPF, INC.

In the presence of

.................................... By ....................................
*The Publisher*

In the presence of

.................................... ....................................
*The Author*

1215 7-72

....................................
Social Security Number

# Alfred · A · Knopf, Inc.

AGREEMENT made this day of , 19 , between ALFRED A. KNOPF, INC., 201 East 50th Street, New York, N.Y. 10022 (referred to as the Publisher), and

Betty Miles

whose address is 94 Sparkill Avenue
Tappan, New York 10963

who is a citizen of the United States and resident of (state) New York

(referred to as the Author and designated by the masculine singular pronoun)

WHEREAS the parties wish respectively to publish and have published a work (referred to as the work) of juvenile fiction provisionally titled

LOOKING ON

NOW, THEREFORE, they mutually agree as follows:

*Grant of Rights*

1. The Author grants to the Publisher during the term of copyright, including renewals and extensions thereof:

a. Exclusive right in the English language, in the United States of America, the Philippine Republic, and Canada, and non-exclusive right in all other countries except the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, to:

i. Print, publish and sell the work in book form;

ii. License publication of the work (in complete, condensed or abridged versions) by book clubs, including affiliates of the Publisher;

iii. License publication of a reprint edition by another publisher with the consent of the Author. The Author shall be deemed to have given consent if within twenty (20) days after the forwarding of written request he fails to notify the Publisher in writing of his refusal to consent;

iv. License publication of the work (in complete, condensed, adapted or abridged versions) or selections from the work in anthologies and other publications, in mail-order and schoolbook editions, as premiums and other special editions and through microfilm and with the Author's consent Xerox or other forms of copying; and the non-exclusive right to record or grant licenses to*

[struck out]

vi. License periodical publication after book publication to the extent that any such right is available;

** [struck out];

viii. License, without charge, transcription or publication of the work in Braille or in other forms, for the physically handicapped;

ix. For publicity purposes, publish or permit others to publish or broadcast (but not dramatize) by radio or television, without charge, such selections from the work as in the opinion of the Publisher may benefit its sale.

~~b. Exclusive right in the English language throughout the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, the rights granted in subdivision a. above, revocable by the Author with respect to any country for which no license or option has been given within eighteen (18) months after first publication in the United States.~~

~~c. Exclusive right to license in all foreign languages and all countries, the rights granted in subdivision a. above, revocable by the Author with respect to each language or country for which no license or option has been given within three (3) years after first publication in the United States.~~

~~d. Exclusive right to use or license others to use, subject to the approval of the Author, the name and likeness of the Author, the work and the title of the work, in whole or in part, or any adaptation thereof as the basis for trademark or trade name for other products or for any other commercial use in connection [struck out].~~

*Delivery of Satisfactory Copy*

2. The Author agrees to deliver two complete copies (original and clean copy) of the manuscript of the work in the English language of approximately 40,000 words in length, in content and form satisfactory to the Publisher, together with any permission required pursuant to Paragraph 3, and all photographs, illustrations, drawings, charts, maps and indexes suitable for reproduction and necessary to the completion of the manuscript not later than April 1, 1977

If he fails to do so the Publisher shall have the right to supply them and charge the cost against any sums accruing to the Author [struck out].

If the Author fails to deliver the manuscript within ninety (90) days after the above date the Publisher may terminate this agreement by giving written notice, whereupon the Author agrees to repay forthwith all amounts which may have been advanced hereunder.

*Permission for Copyrighted Material*

3. If the Author incorporates in the work any copyrighted material, he shall procure, at his expense, written permission to reprint it.

*record the text or an adaptation, abridgment, or extract thereof in any form of sound reproduction for the school and library markets:

~~**vii. Produce, or subject to the approval of the Author, license an adaptation of the work for filmstrips, printed cartoon versions and mechanical reproduction.~~

BM

returns. For a filmstrip made by Publisher pursuant to Paragraph 1.a.vii., 25¢ per filmstrip sold, less returns.

*School Editions*

e./For a School edition the royalty provided in subdivision a. of this Paragraph but no more than:

i. Ten per cent (10%) of the amount received for a Senior High School edition;

ii. Eight per cent (8%) of the amount received for a Junior High School edition;

iii. Six per cent (6%) of the amount received for an Elementary School edition.

iv. Five percent (5%) of the school list price for copies sold, less returns in Learning Units.

*Lower-price Editions*

f. Five per cent (5%) for an edition published at a lower retail price or for an edition in the Modern Library (regular or giant size) or in Vintage Books; and two per cent (2%) or two cents (2¢) per copy, whichever is greater, for an edition in the Modern Library College Editions.

*Export Sales*

g. Ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold for export.

*Special Sales*

h. For copies sold outside normal wholesale and retail trade channels, ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold at a discount between fifty per cent (50%) and sixty per cent (60%) from the retail price and five per cent (5%) of the amount received for copies sold at a discount of sixty per cent (60%) or more from the retail price, or for the use of the plates by any governmental agency.

*No Royalty Copies*

i. No royalty shall be paid on copies sold below or at cost including expenses incurred, or furnished gratis to the Author, or for review, advertising, sample or like purposes.

*Receipts From Other Rights*

j. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision a., ii, iii, iv, vi and ~~vii.~~ At the Author's request his share from book club and reprint licensing, less any unearned advances, shall be paid to him within two weeks after the receipt thereof by the Publisher. If the Publisher rebates to booksellers for unsold copies due to the publication of a lower-price or reprint edition, the royalty on such copies shall be the same as for such lower-price edition.

*First Serial*

~~States and Canada granted pursuant to Paragraph 1, subdivision a., v.~~

*British*

l. Eighty per cent (80%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision b.

*Translation*

m. Seventy-five per cent (75%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision c.

*Commercial*

n. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision d., provided that all expenses in connection therewith shall be borne by the Publisher.

*Share to Other authors*

o. If any license granted by the Publisher pursuant to Paragraph 1 shall include material of others, the amount payable to the Author shall be inclusive of royalty to other authors.

*Performance Rights*

11. In the event of the disposition of performance rights, the Publisher may grant to the purchaser the privilege to publish excerpts and summaries of the work in the aggregate not to exceed ~~7,500 words~~ * for advertising and exploiting such rights, provided, however, that such grant shall require the purchaser to take all steps which may be necessary to protect the copyright of the work. * 10% of the text of the work

*Rights retained by Author*

12. The Author agrees to notify the Publisher promptly of the disposition of any right which the Author has retained for himself.

*Reports and Payments*

13. The Publisher shall render semi-annual statements of accounts to the first day of April and the first day of October, and shall mail such statements during the July and January following, together with checks in payment of the amounts due thereon.

Should the Author receive an overpayment of royalty rising from copies reported sold but subsequently returned, the Publisher may deduct such overpayment from any further sums due the Author.

Upon his written request, the Author may examine or cause to be examined through certified public accountants the books of account of the Publisher in so far as they relate to the sale or licensing of the work.

~~Notwithstanding anything to the contrary in this or any prior agreement between the parties, the Author shall in no event be entitled to receive under this and all prior agreements with the Publisher more than $ during any one calendar year. If in any one calendar year the total of the sums accruing to the Author under this and all prior agreements with the Publisher shall exceed such amount, he shall be entitled to receive the excess amount in any succeeding calendar year in which the sums accruing to him under this and all prior agreements with the Publisher do not exceed the maximum herein stated, provided that the total amount to which the Author may be entitled under this and all prior agreements with the Publisher in any succeeding calendar year shall not exceed the maximum herein stated.~~

*Option for Next Work*

14. The Author agrees to ~~submit to~~ grant the Publisher option on his next book-length work of juvenile fiction on the to be accra[illegible] ~~before submitting the same to any other publisher~~. The Publisher shall be entitled to a period of six weeks after the submission of the completed manuscript, which period shall not commence to run prior to one month after the publication of the work covered by this agreement, within which to notify the Author of its decision. If within that time the Publisher shall notify the Author of its desire to publish the manuscript, it shall thereupon negotiate with him with respect to the terms of such publication. If within thirty (30) days thereafter the parties are unable in good faith to arrive at a mutually satisfactory agreement for such publication, the Author shall be free to submit his manuscript elsewhere, provided, however, that he shall not enter into a contract for the publication of such manuscript with any other publisher upon terms less favorable than ~~those offered by the Publisher~~.

*Copies to Author*

15. On publication the Publisher shall give ten (10) free copies to the Author, who may purchase further copies for personal use at a discount of forty percent (40%) from the retail price.

*Discontinuance of Publication*

16. If the Publisher fails to keep the work in print and the Author makes written demand to reprint it, the Publisher shall, within sixty (60) days after the receipt of such demand, notify the Author in writing if it intends to comply. Within six (6) months thereafter, the Publisher shall reprint the work unless prevented from doing so by circumstances beyond its control. If the Publisher fails to notify the Author within sixty (60) days that it intends to comply, or, within six (6) months after such notification, the Publisher declines or neglects to reprint the work, then this agreement shall terminate and all rights granted hereunder except those deriving from the option in Paragraph 14 shall revert to the Author, subject to licenses previously granted, provided the Author is not indebted to the Publisher for any sum owing to it under this agreement. After such reversion, the Publisher shall continue to participate to the extent set forth in his agreement in moneys received from any license previously granted by it. Upon such




returns. For a filmstrip made by Publisher pursuant to paragraph 1.a.vii., 25¢ per filmstrip sold, less returns.

*School Editions*

e./For a School edition the royalty provided in subdivision a. of this Paragraph but no more than:
i. Ten per cent (10%) of the amount received for a Senior High School edition;
ii. Eight per cent (8%) of the amount received for a Junior High School edition;
iii. Six per cent (6%) of the amount received for an Elementary School edition.
iv. Five percent (5%) of the school list price for copies sold, less returns in Learning Units.

*Lower-price Editions*

f. Five per cent (5%) for an edition published at a lower retail price or for an edition in the Modern Library (regular or giant size) or in Vintage Books; and two per cent (2%) or two cents (2¢) per copy, whichever is greater, for an edition in the Modern Library College Editions.

*Export Sales*

g. Ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold for export.

*Special Sales*

h. For copies sold outside normal wholesale and retail trade channels, ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold at a discount between fifty per cent (50%) and sixty per cent (60%) from the retail price and five per cent (5%) of the amount received for copies sold at a discount of sixty per cent (60%) or more from the retail price, or for the use of the plates by any governmental agency.

*No Royalty Copies*

i. No royalty shall be paid on copies sold below or at cost including expenses incurred, or furnished gratis to the Author, or for review, advertising, sample or like purposes.

*Receipts From Other Rights*

j. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision a., ii, iii, iv, vi and ~~vii.~~ At the Author's request his share from book club and reprint licensing, less any unearned advances, shall be paid to him within two weeks after the receipt thereof by the Publisher. If the Publisher rebates to booksellers for unsold copies due to the publication of a lower-price or reprint edition, the royalty on such copies shall be the same as for such lower-price edition.

*First Serial*

~~k. Ninety per cent (90%) of the amount received from the disposition of licenses to publish in the United~~ States and Canada granted pursuant to Paragraph 1, subdivision a., v.

*British*

l. Eighty per cent (80%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision b.

*Translation*

m. Seventy-five per cent (75%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision c.

*Commercial*

n. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision d., provided that all expenses in connection therewith shall be borne by the ~~Publisher.~~

*Share to Other authors*

o. If any license granted by the Publisher pursuant to Paragraph 1 shall include material of others, the amount payable to the Author shall be inclusive of royalty to other authors.

*Performance Rights*

~~11. The Author appoints the Publisher as his exclusive agent for the disposition of the performance rights including dramatic, musical, radio, television, motion picture and allied rights, subject to the Author's consent, and the Publisher shall receive a commission of ten per cent (10%) of the amount received.~~

11. In the event of the disposition of performance rights, the Publisher may grant to the purchaser the privilege to publish excerpts and summaries of the work in the aggregate not to exceed ~~7,500 words~~ * for advertising and exploiting such rights, provided, however, that such grant shall require the purchaser to take all steps which may be necessary to protect the copyright of the work. * 10% of the text of the work

*Rights retained by Author*

12. The Author agrees to notify the Publisher promptly of the disposition of any right which the Author has retained for himself.

*Reports and Payments*

13. The Publisher shall render semi-annual statements of accounts to the first day of April and the first day of October, and shall mail such statements during the July and January following, together with checks in payment of the amounts due thereon.

Should the Author receive an overpayment of royalty rising from copies reported sold but subsequently returned, the Publisher may deduct such overpayment from any further sums due the Author.

Upon his written request, the Author may examine or cause to be examined through certified public accountants the books of account of the Publisher in so far as they relate to the sale or licensing of the work.

~~Notwithstanding anything to the contrary in this or any prior agreement between the parties, the Author shall in no event be entitled to receive under this and all prior agreements with the Publisher more than $ during any one calendar year. If in any one calendar year the total of the sums accruing to the Author under this and all prior agreements with the Publisher shall exceed such amount, he shall be entitled to receive the excess amount in any succeeding calendar year in which the sums accruing to him under this and all prior agreements with the Publisher do not exceed the maximum herein stated, provided that the total amount to which the Author may be entitled under this and all prior agreements with the Publisher in any succeeding calendar year shall not exceed the maximum herein stated.~~

*Option for Next Work*

14. The Author agrees to ~~submit to~~ grant the Publisher option on his next book-length work of juvenile fiction on terms to be arranged ~~before submitting the same to any other publisher~~. The Publisher shall be entitled to a period of six weeks after the submission of the completed manuscript, which period shall not commence to run prior to one month after the publication of the work covered by this agreement, within which to notify the Author of its decision. If within that time the Publisher shall notify the Author of its desire to publish the manuscript, it shall thereupon negotiate with him with respect to the terms of such publication. If within thirty (30) days thereafter the parties are unable in good faith to arrive at a mutually satisfactory agreement for such publication, the Author shall be free to submit his manuscript elsewhere, provided, however, that he shall not enter into a contract for the publication of such manuscript with any other publisher upon terms less favorable than those offered by the Publisher.

*Copies to Author*

15. On publication the Publisher shall give ten (10) free copies to the Author, who may purchase further copies for personal use at a discount of forty percent (40%) from the retail price.

*Discontinuance of Publication*

16. If the Publisher fails to keep the work in print and the Author makes written demand to reprint it, the Publisher shall, within sixty (60) days after the receipt of such demand, notify the Author in writing if it intends to comply. Within six (6) months thereafter, the Publisher shall reprint the work unless prevented from doing so by circumstances beyond its control. If the Publisher fails to notify the Author within sixty (60) days that it intends to comply, or, within six (6) months after such notification, the Publisher declines or neglects to reprint the work, then this agreement shall terminate and all rights granted hereunder except those deriving from the option in Paragraph 14 shall revert to the Author, subject to licenses previously granted, provided the Author is not indebted to the Publisher for any sum owing to it under this agreement. After such reversion, the Publisher shall continue to participate to the extent set forth in his agreement in moneys received from any license previously granted by it. Upon such

termination, the Author shall have the right for thirty (30) days thereafter to purchase the plates, if any, at one-fourth of the cost (including type setting).

If the work is under contract for publication or on sale in any edition in the United States, it shall be considered to be in print. A work shall not be deemed in print by reason of a license granted by the Publisher for the reproduction of single copies of the work. If the Publisher should determine that there is not sufficient sale for the work to enable it to continue its publication and sale profitably, the Publisher may dispose of the copies remaining on hand as it deems best, subject to the royalty provisions of Paragraph 10. In such event, the Author shall have the right, within two (2) weeks of the forwarding of a written notice from the Publisher, to a single purchase of copies at the "remainder" price.

*Author's Property*

17. Except for loss or damage due to its own negligence, the Publisher shall not be responsible for loss of or damage to any property of the Author

*Return of Manuscripts*

18. In the absence of written request from the Author prior to publication for their return, the Publisher, after publication of the work, may dispose of the original manuscript and proofs.

*Suits for Infringement of Copyright*

19. If the copyright of the work is infringed, and if the parties proceed jointly, the expenses and recoveries, if any, shall be shared equally, and if they do not proceed jointly, either party shall have the right to prosecute such action, and such party shall bear the expenses thereof, and any recoveries shall belong to such party; and if such party shall not hold the record title of the copyright, the other party hereby consents that the action be brought in his or its name.

*Bankruptcy and Liquidation*

20. If (a) a petition in bankruptcy is filed by the Publisher, or (b) a petition in bankruptcy is filed against the Publisher and such petition is finally sustained, or (c) a petition for arrangement is filed by the Publisher or a petition for reorganization is filed by or against the Publisher, and an order is entered directing the liquidation of the Publisher as in bankruptcy, or (d) the Publisher makes an assignment for the benefit of creditors, or (e) the Publisher liquidates its business for any cause whatever, the Author may terminate this agreement by written notice and thereupon all rights granted by him hereunder shall revert to him. Upon such termination, the Author, at his option, may purchase the plates as provided in Paragraph 16 and the remaining copies at one-half of the manufacturing cost, exclusive of overhead. If he fails to exercise such option within sixty (60) days after the happening of any one of the events above referred to, the Trustee, Receiver, or Assignee may destroy the plates and sell the copies remaining on hand, subject to the royalty provisions of Paragraph 10.

*Sums Due and Owing*

21. Any sums due and owing from the Author to the Publisher, whether or not arising out of this agreement, may be deducted from any sum due or to become due from the Publisher to the Author pursuant to this agreement. For the purposes of this Paragraph a non-repayable unearned advance made to the Author pursuant to another agreement shall not be construed as being a sum due and owing, unless the Author is in default under such other agreement.

*Law Applicable*

22. This agreement shall be interpreted according to the law of the State of New York.

*Assignment*

23. This agreement shall be binding upon the heirs, executors, administrators and assigns of the Author, and upon the successors and assigns of the Publisher, but no assignment except to an affiliate of the Publisher shall be binding on either of the parties without the written consent of the other.

*Complete Agreement and Modification*

24. This agreement constitutes the complete understanding of the parties. No modification or waiver of any provision shall be valid unless in writing and signed by both parties.

25. All sums of money due the Author under this agreement shall be paid to the Author's agent, McIntosh and Otis, Inc., 475 Fifth Avenue, New York, New York 10017, and the receipt of the said McIntosh and Otis, Inc. shall be a good and valid discharge of all such indebtedness; and the said McIntosh and Otis, Inc. is hereby empowered by the Author to act in all matters arising from and pertaining to this agreement. The Author does hereby irrevocably assign and transfer to McIntosh and Otis, Inc. and McIntosh and Otis, Inc. shall retain a sum equal to ten percent (10%) out of all monies due and payable to and for the account of the Author under this agreement.

IN WITNESS WHEREOF the parties have duly executed this agreement the day and year first above written.

In the presence of ..............................

ALFRED A. KNOPF, INC.

By [signature] *The Publisher*

In the presence of [signature: Matthew B. Wales]

[signature: Betty Miles] *The Author*

1215 7-72

[redacted]

Social Security Number

RJC:Ross:nk

 # Alfred · A · Knopf, Inc.

AGREEMENT made this 21st day of July, 1975, between ALFRED A. KNOPF, INC., 201 East 50th Street, New York, N.Y. 10022 (referred to as the Publisher), and Betty Miles whose address is c/o McIntosh and Otis, Inc. 18 East 41st Street New York, New York 10017 who is a citizen of the United States and resident of (state) New York (referred to as the Author and designated by the masculine singular pronoun)

WHEREAS the parties wish respectively to publish and have published a work (referred to as the work) of juvenile fiction provisionally titled ~~WHERE I'M GOING~~ Here I Come Just The Beginning

NOW, THEREFORE, they mutually agree as follows:

*Grant of Rights*

1. The Author grants to the Publisher during the term of copyright, including renewals and extensions thereof:

a. Exclusive right in the English language, in the United States of America, the Philippine Republic, and Canada, and non-exclusive right in all other countries except the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, to:

i. Print, publish and sell the work in book form;

ii. License publication of the work (in complete, condensed or abridged versions) by book clubs, including affiliates of the Publisher;

iii. License publication of a reprint edition by another publisher with the consent of the Author. The Author shall be deemed to have given consent if within twenty (20) days after the forwarding of written request he fails to notify the Publisher in writing of his refusal to consent;

iv. License publication of the work (in complete, condensed, adapted or abridged versions) or selections from the work in anthologies and other publications, in mail-order and schoolbook editions, as premiums and other special editions and through microfilm and with the Author's consent Xerox or other forms of copying; and the non-exclusive right to record or grant licenses*

[struck out]

vi. License periodical publication after book publication to the extent that any such right is available;

[struck out]

viii. License, without charge, transcription or publication of the work in Braille or in other forms, for the physically handicapped;

ix. For publicity purposes, publish or permit others to publish or broadcast (but not dramatize) by radio or television, without charge, such selections from the work as in the opinion of the Publisher may benefit its sale.

~~[struck out] than Canada), the Republic of South Africa, and the Irish Republic, the rights granted in subdivision a. above, revocable by the Author with respect to any country for which no license or option has been given within eighteen (18) months after first publication in the United States.~~

c. Exclusive right to license in all foreign languages ~~and all~~ countries, the rights granted in subdivision a. above, revocable by the Author with respect ~~to~~ each language or country for which no license or option has been given within three (3) ~~years~~ after first publication in the United States.

d. Exclusive right to ~~use or~~ license others to use, subject to the approval of the Author, the name and likeness of the ~~Author,~~ the work and the title of the work, in whole or in part, or any adaptation thereof as the ~~basis for~~ trademark or trade name for other products or for any other commercial use in connection [struck out]

*Delivery of Satisfactory Copy*

2. The Author agrees to deliver two complete copies (original and clean copy) of the manuscript of the work in the English language of approximately 30,000 words in length, in content and form satisfactory to the Publisher, together with any permission required pursuant to Paragraph 3, and all photographs, illustrations, drawings, charts, maps and indexes suitable for reproduction and necessary to the completion of the manuscript not later than October 1, 1975.

If he fails to do so the Publisher shall have the right to supply them and charge the cost against any sums accruing to the Author. The complete manuscript shall include the following additional items:

If the Author fails to deliver the manuscript within ninety (90) days after the above date the Publisher may terminate this agreement by giving written notice, whereupon the Author agrees to repay forthwith all amounts which may have been advanced hereunder.

*Permission for Copyrighted Material*

3. If the Author incorporates in the work any copyrighted material, he shall procure, at his expense, written permission to reprint it.

*to record the text of the work or an adaptation, abridgment or extract thereof in any form of sound reproduction for the school and library markets;

*Author's Warranties and Indemnities*

4. a. The Author warrants that he is the sole author of the work; that he is the sole owner of all the rights granted to the Publisher; that he has not previously assigned, pledged or otherwise encumbered the same; that he has full power to enter into this agreement; that except for the material obtained pursuant to Paragraph 3 the work is original, has not been published before, and is not in the public domain; that it does not violate any right of privacy; that it is not libelous or obscene; that it does not infringe upon any statutory or common law copyright; and that any recipe, formula or instruction contained in the work is not injurious to the user.

b. In the event of any claim, action or proceeding based upon an alleged violation of any of these warranties (i) the Publisher shall have the right to defend the same through counsel of its own choosing, and (ii) no settlement shall be effected without the prior written consent of the Author, which consent shall not unreasonably be withheld, and (iii) the Author shall hold harmless the Publisher, any seller of the work, and any licensee of a subsidiary right in the work, against any damages finally sustained. If such claim, action or proceeding is successfully defended or settled, the Author's indemnity hereunder shall be limited to fifty per cent (50%) of the expense (including reasonable counsel fees) attributable to such defense or settlement; however, such limitation of liability shall not apply i' the claim, action or proceeding is based on copyright infringement.

c. If any such claim, action or proceeding is instituted, the Publisher shall promptly notify the Author who shall fully cooperate in the defense thereof, and the Publisher may withhold payments of reasonable amounts due him under this or any other agreement between the parties.

d. These warranties and indemnities shall survive the termination of this agreement.

*Conflicting Publication*

5. The Author agrees that during the term of this agreement he will not, without the written permission of the Publisher, publish or permit to be published any material, in book or pamphlet form, based on material in the work.

*Date, Style and Price of Publication*

6. Within **two years** after the Author has delivered the manuscript in conformity with Paragraph 2, the Publisher shall publish the work at its own expense, in such style and manner, under such imprint and at such price as it deems suitable. The Publisher shall not be responsible for delays caused by any circumstance beyond its control. No changes in the manuscript or the provisional title shall be made without the consent of the Author. However, in no event shall the Publisher be obligated to publish a work which in its opinion violates the common law or statutory copyright or the right of privacy of any person or contains libelous or obscene matter.

*Proofreading and Author's Corrections*

7. The Author agrees to read, revise, correct and return promptly all proofs of the work and to pay in cash or, at the option of the Publisher, to have charged against him, the cost of alterations, in type or in plates, required by the Author, other than those due to printer's errors, in excess of ten per cent (10%) of the cost of setting type, provided a statement of these charges is sent to the Author within thirty (30) days of the receipt of the printer's bills and the corrected proofs are presented upon request for his inspection.

*Copyright*

8. The Publisher shall copyright the work in the name of the Author, in the United States, in compliance with the Universal Copyright Convention, and apply for renewals of such copyright. If copyright should be in the name of the Publisher, it shall assign such copyright upon request of the Author. The Publisher agrees to arrange for the sale of the work in Canada. *If the Publisher adds illustrations or other* material, and if copyright is in the Author's name, he agrees, upon request, to assign the copyright of such material. If the Author retains the right to periodical or foreign publication before publication by the Publisher, he shall notify the Publisher promptly of any arrangement of such publication or any postponement thereof. In the event of a periodical publication, if the copyright shall be in the name of any person other than the Author, he shall promptly deliver to the Publisher a legally recordable assignment of such copyright or of the rights granted. In the event of a publication outside the United States, promptly thereafter, he shall furnish to the Publisher three copies of the first published work and the date of such publication.

*Advance Payments*

9. The Publisher shall pay to the Author as an advance against and on account of all moneys accruing to him under this agreement, the sum of [redacted] dollars ($[redacted]), payable **as follows:**

**$[redacted] on signing hereof;**
**$ [redacted] on delivery and acceptance of the complete manuscript in conformity with Paragraph 2; and**
**$ [redacted] on September 1, 1976 or on publication, whichever occurs first.**

Any such advance shall not be repayable, provided that the Author has delivered the manuscript in conformity with Paragraph 2 and is not otherwise in default under this agreement.

*Royalty Payments*

10. The Publisher shall pay to the Author a royalty on the retail price of every copy sold by the Publisher, less returns (except as set forth below):

a. **Ten** per cent (**10** %) up to and including **12,000** copies; **and twelve and one-half** per cent (**12½**%) in excess of **12,000** copies xxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

Where the discount in the United States is forty-eight per cent (48%) or more from the retail price, the rate provided in this subdivision a. shall be reduced by one-half the difference between forty-four per cent (44%) and the discount granted. In no event, however, shall such royalty be less than one-half of the rate provided herein. If the semi-annual sales aggregate fewer than 400 copies, the royalty shall be two-thirds (⅔) of the rate provided in this subdivision a. if such copies are sold from a second or subsequent printing. Copies covered by any other subdivision of this Paragraph shall not be included in such computation.

*Mail Order Sales*

b. Five per cent (5%) of the amount received for copies sold directly to the consumer through the medium of mail-order or coupon advertising, or radio or television advertising.

*Premiums and Subscriptions*

c. Five percent (5%) of the amount received for copies sold by the Publisher's Premium or Subscription Books Wholesale Department.

*College Sales*

d. Ten per cent (10%) for hard-cover copies and five per cent (5%) for soft-cover copies sold with a lower retail price as college textbooks.

For records made by Publisher pursuant to Paragraph 1.a.iv., [illegible] per copy sold, less returns;

School Editions

e. For a School edition the royalty provided in subdivision a. of this Paragraph but no more than:
i. Ten per cent (10%) of the amount received for a Senior High School edition;
ii. Eight per cent (8%) of the amount received for a Junior High School edition;
iii. Six per cent (6%) of the amount received for an Elementary School edition.
iv. Five per cent (5%) of the school list price for copies sold, less returns, Learning Units.

Lower-price Editions

f. Five per cent (5%) for an edition published at a lower retail price or for an edition in the Modern Library (regular or giant size) or in Vintage Books; and two per cent (2%) or two cents (2¢) per copy, whichever is greater, for an edition in the Modern Library College Editions.

Export Sales

g. Ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold for export.

Special Sales

h. For copies sold outside normal wholesale and retail trade channels, ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold at a discount between fifty per cent (50%) and sixty per cent (60%) from the retail price and five per cent (5%) of the amount received for copies sold at a discount of sixty per cent 60%) or more from the retail price, or for the use of the plates by any governmental agency.

No Royalty Copies

i. No royalty shall be paid on copies sold below or at cost including expenses incurred, or furnished gratis to the Author, or for review, advertising, sample or like purposes.

Receipts From Other Rights

j. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision a., ii, iii, iv, and vi, ~~xxx~~ At the Author's request his share from book club and reprint licensing, less any unearned advances, shall be paid to him within two weeks after the receipt thereof by the Publisher. If the Publisher rebates to booksellers for unsold copies due to the publication of a lower-price or reprint edition, the royalty on such copies shall be the same as for such lower-price edition.

INITIAL A [illegible] P [illegible]

First Serial

~~[struck out]~~ States and Canada granted pursuant to Paragraph 1, subdivision a., v.

British

l. Eighty per cent (80%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision b.

Translation

m. Seventy-five per cent (75%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision c.

Commercial

n. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision d., provided that all expenses in connection therewith shall be borne by the ~~[struck out]~~

Share to Other authors

o. If any license granted by the Publisher pursuant to Paragraph 1 shall include material of others, the amount payable to the Author shall be inclusive of royalty to other authors.

Performance Rights

~~[struck out]~~

11. In the event of the disposition of performance rights, the Publisher may grant to the purchaser the privilege to publish excerpts and summaries of the work in the aggregate not to exceed ~~[struck out]~~, for advertising and exploiting such rights, provided, however, that such grant shall require the purchaser to take all steps which may be necessary to protect the copyright of the work.
**approximately ten per cent (10%) of the text of the work,

Rights retained by Author

12. The Author agrees to notify the Publisher promptly of the disposition of any right which the Author has retained for himself.

Reports and Payments

13. The Publisher shall render semi-annual statements of accounts to the first day of April and the first day of October, and shall mail such statements during the July and January following, together with checks in payment of the amounts due thereon.

Should the Author receive an overpayment of royalty rising from copies reported sold but subsequently returned, the Publisher may deduct such overpayment from any further sums due the Author.

Upon his written request, the Author may examine or cause to be examined through certified public accountants the books of account of the Publisher in so far as they relate to the sale or licensing of the work.

~~[struck out] Author shall in no event be entitled to receive under this and all prior agreements with the Publisher more than $ during any one calendar year. If in any one calendar year the total of the sums accruing to the Author under this and all prior agreements with the Publisher shall exceed such amount, he shall be entitled to receive the excess amount in any succeeding calendar year in which the sums accruing to him under this and all prior agreements with the Publisher do not exceed the maximum herein stated, provided that the total amount to which the Author may be entitled under this and all prior agreements with the [struck out]~~

Option for Next Work

14. The Author agrees to grant ~~[struck out]~~ to the Publisher the first option on his next book-length work of fiction for young people ~~[struck out]~~ same to any other publisher. The Publisher shall be entitled to a period of six weeks after the submission of the completed manuscript, which period shall not commence to run prior to one month after the publication of the work covered by this agreement, within which to notify the Author of its decision. If within that time the Publisher shall notify the Author of its desire to publish the manuscript, it shall thereupon negotiate with him with respect to the terms of such publication. If within thirty (30) days thereafter the parties are unable in good faith to arrive at a mutually satisfactory agreement for such publication, the Author shall be free to submit his manuscript elsewhere, provided, however, that he shall not enter into a contract for the publication of such manuscript with any other publisher upon terms less favorable than ~~[struck out]~~ *** on terms to be arranged.

Copies to Author

15. On publication the Publisher shall give ten (10) free copies to the Author, who may purchase further copies for personal use at a discount of forty percent (40%) from the retail price.

Discontinuance of Publication

16. If the Publisher fails to keep the work in print and the Author makes written demand to reprint it, the Publisher shall, within sixty (60) days after the receipt of such demand, notify the Author in writing if it intends to comply. Within six (6) months thereafter, the Publisher shall reprint the work unless prevented from doing so by circumstances beyond its control. If the Publisher fails to notify the Author within sixty (60) days that it intends to comply, or, within six (6) months after such notification, the Publisher declines or neglects to reprint the work, then this agreement shall terminate and all rights granted hereunder except those deriving from the option in Paragraph 14 shall revert to the Author, subject to licenses previously granted, provided the Author is not indebted to the Publisher for any sum owing to it under this agreement. After such reversion, the Publisher shall continue to participate to the extent set forth in his agreement in moneys received from any license previously granted by it. Upon such

termination, the Author shall have the right for thirty (30) days thereafter to purchase the plates, if any, at one-fourth of the cost (including type setting).

If the work is under contract for publication or on sale in any edition in the United States, it shall be considered to be in print. A work shall not be deemed in print by reason of a license granted by the Publisher for the reproduction of single copies of the work. If the Publisher should determine that there is not sufficient sale for the work to enable it to continue its publication and sale profitably, the Publisher may dispose of the copies remaining on hand as it deems best, subject to the royalty provisions of Paragraph 10. In such event, the Author shall have the right, within two (2) weeks of the forwarding of a written notice from the Publisher, to a single purchase of copies at the "remainder" price.

*Author's Property*

17. Except for loss or damage due to its own negligence, the Publisher shall not be responsible for loss of or damage to any property of the Author

*Return of Manuscripts*

18. In the absence of written request from the Author prior to publication for their return, the Publisher, after publication of the work, may dispose of the original manuscript and proofs.

*Suits for Infringement of Copyright*

19. If the copyright of the work is infringed, and if the parties proceed jointly, the expenses and recoveries, if any, shall be shared equally, and if they do not proceed jointly, either party shall have the right to prosecute such action, and such party shall bear the expenses thereof, and any recoveries shall belong to such party; and if such party shall not hold the record title of the copyright, the other party hereby consents that the action be brought in his or its name.

*Bankruptcy and Liquidation*

20. If (a) a petition in bankruptcy is filed by the Publisher, or (b) a petition in bankruptcy is filed against the Publisher and such petition is finally sustained, or (c) a petition for arrangement is filed by the Publisher or a petition for reorganization is filed by or against the Publisher, and an order is entered directing the liquidation of the Publisher as in bankruptcy, or (d) the Publisher makes an assignment for the benefit of creditors, or (e) the Publisher liquidates its business for any cause whatever, the Author may terminate this agreement by written notice and thereupon all rights granted by him hereunder shall revert to him. Upon such termination, the Author, at his option, may purchase the plates as provided in Paragraph 16 and the remaining copies at one-half of the manufacturing cost, exclusive of overhead. If he fails to exercise such option within sixty (60) days after the happening of any one of the events above referred to, the Trustee, Receiver, or Assignee may destroy the plates and sell the copies remaining on hand, subject to the royalty provisions of Paragraph 10.

*Sums Due and Owing*

21. Any sums due and owing from the Author to the Publisher, whether or not arising out of this agreement, may be deducted from any sum due or to become due from the Publisher to the Author pursuant to this agreement. For the purposes of this Paragraph a non-repayable unearned advance made to the Author pursuant to another agreement shall not be construed as being a sum due and owing, unless the Author is in default under such other agreement.

*Law Applicable*

22. This agreement shall be interpreted according to the law of the State of New York.

*Assignment*

23. This agreement shall be binding upon the heirs, executors, administrators and assigns of the Author, and upon the successors and assigns of the Publisher, but no assignment except to an affiliate of the Publisher shall be binding on either of the parties without the written consent of the other.

*Complete Agreement and Modification*

24. This agreement constitutes the complete understanding of the parties. No modification or waiver of any provision shall be valid unless in writing and signed by both parties.

**25. All sums of money due the Author under this agreement shall be paid to the Author's agent, McIntosh and Otis, Inc., 18 East 41st Street, New York, New York 10017, and the receipt of the said McIntosh and Otis, Inc., shall be a good and valid discharge of all such indetedness; and the said McIntosh and Otis, Inc., is hereby empowered by the Author to act in all matters arising from and pertaining to this agreement. The Author does hereby irrevocably assign and transfer to McIntosh and Otis, Inc. and McIntosh and Otis, Inc. shall retain a sum equal to ten per cent (10%) out of all monies due and payable to and for the account of the Author under this agreement.**

IN WITNESS WHEREOF the parties have duly executed this agreement the day and year first above written.

In the presence of ........................................

ALFRED A. KNOPF, INC.

By ........................................ *The Publisher*

In the presence of

Ellen Miles ........................................

Betty Miles ........................................ *The Author*

[redacted] Social Security Number

1215 7-72

  AUTHOR'S COPY

RANDOM HOUSE, INC. PANTHEON BOOKS ALFRED A. KNOPF, INC.

# JUVENILE DIVISION

AGREEMENT made this 3rd day of Mar., 19 82 between ALFRED A. KNOPF, INC. of 201 East 50th Street, New York, 10022 (referred to as the Publisher), and

Betty Miles

whose address is 94 Sparkill Avenue Tappan, N.Y. 10983

who is a citizen of the United States and resident of (state) New York (referred to as the Author and designated by the masculine singular pronoun)

WHEREAS the parties wish respectively to publish and have published a work (referred to as the work) of juvenile fiction provisionally titled WHO, ME? [Sink or Swim]

NOW, THEREFORE, they mutually agree as follows:

*Grants of Rights*

1. The author grants to the Publisher during the term of copyright, including renewals and extensions thereof:

a. Exclusive right in the English language throughout the world, to:

i. Print, publish and sell the work in book form;

ii. License publication of the work (in complete, condensed or abridged versions) by book clubs;

iii. License publication of a reprint edition by another publisher;

iv. License publication of the work (in complete, condensed, adapted or abridged versions) or selections from the work in anthologies and other publications, in mail-order and schoolbook editions, as premiums and other special editions; and to record and grant licenses to record the text or an adaptation, abridgement or extract thereof in any form of sound reproduction.

v. License periodical publication including magazines, newspapers and digests prior to book publication;

vi. License periodical publication after book publication;

vii. Adapt, and license adaptations of the work for filmstrips, printed cartoon versions and mechanical reproduction;

viii. License, without charge, transcription or publication of the work in Braille or in other forms, for the physically handicapped;

ix. For publicity purposes, publish or permit others to publish or broadcast (but not dramatize) by radio or television, without charge, such selections from the work as in the opinion of the Publisher may benefit its sale.

b. Exclusive right to license in the English language throughout the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, the rights granted in subdivision a. above.

c. Exclusive right to license in all foreign languages and all countries, the rights granted in subdivision a. above.

d. Exclusive right to use or license others to use the name and likeness of the Author, the work, the characters therein, and the title of the work, in whole or in part, or any adaptation thereof as the basis for trademark or trade name for other products or for any other commercial use in connection with such other products.

*Delivery of Satisfactory Copy*

2. The Author agrees to deliver two complete copies (original and clean copy) of the manuscript of the work in the English language of approximately 32,000 words in length, satisfactory to the Publisher, together with any permission required pursuant to Paragraph 3, and all photographs, illustrations, drawings, charts, maps and indexes suitable for reproduction and necessary to the completion of the manuscript not later than December 1, 1982

If he fails to do so the Publisher shall have the right to supply them and charge the cost against any sums accruing to the Author. ~~The complete manuscript shall include the following additional items~~

If the Author fails to deliver the manuscript within ninety (90) days after the above date, or if any manuscript that is delivered is not, in the Publisher's judgment, satisfactory, the Publisher may terminate this agreement by giving written notice, whereupon the Author agrees to repay forthwith all amounts which may have been advanced hereunder.

*Permission for Copyrighted Material*

3. If the Author incorporates in the work any copyrighted material, he shall procure, at his expense, written permission to reprint it.

*Author's Warranties and Indemnities*

4.a. The Author warrants that he is the sole author of the work; that he is the sole owner of all the rights granted to the Publisher; that he has not previously assigned, pledged or otherwise encumbered the same; that he has full power to enter into this agreement; that except for the material obtained pursuant to Paragraph 3 the work is original, has not been published before, and is not in the public domain; that it does not violate any right of privacy or any property right of any person; that it is not libelous or obscene; that it does not infringe upon any statutory or common law copyright; and that any recipe, formula or instruction contained in the work is not injurious to the user.

b. In the event of any claim, action or proceeding based upon an alleged violation of any of these warranties (i) the Publisher shall have the right to defend the same through counsel of its own choosing, and (ii) no settlement shall be effected without the prior written consent of the Author, which consent shall not unreasonably be withheld, and (iii) the Author shall hold harmless the Publisher, any seller of the work, and any licensee of a subsidiary right in the work, against any damages finally sustained. If such claim, action or proceeding is successfully defended, or settled without the payment of any sum for damages, the Author's indemnity hereunder shall be limited to fifty per cent (50%) of the expense (including reasonable counsel fees) attributable to such defense or settlement; however, such limitation of liability shall not apply if the claim, action or proceeding is based on copyright infringement.

c. If any such claim, action or proceeding is instituted, the Publisher shall promptly notify the Author, who shall fully cooperate in the defense thereof, and the Publisher may withhold payments of reasonable amounts due him under this or any other agreement between the parties.

d. These warranties and indemnities shall survive the termination of this agreement.

*Conflicting Publication*

5. The Author agrees that during the term of this agreement he will not, without the written permission of the Publisher, publish or permit to be published any material, in book or pamphlet form, based on material in the work.

*Date, Style and Price of Publication*

6. Within two years after the Author has delivered the manuscript in conformity with Paragraph 2, the Publisher shall publish the work at its own expense, in such style and manner, under such imprint and at such price as it deems suitable. The Publisher shall not be responsible for delays caused by any circumstance beyond its control. No changes in the manuscript or the provisional title shall be made without the consent of the Author. However, in no event shall the Publisher be obligated to publish a work which in its opinion violates the common law or statutory copyright or the right of privacy or any property right of any person or contains libelous, potentially harmful, or obscene matter.

*Proofreading and Author's Corrections*

7. The Author agrees to read, revise, correct and return promptly all proofs of the work and to pay in cash or, at the option of the Publisher, to have charged against him, the cost of alterations, in type or in plates, required by the Author, other than those due to printer's errors, in excess of ten per cent (10%) of the cost of setting type, provided a statement of these charges is sent to the Author within thirty (30) days of the receipt of the printer's bills and the corrected proofs are presented upon request for his inspection.

*Copyright*

8. The Publisher shall copyright the work in the name of the Author in the United States, in compliance with the Universal Copyright Convention. ~~If copyright should be in the name of the Publisher, it shall assign such copyright upon request of the Author~~. The Publisher agrees to arrange for the sale of the work in Canada. If the Publisher adds illustrations or other material, and if copyright is in the Author's name, he agrees, upon request, to assign the copyright of such material. If the Author retains the right to periodical or foreign publication before publication by the Publisher, he shall notify the Publisher promptly of any arrangement for such publication or any postponement thereof. In the event of a periodical publication, if the copyright shall be in the name of any person other than the Author, he shall promptly deliver to the Publisher a legally recordable assignment of such copyright or of the rights granted. In the event of a publication outside the United States, promptly thereafter, he shall furnish to the Publisher three copies of the first published work and the date of such publication.

BM [initials]

*Advance Payments*

9. The Publisher shall pay to the Author as an advance against and on account of all moneys accruing to him under this agreement, the sum of [redacted] ~~dollars~~ ($[redacted]), payable as follows:

$[redacted] on signing hereof; and

$[redacted] on delivery and acceptance of the complete and satisfactory manuscript in conformity with Paragraph 2.

Any such advance shall not be repayable, provided that the Author has delivered the manuscript in conformity with Paragraph 2 and is not otherwise in default under this agreement.

*Royalty Payments*

10. The Publisher shall pay to the Author a royalty on the retail price of every copy sold by the Publisher, less actual returns and a reasonable reserve for returns (except as set forth below):

a. Ten percent (10%) up to and including 10,000 copies; and twelve and one-half percent (12½%) in excess of 10,000 copies.

The above royalty will be based on the amount received for any sales at a discount of more than fifty percent (50%) from the retail price. If the semi-annual sales aggregate fewer than ~~1,000~~ 350 copies, the royalty shall be two-thirds (2/3) of the rate provided in this subdivision a. if such copies are sold from a second or subsequent printing. Copies covered by any other subdivision of this Paragraph shall not be included in such computation.

BM [initials]

*Mail Order Sales*

b. Five percent (5%) of the amount received for copies sold directly to the consumer through the medium of mail-order or coupon advertising, or radio or television advertising.

*Premiums and Subscriptions*

c. Five percent (5%) of the amount received for copies sold by the Publisher's Premium or Subscription Books Wholesale Department.

*Learning Units*

d. Five percent (5%) of the pro rata catalog list price for copies sold, less returns, in Learning Units.

*Records and Filmstrips*

e. For records made by the Publisher pursuant to Paragraph 1.a.iv., and for filmstrips made by the Publisher pursuant to Paragraph 1.a.vii., five percent (5%) of the Publisher's net receipts.

*Export Sales*

f. For copies sold for export, the prevailing royalty rate stipulated in Paragraph 10. a., shall be based on the amount received.

*No Royalty Copies*

g. No royalty shall be paid on copies sold below or at cost including expenses incurred, or furnished gratis to the Author, or for review, advertising, sample or like purposes.

*Receipts From Other Rights*

h. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision a., ii, iii, iv, vi and vii. At the Author's request his share from book club and reprint licensing, less any unearned advances, shall be paid to him within two weeks after the receipt thereof by the Publisher. If the Publisher rebates to booksellers for unsold copies due to the publication of a lower-price or reprint edition, the royalty on such copies shall be the same as for such lower-price edition.

*First Serial*

i. Seventy per cent (70%) of the amount received from the disposition of licenses in the United States and Canada granted pursuant to Paragraph 1, subdivision a., v.

*British*

j. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision b.

*Translation*

k. Fifty percent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision c.

*Commercial*

l. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision d., provided that all expenses in connection therewith shall be borne by the Publisher.

*Publisher's Book Clubs*

m. Three percent (3%) of the amount received, less postage and handling, for copies sold through Publisher's affiliated book clubs.

*Share to Other Authors*

n. If any license granted by the Publisher pursuant to Paragraph 1 shall include material of others, the amount payable to the Author shall be inclusive of royalty to other authors.

*Performance Rights*

11. The Author appoints the Publisher as his exclusive agent to dispose of the performance rights including dramatic, musical, radio, television, motion picture and allied rights, subject to the Author's consent, and the Publisher shall receive a commission of thirty per cent (30%) of the amount received.

In the event of the disposition of performance rights, the Publisher may grant to the purchaser the privilege to publish excerpts and summaries of the work in the aggregate not to exceed approximately ten per cent of the text of the work for advertising and exploiting such rights, provided, however, that such grant shall require the purchaser to take all steps which may be necessary to protect the copyright of the work.

*Reports and Payments*

12. The Publisher shall render semi-annual statements of account to the first day of April and the first day of October, and shall mail such statements during the July and January following, together with checks in payment of the amounts due thereon.

Should the Author receive an overpayment of royalty arising from copies reported sold but subsequently returned, the Publisher may deduct such overpayment from any further sums due the Author.

Upon his written request, the Author may examine or cause to be examined through certified public accountants the books of account of the Publisher in so far as they relate to the sale or licensing of the work.

~~Notwithstanding anything to the contrary in this or any prior agreement between the parties, the Author shall in no event be entitled to receive under this and all prior agreements with the Publisher more than $ during any one calendar year. If in any one calendar year the total of the sums accruing to the Author under this and all prior agreements with the Publisher shall exceed such amount, he shall be entitled to receive the excess amount in any succeeding calendar year in which the sums accruing to him under this and all prior agreements with the Publisher do not exceed the maximum herein stated, provided that the total amount to which the Author may be entitled under this and all prior agreements with the Publisher in any succeeding calendar year shall not exceed the maximum herein stated.~~

*Option for Next Work*

13. The Author agrees to submit to the Publisher his next book-length work before submitting the same to any other publisher. The Publisher shall be entitled to a period of six weeks after the submission of ~~the completed~~ an outline of the manuscript, ~~which period shall not commence to run prior to one month after the publication of the work covered by this agreement, within which to notify the Author of its decision.~~ within which to notify the Author of its decision. If within that time the Publisher shall notify the Author of its desire to publish the manuscript, it shall thereupon negotiate with him with respect to the terms of such publication. If within thirty (30) days thereafter the parties are unable in good faith to arrive at a mutually satisfactory agreement for such publication, the Author shall be free to submit his manuscript elsewhere, provided, however, that he shall not enter into a contract for the publication of such manuscript with any other publisher upon terms less favorable than those offered by the Publisher.

BM

*Copies to Author*

14. On publication the Publisher shall give ten (10) free copies to the Author, who may purchase further copies for personal use at a discount of forty percent (40%) from the retail price.

*Discontinuance of Publication*

15. If the Publisher fails to keep the work in print and the Author makes written demand to reprint it, the Publisher shall, within sixty (60) days after the receipt of such demand, notify the Author in writing if it intends to comply. Within six (6) months thereafter, the Publisher shall reprint the work unless prevented from doing so by circumstances beyond its control. If the Publisher fails to notify the Author within sixty (60) days that it intends to comply, or, within six (6) months after such notification, the Publisher declines or neglects to reprint the work, then this agreement shall terminate and all rights granted hereunder except those deriving from the option in Paragraph 13 shall revert to the Author, subject to licenses previously granted, provided the Author is not indebted to the Publisher for any sum owing to it under this agreement. After such reversion, the Publisher shall continue to participate to the extent set forth in this agreement in moneys received from any license previously granted by it. Upon such termination, the Author shall have the right for thirty (30) days thereafter to purchase the plates, if any, at cost (including type setting).

If the work is under contract for publication or on sale in any edition in the United States, it shall be considered to be in print. A work shall not be deemed in print by reason of a license granted by the Publisher for reproduction of single copies of the work. If the Publisher should determine that there is not sufficient sale for the work to enable it to continue its publication and sale profitably, the Publisher may dispose of the copies remaining on hand as it deems best, subject to the royalty provisions of Paragraph 10. In such event, the Author shall have the right, within two (2) weeks of the forwarding of a written notice from the Publisher, to a single purchase of copies at the "remainder" price.

*Author's Property*

16. Except for loss or damage due to its own negligence, the Publisher shall not be responsible for loss of or damage to any property of the Author.

*Return of Manuscript*

17. In the absence of written request from the Author prior to publication for their return, the Publisher, after publication of the work, may dispose of the original manuscript and proofs.

*Suits for Infringement of Copyright*

18. If the copyright of the work is infringed, and if the parties proceed jointly, the expenses and recoveries, if any, shall be shared equally, and if they do not proceed jointly, either party shall have the right to prosecute such action, and such party shall bear the expenses thereof, and any recoveries shall belong to such party; and if such party shall not hold the record title of the copyright, the other party hereby consents that the action be brought in his or its name.

*Bankruptcy and Liquidation*

19. If (a) a petition in bankruptcy is filed by the Publisher, or (b) a petition in bankruptcy is filed against the Publisher and such petition is finally sustained, or (c) a petition for arrangement is filed by the Publisher or a petition for reorganization is filed by or against the Publisher, and an order is entered directing the liquidation of the Publisher as in bankruptcy, or (d) the Publisher makes an assignment for the benefit of creditors, or (e) the Publisher liquidates its business for any cause whatever, the Author may terminate this agreement by written notice and thereupon all rights granted by him hereunder shall revert to him. Upon such termination, the Author, at his option, may purchase the plates as provided in Paragraph 15 and the remaining copies at one-half of the manufacturing cost, exclusive of overhead. If he fails to exercise such option within sixty (60) days after the happening of any one of the events above referred to, the Trustee, Receiver, or Assignee may destroy the plates and sell the copies remaining on hand, subject to the royalty provisions of Paragraph 10.

*Sums Due and Owing*

20. Any sums due and owing from the Author to the Publisher, whether or not arising out of this agreement, may be deducted from any sum due or to become due from the Publisher to the Author pursuant to this agreement. For the purposes of this Paragraph a non-repayable unearned advance made to the Author pursuant to another agreement shall not be construed as being a sum due and owing, unless the Author is in default under such other agreement.

*Law Applicable*

21. This agreement shall be interpreted according to the law of the State of New York.

22. It is a condition of the rights granted hereby that the Publisher agrees that all copies of the work that are distributed to the public shall bear the copyright notice prescribed by the applicable copyright laws of the United States of America. The Author hereby appoints the Publisher as his attorney-in-fact in his name and in his stead to execute all documents for recording in the Copyright Office evidencing transfer of ownership in the exclusive rights granted to the Publisher hereunder.

*Assignment*

23. This agreement shall be binding upon the heirs, executors, administrators and assigns of the Author, and upon the successors and assigns of the Publisher, but no assignment except to an affiliate of the Publisher, shall be binding on either of the parties without the written consent of the other.

*Complete Agreement and Modification*

24. This agreement constitutes the complete understanding of the parties. No modification or waiver of any provision shall be valid unless in writing and signed by both parties.

25. Eighteen months after publication, the Author has the right to reclaim all performance and foreign rights not ~~[illegible]~~ under license at this time. Request must be made in writing to the Publisher. BM

26. If the Publisher fails, except for reasons beyond its control, to publish within the time period specified in Paragraph 6, the Author may make written demand to have all rights reverted, and the Author's right of termination for non-publication shall be governed by the procedures described in Paragraph 15. BM

IN WITNESS WHEREOF the parties have duly executed this agreement the day and year first above written.

In the presence of — Irene A. Mai

ALFRED A. KNOPF, INC.

By [signature]
The Publisher

In the presence of — Lynne Mellersten

Betty Miles

Betty Miles
The Author

[redacted]
Social Security Number

1655 11-80

abc

Betty –

Here's your copy of that troublesome amendment.

Best,

[Underwear Champ]

pf Incorporated
BORZOI BOOKS
201 East 50th Street, New York, N.Y. 10022
Telephone: (212) 751-2600

April 4, 1994

Betty Miles
94 Sparkhill Avenue
Tappan, New York 10983

Dear Ms. Miles:

This letter, when signed by you and by us, will amend the agreement between you and us dated January 18, 1980, as amended (the "Agreement"), providing for the publication of a work of fiction entitled THE SECRET LIFE OF THE UNDERWEAR CHAMP.

Paragraph 1.a. of the Agreement is hereby amended to read as follows: "a. Exclusive right in the English language, throughout the world, to:"

Paragraphs 1.a.v., 1.b., 1.c., 1.d., 10.k., 10.1., 10.m., 10.n., and 11 of the Agreement are hereby reinstated as follows:

"1.a.v. License periodical publication including magazines, newspapers and digests prior to book publication;"

"1.b. Exclusive right to license in the English language throughout the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, the rights granted in subdivision a. above."

"1.c. Exclusive right to license in all foreign languages and all countries, the rights granted in subdivision a. above."

"1.d. Exclusive right to use or license others to use the name and likeness of the Author, the work and the title of the work, in whole or in part, or any adaptation thereof as the basis for trademark or trade name for other products or for any other commercial use in connection with such other products."

"10.k. Seventy percent (70%) of the amount received from the disposition of licenses in the United States and Canada granted pursuant to Paragraph 1, subdivision a., v."

"10.1. Sixty percent (60%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision b."

"10.m. Fifty percent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision c."

"10.n. Fifty percent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision d., provided that all expenses in connection therewith shall be borne by the Publisher."



Alfred·A·Knopf, Inc. AUTHOR'S COPY

AGREEMENT made this day of , 19 , between ALFRED A. KNOPF, INC., 201 East 50th Street, New York, N.Y. 10022 (referred to as the Publisher), and

whose address is **Betty Miles**
**94 Sparkill Avenue**
**Tappan, New York 10983**

who is a citizen of **the United States** and resident of (state) **New York**
(referred to as the Author and designated by the masculine singular pronoun)

WHEREAS the parties wish respectively to publish and have published a work (referred to as the work) of **juvenile fiction** provisionally titled

**THE UNDERWEAR CHAMP (Capers)**

NOW, THEREFORE, they mutually agree as follows:

1. The author grants to the Publisher during the term of copyright, including renewals and extensions thereof:

*Grants of Rights*

a. Exclusive right in the English language, in the United States of America, the Philippine Republic, and Canada, and non-exclusive right in all other countries except the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, to:

i. Print, publish and sell the work in book form;

ii. License publication of the work (in complete, condensed or abridged versions) by book clubs, including subsidiaries of the Publisher;

iii. License publication of a reprint edition by another publisher with the consent of the Author. The Author shall be deemed to have given consent if within twenty (20) days after the forwarding of written request he fails to notify the Publisher in writing of his refusal to consent;

iv. License publication of the work (in complete, condensed, adapted or abridged versions) or selections from the work in anthologies and other publications, in mail-order and schoolbook editions, as premiums and other special editions and through microfilm and with the Author's consent Xerox or other forms of copying; non- **and the exclusive right to record or grant licenses to record the text or an adaptation, abridgment, or extract thereof in any form of sound reproduction;**

v. XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXX

vi. License periodical publication after book publication to the extent that any such right is available;

vii. ~~License, subject to the approval of the Author, adaptation of the work for filmstrips, printed~~ XXXXXXXXXXXXXXXXXXXXXXXX **Produce, or subject to the approval of the Author, license an adaptation of the work for filmstrips, printed cartoon versions and*** Video casette

viii. License, without charge, transcription or publication of the work in Braille or in other forms, for the physically handicapped;

ix. For publicity purposes, publish or permit others to publish or broadcast (but not dramatize) by radio or television, without charge, such selections from the work as in the opinion of the Publisher may benefit its sale.

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX Canada), the Republic of South Africa, and the Irish Republic, the rights granted in subdivision a. above, revocable by the Author with respect to any country for which no license or option has been given within eighteen (18) months after first publication in the United States.

c. Exclusive right to license in all foreign languages and all countries, the rights granted in subdivision a. above, revocable by the Author with respect to each language or country for which no license or option has been given within three (3) years after first publication in the United States.

d. Exclusive right to use or license others to use, subject to the approval of the Author, the name and likeness of the Author, the work and the title of the work, in whole or in part, or any adaptation thereof as the basis for trademark or trade name for other products or for any other commercial use in connection with XXXXXXXXXXXXXX such other products.

*Delivery of Satisfactory Copy*

2. The Author agrees to deliver two complete copies (original and clean copy) of the manuscript of the work in the English language of approximately **16,000** words in length, satisfactory to the Publisher, together with any permission required pursuant to Paragraph 3, and all photographs, illustrations, drawings, charts, maps and indexes suitable for reproduction and necessary to the completion of the manuscript not later than **March 1, 1980.**

If he fails to do so the Publisher shall have the right to supply them and charge the cost against any sums accruing to the Author. ~~The complete manuscript shall include the following additional items~~ XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

If the Author fails to deliver the manuscript within ninety (90) days after the above date, or if any manuscript that is delivered is not, in the Publisher's judgment, satisfactory, the Publisher may terminate this agreement by giving written notice, whereupon the Author agrees to repay forthwith all amounts which may have been advanced hereunder.

*Permission for Copyrighted Material*

3. If the Author incorporates in the work any copyrighted material, he shall procure, at his expense, written permission to reprint it.

*mechanical reproduction. In the event the Author receives an offer for such rights from a party other than the Publisher, the Publisher shall have 21 days after the Author notifies the Publisher of another offer in which to match the other said offer.

*/ for records made by Publisher pursuant to Paragraph 1.a.iv. and filmstrips made by Publisher pursuant to Paragraph 1.a.vii., five per cent (5%) of the Publisher's net receipts.**

*Author's Warranties and Indemnities*

4. a. The Author warrants that he is the sole author of the work; that he is the sole owner of all the rights granted to the Publisher; that he has not previously assigned, pledged or otherwise encumbered the same; that he has full power to enter into this agreement; that except for the material obtained pursuant to Paragraph 3 the work is original, has not been published before, and is not in the public domain; that it does not violate any right of privacy; that it is not libelous or obscene; that it does not infringe upon any statutory or common law copyright; and that any recipe, formula or instruction contained in the work is not injurious to the user.

b. In the event of any claim, action or proceeding based upon an alleged violation of any of these warranties (i) the Publisher shall have the right to defend the same through counsel of its own choosing, and (ii) no settlement shall be effected without the prior written consent of the Author, which consent shall not unreasonably be withheld, and (iii) the Author shall hold harmless the Publisher, any seller of the work, and any licensee of a subsidiary right in the work, against any damages finally sustained. If such claim, action or proceeding is successfully defended or settled, the Author's indemnity hereunder shall be limited to fifty per cent (50%) of the expense (including reasonable counsel fees) attributable to such defense or settlement; however, such limitation of liability shall not apply if the claim, action or proceeding is based on copyright infringement.

c. If any such claim, action or proceeding is instituted, the Publisher shall promptly notify the Author, who shall fully cooperate in the defense thereof, and the Publisher may withhold payments of reasonable amounts due him under this or any other agreement between the parties.

d. These warranties and indemnities shall survive the termination of this agreement.

*Conflicting Publication*

5. The Author agrees that during the term of this agreement he will not, without the written permission of the Publisher, publish or permit to be published any material, in book or pamphlet form, based on material in the work.

*Date, Style and Price of Publication*

6. Within ~~xxxxxx~~ **two years** after the Author has delivered the manuscript in conformity with Paragraph 2, the Publisher shall publish the work at its own expense, in such style and manner, under such imprint and at such price as it deems suitable. The Publisher shall not be responsible for delays caused by any circumstance beyond its control. No changes in the manuscript or the provisional title shall be made without the consent of the Author. However, in no event shall the Publisher be obligated to publish a work which in its opinion violates the common law or statutory copyright or the right of privacy of any person or contains libelous or obscene matter.

*Proofreading and Author's Corrections*

7. The Author agrees to read, revise, correct and return promptly all proofs of the work and to pay in cash or, at the option of the Publisher, to have charged against him, the cost of alterations, in type or in plates, required by the Author, other than those due to printer's errors, in excess of ten per cent (10%) of the cost of setting type, provided a statement of these charges is sent to the Author within thirty (30) days of the receipt of the printer's bills and the corrected proofs are presented upon request for his inspection.

*Copyright*

8. The Publisher shall copyright the work in the name of the Author, in the United States, in compliance with the Universal Copyright Convention, and apply for renewals of such copyright. If copyright should be in the name of the Publisher, it shall assign such copyright upon request of the Author. The Publisher agrees to arrange for the sale of the work in Canada. If the Publisher adds illustrations or other material, and if copyright is in the Author's name, he agrees, upon request, to assign the copyright of such material. If the Author retains the right to periodical or foreign publication before publication by the Publisher, he shall notify the Publisher promptly of any arrangement of such publication or any postponement thereof. In the event of a periodical publication, if the copyright shall be in the name of any person other than the Author, he shall promptly deliver to the Publisher a legally recordable assignment of such copyright or of the rights granted. In the event of a publication outside the United States, promptly thereafter, he shall furnish to the Publisher three copies of the first published work and the date of such publication.

*Advance Payments*

9. The Publisher shall pay to the Author as an advance against and on account of all moneys accruing to him under this agreement, the sum of [REDACTED] dollars ($[REDACTED]), payable **as follows:**

**$[REDACTED] on signing hereof; and**
**$[REDACTED] on delivery and acceptance of the complete and satisfactory manuscript in conformity with Paragraph 2.**

Any such advance shall not be repayable, provided that the Author has delivered the manuscript in conformity with Paragraph 2 and is not otherwise in default under this agreement.

*Royalty Payments*

10. The Publisher shall pay to the Author a royalty on the retail price of every copy sold by the Publisher, less actual returns and a reasonable reserve for returns (except as set forth below): **For a trade paperback edition:**

a. **Six** per cent ( **6** %) ~~up to and including copies, per cent ( %) in excess of copies up to and including copies, and per cent ( %) in excess of copies.~~ **and #** **for the Gilbratar edition: ten percent (10%)**

~~Where the discount in the United States is forty-eight per cent (48%) or more from the retail price, the rate provided in this subdivision shall be reduced by one-half the difference between forty-four per cent (44%) and the discount granted. In no event, however, shall such royalty be less than one-half of the rate provided herein.~~ If the semi-annual sales aggregate fewer than 400 copies, the royalty shall be two-thirds (⅔) of the rate provided in this subdivision a. if such copies are sold from a second or subsequent printing. Copies covered by any other subdivision of this Paragraph shall not be included in such computation. **Royalty will be based on amount received for any sales at a discount of more than fifty percent (50%) from the retail price.**

*Mail Order Sales*

b. Five percent (5%) of the amount received for copies sold directly to the consumer through the medium of mail-order or coupon advertising, or radio or television advertising.

*Premiums and Subscriptions*

c. Five per cent (5%) of the amount received for copies sold by the Publisher's Premium or Subscription Books Wholesale Department.

*College Sales*

d. ~~xxxxxxxxxxxx~~ **Six percent (6%)** for hard-cover copies and five per cent (5%) for soft-cover copies sold with a lower retail price as college textbooks.

*School Editions*

e. For a School edition the royalty provided in subdivision a. of this Paragraph but no more than:

i. Ten per cent (10%) of the amount received for a Senior High School edition;
ii. Eight per cent (8%) of the amount received for a Junior High School edition;
iii. Six per cent (6%) of the amount received for an Elementary School edition.
**iv. Five percent (5%) of the school list price for copies sold, less returns in Learning Units.**

*r-price tions*

f. Five per cent (5%) for an edition published at a lower retail price or for an edition in the Modern Library (regular or giant size) or in Vintage Books; and two per cent (2%) or two cents (2¢) per copy, whichever is greater, for an edition in the Modern Library College Editions.

*Export Sales*

g. Six percent (6%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold for export.

*Special Sales*

h. For copies sold outside normal wholesale and retail trade channels, six percent (6%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold at a discount between fifty per cent (50%) and sixty per cent (60%) from the retail price and five per cent (5%) of the amount received for copies sold at a discount of sixty per cent (60%) or more from the retail price, or for the use of the plates by any governmental agency.

*No Royalty Copies*

i. No royalty shall be paid on copies sold below or at cost including expenses incurred, or furnished gratis to the Author, or for review, advertising, sample or like purposes.

*Receipts From Other Rights*

j. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision a., ii, iii, iv, vi and vii. At the Author's request his share from book club and reprint licensing, less any unearned advances, shall be paid to him within two weeks after the receipt thereof by the Publisher. If the Publisher rebates to booksellers for unsold copies due to the publication of a lower-price or reprint edition, the royalty on such copies shall be the same as for such lower-price edition.

*First Serial*

~~k. Ninety per cent (90%) of the amount received from the disposition of licenses in the United States and Canada granted pursuant to Paragraph 1, subdivision a., v.~~

*British*

~~l. Eighty per cent (80%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision b.~~

*Translation*

~~m. Seventy-five per cent (75%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision c.~~

*Commercial*

~~n. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision d., provided that all expenses in connection therewith shall be borne by the Publisher.~~

*Share to Other Authors*

o. If any license granted by the Publisher pursuant to Paragraph 1 shall include material of others, the amount payable to the Author shall be inclusive of royalty to other authors.

*Performance Rights*

11. ~~The Author appoints the Publisher as his exclusive agent to dispose of the performance rights in ... subject to the Author's consent, ... commission of ten per cent (10%) of the amount received.~~

In the event of the disposition of performance rights, the Publisher may grant to the purchaser the privilege to publish excerpts and summaries of the work in the aggregate not to exceed ~~7,500 words,~~ approximately ten percent (10%) of the work for advertising and exploiting such rights, provided, however, that such grant shall require the purchaser to take all steps which may be necessary to protect the copyright of the work.

*Rights Retained by Author*

12. The Author agrees to notify the Publisher promptly of the disposition of any right which the Author has retained for himself.

*Reports and Payments*

13. The Publisher shall render semi-annual statements of account to the first day of April and the first day of October, and shall mail such statements during the July and January following, together with checks in payment of the amounts due thereon.

Should the Author receive an overpayment of royalty arising from copies reported sold but subsequently returned, the Publisher may deduct such overpayment from any further sums due the Author.

Upon his written request, the Author may examine or cause to be examined through certified public accountants the books of account of the Publisher in so far as they relate to the sale or licensing of the work.

~~Notwithstanding anything to the contrary in this or any prior agreement between the parties, the Author shall in no event be entitled to receive under this and all prior agreements with the Publisher more than $ during any one calendar year. If in any one calendar year the total of the sums accruing to the Author under this and all prior agreements with the Publisher shall exceed such amount, he shall be entitled to receive the excess amount in any succeeding calendar year in which the sums accruing to him under this and all prior agreements with the Publisher do not exceed the maximum herein stated, provided that the total amount to which the Author may be entitled under this and all prior agreements with the Publisher in any succeeding calendar year shall not exceed the maximum herein stated.~~

*Option for Next Work*

INITIAL
A
P

14. The Author agrees to submit to the Publisher his next book-length work featuring the characters contained in the work before submitting the same to any other publisher. ~~The Publisher shall be entitled to a period of six weeks after the submission of the~~ completed manuscript, which period shall not commence to run prior to one month ~~after the publication of~~ the work covered by this agreement, within which to notify the Author of ~~its decision~~. If within that time the Publisher shall notify the Author of its desire to publish ~~the manuscript~~, it shall thereupon negotiate with him with respect to the terms of such publication. ~~If within thirty (30) days thereafter the parties are unable in good faith to arrive at a mutually satisfactory agreement for such publication, the Author shall be free to submit his manuscript elsewhere, provided, however, that he shall not enter into a contract for the publication of such manuscript with any other publisher upon terms less favorable than those offered by the Publisher.~~

*Copies to Author*

15. On publication the Publisher shall give ten (10) free copies to the Author, who may purchase further copies for personal use at a discount of forty percent (40%) from the retail price.

*Discontinuance of Publication*

16. If the Publisher fails to keep the work in print and the Author makes written demand to reprint it, the Publisher shall, within sixty (60) days after the receipt of such demand, notify the Author in writing if it intends to comply. Within six (6) months thereafter, the Publisher shall reprint the work unless prevented from doing so by circumstances beyond its control. If the Publisher fails to notify the Author within sixty (60) days that it intends to comply, or, within six (6) months after such notification, the Publisher declines or neglects to reprint the work, then this agreement shall terminate and all rights granted hereunder except those deriving from the option in Paragraph 14 shall revert to the Author, subject to licenses previously granted, provided the Author is not indebted to the Publisher for any sum owing to it under this agreement. After such reversion, the Publisher shall continue to participate to the extent set forth in this agreement in moneys received from any license previously granted by it. Upon such termination, the Author shall have the right for thirty (30) days thereafter to purchase the plates, if any, at one-fourth of the cost (including type setting).

"11. The Author appoints the Publisher as his exclusive agent to dispose of the performance rights including dramatic, musical, radio, television, motion picture and allied rights, subject to the Author's consent, and the Publisher shall receive a commission of ten percent (10%) of the amount received."

Except as herein expressly modified, the Agreement is ratified and confirmed, and remains in full force and effect.

If the foregoing is acceptable to you, please sign this letter where indicated below and return the original and all copies of this letter to us for countersignature.

Sincerely yours,

ALFRED A. KNOPF, INC.

By: [signature]

AGREED:

[signature]
Betty Miles

AUTHOR'S COPY

# Alfred · A · Knopf, Inc.

AGREEMENT made this 7 day of May, 1979, between ALFRED A. KNOPF, INC., 201 East 50th Street, New York, N.Y. 10022 (referred to as the Publisher), and

Betty Miles

whose address is 94 Sparkill Avenue
Tappan, New York 10983

who is a citizen of the United States and resident of (state) New York
(referred to as the Author and designated by the masculine singular pronoun)

WHEREAS the parties wish respectively to publish and have published a work (referred to as the work) of juvenile fiction provisionally titled

~~BAN THAT BOOK~~ [Maudie & Me]

NOW, THEREFORE, they mutually agree as follows:

*Grant of Rights*

1. The Author grants to the Publisher during the term of copyright, including renewals and extensions thereof:

a. Exclusive right in the English language, in the United States of America, the Philippine Republic, and Canada, and non-exclusive right in all other countries except the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, to:

i. Print, publish and sell the work in book form;

ii. License publication of the work (in complete, condensed or abridged versions) by book clubs, including affiliates of the Publisher;

iii. License publication of a reprint edition by another publisher with the consent of the Author. The Author shall be deemed to have given consent if within twenty (20) days after the forwarding of written request he fails to notify the Publisher in writing of his refusal to consent;

INITIAL A BM P

iv. License publication of the work (in complete, condensed, adapted or abridged versions) or selections from the work in anthologies and other publications, in mail-order and schoolbook editions, as premiums and other special editions and through microfilm and with the Author's consent Xerox or other forms of copying; **and the/non-exclusive right to record or grant licenses to record the text ~~or an adaptation, abridgment, or extract thereof~~ in any form of sound reproduction;** ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~ for the school and library markets.

vi. License periodical publication after book publication to the extent that any such right is available;

INITIAL A BM P

**vii. ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~ ~~Produce, or subject to the approval of the Author, license an adaptation of the work for filmstrips, printed cartoon versi~~

viii. License, without charge, transcription or publication of the work in Braille or in other forms, for the physically handicapped;

ix. For publicity purposes, publish or permit others to publish or broadcast (but not dramatize) by radio or television, without charge, such selections from the work as in the opinion of the Publisher may benefit its sale.

b. ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~ than Canada), the Republic of South Africa, and the Irish Republic, the rights granted in subdivision a. above, revocable by the Author with respect to any country for which no license or option has been given within eighteen (18) months after first publication in the United States.

c. Exclusive right to license in all foreign languages ~~and~~ all countries, the rights granted in subdivision a. above, revocable by the Author with respect to each language or country for which no license or option has been given within three (3) years after first publication in the United States.

d. Exclusive right ~~to use~~ or license others to use, subject to the approval of the Author, the name and likeness of ~~the Author~~, the work and the title of the work, in whole or in part, or any adaptation thereof ~~as the basis~~ for trademark or trade name for other products or for any other commercial use in connection ~~with such other products.~~

*Delivery of Satisfactory Copy*

2. The Author agrees to deliver two complete copies (original and clean copy) of the manuscript of the work in the English language of approximately 40,000 words in length, in content and form satisfactory to the Publisher, together with any permission required pursuant to Paragraph 3, and all photographs, illustrations, drawings, charts, maps and indexes suitable for reproduction and necessary to the completion of the manuscript not later than September 1, 1979

If he fails to do so the Publisher shall have the right to supply them and charge the cost against any sums accruing to the Author. ~~The complete manuscript shall include the following additional items:~~

If the Author fails to deliver the manuscript within ninety (90) days after the above date the Publisher may terminate this agreement by giving written notice, whereupon the Author agrees to repay forthwith all amounts which may have been advanced hereunder.

*Permission for Copyrighted Material*

3. If the Author incorporates in the work any copyrighted material, he shall procure, at his expense, written permission to reprint it.

INITIAL A BM P

**vii. The non-exclusive right to produce, or subject to the approval of the Author, license an adaptation of the work for filmstrips, printed cartoon versions and mechanical reproduction. In the event the Author receives an offer for such rights from a party other than the Publisher, the Publisher shall have twenty-one (21) days after the Author notifies the Publisher of another offer in which to match the other said offer.

*Author's Warranties and Indemnities*

4. a. The Author warrants that he is the sole author of the work; that he is the sole owner of all the rights granted to the Publisher; that he has not previously assigned, pledged or otherwise encumbered the same; that he has full power to enter into this agreement; that except for the material obtained pursuant to Paragraph 3 the work is original, has not been published before, and is not in the public domain; that it does not violate any right of privacy; that it is not libelous or obscene; that it does not infringe upon any statutory or common law copyright; and that any recipe, formula or instruction contained in the work is not injurious to the user.

b. In the event of any claim, action or proceeding based upon an alleged violation of any of these warranties (i) the Publisher shall have the right to defend the same through counsel of its own choosing, and (ii) no settlement shall be effected without the prior written consent of the Author, which consent shall not unreasonably be withheld, and (iii) the Author shall hold harmless the Publisher, any seller of the work, and any licensee of a subsidiary right in the work, against any damages finally sustained. If such claim, action or proceeding is successfully defended or settled, the Author's indemnity hereunder shall be limited to fifty per cent (50%) of the expense (including reasonable counsel fees) attributable to such defense or settlement; however, such limitation of liability shall not apply i' the claim, action or proceeding is based on copyright infringement.

c. If any such claim, action or proceeding is instituted, the Publisher shall promptly notify the Author who shall fully cooperate in the defense thereof, and the Publisher may withhold payments of reasonable amounts due him under this or any other agreement between the parties.

d. These warranties and indemnities shall survive the termination of this agreement.

*Conflicting Publication*

5. The Author agrees that during the term of this agreement he will not, without the written permission of the Publisher, publish or permit to be published any material, in book or pamphlet form, based on material in the work.

*Date, Style and Price of Publication*

6. Within ~~one year~~ two years after the Author has delivered the manuscript in conformity with Paragraph 2, the Publisher shall publish the work at its own expense, in such style and manner, under such imprint and at such price as it deems suitable. The Publisher shall not be responsible for delays caused by any circumstance beyond its control. No changes in the manuscript or the provisional title shall be made without the consent of the Author. However, in no event shall the Publisher be obligated to publish a work which in its opinion violates the common law or statutory copyright or the right of privacy of any person or contains libelous or obscene matter.

*Proofreading and Author's Corrections*

7. The Author agrees to read, revise, correct and return promptly all proofs of the work and to pay in cash or, at the option of the Publisher, to have charged against him, the cost of alterations, in type or in plates, required by the Author, other than those due to printer's errors, in excess of ten per cent (10%) of the cost of setting type, provided a statement of these charges is sent to the Author within thirty (30) days of the receipt of the printer's bills and the corrected proofs are presented upon request for his inspection.

*Copyright*

8. The Publisher shall copyright the work in the name of the Author, in the United States, in compliance with the Universal Copyright Convention, and apply for renewals of such copyright. If copyright should be in the name of the Publisher, it shall assign such copyright upon request of the Author. The Publisher agrees to arrange for the sale of the work in Canada. If the Publisher adds illustrations or other material, and if copyright is in the Author's name, he agrees, upon request, to assign the copyright of such material. If the Author retains the right to periodical or foreign publication before publication by the Publisher, he shall notify the Publisher promptly of any arrangement of such publication or any postponement thereof. In the event of a periodical publication, if the copyright shall be in the name of any person other than the Author, he shall promptly deliver to the Publisher a legally recordable assignment of such copyright or of the rights granted. In the event of a publication outside the United States, promptly thereafter, he shall furnish to the Publisher three copies of the first published work and the date of such publication.

*Advance Payments*

9. The Publisher shall pay to the Author as an advance against and on account of all moneys accruing to him under this agreement, the sum of [redacted] dollars ($ [redacted]), payable as follows:

[redacted] on signing hereof; and

[redacted] on delivery and acceptance of the complete and satisfactory manuscript in conformity with Paragraph 2.

Any such advance shall not be repayable, provided that the Author has delivered the manuscript in conformity with Paragraph 2 and is not otherwise in default under this agreement.

*Royalty Payments*

10. The Publisher shall pay to the Author a royalty on the retail price of every copy sold by the Publisher, less returns (except as set forth below):

a. Ten per cent (10%) up to and including 10,000 copies; twelve and one-half per cent (12½%) in excess of 10,000* ~~copies; and ... per cent ( %) copies up to and including ... copies; and ... per cent ( %) in excess of ... copies. Where the discount in the United States is forty-eight per cent (48%) or more from the retail price, the rate provided in this subdivision a. shall be reduced by one-half the difference between forty-four per cent (44%) and the discount granted. In no event, however, shall such royalty be less than one-half of the rate provided herein.~~ If the semi-annual sales aggregate fewer than 400 copies, the royalty shall be two-thirds (⅔) of the rate provided in this subdivision a. if such copies are sold from a second or subsequent printing. Copies covered by any other subdivision of this Paragraph shall not be included in such computation.

*copies

Royalty will be based on amount received for any sales at a discount of more than fifty percent (50%) from the retail price.

*Mail Order Sales*

b. Five per cent (5%) of the amount received for copies sold directly to the consumer through the medium of mail-order or coupon advertising, or radio or television advertising.

*Premiums and Subscriptions*

c. Five percent (5%) of the amount received for copies sold by the Publisher's Premium or Subscription Books Wholesale Department.

*College Sales*

d. Ten per cent (10%) for hard-cover copies and five per cent (5%) for soft-cover copies sold with a lower retail price as college textbooks.

For records made by Publisher ... strips made by Publisher pursuant to Paragraph 1.a.vii., five percent (5%) of the Publihser's net receipts.

*School Editions* e. For a School edition the royalty provided in subdivision a. of this Paragraph but no more than:
i. Ten per cent (10%) of the amount received for a Senior High School edition;
ii. Eight per cent (8%) of the amount received for a Junior High School edition;
iii. Six per cent (6%) of the amount received for an Elementary School edition.
iv. Five percent (5%) of the school list price for copies sold, less returns in Learning Units.

*Lower-price Editions* f. Five per cent (5%) for an edition published at a lower retail price or for an edition in the Modern Library (regular or giant size) or in Vintage Books; and two per cent (2%) or two cents (2¢) per copy, whichever is greater, for an edition in the Modern Library College Editions.

*Export Sales* g. Ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold for export.

*Special Sales* h. For copies sold outside normal wholesale and retail trade channels, ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold at a discount between fifty per cent (50%) and sixty per cent (60%) from the retail price and five per cent (5%) of the amount received for copies sold at a discount of sixty per cent (60%) or more from the retail price, or for the use of the plates by any governmental agency.

*No Royalty Copies* i. No royalty shall be paid on copies sold below or at cost including expenses incurred, or furnished gratis to the Author, or for review, advertising, sample or like purposes.

*Receipts From Other Rights* j. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision a., ii, iii, iv, vi ~~and vii~~. At the Author's request his share from book club and reprint licensing, less any unearned advances, shall be paid to him within two weeks after the receipt thereof by the Publisher. If the Publisher rebates to booksellers for unsold copies due to the publication of a lower-price or reprint edition, the royalty on such copies shall be the same as for such lower-price edition.

*First Serial* k. [struck out] States and Canada granted pursuant to Paragraph 1, subdivision a., v.

*British* l. Eighty per cent (80%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision b.

*Translation* m. Seventy-five per cent (75%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision c.

*Commercial* n. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision d., provided that all expenses in connection therewith shall be borne by the ~~Publisher~~.

*Share to Other authors* o. If any license granted by the Publisher pursuant to Paragraph 1 shall include material of others, the amount payable to the Author shall be inclusive of royalty to other authors.

p. See Below*

*Performance Rights* 11. [struck out]

In the event of the disposition of performance rights, the Publisher may grant to the purchaser the privilege to publish excerpts and summaries of the work in the aggregate not to exceed ~~XXXXXXXX~~,* for advertising and exploiting such rights, provided, however, that such grant shall require the purchaser to take all steps which may be necessary to protect the copyright of the work.

*approximately ten percent (10%) of the work,

*Rights retained by Author* 12. The Author agrees to notify the Publisher promptly of the disposition of any right which the Author has retained for himself.

*Reports and Payments* 13. The Publisher shall render semi-annual statements of accounts to the first day of April and the first day of October, and shall mail such statements during the July and January following, together with checks in payment of the amounts due thereon.

Should the Author receive an overpayment of royalty rising from copies reported sold but subsequently returned, the Publisher may deduct such overpayment from any further sums due the Author.

Upon his written request, the Author may examine or cause to be examined through certified public accountants the books of account of the Publisher in so far as they relate to the sale or licensing of the work.

~~[struck out] the Author shall in no event be entitled to receive under this and all prior agreements with the Publisher more than $ during any one calendar year. If in any one calendar year the total of the sums accruing to the Author under this and all prior agreements with the Publisher shall exceed such amount, he shall be entitled to receive the excess amount in any succeeding calendar year in which the sums accruing to him under this and all prior agreements with the Publisher do not exceed the maximum herein stated, provided that the total amount to which the Author may be entitled under this and all prior agreements with the [struck out]~~

*Option for Next Work* 14. The Author agrees to grant to the Publisher option on his next book length of juvenile fiction terms to be arranged ~~14. The Author agrees to submit to the Publisher his next book-length work before submitting the same to any other publisher. The Publisher shall be entitled to a period of six weeks after the submission of the completed manuscript, which period shall not commence to run prior to one month after the publication of the work covered by this agreement, within which to notify the Author of its decision. If within that time the Publisher shall notify the Author of its desire to publish the manuscript, it shall thereupon negotiate with him with respect to the terms of such publication. If within thirty (30) days thereafter the parties are unable in good faith to arrive at a mutually satisfactory agreement for such publication, the Author shall be free to submit his manuscript elsewhere, provided, however, that he shall not enter into a contract for the publication of such manuscript with any other publisher upon terms less favorable than those offered by the Publisher.~~

*Copies to Author* 15. On publication the Publisher shall give ten (10) free copies to the Author, who may purchase further copies for personal use at a discount of forty percent (40%) from the retail price.

*Discontinuance of Publication* 16. If the Publisher fails to keep the work in print and the Author makes written demand to reprint it, the Publisher shall, within sixty (60) days after the receipt of such demand, notify the Author in writing if it intends to comply. Within six (6) months thereafter, the Publisher shall reprint the work unless prevented from doing so by circumstances beyond its control. If the Publisher fails to notify the Author within sixty (60) days that it intends to comply, or, within six (6) months after such notification, the Publisher declines or neglects to reprint the work, then this agreement shall terminate and all rights granted hereunder except those deriving from the option in Paragraph 14 shall revert to the Author, subject to licenses previously granted, provided the Author is not indebted to the Publisher for any sum owing to it under this agreement. After such reversion, the Publisher shall continue to participate to the extent set forth in his agreement in moneys received from any license previously granted by it. Upon such

*Book Club ... Three percent ... book club edition distributed by Random House, Inc. ... postage and handling

INITIAL A BM P

termination, the Author shall have the right for thirty (30) days thereafter to purchase the plates, if any, at one-fourth of the cost (including type setting).

If the work is under contract for publication or on sale in any edition in the United States, it shall be considered to be in print. A work shall not be deemed in print by reason of a license granted by the Publisher for the reproduction of single copies of the work. If the Publisher should determine that there is not sufficient sale for the work to enable it to continue its publication and sale profitably, the Publisher may dispose of the copies remaining on hand as it deems best, subject to the royalty provisions of Paragraph 10. In such event, the Author shall have the right, within two (2) weeks of the forwarding of a written notice from the Publisher, to a single purchase of copies at the "remainder" price.

*Author's Property*

17. Except for loss or damage due to its own negligence, the Publisher shall not be responsible for loss of or damage to any property of the Author

*Return of Manuscripts*

18. In the absence of written request from the Author prior to publication for their return, the Publisher, after publication of the work, may dispose of the original manuscript and proofs.

*Suits for Infringement of Copyright*

19. If the copyright of the work is infringed, and if the parties proceed jointly, the expenses and recoveries, if any, shall be shared equally, and if they do not proceed jointly, either party shall have the right to prosecute such action, and such party shall bear the expenses thereof, and any recoveries shall belong to such party; and if such party shall not hold the record title of the copyright, the other party hereby consents that the action be brought in his or its name.

*Bankruptcy and Liquidation*

20. If (a) a petition in bankruptcy is filed by the Publisher, or (b) a petition in bankruptcy is filed against the Publisher and such petition is finally sustained, or (c) a petition for arrangement is filed by the Publisher or a petition for reorganization is filed by or against the Publisher, and an order is entered directing the liquidation of the Publisher as in bankruptcy, or (d) the Publisher makes an assignment for the benefit of creditors, or (e) the Publisher liquidates its business for any cause whatever, the Author may terminate this agreement by written notice and thereupon all rights granted by him hereunder shall revert to him. Upon such termination, the Author, at his option, may purchase the plates as provided in Paragraph 16 and the remaining copies at one-half of the manufacturing cost, exclusive of overhead. If he fails to exercise such option within sixty (60) days after the happening of any one of the events above referred to, the Trustee, Receiver, or Assignee may destroy the plates and sell the copies remaining on hand, subject to the royalty provisions of Paragraph 10.

*Sums Due and Owing*

21. Any sums due and owing from the Author to the Publisher, whether or not arising out of this agreement, may be deducted from any sum due or to become due from the Publisher to the Author pursuant to this agreement. For the purposes of this Paragraph a non-repayable unearned advance made to the Author pursuant to another agreement shall not be construed as being a sum due and owing, unless the Author is in default under such other agreement.

*Law Applicable*

22. This agreement shall be interpreted according to the law of the State of New York.

*Assignment*

23. This agreement shall be binding upon the heirs, executors, administrators and assigns of the Author, and upon the successors and assigns of the Publisher, but no assignment except to an affiliate of the Publisher shall be binding on either of the parties without the written consent of the other.

*Complete Agreement and Modification*

24. This agreement constitutes the complete understanding of the parties. No modification or waiver of any provision shall be valid unless in writing and signed by both parties.

25. All sums of money due the Author under this agreement shall be paid to the Author's agent, McIntosh and Otis, Inc., 475 Fifth Avenue, New York, New York 10017, and the receipt of said McIntosh and Otis, Inc. shall be a good and valid discharge of all such indebtedness; and the said McIntosh and Otis, Inc. is hereby empowered by the Author to act in all matters arising from and pertaining to this agreement. The Author does hereby irrevocably assign and transfer to McIntosh and Otis, Inc. and McIntosh and Otis shall retain a sum equal to ten per cent (10%) out of all monies due and payable to and for the account of the Author under this agreement.

26. It is a condition of the rights granted hereby that the Publisher agrees that all copies of the work that are distributed to the public shall bear the copyright notice prescribed by the applicable copyright laws of the United States of America. The Author hereby appoints the Publisher as his attorney-in-fact in his name and in his stead to execute all documents for recording in the Copyright Office evidencing transfer of ownership in the exclusive rights granted to the Publisher hereunder.

IN WITNESS WHEREOF the parties have duly executed this agreement the day and year first above written.

In the presence of

ALFRED A. KNOPF, INC.

By ............ *The Publisher*

In the presence of

Harold Goldstein

Betty Miles
*The Author*

1215 7-72



# Alfred · A · Knopf, Inc.

AGREEMENT made this 29 day of December, 1977 between ALFRED A. KNOPF, INC., 201 East 50th Street, New York, N.Y. 10022 (referred to as the Publisher), and

whose address is Betty Miles
94 Sparkill Avenue
Tappan, NY 10963

who is a citizen of the United States and resident of (state) New York (referred to as the Author and designated by the masculine singular pronoun)

WHEREAS the parties wish respectively to publish and have published a work (referred to as the work) of Juvenile fiction provisionally ~~titled~~

UNTITLED Novel, I Trouble Child 13

NOW, THEREFORE, they mutually agree as follows:

*Grant of Rights*

1. The Author grants to the Publisher during the term of copyright, including renewals and extensions thereof:

a. Exclusive right in the English language, in the United States of America, the Philippine Republic, and Canada, and non-exclusive right in all other countries except the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, to:

i. Print, publish and sell the work in book form;

ii. License publication of the work (in complete, condensed or abridged versions) by book clubs, including affiliates of the Publisher;

iii. License publication of a reprint edition by another publisher with the consent of the Author. The Author shall be deemed to have given consent if within twenty (20) days after the forwarding of written request he fails to notify the Publisher in writing of his refusal to consent;

iv. License publication of the work (in complete, condensed, adapted or abridged versions) or selections from the work in anthologies and other publications, in mail-order and schoolbook editions, as premiums and other special editions and through microfilm and with the Author's consent Xerox or other forms of copying; and the non-exclusive right to record or grant licenses *

~~v. License periodical publication including magazines, newspapers and digests prior to book publication~~

vi. License periodical publication after book publication to the extent that any such right is available;

** ~~vii. License, subject to the approval of the Author, an adaptation of the work for filmstrips, printed cartoon versions and mechanical reproduction~~

viii. License, without charge, transcription or publication of the work in Braille or in other forms, for the physically handicapped;

ix. For publicity purposes, publish or permit others to publish or broadcast (but not dramatize) by radio or television, without charge, such selections from the work as in the opinion of the Publisher may benefit its sale.

~~b. Exclusive right to license in the English language throughout the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, the rights granted in subdivision a. above, revocable by the Author with respect to any country for which no license or option has been given within eighteen (18) months after first publication in the United States.~~

~~c. Exclusive right to license in all foreign languages and all countries, the rights granted in subdivision a. above, revocable by the Author with respect to each language or country for which no license or option has been given within three (3) years after first publication in the United States.~~

~~d. Exclusive right to use or license others to use, subject to the approval of the Author, the name and likeness of the Author, the work and the title of the work, in whole or in part, or any adaptation thereof as the basis for trademark or trade name for other products or for any other commercial use in connection with such other products.~~

*Delivery of Satisfactory Copy*

2. The Author agrees to deliver two complete copies (original and clean copy) of the manuscript of the work in the English language of approximately 20,000 words in length, in content and form satisfactory to the Publisher, together with any permission required pursuant to Paragraph 3, and all photographs, illustrations, drawings, charts, maps and indexes suitable for reproduction and necessary to the completion of the manuscript not later than February 1, 1978.

If he fails to do so the Publisher shall have the right to supply them and charge the cost against any sums accruing to the Author. The complete manuscript shall include the following additional items:

If the Author fails to deliver the manuscript within ninety (90) days after the above date the Publisher may terminate this agreement by giving written notice, whereupon the Author agrees to repay forthwith all amounts which may have been advanced hereunder.

*Permission for Copyrighted Material*

3. If the Author incorporates in the work any copyrighted material, he shall procure, at his expense, written permission to reprint it.

* to record the text or an adaptation, abridgment, or extract thereof in any form of sound reproduction for the school and library markets;

~~** vii. Produce, or subject to the approval of the Author, license an adaptatio[n] of the work for filmstrips, printed cartoon versions and mechanical reproducti[on]~~



*Author's Warranties and Indemnities*

4. a. The Author warrants that he is the sole author of the work; that he is the sole owner of all the rights granted to the Publisher; that he has not previously assigned, pledged or otherwise encumbered the same; that he has full power to enter into this agreement; that except for the material obtained pursuant to Paragraph 3 the work is original, has not been published before, and is not in the public domain; that it does not violate any right of privacy; that it is not libelous or obscene; that it does not infringe upon any statutory or common law copyright; and that any recipe, formula or instruction contained in the work is not injurious to the user.

b. In the event of any claim, action or proceeding based upon an alleged violation of any of these warranties (i) the Publisher shall have the right to defend the same through counsel of its own choosing, and (ii) no settlement shall be effected without the prior written consent of the Author, which consent shall not unreasonably be withheld, and (iii) the Author shall hold harmless the Publisher, any seller of the work, and any licensee of a subsidiary right in the work, against any damages finally sustained. If such claim, action or proceeding is successfully defended or settled, the Author's indemnity hereunder shall be limited to fifty per cent (50%) of the expense (including reasonable counsel fees) attributable to such defense or settlement; however, such limitation of liability shall not apply if the claim, action or proceeding is based on copyright infringement.

c. If any such claim, action or proceeding is instituted, the Publisher shall promptly notify the Author who shall fully cooperate in the defense thereof, and the Publisher may withhold payments of reasonable amounts due him under this or any other agreement between the parties.

d. These warranties and indemnities shall survive the termination of this agreement.

*Conflicting Publication*

5. The Author agrees that during the term of this agreement he will not, without the written permission of the Publisher, publish or permit to be published any material, in book or pamphlet form, based on material in the work.

*Date, Style and Price of Publication*

6. Within two years after the Author has delivered the manuscript in conformity with Paragraph 2, the Publisher shall publish the work at its own expense, in such style and manner, under such imprint and at such price as it deems suitable. The Publisher shall not be responsible for delays caused by any circumstance beyond its control. No changes in the manuscript or the provisional title shall be made without the consent of the Author. However, in no event shall the Publisher be obligated to publish a work which in its opinion violates the common law or statutory copyright or the right of privacy of any person or contains libelous or obscene matter.

*Proofreading and Author's Corrections*

7. The Author agrees to read, revise, correct and return promptly all proofs of the work and to pay in cash or, at the option of the Publisher, to have charged against him, the cost of alterations, in type or in plates, required by the Author, other than those due to printer's errors, in excess of ten per cent (10%) of the cost of setting type, provided a statement of these charges is sent to the Author within thirty (30) days of the receipt of the printer's bills and the corrected proofs are presented upon request for his inspection.

*Copyright*

8. The Publisher shall copyright the work in the name of the Author, in the United States, in compliance with the Universal Copyright Convention, and apply for renewals of such copyright. If copyright should be in the name of the Publisher, it shall assign such copyright upon request of the Author. The Publisher agrees to arrange for the sale of the work in Canada. If the Publisher adds illustrations or other material, and if copyright is in the Author's name, he agrees, upon request, to assign the copyright of such material. If the Author retains the right to periodical or foreign publication before publication by the Publisher, he shall notify the Publisher promptly of any arrangement of such publication or any postponement thereof. In the event of a periodical publication, if the copyright shall be in the name of any person other than the Author, he shall promptly deliver to the Publisher a legally recordable assignment of such copyright or of the rights granted. In the event of a publication outside the United States, promptly thereafter, he shall furnish to the Publisher three copies of the first published work and the date of such publication.

*Advance Payments*

9. The Publisher shall pay to the Author as an advance against and on account of all moneys accruing to him under this agreement, the sum of [redacted] dollars ($[redacted]), payable as follows:

[redacted] on signing hereof; and
[redacted] on delivery and acceptance of the complete and satisfactory manuscript in conformity with Paragraph 2.

Any such advance shall not be repayable, provided that the Author has delivered the manuscript in conformity with Paragraph 2 and is not otherwise in default under this agreement.

*Royalty Payments*

10. The Publisher shall pay to the Author a royalty on the retail price of every copy sold by the Publisher, less returns (except as set forth below):

a. Ten per cent ( 10 %) up to and including 10,000 copies; twelve and one-half per cent ( 12½ %) in excess of 10,000 copies. If the semi-annual sales aggregate fewer than 400 copies, the royalty shall be two-thirds (⅔) of the rate provided in this subdivision a. if such copies are sold from a second or subsequent printing. Copies covered by any other subdivision of this Paragraph shall not be included in such computation. Royalty will be based on amount received for any sales at a discount of more than fifty percent (50%) from the retail price.

*Mail Order Sales*

b. Five per cent (5%) of the amount received for copies sold directly to the consumer through the medium of mail-order or coupon advertising, or radio or television advertising.

*Premiums and Subscriptions*

c. Five percent (5%) of the amount received for copies sold by the Publisher's Premium or Subscription Books Wholesale Department.

*College Sales*

d. Ten per cent (10%) for hard-cover copies and five per cent (5%) for soft-cover copies sold with a lower retail price as college textbooks.

For records made by Publisher pursuant to Paragraph 1.a.iv. five percent (5%) of the Publisher's net receipts.

***School Editions***

e. For a School edition the royalty provided in subdivision a. of this Paragraph but no more than:
i. Ten per cent (10%) of the amount received for a Senior High School edition;
ii. Eight per cent (8%) of the amount received for a Junior High School edition;
iii. Six per cent (6%) of the amount received for an Elementary School edition.
iv. Five percent (5%) of the school list price for copies sold, less returns in Learning Units.

***Lower-price Editions***

f. Five per cent (5%) for an edition published at a lower retail price or for an edition in the Modern Library (regular or giant size) or in Vintage Books; and two per cent (2%) or two cents (2¢) per copy, whichever is greater, for an edition in the Modern Library College Editions.

***Export Sales***

g. Ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold for export.

***Special Sales***

h. For copies sold outside normal wholesale and retail trade channels, ten per cent (10%) of the amount received for the original edition and five per cent (5%) of the amount received for any lower-price edition for copies sold at a discount between fifty per cent (50%) and sixty per cent (60%) from the retail price and five per cent (5%) of the amount received for copies sold at a discount of sixty per cent (60%) or more from the retail price, or for the use of the plates by any governmental agency.

***No Royalty Copies***

i. No royalty shall be paid on copies sold below or at cost including expenses incurred, or furnished gratis to the Author, or for review, advertising, sample or like purposes.

***Receipts From Other Rights***

j. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision a., ii, iii, iv, vi ~~and vii.~~ At the Author's request his share from book club and reprint licensing, less any unearned advances, shall be paid to him within two weeks after the receipt thereof by the Publisher. If the Publisher rebates to booksellers for unsold copies due to the publication of a lower-price or reprint edition, the royalty on such copies shall be the same as for such lower-price edition.

***First Serial***

~~k. Ninety per cent (90%) of the amount received from the disposition of licenses in the United States and Canada granted pursuant to Paragraph 1, subdivision a., v.~~

***British***

l. Eighty per cent (80%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision b.

***Translation***

m. Seventy-five per cent (75%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision c.

***Commercial***

n. Fifty per cent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision d., provided that all expenses in connection therewith shall be borne by the ~~Publisher.~~

***Share to Other authors***

o. If any license granted by the Publisher pursuant to Paragraph 1 shall include material of others, the amount payable to the Author shall be inclusive of royalty to other authors.

***Performance Rights***

~~11. The Author appoints the Publisher as his exclusive agent to dispose of the performance rights, including dramatic, musical, radio, television, motion picture and allied rights, subject to the Author's consent, and the Publisher shall receive a commission of ten per cent (10%) of the amount received.~~

In the event of the disposition of performance rights, the Publisher may grant to the purchaser the privilege to publish excerpts and summaries of the work in the aggregate not to exceed ~~7,500 words~~ * for advertising and exploiting such rights, provided, however, that such grant shall require the purchaser to take all steps which may be necessary to protect the copyright of the work.

* approximately ten percent of the text of the work

***Rights retained by Author***

12. The Author agrees to notify the Publisher promptly of the disposition of any right which the Author has retained for himself.

***Reports and Payments***

13. The Publisher shall render semi-annual statements of accounts to the first day of April and the first day of October, and shall mail such statements during the July and January following, together with checks in payment of the amounts due thereon.

Should the Author receive an overpayment of royalty rising from copies reported sold but subsequently returned, the Publisher may deduct such overpayment from any further sums due the Author.

Upon his written request, the Author may examine or cause to be examined through certified public accountants the books of account of the Publisher in so far as they relate to the sale or licensing of the work.

~~Notwithstanding anything to the contrary in this or any prior agreement between the parties, the Author shall in no event be entitled to receive under this and all prior agreements with the Publisher more than $ during any one calendar year. If in any one calendar year the total of the sums accruing to the Author under this and all prior agreements with the Publisher shall exceed such amount, he shall be entitled to receive the excess amount in any succeeding calendar year in which the sums accruing to him under this and all prior agreements with the Publisher do not exceed the maximum herein stated, provided that the total amount to which the Author may be entitled under this and all prior agreements with the Publisher in any succeeding calendar year shall not exceed the maximum herein stated.~~

***Option for Next Work***

14. The Author agrees to ~~submit~~ grant to the Publisher option on ~~his~~ next book-length work of juvenile fiction on terms to be arranged ~~before submitting the same to any other publisher. The Publisher shall be entitled to a period of six weeks after the submission of the completed manuscript, which period shall not commence to run prior to one month after the publication of the work covered by this agreement, within which to notify the Author of its decision. If within that time the Publisher shall notify the Author of its desire to publish the manuscript, it shall thereupon negotiate with him with respect to the terms of such publication. If within thirty (30) days thereafter the parties are unable in good faith to arrive at a mutually satisfactory agreement for such publication, the Author shall be free to submit his manuscript elsewhere, provided, however, that he shall not enter into a contract for the publication of such manuscript with any other publisher upon terms less favorable than those offered by the Publisher.~~

***Copies to Author***

15. On publication the Publisher shall give ten (10) free copies to the Author, who may purchase further copies for personal use at a discount of forty percent (40%) from the retail price.

***Discontinuance of Publication***

16. If the Publisher fails to keep the work in print and the Author makes written demand to reprint it, the Publisher shall, within sixty (60) days after the receipt of such demand, notify the Author in writing if it intends to comply. Within six (6) months thereafter, the Publisher shall reprint the work unless prevented from doing so by circumstances beyond its control. If the Publisher fails to notify the Author within sixty (60) days that it intends to comply, or, within six (6) months after such notification, the Publisher declines or neglects to reprint the work, then this agreement shall terminate and all rights granted hereunder except those deriving from the option in Paragraph 14 shall revert to the Author, subject to licenses previously granted, provided the Author is not indebted to the Publisher for any sum owing to it under this agreement. After such reversion, the Publisher shall continue to participate to the extent set forth in his agreement in moneys received from any license previously granted by it. Upon such

termination, the Author shall have the right for thirty (30) days thereafter to purchase the plates, if any, at one-fourth of the cost (including type setting).

If the work is under contract for publication or on sale in any edition in the United States, it shall be considered to be in print. A work shall not be deemed in print by reason of a license granted by the Publisher for the reproduction of single copies of the work. If the Publisher should determine that there is not sufficient sale for the work to enable it to continue its publication and sale profitably, the Publisher may dispose of the copies remaining on hand as it deems best, subject to the royalty provisions of Paragraph 10. In such event, the Author shall have the right, within two (2) weeks of the forwarding of a written notice from the Publisher, to a single purchase of copies at the "remainder" price.

*Author's Property*

17. Except for loss or damage due to its own negligence, the Publisher shall not be responsible for loss of or damage to any property of the Author

*Return of Manuscripts*

18. In the absence of written request from the Author prior to publication for their return, the Publisher, after publication of the work, may dispose of the original manuscript and proofs.

*Suits for Infringement of Copyright*

19. If the copyright of the work is infringed, and if the parties proceed jointly, the expenses and recoveries, if any, shall be shared equally, and if they do not proceed jointly, either party shall have the right to prosecute such action, and such party shall bear the expenses thereof, and any recoveries shall belong to such party; and if such party shall not hold the record title of the copyright, the other party hereby consents that the action be brought in his or its name.

*Bankruptcy and Liquidation*

20. If (a) a petition in bankruptcy is filed by the Publisher, or (b) a petition in bankruptcy is filed against the Publisher and such petition is finally sustained, or (c) a petition for arrangement is filed by the Publisher or a petition for reorganization is filed by or against the Publisher, and an order is entered directing the liquidation of the Publisher as in bankruptcy, or (d) the Publisher makes an assignment for the benefit of creditors, or (e) the Publisher liquidates its business for any cause whatever, the Author may terminate this agreement by written notice and thereupon all rights granted by him hereunder shall revert to him. Upon such termination, the Author, at his option, may purchase the plates as provided in Paragraph 16 and the remaining copies at one-half of the manufacturing cost, exclusive of overhead. If he fails to exercise such option within sixty (60) days after the happening of any one of the events above referred to, the Trustee, Receiver, or Assignee may destroy the plates and sell the copies remaining on hand, subject to the royalty provisions of Paragraph 10.

*Sums Due and Owing*

21. Any sums due and owing from the Author to the Publisher, whether or not arising out of this agreement, may be deducted from any sum due or to become due from the Publisher to the Author pursuant to this agreement. For the purposes of this Paragraph a non-repayable unearned advance made to the Author pursuant to another agreement shall not be construed as being a sum due and owing, unless the Author is in default under such other agreement.

*Law Applicable*

22. This agreement shall be interpreted according to the law of the State of New York.

*Assignment*

23. This agreement shall be binding upon the heirs, executors, administrators and assigns of the Author, and upon the successors and assigns of the Publisher, but no assignment except to an affiliate of the Publisher shall be binding on either of the parties without the written consent of the other.

*Complete Agreement and Modification*

24. This agreement constitutes the complete understanding of the parties. No modification or waiver of any provision shall be valid unless in writing and signed by both parties.

25. All sums of money due the Author under this agreement shall be paid to the Author's agent, McIntosh and Otis, Inc., 475 Fifth Avenue, New York, New York 10017, and the receipt of the said McIntosh and Otis, Inc. shall be a good and valid discharge of all such indebtedness; and the said McIntosh and Otis, Inc. is hereby empowered by the Author to act in all matters arising from and pertaining to this agreement. The Author does hereby irrevocably assign and transfer to McIntosh and Otis, Inc. and McIntosh and Otis, Inc. shall retain a sum equal to ten percent (10%) out of all monies due and payable to and for the account of the Author under this agreement.

IN WITNESS WHEREOF the parties have duly executed this agreement the day and year first above written.

In the presence of

ALFRED A. KNOPF, INC.

By ............ *The Publisher*

In the presence of

Matthew B. Wiles

Betty Niles

*The Author*

1215 7-72

[REDACTED]

Social Security Number



Alfred · A · Knopf *Incorporated* AUTHOR'S COPY

PUBLISHER OF  BORZOI BOOKS

*Cables:* KNOPF NEW YORK
*Telephone:* (212) 751-2600

*201 East 50th Street*
*New York, N.Y. 10022*

September 6, 1989

Ms. Betty Miles
94 Sparkhill Avenue
Tappan, New York 10983

Dear Ms. Miles:

Reference is made to the following agreements (the Agreements) between you and us for the works (the Works) as noted:

| The Works | The Agreement Dates |
|---|---|
| JUST THE BEGINNING | July 21, 1975, as amended |
| I WOULD IF I COULD | December 29, 1977, as amended |
| THE REAL ME | November 26, 1973, as amended |
| THE TROUBLE WITH THIRTEEN | December 29, 1977, as amended |
| LOOKING ON | (undated, 1977), as amemded |
| ALL IT TAKES IS PRACTICE | April 3, 1976, as amended |
| MAUDE AND ME AND THE DIRTY BOOK | May 7, 1979, as amended |
| SAVE THE EARTH HANDBOOK | December 6, 1972 |
| AROUND AND AROUND LOVE | October 22, 1974 |

This letter, when signed by you and by us, will amend the Agreements as follows:

Paragraph 1.a. of the Agreements is hereby amended to read as follows:
"a. Exclusive right in the English language, throughout the world, to:"

Paragraphs 1.a.v., 1.a.vii., 1.b., 1.c., 1.d., 10.k., 10.1., 10.m., 10.n., and 11 of the Agreements are hereby reinstated as follows:
"1.a.v. License periodical publication including magazines, newspapers and digests prior to book publication;"

"1.a.vii. Adapt and license adaptations of the work for videocassettes (for the school and library market), filmstrips, printed cartoon versions and mechanical reproduction."

"1.b. Exclusive right to license in the English language throughout the British Commonwealth (other than Canada), the Republic of South Africa, and the Irish Republic, the rights granted in subdivision a. above."

"1.c. Exclusive right to license in all foreign languages and all countries, the rights granted in subdivision a. above."

"1.d. Exclusive right to use or license others to use the name and likeness of the Author, the work and the title of the work, in whole or in part, or any adaptation thereof as the basis for trademark or trade name for other products or for any other commercial use in connection with such other products."

"10.k. Seventy percent (70%) of the amount received from the disposition of licenses in the United States and Canada granted pursuant to Paragraph 1, subdivision a., v."

"10.1. Sixty percent (60%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision b."

"10.m. Fifty percent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision c."

"10.n. Fifty percent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 1, subdivision d., provided that all expenses in connection therewith shall be borne by the Publisher."

"11. The Author appoints the Publisher as his exclusive agent to dispose of the performance rights including dramatic, musical, radio, television, motion picture and allied rights, subject to the Author's consent, and the Publisher shall receive a commission of ten percent (10%) of the amount received."

The words "and 1.a.vii." shall be added at the end of the first sentence of Paragraph 10.j. of the Agreements.

Except as expressly mofified herein, the Agreements are ratified, confirmed and remain in full force and effect.

If the foregoing terms are in accordance with your understanding, please sign and return the original and all copies of this letter to us for our signature.

Sincerely yours,

ALFRED A. KNOPF, INC.

By [signature]

AGREED:

[signature]
Betty Miles