# EXHIBIT 10

## PART A

P 01

**NEWJOY PRESS**
**P.O. Box 3437, Ventura, CA 93006      (805)984-7371    (800)876-1373   Fax (805)984-0503**

## Book Publishing Contract

AGREEMENT, entered into as of this ███████ 1996 between NEWJOY PRESS (hereinafter referred to as the "Publisher") located at 3183 Kelp Lane, Oxnard, CA 93035 and ███████ (hereinafter referred to as the "Author") located at ███

WHEREAS, the Author wishes to create a book on the subject of ███████████ (hereinafter referred to as the "Work.")

WHEREAS, the Publisher is acquainted with the work of the Author and wishes to publish a book by the Author; and

WHEREAS, the parties wish to have said publication performed subject to the mutual obligations, covenants and conditions therein.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants hereinafter set forth and other valuable considerations, the parties hereto agree as follows:

1.   **Grant of Rights:** The author grants, conveys and transfers to the publisher in that unpublished Work, entitled ███████████ certain limited, exclusive rights as follows:
   A.   To publish, distribute and sell the Work in the form of a soft-cover book, an audio tape and on the internet.
   B.   In the territory of the United States of America and the territory of Canada;
   C.   In the English language;
   D.   For a term of ten years.
2.   **Reservation of Rights:** All rights not specifically granted to the Publisher are reserved to the Author.
3.   **Delivery of Manuscript:** On or before the ███████ 1997, the Author will deliver to the Publisher a complete manuscript of approximately ███ pages (███████ words), which will be reasonably satisfactory in form and content to the Publisher and in conformity with any outline or description attached hereto and made part hereof.  The manuscript will include the additional materials listed in paragraph 4 (except that if an index is to be provided by the Author, it will be delivered to the Publisher within thirty days of the Author's receipt of paginated galleys).  If the Author fails to deliver the complete manuscript within ninety days after receiving notice from the Publisher of failure to deliver on time, the Publisher will have the right to terminate this agreement and receive back from the author all monies advanced to the Author pursuant to Paragraph 5.  If the Author delivers a manuscript which, after being given detailed instructions for revision by the Publisher and 30 days to complete such revisions, is not reasonably acceptable to the Publisher, then monies advanced to the Author pursuant to Paragraph 5 will be repaid to the publisher
4.   **Additional Materials:** The following materials will be provided by the Author: A Table of Contents and an Index.
5.   **Permissions.** The Author agrees to obtain all permissions that are necessary for the use of materials copyrighted by others.  The cost of providing these permissions will be borne by the Author, provided however that the Publisher will reimburse the Author for these costs upon presentation of a statement of the costs, which payment will not be deemed an advance to the Author and will not be recouped as such.  Permissions will be obtained in writing and copies will be provided to the Publisher when the manuscript is delivered.
6.   **Duty to Publish.** The Publisher will publish the Work within ten months of the delivery of the complete manuscript.  Failure to so publish will give the Author the right to terminate this Agreement ninety days after giving written notice to the Publisher of the failure to make timely publication.  In the event of such termination, the Author will have no obligation to return monies received pursuant to Paragraph 5.
7.   **Royalties.** The Publisher will pay the Author the following royalties: 10% of the suggested retail price on the first 5,000 copies sold; 12% of the suggested retail price on the next 5,000 copies sold and 15% of the suggested retail price on all copies sold thereafter.  Royalties will not be paid on free copies of the Work provided to the Author or on copies sold to the Author at discount pursuant to Paragraph 15.  Royalties will not be paid on copies distributed for publicity purposes.  All other copies sold will be cumulated for purposes of escalations in the royalty rates, including revised editions, except for editions in a different form which will be cumulated separately.  Copies sold will be reduced by copies returned in the same royalty category in which the copies were originally reported as sold.

AG100001

Publishing Contract, Page 2

8.  **Accountings.**  Commencing 60 days after the date of publication, the Publisher will report every month to the author, showing for that period and cumulatively to date the number of copies printed and bound, the number of copies sold and returned for each royalty rate, the number of copies distributed for publicity purposes, the number of copies remaindered, destroyed, or lost, and the royalties paid to and owed to the Author. If the Publisher sets up a reserve against returns of books, the reserve may only be set up for the four accounting periods following the first publication of the Work and will in no event exceed 15 percent of royalties due to the Author in any period.

9.  **Payments.**  The Publisher will pay the Author all monies due Author pursuant to Paragraph 8 within thirty days of the close of each accounting period.

10.  **Right of Inspection.**  The Author will, upon the giving of written notice, have the right to inspect the Publisher's books of account to verify the accountings. If errors in any such accounting are found to be to the Authors' disadvantage and represent more than 5 percent of the payment to the Author pursuant to the said accounting, the cost of inspection will be paid by the publisher.

11.  **Copyright and Authorship Credit.** The publisher will, as an express condition of receiving the grant of rights specified in paragraph 1, take the necessary steps to register the copyright on behalf of the Author and in the Author's name and will place copyright notice in the Author's name on all copies of the Work. The Author will receive authorship credit as follows: Written by ███████████.

12.  **Warranty and Indemnity.**  The Author warrants and represents that she is the sole creator of the Work and owns all rights granted under this agreement, that the Work is an original creation and has not previously been published (except for those materials for which permissions have been obtained pursuant to Paragraph 5), that the Work does not infringe any other person's copyrights or rights of literary property, nor, to her knowledge, does it violate the rights of privacy of, or libel, other persons.  The Author agrees to indemnify the Publisher against any final judgment for damages (after all appeals have been exhausted) in any lawsuit based on an actual breach of the foregoing warranties.  In addition, the Author will pay the Publisher's reasonable costs and attorneys' fees  incurred in defending such a lawsuit, unless the Author chooses to retain his own attorney to defend such lawsuit.  The Author makes no warranties and will have no obligation to indemnify the Publisher with respect to materials inserted in the Work at  the Publisher's request.  Notwithstanding any of the foregoing, in no event will the Author's liability under this Paragraph exceed 60 percent of sums payable to the Author under this Agreement.  In the event a lawsuit is brought which may result in the Author having breached her warranties under this paragraph, the Publisher will have the right to withhold and place in an escrow account 100 percent of sums payable to the Author pursuant to Paragraph 7, but in no event may said withholding exceed the damages alleged in the complaint.

13.  **Artistic Control.** The Author and Publisher will consult with one another with respect to the title of the Work, the price of the Work, the method and means of marketing and selling the Work, the number and destination of free copies, the number of copies to be printed, the method of printing and other publishing processes, the exact date of publication, the form, style, size, type, paper to be used, and like details, how long the plates or film will be preserved and when they will be destroyed, and when new printings of the Work will be made, in the event of disagreement after consultation, the Publisher will have final power of decision over all the foregoing matters.  No changes will be made in the complete manuscript of the Work by persons other than the Author, except for reasonable copy editing, unless the Author consents to such changes.  Publisher will provide the Author with galleys and proofs, which the Author will review and return to the Publisher within 30 days of receipt. If the cost of the Author's alterations (other than for typesetting errors or unavoidable updating) exceeds 30 percent of the cost of the typography, the Publisher will have the right to deduct such excess from royalties due Author hereunder.

14.  **Original Materials.**  Within thirty days after publication, the Publisher will return the original manuscript and all additional materials to the Author.  The Publisher will provide the Author with a copy of the page proofs, if the Author requests them prior to the date of publication.

15.  **Free Copies.**  The Author will receive 10 free copies of the Work as published. Additional copies of the Work may be purchased by the Author with the following discount schedule: 1 to 99 copies a 20 percent discount; 100 to 500 copies

Publisher Contract, Page 3

do so and will charge the costs of said revision against payments due the Author under Paragraph 9 for such revised edition. An accounting of costs for said revision will be furnished to the Author.

17. **Successors and Assigns.** This Agreement may not be assigned by either party without the written consent of the other party hereto. The Author, however, will retain the right to assign payments due hereunder without obtaining the Publisher's consent. This agreement will be binding on the parties and their respective heirs, administrators, successors, and assigns.

18. **Infringement.** In the event of an infringement of the rights granted under this Agreement to the Publisher, the Publisher and the Author will have the right to sue jointly for the infringement and, after deducting the expenses of bringing suit, to share equally in any recovery. If either party chooses not to join in the suit, the other party may proceed and, after deducting all the expenses of bringing the suit, any recovery will be shared equally between the parties.

19. **Termination.** The Author will have the right to terminate this Agreement by written notice if: (A) the Work goes out-of-print and the Publisher, within ninety days of receiving notice from the Author that the Work is out-of-print, does not place the Work in print again. A work will be deemed out-of-print if the work is not available for sale in reasonable quantities in normal trade channels; (B) if the Publisher fails to provide statements of account pursuant to Paragraph 8; (C) if the Publisher fails to make payments pursuant to Paragraphs 5 or 7; or (D) the Publisher fails to publish in a timely manner pursuant to Paragraph 6. The Publisher will have the right to terminate this Agreement as provided in Paragraph 3. This Agreement will automatically terminate in the event of the Publisher's insolvency, bankruptcy, or assignment of assets for the benefit of creditors. In the event of termination of the Agreement, the Publisher will grant, convey, and transfer all rights in the Work back to the Author.

20. **Production Materials and Unbound Copies.** Upon any termination, the Author may, within sixty days of notification of such termination, purchase the plates, offset negatives or computer drive tapes or discs (if any) and any remaining copies at 50% of their value. Value will be determined to be the cost of producing the material plus 25%.

21. **Promotion.** The Author consents to the use of her name, portrait or picture for promotion and advertising of the Work, provided such use is dignified and consistent with the Author's reputation. The Publisher agrees to maintain an 800 telephone line for the purpose of expediting sales.

22. **Arbitration.** All disputes arising under this Agreement will be submitted to binding arbitration in the ████████ county of Ventura, California and will be settled in accordance with the rules of the American Arbitration Association. Judgment upon the arbitration award may be entered in any court having jurisdiction thereof.

23. **Notice.** Where written notice is required hereunder, it may be given by use of first class mail addressed to the Author or Publisher at the addresses given at the beginning of this agreement and will be deemed received five days after mailing. Said addresses for notice may be changed by giving written notice of any new address to the other party.

24. **Entire Agreement and Modifications.** This Agreement represents the entire Agreement between the parties. All modifications of this Agreement must be in writing and signed by both parties.

25. **Waivers and Defaults.** Any waiver of a breach or default hereunder will not be deemed a waiver of a subsequent breach or default of either the same provision or any other provision of this Agreement.

26. **Governing Law.** This Agreement will be governed by the laws of the state of California.

IN WITNESS WHEREOF, the parties have signed this Agreement as of the date set forth above.

Author ████████████████   Publisher _Newjoy Press_
                                              NEWJOY PRESS

Agent _____   By ████████████████

_Sign+kup_

*Contract POC*
*Drawer*

# Troll Associates INC. 100 Corporate Drive, Mahwah, New Jersey 07430

(201) 529-4000

Agreement made this ▬▬▬▬ 1994 between the Author ▬▬▬▬▬▬ of
▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and the Publisher,
**TROLL ASSOCIATES, INC.** of 100 Corporate Drive, Mahwah, New Jersey
07430.

It is agreed that the parties wish to publish and to have published
a first chapter book for the Little Rainbow imprint entitled ▬
▬▬▬▬▬▬▬▬▬▬▬▬▬ (the Work).   The parties, therefore,
mutually agree as follows with respect to the Work:

1.  The Author grants to the Publisher during the full term of
copyright (including renewals or extensions thereof) the sole and
exclusive right to print, publish and sell (herein "publish") or cause
to be published in book form throughout the world the Work, and to
exercise or license the exclusive subsidiary rights listed in this
Agreement.

2.  The Author has delivered the Work, in length, content, and form
satisfactory to the Publisher.

3.  If the Author incorporates in the Work any copyrighted material,
she shall procure, at her expense, written permission to reprint it.

4.  The Author warrants that she is the author and sole owner of all
rights granted herein, and has full power to enter into this
Agreement; that the Work has never before been published; that except
for the material obtained pursuant to Paragraph 3, the Work is
original and is not in the public domain; that it does not violate any
right of privacy; that it is not libelous; that all statements in the
work asserted as facts are true or based upon reasonable research for
accuracy; that the work contains no matter which is obscene or matter
the publication or sale whereof otherwise violates any federal or
state statute or regulation, nor is it in any other manner unlawful;
and that the work contains no recipe, formula or instruction injurious
to the user.

     In the event of any claim, action or proceeding based upon an
alleged violation of any of the foregoing warranties:

               (a) the Publisher shall have the right, at the expense of
                   the Author, to defend the same.  If the Author is
                   required to pay any damages, it is the Author who
                   selects counsel and decides the nature of the defense;
                   the Publisher shall have the right, at its own cost and
                   expense, to join in such defense;

               (b) the Author further agrees to indemnify and hold harmless
                   the Publisher, its affiliated companies and licensees

against any damages, including reasonable attorney's fees, in connection with any claim, action or proceeding inconsistent with or arising out of a breach, or alleged breach of any of the foregoing warranties.

(c) no settlement shall be without the prior written consent from the Author, which consent shall not be unreasonably withheld.  If any such claim, action or proceeding is instituted, the Publisher shall promptly notify the Author, and may withhold payments of reasonable amounts due him under this Agreement.  These warranties and indemnities shall survive the termination of this Agreement.

5.   The Author agrees that during the term of the Agreement she will not, without the written permission of the Publisher, publish or permit to be published any material in book or pamphlet form, based on material in the Work.

6.   The Publisher shall have the exclusive right to copyright the Work in the United States of America and in other countries as may be covered by this Agreement in the name of ▓▓▓▓▓▓ and will ensure the appearance of her name on the cover of the Work.   The Author shall, upon the Publisher's request, do all acts necessary to effect and protect the copyright and renewals or extensions thereof.

7. (a) The Publisher shall pay to the Author an advance against all monies accruing under this Agreement of $ ▓▓▓▓▓ payable upon signature of this Agreement.

(b) The Publisher shall pay to the Author royalties based upon the Publisher's sales as follows:

 (i) a royalty of 8% list on hardcover books sold in the retail market, which will be applied against the advance royalty as stated in (a) above;

 (ii) a royalty of 4% list on paperback books sold in the retail market, which will be applied against the advance royalty as stated in (a) above;

 (iii) a royalty of 6% net on all copies sold in the catalog market, which will be applied against the advance royalty as stated in (a) above;

 (iv) a royalty of 4% net on all copies sold in the book clubs which will be applied against the advance royalty as stated in (a) above;

 (v) a royalty of 2% net on all books given as free items or premiums.

(c) The Publisher and the Author shall share  50/ 50 in any net revenue realized from licensing the Work in full-length, partial,

condensed or abridged versions for first or second serialization; foreign language or English language editions outside the United States; book clubs other than Troll; reprint editions; Performance rights: motion picture, radio, television and stage; nondramatic, straight readings on radio or television; electronic rights; mechanical rights: recordings and tapes, videos, filmstrips and programs for machine teaching; merchandising and commercial rights.

(d) No royalties shall be payable on copies given as free to the Author or to others for the purpose of benefitting the sale of the Work; on copies destroyed or sold below manufacturing cost; or on copies printed in Braille or other versions produced for the physically or visually handicapped.

8.   The Publisher shall render semi-annual statements of account to the last day of June and the last day of December and shall mail such statements within sixty (60) days thereafter, together with checks in payment of the amount due thereon.

Should the Author receive an overpayment of royalty arising from copies reported sold but subsequently returned, the Publisher may deduct such overpayment from any further sums due the Author under this agreement. Upon written request, the Author may examine or cause to be examined through certified accountants the books of account of the Publisher, insofar as they relate to the sale or licensing of the Work.

9.   In the event that Troll Associates, Inc. shall fail to keep the book in print and for sale and if, after written notification from the Author, Troll Associates shall fail to place the Work in print and for sale within a period of one (1) year from the date of receipt of such notification, all rights granted to Troll Associates, Inc. hereunder shall thereupon revert to the Author.   The Work shall not be deemed out of print so long as it is under option or contract for publication or on sale in any edition, including a reprint edition, whether under the imprint of Troll Associates, Inc. or of a licensee.   In the event of such reversion, Troll Associates, Inc. shall continue to participate, to the extent set forth in this Agreement, in moneys thereafter received from any license theretofore granted by it.

10.  On publication the Publisher shall give to the Author ten (10) free copies of the Work.

11.  Except for loss or damage due to its own negligence, the Publisher shall not be responsible for loss of or damage to any property of the Author.

12.  This Agreement shall be interpreted according to the law of the State of New Jersey.

13.  This Agreement shall be binding upon the heirs, executors, administrators and assigns of the Author, and upon the successors and assigns of the Publisher, but no assignments shall be binding on the Publisher without the written consent of the Publisher.

AG100006

14.   This Agreement constitutes the complete understanding of the parties.  No modification or waiver of any provision shall be valid unless in writing and signed by both parties.


IN WITNESS WHEREOF, the parties have duly executed this Agreement the day and year first above written.

TROLL ASSOCIATES, INC.

By_____          By_____

　　Vice President                             Author

                                             _____
                                             Social Security #

Date_____          Date_____



p.1

HMH'S COPY

## HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY

### TRADE & REFERENCE DIVISION

### CHILDREN'S BOOK DEPARTMENT

### PUBLISHING AGREEMENT

Agreement made this **Fourteenth** day of **April, 2010**, between the Publisher, Houghton Mifflin Harcourt Publishing Company, 222 Berkeley Street, Boston, Massachusetts 02116, and the Author, ▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇,

concerning the publication of the "Work" provisionally entitled

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

## 1.   NATURE OF AGREEMENT

**A.   Delivery of the Manuscript**   The Author agrees to deliver to the Publisher a draft ~~completed~~ manuscript, of between ▇▇▇▇▇▇▇ words for a ▇▇▇▇▇▇▇ nonfiction book for consideration by the Publisher as provided in Section 2, by ▇▇▇▇▇ 2011. The Author further agrees to deliver to the Publisher a completed manuscript of between ▇▇▇▇▇▇▇ and full-color photographs for a ▇▇▇ page nonfiction book for consideration by the Publisher as provided in Section 2, by ▇▇▇▇ 2011(the "Delivery Date").

**B.   Acceptance for Publication**   The Publisher agrees to accept the Work for publication provided that a completed manuscript is delivered by the Delivery Date and the manuscript is satisfactory in form and content to the Publisher.

**C.   Grant of Rights**   The Author grants and transfers to the Publisher, for the duration of the copyright in each territory granted, the following exclusive rights:

(1)   to publish the Work in hardcover and/or softcover book form in the English language and all other languages throughout the United States of America, its dependencies and territories, the Republic of the Philippines, and Canada, and throughout the world;

(2)   to publish, use or adapt the Work or any part of the Work for sale, distribution or other exploitation, in print or electronic form (now or hereafter developed) or in any other form as herein provided;

(3)   to license third parties to publish, use or adapt the Work or any part of the Work for sale, distribution or other exploitation, in print or electronic form (now or hereafter developed) or in any other form as herein provided.

~~In the event that the Publisher does not have the right to sell, lease, or license the Work in the British Commonwealth (exclusive of Canada), it shall nevertheless have the right to sell, lease, or license the Work in the English language throughout the rest of the world on a non-exclusive basis, except where it is given exclusive rights under this Agreement.~~

In the event that any territorial rights may hereunder be affected by changes in existing laws, market arrangements or otherwise, said changes shall not prevent the continuance of this Agreement in full force and effect, and appropriate adjustments in the grant of territorial rights shall be subject to mutual agreement between the Author and the Publisher.

**D.   Author's Compensation**   As full consideration for the Author's transfer of rights in the Work under Section 1C, the Publisher will pay the Author compensation, based on its exercise of those rights, as follows:

(1)   **Advance**   As an advance against the Author's anticipated earnings from the Work, the Publisher shall pay the Author ▇▇▇▇▇ as follows: ▇▇▇▇▇ upon signature of this Agreement; and ▇▇▇ upon the Publisher's acceptance of the completed Work.

AG100008

p.2

2

(2)   **Royalties**   The Publisher shall pay the Author royalties on copies of the Work sold by the Publisher as follows:

(a)   **Hardcover**

(i)   On each copy of a hardcover trade edition sold by the Publisher in the United States at the list price and at discounts of 58% or less:  10% of the list price on all copies sold.

(ii)   On each hardcover copy sold from a printing of two thousand five hundred (2,500) copies or less, but provided that the semiannual sale of the hardcover trade edition has been less than five hundred (500) copies and that a period of two (2) years from the date of first publication of the Work has lapsed:  A royalty equal to one-half the initial rate in Section 1D(2)(a)(i).

(b)   **Softcover**

On each copy of a trade softcover edition sold by the Publisher in the United States at the list price and at discounts of 58% or less:  6% of the list price on all copies sold.

(c)   **High Discount Sales and Remainder Sales**

(i)   On sales of hardcover editions made at a discount greater than 58% but less than 70% off, the royalty shall be 10% of the net amount received.

(ii)   On sales of hardcover editions made at a discount of 70% or more, the royalty shall be 5% of the net amount received.

(iii)   On sales of softcover editions made at a discount greater than 58%, the royalty shall be 5% of the net amount received.

(iv)   On remainder or overstock sales of any edition made at prices above cost, the royalty shall be 5% of the net amount received.

(v)   If the books are sold at cost, or at less than cost, no royalty shall be due.

(d)   **Export**

(i) On all hardcover copies of the Work sold for export:  10% of the net amount received.

(ii) On all softcover copies of the Work sold for export:  6% of the net amount received.

(e)   **Sheets**   On the sale of sheets of any trade edition:  the royalty rate applicable to the sale of the bound edition in question.

(f)   **Other Editions**   On sales of any subsequent edition of the Work:

(i)   If the Work is revised but is printed from existing plates or films with minor revisions and additions, sales of previous editions shall be counted in determining the applicable royalty rate.  If, however, the Work is so revised as to require resetting of more than 10% of the text, royalties on copies of such subsequent editions shall be paid at the applicable rates specified above, and sales of previous editions shall be disregarded in determining the applicable royalty rate.

(ii)   The Publisher may issue a special, educational, multi-media, or limited edition of the Work on terms to be agreed by the Publisher and the Author.

(iii)   On combination packages of an audio recording and a book edition sold under the Publisher's imprint (if any) and on copies of an audio recording sold alone under the Publisher's imprint (if any):  10% of the net amount received.

(iv)   On copies of an electronic edition distributed to an end-user via a distribution agreement or otherwise sold under the Publisher's imprint (if any):  15% of the list price of such electronic edition.

(v)   On copies of the Work sold to educational markets under the Publisher's educational divisions' imprints (if any):  15% of the net amount received by the Publisher on each hardcover copy sold, and 10% of the net amount received on each softcover copy sold.

(3)   **Other Income**   The net amount received which is payable to the Author from licenses or rights granted in whole or in part by the Publisher on behalf of the Author shall be as follows:

AG100009

3

(a)   **Principal Subsidiary Rights**

(i)   Ninety per cent (90%):  for first serial publication rights in a magazine or newspaper before publication of the trade edition.

(ii)   Seventy-Five per cent (75%):  (A) for dramatizations or adaptations of the Work on the stage, via motion picture, radio, and television or for home video (including, but not limited to, films, animated films, video cassettes, and video disks); (B) for dramatizations of the Work via audio recordings, in all formats now or hereafter developed, including distribution of such audio recordings via digital downloads; (C) for the sale of British Commonwealth rights (exclusive of Canada) in the English language; [It is understood and agreed that the Publisher is authorized to include first and second serial rights as part of its license for British editions.] (D) for the sale in other languages through translation. [It is understood and agreed that the Publisher is authorized to include first and second serial rights in other languages as part of its licenses for translated editions.]

(iii)   Fifty per cent (50%):  (A) for book club and mail order continuity series rights; (B) for reprint editions, including, but not limited to, large print, hardcover and softcover rights; (C) for second serial publication rights in a magazine or newspaper after publication of the trade edition; (D) for selection rights; (E) for abridgment and condensation rights; (F) for permission to photocopy the Work; (G) for electronic rights in all formats, now or hereafter developed, which use all or part of the Work (including, but not limited to, programmed instructions, software, databases, videotex, teletext, and information storage and retrieval systems); (H) for non-dramatic abridged and non-dramatic unabridged audio recordings of the Work, in all formats now or hereafter developed, including distribution of such audio recordings via digital downloads; (I) for other non-dramatic unabridged narrations (including, but not limited to, television, radio, filmstrips, and videotape); and (J)   for commercial rights to the Work, including posters, calendars, greeting cards, and other merchandise.

(b)   **Copies of Agreements**   The Publisher shall make available to the Author, upon the Author's request, copies of any agreements concerning rights in the Work.

(c)   **Documents Relating to Trademarks**   The Author shall cooperate with the Publisher in the exercise of the merchandising and commercial rights to the Work by executing and delivering any documents that the Publisher may request, such as a separate trademark license agreement and/or a consent to permit the Publisher to register trademarks in its own name or in the name of the Author.

(4)   **Other Rights**   The Author agrees to give the Publisher the exclusive first opportunity to consider purchasing additional publishing or sublicensing rights to the Work not specifically stated in this Agreement. The parties agree to negotiate in good faith in an effort to agree on mutually acceptable terms for such rights. If the parties are unable to so agree, the Author, at a time no earlier than thirty (30) business days from the date the rights were offered to the Publisher, shall be free to offer such rights to other publishers.

(5)   **Definition of the Net Amount Received**   The net amount received shall be defined as gross revenues actually received by the Publisher from sales or licenses of the Work, less any of the following charges applicable to any such transaction: (1) appropriate credits given to the customer or rebated by the Publisher; (2) deductions for returns; (3) any licensing commissions paid by the Publisher, including but not limited to commissions to foreign agents, commercial agents, and/or movie and dramatic rights agents; (4) any foreign taxes on the proceeds of a license; and (5) the cost of structuring data for electronic use prior to licensing electronic rights to a third party.

(6)   **Freight Pass-Through Allowance**   Notwithstanding any provision in this Agreement, including references to list price, the Author agrees to allow the Publisher to calculate royalties on the Publisher's invoice price rather than on the jacket price. The invoice price is the Publisher's customary, suggested retail price less the applicable freight allowance. The jacket price is defined as the invoice price plus the applicable freight allowance.

(7)   Separate Licensing of Art and Text  If a purchaser of subsidiary rights in Section 1D(3) buys only the illustrations of the book and not the text, then the Author shall not share in this income. If, however, the purchaser of such rights chooses to purchase only the text and not the illustrations, then the Author's share of that income shall be ninety per cent (90%) for Section 1D(3)(a)(i); seventy-five per cent (75%) for (ii); and fifty per cent (50%) for (iii).

2.   **PREPARATION OF THE WORK; REVIEW AND ACCEPTANCE BY THE PUBLISHER**

A.   **Delivery Date**   The Author and the Publisher have entered into this Agreement in reliance on the Delivery Date and in anticipation that the Work will be satisfactory in form and content to the Publisher. Any change in the Delivery Date must be agreed to by both parties in writing.

B.   **Conformance of Manuscript to Author's Warranties**   The Author agrees to prepare the Work in accordance with the Author's Warranties stated in Section 7A.

AG100010



4

The Author agrees to maintain appropriate records and documentation of the Work, including copies of research notes and tape recordings, for a period of not less than three (3) years from the date of the Publisher's first publication of the Work.

C.    Completed Copy   The Author will deliver to the Publisher one (1) clean and legibly typed, double-spaced, completed copy of the manuscript and an electronic file containing a copy of the manuscript.  Photographs, drawings, maps, and other illustrations specified by mutual agreement to be included in the Work shall be delivered to the Publisher in a form and quality suitable for reproduction.

D.    Permissions, Authorizations, or Releases

(1)    Text and Illustrations in the Manuscript   The Author will obtain, at the Author's expense, and deliver to the Publisher written permission for any and all text, illustrations, charts, or research material created or controlled by others, which he or she has incorporated in the Work, in addition to any signed releases the Publisher deems necessary regarding privacy and consent issues. The Author agrees to deliver such permissions and/or releases to the Publisher promptly and will exercise best efforts to deliver such permissions and/or releases by the Delivery Date.  If any of the permissions or releases required under this paragraph are not so delivered by the Author, the Publisher will have the right to obtain the necessary authorizations at the Author's expense, or to ask the Author to delete and/or substitute content for which satisfactory permissions or releases have not been obtained.

When requesting such permissions or authorizations, the Author will base his or her request letters or consent forms on templates provided by or approved by the Publisher. It is understood and agreed that the final version of such permissions or authorizations shall extend to both hardcover and softcover editions of the Work and that the rights obtained shall be no more limited than the volume publishing, distribution, and sublicensing rights granted by the Author to the Publisher in this Agreement.  Notwithstanding the foregoing, if anticipated permission expenses are significant, the Author may request that he or she clear rights for certain editions or licenses only after the Publisher has confirmed that it will exercise the rights in question.   It is also understood that, if the cost of clearing permission for a translated edition, British edition, or an electronic edition is greater than the Author's reasonably anticipated share of income from the edition in question, then the Publisher and the Author will negotiate in good faith to agree upon a way to share the responsibility for paying for the permissions in question.

The Author will obtain prints of all photographs to be used in the Work and will clear all permissions necessary for reproducing them in all editions of the Work.  The Publisher agrees to pay print and permission fees, upon receipt of relevant licenses and invoices from the Author, up to a maximum of ▓▓▓▓▓▓▓    The Author agrees to pay any print and permission fees in excess of ▓▓▓▓▓▓

(2)    Promotional Uses   If the Author includes illustrations in the Work, the Author shall use best efforts to obtain authorization for the use of such illustrations in promotional materials and advertising for the Work.

(3)    Other Material   The Author or the Publisher may commission others to contribute or prepare any text, index, illustrations, maps, charts, research, or other material in connection with the Work as has been mutually agreed to be necessary to the Work. The Publisher may charge the Author for expenses incurred by it to obtain proper authorizations for the use of such material and may delete from the Work any material that has not been properly authorized.

E.    Review and Acceptance of the Completed Manuscript   If the Publisher receives the completed manuscript on or before the Delivery Date, the Publisher will review it and notify the Author about whether the Publisher considers the manuscript satisfactory for publication.  The Publisher may agree to review a manuscript which is delivered after the Delivery Date, and shall waive timeliness of delivery of the manuscript as grounds for the rejection of the manuscript unless it notifies the Author in writing within thirty (30) business days after the Delivery Date that it is rejecting the manuscript for this reason.

F.    Author's Right to Resubmit a Revised Manuscript   If the Publisher finds the completed manuscript to be unsatisfactory, the Publisher will specify in writing the respects in which the Publisher believes the completed manuscript is unsatisfactory. The Author shall then have the right to resubmit a revised manuscript at a mutually agreed-upon date which shall be reasonable under the circumstances. Although the Publisher shall not be required to provide additional editorial services to assist the Author in rendering the completed manuscript satisfactory for publication, it may do so after consultation with the Author.

G.    Acceptance of the Revised Manuscript   If under Section 2F the Publisher finds the revised, completed manuscript to be satisfactory in form and content (including the material stipulated under Section 2D), it will notify the Author in writing of its acceptance of the Work for publication.  Any other action by the Publisher such as the issuance of any further payments or the commencement of the editorial process shall not be construed as acceptance of the Work.

H.    Termination Prior to Publication   If any of the following circumstances arise, this Agreement may be terminated by the party and in the manner set forth below:

(1)    Failure to Deliver   If the Author fails to deliver the completed manuscript by the Delivery Date, or if the Author delivers a complete manuscript but the Publisher has rejected the manuscript on the basis of timeliness under Section 2E above, or if the Author delivers a completed but unsatisfactory manuscript by the

AG100011



5

Delivery Date and fails to resubmit a revised manuscript by the agreed-upon date as stipulated in Section 2F, above, or under Section 7C, below, then the Publisher may terminate this Agreement, and the Author shall promptly repay any advances the Publisher has paid to the Author.

(2)   **Unsatisfactory Manuscript**   If the Publisher informs the Author that the revised manuscript (under Section 2F above) is not satisfactory for any reason, or if the Author fails to make changes to eliminate legal risk (under Section 7C below), this Agreement shall terminate and the Author will reimburse the Publisher for advances paid to the Author, if and when the Author receives advances or other revenues from another source for uses (in any form) of the Work or a work based on the Work. Notwithstanding the Publisher's right of termination herein, the Author shall be free to offer the Work or any rights in or from the Work to another party, it being understood that the Publisher's exclusive rights granted hereunder will continue in full force and effect until the Author arranges for repayment of sums paid to the Author under the provisions of this Agreement.

(3)   **Refusal to Revise**   The Author may choose to terminate this Agreement instead of revising the manuscript in accordance with Section 2F or Section 7C. In this event, the Author shall promptly repay any advances the Publisher has paid to the Author.

(4)   **Failure to Publish**   (i) If the Publisher fails to give notice to the Author as required in Section 2E and such failure continues for thirty (30) business days after receipt of written notice from the Author of such failure, the Author may terminate this Agreement. (ii) If after acceptance the Publisher fails to publish the Work within the time period stated in Section 3A or any extension thereof as provided for herein, the Author may send the Publisher written notice demanding immediate publication. If the Publisher does not publish the Work immediately or within a time period that is otherwise mutually agreed in writing, the Author may terminate this Agreement. Upon termination as a result of either (i) or (ii), the Author shall retain all advance payments made up to that time by the Publisher as the Author's sole and exclusive remedy for nonpublication.

I.   **Postponement of Publication**   The Publisher may delay its decision whether to accept the manuscript and/or postpone publication or distribution of the Work during legal review under Section 7C, provided that the time period of such delay shall be reasonable under the circumstances and in no event longer than three (3) months.

3.   **PUBLICATION**

A.   **Date of First Publication**   The Publisher will publish the Work at its expense within eighteen (18) months following the Publisher's notification to the Author under Section 2E of its acceptance of the Work, unless publication is delayed by circumstances beyond the Publisher's reasonable control or by legal review of the Work under Section 7C. The delay in publication will not exceed the delay caused by the aforementioned circumstances.

B.   **Author's Corrections in Proof**   The Publisher shall send the Author proofs of the Work, and the Author agrees to read, correct, and return them promptly. The Author agrees to pay the cost of alterations initiated by the Author that exceed 10% of the initial composition expense. The Author will not be required to pay for printer's or Publisher's errors.

C.   **Title of the Work**   The Author and the Publisher shall mutually agree upon the title of the Work.

D.   **Style of Publication**   The Publisher shall determine the style and manner of publication, including design, form, printing, production, price, sale, promotion and distribution of free copies. These decisions shall be based solely on the Publisher's own experience and judgment and will reflect its business decisions made in good faith.

E.   **Advertisements**   The Publisher or its licensees will not insert or authorize the insertion of advertisements in any book edition of the Work without the Author's written consent, with the exception that mention may be made of other books published by the Publisher or its licensees in softcover editions of the Work.

F.   **Promotion of the Work**   The Publisher may use and authorize others to use the Author's name, likeness, and biographical information in connection with the exercise of the rights granted under this Agreement and in any related advertising and promotion. The Author agrees to cooperate with the Publisher in promoting the Work as the Publisher may reasonably request, in accordance with a mutually agreeable schedule.

G.   **Author's Free Copies**   The Author shall receive fifteen (15) twenty (20) free copies of the Work on first publication in book form, and may purchase further copies of the Work for personal use, but in no event for resale, at the Publisher's then-standard author discount.

H.   **Author's Originals**   The Publisher shall take suitable measures for the preservation of the manuscript, as well as of any original illustrations or other material supplied by the Author, and will return these materials at the Author's request within three (3) months of publication of the Work.

AG100012

6

## 4.   COPYRIGHT AND SELECTIONS

**A.   Registration and Notice**   Upon first publication of the Work in the United States, the Publisher will insert the copyright notice for the Work in the name of the Author in every copy of the Work and will require the same of its licensees. The Publisher will register copyright for the Work in the United States within ninety (90) days of its publication.

**B.   Notification of Prior Publication**   If the Author grants or has granted any rights for others to publish or otherwise exploit part or all of the Work before the Publisher's publication and if such rights have not been transferred to the Publisher under this Agreement, the Author will promptly notify the Publisher of the dates of such publications and will deliver to the Publisher the documents (such as assignments of copyrights) which the Publisher deems necessary to secure copyright for the Work.

**C.   Selections for Promotion**   After the initial publication of the Work, if the Publisher believes it will benefit the Work, for promotional purposes, to publish or to permit critics, reviewers or others to publish or otherwise use excerpts of less than five per cent (5%) of the Work or summaries of the Work, it may do so without charge to them or payment to the Author. The Publisher and the Author may also publish or permit others to publish other excerpts from the Work or summaries of the Work for promotional purposes without charge to the user or payment to the Author under the following conditions: such excerpts or summaries may not exceed a total of ten per cent (10%) of the Work; such excerpts or summaries may not be offered for sale and shall not generate income for either party; the Publisher must believe that the distribution of such excerpts or summaries will encourage sales of the Work; and a proper copyright notice must be used.

**D.   Non-profit Uses**   The Publisher may permit third parties to reproduce or record the Work in appropriate forms for the physically or mentally handicapped on a non-profit basis, without charge to such third parties or payment to the Author.

**E.   Infringement by Others**   The Author and the Publisher will notify one another in writing if either has reason to believe that any right granted to the Publisher by this Agreement has been infringed by any third party. The parties shall discuss whether to proceed individually or jointly to redress any infringement. If the parties decide to proceed jointly, the Publisher shall select counsel with the Author's approval, not to be withheld unreasonably, and the expenses of the action and any money damages awarded shall be shared equally. If after written notice either party declines to participate, the other may proceed independently and bear all expenses of the action and retain all proceeds that may be awarded.

## 5.   OPTION

The Author agrees to give the Publisher the exclusive first opportunity to consider the Author's next full-length work, whether of nonfiction or fiction, for publication. The parties agree to negotiate in good faith in an effort to agree on mutually acceptable terms for publication following the Author's submission of the new manuscript (or detailed outline and sample chapters) with the understanding that such submission may take place no earlier than the initial publication of the Work. If the parties are unable to so agree, the Author, at a time no earlier than sixty (60) business days from the date of submission, shall be free to submit the new work to other publishers.

## 6.   STATEMENTS TO THE AUTHOR

**A.   Payments and Statements**   After publication, the Publisher will render semiannual statements of account during the month of April for the six-month period ending in the preceding December, and during the month of October for the six-month period ending in the preceding June. Each statement will be accompanied by payment of the amount shown to be due from sales (less returns) and licenses of the Work, after recoupment of all sums paid to the Author hereunder as advances against royalties and after allowance by the Publisher for a reasonable reserve for returns. In computing payments due, the Publisher may establish and deduct a reasonable reserve for returns of each edition, and such reserve will be specified on the statement of account. If less than fifty dollars ($50.00) is due to the Author for any accounting period, the Publisher may make no payment and render no statement until after the next period in which fifty dollars ($50.00) is due to the Author.

The Publisher may engage consultants or other third parties located outside the United States to assist it in processing or storing payment information, and the Author hereby consents to such transfers, storing and processing. All such third parties shall be under strict confidentiality restrictions with respect to the Author's personal information and may obtain access to such information solely to assist in the processing work and for no other purpose.

**B.   Author's Charges or Debts**   The Publisher may, in addition to any other remedies provided by law, deduct from amounts due to the Author under this Agreement any sums the Author may owe the Publisher, including but not limited to overpayments of royalty under this or any other agreement with the Author and purchases made by the Publisher for the Author or at the Author's request.   Unearned advances shall not be considered a debt owed by the Author for the purposes of this subsection unless the Author has agreed in writing to repay a specific advance to the Publisher.

AG100013



7

**C.** **Licensees' Income Statements** The Publisher shall provide copies of statements from subsidiary rights licensees to the Author at the Author's request.

**D.** **Other Information** The Publisher agrees to provide the Author, upon request, with specific information regarding inventories, printings, and returns, which may not otherwise appear on the records of account.

**E.** **Verification of Accounting** The Author or the Author's representative, at the Author's expense, may examine the Publisher's records of account as they relate to sales or licenses of the Work as appropriate to verify the accuracy of the Publisher's records of account, provided that any examination is performed no more than once a year, after reasonable notice, during normal business hours. If errors of more than 5% are found, the expense of examining the Publisher's records shall be borne by the Publisher. Errors not objected to in writing within seven (7) years shall be deemed waived by the Author.

**7.** **LEGAL UNDERTAKINGS**

**A.** **Author's Warranties** The Author represents and warrants that the Work is and will be in accordance with the following "Author's Warranties" which the Author makes for the benefit of the Publisher and any third party acquiring any right or interest in the Work or a copy of the Work through the Publisher:

(1) **Disclosure Affecting Rights Granted** Unless otherwise disclosed to the Publisher in writing or in response to the Publisher's standard legal questionnaire referred to in Section 7C prior to publication of the Work by the Publisher, the Author warrants that:

(a) the Work has not been published in whole or in part;

(b) the Work is not, and prior to the normal expiration of copyright will not be, in the public domain in whole or in part;

(c) the Work is and will be original and the Author is its sole author and creator;

(d) no third party has or will have any claim to or interest in the Work as a co-author or otherwise; and

(e) the Author has not entered and will not enter into any agreement with any third party conflicting with the Publisher's rights relating to the creation, subject matter, or publication of the Work.

(2) **Risk of Liability** The Work will not infringe any copyright, contain any matter that libels or violates the privacy or publicity or any rights of any person or entity, or otherwise be in contravention of law; and the Author has used and will use all reasonable care in the creation, research, and preparation of the Work to ensure that all facts and statements in the Work are true and correct in all material respects.

(3) **Risk of Injury** The Work will not contain any statement, formula, direction, recipe, prescription or other matter that involves a reasonably foreseeable risk of injury or damage to the Work's readers or others.

(4) **Third-Party Claims** Except as disclosed in the legal questionnaire referred to in Section 7C, the Author is not aware of any claim or proceeding by any third party inconsistent with any of the Author's Warranties, and the Author will inform the Publisher if any such claim is made or threatened in the future.

(5) **Other Publication** The Author has not published or authorized publication of any work that would compete directly with the Work or materially diminish the value of the rights granted to the Publisher in this Agreement, and will not do so during the term of this Agreement.

(6) **Ability to Comply** The Author is free to make this Agreement, and is and will remain free to perform all of the Author's obligations under this Agreement.

(7) **Cooperation** The Author agrees to cooperate with the Publisher and its insurance carrier in the defense of any claim or proceeding arising out of the Work.

**B.** **Publisher's Material** The Author's Warranties shall not apply to any new material that the Publisher may supply for the Work under Section 2D.

**C.** **Legal Review** To assist the Publisher with evaluation and legal review of the Work, the Author may be asked to complete and return the Publisher's standard legal questionnaire. The information disclosed by the Author in response to such questionnaire shall be subject to the Author's Warranties under Section 7A and the disclosure of such information shall in no way limit any of the Publisher's rights or the Author's obligations pursuant to Section 7D, Section 7E, and Section 7F.

The Publisher may request the Author to make changes to the Work in consideration of the legal rights of others. If the Author is unwilling to make such changes, the Publisher or the Author may terminate this Agreement as provided in Section 2H(2) and 2H(3) of this Agreement. The Publisher may, but is not required to, investigate whether the Work presents legal risk or whether the Author's Warranties are accurate, obtain a legal opinion on

AG100014



8

behalf of the Author, or request changes. Any investigation or opinion or requested changes shall not affect the Author's Warranties or responsibilities.

D.    **Legal Claims**   Each party shall give the other prompt written notice of any claim, proceeding, or legal action involving the Work which has been or may be brought.

The Publisher shall take the steps necessary to defend the Author and/or the Publisher against such claim. Counsel selected by the Publisher will also represent and defend the Author. If at any time the Publisher's counsel determines that there is a conflict in such joint representation, the Author will be so informed in writing. The Author may then select counsel at the Author's expense upon consultation with the Publisher, provided that such Author's counsel cooperates fully with the Publisher's counsel.

E.    **Settlements and Indemnity**   The Publisher reserves the right to settle any claim, proceeding, or suit related to the Work at any time after consultation with the Author. Notwithstanding the Publisher's right of settlement, if the Author elects to pursue such claim the Author may offer to post adequate bond subject to the prior approval of the Publisher, upon approval of which the Author may independently pursue such litigation and be responsible solely for all costs and damages relating thereto.

In the event of settlement or judgment in connection with any claim, action, or proceeding inconsistent with the Author's warranties or representations herein or based upon or arising out of anything contained in the Work, the Author will indemnify the Publisher for all amounts paid to the claimant and for all amounts incurred by the Publisher in defending against the claim that are not covered by insurance.

F.    **Author's Breach**   In addition to any other rights in law and equity, in the event of any breach by the Author of the Author's Warranties, the Publisher may as a final remedy terminate this Agreement. In such event, the Publisher may also recover any unearned portion of the advance; and/or the Publisher, and any third party acquiring any right or interest in the Work or a copy of the Work, may recover from the Author any costs, expenses, and damages arising from such breach which are not covered by insurance.

G.    **Continuance of Warranties**   The Author's Warranties and the Author's other responsibilities under this Section 7 shall be in effect throughout the term of this Agreement and shall survive its termination.

8.    DISCONTINUANCE OF PUBLICATION AND REVERSION OF RIGHTS

A.    **Definition of "In Print"**   The Work shall be deemed "in print" when copies of the Work are available and offered for sale in any edition authorized under this Agreement, whether issued by the Publisher or by its licensees, or when an edition of the Work is under license to be published by another party within twenty-four (24) months.

B.    **Request to Place in Print**   If the Work is not in print and if five (5) years have elapsed since the Publisher's first publication and if there is no indebtedness of the Author to the Publisher, the Author may request in writing that the Publisher place the Work in print. (It is understood and agreed that an unearned advance shall not constitute indebtedness for the purposes of this Section 8B.) The Publisher shall notify the Author in writing within three (3) months from the receipt of such request whether it intends to place the Work in print in any edition.

If the Publisher has not notified the Author in writing of its intention to comply with the Author's written request to place the Work in print within three (3) months after receipt of such request, or if the Publisher fails to reprint the Work, or to license a reprint edition that will be published in a reasonable period of time, within one (1) year after receiving the Author's request (unless prevented from doing so by circumstances beyond the Publisher's reasonable control), then the Publisher shall execute and deliver a written document reverting all rights granted herein to the Author, with the exception that any existing licenses or options the Publisher has granted to a third party for rights to the Work shall continue in effect according to their terms, and the Author and the Publisher shall continue to share in the revenues from such licenses subject to Section 1D(3).

C.    **Notification**   Any termination provided in this Agreement shall be effective on the thirtieth (30th) day after the terminating party has sent written notice of termination, unless another effective date is stated in the letter of termination. Upon termination, all rights transferred to the Publisher under this Agreement will revert to the Author except as specified in Section 8B above.

9.    RESOLUTION OF DISPUTES

In the event that the Author and the Publisher cannot resolve any dispute that arises under this Agreement, they agree to resolve such disputes in courts located in Boston, Massachusetts. If the parties agree to arbitration, the claim shall be submitted to the American Arbitration Association in the City of Boston, in accordance with its then-prevailing rules, and judgment confirming the Arbitrator's award may be entered in any court of competent jurisdiction.



9

### 10.  ASSIGNS

This Agreement shall be binding upon and for the benefit of the Author and the Author's heirs, executors, administrators, and assigns, and shall also bind and benefit the Publisher and its successors and assigns. The Publisher may assign this Agreement in whole or in part. If the Author personally guarantees that the assignee will perform all of the Author's obligations under this Agreement, the Author may assign this Agreement, provided that the Author has the Publisher's prior written approval, which shall not be withheld unreasonably.

### 11.  NOTICE

Any notice required under this Agreement shall be in writing and sent to the Author's address or the Publisher's address, stated above, or to the Publisher at 215 Park Avenue South, New York, N.Y. 10003, or such subsequent address as a party shall notify the other in writing. Unless otherwise specified, such notice may be sent by regular mail.

### 12.  NO AGENCY

The Author is in no respect the Publisher's agent or employee.

### 13.  CONSTRUCTION AND VALIDITY

This Agreement consists of Section 1 through Section 13 and constitutes the full understanding of the parties hereto, and no promises, representations, or undertakings involving the Work other than those incorporated herein shall be binding on either party. The parties shall have no obligations to each other except those specifically stated in this Agreement. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts and the United States of America. If any part of this Agreement is declared invalid or unenforceable by a court of competent jurisdiction, the remaining provisions shall continue in effect.

Any modification of this Agreement must be in writing and signed by both parties.

HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY

By:_____
        PUBLISHER

By:_____
        AUTHOR  ████████████

_____
        Social Security Number

_____
        Citizenship



████████████████



118 N. Clinton Street
Chicago, IL   60606

PUBLICATION AGREEMENT made this ███████████████,
1989, between:

████████████

hereinafter called the Author, and Probus Publishing
Company, hereinafter called the Publisher. The Author
and Publisher agree that:

**Delivery and**
**Acceptance of**
**Manuscript**

1.    The Author agrees to prepare and to deliver to
      the Publisher on or before ████████, 1990, one
original and one copy of a completed manuscript, of book
length, approximately ██ typewritten pages (not less
than ███ pages) on the subject of:

████████████████████████████████████████████

and the Author grants to the Publisher the exclusive
right to publish and sell this work worldwide during the
full term of this copyright and its subsequent renewal.
The original manuscript and copy shall be complete and
legible, properly prepared for publication, and in form
and content acceptable to the Publisher. The Publisher,
at its expense, may solicit critical reviews of the man-
uscript prior to publication in book form to facilitate
the editorial process by ensuring the highest quality in
content, organization and style of the manuscript. The
Author agrees, if requested by the Publisher, to revise
the manuscript at the Author's expense so that it is
acceptable in form and content to the Publisher.

If the Author fails or is unable to either deliver such
a completed manuscript on the above date, or any exten-
sion thereof granted by the Publisher, or revise said
manuscript if requested by the Publisher, the Publisher
may terminate this contract at its option without
further liability on its part hereunder, whereupon any
monies paid to the Author by the Publisher under terms
of this Agreement shall be returned to the Publisher.
If the Publisher fails to publish the work and offer it
for sale in book form within eighteen (18) months after
acceptance by both parties of such a completed manu-
script, the Author may exercise the option of either
extending the publication date or terminating this
agreement.



**Probus Publishing**

**-2-**

**Manuscript Form and Copy Editing**

2.   The original manuscript and copy shall be delivered in proper form, consisting of double-spaced type-scripts, or their equivalent, together with suitable copies for all illustrations.  Copy for line illustra-tions will be clear and useable sketches, suitable for redrawing in final form by the Publisher.  Copy for halftone illustrations will be clear, glossy photo-graphs.  The Publisher will have the right to a) edit the work for the original printing and for any reprint-ing, provided that the meaning of the text is not materially altered, b) publish the work in a suitable style as to paper, printing, binding, and volumes, as it deems best suited to the sale of the work, and c) use all customary means to market the work.

**Author's Corrections**

3.   The Author shall promptly correct and return proofs delivered to him for that purpose together with suitable copy for an index.  The Author may request the Publisher to arrange for a third party to prepare an index but the costs charged by such third party will be paid for by the Author.

The Author may alter the printer's proofs of the work, and the Publisher agrees that it will absorb the cost of these alterations, provided this cost does not exceed fifteen percent (15%) of the cost of composition. The Author agrees that any sums spent by the Publisher for Author's corrections in excess of this allowance may be charged to the Author's royalty account.  Author's corrections are defined as deletions, additions, and other revisions made by the Author other than for printer's errors in proof, drawings, and cuts.

**Royalties**

4.   The Publisher agrees to pay the Author, his repre-sentatives or assigns, a royalty based on the fol-lowing types of sales:

a)   On all copies of the regular edition of the work sold by the Publisher in the United States of America, including its territories and possessions, equal to ten percent (10%) of the actual cash received from the sale of the first 3000 copies, twelve percent (12%) of the actual cash received from the sale of the next 3000 copies and fifteen percent (15%) of the actual cash received from the sale of all copies over 6,000.

AG100018

Probus Publishing                            -3-

b)  On all copies sold to business concerns or trade associations where a special quantity price has been granted an amount equal to five percent (5%) of the actual cash received by the Publisher from such a sale. A special quantity price is defined as a price which is less than fifty percent (50%) of the advertised list price of the book.

c)  On all copies of the regular trade edition of the work sold by the Publisher in foreign countries, an amount equal to five percent (5%) of the actual cash received regardless of the type of sale.

d)  On all copies licensed by the Publisher to established book clubs an amount equal to fifty percent (50%) of all royalties received by the Publisher from such license arrangements.

e)  The Publisher may permit others to publish other versions of the work in book form; syndicate, excerpt, condense or serialize the work or parts thereof in magazines or newspapers; make micro-fiche editions or translations, broadcast by radio or television, transfer to sound recording, film, videotape or electronic computer media; and otherwise utilize the work and materials based on the work. The net amount of any compensation received from such use shall be divided equally between the Publisher and the Author. The Publisher may authorize such use by others without compensation if, in the Publisher's judgment, such use may benefit the sale of the work.

f)  It is agreed that any copies shipped subject to approval and returned to the Publisher, or delivered to a book club for distribution to its members or lost in transit, or retained without payment, or furnished gratis to the Author or for review, advertising, sample, or like purposes, shall not be subject to any royalty.

All royalties shall be paid as follows:

One hundred percent (100%) to ▓▓▓▓▓▓

Royalty          5.  The Publisher agrees to pay royalties semiannually
Statements and       on all copies sold from January first and from July
Settlements      first and render statements and make settlement thereof
                 within sixty (60) days thereafter.

AG100019

...shing

-4-

6.    The Publisher agrees to give ten (10) copies of
the book to the Author and to sell him such further
copies as he desires at a discount of forty percent
(40%), f.o.b. the Publisher's warehouse.

Books sold to the Author under the provisions of this
paragraph are not subject to the provisions of paragraph
4 of this Agreement.

The Publisher agrees to sell to the Author a special
edition of the work at a cost of three (3) times the
Publisher's cost of the book  (such costs shall include
paper, printing, binding, dust jacket and composition/
typesetting), providing the Author agrees to a minimum
order of 500 copies, placed with the Publisher at the
time the work is printed or reprinted by the Publisher.
Sales of special editions of the work are non-returnable
and f.o.b. the Publisher's warehouse.

**Copyright**

7)    The copyright shall be taken out in the name of the
Publisher and shall be its sole property, and the
Publisher may apply for and receive the renewal of, or
any extension of same, the Publisher having the
exclusive right, title and interest in and to such
copyright and renewals thereof.

**Author's
Guarantee**

8.    The Author guarantees that the Author has not
entered into any contract with any other Publisher
prior to the date hereof for the publication of the
work, that the Author is the sole author, that the work
is original, contains no libelous statements or unlawful
matter, and in no way infringes on the copyrights,
trademarks, or patents of others, and that the Author
will indemnify and save harmless the Publisher from all
costs, expenses, legal fees and damages arising from
breach of such guarantee.  The Author must obtain writ-
ten permission of the copyright holder for any material
he quotes or adapts from copyrighted sources.   The
Author will obtain such permission at his own expense
and file them with the Publisher prior to publication of
the work.   The Author may request the Publisher to
arrange for a third party to obtain such permissions but
the costs charged by such third party will be paid for
by the Author.

**Competing
Publications**

9)    The Author agrees that during the term of this
Agreement he will not contract to publish or
furnish to any other publisher any work on the same
subject that will conflict with the sale of this work.
The Author may, however, draw on and refer to material
contained in the work in preparing articles for publi-
cation in scholarly and professional journals.

AG100020



,bus Publishing                          -5-

**Revised**
**Editions**

10.  If it is the judgment of the Publisher that a re-
     vision of the book is desirable, the Author agrees
to prepare such a revision without additional compensa-
tion except as outlined in paragraph (4) covering
royalty terms.

If the Author is unable to revise or to supply new
material where needed due to incapacity or death, or
should refuse or neglect to deliver such revised and new
material to the Publisher within eighteen (18) months
from the date of the written request of the Publisher
for this revision, the Publisher may have this revision
done and shall be the sole judge of the party selected
to prepare such revision.

Where the Author for any reason fails to prepare the
manuscript for revision, and the Publisher selects a
revisor, the Publisher shall pay royalties as follows:
On the first revised edition, the selected revisor and
the Author will divide the royalty equally.  On all
subsequent revisions, the revisor shall receive the
total royalty.

Should the Author be undertaking a revision, or if the
Publisher is in the process of manufacturing a revision,
the Publisher may have the right to allow the current
edition of said work to be temporarily out of stock
pending the publication of a revised edition and such
action should not be construed as a breach of contract
between the Author and the Publisher.

The Author and Publisher mutually agree that prior to
any revision of the work as defined above, the parties
to this agreement shall review the schedule of royalties
as defined in paragraph four (4) of the agreement and
shall amend said royalty schedule in accordance with the
sales history of the work in its first edition.  In no
case shall any changes be agreed upon except as
submitted in writing and as signed by both parties to
this agreement.

AG100021

**shing**

**of**
**on**

-6-

11.  If at any time after eighteen (18) months from date
     of publication of said work, the Publisher decides
that public demand no longer warrants its continued
publication, the Publisher then will offer to the Author
the plates and illustrations at one-half the cost of
same, and all copies of the work on hand, at the cost of
paper, printing and binding.  If the offer is accepted
within three (3) months of its date and payment as pro-
vided made in full, the Author shall become sole owner
of the work.  If said offer is not accepted or payment
not made within the said three (3) months, then the
Publisher may destroy the plates and sell all copies of
the plates and all copies of the work then on hand, or
make any such other disposition of plates, type and
copies as it may desire, free of all royalty to the
Author.  In either case, this Agreement shall thereupon
terminate.

**ssignments**

12.  This contract may not be assigned either in whole
     or in part by either party without written consent
of the other, except that the Publisher may assign this
contract without the consent of the Author in the event
of a merger, consolidation or sale of assets by the
Publisher where the surviving corporation continues in
the same book publishing business:  All terms and
conditions of the contract shall be binding upon the
assignee or assignees of the parties hereto.

**dvance**

13.  The Publisher agrees to pay to the Author
     an advance against future royalties in the amount of
▮▮▮▮▮ payable as follows: ▮▮▮▮▮ upon the signing of
this Agreement and ▮▮▮▮ upon acceptance by Publisher
of a complete manuscript of the work in suitable form,
style and content.  The Publisher thereby will retain
for its own account the first ▮▮▮▮ otherwise due the
Author under terms of this Agreement. The terms of this
paragraph do not apply to future revisions of the work.

lishing                          -7-

14. All sums of money due under this Agreement shall be paid to and in the name of the Author's agent:
████████████████████████████████████,
██████████████████████ whose receipt shall be a good and valid discharge of all such indebtedness. Professional Publishing Services is hereby enpowered by the author to act in all matters arising from and pertaining to the Agreement, said agency being coupled with an interest. It is agreed between the Author and the agent that the author does hereby irrevocably assign and transfer to Professional Publishing Services a sum equal to fifteen percent of all moneys due and payable to and for the account of the author, her heirs, executors, successors, and assigns under this agreement. The Publisher's sole obligation shall be to remit to said agent all money due to the author, if any, after deducting therefrom any deductions or charges permitted under this agreement.

Governing Laws      15. This agreement shall be construed and interpreted according to the laws of the State of Illinois. This Agreement may not be changed unless the Author and the Publisher agree to changes in writing. This contract shall be binding upon and inure to the benefit of the successors and assigns of the Publisher and the personal representatives, heirs, and assigns of the Author.

The parties agree upon the terms of this Agreement on the respective dates following their signatures.

Witness
As to the Author

SS# or ID#___████████████████████
Date___████████████ 1990

PROBUS PUBLISHING COMPANY

Witness
As to the Publisher

Date___████████ 9d

AG100023



# HarperCollins*Publishers*

**AGREEMENT** ("Agreement") made this ███████, 2011.

**PARTIES**

    A.  ████████████ ("Author") writing under the pseudonym ███████████ ██████████████████████████, New York, NY 10003 Attention: ████ ████████ and

    B.  HarperCollins Publishers LLC ("Publisher"), 10 East 53rd Street, New York, NY 10022.

**RECITALS**

    A.  Author and Publisher desire to enter into this Agreement with respect to the development and publication of the following works, provisionally titled:

        Work #1: UNTITLED ████████████

        Work #2: UNTITLED ████████████

    B.  This Agreement consists of Part 1: Deal Terms; Part 2: Standard Terms and Conditions; Part 3: Defined Terms; and any attached schedules and exhibits referred to herein.

HARPERCOLLINS PUBLISHERS L.L.C.

By: _____      By: _____

    ████████████                         ████████████████████████

Date: _____    Date: _____

Author Soc. Sec. #: or,
Agent's Tax Id. # ████████
Author's Date of Birth: _____
Author's Citizenship:
(This information is required for copyright registration
with the United States Copyright Office)
ISBNs: #1: ████████  #2: ████████

1

AG1000_

## Part 1: DEAL TERMS

| | |
|---|---|
| *"Manuscript"* | The text of a work of fiction as written by Author and delivered to Publisher, consisting of approximately ▇▇▇▇words, ▇▇▇▇▇▇▇▇▇▇▇ together with any supplemental or other additional materials that Author provides for use in or in connection with publication of the Work. |
| *"Advance"* and *Payment Schedule* | A total Advance of ▇▇▇▇ payable as follows:<br><br>Work #1: ▇▇▇▇on execution of this Agreement;<br><br>Work #1: ▇▇▇▇▇<br><br>1.  ▇▇▇▇▇▇ execution of this Agreement;<br><br>2.  ▇▇▇▇▇▇on Acceptance of Complete Manuscript for Work #2 as defined in Part 3(a) of the Agreement;<br><br>As an additional Advance for Work #1, if within one year following initial mass-market paperback publication of Work #1 net sales for Work #1 reach at least 25,000 copies, Publisher shall pay Author ▇▇▇▇▇. "Net sales" shall mean Regular Sales, less returns and a reasonable reserve against returns in accordance with Part 2, Section 4(a). Net sales must meet the above mentioned criteria both one year following initial mass-market paperback publication of Work #1 and at the close of the accounting cycle therefor. Any such additional Advance shall be payable within 60 days following the close of such accounting cycle.<br><br>As an additional Advance for Work #2, if within one year following initial mass-market paperback publication of Work #2 net sales for Work #2 reach at least 25,000 copies, Publisher shall pay Author ▇▇▇▇▇"Net sales" shall mean Regular Sales, less returns and a reasonable reserve against returns in accordance with Part 2, Section 4(a). Net sales must meet the above mentioned criteria both one year following initial mass-market paperback publication of Work #2 and at the close of the accounting cycle therefor. Any such additional Advance shall be payable within 60 days following the close of such accounting cycle. |
| *"Delivery Date"* | Complete Manuscript for Work #1: Publisher acknowledges Acceptance<br><br>Complete Manuscript for Work #2: due no later than ▇▇▇▇ 2012 |
| *"Territory"* | US, its territories, possessions and dependencies, Canada and the Philippines exclusively, and non-exclusively throughout the remainder of the world with the exception of those territories listed on the Schedule of Reserved Territory attached as Schedule A. |
| *"Languages"* | English |
| *"Reserved Rights"* retained by Author | All rights in the Work other than the Rights granted to Publisher under this Agreement (Reserved Rights include but are not limited to foreign language translation, English language publication outside the U.S., motion picture, television, radio and live-stage dramatic adaptation rights, commercial and merchandising and multimedia adaptation rights and non-exclusive public reading). |

2

AG100025

| | |
|---|---|
| **"Publication Date"** | The date on which Publisher initially publishes the Work, which shall be within 18 months of Acceptance. |
| **"Promotional Services"** | If requested by Publisher a standard author tour for a minimum of two weeks during the one month period immediately following Publisher's initial publication of the Work. In planning any such author tour, Publisher shall work around Author's prior professional schedule and commitments. |
| **"Royalties" due to Author for Publisher's Physical and Digital Versions** | 1.  Copies of Physical Versions:<br>A.  On Regular Sales, these percentages of Suggested Retail Price:<br>(1) Hardcover: 10% to 5,000 copies; 12.5% from 5,001 to 10,000 copies; and 15% thereafter<br>(2) Trade-paperback: 7.5%<br>(3) Mass market paperback: 10%<br>(4) Large-print hardcover: 10%<br>(5) Large-print paperback: 7.5%<br><br>B.  On Special Sales and Export Sales, these percentages of Amounts Received:<br>(1) Hardcover (including large-print): 10%<br>(2) Trade paperback (including large-print): 7.5%<br>(3) Mass market paperback: 10%<br><br>C.  On sales made directly to consumers by Publisher:<br>(1) sales from Publisher's web sites or solicited solely by e-mail: the applicable royalty set forth above for Regular Sales of the Physical Version;<br>(2) in response to direct mail solicitations: 5% of Amounts Received<br><br>D.  On sales of Physical Versions of sound recordings, the following percentages of Amounts Received: 8% to 25,000 copies, and 10% thereafter (but 10% and 12%, respectively, if Author reads the Work)<br><br>2.  On sales of Digital Versions, 25% of Amounts Received |
| **"Rights Payments" due to Author for Licensed Versions** | The following percentages of Amounts Received:<br>First serial, 90%<br>Second serial, 50%<br>Permissions, 50%<br>Condensations and Abridgments, 50%<br>Book club, 50%<br>Paperback Reprint, 50%<br>Hardcover Reprint, 50%<br>Sound Recordings, 50%<br>Digital Versions, 50%<br><br>All other grants of Rights to third parties not otherwise provided for herein (with the exception of Reserved Rights retained by Author), including 50%<br><br>The following licenses shall be subject to Author's approval: condensations and abridgements, premium, paperback and hardcover reprint and Digital Versions.<br><br>The following licenses shall be subject to Publisher's consultation with Author, first serial. |

3

AG100020

| | |
|---|---|
| *Royalties and Rights Payments due to Author from online advertising revenues* | Where ads are displayed on the same page view as the content of the Work—25% of Amounts Received, payable after Publisher's total Amounts Received from such advertising exceeds $1,000, it being agreed that Author shall not share in amounts received from sponsorship or similar arrangements unless such arrangements relate solely to the Work however, if Author is not entitled to receive the aforementioned royalties, Author shall have the right to approve the inclusion of the Work in such sponsorship/arrangement. |
| *"Option"* | Author grants to Publisher an option on Author's next book-length work of fiction, to be exercised as follows. Author will submit to Publisher a detailed proposal for such work before offering rights in it to any other party. Publisher will have 30 days from its receipt of a detailed proposal for such work to advise Author whether it wishes to publish it and upon what financial terms, such 30-day period to commence no earlier than 30 days after Acceptance of all Works hereunder. If within such 30-day period Publisher does not advise Author that it wishes to publish such work Author may offer it to other parties without further obligation to Publisher. If within such 30-day period Publisher advises Author that it wishes to publish such work but within 30 days of Publisher so advising Author, Author and Publisher have not agreed on financial terms for such publication, Author may offer such work to other parties without further obligation to the Publisher. |
| *"Competing Work(s)" and "Non-Competition Period"* | Intentionally left blank |
| *"Special Provisions"* | • Author or Author's agent will advise Publisher in writing, within ten (10) days from execution of an agreement, when Author has entered into a deal with a U. K. publisher for publication of such Work if the U.K. edition of such Work is scheduled to be published prior to Publisher's initial publication of such Work and/or the U.K. publisher is announcing the publication of and release for sale of an English language edition of such Work in the open market prior to Publisher's initial publication of such Work.<br><br>• Publisher acknowledges that no index shall be required for the Works and Section 1(j) is hereby deemed deleted from the Agreement<br><br>• Publisher shall render separate accountings for each Work and in no event shall Royalty and Rights Payments from one Work be held to recoup advances and additional advances for another.<br><br>• The provisions of Part 2, Section 2(c) of the Agreement shall pertain solely to works of fiction.<br><br>• If Publisher has not expressed to Author its intention to exercise audio rights to such Work within one year following initial publication of such Work, Author shall have the right upon written notice to Publisher to reacquire stand-alone audio rights to such Work.  If Author exercises the foregoing right, and has entered into an agreement for a stand-alone audio publication of such Work, then such rights will vest in Author; whereas, if Author has exercised the foregoing right but has failed to enter into an agreement by the time of Publisher's initial |

4

AG100027

publication of such Work, then such stand-alone audio rights will automatically re-vest with Publisher upon Publisher's request and provided Publisher exercises such rights and releases such standalone audio edition within 6 months of such re-vestment. For the avoidance of doubt, whether or not such stand-alone audio rights revert to Author, Publisher shall nevertheless have the right to create audio recordings of such Work for use in audiovisual products made available as Digital Versions, provided that such audio recordings may not be sold as a separate product (unless such rights re-vest in Publisher). If, pursuant to the foregoing, Publisher expresses its intention to exercise audio rights to such Work but fails to release a stand-alone recording of such Work within three months following initial publication thereof, and if Publisher thereafter receives written notice from Author demanding publication of such stand-alone audio, Publisher will publish a stand-alone recording of such Work within six months of receipt of such notice; failing to do so, Author shall have the right upon written notice to Publisher to reacquire stand-alone audio rights, in which event Publisher shall have the right thereafter, if Author has not exercised stand-alone audio publication rights, to publish a stand-alone audio upon written notice to Author.

- All Author copies shall be sent directly to █████████████████
  ████████████████████████████

**In the event of any inconsistency between Part 1, on the one hand, and Part 2 of the Agreement or any Schedules, on the other, the provisions of Part 1 shall be deemed controlling.**

5

AG100028

## SCHEDULE A

Schedule of Reserved Territory

| | |
|---|---|
| Ascension | Pacific Islands |
| Australia | (comprising Solomon Islands, Tonga, |
| Bangladesh | Western Samoa, Nauru New Hebrides, |
| Bhutan | Gilbert and Ellice Islands, Union Islands |
| Botswana | Norfolk Island and Pitcairn Island) |
| British Antarctic Territory | Pakistan |
| British Indian Ocean Territory | Papua-New Guinea |
| British Virgin Islands | St. Helena |
| Brunei | Seychelles |
| Burma | Sierra Leone |
| Cameroon | Sikkim |
| Cocos Island | Somalia |
| Cyprus | South Africa, Republic of |
| Falkland Islands | Sri Lanka |
| Fiji | Sudan |
| The Gambia | Swaziland |
| Ghana | Tanzania |
| Gibraltar | Trinidad & Tobago |
| Guyana | Tristan da Cunha |
| India | Uganda |
| Iraq | United Kingdom |
| Ireland, Republic of | (including Northern Ireland, the Isle of Man |
| Jamaica | and Channel Islands) |
| Jordan | Vanuatu |

6

AG100029

| | |
|---|---|
| Kenya | West Indies |
| Kiribati | (comprising Antigua & Barbuda, Bahamas, |
| Kuwait | Barbados, Belize, Bermuda, Dominica, |
| Lesotho | Grenada St Lucia, St. Vincent and the |
| Malawi | Grenadines, Caicos, Cayman and Turks |
| | Island, Leeward and Winward Islands) |
| Maldives | Yemen |
| Malta (including Gozo) | Zambia |
| Mauritius | Zimbabwe |
| Montserrat | |
| Mozambique | |
| Namibia | |
| Nepal | |
| New Zealand | |
| Nigeria | |

7

AG100

## Part 2: STANDARD TERMS AND CONDITIONS

### 1.    DEVELOPMENT OF THE WORK

(a)    Author will deliver to Publisher a Manuscript that is satisfactory to Publisher, as further provided below in this Section 1. Author will deliver to Publisher by the Delivery Date one digital copy of the Manuscript that accommodates Publisher's production requirements, and, upon request, one hard copy. Publisher will notify Author whether the Manuscript is satisfactory. If it is not, Publisher will provide written suggestions in reasonable detail for possible revisions. Author will then have 40 business days from Author's receipt of such suggestions to deliver a revised and satisfactory Manuscript to Publisher.

(b)    If Author does not receive any response from Publisher within the later of 30 business days after (i) the Delivery Date or (ii) Publisher's receipt of the Manuscript in accordance with Section 1(a) or 1(d), Author may make written demand for notice from Publisher as to whether the Manuscript is satisfactory. If Author receives no response within 10 business days of Publisher's receipt of such demand, Author shall make an additional written demand for notice from Publisher as to whether the Manuscript is satisfactory, and if Author receives no response within 10 business days of Publisher's receipt of such further demand, Author shall have the right at any point thereafter, but only prior to Publisher giving notice, to terminate this Agreement with respect to the Work on the condition that Author repays Publisher all portions of the Advance paid to Author prior to such termination.

(c)    If Author fails to (i) deliver the Manuscript by the Delivery Date (unless the parties have mutually agreed to revise the Delivery Date as memorialized in an amendment to this Agreement), or (ii) deliver a revised Manuscript by the time provided in Section 1(a) or 1(d); or (iii) comply with Author's obligations under Section 1(f) or 1(g), then Publisher may either elect to keep this Agreement in effect or, upon written notice to Author, recover from Author the portion of the Advance paid prior to such notice, and when repayment is received Rights to the Manuscript will revert to Author.

(d)    If after delivery of the Manuscript Publisher requests revisions and Author delivers a revised Manuscript within 40 business days of such request that is still not satisfactory to Publisher, Publisher may (i) terminate this Agreement with respect to the Manuscript on written notice, or (ii) request further revisions. If Publisher requests further revisions, Author will have 20 business days from receipt of the request to deliver a revised Manuscript that is satisfactory to Publisher, and if Author fails to do so, Publisher may terminate this Agreement. If Publisher exercises its right to terminate this Agreement pursuant to this Section 1(d), Author may offer rights in the Manuscript to other publishers and, if Author submits to Publisher a copy of an agreement granting any of the Rights to a third party that provides for payment to Publisher of all monies payable thereunder until all portions of the Advance previously paid to Author have been repaid, Publisher shall relinquish Rights covered by such agreement conditioned upon Author's entering into such agreement with such third party. If within three years from the date of such notice, Author has not repaid all portions of the Advance previously paid, Author will repay the unpaid balance, and this Agreement will remain in effect until such repayment has been made in full. Upon full repayment, Rights to the Manuscript will revert to Author.

(e)    If Publisher has acquired more than one Work pursuant to this Agreement, in the event Publisher issues notice in accordance with the terms set forth in Sections 1(c) or 1(d), Publisher shall have the further right to terminate this Agreement in its entirety with respect to any Work due to be delivered thereafter under the terms of this Agreement, in which case Author shall repay within 40 business days of such notice the portion of the Advance paid to Author for any such Work terminated pursuant to this section. Correlatively, if Publisher has acquired more than one Work pursuant to this Agreement, in

8

AG100031

the event Publisher issues notice in accordance with the terms set forth in Sections 1(c) or 1(d) but has not exercised its rights pursuant to this Section 1(e) to terminate the Agreement as set forth hereinabove, Author shall have the right for a period of 20 business days following Publisher's notice to terminate this Agreement in its entirety with respect to any Work due to be delivered thereafter under the terms of this Agreement. In either of the foregoing cases, Author shall repay within 20 business days of such notice the portion of the Advance paid to Author for any such Work terminated pursuant to this section.

(f)     Author will on the Delivery Date identify any Third Party Material, and will deliver within 30 days following the Delivery Date written agreements reasonably required by Publisher and the law granting permission for use of all Third Party Material in exercising all Rights in all licensed formats in the Territory for the Term except if any Third Party Material constitutes fair use. Accordingly, Author will notify Publisher of such fair use Third Party Material and seek Publisher's opinion to determine if such Third Party Material constitutes fair use. Author will make all payments due under such agreements, and if Author has not done so, Publisher may make such payments and collect them from Author or deduct them from amounts due to Author under this Agreement. Upon Author's request, Publisher shall supply Author with a sample permission form which is acceptable to Publisher.

(g)     Publisher may have the Manuscript reviewed by Publisher's counsel at Publisher's expense. Author will respond promptly to counsel's requests for information and documentation and will make such changes in the Manuscript as may be recommended by Publisher's counsel. If, however, Author is unwilling to make changes recommended by Publisher's counsel, Publisher shall not be required to publish the Work, and thereafter the terms of Section 1(c) shall apply.

(h)     After Acceptance, no change may be made in the editorial content of the Manuscript without Author's written approval except that Publisher may copyedit the Manuscript in accordance with its standards of punctuation, spelling, capitalization and usage. Publisher will send the copyedited Manuscript to Author, and Author will within 10 business days of receipt return it to Publisher with Author's comments, and with any revisions and responses to any queries. Any differences between the copyeditor and Author, other than differences relating to errors in spelling, capitalization, usage and punctuation, will be resolved as Author directs so long as such resolution does not render the Manuscript unsatisfactory to Publisher.

(i)     Publisher will prepare proofs of the Work in conformity with the copyedited Manuscript. Author shall review and return within 10 business days of receipt proofs or other production materials for the Work submitted by Publisher.

(j)     Publisher may, but will not be required to, prepare an index, and may, after informing Author that an index is required, deduct such cost (such costs not to exceed $1,500.00) from amounts due to Author under this Agreement. Publisher agrees to seriously consider Author's recommendations on whether or not an index should be included in the Work; however in the event the parties cannot come to an agreement, Publisher shall have the final decision.

## 2.     GRANT OF RIGHTS; NON-COMPETITION

(a)     Author licenses the Rights exclusively to Publisher in the Territory for the Term.

(b)     Publisher and its licensees and customers may use Author's name, likeness and biographical information for promotional purposes. Author will deliver to Publisher a photograph of Author satisfactory to Publisher and will at Author's expense obtain written permission satisfactory to Publisher for such use of the photograph in connection with the exercise of all Rights and such

9

AG100032

promotion, and if Author fails to so, Publisher may do so and recover the out of pocket third party cost of such permission from Author. Author's likeness and biographical data used by Publisher shall either be provided by Author or approved by Author.

(c)     The Work will be Author's next book-length work. Author represents that Author is not subject to any commitment for initial publication by a third party of another book-length work written or co-written by Author. Author will not offer rights to another book-length work written or co-written by Author, or accept an offer for such a work, until Acceptance and until Author has complied with the Option.

(d)     During the Non-Competition Period, Author will neither publish nor authorize the publication anywhere in Publisher's exclusive Territory of any Competing Work, including any Competing Work co-written by Author, in any form equivalent to a Physical Version or Digital Version. The terms of this Section 2(d) do not apply to prequels or sequels to the Work.

## 3.     PUBLICATION; PROMOTION; AUTHOR COPIES

(a)     After Acceptance, Publisher will publish the Work by the Publication Date. All details of publications of Physical Versions and Digital Versions, including manufacturing, format and design, distribution, pricing, advertising and promotion and distribution of free copies (including free access to Digital Versions via Internet search and display), will be determined by Publisher.

(b)     Author will perform Promotional Services at the times provided in Part 1 or at such other times as Publisher may reasonably request and, if requested, as part of the Promotional Services, will sit for video- and audio-recorded interviews, which Publisher may reproduce, distribute, display, perform and adapt for promotional purposes. All reasonable expenses incurred by Author in performing Promotional Services will be paid by Publisher. If Author is not available to perform Promotional Services at the time of the Publication Date, Publisher may delay the Publication Date until such time as Author is available. Author will inform Publisher of any appearances Author may plan to make and will cooperate with Publisher to take advantage of any promotional opportunities that such appearances may offer.

(c)     Publisher will give Author 25 copies of each Physical Version published by Publisher after initial publication of each and will give 10 copies to Author's agent. Author may purchase additional copies thereof at a discount of 50% off the Suggested Retail Price for personal use, but not for resale on a non-returnable basis. Upon written request, Publisher will provide Author with two copies of the initial Digital Version of the Work published hereunder, any such copy to be provided in the format available to Publisher at the time of the request. Author's copies shall be sent directly to Author's home address as set forth in Special Provisions Section of the Agreement. Publisher shall use reasonable efforts to supply Author with one copy of any Licensed Version of the Physical Version of the Work, if available.

(d)     Advertisements may not be inserted or printed by Publisher in any Physical Version of the Work, including the jacket or cover of the Work, without Author's written consent other than ads for books by Author. Such consent may be withheld at Author's sole discretion, and Author may require that a share of the advertising proceeds be paid to Author as a condition of Author's consent. With the exception of newspapers or periodicals, the foregoing shall apply to Licensed Versions.

(e)     Publisher shall meaningfully consult Author over cover design, jacket design, interior design and catalog copy of Publisher's hardcover and paperback editions of the Work.

(f)     The final title of the Work shall be mutually agreed upon by Author and Publisher.

10

AG10003.

(g) If Publisher elects to "final remainder" or place an edition of a Physical Version out of print after such edition has been available for sale for no less than one (1) year, Publisher will use reasonable efforts to notify Author, to offer Author twenty-five (25) free copies of any Physical Version, and to give Author the first opportunity to purchase Publisher's remaining inventory thereof at Publisher's manufacturing cost. However, Publisher's failure to do so shall not be deemed a breach of this Agreement.

## 4. PUBLISHER'S ACCOUNTING AND AUTHOR'S RIGHT TO AUDIT

(a) After the Work is published, Publisher will render an accounting of all of Author's earnings no less often than semi-annually for such periods as Publisher may from time to time specify (currently, periods ending June 30 and December 31), and will make any payments due, within 90 days after the end of each period. Royalties and Rights Payments will be paid to Author as set forth in Part 1, and Royalties will be paid on sales, less returns. Publisher may retain a reasonable reserve against returns on any accounting statement, provided that the amount of the reserve is stated and the subsequent statement states how such reserve has been applied. It is not the intent of this provision that a reserve against returns be held in every accounting period; rather any reserve held shall be calculated with respect to the accounting being rendered and shall be reasonably related to Publisher's reasonable expectation as to returns at the time such statement is rendered. On request, Publisher will provide a written explanation of any reserve. Publisher does not, as of the date of this Agreement, hold a reserve for returns on Digital Versions of the Work. However, Publisher shall have the right to commence holding reasonable reserves thereon at any time during the Term without need of amending this Agreement if market practices for returns of such formats reasonably require Publisher to begin withholding, in which case the foregoing terms with respect to Physical Versions shall equally apply to Digital Versions.

(b) Unless otherwise stated, any escalation in any Royalty for a specific format or channel of distribution will apply separately to each version sold in such format or channel. No Royalties will be payable on copies given or sold to Author, given away, made accessible gratis via the Internet for promotional purposes, given to charitable organizations, sold at or below the cost of manufacture or damaged or destroyed. If Publisher itself desires to exercise any of the Rights (as opposed to licensing such Rights to third parties), other than those Rights for which royalty rates are already provided hereinabove, Author and Publisher shall negotiate in good faith the royalties payable thereon.

(c) If Author receives an overpayment because of copies sold but later returned, Publisher may deduct the overpayment from any other payments due from Publisher to Author under the Agreement. If any such overpayment is not recouped in four accounting periods, within 30 business days of Publisher's request Author will pay Publisher the unrecouped balance. For the purpose of this paragraph, an unearned advance shall not be considered an overpayment of royalties.

(d) No Royalties or Rights Payments will be paid until the Advance and other permitted charges to Author's royalty account have been fully recouped by Publisher from Royalties and Rights Payments credited to Author's royalty account from all Works.

(e) If a Physical Version or a Digital Version is included in a Combined Work by Publisher or a distributor, agent or licensee of Publisher: (i) if the Combined Work is distributed as a discrete product, Royalties and Rights Payments shall be prorated based on the percentage of the Combined Work that is comprised by such version (calculated based on the number of works included in the Combined Work); and (ii) if the Combined Work is made available through a subscription or similar service, Royalties and Rights Payments shall be prorated based on the use made of such version by the subscriber or other end-user, as reasonably estimated by Publisher, as a percentage of such person's use of the entire Combined Work during each of Publisher's semi-annual accounting periods, which in

11

the case of Digital Versions will when practicable be calculated on a page-view basis; provided, however, that if payments for such use cover periods longer than a single semi-annual accounting period, such payments will be divided equally across all covered accounting periods for the purpose of making this calculation, and prorated as if received and effective during an accounting period.

(f)   Upon written request from Author, Publisher will provide the following information for each Physical Version and Digital Version: the date of each printing and the number printed of any Physical Version; the number of copies distributed by Publisher; and the cumulative number of copies sold, returned, distributed free of charge, remaindered, destroyed or lost.  With respect to e-book sales of the Work Author may also reasonably request details about Publisher's deductions from or other charges Publisher applies against the amounts received by Publisher for such sales. Publisher will also on request provide copies of any licenses of Rights made by Publisher, and any other information Author may reasonably request in order to ascertain the accuracy of accountings rendered.

(g)   Author may, upon written notice, but not more than once in any 12-month period, audit Publisher's records insofar as they relate to the Work. Any audit must be conducted during normal business hours, at the locations where Publisher maintains its records and under such conditions as Publisher may reasonably prescribe.  If an error is discovered, the party in whose favor the error was made will pay the other the amount of the error, or Publisher may credit any error in its favor to any unearned portion of the Advance. Any audit will be at Author's expense, unless errors in Publisher's favor amount to more than 5% of the total amounts paid to Author under this Agreement, in which case Publisher will contribute to the cost of the audit up to the amount of the error. Any mutually agreed under payments discovered in the course of an audit and audit fees, if applicable, will be paid within 30 days of such discovery

(h)   If at any time during the term of this Agreement the royalty rate paid by Publisher to its authors on Digital Versions is as a general matter more favorable to its authors than the rate provided herein, such more favorable rate shall apply to Author's Digital Versions on and after such rate is made applicable to Publisher's other authors as a general matter

(i)   Publisher shall upon request pay to Author Rights Payments accruing to Author's account within 30 days of Author's request provided the Advance for all Works and other permitted charges have been fully recouped by Publisher, and Author's share of a Rights Payment is $5,000 or more.

(j)   Author hereby irrevocably appoints ████████████████████, ("Agent") located at ██ ████████████ (Attention:████████) as his sole and exclusive Agent with respect to the Work and authorizes and directs Publisher to make all payments due or to become due to Author (or any corporation, person or other party controlled by Author) hereunder to and in the name of Agent, and to accept the receipt of Agent as full evidence and satisfaction of such payments. Agent is authorized to negotiate for Author throughout the world as to the disposal of all other rights in and to the Work (including without limitation works to which any option shall apply).  Agent is further empowered to engage sub-agents for the sale of subsidiary rights in and to the Work (and any related optioned works), including but not limited to British Commonwealth and/or translation rights, film rights and electronic rights.  In consideration for services rendered, Agent is irrevocably assigned, as an agency coupled with an interest, a sum equal to fifteen percent (15%) of gross monies paid to Author (or any corporation, person or other party controlled by Author) hereunder and from all other rights in and to the Work (including any optioned works related thereto), provided, however, that in the event Agent engages a sub-agent in connection with the Work (or any related optioned works), Agent shall be irrevocably assigned, as an agency coupled with an interest, a sum of up to twenty percent (20%) of gross monies paid to Author (or any corporation, person or other party controlled by Author) therefor (except in the engagement of a film agent, in which case the total commission shall remain 15%), one-half of which shall be distributed to the sub-agent. Amounts owing to Author shall be paid promptly

12

AG100035



upon the clearing of checks or wire transfers of gross monies received by Agent for Author. The provisions of this paragraph shall survive the expiration or termination of this Agreement and any copyright terms of the Work.

5.   **COPYRIGHT**

(a)   Publisher will place a copyright notice in the name of Author in each copy of the Physical Versions and where practical the Digital Versions distributed by Publisher and will require its licensees to do so. Publisher will register copyright in the first Physical Version of the Work with the U.S. Copyright Office within 90 days after first publication. Both parties will execute such documents as may be necessary to effectuate copyright in the Work.

(b)   Copyright in any materials created by or commissioned and paid for by Author for use in the Physical Versions and Digital Versions or in connection with their publication or promotion will belong to Author and the grants of Rights, representations, warranties and termination rights in this Agreement will apply to all such materials, and compensation payable hereunder will be deemed to include compensation for use of any such materials.

(c)   Copyright in the Harper Material will belong to Publisher. Author may not reproduce or use the Harper Material without Publisher's written consent.

(d)   In the event of any infringement of any of the Rights, Publisher may seek such remedies as it deems advisable and may name Author a co-plaintiff in any infringement litigation Publisher may commence. Publisher will bear the cost of any such litigation. Any recovery will be applied first to reimburse Publisher for its costs and the balance, if any, will be divided equally between Author and Publisher. If Publisher elects not to commence litigation, Publisher will notify Author and Author may then seek ′such remedies as Author deems advisable at Author's sole expense, and any recovery shall belong to Author.

6.   **WARRANTIES AND INDEMNITIES**

(a)   Author represents and warrants to Publisher that:

(1)   except for Third Party Material and Harper Material, Author is the sole author of the Work, and the Work is original;

(2)   except for Third Party Material and Harper Material, the Work has never been published in whole or in part in any form and is not in the public domain in any country in the Territory;

(3)   Author has the right, power and authority to enter this Agreement, and is the sole owner of the Rights free and clear of all liens, claims and encumbrances;

(4)   the Work contains no material that (i) infringes any copyright or other proprietary right, (ii) is libelous or a violation of any right of privacy or publicity, or (iii) would otherwise subject Publisher to legal liability;

(5)   the Work contains no instruction or regimen that, if followed as presented in the Work, will be harmful to the user or others; and

13

AG100036

(6)     if the Work is a work of non-fiction, except for incidental and immaterial changes made solely to protect the privacy of individuals depicted in the Work, and which are disclosed to Publisher prior to Publisher's first publication of the Work, all factual statements in the Work are either true, if they purport to be based on Author's personal knowledge, or, if they are not based on Author's personal knowledge, are based on Author's reasonable and adequate research and are believed by Author to be true.

(b)     Subject to subparagraph 6(b)(4),Author will indemnify and hold harmless Publisher from any loss, damage, expense (including reasonable defense costs), recovery or judgment that Publisher may incur ("Costs") as a result of any claim made against either which, if sustained, would constitute a breach of a representation or warranty made by Author in this Agreement (each, a "Claim"), subject to the following:

    (1)     Each party will promptly inform the other of any Claim. Publisher will defend any Claim made against Publisher with counsel of Publisher's selection and Author will cooperate fully with Publisher and its counsel in such defense.

    (2)     If Author has been truthful and forthcoming with Publisher with respect to the material giving rise to the Claim, and Author has cooperated with Publisher in defending the Claim, then Author will be responsible to Publisher for only half of all Costs.

    (3)     Notwithstanding the terms of Section 6(b)(2), if Publisher wishes to settle any Claim it shall consult with Author and give serious consideration to any objections Author may have. If Author rejects Publisher's terms of settlement, Publisher may settle the Claim on its own behalf, and Author may thereafter defend the Claim as against Author with Author's own counsel and at Author's sole expense, it being agreed that in such case Author shall be deemed to have waived coverage under Publisher's insurance policy and shall have no right of reimbursement from Publisher's insurer. If a final and non-appealable adjudication of the Claim is rendered in Author's favor within two years of Author's rejection of Publisher's terms of settlement, Author shall have no liability to Publisher with respect to such Claim; however, in the event of any other result, Author shall promptly reimburse Publisher for all Costs incurred by Publisher. Further, Author may not settle any Claim defended by Author hereunder other than for monetary compensation without Publisher's prior written consent.

    (4)     Author will be named an additional insured under the terms of any insurance policy that Publisher may carry which covers the Costs of Claims, subject to the terms and conditions of such policy, and Author shall not be obliged to pay any of the premiums for such policy. With the exception of the applicable deductible under such policy, Publisher shall first look to the proceeds of such policy for payments of amounts due Publisher from Author under the foregoing provisions resulting from claims for which such insurance applies. Author may join in the defense of any Claim with counsel of Author's selection at Author's expense.

(c)     Author will be responsible for any Claims made against Publisher's licensees of Rights to the same extent as Author is responsible to Publisher under Section 6(b).

(d)     If a Claim is made, Publisher may withhold payments due to Author under this Agreement in an amount equal to the anticipated Costs of the Claim as reasonably estimated by Publisher but in no event will Publisher withhold any amount otherwise covered by any E&O insurance policy carried by Publisher covering the Work; provided that if a Claim is asserted that does not result in a litigation being filed against Publisher within one year of its assertion, Publisher shall cease withholding such payments unless Publisher is in active negotiations with the claimant regarding settlement of the Claim. Publisher will deposit such monies in an interest-bearing account. Monies withheld and accrued

AG100037



interest will be first applied to satisfy Author's indemnity obligation, and the balance will be promptly remitted to Author after the Claim has been disposed or, in Publisher's opinion, has been abandoned.

(e) Publisher will defend and hold harmless Author from any claim made against Author that relates solely to Harper Material included in any Physical Version or Digital Version, or in any advertising and promotion of the same. In addition, Author shall promptly inform Publisher by written notice of any such claim.

(f) The warranties, representations and indemnities made by Author in this Agreement will survive any termination of this Agreement.

(g) In no event shall Author be charged under any of the foregoing provisions for the cost of counsel who are engaged by Publisher on a full-time basis as in-house counsel.

## 7.  AUTHOR'S RIGHTS OF TERMINATION

This Agreement may be terminated by Author as further provided in Sections 7(a), 7(b) 7(d) and 7(f), subject to Section 7(c), provided that Author is not then in breach of any of Author's obligations hereunder.

(a) If Publisher fails to publish the Work by the Publication Date, and if Publisher receives written notice from Author demanding publication, Publisher will, within 90 days of Publisher's receipt of such notice, either (i) agree to publish the Work within six months of receipt of such notice (and if Publisher fails to publish within six months the Rights will automatically revert to Author); or (ii) revert the Rights to Author, in which case Author may retain any portion of the Advance paid prior to such reversion and in addition Publisher shall pay to Author all theretofore unpaid portions of the Advances in accordance with the payment schedule specified in Part 1 as full liquidated damages for Publisher's failure to publish.

(b) The Work shall be deemed out of print if either (i) no full-length, English-language Physical Version is available for purchase from Publisher's inventory or (ii) only a full-length, English-language Digital Version is available for purchase or paid access, or a full-length, English-language Physical Version is manufactured only upon purchase by a third party through some form of print-on-demand technology and in any 12-month period (measured from the beginning of an accounting period) fewer than 250 units of the Work have been sold, or the Work has generated less than $250 in revenues for Author. If the Work is out of print and Publisher receives from Author a written request for reversion of the Rights, Publisher shall within four months of Publisher's receipt of such request either: (i) revert the Rights to Author in writing, (ii) confirm that it will make a full-length, English-language Physical Version available or a full-length, English-language Digital Version available for purchase or paid access within one year from the date of such receipt, and if Publisher does so then Author may not again request reversion until two full accounting periods after a version has been made available, it being agreed, however, that the Rights will automatically revert to Author if Publisher then fails to do either within such one-year period; or (iii) enter a license providing for the publication of a Licensed Version in the U.S. within one year from the date of the license. If Publisher makes only a Digital Version available for purchase or paid access or a Physical Version that is manufactured only upon purchase by a third party through some form of print-on-demand technology, pursuant to subparagraph (ii), then at the end of such one-year period following republication the Work has not met one of the thresholds set forth above, Rights will automatically revert to Author upon written notice to Publisher. If, on the other hand, either threshold is met, the terms and conditions of this Section 7(b) shall apply to any future right of reversion Author may have.

15

AG100038

(c)     Any termination of this Agreement will be subject to the following: (i) grants of Rights previously made by Publisher to third parties will remain in effect (but will not be renewed or extended by Publisher), and Author and Publisher will participate in Rights Payments from such grants as provided herein; (ii) Publisher will have the right to sell off any inventory of Physical Versions and physical copies of Digital Versions then on hand or in process of manufacture and will pay Royalties due on such sales; (iii) Publisher will cease distribution and display of Digital Versions, but Digital Versions initially purchased before the date of termination may continue to be accessed by their purchasers; and (iv) Publisher will retain ownership of plates, films, digital files and other production and manufacturing materials related to the Physical Versions and Digital Versions but will make such materials available to Author at a price to be determined by Publisher.

(d)     In the event of Publisher's filing for bankruptcy, or in the event involuntary bankruptcy proceedings are filed against Publisher and are not stayed or dismissed within 60 days, this Agreement shall terminate and all Rights shall revert to Author automatically and without the necessity of any demand or notification, subject, however, to Section 7(c).

(e)     Any notices to be given by Author to Publisher pursuant to this Section 7 will be addressed and delivered to Publisher's General Counsel, with a copy to the publisher of the imprint of Publisher that initially published the Work.

(f)     If Publisher fails to make any payment due Author in accordance with the provisions of Section 4 (unless such failure is due to a good-faith dispute between the parties), and receives written notice from Author demanding payment of an amount then overdue and fails to make such payment within 45 business days of Publisher's receipt of any such notice, all Rights granted herein shall thereupon revert to Author, and Publisher will make any such payment due Author provided Author is not in breach of the Agreement.

(g)     If at any time during the term of this Agreement Publisher includes in its author contracts, as a general matter, an out-of-print provision that is more advantageous to authors than that set forth in Section 7(b), such more advantageous provision shall apply under this Agreement from the date on which it is first included by Publisher in the form Publisher uses for preparation of author contracts.

## 8.   PUBLISHER'S RIGHTS OF TERMINATION

If (i) Publisher determines that any of the representations of Author set forth in Section 6(a) is materially false, or (ii) Author breaches the covenants set forth in Sections 1(f), 1(g), or 2(d), or (iii) Author commits a breach of any covenant contained in the Special Provisions section of Part 1 above for which Publisher is given a right of termination, , Publisher may terminate this Agreement and, in addition to Publisher's other legal remedies, Author will promptly repay the portion of the Advance previously paid to Author, or, if such breach occurred following publication of the Work, Author will promptly repay the portion of the Advance which has not yet been recouped by Publisher.

## 9.   RESERVED RIGHTS

(a)     Author reserves the Reserved Rights for Author's own benefit.

(b)     Author reserves multimedia adaptation rights which for purposes of this Agreement means audiovisual products that derive from the Work, and utilize the Work as a source for development of such multimedia adaptations, including video games and online games, but which may include qualitatively

16

AG100039

and quantitatively incidental portions of the contents of the Work provided that such products do not collectively depict the story of the Work, whether in whole or in part.

(c)     In connection with Author's exercise of motion picture, live stage and similar rights, (i) Author will promptly inform Publisher in writing when Author enters into any agreement optioning or transferring any such rights, and will promptly respond to Publisher's requests for information regarding the same; and (ii) Author will not make any grant of any rights to publish books (including novelizations, photonovels, making-of-the-movie books, graphic novels except as specified below, comic books except as specified below, board books, picture books, chapter books and novelty books) based on the Work in any media, provided that a purchaser of Author's motion picture rights may reproduce up to the lesser of 7,500 words or 10% of the text from the Work to promote any motion picture based on the Work provided that such materials are not offered for sale. Author will use commercially reasonable efforts to include in any grant of such rights a requirement that a credit to Publisher be included in the main credits and in the advertising and promotion for any such adaptation of the Work however Author's inability to do so shall not be deemed a breach of this Agreement. The parties acknowledge and agree that: (i) the right to create graphic novel and comic book adaptations of the Work is reserved to Author, and (ii) the right to create graphic novels and comic books that utilize the text of the Work, whether in whole or in part, has been granted to Publisher in this Agreement, recognizing that any such publication requires an amendment to this Agreement to set out the royalties and other terms relating thereto. For purposes of the foregoing, "adaptations" means the use of the characters of the Work in new storylines. Publisher hereby authorizes Author to use a de minimus amount of the dialogue of the Work for use in any adaptation thereof.

(d)     In the exercising of any other Reserved Rights in Publisher's exclusive Territory, and for the Languages in which Publisher has been granted Rights, Author will not authorize the production of any products that include more than 7.5% of the text of the Work provided that, with the exception of the following, such products do not collectively depict the story of the Work, in whole or in part. The foregoing notwithstanding, Author may reproduce up to 10% of the text of the Work on Author's web site and for similar promotional, but not commercial, purposes; and, further, in the exercised of the Reserved Rights specified in Section 9(c) above, any screenplay developed for any motion picture or the script for any live-stage adaptation may utilize the dialogue of, and any necessary narrative from, the Work as part of such screenplay and/or script.

## 10.     GENERAL PROVISIONS

(a)     Publisher's failure to perform any of its obligations hereunder will not be a breach of this Agreement or give rise to any right of termination, if caused by events of force majeure such as war, restrictions of governmental agencies, labor disputes, inability to obtain materials or any other reason beyond Publisher's control; in such event, the Publication Date and other relevant dates will be postponed for a period reasonably related to such cause. However if such force majeure cause is unique to Publisher and persists for one year, Author may at Author's discretion, at any time after the end of one year and prior to the publication or reissue of the Work terminate this Agreement by repaying (i) all portions of the Advance paid by Publisher if the delay is with respect to the initial publication of the Work, or (ii) any unearned portion of the Advance if the delay is with respect to in the reissue of the Work under this Agreement.

(b)     Author will keep one copy of the Manuscript. Publisher will not be responsible for the loss of or damage to any materials submitted by Author.

(c)     If Publisher is required by law to withhold and pay to any government taxing authority any portion of amounts due under this Agreement, such payments will be deducted from the amounts due Author hereunder. If any bank charges are imposed on any payments due Publisher from the exercise or

17

AG100040

license of any Rights, the allocation of Amounts Received between Publisher and Author from such exercise will be made on Amounts Received after such charges have been deducted.

(d)     This Agreement will bind and will inure to the benefit of the heirs, executors or administrators and assigns of Author and the successors and assigns of Publisher. This Agreement may not be assigned by either party without the written consent of the other, with the following exceptions: (i) Author may assign Author's right to receive payment under this Agreement upon written notice to Publisher subject to Section 4(j); and (ii) Publisher may assign this Agreement to any company that acquires or succeeds to all or a substantial portion of the assets of Publisher or an imprint or division of Publisher.

(e)     Author or Agent will respond promptly to any request for approval required under this Agreement. If Publisher fails to receive a response from Author or Agent within such time as Publisher may reasonably designate (but in no event less than 5 business days) the approval requested will be deemed granted.

(f)     This Agreement contains the entire understanding of Author and Publisher with reference to the Work; there are no representations or warranties other than those expressly stated in this Agreement. No waiver or modification of any provision of this Agreement will be valid unless in writing and signed by both parties. No waiver of any breach will be deemed a waiver of any subsequent breach. If any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions will not be affected.

(g)     This Agreement will be construed according to, and the rights and liabilities of the parties will be governed by, the internal, substantive laws of the State of New York without reference to such state's choice of law principles, and by the U.S. Copyright Act. All references to copyright in this Agreement will reflect any amendment made during the Term in the copyright laws of any country in the Territory. Author and Publisher submit to the exclusive jurisdiction of the U.S. District Court for the Southern District of New York, or if such court lacks subject matter jurisdiction, the Supreme Court of the State of New York, New York County, for the purposes of any action or other proceeding arising out of this Agreement.

(h)     The caption headings of this Agreement are inserted for convenience only and are without substantive effect.

AG100041

## Part 3: DEFINED TERMS

(a)  "Acceptance" means that Publisher has notified Author that the Manuscript is satisfactory to Publisher in content and form as further described in Section 1, and that Author has complied with Sections 1(f) and 1(g). For purposes of this Agreement, "satisfactory" means editorially satisfactory to Publisher.

(b)  "Amounts Received" means, with respect to (i) Physical Versions, the amounts billed to Publisher's customers for copies of the Physical Versions; (ii) Digital Versions, all amounts collected by Publisher from the purchasers, distributors or end users of such Digital Versions; and (iii) Licensed Versions, all amounts collected by Publisher from Publisher's licensees on account of the Licensed Versions. Amounts Received shall exclude (i) all costs paid by customers, such as sales taxes or charges for shipping and handling, and (ii) commissions or other expenses resulting from the transaction, which Publisher incurs, and less reimbursement and credits to customers for returns.

(c)  "Combined Work" means any product or service in which a Physical Version or a Digital Version and at least one other independent work are assembled or combined into, or presented as part of, a collective whole, and where the income received by Publisher is not reported on an individual-title basis or otherwise allocable to the individual works contained therein. An omnibus edition and a subscription service that includes the Work with other works are examples of a Combined Work. Author will have approval over any product that utilizes the Physical Version in a Combined Work or any product that utilizes the Digital Version in a Combined Work that is offered for sale (as opposed to a subscription, advertisement-supported, or similar form of distribution) as a discrete product.

(d)  "Digital Version(s)" means any digitized or other non-print reproduction of the Work, or portions or abridgements of the Work (it being agreed that abridgements and portions of the Work will be subject to Author's prior approval), including in Combined Works, that is made accessible, transmitted or distributed by a device, machine or process whereby text, images or other content are received by and read, listened to or viewed from a device (including but not limited to a computer, e-book reader, mobile phone or personal digital assistant); and shall include e-books sold in the form of discs, cards or the like. E-books, sound recordings downloaded from the Internet, and portions of the Work posted on the Internet, an intraweb or other similar private network are examples of Digital Versions.

(e)  "Export Sales" means copies of Physical Versions sold for export outside the United States.

(f)  "Harper Material" means any supplemental materials created by or for Publisher for use in, or in connection with the publication, or advertising and promotion of, Physical Versions and Digital Versions (but not including materials created by Author or by third parties commissioned and compensated by Author), and includes jacket, cover and interior art and photographs, cover design, cover copy, forewords, afterwords, questionnaires, reader's guides, translations, sound recordings of the Work, and promotional materials. For Digital Versions in which the Work, or portions of the Work, is the principal component, Harper Material also includes ancillary features such as links to web sites; sound recordings; and literary, pictorial, graphic, and audiovisual works, in each instance whether or not based on the Work, provided that no audiovisual work will constitute a motion picture dramatization of substantially the entire Work and further provided Author shall have approval over any of the foregoing material to be added to any Digital Version.

(g)  "Licensed Version(s)" means Physical Versions and Digital Versions of the Work or portions and abridgements of the Work, that are produced by third parties pursuant to licenses of Rights granted by Publisher, and that are published under the imprint(s) of such third parties, or that are purchased from Publisher in connection with such licenses.

19

AG100042

(h)  "Physical Version(s)" means copies of the Work, or portions and abridgements of the Work (it being agreed that abridgements of the Work will be subject to Authors' prior approval), including in Combined Works, that are distributed to end users in the form of printed or other tangible copies (other than Digital Versions sold in the form of discs, cards and the like). Hardcover books, paperback books, board books, phonorecords and books that are printed by Publisher, Publisher's customers, licensees or consumers are examples of Physical Versions.

(i)  "Regular Sales" means sales of Physical Versions in the United States under Publisher's standard retail and wholesale discount schedules for customers in the book trade.

(j)  "Rights" means the right of Publisher and licensees of Publisher to create, reproduce, distribute, transmit and display Physical Versions and Digital Versions, and to publicly perform phonorecords of Physical Versions.

(k)  "Special Sales" means Physical Versions that are (i) are comprised of the entire Work and are specially created for particular customers, such as customized, proprietary and co-branded versions; or that are (ii) sold in the United States at discounts greater than discounts under Publisher's standard retail and wholesale schedules for customers in the book trade, either on a non-returnable basis, or to catalog accounts, book fairs, book clubs, school suppliers and other customers outside of the book trade, or as premium sales, premium sales shall be subject to Author's prior written approval.

(l)  "Suggested Retail Price" means the price shown on Publisher's invoices from which discounts are deducted to calculate the amounts payable to Publisher.

(m)  "Term" means the full term of copyright available to the Work in the Territory.

(n)  "Third Party Material" means any supplemental and other material entitled to copyright protection in any country in the Territory included in the Manuscript by Author, but excluding material in which Author owns or controls the copyright. Photographs, illustrations and quotations from other works are examples of Third Party Material.

(o)  "Work(s)" means the Manuscript in the form accepted by Publisher, with any Third Party Material, Harper Material, or other material, as published by Publisher. Throughout this Agreement, except as otherwise specified, the term "Work" shall pertain to each Work acquired hereunder as though the rights granted herein were covered by separate agreements for each Work.

20

AG100043



**CONTRACT WITH AUTHOR**

**TOM DOHERTY ASSOCIATES, INC.**
("Tor Books")

**AGREEMENT** made as of ██████████████, 19 _92_ between _____

████████████████████████████████████████████████

████████████████████████████████████████████████

of ███████████████████████████████████████████████

(the "Author") and TOM DOHERTY ASSOCIATES, INC., 175 Fifth Avenue, New York, New York 10010 (the "Publisher").

### THE PARTIES HERETO AGREE AS FOLLOWS:

#### GRANT OF RIGHTS

/Work
consists of one book only
████████

1. The Author hereby grants exclusively to the Publisher the following rights in and to the work(s) of fiction/~~non-fiction~~ tentatively entitled:



(the "Work") during the full term of copyright (and all renewals and extensions thereof) throughout the world: the sole and exclusive right to print or otherwise reproduce, publish, distribute and sell the Work in the English language in book form and the sole and exclusive subsidiary rights specified in paragraph 9, with the exclusive right to license any or all of such rights.

#### COPYRIGHT

2. The copyright in the Work will belong to the Author. The Publisher is hereby authorized to register the copyright in the Work in the United States copyright office in the name of the Author. The Publisher agrees to imprint the copyright notice authorized by the United States copyright laws in each copy of the Work distributed by the Publisher. The Author agrees with respect to any rights reserved to the Author hereunder to take all steps necessary to protect the copyright in the Work.

#### DELIVERY OF MANUSCRIPT

3. (a) The Author agrees to deliver to the Publisher, on or before ██████████ _92_ 19____, a complete manuscript* of the Work containing (i) approximately _████████_ words, and (ii) the materials required by subparagraph (b) below. The manuscript shall be a complete and legible copy of the Work, in form and content acceptable to the Publisher. In the event of the Author's failure or inability to deliver a complete manuscript of the Work within 60 days

*as used in this Agreement,
  the term "manuscript"          –1–
  shall be deemed to mean a
  revised manuscript of the Work.
  including one (1) map with a detail insert

after such date, the Publisher may terminate this Agreement by written notice of termination. If the Author delivers a complete manuscript, the Publisher will notify the Author as to its acceptability or non-acceptability. If, in the sole opinion of the Publisher, the Work is unacceptable to the Publisher, the Publisher will provide the Author with a general explanation of /written the changes or revisions necessary to make it acceptable and the Author will have 60 days from the provision of the explanation to make such changes or revisions. If a revised manuscript is not delivered by the end of the 60 days or if, in the sole opinion of the Publisher, the revised manuscript is still unacceptable to the Publisher, the Publisher may terminate this Agreement by written notice of termination. Upon any termination under this paragraph 3, the Author will promptly repay to the Publisher all sums of money previously paid to the Author under this Agreement.* Notwithstanding any of the above, if the Work consists of more than one book, the following will apply: any termination under this paragraph 3 will (unless the Publisher otherwise elects) apply only to the particular book that was not delivered on time or was rejected, as the case may be; all rights in that particular book will revert to the Author, but this Agreement (including, but not limited to, this paragraph 3) shall remain in full force and effect with respect to the other book(s) comprising the Work; the total advance provided for in paragraph 7 shall be reduced to exclude the portion attributable to the book not delivered on time or rejected and the Author's obligation to repay amounts advanced shall be limited to the portion of the advance paid that is attributable to the book not delivered on time or rejected; but the Publisher may elect to have its termination apply also to any other book(s) comprising the Work that are unpublished at the time of the termination (in which case the consequences of termination specified above as to the book not delivered on time or rejected and the advance attributable to it will apply to those other book(s) and the advance attributable to them as well).

**See elow

(b) If the Work as published is to contain photographs, drawings, charts, indexes, graphs, appendices or any supplementary matter, the Author will furnish these to the Publisher as part of the complete manuscript at his or her own expense. If permission for the use of material to appear in the Work is required, the Author shall obtain such permission in writing at his or her own expense, and deliver such permission to the Publisher along with the complete manuscript. Permissions must cover all territory and uses licensed to the Publisher in this Agreement.

### EDITING OF MANUSCRIPT

4. The Publisher has the right, in its discretion, to make any editorial changes in the Work deemed necessary by it, with the Author's approval, which shall not be unreasonably withheld or delayed.

### COPYEDITED MANUSCRIPT AND PAGE PROOFS

5. The Publisher will provide the Author with a copy of the copy-edited manuscript of the Work for his or her review; the Author will read, correct and return the copy-edited manuscript within ten days of receipt. The Publisher will furnish the Author with a set of page proofs of the typeset book; the Author will read, correct and return the page proofs within ten days of receipt. The cost of any Author's changes in the proofs in excess of ten percent of the initial setting cost will be charged against the Author's royalty account, except that the Author will not be charged for corrections arising from the typesetter's failure to accurately reproduce the copy-edited manuscript. If the Author fails to read, correct and return the manuscript and/or proofs by the deadline established above, the Publisher may proceed without the Author's corrections, making whatever alterations or corrections it deems appropriate.

** Provided however that if the Author has met the applicable deadline in this Agreement and if the Author has used best professional efforts to deliver a publishable manuscript, such repayment shall be from first monies paid by another publisher for the Work.

AG10004

## WARRANTY AND INDEMNITY

6. (a) The Author hereby represents and warrants: (i) that the Author is and will be the sole author of the Work and the sole owner of the rights herein granted and that the Author has not assigned, pledged or encumbered such rights or entered into any agreement which would conflict with the rights granted to the Publisher herein and will not do any of the above; (ii) that the Author has the full right, power and authority to enter into this Agreement and to grant the rights herein granted; (iii) that except for material of others, permission for use of which has or will be obtained by the Author, the Work is and will be original and unpublished prior to its publication by the Publisher and that neither the Work nor any material portion thereof is in the public domain; (iv) that the Work and any material supplied by the Author for use in connection with the Work do not and will not contain anything which is libelous, which infringes or violates any copyright, trademark, right of privacy or other right of any kind of any person or entity or the publication of which will otherwise give rise to a legal cause of action; and (v) that neither the Author nor any of the Author's representatives has given or will give the Publisher any document concerning the Work or any other work by the Author which the Author and/or the Author's representative knows or should know is false or materially misleading.

(b) The Author agrees to indemnify and hold harmless the Publisher, its licensees, successors and assigns and its and their officers, directors, employees, customers, distributors and agents (the "Indemnified Parties") from any loss, damage, liability, judgment, payment or other expense (including reasonable attorneys' fees and disbursements) arising from any claim or legal proceeding (a "lawsuit") which makes any allegations contrary to or inconsistent with any of the representations and warranties made by the Author in this Agreement, but only if such lawsuit is finally sustained (in whole or in part) by any trial or appellate level court or tribunal against the Author, the Publisher or any of the other Indemnified Parties. The Indemnified Parties may, but shall not be required to, appeal any adverse decision. If an Indemnified Party decides to settle a lawsuit and the Author agrees, the Author shall pay the amount of the settlement and all of the expenses (including reasonable attorneys' fees and disbursements) of the Indemnified Party up to and through such settlement. If the Author shall not agree, the Indemnified Party may settle without the Author's consent, in which case the Author shall be required to pay the amount of the settlement and the Indemnified Party's expenses (including reasonable attorneys' fees and disbursements) unless (i) the Author shall establish that the decision to settle was unreasonable, in which case the Author shall not be liable to that Indemnified Party with respect to the lawsuit or (ii) the Author shall establish that the amount of the settlement was unreasonable, in which case the Author shall be liable to that Indemnified Party only for the Indemnified Party's expenses (including reasonable attorneys' fees and disbursements) and for the reasonable portion of the settlement. The question of whether the decision to settle was unreasonable and/or the amount of the settlement+

(c) Upon receiving notice of any claim or legal proceeding making any allegations contrary to or inconsistent with any of the representations and warranties made by the Author in this Agreement, the Publisher may withhold sums payable to the Author/in reasonable amounts as security for the payment of the Author's potential obligations under subparagraph (b) above. The Publisher will not unreasonably or frivolously exercise this right.

/under this Agreement

(d) The above representations and warranties and indemnity shall survive the termination of this Agreement for any reason.

+was unreasonable only, shall be resolved by arbitration in the City of New York in accordance with the rules of the American Arbitration Association. No other claim, controversy or dispute arising out of or relating to this Agreement shall be subject to arbitration. The Author may retain her own counsel at her own expense, but may not name counsel for the Publisher (but if the Author is a party to any proceeding the Author must defend herself with her own counsel at her own expense).

AG100046

## ADVANCE

7. The Publisher agrees to pay the Author as an advance against earnings from all sources
under this Agreement the sum of $ _____███████_____

payable as follows: $███████ upon signing of this Agreement. ██████ upon delivery and
acceptance of the complete revised manuscript of the Work, and ██████ upon publi-
cation of the Publisher's edition of the Work, or on ██████ 1993, whichever is
earlier.  If as of the end of the last accounting period prior to the month of
publication of the Publisher's initial paperback edition of the Work, the Publisher's
cumulative net sales, (i.e., copies of the Work shipped by the Publisher to its
customers less copies returned) of the hardcover edition of the Work exceed 20,000
copies, the Publisher shall pay to the Author   an additional advance against the
Author's earnings from all sources under this Agreement of ███████ payable on
publication of the Publisher's initial paperback edition of the Work, or eighteen (18
months
from
hardcover
publicat:
whicheve:
is earli

If any portion of the advance is due on delivery and acceptance, that portion will not be paid
prior to the date for delivery stated in this Agreement if delivery and acceptance occur earlier.
If the Work consists of more than one book, then the following will apply: unless otherwise
specified in this Agreement, for the purposes of paragraphs 3, 13 and 22 only, advance
payments on signing shall be "attributable" in equal proportions to each book comprising the
Work and amounts due on delivery and acceptance or publication in any form of a particular
book shall be "attributable" to that book. However, for all other purposes, all amounts paid
as advances under this Agreement shall be treated as a single advance against earnings from
all sources with respect to all the books.

## SCHEDULE OF ROYALTIES

8. (a) Subject to subparagraph (b) below, the Author will earn the following royalties
with respect to editions of the Work published by the Publisher:

(i) <u>Mass Market Paperback Editions</u>. Except as provided in (iv)–(viii) below, on
sales of each mass market paperback edition, a royalty on copies sold in the United
States of ███████ of the suggested retail price on the first 150,000 copies sold in the
United States and ████ percent of the suggested retail price on all copies sold in the
United States thereafter;

(ii) <u>Hardcover Trade Editions</u>. Except as provided in (iv)–(viii) below, on sales
of each hardcover edition of the Work, a royalty on copies sold in the United States of
███████ of the suggested retail price on the first 5,000 copies of the Work sold in
the United States, twelve-and-one-half percent of the suggested retail price on the next
5,000 copies sold in the United States; and fifteen percent of the suggested retail price
on all copies sold in the United States thereafter;

(iii) <u>Trade Paperback Editions</u>. Except as provided in (iv)–(viii) below, on sales
/ ███████████████ of each trade paperback edition, a royalty on copies sold in the United States of ~~six~~ /
/ten                    / ~~seven~~ percent of the suggested retail price on the first 25,000 copies sold in the United States,
~~seven percent of the suggested retail price~~ ~~on the next 25,000 copies sold in the United~~
~~States and eight percent of the suggested retail price~~ on all copies sold in the United
States thereafter;

-4-

(iv) <u>Export</u>. Except as provided in (v) or (viii) below, a royalty of five percent of the net amount received by the Publisher for copies of any edition of the Work sold outside of the United States or for export;

(v) <u>High Discount</u>. Except as provided in (viii) below, a royalty of five percent of the net amount received by the Publisher for copies of any edition of the Work sold at a discount of 60 percent or more from the suggested retail price except when sold at or below average cost, in which case no royalty shall be paid;

(vi) <u>Direct Consumer Sales</u>. A royalty of five percent of the net amount received by the Publisher on copies of any edition of the Work sold directly to the consumer including through mail-order coupon advertising, direct-by-mail circularization or solicitation by radio or television;

(vii) <u>Premium Sales</u>. A royalty of five percent of the net amount received by the Publisher on copies of any edition of the Work sold by the Publisher for use as premiums, gifts, or other special use in bulk quantities and for copies sold to book clubs as to which no separate rights payment has been or is to be received; and

(viii) <u>Remainder Sales</u>. On copies of any edition of the Work sold in a remainder sale or a special stock reduction sale, a royalty of ten percent of the excess, if any, of the net amount received by the Publisher over the average cost of copies of that edition.

(b) No royalty will be earned on copies of the Work that are damaged or destroyed or retained in inventory or on copies that are given or sold to the Author or used for review, advertising, promotion, sales, sample, internal, charitable or like purposes. No royalty will be earned on sales of copies where any amount was or is to be earned by the Author under paragraph 9 as a result of a payment for rights made or to be made by the purchaser. If the Work, or a part of it (other than brief quotations), is published by the Publisher together with one or more other complete or partial works in a single volume, the Author will earn royalties on sales of the volume equal to the royalties provided for in the various subparts of subparagraph (a) above multiplied in each case by the fraction that the Work (or part thereof) represents of the entire volume (on a page count basis). The phrase "net amount received by the Publisher" as used anywhere in this Agreement means sums of money actually received by the Publisher (less any taxes included in the amount received, less any insurance, shipping, mailing, freight, duties, customs clearance or other similar charges included in the amount received by the Publisher or paid by the Publisher, and less any fees or commissions paid by the Publisher to finders or third-party sales or licensing agents in connection with the transaction). In all cases in subparts (i) through (viii) of subparagraph (a) above, the computation of the number of copies sold will be net of returns. In determining whether particular sales levels have been reached for the purposes of fixing the applicable royalty rate, sales covered under a subpart of subparagraph (a) above other than the one for which the calculation is being done will not be counted. If the Work consists of more than one book or a book is published in more than one edition, the applicable royalty set forth in the various subparts of subparagraph (a) above will apply separately to each book in each edition; accordingly, in determining whether particular sales levels have been reached for the purposes of fixing the applicable royalty rate, only sales of the book in the edition for which the calculation is being done shall be included.

AG100048

## SUBSIDIARY RIGHTS

9. (a) The Publisher is hereby granted the following exclusive subsidiary rights in the Work:

(i) ~~First Serial Rights (being the right to use material from the Work in the English language in newspapers, magazines and other periodicals, including abridged, adapted and condensed versions, whether in one or more parts, before publication in book form);~~

(ii) **Second Serial Rights** (being the right to use material from the Work in the English language in newspapers, magazines and other periodicals, including abridged, adapted and condensed versions, whether in one or more parts, after publication in book form, and syndication rights);

(iii) **Selection Rights** (being the right to create and publish in the English language condensed, adapted and abridged versions of the Work in book form and the right to use material from the Work in the English language on the radio and in anthologies and other compilations in book form);

(iv) ~~Microfilm and Computer Rights (being the right to use material from the Work in any language on microfilm and microfiche and in information, including, but not limited to, text, storage and retrieval systems, whether computer or other present or future technology, and in connection with teaching machines, whether in machine or human languages);~~

(v) ~~Sound Reproduction Rights (including records, tape recordings, sound cassettes and other methods and technologies now known or hereafter devised);~~

(vi) ~~Translation Rights (being the right to translate for publication the Work into languages other than English, and book publication rights, first serial rights, second serial rights and selection rights in languages other than English);~~

(vii) ~~Cartoon Strip, Novelty, Advertising and other commercial use of characters or material from the Work; and~~

(viii) ~~Motion Picture, Dramatic, Television and Video Rights (whether methods and technologies now known or hereafter devised).~~

(b) The Author will earn amounts equal to the below stated percentages of the net amount received by the Publisher from licenses granted by the Publisher of the indicated rights:

| | | |
|---|---|---|
| (i) | English Language Book Publication Rights (regardless of format) (other than Book Club) to U.S. publishers | 50% |
| (ii) | English Language Book Publication Rights (regardless of format) to Book Clubs | 50% |
| (iii) | ~~First Serial Rights (granted to licensees in the U.S.~~ | ~~50%~~ |

–6–

AG10004

*In the event the Publisher has not licensed publication rights in England by the end of 2 years from the date of initial publication of the Work, the Author shall thereafter have the right to revoke the unlicensed rights (in the territories listed on the attached schedule only) by giving written notice to the Publisher by registered or certified mail, return receipt requested, which notice shall not be effective unless received by the Publisher prior to the Publisher's agreeing to a license.

| | | | |
|---|---|---|---|
| (iv) | Second Serial Rights (granted to licensees in the U.S.) | 50% | |
| (v) | Selection Rights (granted to licensees in the U.S.) | 50% | |
| ~~(vi)~~ | ~~Microfilm and Computer Rights~~ | ~~50%~~ | |
| ~~(vii)~~ | ~~Sound Reproduction Rights~~ | ~~50%~~ | |
| (viii) | English Language Book Publication Rights, ~~First Serial Rights,~~ Second Serial Rights and Selection Rights (granted to licensees outside the United States)* | 70% | |
| ~~(ix)~~ | ~~Translation Rights~~ | ~~50%~~ | |
| ~~(x)~~ | ~~Cartoon Strip, Novelty, Advertising and other Commercial Rights~~ | ~~50%~~ | |
| (xi) | ~~Motion Picture, Dramatic and Television and Video Rights~~ | 70% | |

-with copies of all subsidiary rights agreements.

(c) The Publisher also has the exclusive right to grant permissions to reproduce portions of the Work in books and in any other print medium; the Author will earn an amount equal to one half the net amount received by the Publisher for the grant of any such permission.

(d) Included among the rights granted to the Publisher is the exclusive right to license editions of the Work in Braille and to license photocopying, recording and microfilming of the Work for editions directed at the physically handicapped, without (if the Publisher so elects) fee or royalty.

(e) All rights in the Work now existing, or which may hereafter come into existence, not specifically granted to the Publisher are reserved to the Author for the Author's use at any time. However, without limiting in any way the grant of rights to the Publisher or the warranties and representations contained elsewhere in this Agreement, the Author represents, warrants and covenants that the Author will not authorize or arrange for the publication in any printed form of a novelization, adaptation or other version of either the Work or a work in another medium based on the Work (and the Author represents and warrants that the Author has not previously authorized or arranged for any such publication). However, the above will not prohibit the Author from writing and authorizing the publication of any prequels or sequels to the Work. If the Work is itself based on a work in a non-print medium (such as a movie), the Author represents, warrants and covenants that neither the Author nor the holder of the copyright in the work on which the Work is based will authorize or arrange for the publication in any printed form of a novelization, tie-in, adaptation or version of the work on which the Work is based (and the Author represents and warrants that no such publication has been authorized or arranged for).

(f)  Upon the Author's written request, the Publisher shall furnishe the Author+

**REPORTS AND PAYMENTS**

10. (a) After publication of the Work, the Publisher will render semi-annual statements on April 30 and October 31 in each year in accordance with the Publisher's regular accounting practices, showing the amounts earned by the Author hereunder for the periods July 1–December 31 and January 1–June 30, respectively, as royalties and on account of licenses of the Work and permissions granted by the Publisher. Each statement will be accompanied by

-7-

AG10005

RESERVE
V
*reserve
thereafter
except that
the Publi-
sher may
hold a re-
serve for
any period
in which
500 or more
copies have
been shipped
and for any
period
immediately
following
such a peri-
od. State-
ments shall
include the
following
info: 

payment of the amount shown to be due thereon. However, the first statement and payment will not be issued to cover a period of less than six months from the date of the Work's first publication by the Publisher. Notwithstanding any other provision of this Agreement, no earnings will be due or payable to the Author unless and until the Author's earnings exceed *RESERVE* the total advance under paragraph 7 (paid and to be paid in the future); once such total advance is earned out, the excess of the Author's earnings above such total advance (only) will be paid as provided above. In rendering any statements and in making any payments hereunder, the Publisher may deduct and withhold reserves against returns of copies in reasonable amounts. The reserve against returns for each edition of the Work shall be held for the first four accounting periods with respect to that edition only, with no*

(b) If the total amount payable is less than $50, the Publisher may defer the rendering of ~~statements and~~ payment until such regular payment date as at least $50 shall be payable to the Author. In such case, ~~upon written request,~~ a statement will be given.

(c) The Author or a certified public accountant hired by the Author shall have the right, upon reasonable notice during usual business hours but not more than once in any 12-month period, to examine the books and records of the Publisher at the place(s) where the same are regularly maintained insofar as they relate directly to the sales and returns of the Work. Such examination shall be at the cost of the Author unless errors aggregating more than ten percent of the total sum paid under this Agreement (including, but not limited to, advances) to the Author are found to the Author's disadvantage, in which case the reasonable cost (excluding any travel, lodging or meal expenses) of such examination shall be borne by the Publisher. No such examination shall be made by a certified public accountant working on a contingent fee basis. Statements rendered under this Agreement shall be final and binding upon the Author unless objected to in writing, setting forth the specific objections thereto and the basis for such objections, within one year after the date the statement was rendered.

**FREE COPIES**                    +and two free copies of any sub-licensed
                                                                    edition.

25

11. The Publisher will furnish ~~20~~ copies of each edition of the Work published by the Publisher to the Author without charge. Should the Author desire additional copies for his or her own use, they shall be supplied at a 40 percent discount from the suggested retail price. The cost of copies of the Work ordered by the Author will be charged to the Author's royalty account, unless the aggregate number of copies purchased by the Author is over 28 and there are not sufficient accrued royalties owed to the Author to pay for the copies ordered, in which case the Author shall enclose payment with the order. If the Work consists of more than one book, the Author will receive the specified number of copies of each book comprising the Work.

**REVERSION OF RIGHTS**

12. (a) If the Publisher determines, in its sole discretion, that the Work or any edition thereof has ceased to have a remunerative sale, the Publisher may discontinue publication and may at any time thereafter remainder or otherwise dispose of copies on hand. If at any time after ~~five~~ years from the date of initial publication of the Work, all editions, whether hardcover or paperback, of the Work which have been published or licensed by the Publisher anywhere in the ~~world~~ shall be out of print and, six months after written demand by the Author, mailed to the Publisher by certified or registered mail, return receipt requested, is received, the Publisher still has not provided adequate stock to meet the normal demand for the Work in the United States or scheduled the Work for reissue in any edition or arranged for a licensed edition in the United States, the Author may terminate this Agreement by sending written notice of termination to the Publisher by certified or registered mail, return receipt requested.

three

+United
States ~~and~~
~~Canada~~

/forth-
coming

AG100051



~~Notwithstanding the above, if the Work consists of more than one book, this subparagraph~~
12(a) shall apply separately to each book; any termination ~~pursuant to this~~ subparagraph 12(a)
shall apply only to the book(s) that ~~are out of print~~ and are terminated through the procedure
provided ~~above and this~~ Agreement shall continue in full force and effect with respect to any
~~other book(s) comprising the Work.~~

(b) Termination of this Agreement, whether or not pursuant to subparagraph 12(a),
is subject to the right of the Publisher to thereafter dispose of any existing inventory and
copies returned (accounting as provided in paragraph 10 to the Author for any royalties earned
by the Author as a result thereof), to the continuation of any licenses with respect to the Work
previously granted by the Publisher and to the continuing receipt and retention by the Pub-
lisher of the proceeds from such licenses (accounting as provided in paragraph 10 to the
Author for the amount earned by the Author from any such proceeds).

## MANDATED PUBLICATION

13. The Publisher agrees to publish and commence distribution of the Work within 18 ~~24~~
months after acceptance of the complete manuscript (but, if the Work consists of more than
one book, publication of the second and each subsequent book comprising the Work will not
be required prior to 12 months after the publication of the immediately preceding book). The
Publisher will have the right to make the final decision on the title and jacket or cover art.
The publication will be in a format determined by the Publisher acting in its sole discretion.
All decisions regarding the retail price and all other matters involving terms of sale, distribu-
tion, advertising and promotion of the Work shall also be within the Publisher's sole discre-
tion. The publication may be under any of the Publisher's, or any of its affiliated companies',
imprints. ~~(If the Publisher has made arrangements for a licensed edition of the Work to be
published in the United States by another publisher within the time provided above, the
Publisher's time to publish its edition will be extended for 12 months beyond the time provided
above.)~~ If the Publisher is prevented or hindered from publishing and/or distributing the Work
by circumstances beyond its reasonable control, then the period provided above for publication
will be extended by a period equal to the period during which the circumstances prevented or
hindered publication and/or distribution. If the Publisher fails to publish and commence dis-
tribution of the Work by the time provided above and such failure persists for six months after
the receipt by the Publisher of a written demand that the Publisher publish the Work, sent by
the Author by certified or registered mail, return receipt requested, then the Author may
terminate this Agreement by written notice of termination sent by the Author by certified or
registered mail, return receipt requested, and received by the Publisher prior to commence-
ment of publication, in which case the Author shall retain any advances already paid under
this Agreement in complete and full discharge of the Publisher's obligations under this Agree-
ment; no other claims, damages or remedies shall be available to the Author for the Publish-
er's failure or refusal to publish under any circumstances. If the Work consists of more than
one book, this paragraph 13 shall apply separately to each book comprising the Work. Any
termination pursuant to this paragraph shall apply only to the particular book involved and
the reference to advances contained in this paragraph shall be deemed to mean the portion of
the advance paid that is attributable to that book; this Agreement shall continue in full force
and effect with respect to the other book(s) comprising the Work.

## DELAY OF PERFORMANCE

14. The Publisher's failure or inability to comply with any of the terms of this Agree-
ment due to circumstances beyond its reasonable control, including, but not limited to, natural
disasters, inability to obtain materials or supplies, labor controversies, riot, war or govern-
mental orders or actions, shall not be deemed a breach of this Agreement.

–9–

AG100052

## BANKRUPTCY

15. If a petition in bankruptcy shall be filed by the Publisher, or if the Publisher shall be finally judged bankrupt by a court of competent jurisdiction, or if the Publisher shall seek general protection from its creditors under any bankruptcy or insolvency act, the Author may terminate this Agreement by written notice, effective immediately upon receipt.

## OPTION

16. The Publisher shall be offered in writing the right to acquire publication rights in the Author's next work *before the next work (or a proposal for it) is shown or offered to any *of fiction other publisher. The offer must be accompanied by an outline and detailed proposal for the next work (or, at the Author's option, a manuscript of the next work). The Publisher will have until the end of 30 days after its receipt of the offer to respond (but at least until 30 days after #15 delivery and acceptance of the complete manuscript of the Work). If the Publisher does not express a desire to acquire publication rights in the next work by the end of the period provided above for response, or if the Publisher expresses a desire to acquire publication rights in the next work but the Author and the Publisher are unable to reach agreement concerning the next work by the end of ~~60~~ days thereafter, the Author may then (but not before then) submit the proposal or manuscript to one or more other publishers, ~~but if the Publisher made an offer: (i) the Author may not accept terms from any other publisher that~~ are equally favorable or less favorable to the Author than ~~those offered~~ by the Publisher; and (ii) the Publisher will have an option to acquire ~~publication~~ rights in the next work by matching the terms most favorable to the Author ~~offered~~ by another publisher, which option shall be open for exercise until 14 ~~days after~~ the Publisher receives written notice from the Author ~~of the terms of the other publisher's offer.~~ This paragraph 16 will survive any termination of this Agreement except a termination of this entire Agreement under paragraph 13., paragraph 3, or paragraph 15.

~~SERIES~~

~~17. If the Work consists of one or more books in a series, the Author agrees that~~ additional books in the series will not be written until all the book(s) ~~in the~~ series in which the Publisher has been granted rights have been ~~completed~~ and that the Author will not authorize or arrange for the publication ~~of any~~ additional book in the series prior to the first to occur of: (i) the first anniversary of the Publisher's hardcover publication of the last book under contract ~~to the~~ Publisher in the series or (ii) six months after the publication by the ~~Publisher of a paperback edition of the last book under contract to the Publisher in the series.~~

## AGENCY

~~18. The Author hereby authorizes the Author's Agent,~~

See Rider _____, to collect and receive all sums of money payable to the Author pursuant to any of the provisions of this Agreement. The agent is fully authorized and empowered to act on behalf of the Author in all matters in any way arising out of this Agreement. The Publisher may pay all sums hereunder to the said agent (in which case, receipt by the agent shall constitute payment to the Author) and may rely on the said agent in all matters arising out of this Agreement, including, without limitation, amendment of this Agreement or settlement of any controversies arising out of this ~~Agreement, until the Publisher shall have received written notice from the Author of the~~

-10-

AG100053

~~termination of such agency. Upon the receipt of such notice, the Publisher shall pay all further sums payable pursuant to this Agreement directly to the Author or to such other persons as the Author shall direct in writing.~~

## AUTHOR TO RETAIN COPIES

19. The Author shall retain, for the Author's own protection, copies of all manuscripts and other documents or materials supplied by the Author to the Publisher.

## REVISED EDITIONS

20. If the Work is non-fiction, the Author agrees, at the Publisher's request, to prepare revised editions of any of the book(s) comprising the Work; but if the Author is unable or refuses to do so or fails for any reason to deliver a manuscript of the revised edition, in form and content acceptable to the Publisher, within a reasonable time, the Publisher may cause the same to be done and in such event the expense thereof shall be borne by the Author. This Agreement, other than subparagraph 3(a), will continue to apply to each revised edition (and no additional advance will be payable in connection with a revised edition). The Publisher will have all the rights in all revised editions of the book(s) comprising the Work that the Publisher has in the original version(s) of the Work.

## COMPETING WORKS

21. (a) The Author represents and warrants that the Author has not authorized or arranged for, and agrees not to authorize or arrange for, the publication, distribution or sale in the territory granted to the Publisher on an exclusive basis, otherwise than by the Publisher, of any work by the author of the Work (or if more than one person authored the Work, any *excluding a sequel* one or more of such persons) which will directly compete with the Work or diminish the value of any subsidiary rights granted by this Agreement where such publication, distribution or sale will take place at any time during the term of this Agreement.

/adult fiction work which includes the same characters and plot

~~(b) If the grant of publication rights to the Publisher is not worldwide, the Author~~ agrees not to permit anyone other than the Publisher to publish, ~~distribute or sell~~ a paperback edition of the Work in the English language ~~in the territory, if any,~~ granted to the Publisher on a non-exclusive basis ~~prior to one year~~ after the Publisher's initial publication (if the Publisher's ~~initial publication~~ is in hardcover), or prior to the Publisher's initial publication (if the ~~Publisher's initial publication is in paperback~~).

(c) If the Work consists of more than one book, all references in subparagraphs (a) and (b) above to the "Work" shall be deemed to refer to each of the books comprising the Work considered separately.

## LEGAL PROBLEMS

22. Notwithstanding any other provision of this Agreement, the Publisher shall not be obligated to publish or continue to publish the Work if in the opinion of the Publisher it contains unlawful material or any material which may violate the rights of any person or entity. If, in the opinion of the Publisher, there appears to be substantial risk of legal action or liability on account of the Work, the Author shall, if requested by the Publisher, make such revisions or deletions in the Work as shall be necessary in the opinion of the Publisher or the Publisher's legal counsel to remove any such risk. No such revisions or deletions, and no request for

-11-

AG100054

substantiation, shall be deemed to impose on the Publisher any obligation of verification, or to affect in any way the Author's warranties or representations or duty of indemnification which shall continue to apply to all material in the Work, whether or not changed at the request of the Publisher or the Publisher's legal counsel. If the Author does not make, or authorize the Publisher to make, such revisions or deletions, or if the Work is unpublishable in the opinion of the Publisher's legal counsel, or if the Work cannot be revised, then the Publisher may terminate this Agreement in writing at any time and/or may exercise any other remedies available to it under the circumstances. In the event of such termination of this Agreement, all amounts paid by the Publisher to the Author pursuant to this Agreement shall be promptly repaid by the Author to the Publisher. If the Work consists of more than one book, this paragraph 22 shall apply separately to each book; any termination pursuant to this paragraph 22 shall, unless the Publisher otherwise elects, apply only to the particular book involved. In the event of termination as to a particular book: all rights in the terminated book will revert to the Author, but this Agreement shall remain in full force and effect with respect to the other book(s) comprising the Work; the total advance provided for in paragraph 7 shall be reduced to exclude the portion attributable to the terminated book; and the Author's obligation to repay amounts advanced shall be limited to the portion of the advance paid that is attributable to the terminated book.

### ASSIGNMENT

23. This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Publisher. This Agreement shall be binding upon the successors, heirs and estate of the Author. The Author may assign any net sums due to the Author hereunder, but may not assign or delegate the Author's duties or obligations under this Agreement.

### NOTICES

24. All notices or other communications required or permitted to be given by any of the provisions of this Agreement shall be sent by telecopier, regular first class mail, air mail, hand delivery, overnight mail or commercial air express service (unless the provision permitting or requiring such notice or other communication calls for another type of mail, in which case such other type of mail shall be required) and shall be deemed given when dispatched (unless the provision permitting or requiring such notice or other communication shall otherwise provide). However, notices or other communications dispatched from outside the United States shall be deemed given when received. All notices or other communications shall be addressed to the Author at the address set forth at the beginning of this Agreement (or to such other address as the Author shall have designated by 30 days' prior written notice), or to the Publisher at its then principal office.

### ENTIRE AGREEMENT

25. This Agreement constitutes the entire agreement between the Publisher and the Author concerning its subject matter. This Agreement cannot be cancelled, amended or modified, nor may any of its provisions be waived, except in a writing signed by the party (or his or its duly authorized agent) against whom such cancellation, amendment, modification or waiver is to be enforced. This Agreement is not binding on the Publisher, and the Publisher is not obligated with respect to the Work, unless and until this Agreement is executed by the President or an Executive Vice-President of the Publisher.

AG100055

## GOVERNING LAW

26. This Agreement, and the rights and liabilities of the parties with respect to this Agreement and its subject matter, shall be governed by the laws of the State of New York and the United States applicable therein without reference to the principles of conflicts of law thereof.

## CAPTIONS

27. The captions of the various paragraphs of this Agreement (and subdivisions thereof) have been inserted only for the purpose of convenience; such captions are not a part of this Agreement and shall not be deemed, in any manner, to modify, explain, enlarge or restrict any of the provisions of this Agreement.

**IN WITNESS WHEREOF** the parties have duly executed this Agreement.



AUTHOR

AUTHOR'S SOCIAL SECURITY (OR TAX I.D.) NUMBER

TOM DOHERTY ASSOCIATES, INC.

By: _____

HB

-13-

Editor's initials: _____

AG100056

AGENCY ~~████████████████████████~~

18. All sums of money due the Author under this agreement shall be paid to the Author's agent, ~~████████████████~~ and the receipt of the said agent shall be a good and valid discharge of all such indebtedness; and the said agent is hereby empowered by the Author to act as agent on his/her behalf in all matters arising from and pertaining to this agreement. For services rendered and to be rendered, the Author does herby irrevocably assign and transfer to said agent and said agent shall retain a sum equal to fifteen percent (15%) as an agency coupled with an interest, out of all gross monies accruing to the account of the Author under this agreement, prior to deductions from or charges against monies for any reason whatsoever.

THE SCHEDULE

Ascension
Australia
Bangladesh
Botswana
British West Indies
Brunei
Burma
~~Canada (including Newfound~~land
~~and Labrador~~)
Cocos Island
Cyprus
Falkland Islands
Fiji
Gambia
Ghana
Gibraltar
Hong Kong
India
Iraq
Irish Republic
Jamaica
Kenya
Kuwait
Lesotho
Malawi
Malaysia
Malta (including Gozo and
Comino)
Mauritius (including
Rodriguez)
Namibia
New Zealand (including Ross)
Nigeria and the Cameroons

Northern Ireland
Pacific Islands, comprising
Solomon Islands
Tonga
Western Samoa
Nauru Islands
New Hebrides
Gilbert Islands
Tuvalu
Union Islands (New Zealand)
Norfolk Island (Australia)
Papua New Guinea (Australia)
Pitcairn Islands
Pakistan
St. Helena
Seychelles
Sierra Leone
Sikkim
Singapore
Somali Republic
Sri Lanka
Swaziland
Tanzania
Tasmania
Trinidad and Tobago
Tristan de Cunha
Uganda
United Kingdom (including
Northern Ireland, the Isle of
Man, and Channel Islands)
Zambia
Zimbabwe

AG100058



# 𝕸emorandum of 𝕬greement

*made this* ▆▆▆ *day of* ▆▆ 1966

*between*



*hereinafter called the Author, and W. W. Norton & Company, Inc., of 55 Fifth Avenue, New York 3, N. Y., hereinafter called the Publisher.*

**I. AUTHOR'S GRANT.**  Being the sole proprietor of an unpublished work the tentative title of which is untitled — ▆▆▆▆▆ the Author hereby grants and assigns solely and exclusively to the Publisher on the terms herein set forth the book and volume publishing rights in the said work and other rights therein as follows: abridgment, selection, anthology, digest, first and second serial, syndication, radio broadcasting, television, mechanical recording and rendition, projection, braille, microfilm, translation, dramatic, and motion picture; together with the right to grant licenses for the exercise of, and/or to dispose of, any or all of the rights herein granted.

**II. SPECIFICATIONS.**  The Author agrees to deliver to the Publisher, on or before the first day of ▆▆▆▆ 19⁶ , a finally revised, legibly typed manuscript copy of the said work satisfactory to the Publisher in content and form and ready to set in type. ~~The general scope and content of the work are to be as presented in the Author's prospectus dated~~ ▆▆▆▆ , a copy of which is attached ~~to and forms a part of this agreement.~~ The text of the work is to approximate ▆▆▆ words in length, and the book will include the following illustrative and supplemental material, copy for which shall be furnished by the Author at his expense and shall meet the same requirements as to legibility that apply to the manuscript proper:

.....▆▆...photographs to occupy..▆...pages          .............lines ~~of music to occupy~~............pages
..........▆~~line drawings to occupy~~............pages     ..........~~tables to occupy~~............pages

**III. COPYRIGHT.**  The Publisher shall have the exclusive right to take out copyright in the name of the Publisher for the said work in the United States of America, and in any foreign countries covered by this agreement. The Author agrees to make timely application for the renewal of the copyright to be secured for the said work in the United States of America within one year before the expiration of the copyright therein.

**IV. AUTHOR'S ROYALTIES.**  The Publisher agrees to pay to the Author or to his duly authorized representatives, after publishing the said work as set forth in Article VI, the following royalties and other payments subject to the terms and conditions stated as follows, which royalties and other payments will be accepted by the Author as full compensation for any and all rights, grants, and undertakings provided in this contract:

(A) A royalty on all copies of the regular edition and/or library edition sold by the Publisher, less returns (and subject to the exceptions hereinafter named) as follows: 10% of the retail price on the first 10,000 copies; 12½% thereafter.

(a) Where the discount to dealers or others in the Continental United States is 48% of the catalog retail price a royalty shall be paid equal to the rate stipulated in Article IV (A) less 1% of the catalog retail price; and with each further increase in discount by 1% of the catalog retail price, the royalty shall be further reduced by ½% of the catalog retail price. In no such case, however, shall the royalty be less than one-half of the royalty stipulated in Article IV (A).

(c) On copies sold for export or for shipment to and sale in Canada or any of the insular possessions of the United States of America the royalties shall be calculated at 40% of the rate (s) provided in Article IV (A).

(D) If in any six months' royalty period following the expiration of one year from the date of the first publication the sales of the work do not exceed 250 copies, the royalties shall be 50% of the royalties computed at the rate or rates otherwise herein stipulated, provided such sales are made from a reprinting of 2000 copies or less.

(E) If the Publisher shall seek an additional market outside of regular bookstore sales by means of direct-by-mail circularizing, the printing of coupon advertisements in newspapers or periodicals, or the solicitation of direct orders by radio or television, a royalty of 5% of the catalog retail price shall be paid on all sales directly resulting from such efforts.

1

(F) Where rights to publish special book-club editions are sold to recognized book clubs, the proceeds thereof shall be divided equally between the Author and the Publisher. The Author's share of such proceeds shall be paid to him within two weeks of receipt by the Publisher.

(G) The Publisher shall have the right to arrange with another publisher for the publication of a cheap reprint of the work, paying the Author one half of any royalties received therefor, or the Publisher may itself publish a cheap reprint of the work, paying the Author 6% of the retail price on the first 25,000 sold and 7½% thereafter.

(H) The Publisher may in its discretion sell any overstock of the work at a reduced price, and the Author shall be paid a royalty of 10% of the net proceeds of such sale unless the sale is made at or below cost.

(I) The Publisher may sell unbound sheets or bound books in lieu of unbound sheets of the work to be bound or rebound by others and on all such sales made at a discount of 50% or more the Publisher will pay to the Author a royalty of 10% of the Publisher's actual receipts therefor.

(J) Where the Author has received on any statement of account an overpayment of royalties, caused by error, or by subsequent returns, or by rebate to bookstores because of subsequent editions, the Publisher may deduct such overpayment from any further royalties whether on this book or other books of the Author which may be published by the Publisher, it being understood, however, that the term "overpayment" does not apply to an unearned guaranteed advance against royalties.

(K) No royalties shall be payable on copies furnished gratis to the Author or for review, advertising sample, sales promotion, or like purposes or on copies destroyed by fire or other accident, but nothing in this clause shall be construed as exempting from royalty copies supplied by the Publisher (for resale) in payment for trade advertising.

(L) Sales covered by Articles IV (E) to IV (I), inclusive, and by Article IV (Q) shall not be considered in building up brackets in case this agreement provides for a sliding scale of royalties under Article IV (A).

(M) The Author agrees to revise the work on request of the Publisher. The manuscript of the revised work shall be delivered in final form by the Author to the Publisher within a reasonable time after request for revision. Should the Author for any reason fail to perform hereunder, or should he be deceased, the Publisher at its option may arrange for the revision and charge the cost of the same against royalties due, or that may become due, the Author, and may display in the revised work and in advertising the name of the person or persons who revise said work.

(N) Sales of copies of any revised edition of the work shall carry the same royalty as though such sales were from the original edition, except that, should this agreement provide for a sliding scale of royalties under Article IV (A), and should the costs of new typesetting and plate-making required for a revised edition amount to one-third or more of the total of those costs for the original edition, the royalty scale of this agreement shall apply to sales of that revised edition as though it were the work being published for the first time.

(O) If any of the following rights are sold, the net proceeds shall be divided equally between the Author and the Publisher: translation, abridgment, selection, digest, second serial, syndication, mechanical recording and rendition, braille, microfilm.

(P) If any of the following rights are sold, the net proceeds shall be divided in the proportion of 90% to the Author and 10% to the Publisher: first serial, motion picture, dramatic, radio broadcasting, television.

(Q) If the right vested in the Publisher by this agreement is sold abroad for publication in English on a royalty basis, the royalty so received by the Publisher shall be divided in the proportion of 75% to the Author and 25% to the Publisher; if such right is sold abroad for publication from sheets or bound books supplied by the Publisher at a price inclusive of royalty, the Publisher shall pay the Author a royalty equal to 15% of the Publisher's net charges therefor.

*V. AUTHOR'S WARRANTIES.* The Author hereby warrants to the Publisher that he is the sole proprietor of the work named in Article I and has full power to make this agreement and grant; that the said work is original and is not in the public domain; that the work is not libelous or obscene or in violation of any proprietary right at common law or any existing copyright or otherwise unlawful, and that he will indemnify the Publisher against any loss, injury, or damage, including any legal costs or expenses properly incurred by the Publisher in consequence of any breach of this warranty; the Author further agrees that this warranty shall apply to any extract matter, quotation, or illustration included in the book at his direction, that he has and upon request of the Publisher will at the time of delivery of the final manuscript turn over to the Publisher written permission from the proprietor or copyright owner for the use of such material, and that all payments exacted by the owners of such material shall be borne by the Author.

*VI. DELIVERY OF MANUSCRIPT AND PUBLICATION.* (A) The Publisher agrees to publish the work in the United States of America at a time which in the Publisher's judgment is in the best interest of the book and within a reasonable period after delivery by the Author of the finally revised manuscript.

2











(B) Upon delivery of the manuscript, if the Publisher finds that changes in the manuscript are necessary in order to secure substantial conformity to the concept of the work as set forth in Article II or to prepare it so that it may be ready to set in type, then the Publisher, with the Author's approval, shall have the necessary changes made, or the Author himself shall make the said changes. If the Publisher shall have the changes made, the cost thereof shall be divided equally between the parties, but in no case shall the Publisher's share of the cost exceed $50. If the Author declines to make, or permit to have made, the said necessary changes then the Publisher may decline publication, and recover advances (if any) made to the Author under this agreement.

(C) If the Author shall not have delivered the finally revised manuscript by the date stipulated in Article II, and if within three months of written notice from the Publisher to the Author said delivery shall not have been made, the Publisher may terminate this agreement and recover advances (if any) made to the Author hereunder.

(D) As to illustrative material to be reproduced as engravings it is understood that the copy furnished by the Author shall be in form ready for the engraver to make cuts for printing; should any redrawing, retouching, or other art work be necessary before engraving, the cost of such art work shall be borne by the Author and charged to him in account. Should the Author fail to supply any of the said illustrative material by the time it is needed for manufacturing then the Publisher shall have the right to supply the same and the cost thereof shall be borne by the Author and charged to him in account.

(E)—It is agreed that the Publisher shall engage a skilled person to prepare an index to the work and that half of the expense thereof shall be charged against the Author's royalties.

(F) Publication shall be at the expense of the Publisher; and all details as to format, style and design of the book, the advertising, the number and distribution of free copies, and marketing, shall be at the discretion of the Publisher.

(G) It is understood that the Publisher is not an insurer of manuscripts or drawings or other matter placed in its possession, and no insurance shall be effected by the Publisher for the Author, unless at the Author's request and expense.

*VII. PROOFREADING AND CHANGES IN PROOF.* The Author agrees to read, correct, and promptly return all proof sheets. If any changes in proof or the printing plates (other than the corrections of printer's errors) are made at the Author's request or with his consent, the cost of such changes in excess of 10% of the cost of typesetting (exclusive of the cost of setting corrections) shall be borne by the Author. The Publisher shall give the Author prompt notice of any amounts charged to him under this head.

*VIII. STATEMENTS OF ACCOUNTS AND PAYMENTS.* After publication of the work as set forth in Article VI, the Publisher will transmit by mail to the Author or to his duly authorized representatives in February and August a statement of account for the six months' period ending the previous September thirtieth and March thirty-first respectively, showing the net amount payable to the Author under the provisions of this Agreement, less a reasonable reserve for bookstore returns, and will transmit with such statements a check or checks in settlement, provided that after the first year of publication settlements shall be made annually in August for the previous year ended March thirty-first unless the amount due the Author at the February date amounts to $100 or more, and provided further that no statement need be rendered or payment made for any period when the amount due the Author is less than $50 but the amount due shall be carried forward and credited to the Author in the settlement for the next period.

*IX. AUTHOR'S COPIES.* The Publisher shall supply free to the Author ten copies of the work and shall sell further copies for personal use but not for resale at the usual bookstore discount from the retail price.

*X. FUTURE WORKS.* In consideration of the publication of the present work the Author agrees to give the Publisher an option to publish his next book on fair and reasonable terms based on the sale of the present work and on such other circumstances and conditions as may properly be considered in establishing them. It is understood that the option shall be exercised within sixty days of receipt of the complete manuscript by the Publisher.

*XI. DISCONTINUANCE.* If the Publisher allows the work to go out of print and declines to manufacture another printing, the Author may cancel this agreement upon three months' written notice to the Publisher. In the event of such cancellation the Author shall have the option to purchase the plates (if any exist) at scrap metal value, provided the option is exercised within thirty days after the notice period of three months has expired. In the event of cancellation of this agreement under the terms of this Article all rights herein granted by the Author shall revert to him except that such reversal shall not impair the continuing right of the Publisher to its share of any future income to accrue from transactions initiated or effected by it prior to cancellation of this agreement. It is agreed that the work shall be considered to be in print if its text is available in its entirety in any volume regularly offered for sale in the United States of America, or if there shall exist a contract providing for its publication in the United States of America in another edition.

3.

AG100061

*XII. INSOLVENCY OF PUBLISHER.* In the event of bankruptcy or liquidation of the Publisher through any cause whatsoever, the Author shall have the option to buy back the rights granted to the Publisher in this agreement, together with any plates and/or remaining copies bound or unbound, at the fair market value thereof, the same to be determined by the majority decision of three persons, one to be appointed by the Author, one by the legal representative of the Publisher, and the third by these two, and upon payment of the amount so fixed and the transfer of the rights, plates and/or copies, this agreement shall terminate except that the representative of the Publisher shall have the right to sell the remaining copies on hand, if the same are not purchased by the Author. The Author shall exercise the said option within a period of ninety days from the date of bankruptcy or other liquidation.

*XIII. RIGHTS RESERVED TO AUTHOR.* Any rights in or to the work not specifically granted herein are reserved to the Author.

*XIV. SUCCESSORS AND ASSIGNS.* The provisions of this agreement shall apply to and bind the heirs, successors, executors, administrators, and assigns of the Author, and the successors and assigns of the Publisher. This agreement as a whole may be assigned by either party upon due notice being given in writing to the other party.

*XV. REGARDLESS of any provisions in this agreement to the contrary, no more than $———————— of royalties and other payments resulting from the publication of the said work shall be paid to the Author in any calendar year, and any monies from whatever source in excess of the said $———————— otherwise due and payable to the Author shall be carried forward to the credit of the Author's account and shall be paid to him in each succeeding year in annual installments of $———————— or any balance thereof.*

XVI.  As an advance against and on account of all monies to accrue to the Author under this agreement the Publisher will pay to the Author the sum of ████ on signature hereof and ████ on delivery and acceptance of the complete manuscript satisfactory to the Publisher in content and form.  It is understood that the Author is responsible for the cost of all permissions.

XVII.  The Publisher shall have the right to arrange with another publisher for the publication of a cheap edition of the Work paying the Author 50% of the first $10,000 of the royalties received thereof, 55% of the next $15,000, 60% of the next $75,000, 65% of the next $150,000, and 70% thereafter.

Regardless of the place of its actual execution and delivery, this agreement shall be treated as though executed within the State of New York and shall be governed by the laws and statutes thereof.

The changes, alterations and interlineations made in Articles III, IV, XV, VII.                                          of this contract and the additional Articles numbered                                          were made and added before execution hereof.                        XVI, XVII

*In Witness Whereof* the parties hereto have signed and sealed this agreement at New York, N. Y., in duplicate, the day and year first above written.

W. W. NORTON & COMPANY, INC.

....................................................                  by.............................................................................
AUTHOR'S SIGNATURE                                                                     PRESIDENT

4

XERO COPY   XERO COPY   XERO COPY   XERO COPY

AG100062

# *AUTHOR AGREEMENT*

AGREEMENT, entered into as of ██████████, 1998 between **SILVER BURDETT PRESS**, a division of Simon & Schuster, Inc. ("Publisher"), 299 Jefferson Road, Parsippany, NJ 07054 and ██████████████ ("Author") whose address is ██████████████

In consideration of the premises hereinafter set forth, Publisher and Author hereby agree with respect to the preparation of ten (10) works (collectively, the "Works") for the ████████████████ ██████████ Series (the "Series").

## The Grant and the Territory

1. (a)  Author hereby grants and assigns exclusively to Publisher during the full term of copyright (including any renewal or extensions thereof), the right to print, publish, sell and otherwise exploit the Works and any revisions, new editions, or derivative works thereof, in whole or in part, throughout the world, in all languages, in any media and formats, now known or hereafter developed, including without limitation electronic versions (as such term is defined below), and to license the rights set forth in Paragraph 6(a) throughout the world (the "Territory").

(b)  As used herein, the term "electronic versions" shall mean any and all methods of copying, recording, storage, retrieval, or delivery of all or any portion of the Works, alone or in combination with other works, including in any multimedia work or electronic book by any means now known or hereafter devised, including, without limitation, by electronic or electromagnetic means, or by analog or digital signal; whether in sequential or non-sequential order, on any and all physical media, now known or hereafter devised including, without limitation, magnetic tape, floppy disks, CD-I, CD-ROM, laser disk, optical disk, IC card or chip, and any other human or machine readable medium, whether or not permanently affixed in such media; and the broadcast and/or transmission thereof by any and all means now known or hereafter devised.

## Delivery of the Manuscripts



2.    (a)    The Works shall describe ████████████████████████████ ████████████████. Author shall deliver to Publisher manuscripts for the ten (10) Works for children ages 7-10, each approximately ██ pages in length, in the English language, in content and form satisfactory to Publisher (each such manuscript shall be referred to as a "Complete Manuscript"). Author shall deliver Complete Manuscripts for at least five (5) of the Works on or before ████████, 1999 and Complete Manuscripts for the remaining Works on or before ██████████ 1999.

AG100063



## Permissions

(b)      If permission from others is required for publication of any material contained in the Works or for exercise of any of the rights conferred by this Agreement, Author shall obtain and deliver such permissions (the "Permissions") to Publisher at Author's own expense, in form acceptable to Publisher, on the due date of the Complete Manuscripts. The Permissions shall cover all territories, markets and editions covered by this Agreement.  Publisher shall have the right to obtain any of the Permissions which Author fails to furnish and to charge the cost thereof to Author, or to terminate this Agreement in accordance with the provisions of Paragraph 8(a) below.

## Advance

3.      Publisher shall pay Author as an advance against all amounts accruing to Author under this Agreement, the sum of ███████ payable as follows:

(i)      ███████ upon signing of this Agreement by both parties; and

(ii)      ███████ upon acceptance by Publisher of each Complete Manuscript in content and form satisfactory to Publisher.

## Royalties

4.      Publisher shall pay to Author royalties based upon Publisher's net sales (unless otherwise set forth herein), less a reasonable reserve for returns, for each Work as follows:

## Trade Royalties

(a)      If published as a hardcover edition and/or a paperback edition and sold in the trade market: 5% of retail price on 1-3,000 copies and 6% on all copies sold thereafter, subject to the exceptions set forth in subparagraphs (e) and (f) below.

## Library Royalties

(b)      On copies sold to libraries: 4% on 1-3,000 copies and 5% on all copies sold thereafter, subject to the exceptions set forth in subparagraphs (e) and (f) below.

## School Sales Royalties

(c)      On copies sold to schools: 4% on 1-3,000 copies and 5% on all copies sold thereafter, subject to the exceptions set forth in subparagraphs (e) and (f) below.

2

AG100064

Electronic Royalties

(d)     On the exercise by Publisher of electronic rights in any Work, the royalty shall be 4%, subject to the exceptions set forth in subparagraphs (e) and (f) below.

Special Sales and Other Royalties

(e)     On copies sold outside the United States, its territories and possessions, or sold directly to the consumer through the medium of mail order, or sold in bulk outside ordinary trade channels at a discount of more than 50% from the suggested catalog price (herein "special sales"), the royalty shall be 2.5%.

Book Club Royalties

(f)     On copies sold in bulk to book clubs on a royalty-inclusive basis, the royalty shall be 3%.

Special Royalty Provisions

5.     With respect to each edition of each Work published hereunder, the following shall be applicable:

Sales No Longer Remunerative

(a)     If, in the opinion of Publisher, any edition of a Work shall have ceased to have a remunerative sale, Publisher shall be at liberty to dispose of all or part of the existing stock thereof and will pay to Author a royalty of 2% of Publisher's net receipts, except that no royalty shall be payable on any copies sold at or below the cost of manufacture. In any event, copies sold at a discount of 85% or more from the suggested catalog price shall be deemed sales upon which no royalty shall be due. Publisher shall make no remainder sale without first offering copies to Author at the then best obtainable price. Inadvertent failure to offer such copies to Author shall not be deemed a breach of this Agreement.

Royalty Free Copies

(b)     No royalty shall be payable on copies damaged or destroyed, on copies furnished gratis for review, publicity, promotion, sample or similar purposes, or on copies sold at or below Publisher's manufacturing cost. No royalty will be payable to the Author with respect to any unbound sheet sales or full copy sales for export where such copies are furnished to a foreign licensee at the Publisher's cost plus a handling charge for such sheets and/or copies.

3

AG100065

Sales Through Affiliates

(c)     No royalty shall be payable on sales by Publisher to its parent, subsidiaries, affiliates, or related divisions, but resales thereby shall be deemed sales by Publisher subject to the applicable royalty herein provided.

Recoupment of Advances

(d)     Author's right to royalty or other payments hereunder shall be subject to Publisher's prior right to deduct any and all advances payable by Publisher hereunder.

Special Logos

(e)     With respect to copies sold in bulk to organizations, Publisher may imprint the trade name, trademark, logo, imprint and/or other identification of such organization on such copies in addition to or in lieu of Publisher's trade name, trademark, logo, imprint and/or other identification.

Overpayment of Royalties

(f)     In the event of any overpayment by Publisher to Author, Publisher may, in addition to any other remedies available to it, recoup such overpayment from any sums due to Author under this Agreement with Author or any other agreement between Author and Publisher.

Special Sales Exclusion

(g)     Sales in bulk to book clubs shall not be deemed special sales, as that term is used in this Agreement.

Net Sales

(h)     As used herein, the term "net sales" shall mean the Publisher's gross actual receipts for a Work, less freight, transportation, insurance, taxes, returns, discounts, credits and depository and other commissions or allowances with respect to distribution, applicable to such receipts.

Sales From Reduced Printings

(i)     On all copies of the Publisher's editions of a Work sold in any accounting period commencing more than one year after the first publication of such edition in which sales of such edition are 500 copies or less, 50% of the applicable royalty rates specified above.

4

AG100066

<u>Subsidiary Rights, Licenses and Shares</u>

6.    (a)    Publisher shall have the exclusive right, in the territories set forth in Paragraph 1, to sell or license the rights in the Works indicated below upon such terms as Publisher deems advisable. The net proceeds received by Publisher from the sale or license of such rights shall be divided between Author and Publisher as follows:

|      |                                                                             | To Author | To Publisher |
|------|-----------------------------------------------------------------------------|-----------|--------------|
| (1)  | book club rights                                                            | 25%       | 50%          |
| (2)  | textbook rights                                                             | 25%       | 50%          |
| (3)  | anthology/book selection rights                                            | 25%       | 50%          |
| (4)  | first serial rights (i.e. publication before first publication in book form) | 25%       | 50%          |
| (5)  | second serial rights (i.e. publication after first publication in book form) | 25%       | 50%          |
| (6)  | abridgment/condensation rights                                             | 25%       | 50%          |
| (7)  | large print rights                                                          | 25%       | 50%          |
| (8)  | reprint rights                                                              | 25%       | 50%          |
| (9)  | electronic rights                                                           | 25%       | 50%          |
| (10) | audio rights                                                                | 25%       | 50%          |
| (11) | foreign language rights                                                     | 25%       | 50%          |
| (12) | British Commonwealth rights                                                 | 25%       | 50%          |
| (13) | merchandising and commercial rights                                         | 25%       | 50%          |
| (14) | motion picture, dramatic, television, radio and allied rights              | 25%       | 50%          |

5

AG100067



(b)     Any grant of first serial or second serial rights shall specifically prohibit the licensee from reproducing all or a substantial portion of the Works.

Licensing to Affiliates

(c)     Publisher shall have the right to license the rights set forth in Paragraph 6(a) above to Publisher's parent, subsidiaries, affiliates and divisions, provided that the royalty rates under such a license shall not be lower than the rates which in Publisher's reasonable judgment would be payable under other circumstances by an unrelated third party licensee for the same rights.  Author shall be entitled to payment of the applicable share of the proceeds of any such license in accordance with Paragraph 6(a).

Licensee Permissions Costs

(d)     If any sale or license of rights hereunder includes materials of others than Author, the amounts payable to such others in respect of permissions granted by them shall be deductible from Author's share of proceeds of such license.

Braille

(e)     Publisher may license others free of charge to publish the Works in Braille or other forms for the handicapped.

Publicity Excerpts

(f)     Publisher may publish and permit others to publish for publicity purposes without charge brief excerpts or selections from the Works not to exceed 10% of any Work, without compensation to Author, and may for publicity purposes permit television or radio broadcast, without compensation to Author, of brief portions of the Works aggregating not more than 10% of any Work for a broadcast.

Motion Picture Promotional Excerpts

(g)     The party who controls motion picture and related rights is authorized to publish and to license others to publish, in any form, excerpts, summaries, novelizations and serializations, none to exceed 10% of any Work in length, of motion picture, television, stage and other dramatizations based upon a Work for use in advertising and promotion of any such dramatization, provided all steps necessary to protect the copyright in such Work are taken.

6



### Royalty Statements

7.    (a)    Publisher shall render semiannual statements no later than March 31 and September 30 in each year after publication of each Work in accordance with Publisher's regular accounting practices, showing the amounts due Author hereunder for the six-month periods ending December 31 and June 30, respectively. Payment of the amounts due on the statement, after allowance of a reasonable reserve for returns and deduction of amounts payable to Author as advances hereunder, shall be remitted together with such statement. In lieu of rendering semiannual statements and making payment of the amount due on said statement, with respect to the periods hereinabove provided, Publisher may, at any time, make a binding election to account to Author in semiannual statements with respect to an alternative six-month period. Such statements shall be rendered and payment of the amount due on such statement made, if any (after allowance of a reasonable reserve for returns and deduction of amounts payable to Author as advances hereunder), within 90 days after the end of each respective six-month period.

### Minimum Payment

(b)    If total royalties due and payable are less than $50, Publisher may defer the rendering of a statement and payment until such regular payment date as at least said sum shall be due and payable to Author.

### Examination of Publisher's Books and Records

(c)    Author, or Author's duly authorized representative, shall have the right, upon reasonable notice during usual business hours but not more than once each year, to examine the books and records of Publisher at the place where the same are regularly maintained insofar as they relate to the Works. Such examination shall be at Author's cost. No such examination shall be made by Author's representative upon a contingent fee basis (other than Author's literary agent acting in the course of its regular representation of Author).   Statements rendered hereunder shall be final and binding upon Author unless objected to in writing, setting forth the specific objections thereto and the basis for such objections, within two years after the date the statement was rendered.

### Failure to Deliver

8.    (a)    If Author shall fail to deliver any Complete Manuscript or the Permissions within 30 days after the dates herein provided, then Publisher may at any time thereafter terminate this Agreement with respect to such Work and upon such termination all sums paid to Author with respect to such Work shall be repayable to Publisher.  Upon full repayment Author's obligations hereunder shall terminate with respect to such Work.

AG100069

Extension of Time to Deliver

(b)     Publisher may in its discretion extend for such period as in its judgment is appropriate, or refuse to extend, Author's time to deliver any Complete Manuscript. Failure to give a notice of termination for nondelivery shall be deemed to grant such an extension until such a notice of termination is given by Publisher. In determining whether to grant such extension and/or the length thereof, Publisher may consider such factors as Publisher deems relevant, including without limitation, illness of Author, the changing marketability of the Work or Works, Author's progress towards completion and the quality of the material previously submitted.

Acceptance of the Complete Manuscripts by Publisher

9.     (a)     Within 120 days after delivery of each Complete Manuscript, Publisher shall determine whether the same is acceptable in content and form. In lieu thereof Publisher may request Author to make revisions, changes or supplements (herein "revisions") thereto. If Publisher requests one or more revisions in a Complete Manuscript or the related materials as submitted or as thereafter revised, Publisher's time to determine the acceptability thereof shall be extended for an additional 60 days after resubmission by Author, or 60 days after Publisher's receipt of written notice by Author that no further revisions will be made. Author will make revisions as promptly as possible after Publisher's request therefor. No request for revisions shall be deemed to obligate Publisher to accept the final revision of a Complete Manuscript or to constitute a conditional acceptance thereof.

Publisher's Failure to Accept

(b)     If Publisher fails to accept any Complete Manuscript or a revision thereof within the time above provided, Author shall thereafter have the right to notify Publisher in writing that unless such Complete Manuscript is accepted within 45 days after the delivery of such notice, such Complete Manuscript will then be deemed unacceptable and this Agreement shall terminate with respect to such Work in accordance with the provisions of Paragraph 11 below.

Notice of Acceptance

10.     Acceptance by Publisher of the Complete Manuscripts shall be made by written notice signed by an authorized signatory of Publisher. Comments, requests for revisions or other matters in communications to Author shall not be deemed acceptance or rejection by Publisher. Payment of an advance installment, payable by express provision hereof upon acceptance, shall constitute written notice of acceptance unless Publisher notifies Author on or together with such payment that it is not intended as acceptance.

AG100070



Termination for Unsatisfactory Manuscript

11.    If any Complete Manuscript delivered by Author is not, in Publisher's sole judgment, acceptable to Publisher in content and form, Publisher may terminate this Agreement with respect to such Work by written notice and upon such notice, this Agreement shall terminate with respect to such Work without further obligation or liability between the parties except that all sums paid to Author by Publisher hereunder with respect to such Work shall be repayable by Author within six months of such termination.

Editorial Changes

12.    (a)    Publisher shall furnish Author with galley proofs of the Works which, except for changes in styling required by Publisher, shall conform to the Complete Manuscripts as accepted by Publisher, without material changes in, additions to, or eliminations from such Complete Manuscripts. Author shall return such proofs to Publisher with corrections within 10 days of the receipt thereof. The cost of alterations in the galley proofs required by Author, other than corrections of printer's errors, in excess of 15% of the original cost of composition, shall be charged against the earnings of Author under this Agreement or shall, at the option of Publisher, be paid by Author in cash; provided however, that in either case, Publisher shall upon request promptly furnish to Author an itemized statement of such additional expenses, and shall make available at Publisher's office the corrected proofs for inspection by Author or Author's representatives.

Publisher's Control of Distribution

(b)    Final decisions as to format, style of printing and binding, title, cover presentation, trade name, trademark, logo, imprint or other identification, and price and all other matters of sale, distribution, advertising and promotion of the Works, shall be within Publisher's sole discretion.

Use of Author's Name

(c)    Publisher shall have the right to use the name, pseudonym, portrait and picture of and biographical material concerning Author for purposes of advertising and trade in connection with the Works and any rights granted hereunder. Author shall furnish Publisher, free of charge, with original photographs of Author which Publisher may use without additional charge to any person for advertising, publicity and promotional purposes.

Tie-In Editions

(d)    Publisher shall have the exclusive right to publish tie-in editions in connection with any motion picture, television (including television series) or other dramatic versions of the Works. Author shall use Author's best efforts to permit Publisher to obtain the right to use the titles,

9



artwork, photographs, and other material, related to any such version and appropriate identification and credits therefrom in Publisher's editions of the Works.

## Legal Changes in the Complete Manuscripts

13.    Notwithstanding anything herein to the contrary, if in the opinion of Publisher's legal counsel, any Work is unpublishable or will unduly subject Publisher to risk of legal claim, Author will, at Publisher's request, make revisions in such Work satisfactory to Publisher's legal counsel, and in the event Author shall refuse or fail to make requested revisions, then Publisher may terminate its obligations hereunder by written notice, and upon such notice all sums paid to Author hereunder shall be repayable to Publisher and upon such repayment this Agreement shall terminate without liability. No such revisions and no request for substantiation shall be deemed to impose on Publisher any obligation of verification, nor to affect Author's warranties or indemnities, which shall apply to all material in the Works, whether or not changed at the request of Publisher's legal counsel.  Under no circumstances shall Publisher be obligated to publish any Work if in the opinion of Publisher's legal counsel it contains unlawful material or any material which may violate the rights of any person or party.

## Publication

14.    Publisher shall publish and commence distribution of the Works at its own expense not later than 24 months after acceptance of the Complete Manuscripts.  Publication shall be in any edition Publisher elects.  Publisher shall have the right to exercise any of the rights specified in Paragraph 4 above under any of Publisher's imprints, or any of the imprints of its parent or its parent's subsidiaries, affiliates or divisions.

## Termination for Failure to Publish

15.    In the event Publisher shall fail to publish and commence distribution of any Work within the time above provided, Author may at any time thereafter serve a written notice upon Publisher, by registered mail, return receipt requested, requiring Publisher to publish and commence distribution of such Work within 180 days after receipt of such written notice, and if Publisher shall fail to comply with such notice within such 180-day period, then this Agreement shall terminate with respect to such Work without further notice at the end of such period.  In the event of termination by Author pursuant to this paragraph, such payments as shall have been made to Author hereunder as advances with respect to such Work shall be deemed in full discharge of all Publisher's obligations to Author pursuant to this Agreement with respect to such Work and no other damages, claims, actions or proceedings, either legal or equitable, founded on breach of contract, default, failure to publish or otherwise, may be claimed, instituted or maintained by Author against Publisher.



AG100072

Copyright

16.     Publisher is hereby authorized to copyright the Works in the United States in the name of the Author and shall imprint the notice required by United States Copyright Law and the Universal and Berne Copyright Conventions in each copy of each of the Works distributed hereunder. Author shall with respect to any rights reserved by Author take all steps necessary to protect the copyrights in the Works. Any agreement made by Publisher or Author to dispose of any rights to the Works shall require the licensee or grantee to take all steps necessary and appropriate to protect the copyrights in the Works. Publisher shall be under no obligation to procure copyright in any country outside the United States, except that Publisher shall imprint, and all licenses and grants made by Publisher shall require Publisher's licensees and grantees to imprint, on each copy of each of the Works, a copyright notice in conformity with the Universal Copyright Convention. Author hereby appoints Publisher to be Author's attorney-in-fact to execute and to file any and all documents necessary to record in the Copyright Office the assignment of exclusive rights made to Publisher hereunder.

Author's Free Copies

17.     Upon first publication of the Works, Publisher shall present to Author 10 free copies of each of the Works and Author shall be permitted to purchase further copies for personal use and not for resale at a discount of 40% from the suggested catalog price.

Option on Next Work

18.     Publisher shall have the exclusive option to acquire upon mutually agreeable terms the publishing rights to the next (i.e. written after the Works) full-length work for children or young adults written by Author until 60 days after submission of the complete manuscript for such next work, or 60 days after acceptance of the Works hereunder, whichever is later. During the period of this option, Author shall not submit such next work to other publishers, nor seek offers from or negotiate with others with respect thereto. If Publisher wishes to publish the next work, the parties shall negotiate in good faith the terms of a publishing agreement. If the parties are unable to reach agreement before the expiration of this option, then Author shall be free to offer the next work to others, but only on terms more favorable than those offered by Publisher, and the Publisher shall retain the option to publish the next work on terms no less favorable to the Author than those offered by any other publisher.

Competing Work by Author

19.     (a)     All rights not expressly granted by Author to Publisher are reserved by Author. Author shall not exercise or dispose of any rights reserved to him in such a way as substantially to destroy, detract from, impair or frustrate the value of any rights granted herein to Publisher, nor shall he publish or permit to be published during the term of this Agreement any book or other writing based

11

AG100073

substantially on subject matter, material, characters or incidents in the Works without Publisher's written consent.

(b)    Author warrants that the Works will be Author's next children's works (whether under Author's name or otherwise), and that Author will not publish or authorize publication of any other full-length work of which Author is an author or co-author until six months after publication of the Works.

## Damage to Author's Property

20.    Publisher shall not be responsible for loss or damage to any property of Author in its possession or that of its independent contractors or anyone to whom delivery is made with Author's consent. Author shall retain copies of the manuscripts for Author's own protection.

## Third Party Copyright Infringement

21.    Publisher may, at its own cost and expense, take such legal action, in Author's name if necessary, as may be required to restrain any infringement of copyright or to seek damages therefor, but shall not be liable to Author for failure to take such legal steps. If Author elects to join in such proceeding, the expenses and recovery shall be shared equally. If Publisher proceeds without Author's participation, any recovery shall belong to Publisher. If Publisher does not bring such action, Author may do so in Author's own name and at Author's own cost and expense and money damages recovered by Author for any infringement shall belong to Author, except that any money damages recovered on account of loss of Publisher's profits shall be divided equally between Author and Publisher.

## Warranties

22.    Author warrants and represents that:

(a)    Author is the sole author and proprietor of the Works.

(b)    Author has full power and authority to make this Agreement and to grant the rights granted herein, and Author has not previously assigned, transferred or otherwise encumbered the same.

(c)    The Works have not been previously published.

(d)    The Works are not in the public domain.

(e)    The Works do not infringe any statutory or common law copyright.

12

AG100074

(f)     The Works do not invade the right of privacy of any third person, or contain any matter libelous or otherwise in contravention of the rights of any third person; and, if the Works are not works of fiction, all statements in the Works asserted as facts are true or based upon reasonable research for accuracy.

(g)     The Works are not obscene and contain no matter the publication or sale of which otherwise violates any federal or state statute or regulation, nor is it in any other manner unlawful and nothing contained in the Works shall be injurious to the health of the user.

Indemnity

(h)     Author shall indemnify and hold Publisher, any seller of the Works and Publisher's licensees harmless from any liabilities, losses, damages, costs or expenses, including reasonable attorneys' fees, in connection with any claim, action or proceeding inconsistent with or arising out of a breach or alleged breach of Author's warranties, representations and agreements herein contained, subject to the provisions below.  In defending any such claim, action or proceeding Publisher shall use counsel of its own selection and shall control the defense and/or settlement thereof. Publisher shall promptly notify Author of any such claim, action or proceeding and Author shall have the right at Author's election to participate in the defense thereof at Author's own expense with counsel of Author's own choosing.

Withholding Legal Expenses

(i)     Subject to the provisions of Paragraphs 22(h), Publisher shall have the right to withhold its reasonable estimate of the total damages and expenses (including reasonable attorneys' fees) from sums otherwise payable to Author pursuant to this or any other agreement between Author and Publisher, and to apply such sums to payment of such damages and expenses.

Survival of Warranties

(j)     The warranties, representations and indemnity of Author herein shall survive termination of this Agreement for any reason.

Out of Print Termination

23.     In the event that after one or more years from the date of the first publication of any Work, the same, in the opinion of Publisher, is no longer saleable or profitable, Publisher may give notice to Author of its desire and intention to discontinue publication; or in the event that after three years from the date of first publication, such Work shall not be in print and for sale in any edition by Publisher or any of its licensees and after written notice (sent to the attention of Publisher's Contracts Department) from Author shall not within nine months be reprinted by Publisher or a licensee and offered for sale, then in either of these events, Author shall have the right to terminate this Agreement

13

AG100075



with respect to such Work and upon written notice to that effect by Author to Publisher, all rights granted under this Agreement with respect to such Work shall revert to Author, subject to any outstanding licenses and Publisher's continuing right to participate in the proceeds thereof, and Publisher's obligation to pay sums due Author hereunder.

Bankruptcy

24.     If a petition in bankruptcy shall be filed by Publisher, or if Publisher shall be adjudicated bankrupt by any court, or if Publisher shall make an assignment for the benefit of creditors or shall take the benefit of any bankruptcy or insolvency act, this Agreement shall terminate automatically without notice, and such termination shall be effective as of the date of the filing of such petition, adjudication, appointment, assignment or declaration or commencement of reorganization or liquidation proceedings, and all rights granted hereunder shall thereupon revert to Author.

Disposition of Plates, etc., on Termination

25.     In the event of termination of this Agreement as provided in Paragraph 23 or 24 above, Author may purchase "as is" all or any part of the mold, engravings, dies, printing plates, film, illustrations and sheets and other physical property belonging to Publisher, if any, used solely in connection with the production of any Work, together with copies of the relevant Work on hand, at Publisher's manufacturing or acquisition cost; provided however, that any such property not purchased by Author within three months after such termination (or, in the case of termination pursuant to Paragraph 24 above, notice to Author of the happening of the event) may be sold or destroyed (but no such sale shall transfer the right of publication and sale of such Work to the purchaser) and Author shall not be entitled to any royalties or receipts from such sale; provided further that after such termination, Publisher shall have the right to complete manufacture of books in progress and to sell the same and/or any other copies of such Work on hand and Author shall be entitled to royalties thereon as otherwise provided in this Agreement with respect to such sales. In the event that the copyright shall be in the name of the Publisher, then Publisher shall, upon termination of this Agreement, furnish Author with an assignment to Author of such copyright in due form for recording.

Publisher's Trademarks

26.     Nothing in this Agreement (including but not limited to the rights of Author to purchase books and plates on termination) shall give Author any right in or to any trademark, trade name, logo, imprint or other identification now or hereafter used by Publisher, nor shall Author use any such identification during the term of this Agreement or thereafter, except that Author may dispose of copies of any Work purchased hereunder notwithstanding that such identification may appear thereon when purchased.

14

AG100076

Force Majeure

27.  This Agreement and the performance hereof by Publisher shall be subject to delays by reason of force majeure and Publisher's time for performance shall be extended for a period of time equal to any delay caused by force majeure. As used herein "force majeure" shall mean and include, without limitation, acts of God, fire, war, earthquake, strike, lockout, labor controversy, civil commotions, acts or restrictions of governmental agencies, orders of court, shortages or interruptions of facilities, and any other circumstances beyond Publisher's reasonable control (not due to Publisher's own negligence) which may affect Publisher or its suppliers.

Assignment of this Agreement

28.  This Agreement shall be binding upon and shall inure to the benefit of the parties, their heirs, successors and assigns. Author shall not assign this Agreement without Publisher's prior written consent, but Author may assign sums due and payable to Author hereunder, provided that such assignment shall not be binding upon Publisher unless and until Publisher shall have given written acknowledgment of its receipt thereof and such assignment shall not in any event affect Publisher's rights or Author's obligations hereunder. Any assignment in violation of this provision shall be void. Publisher may assign this Agreement freely to any third party.

Execution of Documents

29.  (a)  Each party hereto shall, upon request of the other, execute such documents as may be reasonably necessary to confirm the rights of the other party in respect of the Works or to carry out the intention of this Agreement.

Prior Publication

(b)  In the event the Works have been previously published and the rights have reverted to Author, Author shall furnish Publisher promptly upon execution hereof:

     (i)  Written evidence satisfactory to Publisher of valid termination of Author's agreements with previous publishers of the Works; and

     (ii)  Certified copies of the original Copyright Registration Certificate(s).

If Publisher is not furnished with the foregoing, Publisher may, without limiting such other rights as it may have, delay payment of any advances hereunder until the same is furnished.

15

AG100077



## Notice of Breach

30.     No act or failure to act by Publisher shall be deemed a material breach of this Agreement by Publisher unless Publisher shall fail to cure the same within 60 days after receipt of written notice thereof from Author, setting forth specific details.

## Service of Notices

31.     Except as otherwise provided herein, any written notices hereunder to be effective shall be delivered by ordinary mail to the address of the other party first above set forth, except that notices of possible or alleged breaches of contract or of termination shall be sent by certified or registered mail return receipt requested, with a duplicate copy of such notices by Author directed to: Legal Department, Simon & Schuster, One Lake Street, Upper Saddle River, NJ 07458, Attn: Vice President and Deputy General Counsel.  Either party may change its address by written notice to the other.

## N.Y. Law, Entire Understanding

32.     This Agreement and its interpretation shall be governed by the laws of the State of New York applicable to agreements made and entirely to be performed therein, constitutes the entire understanding of the parties concerning the subject matter hereof, shall not be modified except by a written agreement executed by both parties, and shall be binding on Publisher only when accepted by an authorized officer of Publisher.  Author hereby consents to the jurisdiction of the courts sitting in New York County, New York with regard to any claim, action or proceeding with respect to this Agreement.

16



AG100078



IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above set forth.

**SILVER BURDETT PRESS, a division of Simon & Schuster, Inc.**

By: ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Name: _____

Title: ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

**ACCEPTED AND AGREED;**

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

_____
Signature

Social Sec. # ▪▪▪▪▪▪▪▪▪▪▪▪▪▪

17

AG100079



(G.D. 16/10)

# HOUGHTON MIFFLIN COMPANY

## GENERAL DEPARTMENT ROYALTY CONTRACT



*Agreement* made this - - - - ███████ - - - day of- ███████ - 1961

between - - - - - - - - - - - - - - - - - - - - - - - - - -

of - - - - - - - - - - - - - - - - ███████ - - - - - - - - - -
hereinafter referred to as the Author and ~~designated by the masculine singular pronoun~~, and Houghton Mifflin Company of Boston, Massachusetts, hereinafter designated as the Publishers.

*Grant of rights*　1. The Author hereby grants and assigns to the Publishers all rights in a work the subject or title of which is

- - - - - - - - - - - - - - - - untitled work - - - - - - - - - - - - - - -

~~as follows:~~

all serializations, abridgments, selections, translations, dramatizations, and all other rights in said work or in any part thereof which now or hereafter during the term of this Agreement are the property of the Author; together with any existing copyrights thereof, and with the exclusive right and power ~~in their name or~~ in the name of the Author to secure copyright thereof, in the United States and elsewhere, to renew said copyright, and exclusively to publish and sell said work or to cause said work to be published and sold in all languages, editions, abridgments, and selections, and to exercise and control all the rights and privileges hereinafter set forth during the term of the original copyright and during any renewal or extension thereof, under the present or future law of any country in which copyright is secured. The obligations of and benefits to the Parties with respect to any renewal or extension shall be the same as for the original term.

*Author's warranty*　2. The Author expressly warrants his sole ownership of said work and full power to make this grant; that said work has not heretofore been published in book form; that it is not a violation of any other copyright, nor of any proprietary right; that it is not scandalous, libelous, violative of any right of privacy, nor otherwise unlawful; and the Author agrees to hold harmless and defend the Publishers against any claim, damages, liability, or expenses in connection with any claim of any violation of another copyright or of any proprietary right, or of any scandalous or libelous or otherwise unlawful matter in said work, or by reason of a claim for breach of privacy.

*Copy for printing*　3. The Author agrees to supply final revised copy, in proper shape for the press, not later than _____ The Author further agrees to supply promptly and free of charge to the Publishers all photographs, drawings, charts, indexes, and other material necessary to the completion of his manuscript, and if he fails to do so the Publishers shall have the right to supply them and charge the cost thereof against any sums accruing to the Author under this Agreement.

*Permissions and assignments*　4. The Author agrees to supply free of charge to the Publishers all permissions or assignments of copyright for text or illustrations used in published form or copyrighted elsewhere.

*Other publication by Author*　5. The Author agrees, during the period of this contract, not to publish or permit to be published any other book or material written or edited by the Author which would directly or indirectly interfere with the sale, or tend to lessen the sale, of said work.

*Publication and royalties*　6. The Publishers agree, when the manuscript is completed in a form satisfactory to both parties, to manufacture, publish, and offer said work for sale in book form at their own expense in such style and at such price as they deem best suited to its sale, and to pay the Author during the original term of copyright or of any renewal thereof the following royalties:

(a) On the list price of each copy of the regular trade edition by them sold at the regular price and at the regular discounts: 10% to 5,000 copies; 12½% from 5,000 to 7,500 copies; and 15% on all copies sold over and above that number; and to make an advance payment against royalty account of ███████ ███████ on the signing of this Agreement; with a further advance to be arranged on receipt of a partial manuscript.

*Special sales at increased discounts*　(b) On copies of said work sold to recognized reading circles, book clubs, or to wholesale or retail distributors or booksellers in the United States, at a discount of 48% or more, a royalty of 2% less than the rate stated in ¶ 6(a); and with each additional 1% discount, the royalty shall be further reduced by an additional ½%, provided that in no case the royalties shall be less than one-half of those stipulated above. On sales for special use in small quantities at a discount of 48% or more, the royalty shall be 10% of the price ~~obtained~~ ~~................................................~~ ~~........................~~ figuring the discount amount the price obtained shall be considered to be the price obtained for the sheets plus the cost of completing the binding.

*Mail Order* (c) On copies of said work sold direct to the consumer through the medium of mail order coupon advertising or direct-by-mail circularization, a royalty of ten per cent of the price received.

*Educational sales* (d) On copies of said work sold for educational use through their Educational Department, a royalty of 4% less than the rate stated in ¶ 6(a).

*Export* (e) On copies of said work sold in bound form at a reduced price, or in sheets, for export to Canada and other territories covered in this Agreement, the Author shall receive a royalty of 5% of the list price of the regular trade edition in the United States.

*Remainders* (f) On disposal of overstock of the regular trade edition, a royalty of 10% of the gross price obtained if said overstock is sold at 60% of the list price or less, but there shall be no royalty if the Publishers shall dispose of copies as a remainder at or below cost price.

*Stock returned* 7. Royalty paid on stock of said work which is later returned by the bookseller as unsalable may be debited against any sums accruing to the Author under this or any other existing Agreement between the Author and the Publishers.

*Special editions* 8. The Publishers may issue a special or limited edition of said work, paying to the Author a royalty which shall be the same amount per copy as that paid on the regular trade edition.

*Reprints* 9. The Publishers may publish said work under their own imprint in a reprint edition at a reduced price, paying to the Author 10% of the net price of said edition.

10. In the event that the Publishers shall lease said work for publication in a reprint edition under another imprint in the territories covered by this Agreement, the proceeds of such lease shall be divided equally between the Author and the Publishers.

*Book Clubs* 11. In the event that the Publishers shall lease said work on a royalty, or for a lump sum in lieu of royalty, to a book club, the net proceeds shall be divided equally between the Author and the Publishers, and upon request in writing by the Author the Publishers shall pay the Author's share of all sums if in excess of one hundred dollars within fourteen days after the receipt by them of such proceeds.

*Permission to quote* 12. The Publishers may publish, or permit others to publish, broadcast or televise for publicity purposes without charge such selections from said work as they think proper to benefit its sale, without compensation to the Author.

*First serial rights* 13. On the sale of the first serial rights of said work, the Author shall receive 90% of the net proceeds of such sale.

*Publication in newspapers, periodicals, and anthologies* 14. On the sale of the right to publish the work, parts thereof, selections, abridgments, or serializations thereof, in newspapers, periodicals or other books after publication in book form, the Author shall receive 50% of the net proceeds of such sales.

*Publication in British Empire* 15. On the sale or lease of said work or any rights therein for publication in the English language under any imprint other than the Publishers' in the British Empire exclusive of Canada, the Author shall receive **eighty-five** per cent of the net proceeds of such sale. Countries other than the United States and

*Open market* its dependencies, the Philippines, Canada, and the British Empire are an open market for copies in the English language of the Publishers' original edition or editions authorized.

*Translation and foreign rights* 16. On the sale of the right of translation into, and publication in, other languages, and publication in the English language in countries other than the United States, Canada, and the British Empire, the Author shall receive 50% of the net proceeds of such sale.

*Phonographic, film and braille reproduction* 17. On the sale or permission for use of the work for reproduction phonographically, by film strip or by wire recordings, or in Braille, the Author shall receive 50% of the proceeds, if any, of such sales.

*Dramatic, motion picture, radio and television rights* 18. On the sale of the dramatic, motion picture, radio or television rights, the Author shall receive **ninety** per cent of the proceeds of such sales, including any additional money realized from such sale pursuant to any so-called escalator clauses based on book and/or book club sales.

19. In the event of the sale, within two years after publication of the work, of the motion picture, dramatic, radio or television rights exercisable within the territory covered by this Agreement, whether or not such sale is made by the Publishers, the Publishers shall receive, in consideration of their contribution to the value of said rights, one-half of the amount expended by them prior to publication and during the first two years after publication in advertising the work, but this payment shall in no event be more than 10% of the Author's total net receipts from such sale.

*Statements and payments* 20. The Publishers shall render semi-annual statements of account in the months of June and December covering sales of the book and sale or lease of any and all other rights in the work to the last day of March and the last day of September preceding, and pay in cash with the statement the amount due the Author with the following exceptions: (1) To provide for possible return of stock by the bookseller under ¶ 7 above, only 90% of the royalty accrued to the Author shall be payable with the first semi-annual statement following publication of said work; (2) Not more than $▇▇▇▇▇ shall be due and payable to the Author in any one calendar year and that any residue shall be applied to future payments under the same restriction. On the 15th day of June in the ▇▇▇▇ calendar year following the first publication hereunder, all amounts accrued to the Author and as yet unpaid shall be paid forthwith, and thereafter all future payments shall be made semiannually without limitation in accordance with the semi-annual statements and at the times the work is rendered. When at any last day of March or September our less than Ten Dollars ($10.00) shall have accrued to the Author, the Publishers shall be under no obligation to render a statement or make payment, unless it be a final statement and payment.

AG100081

21. For the purpose of keeping said work in print and in circulation as long as possible, the Author agrees that if at any time after a period of two years from the date of publication of said work the semi-annual sale in the regular trade edition shall be less than five hundred copies, then the Publishers shall pay to said Author a royalty of 10% of the list price, provided such copies are sold from a reprinting of twenty-five hundred copies or less, this reduction being made by reason of the increased cost of manufacture per copy of such small reprintings. The Publishers shall thereafter render statements of account annually.   *Reduced royalty in small printings*

22. All payments made by the Publishers to the Author under this Agreement shall be chargeable against and recoverable from any or all monies accruing to the Author under this Agreement.   *Payments*

23. Corrections or revisions, after delivery of copy to the Publishers, which exceed 10% of the Publishers' charge for composition, shall be debited against any sums owing to the Author under this Agreement.   *Corrections and revisions*

24. Title to any plates, engravings, dies, type forms, printed copies, and all material used in publishing the work shall rest in the Publishers. If rendered valueless by fire or any other cause, or if at any time after the expiration of two years from the date of first publication there is not in their opinion sufficient sale for the work to enable them to continue its publication profitably, then the Publishers may authorize the destruction or disposal of any remaining plates, dies, or other material used in printing the work free from any claim on the part of the Author and ¶ 6 of this Agreement shall become inoperative, provided that the Publishers shall first send by registered mail to the Author at the Author's last known address an offer to sell said plates and/or all publication rights in the work at one-quarter of the cost of composition and plates, and all copies of the work then on hand at cost. If the Author shall within sixty days of the mailing of said offer accept it and pay for said plates, the Author shall thereupon become the sole owner of the copyright and this Agreement shall terminate.   *Title to material used in publishing*  *Termination and reversion of rights*

25. The Publishers shall take all suitable measures for the preservation of original Illustrations, if any, supplied by the Author, as well as the manuscript, but shall not be responsible for their loss or damage. Said originals shall, upon request in writing by the Author, be released to the Author after the expiration of a period of one year from the date of original publication; but if such request be not made within eighteen months from the date of original publication, the Publishers may destroy and dispose of said originals free from any claim on the part of the Author.   *Originals supplied by author*

26. The Publishers shall give the Author twelve free copies of the work and allow a discount of 40% from list price on additional copies purchased by the Author.   *Free copies*

27. The Author agrees to submit to the Publishers his next book-length work before submitting the same to any other publisher. The Publishers shall be entitled to a period of six weeks after the submission of the completed manuscript, and in no event less than one month after the publication of the Author's last preceding book, within which to notify the Author in writing whether they desire to publish such manuscript.   *Option*

28. This Agreement may be assigned by either party with the written consent of the other, which consent must be obtained in advance and will not be unreasonably withheld, and the assignee thereof shall have all the rights and remedies of the original parties insofar as the same are assignable. Said Agreement shall be assigned only as a whole and not as a part nor as to any part interest therein.   *Assigns*

29. This Agreement shall be binding upon, and shall be for the benefit of, the Author and also the Author's heirs, executors, administrators, and/or assigns, and likewise upon and for the benefit of the Publishers and also their successors and/or assigns, unless contrary to the context.   *Heirs*

Signed and delivered the day and year first above written.

HOUGHTON MIFFLIN COMPANY



PUBLISHERS:   By _____

Director

AUTHOR: _____

AG100082

# CONTRACT

**Agreement,** made this ▓▓▓▓▓ day of ▓▓▓▓▓

19 67, between ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

the Author or Proprietor (hereinafter in either case called "the Author"), and A. S. Barnes & Company, Incorporated, a New York corporation having its principal office at 8 East 36th Street, New York, New York (hereinafter called "the Publisher"),

## Witnesseth

**Whereas,** the Author has written, or is engaged in writing, a work at present entitled

or on the subject of

(hereinafter called "the Work");

**Now Therefore,** the parties agree as follows

## A. THE AUTHOR AGREES:

**Grant of Rights**

1   To grant and assign, and does hereby grant and assign to the Publisher the exclusive book publishing rights of the above mentioned Work in the United States of America, the Dominion of Canada and all other countries of the world, the sole and exclusive right to copyright ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in the name of the Author; to print, publish, sell and market the Work during the whole term of its copyright and all renewals thereof; to secure renewals of said copyrights in the United States of America, the Dominion of Canada and all other countries of the world; to lease plates of the Work to others for reprint publication

**Warranty of Title**

2   That the said

is the legal Author and sole proprietor of the Work, and that he has the sole and exclusive right to dispose of the same, and that no person or persons or corporations, or other entities, have any rights therein.

**Warranty Re Contents**

3   That the Work has not heretofore been published in book form; that it contains nothing of a scandalous, libelous, indecent, immoral, unlawful or injurious nature, and that it contains no matter which if published will infringe upon any proprietary right at common law or upon any statutory copyright, or violates any other right of any person, partnership or corporation whatsoever.

**Indemnity**

4   (a) To hold the Publisher harmless from any suit, claim or demand and to reimburse and indemnify the Publisher for any recovery or expense of any nature whatsoever arising from any claims of infringement of copyright or proprietary right or of libel, plagiarism, or unlawfulness or from any matter or thing contained in said Work, including but not limited to the costs of settling any suit or threatened suit, claim or demand, or expenses incurred by the Publisher in connection with or preliminary to the publication of the Work.

(b) At the request of the Publisher to act promptly and at his own expense with regard to any claim or demand which may be made and to defend any action which may be brought based upon any assertions or allegations of infringement, violation, libel, plagiarism or unlawfulness. In the event that the Publisher does not wish to exercise this request, the Publisher is hereby granted the right to meet any claims, demands, or actions as aforesaid and to make such defense as he may be advised by his counsel, and the costs and counsel fees thereof together with any recovery shall be charged to and paid by the Author.

**Permission Covering Excerpts**

5   In the event the Author plans to incorporate in the manuscript or Work any writing or composition or material of any sort either of his own or those of any other writer or artist previously elsewhere published, to obtain and deliver to the Publisher proper and complete written permission and authorization to reprint the same and, in the event that the Author plans to incorporate in the Work photographs taken by any person other than himself, to obtain and deliver to the Publisher proper and complete permission and authorization to reprint the said photographs. The Author agrees to pay all fees which may be required to secure the necessary permission to reprint any such material or photographs in the Work.

**Delivery of Manuscript**

6   To deliver to the Publisher on or before   **(in hand)**

a complete and legibly typewritten copy of the manuscript satisfactory to the Publisher in form and content.

Time is of the essence of this agreement and if delivery of such manuscript be not made on or before the stipulated date, or if the manuscript as delivered should not prove satisfactory to the Publisher and the Publisher so notifies the Author within ninety (90) days of actual delivery of the manuscript, this shall be deemed cause for the Publisher, if he so desires, to terminate this agreement

In the event of such termination, the Author agrees to repay to the Publisher any and all amounts which may have been advanced by the Publisher to the Author in connection with the Work, together with any expenses which may have been incurred by the Publisher to such date, and the Author agrees not to cause the Work to be published thereafter by any other person or persons until all such advances and expenses have been paid. The Author further agrees that in no event shall he be free to cause publication of the Work until he shall have offered it to the Publisher on the terms of this agreement.

Any advance provided for herein unearned may be charged against royalties due the Author on other books published by the Publisher

The Author further agrees to supply promptly all photographs, drawings, charts and index necessary for the completion of his manuscript, and if he fails to do so, the Publisher shall have the right to supply them and to charge the cost thereof against any sums accruing to the Author under this agreement.

The Author further agrees that the Publisher may deduct from the sums to be paid by it to the Author, as hereinafter set forth, such sums or sums as they may have found reasonably necessary to pay in preparing the manuscript for publication, for alterations, in defending or prosecuting any suits, claims, etc., and in preparing photographs, drawings, charts or indexes necessary to the production of the text.

**Correction of Proof and Author's Alterations**

7   To read, revise and correct and promptly return within   10   days from receipt thereof all proof

sheets of the Work, to pay for the cost of any alterations which he makes in proof, after the type has been set up; to pay in full for any corrections in the plates required or which are necessary for the correction of actual errors (excluding printer's errors) after the plates have been made in conformity with the last proof as corrected by the Author, it being understood that these charges, if any, against the Author will be paid for in cash unless the Publisher shall elect to debit said amounts against any sums accruing to the Author

The Author further agrees that if in the opinion of the Publisher the manuscript of said Work is not properly prepared for the press, the Author shall have the option of revising it, or if he fails to exercise his option, the Publisher may then have it properly prepared at the Author's expense; and it is further agreed that if the Author does not elect to read and correct his proofs the Publisher may arrange to have such proofreading as it deems necessary, charging any expense thus incurred to the Author.

**Revised Editions**    8    If the Publisher deems that a revised edition is desirable, to make such revisions as the Publisher may reasonably require. If within thirty (30) days after the mailing of a written request by the Publisher, the Author does not undertake to make such revisions, or if the Author shall thereafter fail to make such revisions within the time reasonably specified by the Publisher, or if such revisions are not acceptable to the Publisher, then the Publisher may cause such revisions to be made by person or persons of his own selection and the expense thereof shall be paid by the Author to the Publisher or at the option of the Publisher, charged against the Author's royalty account

**No Advance Publications**    9.    Not to publish or cause to be published the Work prior to book publication except upon written permission of the Publisher

**No Conflicting Publications**    1    Not to publish or permit to be published without the Publisher's written consent during the period the Work is in print, any material in book or pamphlet form that will in the opinion of the Publisher conflict with the sale of the Work.

**Option on Next Work**    11.    To give to the Publisher first refusal of the next **two book manuscripts**

to be written by 

hereby granting to the said Publisher the option on the publication contract thereof for sixty (60) days after said manuscripts have been delivered to them, the said works to be published on the same terms as in this Agreement set forth. The said option shall continue in force for sixty (60) days after the submission of the manuscript of each Work, unless the Publisher shall within such period give notice in writing to the Author that he elects not to exercise such option. The said option shall not apply to the second succeeding Work if it shall not have been exercised as to the first succeeding Work.

**Sale of Subsidiary Rights**    12    To appoint, and he does hereby appoint, the Publisher his duly authorized agent and attorney in fact to negotiate and sell the following other rights in the above mentioned Work

(a) All rights in the Work of dramatization, motion picture rights (including sound and talking motion picture rights) and all other rights of mechanical recording, of transmission and representation by radio, television or any other method of recording or projection by means or mechanics, light, electricity or other medium known or to be known in the United States of America and in its possessions and in all foreign countries.

(b) First and second serial rights abridgment, condensation, selection and other serial and publication rights following book publication of, in or to said Work in the United States of America and in the Dominion of Canada.

(c) Publication of said Work, or parts thereof, or for the exercise of the other rights enumerated above in any foreign country in the English language or for translations of said Work into foreign languages

## B. THE PUBLISHER AGREES

**Copyright**    1    To copyright the Work in the United States of America and the Dominion of Canada at its expense and ~~at its own expense~~ in the name of the Author

**Publication**    2.    To publish the Work and put the same on the market at its expense in such style and manner as it shall deem expedient and at such time or times as it shall see fit, it being understood that advertising, the number and destination of free copies, and each and every detail as to manufacture and publication shall be in the exclusive control of the Publisher; it being further understood, however, that the Publisher may deduct from the sums to be paid by it to the Author, as hereinafter set forth, such sum or sums as it may have found reasonably necessary to pay in preparing the manuscript for publication, for alterations, for photographs, drawings, charts or indexes, as hereinbefore set forth, or in defending or prosecuting any suits or claims, hereinbefore referred to.

**Royalty Provision**    3.    To pay to the Author, or his or her duly authorized representatives, less expenses and charges hereinbefore mentioned, the following royalties based on the **retail list price**

for all copies of the said Work actually sold by it in the United States of America, which shall be construed as not including copies given to the Author, salesmen's samples, damaged copies, copies given away for review or for the purpose of aiding the sale of the Work but not for resale, copies sold at or below cost when falling off in profitable sales in any style of binding requires a disposal of overstock, or copies destroyed by fire or other cause beyond the Publisher's control

**Trade Sales**    (a) On copies in the regular trade edition sold by it in the United States of America at discounts of forty-five per cent (45%) or less, a royalty computed on the **retail list** price as follows **10%**

Where the discount to wholesale or retail distributors in the United States of America is forty-six per cent (46%) or more from the retail price, the Publisher shall pay to the Author one-half the royalty provided for in B.3 (a) above.

**Mail Order Sales**    (b) On copies sold direct to the consumer through the medium of mail order coupon advertising or direct by mail circularization the royalty shall be 5% of the amount of Publisher's charges for copies of said work, less returns, but with no deduction for bad debts

**Canadian and Export Sales**    (c) On copies sold in Canada or exported elsewhere a royalty of ten per cent (10%) of the actual amount received, and in the event of a sale of rights in England or other foreign countries, or of translation rights fifty per cent (50%) of the amounts received for such rights after deduction of costs including agents' fee and taxes withheld abroad, if any; if, however, the Publisher furnishes sheets or bound copies of the Work for foreign publication, the production cost, including an allocable part of composition and plate amortization, shall be deducted from the amount received and the Author's share of the net balance paid as aforesaid.

**First Serial**    (d) On the sale of first serial rights to newspapers or periodicals, any compensation received shall be divided between the Author and the Publisher in the proportion of seventy per cent (70%) to the Author and thirty per cent (10%) to the Publisher.

**Second Serial**    (e) If second serial rights are sold for what are generally known as "second serial purposes" the funds so derived shall be divided equally between the Author and the Publisher

**Motion Picture, Radio, T.V. Etc.**    (f) On all sales of rights covering dramatization adaption for motion picture, radio broadcast, recording or television, the net compensation received shall be divided between the Author and the Publisher in the proportion of seventy per cent (70%) to the Author and thirty per cent (30%) to the Publisher.

**eprint**    (g) The Publisher shall have the right to grant permission to reprint material from the said Work, but no payment shall be made by the Publisher to the Author for permission, gratuitously given by the Publisher, to publish extracts from the said Work to benefit the sale thereof; if, however, the Publisher receives any compensation for the publication of extracts such compensation shall be divided equally between the parties.

**Book Clubs**    (h) In the event of editions or rights being sold on a royalty basis or for a lump sum, the sale to a book club or similar organization such net sum shall be divided as follows: fifty per cent (50%) to the Author, fifty per cent (50%) to the Publishers. If books are printed by the Publishers and sold for book club distribution, and the net price received by the Publishers shall be less than one third ⅓ of the Publishers list price, the Author's royalty shall be five per cent (5%) of the net amount received. If the book should be distributed by a book club under the management of the Publishers, a royalty of **.12½¢ · twelve and one-half cents** shall be paid on each copy so distributed.

**Reprint and Cheap Edition**    (i) On all copies of a cheap edition, five per cent (5%) of the net price of each copy sold of each edition, less returns; on all leases of the plates of said Work to others for cheap or reprint editions, fifty per cent (50%) of any amount received from said publication as royalty.

**Abridgment and Condensation**    (j) In the event that all or part of the Work is sold for purposes of abridgment or ... to the Author fifty percent (50%) of the amount received.

**Remainders**    (k) On all copies sold at "remainder" prices, except when sold at or below cost (in which case no royalty shall be paid), ten per cent (10%) of the net amount received.

✓ **Overstock**    (l) Should the Publisher find itself with an overstock of the Work on hand when in its judgment the demand would not take up the stock in a reasonable time, it shall have the right to sell such copies at the best price it can secure, and if such overstock be sold at a discount of seventy-five per cent (75%) or more of the retail price, no royalty shall be paid to the Author on such sales.

4. To give to the Author six (6) copies of the said Work, and to sell to the Author further copies for personal use and not for resale, at a discount of forty per cent (40%) from the retail price; payment for which shall be made within thirty (30) days from the date of invoice thereof.    **Author's Copies**

5. Within ninety days after January 31st in each year, to submit statements of sales, earnings, and charges up to the date of accounting, and to make payment of the amount due thereon to the Author, unless earnings are less than $25.00.    **Royalty Statements**

6. For the purpose of keeping the Work in print and in circulation as long as possible, the Author agrees that, if the sales of the Work do not exceed two hundred and fifty (250) copies in any year period following the expiration of two (2) years after publication, he will accept one half (½) of the stipulated royalty on all such annual sales of less than two hundred fifty (250) copies.    **Reduced Royalties**

7. In case the Author's royalties, or the Author's share of sums arising from sales made by the Publisher of rights to this Work, should total ten thousand dollars ($10,000.00) or more by the end of the first ninety (90) days after the publication of said work, the Author agrees to permit the Publisher to apportion the payment or payments of royalties and other sums due hereunder over a period of twelve (12) months or more after the same are earned in such a way as may in the judgment of the Publisher best suit the financing and promotion of the work; provided that if within four (4) months after publication of said work, the Author ... due notice in writing that he does not desire this form of financing and promotion and that he desires to abrogate this clause, it shall thereupon be null, void and of no effect.    **Alternative Payment of Royalties**

## C.  THE PARTIES MUTUALLY AGREE:

**Litigation Re Copyright**    1  Either of the parties shall have, during the existence of this Agreement, the right to bring any suit or proceeding to protect or establish the said copyright or any renewal thereof and to bring an action for the enjoining of any infringement thereof and for damages. If they shall proceed mutually in the matter, the expenses and recoveries, if any, shall be shared equally, and if one party does not agree to proceed jointly in the matter, then the other party hereto shall have the right to go forward with such proceeding and such party shall bear all expenses thereof and any recoveries had therein shall belong absolutely to such party

**Cheap Edition Published By Publisher**    2  That the Publisher may publish under its own imprint a cheap edition of the said Work and should pay to the Author the royalty hereinabove provided for, that the Publisher shall have the right to lease the plates of said Work to others for cheap or reprint publication and shall pay to the Author the compensation hereinabove provided for. It is further agreed that the royalty on all copies of the Work in the regular edition remaining unsold in the hands of booksellers at the time of the publication of the cheap or reprint edition shall be adjusted to conform to the same terms as for the reprint edition provided the Publisher makes rebates or credits on such copies to enable said booksellers to retail the copies in question at the price of the reprint edition. It is further agreed that any overstock of the regular edition sold as a remainder to the reprint Publisher at or below manufacturing cost shall not be subject to royalty.

3. That if the Author has received any overpayment of royalties as a result of returns, or rebates on sales in connection with a cheap edition, the Publisher may deduct the amount of this overpayment from any future earnings on other books of the Author which may be published by the Publisher. If at any time the royalties earned by the Work and payable under the terms of this Agreement are not sufficient to cover such charges against the Author as may accrue under this contract, such charges shall be paid in cash by the Author upon written notice and statement.

**Reversion of Publication Rights to Author**    4  If at any time during the continuance of this agreement the demand for the Work shall not in the opinion of the Publisher be sufficient to make its further publication profitable, then the Publisher may cancel this contract, giving the Author three (3) months' written notice thereof. In the event of termination under this Clause 4, the Author shall have the option to buy from the Publisher at one-half (½) the cost of production the plates, if any, of the Work and the plates, if any, of any illustrations furnished by the Author, should they not have been destroyed by fire or otherwise, and the stock on hand at the actual cost of manufacture; and if the Author fails so to purchase the same the plates shall remain the property of the Publisher who may then destroy them and dispose of the stock as he sees fit, without royalty or any other compensation to the Author. Any such purchase of plates shall be subject to any lease thereof previously made by the Publisher under Clause B.3 (i), or otherwise.

**Care of Manuscripts**    5. That the Publisher is not an insurer of manuscripts or drawings placed in its possession, and need not carry insurance of any kind thereon for the Author, and that it shall be liable only for gross negligence in the care of the same.

**Assignment**    6. This contract may be assigned by either party, but only as a whole and no part of their respective interests shall be assigned by either party. No assignment of the Author shall be valid, as against the Publishers, unless and until they shall have received due evidence thereof in writing.

AG100085

**ices** 7. That all notices which may be given under this Agreement by either of the parties to the other shall be forwarded by ordinary mail, except notices of termination which shall be forwarded by registered mail, and all notices shall be directed to the party designated at the address hereinabove written unless notice of change shall be given in writing by either party to the other, and after receipt of such notice, the address therein stated shall be used in all further communications to said party

**Further Documents** 8. Each of the parties hereto will execute for and forward to the other upon request therefor any further written instrument, document or certificate confirming or evidencing the grants in this agreement set forth.

**Bankruptcy of Publisher** 9. In the case of bankruptcy or liquidation for any cause whatever of the Publisher, the Author shall have the right to buy back the rights of publication, together with any plates or remaining copies of sheets, at a fair market value, to be determined by agreement or arbitration, and thereupon this contract shall terminate.

**Waiver** 10. That no waiver of any breach of any condition of this agreement shall be binding unless the same shall be in writing and signed by the party waiving the said breach, and no such waiver shall in any wise affect any other term or condition of this agreement or constitute a cause or excuse for a repetition of such or any other breach unless the waiver shall include the same

**Entire Agreement** 11. That this agreement embodies the entire understanding of the parties and that there are no promises, terms, conditions or obligations, oral or written, express or implied, other than those contained herein.

**Marginal Headings** 12. It is understood by the parties hereto that the Marginal Headings in this contract are for convenience only and do not form a part of the Agreement.

**Author's Representative** 13. It is understood and agreed that all monies due under this agreement shall be paid to the Author's representative. **none** whose receipts shall be a discharge of the monies received, and the said " is hereby empowered by the said Author to conduct negotiations in respect to the said work with the Publishers

**Arbitration** 14. Any controversy or claim arising out of this agreement or the breach thereof shall be settled by arbitration in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the award may be entered in the highest court of the forum, State or Federal, having jurisdiction. Such arbitration shall be held in the City of New York unless otherwise agreed by the parties.

**In Witness Whereof,** the parties hereto have signed and sealed this agreement at New York, N. Y., in duplicate, the day and year first above written.

........................................ .......... ... .. ...........L. S.

IN THE PRESENCE OF

as to the Author

A. S. BARNES & COMPANY, INCORPORATED

as to the Publisher

By .......

The Publisher agrees to pay to the Author, in advance on account of all earnings, ............... upon signature of this agreement.



### RANDOM HOUSE CHILDREN'S BOOKS

AGREEMENT made this        day of                    2010 between███████████
(the "Author") ██████ █████████
██████████, and Random House Children's Books, a division of Random House, Inc. of
1745 Broadway, New York, New York 10019 ("Publisher");

The parties to this Agreement wish to publish and have published a certain work (the "Work")
provisionally entitled:

### UNTITLED

In consideration of the mutual promises in this Agreement, the parties agree as follows:

**1. The Work.**  The Author shall deliver to Publisher a new and original ██████ manuscript comprising a
Work containing approximately ███ book-length pages.

**2. Description of the Work.**  The Work shall █████████████████████████████████████
██████████████████████████

**3. Grant of Rights: Territories.**  The Author grants to Publisher, during the full term of copyright
available to the Work in each country covered by this Agreement, the exclusive right to print, publish,
distribute, sell and license any and all editions and/or formats of the Work as specified herein, in whole
or in part, throughout the world (the "Exclusive Territories").

~~If the Grant of Rights herein does not include the right to sell the Work in Australia/New Zealand,
Publisher may nevertheless arrange for non-exclusive distribution of the Work in Australia/New Zealand
if the Author has not entered into a publishing agreement with an Australian or British Commonwealth
publisher for publication of the Work in Australia/New Zealand within thirty (30) days of Publisher's
first publication. In the event that the Australian copyright law changes, Publisher and the Author
agree to renegotiate the foregoing clause according to mutually agreeable terms.~~

**4. Advance Against Royalties.**  (a) Publisher shall pay to the Author, as a **non-refundable advance,
subject to the provisions of this Agreement,** against and on account of all moneys accruing to the
Author under this Agreement, the sum of ██████████████████████████████ payable as
follows:

███████ upon execution of this Agreement;
███████ upon Publisher's acceptance of the complete manuscript for the Work; and
███████ upon Publisher's official publication date of the Work, but no later than eighteen (18)
          months following Publisher's acceptance of the complete manuscript for the Work.

(b) **Newbery Medal.**  If the Work receives the Newbery Medal, issued in the February following
Publisher's initial publication, upon Author's written notification to Publisher of such award,
Publisher agrees to pay as an additional advance against and on account of all monies to the
Author under this Agreement, the sum of ████████████████████████         Such
additional advance shall be payable within thirty (30) days of Publisher's receipt of notification
from the Author that such an award has been made.

(c) **Newbery Honor.**  If the Work receives the Newbery Honor, issued in the February following
Publisher's initial publication, upon Author's written notification to Publisher of such award,
Publisher agrees to pay as an additional advance against and on account of all monies to the
Author under this Agreement, the sum of ███████████████████████.  Such additional
advance shall be payable within thirty (30) days of Publisher's receipt of notification from the
Author that such an award has been made.

**5. Delivery and Acceptance of Manuscript.**  (a) One (1) original of the complete Work in print form
and one electronic copy, if available, as described in Paragraphs 1 and 2 and in the following
Subparagraphs of this Paragraph 5, shall be delivered to Publisher no later than October 15, 2010.  ~~Prior
to the delivery of the complete Work, the Author shall deliver Progress Materials as follows:~~

AG10008



(i) If the Author fails to deliver the complete Work by the due date, after a thirty (30) day grace period, **or by a later date as mutually agreed in writing,** Publisher may demand, in writing, that the Author return all sums in full paid to the Author by Publisher in connection with the Work. Upon receipt of these sums, this Agreement shall terminate. The Author may not, for a period of ~~three (3)~~ one (1) years after termination, submit any partial or complete manuscript or proposal for the Work or for a ~~similar work~~ substantially the same work based on the Work to any publisher before offering it to Publisher under the same terms contained in this Agreement.

(ii) If Publisher and Author mutually determine that the published Work requires materials such as photographs, illustrations, an appendix, a bibliography or other supplementary matter ("Related Materials"), the Author shall furnish these to Publisher in reproducible form at a time mutually agreed; if the Author does not do so, Publisher may supply them at the Author's expense.

(iii) If permission from others is required for publication of any material contained in the Work, including any visual material, or for the exercise of any other right conferred by this Agreement (including the right to promote the Work), the Author shall be responsible for obtaining such permissions at Author's own expense and shall submit them, in form satisfactory to Publisher, with the complete Work, but Publisher may, if Publisher deems it necessary, assist the Author in obtaining the necessary permissions. **Publisher agrees, upon the Author's request, to consult with the Author regarding the clearing of permissions.** Such permissions shall permit the exercise by Publisher and its sublicensees of all the rights licensed to Publisher in the Territories.

~~(iv) Publisher shall have the right to commission the preparation of an index, reasonable to the size and scope of the Work, at the expense of the Author, not to exceed One Thousand Dollars ($1,000.00), unless the Author provides an acceptable index at the time of delivery of the complete Work or within a mutually agreeable time period in accordance with Publisher's production requirements.~~

(v) Any sums that Publisher has paid on the Author's behalf by reason of Subparagraphs 5(a)(ii-iii) may be deducted from any portion of the advance payable to the Author pursuant to Paragraph 4, **after notifying the Author regarding said deduction;** if the total advance has already been paid, however, any such sums will be billed to the Author directly, or, at Publisher's discretion, charged to the Author's royalty account.

(b) Publisher will inform the Author in writing whether the Work ~~or Progress Materials~~ which is delivered pursuant to Paragraph 5(a) is acceptable within ~~ninety (90)~~ sixty (60) days of receipt of the complete Work. ~~or the Progress Materials.  Acceptance of the Progress Materials shall not be deemed acceptance of the complete Work.~~ If Publisher fails to respond within the above-mentioned sixty (60) day period, the Author may then give written notice to Publisher (addressed to Publisher's publisher with copies to the editor of the Work and Publisher's General Counsel, and sent via registered mail, return receipt requested), specifying that Publisher has failed to respond regarding the submission of the manuscript. Publisher shall then have thirty (30) days after receipt of such notice within which to notify the Author whether the manuscript is accepted or rejected.

If Publisher fails to so notify the Author (1.) at the end of such thirty (30) day period then the Author shall have the right to terminate this Agreement, whereupon all rights granted to Publisher for the Work shall revert to the Author and the Author shall repay Publisher any amounts paid under this Agreement in accordance with Paragraph 5(b)(II) below; or (2.) six (6) months or more after receipt of such notice then the Author shall have the right to terminate this Agreement and all rights granted to Publisher for the Work shall revert to the Author and the Author may retain all amounts paid under this Agreement.

(i) If Publisher concludes that the Work ~~or the Progress Materials~~ delivered is unacceptable but could be revised to Publisher's satisfaction in a timely fashion, Publisher and the Author shall agree on an appropriate period of time for the revision process and Publisher will provide **detailed** written editorial comments to the Author with respect to the revisions required. Should Publisher, in its sole judgment, conclude that the Work ~~or the Progress Materials~~ as first submitted cannot be revised to its satisfaction within a timely period, or after the agreed revision period, should Publisher find that the revised Work ~~or the revised Progress Materials~~ is still unacceptable for any editorial reason, Publisher may reject the Work by written notice to the Author. **Publisher agrees, however, that if the Work in question conforms to the book description in Paragraphs 1 and 2 (or as modified by amendment), then Publisher shall grant the Author the right to revise the Work within a reasonable period of time in order to make it editorially acceptable to Publisher.**

(ii) If the Work is rejected, the Author may retain fifty percent (50%) of any amounts advanced to the Author pursuant to Paragraph 4 and shall repay Publisher fifty percent (50%) of the amount

2

AG100088

advanced within twelve (12) months. The Author will be authorized to negotiate the sale or license of rights in the Work to any third party on the condition that the Author will be obligated to repay to Publisher the amounts retained from the advance pursuant to this Subparagraph 5(b)(ii) from all proceeds from any sale or license by the Author of rights of any nature in the Work to a third party (the "First Proceeds"). The Author agrees to use best efforts to license or sell the rights in the Work on terms most likely to result in the repayment in full to Publisher. ~~The Author agrees to notify Publisher of the financial terms of any agreement with any third party involving rights in the Work and The Author will ensure that any agreement with any third party provides that Publisher will be paid directly~~ hereby **assigns and transfers to Publisher the Author's right to receive First Proceeds** ~~under that agreement~~ **and shall authorize and direct any third party from whom Author is entitled to received First Proceeds to pay such sum directly to Publisher upon Publisher's demand** therefore until amounts retained by the Author under this Agreement have been fully recouped. ~~If the Author is obligated to repay Publisher any sums under this Paragraph 5, it is specifically understood that Publisher has a first security interest in any and all proceeds received from the sale or license of the Work up to the amount owed Publisher.~~

(c) If Publisher requires that the Work receive a legal vetting, the completed, revised manuscript will be submitted to Publisher's attorneys. The Author will cooperate with the attorneys in the legal vetting process. If Publisher's attorneys conclude that publication of the Work may lead to legal liability, Publisher and the Author will cooperate for a period of sixty (60) days to make it legally acceptable to Publisher's attorneys. If they are unable to do so, the Author shall return to Publisher any amounts advanced and, when Publisher has received this repayment, this Agreement shall terminate. **The Work may be deemed acceptable only when it is legally acceptable.** If Publisher finds the Work is legally acceptable for publication in the United States but changes are advisable for publication in other territories, and/or if Publisher's attorneys deem changes advisable after the first publication, **Publisher and Author will cooperate to make the Work legally acceptable to Publisher's attorneys** ~~the Author shall agree to make the changes. The Work may be deemed acceptable only when it is legally acceptable.~~ In no event shall Publisher be obligated to publish or continue to publish a work which, in the judgment of its attorneys, may lead to legal liability. No changes or revisions made pursuant to this paragraph shall be deemed to alter or affect the warranties and indemnities contained in Paragraph 15 of this Agreement.

6. **Proofreading and Author's Corrections.** Following acceptance of the Work, no changes other than copyediting shall be made by Publisher without the consent of the Author. The Author shall cooperate in making any required corrections, approving the copyedited Work and reading, correcting and returning promptly all galley proofs and dummys. **Publisher shall submit such copyedited Work, galley proofs and dummys to Author no less than fourteen (14) days from the date such correction must be received by Publisher,** unless specifically requested by Publisher to be done in less time. The cost of the Author's alterations, in type or plates, other than those that are due to printer's errors, in excess of ten percent (10%) of the cost of composition, shall be paid by the Author. The Author shall be entitled to see the typesetter's bill for such charges. ~~With respect to a non-fiction work only, upon Publisher's reasonable request, in order to keep the Work topical, the Author shall revise/update the Work from time to time following first publication on terms to be mutually agreed upon.~~

7. **Publication.** Publisher may publish and distribute the Work in any format, style and manner, and under ~~any of its~~ **the "Knopf Books for Young Readers"** imprint **of Publisher,** and with a jacket, cover or package and at a cover price as it shall determine. The final title shall be mutually agreed between Publisher and the Author. Publisher shall publish the Work **in hardcover** within two (2) years of its acceptance of the complete Work and Related Materials, as described in Paragraphs 1, 2 and 5. If Publisher has not ~~commenced production~~ **published** within such time, other than for reasons beyond its control, such as strikes, wars, government restrictions or Acts of God, or because of a business decision made ~~in consultation~~ with the **approval of the** Author, then the Author shall ~~have, as a sole remedy, either of the following options: (i) Upon written notice to Publisher, the Author may grant the rights to the Work to another publisher provided that the Author repay Publisher all sums advanced for the Work under this Agreement out of First Proceeds received from the grant of rights to another publisher; or (ii) the Author shall~~ grant Publisher an extension of six (6) months from the date of Publisher's receipt of written notice in which to publish the Work, with the understanding that if Publisher should fail to publish within this additional six (6) month period, this Agreement will terminate, all rights in the Work will revert to the Author and the Author shall have the right to retain all sums already received by **and payable to the** Author pursuant to Paragraph 4(a) as liquidated damages for Publisher's failure to publish the Work.

8. **Promotional Materials/Promotion by Author.** (a) The Author shall cooperate with Publisher in obtaining, ~~at Author's expense,~~ a photograph of the Author of quality acceptable to Publisher to be used in connection with the publication of the Work. **If the Author does not have a photograph of quality**

3

AG100089



acceptable to Publisher, Publisher may arrange to have the Author sit for a new photograph at Publisher's expense.

(b) Publisher may use, or permit others to use, the Author's name and the Author-approved likeness of the Author obtained pursuant to Paragraph 8(a), the title of the Work and selections from the Work in advertising, promotion and publicity related to the publication and/or licensing of the Work, including broadcast, without charge, by radio, television or cable, or distribution via any form of electronic transmission, including on-line or satellite-based data transmission. Likewise, the Author may post on the Author's website the same portions of the text of the Work that Publisher makes available for promotional use, provided that the site carry the current copyright notice, a credit line to Publisher and a link to Publisher's website. Use of any additional material from the Work for online posting shall be subject to Publisher's approval, such approval not to be unreasonably withheld. **Notwithstanding the foregoing, following a period of two (2) years from Publisher's hardcover publication or one (1) year from Publisher's paperback publication (whichever is earlier), the Author may post up to twenty-five percent (25%) of the Work on the Author's website without seeking Publisher's approval.**

(c) All details of the advertising and promotion of the Work shall be determined by Publisher. If Publisher requests the Author's cooperation in promoting the Work, the Author shall be **reasonably** available for such promotional activities.

**9.** <u>Author Copies.</u> Upon Publisher's publication, it shall give ~~twenty (20)~~ **twenty-five (25)** hardcover and ~~twenty-four (24)~~ **twenty-five (25)** paperback copies of its edition of the Work to the Author **and ten (10) copies of each edition to the Author's agent.** The Author may purchase additional copies for personal use and not for re-sale at one-half (½) the cover price. The Author will be billed for these copies and payment shall be made prior to shipping unless the Author's royalty account has sufficient excess royalties accrued over and above the advance paid to the Author so that these charges can be recouped from the Author's royalty account.

**10.** <u>Copyright.</u> Notice of copyright in the Work shall appear in each copy of the Work printed by Publisher **(and Publisher shall require any licensees to print the same notice in their edition(s) of the Work)** and be in the following name: ▮▮▮▮▮▮▮▮▮▮▮

Publisher agrees to register the copyright in the Work in the Author's name in the United States within ninety (90) days of initial publication, provided, however, that Publisher will not be obligated to register the copyright if, prior to the time of publication, the U.S. copyright law is amended so that registration is no longer a prerequisite to the recovery of attorneys' fees and statutory damages in an infringement action.

**11.** <u>Royalties.</u> Royalties on Publisher's editions of the Work shall be based upon sales less actual returns and less a reasonable reserve for returnable copies **(After the fourth full accounting period following initial publication of the initial edition of the Work and the sixth full accounting period following publication of any subsequent edition of the Work, the reserve then held on sales of each such edition shall be based upon the actual sales and returns history of the Work and such other factors as Publisher, in its good faith judgment, deems appropriate.)**, at the following rates:

(a) <u>Hardcover.</u>  (i) On copies of a hardcover edition sold in the U.S., except as described in subparagraphs (k) through (p) below: **10% of the U.S. cover price on the first 20,000 copies sold; and 12.5% of the U.S. cover price on all copies sold thereafter.**

(ii) On copies of a hardcover edition sold by any affiliate of Publisher in the British Home Market (defined as the United Kingdom, Republic of Ireland and the Channel Islands), except as described in (j) through (p) below: **10% of the U.K. cover price.**

(b) <u>Trade Paperback.</u>  (i) On copies of a trade paperback edition sold in the U.S., except as described in (k) through (p) below: **6% of the U.S. cover price on the first 50,000 copies sold; and 7.5% of the U.S. cover price on all copies sold thereafter.**

(ii) On copies of a trade paperback edition sold by any affiliate of Publisher in the British Home Market, except as described in (j) through (p) below: **6% of the U.K. cover price.**

(c) <u>Mass-Market Paperback.</u>  (i) On copies of a mass-market paperback edition sold in the U.S., except as described in (k) through (p) below: **6% of the U.S. cover price on the first 150,000 copies sold; and 8% of the U.S. cover price on all copies sold thereafter.**

4

(ii) On copies of a mass-market paperback edition sold by any affiliate of Publisher in the British Home market, except as described in (j) through (p) below: 7.5% of the U.K. cover price.

For copies sold of any Spanish language edition of the Work, the royalties set forth in Paragraphs 11(a), (b) and (c) for such edition shall be reduced by 1%.

(d) ~~Paper Products.  On all copies of paper products based on the Work (including, without limitation, journals, note cards, note pads, postcards, calendars, coasters, organizers):  5% of the amount received by Publisher.~~

(e) Modern Library/Everyman's Library.  On all copies of any edition sold in the Modern Library (regular or giant) or in Everyman's Library: 5% of the cover price except as provided in (h) through (p) below.  Any such edition shall be subject to the Author's approval, such approval not to be unreasonably withheld or delayed.

(f) Large Print.  On all copies of a large-type edition of the Work sold in the U.S., except as described in (h) through (p) below:  ~~5% of the cover price on the first 5,000 copies sold, and 7.5%~~ 8% of the cover price on all copies sold ~~thereafter~~ with respect to a hardcover edition of the Work and ~~5%~~ 7.5% of the cover price with respect to a paperback edition of the Work.

(g) Omnibus.  On all copies sold of any omnibus volume containing the Work and other works written solely by the Author (such omnibus edition subject to the prior approval of the Author):  a royalty to be negotiated  should such an edition be contemplated.

(h) Canadian Sales.  On all copies of any edition published by Publisher and sold in Canada by any affiliate of Publisher, except as described in (k) through (p) below:  two-thirds (2/3) of the prevailing U.S. rate for that edition based on cover price.

(i) Australia.  On all copies of any edition sold in Australia and New Zealand, except as described in (k) through (p) below:  two-thirds (2/3) of the prevailing U.S. rate for that edition based on cover price.

(j) Other Export Sales.  (i) On all copies of any edition sold outside the United States of America, and its military bases other than those countries specified in (h) and (i) above:  10% of the amount received by Publisher for the  hardcover edition; and ~~5%~~ 7.5% of the amount received for any paperback edition.

(ii) On all copies sold on a royalty-inclusive basis to licensees outside the U.S.:  8% of the amount received by Publisher on the first 5,000 copies sold; and 10% of the amount received by Publisher on all copies sold thereafter.

(k) High Discount Sales.  On all copies of any paperback edition sold outside of normal trade channels at a discount of 60% or more and on all copies of the hardcover edition sold outside of normal trade channels at a discount of 55% or more:  10% of the amount received by Publisher.  For the purposes of this Agreement, so-called "big-box retailers" and "warehouse clubs" such as Wal-Mart or Costco shall be considered to be within normal trade channels.

(l) Premiums.  On all copies of any edition sold for premium use (subject to Author's approval of the product or service, such approval not to be unreasonably withheld or delayed):  5% of the amount received by Publisher.

(m) Mail Order Continuity Sales.  On all copies of any edition sold to direct marketers or as part of a direct marketing continuity program (i.e., a program whereby a consumer receives a number of titles on an ongoing basis):  5% of the amount received by Publisher.

(n) Educational Book Clubs and Book Fairs.  On all copies of any edition sold to book clubs or book fairs supplying the educational market:  6% of the amount received by Publisher.

(o) Proprietary Editions.  On all copies sold of any proprietary edition (i.e., single retailer) specifically produced for a retail outlet (subject to the Author's approval over the retail outlet):  A royalty rate based upon the amount received by Publisher to be mutually agreed upon if such an edition is contemplated.

(p) Adult Book Clubs.  On all copies of any edition sold to an adult book club on a royalty inclusive basis:  10% of the amount received by Publisher.

(q) ~~Audio.  (i) Except as provided herein, on all copies sold of any non-dramatic audio recording developed from the Work (the "Audio Works") and sold by an audio publishing imprint of Random~~

5

AG100091



~~House, Inc. through regular wholesale, retail and library channels: 10% of the amount received by Publisher;~~

~~(ii) on copies of the Audio Works sold through special markets such as mail order and premium or on copies of the Audio Works sold at a discount of 60% or greater: 5% of the amount received by Publisher;~~

~~(iii) on all copies of the Audio Works sold and delivered by means of digital distribution: 25% of the amount received by Publisher; and~~

~~(iv) on all sublicensing of audio recording rights in the Work to publishers of abridged or unabridged recordings, book and record clubs, continuity programs, mail order marketers, British and translation publishers and other third parties such as electronic publishers, or for broadcast: 50% of the advance and/or royalties (whichever is due) received by Publisher.~~

~~For purposes of this Agreement, the Audio Works may constitute single and multiple audio cassettes, phonograph records, audio discs of any speed or size, magnetic recording tape and any other medium for sound reproduction or transmission known today or which may hereafter become known and which may include shall consist of either the entire verbatim text of the Work or any Author-approved abridgment as set forth below verbatim selections from the Work, connecting narrative passages, background music and sounds supplied by Publisher.~~

~~During the term of this Agreement, and provided that an Audio Work is licensed or published by Publisher, the Author shall not, without Publisher's prior written consent, create or authorize or participate in the creation of any other audio program based on the Work. Notwithstanding the foregoing, in the event the Author has reserved Performance rights in the Work (including, but not limited to, television, radio, motion picture or stage rights), the Author shall have the right to convey to the licensee of motion picture or stage such rights the right to produce a dramatic audio recording derived from the soundtrack and/or screenplay of a motion picture, stage production or broadcast or play based on the Work.~~

~~If more than one work of the Author is recorded on the audio recording, the royalty paid to the Author shall be in proportion to the amounts from each work used on the audio recording.~~

~~The Author shall be given the opportunity to approve the script for any Audio Work based on an abridgment of the Work, provided that such approval shall not be unreasonably withheld or delayed. If the Author has not approved or disapproved the script within ten (10) business days from Author's receipt thereof, the script shall be deemed approved.~~

(r) <u>Electronic.</u> On all copies of the Work sold as an "Electronic Book" ~~or "Electronic Version"~~ as defined herein: 25% of the amount received by Publisher.

As used in this Agreement, Electronic Book means the text of the Work in complete, condensed*, adapted* or abridged* form by any means of distribution or transmission, whether now or hereafter known or developed, intended to make the text and any illustrations or photographs contained in the Work available in visual form for reading. *The Author shall have approval over any condensed, adapted or abridged versions, such approval not to be unreasonably withheld or delayed.

Notwithstanding the foregoing, should, during the term of this Agreement, the Electronic Book royalty in the Random House, Inc. contract boilerplate reflect a change to the Author's advantage, Publisher will amend this Agreement to reflect that new royalty. In addition, at any time following three (3) years from the initial publication of the Electronic Book hereunder, the Author may serve written notice to Publisher of the Author's desire to renegotiate the Electronic Book royalty rate. If the Author and Publisher fail to reach an agreement within a period of sixty (60) days thereafter, Publisher shall not sell that Work as an Electronic Book again unless and until the Author and Publisher agree in writing upon a new royalty rate.

Electronic Version means a digital or electronic product or service that is derived or adapted from the Work or portions of the Work, which may include incidental portions of the text of the Work and enhancements such as sound, images, animation or interactivity. Electronic Version rights are retained by the Author.

(s) <u>On-Line Sales.</u> (i) For sales through on-line bookstores or internet bookstores (e.g., amazon.com), including sales made via Publisher's proprietary website, the applicable royalty specified above will be paid on such sales, based on the format and territory that apply to the sale.

6

AG100092



(ii) For sales of returned or hurt books made by Publisher through on-line used bookstores: 10% of the amount received by Publisher. Publisher shall not make returned or hurt copies available for sale in this manner until one (1) year following initial publication of each format. For the purposes of this Paragraph 11(s)(ii), "returned" or "hurt" books means copies of books returned to Publisher's scrap facility from wholesalers or retailers for credit.

(t) <u>No Royalty Copies.</u> No royalties shall be paid on copies sold to any party below or at cost (including shipping and handling costs) or given away for review, advertising, sample, sales promotions or like purposes, or on portions of the Work appearing as previews in other books published by Publisher or on portions of the Work used or sublicensed for advertising or publicity without compensation.

12. <u>Subsidiary Rights.</u> The Author grants to Publisher the exclusive right to sublicense other rights in the Work as specified in this Agreement in the Exclusive Territories and the non-exclusive right to sublicense other rights in the Work in the Open Market upon terms as Publisher deems advisable. The net proceeds of these sublicenses shall be divided as set forth below and paid (less the amount of any advances then unearned) at the time of the next accounting. However, upon Author's written request, not to occur more than once per royalty accounting period and provided Publisher has recouped all advances and any other sums due it under this Agreement, Publisher shall flow through to the Author the Author's share of Book Club and Reprint subsidiary rights income received by Publisher pursuant to this Paragraph 12 within thirty (30) days after receipt of the Author's request or thirty (30) days after receipt of such subsidiary rights income, whichever occurs later. Publisher will notify Author of the sale of any rights specified below when the net proceeds due the Author for each such sale is Five Hundred Dollars ($500) or more, and upon Author's written request, Publisher will provide the Author with copies of executed licenses in which the Author's share of the proceeds is Five Hundred Dollars ($500) or more. Publisher shall include a provision in all of its license agreements for full-length editions of the Work that at least two (2) copies of the licensed edition of the Work be provided to Publisher for the Author.

| | Publisher's Share | Author's Share |
|---|---|---|
| First Serial (use of serializations, condensations*, excerpts, digests*, etc., in newspapers, magazines or other periodicals <u>before</u> publication of the Work in book form) **Condensations and abridgments shall be subject to the Author's approval, such approval not to be unreasonably withheld or delayed.** | 10% | 90% |
| Second Serial (use of serializations, condensations*, excerpts, digests*, etc., in newspapers, magazines, other periodicals or books after publication of the Work in book form) **Condensations and abridgments shall be subject to the Author's approval, such approval not to be unreasonably withheld or delayed.** | 50% | 50% |
| Book Club **Subject to consultation with the Author.** | 50% | 50% |
| Permissions | 50% | 50% |
| Trade or Mass-Market Paperback **Subject to Author's prior approval, such approval not to be unreasonably withheld or delayed.** | 50% | 50% |
| Other Book Publication, i.e., any and all print volume editions (including, but not limited to, hardcover [which shall be subject to Author's approval, such approval not to be unreasonably withheld or delayed, if such hardcover is the initial publication of the Work], large-type editions, mail order, premium* and other special editions and schoolbook and book fair editions licenses) *Subject to Author's approval of the product or service, such approval not to be unreasonably withheld or delayed.** | 50% | 50% |

7

AG100093



| | | |
|---|---|---|
| *British Commonwealth Hardcover and/or Paperback (which may include the right of Publisher's licensee to further sublicense any of the rights granted elsewhere in this Agreement, including first serial if available) | 25% | 75% |
| *Translation (which may include the right of the licensee to sublicense any of the rights granted elsewhere in this Agreement, including first serial if available) | 25% | 75% |

**\*If British Commonwealth Hardcover and/or Paperback and Translation rights for a specific territory are not licensed within two (2) years following Publisher's initial publication of the Work, the Author may make written demand to Publisher to license such British Commonwealth and Translation rights. Publisher shall notify the Author in writing within thirty (30) days after its receipt of Author's demand whether it intends to comply. If Publisher does not respond, or is unable to license such British Commonwealth and Translation rights within three (3) months of Author's request, British Commonwealth and Translation rights in that specific territory shall then automatically revert to the Author.**

| | | |
|---|---|---|
| Electronic Book and storage and retrieval of the text (including any visual material) in whole or in part in complete, condensed* or abridged* form, including microfilm, microfiche, digital media or other electronic text format<br>*Condensations and abridgments are subject to Author's approval, such approval not to be unreasonably withheld or delayed. | 50% | 50% |
| ~~Electronic Versions~~ | ~~50%~~ | ~~50%~~ |
| ~~Audio Recording~~<br>~~See Subparagraph 11(q)~~ | ~~50%~~ | ~~50%~~ |
| ~~Videocassettes (not dramatized)~~ | ~~50%~~ | ~~50%~~ |
| ~~Paper Products (such as journals, note cards and calendars)~~ | ~~50%~~ | ~~50%~~ |
| ~~Commercial and Merchandising (derivative products such as the use of a title or character for clothing or toys)~~ | ~~50%~~ | ~~50%~~ |
| ~~Performance (television, radio, dramatic, musical, motion picture and video rights and allied merchandising rights derived therefrom), subject to the Author's prior consent~~ | ~~30%~~ | ~~70%~~ |

Publisher shall have the right to grant transcription or publication rights in the Work in Braille or other non-book formats specifically for the visually impaired without charge.

If Publisher exercises any of the rights specified above itself in lieu of sublicensing them, the royalty rates, unless specified in Paragraph 11, shall be subject to agreement between the parties. Further, if any right specified in Paragraph 12 is sub-licensed by Publisher to a company that is affiliated with Random House, Inc., it is understood that such license will be negotiated at arm's length and on terms similar to the terms of current agreements for similar licenses between Publisher and unaffiliated companies.

If the Author has retained Audio Recording rights in the Work the Author shall give Publisher the right of first opportunity for the acquisition of these rights to exercise itself (i.e., Publisher will not license such Audio Recording rights) before licensing them elsewhere. With respect to Audio Recording rights, the Author shall give Publisher a period of thirty (30) days from Publisher's receipt of Author's notice in order to exercise such rights, said notice not to be submitted to Publisher sooner than Publisher's acceptance of the manuscript for the Work. If Publisher does not exercise such option and the Author retains Audio Recording rights in the Work, the Author will not authorize publication of an audio recording of the Work earlier than Publisher's first publication.

~~If the Author has retained first serial rights in the Work, the Author will not license such rights without consulting Publisher to coordinate publication of the first serial and Publisher's edition of the Work. Author's inadvertent failure to so consult shall not be deemed a breach of this Agreement.~~

AG100094

If the Author disposes of Performance rights, Publisher shall grant the purchaser of those rights the privilege to publish excerpts and summaries of the Work in the aggregate not to exceed 7,500 words (or ten percent [10%] of the total Work, whichever is less), for advertising, publicizing and promoting such rights, provided, however, that the Author's grant shall require the purchaser to take all steps necessary to protect the copyright of the Work.  The Author will use best efforts to secure the agreement of the purchaser of Performance rights to grant Publisher the right to use photographic stills and the title of the performance in connection with any Publisher tie-in edition of the Work in any format.

**13.  Statements of Account.**  Publisher shall prepare a statement of account semi-annually as of the 31st day of March and the 30th day of September **immediately following publication and continuing after** for all six-month periods during which copies are sold, and shall send these statements, together with payment of the amount due, if any, within four (4) months following the end of the period.  The Author's share of amounts received from the disposition of licenses granted under this Agreement shall be computed after deduction of any foreign taxes withheld, bank charges and any of Publisher's sub-agent commissions.  If the Author has received any overpayment or is otherwise indebted to Publisher **(it being understood that an unearned advance is not a debt)**, Publisher may deduct the amount due from any sum due or to become due to the Author under this or any other agreement between the parties.

The Author shall have the right, upon reasonable written notice, to examine the books and records of Publisher as available insofar as they relate to the Work at Author's own expense, and provided that the examination is conducted during usual business hours and in accordance with customary accounting procedures, and occurs no more than once a year and not later than ~~two (2)~~ **three (3)** years from the Author's receipt of the statement in question, **it being understood that, in the course of such an audit, nothing herein shall prevent the Author from questioning errors in cumulative totals which may have occurred more than three (3) years from the Author's receipt of the statement in question but not more than the then-current statute of limitations.  If errors of accounting amounting to five percent (5%) or more of the total sums paid to the Author are found to the Author's disadvantage, the cost of such examination, but not to exceed the amount of the error, shall be paid by Publisher.**

**Upon the Author's written request, such written request to be made no more than once per royalty accounting period following Author's receipt of a royalty statement, Publisher agrees to supply the following information for the Work:  total number of copies printed, shipped, returned and held as a reserve against future returns, and an itemized listing of subsidiary rights receipts.  Publisher's failure to provide the Author with the above-mentioned information shall not be deemed a breach of this Agreement.**

**14.  Competitive Works.**  (i) The Author will not, without Publisher's prior written consent, publish or authorize publication by anyone other than Publisher of any text-based edition, adaptation, abridgment or condensation of the Work, or of any text-based derivative work (including, but not limited to, any dramatic play, screenplay, television script **[to the extent that the Author, using best efforts, controls rights to any such dramatic play, screen play, television script]**, novelization or photonovel) based on the Work or bearing ~~a like~~ **substantially** the same title **(prequels and sequels shall not be deemed derivative works)** (Nothing in this Subparagraph (i) shall prohibit the Author from disposing of **Performance rights);** ~~(ii) the Author shall not license or otherwise authorize the publication of any other English language edition of the Work in the Open Market earlier than the date of first publication of Publisher's initial edition of the Work in the same format (e.g., hardcover, trade paperback, mass market paperback or audio);~~ and (iii) the Author will not publish or authorize publication of any other novel by the Author within ~~six (6)~~ **three (3)** months of first publication of the Work.

**15.  Warranties and Indemnities.**  (a) The Author warrants and represents (i) that the Author is the sole author of the Work; that the Author has the full power to enter into this Agreement; that the Author is the sole owner of all rights granted to Publisher; that no material in the Work violates any contract of the Author express or implied; that the Author has not previously assigned, pledged or otherwise encumbered the Work; that no material in the Work discloses any information given to the Author in confidence or on the understanding that it would not be disclosed or published; and (ii) that except for any previously published or unpublished materials created by others and Related Materials for which permissions have been granted, the Work is original, has not been published before and is not in the public domain; that it does not contain any unlawful matter and that all information in the Work has been lawfully obtained; that the Work does not contain any libelous matter, does not invade any right of privacy nor infringe upon any trademark, right of publicity, statutory or common law copyright and that any recipe, formula or instruction contained in the Work is accurate and is not injurious to the user.

9

AG100095

(b) In the event of any asserted claim or legal proceeding ("Claims") based on an alleged violation of any of these warranties, Publisher shall have the right to defend the Claims by counsel of its own choosing. The Author shall indemnify Publisher and any seller or licensee of rights in the Work against any damages or losses incurred including any amounts paid in settlement, as well as against the cost of defending any Claims (collectively "Losses"). **The Author may retain the Author's own counsel at Author's sole expense to defend the Author's interests. No settlement of any Claim shall be made without the prior consent of the Author, such consent not to be unreasonably withheld or delayed. If the Author wishes to continue defending a Claim that Publisher wishes to settle, the Author shall post a bond (in an amount, form and content satisfactory to Publisher) securing Publisher, its licensees and sellers of the Work in question and its insurers against any and all costs and expenses in excess of the amount at which Publisher was willing to pay to settle such Claim including, without limitation, any attorneys' fees, judgments and penalties.**

(c) Publisher shall include the Author as an "insured" in any publishing liability insurance that is in effect and that is applicable to the Work (the "Policy"). Publisher shall look to the proceeds of that insurance, subject to the terms and conditions of the Policy (which may or may not include defense costs) for payment of Losses that may become due from the Author by reason of third party Claims alleging violations of the warranties in subparagraph 15(a)(ii) above. The parties agree that:

(i) the Author shall not be responsible for any premiums due under the Policy;

(ii) the Author shall be an insured only with respect to the Work which is the subject of this Agreement;

(iii) insurance coverage is for amounts in excess of the deductible but not greater than the Policy limits; and

(iv) the Author shall be responsible for the deductible in an amount equal to twenty percent (20%) of the total advance payable under this Agreement, provided, however that if a Claim is successfully defended, the Author's responsibility for the deductible will be 20% of the total advance payable under this Agreement or 50% of the defense costs, whichever is less.

(d) If any Claims are received by Publisher or the Author, the recipient shall promptly notify the other party. The Author and Publisher shall fully cooperate with each other in the defense of any Claims. Publisher may, in addition to any other remedies, withhold payments due the Author under this ~~or any other~~ Agreement ~~between the parties~~ to cover the Author's indemnity obligations under this Paragraph 15. **If a Claim does not result in the commencement of litigation within twelve (12) months following its initial assertion, Publisher will release to the Author all amounts which it has been withholding for that Claim, with the understanding that should such suit or proceeding subsequently commence, Publisher may again withhold payments pursuant to this Subparagraph 15(d).** The Author's failure to cooperate with Publisher in the defense of any Claims shall be deemed a breach of this Agreement and could result in the loss of the insurance coverage and shall entitle Publisher to terminate the liability limitations set forth in Paragraph 15(c)(iv). The Author's warranties and indemnities shall survive the termination of this Agreement.

16. **Original Work.** The Author shall retain an original copy of the Work and Publisher shall not be responsible for the loss of or damage to the Work or any materials supplied by the Author except in the event of Publisher's negligence. Publisher shall, upon the Author's written request, made within the first three (3) months after first publication of the Work, return the original Work and any original visual material supplied by the Author in its then "as-is" condition. Publisher shall not be required to retain the original Work or visual material after three (3) months and may dispose of the original manuscript and proofs after that time.

17. **Inserts, Back-of-Book Advertising.** No advertising shall appear in Publisher's editions of the Work except that, with respect to the hardcover edition of the Work, Publisher or its licensees may publish a listing of Author's other titles. With respect to the softcover, ~~electronic or audio~~ edition of the Work, Publisher or its licensees may publish their own **genre-related** "house ads," **subject to the Author's written approval, such approval not to be unreasonably withheld or delayed.** Other advertisements will not be inserted or printed in any edition of the Work without the Author's prior written consent, such consent not to be unreasonably withheld or delayed.

18. **Next Publication of Author's Work.** ~~The Work will be the Author's next published work (whether under the Author's own name or under a pseudonym or in collaboration with anyone else) and~~ The Author will not, prior to delivery of the complete manuscript of the Work, write or contract with any

10

AG100096

other publisher to write any other work for publication in book form **which would interfere with delivery of the manuscript for the Work to Publisher** without the written permission of Publisher.

**19.  Option.**  The Author grants Publisher the exclusive option to acquire the same rights as have been granted in this Agreement to the next full-length work of **middle-grade or young adult fiction to be** written by the Author.  Publisher shall be entitled to a period of sixty (60) days after submission of a **detailed proposal and three (3) sample chapters** for the next work in which to make an offer for that work, during which time the Author agrees not to solicit any third party offers, directly or indirectly.  If Publisher wishes to acquire the next work, the Author and Publisher will attempt to reach an agreement as to terms during a reasonable period of exclusive negotiation.  If they cannot reach an agreement, the Author shall be free to submit the next work elsewhere. ~~but the Author may not accept an offer from any other publisher on terms equal to or less favorable than those offered by Publisher.~~  Publisher shall not be required to consider the Author's next work until ~~publication~~ **ninety (90)** days following **Publisher's acceptance** of the Work which is the subject of this Agreement.  ~~The Publisher option shall also apply to the next book-length work by each party to this Agreement included in the term "Author", whether such manuscript is written alone or together with another co-author.~~

**20.  Remainders.**  At any time after one year of initial publication of the Work, if, in the opinion of Publisher, the continued sale of the Work is no longer profitable, Publisher may dispose of any copies remaining on hand as "remainders" at any price as it may see fit.  The royalty payable on all copies sold as "remainders" shall be ten percent (10%) of the amount received less manufacturing costs, not to exceed any other royalty rate specified in this Agreement and subject to Paragraph 11(t).  Publisher shall notify the Author before the Work is remaindered and shall offer the Author the opportunity to purchase copies of the Work at the remainder price; any inadvertent failure by Publisher to do so, however, shall not be deemed a breach of this Agreement.  **It is understood that any book club license shall require Publisher to approve of any remaindering of their copies of the Work and a notice shall be sent to the Author should Publisher approve of such remaindering.**

**21.  Out-of-Print.**  If, after the expiration of ~~three (3)~~ **two (2)** years from the date of Publisher's first publication of the Work, the Work is out-of-print, the Author may make written demand to Publisher to reissue or license rights in the Work.  Publisher shall notify the Author in writing within ninety (90) days after its receipt of a demand whether it intends to comply.  If Publisher does not respond or if, within six (6) months of its notice that it intends to comply, Publisher has not complied by reissuing the Work or entering into a sublicense for a new edition, then this Agreement shall terminate and all rights granted to Publisher shall revert to the Author.

Upon termination, the Author shall have the right for thirty (30) days to purchase the plates or film, if any, at one-fourth (¼) of the cost (including typesetting).  For the purposes of this paragraph, the Work shall be considered in print if it is available for sale in the United States in a full-length English language edition **and at least three hundred (300) units in the aggregate are sold in the two (2) consecutive accounting periods immediately prior to the Author's request for reversion of rights and the Work is listed in Publisher's reorder form or is listed in Publisher's customary reorder materials,** or if a contract for its publication **in the United States in a full-length English language edition** by a sublicensee of Publisher for publication within eighteen (18) months is **active** ~~outstanding~~.  **The existence of only a large-print edition and/or a Book Club edition will not deem the Work in print.**

**22.  Governing Law.**  Regardless of the place of its actual execution and performance, this Agreement shall be treated as though executed within the State of New York, and shall be governed by New York laws.  Any action or proceeding regarding this Agreement or the Work shall be brought solely in the New York courts (state or federal) in New York County.

**23.  Assignment.**  This Agreement, including the provision of Paragraph 24, is binding upon the assigns, heirs, executors or administrators of the Author and upon the successors and assigns of Publisher but no assignment shall be binding upon either of the parties without the written consent of the other, except that Publisher shall have the right to authorize or sublicense publication or use of the Work in the Territories **as provided elsewhere in this Agreement** to its parent or any subsidiary or affiliated company, or to any company which acquires all or substantially all of its business or the business of one of its divisions **and Author shall have the right to assign all sums of money due Author hereunder.** If there is more than one party constituting "the Author", each party shall be jointly and severally liable for the Author's obligations under this Agreement.

11

AG100097



24. <u>Agency.</u> The Author hereby irrevocably appoints ) as Author's agent (the "Agent") to act in all matters pertaining to or arising out of this Agreement and all other agreements licensing or otherwise dispersing of rights in the Work in any form or media ("Related Agreements"). All statements due the Author shall be delivered to the Agent whose receipt thereof shall constitute a good and valid discharge. In consideration for services rendered, the Author irrevocably assigns and transfers to the Agent the sum equal to fifteen percent (15%) of all monies due the Author under this Agreement and Related Agreements (plus any monies advanced to or disbursements made on behalf of the Author by the Agent). The provisions of this paragraph shall survive the termination of this Agreement.

25. <u>Reserved Rights.</u> All rights not expressly granted to Publisher pursuant to this Agreement are reserved to the Author, provided that the Author will neither exercise nor authorize others to exploit any of such reserved rights in a manner that will **substantially** impair the value of any of the rights granted to Publisher under this Agreement.

26. <u>Bankruptcy.</u> If a petition in bankruptcy shall be filed by or against Publisher or if it shall be adjudged insolvent by any court, or if a trustee or receiver of any property of Publisher shall be appointed in any suit or proceeding by or against Publisher, or if Publisher shall make an assignment for the benefit of any bankruptcy or insolvency act, or if Publisher shall liquidate its businesses for any cause whatsoever, this Agreement shall terminate automatically without notice and such termination shall be effective as of the date of filing of such petition, adjudication, appointment, assignment or declaration or commencement of reorganization or liquidation proceedings, and all rights granted under this Agreement shall revert to Author.

27. <u>Full Agreement.</u> This Agreement contains Paragraphs 1-27 which constitute the full understanding of the parties and supersedes all prior agreements, understandings and proposals whether written or oral. No modification of this Agreement shall be binding unless in writing and signed by all parties.

AUTHOR                          RANDOM HOUSE CHILDREN'S BOOKS,
                                a division of RANDOM HOUSE, INC.


By:_____


2

AG100098

AGREEMENT made in the City of Indianapolis, this ███ of ██████ 1954, between ████████████, of ████████████ hereinafter called the AUTHOR, and THE BOBBS-MERRILL COMPANY, INC., an Indiana corporation, of Indianapolis, Indiana, hereinafter called the PUBLISHERS.

In consideration of their mutual covenants the parties agree:

THE AUTHOR

1.   Warrants that she is the Author and sole owner of an original unpublished literary composition, at present entitled ████████████████, and of all rights appertaining thereto, and that said composition contains no matter libelous, scandalous, obscene or otherwise unlawful or injurious, or infringing upon any copyright or right of literary property, and that she will defend, indemnify and hold harmless the Publishers against all claims, demands and expenses which the Publishers may sustain or incur by reason of any claim that the literary composition contains any libelous or otherwise unlawful matter or infringes any copyright or violates any property right.

2.   Hereby assigns and transfers to the Publishers and their assigns all rights, except motion picture and dramatic rights, including radio and television dramatic rights, in said literary composition during the term of any copyright or renewals thereof.

3.   Agrees to pay the Publishers 10% of the net amount received from the sale or license of dramatic, motion picture, radio or television dramatic rights, in said literary composition within the calendar month following the receipt by the Author of the net cash from the sale or license.

4.   Agrees to read, revise, correct and promptly return all proof sheets, including all black-and-white proofs of illustrations, in such manner as will not delay the printer, and to pay, either in cash or, at the option of the Publishers, as a charge against royalties, the cost of alterations in type or in plates, required by the Author, other than those due to printer's errors, in excess of 10% of the cost of composition.

5.   Agrees to furnish to the Publishers jacket and endpaper drawings and five black-and-white drawings on or before May 1, 1954, and as many black-and-white drawings as may be necessary for full illustration of the work by July 1, 1954.  All publishing reproduction rights thereof shall be the property of the Publishers.  The drawings will remain the property of the Author.

THE PUBLISHERS AGREE

6.   To publish, advertise and sell said literary composition promptly at their own expense, and in style and manner as they deem best, in one volume in a trade edition at a retail price of approximately $2.75, and if in their opinion the demand justifies, to publish or endeavor to place for publication a popular edition at a retail price of not more than two-thirds the catalogue retail price; and to make an earnest effort to license or sell the other rights herein granted them.

7.   To pay the Author a royalty on the retail price of all copies they sell of the regular trade edition, less returns, as follows:

    10% on the first 12,500 copies they sell, and
    12½% on all copies they sell thereafter;

and 10% on the retail price of all copies they sell of popular editions they may publish; and one-half of the net cash received from the sale or license of any rights in said composition, including the rights granted to others to publish popular, foreign or subscription editions.

AG100099

8.   To pay the Author as an advance against and on account of all moneys accruing to her under this agreement:

████████████on the execution and delivery of this agreement.

9.   To furnish to the Author, within six months from the month of publication of the said book and regularly each six months thereafter, an exact and verified statement of all books sold and subject to royalty under this agreement, up to and including the last day of the next preceding calendar month, and to make full payment of all moneys due the Author within three months thereafter. Payment of the amount due the Author on any other account than royalties and the advance shall be made within the calendar month following the receipt by the Publishers of the net cash from the sale or license.

10.   To give the Author ten copies of the book free and to sell her further copies for personal use but not for resale at the rate at which they sell similar quantities to the general trade.

THE AUTHOR AND PUBLISHERS AGREE THAT

11.   The Publishers will copyright said book in the United States and Canada in the name of the Author. The Author will procure renewals thereof. In case of any infringement of copyright, the Publishers may in their discretion sue or employ such remedies as they deem expedient, and all such suits or proceedings shall be at the joint expense of Author and Publishers, and the net proceeds of any recovery shall be divided equally between them.

12.   Books sold for export at a reduced price or sold in quantities at special discounts of 50% or more from the retail price shall be subject to royalty on sums actually received instead of on the retail price, and books furnished complimentary and without charge either for the promotion of the sale of the work or otherwise or sold below the actual cost of manufacture shall be free from royalty. On copies of overstock which the Publishers deem it expedient to sell at remainder prices, i.e., at a discount of 70% or more from the catalogue retail price, the royalty to be paid by the Publishers shall be 10% of the sums actually received by them, except when these are sold at or below cost, in which case no royalty shall be paid.

13.   If the Publishers shall at any time give written notice to the Author that in their opinion the demand for the said work has ceased, or if at any time after the work has been out of print for four months the Publishers do not publish a new edition or arrange for a reprint edition within ninety days after the receipt of written notice from the Author, then and in either of those cases all rights conveyed under this agreement shall revert to the Author without prejudice to moneys due to her from the Publishers.  In the event of such written notice from the Publishers or of the Publishers' failure to print or have reprinted a new edition as provided above, the Author shall for thirty days have the option to buy any plates and the stock on hand, if any, at the cost of manufacture, and upon the failure of the Author to exercise this right by paying for the same in cash at the said time, the Publishers may dispose of them as they see fit. After such reversion of rights to the Author, however, the Publishers shall continue to participate, to the extent mentioned in this agreement, in moneys received under any sale or license of subsidiary rights made or granted previously by the Publishers. But the Publishers may not make any new sales or grant any new licenses thereof after the date of reversion.

14.   Where the Author has received on any statement an overpayment of royalties, the Publishers may deduct the amount of this overpayment from any further royalties or other moneys which may accrue to the Author whether on this book or other books of the Author published or which may be published by the Publishers.

AG100100

15. If the Author shall fail to deliver the subjects for the illustration of said literary composition by the dates named above, and thereafter should fail to deliver them within thirty days of written notice from the Publishers, the Publishers may at their option cancel this agreement and shall be entitled to recover from the Author any and all moneys advanced to her hereunder.

16. If the Publishers shall remain in default in the performance of any material provision of this agreement for thirty days after receiving written notice of such default from the Author, the Author may terminate this agreement by written notice.

17. The Publishers' agreements contained herein are contingent upon conditions of manufacture, production and distribution incident to and resulting from war, strikes, accidents, fires and other causes beyond their control.

IN WITNESS WHEREOF, the parties have executed this agreement and affixed their signatures hereto on the date first above mentioned.

IN THE PRESENCE OF:



As to

The Bobbs-Merrill Company, Inc.

As to B-M Co., Inc.

By _____
Chairman of the Board

AG100101

# PUBLISHING AGREEMENT

## Sunbelt Media, Inc.
## Eakin Press, Austin, Texas

AGREEMENT made this the ____ day of _____, 199 9 between Sunbelt Media, Inc., P.O. Box 90159, Austin, Texas 78709, hereinafter referred to as "the Publisher" and



hereinafter referred to, whether one or more and whether serving as author or editor as "the Author", and designated by the masculine singular pronoun, concerning a literary work provisionally entitled

(hereunto referred to as "the Work") .

The parties hereto agree as follows:

1. The Author hereby grants to the publisher and its successors, representatives and assigns during the full term of copyright of the Work these full, sole and exclusive rights.

(A) To publish and vend the Work in any form and in any language throughout the world, including the licensing of the Work in other countries according to the following provisions.

(B) To license publication of the Work (in complete, condensed or abridged versions, and in one or more editions) by book clubs.

(C) To license publication of a reprint of the Work by another publisher, either hardback or paperback.

(D) To license publication of the Work (in complete, condensed, adapted or abridged versions) or selections from the Work in anthologies and other publications, in mail order and schoolbook editions, as premium and other special editions and through microfilm, Xerox or other forms of copying.

(E) To license publication of the work in periodicals including scholarly journals, magazines, newspapers and digests prior to or following publication.

(F) To license adaptation of the Work for filmstrips, cassettes and other media.

(G) To license, without charge, transcription or publication of the Work in Braille or in other forms usable by the physically handicapped.

(H) For publicity purposes, to publish or permit others to publish or broadcast (but not dramatize) by radio or television, without charge, such selections from the Work as in the opinion of the Publisher may benefit its sale. Such selections shall not exceed 2500 words.

(I) To license the right to copy or use the work in any other medium, including motion pictures, film-television or live-television broadcast, radio broadcast, stage or other dramatization, including musical or dramatic productions.

(J) To use or license others to use regarding the Work only, the name and the likeness of the Author, the Work and the title of the Work, in whole or in part, or any adaptations thereof as a basis for trademarks, trade names or similar commercial use with any products or services jointly deemed worthwhile by Author and Publisher.

(K) To control any form of copying by any process now known, or yet to be discovered, for the storage, processing or retrieval of the Work.

AG100102

COPYRIGHT

2. The Author authorizes the Publisher to copyright the Work in the author's name in the United States of America.

3. The Author warrants to the Publisher that he is the rightful owner of all the rights granted to the Publisher; and that he has not previously assigned, pledged or otherwise encumbered same since securing the copyright and publishing rights now in effect; and that he has full power and authority to enter into this agreement.

The author further warrants and guarantees to the Publisher that the work has not heretofore been published in book form; that it is original except for such portions thereof as may have been taken from other works with necessary and customary permission or prepared by others as part of the Work on a work-made-for-hire basis; that it contains no matter that is in violation of the literary property, by copyright or otherwise, of any person or that is scandalous, libelous, in violation of any right of privacy or otherwise in contravention of law; and that any recipe, formula or instruction contained in the work is not injurious to the user.

The Author agrees to hold harmless and defend the Publisher from all manner of claims that the work contains any such unlawful matter and to indemnify the Publisher against liability under any final judgment based upon the publication and sale of the Work, including without limitation all expenses, court costs and reasonable attorneys' fees.

The Author further agrees to divide equally with the Publisher the expenses of any suit the Publisher may bring against any other party for infringement of copyright or violation of any other property right, and shall receive one-half (1/2) of any damages of profits, less attorney's fees and disbursements, that may be recovered in any such suit; or the Author may, at his option, decline to participate in the risks and proceeds of any such suit, leaving both open to the Publisher. And all lawsuits that shall be filed, shall be by mutual agreement of both Publisher and Author.

4. The Author agrees to deliver to the Publisher on or before █████████ 1999 a double-spaced, typewritten manuscript (either the ribbon copy or a reproduction equal in clarity and permanence) acceptable to the Publisher in form and content. Said manuscript shall consist of approximately █████████ words, together with all photographs, drawings, charts, maps, illustrations, preface, table of contents and index which the Publisher shall request the Author to furnish, and together with all necessary permissions and work-made-for-hire releases mentioned in Section 3 of this agreement. The Author shall be charged for the reasonable cost to the Publisher of providing any such material which he fails or is unable to furnish if and when so requested by the Publisher.

If, in the judgment of the Publisher, the manuscript is not delivered properly prepared for composition, the Author shall have the option of preparing it properly or commissioning the Publisher to do so at the Author's expense.

If the Author should fail to make delivery as agreed, the Publisher shall be released from all obligations under this agreement, unless he notifies the Author in writing of his willingness to postpone the delivery date. In any event, the Author shall not be free to submit the Work elsewhere until he has resubmitted to the Publisher under the terms of this agreement on or before a date agreed upon by both parties. If the Author fails to submit to the Publisher an acceptable manuscript under the terms and conditions set forth herein, the Publisher may terminate this agreement by giving written notice, whereupon the Author will repay forthwith all amounts which may have been advanced hereunder.

The Publisher shall furnish an editor or editors to help Author develop the manuscript in a professional way. The expense of the editing shall he provided by the Publisher at no cost to the Author. The Author hereby authorizes the Publisher to edit the work for style, usage and felicity in accordance with its usual practice.

The Author will retain a copy of all manuscript, tapescript or filmscript materials and will read and correct all proofs within a reasonable length of time as designated by the Publisher.

AG100103

Author's alterations: Alterations to the manuscript by the Author shall be permitted prior to typesetting on approval of the Publisher. Minor alterations maybe made by the Author on the first galleys but the cost shall be charged against the Author's royalties. The Publisher shall reserve the right to deny alterations on second or final galleys, but if approval is granted to the Author, the cost shall also be charged against royalties.

COMPETITION
5. During the term of this agreement the Author will not publish or authorize the publication of any abridged or other edition of the Work or any book of a similar content or character that might adversely affect the sale of the Work.

6. NEW EDITION -- The Author agrees, if in the opinion of the Publisher any revised edition of the Work is necessary, to make all required changes and additions within a reasonable length of time after notice from the Publisher, and if for any reason he fails to do so, the Publisher may arrange for a competent person to do so, the cost being charged to the Author's royalty account hereunder. The Author also agrees that any increase in the length of a revised edition or any increase in the amount required to illustrate a revised edition of the Work must be approved in advance by the Publisher.

AGREEMENT TO PUBLISH
7. The publisher shall publish the Work within a reasonable length of time after receipt of a satisfactory manuscript and ancillary materials, if any, and following approval of the Publisher's editorial council. The Publisher agrees to publish the Work at its own expense (unless otherwise specifically stated in this agreement) and in such style or styles and at such price or prices as it shall consider most appropriate to promote the sale of the Work.
Author's copies: The publisher shall furnish upon publication to the Author, free of charge, ten (10) copies of the Work. The Author shall have the right to purchase the book at a discount of forty percent (40%) off the regular retail price as long as the book is in print. Royalty shall not be paid on books purchased by the author.

CUSTODY OF MANUSCRIPT
8. The Publisher shall exercise the same care of the manuscript, along with all illustrative and ancillary
materials, as if it were the Publisher's own property. However, the Publisher shall not be responsible for loss or damage to any property of the Author in its possession or in the possession of its independent contractors, or in possession of anyone else to whom delivery is made by the Publisher in the due course of its operations. If special insurance is needed for any unusually valuable illustration or other item, the Publisher will arrange for same at the expense of the Author.

ROYALTIES
9. The Publisher shall pay to the Author royalties according to the following schedule:
        (A) On all clothbound copies actually sold throughout the United States of America and Canada:
        Ten (10) percent on the first 3,000 copies sold.
        Twelve (12) percent on the next 2,000 copies sold.
        Fifteen (15) percent on all sales in excess of 5,000.
All royalties are based on actual cash receipts, that is, retail price less all discounts.
        (B) Royalties on paperback editions actually sold throughout the United States of America and Canada shall be ten (10) percent of the first 5,000 copies sold and twelve (12) percent on sales above 5,000.
        (C) On all sales of ancillary materials specified in Paragraph 4 (except teachers' manuals furnished gratis) the Publisher shall pay to the Author royalties at the rate of 50% of the net proceeds (i.e., cash receipts) of sale received by the Publisher.
        (D) On bound copies of the regular editions of the Work sold outside the United States

AG100104

of America under the Publisher's imprint or that of any subsidiary affiliate or under the imprint of another publisher, on unbound sheets of the regular editions of the work sold for binding by others and on sales to additional markets made outside of regular channels by means of direct mail circularization or coupon advertisements in newspapers and periodicals at the Publisher's expense, the Publisher shall pay to the Author royalty at one-half (1/2) the rate specified in subparagraph A above.

(E) On copies damaged or destroyed, given to the Author or distributed gratis to teachers or others without payment in order to promote the sale of the Work, no royalty shall be paid.

(F) FOREIGN RIGHTS--On the sale of foreign rights (including without limitation translation rights) to the Work, the Publisher shall pay to the Author, in lieu of royalty, one-half (1/2) of the net proceeds received from such sale or sales.

SUBSIDIARY RIGHTS

(G) On the sale or licensing of so-called subsidiary rights (including without limitations digest,
abridgement, selection, radio or television broadcast, dramatization, mechanical, visual, the Publisher shall pay
to the Author, in lieu of royalties, fifty percent (50%) of the net amount received; provided, however, that in order to promote the sale of the Work, the Publisher may, or authorize others to, publish, dramatize, broadcast, televise, reproduce or record such portions of the Work as the Publisher may deem advisable without royalty or other payment to the Publisher or Author. See subparagraphs B through K of Paragraph 1 of this agreement.

On the sale or licensing of motion picture rights, the publisher shall pay to the author, in lieu of royalties, fifty percent (50%) of the net amount received.

REMAINDERS

(H) If, at any time after the date of the first publication of the Work, the Publisher shall have on hand unsold or unreturned copies of the Work which are not saleable on the usual terms, it may remainder such copies and if sold at, or less than, ten percent (10%) above production costs, no royalty shall be paid. In the event that, at the discretion of the Publisher, sales are made at discounts of fifty percent (50%) or more from the retail price, but more than ten percent (10%) above production cost, royalty shall be payable at one-half (1/2) the rate specified in subparagraph A above.

SPECIAL EDITIONS

(I) On the sale of a trade edition (if any) of the Work at a discount of fifty percent (50%) or more from the established price, or of a so-called book club edition, royalty shall be payable at one-half (1/2) of the rate specified in subparagraph A.

TERMINATION AND REVERSION OF RIGHTS

10. The publisher agrees to keep the Work in print as long as he deems it economically feasible. The book shall be "out-of-print" at such time as the Publisher no longer has copies for sale and does not list the book in his regular catalogue. All publication rights to the book shall revert to the Author at his written request after a period of six months from the date the book is taken out-of-print. The Author has no rights to boards or negatives or other means of reproducing the book, but if such are available he may purchase them from the Publisher at Publisher's original cost. PUBLISHER SHALL NOTIFY AUTHOR INNEDIATELY AFTER THE BOOK IS TAKEN OUT-OF-PRINT.

ROYALTY SETTLEMENTS

11. The Publisher shall compute royalty statements of accounts for the periods of January 1 through June 30 and July 1 through December 31 of each calendar year and make settlements in cash in March and September of each calendar year. The first royalty accounting and payments shall be made on the first semi-annual report period which falls after six months following publication of the

AG100105

Work. Whenever sales of the Work fall below twenty-five (25) copies in any given period, no accounting shall be made until the next semi-annual statement.

In any case where the Work has not earned the amount of royalties advanced or the Author has received overpayment of royalties or is otherwise indebted to the Publisher, the Publisher may deduct the sum of such unearned royalties, overpayments or other indebtedness from any sum then or thereafter due the Author from the Publisher. No accounting shall be made if the Author has outstanding invoices of more than sixty days duration.

Any sum which the Publisher shall have paid to the Author prior to the acceptance of the final manuscript (and other materials specified in Paragraph 4) for the Work shall be returned to the Publisher promptly if the Publisher determines that such manuscript or other materials is or are not satisfactory in form and content and returns such manuscript and ancillary materials (if any) to the Author together with written notice of the unsatisfactory condition of such manuscript and/or ancillary materials.

NOTICE AND DEMANDS

12. Any notice, request or demand required or permitted to be given hereunder by either party shall be in writing and shall be deemed to have been duly given when mailed, certified or registered mail, postage prepaid, addressed to the respective parties at the following addresses or at such other addresses as either of them may have designated to the other for such purpose:

        Publisher:    Sunbelt Media, Inc.
                      P.O. Drawer 90159
                      Austin, Texas 78709

        Author:



ASSIGNMENT

13. The Publisher may assign this agreement or any interest thereof. The Author may assign his right to receive any amounts payable to him hereunder but no such assignment by the Author shall be deemed valid as against the Publisher unless and until the Publisher shall have received due notice thereof.

Subject to the foregoing, this agreement shall be binding upon and inure to the benefits of the parties hereto, the heirs and personal representatives of the Author, and the successors and assigns of the Publisher and, unless earlier terminated as provided in Paragraph 10, shall continue during the full term of the copyright of the Work.

14. Any dispute or controversy arising under this agreement shall be submitted to arbitration in the City of Austin, Texas, in accordance with the rules then obtaining of the American Arbitration Association. The decision of the arbitrators shall be conclusive on the parties hereto, and their award may be made a rule of court and a judgment or decree entered thereon in any court having jurisdiction.

15. This agreement has been executed within the State of Texas and shall be governed by and construed in accordance with the laws and statutes thereof.

16. The division headings above are for convenience only and do not form a part of this agreement. Finally, there is no other understanding except as contained in this agreement.

IN WITNESS WHEREOF the parties hereto have duly executed this agreement as of the day and year aforementioned.

AG100106

SUNBELT MEDIA, INC.
In the presence of:

_____          _____
Author                                      Publisher

_____          _____
Witness                                      Witness

_____
Date of Birth

_____
Social Security Number

_____

AG100107



AGREEMENT dated as of the ▓▓▓ day of ▓▓▓▓▓ 19 60

between ▓▓▓▓▓▓▓▓▓▓▓▓▓

whose residence address is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

who is a citizen of **the United States of America**, hereinafter called the "Author" and HENRY Z. WALCK, INC., 101 Fifth Avenue, New York, New York 3, New York, a New York corporation, hereinafter called the "Publisher," with respect to the work tentatively entitled ▓▓▓▓▓▓▓▓

hereinafter called the "Work."

1. *AUTHOR'S GRANT.* The Author hereby grants and assigns to the Publisher during the full term of copyright and all renewals thereof book publication rights in the Work and the rights hereinafter specifically referred to in this Agreement, throughout the United States of America, its territories and possessions, the Republic of the Philippines, the Dominion of Canada, and **elsewhere**

2. *COPYRIGHT.* The Publisher shall have exclusive right to take out copyrights in the Work in the name of the **author** in the United States of America and such other countries as it may deem expedient; and the Author agrees to take or cause to be taken, as provided by law, all necessary steps to effect renewals of the copyright in the Work on the expiration of the term thereof and to grant and assign the same or the rights under the same to the Publisher. In case the copyright is in the name of the Author, the Author hereby grants to the Publisher the right to bring, in the name of the Author, any action or proceeding for the enjoining of any infringement of the copyright in the Work and for any damages resulting therefrom, and all rights under said copyright and all renewals thereof subject to the terms of this Agreement.

3. *MANUSCRIPT.* The Author agrees to deliver to the Publisher not later than ▓▓▓▓▓▓▓ 1961 which date may be extended in writing by mutual consent, two copies of a legibly typewritten manuscript of the Work in form and content satisfactory to the Publisher and ready for the printer.

   If, in the opinion of the Publisher, the manuscript is not properly prepared for publication, the Author shall have the option of revising it to the Publisher's satisfaction or of commissioning the Publisher to have it properly prepared or revised at the Author's expense. Unless otherwise mutually agreed, the Publisher shall make the manuscript of the Work conform to its standard style in punctuation, spelling, capitalization, and usage. If the Author fails to supply an index if required and all necessary illustrative or other special material, it is agreed that the Publisher shall have such material supplied at the Author's expense. If the Author fails to deliver the manuscript to the Publisher as agreed, the Publisher shall have the right to rescind this Agreement by written notice to the Author, and the Author shall thereupon repay to the Publisher any and all amounts theretofore received by the Author in connection with the Work.

4. *ROYALTIES.* The Publisher agrees to pay the Author, subject to the provisions of the succeeding paragraphs of the Agreement:

   (a) On regular sales in the United States **10% of the published price. An advance of**  **is to be paid as follows:** ▓▓▓▓▓▓▓ **upon signing of contract;** ▓▓▓▓▓▓▓ **upon delivery of completed material.**

   No royalty shall be paid on free copies furnished to the Author or on copies used for review, sample, or other similar purposes, or on copies accidentally damaged or destroyed, or on copies returned.

   (b) On all copies of the Publisher's regular edition sold for export in unbound sheets or in bound form a royalty of one-half the then prevailing rate of royalty on regular sales in the United States.

   (c) On sales of a special edition at a reduced price, or on sales of the regular edition at reduced prices for special use, or when, in the opinion of the Publisher, the remunerative sale of the regular edition has ceased, a royalty of 10% of the gross price obtained; but if the Publisher shall sell copies of the Work at less than manufacturing cost (which it shall not do prior to one year after publication of the Work) no royalty shall be payable to the Author on such sales.

(d) In order to keep the Work in print as long as possible, on all copies sold from printings undertaken after sales of the Work have fallen to 500 copies or less per year, one-half the then prevailing rate of royalty.

(e) On sales of reprints or inexpensive editions and book club editions a royalty of 50% of the Publisher's net receipts from the reprint publisher or the book club.

5. SUBSIDIARY RIGHTS (1). The Author hereby grants to the Publisher the exclusive right to license a foreign publisher to print and publish his own edition of the work in the English language and to license motion picture, dramatization, radio, television, and first serialization rights, and agrees that the net proceeds from such subsidiary rights shall be divided 75% to the Author and 25% to the Publishers.

6. SUBSIDIARY RIGHTS (2). The Author hereby grants to the Publisher the exclusive right to license all other subsidiary rights and agrees that the net proceeds received from the license of such subsidiary rights shall be divided equally between Author and Publisher. The Publisher may, without compensation to the Author or itself, publish or permit others to publish such selections from said Work as it may deem proper to benefit its sale.

7. ACCOUNTING. The Publisher agrees to render semiannual statements of account with respect to the Work as of the 31st day of March and the 30th day of September in each year following the publication of the Work and shall deliver the same to the Author on or before the 1st day of July and the 2nd day of January following with payment of the amount due.

8. AUTHOR'S GUARANTEE. The Author covenants and agrees that said Work has not heretofore been published, that it is innocent and contains no matter which, if published, will be libelous or otherwise injurious, or which will infringe upon any proprietary right at common law or any statutory copyright; that said Work is original and that he is the sole author and proprietor thereof and has full power to make this agreement and grant; and that he will hold harmless and defend the Publishers against any suit, claim, demand, or recovery, by reason of any violation or proprietary right or copyright, or any injurious or libelous matter in said Work, actual or claimed.

9. PERMISSIONS. The Author agrees to secure at his own expense the necessary permission to reprint in the Work excerpts of any material included that is under copyright, or is subject to any proprietary or other right of others, and to transmit such permissions in writing to the Publisher with the final manuscript.

10. PROOF. The Author agrees to read, revise, and correct and return to the Publisher all galley and page proofs of the Work within a reasonable time. If the Author makes alterations in such galley or page proof, other than corrections of printer's errors, then the expense thereof in excess of 10% of the cost of original composition shall be charged against any sums accruing to the Author under this agreement. In this event the Publisher shall mail to the Author an invoice for said excess alterations promptly after receipt of the printer's bill for the same, which invoice shall be subject to review for a period of not more than thirty days after such mailing thereof, and both the Author and Publisher shall be bound by the amount of the printer's bill.

11. SIMILAR PROJECT. The Author agrees that he will not during the continuance of this Agreement without first obtaining the written consent of the Publisher, write, print, publish, or cause to be written, printed, or published, any revised, corrected, enlarged, or abridged version of the Work, or in any way become interested in any such version or in any book of a character that might interfere with or reduce the sales of the Work covered or contemplated by this Agreement.

12. PUBLICATION. The Publisher agrees to publish the Work at its own expense. All details as to the manner of publication, production, and promotion, including the number and destination of free copies, shall be left to the sole discretion of the Publisher.

13. AUTHOR'S COPIES. The Publisher agrees to furnish the Author with six free copies of the Work and to permit the Author to purchase a reasonable number of additional copies for his own use but not for resale at the discount of 40% from the retail price. Charge for such copies will be made against the Author's royalty accounts provided there is a credit balance in such accounts. If not, and if the Publisher requests, the payment for the invoice shall be made 30 days from the date thereof.

AG100109

14. *REVISION.* If, in the opinion of the Publisher, the Work needs revision at any time during the term of this agreement, the Author, without charge therefore, shall revise the Work or supply such new matter as in the judgment of the Publisher may be needed to keep the Work up to date. If for any reason the Author does not revise the Work or supply the new matter required after a reasonable opportunity has been given him to do so, the Publisher may cause such revision to be made or such new matter supplied and may deduct the expense thereof from the royalties first accruing from the sales of such revised edition. In the event of the publication of an abridged, expanded, or revised edition necessitating the resetting of 20% or more of the Work, such revision shall be considered a new Work and this Agreement shall be automatically renewed on the same terms as for the original edition.

15. *TERMINATION.* It is understood and agreed that, should the Publisher find itself with an overstock of the Work and in its judgment the demand for the Work would not exhaust the stock in a reasonable time, it shall have the right, after first giving the Author an opportunity to purchase the overstock at actual cost of manufacture, to dispose of such copies as are on hand as it sees fit, subject to royalties herein before specified. If at any time after the expiration of two years from the date of publication, the demand for the Work shall not, in the opinion of the Publisher, be sufficient to render its further publication profitable, then the Publisher may cancel this Agreement, giving the Author three months written notice thereof; or if the said Work be out of print and the Publisher does not bring out a new edition within six months after having received written notice from the Author or his agents to do so, then all rights under this Agreement shall revert to the Author without notice or further procedure. In either event, the Author shall have the right for 30 days thereafter to purchase the plates, if available, of the Work at one-third the manufacturing cost, including composition, and any remaining copies or sheets at the manufacturing cost thereof, exclusive of overhead, in default of which the Publisher may dispose of the plates and the stock as it sees fit, without prejudice to royalties due the Author, as elsewhere provided herein. If the Work is on option for publication within two years from date of the demand herein above referred to, or under contract for publication, or on sale in reprint or inexpensive edition, it shall be considered in print. In the event of any termination of this Agreement as herein provided, the respective rights of the parties hereto, accrued to the date of termination, shall not be affected thereby but shall survive such termination, and rights accrued or to accrue under any license or sale made prior to such termination, shall not be affected by such termination.

16. *ASSIGNMENT.* No assignment of this Agreement shall be binding upon either of the parties hereto without the written consent of the other; provided, however, that the Author may assign or transfer any monies due or to become due under this Agreement upon giving to the Publisher written notice of such assignment.

17. *SUCCESSORS.* The provisions of this Agreement shall be binding upon the Author and his legal representatives, successors and assigns, and upon the Publisher and its successors and assigns.

18. *NOTICES.* Any notice required under any of the provisions of this Agreement shall be in writing and deemed to have been properly served by delivery in person or by mailing to the party sought to be charged at its address set forth above or at such other address as may have been furnished in writing to the other party.

19. *INTERPRETATION.* This Agreement shall be construed in accordance with the laws of the State of New York.

20. *OPTION.* The Author grants to the Publisher the option to publish his next two books on substantially the same terms as the terms of this Agreement.

21. *SUPPLEMENTARY PARAGRAPHS.* Paragraphs                          , annexed hereto, are hereby incorporated herein by reference.

WITNESS TO SIGNATURE OF AUTHOR OR PROPRIETOR:       AUTHOR OR PROPRIETOR

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

WITNESS TO SIGNATURE OF PUBLISHER:       HENRY Z. WALCK, INC.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .       By. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                                                           PRESIDENT

AG100110

**AGREEMENT** made as of                        by and between
▆▆▆▆▆▆, whose address is ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

(the "Author"), and FARRAR, STRAUS AND GIROUX, LLC, 18 West 18th Street, New York, NY 10011, (the "Publisher").

The Author and the Publisher agree together as follows:

*The Grant*

    1. (a)  This agreement relates to the ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ now provisionally entitled

    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

(the "work").  (hereinafter the words "work" and "manuscript" shall be understood to mean "artwork" unless otherwise specified herein). ~~The anticipated length of the work is approximately~~ ~~_____ words.~~

    (b)  The Author hereby grants and assigns to the Publisher, during the full terms of copyright and all renewals and extensions thereof the sole and exclusive rights to publish, print or otherwise reproduce, distribute and sell the work in printed book form and audio form in the English language and to exercise or license the other rights described in Clause 5 **throughout the world.**

    (c)  If the Publisher is not granted worldwide English language book publication rights in the work by this agreement, and if, at the time of U.S. publication, a U.K. edition has not been published or shipped, the Publisher will have the non-exclusive right to ship its edition of the work into Australia or any other country whose copyright laws require publication or distribution of a work within a specific period of time from the original publication in order to secure or maintain full copyright protection. The royalty provisions of subdivision (iv) of Clause 4(a) shall apply to any such shipment or distribution.

*Publication*

    2. (a)  The Publisher agrees to publish a printed book edition of the work at its own expense in such style and manner as it shall deem best suited to its sale and at such price as it deems suitable, it being understood that the extent and manner of publicity, promotion and advertising, the printing quantities, format, imprint, the number and destination of free copies, and each and every detail as to manufacture, publication, distribution and sale shall be in the exclusive control and at the sole discretion of the Publisher. The Publisher further agrees that the publication of the work will be within twenty-four (24) months from the date of acceptance by it of the final **manuscript text and artwork** thereof and of all photographs, drawings, charts, indexes, and/or other materials provided for in Clause 7 of this agreement; but this deadline will be extended to cover delays resulting from natural disasters, unavailability of materials or supplies, difficulties in obtaining press time, serialization, or other causes of any nature beyond the reasonable control of the Publisher or caused by the Author.  If the Publisher fails to publish the work by the time provided above and such failure persists for six (6) months after the receipt by the Publisher of a written demand that the Publisher publish the work, sent by the Author by certified or registered mail, return receipt requested, then the Author may terminate this agreement by written notice of termination sent by the Author by certified or registered mail, return receipt requested, and received by the Publisher prior to commencement of printing.  In the case of such a termination, the Author shall retain any advances already paid under this agreement in complete and full discharge of the Publisher's obligations under this agreement.  No other claims, damages or remedies of any kind or nature shall be available to the Author for the Publisher's failure or refusal to publish (including, but not limited to, a failure or refusal to perform any duty owed to the Author that results in a failure of publication) under any circumstances.

    (b)  Should the Publisher or any licensee of the Publisher publish an audiorecording or electronic edition of the work, it shall do so at its own expense in such style and manner as it shall deem best suited to its sale and at such price as it deems suitable, it being understood that the extent and manner of advertising, promotion and publicity, quantities produced, format, media, imprint, manufacturing quantities, the number and destination of free copies, and each and every detail as to manufacture, publication, distribution and sale shall be in the exclusive control and at the sole discretion of the Publisher and/or the licensee.

*Advance*

    3.  The Publisher agrees to pay to the Author, or the authorized representatives of the Author, as an advance against and on account of all monies accruing to the Author under this agreement, the sum of ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ payable ▆▆▆▆▆▆▆▆▆▆▆▆▆ on the signing of this agreement and ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ on the delivery and acceptance of the complete and final artwork for the work.

FARRAR, STRAUS AND GIROUX, LLC

1

*Royalties*  4. (a)  The Author will earn the following royalty on every copy of each of the Publisher's printed book editions of the work sold by the Publisher, less returns:

(i) Except as provided in subdivisions (iii) through (vi) below, for a hardcover edition: **five percent (5%) of the list price on the first twenty-five thousand (25,000) copies sold and six and one-quarter percent (6¼%) of the list price on all copies sold thereafter;**

(Copies covered by subdivision (iv), (v) or (vi) of this Clause 4(a) shall not be included in the computation of the number of copies sold.)

(ii) Except as provided in subdivisions (iii) through (vi) below, for a paperback edition: **three percent (3%) of the list price on the first one hundred thousand (100,000) copies sold and three and one-half percent (3½%) of the list price on all copies sold thereafter.**

(Copies covered by subdivision (iv), (v) or (vi) of this Clause 4(a) shall not be included in the computation of the number of copies sold.)

(iii) One half (½) of the royalty stated in subdivisions (i) or (ii) above on all copies sold from a reprinting of five thousand (5,000) copies or less, made after twelve (12) months from the date of first publication, provided that the regular sales in the six-month royalty period immediately preceding such a reprinting do not exceed five hundred (500) copies; this reduced royalty is provided because of the increased cost of manufacture of small reprints, to enable the Publisher to keep the work in print and in circulation as long as possible.

(See Clause 28)  (iv) Ten percent (10%) of the amount received by the Publisher in the case of a hardcover edition and five percent (5%) of the amount received by the Publisher in the case of a paperback edition for copies sold outside the United States or for export, and for all unbound sheets of the work sold.

(See Clause 28)  (v) Five percent (5%) of the list price on all copies sold directly to the consumer, whether by direct mail, through coupon advertising or otherwise.

(See Clause 28)  (vi) In the case of a hardcover edition, on copies sold at a discount of fifty-two percent (52%) or more from the list price, ten percent (10%) of the amount received by the Publisher; in the case of a paperback edition, on copies sold at a discount of fifty-five percent (55%) or more from the list price, five percent (5%) of the amount received by the Publisher.

(See Clause 28)  (b)  The Author will earn the following royalty on the amount received by the Publisher on every copy of an audiorecording of the work sold by the Publisher, less returns: **eight percent (8%).**

(See Clause 28)  (c)  The Author will earn the following royalty on each copy of each electronic edition of the work sold by the Publisher: **fifteen percent (15%) of the list price of the electronic edition.**

(d)  Notwithstanding anything in Clauses 4(a) through (c) above:  sales made at a loss, such as damaged and imperfect copies sold for clearance, copies sold below or near the cost of production, or salesmen's samples, editorial review copies, or copies otherwise used to promote the sale of the work, or given or sold to the Author, shall not be subject to payment of royalties.  Copies of overstock which the Publisher deems it expedient to sell at a discount of sixty percent (60%) or more from the original list price shall not be subject to payment of royalties.  As used in this agreement: the sale of a copy of an electronic edition of the work means the sale of a CD-ROM or other physical media containing a copy of the work in electronic form or the transmission or authorization, for a fee, of downloading of or access to a copy of the work or portion thereof electronically for reading by means of a computer, hand held device and/or other electronic media (with or without authorization to print all or a portion of the work from the electronic file transmitted, downloaded or accessed); and the sale of a copy of an audiorecording of the work means the sale of a tape, disc, CD-ROM or other physical media containing a copy of the work or the transmission or authorization, for a fee, of downloading of or access to a copy of the audiorecording or portion thereof electronically for listening by means of a computer, audio device and/or other electronic media. If a U.S. affiliate of the Publisher publishes an audio edition of the work, its edition will be treated as the Publisher's (and sales by the affiliate will be treated as sales by the Publisher) for the purposes of this agreement.

*Subsidiary*  5.  The Publisher and its licensees shall have the exclusive right to lease the plates, films and/or
*Rights*  master audio recording of the work to others.  The following rights are included in the rights granted to the Publisher in Clause 1(b) and the Author will earn the stated percentage of the amount received by the Publisher from the license by the Publisher of those rights:

(See Clause 28)  (a)  *Book Club Rights.*  The right to publish an edition or editions of the work in the English language in any book form by a book club, **fifty percent (50%) to the Author.**

FARRAR, STRAUS AND GIROUX, LLC
2



(See Clause 28)    (b) _Reprint Rights._ The right to publish any edition or editions of the work in the English language in any book form by another publisher in the United States and/or Canada, **fifty percent (50%)** to the Author.

(c) _Publication Outside the U.S. and Canada._ Rights granted to publishers in England or elsewhere outside the United States and Canada to publish an edition or editions of the work in the English language outside of the United States, together with any other rights granted to the Publisher by this agreement, on a royalty basis or for an outright sum, **eighty percent (80%)** to the Author.

(d) _Translation Rights._ The right to translate the work into languages other than English and the right to publish translations, in whole or in part, throughout the world, in book form, in periodicals or in any other form in which the Publisher is granted English language rights by this agreement, on a royalty basis or for an outright sum, **seventy-five percent (75%)** to the Author.

(e) _First Serial._ The right to publish all or any part of the work in the English language, in one or more installments, in magazines, newspapers and other periodicals before the work is first available for sale in book form (including the right to create condensed, adapted and abridged versions of the work for such purposes), **ninety percent (90%)** to the Author.

(f) _Second Serial, Permissions and Other Print Rights._ The right to publish all or any part of the work in the English language, in one or more installments, in magazines, newspapers or other periodicals on or after the day when the work is first available for sale in book form, reproduction of the work, in whole or in part or as excerpts or digests, in anthologies and in other printed works (including the right to create condensed, adapted and abridged versions of the work for such purposes) and print and electronic text permissions, **fifty percent (50%)** to the Author.

(See Clause 28)    (g) _Audio Rights._ The right to create, publish, distribute, sell and otherwise use sound recordings of non-dramatic readings of the work (an "audiorecording of the work"), whether in the form of tapes, discs or using electronic media, **fifty percent (50%)** to the Author.

(h) _Non-Dramatic Readings._ Non-dramatic public readings of the work (including, but not limited to, non-dramatic readings broadcast or transmitted by television or other electronic media, whether live or pre-recorded) with the right to accompany the readings with display of text and/or artwork from the work, **fifty percent (50%)** to the Author.

(i) _Microfilm Rights._ The right to use all or any portion of the work in the English language on microfilm, microfiche, image processing and other technologies now known or hereafter devised for storage, display and printing of images of the printed page, **fifty percent (50%)** to the Author.

(j) _E-Text Rights._ The right to use all or any portion of the English language text of the work, as well as any artwork included in the work, in electronic media, and to create, and to use in electronic media, abridged, adapted and condensed versions of the English language text of the work, **fifty percent (50%)** to the Author.

(k) _Multimedia Rights._ The right to create, and to use in electronic media, works in any language based on the work, including the right to create, and to incorporate into those works, artwork, text, sounds and other matter taken or derived from the work or from the plot, characters, fanciful places, situations, ideas and events in the work, as well as the right to incorporate into those works any artwork, text, sounds and/or other matter not taken or derived from the work, (provided, however, that if dramatic rights are not also granted to the Publisher by this agreement, the right to create and use dramatic versions of the work in electronic media is expressly excluded), **fifty percent (50%)** to the Author.

(l) _Dramatic Rights._ Dramatic and performing rights in the work (including, but not limited to, stage, radio, television, motion picture and any other technologies now known or hereafter devised and the right to set material from the work to music) throughout the world, **ninety percent (90%)** to the Author.

(See Clause 28)    (m) ~~_Merchandising Rights._ Exploitation of commercial and/or merchandising rights in the work, fifty percent (50%) to the Author.~~

(n) _Braille Editions._ Publication of the work in Braille, or photographing, recording, and microfilming the work for the physically handicapped. Should any amount be received, the Author will earn fifty percent (50%).

As used in this agreement: (1) "electronic media" means all electronic, magnetic, digital, optical, laser-based and other media, devices and systems for the storage, display, retrieval, publication, distribution and/or transmission of text, data, images and/or other information in any electronic form, whether now known or hereafter devised, including, without limitation, disk, CD-ROM, CDi, electronic book readers, integrated circuit card or chip, and on-line computer network, service or database or Internet or satellite-based transmission; (2) "use" includes, without limitation, create copies or otherwise reproduce, publish,

FARRAR, STRAUS AND GIROUX, LLC

3

distribute, sell, transmit, display, upload, download and broadcast; (3) "periodicals" includes both print and electronic media editions of periodicals; and (4) "artwork" means photographs, illustrations, paintings and other images (whether created by hand or through use of a camera, computer or other device now known or hereafter devised). If some of the rights granted to the Publisher with respect to electronic media are not granted to it on a worldwide basis, it may nevertheless exercise or authorize its licensees to exercise the rights granted, from or within the territory granted, on any on-line computer network, service or database or by Internet or satellite-based or other transmission even if some persons outside such territory may have access to such network, service, database or transmission. If the Publisher is granted rights under multiple clauses above, it may combine or authorize the combination of such rights into single products or services. If the Publisher elects to itself exercise any of the above rights for which a royalty is not provided elsewhere in this agreement, the Author will earn royalties with respect to the exercised rights in amounts consistent with applicable industry standards as reasonably determined by the Publisher. As used in this agreement, the "amount received by the Publisher" means actually received by the Publisher (less any taxes included in the amount received, less any insurance, shipping, mailing, freight, duties, customs clearance or other similar charges included in the amount received by the Publisher, and less any foreign tax withholdings and any fees or commissions paid by the Publisher to finders or third-party sales or licensing agents in connection with the transaction).

*Author's Copies*      6. The Publisher agrees to give the Author on publication ~~ten (10)~~ twenty (20) copies of each of its printed book editions of the work. The Author will have the right (subject to availability in inventory) to purchase further copies for the Author's personal use, but not for resale, at a discount of fifty percent (50%) from the list price.

*The Manuscript*      7. (a)  The Author agrees to deliver to the Publisher, in form and content satisfactory to the Publisher, ~~the final manuscript of the work, double-spaced on 8½" x 11" inch paper accompanied by a disc containing a copy of the identical version of the manuscript in electronic form,~~ the dummy of the artwork on or before [                   ] 2010 and the final artwork on or before [                   ] 2011

If delivery be not made on or before that date (or later date agreed to by the Publisher in writing), the Publisher may terminate this agreement by giving the Author written notice, whereupon the Author shall repay any and all amounts which may have been advanced or paid to the Author under this agreement. Upon such repayment, all rights granted to the Publisher in this agreement will revert to the Author. The Author further agrees to supply promptly, at the Author's own expense, all photographs, drawings, charts, indexes, maps, appendices, bibliography or other material mutually agreed upon as necessary to the completion of the manuscript; and if the Author shall fail to do so, the Publisher shall have the right to supply said photographs, drawings, charts, indexes, maps, appendices, bibliography or other material and charge the cost thereof to the Author. The Author authorizes the Publisher to make the manuscript of the work conform to its standard style and punctuation, spelling and usage, at the Publisher's own expense. The Author shall retain, for the Author's own protection, copies of all manuscripts and other documents or materials supplied by the Author to the Publisher. Subject to the Publisher's prior written approval, the manuscript may be delivered to the Publisher in proof form accompanied by a disc containing a copy of the identical version of the work in electronic form.

(b)  The Publisher will have no obligation to proceed with publication until such time as the manuscript has been completed and is satisfactory, in form and content, to the Publisher. It is within the Publisher's sole discretion to accept, request revisions in or reject the manuscript. The Publisher agrees to use reasonable efforts to respond to the manuscript within sixty (60) days of its receipt of the manuscript. If the Publisher requests revisions and a revised manuscript is not delivered to the Publisher within sixty (60) days of the date of the Publisher's notice, or if the revised manuscript is still unsatisfactory to the Publisher, the Publisher may reject the manuscript in writing. If the manuscript is rejected by the Publisher in writing, then the Author shall be at liberty to submit the manuscript to others. If the manuscript is rejected, the Author shall make every effort to sell the work elsewhere, and the Author shall be obligated to repay all advances and other amounts previously paid to the Author under this agreement from the first (and, to the extent necessary, all subsequent) proceeds of any contracts with others concerning the work, a substantially similar work, or any rights thereto, including, without limitation, rights listed in Clause 5 of this agreement. In connection with the preceding sentence, the Author will direct any third party acquiring any such rights to pay directly to the Publisher all monies due to the Author until the Publisher shall have recouped said advance and other amounts, and hereby assigns such monies to the Publisher. The Author will also advise any such third party that the Publisher's release of its rights under this agreement is conditioned on the Author and the third party complying with the preceding. If, for any reason, any monies are not paid to the Publisher directly by the third party, or the Author does not comply with the Author's obligations, then the Author agrees that the Publisher shall have a first lien on any monies to be paid to the Author by the third party in an amount not to exceed any monies advanced or paid by the Publisher under this agreement, and that the conditional release of Publisher's rights hereunder shall be withdrawn, thereby invalidating the Author's grant of rights to the third party. In any case, any balance of the amounts advanced or paid under this agreement that is not

FARRAR, STRAUS AND GIROUX, LLC
4



AG100114

repaid from the above described proceeds within twelve (12) months after rejection of the work by the Publisher shall become immediately due and payable upon expiration of such twelve-month period. Upon the return of such monies to the Publisher, this agreement shall terminate and all rights granted under this agreement shall revert to the Author.

**Author's Corrections**

8. The Publisher shall submit to the Author proofs of the work and the Author agrees to read, revise, correct, and return them promptly. If the Author fails to return such proofs within a reasonable period of time specified by the Publisher, the Publisher shall have the right to publish the work as submitted by the Author and accepted by the Publisher, subject to the usual copy editing and preparation for printing by the Publisher. The Author agrees to pay in cash, or, at the option of the Publisher, as a charge against any sums accruing to the Author under the terms of this agreement, the cost of alterations in text or artwork made by the Author, other than those due to printer's errors, costing in the aggregate in excess of ten percent (10%) of the cost of composition. If the Publisher elects to charge said costs against sums accruing to the Author hereunder and such sums do not cover said costs within one (1) year from the date of first publication, the Author shall at the time, on notice from the Publisher, pay in cash the balance of said costs then outstanding. A statement of these charges for the Author's alterations will be forwarded to the Author on request.

**Copyright**

9. (a) The copyright in the **artwork for the** work will be registered following its first publication by the Publisher in the U.S. copyright office at the Publisher's own expense in the name of ▮▮▮

The Author agrees to provide the Publisher with whatever information or materials are necessary for the Publisher to include proper copyright notices in copies of the work and for the Publisher to register copyright in the work.

(b) The copyright in any abridgement of the work made for an audiorecording of the work, as well as the performance (P) copyright in the audiorecording, will be owned by the Publisher and/or, at the Publisher's option, a licensee of the Publisher.

(c) If, in the exercise of any rights retained by the Author under the terms of this agreement, the Author makes any arrangement for the publication of the work, in whole or in part, in any language before or after publication by the Publisher of the printed book version of the work, the Author agrees to promptly notify the Publisher. The Author agrees to take whatever steps are necessary to maintain copyright protection for the work in connection with the exercise of any rights retained by the Author.

(d) If the work contains any copyrighted material of others, the Author will obtain, prior to delivery of the final manuscript, at the Author's expense, written permission to include it in the work in the territory and for the rights granted to the Publisher under this agreement and, upon request, will deliver copies of the permissions to the Publisher.

(e) The Publisher and Author will jointly have the right to enforce the copyright in the work and to prosecute infringements. The expenses and proceeds of such enforcement or prosecution shall be divided equally between them; provided, however, that if either party elects not to join in any action or proceeding, the other party shall have the right to proceed alone. In such latter event, the party going forward with such action or proceeding shall bear all the expenses thereof and shall be exclusively entitled to all recoveries.

**Revised Editions**

10. The Author agrees to deliver a manuscript for each revised edition of the work in form and content satisfactory to the Publisher if requested by it. If the Author refuses, is unable or fails for any reason whatsoever to deliver a satisfactory manuscript within a reasonable time after such request, the Publisher may employ one or more persons it deems competent to revise the work and may state the role of the reviser(s) in and on the new or revised edition. Compensation to such persons may be, at the option of the Publisher, either a lump sum payment or a royalty (with or without advance), and such compensation shall be charged against any sums accruing to the Author. If a revised edition shall require the making of new platemaking film (or its equivalent in any technology) costing fifty percent (50%) or more of the cost of composition of the prior edition, the Author agrees that the royalty rate for such edition shall be determined without regard to the number of copies sold of any prior edition(s). This agreement, other than the deadline for publication contained in Clause 2(a), will continue to apply to each revised edition (but no additional advance will be payable in connection with a revised edition). The Publisher will have all the rights in all revised editions of the work that the Publisher has in the original version of the work.



AG100115

*Representations and Warranties*

11. (a) The Author represents and warrants: (i) that the Author is the sole author of the work and the sole proprietor of the rights granted to the Publisher by this agreement; (ii) that those rights are not subject to any prior agreement, lien, or other claims or rights which may interfere with the Publisher's exercise of those rights and will not be subject to any during the term of this agreement; (iii) that the Author has the full right, power and authority to enter into this agreement and to grant the rights granted; (iv) that the work has not previously been published in any form granted to the Publisher in the exclusive territory granted and is not in the public domain; (v) that neither the Author nor any of the Author's representatives has given or will give the Publisher any document concerning the work or any other work by the Author that the Author and/or the Author's representative knows or should know is false or materially misleading; and (vi) that the work does not and will not contain anything that libels any person or entity, that infringes on or otherwise violates any copyright or other intellectual property right, right of privacy or other right of any kind of any person or entity, that will be the cause of any damage or injury to any person or property or that violates any applicable law or regulation.

(b) The Author agrees to hold harmless and indemnify the Publisher, its licensees, successors and assigns and its and their directors, officers, members, managers, employees and other agents against any loss, damage, judgment, settlement or expense, including, but not limited to, reasonable attorneys' fees and disbursements, that they may incur as a result of any breach of the representations and warranties made by the Author in this agreement or arising from any claim or legal proceeding asserting claims contrary to any representation and warranty made by the Author in this agreement (a "lawsuit"), except as otherwise provided in Clause 11(d) below and except that the Publisher will look first to the insurance policy described in Clause 11(c) below with respect to any lawsuit covered by that policy. If any lawsuit is instituted, the Publisher will promptly notify the Author. The Author agrees to fully cooperate in the defense of any lawsuit. The Publisher may withhold, from payments due the Author under this or any other agreement between the Publisher and the Author, reasonable amounts as security for the payment of the Author's potential obligations under this Clause 11(b) (insofar as said obligations are not covered by insurance provided under Clause 11(c) below). The representations and warranties contained in this clause do not extend to material provided by the Publisher that is not based on, or taken from, material furnished by or on behalf of the Author.

(c) The Publisher will, at its sole cost and expense, cover the Author with respect to lawsuits arising from publication of the work under any publishers' liability insurance policy (covering such risks as defamation, invasion of privacy and copyright and trademark infringement) the Publisher has that covers the lawsuit (the "policy"). Coverage will extend only to the work and will be subject to the terms and conditions of the policy and to the policy's deductible and coverage limits (which may be reduced or exhausted by claims relating to other works). In the event of any lawsuit covered by the policy, the Publisher will select counsel to represent the defendants and will control the defense. The Author may participate in the defense of any lawsuit with counsel selected and paid for by the Author. The Author agrees to cooperate fully with the counsel selected by the Publisher in the defense of the lawsuit. The Author acknowledges that failure to cooperate may result in loss of insurance coverage in addition to breaching the Author's obligations under this agreement.

(d) If a lawsuit covered by the policy is brought against both the Publisher and the Author, they will share equally the costs of the defense and any liability up to the amount of the applicable deductible under the policy.

(e) These representations, warranties and indemnity shall survive the termination of this agreement for any reason.

*Publicity*

12. The Publisher and its licensees shall have the right in connection with the exercise of any rights in the work granted to the Publisher by this agreement, and in advertising and publicity in connection therewith to:

(a) use the name, image, likeness, and biography of the Author; and

(b) publish or broadcast (but not dramatize), and authorize others to publish or broadcast (but not dramatize), by radio, television, in electronic media, in any print media or any other medium (now known or hereafter devised), throughout the world, without charge, such selections from the work as in the opinion of the Publisher or its licensees may benefit the sale of the work.

*Rights Reserved to Author*

13. All rights in the work now existing, or which may hereafter come into existence, except those hereby specifically granted to the Publisher, are reserved to and by the Author. However: (a) the Author agrees that during the term of this agreement the Author will not exercise or authorize others to exercise rights in the work so reserved in competition with or to the detriment of the Publisher; and (b) the Author represents, warrants and covenants that the Author will not authorize or arrange for the publication in any printed form or in any electronic form primarily intended to be read (or other form granted to the Publisher) of a novelization, adaptation or other version of either the work or a work in another medium based on the work or from which the work was derived (and the Author represents and warrants that the Author has not previously authorized or arranged for any such publication).

FARRAR, STRAUS AND GIROUX, LLC

6



**Non-Competition**

14. (a) The Author represents that the Author has not authorized or arranged for, and agrees not to authorize or arrange for, the publication, distribution or sale in the territory granted to the Publisher on an exclusive basis, otherwise than by the Publisher, of any work by the Author (or anyone who receives an author's credit on the work) which will directly compete with the work or diminish the value of any rights granted to the Publisher by this agreement where such publication, distribution or sale will take place at any time during the term of this agreement.

(b) The Author represents and agrees that: (i) the work will be the next book of the same genre as the work written by the Author or published under the Author's name that will be published after the execution of this agreement (excluding only other books that may already be under separate contract to the Publisher); and (ii) that the Author will complete the work and submit it to the Publisher prior to beginning work on any other book of the same genre (excluding only other books that may already be under separate contract to the Publisher).

**Option**

15. ~~The Author agrees to submit to the Publisher the Author's next full length work (the "Option Work") before submitting the same to any other publisher. The Publisher shall be entitled to a period of six (6) weeks after submission of the Option Work, which period shall not commence to run prior to one (1) month after the publication of the work, within which to notify the Author of the Publisher's decision. If, within that time, the Publisher notifies the Author of its desire to publish the Option Work, the Author will negotiate in good faith with the Publisher with respect to the terms of an agreement for the Option Work. If, despite such good faith negotiation, the parties are unable to arrive at an agreement for the Option Work within six (6) weeks after the commencement of the negotiations, the Author shall be free to submit the Option Work elsewhere, provided, however, that the Author shall not enter into a contract with another publisher for publication of the Option Work if the terms of such contract are less favorable to the Author than those offered by the Publisher unless the Publisher is first offered the opportunity to acquire the Option Work on such terms.~~

**Statements and Payments**

16. (a) Except as herein otherwise provided, the Publisher agrees to send, on its then regular royalty payment schedule for the imprint under which the work is published, semi-annual statements of account following publication. Payment of the amount due, as shown on the statement, will accompany the statement. Notwithstanding any other provision of this agreement, no earnings will be due or payable to the Author unless and until the Author's earnings exceed the total advance (paid and to be paid in the future) under the terms of this agreement; once such total advance is earned out, the excess of the Author's earnings above such total advance (only) will be paid as provided above. In rendering any statements and in making any payments hereunder, the Publisher may deduct and withhold reserves against returns of copies in reasonable amounts. The Publisher may also make any tax or other deductions required by law. If the balance to the credit of the Author at the time any semi-annual statement is prepared shall be less than twenty-five dollars ($25.00), no payment shall be made to the Author and the amount due shall be carried forward; if in any succeeding accounting periods the total balance to the credit of the Author shall be less than twenty-five dollars ($25.00), the Publisher may discontinue providing statements until such credit balance totals twenty-five dollars ($25.00) or more, but the Publisher shall send statements and make payments at the written request of the Author.

(b) Whenever the Author has received an overpayment of monies for any reason whatsoever under the terms of this agreement, it is agreed that the Publisher may deduct the amount of such overpayment from any sums that may accrue to the Author, whether on the work or other works of the Author which may be published by the Publisher. An unearned advance, however, shall not be considered an overpayment.

**Remainder Copies**

17. The Publisher will endeavor to inform the Author if it plans to remainder its inventory of copies of the work and to offer to sell to the Author all of the copies of the work to be remaindered at a price equal to the price the Publisher reasonably anticipates receiving in the remainder sale (but the Publisher's failure to do so will not constitute a breach of this agreement).

**Termination and Reversion of Rights**

18. (a) If, at any time, the Publisher determines that there is not sufficient sale of the work, it may discontinue publication. If, at any time after two years from its initial publication by the Publisher, the work is "Unavailable for Sale" (as defined below), the Publisher will, within six (6) months after the Publisher's receipt of a written request from the Author for reversion of rights in the work (marked "Attention: Contracts Department"), do one of the following to be selected by the Publisher in its sole discretion: (i) arrange for a print or electronic edition of the work published by the Publisher or a licensee to be available for sale in the United States; or (ii) upon payment to the Publisher of any sums owed by the Author to the Publisher (which does not include any unearned advance), terminate this agreement and revert all rights in the work to the Author. For the purposes of this agreement, the work will be considered "Unavailable for Sale" if (and only if) there is no print or electronic edition of the work published or licensed by the Publisher available for sale in the United States.

AG100116A

(b) Termination of this agreement under the provisions of Clause 18(a) shall not preclude the right of the Publisher to continue to exercise its audiorecording rights if at the time of termination an audiorecording of the work published or licensed by the Publisher is available for sale. However, if all audiorecordings of the work published or licensed by the Publisher shall thereafter become unavailable for sale and remain unavailable for sale six (6) months after the Publisher's receipt of a written request (marked "Attention: Contracts Department") from the Author to put an audiorecording of the work on sale and if the Publisher has not arranged, within the said six-month period, for a licensed audiorecording, then the Author will have the right to terminate this agreement by written notice with respect to the audiorecording rights and such audiorecording rights shall revert to the Author upon the Publisher's receipt of the notice of termination.

(c) Termination of this agreement, whether or not pursuant to Clause 18(a), is subject to the right of the Publisher to thereafter dispose of any existing inventory and copies returned (accounting as provided in Clause 16 to the Author for any royalties earned by the Author as a result thereof), to the continuation of any licenses with respect to the work previously granted by the Publisher and to the continuing receipt and retention by the Publisher of the proceeds from such licenses (accounting as provided in Clause 16 to the Author for the amount earned by the Author from any such proceeds).

*Bankruptcy*

19. If a petition in bankruptcy is filed by the Publisher, or if the Publisher is finally adjudged bankrupt by a court of competent jurisdiction, or if the Publisher seeks general protection from its creditors under any bankruptcy or insolvency law, the Author may terminate this agreement (if permitted by applicable law) by written notice, effective immediately upon receipt thereof.

*Assignment*

20. No assignment of this agreement shall be binding upon either of the parties hereto without the written consent of the other party. The Author may not delegate any of the Author's duties or obligations under this agreement. However, the Author may assign or transfer any net monies payable to the Author. In addition, the Publisher may assign this agreement, in whole or in part, to any parent, subsidiary or affiliated company or to an assignee assuming the Publisher's obligations under this agreement that acquires all or a substantial portion of the business, an imprint, or a line of books of the Publisher. The Publisher is fully authorized to license any of the rights granted to it by this agreement.

*Persons Bound, Remedies, etc.*

21. This agreement shall be binding upon the personal representatives and heirs of the Author and the successors and assigns of the Publisher. This agreement creates an independent contractor relationship between the Author and the Publisher; it does not create, and shall not be construed as creating, a partnership, agency relationship, or joint venture between the Author and the Publisher. In no event will the Publisher be liable to the Author for any consequential or incidental (as opposed to direct) damages or for any exemplary or punitive damages. All remedies granted to the Publisher pursuant to this agreement are cumulative and neither the availability nor exercise of any such remedy shall prevent the Publisher from exercising any other remedy which it would otherwise have under this agreement or by law. All persons executing this agreement as the Author will be jointly and severally obligated for the liabilities and obligations of the Author specified in it. No person or entity is a third party beneficiary of the Publisher's obligations under this agreement. The parties each hereby waive trial by jury in any action or proceeding between them arising out of or related to this agreement or any alleged breach hereof.

*Applicable Law*

22. This agreement shall be governed by, and interpreted in accordance with, the internal laws of the State of New York.

*Legal Issues*

23. The Author acknowledges that if the work raises legal risks or if a legal claim is asserted against the work, the Publisher may delay publication or cease publication for a reasonable time pending further investigation or the resolution of any claim and/or may terminate this agreement in writing. In the event of such termination prior to publication or during the first month of publication, all advances and other amounts paid by the Publisher to the Author with respect to the work shall be promptly repaid by the Author to the Publisher. In any case, no revisions to or deletions from the work or request for substantiation made by the Publisher or its legal counsel shall be deemed to impose on the Publisher any obligation of verification or to affect in any way the Author's warranties, representations, or duty of indemnification, which shall continue to apply to the work, whether or not changed at the request of the Publisher or the Publisher's legal counsel.

*Headings*

24. All headings are for reference purposes only and will not affect the meaning or interpretation of this agreement.



AG100116B

*Notices*

25. All notices required or permitted to be given by any of the provisions of this agreement shall be sent by first class mail, by certified mail, return receipt requested, or by commercial air express delivery service and shall be deemed given when mailed or when delivered to, or picked up by, the delivery service (unless the provision permitting or requiring such notice otherwise provides). All such notices shall be addressed to the Author at the address set forth at the beginning of this agreement (or to such other address as the Author shall have designated by thirty (30) days' prior written notice) or to the Publisher at its then principal office (or to such other address as the Publisher shall have designated by thirty (30) days' prior written notice).

*Entire Agreement, No Modification or Waiver, etc.*

26. This agreement constitutes the entire agreement of the parties with respect to its subject matter. It supersedes all previous written and oral agreements of the parties relating to its subject matter and may not be cancelled or amended, nor may any of its provisions be waived, except by a document signed by the party against whom such cancellation, amendment or waiver is to be enforced. This agreement is not binding on the Publisher, and the Publisher is not obligated with respect to the work, unless and until this agreement is signed by a duly authorized officer of the Publisher. The Author hereby appoints the Publisher as the Author's attorney-in-fact in the Author's name and stead to execute all documents for recording in the U.S. Copyright Office the transfer of ownership in the exclusive rights granted to the Publisher by this Agreement.

*Agency*

27. ~~The Author hereby authorizes, as agent, to collect and receive all sums of money payable to the Author under this agreement, and the receipt of such agent shall be a good and valid discharge in respect thereof. Such agent is hereby fully authorized and empowered to act on behalf of the Author in all matters with respect to this agreement.~~

*Miscellaneous*

28. It is understood and agreed that the sums provided to be paid to the Author under the terms of Clause 4(a)(iv), (v), (vi); 4(b); 4(c), and Clause 5, shall be divided fifty percent (50%) to the author of the text,  and fifty percent (50%) to the illustrator of the artwork. If either the text or artwork is published or licensed separately under this agreement, the proceeds provided as the Author's share shall be paid in full to the author or the illustrator as the case may be. Upon termination of this agreement, the rights to the text of the work shall revert to the author of the text, ▮▮▮▮▮▮▮▮▮▮, and the rights to the artwork shall revert to the illustrator of the artwork, ▮

29. In the event the work is awarded any of the following awards, the Publisher agrees to pay the Author as an additional advance against and on account of all monies accruing to the Author under this agreement the following sums, payable on the announcement of the award(s):

    a) Caldecott Medal:
    b) Caldecott Honor:   ▮▮▮▮▮▮▮

IN WITNESS WHEREOF the parties hereto have executed this agreement as of the day, month, and year first above-written.

AUTHOR                                         FARRAR, STRAUS AND GIROUX, LLC


_____                By 


FARRAR, STRAUS AND GIROUX, LLC
9



## AGREEMENT

THIS AGREEMENT, entered into as of ███████, 1997, is between Carolrhoda Books, Inc., 241 First Avenue North, Minneapolis, Minnesota 55401 (the "Publisher") and ███████████████████████ ██████████ (the "Author") regarding a certain literary work to be created by the Author tentatively titled ████████████████ (the "Work").

IN CONSIDERATION of the promises contained in this Agreement, the Author and Publisher agree as follows:

1.   GRANT OF RIGHTS.  The Author grants and assigns to the Publisher for the full term of the United States Copyright the following exclusive rights in and to the Work throughout the world:

    1.1.   The exclusive right to print, publish, and distribute the Work in hardcover and paperback book form in all languages.

    1.2.   The exclusive right to license all hardcover and paperback book publication rights and the exclusive right to exercise and grant to third parties all other rights in and to the Work, including all other book publication rights; reprint rights; book club rights; translation and foreign language rights; first and second serialization rights; dramatic rights; recording rights; radio, television, motion picture and film rights, and all related merchandising rights derived from those rights; audio-visual rights; adaptation, condensation, and syndication rights; electronic publishing rights (including, but not restricted to, analog and digital, interactive television and over the Internet throughout the universe, computer software, CD-ROM and video cassette); and the right to publish part or all of the Work in anthologies, school textbooks or other publications.

        1.2.1.   The Publisher will request that the Author be given first consideration to draft any screenplay required in the event that any radio, television, electronic publishing, motion picture or film rights to the Work are licensed.

    1.3.   The exclusive right to exercise and grant to third parties all commercial and merchandising rights in and to the Work, including the right to produce toys, games, clothing, calendars, greeting cards, jewelry, and other items based on the title, story line, or characters of the Work and also including the right to use the title, story line, or characters of the Work as the basis for or in connection with any trademark, advertising, or publicity for any product.

    1.4.   The exclusive right to publish and distribute the Work in Braille or in other forms for use by the physically handicapped.

2.   DELIVERY OF MANUSCRIPT

    2.1.   The Author shall deliver to the Publisher one (1) complete English language manuscript of the Work, consisting of approximately ████████████████████ words and a bibliography of sources, satisfactory to the Publisher in content, length and form, on or before ████████, 1997.

    2.2.   If the Author fails to deliver the manuscript within three (3) months after the above date, or if the manuscript is not acceptable to the Publisher, the Publisher may terminate this Agreement by giving written notice to the Author who shall repay to the Publisher all monies advanced under this Agreement.

AG100118

2.3.   The Publisher shall not be liable to the Author in the event the manuscript submitted to the Publisher is lost, stolen or destroyed.

3.   PERMISSIONS

3.1.   If copyrighted material is included in the Work, the Author, at the Author's own expense, will secure from the copyright owner(s) written permission to reprint the material in all editions of the Work.

3.2.   The Author shall deliver all such written permissions to the Publisher at the time the manuscript is submitted.

4.   REPRESENTATIONS AND WARRANTIES

4.1.   The Author represents and warrants that:

4.1.1.   The Author is the sole creator of the Work, is the sole owner of all rights granted to the Publisher in this Agreement, and has full power to enter into this Agreement.

4.1.2.   Except for the material obtained by the Author under Section 3.1. above, the Work is original, has not been previously published in whole or in part in any form, and is not in the public domain.

4.1.3.   The Work is free of any prior assignment, contract, pledge or lien, and is not subject to any pending or threatened litigation.

4.1.4.   The Work contains no matter which is libelous, scandalous, or obscene or which violates any right of privacy or publicity of any person.

4.1.5.   The Work does not infringe any statutory or common law copyright, trademark or other proprietary right.

4.2.   The Publisher shall have the right, through its own counsel, to defend against any claim, action, suit, or proceeding which arises from the breach or alleged breach of any of the foregoing representations and warranties, and the Publisher shall have the right to settle the same on any terms and conditions it deems acceptable. If requested by the Publisher, the Author shall cooperate fully in the Publisher's defense. The Author shall indemnify the Publisher and any licensee or grantee against any damages, losses, costs, or expenses, including attorneys' fees, incurred in connection with any settlement of such claim, action, suit, or proceeding or incurred as a result of any final judgment with respect thereto from which no further appeal can be taken.

4.2.1.   The Publisher shall have the right to withhold amounts otherwise payable to the Author under this Agreement or any other agreement in satisfaction of the Author's obligations under this Section.

4.2.2.   The Publisher shall have the right to alter or delete any part of the Work which, in the Publisher's discretion or upon the advice of counsel, may be considered objectionable or actionable at law.  Such alteration or deletion, however, shall not affect the Author's liability under the representations, warranties, and indemnity of this section.

4.2.3.   The Publisher shall not be obligated to make an independent investigation to determine whether the foregoing representations and warranties are true and correct.  Any such investigation by the Publisher shall not release the Author from the Author's promise to indemnify the Publisher under this Agreement.  The

AG100119

representations, warranties, and indemnification contained in this section shall not extend to text, drawings, illustrations, or other material not furnished by the Author.

4.2.4. The representations, warranties, and indemnification contained in this Section shall survive the termination of this Agreement.

## 5. EDITORIAL CHANGES

5.1. The Publisher may make changes to the Work, including editing or revising the text of the Work, retitling the Work, or adding or deleting photographs and illustrations.

5.2. The Publisher will consult with the Author on edited versions prior to publication; the Publisher, however, reserves the right to make final decisions regarding any changes.

## 6. PUBLICATION AND DISTRIBUTION

6.1. The Publisher shall publish the Work at the Publisher's expense in the style and form and under the imprint or imprints determined by the Publisher.

6.2. All details of publication, advertising, pricing, and distribution will be in the exclusive control of the Publisher, and the stock of plates and books will be the property of the Publisher.

6.3. The Publisher will not be obligated to publish the Work if the Publisher determines at any time that the Work contains libelous, scandalous or obscene material, or that publication of the Work would violate any copyright, right of privacy, right of publicity, or other right of any person.

6.4. The Publisher shall not be responsible for delays in publication caused by unavailability of services or materials, labor disputes, governmental restrictions or any circumstances beyond the Publisher's control.

## 7. ADVANCE AND ROYALTIES

7.1. The Publisher shall pay the Author an advance against royalties for the Work in the sum of ██████████████████████████), payable as follows:

7.1.1. ████████████████████████ upon receipt by the Publisher of a copy of this Agreement signed by the Author;

7.1.2. ████████████████████████ upon receipt by the Publisher of a complete and acceptable manuscript of the Work; and

7.1.3. ████████████████████████ upon the Publisher's acceptance of the final manuscript of the Work.

7.2. The Publisher shall pay the Author royalties based on the net U.S. dollar amounts received by the Publisher from sales of all English language hardcover copies of the Work published by the Publisher, wherever sold, as follows:

| 1 to 20,000 copies | Seven Percent | (7%) |
| 20,000 copies and above | Ten Percent | (10%) |

7.3.    The Publisher shall pay the Author royalties based on the net U.S. dollar amounts received by the Publisher from sales of all English language paperback copies of the Work published by the Publisher, wherever sold, as follows:

| | | |
|---|---|---|
| 1 to 20,000 copies | Three and One-Half Percent | (3.5%) |
| 20,000 copies and above | Five Percent | (5%) |

7.4.    The Publisher shall pay the Author royalties, accounted for separately, on sales of all hardcover and paperback editions of the Work published by the Publisher in languages other than English, wherever sold, according to the schedule above for the English language paperback edition.

7.5.    No royalties will be paid for copies of the Work distributed for publicity, advertising, or review purposes, or for copies given or sold to the Author, or for copies that are sold below cost or on the remainder market, or for copies that are sold at a discount as part of a trade exhibit or display, or for copies that are published and distributed without charge in Braille.

7.6.    In the event that the Publisher grants any purchaser a discount in excess of fifty-nine percent (59%) of the retail cover price per copy, the Author agrees to accept a proportionate reduction in the Author's royalty for each copy so sold equal to the Author's royalty discounted by the same percent or rate allowed such purchaser.

7.7    The Publisher shall pay the author a royalty of Seven Percent (7%) on the monies, net of production and manufacturing costs, received by the Publisher from the sales of computer software, CD-ROMs, and video cassettes based on the work and published by the Publisher.

## 8.    PROCEEDS FROM LICENSE OR SALE OF RIGHTS

8.1.    The net proceeds received by the Publisher from the sale or license by the Publisher of any of the rights granted under this Agreement shall be divided Fifty Percent (50%) to the Author and Fifty Percent (50%) to the Publisher.

8.2.    For the purposes of this Section 8, net proceeds shall equal the gross proceeds received by the Publisher from any such sale or license, reduced by any related expenses.

8.3.    All rights and licenses granted by the Publisher to any subsidiary or affiliate of the Publisher shall be treated as if granted to an unrelated third party and all payments received from any such grant shall be treated accordingly.

## 9.    REPORTS AND PAYMENTS

9.1.    The Publisher shall provide the Author with reports showing the royalties and other amounts, if any, due as of December 31 of each year during the term of this Agreement.

9.2.    The Publisher shall forward such reports, together with the payments indicated in the reports, within ninety (90) days of the date of the reports.

9.3.    The Publisher, however, is not obligated to provide such reports or payments for any period for which the total amount due is less than Two Hundred Dollars ($200.00).

9.4.   If the Author receives an overpayment of royalties, other than an advance as provided for in this Agreement, the Publisher may require the immediate return of the amount of such overpayment or deduct the amount of such overpayment from any further sums due and payable to the Author under this Agreement or any other agreement between the Author and the Publisher.

10.   NO CONFLICTING PUBLICATIONS

For as long as the Work is offered for sale by the Publisher or any of its licensees in book form, the Author will not publish or furnish to any other publisher any edition, adaptation, or abridgment of the Work, any derivative work based on the Work, or any other work which might, in the opinion of the Publisher, compete with the sale of the Work.

11.   COPYRIGHT REGISTRATION

11.1.   The Publisher shall register copyright to the Work in the name of the Author in the United States of America and in any other country deemed appropriate by the Publisher.

11.2.   The Author hereby appoints the Publisher as the Author's attorney-in-fact for purposes of registering copyright to the Work.

12.   INFRINGEMENT

12.1.   If any right in the Work is infringed, the Publisher may take all actions it deems necessary to prevent such infringement or to recover damages. The Publisher shall notify the Author of any such action, and the Author may join in such action. If the Publisher elects not to commence any such action, the Author may do so without the Publisher.

12.2.   If the Author joins the Publisher in any such action, both shall share equally in all expenses related to the action and in any recovery which may be awarded as a result of the action.

12.3.   If the Author elects not to join in any such action, the Publisher shall be solely liable for all expenses related to the action and shall receive any recovery which may be awarded as a result of the action.

12.4.   Either party may bring a claim for infringement in the name of the other.

13.   REVISIONS

13.1.   The Publisher shall have the right to prepare and publish revised editions of the Work at any time and may publish any such revised edition under the name of the Author and one or more other persons as coauthors.

13.2.   Although the Publisher may consult the Author about the revised edition, the Publisher shall not be required to pay the Author any amounts other than the royalties and other amounts provided for under this Agreement. Royalties with respect to any revised edition shall be calculated at the rates initially applicable to the first edition of the Work.

14.   AUTHOR'S NAME AND LIKENESS

The Publisher and its licensees may use the name and likeness of the Author and biographical information pertaining to the Author in connection with the advertising or promotion of the Work in any form.

15. COPIES TO THE AUTHOR

15.1. The Publisher agrees to give the Author fifteen (15) free copies of the first published edition of the Work.

15.2. The Author may purchase additional copies for the Author's personal use, but not for resale, at Sixty Percent (60%) off of the list price. If the Author does not pay within the time period specified by the Publisher for any copies purchased, the Publisher may deduct the amounts due for such copies from any amounts due the Author under this Agreement or any other agreement between the Author and the Publisher.

16. ASSIGNMENT BY THE AUTHOR

16.1. The Author may not assign the Author's obligations or rights under this Agreement, except that the Author may assign the Author's rights to royalties by notifying the Publisher in writing of the name and address of the Author's assignee.

16.2. The Publisher shall not be bound by any such assignment, but the payment of royalties by the Publisher to any assignee of the Author shall be a full and complete discharge of the Publisher's obligations to pay the same to the Author under this Agreement.

17. ASSIGNMENT BY THE PUBLISHER

17.1. The Publisher may assign this Agreement as part of the sale or transfer of all or substantially all of the Publisher's business or as part of the merger or consolidation of the Publisher with another corporation.

17.2. In addition, the Publisher may assign this Agreement to any subsidiary, affiliate or other company or entity owned or controlled by the Publisher or owned or controlled by the persons who presently own or control the Publisher.

18. ENTIRE AGREEMENT

This Agreement represents all of the understandings and obligations of the parties with respect to the subject matter of this Agreement and supersedes all prior negotiations and agreements between the parties.

19. MODIFICATION AND AMENDMENT

No amendment or modification of this Agreement shall be valid and binding upon the parties unless such amendment or modification is in writing and signed by both parties.

20. WAIVER

20.1. The waiver by either party of a provision or a breach of any provision of this Agreement shall not operate or be construed as a waiver of any other provision or any subsequent breach of any provision.

20.2. Any assistance provided by the Publisher to the Author to make the manuscript of the Work acceptable to the Publisher shall not operate or be construed as a waiver by the Publisher of any of its rights or any of the Author's obligations contained in this Agreement.

AG100123

21.    NOTICE

21.1.    Any notices, statements or payments required by this Agreement are to be sent in writing by first class mail to the party at the address specified above or to such other address as such party may later designate.

21.2.    All such notices, statements and payments will be deemed delivered on the date of deposit in the U.S. mails.

22.    BENEFITS

This Agreement shall be binding upon and inure to the benefit of the parties and their heirs, successors, legal representatives and permitted assigns.

23.    GOVERNING LAW

This Agreement shall be governed by and interpreted according to the laws of the State of Minnesota. The State and Federal Courts located in Minneapolis, Minnesota, shall have exclusive jurisdiction and venue over any dispute arising under or in connection with this Agreement, and the Author and the Publisher hereby consent to the personal jurisdiction of those courts.

IN WITNESS WHEREOF, the Author and the Publisher have entered into this Agreement as of the date written above.

Social Security No. ████████

Date_____

CAROLRHODA BOOKS, INC.

By  _____

Its  Director/Finance_____

Date_____

AG100124

 

# M.E. Sharpe INC.
PUBLISHER

80 Business Park Drive
Armonk, New York 10504
Phone: 914-273-1800
FAX: 914-273-2106

## AGREEMENT

This document constitutes a binding agreement between M.E. Sharpe, Inc., with offices at 80 Business Park Drive, Armonk, NY, 10504 (hereinafter referred to as the "Publisher") and



(hereinafter referred to as the "Author"), whereby the Author grants to said Publisher exclusive rights to publish and/or adapt, and to license others to publish and/or adapt, a manuscript created by said Author which is tentatively titled



(hereinafter referred to as the "Work"). This document constitutes the only and entire legally binding agreement between the Author and the Publisher with respect to the Work herein identified.

**Author's Warranty**

(1) The Author hereby certifies that the language and contents of this Work are not plagiarized from any other source, do not libel or slander any other party, and in all respects are lawful. The Author assumes full responsibility for any damages resulting from claims to the contrary.

**Grant**

(2) The Author hereby conveys to the Publisher exclusive rights to publish and/or reproduce (in book or other form), to adapt to other media, to license others to publish in whole or in part or adapt to other media, and to distribute and sell or license other parties to sell, this Work and all the contents thereof. This exclusive right to publish, adapt, license, distribute, and sell shall be applicable to the original English language version of the manuscript, and to any translation into other languages - and shall extend to all nations and territories of the World without exception.

(3) The above grant of subsidiary rights to the Publisher to license other parties to publish and/or adapt said Work is exclusive and without exception. It includes the right to license translation, serialization, excerption, condensation, inclusion of all or part of the Work in another book, reprinting, adaptation to radio, television, cinema, stage, audio-visual or electronic media, utilization by a book club, and all other uses of the Work or its contents. The Author shall in no way infringe upon this exclusive right of the Publisher by authorizing other parties to utilize any portion of the work in any form.

**The Manuscript**

(4) It shall be the responsibility of the Author to obtain written permission(s) of any copyrighted material or illustrations to be included in this book, and to furnish copies of said permission(s) to the Publisher along with the manuscript. It shall also be the responsibility of the Author to prepare and provide any appendices or indexes to be incorporated in the Work, as well as camera-ready tables, charts, and maps, or to compensate other parties for preparing and providing said materials.

AG100125

(5) The Author shall provide the Publisher with two hard (words on paper) copies of the manuscript and an electronic disk utilizing an IBM-compatible processing program. If a complete manuscript of this Work, covering the subject matter previously agreed upon by the Author and the Publisher, in form and content acceptable to the Publisher, consisting of approximately 300 pages, together with all agreed illustrations, appendices, and permissions, is not delivered by said Author to the Publisher no later than Midnight, ██████████ 1996, this agreement may be revoked by written notice of the Publisher, if the Publisher so desires.

(6) In the case of a multiauthored work, the Author shall secure from each contributor and deliver to the Publisher together with the manuscript written permission (in form acceptable to the Publisher) to publish each contributor's work.

## Agreement to Publish

(7) The Publisher shall publish and market the Work in such quantities, and at such price(s) as the Publisher shall deem appropriate to the nature of the Work. All decisions including but not limited to format, style of printing and binding, cover presentation, retail price, and all other matters involving terms of sale, distribution, advertising and promotion of the Work shall be within the Publisher's sole discretion.

(8) If this Work is not published in book form, and offered for sale to the public, or licensed for publication and/or adaptation by another party, within two (2) years following submission of the completed manuscript to the Publisher, all rights herein conveyed shall revert to the Author.

## Copyright

(9) The Publisher shall copyright the Work in the name of M. E. Sharpe, Inc. in the United States of America and in such other countries as may be covered by this agreement. The Publisher shall copyright any revision or future edition of the Work and shall have the right to effect any renewals or extensions of copyright.

## Royalty Terms and Provisions

(10) In compensation for this grant of rights, the Publisher hereby agrees to pay royalties to the Author on the basis of the Publisher's net receipts (after refunds or credits for return of merchandise are deducted) on the following scale:

(a) for copies of the Publisher's own edition(s) sold by the Publisher within its market territories:

in hardcover: *10% first 2,000 copies; 12.5% thereafter*

in paperback: *7.5% first 2,500 copies; 12.5% next 2,500 copies; 15% thereafter*

(b) for copies sold by the Publisher's distributors outside the United States: 5%;

(c) for copies manufactured by the Publisher for copublication by publishers or agencies outside the United States: 10%, after manufacturing and shipping costs have been deducted;

(d) for copies manufactured by the Publisher for sale by book clubs: 50%, after manufacturing and shipping costs have been deducted;

(e) for copies provided by the Publisher to the Author, to reviewers, as samples to booksellers or like agents for promotional purposes, or as desk copies to instructors, for copies sold below manufacturing cost, and for copies damaged or destroyed, no royalties shall be paid;

(f) for electronic rights exercised by the Publisher (including but not limited to data bases, videotext, teletext, and computer programs based on the Work): 10%;

(g) for rights licensed by the Publisher to licensees, including the rights to translate, serialize, excerpt, condense, or reprint the Work, to include all or part of the Work in another work, or to adapt the Work to other media (including radio, television, cinema, stage, audio-visual or electronic media): 50%, after the reasonable costs of any unreimbursed manufacturing, product development, or related

AG100126

services required by the licensee and provided by the Publisher have been deducted, but in no event less than 25% of the Publisher's net receipts.

    (h) In making any payments to the Author under any provision of this agreement, the Publisher shall have the right to deduct any sums due to the Publisher from the Author.

    (i) The Publisher shall pay to the Author an advance on royalties in the amount of ███████ ███ — one-half on signing of this Agreement and one-half on publication of the Work.

    (11) The Publisher shall, upon the written request of the Author, furnish to the Author copies of any agreements which the Publisher may make with any third parties for the disposition or exploitation of any rights to the Work.

    (12) The Publisher agrees to render to the Author on or before October 25 of each year an annual statement of account as of the preceding June 30. Payment then due shall be sent to the author within thirty (30) days.

    (13) The Author agrees that the royalty account shall be deemed a single consolidated account to embrace any publication agreement with the Publisher and that all charges and credits provided for in this or any other agreement between the Author and the Publisher shall be made against this account.

### Author's Alterations

    (14) The Author shall read and return promptly to the Publisher the proofs of the Work. The expense of Author's proof corrections exceeding ten percent (10%) of the cost of composition shall be chargeable to the Author. If the Author shall fail to read such proofs and return the same within (14) days of receipt thereof (or the date mutually agreed upon between the Publisher and the Author), the Publisher may, in its discretion, arrange to have such proofreading done by others, and the reasonable expenses thereof shall be chargeable to the Author.

### Author's Copies

    (15) The Publisher shall furnish to the Author ~~six (6)~~ TWELVE copies of the Work as published (~~three (3)~~ SIX [6] hardcover and ~~three (3)~~ paperback) free of charge. In the event that more than one author is signatory to this agreement, such copies will be evenly divided. In the case of a multiauthored volume, each contributor shall receive one copy of the Work. Additional copies of the Work shall be supplied to the Author (or to any contributor) at one-half the retail price, plus postage and handling, free of royalty. If the Author (or any contributor) requires more than twenty-five (25) copies of the Work for personal use, the Author must inform the Publisher of such requirement in writing prior to the manufacture of the Work. Such copies shall not be for resale.

### Remainders

    (16) If the Publisher at any time has unsold or returned copies of the Work on hand which in its judgment could not be sold on usual terms in a reasonable time, the Publisher may sell such copies to the Author or to such purchasers and on such terms as the Publisher deems desirable.

### Competing Works

    (17) The Author shall not permit or arrange for the publication, distribution, or sale otherwise than by the Publisher, of any work which will compete with the Work or diminish the value of any subsidiary or additional rights granted by this agreement.

### Author's Property

    (18) The Publisher shall be responsible for only the same care of any property of the Author in its hands as it takes of its own property. The Author shall retain copies of the manuscript and of all other documents or materials supplied to the Publisher for the Author's own protection. As a consequence, the Publisher is relieved from any obligation to insure the Author's manuscript or other property while

AG100127

it is in the Publisher's hands. In the absence of a written request from the Author for their return, the Publisher, after publication of the Work, may dispose of the original manuscript and proofs.

**Reversion of Rights**

(19) In the event that there is no edition of the published Work in print or under contract (other than the present agreement), the Author may demand in writing the reconveyance to the Author of all rights hereby granted to the Publisher. In the event that the Author shall make such a demand, the Publisher shall have six (6) months during which it may make arrangements for reprinting or other use of the work, in which case this agreement shall continue in full force; but if at the expiration of six (6) months the Publisher shall not have made any such arrangement, all rights granted to the Publisher in paragraphs 7 and 8 of this agreement shall forthwith revert to the Author.

**Arbitration**

(20) If the Author and Publisher cannot resolve any dispute arising from this agreement, they agree to submit the dispute to binding arbitration by the American Arbitration Association in White Plains, New York, in accordance with their Commercial Arbitration Rules. Judgment on the award made by the arbitrator may be entered in any court that has jurisdiction.

**Revision**

(21) In the event the Publisher decides manuscript updating or revision is appropriate for a subsequent edition of this Work, the Author agrees to either accomplish the updating/revision within 180 days of the Publisher's request, or to forego up to 50 percent (at the Publisher's discretion) of royalties from the revised edition for purposes of compensating another author selected by the Publisher to accomplish said updating/revising.

**Place of Execution**

(22) Legal interpretation of this agreement shall be governed by the laws of the State of New York, United States of America.

Signed:

_____

for M.E. SHARPE, INC.

Date_____

███████████████████

Date_____Soc. Sec. #_____
Home Address:

_____

_____

_____

AG100128