# EXHIBIT 16

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | | |
|---|---|---|
| **UTOPIA ENTERTAINMENT, INC., ET AL** | * | **CIVIL ACTION NO. 03-1355** |
| **VERSUS** | * | **JUDGE S. MAURICE HICKS** |
| **CLAIBORNE PARISH, ET AL** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion for Class Certification filed by plaintiff, Utopia Entertainment, Inc. ("Utopia"). (Document No. 102). All of the defendants oppose Utopia's motion.[1] In its July 18, 2003, complaint (Document No. 1), Utopia, individually and as a putative class representative, alleged that defendants engaged in direct and contributory copyright infringement by virtue of their administration and control of Claiborne Detention Center ("CDC") and its inmates. Utopia's Third Amended Complaint (Document No. 48) added Admiral and Endurance as defendants, insurers of LaSalle and the Claiborne Parish Sheriffs' Department, respectively. On April 28, 2005, the following entities were joined as plaintiffs: Rap-A-Lot Records ("Rap-A-Lot"); Suave House, Inc. ("Suave"); Warren Cotton ("Cotton") d/b/a/ Ceiba Enterprises ("Ceiba"); and Par-La Records, LLC ("Par-La"). Utopia and these new plaintiffs (collectively "Plaintiffs" or "Named Plaintiffs") seek certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure, of a "class of music copyright claimants that own or control at least one copyrighted musical work that has without their permission been duplicated by the Defendants." (Document No. 215). For

---

[1] The named defendants in this matter are: Sheriff Kenneth Volentine ("Volentine"), on behalf of Claiborne Parish; Steve Middleton ("Middleton"), Warden of Claiborne Detention Center; LaSalle Management Company, L.L.C., a corporation contracted to operate Claiborne Detention Center; Stacy Walker ("Walker"), an employee of LaSalle; and two insurance companies, Admiral Insurance Co. ("Admiral"), an insurer of LaSalle, and Endurance Specialty Insurance Ltd. ("Endurance"), an insurer of the Claiborne Parish Sheriffs' Department.

reasons stated below, it is recommended that the motion be **DENIED.**

## BACKGROUND

Despite the numerous disputes in this case, the underlying facts are relatively simple. The Named Plaintiffs are owners of copyrights to various sound recordings and musical compositions. Pursuant to state statute, CDC maintained an Inmate Welfare Fund ("IWF"), a fund administered by Middleton, CDC's Warden, and established exclusively for the benefit of CDC's inmates. According to the complaint, in an effort to generate funds for the IWF, inmates of CDC, allegedly with certain defendants' assistance and instruction, copied over 3,000 musical selections that were later distributed and sold throughout the prison either as tapes or compact discs. This copying and distribution occurred between May 2002 and July 2003. The Named Plaintiffs own copyrights to a small portion of the musical selections that were allegedly copied, and they purport to act on behalf of themselves and all other copyright owners harmed by the defendants' infringement.

## LAW AND ANALYSIS

Class certification is warranted when the putative class representative or other plaintiffs satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) sets forth four threshold requirements for class certification: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class" exist); (3) typicality ("claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation (class representatives "will fairly and adequately protect the interests of the class"). *See* Fed. R. Civ. P. 23(a); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Besides satisfying the threshold requirements of Rule 23(a), proponents of class certification must also demonstrate that the action is maintainable under Rule 23(b)(1), (2), or

2

(3). *See Amchem Products, Inc.* at 521 U.S. at 614. In this case, Plaintiffs argue that class certification is proper under Rule 23(b)(3), which provides that a class action may be maintained where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3). With respect to the superiority of a class action, a court must consider, among other factors, the following:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). *See also Castano v. American Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) (considering possible waste of judicial resources under Rule 23(b)(3) superiority analysis).

Although a district court possesses broad discretion in certifying a class action, it must conduct a "rigorous analysis of the Rule 23 prerequisites" before granting certification. *Castano,* 84 F.3d at 740. At all stages of the proceedings, plaintiffs bear the burden of proof on all of these prerequisites. *See Horton v. Goose Creek Ind. Sch. Dist.*, 690 F.2d 470, 486 (5th Cir. 1982). The need for a "rigorous analysis," however, does not permit a district court to consider the merits of a case in deciding whether to certify a class. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974); *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 143 n.2 (4th Cir. 2001); *Castano* 84 F.3d at 744 (discussing *Eisen* and avoidance of merits). *But see Szabo v. Bridgesport Machines Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (permitting preliminary inquiry into merits for purposes of assessing factors in Rule 23(b)(3)); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166-68 (3d Cir. 2001) (noting *Eisen* should be taken in context). In *Eisen*, the

3

Supreme Court held that, in a class certification proceeding, the merits underlying the dispute are irrelevant to a district court's determination under Rule 23. Accordingly, it held that "it was improper to make a preliminary inquiry into the merits of a case, determine that the plaintiff was likely to succeed, and consequently shift the cost of providing notice to the defendant." *Castano*, 84 F.3d at 744. Conversely, it would be improper for a district court to deny certification based on its opinion of the merits of the plaintiffs' case. The immediate question before a district court on a motion for class certification is not the merits of the plaintiffs' action, but only whether plaintiffs have satisfied the requirements of Rule 23(a) and (b).

A. Class Certification in Copyright Cases

Copyright infringement cases alleging widespread infringement of multiple copyrights, as in this case, require a unique analysis for purposes of class certification. The individualized nature of copyrights and infringement defenses renders class certification appropriate in only a limited number of circumstances, and, consequently, little case law exists on the issue. So far as the undersigned can discern, this issue is one of first impression in the Fifth Circuit, and only four cases from district courts in other circuits appear to address the propriety of certifying a plaintiff class in a copyright infringement action. *See Ryan v. Carl Corp.*, No. C97-3873, 1999 WL 16320 (N.D. Cal. Jan. 13, 1999); *Estate of Berlin v. Stash Records, Inc.,* No. 95-6575, 1996 WL 374176 (S.D.N.Y. July 2, 1996); *WB Music Corp. v. Rykodisc, Inc.*, No. 94-2902, 1995 WL 631690 (E.D. Pa. 1995); *David v. Showtime/The Movie Channel, Inc.*, 697 F.Supp. 752, (S.D.N.Y. 1988). Naturally, defendants rely on *Estate of Berlin* and *WB Music*, two cases in which class certification was denied, as support for the proposition that a general scheme of copyright infringement does not eliminate the putative class members' individual burden of proving copyright ownership and actual infringement, and their obligation to address a defendant's asserted defenses. *See Estate of Berlin*, 1996 WL 374176, at *2 (basing the decision

4

on a lack of typicality); *WB Music Corp.*, 1995 WL 631690, at *6 (basing the decision on the failure of the plaintiffs to establish predominance under Rule 23(b)(3)).

In *Ryan* and *David*, two cases granting certification, the courts recognized the individual burdens facing each plaintiff and class member based on the involvement of separate copyrights. In *David*, the earlier of the two cases, the court nevertheless granted certification because the "gravamen" of the dispute was the negotiation of a single licensing agreement between the defendant and a third-party acting on behalf of all proposed class members. 697 F.Supp. at 757 (discussing class members' individual burdens under typicality and certifying class under Rule 23(b)(1)). In *David*, the class members' individual issues were collateral and did not defeat any of the requirements of Rule 23(a). Similarly, in *Ryan*, the most recent case addressing class certification in copyright infringement, the court reviewed the three cases discussed above and adopted the following framework:

> Although there are few reported cases in this area, the trend appears to be to deny certification if the plaintiffs are suing a "habitual infringer" but have little else in common, and to certify a class if there is a single issue on which the litigation centers. Certification is more likely if there are circumstances that counter-balance the fact that the claim of each class member is necessarily based on a separate copyright.

1999 WL 16320, at *6. The above framework and synthesis is equally applicable in the present matter and guides the Court's application of the requirements of Rule 23.

B. <u>Requirements of Rule 23(a)</u>

Defendants argue that class certification should be denied because Plaintiffs cannot prove any of the requirements of Rule 23(a). While the defendants challenge Plaintiffs on each of the four threshold requirements in Rule 23(a), they place particular emphasis on Plaintiffs' alleged inability to demonstrate typicality, adequacy of representation, and predominance of common issues.

### 1. Numerosity

Numerosity exists if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As Rule 23(a) states, the basic question is the practicability of joinder, not the number of interested parties per se. *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980). "Practicability of joinder depends on size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Id*. As the focus is not solely on numbers, a party seeking class certification is not required to present evidence of the exact class size or the identity of class members. *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). All that is required to satisfy numerosity is a reference to some factual basis tending to demonstrate impracticability of joinder; mere speculation, however, is not enough. *See Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 258 (D. Ma. 2005). As one commentator has explained, in the context of securities fraud class actions, the "federal trial courts are quite willing to accept common sense assumptions in order to support a finding of numerosity, often looking at the number of shares traded or transactions completed rather than seeking to determine directly the number of potential class members involved." Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 22:16 (4th ed. 2002).

Despite defendants' focus on the appearance of only five interested copyright owners in this case following several reports in the media, Plaintiffs have satisfied Rule 23(a)'s numerosity requirement. The number of copyright owners who have appeared so far is irrelevant to numerosity; Plaintiffs need only show the size of the potential class and, if certified, may rely on the notice provisions of Rule 23(c) to determine the precise number of interested class members. Using compact disc and cassette tape order forms maintained by the IWF and obtained during discovery, Plaintiffs have compiled a database, entitled "Sales Report," indicating that the IWF

6

Case 5:03-cv-01355-SMH-KLH Document 256 Filed 01/10/06 Page 7 of 18 PageID #:
Case 1:05-cv-08136-DC Document 1003-17 Filed 02/08/12 Page 8 of 19

copied over 600 albums from over 400 artists between May 2002 and July 2003.[2] Pl.'s Ex. No. 5. The artists listed include some of the most popular music artists of the last twenty-five years, and the database itself is reminiscent of a billboard hit music chart. It is obvious that the potential class in this case includes copyright owners -- whether the artists themselves or their publishers -- who are dispersed throughout different parts of the country and who may have obtained copyrights via sale or assignment. Rather than require Plaintiffs, at this stage, to produce copyright registrations for every single artist listed in the database, similar to securities class actions, it is more appropriate to assess numerosity by looking at the number of artists whose songs were allegedly copied. In doing so, the undersigned finds that Plaintiffs have sufficiently

---

[2] In their post-hearing briefs, defendants renewed their objections to the order forms that Plaintiffs used to compile the "Sales Report." According to defendants, these order forms are not admissible under the business records exception to the hearsay rule contained in Rule 802 of the Federal Rules of Evidence, nor do they represent the "best evidence" as required under Rule 1002. In class certification disputes, the evidentiary rules are relaxed, and courts may consider evidence that might not be admissible at trial. *See, e.g., Eisen*, 417 U.S. at 178 (describing a court's determination of class certification as based on "tentative findings, made in the absence of established safeguards" and describing a class certification procedure as "of necessity . . . not accompanied by the traditional rules and procedures applicable to civil trials"); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 n.14 (8th Cir. 1982) ("Hearsay testimony may be admitted to demonstrate typicality."). Regardless, other than highlighting Bo Fain's status as a convicted felon, the defendants have failed to provide any evidence that the order forms he and other inmates produced are not business records under Rule 802. The mere fact that inmates of CDC who participated in the IWF completed the order forms does not disqualify the forms as valid business records. The IWF maintained various programs designed to generate funds, including the alleged copying program, and therefore qualifies as a business. Bo Fain, an inmate-supervisor in the IWF, testified that it was regular practice to maintain the order forms and that the forms were made contemporaneously.

Defendants' objections based on the "best evidence rule" are also unavailing. The best evidence rule only comes into play when the proponent of an affidavit or testimony is attempting to prove the content of the writing or recording discussed therein. *See* Fed. R. Evid. 1002; *R.R. Management Co. LLC v. CFS La. Midstream Co.*, 428 F.3d 214, 217 (5th Cir. 2005). Here, the order forms are not being introduced to show the specific contents of the copies of compact discs, but only that copying of certain compact discs occurred. The contents of the compact discs reflected in the order forms has no bearing on the issues relevant in class certification.

demonstrated that joinder of over 400 artists is impracticable and therefore have satisfied numerosity.

### 2. Commonality

Commonality, the second requirement under Rule 23(a), requires that there be common questions of law or fact to the members of the proposed class. Fed. R. Civ. P. 23(a)(2). Unlike Rule 23(b)(3), these issues need not predominate, and commonality "is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)). Furthermore, commonality does not require class members to share identical legal theories or factual scenarios. As the Ninth Circuit stated, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies with the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Given the permissive interpretation of commonality and the central facts of this case, it is unsurprising that none of the defendants strongly challenge the existence of commonality. In fact, some of the defendants, namely LaSalle and Volentine, concede that common issues of law or fact exist. Nevertheless, the defendants argue that the common issues are subordinate to each copyright owner's individual claim, because each class member would have to provide independent proof that the defendants engaged in activity that violated that member's particular copyright. However, while this issue is extremely relevant to Rule 23(b)'s focus on whether there is a predominance of common issues, it is not determinative in analyzing Rule 23(a)'s commonality requirement. Plaintiffs have cited, and the undersigned finds, numerous common issues of law and fact among the putative class members, including (1) whether the LaSalle or CDC defendants had actual or constructive knowledge of the inmates' alleged direct

8

infringement; (2) whether they fulfilled their obligations to supervise employees and inmates of CDC; and (3) the availability of statutory and actual damages under the Copyright Act. With regard to Admiral and Endurance, the defendant insurers, the common issues among class members are the extent of coverage the insurers provide to LaSalle and CDC, respectively. Thus, the plaintiffs have demonstrated the existence of at least one issue whose resolution will affect all or a significant number of the putative class members. They have met the commonality requirement.

### 3. Typicality

As with commonality, the test for typicality is not demanding; it "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen*, 186 F.3d at 625 (5th Cir. 1999) (quoting *Lightbourn*, 118 F.3d at 426 (5th Cir. 1997)). A putative class representative must have claims or defenses typical of other class members. Fed. R. Civ. P. 23(a)(3). Factual distinctions or differences among class members' claims will not ordinarily defeat typicality, because the "critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). So long as the claims of the class members and putative class representative arise from a similar course of conduct and rely on the same legal theory, differences in damages and minor factual variations will not defeat typicality. *See James*, 254 F.3d at 571; *Lightbourn*, 118 F.3d at 426 ("In the event the class members in this case were to proceed in a parallel action, they would advance legal and remedial theories similar, if not identical, to those advanced by the named plaintiffs.); *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

Despite the fact that each class member will have to prove copyright ownership and may be subject to estoppel or fair use defenses, typicality exists among the Named Plaintiffs and class

9

members. As stated above, typicality is not a stringent test, and it is met where there is a substantial similarity among the facts and legal theories. All of the Named Plaintiffs and putative class members are owners of copyrights to various musical selections that the IWF, through its inmate and law enforcement personnel, allegedly copied and sold within the CDC between May 2002 and July 2003. Each Named Plaintiff, and presumably each class member, denies giving permission for this copying and asserts claims for infringement under the Copyright Act. The evidence submitted thus far reveals that all of the claims are based on the same legal theory, infringement under the Copyright Act, and stem from an alleged practice of improperly copying and selling copyrighted musical selections at the CDC. In light of the liberal application of the typicality standard and the number of similarities among the Named Plaintiffs' and class members' claims, typicality is satisfied.[3]

### 4. Adequacy of Representation

Adequacy of representation, the fourth requirement of Rule 23(a), requires a court to find that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The necessary inquiry is two-fold; the court "must consider '[1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees[.]'" *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002) (quoting *Horton*, 690

---

[3] As the defendants properly note, the evidence suggests that many of the Named Plaintiffs' claims will likely have to overcome estoppel or fair use defenses, and each class member will have to show copyright ownership and actual infringement. These individual issues, however, while highly relevant to other certification requirements, are insufficient to defeat typicality when, similar to *David* and *Ryan*, the "gravamen" of the dispute is a documented and narrow time period in which defendants allegedly committed multiple acts of copyright infringement. *See Ryan*, 1999 WL 16320, at *8; *David*, 697 F.Supp. at 756-57. The individual issues facing the Named Plaintiffs and class members, for purposes of typicality, are subordinate to the facts and legal theories underlying their claims.

10

F.2d at 484).  Included under this second prong is whether the interests of the putative class representative are so diminished or antagonistic to those of the class members that they create a conflict of interest.  *See Mullen*, 186 F.3d at 626.

The record of these proceedings amply demonstrates that Plaintiffs' counsel are zealous and competent; therefore, the undersigned is concerned only with the adequacy of the representative parties.  A review of the testimony and depositions in this case reveals that two of the putative class representatives - Utopia and Ceiba - are inadequate because they are subject to defenses that create a conflict of interest or have a diminished interest compared to other potential class members.[4]  For example, there is evidence that Utopia, the primary putative class representative, will be required to overcome an estoppel and fair use defense.  Bo Fain, one of the inmates connected with the IWF's alleged copying program, testified during deposition that Jamie Coleman ("Coleman"), a co-owner of Utopia and an inmate at CDC, had authorized the copying of Utopia's copyrighted compact discs and ordered copies for several of his friends.  Bo Fain Dep., p. 158-62  Furthermore, Bo Fain stated that, as far as he knew, Coleman was the only artist or copyright owner who authorized the copying of protected works.  Id. at p. 162.

Bo Fain's testimony in this case will of extreme importance to all potential class members because it details how the IWF's copying program operated and which CDC officials had knowledge of the program.  Utopia, however, because of the above-referenced defense, will be put in the uncomfortable position of having to challenge the portion of Bo Fain's testimony recounting Coleman's grant of permission for the copying while claiming that the remainder of

---

[4] Although Utopia is joined by four other plaintiffs in this case, only two of those four - Ceiba and Par-La - have been put forth as candidates for class representative.  The remaining two - Suave and Rap-A-Lot - did not appear at the certification hearing and have not provided any evidence that the Court could use to assess their adequacy.  Thus, consideration of an adequate class representative is limited to Utopia, Ceiba, and Par-La.

11

his testimony should be unconditionally accepted by the fact finder.

In addition, Clarence Anderson ("Anderson"), the other co-owner of Utopia, testified at the certification hearing that he first learned of the copying from Coleman during his incarceration at CDC toward the end of 2002, and that he notified Utopia's attorney, the Plaintiff's counsel in this case, shortly thereafter. Despite being aware of the alleged copying at CDC, neither Anderson nor Utopia's counsel notified the proper authorities or attempted to stop the copying until this suit was filed roughly seven months later. Tr., p. 123-126.

Thus, Utopia may be hampered in its ability to adequately represent any class by its own need to overcome the defendants' claims that Utopia, through Coleman, condoned the copying such that the defendants were engaged in fair use, and that Utopia's acquiescence after learning of the copying estops it from recovering.

Finally, pursuant to this Court's previous ruling in this case, Utopia is limited to recovery of actual damages and therefore stands to gain substantially less than class members who are eligible to recover statutory damages under the Copyright Act. The unique conflict and preoccupations that defendants' anticipated defenses present to Utopia, as well as the vast difference in damages, precludes Utopia from being an adequate class representative.

Like Utopia, Ceiba is not an adequate class representative because it will face many of the same defenses and preoccupations. At the certification hearing, Warren Cotton, the CEO and president of Ceiba, testified that he had voluntarily donated "The Palmers, We've Got to Choose," the compact disc that the IWF allegedly copied, to the CDC to be given to his half-brother who was incarcerated at CDC. Tr., p. 59. Cotton also alluded to the fact that the Palmers, the artists whose music was copied, first learned of the alleged infringement because they visited CDC as part of their ministry, and that they notified him that the copying had

12

occurred. While this evidence does not present the level of conflict that the evidence concerning Utopia does, it nonetheless suggests at least a colorable defense of consent or fair use. As a class representative, Ceiba will not only have to represent all of the class members who have no connection with anyone incarcerated at CDC, but also contend with defendants' claim that Cotton's half-brother had permission to copy the CD or, as a donee and owner, engaged in fair use. This preoccupation raises serious questions about Ceiba's ability to represent class members who have no connection to inmates of CDC and thus are less likely to face a consent or fair use defense. Therefore, Ceiba is not an adequate class representative.

Unlike Utopia and Ceiba, Par-La appears to be an appropriate class representative. Par-La is a registered copyright owner of at least one copied musical selection and appears eligible to recover statutory damages under the Copyright Act. There is no evidence at this juncture that suggests that Par-La is connected to any of the inmates of CDC or that it might have consented to the copying or that the defendants engaged in fair use of its work. The defendants' claim that Eric Johnson ("Johnson"), the owner of Par-La who testified at the certification hearing, is too uninformed to act as a class representative is unconvincing. The class representative is not required to possess legal expertise, but is merely required to be willing and able to take an active role in control of the litigation and to protect the interests of the other class members. When asked about what he thought his responsibilities as class representative might entail, Johnson replied:

> To stand firm on copyright infringement laws. You know, there's a lot of it out here. And, I mean, today nobody is getting their just due, from the streets all the way to Napster, you know. And somebody has to pay, you know, if they're, you know, taking other people's work and resubmitting it.

Tr., p. 103. Defendants argue that Johnson's reference to "Napster" and inability to recall precisely when he learned of the infringement proves that he cannot adequately act as a class

13

representative. To the contrary, Johnson's reference to "Napster" was made in noting the prevalence of copyright infringement ("from the streets all the way to Napster") and demonstrates at least a cursory understanding of the issues and the class members' interests. Furthermore, Johnson's inability to recall exact dates or expound on copyright law does not disqualify him from serving as a class representative. The undersigned finds that, if a class were to be certified, Par-La would make an adequate class representative.

C. Requirements of Rule 23(b)(3)

As stated above, to obtain class certification, a party must not only meet the requirements of 23(a), but also must meet the requirements of Rule 23(b)(3) by demonstrating both predominance and superiority. This matter is analyzed under those requirements below.

**1. Predominance**

Predominance means that "questions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. Rule 23(b)(3). While similar to commonality under Rule 23(a), predominance is a stricter test that involves the balancing of individual and common issues among the proposed class in an effort to determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

At least one other court has denied class certification under Rule 23(b)(3) in a copyright

14

infringement case, and much of the analysis in that case is relevant here.[5] *See WB Music Corp.*, 1995 WL 631690, at *5-6. The court in *WB Music Corp.* noted that the central dispute in *David*, a copyright infringement case where certification was granted, was "the negotiation and licensing processes between SMC and ASCAP. The individual copyrights were deemed 'collateral' because their individual applicability was not in issue and did not affect the outcome." *Id.* at *5. In distinguishing *David*, the court stated:

> Unlike *David*, . . . each alleged act of infringement may turn on whether an individual copyright owner has licensed Rykodisc without HFA's knowledge. Moreover, if each individual copyright owner brought a separate copyright infringement claim, there is no common element which each owner would need to prove in each separate action. The validity of the copyright, the absence of any valid license, and the specific act of infringement are particular to that one case and no other.

*Id.* at *6.

Although common issues of law and fact exist among the class members in this case, they do not predominate over the burdens that each class member will bear in proving infringement. As defendants correctly note, and as was the case in *WB Music Corp.*, each putative class member and plaintiff must show copyright ownership, actual infringement, the number of infringements, and eligibility for statutory damages, as well as overcome any defenses that defendants assert. Indeed, Plaintiffs acknowledged this in their post-hearing brief, but claim that "viewing these determinations as purely 'individual issues' ignores the fact that the claims of every member of the class are uniformly premised upon the alleged unauthorized copying of

---

[5] The three other cases addressing class certification in the context of copyright infringement, *Ryan*, *Estate of Berlin*, and *David*, did not address predominance. Furthermore, the language from some of those cases that supports Plaintiffs' argument is found in sections discussing the requirements of Rule 23(a). *See Ryan*, 1999 WL 16320, at *8-9 (typicality); Jan. 13, 1999); *David,* 697 F.Supp. at 756-7 (typicality).

15

copyrighted works by Defendants." Pl.s' Post Hearing Br., p. 11. The undersigned finds that the individual issues, especially each putative class member's eligibility for statutory damages and the merits of the defendants' defenses, will weigh heavily on the class members' claims. Proof of individual copyright ownership is the preeminent element of a claim of infringement, and the date of registration will be highly determinative of whether a class member may recover statutory damages. The common issues in this case, namely the operations of the IWF and the actual or constructive knowledge or negligence of CDC officials, may be capable of being established through the same testimony and evidence, such as the order forms obtained from defendants and the "Sales Report" that Utopia compiled. But, even with this evidence, numerous class members will likely face a fair use defense because the above evidence does not address the issue of whether the alleged copies were ordered by the owner of the compact disc for personal use or by some other non-owner. Thus, while the common issues in this case are indeed important, they do not predominate over the issues that every putative class member will need to address in order to recover. The undersigned finds that this case does not meet the predominance standard required under Rule 23(b)(3), and therefore recommends that class certification be DENIED on that basis.

### 2. Superiority

Although the absence of predominant common issues obviates the need for an analysis of the superiority of proceeding as a class action, the undersigned notes several facts indicating that a class action is inferior and unnecessary. Despite reports of the alleged copying in the media, only five plaintiffs, all of whom are copyright owners of some of the less well-known selections and represent only a fraction of the alleged infringements, have appeared in this case, and there is no evidence that any of the other alleged owners have shown any interest in this case. This fact suggests that the other potential class members are not interested in pursuing this matter; therefore, the case is better left uncertified so that the few interested parties can move forward in

16

a less cumbersome format. Also, as is evident from Utopia's role in this case, the availability of statutory damages may vary with each and every class member. Just as there is a great difference in potential recovery between actual and statutory damages, so is the difference in motivation between parties who can recover statutory damages and those who cannot. As an example, Utopia, having been limited to recovery of actual damages, stands to gain very little compared to plaintiffs who might potentially recover $150,000 in statutory damages for each infringement. This potential disparity in class members' interests and the difficulties that defendants' individual defenses will present again suggests that a class action is not appropriate. Finally, given the fact that each potential class member will have to present individual proof in order to recover, the class action format is not superior from the standpoint of judicial economy or prevention of incompatible results. Therefore, it is recommended that certification of the class be DENIED on the basis of lack of superiority of the class action format under the facts of this case.

## CONCLUSION

Plaintiffs, while satisfying the requirements of Rule 23(a), have failed to demonstrate that class certification is appropriate under Rule 23(b)(3). The common issues among class members do not predominate over the proof needed for recovery or in order to overcome the obstacles and defenses that each individual class member will face. Similarly, given the small number of interested class members thus far, the vast difference between statutory and actual damages, the inherently cumbersome procedural vehicle that class actions necessarily are, and the failure of a class action in this case to provide any significant gains from the standpoint of judicial economy, class certification is not the superior means of proceeding with this case. Therefore, it is recommended that class certification be **DENIED.**

Under the provisions of 28 U.S.C.§636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 10th day of January, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE