IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE AUTHORS GUILD, INC., Associational Plaintiff, BETTY MILES, JOSEPH GOULDEN, and JIM BOUTON, on behalf of themselves and all other similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>GOOGLE INC.,<br><br>　　　　　　　Defendant. | Civil Action No. 05 Civ. 8136 (DC)<br><br>**ECF Case** |

**DEFENDANT GOOGLE INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 1

    A. The third prong of the *Hunt* test is an important limit on federal jurisdiction. ........................................................................................................ 2

    B. *Hunt* bars associational standing where litigating the asserted claims requires individualized inquiry, regardless of the relief sought. .............................. 3

    C. Copyright ownership issues preclude associational standing. ............................... 5

        1. It is appropriate to take the copyright ownership issue into account in determining whether the *Hunt* test is met. ............................................... 5

        2. Individual issues as to copyright ownership preclude associational standing. ........................................................................................................ 5

    D. Fair use issues preclude associational standing. ..................................................... 6

        1. It is appropriate to take the fair use issue into account in determining whether the *Hunt* test is met. .................................................. 6

        2. Individual issues as to fair use preclude associational standing. .................. 8

    E. Individual issues as to Partner Program works preclude associational standing for the ASMP. ........................................................................................ 10

    F. Plaintiffs' attempts to distinguish *AIME* and *NAFP* are unavailing. ..................... 10

        1. *AIME* ........................................................................................................... 10

        2. *NAFP* .......................................................................................................... 11

    G. The copyright associational standing cases are distinguishable. .......................... 12

        1. *Itar-Tass* ..................................................................................................... 12

        2. *EchoStar* .................................................................................................... 13

        3. *Olan Mills* ................................................................................................. 14

    H. Remedies in a copyright infringement lawsuit must be tied to the works at issue. ....................................................................................................................... 14

III. CONCLUSION .............................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*,
　397 U.S. 150 (1970) .................................................................................................................. 3

*Association for Information Media & Equipment v. Regents of the University of California*,
　No. CV 10-9378 CBM (MANx) (C.D. Cal. Oct. 3, 2011) ................................................ 10, 11

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
　448 F.3d 605 (2d Cir. 2006) ................................................................................................. 4, 9

*Campbell v. Acuff-Rose Music, Inc.*,
　510 U.S. 569 (1994) .................................................................................................................. 4

*CBS Broadcasting, Inc. v. EchoStar Communications Corp.*,
　450 F.3d 505 (11th Cir. 2006) ................................................................................................ 14

*Chicago Bd. of Educ. v. Substance, Inc.*,
　354 F.3d 624 (7th Cir. 2003) .................................................................................................. 15

*EMI April Music Inc. v. Jet Rumeurs, Inc.*,
　632 F. Supp. 2d 619 (N.D. Tex. 2008) ................................................................................... 15

*Faulkner v. Nat'l Geographic Enters. Inc.*,
　409 F.3d 26 (2d Cir. 2005) ..................................................................................................... 10

*Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*,
　284 F.3d 575 (5th Cir. 2002) .................................................................................................... 7

*Hunt v. Washington State Apple Advertising Commission*,
　432 U.S. 333 (1977) .........................................................................................................passim

*In re Senior Cottages of America, LLC*,
　482 F.3d 997 (8th Cir. 2007) .................................................................................................... 8

*Itar-Tass Russian News Agency v. Russian Kurier*,
　No. 95 Civ. 2144 (JGK), 1997 WL 109481 (S.D.N.Y. Mar. 10, 1997),
　*rev'd in part*, 153 F.3d 82 (2d Cir. 1998) ......................................................................... 12, 13

*Kelly v. Arriba Soft Corp.*,
　336 F.3d 811 (9th Cir. 2003) .................................................................................................... 9

*Leibovitz v. Paramount Pictures Corp.*,
　948 F. Supp. 1214 (S.D.N.Y. 1996),
　*aff'd*, 137 F.3d 109 (2d Cir. 1998) ...................................................................................... 4, 8

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992) ............................................................................................................. 5, 7

*Major Bob Music v. Heiman*,
    No. 09-CV-341-BBC, 2010 WL 1904341 (W.D. Wis. May 11, 2010) .................................. 15

*Murphy v. Millennium Radio Grp. LLC*,
    650 F.3d 295 (3d Cir. 2011) ................................................................................................ 9

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ................................................................................................ 7

*National Association of Freelance Photographers v. Associated Press*,
    No. 97 Civ. 2267 (DLC), 1997 WL 759456 (S.D.N.Y. Dec. 10, 1997) .............................. 10, 11

*National Association of Letter Carriers, AFL-CIO v. U.S. Postal Service*,
    604 F. Supp. 2d 665 (S.D.N.Y. 2009) ................................................................................. 7

*New York Metro Area Postal Union v. Potter*,
    No. 00Civ.8538(LTS)(RLE), 2003 WL 1701909 (S.D.N.Y. Mar. 31, 2003) ........................... 5

*Olan Mills, Inc. v. Linn Photo Co.*,
    795 F. Supp. 1423 (N.D. Iowa 1991),
    *rev'd*, 23 F.3d 1345 (8th Cir. 1994) .................................................................................... 14

*Oregon ex rel. Department of Transportation v. Heavy Vehicle Electronic License Plate, Inc.*,
    157 F. Supp. 2d 1158 (D. Or. 2001) .................................................................................... 8

*Rent Stabilization Ass'n of N.Y. v. Dinkins*,
    5 F.3d 591 (2d Cir. 1993) ........................................................................................ 3, 4, 5, 6

*UMG Recordings, Inc. v. MP3.com, Inc.*,
    92 F. Supp. 2d 349 (S.D.N.Y. 2000) ................................................................................... 9

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
    517 U.S. 544 (1996) ......................................................................................................... 2, 3

*United States v. Richardson*,
    418 U.S. 166 (1974) .............................................................................................................. 3

*Warth v. Seldin*,
    422 U.S. 490 (1975) .......................................................................................................... 2, 5

**Statutes**

17 U.S.C. § 107(4) ....................................................................................................................... 4

17 U.S.C. § 501(b) .................................................................................................................. 3, 14

17 U.S.C. § 501(e) ...................................................................................................................... 14

29 U.S.C. § 2101 .......................................................................................................................... 2

**I.      INTRODUCTION**

The Authors Guild, Inc. ("AG") and the American Society of Media Photographers, Inc. ("ASMP") [1] ask the Court to ignore the factual realities of this litigation.  The AG and ASMP are not owners of the copyrights asserted in this case, and the associations do not possess the facts about copyright ownership, individual economic impact, or the other individualized questions required of a plaintiff in a copyright litigation matter where ownership and fair use are at issue.  The associations' briefs focus on Google in an attempt to mask this truth.

There will be a time for individual plaintiffs to challenge the merits of Google's project to make books searchable online and to display brief snippets, allowing users to discover the existence of books responsive to their queries.  That question, however, is not yet before the Court.  Instead, the issue presented is a narrow one: whether the ASMP and AG can litigate this case on behalf of their members without the involvement of those individual members.  They cannot.

**II.     ARGUMENT**

In *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), the Supreme Court held that "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  The third prong is not satisfied here, because both the associations' claims and their requested relief require the participation of individual association members.

---

[1] For the Court's convenience, this omnibus Reply Memorandum responds both to arguments made by the AG and the ASMP.  The Reply Memorandum filed in the ASMP case contains a subset of the arguments contained in this omnibus Reply Memorandum, responding only to the arguments made by the ASMP, and is filed separately because counsel for the ASMP declined Google's request to file a 15-page omnibus reply memorandum.

### A. The third prong of the *Hunt* test is an important limit on federal jurisdiction.

Plaintiffs make much of the fact that the Supreme Court has characterized the third prong of the *Hunt* test as "prudential," and from that argue that this Court may essentially disregard it at will. AG Memorandum of Law in Opposition to Motion to Dismiss ("AG Opp."), *AG* ECF No. 997 at 4-5; ASMP Memorandum of Law in Opposition to Motion to Dismiss ("ASMP Opp."), *ASMP* ECF No. 36 at 7-8. But Plaintiffs misunderstand the Court's opinion in *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 556-57 (1996) ("*UFCW*"), which held the third prong of the *Hunt* test was not a "constitutional necessity." In so holding, the Court did not regard the third prong as the sort of optional, standardless inquiry that Plaintiffs make it out to be, but instead upheld it as an important limit on federal jurisdiction—albeit one which is malleable by Congress. In *UFCW*, the issue before the Court was the constitutionality of the provision of the Worker Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. § 2101 *et seq.*, which allowed labor unions to sue on behalf of their members for violations of that Act. *Id.* at 545-46. The defendant argued that Congress had violated Article III of the Constitution by conferring standing on an association where the claim asserted or the relief requested required the participation of individual members in the lawsuit. *Id.* at 551. Thus, the question before the court was whether "this third prong of the test is constitutional and absolute, or prudential and malleable by Congress." *Id.* at 544. The Court held that the third prong of the *Hunt* test was a requirement that "Congress may abrogate." *Id.* In other words, like other prudential standing doctrines, the third prong of the *Hunt* test is a "rule[] of judicial self-governance that Congress may remove by statute." *Id.* at 558 (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975)) (internal quotations and modifications omitted).

Far from abrogating *Hunt*'s third prong as it applies to claims for copyright infringement, Congress has narrowly defined the class of aggrieved parties with standing to sue. Only "[t]he legal or beneficial owner of an exclusive right under a copyright" has such standing, and may sue only for "infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).

2

*Hunt*'s third prong is a "rule[] of judicial self-governance," *UFCW* at 558, but that does not mean that it is not *a rule*. *See UFCW* at 556 ("To see *Hunt*'s third prong as resting on less than constitutional necessity is not, of course, to rob it of its value."). A court may not, for example, adjudicate a claim which raises a generalized grievance, or which falls outside the zone of interests protected by the legal provision invoked, even though those limitations on standing are likewise "prudential" in nature. *See, e.g.*, *United States v. Richardson*, 418 U.S. 166 (1974) (generalized grievance); *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153-54 (1970) ("zone of interests"). Likewise here, although it is "prudential," the rule against associational standing where the claim asserted or the relief requested requires the participation of individual members is a requirement imposed by the Supreme Court and may not be overlooked or sidelined.

### B. *Hunt* bars associational standing where litigating the asserted claims requires individualized inquiry, regardless of the relief sought.

The associations also assert that because they seek only declaratory and injunctive relief, rather than damages, the third prong of the *Hunt* test is perforce satisfied. "However, the relief sought is only half of the story." *Rent Stabilization Ass'n of N.Y. v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993) ("*RSA*"). Even if the putative associational plaintiff shows that the relief requested does not require the participation of individual members (and, as discussed in part II-H, Plaintiffs have not made such a showing here), the court then "must examine the claims asserted to determine whether they require individual participation." *Id.* The *RSA* case is illustrative. The Rent Stabilization Association of the City of New York is an association of landlords that, like the Authors Guild, "provides various services for its members, including the prosecution of legal actions to preserve the rights of its members." *Id.* at 592-93. The RSA sought an injunction against the enforcement of certain rent stabilization regulations which, according to the RSA, violated the Takings Clause. *Id.* at 593. In order to decide the answer to that question, the court would have had "to engage in an *ad hoc* factual inquiry for each landlord who alleges that he has suffered a taking" to determine whether he had suffered an injury. *Id.* at 596. Even if harm was

shown, the reasons for the harm would need to be examined in each case, because losses due to inefficiency or incompetence are not cognizable under the Takings Clause. *Id.* Accordingly, because "whether a taking has occurred depend[ed] not only on a legal interpretation of takings jurisprudence, but also on a variety of financial and other information unique to each landlord," *id.* at 597, the Second Circuit affirmed the dismissal of the RSA's complaint. *Id*. at 591.

The claims of the associations here, like those of the RSA, require the Court to inquire into the amount and type of economic harm to individual association members. Like the takings analysis, the fair use analysis requires the Court to apply the law to each instance of alleged harm—here, to each work alleged to have been infringed. *See, e.g.*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 (1994) (fair use must "be judged case by case, in light of the ends of the copyright law."); *Leibovitz v. Paramount Pictures Corp.*, 948 F. Supp. 1214, 1219 (S.D.N.Y. 1996), *aff'd*, 137 F.3d 109 (2d Cir. 1998) (the fair use inquiry requires "individualized analysis"). As in the *RSA* case, the question whether there has been economic harm to each individual member is relevant to the outcome, because the fourth fair use factor looks to "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). And, as in the *RSA* case, a mere showing of *some* economic harm is not sufficient; instead, each plaintiff must show that the harm is of a type and has a cause that satisfies the applicable legal standard. In *RSA*, the apartment owners would have needed to show that their low revenues were due to rent stabilization regulations, rather than being due to other factors such as "poor administration." *RSA* at 596. Here, the copyright owners will need to show that any economic harm is due to Google Book Search acting as a market substitute for sales or licenses of their works, rather than, for example, resulting from non-substitutive (i.e., transformative) uses of their works—or, for that matter, resulting from "poor administration." *See, e.g.*, *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614 (2d Cir. 2006) (only "impairment to a traditional, as opposed to a transformative market" is cognizable). That is why Plaintiffs' attempt to distinguish *RSA* on the ground that "[t]he 'takings' element of the claim thus required proof akin to an individualized damage assessment," AG Opp. at 8 n.3, is

4

unavailing: the fair use issues in this case, too, require proof akin to an individualized damage assessment.[2] Here, as in *RSA*, the necessity of that inquiry means that the third *Hunt* requirement is not satisfied.

### C. Copyright ownership issues preclude associational standing.

#### 1. It is appropriate to take the copyright ownership issue into account in determining whether the *Hunt* test is met.

The ASMP's assertion that the court must ignore individualized inquiries which relate to a particular association member's standing in analyzing *Hunt*'s third prong is plainly wrong. Injury-in-fact is a requirement in order for a plaintiff to have Article III standing. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical") (internal quotations and citations omitted). But where the presence and degree of that injury varies among association members in ways that matter to the claim asserted or the relief requested, those same facts may defeat associational standing. *See, e.g.*, *Warth*, 422 U.S. at 515-16 (denying associational standing because "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof"). It is appropriate to take into account the complexities of the copyright ownership inquiry in adjudicating *Hunt*'s third prong.

#### 2. Individual issues as to copyright ownership preclude associational standing.

The AG asserts that "Google sprinkles its brief with references to alleged ownership and contract interpretation issues in publishing contracts, but fails to explain how these issues have

---

[2] Similarly, in *New York Metro Area Postal Union v. Potter*, No. 00Civ.8538(LTS)(RLE), 2003 WL 1701909, at *2 (S.D.N.Y. Mar. 31, 2003), the plaintiff association sought only injunctive and declaratory relief on Family and Medical Leave Act claims. The court dismissed the complaint for failure to meet the third *Hunt* requirement, because the plaintiff "would need to rely on evidence from individual employees to prove their claims of disparate treatment." *Id.* at *3. Like the claims of disparate treatment in *New York Metro Area Postal Union*, the fair use issues in this case require evidence from individual members as to market harm.

any relevance to the issue of Google's infringement." AG Opp. at 13. As explained in Google's Memorandum of Law in Support of Motions to Dismiss ("Google Br."), *AG* ECF No. 993 at 4-9, and in greater detail in Google's Opposition to the Motion for Class Certification in the *AG* case ("Google Cl. Cert. Opp."), *AG* ECF. No. 1000 at 10-21, determining whether each member owns the necessary exclusive rights requires three fact-intensive inquiries: looking to the publishing contract to determine whether the author is a "legal owner"; looking to the publishing contract to determine whether the author is a "beneficial owner"; and looking to the circumstances of the work's creation to determine whether the work was "made for hire," thus rendering the author neither a legal nor a beneficial owner. These issues determine which association members may bring claims against Google, and which association members may not. It is true, as the AG asserts, that by relying on the fair use doctrine, Google knew that it might need to defend its fair use rights against claims brought by copyright holders. AG Opp. at 16. But Google did not take on the responsibility of defending its actions against claims by those who *cannot* show that they are legal or beneficial owners. That Google asserted its fair use rights, and that the AG disputes the extent of those rights, does not excuse the AG's members from satisfying the same ownership test imposed on all copyright plaintiffs.

    **D.**    **Fair use issues preclude associational standing.**

        **1.**    **It is appropriate to take the fair use issue into account in determining whether the *Hunt* test is met.**

This case is, at its heart, a case about fair use. To ignore that fact would be to elevate form over substance. In determining whether the claim asserted or the relief requested required the participation of individual members in the lawsuit, the court should take into account all of the issues that, as a practical matter, will need to be inquired into in order to resolve the plaintiff's claims and, if appropriate, to provide the requested relief. *See, e.g.*, *RSA* at 596. In this case, one such issue is fair use. That fair use is an affirmative defense does not mean that litigating the associations' claims will somehow not involve the individualized fair use inquiry. *See, e.g.*, *Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir.

2002) (denying associational standing on the ground that individual association members would need to participate in the litigation because "principles of due process would require that [the defendant] be able to obtain sufficient knowledge of the affected contracts to defend against the representatives' claims and, perhaps, to assert the affirmative defense of justification"). Although Google bears the burden at trial of proving the facts underlying its fair use defense, the associations bear the burden at this stage of showing that they have standing, and that analysis must take into consideration the individualized nature of the factual inquiries which will be necessary to determine whether Google's uses are fair.  *See Lujan*, 504 U.S. at 560-61 (the party invoking federal jurisdiction bears the burden of establishing standing); *cf. Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) ("While [defendant] will ultimately bear the burden of proving the merits of" its affirmative defense, the burden remained on plaintiffs to support their motion for class certification by showing "that more 'substantial' aspects of this litigation will be susceptible to generalized proof for all class members than any individual issues").

The cases cited by the ASMP are not to the contrary.  This Court's opinion in *National Association of Letter Carriers, AFL-CIO v. U.S. Postal Service*, 604 F. Supp. 2d 665, 672 (S.D.N.Y. 2009) does not hold that a case-dispositive affirmative defense such as fair use should not be considered when adjudicating the third prong of the *Hunt* test.  Instead, the Court held that associational standing was appropriate in the circumstances of that case, in which an "individualized inquiry [was] not required to resolve the broader legal question of whether OIG has the legal authority to ask for the information in the first place."  *Id.*  Where a case can be reduced to a question of law, as in *National Association of Letter Carriers*, the third prong of the *Hunt* test is met.  But where, as here, the central issues in the case depend on individualized circumstances and factual inquiries, the third prong of the *Hunt* test is not met, and associational standing should be denied.

The ASMP's other cases are even less relevant.  *In re Senior Cottages of America, LLC*, 482 F.3d 997, 1004 (8th Cir. 2007), does not deal with the third prong of the *Hunt* test, but instead with the question whether the ordinary Article III standing requirements are met where

7

the defendant has an *in pari delicto* defense.  The other case cited by the ASMP on this issue, *Oregon ex rel. Department of Transportation v. Heavy Vehicle Electronic License Plate, Inc.*, 157 F. Supp. 2d 1158, 1170 (D. Or. 2001), likewise deals only with ordinary Article III standing, not with the third prong of the *Hunt* test.  The ordinary Article III standing analysis does not ask, as the *Hunt* test does, whether litigating the claim asserted or providing the relief requested will require the participation of individual members, because in the ordinary Article III standing analysis, the injured party is before the court and so there is no question of participation.  Thus, cases outside the associational standing context are of little relevance here.

### 2. Individual issues as to fair use preclude associational standing.

The AG asserts that "Google's fair use defense cannot be adjudicated as if Google made an individual determination as to the uses it would make of each one of millions of individual books."  AG Opp. at 16.  The AG is wrong.  The fair use question, as a matter of law, requires "individualized analysis."  *Leibovitz*, 948 F. Supp. at 1219.  While Google believes that its conduct in scanning works and displaying snippets of them is fair for all works included within Google Books, that does not mean that the evidence proving fair use is the same in all cases.  Litigating the fair use question will require individualized evidence.

The first factor focuses on the conduct of the accused infringer.  Google agrees that because Google used the books at issue similarly, the first factor is not an individualized inquiry.  But the first factor is only one part of the analysis, and the other three factors vary from book to book, as described in detail in Google's opposition to the motion for class certification in the *AG* case.  *See* Google Cl. Cert. Opp., AG ECF No. 1000 at 17-22.

The AG argues that all of the "[e]vidence bearing on the fourth factor will be common to the members of the Authors Guild."  AG Opp. at 20.  Even if the AG chose to limit its allegations on the fourth factor to the types of hypothetical and speculative market harm identified in its opposition brief, some of these arguments still require individualized evidence from each association member.  For example, the AG does not explain how Google's actions have resulted or could result in "exposure of copyrighted works to Internet piracy," *id.*, but even

8

if such a speculative argument were permissible (which it is not), it would have to depend on the extent to which the risk of piracy has been increased by Google's actions.  This in turn would require an inquiry at least into whether the book is already available in electronic form, such as in the form of an e-book, and whether the degree of market demand for the book makes piracy a realistic risk.  Nor does the AG explain how Google's actions have resulted in "loss of revenue from sale of hardcopies and digital copies of works to libraries and other parties." *Id.*  This argument, at least, does not apply across the board to all authors, as survey evidence has shown. *See* Google Cl. Cert. Opp. at 3-4.

        The AG's argument for harm in the form of "loss of control over the digital reproduction, distribution, and display of copyrighted works," AG Opp. at 20, is not cognizable under the fourth fair use factor; any time there is a finding of fair use, there is a loss of control, so the loss of control cannot itself affect the fair use analysis.  *See, e.g.*, *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 306 (3d Cir. 2011) (fair use "places important limitations on a copyright owner's right to control the use of its work").  Similarly, the AG's argument for harm in the form of "loss of revenue from licensing digital copies of works (and derivative works) to parties such as search engines, websites and mobile content providers," AG Opp. at 20, is difficult to understand, since license fees for transformative (i.e., non-substitutive) uses such as search are not a cognizable type of harm under the fourth fair use factor, and there is no allegation that Google's actions could affect the market for licensing of substitutive uses, such as e-book licensing.  *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) (search is a transformative purpose); *Bill Graham Archives*, 448 F.3d at 614 (claims of lost license fees for transformative uses are not cognizable under the fourth factor).

        *UMG Recordings, Inc. v. MP3.com, Inc.*, 92 F. Supp. 2d 349 (S.D.N.Y. 2000), is not to the contrary.  In *MP3.com*, the defendant chose to present its fair use arguments as to all factors in an across-the-board manner as to all of the works at issue, which were popular CDs owned by the nine defendants.  *See* MP3.com's Consolidated Opposition to Plaintiffs' Motions for Partial Summary Judgment, *available at* 2000 WL 34474983.  MP3.com made that choice; Google has

9

not. As a result, the Court would be required to evaluate these issues to arrive at a judgment in this case.

### E. Individual issues as to Partner Program works preclude associational standing for the ASMP.

The ASMP has brought one set of claims that mirror those of the AG: that Google's scanning, indexing, and snippet display of books from libraries is copyright infringement, not fair use. First Amended Class Action Complaint, *ASMP* ECF No. 29 at ¶¶ 68-73. But the ASMP also makes allegations as to books scanned at the behest of publishers as part of the Partner Program—a completely different set of claims with a completely different set of underlying facts and defenses. *Id*. at ¶ 58. As to those works, the Court will need to look to the terms of each contract between photographer and each publisher, as those contracts may govern whether the publisher had the rights necessary to place its book in the Partner Program. *See, e.g.*, *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 40 (2d Cir. 2005) (looking to particular contractual terms in determining the scope of a publisher's rights to digitally republish photographs in magazines). Fundamentally, the ASMP's beef with respect to Partner Program books is with the publishers, and the relationship between the photographers and the publishers is governed by the same kind of contracts at issue in the *NAFP* and *Faulkner* cases. *National Association of Freelance Photographers v. Associated Press*, No. 97 Civ. 2267 (DLC), 1997 WL 759456 (S.D.N.Y. Dec. 10, 1997) ("*NAFP*").

### F. Plaintiffs' attempts to distinguish *AIME* and *NAFP* are unavailing.

#### 1. *AIME*

The AG and ASMP take different approaches to dealing with *Association for Information Media & Equipment v. Regents of the University of California*, No. CV 10-9378 CBM (MANx) (C.D. Cal. Oct. 3, 2011) ("*AIME*") (attached as Exhibit 1 to Google Inc.'s Request for Judicial Notice, *AG* ECF No. 994), which holds that because proof of ownership of a particular copyright is an element of each copyright claim, participation of individual copyright holders is necessary to litigate such claims. Neither association's approach is persuasive.

The AG argues that the *AIME* case is distinguishable because the AIME did not demonstrate that one or more of its members had standing in their own right, thus failing to meet the first prong of the *Hunt* test. AG Opp. at 12. But that does nothing to distinguish the *AIME* court's analysis of the third prong of the *Hunt* test, which the *AIME* court addressed separately from the first prong: "In order to establish a claim for copyright infringement, individual copyrights owners' participation is necessary. This is because having the rights over a copyright is essential to establishing a copyright infringement claim." *AIME* at 7. Likewise the relief requested required the participation of individual association members, because "the scope of that declaratory relief would be limited by the rights that members have over the copyrights." *Id.* Neither of these holdings as to the third *Hunt* prong is affected by the analysis as to the first *Hunt* prong.

The ASMP, by contrast, simply disagrees with Judge Marshall's analysis in *AIME*, calling it a "flawed analysis" which "misinterprets and misapplies the *Hunt* test." ASMP Opp. at 13. The ASMP thinks that Judge Marshall should have ignored copyright ownership in considering whether the claim asserted or the relief requested requires the participation of individual members in the lawsuit. According to the ASMP, it doesn't matter whether one photographer has standing to sue Google or whether all of them do. *Id*. That is not the law. *See* part II-C-1, *supra*. Associational standing is a narrow exception to the ordinary rule that a party must assert its own rights, not the rights of others. The third prong of the *Hunt* test imposes an important limit on associational standing, appropriately preventing the association-wide litigation of issues which, like copyright ownership, depend on case-by-case inquiries.

    **2.**    ***NAFP***

Plaintiffs attempt to distinguish *NAFP* by asserting that, unlike the *NAFP* case, "this case involves no individual transactions or negotiations between Google and the copyright owners of the books in issue." AG Opp. at 12; *see* ASMP Opp. at 16. That assertion is beside the point. Whether or not the case involves individual transactions or negotiations between Google and the copyright owners of the works at issue, Plaintiffs' claims in both the *AG* and *ASMP* cases turn on

11

individual transactions between the *creators* of the works at issue and the *publishers* of those works, which will determine who is a copyright owner of the works at issue with standing to sue. As set forth in part II-C-2, each member's claim turns on the interpretation of an individual contract. And as set forth in part II-E, with respect to the *ASMP* case, each member's claim turns on the interpretation of the license between the photographer and the publisher. These transactions and negotiations must be examined in order to determine whether each member has a claim.

### G. The copyright associational standing cases are distinguishable.

Plaintiffs rest their arguments on three cases which, they claim, stand for the proposition that associational standing is permissible in a case like this one. As discussed below, the cases Plaintiffs cite tell us nothing about how the associational standing inquiry should come out in this case.

#### 1. *Itar-Tass*

As discussed in Google's motions and in section II-C and II-D above, the associations' claims here flunk the third prong of the *Hunt* test for two principal reasons: individualized evidence will be required of each association member as to economic harm as part of the fair use analysis, and individualized evidence will be required of each association member as to copyright ownership. Neither of those issues arose in *Itar-Tass Russian News Agency v. Russian Kurier*, No. 95 Civ. 2144 (JGK), 1997 WL 109481 (S.D.N.Y. Mar. 10, 1997), *rev'd in part*, 153 F.3d 82 (2d Cir. 1998).

In *Itar-Tass*, fair use was not at issue. For this reason, UJR's decision to limit its claims to those for injunctive and declaratory relief meant that issues of individualized harm did not arise. By contrast, here, the same issues of individualized harm that would be necessary to the adjudication of a damages claim are necessary to the adjudication of the fourth factor with respect to Google's fair use claim.

Nor did individualized issues of copyright ownership arise in *Itar-Tass*, because the *Itar-Tass* court applied the Russian law of copyright ownership, rather than United States law.

12

Applying Russian law obviated the need for the sort of individualized analysis of copyright ownership that the Court would need to undertake in this case. One of the individualized questions which precludes associational standing here is the question whether each work was a "work made for hire." Google Br. at 15-16; Google Cl. Cert. Opp. at 15-17. If a work was "made for hire," its creator lacks standing to sue. *Id.* In *Hunt*'s terms, the "claim asserted" requires this individualized determination. But this issue did not preclude a finding of associational standing in *Itar-Tass*, because Russian law "explicitly excludes newspapers from a work-for-hire doctrine." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 84 (2d Cir. 1998). Because all of the works at issue were Russian newspaper articles, no individualized inquiry was required to determine that none of the works was "made for hire." *Id.* And because there was no allegation that publication contracts or other licenses vested copyright ownership in the newspaper rather than in the journalists under Russian law, this simplification of the work-for-hire question meant that there were no questions of copyright ownership for which individualized evidence was required.

The *Itar-Tass* court's determination that the claim asserted did not require the participation of individual UJR members was based on the fact that questions of economic harm and copyright ownership did not require individualized inquiry, under the particular set of claims and foreign legal rules that were at issue in that case. Here, by contrast, the fair use issue raises individualized questions of economic harm, and the application of United States law rather than Russian law as to works created in the United States means that copyright ownership questions cannot be resolved without looking to the particular circumstances of the creation of each work at issue.

### 2. *EchoStar*

Plaintiffs characterize *CBS Broadcasting, Inc. v. EchoStar Communications Corp.*, 450 F.3d 505, 518 (11th Cir. 2006) as a copyright associational standing case, but that case applies a different standing analysis than the claims at issue here. Plaintiffs' claims in this case are made pursuant to section 501(b), which confers standing only on "[t]he legal or beneficial owner of an

13

exclusive right under a copyright." 17 U.S.C. § 501(b). The claims in the *EchoStar* case were made pursuant to section 501(e), *which does not require copyright ownership* in order to bring a claim. *EchoStar* at 518. Section 501(e) does not apply here because the claims at issue do not have to do with the satellite retransmission of broadcast television programming. *See* 17 U.S.C. § 501(e). For this reason, *EchoStar* does not tell us anything about whether associational standing is appropriate in cases where standing is governed by the much more restrictive section 501(b).

### 3. *Olan Mills*

Plaintiffs place substantial reliance on *Olan Mills, Inc. v. Linn Photo Co.*, 795 F. Supp. 1423 (N.D. Iowa 1991), *rev'd*, 23 F.3d 1345 (8th Cir. 1994). That district court case is, of course, an authority only to the extent its reasoning is persuasive. As to the application of the third prong of the *Hunt* test, it is not persuasive. The opinion states the conclusion that "PPA does not assert a claim or request relief which requires the participation in this lawsuit of PPA's individual members," *Olan Mills* at 1427, but does not say why. The court engages in no analysis whatsoever on the application of the third *Hunt* prong. The ASMP's assertion that "the [c]ourt devoted two pages of its decision to analyzing the issue of associational standing," ASMP Opp. at 19, misses the point. The amount of analysis of the first and second *Hunt* prongs is irrelevant. What matters is the persuasiveness of the court's analysis with respect to the point of law for which Plaintiffs cite the opinion—the application of the third *Hunt* prong. That analysis is not merely unpersuasive; it is absent. *Olan Mills* does not provide a basis to confer standing on the associations here.

### H. Remedies in a copyright infringement lawsuit must be tied to the works at issue.

The ASMP argues that declaratory and injunctive relief in a case brought by a copyright owner for infringement of his copyrights may go beyond the copyrights which the plaintiff owns and has proved to have been infringed. The ASMP does not attempt to distinguish the Seventh Circuit opinion cited in Google's moving papers. *See Chicago Bd. of Educ. v. Substance, Inc.*,

354 F.3d 624, 632 (7th Cir. 2003) (Posner, J.) (an injunction must be limited to works in which the particular plaintiff "has valid and subsisting copyright").  Instead, the ASMP cites a number of cases having to do with businesses that performed musical works without the necessary licenses from ASCAP, which is a collective organization to which a large percentage of composers and music publishers have delegated the licensing of public performance rights.  None of those cases analyzes the propriety of enjoining infringement of works not at issue in the lawsuit, and most were either default judgments or were litigated against *pro se* defendants.  *See, e.g.*, *EMI April Music Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 621 (N.D. Tex. 2008) (default judgment); *Major Bob Music v. Heiman*, No. 09-CV-341-BBC, 2010 WL 1904341 (W.D. Wis. May 11, 2010) (*pro se* defendant).  To the extent these cases can be read to stand for the proposition that copyright remedies may be granted without a showing of ownership, validity, and infringement as to each work that is the subject of the remedy, they are wrong, as discussed in the *Chicago Board of Education* case.

### III.    CONCLUSION

For the foregoing reasons, the claims of the associations, who own no copyrights alleged to have been infringed, should be dismissed with prejudice.

Dated:  February 17, 2012                            Respectfully submitted,

By:   */s/ Joseph C. Gratz*
Daralyn J. Durie (*pro hac vice*)
ddurie@durietangri.com
Joseph C. Gratz (*pro hac vice*)
jgratz@durietangri.com
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:  415-362-6666
Facsimile:  415-236-6300

Attorneys for Defendant Google Inc.