**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| The Authors Guild, Inc., Associational Plaintiff, Betty Miles, Joseph Goulden, and Jim Bouton, individually and on behalf of all others similarly situated, | : |
| | : |
| | : |
| | : |
| | : Case No. 05 CV 8136-DC |
| Plaintiffs, | : |
| | : |
| v. | : **FILED ELECTRONICALLY** |
| | : |
| Google Inc., | : |
| | : |
| Defendant. | : |
| | : |
| | : |
| | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   ADEQUACY OF REPRESENTATION ................................................................. 2

   A.   The Named Plaintiffs Are Adequate Representatives ........................................... 2

   B.   Google's Flawed Survey Is Entitled to No Weight ............................... 9

II.  THE PREDOMINANCE REQUIREMENT IS SATISFIED........................................ 12

   A.   Ownership................................................................................................ 14

   B.   Fair Use................................................................................................... 21

   C.   Common Questions Predominate ................................................................ 27

III. A CLASS ACTION IS SUPERIOR ............................................................. 27

IV.  CONCLUSION................................................................................................ 30

## TABLE OF AUTHORITIES

**Page**

*Cases*

*A.V. ex rel. Vanderhye v. iParadigms, LLC,*
    562 F.3d 630 (4th Cir. 2009) ............................................................... 23

*Allen v. Dairy Famers of Am., Inc.,*
    No. 09-230, 2011 WL 6148678 (D. Vt. Dec. 9, 2011) ........................... 7

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.,*
    247 F.R.D. 156 (C.D. Cal. 2007) .......................................................... 7

*Am. Geophysical Union v. Texaco Inc.,*
    60 F.3d 913 (2d Cir. 1994) ..................................................... 24, 25, 26

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................ 17

*Basic Books, Inc. v. Kinko's Graphics Corp.,*
    758 F. Supp. 1522 (S.D.N.Y. 1991) ............................................... 23, 24

*Bieneman v. City of Chicago,*
    864 F.2d 463 (7th Cir. 1988) ................................................................ 7

*Boisson v. Banian, Ltd,*
    273 F.3d 262 (2d Cir. 2001) ............................................................... 17

*Braintree Labs., Inc. v. McKesson Corp.,*
    No. 11-80233, 2011 U.S. Dist. LEXIS 121499 (N.D. Cal. Oct. 20, 2011) ............................... 7

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994) ..................................................................... 22, 26

*Castano v. Am. Tobacco Co.,*
    84 F.3d 734 (5th Cir. 1996) ............................................................... 29

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,*
    150 F.3d 132 (2d Cir. 1998) ............................................................... 26

*Cortner v. Israel,*
    732 F.2d 267 (2d Cir. 1984) ............................................................... 15

*Crasto v. Estate of Kaskel,*
    63 F.R.D. 18 (S.D.N.Y. 1974) ............................................................ 28

*Cummings v. Connell,*
  316 F.3d 886 (9th Cir 2003) ................................................................. 5

*Daniels v. City of New York,*
  198 F.R.D. 409 (S.D.N.Y. 2001) .......................................................... 20

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006)................................................................. 6

*Dunnigan v. Metro. Life Ins. Co.,*
  214 F.R.D. 125 (S.D.N.Y. 2003) .......................................................... 18

*Eisen v. Carlisle & Jacqueline,*
  391 F.2d 555 (2d Cir. 1968)............................................................... 5, 6

*Estate of Berlin v. Stash Records, Inc.,*
  No. 95-6575, 1996 U.S. Dist. LEXIS 9200 (S.D.N.Y. July 1, 1996) .................... 29

*Fleischman v. Albany Med. C.,*
  No. 06-765, 2008 WL 2945993 (N.D.N.Y. 2008) .................................... 3

*Fogarazzo v. Lehman Bros., Inc.,*
  263 F.R.D. 90 (S.D.N.Y. 2009) ........................................................... 17

*Fox v. Cheminova, Inc.,*
  213 F.R.D. 113 (E.D.N.Y. 2003) ......................................................... 29

*Freeland v. AT&T Corp.,*
  238 F.R.D. 130 (S.D.N.Y. 2006) ..................................................... 4, 6, 9

*Garcia v. Freedom Mortgage Corp.,*
  274 F.R.D. 513 (D.N.J. 2011)............................................................... 28

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.,*
  392 U.S. 481 (1968)............................................................................. 7

*Harper & Row Publishers, Inc.  v. Nation Enters.,*
  471 U.S. 539 (1985)................................................................ 23, 24, 25

*Illinois Brick Co. v. Illinois,*
  431 U.S. 720 (1977)............................................................................. 7

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
  MDL No. 1775, 2010 U.S. Dist. LEXIS 125623 (E.D.N.Y. Nov. 24, 2010) ............ 7

*In re Fedex Ground Package System, Inc., Emp't Practices Litig.,*
  No. 305-MD-527, 2007 U.S. Dist. LEXIS 76798 (N.D. Ind. Oct. 15, 2007) .......... 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)................................................................................. 9

*In re Franklin Nat'l Bank Sec. Litig.*,
  574 F.2d 662 (2d Cir. 1978)............................................................................... 17

*In re Initial Public Offering Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006)........................................................................... 19, 20

*In re Napster, Inc. Copyright Litig.*,
  377 F. Supp. 2d 796 (N.D. Cal. 2005) .............................................................. 15

*In re Napster, Inc. Copyright Litig.*,
  MDL-00-1369, 2005 U.S. Dist. LEXIS 11498 (N.D. Cal. March 31, 2005) .............. 18, 29, 30

*In re Nassau Cnty. Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006)................................................................... 12, 14, 27

*In re Playmobil Antitrust Litig.*,
  35 F. Supp. 2d 231 (E.D.N.Y. 1998) ................................................................... 3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010)........................................................................ 18

*In re Visa Check/Mastermoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001).................................................................. 5, 13, 25, 27

*In re Vitamin C Antitrust Litig.*,
  No. 06-MD-1738, 2012 U.S. Dist. LEXIS 13670 (E.D.N.Y. Jan. 25, 2012) ............................. 7

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
  No. 04-5525, 2008 U.S. Dist. LEXIS 36719 (E.D. Pa. May 2, 2008)...................................... 7

*Infinity Broad. Corp. v. Kirkwood*,
  150 F.3d 104 (2d Cir. 1998)........................................................................... 23, 25

*Jacobi v. Bache & Co.*,
  No. 70-3152, 1972 U.S. Dist. LEXIS 15192 (S.D.N.Y. Feb. 8, 1972)................................... 5, 6

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811 (9th Cir. 2003) ............................................................................. 23

*Lanner v. Wimmer*,
  662 F.2d 1349 (10th Cir. 1981) ........................................................................... 5

*Mauro v. Gen. Motors Corp.*,
  No. 07-892, 2008 WL 2775004 (E.D. Cal. July 15, 2008)..................................................... 18

*Meijer, Inc. v. Warner Chilcott Holdings Co. Ill, Ltd.*,
   246 F.R.D. 293 (D.D.C. 2007) ............................................................................................... 6, 7

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247  (2d Cir. 2002) ............................................................................................. 12, 27

*Moreno v. AutoZone, Inc.*,
   251 F.R.D. 417 (N.D. Cal. 2008) ............................................................................................. 18

*Nat'l Ass'n of Letter Carriers v. U.S. Postal Svc.*,
   604 F. Supp. 2d 665 (S.D.N.Y. 2009) ...................................................................................... 23

*New Era Publ'ns Int'l v. Carol Publ'g Group*,
   904 F.2d 152 (2d Cir.), *cert. denied*, 498 U.S. 921 (1990) ..................................................... 23

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*,
   166 F.3d 65 (2d Cir. 1999) ................................................................................................. 23, 24

*Pa. Ave. Funds v. Inyx Inc.*,
   No. 08-6857, 2011 U.S. Dist. LEXIS 72999 (S.D.N.Y. July 5, 2011) ..................................... 29

*Parkinson v. Hyundai Motor America*,
   258 F.R.D. 580 (C.D. Cal. 2008) ............................................................................................. 18

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ................................................................................................. 23

*Pickett v. Iowa Beef Processors*,
   209 F.3d 1276 (11th Cir. 2000) ................................................................................................. 7

*Reyher v. Children's Television Workshop*,
   533 F.2d 87 (2d Cir. 1976) ....................................................................................................... 24

*Robinson v. Metro-North Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001) ....................................................................................................... 4

*Rosemont Enters., Inc. v. Random House, Inc.*,
   366 F.2d 303 (2d Cir. 1966) ..................................................................................................... 24

*Ruggles v. WellPoint, Inc.*,
   272 F.R.D. 320 (N.D.N.Y. 2011) ............................................................................................... 5

*Ryan v. Carl Corp.*,
   1999 U.S. Dist. LEXIS 366 (N.D. Cal. Jan, 12, 1999) ............................................................ 30

*Seijas v. Republic of Arg.*,
   606 F.3d 53 (2d Cir. 2010) ....................................................................................................... 29

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
  323 F.3d 32 (1st Cir. 2003)..................................................................................... 8

*Spagnola v. Chubb Corp.*, 264 F.R.D. 76 (S.D.N.Y. 2010) ...................................... 16

*Srail v. Village of Lisle*,
  249 F.R.D. 544 (N.D. Ill. 2008)............................................................................... 5

*UMG Recordings, Inc. v. MP3.com, Inc.*,
  92 F. Supp. 2d 349 (S.D.N.Y. 2000)............................................................... 22, 23

*Universal City Studios, Inc. v. Nintendo Co.*,
  746 F.2d 112 (2d Cir. 1984)................................................................................... 11

*Utopia Entertainment, Inc. v. Claiborne Parish*,
  No. 03-1355 (W.D. La. Jan. 10, 2006), *report and recommendation adopted*,
  2006 WL 548476 (W.D. La. Mar. 6, 2006) ............................................................ 30

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*,
  350 F.3d 1181 (11th Cir. 2003) ............................................................................... 7

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
  342 F.3d 191 (3d Cir. 2003)................................................................................... 23

*WB Music Corp. v. Rykodisc, Inc.*,
  No. 94-2902, 1995 U.S. Dist. LEXIS 15866 (E.D. Pa. Oct. 26, 1995) .................... 30

*Wu v. Pearson Educ., Inc.*,
  277 F.R.D. 255 (S.D.N.Y. 2011) .............................................................. 18, 29, 30

*Wu v. Pearson Educ., Inc.*,
  Civ. 6557, 2011 U.S. Dist. LEXIS 112308 (S.D.N.Y. Sept. 30, 2011) .................... 16

**Statutes/Legislative Materials**

17 U.S.C. § 107.................................................................................................... 22

17 U.S.C. § 201(b) ................................................................................................. 21

17 U.S.C. § 410(c) ........................................................................................... 17, 19

17 U.S.C. § 501(b) ................................................................................................. 14

H.R. Rep. No. 94-1476 (1976)............................................................................... 22

***Rules***

Fed. R. Civ. P. 23 ............................................................................................ passim

***Other Authorities***

1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*  (4th ed. 2002)........................ 8

2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002)........................ 12

*Manual For Complex Litigation (Fourth)* (2004).............................................. 9, 11, 12

5 Moore's Federal Practice - Civil (2012) ............................................................ 16, 29

3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* (1993)......................................... 22

4 M. Nimmer & D. Nimmer, *Nimmer on Copyright* (2009)......................................... 24

6 William F. Patry,  *Patry on Copyright* (2011) ......................................................... 15

William F. Patry, *Patry on Fair Use* (2011)................................................................ 24

1 William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2012)................................. 3, 4, 5, 8

7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
   (3d ed. 2005) ............................................................................................ 12, 16, 17

Plaintiffs submit this reply memorandum of law in support of their motion for class certification.

In their opening brief, plaintiffs establish that the Rule 23 requirements of numerosity, commonality and typicality are met. Google does not argue otherwise. It alleges only that plaintiffs have failed to establish adequacy of representation, predominance and superiority, and only as to plaintiffs' claim challenging Google's "snippet" display. Google completely ignores plaintiffs' claims of infringement based on Google's scanning for its own uses, and distribution to libraries, of millions of in-copyright books.

Google's position in its opposition brief can fairly be summarized as follows: (a) no author can be an adequate class representative because some authors like to use Google Books and/or "feel" that snippet display benefits them; (b) copyright cases cannot be certified as class actions because establishing copyright ownership creates too many individual issues; and (c) Google's fair use defense presents too many individual issues.

As to the first point, a class action is a legal proceeding, not a referendum. Plaintiffs are prosecuting this case under the Copyright Act as enacted and interpreted by the federal courts. That some class members – who responded to a misleading "survey" paid for by Google – purportedly "feel" that Google Books benefits them, or that several dozen "academic" authors enjoy using Google Books and would not sue Google, does not legitimize Google's massive copyright infringement program. Nor does this case prevent authors from granting Google permission to use their books. Nor are all authors compelled to participate in the class, as plaintiffs are seeking certification under Rule 23(b)(3), which requires that class members be afforded notice and an opportunity to opt out. In short, philosophical differences among class members are not "fundamental conflicts" that vitiate adequacy and preclude class certification.

As to the second point, class actions in copyright cases are permissible under both the Copyright Act and Rule 23.  This case is particularly appropriate for class treatment because it challenges Google's actions based on a single program (Google's Library Project), admittedly undertaken without permission. Further, class actions of all types necessarily involve threshold issues of class membership similar to that of establishing copyright ownership.

As to the third point, Google's fair use defense does not present individualized issues preventing class certification. Google has admittedly scanned books of all genres and types without regard to their content. Google copies and displays verbatim expression from millions of books based on uniform guidelines of its own making. It distributes digital copies of these books to libraries in exchange for access to the books. These common facts, presenting common issues of law, present an ideal case for class certification.

Google's purported concern for the individual views of authors rings hollow. Without consulting a single rightsholder, and with permission from no one, Google arrogated to itself the right to copy, distribute and display these books. It is extremely cynical – not to mention unfair – for Google to implement a single, massive scheme affecting the rights of so many authors while at the same time taking the position that this single scheme must be analyzed in separate legal actions by the affected authors.

Plaintiffs demonstrate below that the Rule 23 requirements of predominance, adequacy of representation and superiority are met, and the proposed class should be certified.

## I.      ADEQUACY OF REPRESENTATION

### A.      The Named Plaintiffs Are Adequate Representatives

Google challenges adequacy of representation under Rule 23(a)(4), but in a very limited manner. It does not dispute the adequacy of class counsel, Google Br. at 7, and its challenge to the adequacy of the named plaintiffs is limited to just one of plaintiffs' three infringement claims

– Google's display of verbatim expression ("snippets"), *id.* at 7-10. Google's brief is silent with respect to plaintiffs' other infringement claims, and thus tacitly concedes plaintiffs' adequacy to represent the proposed class as to the claims based on Google's digitization for its own uses, and distribution to major university libraries, of millions of books in their entirety.[1]

"Courts will generally presume the truth of such demonstrations [of adequacy presented in the opening motion for class certification] unless the party opposing the class presents contrary evidence." 1 William B. Rubenstein, *Newberg on Class Actions* ("*Newberg*") § 3:55 (5th ed. 2012) (citing *Fleischman v. Albany Med. C*, No. 06-765, 2008 WL 2945993 (N.D.N.Y. 2008)); *accord In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 239 (E.D.N.Y. 1998). Google has presented no such contrary evidence as to plaintiffs' reproduction and distribution claims. Accordingly, the only remaining inquiry is whether the named plaintiffs are also adequate representatives as to their claim based on "snippet" display. For the reasons set forth below, plaintiffs Jim Bouton, Betty Miles and Joseph Goulden have no conflicts as to this claim and are plainly adequate to represent the class as to all claims alleged in this action.

It is important to note even in this limited context what Google does ***not*** contend. Google does not dispute that the three representative plaintiffs all hold a United States copyright interest in at least one book copied, distributed and displayed as part of the Library Project, or that their claims are identical to the claims of every other class member. Google makes no argument against typicality in its brief, thereby conceding that plaintiffs have satisfied that requirement under Rule 23(a)(3). This is so even though courts and commentators have observed that the typicality and adequacy requirements tend to merge. A leading treatise on class actions, *Newberg on Class Actions*, states:

---

[1] Some of these libraries have publicly stated an intention to display certain in-copyright books in full. *See* Complaint and Answer in *The Authors Guild v. Hathitrust*, No. 11 Civ. 6351 (S.D.N.Y. Sept. 12, 2011 and Dec. 2, 2011) (Zack Reply Decl. Exs. 16 and 17).

> Logically, the adequacy of the class representative prong of Rule 23(a)(4)
> tends to merge with the requirement that the class representative's claims
> be typical of the class. If a class representative's claim is not typical, she
> may not have the motivation or incentives to adequately pursue the claims
> of other class members. Conversely, **if a class representative's claims
> are typical of those of the class, then the central component
> underlying the theory of representative litigation is already in place:
> by pursuing her own interests, the representative will necessarily
> promote the interests of absent class members as well.**

*Newberg* § 3:57 (emphasis added; footnote omitted); *accord Freeland v. AT&T Corp.*, 238

F.R.D. 130, 141 (S.D.N.Y. 2006).

Google also raises no issue as to the adequacy of the representative plaintiffs to

vigorously pursue the interests of the class by, *e.g.*, possessing a good understanding of the case,

responding to document requests, sitting for their depositions and staying apprised of the events

in the litigation. *See Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir.

2001) (in addition to the absence of a conflict, "assurance of vigorous prosecution" is a factor in

finding adequacy of representation); Bouton Dep. at 3-4, 10-12, 18-19, 25, 32-33, 80-81, 88

(Zack Reply Decl. Ex. 4); Goulden Dep. at 5-8, 19-29, 34-37, 49-50, 59 (*Id.* Ex. 5); Miles Dep.

at 5-6, 58, 62-65, 84-86, 93-94 (*Id.* Ex. 6).[2]

Instead, armed with a misleading and legally irrelevant "survey,"[3] Google argues that,

because some authors have a "feeling" that "snippet" display benefits them, *nobody* can be an

adequate representative for plaintiffs' display infringement claim. Google's position is meritless.

First, even if Google could show that some absent class members stood to benefit from its

practices, "when maintaining the status quo involves continuation of an illegal practice, courts

are reluctant to find the class representatives inadequate." *Newberg* § 3:64 (citing *Ruggles v.*

---

[2] References to "Zack Reply Decl." are to the Zack Reply Declaration filed with this brief. References to "Zack Decl." are to the Zack Declaration (Doc. No. 991) filed on December 12, 2011 with plaintiffs' opening brief in support of class certification.

[3] The flaws of this survey are exposed below at pages 9-12.

*WellPoint, Inc.*, 272 F.R.D. 320, 338 (N.D.N.Y. 2011)) ("Adequacy is not undermined where the opposed class members' position requires continuation of an allegedly unlawful practice."); *Srail v. Village of Lisle*, 249 F.R.D. 544, 552 (N.D. Ill. 2008) ("[A] judge may not refuse to certify a class simply because some class members prefer to leave the violation of their rights unremedied.") (citations omitted). *See also Eisen v. Carlisle & Jacqueline*, 391 F.2d 555, 562 (2d Cir. 1968) ("[A]ll members of the class, including those who would otherwise prefer to abide by the status quo, will be helped if the rates are found to be excessive."); *accord Lanner v. Wimmer*, 662 F.2d 1349, 1357 (10th Cir. 1981); *Jacobi v. Bache & Co.*, No. 70-3152, 1972 U.S. Dist. LEXIS 15192, at *6 (S.D.N.Y. Feb. 8, 1972) (quoting *Eisen*).

Second, Google does not proffer its "survey" as evidence of the actual existence of any "fundamental conflict" between class members. To the contrary, Google's survey merely asked a woefully small sample of unidentified authors whether they ***"feel"*** that the display of "short excerpts" benefits them. Google Br. at 1, 9 (emphasis added). The evidence reveals that Google has not determined whether its display of "snippets" has actually led to the sales of books. *See* Turvey Dep. at 3, 96 (Zack Decl. Ex. 10); Clancy Dep. at 6-7, 162-63 (*Id.* Ex. 7). Thus, Google's alleged "conflict" is hypothetical and speculative at best. "The conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental," and "speculative conflict should be disregarded at the class certification stage." *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (citations omitted).

Google's argument regarding the speculative potential impact of a perceived future remedy (i.e., that "snippet" display will be prohibited) should similarly "be disregarded at the class certification stage." *Id.*; *see also Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (noting that speculative "conflicts that may develop at the remedy stage" or the possibility of "differing interests at later stages of litigation" "do not present a valid reason for refusing to

5

certify a class") (citations omitted); *accord Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006).[4]

Third, the same conflict argument Google makes here was squarely rejected in *Freeland,* 238 F.R.D. at 141-42. The defendants in *Freeland* argued that the plaintiffs were inadequate because some class members welcomed the challenged features of the defendants' mobile phone services, and "many, and perhaps most, class members actually benefit from the [conduct] that the named plaintiffs claim is illegal." *Id.* at 141. The court stated that the "defendants present no basis for a conclusion, though, that the named plaintiffs do not also benefit from these practices." *Id.* at 141-42. The court held that the named plaintiffs were adequate class representatives because they "possess the same interest and suffer the same injury as the class members, assuming (as the Court must at this stage) that such an injury has occurred." *Id.* at 142 (citation omitted). *See also Eisen, supra; Jacobi, supra; Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.,* 246 F.R.D. 293, 303-04 (D. D.C. 2007) (finding defendants' arguments too speculative, holding that a benefit to certain class members was "irrelevant as a matter of law, and cannot serve to demonstrate that a conflict exists between Plaintiffs' interests and those of [certain class members]. . . .") (citations and quotations omitted).[5]

---

[4] Google's argument fails not only because it depends on a purely speculative conflict but also because it depends on the erroneous assumption that plaintiffs will seek **at the remedy stage** the destruction of the books database and/or the termination of snippet display. It is premature to determine the appropriate equitable remedy for Google's infringements.

[5] *Freeland* makes clear that the salient issue is whether Google's actions actually affect class members differently. Google unsuccessfully attempts to distinguish *Freeland* by suggesting that the named plaintiffs feel differently about Google than some unnamed survey respondents. This is irrelevant. The "snippet" display claim must be decided based on facts concerning snippet display, not the various "feelings" of unnamed survey respondents. There is no question here that Google's snippet display is unauthorized. The legal issue presented is whether this admittedly unauthorized use is a "fair use," not whether class members like or dislike Google, like or dislike the Internet, or like or dislike engaging in online research.

Fourth, Google relies on anomalous and disfavored cases, including the often-rejected opinion in *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Google Br. at 8-9 (also citing its progeny, *e.g.*, *Allied Orthopedic Appliances*, *Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156 (C.D. Cal. 2007); *Allen v. Dairy Famers of Am., Inc.*, No. 09-230, 2011 WL 6148678 (D. Vt. Dec. 9, 2011)).[6] *Valley Drug*, however, has no bearing on this case, as it was limited to the particular characteristics of the pharmaceutical industry, relying on an assumption that the demand for pharmaceuticals is less elastic than the demand for most consumer goods. *See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, 2010 U.S. Dist. LEXIS 125623, at *69-70 (E.D.N.Y. Nov. 24, 2010); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 U.S. Dist. LEXIS 13670, at *34 (E.D.N.Y. Jan. 25, 2012).[7]

Further, *Valley Drug* fails to recognize that putative class members can opt out of the lawsuit. Any class member who prefers not to participate in the action has the ability to opt out. Fed. R. Civ. P. 23(c)(2); *Meijer*, 246 F.R.D. at 306; *Braintree Labs., Inc. v. McKesson Corp.*, No. 11-80233, 2011 U.S. Dist. LEXIS 121499, at *6 (N.D. Cal. Oct. 20, 2011). The opt-out provision "is an important method for determining whether alleged conflicts are real or

---

[6] Google's other cases are distinguishable. In *Pickett v. Iowa Beef Processors,* 209 F.3d 1276 (11th Cir. 2000) and *Phillips v. Klassen,* 502 F.2d 362 (D.C. Cir. 1974), as well as *Valley Drug,* 350 F.3d 1181, the conflicts at issue were considered "fundamental" because they went directly to the issue in controversy. Here, in contrast, the fact that some class members speculate that Google's display of snippets is beneficial does not conflict with the fundamental issue to be tried in this action: whether Google's Library Project is a massive copyright infringement, entitling plaintiffs to equitable relief and statutory damages. In *Bieneman v. City of Chicago*, 864 F.2d 463 (7th Cir. 1988), the court upheld the district court's finding of inadequacy on one ground alone – because the plaintiff "abandon[ed] members of the class…, in the teeth of our observation that a representative may not unilaterally abandon the class." *Id*. at 465-55. Plaintiffs have not abandoned class members here.

[7] Numerous courts have declined to follow *Valley Drug* for a different, more intrinsic reason, finding it irreconcilable with *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), reaffirmed in *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 731-32 (1977). *See, e.g., In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, No. 04-5525, 2008 U.S. Dist. LEXIS 36719 (E.D. Pa. May 2, 2008).

speculative. It avoids class certification denial for conflicts that are merely conjectural and, if conflicts do exist, resolves them by allowing dissident class members to exclude themselves from the action."  1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3.30 (4th ed. 2002); *see also Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 43 (1st Cir. 2003) (because opt-out was an option, "hypothetical conflict provides no basis for decertification.").

Fifth, Google argues that sixty-four academic authors believe they derive a benefit from snippet display and, therefore, plaintiffs are inadequate to represent academics. Google Br. at 9. Google's attempt at dichotomizing the world of authors between "academic" and "non-academic" lends nothing to the adequacy of representation issue. "Disapproval of the action by some class members will not preclude a class action on the ground of inadequate representation." *Newberg* § 3.65 (5th ed. 2012). This is particularly so in Rule 23(b)(3) cases, "as the disgruntled class members ... can opt out." *Id.* Moreover, Google's argument is based on the academics' vantage points as users of Google's search engine, not from the position of class members whose copyright interests are undeniably affected in the same way as the named plaintiffs.

Further, the late husband of plaintiff Betty Miles was a Columbia University professor, and her copyright interests include those in his textbooks. She testified that "he was an academic author" who "wrote textbooks," and that she is an adequate class representative for all authors, because, "I know a great many academics, as I know a great many plain authors and I know that no matter what kind of book they are writing, they are all concerned about their copyright and the rights of holders of copyright to control their books."  Miles Dep. at 93-94 (Zack Reply Decl. Ex. 6). *See also* Bouton Dep. at 80-81 (*Id.* Ex. 4) ("Whether it is a gardening book or a history book or academic textbook or a baseball book, we are all protected by copyrights."); Goulden Dep. at 59 (*Id.* Ex. 5) (as a non-fiction writer, Mr. Goulden, like academics, must do "in-depth research" for his books).

Finally, even assuming *arguendo* some academic authors may not care about receiving compensation for their copyright interests, the *Freeland* court's conclusion on adequacy is apt: "the Court remains free to define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Freeland*, 238 F.R.D. at 142 (citations omitted).

The adequacy requirement is met here.

## B.   Google's Flawed Survey Is Entitled to No Weight

Google relies on a survey it commissioned of 880 authors, repeatedly extrapolating in its brief from this small sample of undisclosed persons to the entire class of authors here. *See, e.g.,* Google Br. at 8-9 (discussing survey results in connection with challenge to adequacy). Google, however, fails to cite a single case in which a court has held that a survey of class members is relevant to whether the representative plaintiffs satisfy the adequacy requirement, or to an analysis of any of the other Rule 23 factors.

It is unsurprising that Google's survey approach lacks support in the law, as it is plainly unsound. Unlike, for example, a Lanham Act case, where the pivotal legal question frequently turns on consumer "perception,"[8] adequacy of representation under Rule 23 cannot be determined on the basis of "feelings" (which the survey asks about), but instead depends on whether there are actual "fundamental conflict[s]" between the class representatives and the absent class members. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

---

[8] *See* Shari Seidman Diamond, *Reference Guide on Survey Research*, in Reference Manual on Scientific Evidence 229, 235 (2d ed. 2000) (Zack Reply Decl. Ex. 13); Poret Dep. at 40 (*Id.* Ex. 12) ("A lot of what's in [the Reference Guide] I consider to be generally authoritative."); *see also id.* at 145-151; *see also Manual For Complex Litigation (Fourth)* § 11.493 (2004) ("[Q]uestioning a sample of individuals by opinion polls or surveys about such matters as their observations, actions, attitudes, beliefs, or motivations provides evidence of *public perceptions*.").

A court that recently examined arguments like Google's in the class certification context found that survey results were "meaningless" and "unpersuasive." *See In re Fedex Ground Package System, Inc., Emp't Practices Litig.*, No. 05-MD-527, 2007 U.S. Dist. LEXIS 76798, at *18-19 (N.D. Ind. Oct. 15, 2007). In *FedEx*, the plaintiffs challenged the defendants' classification of certain drivers as independent contractors rather than employees, and sought monetary damages as well as declaratory and injunctive relief flowing from the alleged misclassification. The survey asked the following question: "Would you prefer to perform your pick-up and delivery services as an employee or an independent contractor?" and fifty-two percent of respondents indicated that they preferred to be independent contractors.

The court, however, found that survey question to be "meaningless" in connection with determining class certification, "because the question doesn't inquire into the respondents' preferences as to the remedy" if the defendant is held liable. *Id.* at *19. Here, as well, Google's survey provided respondents with no information about, and did not ask the respondents their "feelings" about, the remedies to which class members would be entitled if Google were held liable for copyright infringement. *See* Poret Dep. at 65-67, 98-103 (Zack Reply Decl. Ex. 12). The survey is therefore entirely "unpersuasive when offered to prove that the proposed class members" allegedly do "not want to participate in the class to obtain the prospective relief sought by the named plaintiffs." *In re Fedex,* 2007 U.S. Dist. LEXIS 76798, at *19.

Moreover, the survey is skewed in Google's favor. As an example, the survey includes a description of Google's scanning and display of snippets that misleadingly fails to disclose that Google's scanning is done without the permission of the authors or publishers of the books. *Id.* at 54-61, 93-97; Poret Rpt. at 7-8 (Doc. No. 1001-1). The description also explains incompletely that a "user who performs a search can see up to three short excerpts of the book containing the relevant search terms." *Id.* at 7. Yet Google's Daniel Clancy, Chief Engineer of Google Books

for six years, admitted at his deposition that Google allows more than the display of three

snippets per book. Clancy Dep. at 43-45 (Zack Reply Decl. Ex. 7). Indeed, the evidence shows

that by performing multiple searches using different search terms (including multiple search terms

suggested by Google itself), a single user can view substantial verbatim expression from books

copied in the Library Project. *See* Zack Decl. Ex. 10. Further, as to its users in *toto*, Google makes

available in snippet display all of the Library Project books except for the small proportion it "black

lists." *See* Zack Reply Decl. Ex. 15 at 11; Clancy Decl. at 3 (Doc. No. 1004). Thus, for the books

placed in "snippet" view in its Library Project, Google makes the vast majority of the text of the

books available for verbatim display to its users.[9]

The survey script also misleadingly fails to disclose that Google provides complete

digital copies of books to libraries without the permission of the authors or publishers. Poret

Dep. at 97 (Zack Reply Decl. Ex. 12). *See Universal City Studios, Inc. v. Nintendo Co.,* 746 F.2d

112, 118 (2d Cir. 1984) (surveys must be "fairly prepared and [their] results directed to the

relevant issues."); *Manual for Complex Litigation (Fourth)* § 11.493 ("[I]n assessing the validity

of a survey, the judge should take into account … whether the questions asked were clear and not

leading") (emphasis added).

The complaints that Google received from authors and publishers who were actually

knowledgeable about the Library Project serve to underscore the unreliability of extrapolating

from the survey that authors would not want to participate in this case as class members. *See*

Clancy Dep. at 90-92, 96-99, 108-09 (Zack Reply Decl. Ex. 7) (testimony regarding concerns

---

[9] Some of the books copied in the Library Project are placed by Google into metadata only display. *See* Zack Reply Decl. Ex. 15 at 6-7.

expressed to Google by authors and publishers knowledgeable about the Library Project); Turvey Dep. at 57-64, 81-85, 88-92, 102-05 (Zack Reply Decl. Ex. 10) (same).[10]

Google's survey is irrelevant to class certification and entitled to no weight because of its unreliability.

## II.    THE PREDOMINANCE REQUIREMENT IS SATISFIED

Predominance is established if the legal or factual questions that can be resolved through generalized proof are "more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). As the Second Circuit has explained: "'the predominance test does not involve a comparison of court time to adjudicate common issues weighed against time needed to dispose of individual issues'"; accordingly, "'clockwatching is not very helpful in ascertaining whether class-action treatment would be desirable in a particular case.'" *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006) (citing 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 4:25 (4th ed. 2002) and 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2005)).

---

[10] Google's survey also has numerous methodological flaws, including: (a) the surveyers attempted to reach a total of 15,256 authors and received responses from only 880 (*see* Zack Reply Decl. Ex. 14), which is less than 6% of that total, let alone of the total authors in the proposed class. *See Reference Guide on Survey Research*, at 245 (Zack Reply Decl. Ex. 13) ("If the response rate drops below 50%, the survey should be regarded with significant caution as a basis for precise quantitative statements about the population from which the sample was drawn."). Even Mr. Poret, Google's surveyer, who testified that the standards for response rates for surveys need to be lowered because so few people now respond to surveys, stated that response rates should be in the 10-20% range. Poret Dep. at 152-55 (Zack Reply Decl. Ex. 12); (b) the survey targeted a population that was both overinclusive (because it included persons who do not meet the class definition) and underinclusive (because it did not include all persons who meet the class definition), *see id.* at 19-22, 43-44, 111-13, 117-29; and (c) most persons surveyed (508 of 880, or 58%) had little or no familiarity with Google Books, Poret Rpt. at 26 (Doc. No. 1001-1); *see also Manual for Complex Litigation (Fourth)* § 11.493 ("The sampling methods used must conform to generally recognized statistical standards. Relevant factors include whether *the population was properly chosen and defined*) (emphasis supplied).

"Rule 23 seeks greater efficiency via collective adjudication and, relatedly, greater uniformity of decision as to similarly situated parties." *Nassau Cnty.*, 461 F.3d at 228. "For these reasons we have written that when plaintiffs are 'allegedly aggrieved by a single policy of defendants,' such as the blanket policy at issue here, the case presents "precisely the type of situation for which the class action device is suited."' *Id.* (citing *In re Visa Check*, 280 F.3d at 146).

This case raises at least the following common questions of fact and law:

- Does Google scan in-copyright books in their entirety in its Library Project, distribute entire digital copies of such books to libraries, and/or display verbatim expression from such books on its search website, all without copyright owner permission?

- Does such copying, distribution and/or display violate the Copyright Act?

- Does the fair use doctrine permit such copying, distribution and/or display?

- Should statutory damages of $750 per book be assessed?

- What injunctive and equitable relief is appropriate to address Google's conduct?

These legal and factual questions, which can be resolved through generalized proof, are clearly more substantial than any individualized questions in this case. Google has admitted in its responses to Plaintiffs' Requests for Admissions that it digitally copies books in their entirety; provides entire digital copies of books to libraries, and displays snippets from books in response to user requests, without copyright owner permission.[11] *See* Zack Reply Decl. Ex. 1 at 5-10. Nor does Google contend that individualized questions exist with respect to the issues of infringement, damages and injunctive relief.

---

[11] That a defendant concedes an issue does not eliminate that issue from the predominance calculus. *Nassau Cnty.*, 461 F.3d at 227. "Just as much as do contested issues, resolved issues bear on the key question that the [predominance] analysis seeks to answer: whether the class is a legally coherent unit of representation by which absent class members may fairly be bound." *Id.* at 228.

Google's brief fails even to mention plaintiffs' claims with respect to Google's reproduction of entire books for its own uses and its distribution of entire digital copies to libraries, let alone dispute that those claims present predominating common questions of fact and law. Google contends only that the class should not be certified because individual questions purportedly predominate as to (a) class members' ownership of copyrights and (b) the fair use, *vel non*, of its snippet display. Google Brief at 10-22, 29.

As shown below, the requirement that persons must "individually" establish their class membership is present in almost every class action and will be established here when a class member demonstrates that he or she is a copyright holder of one or more timely registered English language books copied in Google's Library Project. In addition, Google's fair use defense does not raise individual issues as to snippet display, because Google treats the books as commodities subject to bulk copying and uniform distribution and display rules.

### A.     Ownership

Google argues that the need to establish "copyright ownership" precludes class certification. Google Br. at 10-17. This argument is contrary to law, as discussed in plaintiffs' opening brief at pages 15-17, and Google engages in a good deal of misdirection. At pages 11-14 of its brief, Google embarks on a lengthy discussion of the difference between "legal" versus "beneficial" ownership of a copyright. This is a red herring, because the Copyright Act expressly provides that **both legal and beneficial** copyright owners can sue for infringement. 17 U.S.C. § 501(b) (emphasis supplied). Courts and commentators agree that "[t]he classic beneficial owner is an author who transfers exclusive rights (that is, parts with legal title to that right) to a purchaser in exchange for royalty payments from sales of copies of the work or from other forms

14

of exploitation." 6 William F. Patry, *Patry on Copyright* § 21:25 (2012); *accord Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984).[12]

Hence, so long as the individual author is either the legal **or** the beneficial owner of the copyright, she has standing to pursue a claim against Google for infringement. Indeed, as Google's industry expert admitted at his deposition, all of the publishing contracts submitted by Google, found at Gratz Exhibit 10 (Doc. Nos. 1003-10 and 1003-11), provide for the payment of royalties. Perle Dep. at 53 (Zack Reply Decl. Ex. 11). Under *Cortner*, therefore, each of those authors would be beneficial owners of their copyrights entitled to sue infringers.

Google simply ignores this fact. Instead, it writes about the nuances of determining a book's contractual in-print or out-of-print status, an author's contractual reversion rights, and the contractual responsibilities of authors versus publishers to register copyrights. Google Br. at 11-13.[13]  These issues have no bearing here. It is completely unnecessary to determine who had the responsibility to register a copyright, whether legal title to an exclusive right has or has not yet "reverted" from a publisher to an author, and whether or not a book is in-print. Whether a book is in-print or out-of-print, reverted or not, an author with royalty rights (like all the authors in the contracts Google attached to its papers) is a beneficial owner entitled to sue an infringer like Google, who had no license to use any of the books it reproduced, distributed and displayed.

---

[12] Google grudgingly acknowledges this on page 13 of its brief.

[13] Google continually attempts in its brief to suggest that issues as to contract interpretation are at play here, citing and relying on cases where such issues existed. *See* Google Br. at 13-15. But Google has entered into no contracts with rightsholders permitting its copying in the Library Project. Here, as did the defendant in *In re Napster, Inc. Copyright Litigation*, 377 F. Supp. 2d 796, 806 (N.D. Cal. 2005), Google copied millions of works without a license.

Contrary to Google's efforts to muddy the waters, the issue here is whether the class can be objectively determined so that members will know whether or not they are included in the class. Wright & Miller have summarized the criteria as follows:

> In keeping with the liberal construction to be given the rule, … the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action …. If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist.
>
> Nor is the fact that specific members may be added or dropped during the course of the action important. However, the requirement that there be a class will not be deemed satisfied unless the class description is **sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member** …. Further, the class must not be defined so broadly that it encompasses individuals who have little connection with the claim being litigated; rather, it must be restricted to individuals who are raising the same claims or defenses as the representative. The class definition also cannot be too amorphous. Thus, for example, a class defined with reference to the state of mind of its members will not be allowed to proceed under Rule 23.

7A Wright, Miller, *et al., Federal Practice & Procedure* § 1760 (3d ed. 2011) (emphasis supplied); *see also* 5 *Moore's Federal Practice - Civil* § 23.21 ("The identity of class members … must be ascertainable by reference to objective criteria."); *Wu v. Pearson Educ., Inc.*, 09 Civ. 6557, 2011 U.S. Dist. LEXIS 112308, at *44-47 (S.D.N.Y. Sept. 30, 2011) ("An identifiable class exists if its members can be ascertained by reference to objective criteria.") (quoting *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 97 (S.D.N.Y. 2010)).

Here, the class is defined entirely by objective criteria. The class includes only authors (or their predecessors in interest) who hold copyright interests in timely registered English language books copied by Google in its Library Project. Thus, an author will be a class member here if:

- Google has copied his or her book in its Library Project. This fact can be established from Google's records;

- the copyright in his or her book has been timely registered. This fact can be determined from publicly-available copyright records entitled to a legal presumption of validity. *See* 17 U.S.C. § 410(c); *Boisson v. Banian, Ltd,* 273 F.3d 262, 267 (2d Cir. 2001);[14] and

- he or she is a **legal or beneficial** copyright holder of the book. This fact can be determined through documents such as book contracts or royalty statements.

The class definition is thus "sufficiently definite so that it is administratively feasible for the court to determine whether the particular individual is a member" of this class. Wright & Miller § 1760, *supra.*

A paradigmatic example of ascertaining class members is a securities class action. The persons with the right to recover are the "beneficial" owners of the stock. However, the stock is frequently not held in their name, but rather in "street" name by their brokers or bankers, a practice that facilitates transfer of the shares. *See, e.g. In re Franklin Nat'l Bank Sec. Litig.,* 574 F.2d 662, 664 and n.2 (2d Cir. 1978) ("The record discloses that many purchases had been recorded in 'street names.'… The term 'street name' or 'nominee name' refers to the practice of registering securities in other than the name of the beneficial owner."). Because of this practice, in a class action, in order to claim a share of any judgment, the stock owners must come forward with adequate proof of their beneficial ownership of the security. This presents no barrier to certification, and securities class actions are routinely certified. *See, e.g., Fogarazzo v. Lehman Bros., Inc.,* 263 F.R.D. 90, 97 (S.D.N.Y. 2009). The Supreme Court has held that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud …" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

---

[14] Examples of registration records obtained from the public records of the U.S. Copyright Office are found at Exhibits 15-17 to the Zack Decl. (Doc. No. 991-2).

In "indirect purchaser" cases under state antitrust laws (where the consumer, the ultimate purchaser, is permitted to sue the manufacturer of the product, even though the consumer is two or more steps removed in the distribution chain), consumers have to prove their class membership. In *In re TFT-LCD (Flat Panel) Antitrust Litigation,* 267 F.R.D. 583 (N.D. Cal. 2010), the court certified a class of consumers in 23 states who had bought flat screen televisions and computer monitors containing liquid crystal displays from the defendants. The court held that the class definition involved "objective" criteria, and that class members could provide sufficient individual purchase information. *Id.* at 592 ("Whether a class member purchased a product containing a TFT-LCD panel made by a defendant can be determined by the model number or serial number of the product.")

In *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580 (C.D. Cal. 2008), the court certified a class of persons who had owned or leased Hyundai automobiles with a defective flywheel, stating that the class definition "must describe 'a set of common characteristics sufficient to allow' a prospective plaintiff to 'identify himself or herself as having a right to recover based on the description.'" *Id.* at 593 (quoting *Moreno v. AutoZone, Inc*., 251 F.R.D. 417, 421 (N.D. Cal. 2008) (citation and internal quotations omitted)). "However, 'not all class members need to be ascertained prior to class certification.'" *Id.* (quoting *Mauro v. Gen. Motors Corp*., No. 07-892, 2008 WL 2775004, at *4 (E.D. Cal. July 15, 2008)). *See also Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 273 (S.D.N.Y. 2011) ("[T]he mere fact that class membership overlaps with an element of the plaintiff's legal claim does not mean that the class is not ascertainable."); *see In re Napster*, MDL-00-1369, 2005 U.S. Dist. LEXIS 11498, at *28-29 (N.D. Cal. June 1, 2005) (even though the court would be required to make a work-by-work analysis of issues surrounding proof of ownership, registration, and damages, these

individualized determinations were less significant than the uniting fact that each violation occurred through the same file-sharing system) (discussed further in plaintiffs' opening brief); *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003) ("[T]he class can be identified through an examination of the individual files of each of the participants. The fact that this manual process may be slow and burdensome cannot defeat the ascertainability requirement.").

In this case, many class members have the benefit of a legal presumption in their favor, which does not exist in many other class actions. "In any judicial proceedings the certificate of a registration … shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). This bolsters the case for class certification here. Further, to establish legal or beneficial ownership entitling them to participate in any recovery, claimants can produce evidence such as reversion letters, publishing contracts, or royalty statements. Google's industry expert, Mr. Perle, testified that his staff at Time Inc. had no difficulty determining the copyright status of books, Perle Dep. at 53-55 (Zack Reply Decl. Ex. 11), and that it was "typical in [his] experience in the book publishing industry" for "a book publishing contract to provide for royalties," *id.* at 53. *See also* Groetsch Dep. at 4, 104-05 (Zack Reply Decl. Ex. 8) (Google witness could determine copyright renewal status using publicly available copyright records).

Google cites *In re Initial Public Offering Securities Litigation,* 471 F.3d 24 (2d Cir. 2006) ("*IPO*") (Google Br. at 26), for the proposition that the "need for numerous individualized determinations of class membership" defeats certification. *IPO,* however, was a securities fraud case where there was no "developed market" and hence the "fraud on the market" presumption of reliance was unavailable. Thus, each individual class member would have to prove his or her actual reliance upon the misleading information. Here, in contrast, class members do not need to

19

prove any "reliance" upon any action of Google's. At the page of *IPO* that Google cites (page

45), the Second Circuit held: "Where membership in the class requires a ***subjective***

determination, the class is not identifiable." *IPO*, 471 F. 3d at 44-45 (emphasis supplied). No

"subjective determination" is at issue in the case at bar.[15]

Other so-called "ownership" issues raised by Google are equally meritless. Google

contends that any author who granted "promotional" rights to a publisher is not a beneficial

owner of that right, and therefore cannot sue Google. Google Br. at 14. Far from presenting an

individual issue, this presents another common legal issue that can be resolved in the class

context. Google cites no legal authority to support its contention. Its own industry expert, Mr.

Perle, testified at his deposition that he is "not suggesting that an author who has given a

publisher a royalty-free promotional right has given up its beneficial interest in the copyright."

Perle Dep. at 19 (Zack Reply Decl. Ex. 11). Indeed, the purpose of promotional uses is to sell

books, from which sales authors receive royalties. *See id.* at 41.

Moreover, Google's unauthorized uses of books in its Library Project are not

"promotional." Google has cited no authority under the Copyright Act or elsewhere for the

proposition that it has a unilateral right to "promote" someone else's in-copyright work.  Further,

its unauthorized distribution of digital copies of books to libraries can hardly be viewed as

---

[15] Google ironically relies upon *Daniels v. City of New York,* 198 F.R.D. 409 (S.D.N.Y. 2001), Google Br. at 10, 26, a case that certified the class. The case involved tens of thousands of men who had been stopped and frisked by the police where the police had no reasonable belief that a crime had been committed. The court stated that "the class must be sufficiently definite" and it must be "administratively feasible for a court to determine whether a particular individual is a member." 198 F.R.D. at 414 (quoting Wright & Miller § 1760, *supra*). The proposed class consisted of all persons subjected to "defendants' policy, practice and/or custom of illegally stopping and/or frisking persons within the City of New York." *Id.* at 412. The Court certified this class under 23(b)(2) for injunctive and declaratory relief. Wright & Miller cite *Daniels* as an example of a case where "courts have found that the class members' identity is feasible." Wright & Miller § 1760, *supra,* text and n.10. In short, *Daniels* stands for the exact opposite proposition than the one for which Google cites it.

"promotional." Individual authors should not be required in case after case to defend against Google's specious contention that its unauthorized uses of books is a "promotional use" that somehow strips authors of their status as legal or beneficial owners of their copyrights – an argument endorsed by no statute, case law or even Google's own expert. *See id.* at 7, 19, 39-46, 57-58. Instead, this common issue should be resolved on a class-wide basis.

Finally, as to "works made for hire," Google argues that determining this status will be somehow unmanageable. Google Br. at 15. However, Section 201(b) of the Copyright Act, 17 U.S.C. § 201(b), provides that persons who write such works are not legal or beneficial owners of the copyrights unless they have an express agreement with their employer giving them ownership rights. The employers are considered the authors of these "works made for hire," *id.*, and the copyrights for these works are therefore registered in the names of the employers.[16] Thus, unless a writer of such a "work made for hire" can produce an agreement with his or her employer giving him or her ownership rights in such work, such writer will not be a class member here.

### B. Fair Use

Google did not make book-by-book determinations in its Library Project. To the contrary, Google copied every book its library partners provided, regardless of content,[17] unless (a) the book had already been copied or was scheduled to be copied at another library; (b) the book was physically not fit to be copied, or (c) Google had received a request from a copyright owner not

---

[16] Exhibit 18 to the Zack Reply Declaration is an example of a publicly available online record from the U.S. Copyright Office noting that the book is a "work made for hire."

[17] In its responses to Plaintiffs' Requests for Admission, Google admits that it "scanned in their entirety millions of books from libraries, including in-print and out-of-print works, fiction and non-fiction works, reference works, anthologies, educational works, textbooks, dissertations, monographs, journals, government publications and other types of works." Zack Reply Decl. Ex. 1 at 7; *see also* Clancy Dep. at 30-42 (Zack Reply Decl. Ex. 10).

to scan the book ("opted out"). *See* Groetsch Dep. at 27-31 (Zack Reply Decl. Ex. 8); Jaskiewicz

Dep. at 5, 16-17 (*Id.* Ex. 9); *see also* Clancy Dep. at 182-87 (*Id.* Ex. 7). Moreover, Google

displays snippets from these books using uniform guidelines. *See Id.* Ex. 15 at 11-12.

Any assessment of the "fairness" of Google's uses of these books must therefore be based

on common evidence about Google's uniform policies across millions of books. *See, e.g.*, *UMG*

*Recordings, Inc. v. MP3.com, Inc.*, 92 F. Supp. 2d 349, 350-51 (S.D.N.Y. 2000) (granting

summary judgment to plaintiffs after applying fair use factors to entire website that permitted

users to download "tens of thousands of popular CDs").

Such an analysis is consistent with the Copyright Act. Congress expressly intended that

the fair use doctrine be adapted to the facts of each particular case, and had "no disposition to

freeze" the doctrine, "especially during a period of rapid technological change." H.R. Rep. No.

94-1476, at 66 (1976). In this case, unlike in the prototypical copyright case involving fair use in

which a defendant has quoted a portion of one work in another work, Google has used its

massive financial and technological resources to engage in indiscriminate copying, distribution

and display of millions of books without regard to the content of the material. The "fair use"

doctrine must be applied here in light of these realities.

The four non-exhaustive factors listed in Section 107 do not present individualized issues

preventing class certification. Google concedes that it will not present any individualized

evidence as to the first fair use factor ("the purpose and character of the use, including whether

such use is of a commercial nature or is for nonprofit educational purposes"). Google Br. at 18.[18]

---

[18] Google cannot meet its burden under the first factor, as Google's uses of the books in
the Library Project are commercial, *see* Clancy Dep. at 114-18, 140-41 (Zack Reply Decl. Ex. 7),
and are not "transformative." The Supreme Court stated in *Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569, 579 (1994), that a use is transformative when the "new work" alters the first work
with "new expression, meaning, or message." Google's Library Project adds no expression,
meaning or message to the books copied. Instead, the Library Project involves verbatim copying,
*footnote continued*

The second, third and fourth factors also do not present individualized issues, despite Google's arguments. The second fair use factor focuses on "the nature of the copyrighted work." Cases in the Second Circuit state, generally, that "the scope of fair use is greater with respect to factual than non-factual works," *New Era Publ'ns Int'l, ApS v. Carol Publ'g Grp.*, 904 F.2d 152, 157 (2d Cir. 1990). This does not mean, however, every Library Project book needs to be individually assessed. Instead, the relevant legal standards for fiction and nonfiction can be applied to those two categories (to the extent necessary given Google's display of verbatim expression from the books).[19] *See Nat'l Ass'n of Letter Carriers v. U.S. Postal Svc.,* 604 F. Supp.

---

distribution and display. Merely changing the format or medium of a work, or extracting verbatim excerpts from a work, as Google has done here, is not "transformative" within the meaning of Section 107 of the Copyright Act. *See Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,* 166 F.3d 65, 72 (2d Cir. 1999) (abstracts of news articles that directly translate plaintiffs' news articles were not protected as a fair use); *Infinity Broad. Corp. v. Kirkwood,* 150 F.3d 104, 108-09 (2d Cir. 1998) (service allowing subscribers to listen over the telephone in remote cities to copyrighted radio broadcasts was not a fair use, where the rebroadcast merely changed the format of the copyrighted material and added no new expression, meaning or message); *UMG Recordings*, 92 F. Supp. 2d at 351 (mere retransmission of unauthorized copies in another medium is not by itself a fair use); *Basic Books, Inc. v. Kinko's Graphics Corp.,* 758 F. Supp. 1522, 1530-31 (S.D.N.Y. 1991) (sale of course packets to college students not a fair use) ("In this case, there was absolutely no literary effort made by Kinko's to expand upon or contextualize the materials copied.").

Google's reliance on *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146 (9th Cir. 2007), and *Kelly v. Arriba Soft Corp*., 336 F.3d 811 (9th Cir. 2003), is misplaced. Those cases both involved the defendant's indexing of materials already available on the Internet. In neither case did the defendant digitally copy millions of offline works without permission of the rightsholders, place such works on the Internet for search, and distribute unauthorized digital copies to third parties, such as libraries, as Google has done in its Library Project. *See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc*., 342 F.3d 191, 199 (3d Cir. 2003) (holding that Internet display of two-minute movie clip previews was not transformative; distinguishing *Kelly* because the defendant's action did not improve access to authorized material on other websites, but instead merely "indexes and displays unauthorized copies of copyrighted works."). *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009), is similarly distinguishable. There, the defendant did not make unauthorized copies of offline materials, but instead indexed papers that high school students were required by their teachers to submit online for plagiarism review.

[19] The Copyright Act does not protect "facts" themselves, but it does protect an author's

*footnote continued*

2d 665, 676 (S.D.N.Y. 2009) (although the court might "indeed have to categorize plaintiffs' members into large groups – *e.g.*, investigations related to criminal conduct and those not related to criminal conduct," this would not "require individualized proof, nor the participation of individual members."); *see also Am. Geophysical Union.*, 60 F.3d at 915 (in a copyright class action, a sampling of works was reviewed to analyze whether a defendant's institutional, systematic reproduction of copyrighted material for archival purposes constituted copyright infringement or fair use).

Similarly, if Google presents evidence that in-print books are affected differently by Google's Library Project than out-of-print books, *see* Google's Br. at 19-20, the relevant legal standards can be applied to these categories of books, *see Nat'l Ass'n of Letter Carriers,* 604 F. Supp. 2d at 676.[20] So "long as a sufficient constellation of common issues binds class members

---

manner of expressing those facts. Courts often find that factual works have been used unfairly. *See, e.g., Harper & Row Publishers, Inc.  v. Nation Enters.*, 471 U.S. 539, 569 (1985) (Gerald Ford's memoirs); *Nihon Keizai Shimbun*, 166 F.3d at 72-73 (abstracts of news articles); *Am. Geophysical Union*, 60 F.3d at 925, 931 (scientific articles); *Basic Books*, 758 F. Supp. at 1533, 1547 (course packets).

It is not "fair use" to appropriate an author's "particular expression." *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976). That is, of course, what Google does in its Library Project, since it allows users to perform multiple search queries to see multiple verbatim snippets of an author's "particular expression," regardless of whether the book searched is a work of fiction or nonfiction. *See* Zack Decl. Ex. 10 (ECF No. 991-1). *See also Rosemont Enters., Inc. v. Random House, Inc*., 366 F.2d 303, 310 (2d Cir. 1966) ("The fair use privilege is based on the concept of reasonableness and extensive verbatim copying or paraphrasing of material set down by another cannot satisfy that standard."); *Harper & Row,* 471 U.S. at 546 ( the purpose of copyright – to reward individual authors in order to benefit the public – "applies equally to works of fiction and nonfiction.").

Further, as a practical matter, the second fair use factor – the nature of the work – plays little role in the ultimate fair use determination. *See* 4 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.05 [A][2][a] (2009) ("this second factor more typically recedes into insignificance in the greater fair use calculus"); William F. Patry, *Patry on Fair Use* § 4:1 (2011) ("Outside of unpublished works, the [second] factor typically receives little attention.").

[20] Google's claim that it cannot determine whether the books it copied are in-print

*footnote continued*

together, variations in the sources and application of [a defense]" do not prevent class

certification. *In re Visa Check*, 280 F.3d at 138 (alteration in original).

The third fair use factor focuses on "the amount and substantiality of the portion used in

relation to the copyrighted work as a whole." Google does not dispute that it copied entire books

for its own uses, and also distributed entire digital copies of these books to libraries. These

uniform practices by Google plainly present common issues of law and fact. *See Am.*

*Geophysical Union*, 60 F.3d at 926 (copying of entire work militates against a finding of fair

use).

Google asserts that its "snippet" display presents individual issues because some snippets

are longer than others, but this argument misses the mark. Google Br. at 20. Google uniformly

makes the entire text of most Library Project books searchable and available for snippet display

to its collective users (with the exception of a small percentage of "blacklisted" portions from

each book). *See* Zack Reply Decl. Ex. 15 at 11; Clancy Decl. at 3 (Doc. No. 1004).

In *Infinity Broadcast Corp.,* 150 F.3d at 109-110, the Second Circuit found militating

against fair use the fact that the "collective" action of a "plurality of subscribers" to the

defendant's radio retransmission service would likely cause the defendant to transmit "most" of a

copyrighted radio program. So too, here, the likelihood that Google will eventually display

virtually all of the verbatim expression from its Library Project books to its users collectively

presents a common issue that militates against a finding of fair use. *See also Harper & Row,* 471

U.S. at 548 (copying of 300 to 400 words, or just 13% of the original, was not a fair use).

The fourth fair use factor examines "the effect of the use upon the potential market for or

value of the original work." The fourth factor considers "'whether unrestricted and widespread

---

(commercially available) or not is belied by its ability in the proposed settlement claims process
to make such a determination. *See* page 29 of the proposed Amended Settlement Agreement
(Doc. No. 770-2).

conduct of the sort engaged in by defendant . . . would result in a substantially adverse impact on the potential market'" for the original. *See Campbell*, 510 U.S. at 590 (citing 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.05[A][4] (1993) (footnote omitted)). The potential markets to be considered include those "'that creators of original works would in general develop or license others to develop.'" *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 145 (2d Cir. 1998) (quoting *Campbell, supra*, 510 U.S. at 592); *Am. Geophysical Union*, 60 F.3d at 930 (courts should consider "traditional, reasonable or likely to be developed markets" when assessing the fourth fair use factor).

This case involves a massive digitization campaign by Google involving millions of books. Plaintiffs' evidence as to this fourth fair use factor will therefore examine the effect of Google's uniform Library Project policies across all such books, and demonstrate that "unrestricted and widespread conduct of the sort engaged in by" Google will have a "substantially adverse impact on potential markets" that copyright owners "would in general develop or license others to develop."

In particular, a finding of fair use will harm all class members by legitimizing widespread digital copying, distribution and display of verbatim expression from books without permission, thereby impeding the development of collective licenses for the digital uses of books and excerpts from books. *See* Report of Daniel Gervais (Zack Reply Decl. Ex. 3).

In addition, if Google's unauthorized uses are found to be "fair," other website operators, no matter how small, could create online book databases, but with insufficient security to prevent widespread piracy of copyrighted books. Conversely, if Google's unauthorized uses are found not to be fair, licenses will be required for such uses, and rightsholders can require in such

licenses that financial responsibility for the risks of unauthorized display be fairly allocated between the parties to the license.[21] *See* Report of Benjamin Edelman (Zack Reply Decl. Ex. 2).

Accordingly, Google's "fair use" defense clearly presents common questions of fact and law, which predominate over any individualized issues.

### C.    Common Questions Predominate

Common questions of law and fact abound as to infringement, fair use, statutory damages, and injunctive relief. The threshold "individual" ownership issue raised by Google is no more individualized or pervasive than that in other cases where classes are routinely certified. The common factual and legal questions presented by this case clearly predominate over and are "more substantial" than the individual issues posited by Google. *Moore*, 306 F.3d at 1252. Plaintiffs and the class here are "'allegedly aggrieved by a single policy of defendants,'" and this case presents "precisely the type of situation for which the class action device is suited.'" *In re Nassau Cnty.*, 461 F.3d at 228 (citing *In re Visa Check*, 280 F.3d at 146).

### III.    A CLASS ACTION IS SUPERIOR

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy," and sets forth a non-exhaustive list of factors to consider.[22] Google addresses only one, claiming that there is "strong evidence of authors'

---

[21] *See, e.g.*, Article VIII (pages 115-30) of the proposed Amended Settlement Agreement in this case (Doc. No. 770-2), which provided standards for security and remedies for security breaches.

[22] The Rule 23(b)(3) factors are: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Here, the litigation has been pending for over six years. The lack of parallel litigation by other class members against Google favors a finding of superiority. Further, in over six years, the

*footnote continued*

interest in 'individually controlling the prosecution or defense of separate actions.'" Google Br. at 27 (citing Fed. R. Civ. P. 23(b)(3)(A)). In reality, there is no such "evidence." Google relies on its procedurally flawed "survey," which did not include even one question about this litigation, let alone provide any support for a conclusion that authors want to sue individually.

Google's suggestion that the number of settlement opt-outs somehow shows that class members wish to individually control their claims is similarly meritless, as it mistakenly assumes that the same motivations for opting out of the proposed settlement (which provided for continued copying and the display of entire books by Google) would apply to the separate decision whether to opt out of a litigation class (which challenges Google's copying, distribution and display as infringement).[23]

Google's claim that the availability of attorneys' fees is a "common basis" for finding non-superiority is simply incorrect and ignores mountains of precedent, e.g., the thousands of classes certified in cases under the Sherman Act, federal civil rights statutes and ERISA, where fee-shifting is permitted by statute. The single case Google cites for this proposition does not

---

desirability of litigating in this forum has not been challenged, least of all by Google. Lastly, any case management issues that may arise upon certification of the class would pale in comparison to the alternative method of adjudicating the parties' claims on a case-by-case basis.

[23] Google cites *Garcia v. Freedom Mortgage Corp.*, 274 F.R.D. 513, 517 (D. N.J. 2011), for the proposition that a large number of settlement opt outs is evidence that class members wish to retain control over their individual claims. However, the language Google quotes appears nowhere in the *Garcia* opinion, which involved neither a settlement class nor an opt-out class.

*Crasto v. Estate of Kaskel*, 63 F.R.D. 18 (S.D.N.Y. 1974), also cited by Google, is inapposite. There, plaintiffs sought to certify a class of approximately 150 owners of a co-operative apartment building. *Id.* at 21, 25. In concluding that a class action was not superior to individual actions, the court explained that the plaintiffs had not brought a "typical securities action," because the litigation involved the class members' homes, and some class members would prefer to guarantee the security of their homes, while others would prefer to sell their interest in the co-op, move out and collect damages. *Id.* at 24. The court found that each claim, involving "luxury units, located in one of the most fashionable areas of New York City," was "for a substantial amount of money and more than sufficient to enable him to bring his own action." *Id.* at 25.

support its argument. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 746-47 (5th Cir. 1996)

(explaining that "certification of mass tort litigation classes has been disfavored" and finding

superiority lacking where litigation would entail "extensive manageability problems" such as

"difficult choice of law determinations" and the "difficult procedure for determining who is

nicotine-dependent."); *cf. Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 271 (S.D.N.Y. 2011)

(rejecting defendant's argument that superiority was not met due to the "availability of attorney

fees and statutory damages" because "[t]his fact alone does not determine the issue of

superiority").

A class action is by far the superior method for resolving the claims at issue in this

litigation. Denying certification would be wasteful to the litigants and the Court, and the majority

of authors would likely forego litigating meritorious claims against an adversary with

tremendous resources. *See Seijas v. Republic of Arg.,* 606 F.3d 53, 58 (2d Cir. 2010); *Pa. Ave.

Funds v. Inyx Inc.,* No. 08-6857, 2011 U.S. Dist. LEXIS 72999, at *30-31 (S.D.N.Y. July 5,

2011); 5 Moore's Federal Practice - Civil § 23.46[1] (2012); *see also Napster*, 2005 U.S. Dist.

LEXIS 11498, at *31-33 (considering all four factors and finding that "a class action is clearly

the most efficient and in all likelihood the most equitable method for resolving the parties'

dispute."); *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 130-131 (E.D.N.Y. 2003) ("A class action is

the superior method of resolving liability issues when litigation by each individual plaintiff

would risk disparate results among those seeking redress, … would exponentially increase the

costs of litigation for all, and would be a particularly inefficient use of judicial resources.")

(internal quotation marks and citations omitted).[24]

---

[24] In its brief, Google cites copyright cases in which class certification motions were
denied, but each is distinguishable. In *Estate of Berlin v. Stash Records, Inc.*, No. 95-6575, 1996
U.S. Dist. LEXIS 9200, at *4-5 (S.D.N.Y. July 1, 1996), the plaintiff was not challenging a
practice uniformly perpetrated against all members of the class. *Id.* ("the conduct by defendants
*footnote continued*

## IV.    CONCLUSION

Based on the entire record, plaintiffs respectfully request that their Motion for Class

Certification be granted.

---

which named plaintiff asserts caused it injury is special and unique to named plaintiff; other class members have not been injured by the same course of conduct."). In *WB Music Corp. v. Rykodisc, Inc.*, No. 94-2902, 1995 U.S. Dist. LEXIS 15866, at *17-18 (E.D. Pa. Oct. 26, 1995), the plaintiff acknowledged that each alleged act of infringement could turn on whether class members had licensed rights to the defendants. Here, in contrast, Google has admitted that it copied books in its Library Project without a license. Similarly, in the magistrate's unreported opinion in *Utopia Entertainment, Inc. v. Claiborne Parish* (Google Br. at 23), issues existed as to whether copies had been made by permission of the owners (although the Magistrate Judge mislabeled this license issue as one of fair use).

As the court noted in *Ryan v. Carl Corp.*, No. 97-7873, 1999 U.S. Dist. LEXIS 366, at *15-16 (N.D. Cal. Jan, 12, 1999), where it certified a class of copyright owners under Rule 23(b)(1) and deferred ruling on certification under Rule 23(b)(3), the "trend appears to be . . . to certify a class if there is a single issue on which the litigation centers." *Napster*, 2005 U.S. Dist LEXIS 11498 and *Wu*, 277 F.R.D. 255 (certifying classes in circumstances where the defendant engaged in a common course of conduct), substantiate that trend.

Dated:  April 3, 2012

/s/Joanne Zack
Joanne Zack
Michael J. Boni (pro hac vice)
Joshua D. Snyder
Joanne Noble
BONI & ZACK LLC
15 St. Asaphs Rd.
Bala Cynwyd, PA  19004
Tel: (610) 822-0200
Fax : (610) 822-0206
jzack@bonizack.com
mboni@bonizack.com
jsnyder@bonizack.com
jnoble@bonizack.com

Robert J. LaRocca
KOHN SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Tel:  (215) 238-1700
Fax:  (215) 238-1968
rlarocca@kohnswift.com

Sanford P. Dumain
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119
Tel:   (212) 594-5300
Fax:  (212) 868-1229
sdumain@milberg.com

*Counsel for Plaintiffs*