.

**EXHIBIT 3**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| The Authors Guild, et al. | : | |
| | : | |
| Plaintiffs, | : | Master File No. NO. 05 CV 8136-DC |
| | : | |
| v. | : | |
| | : | |
| Google Inc., | : | |
| | : | |
| Defendant. | : | |

### PLAINTIFFS' RESPONSES AND OBJECTIONS TO
### DEFENDANT GOOGLE INC.'S FIRST SET OF INTERROGATORIES TO
### PLAINTIFFS THE AUTHORS GUILD, INC., JIM BOUTON, JOSEPH GOULDEN AND
### BETTY MILES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs hereby

respond and object to Defendant Google Inc.'s First Set of Interrogatories to Plaintiffs The

Authors Guild, Inc., Jim Bouton, Joseph Goulden and Betty Miles.

### General Objections

1.     Plaintiffs generally object to the Interrogatories and their instructions to the extent

that they seek information not discoverable under, or impose procedures not required by, the

Federal Rules of Civil Procedure or the Local Rules of the Southern District of New York.

2.     Plaintiffs generally object to the Interrogatories to the extent that they seek the

disclosure of information protected by the attorney-client privilege, the attorney work product

doctrine and/or any other applicable privilege or protection.  Responses hereunder shall not

include information protected by such privileges or doctrines.

3.     Plaintiffs generally object to the Interrogatories to the extent they seek

information that may be ascertained by Google Inc. with substantially the same burden as

plaintiffs.

4.      Plaintiffs object to the Interrogatories on the ground that the term "YOUR

BOOKS," used throughout the Interrogatories, is not defined.

5.      Plaintiffs reserve the right to supplement and/or amend the specific responses set

forth below, and to rely on additional facts and law.

## RESPONSES

### INTERROGATORY 1:

Identify all factual and legal bases supporting Your contention that Google's Library
Project is not fair use.

### Response:

In addition to the General Objections, plaintiffs object to this Interrogatory on the

grounds that the word "all" is overbroad and unduly burdensome in this context. Without

waiving these objections, plaintiffs respond as follows:

A.      Google's Library Project involves the following infringements of copyright:

   (1)      Google digitally copies, and converts into separate, machine readable
            digital text copies, in-copyright books in their entirety for its own uses
            without the permission of the copyright owners in violation of 17 U.S.C. §
            106(1);

   (2)      Google distributes digital copies of in-copyright books in their entirety to
            libraries without the permission of the copyright owners in violation of 17
            U.S.C. § 106(3);

   (3)      Google publicly displays verbatim expression from in-copyright books on
            the Internet in response to requests by users of its website without the
            permission of the copyright owners in violation of 17 U.S.C. § 106(5).

B.      The above infringements are not protected by the fair use doctrine of 17 U.S.C.

§ 107:

2

(1)   Google's digital copying of entire in-copyright print works for its own
uses is of a commercial nature and not for the purposes of criticism,
comment, news reporting, teaching, scholarship or research. Google
copies print books to benefit its commercial search engine and thereby
gain a competitive advantage over its rivals in the search engine business.
Google digitally copies print books in bulk without regard to their content.
Google adds no expression, meaning or message to the books. Merely
changing the format or medium of a work, as Google has done here by
reproducing the books from print to electronic form, is not
"transformative" within the meaning of Section 107 of the Copyright Act.
The books copied by Google are creative works of authorship, regardless
of whether the books are fiction or non-fiction. Google copies the books in
their entirety, maintains multiple copies of the entire books on its servers
and on tape, and makes non-display and display uses of the books in their
entirety. Because Google's digital copying involves mere duplication for
commercial purposes, a presumption of market harm exists. Google's
digital copying without permission or compensation deprives copyright
owners of revenues for such copies. Google's maintenance of digital
copies on its servers also creates a risk of further unlawful dissemination
of the books. Further, unrestricted and widespread conduct of the sort
engaged in by Google would result in a substantially adverse impact on
the value of and potential market for the books. A finding of fair use
would legitimize widespread unauthorized mass digitization. It would
impede the development of collective licenses for the digital copying,

3

distribution, display, publication and other uses of books and book

excerpts in, *inter alia*, search engines and other book databases. It would

permit others in addition to Google to create online book databases with

insufficient security to prevent widespread piracy of copyrighted books.

Conversely, if Google's unauthorized copying is found not to be fair,

licenses providing compensation would be required for such copying, and

copyright owners could require in such licenses that financial

responsibility for the risks of unauthorized uses be fairly allocated

between the parties to the license.

(2)     Google's distribution to libraries of entire digital copies of in-copyright

works is of a commercial nature and not for the purposes of criticism,

comment, news reporting, teaching, scholarship or research. Google's

distribution of digital copies to libraries is a *quid pro quo* for the libraries

allowing Google to copy the print books to benefit Google's commercial

search engine and thereby gain a competitive advantage over its rivals in

the search engine business. Google distributes digital copies of the books

without regard to their content. Google adds no expression, meaning or

message to the books distributed. Merely changing the format or medium

of a work, as Google has done here by reproducing the books from print to

electronic form, is not "transformative" within the meaning of Section 107

of the Copyright Act. The books distributed by Google are creative works

of authorship, regardless of whether the books are fiction or non-fiction.

Google distributes digital copies of books to libraries in their entirety.

Because Google distributes entire digital copies for commercial purposes,

4

a presumption of market harm exists. Further, Google's unauthorized distribution to the libraries deprived the copyright owners of compensation for such copies. Google's distribution to the libraries also creates a grave risk of additional unauthorized digital distribution of the books by the libraries and of piracy of the library digital copies, as a result of faulty security and/or endeavors such as the Hathitrust and its Orphan Works' Project. Unrestricted and widespread conduct of the sort engaged in by Google would result in a substantially adverse impact on the value of and potential market for the books. A finding of fair use would legitimize widespread unauthorized distribution of digital copies of books. It would deprive copyright owners of revenues from the sale of digital copies to libraries and to other sources of print books for digital copying. It would impede the development of collective licenses for the copying, distribution, display, publication and other uses of digital copies of books and excerpts from books. It would also permit others in addition to Google to create online book databases, with insufficient security to prevent widespread piracy of copyrighted books. Conversely, if Google's unauthorized distribution is found not to be fair, licenses providing compensation would be required for such distribution, and copyright owners could require in such licenses that financial responsibility for the risks of unauthorized use be fairly allocated between the parties to the license.

(3)     Google's display on the Internet of verbatim expression from in-copyright works to users of its Internet search engine is of a commercial nature and

not for the purposes of criticism, comment, news reporting, teaching, scholarship or research. Google displays verbatim expression from books to benefit its search engine and thereby gain a competitive advantage over its rivals in the search engine business. With respect to the books that it displays, Google displays excerpts that it calls "snippets" without regard to the content of the books. Google adds no expression, meaning or message to the books displayed. Merely changing the format or medium of a work, or extracting verbatim expression from a work, as Google has done here, is not "transformative" within the meaning of Section 107 of the Copyright Act. The books displayed by Google are creative works of authorship, regardless of whether the books are fiction or nonfiction. Google maintains the entirety of the books on its servers. By performing multiple searches using different search terms (including multiple search terms suggested by Google itself), a single user can view substantial verbatim expression from the books. Moreover, if the display is permitted as a fair use, Google would be permitted to display over time virtually all of the verbatim expression from the books to its users collectively. Because Google displays verbatim expression for commercial purposes, a presumption of market harm exists. Google displays such verbatim expression without licensing it, thereby depriving the copyright owners of compensation for such uses. Further, unrestricted and widespread conduct of the sort engaged in by Google would result in a substantially adverse impact on the value of and potential market for the books. A finding of fair use would legitimize widespread unauthorized digital display. It

would impede the development of collective licenses for the digital

display of books and excerpts from books in, *inter alia*, search engines and

other book databases. It would also permit other website operators to

could create online book databases, but with insufficient security to

prevent widespread piracy of copyrighted books. Conversely, if Google's

unauthorized display is found not to be fair, licenses providing

compensation will be required for such display, and copyright owners

could require in such licenses that financial responsibility for the risks of

unauthorized display be fairly allocated between the parties to the license.

(4)   Google's Library Project as a whole is a mass digitization, distribution and

display campaign that is not a fair use of the books, for all the reasons set

forth above.

C.   Facts supporting the above are found in the following, *inter alia*:

(1)   Google's Objections and Responses to Plaintiffs' First Set of Requests for

Admission;

(2)   The deposition testimony of Jim Bouton, Joseph Goulden, Betty Miles,

Paul Aiken, Daniel Clancy, Kurt Groetsch, Brad Hasegawa, Stephane

Jaskiewicz, Thomas Turvey, James Crawford, and Paul Courant;

(3)   PX 1-58, 81-86; Courant Ex. 1-3; GOOG05000001, GOOG05004750,

GOOG05004751, GOOG05004752, GOOG05000002-GOOG05000438,

GOOG05000459-GOOG05000496, GOOG05002264-2284;

GOOG05000001-GOOG05004981.

(4)   The documents produced by plaintiffs;

7

usership, with the ultimate goal of increasing its advertising revenues from its increased usership. See also the response to Interrogatory 1 above.

**INTERROGATORY 12:**

Describe the amount and substantiality of YOUR BOOKS used in Google's Library Project, including a statement of all factual and legal bases supporting your response.

**Response:**

In addition to the General Objections, plaintiffs object to this Interrogatory on the grounds that the word "all" is overbroad and unduly burdensome in this context. Without waiving these objections, plaintiffs respond as follows: See the response to Interrogatory 1 above.

**INTERROGATORY 13:**

If you contend that Google's Library Project is commercial in nature, identify all factual and legal bases for that contention.

**Response:**

In addition to the General Objections, plaintiffs object to this Interrogatory on the grounds that the word "all" is overbroad and unduly burdensome in this context. Without waiving these objections, plaintiffs respond as follows:

Google's Library Project, and the copying, distribution and display of books by Google in connection with its Library Project, are commercial in nature. See also the responses to Interrogatories 1 and 11 above.

Dated: April 27, 2012

/s/Joanne Zack
Joanne Zack
Michael J. Boni (pro hac vice)
BONI & ZACK LLC
15 St. Asaphs Rd.
Bala Cynwyd, PA  19004
Tel: (610) 822-0200
Fax : (610) 822-0206
jzack@bonizack.com
mboni@bonizack.com

Robert J. LaRocca
KOHN SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Tel:  (215) 238-1700
Fax:  (215) 238-1968
rlarocca@kohnswift.com

Sanford P. Dumain
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119
Tel:   (212) 594-5300
Fax:  (212) 868-1229
sdumain@milberg.com

*Counsel for Plaintiffs*

## VERIFICATION

I am the Executive Director of plaintiff The Authors Guild, Inc. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the responses of plaintiff The Authors Guild, Inc. in Plaintiffs' Responses and Objections to Defendant Google Inc.'s First Set of Interrogatories to Plaintiffs The Authors Guild Inc., Jim Bouton, Joseph Goulden and Betty Miles are true and correct to the best of my knowledge, information and belief.

Dated: April 27, 2012

Paul Aiken

**CERTIFICATE OF SERVICE**

The undersigned certifies that Plaintiffs' Responses and Objections to Defendant

Google Inc.'s First Set of Interrogatories to Plaintiffs The Authors Guild, Inc., Jim Bouton,

Joseph Goulden and Betty Miles was served via email upon the following on April 27, 2012:

> Joseph C. Gratz, Esquire
> Durie Tangri LLP
> 217 Leidesdorff Street
> San Francisco, CA 94111
> jgratz@durietangri.com

> /s/ Joanne Zack
> Joanne Zack