**EXHIBIT 7**

**MEMO: Regarding the Google Book Settlement**

As many of you probably know, a group of publishers and a group representing authors filed a class action suit against Google alleging copyright infringement. This claim stemmed from Google's digitization of books and subsequent use of those copies in its Google Book Search program. Google Book Search allowed users to search inside a book, for quotes or other information, and would display "Snippets" of the book containing the quote or information. Google's stance was, and is, that the anticipated uses constituted fair use under the US Copyright Act and could be done without permission from the copyright owner.

The parties reached a settlement on this dispute and have submitted a Settlement Agreement to a Federal District Court. This Settlement Agreement is pending approval from the Court. While approval is pending, copyright owners in books published before January 5, 2009 must decide whether they wish to participate in the Settlement Agreement or opt-out of the Agreement. The deadline for opting-out has been extended from May 5, 2009 to **September 4, 2009**. If the rightsholder does nothing, they are immediately bound by the Settlement. Below is a brief summary of the basics of the Google Book Settlement Agreement and our recommendations.

The Settlement Agreement, if approved, would bind copyright owners in any book published prior to January 5, 2009 to its terms. The Settlement Agreement gives Google the non-exclusive right to digitize any book published prior to January 5 and place the digitization in its Google Book Search database. Once in the database, Google can display and/or sell electronic copies of the work, subject to certain limitations set by the copyright owner, if the owner can be found. There are a variety of different display options, from Snippet view to a full text display. A copyright owner is included in the Settlement by default. However, a form must be filed to opt-out of the Settlement.

By participating, a copyright owner is binding his, her or its work to the terms of the Settlement Agreement. The benefits to copyright owners who participate are:
- if Google has already digitized a work, the copyright owner is entitled to at least $60 for each digitized book;
- a copyright owner can specify which display options (Snippet, full length, etc.) Google may use for his or her work;
- a copyright owner can ask Google to remove his, her or its work from the Google Book Search database completely; and
- if Google sells a work, the copyright owner is entitled to a pre-determined percentage of revenues obtained from such sales.

The benefits to copyright owners who opt-out are:
- the copyright owner retains all rights to take later legal action against Google for any illegal uses of their book or insert;
- the terms of the Settlement Agreement, which have no end date, will not apply to a particular copyright owner's work; and
- a copyright owner can specify on the opt-out form whether they want their book removed from the Google Book Search database completely or whether they wish to have Google contact them separately to negotiate different terms for inclusion in the database.



Regardless of which choice is made, we do not recommend removal from Google's Book Search database. It appears that simple inclusion in the database is a fair use and not detrimental to the copyright owner in any way. It also appears to be in an author's best interest to have their work come up in a search through the database, just as website rankings are desirable in connection with

Google searches. Additionally, Google Book Search currently lists, on the right of the screen, which distributors have the book for sale, along with a link for purchase.

That said, we believe it is in the best interest of our clients to opt-out of the Settlement Agreement. The Settlement Agreement applies only to those works published before January 9, 2009. All works created and published after this date will require separate negotiation with Google for inclusion in the Google Book Search database. There is an argument that later negotiated terms may be less favorable, but we believe this speculation is unwarranted. We believe Google will be inclined to offer similar terms for works published after January 5, and that many of our clients may be able to demand more favorable terms or we may be able to do so on an agency wide basis.

Additionally, there is no term limit to the Settlement Agreement. If a copyright owner participates, their work is subject to the Agreement for the term of copyright. We find it questionable to bind some works to the Settlement terms for the term of copyright when we will be in position to negotiate shorter terms for those works created after January 5th. Most of our clients have a list of works they have created. It would seem easier to have the same terms applied to all these works, rather than disparate terms for past/present works and future works.

Some rights owners may wish to participate for the cash payment, if applicable, and then tell Google to remove their work(s) from the database. As previously stated, we do not believe it is in the best interest of a client to have their work completely removed from the database. In addition, we are of the belief that Google was correct in its assessment that its stated use of "Snippets" constituted fair use under the US Copyright Act. Consequently, it is punitive to participate in the Settlement to obtain the $60 dollars Google is offering because such use is legally allowable without payment or permission.

Opting-out of the Settlement Agreement is relatively simple but must be done by **Friday, September 4, 2009.** To opt-out, a rightsholder should go to the Google Book Settlement website at www.googlebooksettlement.com and select opt-out from the tabs at the top of the screen. Contact information on the form must be filled out, but a list of the client's affected works is not mandatory. A rightsholder has the option on the form to have Google remove their work from the database or contact the rightsholder to discuss granting certain rights beyond simple inclusion of their works in the database. We recommend that our clients select the box requesting Google contact them and not the box requesting removal from the database and then refer Google to us to negotiate. Our clients who choose to opt-out may file an opt-out form on their own (via the website above) or have the agency file an opt-out form on their behalf. Clients who choose to have the agency opt-out on their behalf should send an email to googlebooksettlement@wmeentertainment.com.

We suggest to our clients that everyone opt-out even if a publisher currently holds exclusive publishing rights to their work. Since the Settlement Agreement applies for the term of copyright, a client may gain control of the applicable rights before the term of copyright expires. It is better to file an opt-out form now so that if reversion occurs, we are positioned to negotiate with Google accordingly. The time limit for opting-out approaching. It is possible, after going through the trouble of opting-out, the Court will not approve the Settlement Agreement and these instructions will be moot. However, if the Court approves the Settlement, we want our clients to be best suited to benefit.

All information contained in this memo is for informational purposes only and not intended to be legal advice. We encourage any clients who feel they are in need of legal advice regarding this matter to consult a licensed attorney.