**EXHIBIT 23**

**PART 1**

**(LIBRARY AGREEMENTS WITH THE NEW YORK PUBLIC LIBRARY, THE UNITED STATES LIBRARY OF CONGRESS, STANFORD UNIVERSITY, PRINCETON UNIVERSITY, COLUMBIA UNIVERSITY, CORNELL UNIVERSITY, AND HARVARD UNIVERSITY HAVE BEEN FILED UNDER SEAL)**

**COOPERATIVE AGREEMENT**

This COOPERATIVE AGREEMENT (the "Agreement") is entered into by and between Google Inc., a Delaware corporation with offices at 1600 Amphitheatre Parkway, Mountain View, California 94043 ("Google"), and the Regents of the University of Michigan/University Library, Ann Arbor Campus, with its principal offices at 818 Hatcher South, Ann Arbor, MI 48109-1205 ("U of M"), and is effective on the date of the execution of this Agreement (the "Effective Date").  Google and U of M herein are sometimes referred to hereinafter individually as a "Party" and collectively as the "Parties".

**Background**

1.  U of M is a leading academic institution and has amassed an enormous collection of works in various media.

2.  Google is a leader in providing the public with access to billions of web pages through a search engine that processes requests in less than half a second, and responds to more than 150 million search queries per day.

3.  Google and the U of M share a mutual interest in making information available to the public.  The Parties believe that working collaboratively will create mutually beneficial knowledge about standards and automated methods for organizing and indexing digitized works and to refine standard requirements for repositories of digital content.

4.  Accordingly, the Parties desire to enter a nonexclusive agreement whereby Google will digitize works from the U of M collection to include them in Google's search services, and to make them available to the University of Michigan for preservation, archival or other purposes of its choosing (e.g., inclusion in Michigan's search services).

**Definitions**

1.   **DEFINITIONS**.  Capitalized terms will have the meanings set forth below unless defined elsewhere in the Agreement.

1.1 "Available Content" means the U of M print book and journal Collection, but excludes Special Collections materials.  Available Content also includes U of M Digital Content in an amount corresponding to the amount of digital content that Google provides to U of M via the U of M Digital Copy.

1.2 "Brand Features" means trade names, trademarks, service marks, logos, and other distinctive brand features, of which Google's Brand Features include but are not limited to Google, the Google logo, other marks that incorporate the word "GOOGLE," PAGERANK, and of which U of M's brand features include but are not limited to the University of Michigan name, University of Michigan identification marks, and the University Library name and logo.

1.3 "Digitize" means to convert content from a tangible, analog form into a digital representation of that content.

1.4 "Distribution Price" means an amount equal to or greater than a per-page amount multiplied by the number of Digitized pages involved.  The per-page amount shall be equal to the amount charged by Google for distributing to the general public the same Digitized pages ("Google Amount").  If there exists no Google Amount for the same Digitized pages, the per-page amount shall be the amount charged by Google for distributing to the general public similar pages digitized pursuant to the same Project Plan ("Similar Google Amount").  To the extent no Google Amount or Similar Google Amount exists, the per-page amount shall be an amount mutually agreed upon in good faith by Google and U of M.

1.5  "End User" means a person or entity that uses the Services.

GOOG05000355

1.6  "Enterprise Search Services" means the Search Services provided by Google to companies for use by employees of those companies and others.

1.7 "Google Digital Copy" means a digital copy retained by Google of the Available Content that is Digitized by Google.

1.8 "Google Search Services" means the Search Services provided by Google directly through the web sites located at www.google.com and corresponding international and other domains (e.g., www.google.de, www.google.info, etc).

1.9  "U of M Collection". means materials identified in section 1.2 above.

1.10    "U of M Digital Copy" means a digital copy transferred by Google to U of M of the Available Content that is Digitized by Google.

1.11    "Partner Search Services" means the Search Services provided by Google to an End User via a partner site that has entered into an agreement with Google to provide some or all of the Search Services through its own website.

1.12    "Pilot Project" means the onsite work at the University of Michigan, beginning from the Effective Date of this contract and ending on April 15, 2005.

1.13    "Project" means a project for Digitizing certain Selected Content.

1.14    "Initial Term" means the first six years of the Project, including the Pilot Project period.

1.15    "Project Form" means a form, pursuant to this Agreement, that contains the details of a Project Plan, similar to the sample attached as Exhibit A.

1.16    "Project Plan" means a plan for implementing a Project.  The Project Plan shall include the following:  (1) instructions by U of M regarding how the Selected Content is to be collected and returned by Google; (2) if required, the amount of time available to U of M for performing conservation efforts; (3) the amount of time available to Google from receipt of the Selected Content until it is due to be returned to U of M; and (4) a budget for the Project.

1.17    "Requested Portion" means a portion of the U of M Digital Copy requested by a third party.

1.18    "Search Services" means the search services provided by Google to an End User pursuant to which the End User can view, inter alia, content consisting of or derived from the Google Digital Copy (subject to the restrictions set forth in this Agreement) in response to search or browsing requests.

1.19    "Selected Content" means the portion of the Available Content that Google desires to Digitize or incorporate into the Services, both collectively and its component parts, including any and all other works of authorship included therein.

1.20    "Services" means collectively the Google Search Services, the Partner Search Services, and the Enterprise Search Services.

1.21    "U of M Digital Content" means content that U of M already has in its possession in Digitized form, as of the Effective Date.

1.22    "Website," "World Wide Web," "the Internet," and other technical terms in this Agreement and project plans refers to the current common usage of such terms and successor facilities of equal or greater capability.

GOOG05000356

## 2.   RESPONSIBILITIES

**2.1 Identifying Content to be Digitized**.  The parties shall cooperate to identify Available Content to be Digitized.  Upon agreeing to such Selected Content, the Parties shall cooperate in good faith and with diligence to develop a timetable for completing the Project Plan for the Selected Content. The Parties shall then memorialize the Project Plan in a Project Form.

**2.2 Collecting the Selected Content**.  Upon commencement of a Project, U of M shall be responsible for performing any conservation efforts that U of M determines are required for the associated Selected Content.  On a rolling basis, as this conservation effort is completed, U of M shall provide the conserved Selected Content to Google for Digitizing.  If agreed upon by the parties in a particular Project Plan, this collection function may instead be assigned to Google.

**2.3 Locating the Digitization Operation**.  For each Project, U of M shall attempt in good faith to provide Google with adequate physical space to Digitize the Selected Content.  If U of M is unable to provide such space, U of M shall cooperate with Google to identify and obtain space that Google can use at reasonable rates.  The location of any such physical spaces shall be mutually agreed upon by the parties.

**2.3.1   Transporting and Storing the Selected Content.**  On a Project-specific and material-specific basis, U of M may authorize Google to remove some or all of the Selected Content from U of M premises to perform digitization in facilities controlled by Google.  All risk of loss, damage, or destruction of the materials will lie with Google from the time Google accepts possession of the materials until such time as they are returned to U of M on U of M premises.  Google will carry reasonably sufficient insurance against the risk of loss, damage or destruction of materials entrusted to Google's custody.  In general, for all materials, Google will provide a transport method and temporary storage area that is reasonably clean, dry, cool, free from insects and other pests, protected from fire, and secure against theft and vandalism.  Because the value of the materials and the environmental conditions necessary for transporting them and maintaining them in good condition will vary based on the particular materials involved, U of M will inform Google of the requirements for transport and storage of particular materials on a Project-specific basis. For insurance purposes, U of M (relying on guidelines from its Risk Management office) will provide Google with a good faith estimate of the value of any materials approved for removal from U of M premises, and will provide Google with an itemized list of any such materials.

**2.3.2   On-Site (i.e., not transported) Conversion of Selected Content.**  The terms in 2.3.1 regarding insurance, accessibility to print materials for U of M users, and precautions taken to ensure protection of the materials shall also apply to materials digitized on-site in the Buhr storage facility.

**2.4 Digitizing the Selected Content**.  Google will be responsible for Digitizing the Selected Content.  Subject to handling constraints or procedures specified in the Project Plan, Google shall at its sole discretion determine how best to Digitize the Selected Content, so long as the resulting digital files meet benchmarking guidelines agreed to by Google and U of M, and the U of M Digital Copy can be provided to U of M in a format agreed to by Google and U of M.  U of M will engage in ongoing review (through sampling) of the resulting digital files, and shall inform Google of files that do not meet benchmarking guidelines or do not comply with the agreed-upon format.  Should U of M encounter a persistent failure by Google to meet these guidelines or supply the agreed-upon format, U of M may stop new work until this failure can be rectified.  Any restrictions on Google's discretion shall be specified on a project-by-project basis via the corresponding Project Form(s) or by amendment to this Agreement.

**2.5 U of M Digital Copy.** Google agrees to provide to U of M a copy of all Digitized Selected Content that has been "Successfully Processed" within thirty (30) days after the Selected Content is Digitized, or in a timeframe mutually agreed by the Parties.  Digitized Selected Content is "Successfully Processed" when Google determines it has satisfactorily gone through all stages of Google's digitization, post processing and quality assurance procedures (not to exceed thirty days for material received by Google, unless otherwise agreed to by the parties).  Within thirty (30) days after the Selected Content is Digitized, or in a timeframe mutually agreed by the Parties, Google shall provide the U of M Digital Copy

GOOG05000357

to the U of M. Unless otherwise agreed by the Parties in writing, the U of M Digital Copy will consist of a set of image and OCR files and associated information indicating at a minimum (1) bibliographic information consisting of the title and author of each Digitized work, (2) which image files correspond to that Digitized work, and (3) the logical order of those image files. Google shall provide the U of M Digital Copy via a network connection, or in any other manner mutually agreed upon by the Parties.

2.5.1    Google may delay transferring Digitized Selected Content to U of M if it decides not to use that content due to a dispute with a third-party. In this case, Google must inform U of M, in writing, of the details of the dispute and the specific content to be delayed. Google may delay transfer of this content until such time as Google makes any use (including indexing) of that Digitized content (or the same content acquired from another source, if that Digitized content is in the public domain or out-of-print) beyond storage in a dark archive.

2.5.2    Within 3 years of the time Google has transferred Digitized Selected Content to U of M, if Google decides not to use that content due to a dispute with a third-party, U of M will destroy that content (so long as it is in print and protected by copyright) from the U of M Digital Copy. In this case, Google must inform U of M in writing of the details of the dispute and the specific content to be destroyed. If, at any time, Google subsequently makes any use (including indexing) of that Digitized content (or the same content acquired from another source, if that Digitized content is in the public domain or out-of-print) beyond storage in a dark archive, Google will retransfer that Digitized Content to U of M.

2.6 **Returning the Selected Content**. Once completed with the Digitizing process, Google will be responsible for returning the Selected Content to the source from which Google obtained it and in the like manner in which it was collected, within three (3) weeks unless otherwise specified in the Project Form or otherwise agreed upon by the parties. If Google reasonably determines that it will require longer to Digitize some or all of the Selected Content than the time frame set forth in the Project Form, the Parties will discuss in good faith whether a time extension is feasible. If the Parties agree upon an extension, they shall record such agreement as an amendment to the Project Form. If the Parties can not agree upon an extension, Google shall return the Selected Content within the time frames set forth in the Project Form.

2.7 **Responsibility for damage to the Selected Content**. While certain Selected Content is within Google's possession, Google shall make commercially reasonable efforts to minimize damage to the Selected Content, including handling the Selected Content in accordance with handling instructions set forth in the Project Form, if any. If Google, due to its negligence, damages certain Selected Content, Google shall, at its own cost, have the damaged Selected Content restored to the condition in which Google received it. Restoration of all materials must be performed by or under the management of U of M Conservation Services.

3.    **COSTS**

3.1 **Costs borne by U of M**. U of M shall bear the following costs: U of M employees (other than staff scanning operators and staff employed to pull and return materials to the shelves, including reshelving) whose participation is contemplated by this Agreement (including all cost of U of M employees required to provide Selected Content to Google as well as project management costs incurred by U of M), network bandwidth and data storage required by U of M to receive some or all of the U of M Digital Copy or existing bandwidth available for use by Google to transfer Digitized files from U of M facilities to Google's data centers and U of M space that may be available to Google.

3.2 **Costs borne by Google**. Google shall bear the following costs: Google employees or agents whose participation is contemplated by this Agreement (including all cost of Google employees required between receipt/collection of the Selected Content from U of M and return of the Selected Content to U of M), hardware and software required to Digitize the Selected Content, space required to Digitize the Selected Content (to the extent not provided by U of M), transportation of Selected Content from the U of M facility in which the Selected Content is normally kept (if required), and resolving copyright issues associated with Google's use of the Google Digital Copy.

3.3 **Budgets.** Notwithstanding the foregoing, U of M and Google may jointly develop a budget for each Project Plan, pursuant to which the parties can allocate the cost of researching and identifying the Selected Content, conducting conservation assessments, performing conservation work, and

GOOG05000358

performing any required copyright research and clearances. Any such budget shall take precedence over the general obligations set forth above in sections 3.1 and 3.2.

## 4.   OWNERSHIP AND USE OF DIGITAL COPIES AND SERVICES

**4.1 Copyright Law.** Both Google and U of M agree and intend to perform this Agreement pursuant to copyright law. If at any time, either party becomes aware of copyright infringement under this agreement, that party shall inform the other as quickly as reasonably possible.

**4.2 Copyright Status.** As Selected Content is provided by U of M to Google for Digitizing, U of M shall to the best of its knowledge notify Google which portions of the Selected Content are in the public domain and which portions may be subject to copyright. Notwithstanding the foregoing, Google shall be responsible for ensuring that Google's digitization and its use of the Google Digital Copy is authorized by the relevant copyright holders or by law. If either party reasonably determines that a portion of the Selected Content that was previously thought to be in the public domain is actually subject to copyright, that party shall promptly notify the other party in a writing that particularly identifies the portion(s) and provides an explanation for why the portion(s) are believed to be subject to copyright.

**4.3 Searching Free to the Public:** Google agrees that to the extent that it or its successors make Digitized Available Content searchable via the Internet, it shall provide an interface for both searching and a display of search results that shall have no direct cost to end users. Violations of this subsection, 4.3, not cured within thirty days of notification by U of M shall terminate U of M's obligations under section 4.4.

**4.4 Ownership and use of U of M Digital Copy.** Neither U of M nor Google shall have any ownership or license rights to the Available Content that is Digitized (i.e., to the materials underlying the digitization process), except where UM already has such rights. As between Google and U of M and subject to the provisions in this section 4, U of M shall own all rights, title, and interest to the U of M Digital Copy.

**4.4.1     Use of U of M Digital Copy on U of M Website.** U of M shall have the right to use the U of M Digital Copy, in whole or in part at U of M's sole discretion, as part of services offered on U of M's website. U of M shall implement technological measures (e.g., through use of the robots.txt protocol) to restrict automated access to any portion of the U of M Digital Copy or the portions of the U of M website on which any portion of the U of M Digital Copy is available. U of M shall also make reasonable efforts (including but not limited to restrictions placed in Terms of Use for the U of M website) to prevent third parties from (a) downloading or otherwise obtaining any portion of the U of M Digital Copy for commercial purposes, (b) redistributing any portions of the U of M Digital Copy, or (c) automated and systematic downloading from its website image files from the U of M Digital Copy. U of M shall restrict access to the U of M Digital Copy to those persons having a need to access such materials and shall also cooperate in good faith with Google to mutually develop methods and systems for ensuring that the substantial portions of the U of M Digital Copy are not downloaded from the services offered on U of M's website or otherwise disseminated to the public at large.

**4.4.2     Use of U of M Digital Copy in Cooperative Web Services.** Subject to the restrictions set forth in this section, U of M shall have the right to use the U of M Digital Copy, in whole or in part at U of M's sole discretion, as part of services offered in cooperation with partner research libraries such as the institutions in the Digital Library Federation. Before making any such distribution, U of M shall enter into a written agreement with the partner research library and shall provide a copy of such agreement to Google, which agreement shall: (a) contain limitations on the partner research library's use of the materials that correspond to and are at least as restrictive as the limitations placed on U of M's use of the U of M Digital Copy in section 4.4.1; and (b) shall expressly name Google as a third party beneficiary of that agreement, including the ability for Google to enforce the restrictions against the partner research library.

**4.5 Ownership and use of Google Digital Copy.** Neither U of M nor Google shall have any ownership or license rights to the Available Content that is digitized (i.e., to the materials underlying the digitization process), except where UM already owns such rights. As between Google and U of M and subject to the provisions in this section 4, Google shall own all rights, title, and interest to the Google Digital Copy.

CONFIDENTIAL                          5

GOOG05000359

4.5.1   **Google use of Google Digital Copy.**   Subject to the restrictions set forth in this section, Google may use the Google Digital Copy, in whole or in part at Google's sole discretion, as part of the Services.  For portions of the Google Digital Copy that correspond to works mutually identified as being in the public domain or for which Google has obtained permission from the relevant copyright owner(s), Google may among other things index the full text and serve and display full-sized digital images corresponding to those portions.  For all other portions of the Google Digital Copy, Google may index the full text but may not serve or display the full-sized digital image unless Google has appropriate legal authority to do so; Google instead may serve and display (1) an excerpt that Google reasonably determines would constitute fair use under copyright law and (2) bibliographic (e.g., title, author, date, etc) and other non-copyrighted information.   If U of M discovers that digital images being served and displayed full-size by Google are subject to copyright restrictions, U of M shall notify Google in writing and Google shall cease serving and displaying such images full-size.  Furthermore, to address situations where Google believed it had the right to serve full-sized digital images but was incorrect in such belief, Google shall implement processes (e.g., notice and takedown) that facilitate the ability of copyright owners to request removal of such digital images from the index.

4.5.2   **Security and Privacy Regarding Google's Use of the Google Digital Copy.**  Google shall implement technological measures (e.g., through use of the robots.txt protocol) to restrict automated access to any portion of the Google Digital Copy or the portions of the Google website on which any portion of the Google Digital Copy is available.  In addition, Google shall maintain on its website a privacy policy that governs collection and use of information that Google obtains from a user of the Google Search Services.

4.5.3   **Distribution of Google Digital Copy.**  To the extent portions of the Google Digital Copy are either in the public domain or where Google has otherwise obtained authorization, Google shall have the right, in its sole discretion, to make copies of such portions of the Google Digital Copy and to provide, license, or sell such copies to any party, subject to such copies being used consistent with the copyright-related restrictions set forth in section 4.5.1.

4.6 **Ownership and Control of Services**. As between the parties, the Services and all content therein is, and at all times will remain, the exclusive property of Google or its partners; nothing in this Agreement implies any transfer to U of M of any ownership interest in the Services.  U of M acknowledges and agrees that Google retains control of the Services, and that the design, layout, content, functions and features of the Services are at Google's discretion. Notwithstanding anything to the contrary in this Agreement, Google is not required to make any or all of the Google Digital Copy available through the Services.

4.7 **No other rights.**  Except as set forth above, nothing in this subsection shall be interpreted as a grant of right from either party to the other party.

5.      ACCESS, AUTHORIZATION, AND SUPPORT

5.1 **Access**.  On a project-specific basis, Google shall have the right to access Selected Content during U of M business/staff hours (8:00am to 5:00pm, Monday through Friday) without first being required to notify U of M.  On a project-specific basis, U of M may make reasonable efforts to provide Google with access to Selected Content outside of U of M business hours provided that Google notify U of M at least three days in advance of its desire to access such materials.

5.2 **Authorization**.  The U of M program manager responsible for the Selected Content involved in any Project Plan shall have authority to agree with Google on the time frames and procedures (e.g., collection, conservation, handling) associated with that Selected Content.  If Google in good faith believes that the time frames and procedures requested by the U of M program manager are unreasonable, Google shall escalate the matter to the U of M administrative contact; in which case Google, the U of M program manager, and the administrative contact shall meet to resolve the issue.

5.3 **Support**.  U of M shall appoint one person to serve as the administrative contact for Google, should administrative questions or issues arise during the course of this Agreement.  This administrative contact shall be available during business hours at a telephone number and e-mail address to be provided by U of M.  U of M shall also appoint one person to serve as the technical contact for Google, for obtaining or regulating the use of the U of M Digital Copy.  This technical contact shall be available during

GOOG05000360

regular U of M business hours (8:30 to 4:30, Monday through Friday) at a telephone number and e-mail address to be provided by U of M. Upon execution of this contract, both Google and U of M shall identify these individuals in writing, and the resulting document shall serve as an addendum to this contract.

**6.**     **CONFIDENTIALITY**

6.1 **Confidential Information**. By virtue of this Agreement, each Party may have access to information of the other Party which is considered confidential and proprietary, including the terms of this Agreement, Project Plan or Project Form, product plans, customer lists, and proprietary technology or methods ("Confidential Information"), whether disclosed in tangible or intangible form. Information disclosed in tangible form will be considered Confidential Information if it is marked as "Confidential" or a similar designation. Information disclosed in intangible form will be considered Confidential Information if the disclosing party clearly indicates that it is confidential at the time of disclosure.

6.2 **Obligations**. Each Party shall exercise at least the same degree of care to avoid the publication or dissemination of the Confidential Information of the other Party as it affords to its own confidential information of a similar nature which it desires not to be published or disseminated. The receiving Party shall not use Confidential Information of the disclosing Party except in the furtherance of this Agreement or the performance of its obligations hereunder. The obligation of the Parties not to disclose Confidential Information survives expiration, termination or cancellation of this Agreement.

6.3 **Exceptions**. Neither Party is obligated to protect Confidential Information of the other Party that: (i) is rightfully received by the receiving Party from another party without restriction, or (ii) is known to or developed by the receiving Party independently without use of, or reference to, the Confidential Information, or (iii) is or becomes generally known to the public by other than a breach of duty hereunder by the receiving Party, (iv) has been or is hereafter furnished to others by the disclosing Party without restriction on disclosure, or (v) required to be disclosed by any governmental authority. Google understands that U of M, as a public institution, is subject to the Michigan Freedom of Information Act, and any disclosure of Confidential Information required by that statute will not constitute a breach of this agreement.

**7.**     **MARKETING**

7.1 **Press Releases or Announcements**. Other than as has been mutually agreed upon by the Parties, neither Party may make any press announcements about the relationship or this Agreement without the prior written approval of the other Party, which will not be unreasonably withheld or delayed. U of M and Google, as practicable, will coordinate regarding the timing of any press release(s) and will mutually agree upon appropriate talking points.

7.2 **License to Marks**. Each party will submit all materials of any kind containing the other party's Brand Features (other than its name in customer lists) to the other party for approval prior to release to the public. Except as set forth in this section, nothing in this Agreement shall be deemed to grant to one party any right, title or interest in or to the other party's Brand Features. All use by Google of U of M's Brand Features (including any goodwill associated therewith) shall inure to the benefit of U of M and all use by U of M of Google's Brand Features (including any goodwill associated therewith) shall inure to the benefit of Google. At no time during the Term shall one party challenge or assist others to challenge the Brand Features of the other party (except to the extent required to protect its own Brand Features) or the registration thereof by the other party, nor shall either party attempt to register any Brand Features or domain names that are confusingly similar to those of the other party

**8.**     **TERM AND TERMINATION**

8.1 **Term** This Agreement is effective as of the Effective Date and continues in full force and effect until April 30, 2009, unless earlier terminated as provided herein at the end of the Pilot Project. Upon the expiration of the Initial Term, this Agreement shall automatically renew for additional one year terms (each a "Renewal Term") unless either Party notifies the other Party to the contrary at least thirty (30) days before the end of either the Pilot Project, the Initial Term or a Renewal Term. The "Term" of this Agreement shall comprise the Initial Term and any Renewal Terms.

8.2 **Effect of Expiration or Termination**. Within thirty (30) days after expiration or termination of this Agreement for any reason, each Party shall return to the other Party (or, at that Party's request,

GOOG05000361

destroy) any Confidential Information of that Party that is in its possession. The following sections survive expiration or termination of this Agreement: 1, 2.51, 2.5.2, 2.6, 2.7, 4.4 (so long as Google or a successor continues to exist), 4.5, 4.7, 4.8, 6, 8.2, and 9-12.

## 9.   WARRANTIES AND DISCLAIMER

**9.1 Mutual Warranties.** Each Party represents and warrants to the other that (i) it has full right, power and authority to enter into this Agreement and to perform all of its obligation hereunder; (ii) this Agreement constitutes its valid and binding obligation, enforceable against it in accordance with its terms; and (iii) its execution, delivery and performance of this Agreement will not result in a breach of any material agreement or understanding to which it is a Party or by which it or any of its material properties may be bound.

**9.2 Disclaimer.**   THE WARRANTIES EXPLICITLY SET FORTH ABOVE ARE THE ONLY WARRANTIES PROVIDED HEREIN AND ARE IN LIEU OF ALL OTHER WARRANTIES BY THE PARTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SUBJECT MATTER OF THIS AGREEMENT.   WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, GOOGLE SPECIFICALLY DISCLAIMS ANY WARRANTY REGARDING NON-INFRINGEMENT OF THIRD PARTY INTELLECTUAL PROPERTY.

## 10.   INDEMNIFICATION.

**10.1   By Google.**  Google shall defend and indemnify the U of M, its Regents, employees, and agents against any third party claim based on an allegation that the U of M's (or its Regents', employees', or agents') or Google's actions, pursuant to this Agreement, violate that third party's copyrights or other legal rights.  The foregoing indemnification includes U of M's receipt of the U of M Digital Copy, but excludes any third party claim that relates to U of M's use or distribution of the U of M Digital Copy or that arises from U of M's (or its Regents', employees' and agents') negligence under this Agreement.  Google shall select counsel reasonably appropriate for such defense and shall pay for all costs incurred by such counsel.  In addition, Google shall pay any damage awards or settlement costs that may be incurred. U of M may participate in the defense with counsel of its own choice, at its own expense.

**10.2   By U of M.**  U of M shall defend and indemnify Google, its employees and agents against any third party claim based on an allegation that U of M's use or distribution of the U of M Digital Copy violates third party copyrights or other legal rights.  U of M shall also defend and indemnify Google, its employees and agents against any third party claim based on an allegation that any third party's use or distribution of the U of M Digital Copy violates third party copyrights or other legal rights.  U of M shall select counsel reasonably appropriate for such defense and shall pay for all costs incurred by such counsel.  In addition, U of M shall pay any damage awards or settlement costs that may be incurred. Google may participate in the defense with counsel of its own choice, at its own expense.

**10.3   Disclaimer.**  EXCEPT AS EXPRESSLY SET FORTH IN THIS SECTION 10, EACH PARTY EXPRESSLY DISCLAIMS ANY FURTHER OBLIGATION TO INDEMNIFY, DEFEND OR HOLD HARMLESS THE OTHER PARTY FROM ANY THIRD PARTY CLAIM OR ACTION.  THE FOREGOING PROVISIONS OF THIS SECTION 10 STATE THE ENTIRE LIABILITY AND OBLIGATIONS OF INDEMNIFYING PARTY, AND THE EXCLUSIVE REMEDY OF INDEMNIFIED PARTY, WITH RESPECT TO ANY ACTUAL OR ALLEGED INFRINGEMENT OF ANY INTELLECTUAL PROPERTY RIGHTS UNDER THIS AGREEMENT.

## 11.   LIMITATION OF LIABILITY

EXCEPT FOR DAMAGES ARISING FROM BREACH OF SECTION 6 (CONFIDENTIALITY) OR DAMAGES ARISING FROM BREACH OF SECTIONS 4.4 - 4.6 (AND ASSOCIATED SUBSECTIONS), IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR LOST PROFITS OR ANY FORM OF INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER FROM ANY CAUSES OF ACTION OF ANY KIND WITH RESPECT TO THIS AGREEMENT, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, AND WHETHER OR NOT THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.  EXCEPT FOR DAMAGES ARISING FROM BREACH OF SECTION 6 (CONFIDENTIALITY)

GOOG05000362

OR DAMAGES ARISING FROM BREACH OF SECTIONS 4.4 - 4.6 (AND ASSOCIATED SUBSECTIONS), EACH PARTY'S LIABILITY UNDER THIS AGREEMENT SHALL BE LIMITED TO THE FEES EXPENDED BY THE OTHER PARTY AS OF THE DATE OF SUCH CLAIM.

**12.     GENERAL PROVISIONS**

        12.1     **No Obligation.**  Notwithstanding the foregoing, Google shall have no obligation to Digitize any portion of the Available Content nor to use any portion of the Google Digital Copy as part of the Services.  U of M shall not be obligated to participate in any Project Plan to the extent U of M does not have sufficient funds to perform its budgeted obligations under that Project Plan.  Furthermore, notwithstanding anything in this Agreement to the contrary, in the event Google determines, at its sole discretion, not to Digitize some or all Selected Content in connection with one or more specific Projects, whether due to cost issues, conservation concerns or otherwise, Google shall have no obligation to the U of M with respect to digitizing or delivering the U of M Digital Copy with respect to such Selected Content.

        12.2     **Assignment.**  Neither Party may assign this Agreement without the other Party's prior written consent, which consent shall not be unreasonably withheld. Any attempt to assign this Agreement other than as permitted above will be null and void. Subject to the foregoing, this Agreement is binding upon and shall inure to the benefit of each of the Parties, and the successors and permitted assigns of each.

        12.3     **Notices.**  Any notice required or permitted by this Agreement will be deemed given if sent by facsimile or by registered mail, postage prepaid, addressed to the other Party at the address set forth at the top of this Agreement.  Delivery will be deemed effective upon transmission by facsimile (with receipt acknowledgement) or three (3) days after deposit with postal authorities.  Unless otherwise specified by Google, notices directed to Google shall be sent to Google Inc., Attn: General Counsel, 2400 Bayshore Pkwy, Mountain View, CA 94043, or via facsimile to Google Inc., Attn: General Counsel, 650-618-1499.  Unless otherwise specified by U of M, notices directed to U of M shall be sent to University Library, Attn:  Associate University Librarian LIT, University of Michigan, Ann Arbor, MI 48109-1205.

        12.4     **Independent Contractors.**  The Parties to this Agreement are independent Parties and nothing herein shall be construed as creating an employment, agency, joint venture or partnership relationship between the Parties. Neither Party shall have any right, power or authority to enter into any agreement for or on behalf of, or incur any obligation or liability, or to otherwise bind, the other Party.

        12.5     **Severability.**  If any term or provision of this Agreement is held to be invalid, illegal, or otherwise void against public policy, such term or provision shall be stricken and shall not affect the validity or enforceability of the remaining terms and provisions of this Agreement.

        12.6     **Force Majeure.**  Performance by either party under this Agreement shall be excused during the period such performance is prevented or delayed by government restrictions, war or warlike activity (e.g., acts of terrorism), insurrection or civil disorder, labor disputes, or any other causes similarly or dissimilar to the foregoing that are beyond the control of either party and are not foreseeable at the time the Agreement (or relevant amendment) is executed.

        12.7     **General**.  The Agreement shall be governed by Federal law without giving effect to applicable conflict of laws provisions.  In the event of any dispute or litigation arising out of or relating to this Agreement, each Party agrees that it shall attempt to resolve such dispute in good faith.  If such dispute cannot be resolved within thirty days of being raised, the dispute shall be elevated to the highest level at each Party.  If the dispute still cannot be resolved within an additional thirty days, the aggrieved party may file a lawsuit in the state or federal courts with jurisdiction to hear such suits in the State of Michigan.  This Agreement, including any Project Forms and attached Exhibits, constitutes the entire understanding and agreement with respect to its subject matter, and supersedes any and all prior or contemporaneous representations, understandings and agreements whether oral or written between the Parties relating to the subject matter of this Agreement, all of which are merged in this Agreement. For avoidance of doubt, as of the Effective Date, this Agreement supersedes and replaces any other Cooperative Agreements between the parties to the extent they exist.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the Party to be charged, and the waiver of any breach or default will not constitute a waiver of any other right hereunder or any subsequent breach or default. All amendments or modifications of this

GOOG05000363

Agreement shall be binding upon the Parties despite any lack of consideration so long as such amendment or modifications are in writing and executed by the Parties.   If any provision of this Agreement is found to be invalid or unenforceable pursuant to judicial decree or decision, the remainder of this Agreement shall remain valid and enforceable according to its terms.   In such event, the Parties agree to negotiate in good faith, a legal and enforceable substitute provision which most nearly conforms to the Parties' intention in entering into this Agreement. The section and paragraph headings used in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement.   This Agreement may be executed by exchange of signature pages by facsimile and/or in any number of counterparts, each of which shall be an original as against any Party whose signature appears thereon and all of which together shall constitute one and the same instrument.

CONFIDENTIAL

GOOG05000364

Accepted and Agreed:

**Google Inc.**

By: _____ 6/14/05
        (Authorized signature)

Name: David Drummond

Title: V.P., Corporate Development

**On behalf of the Regents of the University of Michigan**

By: _____ 6/15/05
        (Authorized signature)

Name: Timothy Slottow

Title: Executive Vice President and
         Chief Financial Officer

CONFIDENTIAL

11

GOOG05000365

**EXHIBIT A**

**SAMPLE PROJECT FORM**

Project Name:

Program Manager:

Estimated Start Date:

Estimated Completion Date:

Description of Works Involved:

Out-of-circulation Time:

Location of Works:

Conservation Requirements:

Collection Instructions:

Transportation Instructions:

Special Handling Instructions:

Infrastructure Requirements (e.g., space, power, scanner size and quantity, environmental parameters, etc.):

Hours of Operation:

Known Copyright Restrictions:

Budget Allocations (if any):

Other comments:

GOOG05000366

## COOPERATIVE AGREEMENT

This COOPERATIVE AGREEMENT (the "Agreement") is entered into by and between Google Inc., a Delaware corporation with offices at 1600 Amphitheatre Parkway, Mountain View, California 94043 ("Google"), and The Regents of the University of California on behalf of its California Digital Library with its principal offices at 415 20th Street, 4th Floor, Oakland California, 94612 ("University"), and is effective as of the last date this Agreement is signed by the parties (the "Effective Date").  Google and University herein are sometimes referred to hereinafter individually as a "Party" and collectively as the "Parties".

### RECITALS

WHEREAS, University is a leading academic institution and has amassed an enormous collection of works in various media located at various University Libraries;

WHEREAS, Google provides the public with access to web pages on the Internet, among other products and services;

WHEREAS, Google and the University share a mutual interest in making information available to the public; and

WHEREAS, Subject to the terms set forth herein, Google will digitize works from the University Libraries' collection to include them in Google's services, and provide access to the digitized works to the University as described herein.

NOW THEREFORE, in consideration of the mutual covenants set forth herein, Google and University hereby agree as follows:

### DEFINITIONS

1.    **DEFINITIONS.**  Capitalized terms will have the meanings set forth below:

1.1    "Available Content" means selections from the University Libraries' holdings as identified by Google and the University.  Without limiting the foregoing, "Available Content" also includes the University Libraries' Digital Content.

1.2    "Brand Features" means the trade names, trademarks, service marks, logos, domain names, and other distinctive brand features of each Party, respectively, as secured by such Party from time to time.

1.3    "Digitize" means to convert content from a tangible, analog form into a digital electronic representation of that content.  "Digitization", "Digitizing" and "Digitized" shall have corresponding meanings.

1.4    "End User" means a person that accesses or uses the Google Services.

1.5    "Google Digital Copy" means a digital copy retained by Google of the Selected Content that is Digitized by Google.

1.6    "Google Services" means Google's products and services that are accessible through and otherwise provided by various computer and electronic technologies, networks (syndicated and otherwise) and systems, including without limitation, mobile wireless services and Internet-based services accessible through the Google Sites and any Google syndication partner sites.

GOOGLE CONFIDENTIAL
EXECUTION COPY                          1



GOOG05000306

1.7    "Google Site" means any web site located at a Google-owned domain, including all subdomains and directories thereof, and all successor sites thereto.

1.8    "Hosted Solution" shall have the meaning set forth in Section 4.6.

1.9    "Initial Term" shall have the meaning set forth in Section 8.1.

1.10    "Other Library" means any library (including any libraries affiliated or associated with any university or other educational institution, other than University) with which Google has an agreement as of the Effective Date concerning Digitization by Google of content from that library.

1.11    "University Digital Copy" means the Digitized copy of the Selected Content as specified in Section 4.7.

1.12    "University Libraries' Digital Content" means content that University Libraries already have in their possession in Digitized form, as of the Effective Date.

1.13    "University Libraries" means those libraries of the ten campuses of the University of California set forth on Exhibit A and the University's Office of the President's California Digital Library.

1.14    "University Library Patrons" means the sum total of all individuals and organizations that the University Libraries serve from their websites.

1.15    "Project" means a project for Digitizing certain Selected Content.

1.16    "Project Plan" means a written plan for implementing a Project. The Project Plan shall include the following: (1) timetable for Digitizing the Selected Content, (2) instructions by University regarding how the Selected Content is to be collected and returned by Google; (3) material handling processes for the Selected Content, (4) if required, the amount of time available to University for performing conservation efforts; (5) the amount of time available to Google from receipt of the Selected Content until it is due to be returned to University; and (6) a budget for the Project.

1.17    "Renewal Term" shall have the meaning set forth in Section 8.1.

1.18    "Selected Content" means the portion of the Available Content that Google desires to Digitize or incorporate into the Google Services, both collectively and its component parts, including any and all other works of authorship included therein.

1.19    "Term" shall have the meaning set forth in Section 8.1.

## TERMS

2.    **DIGITIZATION OPERATIONS.**

2.1    Locating the Digitization Operation. Selected Content will be digitized at a designated Digitization facility. The facility will be located at a site controlled by the University or at one controlled by Google. Where the facility is controlled by the University, the University shall provide Google with adequate physical space to Digitize the Selected Content. If University is unable to provide such space, University shall cooperate with Google to identify and obtain space that Google can use at reasonable rates. If the facility is provided by Google, Google shall pay for any and all fees and costs associated with the use of said space; University shall not be liable for any such fees and costs. Where the facility is controlled by Google, then Google may remove some or all of the Selected Content from University premises to perform Digitization in its facilities. Site selection will be agreed by both parties and specified in the "Project Plan".

2.2    Identifying and Collecting Content to be Digitized. The Parties shall in good faith identify Available Content that Google may elect to Digitize; provided that University agrees to commit no less than two and a half million (2,500,000) volumes to the Digitization efforts under this Agreement. In addition, University agrees that for a period of sixty (60) days from the Effective Date, University will provide or provide Google with access to no less than six hundred (600) books of Selected Content per

GOOGLE CONFIDENTIAL
EXECUTION COPY



GOOG05000307

day to Digitize. University will use reasonable efforts to provide or provide Google with access to no less than three thousand (3,000) books (or such amount that is mutually agreed to by the Parties) of Selected Content per day to Digitize commencing on the sixty-first (61st) day after the Effective Date but in no event later than ninety (90) days from the Effective Date. The Parties shall cooperate in good faith and with diligence to develop a timetable for completing the Project Plan for Digitizing the Selected Content.

2.3    Collecting the Selected Content. Where Selected Content is Digitized in facilities controlled by the University, the University shall be responsible for locating, pulling and moving the Selected Content to and from the designated Digitization facility as well as re-shelving the Selected Content when the Digitization is complete. Where Selected Content is Digitized in facilities controlled by Google, the University shall be responsible for locating, pulling, and later reshelving the Selected Content. If agreed upon by the Parties in a particular Project Plan, the collection, pulling, moving, and reshelving functions may be assigned to Google. Google will be responsible for arranging and paying for any and all costs and fees associated with transporting the Selected Content to and from University and storing it during a Project. Google agrees that each Digitization facility it controls will, at all times be reasonably clean, dry, cool, protected from fire and secure against theft and vandalism and at no time shall smoking be permitted in any Digitization facility. Google personnel, agents, contractors and other representatives involved in the Digitization and/or handling of the Selected Content will satisfy and comply with the standards mutually agreed by the Parties in the Project Plan. Upon commencement of a Project, University shall at its sole discretion perform any conservation efforts, at its expense, that it determines are required and/or desirable for the Selected Content prior to Digitization. On a rolling basis, as this conservation effort is completed, University shall provide the conserved Selected Content to Google for Digitizing.

2.4    Digitizing the Selected Content. Subject to handling constraints or procedures specified in the Project Plan, Google shall in its sole discretion determine how best to Digitize the Selected Content. While the Selected Content is within Google's possession, Google shall use commercially reasonable efforts to minimize damage to the Selected Content, including handling the Selected Content in accordance with handling instructions set forth in the Project Plan, if any. If the University establishes that Selected Content was not returned in substantially the same condition, Google will, at Google's option and the University's sole remedy, either replace the Selected Content in question or pay the University for the repair or replacement of such Selected Content up to a maximum as may be specified in the Project Plan.

2.5    Return of the Selected Content. Google shall return the Selected Content to the *library* from which Google obtained it and in the like manner in which it was collected after Google completes Digitizing the Selected Content. Google will use reasonable commercial efforts to ensure that Selected Content is returned within ten (10) business days of its being scanned or after a determination is made by Google that Selected Content will not be scanned. Notwithstanding the foregoing, Google agrees that no materials in a Project will be off University's shelves for longer than fifteen (15) business days or for a longer period as may be specified in the Project Plan.

3.    COSTS

3.1    Costs paid by University. In addition to costs mutually agreed upon by the Parties, University shall be responsible for the following costs: (a) those related to locating and pulling the Selected Content as well as re-shelving the Selected Content when the Digitization is complete, (b) those related to University employees and agents whose participation is contemplated by this Agreement, (c) network bandwidth and data storage required by University to receive all of the University Digital Copy, (d) existing bandwidth available for use by Google to transfer Digitized files from University facilities to Google's data centers to the extent that University provides the Digitization facility, (e) University space that may be available and acceptable to Google for the Digitization, (f) transportation of Selected Content to and from the University facility in which the Selected Content is normally kept to and from the Digitization facility provided by the University, (g) any conservation efforts that University elects to



GOOG05000308

undertake on the Selected Content prior to Digitizing, and (h) barcoding and associated data entry to barcode the Selected Content.

3.2   Costs borne by Google. In addition to costs mutually agreed upon by the Parties, Google shall be responsible for the following costs: (a) those related to Google employees whose participation is contemplated by this Agreement, (b) hardware and software required to Digitize the Selected Content, (c) space required to Digitize the Selected Content (to the extent not provided by University), (d) transportation of Selected Content from the University facility where the Selected Content is normally kept to a Google designated facility (to the extent not provided by University), and (e) all costs related to barcoding and inventory record building for materials selected for Digitizing that do not have a barcode when pulled from the shelf ("dumb barcoding"); provided that (i) Google will bear such barcoding costs only if University personnel are unable to insert a barcode from University records and, in such case, University personnel will dumb barcode the work and the costs will be billed to Google on a mutually agreed upon time and materials basis (such agreement to be in writing and signed by both parties) not to exceed $0.50 per work barcoded; and (ii) the Parties will determine the appropriate flow of works so that University will barcode at Google's expense not more than six (6) months ahead of the Digitizing schedule for such works. University agrees to provide to Google its current costs to barcode works.

3.3   Budgets. Notwithstanding the foregoing, University and Google may jointly develop a budget for each Project Plan, pursuant to which the Parties can allocate the cost of researching and identifying the Selected Content and performing any required copyright research and clearances, conservation, and metadata development as may be required. Any such budget will take precedence over the provisions of Sections 3.1 and 3.2 above.

## 4.   OWNERSHIP AND USE OF DIGITAL COPIES AND SERVICES

4.1   Copyright Status. The Parties understand that the Selected Content may include some works that will be treated hereunder as public domain works and some works that will be treated hereunder as in-copyright works. Both Google and University agree and intend to perform this Agreement in compliance with copyright law. Each Party will be responsible for the determination of how to treat a work for each jurisdiction at its sole discretion. Notwithstanding such determination, if either Party believes a work (or portion thereof) should be treated as an in-copyright work in either the United States or another jurisdiction, and so notifies the other Party, then, within forty-eight (48) hours of such notice, such work (or portion thereof) shall be treated as an in-copyright work for use in the relevant country. In addition, Google will implement processes whereby any person or entity can request Google not to Digitize any Available Content or to cease the display or use of any Digitized Selected Content which Google will comply with so long as Google determines that the person or entity making the request is the copyright holder or has apparent authority to act on behalf of the copyright holder.

4.2   Ownership and use of Google Digital Copy. As between Google and University and subject to the provisions in this Section 4, Google shall own all rights, title, and interest in and to the Google Digital Copy.

4.3   Google use of Google Digital Copy. Subject to the restrictions set forth herein, Google may use the Google Digital Copy, in whole or in part at Google's sole discretion, subject to copyright law, as part of the Google Services. Google agrees that to the extent that it or its successors use any Digitized Selected Content in connection with any Google Services, it shall provide a service at no cost to End Users (1) for both search and display of search results and (2) for access to the display of the full text of public domain works contained in the Digitized Selected Content. To the extent portions of the Google Digital Copy are either in the public domain or where Google has otherwise obtained authorization, Google shall have the right, in its sole discretion, among other things, to (a) index the full text or content, (b) serve and display full-sized digital images corresponding to those portions, (c) make available full text of content for printing and/or download, and (d) make copies of such portions of the Google Digital Copy and provide, license, or sell such copies (including, without limitation, to its syndication partners). For all

GOOGLE CONFIDENTIAL
EXECUTION COPY



GOOG05000309

other portions of the Google Digital Copy, Google may index the full text or content but may not serve or display the full-sized digital image or make available for printing, streaming and/or download the full content unless Google has permission or license from the copyright owner to do so; Google instead may serve and display (1) an excerpt that Google reasonably determines would constitute fair use under copyright law and (2) bibliographic (e.g., title, author, date, etc) and other non-copyrighted information. In the event that Google has received a license or other permission from the applicable copyright holder to use in-copyright works in the Google Digital Copy, Google may use those works in any manner permitted under the terms of such license.

4.4     Security and Privacy Regarding Google's Use of the Google Digital Copy. Google shall implement commercially reasonable technological measures (e.g., through use of the robots.txt protocol) to restrict automated access to any portion of the Google Digital Copy that is in-copyright.    Google agrees that the security measures applied to in-copyright portions of the Google Digital Copy will be the same or equivalent to those employed to protect the information contained in Google's index. In addition, Google shall maintain on its website a privacy policy that governs collection and use of information that Google obtains from End Users.

4.5     Ownership and Control of Google Services. As between the Parties, the Google Services and all content therein are, and at all times will remain the exclusive property of Google or its partners; nothing in this Agreement implies any transfer to University of any ownership interest in the Google Services.   University acknowledges and agrees that Google retains control of the Google Services, and that the design, content, functions and features of the Google Services are at Google's discretion. Notwithstanding anything to the contrary in this Agreement, Google is not required to make any or all of the Google Digital Copy available through the Google Services.

4.6     Hosted Solution. During the Term, Google will provide searchable access to the Google Digital Copy at no charge to University and to University Library patrons via a website that will be hosted by Google (the "**Hosted Solution**"). The design, layout, content, functions and features of the Hosted Solution will be determined by Google but substantially similar to that provided by Google to any Other Library.

4.7     University Digital Copy.   Unless otherwise agreed by the Parties in writing, the "**University Digital Copy**" means the digital copy of the Selected Content that is Digitized by Google consisting of (a) a set of image and OCR files, (b) associated meta-information about the files including bibliographic information consisting of title and author of each Digitized work and technical information consisting of the date of scanning the work, information about which image files correspond to what Digitized work, and information pertaining to the logical order of image files that make up a Digitized work, (c) a list of works that are supplied for Digitization but not actually Digitized, and (d) the image coordinates for each Digitized Work ("**Image Coordinates**"); provided that Image Coordinates will only be provided (i) so long as University complies with the volume commitments set forth in Section 2.2 and (ii) pursuant to the restrictions on University's use and distribution of such Image Coordinates set forth in Section 4.10.

4.7.1     Google agrees to provide to University access to one copy of all Digitized Selected Content that has been "Successfully Processed" within thirty (30) days after the Selected Content is Digitized, or in a timeframe mutually agreed by the Parties.   Selected Content is "**Successfully Processed**" when Google determines it has satisfactorily gone through all stages of Google's Digitization, post processing and quality assurance procedures. In addition Google will provide the University with the ability to sample the files for two hundred and fifty (250) Digitized works per month to assess quality. Google agrees that the quality and type of files provided to University in the University Digital Copy will be substantially similar to the quality and type of files provided to any Other Library. Further, the quality and type of files supplied by Google to the University will conform to a minimum specification established by Google in consultation with the University and by those Other Libraries. Google shall provide the University Digital Copy via a network connection, or in any other manner mutually agreed upon by the Parties. Notwithstanding anything to the contrary herein, Google may withhold any works in dispute from



GOOG05000310

the University Digital Copy and the University will delete any such works that were previously provided to University as part of the University Digital Copy.

4.8    Ownership and use of University Digital Copy.  As between Google and University and subject to the restrictions in this Section 4, University shall own all rights, title, and interest to the University Digital Copy.  Without limiting the foregoing, University shall not display or otherwise use the University Digital Copy except as expressly permitted in this Agreement.

4.9    Use of University Digital Copy.  University shall have the right to use the University Digital Copy, in whole or in part at University's sole discretion, subject to copyright law, as part of services offered to the University Library Patrons. University may not charge, receive payment or other consideration for the use of the University Digital Copy except that University may charge for use of any services supplemental to the original work that the University supplies that add value to the University Digital Copy (for example, University may charge University Library Patrons for access to annotations to works from professors and scholars but the original work will always be accessible without a fee), and to recover copying costs actually incurred.  University agrees that to the extent it makes any portion of the University Digital Copy publicly available, that it will identify the works, in a statement on a web page or other access point to be mutually agreed to by the Parties, as "Digitized by Google" or in a substantially similar manner.  University shall implement technological measures (e.g., through use of the robots.txt protocol) to restrict automated access to any portion of the University Digital Copy or the portions of the University website on which any portion of the University Digital Copy is available.  University shall also prevent third parties from (a) downloading or otherwise obtaining any portion of the University Digital Copy for commercial purposes, (b) redistributing any portions of the University Digital Copy, or (c) automated and systematic downloading from its website image files from the University Digital Copy. University shall develop methods and systems for ensuring that substantial portions of the University Digital Copy are not downloaded from the services offered on University's website or otherwise disseminated to the public at large.  University shall also implement security and handling procedures for the University Digital Copy which procedures shall be mutually agreed by the Parties.  Except as expressly allowed herein, University will not share, provide, license, or sell the University Digital Copy to any third party.

4.10    Distribution of the University Digital Copy.

(a)    University shall not share, provide, license, distribute or sell the Image Coordinates to any entity in any manner.  University may use the Image Coordinates only as part of the University Digital Copy for the services provided to University Library Patrons set forth in Section 4.9 above.

(b)    Subject to the restrictions contained herein, University shall have the right to distribute (1) no more than ten percent (10%) of the University Digital Copy (but not any portion of the Image Coordinates) to (i) other libraries and (ii) educational institutions, in each case for non-commercial research, scholarly or academic purposes and (2) all or any portion of public domain works contained in the University Digital Copy (but not any portion of the Image Coordinates) to research libraries for research, scholarly and academic purposes by those libraries and the faculty, students, scholars and staff authorized by said libraries to access their commercially licensed electronic information products.  Any recipient of the University Digital Copy under this Section 4.10 is referred to herein as a "**Recipient Institution.**" Prior to any distribution by University to a Recipient Institution, Google and the Recipient Institution must have entered into a written agreement on terms acceptable to Google governing the use of the University Digital Copy and that, among other things, provide an indemnity to Google.  In addition, any distribution by University to a Recipient Institution is subject to a written agreement that (A) prohibits that Recipient Institution from redistributing without first obtaining the prior written consent of Google, (B) makes Google an express third party beneficiary of such agreement, (C) provides an indemnity to Google from the Recipient Institution for the Recipient Institution's use of the Selected Content, (D) contains limitations at least as restrictive as the restrictions on University set forth in Section 4.9, (E) contains limitations on the use of the University Digital Copy consistent with copyright law and the limitations set forth in clauses (1) and (2) above, and (E) requires each Recipient Institution, to the extent it makes any



GOOG05000311

portion of the University Digital Copy publicly available, to identify the works, in a statement on the applicable web page or other access point, as "Digitized by Google" or in a substantially similar manner.

5.   ACCESS, AUTHORIZATION AND SUPPORT

   5.1    Access.  Google shall have the right to access Selected Content during University business/staff hours as required to exercise its rights and perform its obligations hereunder.  If requested by Google, University shall provide Google with access to Selected Content outside of University business hours provided that Google notify University at least two (2) days in advance of its intent to access such materials.

   5.2    Authorization.  The University program manager responsible for the Selected Content involved in any Project Plan shall have authority to agree with Google on the time frames and procedures (e.g., collection, conservation, and handling) associated with that Selected Content.  If Google in good faith believes that the time frames and procedures requested by the University program manager are unreasonable, Google shall escalate the matter to the University administrative contact; in which case Google, the University program manager, and the administrative contact shall meet to resolve the issue.

   5.3    Support from University.   University shall appoint one person to serve as the administrative contact for Google, should administrative questions or issues arise during the course of this Agreement.  This administrative contact shall be available during regular University business hours (9:00 a.m. to 5:00 p.m., Monday through Friday) at a telephone number and e-mail address to be provided by University.  University shall also appoint one person to serve as the technical contact for Google, for obtaining or regulating the use of the University Digital Copy.  This technical contact shall be available during regular University business hours at a telephone number and e-mail address to be provided by University.  Upon execution of this contract, both Google and University shall identify these individuals in writing, which may be email.

   5.4    Support from Google.  Google will appoint specific persons for technical and administrative contact purposes, as identical to the conditions specified in 5.3 for University contacts.

6.   CONFIDENTIALITY

   6.1    Confidentiality.   By virtue of this Agreement, each Party may have access to information of the other Party which is considered confidential and proprietary, including product plans, customer lists, and proprietary technology or methods ("**Confidential Information**"), whether disclosed in tangible or intangible form.  Information disclosed in tangible form will be considered Confidential Information if it is marked as "Confidential".   Information disclosed in intangible form will be considered Confidential Information if the disclosing Party clearly indicates that it is confidential at the time of disclosure.

   6.2    Obligations.   Each Party shall exercise at least the same degree of care to avoid the publication or dissemination of the Confidential Information of the other Party as it affords to its own confidential information of a similar nature which it desires not to be published or disseminated.  The receiving Party shall not use Confidential Information of the disclosing Party except in connection with this Agreement and the matters contemplated hereby.   The obligation of the Parties not to disclose Confidential Information survives termination or cancellation of this Agreement.

   6.3    Exceptions.   Neither Party is obligated to protect Confidential Information of the other Party that: (i) is received by the receiving Party from a third party which is not known to the receiving Party to be under a confidentiality obligation to the disclosing Party, or (ii) is known to or developed by the receiving Party independently without use of, or reference to, the Confidential Information, or (iii) is or becomes generally available to the public by other than a breach of duty hereunder by the receiving Party, (iv) has been or is hereafter furnished to others by the disclosing Party without restriction on disclosure, or (v)  is required to be disclosed by any law, governmental authority or legal process



GOOG05000312

("**Process**"); provided that (a) the Recipient shall promptly notify the Discloser of such Process; and (b) the Recipient shall not produce or disclose Confidential Information in response to the Process unless the Discloser has (1) requested protection from the appropriate court or other legal or governmental authority requiring the Process and such request has been denied, (2) consented in writing to the production or disclosure of the Confidential Information in response to the Process, or (3) taken no action to protect its interest in the Confidential Information within fourteen (14) business days after the Recipient has given notice of its obligation to produce or disclose Confidential Information in response to the Process. The Discloser agrees that it will indemnify, defend, and hold harmless the Recipient for all damages, costs, liabilities, and fees, including reasonable attorney's fees, arising out of any third party claims that the failure to comply with the Process violates an applicable law, provided that Recipient's failure to comply is a result of adhering to the foregoing provisions; provided that the Recipient (i) promptly notifies the Discloser of such claim, (ii) provides the Discloser with reasonable information, assistance and cooperation in defending the claim, lawsuit or proceeding, and (iii) gives the Discloser full control and sole authority over the defense and settlement of such claim. The Recipient may join in defense with counsel of its choice at its own expense.

6.4     PR. Neither Party will issue any public announcement regarding the existence or content of this Agreement without the other Party's prior written approval. Google may include the name "University of California" and the University unofficial seal in lists of other partner libraries, subject to the following: Google may use the University's name and unofficial seal in presentations and promotional/marketing materials only with the University's prior written permission. In lieu of submitting individual requests prior to each such use, Google may submit a plan for such presentations and promotional/marketing materials for University's review and approval.

7.     **BRAND FEATURES**

7.1     Ownership. Each Party shall own all right, title and interest relating to its Brand Features. Some, but not all examples of Google Brand Features are located at: http://www.google.com/permissions/trademarks.html (or such other URLs Google may provide from time to time). Except to the limited extent expressly provided in this Agreement, neither Party grants, and the other Party shall not acquire, any right, title or interest (including, without limitation, any implied license) in or to any Brand Features of the first Party; and all rights not expressly granted herein are deemed withheld. All use by Google of University Brand Features (including any goodwill associated therewith) shall inure to the benefit of University and all use by University of Google Brand Features (including any goodwill associated therewith) shall inure to the benefit of Google. No Party shall challenge or assist others to challenge the Brand Features of the other Party (except to protect such Party's rights with respect to its own Brand Features) or the registration thereof by the other Party, nor shall either Party attempt to register any Brand Features or domain names that are confusingly similar to those of the other Party.

7.2     License to University Brand Features. Subject to the terms and conditions of this Agreement, University grants to Google a limited, nonexclusive and nonsublicensable license during the Term to display those University Brand Features expressly authorized for use in this Agreement, solely for the purposes expressly set forth herein. Notwithstanding anything to the contrary, University may revoke the license granted herein to use University's Brand Features upon providing Google with written notice thereof and a reasonable period of time to cease such usage.

8.     **TERM AND TERMINATION**

8.1     Term. This Agreement is effective as of the Effective Date and continues in full force and effect for a period of six (6) years, unless earlier terminated as provided herein (the "**Initial Term**"). Upon the expiration of the Initial Term, this Agreement shall automatically renew for additional one year terms (each a "**Renewal Term**") unless either Party notifies the other Party to the contrary at least thirty (30)



GOOG05000313

days before the end of either the Initial Term or a Renewal Term. The "**Term**" of this Agreement shall comprise the Initial Term and any Renewal Terms.

  8.2   Termination. Either Party may suspend performance and/or terminate this Agreement: (i) if the other Party materially breaches any material term or condition of this Agreement and fails to cure such breach within thirty (30) days after receiving written notice thereof; or (ii) if the other Party becomes insolvent or makes any assignment for the benefit of creditors or similar transfer evidencing insolvency, or suffers or permits the commencement of any form of insolvency or receivership proceeding, or has any petition under bankruptcy law filed against it, which petition is not dismissed within sixty (60) days of such filing, or has a trustee, administrator or receiver appointed for its business or assets or any part thereof.

  8.3   Effect of Expiration or Termination. After expiration or termination of this Agreement for any reason: (i) each Party shall within thirty (30) days return to the other Party (or, at that Party's request, destroy) any Confidential Information of that Party that is in its possession, (ii) Google shall within thirty (30) days return to the University any Selected Content that it has in its possession or in transit at termination in a manner specified in Section 2.5, (iii) the University shall within ninety (90) days download any digitized Selected Content that has been created by Google during the Term but not yet downloaded by the University at termination, in a manner specified in Section 4.7.1. The following sections survive expiration or termination of this Agreement: 1, 2.4, 2.5, 4 (excluding Section 4.6), 6, 8.3, 9, 10 and 11.

## 9.   DISCLAIMER OF WARRANTIES

  9.1   Mutual Warranties. Each Party represents and warrants to the other that (i) the individual who executes this Agreement has full power and authority to do so; and (ii) this Agreement constitutes its valid and binding obligation, enforceable against it in accordance with its terms.

  9.2   Disclaimer. THE WARRANTIES EXPLICITLY SET FORTH ABOVE ARE THE ONLY WARRANTIES PROVIDED HEREIN AND ARE IN LIEU OF ALL OTHER WARRANTIES BY THE PARTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SUBJECT MATTER OF THIS AGREEMENT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, BOTH PARTIES SPECIFICALLY DISCLAIM ANY WARRANTY REGARDING NON-INFRINGEMENT OF THIRD PARTY INTELLECTUAL PROPERTY.

## 10.   INDEMNIFICATION.

  10.1   By Google. Google shall defend, indemnify, and hold harmless University from and against any and all liabilities, damages, charges, fees, including reasonable attorneys' fees, costs, and expenses arising out of or in any way related to a third party claim, lawsuit, and/or any other legal, quasi-legal, or administrative proceeding alleging that any or all of the following violate any applicable law, including, but not limited to, an allegation of copyright infringement: University's provision of Available Content to Google for digitization to the extent such provision is alleged to be direct or secondary copyright infringement; Google's Digitization of Available Content; the use or distribution of Google Digital Copy(ies); and/or the use of the Google Digital Copy in connection with Google Services. The foregoing indemnification excludes any third party claim that relates to University's use or distribution of the University Digital Copy.

  10.2   By University. University shall defend, indemnify, and hold harmless Google from and against any and all liabilities, damages, charges, fees, including reasonable attorneys' fees, costs and expenses arising out of or in any way related to a third party claim, lawsuit, and/or any other legal, quasi-legal, or administrative proceeding alleging that any or all of the following violate any applicable law including, but not limited to, an allegation of copyright infringement: University's use or University's distribution of the University Digital Copy. The foregoing indemnification excludes any third party claim that relates to University's provision of Available Content to Google for digitization to the extent such



GOOG05000314

provision is alleged to be direct or secondary copyright infringement; Google's Digitization of Available Content; the Google Digital Copy; the use or distribution of Google Digital Copy(ies); and/or the use of the Google Digital Copy in connection with Google Services.

10.3   General.  The foregoing obligations shall exist only if the Party seeking indemnification ("**Indemnitee**"):  (i) promptly notifies the Indemnitor of such claim, (ii) provides the Indemnitor with reasonable information, assistance and cooperation in defending the claim, lawsuit or proceeding, and (iii) gives the Indemnitor full control and sole authority over the defense and settlement of such claim.  The Indemnitee may join in defense with counsel of its choice at its own expense.

## 11.   LIMITATION OF LIABILITY

IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR LOST PROFITS OR ANY FORM OF INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER FROM ANY CAUSES OF ACTION OF ANY KIND WITH RESPECT TO THIS AGREEMENT, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, AND WHETHER OR NOT THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE, AND (B) EACH PARTY'S LIABILITY UNDER THIS AGREEMENT SHALL BE LIMITED TO ONE MILLION DOLLARS ($1,000,000).  The Parties agree that (i) the mutual agreements made in this Section 11 reflect a reasonable allocation of risk, and (ii) that each Party would not enter into the Agreement without these limitations on liability.  The foregoing limitations, however, are not applicable to any damages arising from a breach of Section 6, Confidentiality, to any monetary obligations arising out of the indemnification obligations in Section 10, Indemnification, including, but not limited to, indemnification for allegations of copyright infringement, or to any damages related to actions for personal injury or willful misconduct.

## 12.   GENERAL PROVISIONS

12.1   No Obligation.  Notwithstanding the foregoing, Google shall have no obligation to Digitize any portion of the Available Content nor to use any portion of the Google Digital Copy as part of the Google Services.  Likewise, notwithstanding anything in this Agreement to the contrary, University shall not be obligated to participate in the digitization program described in this Agreement with respect to any or all of the Available Content.  Furthermore, notwithstanding anything in this Agreement to the contrary, if Google determines, at its sole discretion, not to Digitize some or all Selected Content in connection with one or more specific Projects, whether due to cost issues, conservation concerns or otherwise, Google shall have no obligation to the University with respect to Digitizing or delivering the University Digital Copy with respect to such Selected Content.

12.2   Miscellaneous.  Neither Party may assign any of its rights or delegate any of its duties under this Agreement without the prior written consent of the other Party, except that either Party may assign its rights and delegate its duties under this Agreement upon written notice to the other Party to a division or an affiliate thereof (that is not a competitor of the non-assigning Party), provided such division or affiliate agrees to be bound by all of the terms hereof.  Any attempted assignment, delegation or transfer in derogation hereof shall be null and void.  This Agreement shall be binding upon the successors and permitted assigns of both Parties.  Unless provided for to the contrary in this Agreement, any and all notices or other communications or deliveries required or permitted to be made under this Agreement shall be sent to the respective party at the respective address identified above.  Notice shall be deemed received (i) upon receipt when delivered personally or (ii) upon verification of receipt of registered or certified mail, return receipt requested.  Contact information shall be updated in writing as necessary to ensure that each Party has current information regarding all such contacts.  The Parties hereto are and shall remain independent contractors, and nothing herein shall be deemed to create an agency, partnership, or joint venture between the Parties hereto.  This Agreement does not affect any right that either Party would have had, or shall have, independent of the Agreement under applicable law.  Neither



GOOG05000315

Party shall be liable for failing or delaying performance of its obligations resulting from any condition beyond its reasonable control, including but not limited to, governmental action, acts of terrorism, earthquake, fire, flood or other acts of God, labor conditions, power failures, and Internet disturbances. If any provision of this Agreement shall be adjudged by any court of competent jurisdiction to be unenforceable or invalid, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and remain enforceable between the Parties. The failure of either Party to act in the event of a breach of this Agreement by the other shall not be deemed a waiver of such breach or a waiver of future breaches. No provision of this Agreement is intended to confer any rights, benefits, remedies, obligations, or liabilities hereunder upon any person or entity other than the Parties and their respective successors and assigns. The section and paragraph headings used in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement. This Agreement sets forth the entire understanding and agreement between the Parties, supersedes any and all previous agreements on the subject matter, whether written or oral, and may be amended only in a writing signed by both Parties. This Agreement shall be governed by the laws of the State of California, without regard to its principles of conflicts of law. Any litigation hereunder shall be brought in any state or federal court of competent jurisdiction in Santa Clara or Alameda County, California; the Parties agree that venue shall be proper in, and consent to the personal jurisdiction of, such courts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

*[Rest of page left intentionally blank.]*



IN WITNESS WHEREOF, this Agreement has been executed by persons duly authorized as of the **"Effective Date"**, which shall be the date written by Google below.

Google

By: _David Drummond_

Print Name: DAVID DRU

Title: VP, Content Partnerships

Date: Aug 3, 2006

The Regents of the University of California:

By: _Robert Dynes_

Print Name: ROBERT DYNES

Title: PRESIDENT U.C.

Date: July 27/06

*[Signature Page to Cooperative Agreement]*



GOOG05000317

EXHIBIT A

University Library, UC Berkeley
University Library, UC Davis
University Library, UC Irvine
University Library, UCLA
University Library, UC Merced
University Library, UC Riverside
University Library, UC San Diego
University Library, UC San Francisco
University Library, UC Santa Barbara
University Library, UC Santa Cruz

California Digital Library

GOOGLE CONFIDENTIAL
EXECUTION COPY

13



GOOG05000318

## COOPERATIVE AGREEMENT

This COOPERATIVE AGREEMENT (the "Agreement") is entered into by and between Google Inc., a Delaware corporation with offices at 1600 Amphitheatre Parkway, Mountain View, California 94043 ("Google"), and the Board of Regents of the University of Wisconsin System, d/b/a the University of Wisconsin-Madison, General Library System, with its principal offices at 728 State Street, Madison Wisconsin, 53706 ("University"), and is effective as of the date signed by Google below (the "Effective Date"). Google and University herein are sometimes referred to hereinafter individually as a "Party" and collectively as the "Parties".

### RECITALS

WHEREAS, University is a leading academic institution and has amassed an enormous collection of works in various media;

WHEREAS, Google provides the public with access to web pages on the Internet, among other products and services;

WHEREAS, Google and the University share a mutual interest in making information available to the public; and

WHEREAS, Google will digitize selected works from the University collection to include them in Google's services, and provide access to the digitized works to the University as described herein.

NOW THEREFORE, in consideration of the mutual covenants set forth herein, Google and University hereby agree as follows:

### DEFINITIONS

1.    **DEFINITIONS**.  Capitalized terms will have the meanings set forth below:

1.1    "Available Content" means the University print collection as identified by Google and the University.  Without limiting the foregoing, "Available Content" also includes University Digital Content and any works that Google has obtained the permission of the copyright holder to Digitize.

1.2    "Brand Features" means the trade names, trademarks, service marks, logos, domain names, and other distinctive brand features of each Party, respectively, as secured by such Party from time to time.

1.3    "Committee on Institutional Cooperation" or "CIC" means the consortium of twelve (12) research libraries (including the University) that collaborate on library related initiatives.  The other eleven member libraries of the CIC are:  University of Chicago, University of Illinois, Indiana University, University of Iowa, University of Michigan, Michigan State University, University of Minnesota, Northwestern University, The Ohio State University, Penn State University, and Purdue University.

1.4    "Digitize" means to convert content from a tangible, analog form into a digital electronic representation of that content.   "Digitization", "Digitizing" and "Digitized" shall have corresponding meanings.

1.5    "End User" means a person that accesses or uses the Google Services.

GOOGLE CONFIDENTIAL                                    1



GOOG05000428

1.6     "Google Digital Copy" means a digital copy retained by Google of the Selected Content that is Digitized by Google.

1.7     "Google Services" means the Google's products and services that are accessible through and otherwise provided by various computer and electronic technologies, networks (syndicated and otherwise) and systems, including without limitation, mobile wireless services and Internet-based services accessible through the Google Sites and any Google syndication partner sites.

1.8     "Google Site" means any web site located at a Google-owned domain, including all subdomains and directories thereof, and all successor sites thereto.

1.9     "Hosted Solution" shall have the meaning set forth in Section 4.6.

1.10    "Initial Term" shall have the meaning set forth in Section 8.1.

1.11    "Member Library" means any library that is a member of the CIC.

1.12    "University Digital Copy" shall have the meaning set forth in Section 4.7.

1.13    "University Digital Content" means content that University already has in its possession in digitized form prior to or during the Term and for which University has the right to redistribute to third parties. The rights and privileges that University has in and to the University Digital Content shall not be affected in any way by the terms of this Agreement.

1.14    "Project" means a project for digitizing certain Selected Content.

1.15    "Project Plan" means a written plan for implementing a Project. The Project Plan shall include the following: (1) timetable for Digitizing the Selected Content, (2) instructions by University regarding how the Selected Content is to be collected and returned by Google; (3) material handling processes for the Selected Content, (4) if required, the amount of time available to University for performing conservation efforts; (5) the amount of time available to Google from receipt of the Selected Content until it is due to be returned to University; and (6) a budget for the Project.

1.16    "Renewal Term" shall have the meaning set forth in Section 8.1.

1.17    "Selected Content" means the portion of the Available Content that Google desires to Digitize or incorporate into the Google Services, both collectively and its component parts, including any and all other works of authorship included therein.

1.18    "Term" shall have the meaning set forth in Section 8.1.



GOOG05000429

<u>**TERMS**</u>

**2.**    <u>**DIGITIZATION OPERATIONS.**</u>

2.1    <u>Identifying and Collecting Content to be Digitized</u>. The Parties shall in good faith identify Available Content that Google may elect to Digitize; provided that University agrees to commit no less than 500,000 volumes to the Digitization efforts under this Agreement. The Parties shall cooperate in good faith and with diligence to develop a timetable for completing the Project Plan for Digitizing the Selected Content.

2.2    <u>Collecting the Selected Content</u>. University shall be responsible for locating, pulling and moving the Selected Content to and from the designated Digitization facility as well as re-shelving the Selected Content when the Digitization is complete. Upon commencement of a Project, University shall perform any conservation efforts that the Parties determine are required for the associated Selected Content. On a rolling basis, as this conservation effort is completed, University shall provide the conserved Selected Content to Google for Digitizing. If agreed upon by the Parties in a particular Project Plan, this collection function may instead be assigned to Google.

2.3    <u>Locating the Digitization Operation</u>. University shall provide Google with adequate physical space to digitize the Selected Content. If University is unable to provide such space, University shall cooperate with Google to identify and obtain space that Google can use at reasonable rates.

2.4    <u>Transporting and Storing the Selected Content</u>. Google may remove some or all of the Selected Content from University premises to perform Digitization in facilities controlled by Google. If Google elects to remove any such Selected Content, then it will provide and be responsible for commercially reasonable transport methods and temporary storage areas.

2.5    <u>Digitizing the Selected Content</u>. Subject to handling constraints or procedures specified in the Project Plan, Google shall in its sole discretion determine how best to Digitize the Selected Content. While the Selected Content is within Google's possession, Google shall use commercially reasonable efforts to minimize damage to the Selected Content, including handling the Selected Content in accordance with handling instructions set forth in the Project Plan, if any.

2.6    <u>Return of the Selected Content</u>. Google shall return the Selected Content to the source from which Google obtained it and in the like manner in which it was collected after Google completes Digitizing the Selected Content.

**3.**    <u>**COSTS**</u>

3.1    <u>Costs paid by University</u>. In addition to costs mutually agreed upon by the Parties, University shall be responsible for the following costs: (a) those related to locating, pulling and moving the Selected Content to and from the designated Digitization facility as well as re-shelving the Selected Content when the Digitization is complete, (b) those related to University employees and agents whose participation is contemplated by this Agreement, (c) network bandwidth and data storage required by University to receive all of the University Digital Copy  (d) existing bandwidth available for use by Google to transfer Digitized files from University facilities to Google's data centers to the extent that University provides the Digitization facility, (e) University space that may be available and acceptable to Google for the Digitization, (f) transportation of Selected Content to and from the University facility in which the Selected Content is normally kept to and from the Digitization facility provided by the University, (g) any conservation efforts that University elects to undertake on the Selected Content prior to Digitizing, and (h) barcoding and associated data entry to barcode the Selected Content.



3.2     Costs borne by Google.  In addition to costs mutually agreed upon by the Parties, Google shall be responsible for the following costs: (a) those related to Google employees whose participation is contemplated by this Agreement, (b) hardware and software required to digitize the Selected Content, (c) space required to digitize the Selected Content (to the extent not provided by University), and (d) transportation of Selected Content from the University facility where the Selected Content is normally kept to a Google designated facility (to the extent not provided by University).

3.3     Budgets.  Notwithstanding the foregoing, University and Google may jointly develop a budget for each Project Plan, pursuant to which the Parties can allocate the cost of researching and identifying the Selected Content, conducting conservation assessments, performing conservation work, and performing any required copyright research and clearances.  Any such budget will take precedence over the provisions of Sections 3.1 and 3.2 above.

## 4.     OWNERSHIP AND USE OF DIGITAL COPIES AND SERVICES

4.1     Copyright Status.  The Parties understand that the Selected Content may include some works that will be treated hereunder as public domain works and some works that will be treated hereunder as in-copyright works.   Both Google and University agree and intend to perform this Agreement in compliance with copyright law.  Each Party will be responsible for the determination of how to treat a work for each jurisdiction at its sole discretion.  Notwithstanding such determination, if either Party receives a written request from a person or entity requesting to discontinue the display or use of any Digitized Selected Content, such Party will promptly notify and forward such request to the other Party and both Parties will comply with the request or demand so long as each Party determines that the person or entity making the request is the copyright holder or has apparent authority to act on behalf of the copyright holder.  In addition, Google will implement processes whereby any person or entity can request Google not to Digitize any Available Content or to cease the display or use of any Digitized Selected Content which Google will comply with so long as Google determines that the person or entity making the request is the copyright holder or has apparent authority to act on behalf of the copyright holder.

4.1.1.  With the exception of specific cases, as addressed in Section 4.1 above, University views all U.S. government documents (Federal and State) as public domain and will provide open access to those titles in the University Digital Copy.  Google will provide the University with the complete Digitized version of these works in the University Digital Copy (so long as such works are Digitized by Google), regardless of how Google elects to treats them.

4.2     Ownership and use of Google Digital Copy.  Neither University nor Google shall have any ownership or license rights to the Available Content that is Digitized (i.e., to the materials underlying the digitization process), except where University already owns such rights.  As between Google and University and subject to the provisions in this Section 4, Google shall own all rights, title, and interest in and to its copy of the Google Digital Copy.

4.3     Google use of Google Digital Copy.  Subject to the restrictions set forth herein, Google may use the Google Digital Copy, in whole or in part at Google's sole discretion, as part of the Google Services.  To the extent portions of the Google Digital Copy are either in the public domain or where Google has otherwise obtained authorization, Google shall have the right, in its sole discretion, among other things, to (a) index the full text or content, (b) serve and display full-sized digital images corresponding to those portions, (c) make available full text of content for printing and/or download, and (d) make copies of such portions of the Google Digital Copy and provide, license, or sell such copies (including, without limitation, to its syndication partners).  For all other portions of the Google Digital Copy, Google may index the full text or content but may serve and display such content only in compliance with copyright law.  In the event that Google has received a license or other permission from the applicable

GOOGLE CONFIDENTIAL                            4



copyright holder to use in-copyright works in the Google Digital Copy, Google may use those works in any manner permitted under the terms of such license.

4.4     Security and Privacy Regarding Google's Use of the Google Digital Copy.  Google shall implement commercially reasonable technological measures (e.g., through use of the robots.txt protocol) to restrict automated access to any portion of the Google Digital Copy that is in-copyright.  In addition, Google shall maintain on its website a privacy policy that governs collection and use of information that Google obtains from End Users.

4.5     Ownership and Control of Google Services.  As between the Parties, the Google Services and all content therein are, and at all times will remain the exclusive property of Google or its partners; nothing in this Agreement implies any transfer to University of any ownership interest in the Google Services.  University acknowledges and agrees that Google retains control of the Google Services, and that the design, layout, content, functions and features of the Google Services are at Google's discretion. Notwithstanding anything to the contrary in this Agreement, Google is not required to make any or all of the Google Digital Copy available through the Google Services.

4.6     Hosted Solution.  During the Term, Google will provide searchable access to the Google Digital Copy at no charge to University and its patrons, researchers and staff via a website that will be hosted by Google (the "**Hosted Solution**").  The design, layout, content, functions and features of the Hosted Solution will be determined by Google with consideration of feedback from Google's library partners that receive a Hosted Solution.

4.7     University Digital Copy.  Google shall provide the University with access to download one copy of the University Digital Copy in a timeframe mutually agreed by the Parties.  Unless otherwise agreed by the Parties in writing, the "**University Digital Copy**" means a copy of the Selected Content that is Digitized by Google consisting of (a) a set of image and OCR files, (b) associated meta-information about the files such as which image files correspond to that Digitized work, and (c) the logical order of those image files.  Google shall provide the University Digital Copy via a network connection, or in any other manner mutually agreed upon by the Parties.  In addition Google will provide the University with the ability to sample the files for fifty (50) Digitized works per quarter to assess quality. Google agrees that the quality of files provided to University in the University Digital Copy will be substantially similar to the quality of files provided to any other library with which Google has an agreement as of the Effective Date concerning Digitization by Google of content from that library. Notwithstanding anything to the contrary herein, Google may withhold any works in dispute from the University Digital Copy and the University will delete any such works that were previously provided to University as part of the University Digital Copy.

4.8     Ownership and use of University Digital Copy.  Neither University nor Google shall have any ownership or license rights to the Available Content that is digitized through this Agreement (i.e., to the materials underlying the digitization process), except where University already has such rights.  As between Google and University and subject to the restrictions in this Section 4, University shall own all rights, title, and interest to the University Digital Copy.  Without limiting the foregoing, University shall not display or otherwise use the University Digital Copy except as expressly permitted in this Agreement.

4.9     Use of University Digital Copy on University Website.  University shall have the right to use the University Digital Copy, in whole or in part at University's sole discretion, subject to copyright law, as part of services offered openly on University's website and internally for research, scholarly and academic purposes. University may not charge, receive payment or other consideration for the University Digital Copy in connection with University's website.  University agrees that to the extent it makes any portion of the University Digital Copy publicly available, that it will identify the works, in a statement on the applicable web page or other access point, as "Digitized by Google" or in a substantially similar manner. University shall implement reasonable technological measures (e.g., through use of the robots.txt

GOOGLE CONFIDENTIAL                    5



GOOG05000432

protocol) to restrict automated access to any portion of the University Digital Copy or the portions of the University website on which any portion of the University Digital Copy is available. University shall also make reasonable efforts (including but not limited to restrictions placed in University's online terms and conditions governing the use of its website) prevent third parties from (a) downloading or otherwise obtaining any portion of the University Digital Copy for commercial purposes, (b) redistributing any portions of the University Digital Copy, or (c) automated and systematic downloading from its website image files from the University Digital Copy. University shall develop methods and systems for ensuring that substantial portions of the University Digital Copy are not downloaded from the services offered on University's website or otherwise disseminated to the public at large. University shall also implement security and handling procedures for the University Digital Copy which procedures shall be mutually agreed by the Parties. Except as expressly allowed herein, University will not provide (in whole or in part), license, or sell the University Digital Copy to any third party.

4.10    Contribution of University Digital Copy.    Subject to the terms of this Section 4.10, University shall have the right to contribute the University Digital Copy to a central depository of digital works hosted by a Member Library. Prior to the provision of the University Digital Copy to any such Member Library, Google must have entered into a written agreement with the hosting Member Library and each Member Library that will have access to the University Digital Copy that (i) limits the use of the University Digital Copy to non-commercial research, scholarly and academic purposes consistent with the requirements of copyright law, (ii) requires the Member Library responsible for hosting the University Digital Copy to implement reasonable technological measures (e.g., through use of the robots.txt protocol) to restrict automated access to any portion of the University Digital Copy or the portions of the website where the University Digital Copy is available, (iii) requires the Member Library make reasonable efforts (including but not limited to restrictions placed in online terms and conditions governing the use of the digital works) to prevent third parties from (a) downloading or otherwise obtaining any portion of the University Digital Copy for commercial purposes, (b) redistributing any portions of the University Digital Copy, or (c) automated and systematic downloading from its website image files from the University Digital Copy, (iv) prohibits the Member Library from redistributing any portion of the University Digital Copy without first obtaining the prior written consent of Google, (v) provides an indemnity to Google for the Member Library's use of the Selected Content, and (vii) requires the Member Library to identify the works in the University Digital Copy, in a statement on the applicable web page or other access point, as "Digitized by Google" or in a substantially similar manner.

## 5.    ACCESS, AUTHORIZATION AND SUPPORT

5.1    Access.    Google shall have the right to access Selected Content during University business/staff hours as required to exercise its rights and perform its obligations hereunder. If requested by Google, University shall provide Google with access to Selected Content outside of University business hours provided that (i) University is able to provide such access and (ii) Google notifies University at least two (2) days in advance of its intent to access such materials.

5.2    Authorization.    The University program manager responsible for the Selected Content involved in any Project Plan shall have authority to agree with Google on the time frames and procedures (e.g., collection, conservation, and handling) associated with that Selected Content. If Google in good faith believes that the time frames and procedures requested by the University program manager are unreasonable, Google shall escalate the matter to the University administrative contact; in which case Google, the University program manager, and the administrative contact shall meet to resolve the issue.

5.3    Support.    Each Party shall appoint one person to serve as the administrative contact for Google, should administrative questions or issues arise during the course of this Agreement. This administrative contact shall be available during regular business hours (9:00 a.m. to 5:00 p.m., Monday through Friday) at a telephone number and e-mail address to be provided by each Party. Each Party shall also appoint one person to serve as the technical contact for obtaining and regulating the use of the



GOOG05000433

University Digital Copy. This technical contact shall be available during regular business hours at a telephone number and e-mail address to be provided by University. Upon execution of this contract, both Google and University shall identify these individuals in writing, which may be email.

## 6.   CONFIDENTIALITY

6.1   Confidentiality.   Disclosure of confidential and/or proprietary information disclosed hereunder, including the existence and content of the Agreement and any information provided pursuant to the Agreement, shall be governed by the confidentiality provisions of the Google Standard Mutual Non-Disclosure Agreement, which has been executed by the Parties prior to or concurrently with this Agreement, as of May 12, 2006 (the "**NDA**"). The confidentiality provisions of the NDA are hereby incorporated by reference into this Agreement.

6.2   PR.   Neither Party will issue any public announcement regarding the existence or content of this Agreement without the other Party's prior written approval. Notwithstanding the foregoing, Google may include University's Brand Features in a list that includes Google's other library partners and, with University's prior written consent, in presentations, marketing materials, and customer lists. Upon University's request, Google will furnish University with a sample of such usage.

## 7.   BRAND FEATURES

7.1   Ownership.   Each Party shall own all right, title and interest relating to its Brand Features. Some, but not all examples of Google Brand Features are located at: http://www.google.com/permissions/trademarks.html (or such other URLs Google may provide from time to time). Except to the limited extent expressly provided in this Agreement, neither Party grants, and the other Party shall not acquire, any right, title or interest (including, without limitation, any implied license) in or to any Brand Features of the first Party; and all rights not expressly granted herein are deemed withheld. All use by Google of University Brand Features (including any goodwill associated therewith) shall inure to the benefit of University and all use by University of Google Brand Features (including any goodwill associated therewith) shall inure to the benefit of Google. No Party shall challenge or assist others to challenge the Brand Features of the other Party (except to protect such Party's rights with respect to its own Brand Features) or the registration thereof by the other Party, nor shall either Party attempt to register any Brand Features or domain names that are confusingly similar to those of the other Party.

7.2   License to University Brand Features.   Subject to the terms and conditions of this Agreement, University grants to Google a limited, nonexclusive and nonsublicensable license during the Term to display those University Brand Features expressly authorized for use in this Agreement, solely for the purposes expressly set forth herein. Notwithstanding anything to the contrary, University may revoke the license granted herein to use University's Brand Features upon providing Google with written notice thereof and a reasonable period of time to cease such usage.

## 8.   TERM AND TERMINATION

8.1   Term.   This Agreement is effective as of the Effective Date and continues in full force and effect for a period of six (6) years, unless earlier terminated as provided herein (the "**Initial Term**"). Upon the expiration of the Initial Term, this Agreement shall automatically renew for additional one year terms (each a "**Renewal Term**") unless either Party notifies the other Party to the contrary at least thirty (30) days before the end of either the Initial Term or a Renewal Term. The "**Term**" of this Agreement shall comprise the Initial Term and any Renewal Terms.



GOOG05000434

8.2     Termination.  Either Party may suspend performance and/or terminate this Agreement: (i) if the other Party materially breaches any material term or condition of this Agreement and fails to cure such breach within thirty (30) days after receiving written notice thereof; or (ii) if the other Party becomes insolvent or makes any assignment for the benefit of creditors or similar transfer evidencing insolvency, or suffers or permits the commencement of any form of insolvency or receivership proceeding, or has any petition under bankruptcy law filed against it, which petition is not dismissed within sixty (60) days of such filing, or has a trustee, administrator or receiver appointed for its business or assets or any part thereof. In addition, Google may immediately suspend or terminate this Agreement if Google reasonably determines that it is commercially impractical to continue performing its obligations in light of applicable laws.

8.3     Effect of Expiration or Termination.  Within thirty (30) days after expiration or termination of this Agreement for any reason, each Party shall return to the other Party (or, at that Party's request, destroy) any Confidential Information of that Party that is in its possession. The following sections survive expiration or termination of this Agreement: 1, 4 (excluding Section 4.6), 6, 8, 9, 10, 11 and 12.

## 9.     WARRANTIES AND DISCLAIMER

9.1     Mutual Warranties.  Each Party represents and warrants to the other that (i) it has full power and authority to enter into this Agreement and to perform its obligations hereunder; and (ii) this Agreement constitutes its valid and binding obligation, enforceable against it in accordance with its terms.

9.2     Disclaimer.  THE WARRANTIES EXPLICITLY SET FORTH ABOVE ARE THE ONLY WARRANTIES PROVIDED HEREIN AND ARE IN LIEU OF ALL OTHER WARRANTIES BY THE PARTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SUBJECT MATTER OF THIS AGREEMENT.  WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, GOOGLE SPECIFICALLY DISCLAIMS ANY WARRANTY REGARDING NON-INFRINGEMENT OF THIRD PARTY INTELLECTUAL PROPERTY.

## 10.    INDEMNIFICATION.

10.1    By Google.  Google shall defend University against any third party lawsuit or proceeding brought against University based on or otherwise arising out of a claim that Google's use or distribution of the Google Digital Copy constitutes a violation of that third party's copyrights.    The foregoing indemnification excludes any third party claim that relates to University's use or distribution of the University Digital Copy.  Google shall select counsel reasonably appropriate for such defense and shall pay for all costs incurred by such counsel.  In addition, Google shall pay any damage awards or settlement costs that may be incurred.  University may participate in the defense with counsel of its own choice, at its own expense.

10.2    By University.    University shall defend Google against any third party lawsuit or proceeding that relates to University's use or distribution of the University Digital Copy, including without limitation, any such use by a third party. University shall select counsel reasonably appropriate for such defense and shall pay for all costs incurred by such counsel.  In addition, University shall pay any damage awards or settlement costs that may be incurred.  Google may participate in the defense with counsel of its own choice, at its own expense.

10.3    General.  Indemnification provided under Sections 10.1 and 10.2 shall be limited to (a) payment by the indemnifying party ("**Indemnitor**") of all damages and costs finally awarded for such claim, or (b) settlement costs approved in writing by the Indemnitor.  The foregoing obligations shall exist



GOOG05000435

only if the party seeking indemnification ("**Indemnitee**"): (i) promptly notifies the Indemnitor of such claim, (ii) provides the Indemnitor with reasonable information, assistance and cooperation in defending the lawsuit or proceeding, and (iii) gives the Indemnitor full control and sole authority over the defense and settlement of such claim.  The Indemnitee may join in defense with counsel of its choice at its own expense.  The Indemnitor shall only reimburse the Indemnitee for expenses incurred by the Indemnitee with the Indemnitor's prior written approval.

## 11.    LIMITATION OF LIABILITY

EXCEPT FOR DAMAGES ARISING FROM BREACH OF SECTION 6 (CONFIDENTIALITY) OR INDEMNIFICATION PAYMENT OBLIGATIONS TO THIRD PARTIES UNDER SECTION 10, (A) IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR LOST PROFITS OR ANY FORM OF INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER FROM ANY CAUSES OF ACTION OF ANY KIND WITH RESPECT TO THIS AGREEMENT, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, AND WHETHER OR NOT THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE, AND (B) EACH PARTY'S LIABILITY UNDER THIS AGREEMENT SHALL BE LIMITED TO TEN THOUSAND DOLLARS ($10,000). The Parties agree that (i) the mutual agreements made in this Section 11 reflect a reasonable allocation of risk, and (ii) that each party would not enter into the Agreement without these limitations on liability.

## 12.    GENERAL PROVISIONS

12.1    No Obligation.  Notwithstanding the foregoing, Google shall have no obligation to digitize any portion of the Available Content nor to use any portion of the Google Digital Copy as part of the Google Services.   University shall not be obligated to participate in any Project Plan to the extent University does not have sufficient funds to perform its budgeted obligations under that Project Plan. Furthermore, notwithstanding anything in this Agreement to the contrary, if Google determines, at its sole discretion, not to digitize some or all Selected Content in connection with one or more specific Projects, whether due to cost issues, conservation concerns or otherwise, Google shall have no obligation to the University with respect to digitizing or delivering the University Digital Copy with respect to such Selected Content.

12.2    Miscellaneous.  Neither Party may assign any of its rights or delegate any of its duties under this Agreement without the prior written consent of the other Party, which shall not unreasonably be withheld, except that either Party may assign its rights and delegate its duties under this Agreement upon written notice to the other Party to a division or an affiliate thereof (that is not a competitor of the non-assigning Party), provided such division or affiliate agrees to be bound by all of the terms hereof; and provided further that Google may assign this Agreement without consent to a successor-in-interest in connection with a merger or the sale of all or substantially all of its assets. Any attempted assignment, delegation or transfer in derogation hereof shall be null and void.  This Agreement shall be binding upon the successors and permitted assigns of both Parties.  Unless provided for to the contrary in this Agreement, any and all notices or other communications or deliveries required or permitted to be made under this Agreement shall be sent (a) if to University at the address identified above and (b) if to Google to such address as provided at www.google.com/corporate/address.html or as otherwise provided in writing for such notice purposes. A second copy of every notice to Google shall be sent to the same address, "Attn: Legal Dept." Notice shall be deemed received (i) upon receipt when delivered personally, (ii) upon written verification of receipt from overnight courier, (iii) upon verification of receipt of registered or certified mail or (iv) upon verification of receipt via facsimile, provided that such notice is also sent simultaneously via first class mail.  Contact information shall be updated in writing as necessary to ensure that each Party has current information regarding all such contacts. The Parties hereto are and shall remain independent contractors, and nothing herein shall be deemed to create an agency, partnership, or joint venture between the Parties hereto.  This Agreement does not affect any right that either Party would have had, or shall have, independent of the Agreement under applicable law.  Neither Party shall be liable for failing or delaying performance of its obligations resulting from any condition beyond its reasonable



GOOG05000436

control, including but not limited to, governmental action, acts of terrorism, earthquake, fire, flood or other acts of God, labor conditions, power failures, and  Internet disturbances.  If any provision of this Agreement shall be adjudged by any court of competent jurisdiction to be unenforceable or invalid, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and remain enforceable between the Parties.  The failure of either Party to act in the event of a breach of this Agreement by the other shall not be deemed a waiver of such breach or a waiver of future breaches. No provision of this Agreement is intended to confer any rights, benefits, remedies, obligations, or liabilities hereunder upon any person or entity other than the Parties and their respective successors and assigns.   The section and paragraph headings used in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement.  This Agreement sets forth the entire understanding and agreement between the Parties and may be amended only in a writing signed by both Parties.   To the extent that it does not waive the sovereign immunity of the University, this Agreement shall be governed by the laws of the State of California, without regard to its principles of conflicts of law.  Any litigation hereunder shall be brought in any state or federal court of competent jurisdiction in Santa Clara County, California; the Parties agree that venue shall be proper in, and consent to the personal jurisdiction of, such courts. This is not a waiver of personal service. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

*[Rest of page left intentionally blank.]*



GOOGLE CONFIDENTIAL

10

GOOG05000437

IN WITNESS WHEREOF, this Agreement has been executed by persons duly authorized as of the "**Effective Date**", which shall be the date written by Google below.

| | | |
|---|---|---|
| **Google** | | **University:** Board of Regents of the University of Wisconsin System |
| By: _David K. Eun_ | | By: _Darrell Bazzell_ |
| **DAVID EUN** | | |
| ~~Vice President, Content Partnerships~~ | | |
| Print Name: ~~Google, Inc.~~ | | Print Name: DARRELL BAZZELL |
| Title: | | Title: VICE CHANCELLOR |
| Date:    10-06-06P12:12 RCVD | | Date: 9/22/06 |

*[Signature Page to Cooperative Agreement]*



GOOG05000438

## COOPERATIVE AGREEMENT

This COOPERATIVE AGREEMENT (the "Agreement") is entered into by and between Google Inc., a Delaware corporation with offices at 1600 Amphitheatre Parkway, Mountain View, California 94043 ("Google"), and The Rector and Visitors of the University of Virginia, a state-supported institution of higher education and agency of the Commonwealth of Virginia located in Charlottesville, Virginia ("University"), and is effective as of the date of the last signature below (the "Effective Date"). Google and the University are sometimes referred to hereinafter individually as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, University is a leading academic institution and has amassed an enormous collection of works in various media;

WHEREAS, Google provides the public with access to web pages on the Internet, among other products and services;

WHEREAS, Google and the University share a mutual interest in making information available to the public; and

WHEREAS, Google will digitize works from the University collection to include them in Google's services, and provide access to the digitized works to the University as described herein.

NOW THEREFORE, in consideration of the mutual covenants set forth herein, Google and University hereby agree as follows:

## DEFINITIONS

1.    **DEFINITIONS.** Capitalized terms will have the meanings set forth below:

1.1    "Available Content" means the University print collection as identified by Google and the University. Without limiting the foregoing, "Available Content" also includes University Digital Content.

1.2    "Brand Features" means the trade names, trademarks, service marks, logos, domain names, and other distinctive brand features of each Party, respectively, as secured by such Party from time to time.

1.3    "Digitize" means to convert content from a tangible, analog form into a digital electronic representation of that content. "Digitization", "Digitizing" and "Digitized" shall have corresponding meanings.

1.4    "End User" means a person that accesses or uses the Google Services.

1.5    "Google Digital Copy" means a digital copy retained by Google of the Selected Content that is Digitized by Google.

1.6    "Google Services" means Google's products and services that are accessible through and otherwise provided by various computer and electronic technologies, networks (syndicated and

GOOGLE CONFIDENTIAL
EXECUTION COPY

GOOG05000381

otherwise) and systems, including without limitation, mobile wireless services and Internet-based services accessible through the Google Sites and any Google syndication partner sites.

1.7     "Google Site" means any web site located at a Google-owned domain, including all subdomains and directories thereof, and all successor sites thereto.

1.8     "Hosted Solution" shall have the meaning set forth in Section 4.6.

1.9     "Initial Term" shall have the meaning set forth in Section 8.1.

1.10    "University Digital Copy" shall have the meaning set forth in Section 4.7.

1.11    "University Digital Content" means content that the University of Virginia Library has in its possession in digitized form that the Library is authorized, as determined by the Library in its sole discretion to share with Google.

1.12    "University of Virginia Library" means the comprehensive libraries of The University of Virginia not including Law, Darden or Health Sciences unless the Parties expressly agree to include such libraries by a written addendum to this Agreement.

1.13    "Project" means a project for digitizing certain Selected Content.

1.14    "Project Plan" means a written plan for implementing a Project. The Project Plan shall include the following:  (1) timetable for Digitizing the Selected Content, (2) instructions by University regarding how the Selected Content is to be collected and returned by Google; (3) material handling processes for the Selected Content, (4) if required, the amount of time available to University for performing conservation efforts; (5) the amount of time available to Google from receipt of the Selected Content until it is due to be returned to University; and (6) a budget for the Project.

1.15    "Renewal Term" shall have the meaning set forth in Section 8.1.

1.16    "Selected Content" means the portion of the Available Content that Google desires to Digitize or incorporate into the Google Services, both collectively and its component parts, including any and all other works of authorship included therein.

1.17    "Term" shall have the meaning set forth in Section 8.1.

## TERMS

## 2.    DIGITIZATION OPERATIONS.

2.1     Identifying and Collecting Content to be Digitized.  The Parties shall in good faith identify Available Content that Google may elect to Digitize; provided that the University has agreed to commit all circulating volumes from the University of Virginia Library system to the Digitization efforts under this Agreement.  The Parties shall cooperate in good faith and with diligence to develop a timetable for completing the Project Plan for Digitizing the Selected Content.

GOOGLE CONFIDENTIAL
EXECUTION COPY

2

GOOG05000382

2.2    Collecting the Selected Content. University shall be responsible for locating, pulling and moving the Selected Content to a designated location at the University facility as well as re-shelving the Selected Content when the Digitization is complete. Upon commencement of a Project, University shall perform any conservation efforts that the Parties determine are required for the associated Selected Content. On a rolling basis, as this conservation effort is completed, University shall provide the conserved Selected Content to Google for Digitizing.

2.3    Transporting and Storing the Selected Content. Google will remove the Selected Content from University premises to perform Digitization in facilities controlled by Google. University agrees that the Selected Content may be transported to one or more Digitization facilities determined by Google. Google will provide the University with the address of and a reasonable opportunity to inspect all Digitization facilities subject to Google's reasonable approval and University's compliance with all of Google's policies and procedures applicable to visits to Digitization facilities. Google will provide and be responsible for commercially reasonable transport methods and temporary storage areas. All risk of loss, damage or destruction of materials will lie with Google from the time that Google accepts possession of the materials until such time as they are returned to the University on University premises; provided that University agrees that Google's obligation will not exceed $5,000 for any given text and that Google's maximum liability for any damage or loss to Selected Content in Google's custody resulting from a single incident or event will not exceed five million dollars ($5,000,000). Google will carry reasonable sufficient insurance with a reputable independent provider approved by the University insuring against the risk of loss, damage, or destruction of materials entrusted to Google's custody, and will provide, at the University's request, a certificate of insurance to the University naming the University as an additional insured. In general, Google will provide a transport method and temporary storage area that is reasonably clean, dry, cool, free from insects and other pests, protected from fire, and secure against theft and vandalism. However, unless the University makes Google aware that specific materials require non-standard care, transport, and processing and Google decides to go forward with digitization of such items, Google shall have no responsibility to undertake special efforts to address unique or fragile conditions in its transport or handling of individual items. University will provide Google with a good faith estimate of the value of any Selected Content approved for removal from University premises and will provide Google with an itemized list of any such materials.

2.4    Digitizing the Selected Content. Google will be responsible for Digitizing the Selected Content. Subject to handling constraints or procedures specified in the Project Plan, Google shall in its sole discretion determine how best to Digitize the Selected Content. While the Selected Content is within Google's possession, Google shall use commercially reasonable efforts to minimize damage to the Selected Content, including handling the Selected Content in accordance with handling instructions set forth in the Project Plan, if any.

2.5    Return of the Selected Content. Google shall return the Selected Content to the designated location where Google obtained it in the like manner in which it was collected after Google completes Digitizing the Selected Content.

3.    **COSTS**

3.1    Costs paid by University. In addition to costs mutually agreed upon by the Parties, University shall be responsible for the following costs:  (a) those related to pulling and moving the Selected Content to a designated location at the University facility as well as re-shelving the Selected Content when the Digitization is complete, (b) those related to University employees and agents whose participation is contemplated by this Agreement, (c) network bandwidth and data storage required by University to receive all of the University Digital Copy  (d) any conservation efforts that University elects to undertake on the Selected Content prior to Digitizing, and (e) any barcoding and associated data entry to barcode the Selected Content deemed appropriate by the University; provided University understands that Google will not bear the cost of barcoding and that only works that are barcoded may be included as Selected Content.

GOOGLE CONFIDENTIAL
EXECUTION COPY



GOOG05000383

3.2    Costs borne by Google.  In addition to costs mutually agreed upon by the parties, Google shall be responsible for the following costs:  (a) those related to Google employees whose participation is contemplated by this Agreement, (b) hardware and software required to digitize the Selected Content, (c) space required to digitize the Selected Content (to the extent not provided by University), (d) transportation of Selected Content from the University facility where the Selected Content is normally kept to a Google designated facility (to the extent not provided by University), and (e) those costs that Google elects to incur to address any  legal and copyright issues associated with Google's Digitization of in-copyright materials.

3.3    Budgets.  Notwithstanding the foregoing, University and Google may jointly develop a budget for each Project Plan, pursuant to which the Parties can allocate the cost of researching and identifying the Selected Content, conducting conservation assessments, performing conservation work, and performing any required copyright research and clearances.  Any such budget, which is mutually approved and authorized in writing, will take precedence over the provisions of Sections 3.1 and 3.2 above.

4.    **OWNERSHIP AND USE OF DIGITAL COPIES AND SERVICES**

4.1    Copyright Status. The Parties understand that the Selected Content may include some works that will be treated hereunder as public domain works and some works that will be treated hereunder as in-copyright works. Both Google and University agree and intend to perform this Agreement in compliance with copyright law.  Each Party will be responsible for the determination of how to treat a work for each jurisdiction at its sole discretion.  Notwithstanding such determination, if either Party believes a work (or portion thereof) should be treated as an in-copyright work in either the United States or another jurisdiction, and so notifies the other Party, then, within forty-eight (48) hours of such notice, such work (or portion thereof) shall be treated as an in-copyright work for use in the relevant country. In addition, Google will implement processes whereby any person or entity can request Google not to Digitize any Available Content or to cease the display or use of any Digitized Selected Content which Google will comply with so long as Google determines that the person or entity making the request is the copyright holder or has apparent authority to act on behalf of the copyright holder.

4.2    Ownership and use of Google Digital Copy.  Neither University nor Google shall have any ownership or license rights to the Available Content that is Digitized (i.e., to the materials underlying the digitization process), except where University already owns such rights.  As between Google and University and subject to the provisions in this Section 4, Google shall own all rights, title, and interest in and to the Google Digital Copy.

4.3    Google use of Google Digital Copy.  Subject to the restrictions set forth herein, Google may use the Google Digital Copy, in whole or in part at Google's sole discretion, as part of the Google Services. Google agrees that to the extent that it or its successors use any Digitized Selected Content in connection with any Google Services, it shall provide a service at no cost to End Users (1) for both search and display of search results and (2) for access to the display of the full text of public domain works contained in the Digitized Selected Content. To the extent portions of the Google Digital Copy are either in the public domain or where Google has otherwise obtained authorization, Google shall have the right, in its sole discretion, among other things, to (a) index the full text or content, (b) serve and display full-sized digital images corresponding to those portions, (c) make available full text of content for printing and/or download, and (d) make copies of such portions of the Google Digital Copy and provide, license, or sell such copies (including, without limitation, to its syndication partners). For all other portions of the Google Digital Copy, Google may index the full text or content but may not serve or display the full-sized digital image or make available for printing, streaming and/or download the full content unless Google has appropriate legal authority to do so; Google instead may serve and display (1) an excerpt that Google reasonably determines would constitute fair use under copyright law and (2) bibliographic (e.g., title, author, date, etc) and other non-copyrighted information. In the event that Google has received a license or other permission from the applicable copyright holder to use in-copyright works in the Google Digital Copy, Google may use those works in any manner permitted under the terms of such license.

4.4    Security and Privacy Regarding Google's Use of the Google Digital Copy.  Google shall implement commercially reasonable technological measures (e.g., through use of the robots.txt protocol)

GOOGLE CONFIDENTIAL
EXECUTION COPY

4



GOOG05000384

to restrict automated access to any portion of the Google Digital Copy that is in-copyright. In addition, Google shall maintain on its website a privacy policy that governs collection and use of information that Google obtains from End Users.

4.5     Ownership and Control of Google Services. As between the Parties, the Google Services and all content therein are, and at all times will remain the exclusive property of Google or its partners; nothing in this Agreement implies any transfer to University of any ownership interest in the Google Services. University acknowledges and agrees that Google retains control of the Google Services, and that the design, layout, content, functions and features of the Google Services are at Google's discretion. Notwithstanding anything to the contrary in this Agreement, Google is not required to make any or all of the Google Digital Copy available through the Google Services.

4.6     Hosted Solution. During the Term, Google will provide searchable access to the Google Digital Copy at no charge to University and its patrons, researchers and staff via a website that will be hosted by Google (the "**Hosted Solution**"). The design, layout, content, functions and features of the Hosted Solution will be determined by Google.

4.7     University Digital Copy. Google shall provide the University with access to download one copy of the University Digital Copy in a timeframe mutually agreed by the parties. Unless otherwise agreed by the parties in writing, the "**University Digital Copy**" means a copy of the Selected Content that is Digitized by Google consisting of (a) a set of image and OCR files, (b) associated meta-information about the files including (i) bibliographic information consisting of title and author of each Digitized work and (ii) which image files correspond to that Digitized work, and (c) the logical order of those image files. Google shall provide the University Digital Copy via a network connection, or in any other manner mutually agreed upon by the parties. In addition Google will provide the University with the ability to sample the files for one hundred (100) Digitized works per quarter to assess quality. Google agrees that the quality of files provided to University in the University Digital Copy will be substantially similar to the quality of files provided to any other library with which Google has an agreement as of the Effective Date concerning Digitization by Google of content from that library. Notwithstanding anything to the contrary herein, Google may withhold any works in dispute from the University Digital Copy and the University will delete any such works that were previously provided to University as part of the University Digital Copy. For avoidance of doubt, Google agrees to include in the University Digital Copy a Digitized version of any work that was provided by University to Google as Selected Content hereunder, so long as such Selected Content is in the Public Domain and has been Digitized by Google either under this Agreement or from sources other than University.

4.8     Ownership and use of University Digital Copy. Neither University nor Google shall have any ownership or license rights to the Available Content that is Digitized through this Agreement (i.e., to the materials underlying the Digitization process), except where University already has such rights. As between Google and University and subject to the restrictions in this Section 4, University shall own all rights, title, and interest to the University Digital Copy. Without limiting the foregoing, University shall not display or otherwise use the University Digital Copy except as expressly permitted in this Agreement.

4.9     Use of University Digital Copy on University Website. University shall have the right to use the University Digital Copy, in whole or in part at University's sole discretion, subject to copyright law, as part of services offered on University's website and internally for research, scholarly and academic purposes. University may not charge, receive payment or other consideration for the University Digital Copy in connection with University's website. University agrees that to the extent it makes any portion of the University Digital Copy publicly available, that it will identify the works, in a statement on a web page or other access point to be mutually agreed to by the Parties, as "Digitized by Google" or in a substantially similar manner. University shall implement technological measures (e.g., through use of the robots.txt protocol) to restrict automated access to any portion of the University Digital Copy or the portions of the University website on which any portion of the University Digital Copy is available. University shall also implement reasonable policies and procedures designed to prevent third parties from (a) downloading or otherwise obtaining any portion of the University Digital Copy for commercial purposes, (b) redistributing any portions of the University Digital Copy other than portions of or discrete individual texts from the University Digital Copy that have been used for scholarly or research purposes and will be disseminated in compliance with copyright law and as part of a scholarly project, website, or publication, or (c)



GOOG05000385

automated and systematic downloading from its website image files from the University Digital Copy. University shall develop methods and systems for ensuring that substantial portions of the University Digital Copy are not downloaded from the services offered on University's website or otherwise disseminated to the public at large. University shall also implement security and handling procedures for the University Digital Copy. The University will provide Google with a copy of its procedures and will comply with any reasonable revision or addition recommended by Google.

4.10    Distribution of the University Digital Copy.    University shall have the right to provide all or any portion of public domain works contained in the University Digital Copy (a) to a library member of the Digital Library Federation or (b) with Google's consent, to a library member of VIVA (The Virtual Library of Virginia) (such consent not to be unreasonably withheld so long as the member library can evidence its compliance with the restrictions contained herein) (each recipient library is referred to herein as a "**Recipient Library**") for non-commercial research, scholarly or academic purposes by the Recipient Library and the faculty, students, scholars and staff authorized by the Recipient Library to access their commercially licensed electronic information products; provided that each Recipient Library is subject to a written agreement that (1) prohibits the Recipient Library from redistributing any portion of the University Digital Copy without first obtaining the prior written consent of Google, (2) makes Google an express third party beneficiary of such agreement, (3) provides an indemnity to Google for such Recipient Library's use of the Selected Content subject to the applicable law of the state or other jurisdiction for Recipient Libraries that are members of VIVA, (4) contains obligations and limitations at least as restrictive as the restrictions on University set forth in Section 4.9, and (5) requires each Recipient Library, to the extent it makes any portion of the University Digital Copy publicly available, to identify the works, in a statement on the applicable web page or other access point, as "Digitized by Google" or in a substantially similar manner.   University shall notify Google of each Recipient Library with which it makes an agreement described in this Section. Except as expressly allowed herein, University will not share, provide, license, or sell the University Digital Copy to any third party.

## 5.    ACCESS, AUTHORIZATION AND SUPPORT

5.1    Access.  Google shall have the right to reasonably access Selected Content during University business/staff hours as required to exercise its rights and perform its obligations hereunder. If requested by Google, University shall provide Google with access to Selected Content outside of University business hours provided that Google notify University at least two (2) days in advance of its intent to access such materials.

5.2    Authorization.  The University program manager responsible for the Selected Content involved in any Project Plan shall have authority to agree with Google on the time frames and procedures (e.g., collection, conservation, and handling) associated with that Selected Content. If Google in good faith believes that the time frames and procedures requested by the University program manager are unreasonable, Google shall escalate the matter to the University administrative contact; in which case Google, the University program manager, and the administrative contact shall meet to resolve the issue. No changes to the Project Plan or costs' allocation may be made without written authorization from the University Librarian.

5.3    Support.  University shall appoint one person to serve as the administrative contact for Google, should administrative questions or issues arise during the course of this Agreement. This administrative contact shall be available during regular University business hours (9:00 a.m. to 5:00 p.m., Monday through Friday) at a telephone number and e-mail address to be provided by University.  University shall also appoint one person to serve as the technical contact for Google for obtaining and regulating the use of the University Digital Copy. This technical contact shall be available during regular University business hours at a telephone number and e-mail address to be provided by University.  Upon execution of this contract, both Google and University shall identify these individuals in writing, which may be email.

GOOGLE CONFIDENTIAL
EXECUTION COPY



GOOG05000386

6. **CONFIDENTIALITY**

6.1    Confidentiality.  Disclosure of confidential and/or proprietary information disclosed hereunder, including the existence and content of the Agreement and any information provided pursuant to the Agreement, shall be governed by the confidentiality provisions of the Google Mutual Non-Disclosure Agreement ("NDA"), which is attached hereto as Exhibit A and incorporated by reference to this Agreement.

6.2    PR.  Neither Party will issue any public announcement regarding the existence or content of this Agreement without prior written approval of the other Party.  Notwithstanding the foregoing, Google may include University's Brand Features with prior written approval of the University Librarian in presentations, marketing materials, and customer lists so long as Google first furnishes the University with specific examples of such presentations, marketing materials, and customer lists and uses the University's Brand Features only in a manner that is essentially similar to such prior reviewed and approved uses.

7. **BRAND FEATURES**

7.1    Ownership. Each Party shall own all right, title and interest relating to its Brand Features.  Some, but not all examples of Google Brand Features are located at: http://www.google.com/permissions/trademarks.html (or such other URLs Google may provide from time to time).  Except to the limited extent expressly provided in this Agreement, neither Party grants, and the other Party shall not acquire, any right, title or interest (including, without limitation, any implied license) in or to any Brand Features of the first Party; and all rights not expressly granted herein are deemed withheld.  All use by Google of University Brand Features (including any goodwill associated therewith) shall inure to the benefit of University and all use by University of Google Brand Features (including any goodwill associated therewith) shall inure to the benefit of Google.  No Party shall challenge or assist others to challenge the Brand Features of the other Party (except to protect such Party's rights with respect to its own Brand Features) or the registration thereof by the other Party, nor shall either Party attempt to register any Brand Features or domain names that are confusingly similar to those of the other Party.

7.2    License to University Brand Features.  Subject to the terms and conditions of this Agreement, University grants to Google a limited, nonexclusive and nonsublicensable license during the Term to display those University Brand Features expressly authorized in writing for use in this Agreement, solely for the purposes expressly set forth herein.  Notwithstanding anything to the contrary, University may revoke the license granted herein to use University's Brand Features upon providing Google with written notice thereof and a reasonable period of time to cease such usage.

8. **TERM AND TERMINATION**

8.1    Term.  This Agreement is effective as of the Effective Date and continues in full force and effect for a period of six (6) years unless earlier terminated as provided herein (the "**Initial Term**").  Upon the expiration of the Initial Term, this Agreement shall automatically renew for additional one year terms (each a "**Renewal Term**") unless either Party notifies the other Party to the contrary at least thirty (30) days before the end of either the Initial Term or a Renewal Term.  The "**Term**" of this Agreement shall comprise the Initial Term and any Renewal Terms.

8.2    Termination.  Either Party may suspend performance and/or terminate this Agreement: (i) if the other Party materially breaches any material term or condition of this Agreement and fails to cure such breach within thirty (30) days after receiving written notice thereof; or (ii) if the other Party becomes insolvent or makes any assignment for the benefit of creditors or similar transfer evidencing insolvency, or suffers or permits the commencement of any form of insolvency or receivership proceeding, or has any petition under bankruptcy law filed against it, which petition is not dismissed within sixty (60) days of such filing, or has a trustee, administrator or receiver appointed for its business or assets or any part thereof.  In addition, Google may immediately suspend or terminate this Agreement if Google reasonably

determines that it is commercially impractical to continue performing its obligations in light of applicable laws.

8.3     Effect of Expiration or Termination.  Within thirty (30) days after expiration or termination of this Agreement for any reason and subject to applicable law, each Party shall return to the other Party (or, at that Party's request, destroy) any Confidential Information of that Party that is in its possession. The following sections survive expiration or termination of this Agreement: 1, 4 (excluding Section 4.6), 6, 8, 9, 10, 11 and 12.

9.      **WARRANTIES AND DISCLAIMER**

9.1     Mutual Warranties.  Each Party represents and warrants to the other that (i) it has full power and authority to enter into this Agreement and to perform its obligations hereunder; and (ii) this Agreement constitutes its valid and binding obligation, enforceable against it in accordance with its terms.

9.2     Disclaimer.  THE WARRANTIES EXPLICITLY SET FORTH ABOVE ARE THE ONLY WARRANTIES PROVIDED HEREIN AND ARE IN LIEU OF ALL OTHER WARRANTIES BY THE PARTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SUBJECT MATTER OF THIS AGREEMENT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, GOOGLE AND THE UNIVERSITY SPECIFICALLY DISCLAIM ANY WARRANTY REGARDING NON-INFRINGEMENT OF THIRD PARTY INTELLECTUAL PROPERTY.

10.     **DEFENSE AND LEGAL RESPONSIBILITIES.**

10.1    Google shall defend , or at its option, settle any third party lawsuit or proceeding brought against the University (or its Board of Visitors, employees' or agents') based on an allegation that Google's actions under this Agreement violate that party's copyrights or other legal rights.   The foregoing indemnification and defense includes any third party claims alleging that (a) the University's participation in this Agreement and release of Selected Content to Google for Digitization constitutes a violation of that third party's copyrights and (b) Google's use or distribution of the Google Digital Copy constitutes a violation of that third party's copyrights, but excludes any third party claim that relates to University's use or distribution of the University Digital Copy. Mixed claims that include claims that relate to University's use or distribution of the University Digital Copy and claims covered by this Section shall not vitiate this indemnification responsibility by Google on breach-of-contract grounds.  Consistent with the requirements of Virginia law, Google shall select counsel reasonably appropriate for such defense and shall pay for all costs incurred by such counsel.  In addition, Google shall pay any damage awards or settlement costs that may be incurred solely in connection with such third party claims.  University may participate in the defense with counsel of its own choice, at its own expense. Consistent with and subject to the requirements of Virginia law, settlement of any claim against the University shall be subject to approval of the University, which approval will not unreasonably be withheld, and to approval by the Governor of Virginia and Attorney General of Virginia where required by state law, which approval the University shall diligently seek.

10.2    Consistent with and subject to the requirements of Virginia law, University shall defend, or at its option, settle any third party lawsuit brought against Google (its affiliates, employees or agents) or proceeding that relates to University's use or distribution of the University Digital Copy in violation of that party's copyrights or other legal rights, including without limitation, any such use by a third party.   The University shall have the sole responsibility for defense of such actions and for payment of any attorney's fees, damage awards or settlement costs that may be incurred solely as a result of the University's use or distribution of its own Digital Copy.   University agrees that Google may participate in the defense with counsel of its own choice, at its own expense.  The foregoing shall not be interpreted as a waiver of the sovereign immunity of the Commonwealth of Virginia, nor assumption by the University of any liability or obligation for the acts or omissions of Google or for the acts or omissions of others contrary to state law governing the University as an agency of the Commonwealth of Virginia.

GOOGLE CONFIDENTIAL
EXECUTION COPY

8



GOOG05000388

10.3     General.  Responsibilities under Sections 10.1 and 10.2 shall be limited to (a) payment by the responsible party of all damages and costs finally awarded for such claim, or (b) settlement costs approved in writing by the responsible party.  The foregoing obligations shall exist only if the party seeking indemnification ("requesting party"):  (i) promptly notifies the responsible party of such claim, (ii) provides the responsible party with reasonable information, assistance and cooperation in defending the lawsuit or proceeding, and (iii) gives the responsible party full control and sole authority over the defense and settlement of such claim subject to applicable law.  The requesting party may join in defense with counsel of its choice at its own expense.  The responsible party shall only reimburse the requesting party for expenses incurred by the requesting party with the responsible party's prior written approval.


**11.     LIMITATION OF LIABILITY**

EXCEPT FOR DAMAGES ARISING FROM BREACH OF SECTIONS 2.3,  6 (CONFIDENTIALITY) OR PAYMENT OBLIGATIONS UNDER SECTION 10: (A) IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR LOST PROFITS OR ANY FORM OF INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER FROM ANY CAUSES OF ACTION OF ANY KIND WITH RESPECT TO THIS AGREEMENT, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, AND WHETHER OR NOT THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE;  AND (B) EACH PARTY'S LIABILITY UNDER THIS AGREEMENT SHALL BE LIMITED TO TEN THOUSAND DOLLARS ($10,000). THE PARTIES AGREE THAT: (I) THE MUTUAL AGREEMENTS MADE IN THIS SECTION 11 REFLECT A REASONABLE ALLOCATION OF RISK, AND (II) THAT EACH PARTY WOULD NOT ENTER INTO THIS AGREEMENT WITHOUT THESE LIMITATIONS ON LIABILITY.


**12.     GENERAL PROVISIONS**

12.1     No Obligation.  Notwithstanding the foregoing, Google shall have no obligation to digitize any portion of the Available Content or to use any portion of the Google Digital Copy as part of the Google Services. However, Google's decision to cease Digitization activities under this Agreement and thus fail to provide the University with a University Digital Copy shall not be taken without prior consultation with the University enabling the University to minimize investments in staff required under Section 5.3 of this Agreement. Likewise, notwithstanding anything in this Agreement to the contrary, University shall not be obligated to participate in the Digitization program described in this Agreement with respect to any or all of the Available Content. However, University's decision not to participate in the Digitization program shall not be made without prior consultation with Google enabling Google to minimize investments in operations required to perform the Digitization. Furthermore, notwithstanding anything in this Agreement to the contrary, if Google determines, at its sole discretion, not to digitize some or all Selected Content in connection with one or more specific Projects, whether due to cost issues, conservation concerns or otherwise, Google shall have no obligation to the University with respect to digitizing or delivering the University Digital Copy with respect to such Selected Content.

12.2     Assignment.  Neither Party may assign any of its rights or delegate any of its duties under this Agreement without the prior written consent of the other Party, which shall not unreasonably be withheld.

12.3     Continuity.  This Agreement shall be binding upon the successors and permitted assigns of both parties.

12.4     Notices.  Unless provided for to the contrary in this Agreement, any and all notices or other communications or deliveries required or permitted to be made under this Agreement shall be sent (a) if to University to the attention of the University Librarian at the address identified above and (b) if to Google to such address as provided at www.google.com/corporate/address.html or as otherwise provided in writing for such notice purposes. A second copy of every notice to Google shall be sent to the same address, "Attn: Legal Dept." Notice shall be deemed received (i) upon receipt when delivered personally, (ii) upon written verification of receipt from overnight courier, (iii) upon verification of receipt of registered or certified mail or (iv) upon verification of receipt via facsimile, provided that such notice is also sent

GOOGLE CONFIDENTIAL
EXECUTION COPY



GOOG05000389

simultaneously via first class mail. Contact information shall be updated in writing as necessary to ensure that each Party has current information regarding all such contacts.

12.5     Independent Contractors. The parties hereto are and shall remain independent contractors, and nothing herein shall be deemed to create an agency, partnership, or joint venture between the parties hereto.   This Agreement does not affect any right that either Party would have had, or shall have, independent of the Agreement under applicable law.

12.6     Force Majeure. Neither Party shall be liable for failing or delaying performance of its obligations resulting from any condition beyond its reasonable control, including but not limited to, governmental action, acts of terrorism, earthquake, fire, flood or other acts of God, labor conditions, power failures, and internet disturbances.

12.7     Enforceability. If any provision of this Agreement shall be adjudged by any court of competent jurisdiction to be unenforceable or invalid, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and remain enforceable between the parties.

12.8     Non-Waiver in Event of Breach.  The failure of either Party to act in the event of a breach of this Agreement by the other shall not be deemed a waiver of such breach or a waiver of future breaches

12.9     Limitation of Rights.  No provision of this Agreement is intended to confer any rights, benefits, remedies, obligations, or liabilities hereunder upon any person or entity other than the Parties and their respective successors and assigns.

12.10    Headings.  The section and paragraph headings used in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement.

12.11    Completeness/Amendment.  This Agreement sets forth the entire understanding and agreement between the parties and may be amended only in a writing signed by both parties.

12.12    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

*[Rest of page left intentionally blank.]*

GOOGLE CONFIDENTIAL
EXECUTION COPY



GOOG05000390

IN WITNESS WHEREOF, this Agreement has been executed by persons duly authorized as of the
"**Effective Date**", which shall be the date written by Google below.

Google

By: _David K. Eun_____      By: _____

Print Name: **DAVID EUN**       Print Name:   **Leonard W. Sandridge**
Title: Vice President, Content Partnerships   Title:   **Executive Vice President and**
       Google, Inc.                                  **Chief Operating Officer**

Date:                            Date:    10/20/06

11-08-06P05:27 RCVD

*[Signature Page to Cooperative Agreement]*

GOOGLE CONFIDENTIAL
EXECUTION COPY

11



GOOG05000391

**EXHIBIT A**
**NON-DISCLOSURE AGREEMENT**
**(attached)**

GOOGLE CONFIDENTIAL
EXECUTION COPY

12

GOOG05000392

**Google**   **Mutual Non-Disclosure Agreement**
**V032404C.1**

This Mutual Non-Disclosure Agreement ("Agreement") is made and entered into between Google Inc., for itself and its subsidiaries and affiliates ("Google"), and "Participant" identified below, individually referred to as a "Party" and collectively referred to as the "Parties". The Parties wish to exchange Confidential Information (as defined below in Section 2) for the following purpose(s): a) to evaluate whether to enter into a contemplated business transaction; and b) if the Parties enter into an agreement related to such business transaction, to fulfill each Party's confidentiality obligations to the extent the terms set forth below are incorporated therein (the "Purpose"). The Parties have entered into this Agreement to protect the confidentiality of information in accordance with the following terms:

1. The Effective Date of this Agreement is Oc͟Tober 20, 2006

2. In connection with the Purpose, a Party may disclose certain information it considers confidential and/or proprietary ("Confidential Information") to the other Party including, but not limited to, tangible, intangible, visual, electronic, present, or future information such as: (a) trade secrets; (b) financial information, including pricing; (c) technical information, including research, development, procedures, algorithms, data, designs, and know-how; (d) business information, including operations, planning, marketing interests, and products; (e) the terms of any agreement entered into between the Parties and the discussions, negotiations and proposals related thereto; and (f) information acquired during any facilities tours. Confidential Information shall not include the "Cooperative Agreement" entered into by the Parties; except that any disclosure of the Cooperative Agreement by a Party will only be with reasonable prior written notice to the other Party to allow the Parties to cooperate on the timing and manner of any disclosure in compliance with all applicable laws.

3. The Party receiving Confidential Information (a "Recipient") will only have a duty to protect Confidential Information disclosed to it by the other Party ("Discloser"): (a) if it is clearly and conspicuously marked as "confidential" or with a similar designation; (b) if it is identified by the Discloser as confidential and/or proprietary before, during, or promptly after presentation or communication; or (c) if it is disclosed in a manner in which the Discloser reasonably communicated, or the Recipient should reasonably have understood under the circumstances, including without limitation those described in Section 2 above, that the disclosure should be treated as confidential, whether or not the specific designation "confidential" or any similar designation is used.

4. A Recipient will use the Confidential Information only for the Purpose described above. A Recipient will use the same degree of care, but no less than a reasonable degree of care, as the Recipient uses with respect to its own information of a similar nature to protect the Confidential Information and to prevent: (a) any use of Confidential Information in violation of this agreement; and/or (b) communication of Confidential Information to any unauthorized third parties. Confidential Information may only be disseminated to employees, directors, agents or third party contractors of Recipient with a need to know provided, the Recipient shall be responsible for such persons or contractor complying with the confidentiality provisions of this agreement.

5. Each Party agrees that it shall not do the following, except with the advanced review and written approval of the other Party: (a) publicly issue or release any articles, advertising, publicity or other matter announcing that the Parties are negotiating or have entered into the "Cooperative Agreement"; or (b) make copies of documents containing Confidential Information except as may be needed by a Recipient's attorneys or employees and subject to paragraph 4 above.

6. This Agreement imposes no obligation upon a Recipient with respect to Confidential Information that: (a) was known to the Recipient before receipt from the Discloser; (b) is or becomes publicly available through no fault of the Recipient; (c) is rightfully received by the Recipient from a third party without a duty of confidentiality; (d) is independently developed by the Recipient without a breach of this Agreement; (e) is disclosed by the Recipient with the Discloser's prior written approval; (f) is required to be

disclosed by the Virginia Freedom of Information Act; or (g) is required to be disclosed by court order or other governmental demand; provided that, in the event that disclosure is required by court order or other governmental demand ("Process"), (i) the Recipient shall immediately notify the Discloser of such Process; and (ii) the Recipient shall not produce or disclose Confidential Information in response to the Process unless the Discloser has: (a) requested protection from the legal or governmental authority requiring the Process and such request has been denied, (b) consented in writing to the production or disclosure of the Confidential Information in response to the Process, or (c) taken no action to protect its interest in the Confidential Information within 14 business days after receipt of notice from the Recipient of its obligation to produce or disclose Confidential Information in response to the Process, or such shorter period as may be required by such Process. In the event that disclosure is required under the Virginia Freedom of Information Act (the "Act"), the recipient of the disclosure request will notify the other Party as soon as reasonably possible and the Parties will cooperate to determine the timing and manner of any disclosure in compliance with the requirements of the Act.

7. EACH DISCLOSER WARRANTS THAT IT HAS THE RIGHT TO DISCLOSE ITS CONFIDENTIAL INFORMATION. NO OTHER WARRANTIES ARE MADE. ALL CONFIDENTIAL INFORMATION DISCLOSED HEREUNDER IS PROVIDED "AS IS".

8. This Agreement shall remain in effect until it is terminated by either Party with thirty (30) days prior written notice. Notwithstanding the foregoing, this Agreement shall survive with respect to Confidential Information that is disclosed before the effective date of termination.

9. Unless the Parties otherwise agree in writing, a Recipient's duty to protect Confidential Information expires five (5) years from the date of disclosure. A Recipient, upon Discloser's written request, will promptly return all Confidential Information received from the Discloser, together with all copies, or certify in writing that all such Confidential Information and copies thereof have been destroyed. Regardless of whether the Confidential Information is returned or destroyed, the Recipient may retain an archival copy of the Discloser's Confidential Information in the possession of outside counsel of its own choosing for use solely in the event a dispute arises hereunder and only in connection with such dispute.

10. This Agreement imposes no obligation on a Party to exchange Confidential Information, proceed with any business opportunity, or purchase, sell, license, transfer or otherwise make use of any technology, services or products.

11. No Party acquires any intellectual property rights under this Agreement (including, but not limited to, patent, copyright, and trademark rights) except the limited rights necessary to carry out the Purpose as set forth in this Agreement.

12. Each Party acknowledges that damages for improper disclosure of Confidential Information may be irreparable; therefore, the injured Party is entitled to seek equitable relief, including injunction and preliminary injunction, in addition to all other remedies available to it.

13. This Agreement does not create any agency or partnership relationship. This Agreement will not be assignable or transferable by Participant without the prior written consent of Google.

14. This Agreement may be executed in two or more identical counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute the agreement when a duly authorized representative of each party has signed the counterpart.

15. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior oral or written agreements, and all contemporaneous oral communications. All additions or modifications to this Agreement must be made in writing and must be signed by the Parties. Any failure to enforce a provision of this Agreement shall not constitute a waiver thereof or of any other provision.

---

Google Inc.

By: _(signature)_

Name: Tamar Fruchtman

Title: Senior Corporate Counsel

Participant: Rectors + Visitors of University of Virginia _(signature)_

By: Leonard W. Sandridge

Name: Executive Vice President and Chief Operating Officer

Title: _____

GOOG05000393

**Address:** 1600 Amphitheatre Parkway, Mountain View, CA 94043

**Date:** 10 , 21 , 06

**Address:** PO BOX 400228 Charlottesville VA 22980

**Date:** 10 , 20, 06

(Rev. 032404)

GOOG05000394