**EXHIBIT 23**

**PART 2**

**(LIBRARY AGREEMENTS WITH THE NEW YORK PUBLIC LIBRARY, THE UNITED STATES LIBRARY OF CONGRESS, STANFORD UNIVERSITY, PRINCETON UNIVERSITY, COLUMBIA UNIVERSITY, CORNELL UNIVERSITY, AND HARVARD UNIVERSITY HAVE BEEN FILED UNDER SEAL)**

## COOPERATIVE AGREEMENT

This COOPERATIVE AGREEMENT (the "Agreement") is entered into by and between Google Inc., a Delaware corporation with offices at 1600 Amphitheatre Parkway, Mountain View, California 94043 ("Google"), and The University of Texas at Austin, a state agency and institution of higher education organized under the laws of the State of Texas, for and on behalf of the University Libraries with its principal offices at 1 University Station S5400, Austin, Texas 78712 ("University"), and is effective as of the last date this Agreement is signed by the parties (the "Effective Date"). Google and University herein are sometimes referred to hereinafter individually as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, University is a leading academic institution and has amassed an enormous collection of works in various media located at various University libraries and research centers;

WHEREAS, Google provides the public with access to web pages on the Internet, among other products and services;

WHEREAS, Google and the University share a mutual interest in making information available to the public; and

WHEREAS, Subject to the terms set forth herein, the Parties desire to enter into a non-exclusive agreement whereby Google will digitize works from the University collections to include them in Google's services, and provide access to the digitized works to the University as described herein.

NOW THEREFORE, in consideration of the mutual covenants set forth herein, Google and University hereby agree as follows:

## DEFINITIONS

1.   **DEFINITIONS**.  Capitalized terms will have the meanings set forth below:

1.1   "Available Content" means selections from the University Collections as identified by Google and the University.  Without limiting the foregoing, "Available Content" also includes University Digital Content.

1.2   "Brand Features" means the trade names, trademarks, service marks, logos, domain names, and other distinctive brand features of each Party, respectively, as secured by such Party from time to time.

1.3   "Digitize" means to convert content from a tangible, analog form into a digital electronic representation of that content.  "Digitization", "Digitizing" and "Digitized" shall have corresponding meanings.

1.4   "End User" means a person that accesses or uses the Google Services.

1.5   "Google Digital Copy" means a digital copy retained by Google of the Selected Content that is Digitized by Google.

1.6   "Google Services" means Google's products and services that are accessible through and otherwise provided by various computer and electronic technologies, networks (syndicated and otherwise) and systems, including without limitation, mobile wireless services and Internet-



GOOG05000367

based services accessible through the Google Sites and any Google syndication partner sites.

1.7    "Google Site" means any web site located at a Google-owned domain, including all subdomains and directories thereof, and all successor sites thereto.

1.8    "Hosted Access" shall have the meaning set forth in Section 4.6.

1.9    "Initial Term" shall have the meaning set forth in Section 8.1.

1.10   "Other Library" means any library (including any libraries affiliated or associated with any university or other educational institution, other than University) with which Google has an agreement as of the Effective Date concerning Digitization by Google of content from that library.

1.11   "Project" means a project for digitizing certain Selected Content.

1.12   "Project Plan" means a written plan for implementing a Project. The Project Plan shall include the following: (1) timetable for Digitizing the Selected Content, (2) instructions by University regarding how the Selected Content is to be collected and returned by Google; (3) material handling processes for the Selected Content, (4) if required, the amount of time available to University for performing conservation efforts; (5) the amount of time available to Google from receipt of the Selected Content until it is due to be returned to University; and (6) a budget for the Project.

1.13   "Renewal Term" shall have the meaning set forth in Section 8.1.

1.14   "Selected Content" means the portion of the Available Content that Google desires to Digitize or incorporate into the Google Services, both collectively and its component parts, including any and all other works of authorship included therein.

1.15   "Term" shall have the meaning set forth in Section 8.1.

1.16   "University Collections" means those collections of the University of Texas at Austin which may be administered by a University library, research center, or other University organizational unit.

1.17   "University Collections Digital Content" means content that University already has in its possession in Digitized form, as of the Effective Date.

1.18   "University Digital Copy" means the Digitized copy of the Selected Content as specified in Section 4.7.

1.19   "University Library Patrons" means the sum total of all individuals and organizations that access University Collections from University library websites.

**TERMS**

2.     **DIGITIZATION OPERATIONS.**

2.1    Identifying and Collecting Content to be Digitized. The Parties shall in good faith identify Available Content that Google may elect to Digitize; provided that University agrees to commit no fewer than one million (1,000,000) volumes to the Digitization efforts under this Agreement. The Parties shall cooperate in good faith and with diligence to determine the rate in which University will provide books of Selected Content to Google to Digitize and will develop a timetable for completing each Project Plan for Digitizing Selected Content. University will provide Google with metadata for each Selected Content to be Digitized in the format specified by Google prior to Google Digitizing any Selected Content. Also, University will provide Google with an identifier



GOOG05000368

such as an OCLC call number for each text of the Available Content as soon as reasonably possible after the Effective Date and prior to the commencement of Digitization efforts under this Agreement. Google will use such identifier information for internal purposes only.

2.2     Collecting the Selected Content. University shall be responsible for locating, pulling and moving the Selected Content to a designated location at the University facility where Google can collect it, as well as later re-shelving the Selected Content when the Digitization is complete. If agreed upon by the Parties in a particular Project Plan, the collection, pulling, moving, and re-shelving functions may be assigned to Google. Upon commencement of a Project, University shall at its sole discretion perform any conservation efforts, at its expense, that it determines are required and/or desirable for the Selected Content prior to Digitization. On a rolling basis, as this conservation effort is completed, University shall provide the conserved Selected Content to Google for Digitizing.

2.3     Locating the Digitization Operation. Google will designate a location where the Selected Content will be Digitized. Google shall pay for any and all fees and costs associated with the use of said space; University shall not be liable for any such fees and costs. Google agrees that each Digitization facility it controls will, at all times, be reasonably clean, dry, cool, protected from fire and secure against theft and vandalism and at no time shall smoking be permitted in any Digitization facility. Google personnel, agents, contractors and other representatives involved in the Digitization and/or handling of the Selected Content will satisfy and comply with standards mutually agreed by the Parties in any Project Plan. University agrees that Google may remove the Selected Content from University premises to perform the Digitization in facilities controlled by Google.

2.4     Digitizing the Selected Content. Subject to handling constraints or procedures specified in any Project Plan, Google shall in its sole discretion determine how best to Digitize the Selected Content. While the Selected Content is within Google's possession, Google shall use commercially reasonable efforts to minimize damage to the Selected Content, including handling the Selected Content in accordance with handling instructions set forth in the relevant Project Plan, if any. If the University establishes that Selected Content was not returned in substantially the same condition, Google will, at Google's option and the University's sole remedy, either replace the Selected Content in question or pay the University for the repair or replacement of such Selected Content up to a maximum as may be specified in the relevant Project Plan provided that University agrees that Google's obligation will not exceed $1,000 for any given text and that Google's maximum liability for any damage or loss to Selected Content in Google's custody resulting from a single incident or event will not exceed one million dollars ($1,000,000). Unless the University makes Google aware that specific materials require non-standard care, transport, and processing and Google decides to go forward with Digitization of such items, Google shall have no responsibility to undertake special efforts to address unique or fragile conditions in its transport or handling of individual items. University will provide Google with a good faith estimate of the value of any Selected Content approved for removal from University premises and will provide Google with an itemized list of any such materials.

2.5     Return of the Selected Content. Google shall return the Selected Content to the source from which Google obtained it and in the like manner in which it was collected after Google completes Digitizing the Selected Content. Google will use reasonable commercial efforts to ensure that Selected Content is returned within ten (10) business days of its being scanned or after a determination is made by Google that Selected Content will not be scanned. Notwithstanding the foregoing, Google agrees that no materials in a Project will be off the University's shelves for longer than fifteen (15) business days or for a longer period as may be specified in the relevant Project Plan.



GOOG05000369

3.    COSTS.

3.1    Costs paid by University.    In addition to costs mutually agreed upon by the Parties, University shall be responsible for the following costs: (a) those related to locating, pulling and moving the Selected Content to and from the designated location at the University facility so that Google can collect it as well as re-shelving the Selected Content when the Digitization is complete, (b) those related to University employees and agents whose participation is contemplated by this Agreement, (c) network bandwidth and data storage required by University to receive all of the University Digital Copy, (d) any conservation efforts that University elects to undertake on the Selected Content prior to Digitizing, and (e) barcoding and associated data entry to barcode the Selected Content.

3.2    Costs borne by Google.    In addition to costs mutually agreed upon by the Parties, Google shall be responsible for the following costs: (a) those related to Google employees whose participation is contemplated by this Agreement, (b) hardware and software required to Digitize the Selected Content, (c) space required to Digitize the Selected Content, and (d) transportation of Selected Content from the designated location at the University facility to a Google designated facility to perform the Digitization.

3.3    Budgets.    Notwithstanding the foregoing, University and Google may jointly develop a budget for each Project Plan, pursuant to which the Parties can allocate the cost of researching and identifying the Selected Content, conducting conservation assessments, performing conservation work, performing any required copyright research and clearances, and metadata development as required.  Any such budget will take precedence over the provisions of Sections 3.1 and 3.2 above and will be effective only after set forth in a writing signed by both Parties.

4.    **OWNERSHIP AND USE OF DIGITAL COPIES AND SERVICES.**

4.1    Copyright Status. The Parties understand that the Selected Content may include some works that will be treated hereunder as public domain works and some works that will be treated hereunder as in-copyright works. Both Google and University agree and intend to perform this Agreement in compliance with copyright law. Each Party will be responsible for the determination of how to treat a work for each jurisdiction at its sole discretion.  Notwithstanding such determination, if either Party believes a work (or portion thereof) should be treated as an in-copyright work in either the United States or another jurisdiction, and so notifies the other Party, then, within forty-eight (48) hours of such notice, such work (or portion thereof) shall be treated as an in-copyright work for use in the relevant country. In addition, Google will implement processes whereby any person or entity can request that Google not Digitize any Available Content or to stop displaying or using any Digitized Selected Content which Google will comply with so long as Google determines that the person or entity making the request is the copyright holder or has actual or apparent authority to act on behalf of the copyright holder.

4.2    Ownership and use of Google Digital Copy. As between Google and University and subject to the provisions in this Section 4, Google shall own all rights, title, and interest in and to the Google Digital Copy.

4.3    Google use of Google Digital Copy.  Subject to the restrictions set forth herein, Google may use the Google Digital Copy, in whole or in part at Google's sole discretion, subject to copyright law, as part of the Google Services. Google agrees that to the extent that it or its successors use any Digitized Selected Content in connection with any Google Services, it shall provide a service at no cost to End Users (1) for both search and display of search results and (2) for access to the display of the full text of public domain works contained in the Digitized Selected Content. To the extent portions of the Google Digital Copy are either in the public domain or where Google has otherwise obtained authorization, Google shall have the right, in its sole discretion, among other things, to (a) index the full text or content, (b) serve and display full-sized digital images corresponding to those portions, (c) make available full text of content for printing



GOOG05000370

and/or download, and (d) make copies of such portions of the Google Digital Copy and provide, license, or sell such copies (including, without limitation, to its syndication partners). For all other portions of the Google Digital Copy, Google may index the full text or content but may not serve or display the full-sized digital image or make available for printing, streaming and/or download the full content unless Google has permission or license from the copyright owner to do so; Google instead may serve and display (1) an excerpt that Google reasonably determines would constitute fair use under copyright law and (2) bibliographic (e.g. title, author, date, etc.) and other non-copyrighted information. In the event that Google has received a license or other permission from the applicable copyright holder to use in-copyright works in the Google Digital Copy, Google may use those works in any manner permitted under the terms of such license.

4.4    Security and Privacy Regarding Google's Use of the Google Digital Copy. Google shall implement commercially reasonable technological measures (e.g., through use of the robots.txt protocol) to restrict automated access to any portion of the Google Digital Copy that is in-copyright. In addition, Google shall maintain on its website a privacy policy that governs collection and use of information that Google obtains from End Users.

4.5    Ownership and Control of Google Services. As between the Parties, the Google Services and all content therein are, and at all times will remain the exclusive property of Google or its partners; nothing in this Agreement implies any transfer to University of any ownership interest in the Google Services. University acknowledges and agrees that Google retains control of the Google Services, and that the design, layout, content, functions and features of the Google Services are at Google's discretion. Notwithstanding anything to the contrary in this Agreement, Google is not required to make any or all of the Google Digital Copy available through the Google Services.

4.6    Hosted Access. During the Term, Google will provide searchable access to the Google Digital Copy at no charge to University and to University Library patrons via a website that will be hosted by Google ("**Hosted Access**"). The design, layout, content, functions and features of Hosted Access will be determined by Google but substantially similar to that provided by Google to any Other Library as such features evolve during the Term.

4.7    University Digital Copy. Unless otherwise agreed by the Parties in writing, the "**University Digital Copy**" means the digital copy of the Selected Content that is Digitized by Google consisting of (a) a set of image and OCR files, (b) associated meta-information about the files including bibliographic information consisting of title and author of each Digitized work and technical information consisting of the date of scanning the work, information about which image files correspond to what Digitized work, and (c) a list of works that are supplied for Digitization but not actually Digitized.

4.7.1    Google agrees to provide to University access to one copy of all Digitized Selected Content that has been "Successfully Processed" within thirty (30) days after the Selected Content is Digitized, or in a timeframe mutually agreed by the Parties. Selected Content is "**Successfully Processed**" when Google determines it has satisfactorily gone through all stages of Google's Digitization, post processing and quality assurance procedures. In addition Google will provide the University with the ability to sample the files for two hundred and fifty (250) Digitized works per quarter to assess quality. Google agrees that the quality of files provided to University in the University Digital Copy will be substantially similar to the quality of files provided to any Other Library. Google shall provide the University Digital Copy via a network connection, or in any other manner mutually agreed upon by the Parties. Notwithstanding anything to the contrary herein, Google may withhold any works in dispute as set forth in Section 4.1 from the University Digital Copy and the University will delete any such works that were previously provided to University as part of the University Digital Copy.

4.8    Ownership and use of University Digital Copy. As between Google and University and subject to the restrictions in this Section 4, University shall own all rights, title, and interest to the



GOOG05000371

University Digital Copy. Without limiting the foregoing, University shall not display or otherwise use the University Digital Copy except as expressly permitted in this Agreement.

4.9     Use of University Digital Copy on University Website.

**4.9.1 Uses by University Library Patrons:** (a) University shall have the right to use the University Digital Copy in whole or in part at University's sole discretion, in accordance with copyright law, as part of services offered to University Library Patrons; provided that University not charge or receive payment or other consideration for such use of the University Digital Copy. (b) University may, however, charge for services it provides that build upon the University Digital Copy. For example, University may charge University Library Patrons for access to annotations provided by professors and scholars even though the original work digitized by Google will always be accessible without a fee. University may also charge University Library Patrons to recover copying costs actually incurred in serving their needs.

**4.9.2 Public Access.**

(a) **Digitized by Google Reference**. University agrees to identify the works within the University Digital Copy that it makes available to the public as "Digitized by Google" in a statement on a web page or other access point to be mutually agreed to by the Parties, or in a substantially similar manner.

(b) **Automated Access**. University shall implement technological measures such as the robots.txt protocol or similar measures to restrict automated access to any portion of the University Digital Copy or the portions of the University website on which any portion of the University Digital Copy is available.

(c) **Commercial and Systematic Downloading and Distribution**. University shall also make reasonable efforts to prevent third parties from (i) downloading or otherwise obtaining works from the University Digital Copy for commercial purposes, (ii) commercial redistribution of works from the University Digital Copy, or (iii) automated and systematic downloading or distribution to the public at large of substantial portions of the University Digital Copy from the services offered on University's website.

(d) **Protection for Internal Archive**. University shall implement security and handling procedures for the University Digital Copy as mutually agreed by the Parties. Except as expressly allowed herein, University will not share, provide, license, or sell the University Digital Copy to any third party.

4.10    Distribution of the University Digital Copy.

**4.10.1 Distribution to Libraries and Educational Institutions:** Subject to the limitations set forth herein,

(a) University shall have the right to distribute no more than ten percent (10%) of public domain works from the University Digital Copy to other libraries and educational institutions in accordance with copyright law and in each case for non-commercial research, scholarly or academic purposes.

(b) University shall have the right to distribute all or any portion of the public domain works contained in the University Digital Copy to a library member of the Digital Library Federation or with Google's prior written consent, to other institutions (each recipient entity is referred to herein as a "**Recipient Institution**") for non-commercial research, scholarly or academic purposes by the Recipient Institution and the faculty, students, scholars and staff authorized by the Recipient Institution to access their commercially licensed electronic information products.

**4.10.2 Limitations on Recipients of Distributed Copy:**

(a) **Contract with Google:** Prior to any distribution by University to a Recipient Institution, Google and the Recipient Institution must have entered into a written agreement on terms acceptable to Google governing the use of the University Digital Copy and that, among other things, provide an indemnity to Google.

(b) **Contract with University:** In addition, University and Recipient Institution must enter



GOOG05000372

into a written agreement that

(A) prohibits that Recipient Institution from redistributing without first obtaining the prior written consent of Google,

(B) makes Google an express third party beneficiary of such agreement,

(C) provides an indemnity to Google from the Recipient Institution for the Recipient Institution's use of the University Digital Copy or part thereof,

(D) contains limitations at least as restrictive as the restrictions on University set forth in Section 4.9,

(E) contains limitations on the use of the University Digital Copy as set forth in clauses 4.10.1 (a) and (b) above, if any, and

(F) requires each Recipient Institution, to the extent it makes any portion of the University Digital Copy publicly available, to identify the works as "Digitized by Google" in a statement on the applicable web page or other access point, or in a substantially similar manner.

## 5.   ACCESS, AUTHORIZATION AND SUPPORT.

5.1     Access.   Google shall have the right to access Selected Content during University business/staff hours as required to exercise its rights and perform its obligations hereunder.  If requested by Google, University shall provide Google with access to Selected Content outside of University business hours provided that Google notify University at least two (2) days in advance of its intent to access such materials.

5.2     Authorization.   The University program manager responsible for the Selected Content involved in any Project Plan shall have authority to agree with Google on the time frames and procedures (e.g., collection, conservation, and handling) associated with that Selected Content. If Google in good faith believes that the time frames and procedures requested by the University program manager are unreasonable, Google shall escalate the matter to the University administrative contact; in which case Google, the University program manager, and the administrative contact shall meet to resolve the issue.

5.3     Support.   Each party shall appoint one person to serve as the administrative contact for the other, should administrative questions or issues arise during the course of this Agreement. This administrative contact shall be available during regular business hours (9:00 a.m. to 5:00 p.m., Monday through Friday) at a telephone number and e-mail address to be provided by each party.  Each party shall also appoint one person to serve as the technical contact for the other for obtaining and regulating the use of the University Digital Copy among other things.  This technical contact shall be available during regular business hours at a telephone number and e-mail address to be provided by each party.   Upon execution of this contract, both Google and University shall identify these individuals in writing, which may be email.

## 6.   CONFIDENTIALITY.

6.1     Confidentiality.  By virtue of this Agreement, each Party may have access to information of the other Party which is considered confidential and proprietary, including product plans, customer lists, and proprietary technology or methods (**"Confidential Information"**), whether disclosed in tangible or intangible form. Information disclosed in tangible form will be considered Confidential Information if it is marked as "Confidential". Information disclosed in intangible form will be considered Confidential Information if the disclosing Party clearly indicates that it is confidential at the time of disclosure.

6.2     Obligations.  Each Party shall exercise the same degree of care, but no less than a reasonable degree of care, to avoid the publication or dissemination of the Confidential Information of the other Party as it affords to its own confidential information of a similar nature



GOOG05000373

which it desires not to be published or disseminated. The receiving Party ("**Recipient**") shall not use Confidential Information of the disclosing Party ("**Discloser**") except in connection with this Agreement and the matters contemplated hereby. The obligation of the parties not to disclose Confidential Information survives termination or cancellation of this Agreement.

6.3   Exceptions. This Agreement imposes no obligation upon a Recipient with respect to Confidential Information that: (a) was known to the Recipient before receipt from the Discloser; (b) is or becomes publicly available through no fault of the Recipient; (c) is rightfully received by the Recipient from a third party without a duty of confidentiality; (d) is independently developed by the Recipient without a breach of this Agreement; (e) is disclosed by the Recipient with the Discloser's prior written approval; or (f) is required to be disclosed by operation of law, court order or other governmental demand ("Process"); provided that (i) the Recipient shall immediately notify the Discloser of such Process; and (ii) the Recipient shall not produce or disclose Confidential Information in response to the Process unless the Discloser has: (a) requested protection from the legal or governmental authority and such request has been denied; (b) consented in writing to the production or disclosure of the Confidential Information in response to the Process; or (c) taken no action to protect its interest in the Confidential Information within 10 business days after receipt of notice by the Recipient of its obligation to produce or disclose Confidential Information in response to the Process.

6.4   Public Relations; Publicity.   Neither Party will issue publicity announcements, press releases or other public statements regarding the Agreement without the other Party's prior written approval. Google may include the name "The University of Texas at Austin" and the University logo illustrated in Attachment A hereto ("Logo") in factual statements about University's participation in Google's digitization efforts, for example, in lists of other partner universities, with the prior written permission of the University's Director of Trademark Licensing; provided that Google is not required to obtain separate permissions for each use of the Logo so long as subsequent uses are similar to the prior reviewed and approved use. As a courtesy to University to permit University to confirm Google's judgments regarding similarity, Google will provide University post-hoc notice of its similar uses for the first three (3) months of the Term.

7.   **BRAND FEATURES.**

7.1   Ownership. Each Party shall own all right, title and interest relating to its Brand Features. Some, but not all examples of Google Brand Features are located at: http://www.google.com/permissions/trademarks.html (or such other URLs Google may provide from time to time). Except to the limited extent expressly provided in this Agreement, neither Party grants, and the other Party shall not acquire, any right, title or interest (including, without limitation, any implied license) in or to any Brand Features of the first Party; and all rights not expressly granted herein are deemed withheld. All use by Google of University Brand Features (including any goodwill associated therewith) shall inure to the benefit of University and all use by University of Google Brand Features (including any goodwill associated therewith) shall inure to the benefit of Google. No Party shall challenge or assist others to challenge the Brand Features of the other Party (except to protect such Party's rights with respect to its own Brand Features) or the registration thereof by the other Party, nor shall either Party attempt to register any Brand Features or domain names that are confusingly similar to those of the other Party.

7.2   License to University Brand Features.   Subject to the terms and conditions of this Agreement, University grants to Google a limited, nonexclusive and nonsublicensable license during the Term to display those University Brand Features expressly authorized for use in this Agreement, solely for the purposes expressly set forth herein. Notwithstanding anything to the contrary, University may revoke the license granted herein to use University's Brand Features upon providing Google with written notice thereof and a reasonable period of time to cease such usage.



GOOG05000374

8.   **TERM AND TERMINATION.**

8.1   Term.  This Agreement is effective as of the Effective Date and continues in full force and effect for a period of six (6) years, unless earlier terminated as provided herein (the "**Initial Term**").   Upon the expiration of the Initial Term, this Agreement shall automatically renew for additional one year terms (each a "**Renewal Term**") unless either Party notifies the other Party to the contrary at least thirty (30) days before the end of either the Initial Term or a Renewal Term. The "**Term**" of this Agreement shall comprise the Initial Term and any Renewal Terms.

8.2   Termination.  Either Party may suspend performance and/or terminate this Agreement: (i) if the other Party materially breaches any material term or condition of this Agreement and fails to cure such breach within thirty (30) days after receiving written notice thereof; or (ii) if the other Party becomes insolvent or makes any assignment for the benefit of creditors or similar transfer evidencing insolvency, or suffers or permits the commencement of any form of insolvency or receivership proceeding, or has any petition under bankruptcy law filed against it, which petition is not dismissed within sixty (60) days of such filing, or has a trustee, administrator or receiver appointed for its business or assets or any part thereof.

8.3   Effect of Expiration or Termination   After expiration or termination of this Agreement for any reason: (i) each Party shall within thirty (30) days return to the other Party (or, at that Party's request, destroy) any Confidential Information of that Party that is in its possession, (ii) Google shall within thirty (30) days return to the University any Selected Content that it has in its possession or in transit at termination in a manner specified in Section 2.5, (iii) the University shall within ninety (90) days download any digitized Selected Content that has been created by Google during the Term but not yet downloaded by the University at termination, in a manner specified in Section 4.7.1.   The following sections survive expiration or termination of this Agreement: 1, 2.4, 2.5, 4 (excluding Section 4.6), 6, 8.3, 9, 10, 11 and 12.

9.   **WARRANTIES AND DISCLAIMER.**

9.1   Mutual Warranties.  Google warrants, represents, covenants, and agrees that it is duly organized, validly existing and in good standing under the laws of the state of its incorporation. Each Party represents to the other that (i) the individual who executes this Agreement has full power and authority to do so; and (ii) this Agreement constitutes its valid and binding obligation, enforceable against it in accordance with its terms.

9.2   Disclaimer.  THE WARRANTIES EXPLICITLY SET FORTH ABOVE ARE THE ONLY WARRANTIES PROVIDED HEREIN AND ARE IN LIEU OF ALL OTHER WARRANTIES BY THE PARTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SUBJECT MATTER OF THIS AGREEMENT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, BOTH PARTIES SPECIFICALLY DISCLAIM ANY WARRANTY REGARDING NON-INFRINGEMENT OF THIRD PARTY INTELLECTUAL PROPERTY.

10.   **INDEMNIFICATION.**

10.1   By Google.  Google shall defend, indemnify, and hold harmless University from and against any  and all liabilities, damages, charges, fees, including reasonable attorney's fees, costs, and expenses incurred by University and arising out of a third party claim, lawsuit and/or any other legal, quasi-legal, or administrative proceeding alleging that any or all of the following violate any applicable law, including, but not limited to, an allegation of copyright infringement: University's provision of Available Content to Google for digitization but only to the extent such provision is alleged to be direct or secondary copyright infringement; Google's Digitization of Available Content; the use or distribution of Google Digital Copy(ies); and/or the use of the



GOOG05000375

Google Digital Copy in connection with Google Services. The foregoing indemnification excludes any third party claim that relates to University's use or distribution of the University Digital Copy.

10.2    By University.  Consistent with and subject to the requirements of the Constitution and Laws of the State of Texas, University shall defend, indemnify, and hold harmless Google from and against any and all liabilities, damages, charges, fees, including reasonable attorney's fees, costs and expenses incurred by Google and arising out of a third party claim, lawsuit and/or any other legal, quasi-legal, or administrative proceeding alleging that University's use or distribution of the University Digital Copy (including any use by a third party) violates any applicable law including, but not limited to, an allegation of copyright infringement. The foregoing indemnification excludes any third party claim that relates to University's provision of Available Content to Google for Digitization to the extent such provision is alleged to be direct or secondary copyright infringement; Google's Digitization of Available Content; the use or distribution of Google Digital Copy(ies); and/or the use of the Google Digital Copy in connection with Google Services.

10.3    General.  The foregoing obligations shall exist only if the party seeking indemnification ("**Indemnitee**"):  (i) promptly notifies the indemnifying party ("**Indemnitor**") of such claim, (ii) provides the Indemnitor with reasonable information, assistance and cooperation in defending the claim, lawsuit or proceeding, and (iii) gives the Indemnitor full control and sole authority over the defense and settlement of such claim, subject to the statutory obligations of the Texas Attorney General when the University is named as a defendant in a lawsuit. The Indemnitee may join in defense with counsel of its choice at its own expense

11.    **Limitation of Liability**

(A) IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR LOST PROFITS OR ANY FORM OF INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER FROM ANY CAUSES OF ACTION OF ANY KIND WITH RESPECT TO THIS AGREEMENT, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, AND WHETHER OR NOT THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE, AND (B) EACH PARTY'S LIABILITY UNDER THIS AGREEMENT SHALL BE LIMITED TO ONE MILLION DOLLARS ($1,000,000). The Parties agree that (i) the mutual agreements made in this Section 11 reflect a reasonable allocation of risk, and (ii) that each party would not enter into the Agreement without these limitations on liability. The foregoing limitations however, are not applicable to any damages arising from a breach of Section 6, Confidentiality, to any monetary obligations arising out of the indemnification obligations in Section 10, Indemnification, including, but not limited to, indemnification for allegations of copyright infringement, or to any damages related to actions for personal injury or wilful misconduct. The limitations set forth in (B) above are not applicable to damages arising from works that are lost, stolen or damaged while such works are in Google's custody or control subject to the limits set forth in Section 2.4.  University's obligations set forth in this Section are subject to the provisions of Section 12.13.

12.    **GENERAL PROVISIONS.**

12.1    No Obligation.  Notwithstanding the foregoing, Google shall have no obligation to digitize any portion of the Available Content nor to use any portion of the Google Digital Copy as part of the Google Services. University shall not be obligated to participate in any Project Plan to the extent University does not have sufficient funds to perform its budgeted obligations under that Project Plan.  Furthermore, notwithstanding anything in this Agreement to the contrary, if Google determines, at its sole discretion, not to digitize some or all Selected Content in connection with one or more specific Projects, whether due to cost issues, conservation concerns or otherwise, Google shall have no obligation to the University with respect to digitizing or delivering the University Digital Copy with respect to such Selected Content.



GOOG05000376

12.2    Assignment.  Neither Party may assign any of its rights or delegate any of its duties under this Agreement without the prior written consent of the other Party, which shall not unreasonably be withheld, except that either Party may assign its rights and delegate its duties under this Agreement upon written notice to the other Party to a division or an affiliate thereof (that is not a competitor of the non-assigning Party), provided such division or affiliate agrees to be bound by all of the terms hereof; and provided further that Google may assign this Agreement without consent to a successor-in-interest in connection with a merger or the sale of all or substantially all of its assets. Any attempted assignment, delegation or transfer in derogation hereof shall be null and void.

12.3    Continuity.  This Agreement shall be binding upon the successors and permitted assigns of both Parties.

12.4    Notices.  Unless provided for to the contrary in this Agreement, any and all notices or other communications or deliveries required or permitted to be made under this Agreement shall be deemed received (i) upon receipt when delivered personally, (ii) upon written verification of receipt from overnight courier, (iii) upon verification of receipt of registered or certified mail or (iv) upon verification of receipt via facsimile, provided that such notice is also sent simultaneously via first class mail and addressed as follows:
If to University:
> The University of Texas at Austin
> Office of the Vice-President and Chief Financial Officer
> PO Box 8179
> Austin, TX 78713-8179
> ATTN:  Kevin P. Hegarty, Vice President and Chief Financial Officer

With a copy to:
> The University of Texas at Austin
> University of Texas Libraries
> Office of the Vice-Provost
> 1 University Station S5400
> Austin, TX 78712
> ATTN:  Fred M. Heath, Vice Provost and Director of Libraries

If to Google:
> to such address as provided at www.google.com/corporate/address.html or as otherwise provided in writing for such notice purposes. A second copy of every notice to Google shall be sent to the same address, "Attn: Legal Dept".

Contact information shall be updated in writing as necessary to ensure that each Party has current information regarding all such contacts.

12.5    Independent Contractors.   The Parties hereto are and shall remain independent contractors, and nothing herein shall be deemed to create an agency, partnership, or joint venture between the Parties hereto.  This Agreement does not affect any right that either Party would have had, or shall have, independent of the Agreement under applicable law.

12.6    Force Majeure.  Neither Party shall be liable for failing or delaying performance of its obligations resulting from any condition beyond its reasonable control, including but not limited to, governmental action, acts of terrorism, earthquake, fire, flood or other acts of God, labor conditions, power failures, and Internet disturbances.

12.7    Enforceability.  If any provision of this Agreement shall be adjudged by any court of competent jurisdiction to be unenforceable or invalid, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and remain enforceable between the Parties.



GOOG05000377

12.8    Non-Waiver.  The failure of either Party to act in the event of a breach of this Agreement by the other shall not be deemed a waiver of such breach or a waiver of future breaches.

12.9    Limitation of Rights.  No provision of this Agreement is intended to confer any rights, benefits, remedies, obligations, or liabilities hereunder upon any person or entity other than the Parties and their respective successors and assigns.

12.10    Headings.  The section and paragraph headings used in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement.

12.11    Amendment.  This Agreement sets forth the entire understanding and agreement between the Parties and may be amended only in a writing signed by both Parties.

12.12    Franchise Tax Certification.  Google is an out-of-state corporation that is not subject to the Texas Franchise Tax.

12.13    Dispute Resolution.  To the extent that Chapter 2260, Texas Government Code, is applicable to this Agreement and is not preempted by other applicable law, the dispute resolution process provided for in Chapter 2260 and the related rules adopted by the Texas Attorney General pursuant to Chapter 2260, shall be used by University and Google to attempt to resolve any claim for breach of contract made by Google that cannot be resolved in the ordinary course of business. The Chief Business Officer of University shall examine Google's claim and any counterclaim and negotiate with Google in an effort to resolve such claims. The Parties specifically agree that (i) neither the execution of this Agreement by University nor any other conduct, action or inaction of any representative of University relating to this Agreement constitutes or is intended to constitute a waiver of University's or the state's sovereign immunity to suit; and (ii) University has not waived its right to seek redress in the courts.

*[Rest of page left intentionally blank.]*



GOOG05000378

IN WITNESS WHEREOF, this Agreement has been executed by persons duly authorized as of the "**Effective Date**", which shall be the date written by Google below.

| Google Inc. | The University of Texas at Austin |
|---|---|
| By: | By: |
| Print Name: DAVID EUN | Print Name: |
| Title: Vice President, Content Partnerships Google, Inc. | Title: |
| Date: 12-21-06 | Date: 1-8-07 |

12-21-06 03:40 RCVD

GOOGLE CONFIDENTIAL        13



GOOG05000379

Attachment A: The University of Texas Logo

As set forth in Section 6.4, the Logo of The University of Texas at Austin shall be an interlocking UT, represented below.



GOOG05000380

## COOPERATIVE AGREEMENT

This COOPERATIVE AGREEMENT (the "Agreement") is entered into by and between Google Inc., a Delaware corporation with offices at 1600 Amphitheatre Parkway, Mountain View, California 94043 ("Google") and The Board of Trustees of the University of Illinois on behalf of the Committee on Institutional Cooperation (as described in Section 1.3 below) ("CIC") and each university listed as a member of CIC in Section 1.3 below that has agreed to the terms herein by executing a signature page to this Agreement (each such university is referred to herein as a "CIC University"); all such universities are collectively referred to herein as the "CIC Universities". This Agreement is effective as of the date signed by Google below (the "Effective Date").  Google, CIC, and each CIC University herein are sometimes referred to hereinafter individually as a "Party" and collectively as the "Parties".

### RECITALS

WHEREAS, Each CIC University is a leading academic institution and has amassed an enormous collection of works in various media; and

WHEREAS, Google provides the public with access to web pages on the Internet, among other products and services; and

WHEREAS, Google and the CIC Universities share a mutual interest in making information available to the public; and

WHEREAS, CIC Universities wish to digitize portions of their collections in a manner consistent with copyright law to create a searchable database to facilitate use of their collections by scholars and the general public for education, research and related purposes; and

WHEREAS, CIC Universities and Google have determined that it would be most cost effective, and reduce the risk of damaging volumes in the CIC Universities' collections, to create digitized copies for the CIC University's fair use and digitized copies for Google's fair use as part of a single scanning project; and

WHEREAS, Google is willing to digitize works from the collections of CIC Universities for Google's fair use purposes and provide access to the digitized works to each CIC University as described herein.

NOW THEREFORE, in consideration of the mutual covenants set forth herein, Google, CIC, and each CIC University hereby agree as follows:

### DEFINITIONS

1.    **DEFINITIONS**.  Capitalized terms will have the meanings set forth below:

    1.1    "Available Content" means those portions of each CIC University's print collection that such CIC University wishes to make available to Google for Digitizing and that Google may wish to Digitize as from time to time identified by Google and the applicable CIC University.  The term "Available Content" also includes each CIC University's Digital Content.

    1.2    "Brand Features" means the trade names, trademarks, service marks, logos, domain names, and other distinctive brand features of each Party, respectively, as secured by such Party from time to time.

    1.3    "CIC" or "Committee on Institutional Cooperation" is a consortium of twelve (12) research universities that collaborate on a wide range of academic and administrative initiatives. The current members of the CIC are:  University of Chicago, University of Illinois, Indiana University, University of Iowa, University of Michigan, Michigan State University, University of Minnesota, Northwestern University, University of Wisconsin-Madison, The Ohio State University, Penn State University, and Purdue University. For the purposes of this Agreement, "CIC" is generally understood to refer to the thirteen (13)

GOOG05000002

research libraries (including the libraries affiliated with the University of Illinois at Urbana-Champaign and Chicago) affiliated with the CIC member institutions. These libraries have a long history of collaboration, and established processes for shared decision-making facilitated by the CIC Administrative Offices.

1.4    "CIC Administrative Offices" is the central CIC administrative staff operating under the administrative authority for the CIC vested in the Provosts of the member CIC Universities. CIC Administrative Offices are located at 1819 South Neil St, Suite D, Champaign, IL 61820. The fiscal agent for CIC is The Board of Trustees of the University of Illinois.

1.5    "Copyright Laws" means the U.S. Copyright Act, 17 U.S.C. §§ 101 et. seq., all other copyright laws, rules and regulations worldwide, and all international treaties creating or protecting copyrights, including the Berne Convention and the Universal Copyright Convention, as the same from time to time exist.

1.6    "Digitize" means to convert content from a tangible, analog form into a digital electronic representation of that content. "Digitization", "Digitizing" and "Digitized" shall have corresponding meanings.

1.7    "End User" means a person that accesses or uses the Google Services.

1.8    "Google Digital Copy" means a digital copy retained by Google of the Selected Content that is Digitized by Google.

1.9    "Google Services" means Google's products and services that are accessible through and otherwise provided by various computer and electronic technologies, networks (syndicated and otherwise) and systems, including without limitation, mobile wireless services and Internet-based services accessible through the Google Sites and any Google syndication partner sites.

1.10    "Google Site" means any web site located at a Google-owned domain, including all subdomains and directories thereof, and all successor sites thereto.

1.11    "Hosted Solution" shall have the meaning set forth in Section 4.6.

1.12    "In-Copyright Works" means those works of Digitized Selected Content that are in-copyright.

1.13    "Initial Term" shall have the meaning set forth in Section 8.1.

1.14    "Other Library" means any library (other than a CIC University library) with which Google has an agreement as of the Effective Date concerning Digitization by Google of books from that library.

1.15    "Public Domain Works" means those works of Digitized Selected Content that are in the public domain.

1.16    "University Digital Copy" shall have the meaning set forth in Section 4.7.

1.17    "University Digital Content" means content that a CIC University already has in its possession in digitized form.

1.18    "Project" means a project for digitizing certain Selected Content.

1.19    "Project Plan" means a written plan for implementing a Project. The Project Plan shall include the following: (a) timetable for Digitizing the Selected Content, (b) instructions by a CIC University regarding how the Selected Content is to be collected and returned by Google; (c) material handling processes for the Selected Content, (d) if required, the amount of time available to a CIC University for performing conservation efforts; (e) the amount of time available to Google from receipt of the Selected Content until it is due to be returned to a CIC University; and (f) a budget for the Project.

1.20    "Renewal Term" shall have the meaning set forth in Section 8.1.

1.21    "Selected Content" means the portion of the Available Content that Google desires to Digitize or incorporate into the Google Services, both collectively and its component parts, including any and all other works of authorship included therein.

GOOG05000003

1.22    "Source CIC University" means the CIC University where the Selected Content was sourced.

1.23    "Term" shall have the meaning set forth in Section 8.1.

## TERMS

2.    **DIGITIZATION OPERATIONS.**

2.1    Identifying the Available and Selected Content to be Digitized.  Google, the CIC Administrative Offices, and each CIC University shall collaborate to identify Available Content that Google may elect to Digitize.  The CIC Universities agree that they will collectively commit Available Content of not less than 10,000,000 volumes to the Digitization efforts under this Agreement. Included in the Available Content will be CIC library holdings that add new and unique content to Google Services, and "collections of distinction" from across the CIC libraries that will be recommended for Digitization in toto. As indicated in Section 12.1, Google reserves final discretion over which Available Content it will Digitize (Selected Content), but will collaborate with the CIC Administrative Offices in making these decisions. Google, the CIC Administrative Offices, and each CIC University shall cooperate in good faith and work diligently to develop a sequence and timetable for completing the Project Plan for Digitizing the Selected Content of the CIC Universities. Each Source CIC University will provide Google with metadata for each Selected Content to be Digitized in the format specified by Google prior to Google Digitizing any Selected Content. Also, each Source CIC University will provide Google with an identifier such as an OCLC call number for each text of the Available Content as soon as reasonably possible after the Effective Date and prior to the commencement of Digitization efforts under this Agreement of the Selected Content provided by such Source CIC University.

2.2    Collecting the Selected Content. Each CIC University shall be responsible for locating, pulling and moving the Selected Content to a designated location at the CIC University facility as well as re-shelving the Selected Content when the Digitization is complete.  Upon commencement of a Project, and consistent with general guidelines set forth by a CIC working group, each CIC University shall perform any conservation efforts that the CIC University determines are required for the associated Selected Content. On a rolling basis, as this conservation effort is completed, each CIC University shall provide the conserved Selected Content to Google for Digitizing.

2.3    Transporting and Storing the Selected Content.  Google will move the Selected Content from a designated location at the CIC University facility to a Digitization facility controlled by Google. Google will provide and be responsible for commercially reasonable transport methods and temporary storage areas appropriate for the Selected Content in accordance with Section 2.6.

2.4    Digitizing the Selected Content.  Google will be responsible for Digitizing the Selected Content. Subject to handling constraints or procedures specified in the Project Plan, Google shall in its sole discretion determine how best to Digitize the Selected Content, so long as the resulting digital files conform to a minimum specification established by Google in consultation with the CIC Administrative Offices, the CIC Universities, and the Other Libraries.  While the Selected Content is within Google's possession, Google shall use commercially reasonable efforts to minimize damage to the Selected Content, including handling the Selected Content in accordance with handling instructions set forth in the Project Plan, if any.

2.5    Return of the Selected Content.  Google shall return the Selected Content to the designated pick-up location at the Source CIC University and in the like manner in which it was collected after Google completes Digitizing the Selected Content. Google will provide and be responsible for commercially reasonable transport methods appropriate for the Selected Content in accordance with Sect. 2.6.

2.6    Insurance Coverage for Digitization Operations.  All risk of loss, damage or destruction of materials will lie with Google from the time that Google accepts possession of the materials until they are returned to the Source CIC University; provided that each CIC University agrees that Google's obligation will not exceed $1,000 for any given text and that Google's maximum liability for any damage or loss to

GOOG05000004

Selected Content in Google's custody resulting from a single incident or event will not exceed one million dollars ($1,000,000). Google will carry reasonably sufficient insurance with a reputable independent provider insuring against the risk of loss, damage, or destruction of materials entrusted to Google's custody, and will provide, upon request of a CIC University, a certificate of insurance evidencing such coverage. In general, Google will provide a transport method and temporary storage area that is reasonably clean, dry, cool, free from insects and other pests, protected from fire, and secure against theft and vandalism. However, unless the CIC Administrative Offices or a CIC University makes Google aware that specific materials require non-standard care, transport, storage and/or processing and Google decides to go forward with digitization of such items, Google shall have no responsibility to undertake special efforts to address unique or fragile conditions in its transport, storage or handling of individual items. Each CIC University will provide Google with a good faith estimate of the value of any Selected Content approved for removal from the CIC University's premises and will provide Google with an itemized list of any such materials.

3.   COSTS

3.1   Costs paid by each CIC University.   In addition to costs mutually agreed upon by the Parties, each CIC University shall be responsible for the following costs: (a) those related to locating, pulling and moving the Selected Content to a designated location at the Source CIC University facility as well as re-shelving the Selected Content when the Digitization is complete, (b) those related to existing CIC University employees and agents whose participation is contemplated by this Agreement, (c) network bandwidth and data storage required by CIC University to receive all of the University Digital Copy, (d) any conservation efforts that Source CIC University elects to undertake on the Selected Content prior to Digitizing, and (e) barcoding and associated data entry to barcode the Selected Content.

3.2   Costs borne by Google.   In addition to costs mutually agreed upon by the Parties, Google shall be responsible for the following costs: (a) those related to Google employees whose participation is contemplated by this Agreement, (b) hardware and software and other equipment or technology used to Digitize the Selected Content, (c) space required and other facilities used to Digitize the Selected Content, and (d) transportation of Selected Content from the Source CIC University facility where the Selected Content is normally kept to a Google designated facility and back to the Source CIC University facility where the Selected Content is normally kept, plus any incidental storage at a Google designated facility.

3.3   Budgets.   Notwithstanding the foregoing, the CIC Administrative Offices or any CIC University and Google may jointly develop a budget to advance coordinated planning for each University Project Plan, pursuant to which the Parties may allocate the cost of researching and identifying the Available Content and/or Selected Content, conducting conservation assessments, performing conservation work, and performing any required copyright research and clearances. Any such budget agreed to in writing by the parties will take precedence over the provisions of Sections 3.1 and 3.2 above.

4.   OWNERSHIP AND USE OF DIGITAL COPIES AND SERVICES

4.1   Copyright Status.

(a)   Compliance With Copyright Laws.   The Parties understand that the Selected Content may include some works that will be treated hereunder as Public Domain Works and some works that will be treated hereunder as In-Copyright Works. The Parties agree and intend to perform this Agreement in compliance with all applicable Copyright Laws and without infringing the intellectual property rights or any similar rights of any third party.

(b)   Determination of Copyright Status.   Each Party will be responsible for determining at its reasonable discretion how to categorize Selected Content under applicable Copyright Laws. Notwithstanding such determination, if any Party believes in good faith that any part of the Selected Content should be treated as an In-Copyright Work under any applicable Copyright Laws, and so notifies the other Parties in writing, then, within forty-eight (48) hours of another Party's receipt of such notice, such other Party will take appropriate steps to assure that it is

GOOGLE CONFIDENTIAL                     4

GOOG05000005

treating, or going forward will treat, such part of the Selected Content as an In-Copyright Work under such Copyright Laws.

(c)      "Opt-Out" Procedure.   Throughout the Term, Google will implement and maintain the availability of processes whereby the copyright holder can request Google not to Digitize specific In-Copyright Works included in the Available Content or the Selected Content or, if one or more of such In-Copyright Works has already been Digitized by Google, to cease the display or use of such In-Copyright Works made by Google under this Agreement. If Google determines that the person or entity making the request is the copyright holder or has apparent authority to act on behalf of the copyright holder, Google shall promptly comply with such request and promptly notify the CIC and each CIC University in writing of such request if the request requires a CIC University to take action to cease the display or use of the In-Copyright Works or to delete such In-Copyright Works from the University Digital Copy. Within forty-eight (48) hours of its receipt of such notice, the CIC and each CIC University shall (a)cease the display or use of the University Digital Copy of such In-Copyright Works and (b) delete any such In-Copyright Works if and to the extent that such works were previously provided as part of the University Digital Copy.

4.2     Ownership of Selected Content and Google Digital Copy.

(a)      Ownership of Available Content and Selected Content. No Party to this Agreement shall have or claim any rights, title or interest in or to the Available Content or the Selected Content (i.e., to the materials underlying the digitization process), except where such Party acquired or acquires such rights, title or interests prior to or independently of the performance of this Agreement.  Nothing set forth in this Agreement shall be deemed to transfer to any Party any ownership or intellectual property rights in or to any part of the Available Content or the Selected Content.

(b)      Ownership of Google Digital Copy. As among the Parties, Google shall own all rights, title, and interest in and to the Google Digital Copy, subject to the rights of the copyright holder and/or its licensees for particular In-Copyright Works made a part of the Google Digital Copy.

4.3     Google's Use of the Google Digital Copy.

(a)      Google Services. Subject to the restrictions set forth in this Agreement, Google may use the Google Digital Copy, in whole or in part at Google's sole discretion, as part of the Google Services.

(b)      Searching Free to the Public. To the extent and for so long as Google uses all or part of the Google Digital Copy in connection with the Google Services, it shall provide a service at no cost to End Users that (i) permits such End Users to search both the Public Domain and In-Copyright Works contained in such part of the Google Digital Copy using an index of the full text or content; (ii) displays search results for such Public Domain Works and In-Copyright Works as set forth in Sections 4.3(c) and (d) below; and (iii) serves and displays the full text or content of such Public Domain Works.

(c)      Use of Public Domain Works and Certain In-Copyright Works. To the extent portions of the Google Digital Copy are or become in the public domain or, if in copyright, to the extent Google has obtained the written permission of the copyright holder, Google shall have the right, in its sole discretion, among other things, to (i) index the full text or content of the Google Digital Copy, (ii) serve and display full-sized digital images corresponding to those portions, (iii) make available full text of content for printing and/or download, and (iv) make copies of such portions of the Google Digital Copy and provide, license, or sell such copies (including, without limitation, to its syndication partners).  To be clear, in the event that Google has received a written license or other written permission from the applicable copyright holder to use In-Copyright Works in the Google Digital Copy, Google may use those works in any manner permitted under the terms of such license or other permission.  Google shall be solely responsible for ensuring that its use of the Google Digital Copy is authorized by the relevant copyright holders or by applicable laws, including Copyright Laws.

GOOG05000006

(d)     Use of All Other Works.  For all other portions of the Google Digital Copy, Google shall limit its use of such portions to (i) indexing the full text or content of such portions, (ii) serving and displaying search results, and (iii) serving and displaying text or content contained in such portions; but, in each case, only if and to the extent such uses are permitted under applicable Copyright Laws.

4.4     Security and Privacy.  Google shall implement and maintain for so long as the Google Digital Copy remains in its possession or under its control commercially reasonable physical and technological measures (e.g., through use of the robots.txt protocol) to restrict unauthorized automated access to any portion of the Google Digital Copy that is in-copyright.  In addition, Google shall maintain on its website a privacy policy that governs the collection, use and disclosure of information that Google obtains from End Users.

4.5     Ownership and Control of Google Services.  As among the Parties, the Google Services and all content therein are, and at all times will remain, the exclusive property of Google or its partners; nothing in this Agreement implies any transfer to the CIC Administrative Offices or any CIC University of any ownership interest in the Google Services.  The CIC Administrative Offices and each CIC University acknowledge and agree that Google retains control of the Google Services, and that the design, layout, content, functions and features of the Google Services are at Google's discretion.  Notwithstanding anything to the contrary in this Agreement, Google is not required to make any or all of the Google Digital Copy available through the Google Services.

4.6     Hosted Solution.

(a)     Throughout the Term, Google will provide searchable access to the Google Digital Copy for the CIC Universities, their patrons, researchers and staff via a website hosted by Google (the "**Hosted Solution**").  To the extent portions of the Google Digital Copy are or become in the public domain or, if in copyright, to the extent Google has obtained the written permission of the copyright holder, Google will (i) serve and display to users of the Hosted Solution full-sized digital images corresponding to those portions, and (ii) make available to users of the Hosted Solution full text of content for download.  For all other portions of the Google Digital Copy, Google shall serve and display search results and text or content only to the extent permitted under applicable Copyright Laws.

(b)     The Hosted Solution will be provided at no charge to the CIC or the CIC Universities.

(c)     The design, layout, content, functions, features, reliability and performance of the Hosted Solutions will be determined by Google but substantially similar in quality and efficiency to that provided by Google to any Other Library.

(d)     During the Term, a CIC University may report problems with the Hosted Solution to Google's technical contact and the Parties will work to resolve such problems in a commercially reasonable time and manner.

4.7     University Digital Copy and Establishment of Escrow.

(a)     Definition of "University Digital Copy." Unless otherwise agreed by the Parties in writing, the term "**University Digital Copy**," as used in this Agreement, means a copy of the Selected Content Digitized by Google.  The University Digital Copy will consist of (a) a set of image and OCR files, (b) associated meta-information about the files such as which image files correspond to that Digitized work, and (c) the logical order of those image files.  Google will create the University Digital Copy as part of the Project.

(b)     Escrow Deposit.  As Google "successfully processes" the works contained in the Selected Content, Google will place the University Digital Copy of such Selected Content in escrow on a secure server maintained by Google at Google's cost and expense.  For purposes of this Section 4.7(b), Google will have "Successfully Processed" the works contained in the Selected Content when Google determines it has satisfactorily gone through all stages of Google's Digitization, post processing and quality assurance procedures. The portions of the University Digital Copy that are in escrow are hereinafter referred to as the "Escrow Deposit."

GOOG05000007

(c)     Release of Works Held in Escrow.  Google will make one copy of the works in the Escrow Deposit available for download by the CIC or Source CIC Universities as set forth in Sections 4.8 through 4.11 below.

(d)     Security.  For so long as Google maintains such escrow, Google shall implement and maintain commercially reasonable physical and technological measures  to protect the Escrow Deposit from unauthorized access, copying, use or disclosure.

(e)     Quality.  Google will provide the CIC Administrative Offices or a Source CIC University with the ability to sample the files for one hundred (100) Digitized works per quarter to assess scanning quality

4.8     Release of University Digital Copy of Public Domain Works.

(a)     Timing of Release.  In a timeframe mutually agreed by the Parties, but not to exceed six months from the date of scanning, Google agrees to make each Successfully Processed Public Domain Work contained in the Escrow Deposit available for downloading by the applicable Source CIC University.

(b)     Downloading Public Domain Works.  This release of the Public Domain Works from the Escrow Deposit shall allow for, at the discretion of the Source CIC University, transfer to either a) a secure server configured for such a purpose at the Source CIC University; or b) secure servers maintained and managed by a CIC Hosting Library (as defined in Section 4.13 below) on behalf of CIC Universities.

(c)     Public Domain Works Digitized as Part of Other Projects.  For readily defined public domain Selected Content held by one or several CIC Universities, but already digitized by Google from source libraries outside the CIC without any restrictions on distribution, Google at its discretion may digitize such works again using the copy from a CIC University or provide a digital copy drawn from another library beyond the CIC.

4.9     Works in Dispute and Works of Uncertain Copyright Status.

(a)     Works in Dispute.  Notwithstanding anything to the contrary herein, Google may withhold or delay release of any works not clearly in the public domain from the Escrow Deposit if Google's Digitization, use or release of such work is the subject of a dispute between Google and a third party.  In such event, Google must inform the CIC Administrative Offices or the Source CIC University, in writing, of the specific work(s) being withheld and the details of the dispute.  If such portions of the University Digital Copy have previously been released to any CIC University under this Agreement, then that CIC University agrees to delete or destroy any such portions of the University Digital Copy in its possession or under its control.

(b)     Works of Uncertain Copyright Status.  The terms of Section 4.1(b) notwithstanding, the Source CIC University shall have the right to claim access to any Successfully Processed work included in the Selected Content that is not subject to any dispute that it deems to be in the public domain, but which Google believes is not clearly in the public domain, if the Source CIC University (i) provides Google with acceptable evidence that the work is in the public domain and (ii) provides a written commitment to indemnify or otherwise assume full liability for any claims arising from such access to that work along with assurance acceptable to Google that any claim resulting from such access under such assumption of liability will be satisfied.

4.10    University Digital Copy of In-Copyright Works.

(a)     In General.  As noted in Section 4.1 above, Google may, in ways consistent with applicable Copyright Law, select and Digitize In-Copyright Works contained in the Selected Content.  Such works will be part of the University Digital Copy and, as such, the Digitized files will be maintained in escrow as set forth in Section 4.7 above and released to the Source CIC University as set forth in Section 4.11.  Until such time as these In-Copyright Works are released, Google agrees to provide CIC Universities with searchable access to such In-Copyright Works as described in Section 4.6 above.

GOOG05000008

(b)   List of In-Copyright Works.  Google will provide the CIC Administrative offices with a list of the In-Copyright Works contained in the Escrow Deposit.

4.11     Release of In-Copyright Works Held in Escrow.  Subject to the terms of this Section 4 Google agrees to enable download capability from the escrow to the CIC Administrative Offices or the applicable Source CIC University for one copy of the digital file for any In-Copyright Work(s) held in escrow in the event that any of the following release conditions (each, a "Release Condition") occurs:

(a) the In-Copyright Work becomes in the public domain;

(b) a Party has obtained permission through contractual agreements with copyright holders that includes the right to make a copy of the In-Copyright Work and to provide it to the CIC or Source CIC University;

(c) well established case law exists that In-Copyright Works can be copied and held by the CIC Administrative Offices and/or the Source CIC University without infringing on the rights of a copyright holder;

(d) if at any time Google is in material breach of its obligations under Section 4.3(b) or 4.6(a) and Google does not remedy any such failure within ninety (90) days after its occurrence (or, in the event such failure is caused by technical problems or causes similar to those described in Section 12.5, within such longer period as Google, working diligently, reasonably requires to remedy such problems); or

(e) the CIC Administrative Offices or the Source CIC University and Google agree in writing that the release of a particular In-Copyright Work or Works is legally supported and appropriate under the terms of this Agreement.

The CIC Administrative Offices or the Source CIC University may provide written notice to Google if it believes that a Release Condition has occurred, which notice will describe such Release Condition to Google. Google will enable the downloading of such In-Copyright Works so long as Google is reasonably satisfied that the Release Condition has occurred. Google may also enable the downloading of In-Copyright Works (in a manner and timeframe deemed reasonable by the Parties) if it elects to cease holding the In-Copyright Works in escrow. All In-Copyright Works provided under this Section 4.11 will be used only as allowed under Section 4.14.

4.12     Ownership of University Digital Copy.  As among the Parties, and subject to the restrictions in this Section 4 and the rights of the copyright holders and their licensees, each Source CIC University shall own all rights, title, and interests in and to the University Digital Copy of the Selected Content provided by such Source CIC University. Without limiting the foregoing, neither the CIC nor any CIC University shall display or otherwise use the University Digital Copy except as expressly permitted in this Agreement, or in subsequent written agreements with Google.

4.13     Contribution of University Digital Copy to a Central Depository.  Subject to the terms of this Section 4, each CIC University shall have the right to contribute all or portions of its Public Domain Works contained in the University Digital Copy to a joint depository or depositories of digital works hosted by one or more of the CIC University libraries (such libraries are referred to herein as the "Hosting Libraries"). Prior to the provision of Public Domain Works to any such Hosting Library, the CIC Universities participating in the joint depository and the Hosting Libraries shall have entered into a written agreement and shall have provided a copy of that agreement to Google, which agreement shall (a) contain limitations on the Hosting Libraries' use and distribution of the University Digital Copy that are at least as restrictive as the limitations placed on the CIC Universities' use and distribution of the University Digital Copy under this Agreement (including the restrictions set forth in Section 4.14 herein); (b) expressly name Google as a third party beneficiary of that agreement for the purpose of enforcing such restrictions; (c) provide a written commitment to indemnify or otherwise assume full liability for any claims arising from the Hosting Libraries' use and distribution of the University Digital Copy along with assurance acceptable to Google that any claim resulting from such use and distribution under such assumption of liability will be satisfied; and (d) require the Hosting Libraries to identify the works in the University Digital Copy, in a statement on the applicable web page or other access point, as "Digitized by Google" or in a substantially similar manner.

GOOGLE CONFIDENTIAL                          8

GOOG05000009

4.14    Use of University Digital Copy on the CIC University Website.

(a)    Each Source CIC University shall have the right to use the University Digital Copy of the Selected Content provided by such Source CIC University, in whole or in part, at the CIC University's sole discretion, subject to applicable Copyright Laws, as part of services offered on the CIC University's website to advance its academic purposes to support the instruction, research and scholarship of its campus community.

(b)    The CIC Universities may not charge or receive payment or other consideration for the use of the University Digital Copy without the express written consent of Google except that the CIC Universities may recover from its end users costs for print and copying services.

(c)    The CIC and each CIC University agrees that to the extent it makes any portion of the University Digital Copy publicly available, it will identify the works, in a statement on a web page or other access point to be mutually agreed to by the Parties, as "Digitized by Google" or in a substantially similar manner.

(d)    The CIC Universities shall implement technological measures (e.g., through use of the robots.txt protocol) to restrict automated access to any portion of the University Digital Copy or the portions of the CIC University website on which any portion of the University Digital Copy is available. The CIC Universities shall also take reasonable steps to prevent third parties from (i) downloading or otherwise obtaining any portion of its University Digital Copy for commercial purposes, (ii) redistributing any portions of the University Digital Copy, or (iii) automated and systematic downloading from its website image files from the University Digital Copy. Each CIC University shall develop methods and systems for ensuring that substantial portions of the University Digital Copy are not downloaded from the services offered on the CIC University's website or otherwise disseminated to the public at large. Each CIC University shall also implement security and handling procedures for the University Digital Copy which procedures shall be mutually agreed upon by the Parties. Except as expressly allowed herein, the CIC Administrative Offices and CIC Universities will not share, provide, license, or sell any portion of the University Digital Copy to any third party without the express written consent of Google.

4.15    Survival.    The Parties' obligations under this Section 4 shall survive the expiration or termination of this Agreement; except that (a) Section 4.1(c) will terminate at the expiration or termination of this Agreement, (b) Section 4.6 will survive for as long as Google continues to hold the Escrow Deposit, and (c) Google's obligations related to the escrow will survive until the Escrow Deposit is released pursuant to a Release Condition or otherwise as set forth in Section 4.11.


5.    ACCESS, AUTHORIZATION AND SUPPORT

5.1    Access.    Google shall have the right to access Selected Content during the Source CIC University's business/staff hours as required to exercise its rights and perform its obligations hereunder. If requested by Google, the Source CIC University shall make commercially reasonable efforts to provide Google with access to Selected Content outside of the Source CIC University's business hours provided that Google notifies the Source CIC University at least two (2) days in advance of its intent to access such materials.

5.2    Authorization.    The CIC will designate a single CIC University program manager who will be subject to Google's reasonable approval.    The CIC University program manager, working in conjunction with the CIC Administrative Offices, is responsible for the Selected Content involved in any Project Plan and shall have authority to agree with Google and CIC Project Management Staff on the time frames and procedures (e.g., collection, conservation, and handling) associated with that Selected Content.    If Google in good faith believes that the time frames and procedures requested by the CIC University program manager and/or the CIC are unreasonable, Google shall escalate the matter to CIC University Project Lead (as described below); in which case Google and the CIC University Project Lead shall confer to resolve the issue. The CIC University Project Lead will also be designated by the CIC and will be subject to Google's reasonable approval.    The CIC University Project Lead will be a single individual who will serve as the single point of contact for all communications relating to the Project.    The

GOOG05000010

CIC Project Lead will be responsible for distributing information to the appropriate individuals or groups at the CIC Universities and for communicating information back to Google.   The CIC University Project Lead will also be responsible for identifying an appropriate alternative point of contact for instances when he or she is not available or is not the appropriate contact and the alternative contact will be responsible for distributing the information to the CIC Universities.

5.3    Support.  The CIC Administrative Offices shall also appoint one person to serve as the administrative contact for Google, should administrative questions or issues arise during the Term of this Agreement.  This administrative contact shall be available during regular business hours (9:00 a.m. to 5:00 p.m., Monday through Friday) for the CIC Administrative Offices at a telephone number and e-mail address to be provided by the CIC Administrative Offices.  Each CIC University shall also appoint one person to serve as the technical contact for Google for obtaining and regulating the use of the University Digital Copy.  This technical contact shall be available during regular business hours for that CIC University at a telephone number and e-mail address to be provided by the CIC University.  Upon execution of this Agreement, Google and each CIC University shall identify these individuals in writing, which may be email.

6.    **CONFIDENTIALITY**

6.1    Confidentiality.  Disclosure of confidential and/or proprietary information disclosed hereunder, including the existence and content of the Agreement and any information provided pursuant to the Agreement, shall be governed by the confidentiality provisions of mutual nondisclosure agreements, which have been executed by the Parties prior to  the execution of this Agreement (the "NDA").   The confidentiality provisions of the NDA are hereby incorporated by reference into this Agreement.  In accordance with the terms of the NDA, by execution of this Agreement, each Party provides to the other Parties advance written approval for release of the executed Agreement as a public document in a timeframe and manner to be mutually agreed to by the Parties.

6.2    PR.  No Party will issue any public announcement regarding the existence or content of this Agreement without the other Party's prior written approval.  Notwithstanding the foregoing, subject to the terms of Section 7 below, Google may include CIC Brand Features and/or a CIC University's Brand Features in presentations, marketing materials, and customer lists during the Term so long as Google first furnishes the CIC and/or the CIC University with specific examples of such presentations, marketing materials, and customer lists and obtains the CIC or the CIC University's written approval, which approval may be withheld at the CIC's or such CIC University's sole discretion, and provided Google uses the Brand Features only in a manner that is substantially similar to the reviewed and approved uses. Upon request by the CIC Administrative Offices or a CIC University, Google will furnish a sample of such usage. Google shall not use the CIC or CIC Universities' Brand Features in a manner that misrepresents the relationship among the Parties or implies that the CIC or any CIC University endorses Google's products or services.

7.    **BRAND FEATURES**

7.1    Ownership.  Each Party shall own all right, title and interest relating to its Brand Features.  Some, but not all examples of Google Brand Features are located at: http://www.google.com/permissions/trademarks.html (or such other URLs Google may provide from time to time).  Except to the limited extent expressly provided in this Agreement, neither Party grants, and the other Party shall not acquire, any right, title or interest (including, without limitation, any implied license) in or to any Brand Features of the first Party; and all rights not expressly granted herein are deemed withheld. All use by Google of CIC or CIC University Brand Features (including any goodwill associated therewith) shall inure to the benefit of the CIC University and all use by a CIC University or CIC of Google Brand Features (including any goodwill associated therewith) shall inure to the benefit of Google.  No Party shall challenge or assist others to challenge the Brand Features of the other Party (except to protect such Party's rights with respect to its own Brand Features) or the registration thereof by the other Party, nor shall either Party attempt to register any Brand Features or domain names that are confusingly similar to those of the other Party.  Each Party shall display symbols and notices clearly and sufficiently indicating the trademark status and ownership of the other Parties' Brand Features.  No party shall modify

GOOG05000011

or alter another Party's Brand Features or use a Brand Feature of another Party in combination with other trademarks or create a unitary composite trademark involving another Party's Brand Features without the prior written consent of the other Party, which consent may be withheld in such other Party's sole and absolute discretion.

7.2    License to CIC University Brand Features.  Subject to the terms and conditions of this Agreement, Google, each CIC University, and CIC grants to the other Parties a limited, nonexclusive, personal and nonsublicensable, royalty-free license during the Term to display those of its Brand Features expressly authorized for use in this Agreement, solely for the purposes expressly set forth herein.  Notwithstanding anything to the contrary, any Party may revoke the license granted herein to use that party's Brand Features upon providing the other Parties with written notice thereof and a reasonable period of time to cease such usage.

## 8.    TERM AND TERMINATION

8.1    Term.  This Agreement is effective as of the Effective Date and continues in full force and effect for a period of six (6) years, unless earlier terminated as provided herein (the "**Initial Term**").  Upon the expiration of the Initial Term, this Agreement shall automatically renew for additional one year terms (each a "**Renewal Term**") unless either Party notifies the other Party to the contrary at least thirty (30) days before the end of either the Initial Term or a Renewal Term.  The "**Term**" of this Agreement shall comprise the Initial Term and any Renewal Terms.

8.2    Termination.  Any Party may suspend performance and/or terminate this Agreement: (i) if another Party materially breaches any material term or condition of this Agreement and fails to cure such breach within thirty (30) days after receiving written notice thereof; or (ii) if another Party becomes insolvent or makes any assignment for the benefit of creditors or similar transfer evidencing insolvency, or suffers or permits the commencement of any form of insolvency or receivership proceeding, or has any petition under bankruptcy law filed against it, which petition is not dismissed within sixty (60) days of such filing, or has a trustee, administrator or receiver appointed for its business or assets or any part thereof; or

8.3    Effect of Expiration or Termination.  Within thirty (30) days after expiration or termination of this Agreement for any reason, each Party shall return to the other Party (or, at that Party's request, destroy) any Confidential Information of that Party that is in its possession.  The following sections survive expiration or termination of this Agreement: 1, 4.15, 6, 7.1, 8, 9, 10, 11 and 12.

## 9.    WARRANTIES AND DISCLAIMER

9.1    Mutual Warranties.  Google, CIC, and each CIC University represent and warrant that (i) it has full power and authority to enter into this Agreement and to perform its obligations hereunder; and (ii) this Agreement constitutes its valid and binding obligation, enforceable against it in accordance with its terms.

9.2    Disclaimer.  THE WARRANTIES EXPLICITLY SET FORTH ABOVE ARE THE ONLY WARRANTIES PROVIDED HEREIN AND ARE IN LIEU OF ALL OTHER WARRANTIES BY THE PARTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, TITLE, OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SUBJECT MATTER OF THIS AGREEMENT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH PARTY SPECIFICALLY DISCLAIMS ANY WARRANTY REGARDING NON-INFRINGEMENT OF THIRD PARTY INTELLECTUAL PROPERTY.

## 10.    INDEMNIFICATION.

GOOG05000012

10.1    Definition of Use.  As used in this Section 10, the word "use" means copying, distributing, publicly displaying, publicly performing, creating derivative works, and all other use.

10.2    By Google.  Google shall, at Google's sole cost and expense, defend the CIC and the CIC Universities and their respective governing boards, officers, employees, and agents (collectively, the "CIC Indemnitee(s)") against any demand, claim, action, suit, or other proceeding arising out of or in connection with any claim asserted by any third party against a CIC Indemnitee alleging that any or all of the following constitute the infringement of the intellectual property rights of any third party: (a) the CIC or the CIC Universities' making the Available Content and the Selected Content available to Google for Digitization (only to the extent that such provision of Available Content is alleged to be direct or secondary copyright infringement); (b) Google's Digitization of Selected Content, (c) Google's use of the Google Digital Copy, including such use by a third party; provided, however, that the foregoing indemnification excludes any third-party claim to the extent it is based on or otherwise arises out of use of any portion of the University Digital Copy by the CIC Universities,  by any Hosting Library or any other third party after such portion has been downloaded from escrow by or at the direction of the CIC Source University. Google shall select counsel reasonably appropriate for such defense and shall pay such counsel's fees and disbursements and all costs and expenses of suit.  Universities or CIC may participate in the defense with counsel of their own choice, at their own cost and expense.

10.3    By Each CIC University. Consistent with and subject to the requirements and limitations of the laws of the state under which it is organized, each CIC University (the "CIC Indemnitor") shall defend Google and its directors, officers, employees, and agents (collectively, the "Google Indemnitee(s)") against any demand, claim, action, suit, or other proceeding to the extent arising out of or in connection with any claim asserted by any third party against a Google Indemnitee alleging that any or all of the following constitutes the infringement of the intellectual property rights of any third party:  (a) such CIC Indemnitor's use of any portion of the University Digital Copy after such portion has been downloaded from the escrow described in Section 4.7, and/or (b) use by any third party (including any Hosting Library) of the University Digital Copy of the Selected Content provided by such CIC University after such portion of the University Digital Copy has been downloaded from the escrow described in Section 4.7.  To be clear, the foregoing indemnification excludes any third party claim that relates to the escrow described in Section 4.7 above or the Hosting Solution described in Section 4.6. If a third party claim covered by the indemnification set forth in this 10.3 is asserted, each CIC Indemnitor agrees to use best efforts to seek appropriate approvals or exemptions under applicable state law to provide the indemnification to the Google Indemnitee(s). Each CIC Indemnitor further agrees that, to the extent it is entitled to assert claims of  immunity under applicable federal or state law in connection with its use of the University Digital Copy, such claims will not be asserted to vitiate its indemnity obligations with regard to Google's liabilities to third parties arising from such use. The CIC Indemnitor shall select counsel reasonably appropriate for such defense and shall pay such counsel's fees and disbursements and all costs and expenses of suit.  Google may participate in the defense with counsel of its own choice, at its own cost and expense.

10.4    General.  Notwithstanding anything to the contrary set forth in this Agreement, the indemnifying party's obligations under Sections 10.1 and 10.2 shall be limited to (a) payment by the indemnifying party ("Indemnitor") of all damages, judgments, awards, fines, penalties, costs and expenses (including attorneys' fees and costs of suit) finally awarded for such claim, or (b) amounts paid in settlement of such claim, provided such amounts were approved in advance in writing by the Indemnitor, which approval shall not be unreasonably withheld. The foregoing obligations shall exist only if the party seeking indemnification:  (i) promptly notifies the Indemnitor of such claim, (ii) provides the Indemnitor with reasonable  information, assistance and cooperation in defending the lawsuit or proceeding, at the Indemnitor's expense, and (iii) gives the Indemnitor full control and sole authority over the defense and settlement of such claim. The Indemnitee may join in defense with counsel of its choice at its own cost and expense.  The Indemnitor shall only reimburse the Indemnitee for expenses incurred by the Indemnitee with the Indemnitor's prior written approval.

11.    LIMITATION OF LIABILITY

GOOGLE CONFIDENTIAL                  12

GOOG05000013

IN NO EVENT WILL ANY PARTY OR ITS REGENTS, TRUSTEES, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS BE LIABLE TO ANY OTHER PARTY NOR TO ANY THIRD PARTY CLAIMING THROUGH SUCH OTHER PARTY FOR ANY FORM OF INDIRECT, SPECIAL, INCIDENTAL, EXEMPLARY, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST REVENUES AND LOST PROFITS, ARISING OUT OF OR IN CONNECTION WITH THE PERFORMANCE OR SUBJECT MATTER OF THIS AGREEMENT.

IN NO EVENT SHALL ANY PARTY'S COMBINED AGGREGATE LIABILITY HEREUNDER FOR ANY CAUSE WHATSOEVER ARISING OUT OF OR IN CONNECTION WITH THE PERFORMANCE OR SUBJECT MATTER OF THIS AGREEMENT EXCEED ONE MILLION DOLLARS ($1,000,000.00).

THE FOREGOING LIMITATIONS OF LIABILITY SHALL APPLY TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, WHETHER THE ALLEGED LIABILITY IS BASED ON CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY OR ANY OTHER BASIS, EVEN IF AN AUTHORIZED REPRESENTATIVE OF A PARTY HAS BEEN ADVISED OF OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES, AND WITHOUT REGARD TO THE SUCCESS OR EFFECTIVENESS OF OTHER REMEDIES.

The Parties agree that (i) the mutual agreements made in this Section 11 reflect a reasonable allocation of risk and (ii) that the Parties would not enter into the Agreement without these limitations on liability.

The foregoing limitations, however, are not applicable to any damages arising from a breach of Section 6 (Confidentiality), any monetary obligations arising out of the indemnification obligations in Section 10, indemnification, including, but not limited to, indemnification for allegations of copyright infringement, or to any damages related to actions for injury to or death of persons.

## 12.   GENERAL PROVISIONS

12.1   No Obligation.   Notwithstanding the foregoing, Google shall have no obligation to Digitize any portion of the Available Content nor to use any portion of the Google Digital Copy as part of the Google Services. However, Google's decision to cease Digitization activities under this Agreement shall not be taken without prior consultation with the CIC enabling the CIC Universities to minimize investments in staff required under this Agreement. Likewise, notwithstanding anything in this Agreement to the contrary, no CIC University shall be obligated to participate in the Digitization program described in this Agreement with respect to any or all of the Available Content. However, a CIC University's decision not to participate in the Digitization program shall not be made without prior consultation with the CIC. The CIC will then inform Google of the decision of the CIC University as soon as possible to enable Google to minimize investments in operations required to perform the Digitization. Furthermore, notwithstanding anything in this Agreement to the contrary, if Google determines, at its sole discretion, not to Digitize some or all Selected Content in connection with one or more specific Projects, whether due to cost issues, conservation concerns or otherwise, Google shall have no obligation to the CIC or Universities with respect to digitizing or delivering the University Digital Copy with respect to such Selected Content.

12.2   Assignment.   No Party may assign any of its rights or delegate any of its duties under this Agreement without the prior written consent of the other Parties, which shall not unreasonably be withheld, except that either Party may assign its rights and delegate its duties under this Agreement upon written notice to the other Parties to a division or an affiliate thereof (that is not a competitor of the non-assigning Party), provided such division or affiliate agrees to be bound by all of the terms hereof; and provided further that Google may assign this Agreement without consent to a successor-in-interest in connection with a merger or the sale of all or substantially all of its assets. Any attempted assignment, delegation or transfer in derogation hereof shall be null and void. This Agreement shall be binding upon the successors and permitted assigns of both parties.

12.3   Notices.   Unless provided for to the contrary in this Agreement, any and all notices or other communications or deliveries required or permitted to be made under this Agreement shall be sent (a) if to the CIC, to the CIC Administrative Offices at the address identified above (b) if to a CIC University at the address identified on the signature sheet, and (c) if to Google to such address as provided at www.google.com/corporate/address.html or as otherwise provided in writing for such notice purposes. A second copy of every notice to Google shall be sent to the same address, ("Attn: Legal Dept." Notice

GOOG05000014

shall be deemed received (i) upon receipt when delivered personally, (ii) upon written verification of receipt from overnight courier, (iii) upon verification of receipt of registered or certified mail or (iv) upon verification of receipt via facsimile, provided that such notice is also sent simultaneously via first class mail. Contact information shall be updated in writing as necessary to ensure that all Parties have current information regarding all such contacts.

12.4 Independent Contractors. Google, CIC and the CIC Universities are and shall remain independent contractors, and nothing herein shall be deemed to create an agency, partnership, or joint venture among them. This Agreement does not affect any right that either Party would have had, or shall have, independent of the Agreement under applicable law.

12.5 Force Majeure. No Party shall be liable for failing or delaying performance of its obligations resulting from any condition beyond its reasonable control, including but not limited to, governmental action, acts of terrorism, earthquake, fire, flood or other acts of God, labor conditions, power failures, and Internet disturbances.

12.6 General. If any provision of this Agreement shall be adjudged by any court of competent jurisdiction to be unenforceable or invalid, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and remain enforceable between the parties. The failure of any Party to act in the event of a breach of this Agreement by another shall not be deemed a waiver of such breach or a waiver of future breaches. No provision of this Agreement is intended to confer any rights, benefits, remedies, obligations, or liabilities hereunder upon any person or entity other than the Parties and their respective successors and assigns. The section and paragraph headings used in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement. This Agreement sets forth the entire understanding and agreement between the Parties and may be amended only in a writing signed by both parties. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

12.7 Governing Law. This Agreement shall be governed by Federal law without giving effect to applicable conflict of laws provisions. In the event of any dispute or litigation arising out of or relating to this Agreement, Parties agree that they shall attempt to resolve such dispute in good faith. If such dispute cannot be resolved within thirty days of being raised, the dispute shall be elevated to the highest level at the contending Parties. If the dispute still cannot be resolved within an additional thirty days, the aggrieved Party or Parties may file a lawsuit in the state or federal courts with jurisdiction to hear such matters. Notwithstanding the foregoing, a Party shall not be precluded from applying at any time to a court of competent jurisdiction for a temporary restraining order, a preliminary injunction or other equitable relief to preserve the status quo, prevent the disclosure or infringement of its Confidential Information or any other intellectual property, or prevent other irreparable harm pending the resolution of the dispute.

12.8 Pre-Existing Agreements with Certain Universities Not Superseded. Google has previously entered into digitization agreements with the University of Michigan and the University of Wisconsin, both members of the CIC. The terms and conditions of those agreements are not superseded by this Agreement. Rather, in the case of those CIC Universities, this Agreement applies only to the extent necessary to allow them to participate in the CIC project contemplated herein.

*[Rest of page left intentionally blank.]*

GOOG05000015

IN WITNESS WHEREOF, this Agreement has been executed by Google by persons duly authorized as of the "Effective Date", which shall be the date the Agreement is signed by Google below.   Google's signatory to this Agreement represents and warrants that he or she has the power and authority to accept and bind Google to the terms of this Agreement.

Google Inc.

By: ................................

Print Name:     **DAVID EUN**
                Vice President, Content Partnerships
                Google, Inc.

Title:

Date:           **2007.06.04 15:46:00 -07'00'**

The Board of Trustees of the University of Illinois

on Behalf of

The Committee on Institutional Cooperation

By: _____

Title: Comptroller

Attest: _____ 6-4-07
        Secretary

Approved: _____
          CIC Director

Date _____ 

Form Approved
Univ. Counsel



GOOG05000016

IN WITNESS WHEREOF, CIC University agrees to the terms of the Agreement attached hereto and CIC University's signatory to this Agreement represents and warrants that he or she has the power and authority to accept and bind CIC University to the terms of this Agreement.

CIC University:  Purdue University

By: _____

Print Name: Morgan R. Olson

Title: Executive Vice President and Treasurer

Date: May 24, 2007

Notice Address:

Office of the Executive Vice President and Treasurer

610 Purdue Mall, Hovde Hall, Room 230

West Lafayette, IN  47907-2040

GOOG05000017

IN WITNESS WHEREOF, CIC University agrees to the terms of the Agreement attached hereto and CIC University's signatory to this Agreement represents and warrants that he or she has the power and authority to accept and bind CIC University to the terms of this Agreement.

CIC University:

By: _____

Print Name: GARY C. SCHULTZ
SR. VICE PRESIDENT FOR
FINANCE & BUSINESS/
Title: TREASURER
PENN STATE UNIVERSITY

Date: 4/25/07

GOOGLE CONFIDENTIAL

16

GOOG05000018

IN WITNESS WHEREOF, CIC University agrees to the terms of the Agreement attached hereto and CIC University's signatory to this Agreement represents and warrants that he or she has the power and authority to accept and bind CIC University to the terms of this Agreement.

CIC University: *Ohio State U.*

By: _____

Print Name: WILLIAM J SISCONTI

Title: SR VP FOR BUSINESS & FINANCE

Date: 6/1/07

GOOG05000019

IN WITNESS WHEREOF, CIC University agrees to the terms of the Agreement attached hereto and CIC University's signatory to this Agreement represents and warrants that he or she has the power and authority to accept and bind CIC University to the terms of this Agreement.

CIC University:

By: _____

Print Name: LAWRENCE B. DUMAS

Title: PROVOST, NORTHWESTERN UNIVERSITY

Date: 04/06/2007

GOOG05000020

IN WITNESS WHEREOF, CIC University agrees to the terms of the Agreement attached hereto and CIC University's signatory to this Agreement represents and warrants that he or she has the power and authority to accept and bind CIC University to the terms of this Agreement.

CIC University:

By: _E. Thomas Sullivan   Provost (University) personuchu_

Print Name: _E. Thomas Sullivan_

Title: _Provost_

Date: _5-31-07_

GOOGLE CONFIDENTIAL

16

GOOG05000021

IN WITNESS WHEREOF, CIC University agrees to the terms of the Agreement attached hereto and CIC University's signatory to this Agreement represents and warrants that he or she has the power and authority to accept and bind CIC University to the terms of this Agreement.

CIC University: MICHIGAN STATE UNIVERSITY

By: _____

Print Name: Kim A. Wilcox

Title: Provost

Date: 5/11/07

By: _____

Print Name: Fred L. Poston

Title: Vice President for Finance and Operations

Date: 5-15-07

GOOG05000022

IN WITNESS WHEREOF, CIC University agrees to the terms of the Agreement attached hereto and CIC University's signatory to this Agreement represents and warrants that he or she has the power and authority to accept and bind CIC University to the terms of this Agreement.

CIC University: The University of Iowa

By: _____

Print Name: Gary C. Fethke

Title: Interim President

Date: April 12, 2007

GOOGLE CONFIDENTIAL                    16

IN WITNESS WHEREOF, CIC University agrees to the terms of the Agreement attached hereto and CIC University's signatory to this Agreement represents and warrants that he or she has the power and authority to accept and bind CIC University to the terms of this Agreement.

CIC University:

By: _____

Print Name: _____

Title: _____

Date: _____

GOOG05000024

IN WITNESS WHEREOF, CIC University agrees to the terms of the Agreement attached hereto and CIC University's signatory to this Agreement represents and warrants that he or she has the power and authority to accept and bind CIC University to the terms of this Agreement.

CIC University:  University of Illinois at Urbana-Champaign

By: _____

Print Name: Linda Katehi

Title: Provost and Vice Chancellor for Academic Affairs

Date: April 19, 2007

GOOGLE CONFIDENTIAL                    16

GOOG05000025

IN WITNESS WHEREOF, CIC University agrees to the terms of the Agreement attached hereto and CIC University's signatory to this Agreement represents and warrants that he or she has the power and authority to accept and bind CIC University to the terms of this Agreement.

CIC University:  Board of Trustees of the
University of Illinois on behalf of the
University of Illinois at Chicago

By: _Walter K. Knorr_

Print Name: Walter K. Knorr

Title: Comptroller

Date:

Attest: _Michele M. Thompson_

Print Name:  Michele M. Thompson

Title:  Secretary of the Board of Trustees

GOOG05000026

IN WITNESS WHEREOF, CIC University agrees to the terms of the Agreement attached hereto and CIC University's signatory to this Agreement represents and warrants that he or she has the power and authority to accept and bind CIC University to the terms of this Agreement.

CIC University:   The University of Chicago

By: _____

Print Name:   Thomas F. Rosenbaum

Title:   Provost

Date:   May 29, 2007

GOOGLE CONFIDENTIAL                    16

GOOG05000027