DURIE TANGRI LLP
DARALYN J. DURIE (*Pro Hac Vice*)
ddurie@durietangri.com
JOSEPH C. GRATZ (*Pro Hac Vice*)
jgratz@durietangri.com
DAVID McGOWAN (*Pro Hac Vice*)
dmcgowan@durietangri.com
GENEVIEVE P. ROSLOFF (*Pro Hac Vice*)
grosloff@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:    415-362-6666
Facsimile:    415-236-6300

Attorneys for Defendant
Google Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE AUTHORS GUILD, INC., Associational Plaintiff, BETTY MILES, JOSEPH GOULDEN, and JIM BOUTON, on behalf of themselves and all other similarly situated, | |
| Plaintiffs, | Civil Action No. 05 CV 8136 (DC) |
| v. | |
| GOOGLE INC., | |
| Defendant. | |

**GOOGLE INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Google Inc. ("Google"), by its attorneys, and pursuant to Local Rule 56.1, respectfully submits the following Response to Plaintiffs' Statement of Material Facts. Facts designated "Undisputed" are facts Google has elected not to dispute for purposes of Plaintiffs' Motion for Partial Summary Judgment in this matter, and do not constitute admissions.

1.     Representative plaintiff Jim Bouton holds the United States copyright in BALL FOUR (registration number A173097).  *See* Copy of U.S. Copyright Registration No. A173097 for JIM BOUTON, BALL FOUR (Declaration of Joanne Zack in Support of Plaintiffs' Motion for Partial Summary Judgment (hereinafter "Zack SJ Decl.") Ex. 1).

**Response:**     Undisputed that Bouton is the legal or beneficial owner of the identified copyright.

2.     Representative plaintiff Betty Miles holds the United States copyright in THE TROUBLE WITH THIRTEEN (registration number TX0000338841).  *See* Copy of U.S. Copyright Registration No. TX0000338841 for BETTY MILES, THE TROUBLE WITH THIRTEEN (Zack SJ Decl. Ex. 2).

**Response:**     Undisputed that Miles is the legal or beneficial owner of the identified copyright.

3.     Representative plaintiff Joseph Goulden holds the United States copyright in THE SUPERLAWYERS: THE SMALL AND POWERFUL WORLD OF THE GREAT WASHINGTON LAW FIRMS (registration number A346254).  *See* Copy of U.S. Copyright Registration No. A346254 for JOSEPH GOULDEN, THE SUPERLAWYERS: THE SMALL AND POWERFUL WORLD OF THE GREAT WASHINGTON LAW FIRMS (Zack SJ Decl. Ex. 3).

**Response:**     Undisputed that Goulden is the legal or beneficial owner of the identified copyright.

4.      Each of the books identified in Nos. 1-3 above has been copied and displayed by Google in its Library Project without plaintiffs' permission.  *See* Print-outs from Google's website displaying search results in JIM BOUTON, BALL FOUR (Zack SJ Decl. Ex. 4); Print-outs from Google's website displaying search results for the term "pitch" in JIM BOUTON, BALL FOUR (Zack SJ Decl. Ex. 5); Print-outs from Google's  website displaying search results for the term "pitches" in JIM BOUTON, BALL FOUR (Zack SJ Decl. Ex. 6); Print-outs from Google's website displaying search results in BETTY MILES, THE TROUBLE WITH THIRTEEN (Zack SJ Decl. Ex. 7); Print-outs from Google's website displaying search results in JOSEPH GOULDEN, THE SUPERLAWYERS: THE SMALL AND POWERFUL WORLD OF THE GREAT WASHINGTON LAW FIRMS (Zack SJ Decl. Ex. 8); Defendant Google Inc.'s Responses and Objections to Plaintiffs First Set of Requests for Admission (hereinafter "Google Admissions") at 11 (Zack SJ Decl. Ex. 27).

**Response:**      Undisputed that each of the books identified in Nos. 1-3 above has been scanned by Google in its Library Project without plaintiffs' permission, and that the cited print-outs reflect the display of snippets from the identified books.

5.      Google had distributed approximately ▮▮▮▮▮ scanned books to the partnering libraries, as of March 26, 2012.  *See* Zack SJ Decl. Ex. 9 (excerpts from spreadsheet produced by Google to plaintiffs on March 26, 2012).

**Response:**      Undisputed that libraries chose to download approximately ▮▮▮▮▮ scanned books as of March, 26, 2012 using the GRIN system.  Disputed that the creation and maintenance of the GRIN system by Google constitutes distribution on the part of Google, since Google does not create or distribute the electronic copies that libraries make.  Decl. Stephane Jaskiewicz Supp. Def. Google Inc.'s Mot. Summ. J., ECF No. 1041 ("Jaskiewicz Decl.") ¶¶ 6-9.

6.    Digital copies of BALL FOUR and SUPERLAWYERS have been distributed to the

███████████████ library: BALL FOUR on July 20, 2010, and SUPERLAWYERS twice, on

July 29, 2009, and November 16, 2010.  *See id.*

**Response:**    Undisputed that the ███████████ chose to download BALL

FOUR and SUPERLAWYERS using the GRIN system.  Disputed that the creation and maintenance

of the GRIN system by Google constitutes distribution on the part of Google, since Google does

not create or distribute the electronic copies that libraries make.  Jaskiewicz Decl. ¶¶ 6-9.

7.    The Authors Guild, Inc. is the nation's largest organization of published authors.

Print-out from http://www.authorsguild.org/about/history.html (Zack SJ Decl. Ex. 10).

**Response:**    Undisputed.

8.    The Authors Guild advocates for and supports the copyright and contractual

interests of published writers.  *Id.*

**Response:**    Undisputed.

9.    Defendant Google Inc. ("Google") owns and operates the largest Internet search

engine in the world.  *See* Print-out from http://investor.google.com/corporate/faq.html ("Google

is now widely recognized as the world's  largest search engine.") (Zack SJ Decl. Ex. 11, p.1).

**Response:**    Undisputed.

10.    Each day, millions of people use Google's search engine free of charge, while

commercial and other entities pay to display ads to visitors to Google's websites and other

websites that contain Google ads.  *See* Google Dec. 14, 2004 press release, "Google Checks Out

Library Books," p.2 (Zack SJ Decl. Ex. 12).

**Response:**    Undisputed.

4

11.     For the year ended December 31, 2011, Google reported over $36.5 billion in "advertising revenues."  2011 Google Form 10-K, p.56 (Zack SJ Decl. Ex. 13).

**Response:**     Undisputed.

12.     For the year ended December 31, 2010, Google reported over $29 billion in revenue generated "primarily by delivering relevant, cost-effective online advertising."  *See* 2010 Google Form 10-K, p.3 (Zack SJ Decl. Ex. 14).

**Response:**     Undisputed.

13.     In October 2004, Google first announced its digital books program, calling it Google Print.  *See* GOOG000101103 (noting that Google Print was launched on October 6, 2004) (Zack SJ Decl. Ex. 15); *see also* Transcript of deposition of Daniel Clancy taken February 10, 2012 (hereinafter "Clancy Dep.") at 93-94 (Zack SJ Decl. Ex. 16).

**Response:**     Undisputed that Google announced a digital books program called "Google Print" involving the hosting and display of material provided by book publishers or other rightsholders in October 2004.  As outlined in the cited document, however, "Google Print" involved only the hosting and display of material provided by book publishers or other rightsholders, not the scanning of books from the collections of libraries.  *See* Zack SJ Decl. Ex. 15 at GOOG000101103 (discussing deals with publishers, not libraries).

14.     Google Print later became Google Books.  Clancy Dep. at 94 (Zack SJ Decl. Ex. 16).

**Response:**     Undisputed that Google Print, which involved the hosting and display of material provided by book publishers or other rightsholders, became the "Partner Program" portion of Google Books.  However, "Google Print" involved only the hosting and display of material provided by book publishers or other rightsholders, not the scanning of books from the

collections of libraries.  *See* Zack SJ Decl. Ex. 15 at GOOG000101103 (discussing deals with publishers, not libraries).

15.    Google's Partner Program together with Google's Library Project comprise the Google Books program.  *Id.*

**Response:**    Undisputed.

16.    Works in the Partner Program are displayed with permission of the rightsholder. Clancy Dep. at 215 (Zack SJ Decl. Ex. 16); Google Books Partner Program Standard Terms and Conditions (hereinafter "Terms and Conditions") 2-3 (Zack SJ Decl. Ex. 17).

**Response:**    Undisputed.

17.    Since 2004, the Partner Program has allowed publishers and other rightsholders to permit Google to display their works in exchange for a split of ad revenue.  GOOG000101103 (Zack SJ Decl. Ex. 15); Clancy Dep. at 93 (Zack SJ Decl. Ex. 16).

**Response:**    Undisputed that Google shared revenue from ads shown next to full pages of books with the publishers or other rightsholders who asked that Google host the books for them.  However, not all publishers chose to display ads in connection with their books, and Google has stopped displaying ads next to full pages of books in the Partner Program.  Decl. Scott Dougall Opp'n Plas.' Mot. Partial Summ. J. ("Dougall Opp'n Decl.") ¶¶ 5-8.

18.    The Partner Program is aimed at "help[ing] publishers sell books" and "help[ing] books become discovered," while "adding authoritative content" to Google's website. Transcript of the deposition of Thomas Turvey taken February 17, 2012 (hereinafter "Turvey Dep.") at 18-19 (Zack SJ Decl. Ex. 18).

**Response:**     Undisputed, except that the cited passage indicates that the purpose was "[a]dding authoritative content" to "Google's search results," not to "Google's website" in general.  Zack SJ Decl. Ex. 18 (Turvey Dep.) at 19:7-17.

19.     To participate in the program, rightsholders enter into a contract with Google and send a printed copy of their books to Google for scanning (or provide Google with an existing digital copy). Clancy Dep. at 215 (Zack SJ Decl. Ex. 16); Terms and Conditions 2-3 (Zack SJ Decl. Ex. 17).

**Response:**     Undisputed.

20.     Partners decide "how much of the book is browsable" on Google, "anywhere from a few sample pages to the whole book."  *See* Print-out from http://support.google.com/books/bin/answer.py?hl=en&answer=43729/ (Zack SJ Decl. Ex. 19).

**Response:**     Undisputed.

21.     Google agrees to share with its partners a portion of the revenue it earns from ads shown next to pages of books searched in the Partner Program.  Turvey Dep. at 31 (Zack SJ Decl. Ex. 18); Terms and Conditions 8 (Zack SJ Decl. Ex. 17).

**Response:**     Undisputed that Google shared revenue from ads shown next to full pages of books with the publishers or other rightsholders who asked that Google host the books for them.  However, not all publishers chose to display ads in connection with their books, and Google stopped displaying ads in connection with any books in 2011.  Dougall Opp'n Decl. ¶¶ 5-8.

22.     During 2004, Google entered into dozens of contracts with publishers covering tens of thousands of books.  GOOG000101103 (Zack SJ Decl. Ex. 15).

**Response:**     Undisputed.

23.     By 2004 year end, Google had received nearly ▮▮▮▮ books for the Partner

Program, even though Google's extensive outreach efforts focused almost exclusively on

publishers, with little or no attempt to sign up authors.  *Id.*; Turvey Dep. at 76-80 (Zack SJ Decl.

Ex. 18); Clancy Dep. at 93 (Zack SJ Decl. Ex. 16).

> **Response:**     Undisputed.

24.     As of early 2012, the Partner Program included approximately 2.5 million books,

by permission of approximately 45,000 rightsholders, with the number of partners continuing to

grow. Turvey Dep. at 32 [sic] (Zack SJ Decl. Ex. 18).

> **Response:**     Undisputed.

25.     Google publicly announced a new program in December 2004, stating that it had

entered into agreements with four university libraries (Harvard, Stanford, the University of

Michigan, and Oxford) and the New York Public Library to "digitally scan books from their

collections so that users worldwide can search them in Google."  Dec. 14, 2004 Google press

release, "Google Checks Out Library Books" (Zack SJ Decl. Ex. 12, p.l).

> **Response:**     Undisputed.

26.     Google refers to the endeavor identified above in No. 25 as its Library Project.

Clancy Dep. at 33-34 (Zack SJ Decl. Ex. 16); June 6, 2007 Google press release, "Committee on

Institutional Cooperation (CIC) Joins Google's Library Project" (Zack SJ Decl. Ex. 20).

> **Response:**     Undisputed.

27.     Since its December 2004 announcement, Google has entered into agreements with

additional libraries (such as the Library of Congress, University of Texas at Austin, University of

Virginia, University of Wisconsin-Madison, Columbia University, Cornell University, Princeton

University, University of California, and the Committee on Institutional Cooperation (a

consortium of twelve research universities)).  June 6, 2007 Google press release, "Committee  on

Institutional Cooperation (CIC) Joins Google's  Library Project" (Zack SJ Decl. Ex. 20); Zack SJ

Decl. Ex. 23 (compilation of agreements between Google and the various libraries, hereinafter

"Library Agreements").

> **Response:**    Undisputed.

28.    Google has also developed and patented scanning technology that allows library

books to be copied.  Clancy Dep. at 14, 211 (Zack SJ Decl. Ex. 16).

> **Response:**    Undisputed.

29.    Google has used this technology to copy the entirety of over twenty million

books.  *See id.* at 30; Declaration of Daniel Clancy in Support of Google Inc.'s Opposition to

Plaintiffs' Motion for Class Certification (hereinafter "Clancy Decl.") 4 (Zack SJ Decl. Ex. 21).

> **Response:**    Undisputed.

30.    In exchange for access to a library's print books, Google distributes digital copies

of the scanned books to the contributing library.  *See* Print-out from

http://support.google.com/books/bin/answer.py?hl=en&answer=43751 ("Each library will

receive a digital copy of every book we scan ... from their respective collections.") (Zack SJ

Decl. Ex. 22); Clancy Dep. at 44-45 (Zack SJ Decl. Ex. 16).

> **Response:**    Undisputed that a library can download a digital copy of each book

Google scanned from its collection using the GRIN system.  Disputed that the creation and

maintenance of the GRIN system by Google constitutes distribution on the part of Google, since

Google does not create or distribute the electronic copies that libraries make.  Jaskiewicz Decl.

¶¶ 6-9.

31.     To carry out its scanning *en masse,* Google set up scanning facilities █████████

██████████████████████████████████████, as well as in ███████ and ██████████.

Clancy Dep. at 180-81 (Zack SJ Decl. Ex. 16).

**Response:**     Undisputed.

32.     ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████.

**Response:**     Undisputed.

33.     ████████████████████████████████████████████

████████████████

**Response:**     Undisputed.

34.     Google engaged in "bulk scanning," with libraries providing "carts of books" for

Google to scan.  *Id.* at 15, 103.

**Response:**     Undisputed, except that Google also refrains from scanning books as to

which a rightsholder has requested that Google exclude the book from the program.  Clancy

Decl. ¶ 11.

35.     Google's scanning operations involved approximately ██████████ scanning

machines, and reached an annual budget of ██████████████ for the scanning alone.  *Id.* at 84-

85, 179.

**Response:**     Undisputed.

36.     Some libraries *(e.g.,* ████████████████████████████

████████) allowed Google to scan only public domain works, while others *(e.g.,* ██████████████

██████████████████████████████████████████████████████████)
allowed Google to scan in-copyright works as well.  *See generally* Library Agreements (Zack SJ

Decl. Ex. 23); Clancy Dep. at 19 ("████████████████████████████████████

███████████████████████████████").

      **Response:**    Undisputed.

    37.   ███████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

      **Response:**    Undisputed.

    38.   ███████████████████████████████████████

█████████████████████████████

      **Response:**    Undisputed that ████████████████████████

████████████████████████.  However, human operators do examine the

contents of books to determine whether the book should be placed in "snippet view."  Clancy

Decl. ¶ 11.

    39.   ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████.  *See* Transcript of the deposition of Kurt Groetsch

(hereinafter "Groetsch Dep.") at 27-31 (Zack SJ Decl. Ex. 24); Transcript of the deposition of

Stephane Jaskiewicz (hereinafter "Jaskiewicz Dep.") at 16-17 (Zack SJ Decl. Ex. 25); Clancy

Dep. at 182-87 (Zack SJ Decl. Ex. 16).

      **Response:**    Undisputed.

40.    Each book copied by Google as part of its Library Project was copied by Google in its entirety multiple times.  Jaskiewicz Dep. at 22-29 (Zack SJ Decl. Ex. 25); Defendant Google Inc.'s Supplemental Narrative Responses and Objections to Plaintiffs' Second Request for Production of Documents and Things (hereinafter "Supplemental  Narrative") at 5-6 (Zack SJ Decl. Ex. 26); Google Admissions at 8 (Zack SJ Decl. Ex. 27).

**Response:**    Undisputed that Google "creates and maintains, as necessary for its fair uses, more than one copy of the books it scans from library collections."  Google Admissions, Response No. 10 (Zack SJ Decl. Ex. 27).

41.    Google maintains digital copies of each book it copied as part of its Library Project on its servers and on back-up tapes.  Jaskiewicz Dep. at 22-29, 69 (Zack SJ Decl. Ex. 25).

**Response:**    Undisputed.

42.    In response to search inquiries by users of its search engine, Google searches the complete text of books copied in its Library Project.  *Id.* at 45-46; Supplemental Narrative at 8 (Zack SJ Decl. Ex. 26); Google Admissions at 11 (Zack SJ Decl. Ex. 27).

**Response:**    Undisputed, except that Google does not search the text of books scanned but later excluded by request of a rightsholder.  Clancy Decl. ¶ 11.

43.    Since 2005, pursuant to uniform rules of its own devising, Google has displayed verbatim expression from these books on the Internet in response to search requests by users of its search engine.  *See* Google Admissions at 10 (Zack SJ Decl. Ex. 27); Supplemental Narrative at 11-12 (Zack SJ Decl. Ex. 26).

**Response:**    Undisputed that, as stated in the cited documents, Google has displayed "snippets" from millions of books in response to queries entered by users, but has not displayed snippets from books which are not in "snippet view" or "full view."

44.     Google generally divides each page into eighths, each of which Google calls a snippet.  Supplemental Narrative at 11-12 (Zack SJ Decl. Ex. 26); Print-out from http://www.google.com/googlebooks/library.html (Zack SJ Decl. Ex. 28); *see also* Print-out from http://support.google.com/books/binlanswer.py?hl=en&answer=43729/ (Zack SJ Decl. Ex. 19).

**Response:**     Undisputed as to books in "snippet view."

45.     By performing multiple searches using different search terms (including multiple search terms suggested by Google), a single user can view far more than three snippets from a Library Project book.  *See* Print-outs from Google's website displaying search results in Jim Bouton, Ball Four (Zack SJ Decl. Ex. 4); Clancy Dep. at 43-45 (Zack SJ Decl. Ex. 16).

**Response:**     Undisputed that different searches sometimes return different snippets, subject to the security limitations set forth in Zack Decl. Ex. 26 (Supplemental Narrative) at 9-13.

46.     Zack SJ Decl. Ex. 4 demonstrates that Google displayed to one user- making a series of consecutive searches within Ball Four - about 37 different snippets, consisting of over **1900** words of verbatim expression.

**Response:**     Undisputed.

47.     Even minor variations in search terms will result in different displays of text. *Compare* snippet results for search term "pitch" in Ball Four (Zack SJ Decl. Ex. 5) *with* snippet results for search term "pitches" in Ball Four (Zack SJ Decl. Ex. 6); *see also* Clancy Dep. at 44 (Zack SJ Decl. Ex. 16) ("[F]or a given query, we might display up to three snippets, but then if you entered a different query, you might see different snippets.").

**Response:**      Undisputed that minor variations in search terms, as in the case of the cited search queries, will sometimes result in the display of different snippets, subject to the security limitations set forth in Zack Decl. Ex. 26 (Supplemental Narrative) at 9-13.

48.      Google shows its users snippets from all portions of the books displayed in its Library Project, except for the small proportion of each book that it "blacklists."  Supplemental Narrative at 11 (Zack SJ Decl. Ex. 26); Clancy Decl.10 (Zack SJ Decl. Ex. 21).

**Response:**      Undisputed that, in response to a search query from a user, if a book is in "snippet view," any portion of the book can be displayed if the user searches for text appearing in that portion, subject to the security limitations set forth in the cited documents, including "blacklisting" of portions of books so that they are never displayed in snippets.  *See* Zack Decl. Ex. 26 (Supplemental Narrative) at 9-13

49.      For those books in snippet view, Google blacklists 10% of the pages of books and one snippet per page.  *See* Supplemental Narrative at 11 (Zack SJ Decl. Ex. 26); Clancy Decl. 10 (Zack SJ Decl. Ex. 21).

**Response:**      Undisputed, except that Google sometimes blacklists more than 10% of the pages in a book, as noted in the above-cited Supplemental Narrative at 11.  *See also* Decl. Brad Hasegawa Supp. Def. Google Inc.'s Mot. Summ. J., ECF No. 1040, ¶ 4.

50.      For those books in snippet view, Google makes the vast majority of the text available for verbatim display to its users collectively.  *See* Supplemental Narrative at 6-7 (Zack SJ Decl. Ex. 26); *see also* Zack SJ Decl. Ex. 4.

**Response:**      Undisputed that the text in each non-blacklisted snippet of each book in "snippet view" could be displayed if a user entered a search query seeking text in that snippet, and that Google does not blacklist the "vast majority" of snippets.  Disputed to the extent this

paragraph is intended to mean that Google makes the "vast majority" of any book available to any user, an assertion which would be contradicted by the cited documents.  Supplemental Narrative at 6-13 (Zack SJ Decl. Ex. 26).

51.    Some of the books copied in the Library Project are placed by Google into metadata only view, where no text is displayed.  *See* Supplemental Narrative at 6-7 (Zack SJ Decl. Ex. 26).

**Response:**    Undisputed.

52.    In general, reference works ████████████████████████████████ ████████████████████████████████ ████████████████████████████ ████████████████████████, and works for which the rightsholder has instructed Google not to display the work are placed in metadata only view.  *Id;* "QA Training Manual," at GOOG05002440 (Zack SJ Decl. Ex. 29).

**Response:**    Undisputed.

53.    To date, in its Library Project, Google has digitally copied over ████████ in-copyright English language books (Clancy Decl. ¶ 4) (Zack SJ Decl. Ex. 21); *see also* Zack SJ Decl. Exs. 30-31 (spreadsheet and accompanying email from Google identifying a list of over ████████ English language books copied and that Google has determined not to be in the public domain); distributed complete digital copies of over ████████ of in-copyright books to libraries *(see* Zack SJ Decl. Ex. 9) (spreadsheet from Google identifying the scanned books which have been distributed to the partnering libraries, including certain books distributed more than once); and displayed verbatim expression as snippets from millions of in-copyright books

over the Internet in response to search requests from its users.  Google Admissions at 10 (Zack

SJ Decl. Ex. 27).

      <u>Response</u>:      Undisputed that "To date, in its Library Project, Google has digitally

copied over           in- copyright English language books" and "displayed verbatim

expression as snippets from millions of in-copyright books over the Internet in response to search

requests from its users[,]" as the paragraph states.  Undisputed that libraries have chosen to

download, using the GRIN system, digital copies of more than          books not known to

be in the public domain, each library able to download only books scanned from the collection of

that library.  Disputed that the creation and maintenance of the GRIN system by Google

constitutes distribution on the part of Google, since Google does not create or distribute the

electronic copies that libraries make.  Jaskiewicz Decl. ¶¶ 6-9.  Disputed that Exhibits 30-31 of

the Zack Declaration list books "that Google has determined not to be in the public domain."

Instead, as noted in Exhibit 31, list books "which are not known to be in the public domain[]"

and which Google conservatively treats as though they are not in the public domain, but which

may be revealed to be in the public domain through further investigation.

      54.      Google did not seek or obtain permission from copyright owners before it made

the uses described in No. 53 above.  Google Admissions at 12-14 (Zack SJ Decl. Ex. 27).

      **Response:**      Undisputed, except as to the disputes identified in connection with No. 53

above.

      55.      Google has not compensated copyright owners for its copying, distribution to

libraries, or display of verbatim expression from these books.  *Id.* at 13.

      **Response:**      Undisputed, assuming that "these books" refers to those referred to in No.

53 above, except as to the disputes identified in connection with No. 53 above.

56.     Google has admitted in its responses to Plaintiffs' Requests for Admissions that it digitally copies books in their entirety- including in-print and out-of-print books, fiction and nonfiction books, reference books, anthologies, educational books, textbooks, dissertations, monographs, journals, government publications, and other types of works; provides entire digital copies of books to libraries, and displays snippets from books in response to user requests, all without copyright owner permission.  *Id.* at 5-12; *see also* Supplemental Narrative at 5-9 (Zack SJ Decl. Ex. 26).

**Response:**     Undisputed.

57.     Pursuant to their cooperative agreements with Google, each library provides books to Google, Google scans the books, makes a digital file of the books for Google's use, and distributes digital copies of scanned books to the providing library.  Clancy Dep. at 44-45 (Zack SJ Decl. Ex. 16); Library Agreements (Zack SJ Decl. Ex. 23).

**Response:**     Undisputed that "[p]ursuant to their cooperative agreements with Google, each library provides books to Google, Google scans the books, [and] makes a digital file of the books for Google's use[.]"  Undisputed that the providing library can make its own copy from Google's digital files using the GRIN system.  Disputed that the creation and maintenance of the GRIN system by Google constitutes distribution on the part of Google, since Google does not create or distribute the electronic copies that libraries make.  Jaskiewicz Decl. ¶¶ 6-9.

58.     One of Google's earliest library agreements, its digitization agreement with Stanford University, summarizes their agreement as follows: ████████████████████
████████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

17

█████████████████████████████████████████████ *See* Digitization Agreement

with Leland Stanford Junior University, p.1 (Zack SJ Decl. Ex. 23 at GOOG05002264).

> **Response:**      Undisputed.

59.   ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ *See, e.g.,* Cooperative Agreement with

the University of California, p.1 (Zack SJ Decl. Ex. 23 at GOOG05000306).

> **Response:**      Undisputed.

60.     Google's agreements with each of the libraries have many of the same or similar

terms. *See* Library Agreements (Zack SJ Decl. Ex. 23).

> **Response:**      Undisputed.

61.   ███████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████

> **Response:**      Undisputed.

62.     Google executed the digitization by scanning the covers and every page of in-

copyright books, performing optical character recognition on the scanned images to obtain

machine-readable text, and then, through an "automated process compil[ing] a digital copy of the

book."  Supplemental Narrative at 5-6 (Zack SJ Decl. Ex. 26); *see also* Jaskiewicz Dep. 25-30

(Zack SJ Decl. Ex. 25).

> **Response:**      Undisputed.

63.     To facilitate the mutual interest in making information available to the public (*see* No. 59 above), Google will "digitize" mass quantities of books, with "digitize" defined as "to convert content from a tangible, analog form into a digital representation of that content." Cooperative Agreement with the University of Michigan, p.1 (Zack SJ Decl. Ex. 23 at 00000500355).

**Response**:     *Undisputed.*

64.

**Response**:

Disputed to the extent this paragraph suggests that the creation and maintenance of the GRIN system by Google constitutes distribution on the part of Google, since Google does not create or distribute the electronic copies that libraries make.  Jaskiewicz Decl. ¶¶ 6-9.

65.     Google itself explained that after the library requests a copy of a particular book that Google has scanned, Google provides its digital copy by placing the file of the book on a server that the requesting library can access to download the file over the Internet.  *See*

Supplemental Narrative at 8 (Zack SJ Decl. Ex. 26); *see also* Jaskiewicz Dep. at 65 (Zack SJ Decl. Ex. 25); Clancy Dep. at 217-19 (Zack SJ Decl. Ex. 16).

**Response:**   Undisputed that the automated GRIN system creates encrypted copies of books that libraries can download in response to requests made by libraries.  Disputed to the extent this paragraph suggests that the creation and maintenance of the GRIN system by Google constitutes distribution on the part of Google, since Google does not create or distribute the electronic copies that libraries make.  Jaskiewicz Decl. ¶¶ 6-9.

66.   The distribution of the digital copies to the libraries was an important component of the Library Project.  *See* Clancy Dep. at 44 (Zack SJ Decl. Ex. 16); Zack SJ Decl. Ex. 23.

**Response:**   Undisputed.

67.   Dan Clancy stated at his deposition, "it is part of the Library Project that- as I stated- that we provide a copy, the ability to get a copy, for our library partners of the books we scan, in addition to any other uses."  Clancy Dep. at 45 (Zack SJ Decl. Ex. 16).

**Response:**   Undisputed.

68.   Google also transfers ownership of the distributed copies to the libraries,



**Response:**   Disputed.  Google does not create or distribute the electronic copies that libraries make using the GRIN system.  Jaskiewicz Decl. ¶¶ 6-9.  Thus, the libraries own their copies from the time they are created.

69. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████

**Response:**   Undisputed.

70. ███████████████████████████████

███   *See, e.g.,* Cooperative Agreement with the University of Michigan, p.5 (Zack SJ Decl.

Ex. 23 at GOOG05000359) ("As between Google and U of M ... U of M shall own all rights,

title, and interest to the U of M Digital Copy."); ███████████████████

██████████████████████████████████████████

████████████████████████████

**Response:**   Disputed. █████████████████████████████

████████████████████████████████████████

Google does not create or distribute the electronic copies that libraries make using the GRIN

system.  Jaskiewicz Decl. ¶¶ 6-9.

71. ███████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████

**Response:**     Undisputed.

72.     For example, Google's agreement with the University of Michigan specifically allows for the use of Michigan's copies for "inclusion in Michigan's search services." Cooperative Agreement with the University of Michigan, p.1 (Zack SJ Decl. Ex. 23 at GOOG0500355); *see also* Clancy Dep. at 35 (Zack SJ Decl. Ex. 16) ("In addition, libraries receive a copy, and with that copy, they may use it for similar search and indexing or other nondisplay uses, various different research initiatives and, also, archiving it for posterity.")

**Response:**     Undisputed.

73.     The University of Michigan has included the books that Google copied for it in its own digital library, HathiTrust.  Transcript of the deposition of Paul Courant taken April 23, 2012 (hereinafter "Courant Dep.") at 15, 20-21 (Zack SJ Decl. Ex. 33).

**Response:**     Undisputed.

74.     Michigan's Dean of Libraries, Dr. Paul Courant, testified that "Google did scan works from the University of Michigan libraries, and Google- and we did indeed receive copies of those scans"; that the University of Michigan made backup copies of the files it received; and that it included those files, including of works that are in-copyright, in its HathiTrust database index, which is accessible to "essentially everyone in the United States with an Internet connection."  Courant Dep. at 15, 20-21, 43-45 (Zack SJ Decl. Ex. 33).

**Response:**     Undisputed, except to the extent that the quoted language is interpreted to mean that the Univeristy of Michigan made any content from any books in the HathiTrust database available to the general public, which the cited passage does not support.

75.     Google undertook the Library Project for commercial reasons.  GOOG05004756 (Zack SJ Decl. Ex. 34); GOOG000645741 (Zack SJ Decl. Ex. 35); Supplemental Narrative at 9 (Zack SJ Decl. Ex. 26); Clancy Dep. at 84-85, 117, 120, 141, 198-203 (Zack SJ Decl. Ex. 16)

**Response:**     Undisputed that Google undertook the Library Project in part for commercial reasons.  The cited documents do not support the proposition that Google undertook the Library Project entirely for commercial reasons.  Clancy Decl. ¶¶ 3-4.

76.     A Google internal presentation in 2003 states that ███████████████

██████████████████████████████████████████████████████

███████████████████████████████

**Response:**     Disputed. ███████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████

77.     ██████████████████████████████████████████████

██████████████████████████████████████████████

**Response:**     ██████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████

78.    Dan Clancy testified that, ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

**Response:**    Undisputed.

79.    Google monetizes its search product by running advertisements in response to search queries. *Id.* at 117.

**Response:**    Undisputed that advertisements appear on Google pages containing a list of search results.

80.    ████████████████████████████████████████████

████████████████████████████████████████████████

**Response:**    Undisputed.

81.    Clancy testified that during the six years he was chief engineer for Google Books, Google invested ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████

**Response:**    Undisputed.

82.    ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

**Response:**    Undisputed in that facts 83 and 84 below are Undisputed.

83.    As Clancy testified, ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

**Response:**    Undisputed.

84.    Clancy testified that ████████████████████████

█████████████████████████████████████████████

**Response:**    Undisputed.

85.    Google has stated: "Google admits that it has entered into agreements with certain libraries, pursuant to which those libraries have requested that Google scan books, including in-copyright works, provided to Google by the library, and Google has provided digital copies of millions of those books to the libraries...."  Google Admissions at 7 (Zack SJ Decl. Ex. 27).

**Response:**    Undisputed.

86.    Google also makes a number of non-display uses of Books it copies in its Library Project.  Supplemental Narrative at 9 (Zack SJ Decl. Ex. 26).

**Response:**    Undisputed.

87.    The non-display uses identified in No. 86 above have commercial benefits to Google.  *Id.*

**Response:**    Undisputed that some of the non-display uses Google makes of the books have some indirect commercial benefit to Google, in addition to their benefits to scholarship and the public interest.  Clancy Decl. ¶¶ 3-4, 15.

88.    Google makes available over ██████████ books on the Internet in snippet display.  *See* Zack SJ Decl. Exs. 30-31.

**Response:**    Undisputed that more than ██████████ books are in snippet view**.**

25

89.     An "index" of books' metadata already exists. Transcript of the deposition of
Gloriana St. Clair taken May 31, 2012 (hereinafter "St. Clair Dep.") at 46-48 (Zack SJ Decl. Ex.
36).

**Response:**     Undisputed that electronic card catalogs, which allow searching only by
metadata (rather than searching the text of the book), existed before Google Books was created**.**

90.     Libraries use what is known as MARC records to catalog books.  *Id.* at 48.

**Response:**     Undisputed.

91.      "MARC records are essentially the electronic version of a card catalog record,"
and contain the book's metadata, such as author, title, publishing information.  *Id.* at 46, 48.

**Response:**     Undisputed that MARC records contain the same information as a
traditional paper card catalog.

92.     To create MARC records, the book does not need to be scanned or copied.
Clancy Dep. at 25-26 (Zack SJ Decl. Ex. 16); Groetsch Dep. at 21-25 (Zack SJ Decl. Ex. 24).

**Response:**     Undisputed.

93.     The cataloging of metadata through MARC records is done by hand with the
cataloger reviewing the physical book and identifying enumerated fields of information.  *See*
Groetsch Dep. at 21-25 (Zack SJ Decl. Ex. 24).

**Response:**     Undisputed.

94.     The Copyright Clearance Center presently licenses "essentially printed content,
much of the same nature as the material scanned by Google."  *See* Report of Daniel Gervais ¶ 11
(Zack SJ Decl. Ex. 37).

**Response:**     Undisputed that the Copyright Clearance Center licenses uses of printed
content, albeit for different uses than the conduct at issue in this litigation.  *See* Decl. Joseph

Gratz Opp'n Plas.' Mot. Summ. J. ("Gratz Opp'n Decl.") Ex. 15 ("Gervais Dep. Tr.") 119:7-22;

169:14-176:2; 209:8-9, 11-12; 235:19-22.

95.     If Google's uses are found to be fair, this will legitimize widespread digital

copying without permission, thereby impeding the development of collective license for digital

uses of books and excerpts from books by search engines, libraries, and others.  *Id*. ¶¶ 17, 42.

**Response:**     This paragraph recites conclusions based on an incomplete hypothetical

involving parties other than Google.  To the extent this paragraph recites any material facts, they

are not supported by any competent evidence because Mr. Gervais has no basis for the

conclusions he recites in the cited paragraphs.  *See* Gervais Dep. Tr. 138:21-140:2; 192:14-

196:16; 207:1-7; 210:5-15; 214:16-25; 199:16-23; 217:21-218:24.  *See also id.* at 159:22-25;

164:7-17; 167:4-9; 167:25-168:5.

96.     Collective management of copyright provides important advantages in licensing

uses of copyrighted works, as it reduces transaction costs, benefitting authors and users.  *Id.* ¶ 19.

**Response:**     Undisputed.

97.     Collective management of copyright has existed for more than two centuries and

is indispensable for many types of copyright uses.  *Id.* ¶¶ 12, 15.

**Response:**     Undisputed.

98.     For example, in the United States, ASCAP, BMI and SESAC are well-known

organizations that license the use of music.  *See id.* ¶ 18.

**Response:**     Undisputed.

99.     The Copyright Clearance Center ("CCC") is another well-known collective

management organization ("CMO").  *Id.* ¶ 28.

**Response:**     Undisputed.

100.     If they wish to participate, authors or publishers register their works with the CCC, which offers per-use and annual repertory licenses. *Id.*

**Response:**     Undisputed.

101.     A business or academic institution can enter into an agreement with the CCC that permits it to, for instance, photocopy a periodical article or create an electronic coursepack. *Id.*

**Response:**     Undisputed.

102.     CMOs typically pay authors and other rightsholders based on actual usage of their works, *id.* ¶ 5, which can result in substantial revenue to rightsholders.

**Response:**     Undisputed.

103.     In its 2011 fiscal year, CCC reported revenues in excess of $238 million, with payments to rightsholders exceeding $171 million. *Id.* ¶ 28. The difference between the two numbers includes but is not all a service charge.  Due to the time period required to process usage data, the 2011 distributions were mostly of 2010 collections which were significantly lower than 2011 collections. *Id.* at 9 n.15.

**Response:**     Undisputed.

104.     Collective licensing markets have often developed in response to new technologies: "Often, after a new form of use has emerged collective management systems are established to license uses that have been found to be desirable but unauthorized." *Id.* ¶ 41.

**Response:**     Undisputed.

105.     A collective management system "would develop here if some or all of Google's uses are found not to be fair." *Id.* ¶ 17.

**Response:**     This paragraph recites a conclusion based on an incomplete hypothetical, not a fact.  To the extent this paragraph recites a fact, it is not supported by any competent

evidence because Mr. Gervais has no basis for the conclusion he recites in the cited paragraphs. *See* Gervais Dep. Tr. 138:21-140:2; 192:14-196:16; 207:1-7; 210:5-15; 214:16-25; 199:16-23; 217:21-218:24. *See also id.* at 159:22-25; 164:7-17; 167:4-9; 167:25-168:5.

106.    If Google's conduct is permitted as fair use and becomes widespread, such an outcome can be expected to thwart the development of collective management systems for the digital uses of books (and book excerpts) that would otherwise likely develop. *Id.* ¶ 42; *see also id.* ¶ 17.

**Response:**    This paragraph recites a conclusion based on an incomplete hypothetical, not a fact.  To the extent this paragraph recites a fact, it is not supported by any competent evidence because Mr. Gervais has no basis for the conclusion he recites in the cited paragraphs. *See* Gervais Dep. Tr. 138:21-140:2; 192:14-196:16; 207:1-7; 210:5-15; 214:16-25; 199:16-23; 217:21-218:24. *See also id.* at 159:22-25; 164:7-17; 167:4-9; 167:25-168:5.

107.    Google admits in its Form 10-K that its "security measures may be breached due to the actions of outside parties, employee error, malfeasance, or otherwise, and, as a result, an unauthorized party may obtain access to our data or our users' or customers' data.  Additionally outside parties may attempt to fraudulently induce employees, users, or customers to disclose sensitive information in order to gain access to our data or our users' or customers' data.  Any such breach or unauthorized access could result in significant legal and financial exposure, damage to our reputation, and a loss of confidence in the security of our products and services that could potentially have an adverse effect on our business.  Because the techniques used to obtain unauthorized access, disable or degrade service, or sabotage systems change frequently and often are not recognized until launched against a target, we may be unable to anticipate these

29

techniques or to implement adequate preventative measures."  Google 2011 Form 10-K, at 15 (Zack SJ Decl. Ex. 13).

      **Response:**     Undisputed.

     108.    Google ████████████████████████ does not in practice, monitor or control the security of the digital copies of books provided by it to libraries in its Library Project, and the security measures of libraries who receive digital copies of books from Google are subject to similar breaches.  Clancy Dep. at 195-202 (Zack SJ Decl. Ex. 16); Courant Dep. at 52-53 (Zack SJ Decl. Ex. 33); Transcript of the deposition of James Crawford taken April 10, 2012 (hereinafter "Crawford  Dep.") at 56 (Zack SJ Decl. Ex. 38); *see generally* Expert Report of Benjamin Edelman (hereinafter, "Edelman  Report") (Zack SJ Decl. Ex. 39).

      **Response:**     Undisputed that Google is not obligated to, and does not in practice, monitor or control libraries' security measures.  Disputed that libraries are subject to security breaches, for the reasons discussed with respect to paragraph 109 below.

     109.    Subsequent copying by the libraries of the digital files received by them from Google, *see* Courant Dep. at 22-27 (Zack SJ Decl. Ex. 33), risks further security breaches. Edelman Report ¶¶ 20-26 (Zack SJ Decl. Ex. 39).

      **Response:**     Disputed.  Mr. Edelman admits he has no knowledge of the security measures put in place by the libraries, and thus has no basis to opine regarding whether their activities create security risks.  *See* Edelman Report ¶ 21 (Zack SJ Decl. Ex. 39) ("I have not been informed of all the ways that libraries intend to use the book contents data they receive from Google, nor have I been informed how libraries intend to secure that data."); Gratz Opp'n Decl. Ex. 16 ("Edelman Dep. Tr.") 247:25-252:11.  *See also* Decl. Joseph C. Gratz Supp. Def.

Google Inc.'s Mot. Summ. J., ECF No. 1036 ("Gratz SJ Decl.") Ex. 1 ("Courant Dep. Tr.") 106:23-107:9.

110.    As the number of unlawful copies of an in copyright book increases, so does the risk of further infringement and/or piracy of the work. *Id.* ¶¶ 14-19.

**Response:**    This paragraph recites a conclusion based on an incomplete hypothetical, not a fact. To the extent this paragraph purports to recite a fact, it is not supported by any competent evidence because Mr. Edelman has no basis for the conclusions he recites in the cited paragraphs. *See* Edelman Dep. Tr. 237:12-240:25. *See also id.* at 244:6-20; 245:17-246:24; 246:25-247:24; 296:9-298:6; 290:15-292:22.

111.    The copyright holder's control over the distribution and publication of his or her work becomes increasingly threatened when multiple unauthorized digital copies are created, and even more so when they are placed on and/or distributed over the Internet. *Id.* ¶¶ 34, 36.

**Response:**    This paragraph recites a conclusion based on an incomplete hypothetical, not a fact. To the extent this paragraph recites a fact, it is not supported by any competent evidence because Mr. Edelman has no basis for the conclusion he recites in the cited paragraphs. *See* Edelman Dep. Tr. 280:6-20. *See also id.* at 244:6-20; 245:17-246:24; 246:25-247:24; 296:9-298:6; 290:15-292:22.

112.    If Google's bulk and indiscriminate copying is found to be "fair," other website operators, no matter how small, will also be given sanction to create online databases of books and other works. *Id.* ¶¶ 9, 13, 18.

**Response:**    This paragraph recites a legal conclusion, not a fact. To the extent this paragraph recites a fact, disputed; Mr. Edelman testified to the contrary. Edelman Dep. Tr. 193:20-196:1.

113.    These website operators may have insufficient security to prevent widespread piracy of such works.  *Id.* ¶¶ 18-19.

**Response:**    This paragraph recites conclusions based on an incomplete hypothetical involving parties other than Google.  To the extent this paragraph recites any material facts, they are not supported by any competent evidence because Mr. Edelman has no basis for the conclusions he recites in the cited paragraphs.  *See* Edelman Dep. Tr. 244:6-246:24; 246:25-247:24.  *See also id.* at 210:16-212:23; 212:24-217:23.

114.    In particular, less sophisticated operators have a reduced capability to design, install, and maintain systems to secure books, as well as a lesser ability to screen their internal staff to prevent data theft by rogue employees or to adapt their systems to prevent hacking by outsiders.  *Id.* ¶ 18.

**Response:**    This paragraph recites conclusions based on an incomplete hypothetical involving parties other than Google.  To the extent this paragraph recites any material facts, they are not supported by any competent evidence because Mr. Edelman has no basis for the conclusions he recites in the cited paragraph.  *See* Edelman Dep. Tr. 244:6-246:24.

115.    These concerns will only be amplified if "numerous companies and organizations scan books," because "attackers can focus their efforts on whichever installs the weakest security.  Similarly, attackers can take advantage of even a brief period when a single book provider is insecure...."  *Id.* ¶ 19.

**Response:**    This paragraph recites conclusions based on an incomplete hypothetical involving parties other than Google.  To the extent this paragraph recites any material facts, they are not supported by any competent evidence because Mr. Edelman has no basis for the conclusions he recites in the cited paragraph.  *See* Edelman Dep. Tr. 246:25-247:24.

32

116.    These are not merely hypothetical risks, but reveal a real danger to authors, as book piracy is already occurring.  *Id.* ¶¶ 11-12; *see also id.* ¶¶ 13-17 (discussing multiple ways in which books may be redistributed through piracy).

**Response:**    Undisputed that unauthorized copies of some books, taken from sources other than Google Books, are available on the Internet.  To the extent this paragraph recites any other facts, they are not supported by any competent evidence because Mr. Edelman has no basis for the conclusion he recites in the cited and referenced paragraphs of his report, as described in connection with the above paragraphs.  *See* Edelman Dep. Tr. 235:9-19; 236:4-7; 236:25-237:2; 241:19-242:18; 249:14-17.

117.    A security breach could have a "devastating impact" on the Class.  *Id.* ¶ 38; *see also id.* ¶ 36 (describing how information may remain widely available, even after measures are taken to correct the breach, as information cannot be "unpublished" once it becomes publicly available on the Internet).

**Response:**    This paragraph recites conclusion based on an incomplete hypothetical, not a fact.  To the extent this paragraph recites a fact, it is not supported by any competent evidence because Mr. Edelman has no basis for the conclusion he recites in the cited paragraphs. *See* Edelman Dep. Tr. 284:24-287:9.  *See also id.* at 244:6-20; 245:17-246:24; 246:25-247:24; 296:9-298:6; 290:15-292:22.

118.    If Google's unauthorized reproduction, distribution and display is found not to be fair, licenses will be required for such uses, and copyright owners can require in such licenses that financial responsibility for the risks of unauthorized uses of the copies be fairly allocated between the parties to the license.  *Id.* ¶¶ 9, 39.

**<u>Response</u>:**        This paragraph recites a legal conclusion, not a fact.  To the extent this

paragraph recites a fact, it is not supported by any competent evidence because Mr. Edelman has

no basis for the conclusion he recites in the cited paragraphs.  *See* Edelman Dep. Tr. 206:6-

208:7; 210:16-212:23; 212:24-217:23; 218:17-219:10; 221:6-23; 224:23-225:24; 226:24-227:10;

302:4-11.  *See also id.* at 244:6-20; 245:17-246:24; 246:25-247:24; 296:9-298:6; 290:15-292:22.

Dated:  August 26, 2013                          Respectfully submitted,

                                      By:    *Joseph C. Gratz*
                                            Daralyn J. Durie (*pro hac vice*)
                                            ddurie@durietangri.com
                                            Joseph C. Gratz (*pro hac vice*)
                                            jgratz@durietangri.com
                                            DURIE TANGRI LLP
                                            217 Leidesdorff Street
                                            San Francisco, CA  94111
                                            Telephone:  415-362-6666
                                            Facsimile:  415-236-6300

                                            Attorneys for Defendant Google Inc.